UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

ROBERT BARTLETT, TERREL CHARLES
BARTLETT, LINDA JONES, SHAWN BARTLETT,
MAXINE E. CROCKETT, *individually and on behalf of
the* ESTATE OF RICKY LEON CROCKETT,
MARVISE L. CROCKETT, TRACIE ARSIAGA,
*individually and on behalf of the* ESTATE OF ROBERT
R. ARSIAGA, SYLVIA MACIAS, GILBERT
ARSIAGA, JR., GEORGE ARSIAGA, MATTHEW
ARSIAGA, ANGEL MUNOZ, ROBI ANN GALINDO,
PATRICIA ARSIAGA *on behalf of the* ESTATE OF
JEREMY ARSIAGA, CEDRIC HUNT, STEVEN
GREENWOOD, STEPHEN W. HILLER, *individually
and on behalf of the* ESTATE OF STEPHEN DUSTIN
HILLER, JEREMY CHURCH, SANDRA HANKINS,
INGRID FISHER, *individually and on behalf of the*
ESTATE OF STEVEN SCOTT FISHER, KRISTIN
WALKER, STEVEN T. FISHER, KATHLEEN
GRAMKOWSKI, MARY CARVILL, PEGGY
CARVILL-LIGUORI, *individually and on behalf of the*
ESTATE OF FRANK T. CARVILL, DANIEL
CARVILL, PAMELA ADLE-WATTS, *individually and
on behalf of the* ESTATE OF PATRICK ADLE, JOHN
WATTS, GLORIA NESBITT, *individually and on behalf
of the* ESTATE OF DEFOREST L. TALBERT, D.J.H., *a
minor*, CHIQUITA TALBERT, TAWANNA TALBERT
DARRING, LATASHA MARBLE, JAMES TALBERT,
MIRANDA PRUITT, VELINA SANCHEZ, *individually
and on behalf of the* ESTATE OF MOSES ROCHA,
ALOYSIUS SANCHEZ, SR., ROMMEL ROCHA,
PHILLIP SANCHEZ, ALOYSIUS SANCHEZ, JR.,
GLORIA P. REYNOSO, *individually and on behalf of
the* ESTATE OF YADIR G. REYNOSO, JASMIN
REYNOSO, PATRICIA REYNOSO, JOSE REYNOSO,
ASHLEY WELLS SIMPSON, *individually and on behalf
of the* ESTATE OF LARRY LLOYD WELLS, CHAD
WELLS, CRYSTAL STEWART, CHASITY WELLS-
GEORGE, CANDICE MACHELLA, BILLY DOAL
WELLS, HOPE ELIZABETH VEVERKA, DONNA
JEAN HEATH, *individually and on behalf of the*
ESTATE OF DAVID MICHAEL HEATH, LOLA JEAN
MODJESKA, JOHN DAVID HEATH, OLGA LYDIA
GUTIERREZ, *individually and on behalf of the* ESTATE
OF JACOB DAVID MARTIR, ISMAEL MARTIR,

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**COMPLAINT**
**JURY TRIAL DEMANDED**

**Case No. 19-cv-7**

VICTORIA M. FOLEY, *individually and on behalf of*     :
*the* ESTATE OF ALEXANDER SCOTT     :
ARREDONDO, NATHANIEL FOLEY, MICHAEL     :
SCOTT DEWILDE, STEVEN MORRIS, DANIELLE     :
DECHAINE-MORRIS, NICHOLAS MORRIS, K.M., *a*     :
*minor*, MONICA ARIZOLA, ROBERTO AARON     :
ARIZOLA, ROBERTO ARIZOLA, SR., CECILIA     :
ARIZOLA, DANNY ARIZOLA, RICARDO ARIZOLA,     :
GREG KLECKER, RAYMOND MONTGOMERY,     :
PATRICIA MONTGOMERY, BRYAN     :
MONTGOMERY, TONY WOOD, JOEDI WOOD,     :
ADAM WOOD, MEGAN WOOD, LISA RAMACI,     :
*individually and on behalf of the* ESTATE OF STEVEN     :
VINCENT, ISABELL VINCENT, CHARLES     :
VINCENT, MARIA VIDAL, TAMARA HASSLER,     :
RICHARD E. HASSLER, JOANNE SUE HASSLER,     :
SCOTT HUCKFELDT, KATHRYN HUCKFELDT,     :
ALISHA HUCKFELDT, MATTHEW HUCKFELDT,     :
TIMOTHY NEWMAN, PADRAIC J. NEWMAN,     :
AMENIA JONAUS, *individually and on behalf of the*     :
ESTATE OF JUDE JONAUS, GERNESSOIT JONAUS,     :
DAPHNIE JONAUS MARTIN, RICKY JONAUS,     :
MARCKENDY JONAUS, CLAIRE JONAUS,     :
SHAREN JONAUS MARTIN, MASINA TULIAU,     :
GWENDOLYN MORIN-MARENTES, *individually and*     :
*on behalf of the* ESTATE OF STEVE MORIN, JR.,     :
ESTEBAN MORIN, AUDELIA MORIN, ESTAVAN     :
MORIN, SR., BRIANNA RENEE NAVEJAS,     :
MARGARITO A. MARTINEZ, JR., AMY LYNN     :
ROBINSON and FLOYD BURTON ROBINSON,     :
*individually and on behalf of the* ESTATE OF     :
JEREMIAH ROBINSON, JACOB MICHAEL     :
ROBINSON, LUCAS WILLIAM ROBINSON, ALVIS     :
BURNS, JODEE JOHNSON, JAMES HIGGINS,     :
WENDY COLEMAN, BRIAN RADKE, NOVA     :
RADKE, STEVEN VERNIER, JR., CLIFFORD L.     :
SMITH, JR., *individually and on behalf of the* ESTATE     :
OF KEVIN J. SMITH, GEORGIANNA STEPHENS-     :
SMITH, CORENA MARTIN, ADAM MATTIS,     :
TERRANCE PETERSON, III, PETRA SPIALEK,     :
DAVID G. CARDINAL, JR., *individually and on behalf*     :
*of the* ESTATE OF ANTHONY CARDINAL,     :
RICHELLE HECKER, *individually and on behalf of the*     :
ESTATE OF WILLIAM F. HECKER, III, VICTORIA     :
HECKER, W.H., *a minor*, C.H., *a minor*, WILLIAM F.     :
HECKER, JR., NANCY HECKER, JOHN D. HECKER,     :

ROBERT F. MARIANO, *individually and on behalf of*   :
*the* ESTATE OF ROBBIE M. MARIANO, DEBRA   :
MARIANO, BOBBIE D. MARIANO, VICKIE   :
MICHAY WHITE, *individually and on behalf of the*   :
ESTATE OF STEPHEN J. WHITE, GLADYS E.   :
REYES CENTENO, VERONICA LOPEZ REYES,   :
*individually and on behalf of the* ESTATE OF JASON   :
LOPEZ REYES, ZORAIMA LOPEZ, JENNIFER LINK,   :
SHARON JOHNSTON, KENNY LEE, TOM B. LEE,   :
LING P. LEE, DEBORAH NOBLE, *individually and on*   :
*behalf of the* ESTATE OF CHARLES E. MATHENY,   :
IV, DAVID NOBLE, CHARLES E. MATHENY, III,   :
JUDY COLLADO, KAIYA COLLADO, JUSTIN   :
WALDECK, TANJA KUHLMEIER, *individually and on*   :
*behalf of the* ESTATE OF DANIEL KUHLMEIER,   :
K.K., *a minor*, ROBERT J. KUHLMEIER, THERESA   :
A. KUHLMEIER, THERESA ANN KUHLMEIER,   :
EDWARD KUHLMEIER, THOMAS KUHLMEIER,   :
JOHN KUHLMEIER, ROBERT W. KUHLMEIER,   :
PATRICK FARR, *individually and on behalf of the*   :
ESTATE OF CLAY P. FARR, SILVER FARR,   :
CARROL ALDERETE, ANTHONY ALDERETE,   :
CHAD FARR, RAYANNE HUNTER, *individually and*   :
*on behalf of the* ESTATE OF WESLEY HUNTER,   :
W.H., *a minor*, T.H., *a minor*, FABERSHA FLYNT   :
LEWIS, CHRISTOPHER ANTHONY BERSHEFSKY,   :
LORENZO SANDOVAL, SR., *individually and on*   :
*behalf of the* ESTATE OF ISRAEL DEVORA-GARCIA,   :
LORENZO SANDOVAL, JR., ADRIAN SANDOVAL,   :
ROSA ESTHER SANDOVAL, HENRY J.   :
BANDHOLD, SR., *individually and on behalf of the*   :
ESTATE OF SCOTT BANDHOLD, AFONSO   :
BANDHOLD, MARIANA BANDHOLD, H. JOSEPH   :
BANDHOLD, DONALD C. BANDHOLD, JOSHUA P.   :
STEIN, NICOLE B. STEIN, R.M.S., *a minor*, J.S.S., *a*   :
*minor*, JESSE P. STEIN, MICHAEL PAUL ALAN   :
SHELSWELL, ERIK ROBERTS, E.C.R., *a minor*,   :
ROBIN ROBERTS, JAMES CRAIG ROBERTS, CARA   :
ROBERTS, COLIN ROBERTS, LUKE MURPHY,   :
WILLETTE MURPHY, SHANE IRWIN, T.R., *a minor*,   :
HELEN MARGUERITE IRWIN, NICOLE IRWIN,   :
MARIA GOMEZ, *individually and on behalf of the*   :
ESTATE OF JOSE GOMEZ, JOHN DANA GREER,   :
STEPHANIE C. SANDER, CHRISTOPHER D.   :
GREER, JOSEPH L. GREER, CARL K. GREER,   :
CHRISTOPHER JOYNER, ANNE P. JOYNER,   :

NECOLE DUNLOW SMITH, MICHAEL R. MILLS,      :
M.R.M., *a minor*, M.R.M., *a minor*, EDDIE JO     :
PALINSKY, *individually and on behalf of the* ESTATE  :
OF JERRY A. PALINSKY, JR., JERRY A. PALINSKY,  :
II, ADINA PALINSKY, JERRY A. PALINSKY, SR.,      :
KATHLEEN HOKE, JOEL PALINSKY, KARALEEN      :
HERB, ERIC BRANDON STONEKING, CARRIE SUE     :
STONEKING, FAITH RENEE STONEKING,      :
NANETTE SAENZ, *individually and on behalf of the*     :
ESTATE OF CARLOS N. SAENZ, JUAN SAENZ,      :
JOAQINA SAENZ CHORENS, LUZ MARIA      :
ESTRADA-PULIDO, FRANCES CATHERINE      :
CASTRO, ELVA ESPINOZA, AMANDA VACHO *on*     :
*behalf of the* ESTATE OF NATHAN J. VACHO *and on*     :
*behalf of* E.V., *a minor*, BAYLI VACHO, *individually*     :
*and on behalf of the* ESTATE OF NATHAN J. VACHO,     :
JOHN VACHO, *individually and on behalf of the*     :
ESTATE OF CAROL VACHO, ASHLEY VACHO      :
LESLIE, RONALD VEVERKA, CAROL POLLEY,      :
KEITH VEVERKA, DOUGLAS VEVERKA, SANDRA     :
SOLIDAY, JEANETTE WEST, *individually and on*     :
*behalf of the* ESTATE OF ROBERT H. WEST,      :
SHELBY WEST, DONNA ENGEMAN, *individually*     :
*and on behalf of the* ESTATE OF JOHN W.      :
ENGEMAN, SHANNON SHUMATE, LAUREN      :
SHUMATE, L.S., *a minor*, L.S., *a minor*, NICOLE     :
DICENZO, *individually and on behalf of the* ESTATE     :
OF DOUGLAS ANDREW DICENZO, D.D., *a minor*,     :
LARRY DICENZO, KATHY CRANE, JOHNNY      :
ALLEN BLAIR, *individually and on behalf of the*     :
ESTATE OF ROBERT EDWARD BLAIR, CHARLEE     :
BLAIR WEBB, SUZZETTEE LAWSON, *individually*     :
*and on behalf of the* ESTATE OF ISAAC S. LAWSON,     :
C.L., *a minor*, ARNE EASTLUND, TINA EASTLUND,     :
SVEN EASTLUND, TAYLOR EASTLUND,      :
ELIZABETH JO EASTLUND, MATTHEW      :
ADAMSON, R.A., *a minor*, KATHY ADAMSON,      :
RICHARD ADAMSON, CHRISTOPHER ADAMSON,      :
JEFFREY ADAMSON, JUSTIN ADAMSON, JAMES     :
SHEPARD, JOHN P. SKLANEY, III, KATHY      :
CRABTREE, *individually and on behalf of the* ESTATE     :
OF DANIEL CRABTREE, M.C., *a minor*, JUDY ANN     :
CRABTREE, RONALD WAYNE CRABTREE,      :
DEBRA WIGBELS, RONALD WILLIAM      :
CRABTREE, JUDY HUENINK, *individually and on*     :
*behalf of the* ESTATE OF BENJAMIN J. SLAVEN,     :

SEAN SLAVEN, CHASTITY DAWN LAFLIN, :
NICOLE LANDON, MISTI FISHER, STEVEN J. :
FRIEDRICH, A.F., *a minor*, PHILIP ALAN DERISE, :
NORMA ALICIA CONTRERAS, JONATHAN :
CONTRERAS, SR., CARLOS CONTRERAS, CESAR :
CONTRERAS, HERNAN CONTRERAS, NOEL :
CONTRERAS, DANNYEL CONTRERAS, SHARON :
M. PUGH, *individually and on behalf of the* ESTATE OF :
KENNETH IRVING PUGH, BRITNEY E. CARTER, :
ALICIA PEARSON, DANIEL J. EVANS, JUSTIN :
EVANS, KEVIN GRAVES, NICHOLAS GENE :
KOULCHAR, MICHAEL KOULCHAR, SUHEIL :
CAMPBELL, *individually and on behalf of the* ESTATE :
OF EDGARDO ZAYAS, ALEXANDER ZAYAS, A.Z.- :
C., *a minor*, CATHY ANDINO, *individually and on* :
*behalf of the* ESTATE OF EDWIN A. ANDINO, JR., :
LUIS JUNIOR PUERTAS, LIDIA SULLIVAN, :
GABRIELA D. PUERTAS VERGARA-DONOSO, :
CHRISTOPHER MICHAEL MELENDEZ, NARCISO :
MELENDEZ, CHRISTINA MELENDEZ, LAUREL :
BARATTIERI, *individually and on behalf of the* :
ESTATE OF GUY BARATTIERI, PATRICIA :
WHEATLEY, REBECCA BARATTIERI, NICOLE :
BARATTIERI, GINA TESNAR, GLORIA L. :
MAGANA, *individually and on behalf of the* ESTATE :
OF KENNY FRANCES STANTON, JR., MARIO :
STANTON, BRANDIE STANTON, TERRYMARIE :
STANTON, FRED FRIGO, NANNETTE BRYNE- :
HAUPT, LYNN FOREHAND, *individually and on* :
*behalf of the* ESTATE OF RYAN HAUPT, LANCE :
HAUPT, RHONDA HAUPT, TIFANY THOMPSON, :
SABRINA CUMBE, WILLIAM WITTE, *individually* :
*and on behalf of the* ESTATE OF KEVIN M. WITTE, :
MICHAEL MOCK, TAMMY DORSEY, ERIC PHYE, :
JAMES GMACHOWSKI, CONSTANCE BRIAN, :
*individually and on behalf of the* ESTATE OF BRIAN :
BRIAN, AMBER HENSLEY, DAVID W. HAINES, :
DAWN HAINES, COLIN HAINES, MACKENZIE :
HAINES, KARAR ALABSAWI, MICHELLE :
TAYLOR, *individually and on behalf of the* ESTATE OF :
DAVID G. TAYLOR, JR., J.T., *a minor*, PHYLLIS :
TAYLOR, JOHN TAYLOR, BRIAN G. TAYLOR, :
JUDAS RECENDEZ, TYLER NORAGER, SHALEE :
NORAGER, M.N., *a minor*, HARRY RILEY BOCK, :
JILL ANN BOCK, MARIAH SIMONEAUX, KOUSAY :
AL-TAIE, *individually and on behalf of the* ESTATE OF :

v

AHMED AL-TAIE, NAWAL AL-TAIE, BASHAR AL-    :
TAIE, HATHAL K. TAIE, LAWRENCE KRUGER,    :
*individually and on behalf of the* ESTATE OF ERIC    :
KRUGER, CAROL KRUGER, C.K., *a minor*, E.K., *a*    :
*minor*, DOUGLAS KRUGER, KRISTY KRUGER,    :
JACKIE FARRAR-FINKEN, *individually and on behalf*    :
*of the* ESTATE OF PAUL FINKEN, EMILIE FINKEN,    :
C.F., *a minor*, J.F., *a minor*, STEPHEN FINKEN, ALAN    :
FINKEN, RICHARD FINKEN, DAVID FINKEN,    :
MARK FINKEN, PETER FINKEN, JEAN PRUITT,    :
JOAN HENSCHEID, LORI ANN MCCOY, *individually*    :
*and on behalf of the* ESTATE OF GREGORY MCCOY,    :
L.M., *a minor*, T.M., *a minor*, GLENN MICHAEL COX,    :
SANGSOON KIM, SEOP KIM, *individually and on*    :
*behalf of the* ESTATE OF JANG HO KIM, MICHELLE    :
KIM, KURTISS LAMB, FRANCIS L. COTÉ, NANCY    :
COTÉ, CHRISTOPHER COTÉ, SAMANTHA    :
DUNFORD, MAXIMILLIAN SHROYER, CASEY    :
REUBEN, BREE REUBEN, PATRICK REUBEN,    :
JACKIE STEWART, MARK MUNNS, CRISTA    :
MUNNS, SHARON DEBRABANDER, DENNIS    :
DEBRABANDER, NICOLE DEBRABANDER,    :
JOELLA PRATT, HELEN FRASER, RICHARD    :
FRASER, *individually and on behalf of the* ESTATE OF    :
DAVID M. FRASER, TRICIA ENGLISH, NATHAN    :
ENGLISH, N.C.E., *a minor*, A.S.E., *a minor*, TODD    :
DAILY *on behalf of the* ESTATE OF SHAWN L.    :
ENGLISH, JOSHUA STARKEY, BRENT HINSON,    :
WILLIAM HINSON, FRAN HINSON, HILARY    :
WESTERBERG, LINDA GIBSON, JOHN GIBSON,    :
STEPHANIE GIBSON WEBSTER, SEAN ELLIOTT,    :
TRAVIS GIBSON, WILLIAM RONALD LITTLE,    :
BRENDA LITTLE, *individually and on behalf of*    :
WILLIAM RONALD LITTLE, JR., KIRA SIKES,    :
JOSHUA DENMAN, RANDOLPH DELBERT NANTZ,    :
JOSHUA RYAN NANTZ, LORI ANN MCCORMICK,    :
*individually and on behalf of the* ESTATE OF    :
CLINTON MCCORMICK, DEBORAH BEAVERS,    :
DENISE VENNIX, *individually and on behalf of the*    :
ESTATE OF ALAN R. BLOHM, JEREMY BLOHM,    :
*individually and on behalf of the* ESTATE OF CHRIS    :
BLOHM, KIANA BLOHM, JAMES SMITH, MEGAN    :
MAUK, ROBERT VACCARO, JOANNE GUTCHER,    :
CHARLOTTE FREEMAN, *individually and on behalf of*    :
*the* ESTATE OF BRIAN S. FREEMAN, G.F., *a minor*,    :
I.F., *a minor*, KATHLEEN SNYDER, RANDOLPH    :

FREEMAN, KATHALEEN FREEMAN, ALBERT                :
SNYDER, RICHARD LEE, DANNY CHISM,                 :
ELIZABETH CHISM, *individually and on behalf of the*  :
ESTATE OF JOHNATHAN B. CHISM, VANESSA             :
CHISM, JULIE CHISM, RUSSELL J. FALTER,            :
*individually and on behalf of the* ESTATE OF SHAWN  :
P. FALTER, LINDA FALTER, MARJORIE FALTER,         :
RUSSELL C. FALTER, JOHN SACKETT, JASON            :
SACKETT, MICHAEL LUCAS, MARSHA NOVAK,             :
DAVID LUCAS, TIM LUCAS, ANDREW LUCAS,             :
SHANNON MILLICAN, *individually and on behalf of*   :
*the* ESTATE OF JOHNATHON M. MILLICAN, PAUL       :
MITCHELL MILLICAN, NOALA FRITZ, *individually*     :
*and on behalf of the* ESTATE OF JACOB FRITZ *and*  :
*the* ESTATE OF LYLE FRITZ, DANIEL FRITZ,         :
ETHAN FRITZ, BILLY WALLACE, STEFANIE              :
WALLACE, AUSTIN WALLACE, DEVON                    :
WALLACE, C.W., *a minor*, EVAN KIRBY, MARCIA      :
KIRBY, STEVEN KIRBY, JOHNNY WASHBURN,             :
MARVIN THORNSBERRY, CYNTHIA                       :
THORNSBERRY, A.B., *a minor*, M.T., *a minor*, N.T., *a*  :
*minor*, L.T., *a minor*, TRACY ANDERSON, JEFFREY  :
ANDERSON, ADAM G. STOUT, ANDREW JEFFREY           :
ANDERSON, ELIZABETH LYNN ISLAS,                   :
ANASTASIA FULLER, *individually and on behalf of*   :
*the* ESTATE OF ALEXANDER H. FULLER, A.F., *a*     :
*minor*, SAMANTHA BALSLEY, *individually and on*    :
*behalf of the* ESTATE OF MICHAEL C. BALSLEY,     :
L.R.-W., *a minor*, HEATH DAMON HOBSON, JODI      :
MICHELLE HOBSON, M.D.H., *a minor*, DEADRA        :
GARRIGUS, *individually and on behalf of the* ESTATE  :
OF MICKEL D. GARRIGUS, DAVID GARRIGUS,            :
NICHOLE GARRIGUS, KYLA OSTENSON,                  :
MATTHEW GARRIGUS, SHAWN RYAN, SHARON              :
Y. DUNN SMITH, *individually and on behalf of the*   :
ESTATE OF TERRENCE DUNN, DENNIS DUNN,             :
RICHARD LANDECK, VICTORIA LANDECK,                :
LAVONNA HARPER, MELBA ANNE F. HARRIS,             :
PAUL D. HARRIS, HYUNJUNG GLAWSON,                 :
*individually and on behalf of the* ESTATE OF CURTIS  :
E. GLAWSON, YOLANDA M. BROOKS, CURTIS             :
GLAWSON, SR., KIERRA GLAWSON, SABRINA             :
GLAWSON *on behalf of the* ESTATE OF CORTEZ       :
GLAWSON, JAZMON REYNA, RYAN SABINISH,             :
R.J.S., *a minor*, S.J.S., *a minor*, CARRIE THOMPSON,  :
*individually and on behalf of the* ESTATE OF SEAN M.  :

THOMAS, A.T., *a minor*, DANIEL THOMAS, SR.,  :
DIANA THOMAS, DANIEL THOMAS, JR., KELLY  :
GILLIS, MELINDA FLICK, ANN CHRISTOPHER,  :
*individually and on behalf of the* ESTATE OF KWESI  :
CHRISTOPHER, NANCY FUENTES, *individually and*  :
*on behalf of the* ESTATE OF DANIEL A. FUENTES,  :
ARMANDO FUENTES, JULIO FUENTES, TATYANA  :
FUENTES, EMMA MCGARRY, D.J.F., *a minor*, JOHN  :
KIRBY, MICHAEL MURPHY-SWEET, ELIZABETH  :
MURPHY-SWEET, ANONA GONELLI, LINDSAY  :
YOUNG, *individually and on behalf of the* ESTATE OF  :
BRETT A. WALTON, S.W., *a minor*, LEASA  :
DOLLAR, EUGENE DELOZIER, MICHELLE  :
KLEMENSBERG, *individually and on behalf of the*  :
ESTATE OF LARRY R. BOWMAN, SCOTT LILLEY,  :
FRANK LILLEY, JOLENE LILLEY, MATTHEW  :
LILLEY, AVA TOMSON, *individually and on behalf of*  :
*the* ESTATE OF LUCAS V. STARCEVICH, RICHARD  :
TOMSON, BRADLEY STARCEVICH, GLENDA  :
STARCEVICH, ARIANA STARCEVICH, TRENTON  :
STARCEVICH, SAMANTHA TOMSON, ANDREW  :
TOMSON, JARED S. STEVENS, SUSAN MARIA  :
DOSKOCIL HICKS, *individually and on behalf of the*  :
ESTATE OF GLENN DALE HICKS, JR., GLENN  :
DALE HICKS, SR., DAVID JAMES HICKS, JOHN  :
CHRISTOPHER HICKS, S.L.H., *a minor*, KAREN  :
FUNCHEON, *individually and on behalf of the* ESTATE  :
OF ALEXANDER J. FUNCHEON, ROBERT  :
FUNCHEON, DWIGHT MARTIN, *individually and on*  :
*behalf of the* ESTATE OF JAY E. MARTIN, DOVE  :
DEANNA ADAMS, RAVEN ADAMS, LARK  :
ADAMS, HOLLY BURSON, *individually and on behalf*  :
*of the* ESTATE OF JEROME POTTER, NANCY  :
UMBRELL, *individually and on behalf of the* ESTATE  :
OF COLBY J. UMBRELL, MARK UMBRELL, CASEY  :
BOEHMER, JEREMY D. SMITH, DANIEL DIXON,  :
*individually and on behalf of the* ESTATE OF ILENE  :
DIXON *and the* ESTATE OF ROBERT J. DIXON,  :
JESSICA HUBBARD *on behalf of the* ESTATE OF  :
ROBERT J. DIXON, M.R., *a minor, and* L.R.I., *a minor*,  :
DAVID DIXON, DANIEL AUSTIN DIXON,  :
GRETCHEN LANG, REBECCA J. OLIVER, DANIEL  :
C. OLIVER, KIMBERLEE AUSTIN-OLIVER,  :
TIFFANY M. LITTLE, *individually and on behalf of the*  :
ESTATE OF KYLE A. LITTLE, K.L., *a minor*,  :
SHELLEY ANN SMITH, DAKOTA SMITH-LIZOTTE,  :

viii

SHYANNE SMITH-LIZOTTE, ERIN LEE DRUCTOR, :
*individually and on behalf of the* ESTATE OF BLAKE :
STEPHENS, TRENT STEPHENS, KATHLEEN :
STEPHENS, DEREK STEPHENS, RHETT STEPHENS, :
SUMMER STEPHENS, BRITTANI HOBSON, :
CYNTHIA CONNER, WILLIAM FARRAR, SR., :
*individually and on behalf of the* ESTATE OF :
WILLIAM A. FARRAR, JOSHUA BROOKS, JOYCE :
BROOKS, DANNY BROOKS, DANIEL TYLER :
BROOKS, DELILAH BROWN, *individually and on* :
*behalf of the* ESTATE OF SCOTT J. BROWN, TONYA :
K. DRESSLER, ARDITH CECIL DRESSLER, :
MELISSA DRESSLER, TANYA SUZZETTE :
DRESSLER, DANIEL DRESSLER, JAMES :
DRESSLER, ELIZABETH MASTERSON, *individually* :
*and on behalf of the* ESTATE OF JOSHUA D. BROWN, :
MARIAN BROWN, WAYNE BROWN, DANIELLE :
SWEET, *individually and on behalf of the* ESTATE OF :
RYAN A. BALMER, A.B., *a minor*, G.B., *a minor*, :
DONNA KUGLICS, *individually and on behalf of the* :
ESTATE OF MATTHEW J. KUGLICS, LES :
KUGLICS, EMILY ADAMS, DEREK GAJDOS, :
TAMMY DENBOER, BRANDEAUX CAMPBELL, :
RYAN WILSON, JAMI LIN WILSON, MATTHEW :
LAMMERS, ALICIA LAMMERS, BARBARA :
LAMMERS, GARY LAMMERS, STACY PATE, :
ANGEL GOMEZ, DENISE JACKSON, SCOTT HOOD, :
FLORA HOOD, DIXIE FLAGG, STEPHANIE HOOD, :
CHEYENNE FLAGG, WILLIAM PARKER, MEGHAN :
PARKER-CROCKETT, ANDREW MOORES, SHEILA :
TRACY, *individually and on behalf of the* ESTATE OF :
JACOB TRACY, DONALD TRACY, NICHOLE :
SWEENEY, CHRISTINA SHERIDAN, MATTHEW :
BENSON, MELISSA BENSON, C.B., *a minor*, B.B., *a* :
*minor*, DANIEL P. BENSON, CAROL BENSON, :
DANIEL R. BENSON, RAYMOND NIGEL SPENCER, :
SR., SYLVIA JOHNSON SPENCER, MICHAEL :
DEAN MOODY, SR., *individually and on behalf of the* :
ESTATE OF MICHAEL DEAN MOODY, JR., :
CONNIE MOODY, KEDRICK DANTE MOODY, :
DREW EDWARDS, DONIELLE EDWARDS, ARIFAH :
HARDY, T.C., *a minor*, AUNDRA CRAIG, JOYCE :
CRAIG, DEBRA COOK-RUSSELL, NASHIMA :
WILLIAMS CRAIG, MATTHEW CRAIG, :
JONATHAN CRAIG, ANDRE BROWN, MICHAEL :
COOK, VALENCIA COOK, KATHERINE M. CROW, :

*individually and on behalf of the* ESTATE OF : 
WILLIAM J. CROW, K.A.C., *a minor*, K.E.C., *a minor*, : 
CANDACE CATHRYN HUDSON, *individually and on* : 
*behalf of the* ESTATE OF KATHRYN ANN MONDINI, : 
AMANDA B. ADAIR, PATRICK TUTWILER, : 
CRYSTAL TUTWILER, SHIRLEY STEARNS and : 
JOHN STEARNS, *individually and on behalf of the* : 
ESTATE OF MICHELLE R. RING, KAREN HALL, : 
MARILYN HAYBECK, MARC STEARNS, JAMES : 
COLE *on behalf of* B.C., *a minor*, JOHN D. LAMIE, : 
DONNA LEWIS, *individually and on behalf of the* : 
ESTATE OF JASON DALE LEWIS, J.L.*, a minor*, J.L., : 
*a minor*, G.L., *a minor*, JEAN MARIANO, : 
KATHERINE MCRILL-FELLINI, *individually and on* : 
*behalf of the* ESTATE OF ROBERT MCRILL, BRETT : 
COKE, BRIAN COKE, RONALD MCRILL, : 
MATTHEW L. MERGELE, RENE POOL, DEREK : 
ALLEN HOLLCROFT, PAULA C. BOBB-MILES, : 
*individually and on behalf of the* ESTATE OF : 
BRANDON K. BOBB, JOHNNY JAVIER MILES, SR., : 
JOHNNY JAVIER MILES, JR., RACQUEL ARNAE : 
BOBB MILES, URSULA ANN JOSHUA, *individually* : 
*and on behalf of the* ESTATE OF RON J. JOSHUA, JR., : 
TAMMY KINNEY, DANIEL PRICE, STEVEN PRICE, : 
TAUSOLO AIETI, IMO AIETI, LISI AIETI, POLOKA : 
AIETI, CHRISTOPHER BOUTEN, ERIN BOUTEN, : 
DANIEL DUDEK, MARGARET DUDEK, KATIE : 
WOODARD, SARAH DUDEK, ANDREW DUDEK, : 
EMANUELA FLOREXIL, *individually and on behalf of* : 
*the* ESTATE OF CAMY FLOREXIL, JOSEPH T. : 
MILLER, SEAN HARRINGTON, JESSICA : 
HEINLEIN, *individually and on behalf of the* ESTATE : 
OF CHARLES T. HEINLEIN, JR., CHARLES : 
HEINLEIN, SR., JODY LYN HEINLEIN, : 
MARGARITA ARISTIZABAL, *individually and on* : 
*behalf of the* ESTATE OF ALFRED H. JAIRALA, J.J., *a* : 
*minor*, SEBASTIAN NIUMAN, RICHARD : 
NEIBERGER, MARY NEIBERGER, AMI : 
NEIBERGER, ROBERT NEIBERGER, ERIC : 
NEIBERGER, *individually and on behalf of the* ESTATE : 
OF CHRISTOPHER NEIBERGER, BRIAN J. CASEY, : 
BRITTANY HOGAN, SHELLEY ANN CASEY, : 
RICHARD CASEY, SALLY CHAND, *individually and* : 
*on behalf of the* ESTATE OF MICHAEL CHAND, SR., : 
MICHAEL CHAND, JR., CHRISTINA MAHON, : 
RYAN CHAND, BRENDA CHAND, MARIO BOWEN, : 

x

JAMES DAVID HOCHSTETLER, LEANNE                    :
LIZABETH HOCHSTETLER, J.H., *a minor*, P.H., *a*   :
*minor*, KYLE AUSTIN MARSHALL, JOHN RICHARD        :
TULLY, *individually and on behalf of the* ESTATE OF :
MICHAEL TULLY, MARILYN LOUISE TULLY,               :
SLADE VICTOR TULLY, JOHN RICHARD TULLY,            :
II, HEATHER ANN FARKAS, ROBERT JAMES               :
HUNT, M.A.H., *a minor*, A.M.H., *a minor*,        :
BOONCHOB PRUDHOME, MICHELE WHITE,                  :
*individually and on behalf of the* ESTATE OF DELMAR :
WHITE, S.W., *a minor*, SHELBY WHITE, PERRY        :
WHITE, ROBERT WHITE, JOSHUA P.G. WOLD,             :
E.W., *a minor*, P.A., *a minor*, CELESTE YANTIS,  :
MARICEL MURRAY, *individually and on behalf of the* :
ESTATE OF JOEL L. MURRAY, J.M., *a minor*,         :
BRYAN S. SHELTON, *individually and on behalf of the* :
ESTATE OF RANDOL S. SHELTON, DARLENE               :
SHELTON, AMANDA SHELTON, BRIAN T.                  :
SHELTON, DAN LAIRD, ANGELA M. LAIRD,               :
JORDAN M. LAIRD, HUNTER L. LAIRD, C.L., *a*        :
*minor*, LESLIE K. REEVES-HARDCASTLE,              :
*individually and on behalf of the* ESTATE OF JOSHUA :
REEVES, J.R., *a minor*, JAMES L. REEVES, W. JEAN  :
REEVES, JARED REEVES, SHERRI C. HOLIMAN,           :
JONI ARIEL REEVES LITTLE, WILLIAM LEE,             :
ALEXANDRIA L. LEE, WILLIAM J. LEE, LILLIE          :
LAI LEE, JENNIFER LYNN HUNT, CHRISTOPHER           :
GOLEMBE, KATHRYN HEAD, CHRISTOPHER                 :
WATTS, JANET L. RIOS, ANITA BAKER, JENNIE L.       :
MORIN, RANDALL GEIGER, *individually and on*       :
*behalf of the* ESTATE OF WAYNE M. GEIGER,         :
KIMBERLY GEIGER, JESSECA LYN TSOSIE, ERIC          :
DONOHO, TYLER GINAVAN, TIMOTHY TIFFNER,            :
*individually and on behalf of the* ESTATE OF       :
BENJAMIN DAVID TIFFNER, JUDITH TIFFNER,            :
JOSHUA TIFFNER, SETH TIFFNER, SARAH                :
CROSBY, ALAN BURKS, *individually and on behalf of* :
*the* ESTATE OF PETER BURKS, JACKIE MERK           :
HLASTAN, G.B., *a minor*, ALISON BURKS MCRUIZ,     :
SARAH PHILLIPS, ZACHARY BURKS, BRIDGET             :
JUNEAU, *individually and on behalf of the* ESTATE OF :
WILLIAM JUNEAU, STEPHANIE JUNEAU, TAMMY            :
VANDERWAAL, A.L.R., *a minor*, PRESTON SHANE       :
REECE, SHAYLYN C. REECE, ELENA SHAW, C.S.,         :
*a minor*, L.S., *a minor*, EMILY SHAW, MELISSA    :
DOHENY, *individually and on behalf of the* ESTATE  :

OF MICHAEL DOHENY, KATHY KUGLER,                    :
ROBERT KUGLER, TANYA EVRARD, BILLY
JOHNSON, JUDY HOFFMAN, ASHLEY GUDRIDGE              :
HOUPPERT, JOSHUA SCHICHTL, MARK
SCHICHTL, KATHERINE PROWSE, NICHOLAS                :
PROWSE, H.S., *a minor*, S.S., *a minor*, C.S., *a minor*,  :
A.S., *a minor*, STEVE WADLEIGH, LEA-ANN
WADLEIGH, MICHAEL LUKOW, RIKKI LUKOW,               :
BRUCE LUKOW, JOSEPH LUKOW, ANDREW
LUKOW, KRISTEN KELLEY, MAIRA ALVAREZ,               :
*individually and on behalf of the* ESTATE OF CONRAD  :
ALVAREZ, K.A., *a minor*, ANGELA ALVAREZ *on*
*behalf of* A.A. and C.A., *minors*, BELINDA GARCIA,  :
JASON WHITEHORSE, JEFFREY C. MANN,
MICHELLE WEST, REBECCA L. SAMTEN-FINCH,             :
*individually and on behalf of the* ESTATE OF TENZIN  :
LOBSANG SAMTEN, D.A.S., *a minor*, M.B.S., *a*
*minor*, AVA LANETTE BRADLEY, *individually and on*  :
*behalf of the* ESTATE OF JUANTREA TYRONE
BRADLEY, A.D.B., *a minor*, T.T.B., *a minor*, J.T.B., *a*  :
*minor*, ANTHONY HUDSON, AUSTIN BEWLEY,
CHRISTOPHER LEVI, ERIC LEVI, DEBRA LEVI,            :
EMILY LEVI, KIMBERLY VESEY, MARION
CRIMENS, TIMOTHY W. ELLEDGE, MARY                   :
CATHERINE MCLAUGHLIN, BRENDA                        :
HABSIEGER, *individually and on behalf of the* ESTATE  :
OF ANDREW J. HABSIEGER, MICHAEL
HABSIEGER, AMBER HABSIEGER *on behalf of the*       :
ESTATE OF JACOB MICHAEL HABSIEGER, KELLI            :
D. HAKE, *individually and on behalf of the* ESTATE OF  :
CHRISTOPHER HAKE, G.H., *a minor*, DENICE
YORK, RUSSEL YORK, PETER HAKE, JILL HAKE,           :
ZACHARY HAKE, KERI HAKE, SKYLAR HAKE,
JENNIFER RENEE YORK, JASON YORK, MARIA E.           :
CALLE, *individually and on behalf of the* ESTATE OF
GEORGE DELGADO, CYNTHIA DELGADO,                    :
TABITHA MCCOY, *individually and on behalf of the*    :
ESTATE OF STEVE A. MCCOY, LOGAN MCCOY,              :
R.M., *a minor*, MATTHEW FIESER, BENJAMIN           :
DANIEL CARRINGTON, JONATHAN HESLOP,
RUSSELL MASON, ANDY POOL, FRANK L.                  :
CONVERSE, *individually and on behalf of the* ESTATE  :
OF PAUL R. CONVERSE, ANTHONY M. GERBER,             :
CHARLES B. GREGSTON, KIMBERLY MILLER,               :
MICHAEL J. MILLER, CARL REIHER, WALTER              :
BAILEY, CASSANDRA BAILEY, KACEY GILMORE,            :

TERRELL GILMORE, JR., KYNESHA DHANOOLAL, *individually and on behalf of the* ESTATE OF DAYNE D. DHANOOLAL, JASON ROBINSON, FRANCES ROBINSON, E.R., *a minor*, WILLIAM JUSTIN WEATHERLY, MICHAEL WEATHERLY, MERLESE PICKETT, *individually and on behalf of the* ESTATE OF EMANUEL PICKETT, HARRY CROMITY, MARLEN PICKETT, KEMELY PICKETT, VIVIAN PICKETT, KYSHIA SUTTON, RACHEL M. GILLETTE, REBEKAH SCOTT, LEE WOLFER, *individually and on behalf of the* ESTATE OF STUART WOLFER, L.W., *a minor*, M.W., *a minor*, I.W., *a minor*, BEVERLEY WOLFER, PATRICIA SMITH, MICHAEL SMITH, JACQUELINE A. SMITH, THOMAS SMITH, RACHELLE IDOL, JAMES VAUGHN, JEANNINE VAUGHN, CLIFFORD VAUGHN, DAVID HARTLEY, *individually and on behalf of the* ESTATE OF JEFFERY HARTLEY, DAVID WAYNE HARTLEY, KAYLIE HARTLEY, LISA DUNCAN, VIRGINIA BILLITER, ERIC BILLITER, ADRIANNE KIDD, ALLEN SWINTON, TEMIKA SWINTON, T.S., *a minor*, T.S., *a minor*, T.B., *a minor*, LINDA PRITCHETT, WILLIAM ALLMON, *individually and on behalf of the* ESTATE OF WILLIAM E. ALLMON, RONALD SLOAN, MARY JANE VANDEGRIFT, *individually and on behalf of the* ESTATE OF MATTHEW R. VANDEGRIFT *and the* ESTATE OF JOHN VANDEGRIFT, MARK E. THOMSEN, ARDELL THOMSEN, RALPH THOMSEN, EVAN D. BOGART, LANI D. BOGART, DOUGLAS R. BOGART, CHRISTOPHER BOGART, CANA HICKMAN, LUIS ROSA-VALENTIN, M.R., *a minor*, ILIANA M. ROSA-VALENTIN, PAM MARION, DONNIE MARION, ADRIAN MCCANN, DON JASON STONE, PRESTON CHARLES KAPLAN, NICOLE A. KAPLAN, NONI KAPLAN, DAVID KAPLAN, JAIME ZARCONE, JESSALYN HOLT, DAVID WOODARD, D.M.W., *a minor*, ADAM MAGERS, LUIS GARZA, SUSAN ARNOLD, *individually and on behalf of the* ESTATE OF RONALD J. TUCKER, DAVID ARNOLD, SAMANTHA TUCKER, BRANDON ARNOLD, DAISY TUCKER, JOHN DAGGETT, COLLEEN CZAPLICKI, RUSSEL HICKS, SR., RUSSEL HICKS, JR., WESLEY WILLIAMSON, JESSE WILLIAMSON, PATRICK O'NEILL, JOHN O'NEILL, DIANNE O'NEILL, DANIEL LUCKETT, BREANNA LYNN

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

GASPER, *individually and on behalf of the* ESTATE OF   :
FRANK J. GASPER, JAMIE BARNES, MAX W.   :
HURST, *individually and on behalf of the* ESTATE OF   :
DAVID R. HURST, LILLIAN HURST,   :
CHRISTOPHER HURST, MARK HURST, DONNA   :
FARLEY, NOEL J. FARLEY, SR., BARBARA   :
FARLEY, BRETT FARLEY, CAMERON FARLEY,   :
CHRIS FARLEY, VICKIE MCHONE, NOEL S.   :
FARLEY, DAVID C. IVERSON, DANIEL MENKE,   :
*individually and on behalf of the* ESTATE OF   :
JONATHAN D. MENKE, PAULA MENKE,   :
MATTHEW MENKE, NICHOLE LOHRIG, JESSICA   :
H. WILLIAMS, *individually and on behalf of the*   :
ESTATE OF JAMES M. HALE, J.M.H., *a minor*, J.J.H.,   :
*a minor*, J.H., *a minor*, ROSEMARIE ALFONSO, K.B.,   :
*a minor*, TYLER LATHAM, MICHELLE   :
BENAVIDEZ, *individually and on behalf of the*   :
ESTATE OF KENNITH W. MAYNE, DANIEL   :
BENAVIDEZ, CHRISTINA BIEDERMAN, DANIEL   :
BENAVIDEZ, JR., JENNIFER MORMAN,   :
CHRISTOPHER MILLER, BRYANT BEARFIELD,   :
ANGELINE JACKSON, KAYTRINA JACKSON,   :
SHILYN JACKSON, TONY GONZALEZ, MARLYNN   :
GONZALES, TAMARA RUNZEL, MEGAN PEOPLE,   :
SHAULA SHAFFER, CARLLIE PAUL, KARI   :
CAROSELLA, *individually and on behalf of the*   :
ESTATE OF JUSTIN BAUER, GREGORY BAUER,   :
CONNIE HADDOCK, JACOB BAUER, JEREMY   :
BAUER, ANDREW BRADLEY, JULIE SALHUS,   :
KRISTEN GALEN, PATRICK WARD, JARRETT   :
WARD, ROBERTO ANDRADE, SR., *individually and*   :
*on behalf of the* ESTATE OF ROBERTO ANDRADE,   :
JR., VERONICA PENA ANDRADE, SANDRA   :
VALENCIA, ANGELICA ANDRADE, VERONICA   :
DENISSE ANDRADE, KARA CONNELLY, JEAN   :
DAMMANN, MARK DAMMANN, KEVIN   :
CONNELLY, THERESA DAVIS, RHONDA KEMPER,   :
ROBERT CANINE, S.C., *a minor*, JANET JONES,   :
CALVIN CANINE, JAMES CANINE, JENNIFER   :
ROOSE, RHETT MURPHY, ROADY LANDTISER,   :
NATHAN RICHARDS, STEVEN RICHARDS,   :
CHRISTOPHER SONGER, KIMBERLY SONGER,   :
C.S., *a minor*, LINDA DAVID, *individually and on*   :
*behalf of the* ESTATE OF TIMOTHY A. DAVID *and*   :
*the* ESTATE OF MICHAEL DAVID, CHRISTOPHER   :
DAVID, KENNETH J. DREVNICK, MEGAN MARIE   :

SABATINO, *individually and on behalf of the* ESTATE          :
OF ZACHARY T. MYERS, R.N.S., *a minor*, TONYA               :
FREEMAN, JERRY L. MYERS, JEFFREY D. PRICE,                  :
CASSIE COLLINS, *individually and on behalf of the*         :
ESTATE OF SHANNON M. SMITH, DEBORAH                         :
SMITH, JAMES SMITH, CORY SMITH, CHRISTINA                   :
SMITH, JOSEPH HELTON, SR., *individually and on*            :
*behalf of the* ESTATE OF JOSEPH D. HELTON, JR.,            :
JESSICA CABOT, JEANNE RHEA MCMANUS,                         :
VICTOR RAY WISE, II, THEODORE LESTER,                       :
KATRINA COE, *individually and on behalf of the*            :
ESTATE OF KEITH COE, K.A.C., *a minor*, K.A.C., *a*         :
*minor*, K.A.C., *a minor*, RHONDA SMITH, MATTHEW          :
COE, SABRINA CHAPMAN, NICHOLAS                              :
BAUMHOER, JAMES KINSEY, ANGEL MAYES,                        :
*individually and on behalf of the* ESTATE OF               :
ANTONIO STIGGINS, LUKE STIGGINS, DONALD                     :
MAYES, RHONDA BEATTIE, *individually and on*                :
*behalf of the* ESTATE OF CLIFFORD BEATTIE,                 :
JAYDEAN HAMILTON, STEPHANIE KIDDER,                         :
GEORGE D. WHITE, NATALIA WHITE, KRISTIN                     :
WHITE, GEORGE J. WHITE, EDNA LUZ BURGOS,                    :
JOHN MCCULLEY, STEPHANIE MCCULLEY, T.M.,                    :
*a minor*, R.M., *a minor*, DONALD FIELD, ANGELICA          :
FIELD, SENOVIA FIELD, SELICIA FIELD,                        :
THERESA HART, WAYNE NEWBY, NATHAN                           :
NEWBY, ED ELLIOTT, VERONICA HICKMAN,                        :
DAVID EUGENE HICKMAN, and DEVON                             :
FLETCHER HICKMAN,                                           :
                                                            :
                    Plaintiffs,                             :
                                                            :
-against-                                                   :
                                                            :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,                    :
FRANSABANK SAL, MIDDLE EAST AFRICA BANK                     :
SAL, BLOM BANK SAL, BYBLOS BANK SAL,                        :
BANK AUDI SAL, BANK OF BEIRUT SAL,                          :
LEBANON AND GULF BANK SAL, BANQUE                           :
LIBANO-FRANÇAISE SAL, BANK OF BEIRUT AND                    :
THE ARAB COUNTRIES SAL, JAMMAL TRUST                        :
BANK SAL, and JOHN DOES 1-50,                               :
                                                            :
                    Defendants.                             :
----------------------------------------------------------------x

xv

## TABLE OF CONTENTS

I.    NATURE OF THE ACTION ................................................................................. 1

II.   BACKGROUND ................................................................................................... 2

III.  JURISDICTION AND VENUE ........................................................................... 7

IV.   THE DEFENDANTS ............................................................................................ 8

      A.    SOCIETE GENERALE DE BANQUE AU LIBAN SAL ("SGBL") ............ 8

      B.    FRANSABANK SAL ....................................................................... 12

      C.    MIDDLE EAST AFRICA BANK SAL ("MEAB") ............................ 15

      D.    BLOM BANK SAL ("BLOM") ........................................................ 17

      E.    BYBLOS BANK SAL ("BYBLOS") ................................................ 19

      F.    BANK AUDI SAL ............................................................................ 20

      G.    BANK OF BEIRUT SAL ................................................................. 22

      H.    LEBANON AND GULF BANK SAL ("LGB") ................................ 24

      I.    BANQUE LIBANO-FRANCAISE SAL ("BLF") ............................ 26

      J.    BANK OF BEIRUT AND THE ARAB COUNTRIES SAL ("BBAC")....... 27

      K.    JAMMAL TRUST BANK SAL ....................................................... 29

V.    ISLAMIC REVOLUTIONARY GUARD CORPS (IRGC) ............................ 31

VI.   HEZBOLLAH ..................................................................................................... 34

      A.    HEZBOLLAH'S INITIAL TERRORIST OPERATIONS AND
            ORGANIZATIONAL STRUCTURE ............................................... 34

      B.    HEZBOLLAH'S KEY LEADERS AND CURRENT
            ORGANIZATIONAL STRUCTURE ............................................... 40

            1.    HEZBOLLAH'S EMBRACE OF TERRORISM IS OPEN AND
                  PUBLIC. ............................................................................. 40

            2.    SHURA COUNCIL (MAJLIS AL-SHURA) ......................... 41

            3.    PARLIAMENTARY COUNCIL ........................................... 42

i

4.    JIHAD COUNCIL ..................................................................... 43

5.    JIHAD COUNCIL'S EXTERNAL SECURITY ORGANIZATION .. 47

6.    HEZBOLLAH'S BUSINESS AFFAIRS COMPONENT (BAC) ......... 49

7.    HEZBOLLAH'S "SOCIAL WELFARE" SECTOR – THE *DA'WA* . 99

8.    MEDIA / ENTERTAINMENT ............................................. 123

9.    AUTOMOTIVE SALES ....................................................... 127

10.   ARMS DEALING ................................................................ 129

11.   TECHNOLOGY & COMMUNICATIONS ......................... 130

12.   NARCOTICS TRAFFICKING ............................................ 131

13.   PHARMACEUTICALS AND COUNTERFEITING
       MEDICATIONS ................................................................... 135

14.   INTERNATIONAL TRADE ................................................ 135

VII.  THE IRGC DEPLOYS HEZBOLLAH SIGNATURE WEAPONS IN IRAQ ......... 137

VIII. HEZBOLLAH'S INVOLVEMENT IN TERRORISM IN IRAQ ............................. 140

IX.   HEZBOLLAH'S AND THE IRGC'S AGENTS & PROXIES IN IRAQ .................. 158

       A.    THE BADR CORPS (a/k/a BADR ORGANIZATION) ............................ 158

       B.    ASA'IB AHL AL–HAQ ("AAH" OR THE "LEAGUE OF THE
              RIGHTEOUS") ...................................................................................... 160

       C.    JAYSH AL MAHDI ("JAM" or the "MAHDI ARMY") AND THE
              PROMISED DAY BRIGADES ("PDB") ........................................ 163

       D.    KATA'IB HEZBOLLAH ("KH") ....................................................... 164

X.    DEFENDANTS ARE DEPENDENT ON UNITED STATES CORRESPONDENT
       BANK ACCOUNTS AND U.S. DOLLAR CLEARING, INCLUDING DOLLAR
       CLEARING FOR HEZBOLLAH ........................................................................ 170

XI.   DEFENDANTS' MATERIAL SUPPORT TO HEZBOLLAH ................................ 176

       A.    SOCIETE GENERALE DE BANQUE AU LIBAN, SAL .......................... 176

              1.    SGBL ACQUIRED LCB ....................................................... 176

2.      SGLB ACQUIRED LCB'S LIABILITIES ........................................... 177

3.      SGBL HAS AIDED AND ABETTED HEZBOLLAH ........................ 194

B.      FRANSABANK SAL ......................................................................... 195

C.      BLOM BANK SAL ............................................................................ 196

D.      MIDDLE EAST AFRICA BANK SAL ("MEAB") .................................... 199

E.      BYBLOS BANK SAL ........................................................................ 200

F.      BANK AUDI SAL .............................................................................. 205

G.      LEBANON AND GULF BANK ........................................................... 208

H.      BANQUE LIBANO-FRANCAISE SAL .................................................. 213

I.      BANK OF BEIRUT SAL ..................................................................... 214

J.      BANK OF BEIRUT AND THE ARAB COUNTRIES ............................... 215

K.      JAMAL TRUST BANK SAL ............................................................... 216

XII.  THE PLAINTIFFS .................................................................................. 217

1.      THE MAY 3, 2005 ATTACK – BAGHDAD ......................................... 217

2.      THE JANUARY 12, 2004 ATTACK – BAGHDAD ................................. 218

3.      THE APRIL 4, 2004 ATTACK – BAGHDAD ....................................... 219

4.      THE APRIL 9, 2004 ATTACK – BAGHDAD ....................................... 223

5.      THE JUNE 4, 2004 ATTACK – BAGHDAD ........................................ 225

6.      THE JUNE 29, 2004 ATTACK – BAGHDAD ...................................... 226

7.      THE JULY 27, 2004 ATTACK – BALAD RUZ .................................... 227

8.      THE AUGUST 5, 2004 ATTACK – NAJAF ........................................ 228

9.      THE AUGUST 6, 2004 ATTACK – NAJAF ........................................ 230

10.     THE AUGUST 15, 2004 ATTACK – NAJAF ....................................... 232

11.     THE AUGUST 16, 2004 ATTACK – SADR CITY ................................. 232

12.     THE AUGUST 18, 2004 ATTACK – SADR CITY ................................. 233

iii

13.     **THE AUGUST 25, 2004 ATTACK – NAJAF** .............................................. 234

14.     **THE AUGUST 26, 2004 ATTACK – NAJAF** .............................................. 235

15.     **THE FEBRUARY 10, 2005 ATTACK** ...................................................... 236

16.     **THE JUNE 8, 2005 ATTACK – BAGHDAD** .............................................. 237

17.     **THE JUNE 27, 2005 ATTACK – BAGHDAD** ............................................ 238

18.     **THE JULY 3, 2005 ATTACK – BAGHDAD** .............................................. 239

19.     **THE JULY 27, 2005 ATTACK** ............................................................... 240

20.     **THE AUGUST 2, 2005 ATTACK – BASRA** ............................................. 241

21.     **THE AUGUST 7, 2005 ATTACK – BAGHDAD** ........................................ 242

22.     **THE SEPTEMBER 2, 2005 ATTACK – BAGHDAD** ................................. 243

23.     **THE SEPTEMBER 6, 2005 ATTACK – BAGHDAD** ................................. 246

24.     **THE SEPTEMBER 26, 2005 ATTACK – BAGHDAD** ............................... 247

25.     **THE SEPTEMBER 28, 2005 ATTACK – UMM QASR** ............................ 248

26.     **THE OCTOBER 6, 2005 ATTACK – BAGHDAD** .................................... 250

27.     **THE DECEMBER 8, 2005 ATTACK – BAGHDAD** .................................. 255

28.     **THE DECEMBER 25, 2005 ATTACK – BAGHDAD** ................................ 258

29.     **THE JANUARY 5, 2006 ATTACK – NAJAF** .......................................... 259

30.     **THE JANUARY 5, 2006 ATTACK – BAGHDAD** .................................... 262

31.     **THE JANUARY 18, 2006 ATTACK – BASRA** ........................................ 263

32.     **THE FEBRUARY 17, 2006 ATTACK – BAGHDAD** ................................ 263

33.     **THE FEBRUARY 18, 2006 ATTACK – BAGHDAD** ................................ 265

34.     **THE FEBRUARY 20, 2006 ATTACK –HINDIYAH** ................................ 266

35.     **THE FEBRUARY 20, 2006 ATTACK – BAGHDAD** ................................ 267

36.     **THE FEBRUARY 26, 2006 ATTACK – BAGHDAD** ................................ 269

37.     **THE MARCH 13, 2006 ATTACK – RUSTAMIYAH** ................................ 271

iv

**38.**     **THE MARCH 26, 2006 ATTACK – BAGHDAD** ....................................... 271

**39.**     **THE APRIL 1, 2006 ATTACK – BAGHDAD** ........................................... 272

**40.**     **THE APRIL 12, 2006 ATTACK – MISIAB** ............................................. 274

**41.**     **THE APRIL 16, 2006 ATTACK – BAWB ASH-SHAM** ........................... 275

**42.**     **THE APRIL 25, 2006 ATTACK – SADR CITY** ...................................... 277

**43.**     **THE APRIL 28, 2006 ATTACK – BAGHDAD** ....................................... 281

**44.**     **THE MAY 2, 2006 ATTACK – BAGHDAD** ............................................ 281

**45.**     **THE MAY 3, 2006 ATTACK – NASIRIYAH** ......................................... 285

**46.**     **THE MAY 5, 2006 ATTACK – BAGHDAD** ............................................ 288

**47.**     **THE MAY 6, 2006 ATTACK – DIWANIYAH** ....................................... 291

**48.**     **THE MAY 14, 2006 ATTACK – BAGHDAD** .......................................... 292

**49.**     **THE MAY 21, 2006 ATTACK – MOSUL** ............................................... 293

**50.**     **THE MAY 25, 2006 ATTACK – BAGHDAD** .......................................... 294

**51.**     **THE JUNE 5, 2006 ATTACK – BAGHDAD** .......................................... 296

**52.**     **THE JUNE 8, 2006 ATTACK – AL KUT** ............................................... 302

**53.**     **THE JUNE 9, 2006 ATTACK – DIWANIYAH** ...................................... 303

**54.**     **THE JUNE 10, 2006 ATTACK – RUSTAMIYAH** ................................. 304

**55.**     **THE JULY 11, 2006 ATTACK – KARBALA** ........................................ 305

**56.**     **THE JULY 15, 2006 ATTACK – BAGHDAD** ........................................ 306

**57.**     **THE JULY 17, 2006 ATTACK – BAGHDAD** ........................................ 307

**58.**     **THE JULY 22, 2006 ATTACK – SADR CITY** ...................................... 308

**59.**     **THE JULY 25, 2006 ATTACK – BAGHDAD** ........................................ 309

**60.**     **THE AUGUST 26, 2008 ATTACK – SADR CITY** ................................ 310

**61.**     **THE AUGUST 26, 2006 ATTACK – JISR DIYALA** ................................ 311

**62.**     **THE SEPTEMBER 3, 2006 ATTACK – BAGHDAD** ................................ 312

**63.**   **THE SEPTEMBER 20, 2006 ATTACK – BAGHDAD** ............................... 313

**64.**   **THE SEPTEMBER 30, 2006 ATTACK – BAGHDAD** ............................... 314

**65.**   **THE OCTOBER 4, 2006 ATTACK – BAGHDAD** ..................................... 315

**66.**   **THE OCTOBER 13, 2006 ATTACK – BAGHDAD** ................................... 316

**67.**   **THE OCTOBER 17, 2006 ATTACK – BAQUBAH** ................................... 317

**68.**   **THE OCTOBER 20, 2006 ATTACK – BAGHDAD** ................................... 319

**69.**   **THE OCTOBER 22, 2006 ATTACK – BAGHDAD** ................................... 320

**70.**   **THE OCTOBER 22, 2006 ATTACK – BAGHDAD** ................................... 321

**71.**   **THE OCTOBER 22, 2006 ATTACK – BAGHDAD** ................................... 322

**72.**   **THE OCTOBER 22, 2006 ATTACK – SADR CITY** ................................ 326

**73.**   **THE OCTOBER 23, 2006 ATTACK – BAGHDAD** ................................... 327

**74.**   **THE OCTOBER 2006 ATTACK – BAGHDAD** ......................................... 328

**75.**   **THE NOVEMBER 2, 2006 ATTACK – BAGHDAD** ................................. 329

**76.**   **THE NOVEMBER 9, 2006 ATTACK – BAGHDAD** ................................. 333

**77.**   **THE NOVEMBER 13, 2006 ATTACK – BAGHDAD** ............................... 334

**78.**   **THE NOVEMBER 16, 2006 ATTACK – BASRA** .................................... 336

**79.**   **THE NOVEMBER 26, 2006 ATTACK – BAGHDAD** ............................... 340

**80.**   **THE DECEMBER 3, 2006 ATTACK – BAGHDAD** ................................. 341

**81.**   **THE DECEMBER 4, 2006 ATTACK – BAGHDAD** ................................. 342

**82.**   **THE DECEMBER 10, 2006 ATTACK – BAGHDAD** ............................... 343

**83.**   **THE DECEMBER 20, 2006 ATTACK – BAGHDAD** ............................... 344

**84.**   **THE DECEMBER 22, 2006 ATTACK – BAGHDAD** ............................... 346

**85.**   **THE DECEMBER 27, 2006 ATTACK – BAGHDAD** ............................... 347

**86.**   **THE DECEMBER 30, 2006 ATTACK – BAGHDAD** ............................... 348

**87.**   **THE DECEMBER 31, 2006 ATTACK – BAGHDAD** ............................... 348

**88.**   **THE DECEMBER 31, 2006 ATTACK – BAQUBAH** ................................. 350

**89.**   **THE JANUARY 14, 2007 ATTACK – BAGHDAD** ..................................... 350

**90.**   **THE JANUARY 18, 2007 ATTACK – BAGHDAD** ..................................... 351

**91.**   **THE JANUARY 20, 2007 ATTACK – KARBALA** ..................................... 352

**92.**   **THE JANUARY 22, 2007 ATTACK – BAGHDAD** ..................................... 366

**93.**   **THE JANUARY 25, 2007 ATTACK – BAGHDAD** ..................................... 367

**94.**   **THE JANUARY 27, 2007 ATTACK – BAGHDAD** ..................................... 369

**95.**   **THE JANUARY 27, 2007 ATTACK – TAJI** ............................................... 370

**96.**   **THE FEBRUARY 1, 2007 ATTACK – BAGHDAD** ................................... 371

**97.**   **THE FEBRUARY 2, 2007 ATTACK – MAHMUDIYAH** .......................... 372

**98.**   **THE FEBRUARY 26, 2007 ATTACK – DIWANIYAH** ............................ 373

**99.**   **THE MARCH 15, 2007 ATTACK – BAQUBAH** ....................................... 374

**100.**   **THE MARCH 20, 2007 ATTACK – BAGHDAD** ....................................... 375

**101.**   **THE MARCH 23, 2007 ATTACK – NASIRIYAH** .................................... 376

**102.**   **THE MARCH 27, 2007 ATTACK – BAGHDAD** ....................................... 377

**103.**   **THE MARCH 31, 2007 ATTACK – DIWANIYAH** ................................... 379

**104.**   **THE APRIL 4, 2007 ATTACK – NASIRIYAH** ........................................ 379

**105.**   **THE APRIL 6, 2007 ATTACK – BAGHDAD** .......................................... 381

**106.**   **THE APRIL 6, 2007 ATTACK – SADR CITY** ......................................... 382

**107.**   **THE APRIL 7, 2007 ATTACK – BAGHDAD** .......................................... 383

**108.**   **THE APRIL 9, 2007 ATTACK – BAGHDAD** .......................................... 383

**109.**   **THE APRIL 13, 2007 ATTACK – BAGHDAD** ........................................ 385

**110.**   **THE APRIL 15, 2007 ATTACK – BAGHDAD** ........................................ 386

**111.**   **THE APRIL 16, 2007 ATTACK – BAGHDAD** ........................................ 387

**112.**   **THE APRIL 28, 2007 ATTACK – BAGHDAD** ........................................ 389

113.    THE APRIL 28, 2007 ATTACK – SALMAN PAK ..................................... 389

114.    THE APRIL 29, 2007 ATTACK – BAGHDAD ........................................... 390

115.    THE MAY 3, 2007 ATTACK – BAGHDAD ............................................... 392

116.    THE MAY 3, 2007 ATTACK – MUSAYYIB .............................................. 393

117.    THE MAY 5, 2007 ATTACK – KAMALIYAH ........................................... 394

118.    THE MAY 6, 2007 ATTACK – BAGHDAD ............................................... 394

119.    THE MAY 6, 2007 ATTACK – BAGHDAD ............................................... 396

120.    THE MAY 8, 2007 ATTACK – SALMAN PAK ......................................... 397

121.    THE MAY 8, 2007 ATTACK – BAGHDAD ............................................... 398

122.    THE MAY 9, 2007 ATTACK – AL-HILLAH .............................................. 400

123.    THE MAY 11, 2007 ATTACK – AL ISKANDARIYAH ............................ 400

124.    THE MAY 14, 2007 ATTACK – BAGHDAD ............................................. 401

125.    THE MAY 18, 2007 ATTACK – BAGHDAD ............................................. 402

126.    THE MAY 29, 2007 ATTACK – SADR CITY ........................................... 403

127.    THE JUNE 2, 2007 ATTACK – BAGHDAD .............................................. 403

128.    THE JUNE 5, 2007 ATTACK – KIRKUK .................................................. 406

129.    THE JUNE 6, 2007 ATTACK – BAGHDAD .............................................. 407

130.    THE JUNE 8, 2007 ATTACK – BAGHDAD .............................................. 408

131.    THE JUNE 10, 2007 ATTACK – BAGHDAD ............................................ 409

132.    THE JUNE 11, 2007 ATTACK – BAGHDAD ............................................ 412

133.    THE JUNE 13, 2007 ATTACK - SCANIA ................................................. 413

134.    THE JUNE 14, 2007 ATTACK – SCANIA ................................................. 414

135.    THE JUNE 17, 2007 ATTACK – BAGHDAD ............................................ 415

136.    THE JUNE 21, 2007 ATTACK – BAGHDAD ............................................ 418

137.    THE JUNE 23, 2007 ATTACK – BAGHDAD ............................................ 419

138.  THE JUNE 25, 2007 ATTACK – BAGHDAD ............................................. 420

139.  THE JUNE 28, 2007 ATTACK – BAGHDAD ............................................. 422

140.  THE JUNE 29, 2007 ATTACK – BAGHDAD ............................................. 424

141.  THE JUNE 30, 2007 ATTACK – BAGHDAD ............................................. 424

142.  THE JULY 5, 2007 ATTACK – BAGHDAD ............................................... 425

143.  THE JULY 6, 2007 ATTACK – BAGHDAD ............................................... 426

144.  THE JULY 6, 2007 ATTACK – BAGHDAD ............................................... 427

145.  THE JULY 6, 2007 ATTACK – BAGHDAD ............................................... 429

146.  THE JULY 7, 2007 ATTACK – BAGHDAD ............................................... 430

147.  THE JULY 11, 2007 ATTACK – BAGHDAD ............................................. 431

148.  THE JULY 17, 2007 ATTACK – BAGHDAD ............................................. 431

149.  THE JULY 17, 2007 ATTACK – SADR CITY ........................................... 433

150.  THE JULY 17, 2007 ATTACK – BAGHDAD ............................................. 435

151.  THE JULY 19, 2007 ATTACK – HUSSEINYAH ...................................... 436

152.  THE JULY 23, 2007 ATTACK – BAGHDAD ............................................. 437

153.  THE JULY 24, 2007 ATTACK – BAGHDAD ............................................. 438

154.  THE JULY 24, 2007 ATTACK – UMM QASR ......................................... 439

155.  THE JULY 31, 2007 ATTACK – BAGHDAD ............................................. 440

156.  THE AUGUST 6, 2007 ATTACK – BAGHDAD ....................................... 442

157.  THE AUGUST 14, 2007 ATTACK – BAGHDAD ..................................... 443

158.  THE AUGUST 17, 2007 ATTACK – BASRA ........................................... 444

159.  THE AUGUST 23, 2007 ATTACK – BAGHDAD ..................................... 446

160.  THE AUGUST 23, 2007 ATTACK – AZIZIYAH ..................................... 446

161.  THE SEPTEMBER 2, 2007 ATTACK – BAGHDAD ................................ 449

162.  THE SEPTEMBER 2, 2007 – RUSTAMIYAH ......................................... 451

163.     THE SEPTEMBER 4, 2007 ATTACK – BAGHDAD ................................. 452

164.     THE SEPTEMBER 12, 2007 ATTACK- BAGHDAD ................................. 454

165.     THE SEPTEMBER 22, 2007 ATTACK – RUSTAMIYAH ....................... 455

166.     THE SEPTEMBER 26, 2007 ATTACK – BAGHDAD ............................. 456

167.     THE SEPTEMBER 29, 2007 ATTACK – BAGHDAD ............................. 458

168.     THE SEPTEMBER 30, 2007 ATTACK – BAGHDAD ............................. 460

169.     THE OCTOBER 18, 2007 ATTACK – BAGHDAD ................................. 461

170.     THE OCTOBER 21, 2007 ATTACK – ISKANDARIYAH ....................... 462

171.     THE OCTOBER 29, 2007 ATTACK – UMM QASR ................................ 462

172.     THE NOVEMBER 7, 2007 ATTACK – BAGHDAD ................................. 463

173.     THE NOVEMBER 14, 2007 ATTACK – BAGHDAD ............................. 464

174.     THE NOVEMBER 26, 2007 ATTACK – AZIZIYAH ................................ 465

175.     THE DECEMBER 1, 2007 ATTACK – BAGDAD ................................. 466

176.     THE DECEMBER 9, 2007 ATTACK – AZ ZUBAYDIYAH ..................... 467

177.     THE JANUARY 6, 2008 ATTACK – BAGHDAD .................................... 471

178.     THE JANUARY 30, 2008 ATTACK – BAGHDAD ................................ 474

179.     THE FEBRUARY 19, 2008 ATTACK – BAGHDAD ................................ 475

180.     THE FEBRUARY 19, 2008 ATTACK – BAGHDAD ................................ 478

181.     THE MARCH 11, 2008 ATTACK – BABIL PROVINCE ......................... 479

182.     THE MARCH 12, 2008 ATTACK – CAMP ADDER ................................ 479

183.     THE MARCH 14, 2008 ATTACK – MUSAYYIB ................................. 482

184.     THE MARCH 17, 2008 ATTACK – BAGHDAD ....................................... 482

185.     THE MARCH 17, 2008 ATTACK – BAGHDAD ....................................... 484

186.     THE MARCH 23, 2008 ATTACK – BAGHDAD ....................................... 485

187.     THE MARCH 23, 2008 ATTACK – BAGHDAD ....................................... 496

188.   THE MARCH 27, 2008 ATTACK – SADR CITY ....................................... 496

189.   THE MARCH 29, 2008 ATTACK – BAGHDAD ....................................... 499

190.   THE MARCH 29, 2008 ATTACK – BAGHDAD ....................................... 499

191.   THE MARCH 30, 2008 ATTACK – BAGHDAD ....................................... 500

192.   THE MARCH 30, 2008 ATTACK – BAGHDAD ....................................... 501

193.   THE MARCH 31, 2008 ATTACK – BAGHDAD ....................................... 502

194.   THE APRIL 3, 2008 ATTACK – SADR CITY ....................................... 503

195.   THE APRIL 6, 2008 ATTACK – BAGHDAD ....................................... 504

196.   THE APRIL 6, 2008 ATTACK – BAGHDAD ....................................... 505

197.   THE APRIL 7, 2008 ATTACK – BAGHDAD ....................................... 507

198.   THE APRIL 7, 2008 ATTACK – BAGHDAD ....................................... 508

199.   THE APRIL 8, 2008 ATTACK – KHARGULIAH ....................................... 509

200.   THE APRIL 9, 2008 ATTACK – SADR CITY ....................................... 510

201.   THE APRIL 12, 2008 ATTACK ....................................... 511

202.   THE APRIL 12, 2008 ATTACK – BAGHDAD ....................................... 512

203.   THE APRIL 17, 2008 ATTACK – SADR CITY ....................................... 513

204.   THE APRIL 21, 2008 ATTACK – BASRA ....................................... 514

205.   THE APRIL 21, 2008 ATTACK – SADR CITY ....................................... 515

206.   THE APRIL 21, 2008 ATTACK – BAGHDAD ....................................... 516

207.   THE APRIL 21, 2008 ATTACK – SADR CITY ....................................... 517

208.   THE APRIL 28, 2008 ATTACK – BAGHDAD ....................................... 518

209.   THE APRIL 28, 2008 ATTACK – SADR CITY ....................................... 520

210.   THE APRIL 28, 2008 ATTACK – SADR CITY ....................................... 521

211.   THE APRIL 29, 2008 ATTACK – BAGHDAD ....................................... 521

212.   THE APRIL 29, 2008 ATTACK – SADR CITY ....................................... 523

213. THE APRIL 30, 2008 ATTACK – BAGHDAD .......................................... 523

214. THE MAY 1, 2008 ATTACK – SADR CITY ................................................ 525

215. THE MAY 2, 2008 ATTACK – BAGHDAD ................................................ 525

216. THE MAY 9, 2008 ATTACK – BAGHDAD ................................................ 526

217. THE MAY 9, 2008 ATTACK – SADR CITY ................................................ 528

218. THE MAY 9, 2008 ATTACK – SADR CITY ................................................ 528

219. THE MAY 11, 2008 ATTACK – BAGHDAD .............................................. 529

220. THE MAY 11, 2008 ATTACK – BALAD ................................................... 530

221. THE MAY 25, 2008 ATTACK – AN-NAJAF ............................................ 531

222. THE JUNE 7, 2008 ATTACK – BAGHDAD .............................................. 532

223. THE JUNE 24, 2008 ATTACK - BAGHDAD .............................................. 533

224. THE AUGUST 4, 2008 ATTACK – BAGHDAD .......................................... 535

225. THE AUGUST 13, 2008 ATTACK – BAGHDAD ........................................ 536

226. THE AUGUST 26, 2008 ATTACK – SADR CITY ....................................... 537

227. THE SEPTEMBER 4, 2008 ATTACK – BAGHDAD ................................. 539

228. THE OCTOBER 5, 2008 ATTACK – MUSAYYIB ..................................... 541

229. THE OCTOBER 16, 2008 ATTACK – BAQUBAH .................................... 541

230. THE DECEMBER 28, 2008 ATTACK – SADR CITY .............................. 542

231. THE DECEMBER 28, 2008 ATTACK – SADR CITY .............................. 543

232. THE JANUARY 10, 2009 ATTACK – BAGHDAD .................................... 544

233. THE JANUARY 18, 2009 ATTACK – BAGHDAD .................................... 548

234. THE FEBRUARY 26, 2009 ATTACK – ADHAMIYAH ........................... 549

235. THE APRIL 22, 2009 ATTACK – BAGHDAD .......................................... 550

236. THE MAY 16, 2009 ATTACK – BASRA ................................................... 551

237. THE MAY 17, 2009 ATTACK – BAGHDAD ............................................ 551

**238.** **THE JUNE 14, 2009 ATTACK – BALAD** ..................................................... 556

**239.** **THE JUNE 28, 2009 ATTACK – BAGHDAD** .............................................. 557

**240.** **THE JULY 16, 2009 ATTACK – BASRA** ..................................................... 558

**241.** **THE SEPTEMBER 8, 2009 ATTACK – TIKRIT** ........................................ 558

**242.** **THE SEPTEMBER 8, 2009 ATTACK – BAGHDAD** ............................... 561

**243.** **THE JANUARY 18, 2010 ATTACK – BAGHDAD** ................................... 563

**244.** **THE APRIL 27, 2010 ATTACK - KHALIS** ............................................... 563

**245.** **THE MARCH 10, 2011 ATTACK – BAGHDAD** ....................................... 566

**246.** **THE APRIL 22, 2011 ATTACK – NUMANIYAH** ................................... 566

**247.** **THE MAY 22, 2011 ATTACK – BAGHDAD** ............................................ 567

**248.** **THE JUNE 6, 2011 ATTACK – BAGHDAD** .............................................. 568

**249.** **THE JUNE 29, 2011 ATTACK – WASIT PROVINCE** ............................ 569

**250.** **THE JULY 7, 2011 ATTACK BAGHDAD** ................................................. 573

**251.** **THE JULY 15, 2011 ATTACK – BASRA** ................................................... 574

**252.** **THE NOVEMBER 14, 2011 ATTACK – BAGHDAD** .............................. 575

**CLAIMS FOR RELIEF** ............................................................................................ 576

**FIRST CLAIM FOR RELIEF** ................................................................................. 576

**SECOND CLAIM FOR RELIEF** ............................................................................ 577

**THIRD CLAIM FOR RELIEF** ............................................................................... 579

**FOURTH CLAIM FOR RELIEF** ........................................................................... 580

**PRAYER FOR RELIEF** .......................................................................................... 581

Plaintiffs, by their attorneys, allege the following:

## I.    NATURE OF THE ACTION

1.     This is a civil action brought under 18 U.S.C. §§ 2333(a) and 2333(d) of the Anti-Terrorism Act ("ATA") by American nationals who were injured, and by the estates and families of American nationals who were killed or injured, by reason of acts of international terrorism in Iraq between 2004 and 2011 that were committed, planned or authorized by the United States-designated Foreign Terrorist Organization ("FTO") Hezbollah[1] in coordination with Iran's Islamic Revolutionary Guard Corps ("IRGC").

2.     In 1997, the United States designated Hezbollah as an FTO (as that term is defined in 8 U.S.C. § 1189 of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")). Hezbollah has remained continuously designated as an FTO since that time.

3.     Defendants are Lebanese commercial banks whose conduct involved violent acts and acts dangerous to human life that violated 18 U.S.C. § 2339B when they knowingly provided material support to FTO Hezbollah in the form of financial and banking services, including, but not limited to, access to the United States financial system through their respective correspondent banking accounts in New York.

4.     Defendants aided and abetted Hezbollah in violation of 18 U.S.C. § 2333(d)(2) by knowingly providing substantial assistance to Hezbollah in the form of financial services and resources, including, but not limited to, access to the United States financial system through their respective correspondent banking accounts in New York.

5.     Defendants conspired with Hezbollah in violation of 18 U.S.C. § 2333(d)(2) by agreeing to provide Hezbollah with financial services and resources, including, but not limited to,

---

[1]     Hezbollah is transliterated in a variety of ways. The U.S. Government prefers the spelling "Hizballah," but for the sake of consistency, all spellings in the Complaint use the more common iteration, "Hezbollah."

access to the U.S. financial system through their respective correspondent bank accounts in New York while actively concealing this information from U.S. correspondent banks and U.S. regulatory, law enforcement, and intelligence agencies.

6.      Defendants were (and are) aware of their vital role in assisting Hezbollah in its illicit activities, including money laundering (including both cross-border electronic funds transfers and physical bulk-transfers of banknotes), sanctions evasion, arms export violations, drug trafficking, kidnapping for ransom, and terrorist financing.

7.      Defendants were (and are) aware that by assisting Hezbollah, they were (and are) playing a crucial role in Hezbollah's violent and life-endangering activities, including the acts of international terrorism that injured Plaintiffs in Iraq.

## II.    **BACKGROUND**

8.      Most of what is publicly known about Hezbollah, its exploitation of the the U.S. financial system, and its collaboration with Lebanese banks comes from two principal sources: (a) U.S. Department of the U.S. Department of the Treasury designations of Hezbollah operatives and commercial enterprises; and (b) the publicly available information concenring what became known as Project Cassandra, which originated in the Drug Enforcement Administration's ("DEA") investigation of Hezbollah's development into an international crime syndicate that collected as much as $1 billion dollars a year from narcotics and weapons trafficking, money laundering, and other criminal activities across Europe, Africa, and the Americas.

9.      The DEA came to learn that Hezbollah, working closely with Iran's intelligence services and its IRGC, had carefully cultivated clandestine networks among Lebanese expatriate communities around the world to create a web of businesses that acted as front companies for Hezbollah's and the IRGC's black-market trading and money laundering activities.

10.     DEA agents tracked Hezbollah's flow of weapons, drugs, ammunition, explosives, military-grade spare parts (including parts for Iran's illicit nuclear and ballistic missile programs), and U.S. dollar-denominated funds along the same Hezbollah front company routes that carried shipments of frozen chicken, raw materials, used cars, cigarettes, and consumer electronics.

11.     Following Hezbollah's July 2006 conflict with Israel (which devastated parts of southern Lebanon and Hezbollah-controlled neighborhoods south of Beirut), Hezbollah further intensified its efforts to raise funds (mostly denominated in U.S. dollars) in order to fund its post-conflict rebuilding efforts in the Shi'a-dominated areas of Lebanon.

12.     Hezollah's urgent need for cash led the trans-national terrorist organization to join the global cocaine trade on a large-scale basis.

13.     As DEA agents working on Project Cassandra would learn, Hezbollah ran these networks through its Business Affairs Component ("BAC"), a special financial unit established by the late Imad Mughniyah, Hezbollah's most senior terrorist commander. As discussed in detail below, BAC oversees Hezbollah's world-wide criminal and commercial enterprises.

14.     After Mr. Mughniyah was killed in 2008, leadership of Hezbollah's BAC was assumed by both Adham Tabaja, a prominent Hezbollah financier and real estate developer in Lebanon, and Abdallah Safieddine (a/k/a "Safi al-Din"). One of Safieddine's brothers sits on Hezbollah's governing council; the other sits on the board of various companies controlled by Hezbollah.

15.     The DEA ultimately concluded that Abdallah Safieddine was the key connection between Hezbollah's BAC and Iran's IRGC.

16.     As Project Cassandra proceeded, multiple DEA narcotics investigations also linked Mr. Safieddine to international drug smuggling and money laundering networks, and especially to

Lebanese operative Ayman Joumaa, who served as the key contact between Hezbollah and Mexico's murderous Los Zetas drug cartel.[2]

17.    The DEA investigations of Mr. Safieddine and Mr. Joumma eventually intersected with a separate effort by U.S. Special Operations Command ("SOCOM") that was tracking the source of funds used by Iranian proxies that were deploying sophisticated weapons against U.S. armored vehicles in Iraq, including, among other weapons, IRGC-supplied (and Hezbollah-designed) Explosively Formed Penetrators ("EFPs") (a highly effective anti-armor weapon, discussed in detail below).

18.    When phone numbers connected to the IRGC network supplying EFPs to Iranian and Hezbollah proxies in Iraq crossed with phone numbers intercepted in the DEA's Colombia investigation of Mr. Joumma's network, Project Cassandra and SOCOM investigative teams were able to tie Mr. Safieddine's EFP network in Iran to Hezbollah's narcotics trafficking and money laundering network operating in Colombia and the Tri-Border Area ("TBA") (covering the joint borders between Paraguay, Brazil, and Agentina).

19.    Ultimately, the U.S. Intelligence Community's analysis of thousands of hours of intercepted Arabic phone conversations from Colombia, among other locations, painted a picture of Abdallah Safiedinne as the central figure in Hezbollah's (and the IRGC's) global financial network.

20.    According to then DEA Acting Deputy Administrator Jack Riley, "[t]hese drug trafficking and money laundering schemes utilized by the Business Affairs Component provide a revenue and weapons stream for an international terrorist organization responsible for devastating

---

[2]    See *U.S. Department of the Treasury Targets Major Money Laundering Network Linked to Drug Trafficker Ayman Joumaa and a Key Hizballah Supporter in South America*, U.S. Department of U.S. Department of the Treasury (June 27, 2012), online at https://www.U.S. Department of the Treasury.gov/press-center/press-releases/Pages/tg1624.aspx (visited Dec 26, 2018).

4

terror attacks around the world."

21.      Armed with a better understanding of Hezbollah's BAC network, the Project Cassandra team soon went to work targeting LEBANESE CANADIAN BANK SAL ("LCB") by gathering evidence showing how Ayman Joumaa's narcotics network was laundering an estimated $200 million a month in U.S. dollar-denominated funds through LCB and various Lebanese money exchange houses, including Ellissa Exchange in Beirut.[3]

22.      A large portion of Hezbollah's laundered funds was then transferred to used-car dealerships in the United States to buy and ship thousands of vehicles to West Africa, where Hezbollah's BAC network operated hundreds of businesses.

23.      Mr. Safieddine, at the center of this BAC network, provided Hezbollah and the IRGC with access to U.S. dollar-clearing through LCB.

24.      In 2011, the work of the Project Cassandra team resulted in the U.S. Department of Justice ("DOJ") filing a civil action against LCB. Later DOJ seized $102 million U.S. dollars from the bank.

25.      In February 2010, the U.S. Department of the U.S. Department of the Treasury, pursuant to 31 U.S.C. § 5318A, identified LCB as "a financial institution of primary money laundering concern."

26.      This action, combined with DOJ's civil suit indirectly forced LCB sell itself to Defendant SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN, SAL ("SGBL") and close its doors.

---

[3]      See *U.S. Department of the Treasury Targets Major Lebanese-Based Drug Trafficking and Money Laundering Network*, U.S. Department of U.S. Department of the Treasury (Jan. 26, 2011), online at https://www.U.S. Department of the Treasury.gov/press-center/press-releases/Pages/ tg1035.aspx (visited Dec. 26, 2018).

27.     No criminal charges were ever filed against LCB or the money exchange houses that worked with LCB to launder hundreds of millions of U.S. dollars through the United States.[4]

28.     However, the court filings from DOJ's civil action and the U.S. Department of the U.S. Department of the Treasury's regulatory action did reveal several key facts beyond the criminal wrongdoing of LCB and its management, including, among others:

> (a) The vast amounts of U.S. dollar-denominated funds from Hezbollah were secretly flowing into the Lebanese banking system through the willful participation of LCB;
>
> (b) The close ties and financial connections between Hezbollah's BAC and its social welfare institutions;
>
> (c) The vast amounts of cash imported by those Hezbollah social welfare institutions;
>
> (d) Hezbollah's (and the IRGC's) dependence on Lebanese commercial banks to provide it access to the U.S. financial system to launder drug money (in USD) and clear U.S. dollar-denominated electronic funds transfers; and
>
> (e) The intersection between Hezbollah's BAC network, narcotics trafficking and terrorist operations, including terrorist attacks carried out in Iraq.

29.     While the U.S. Department of the U.S. Department of the Treasury has, in recent years, stepped up its designations of components of the BAC network (for example, designating Messrs. Safieddine, Tabaja and Joumaa), it never prosecuted LCB or its management, or ever pursued either civil or criminal actions against any of the dozens of Lebanese banks that have been complicit in aiding and abetting Hezbollah's growth into the preeminent transnational terrorist organization of the twenty-first century.

---

[4]     Ayman Joumaa was indicted in November 2011.

30. This Action attempts to identify and highlight an integral part of the BAC network and Hezbollah's "financial angels" that have midwifed its birth into a truly global terrorist financial empire.

31. That global financial empire, in turn, sustains Hezbollah's global terrorist operations, including the FTO's training camps, intelligence operations, procurement supply-chains, and research and development of various weapons systems that allowed it to play a central role in Iran's efforts to maim and murder Americans in Iraq and drive the United States out of Iraq.

### III. JURISDICTION AND VENUE

32. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 2333(a), § 2333(d) and 18 U.S.C. § 2338 as a civil action brought by citizens of the United States who have been injured by reason of acts of international terrorism, and/or their estates, survivors, or heirs.

33. Venue is proper in this district pursuant to 18 U.S.C. § 2334(a) and 28 U.S.C. §§ 1391(b) and 1391(d).

34. Defendants are each subject to personal jurisdiction in New York pursuant to 18 U.S.C. § 2334(a), CPLR § 302, and Fed. R. Civ. P. 4(k)(1)-(2).

35. As set forth below, Defendants purposefully and deliberately used their correspondent accounts with U.S. financial institutions in New York over a long period of time to provide financial services to Hezbollah on a recurring basis, including facilitating the transfer of hundreds of millions of U.S. dollars through the United States on Hezbollah's behalf and for Hezbollah's benefit.

IV.     **THE DEFENDANTS**

A.     **SOCIETE GENERALE DE BANQUE AU LIBAN SAL ("SGBL")**

36.     Defendant SOCIETE GENERALE DE BANQUE AU LIBAN SAL is a private joint stock company with limited liability (*société anonyme libanaise*), incorporated in 1953. SGBL was registered under number "3696" with the Commercial Registry of Beirut and under number "19" on the list of banks licensed by Banque du Liban, the Central Bank of Lebanon.

37.     SGBL's headquarters is located at Saloumeh Square, Sin El Fil, Beirut, Lebanon.

38.     According to SGBL's 2017 annual report, the bank ended the year with assets valued at over $21 billion U.S. dollars; operated 70 branches across Lebanon; and employed 2,161 people in Lebanon, Jordan, and Cyprus.

39.     Antoun N. Sehnaoui is SGBL's Chairman and its majority shareholder (51.65 percent of the bank's common shares).

40.     SGBL participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

41.     SGBL is the Lebanese subsidiary of SOCIETE GENERALE SA ("SOCGEN"), one of the largest bank-holding companies in France.

42.     According to SOCGEN's 2017 annual report, the company owns 16.79 percent of SGBL's common shares.

43.     SOCGEN maintains a branch in New York, New York ("SOCGEN–New York"). SOCGEN–New York's primary business activity is correspondent banking[5] (including, among

---

[5]     Correspondent banking is an essential component of the global financial system, especially for cross-border electronic funds transfers. Banks establish and maintain correspondent banking relationships to access financial

8

other things, processing Eurodollar[6] transactions through the U.S. financial system and managing U.S. dollar-denominated correspondent accounts).

44.     SOCGEN is a founding member of the Wolfsburg Group, an association of thirteen global banks, formed in 2000, that develops "frameworks and guidance for the management of financial crime risks, particularly with respect to Know Your Customer, Anti-Money Laundering and Counter Terrorist Financing policies."

45.     SGBL's Board of Directors includes an Anti-Money Laundering/Counter-Financing of Terrorism ("AML/CFT") Committee that purports to assist SGBL's Board with carrying out its "supervisory role with respect to fighting money laundering and terrorist financing and understanding the related risks."

46.     In coordination with SOCGEN, SGBL purports to utilize the following technical capabilities for complying with various AML/CFT requirements from, among others, the Central Bank of Lebanon, European Union ("EU"), United Nations ("UN"), Financial Action Task Force ("FATF"), and the United States Department of the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC"):

> Accuity's "Fircosoft" sanctions watchlist filtering software;
> Thomson Reuters's "World-Check" financial crime risk-screening database; and
> FICO TONBELLER's "Siron AML" money-laundering detection and analytics software.

---

services in different jurisdictions and provide international payment services for their customers. However, correspondent banking is also a major vehicle for financial crime, including, money laundering and terror financing.

[6]     Eurodollar refers to a multinational bank's unsecured time-deposit liability (chose in action), denominated in the U.S. dollar unit of account and maintained by credit and debit book-entries, but not subject to U.S. banking regulations. The clearing of Eurodollar electronic funds transfers occurs primarily through a bank-owned clearinghouse in New York; based on payment orders issued by correspondent banks and transmitted cross-border through a bank-owned secure messaging service. The settlement of Eurodollar electronic funds transfers occurs *only* in New York, across the balance sheet of the Federal Reserve Bank of New York ("FRB–New York"), acting in its role as the U.S. Central Bank and "lender of last resort" for all Eurodollar deposits globally.

47.     SGBL maintains a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

>    **From 2003 to 2011:**
>    The Bank of New York Mellon ("BNY–New York"),
>    account number 8033216603;
>
>    JP Morgan Chase Bank NA ("JPM–New York"),
>    account number 00155161;
>
>    SOCGEN–New York, account number 00150347; and
>
>    **From 2004 to 2008:**
>
>    American Express Bank Ltd. ("AMEX–New York").[7]

48.     SGBL's Eurodollar clearing account at CHIPS–New York is identified by Universal Identifier ("UID") number "001079."

49.     According to the Society for Worldwide Interbank Financial Telecommunications SCRL ("SWIFT–Belgium"),[8] SGBL's secure financial messaging account on SWIFT–Belgium's network ("SWIFT–Net")[9] is identified by Bank Identifier Code ("BIC") routing address "SGLILBBX".

---

[7]     AMERICAN EXPRESS BANK LTD was acquired by STANDARD CHARTERED BANK in 2008.

[8]     SWIFT–Belgium, founded in 1973, is a limited-purpose financial institution organized under Belgian law as a limited-liability cooperative society (*société coopérative à responsabilité limitée*). Member commercial banks own and control SWIFT–Belgium. An oversight committee comprising representatives from the Group of Ten ("G–10") central banks oversees SWIFT–Belgium; including representatives from, among others, the Federal Reserve Board of Governors ("FRB–DC"), Federal Reserve Bank of New York ("FRB–NY"), and National Bank of Belgium ("NBB–Brussels") (lead central-bank overseer).

[9]     SWIFT–Net launched in 1977, replacing international Telex and telegraph systems by providing customers with improved financial messaging services for correspondent banking activities, securities market infrastructures, U.S. Department of the Treasury operations, trade finance, precious metals trading, large-value payment systems, and foreign exchange transactions.

50.     SGBL settles its foreign exchange transactions through, among others, settlement member SOCGEN's account at CLS Bank International in New York ("CLS–New York").[10]

51.     As noted above, in February 2011, the U.S. Department of U.S. Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN") issued a notice concluding that LCB was a "financial institution of primary money laundering concern"; and further issued a Notice of Proposed Rule Making giving notice of FinCEN's proposal to issue a rule prohibiting, among other things, all U.S. financial institutions from establishing, maintaining, administering, or managing a correspondent or payable-through account in the United States for, or on behalf of, LCB.

52.     Four months later, after receiving approval from the Central Bank of Lebanon, LCB entered into a $580 million U.S. dollar Sale and Purchase Agreement ("Purchase Agreement") with Defendant SGBL.

53.     Pursuant to paragraphs 2.1 and 2.3 of the Purchase Agreement, attached as **Exhibit 1**, Defendant SGBL assumed all of LCB's liabilities, defined as follows:

> The Assumed Liabilities consist *inter alia* of any and all of the Seller's liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the Seller's Business, all as at the Completion Date. (Emphasis in original.)

54.     Furthermore, by assuming all of LCB's liabilities, Defendant SGBL also assumed LCB's liability for the banking and trade-finance services that LCB knowingly performed for Hezbollah, the material support LCB knowingly provided to Hezbollah, and the conduct of LCB's

---

[10]     CLS–New York is a limited-purpose Edge Act banking corporation organized under U.S. federal law, owned and controlled by its member banks, and regulated by FRB–DC. CLS–Bank began operations in September 2002, using payment-versus-payment settlement to reduce the risk involved in settling obligations related to foreign exchange transactions.

managers, officers and directors who knowingly conspired with and/or aided and abetted Hezbollah in its money-laundering and drug trafficking operations.

55.     In September 2011, the Central Bank of Lebanon's Central Council granted final approval of SGBL's acquisition of all assets and liabilities of LCB.

56.     Two years later, LCB, SGBL and the DOJ reached an agreement whereby LCB paid $102 million U.S. dollars to settle the claims for money-laundering and International Emergency Economic Powers Act ("IEEPA") violations raised by the U.S. Government in its 2011 Complaint against LCB.

57.     At all relevant times, both SGBL and LCB purposefully and deliberately used their New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.[11]

**B.      FRANSABANK SAL**

58.     Defendant FRANSABANK SAL was established in 1921 and incorporated in its present form in 1984 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. FRANSABANK was registered under number "25699" with the Commercial Registry of Beirut and registered under number "1" on the list of banks licensed by the Central Bank of Lebanon.

59.     FRANSABANK's head office address is Fransabank Center, Hamra Street, PO Box 11-0393, Riad El Solh, Beirut, 1107 2803, Lebanon.

---

[11]      Defendants all participate in the Eurodollar payment system which includes a set of instruments, procedures, and rules for the transfer of funds between or among financial institution participants. Within that payment system, dollar "clearing" is the process of transmitting, reconciling, and, in some cases, confirming dollar-denominated electronic funds transfer transactions prior to settlement. "Settlement" in this context refers to the funds transfer process where the paying institution's debt obligation (denominated in U.S. dollars) is discharged and the receiving institution obtains irrevocable access to the transferred funds. The "clearing" of U.S. dollar-denominated payment orders occurs primarily at CHIPS–New York, and settlement only occurs across the balance sheet of the Federal Reserve Bank of New York.

60.     According to FRANSABANK's 2017 annual report, the bank ended the year with assets valued at over $22.1 billion U.S. dollars, denominated in, among others, the following units of account: U.S. dollars (47.2 percent), Lebanese pounds (45.8 percent), and EU euros (4.9 percent); its customers' deposits funded 80.5 percent of the bank's assets; the bank operated 75 branches across Lebanon; and it employed 1,735 people in Lebanon.

61.     FRANSABANK participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

62.     FRANSABANK describes its AML/CFT compliance program as implementing the following objectives:

> Promoting a Know Your Customer (KYC) standard as a cornerstone principle for Fransabank Group business ethics and practices:
>
> - Prior to any transaction of any type, Fransabank Group's entities gather and document the relevant customer identification data, along with the background information, the purpose and the intended nature of the business.
>
> - Fransabank Group's entities retain and document any additional customer information relevant to the assessment of the money laundering risk, by adopting a risk-based approach which triggers the proper enhanced due diligence for the relevant customers.
>
> Enforcing the following additional due diligence measures while establishing and maintaining correspondent relations:
>
> - Gathering sufficient documentary evidence on a respondent institution, to avoid any relationships with 'shell banks';
>
> - Enquiring about the good reputation of a respondent institution from public sources of information, including whether it has been subject to a money laundering or terrorist financing investigation or other regulatory action;
>
> - Verifying, on a periodic basis, that the respondent institution is implementing sufficient and effective procedures to fight money

13

laundering and terrorist financing.

Monitoring and reporting suspicious transactions/activity:

- Fransabank Group's entities apply due diligence measures whenever they detect any unusual or suspicious transaction or activity, taking into account the legal framework of the concerned institution.

- All suspicious transactions or activities complying with the laws and regulations of the corresponding jurisdiction are reported.

- The Group's compliance department is notified of all suspicious transactions or activities when doubts arise.

Developing an effective internal control structure where no activity with a customer is carried out without obtaining in advance all the required information relating to the customer.

63.     FRANSABANK maintains a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York, account number 8900018224;
>
> **From 2003 to 2005:**
> HSBC Bank USA NA ("HSBC–New York");
>
> **From 2005 to 2008:**
> AMEX–New York; and
>
> **From 2005 to 2011:**
> JPM–New York, account number 544728788.

64.     FRANSABANK's Eurodollar clearing account at CHIPS–New York is identified by Universal Identifier ("UID") number "002233".

65.     According to SWIFT–Belgium, FRANSABANK's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "FSABLBBX".

66.    FRANSABANK primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

67.    At all relevant times, FRANSABANK purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

**C.    MIDDLE EAST AFRICA BANK SAL ("MEAB")**

68.    Defendant MEAB SAL was incorporated in its present form in 1991 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years.

69.    MEAB was registered under number "58153" with the Commercial Registry of Beirut and registered under number "110" on the list of banks licensed by The Central Bank of Lebanon.

70.    MEAB's head office address is MEAB Building, Adnan al-Hakim Avenue, Beirut, 1105 2080, Lebanon.

71.    MEAB describes itself as a family-owned commercial bank in Lebanon whose creation was propelled by the tremendous success of its founding Hejeij brothers in business ventures developing underserved regions of Africa.

72.    MEAB claims to be a full-service bank with 11 branches throughout Lebanon, with a reputation for high-quality financial services and a strong record of modernization and growth.

73.    According to MEAB's 2016 annual report, the bank had total assets of over $1.8 billion U.S. dollars and employed 335 people in Lebanon.

74.    MEAB claims to be the 15th largest bank in Lebanon by deposits. The bank was named the "Fastest Growing Bank in Lebanon" by Banker Middle East Industry Awards in 2011 and was named "Best Private Bank in Lebanon" by the World Finance Banking Awards in 2012.

75.     Kassem Hejeij co-founded MEAB and served as the bank's Chairman until June 2015 when he was forced to step down as a result of being designated by the U.S. Department of the U.S. Department of the Treasury as a Specially Designated Global Terrorist ("SDGT") for his direct links to Hezbollah.

76.     MEAB participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

77.     MEAB describes its AML/CFT compliance program as follows:

> The bank's Anti-Money Laundering/Counter Terrorist Financing (AML/CFT) programs meet or exceed the requirements of both the Banque du Liban and the international standards of the Financial Action Task Force (FATF).
>
> In addition to screening customers and transactions against the requirements of the Banque du Liban, MEAB also screens its banking activity against the U.S. Office of Foreign Assets Control (OFAC) Specifically Designated National (SDN) list, the U.S. sanction lists, among others, using EastNet's state-of-the-art SafeWatch system.

78.     MEAB maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

**From 2003 to 2004:**
Union Bank of California ("UBOCI") – New York;

**From 2004 to 2007:**
Standard Chartered Bank ("SCB") – New York;

**2006:**
Wachovia Bank ("WB") - New York;

**2008 to 2011:**

16

Dresdner Bank – Frankfurt (via Dresdner Bank branch in New York).[12]

79.     According to SWIFT–Belgium, MEAB's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "MEABLBBE".

80.     MEAB primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

81.     At all relevant times, MEAB purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

**D.     BLOM BANK SAL ("BLOM")**

82.     Defendant BLOM BANK SAL was established in 1951 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BLOM was registered under number "2464" with the Commercial Registry of Beirut and registered under number "14" on the list of banks licensed by the Central Bank of Lebanon.

83.     BLOM's head office address is BLOM Bank Building, Rashid Karameh Street, Beirut, Lebanon.

84.     The bank's shares are listed on the Beirut Stock Exchange and the Luxembourg Stock Exchange.

85.     Mr. Sa'd Azhari serves as the bank's Chairman and General Manager and Dr. Numan al-Azhari serves as the Chairman of BLOM Group (BLOM's ultimate parent).

86.     In June 2017, BLOM acquired 100 percent of the assets and liabilities of HSBC Bank Middle East Limited, Lebanon Branch, for a total consideration of $146 million U.S. dollars.

87.     According to BLOM's 2017 annual report, the bank ended the year with assets

---

[12]     DRESDNER BANK AG was later acquired by COMMEZBANK AG, Frankfurt, Germany.

valued at over $32.5 billion U.S. dollars, denominated in, among others, the following units of account: U.S. dollars (47.1 percent), Lebanese pounds (31.8 percent), and EU euros (7.3 percent); its customers' deposits funded 81.9 percent of the bank's assets; and the bank operated 77 branches across Lebanon and employed 4,357 people.

88.     BLOM participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

89.     BLOM's Board of Directors includes a Compliance Committee that purportedly assists the Board with carrying out its functions and supervisory role with respect to "proper implementation and effectiveness of AML/CFT procedures and regulations."

90.     BLOM maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York;
>
> **From 2005 to 2011:**
> JPM–New York;
>
> **2005 to 2008:**
> AMEX–New York;
> UBOCI–New York;
>
> **2008 to 2011:**
> Deutsche Bank Trust Company Americas ("DBTCA–New York"); and
> WB–New York.

91.     BLOM's Eurodollar clearing account at CHIPS–New York is identified by UID number "001871".

92.     According to SWIFT–Belgium, BLOM's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "BLOMLBBX".

93.     BLOM primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

94.     At all relevant times, BLOM purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

**E.     BYBLOS BANK SAL ("BYBLOS")**

95.     Defendant BYBLOS BANK SAL was established in 1950 and incorporated in its present form in 1961 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BYBLOS was registered under number "14150" with the Commercial Registry of Beirut and registered under number "39" on the list of banks licensed by the Central Bank of Lebanon.

96.     BYBLOS's head office address is Elias Sarkis Street, Ashrafieh, Beirut, Lebanon.

97.     According to BYBLOS's 2017 annual report, the bank ended the year with total assets of over $22.7 billion U.S. dollars and employed 2,485 people in Lebanon.

98.     BYBLOS participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

99.     BYBLOS describes its corporate governance program—including AML/CFT compliance—as implementing the following objectives:

> Byblos Bank's governance model is based on recommendations from the Basel Committee on Banking Supervision, guidelines published by the Financial Action Task Force, all relevant national regulations, and the constantly evolving body of international best practice. In keeping with this

by-the-book approach, the Bank has developed a world-class toolbox of compliance policies, procedures, and systems, all helping us to meet our obligations to help identify and block money laundering, terrorism financing, sanctions violations, and other illicit activities.

100.    BYBLOS maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011**:
> BNY–New York, account number 8033218622;
> Citibank NA ("CITI–New York"), account number 10948284;
> Wells Fargo Bank ("WFB–New York"), account number 2000191103571;
> SCB–New York, account number 3582049770001; and
>
> **Prior to 2009**:
> AMEX–New York, account number 00716613.

101.    BYBLOS's Eurodollar clearing account at CHIPS–New York is identified by UID number "037179".

102.    According to SWIFT–Belgium, BYBLOS secure financial messaging account on the SWIFT–Network is identified by BIC routing address "BYBALBBX".

103.    BYBLOS primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

104.    At all relevant times, BYBLOS purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

### F.    BANK AUDI SAL

105.    Defendant BANK AUDI SAL was founded in 1830 and incorporated in its present form in 1962 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BANK AUDI was registered under number "11347" with the

Commercial Registry of Beirut and registered under number "56" on the list of banks licensed by the Central Bank of Lebanon.

106. BANK AUDI's head office address is Bank Audi Plaza, Omar Daouk Street, Bab Idriss, Beirut, 2021 8102, Lebanon.

107. According to BANK AUDI's 2017 annual report, the bank has total assets of over $43.8 billion U.S. dollars and employs 6,541 people in Lebanon and ten other countries.

108. BANK AUDI participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

109. BANK AUDI's Board of Directors includes a "Compliance/AML/CFT Committee" that purports to assist the Board with carrying out its functions and supervisory role with respect to "fighting money laundering and terrorist financing," "protecting the Bank from other compliance-related risks," and "overseeing the Bank's compliance with applicable laws, policies and regulations."

110. BANK AUDI maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York, account number 8900111712;
> JPM–New York, account number 544729027;
>
> **From 2003 to 2005:**
> BANK AUDI (USA);
>
> **From 2005 to 2008:**
> AMEX–New York;
> Interaudi Bank, New York;

**2008 to 2011:**
SCB–New York, account number 3582023406001;
HSBC–New York, account number 0000301159;
WFB–New York, account number 2000191102776; and
CITI–New York.

111.    BANK AUDI's Eurodollar clearing account at CHIPS–New York is identified by UID number "000980".

112.    According to SWIFT–Belgium, BANK AUDI's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "AUDBLBBX".

113.    BANK AUDI primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

114.    At all relevant times, BANK AUDI purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

### G.    BANK OF BEIRUT SAL

115.    Defendant BANK OF BEIRUT SAL was incorporated in 1963 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BANK OF BEIRUT was registered under number "13187" with the Commercial Registry of Beirut and registered under number "75" on the list of banks licensed by the Central Bank of Lebanon.

116.    BANK OF BEIRUT's head office address is Bank of Beirut Building, Fosh Street, Beirut, Lebanon.

117.    According to BANK OF BEIRUT's 2016 annual report, the bank has total assets of over $17.2 billion U.S. dollars and employs 1,491 people in Lebanon.

118.    BANK OF BEIRUT participates in various domestic and international payment,

clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

119.   BANK OF BEIRUT claims to maintain an "AML Compliance Program" that includes the following functions:

> AML Procedures designed to implement the Bank's Customer Identification Program;

> The designation of an Anti-Money Laundering Compliance Officer responsible for coordinating and monitoring day-to-day compliance with the Anti-Money Laundering Policy and applicable laws, rules and regulations;

> Recordkeeping and reporting practices in accordance with the Anti-Money Laundering Policy and applicable laws, rules and regulations;

> Appropriate methods of monitoring transactions and account relationships to identify potential suspicious activities;

> Reporting suspicious activities to competent authorities in accordance with the Anti-Money Laundering Policy and applicable laws, rules and regulations;

> On-going training of appropriate personnel with regard to anti-money laundering and counter financing of terrorism issues and their responsibilities for compliance; and

> Independent testing to ensure that the Anti-Money Laundering Compliance Program has been implemented and continues to be appropriately maintained.

120.   BANK OF BEIRUT maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York, account number 8900097906;
> JPM–New York, account number 400228661;

> **From 2003 to 2008:**
> AMEX–New York, account number 28134;

    **From 2008 to 2011:**
    HSBC–New York;
    CITI–New York, account number 10952793;
    SCB–New York, account number 3582036868001; and
    WB–New York.

121. BANK OF BEIRUT's Eurodollar clearing account at CHIPS–New York is identified by UID number "030264".

122. According to SWIFT–Belgium, BANK OF BEIRUT's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "BABELBBE".

123. BANK OF BEIRUT primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

124. At all relevant times, BANK OF BEIRUT purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

   **H.**  **LEBANON AND GULF BANK SAL ("LGB")**

125. Defendant LEBANON AND GULF BANK SAL was established in 1963 as Banque de Crédit Agricole and incorporated in its present form in 1980 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. LEBANON AND GULF BANK was registered under number "43171" with the Commercial Registry of Beirut and registered under number "94" on the list of banks licensed by the Central Bank of Lebanon.

126. LEBANON AND GULF BANK's head office address is located in Allenby Street, Beirut, Lebanon.

127. According to LEBANON AND GULF BANK's website, in 2017 the bank had total

assets of over $4.7 billion U.S. dollars and employed 420 people in Lebanon.

128.    LEBANON AND GULF BANK participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

129.    LEBANON AND GULF BANK describes its AML/CFT compliance program as follows:

> LGB Bank has implemented a set of rules that apply to all Bank's activities to ensure compliance with Lebanese AML/CFT laws and regulations as well as international standards. The Bank has in place policies and procedures for the better knowledge of the customers' activities and their expected use of Bank's products and services.

130.    LEBANON AND GULF BANK maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> JPM–New York, account number 544729422;
>
> **From 2005 to 2008:**
> BNY–New York, account number 8900256141;
> SCB–New York, account number 3582023247001;
> DBTCA–New York, account number 04449171;
> WB–New York, account number 2000191104101;
> UBOCI–New York, account number 91267070112/NY; and
> AMEX–New York.

131.    LEBANON AND GULF BANK's Eurodollar clearing account at CHIPS–New York is identified by UID number "160871".

132.    According to SWIFT–Belgium, LEBANON AND GULF BANK's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "LGBALBBX".

133.    LEBANON AND GULF BANK primarily settles its foreign exchange transactions

through the accounts of settlement members at CLS–New York.

134.     At all relevant times, LEBANON AND GULF BANK purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

### I.     BANQUE LIBANO-FRANCAISE SAL ("BLF")

135.     Defendant BANQUE LIBANO–FRANCAISE SAL was established in 1930 as a branch of the French Bank, the Compagnie Algérienne de Crédit et de Banque and incorporated in its present form in 1967 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BANQUE LIBANO–FRANCAISE was registered under number "19618" with the Commercial Registry of Beirut and registered under number "10" on the list of banks licensed by the Central Bank of Lebanon.

136.     BANQUE LIBANO–FRANCAISE's head office address is Beirut Liberty Plaza, 5 Rome Street, Hamra, Beirut, 1107 2060, Lebanon.

137.     According to BANQUE LIBANO–FRANCAISE's web-site, in 2017 the bank had total assets of over $13.6 billion U.S. dollars and employed 1,546 people in Lebanon.

138.     BANQUE LIBANO–FRANCAISE participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

139.     BANQUE LIBANO–FRANCAISE's Board of Directors purportedly includes a Compliance Committee that assists the Board with carrying out its functions and supervisory role with respect to "proper implementation and effectiveness of AML/CFT procedures and regulations."

140.     BANQUE LIBANO–FRANCAISE maintained a U.S. dollar-denominated

correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York, account number 8033222085;
>
> **From 2005 to 2011:**
> CITI–New York, account number 36154781;
>
> **From 2008 to 2011:**
> JPM–New York;
> SCB–New York, account number 3582023510001;
> DBTCA–New York, account number 04089495; and
> AMEX–New York (prior to 2009).

141.    BANQUE LIBANO–FRANCAISE's Eurodollar clearing account at CHIPS–New York is identified by UID number "002902".

142.    According to SWIFT–Belgium, BANQUE LIBANO–FRANCAISE's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "BLFSLBBX".

143.    BANQUE LIBANO–FRANCAISE primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

144.    At all relevant times, BANQUE LIBANO–FRANCAISE purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

**J.    BANK OF BEIRUT AND THE ARAB COUNTRIES SAL ("BBAC")**

145.    Defendant BANK OF BEIRUT AND THE ARAB COUNTRIES SAL was founded in 1956 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years. BBAC–Beirut was registered under number "6196" with the Commercial Registry of Beirut and registered under number "28" on the list of banks licensed by the Central

Bank of Lebanon.

146.   The bank was founded by Tawfiq Assaf, whose son, Ghassan, replaced him as chairman and general manager after Tawfiq's death in 1996.

147.   In 2000, the bank changed its name in a rebranding push, to become BBAC.

148.   BBAC's head office is located at BBAC Building, 250 Clemenceau Street, Beirut, Lebanon.

149.   According to BBAC's 2016 annual report, the bank had total assets of over $6.4 billion U.S. dollars and employed 833 people in Lebanon.

150.   BBAC participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

151.   BBAC claims that the role of its "AML/CFT and Sanctions section is to ensure that the Bank is operating in compliance with the applicable laws related to fighting money laundering and terrorism financing."

152.   BBAC maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at each of the following correspondent banks in New York:

> **From 2003 to 2011:**
> BNY–New York, account number 8033216271;
> JPM–New York, account number 544729289;
> CITI–New York, account number 36070254; and
>
> **From 2005 to 2008:**
> AMEX–New York, account number 00716738.

153.   BBAC–Beirut's Eurodollar clearing account at CHIPS–New York is identified by UID number "000724".

154. According to SWIFT–Belgium, BBAC–Beirut's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "BBACLBBX".

155. BBAC–Beirut primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

156. At all relevant times, BBAC–Beirut purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

## K.   JAMMAL TRUST BANK SAL

157. Defendant JAMMAL TRUST BANK SAL was founded in 1963 as a private joint stock company with limited liability (*société anonyme libanaise*) with a duration of 99 years.

158. JAMMAL TRUST BANK was registered under number "13578" with the Commercial Registry of Beirut and registered under number "80" on the list of banks licensed by the Central Bank of Lebanon.

159. JAMMAL TRUST BANK's head office is located at JTB Tower, Tahweeta Highway, Elias al-Harawi Street, Beirut, Lebanon.

160. JAMMAL TRUST BANK maintains dozens of branches in Lebanon and internationally, including branches in Egypt, Nigeria, Ivory Coast, and the United Kingdom.

161. According to JAMMAL TRUST BANK's 2016 annual report, the bank had total assets of over $997 million U.S. dollars and employed over 541 people in Lebanon.

162. JAMMAL TRUST BANK participates in various domestic and international payment, clearing, and settlement systems (including, but not limited to, electronic funds transfer, check clearinghouse, credit-card, and automated teller machine networks).

163. JAMMAL TRUST BANK claims that the bank is "in full and accurate compliance

29

with all the laws, regulations and circulars related to Anti-Money Laundering and Countering the Financing of Terrorism of which most notably those issued by the Financial Action Task Force (FATF/GAFI)."

164.    JAMMAL TRUST BANK maintained a U.S. dollar-denominated correspondent account—used for its Eurodollar electronic funds transfer transactions—at the following correspondent banks in New York:

> **From 2003 to 2005:**
> HSBC–New York;
>
> **From 2003 to 2008:**
> AMEX–New York, account number 000197640;
> BNY–New York, account number 8033219009;
>
> **From 2005 to 2008:**
> SCB–New York, account number 3582023316001;
> UBOCI–New York, account number 91291740112; and
>
> **From 2007 to 2008:**
> WB–New York, account number 2000193002162.

165.    JAMMAL TRUST BANK's Eurodollar clearing account at CHIPS–New York is identified by UID number "025502".

166.    According to SWIFT–Belgium, JAMMAL TRUST BANK's secure financial messaging account on the SWIFT–Network is identified by BIC routing address "JTBKLBBE".

167.    JAMMAL TRUST BANK primarily settles its foreign exchange transactions through the accounts of settlement members at CLS–New York.

168.    At all relevant times, JAMMAL TRUST BANK purposefully and deliberately used its New York correspondent banks to "clear" U.S. dollar-denominated transactions on behalf of Hezbollah on an ongoing and recurring basis.

## V.    ISLAMIC REVOLUTIONARY GUARD CORPS (IRGC)

169.    On May 5, 1979, Ayatollah Ruhollah Khomeini, the first Supreme Leader of the Islamic Republic of Iran, promulgated a decree establishing the *Pasdaran e-Enqelab* (literally the "Guardians of the Revolution," also referred to in English as the Revolutionary Guard and later as the "Islamic Revolutionary Guard Corps") three months after the fall of the Shah and his government.

170.    Initially composed of a disparate group of militias that emerged after the revolution, the newly-formed IRGC was established to ensure that there would be no backsliding in implementing Ayatollah Khomeini's vision for an Islamic theocratic government in Iran based on his concept of an Islamic state ruled by a *velayat-e faqih* (guardianship of the jurist).

171.    The IRGC and (later) its subordinate directorate IRGC Qods Force ("IRGC–QF") were established as entities under the direction, control and authority of the Supreme Leader of Iran and they report directly to him.

172.    In September 1980, when Iraq invaded Iran, the Iranian armed forces suffered numerous setbacks on the battlefield. The newly-formed IRGC and an affiliated militia known as the Basij helped the Iranian army halt the Iraqi invasion and drive the Iraqi army back to roughly the original border between the two countries.

173.    For eight years, until the war ended in 1988, Iran responded to Iraq's superior military matériel by deploying highly-motivated infantry formations populated by the IRGC and its affiliated Basij militia.

174.    In 1982, despite being heavily engaged in combat with Iraqi forces, the Iranian government sent IRGC members to assist the Lebanese Shi'a community build a political movement and military capable of pushing the Israeli army out of Southern Lebanon (following

the Israeli army's 1982 incursion known as "Operation Peace for Galilee" to evict the Palestine Liberation Organization from Lebanon).

175.     Initially, the IRGC supported the Amal movement,[13] which garnered support from southern Lebanon's Shi'a community. But the IRGC also provided critical assistance to newly-emerging Hezbollah, which swore an oath of fealty to Iran, thereby tying it to decisions made by the theocratic Supreme Leader of Iran, Ayatollah Khomeini.

176.     Hezbollah's fealty to the IRGC and Iran's Supreme Leader ensured that Iran would provide funding, military equipment, advisors and training for Hezbollah at a level not enjoyed by Amal. That support and coordination continues to this day and is reciprocal: Iran bankrolls, arms and trains Hezbollah, and Hezbollah supports Iranian strategy and interests in Lebanon, Syria, Iraq and elsewhere.

177.     From Hezbollah's inception, the IRGC funded, armed, and supported it and provided it with the ability to attack Israeli forces in southern Lebanon.

178.     The October 23, 1983 bombing of the U.S. Marine Corps barracks in Beirut, Lebanon (resulting in the death of 220 Marines, 18 Sailors, and 3 Soldiers), was a coordinated attack sponsored and planned by the IRGC and carried out by Hezbollah operatives under the command of Imad Mughniyah and Mustafa Badr al-Din.

179.     The IRGC-QF was later created as a special directorate tasked with exporting terrorism and terrorist tactics internationally.

180.     It was and remains separate from Iran's regular military and is accountable directly to Iran's Supreme Leader.

---

[13]     Amal was a political movement and militia established in the mid-1970s by Musa al-Sadr, a leading Shi'a cleric who emigrated to Lebanon. After Sadr's disappearance in Libya (and presumed death), Hezbollah broke away from Amal in the early 1980s and the two groups have remained competitors but also actively cooperate in may spheres.

181.    In many cases, young officers and leaders of the IRGC's new formations during the Iran-Iraq War are now senior members of the IRGC's leadership, including its IRGC–QF, such as Major General Qasem Soleimani, who assumed his position as IRGC-QF leader in 1998.

182.    Major General Soleimani was designated by the United States on October 25, 2007 under Executive Order 13382, based on his "relationship to the IRGC"; in May 2011, under Executive Order 13572, which focuses on human rights abuses in Syria, for his role as IRGC-QF commander; and again, on October 11, 2011, as an SDGT.

183.    In an April 1990 interview, Major General Mohsen Rezai, then-IRGC Commander, explained the reasoning behind the IRGC–QF's establishment and the scope of its responsibilities:

> [T]he Qods Force, which is for assisting Muslims, Islamic states or Islamic governments, should they ask for help in training or advice. That is now a global custom. If an Islamic state, government or people need to be put through some training, well the corps will go there and give them training; it will take measures to provide training support for world Muslims or Islamic states. There was a need for a force to perform this task, and the Eminent Leader commanded the corps to set it up.

184.    On October 25, 2007, the Department of the U.S. Department of the Treasury designated the IRGC-QF an SDGT for supporting terrorism as it: "…provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians."

185.    The IRGC–QF trains, advises and logistically supports terrorist and insurgent movements, and performs related clandestine and covert special operations activities, on behalf of the Iranian government. According to a U.S. Department of Defense assessment:

> The Iranian regime uses the Islamic Revolutionary Guard Corps-Qods Force (lRGC-QF) to clandestinely exert military, political, and economic power to advance Iranian national interests abroad. IRGC–QF global activities include: gathering tactical intelligence; conducting covert diplomacy; providing training, arms, and financial support to surrogate

groups and terrorist organizations; and facilitating some of Iran's provision of humanitarian and economic support to Islamic causes.

## VI.   HEZBOLLAH

### A.   HEZBOLLAH'S   INITIAL   TERRORIST   OPERATIONS   AND ORGANIZATIONAL STRUCTURE

186.    Hezbollah was established in Lebanon circa 1982 by Sheikh Subhi al-Tufayli and Abbas al-Musawi with the support and assistance of Iran's IRGC.

187.    Mr. al-Tufayli was Hezbollah's first Secretary General, from 1989 until 1991.

188.    Sheikh Muhammad Hussein Fadlallah served as the group's "Spiritual Leader," providing Hezbollah its intellectual basis both for pursuing *jihad* and departing from the more apolitical and passive theological trend in Shi'a Islam.

189.    In 1995, the U.S. U.S. Department of the Treasury Department designated Sheikh Fadlallah a Specially Designated Terrorist ("SDT").

190.    At all times relevant hereto, Hezbollah is and was a radical Islamic terrorist organization that views the United States and other Western countries as its enemies.

191.    Since its founding, Hezbollah has committed numerous acts of international terrorism, including, but not limited to, the following:

- July 19, 1982: The kidnapping of American University president David S. Doge in Beirut.

- April 18, 1983: A car bomb attack on the United States Embassy in Beirut, in which sixty-three people were killed.

- October 23, 1983: A truck bomb attack on the U.S. Marine barracks where American military personnel stationed in Beirut were serving as part of a peace-keeping force; 241 American military personnel were killed. A separate attack against the French military compound in Beirut killed 58 people.

- December 12, 1983: Bombings against U.S. and French embassies in Kuwait, in which 5 people were killed.

- September 20, 1984: A car bomb attack on the U.S. Embassy annex in Beirut, in which two Americans and twenty-two others were killed.

192.   Hezbollah's stated aims were published in February 1985 in a letter entitled "The Hezbollah Program."

193.   With respect to Israel and the United States, the Hezbollah Program states:

We see in Israel the vanguard of the United States in our Islamic world.  It is the hated enemy that must be fought until the hated ones get what they deserve.… *our struggle will end only when this entity is obliterated. We recognize no treaty with it, no cease fire, and no peace agreements, whether separate or consolidated.* (Emphasis added.)

194.   From its founding through the present, Hezbollah has carried out hundreds of terrorist attacks against American targets that have killed hundreds of U.S. citizens and wounded hundreds more.

195.   Hezbollah's policy and practice of carrying out terrorist attacks against United States targets was well known to Defendants, because Hezbollah has openly, publicly and repeatedly acknowledged having such a policy and carrying out such attacks.

196.   Hezbollah made these acknowledgments on its official websites, in its official press releases, on its official television station, *Al-Manar*, on its official radio station, *Al-Nour*, and in numerous press conferences and news media interviews conducted by senior Hezbollah officials.

197.   As a result of its mission, conduct, and terrorist activities, on January 25, 1995, Hezbollah was designated as an SDT by the United States. It has retained this designation since that time.

198.   On October 8, 1997, Hezbollah was designated as an FTO by the United States. It has retained this designation since that time.

199.   On October 31, 2001, Hezbollah was designated as an SDGT by the United States.

35

It has retained this designation since that time.

200.    The IRGC has funded, trained and supplied Hezbollah, and facilitated its attacks against the Israel Defense Forces ("IDF") from at least as early as 1983.

201.    Hezbollah had developed advanced tactical capabilities through the battlefield experience of attacking the IDF in southern Lebanon, including the use of roadside bombs featuring remote detonators and passive infrared ("PIR") switch systems.

202.    By the late 1990s, Hezbollah effectively deployed EFPs against IDF armor and had developed sophisticated tools to defeat IDF counter-measures.

203.    In 2003, Hezbollah began to successfully export its Tactics, Techniques & Procedures ("TTP") to Iraq.

204.    This included TTP for ambushes, kidnappings, indirect fire on stationary bases and particularly its experience deploying EFPs against High Mobility Multipurpose Wheeled Vehicles ("HMMWVs").

205.    Over time, Hezbollah also became increasingly adept at inflicting casualties on the Israeli military, and it eventually forced the IDF in 1985 to withdraw into what Israel called a "Security Zone" in Southern Lebanon.

206.    The Security Zone added depth to Israel's security along its northern border. The IDF and its proxy militia, the South Lebanese Army ("SLA"), occupied strong points within the zone, conducted patrols, and occasionally used its bases to launch raids on Hezbollah targets deeper in Lebanon.

207.    For 15 years, the IDF maintained this buffer zone until increasing IDF casualties precipitated an Israeli withdrawal in 2000 to its current border with Lebanon.

208.    During that 15-year period, southern Lebanon served as a laboratory for Hezbollah

36

to hone its tactical war fighting skills and weapons development.

209.    Attacks on the IDF's Security Zone allowed Hezbollah to study and improve its insurgent tactics, including: *first*, effectively ambushing Israeli patrols; *second*, deploying Improvised Explosive Devices ("IEDs"); *third*, kidnapping Israeli soldiers; and, *fourth*, developing and deploying EFPs (described herein) in the late 1990s against Israeli armored vehicles.

210.    The accumulated experience Hezbollah gained through its decades-long campaign against the IDF also included developing precision use of indirect fire weapons and employing Iranian-provided 107mm and 122mm rockets to launch indirect fire attacks on Israeli fortified outposts and on Israel itself.

211.    Its tactics evolved and improved over time. Examples of that evolution included:

- Beginning in August 1991, Hezbollah began regularly detonating bombs by remote radio control, precluding the need for command wire. The IDF attempted to counter the remote-control detonations by sweeping a wide spectrum of radio frequencies from its listening bases on the mountain peak of Mount Hermon to explode the bombs prematurely.

- In response, Hezbollah resumed using command-wire, victim-initiated pressure plates and mat detonations for a while, before introducing a new coded remote-control system in mid-1993. The bombs were fitted with two receivers and scramblers, initially defeating Israeli attempts to reproduce the detonating signals. Hezbollah engineers then refined the bombs' switches further by incorporating small jammers and turning the weapons on using computerized multi-frequency transmissions.

- By 1995, Hezbollah was equipping its IEDs with cellular phone receivers to trigger firing switches. In turn, Israel jammed cell phone frequencies from aircraft flying high above southern Lebanon. As the technology improved and grew smaller, the IDF fitted cell phone jammers into armored personnel carriers and vehicles. Eventually foot soldiers could carry the equipment in a backpack.

- In a major step change in capability, Hezbollah began using passive infrared receivers in 1997 with the IED detonating when the target, human or vehicular, crossed the beam, thereby negating the effectiveness of IDF jamming devices.

212.     The relatively rapid evolution of Hezbollah's TTP was a product of at least three related factors. First, Hezbollah's operatives were highly motivated and willing to risk heavy losses in their confrontations with Israel. Second, Hezbollah benefited enormously from Iranian financial support and IRGC training and technology transfers. Finally, Hezbollah took advantage of the first two factors and perfected its TTP through trial and error against the SLA and IDF. These combined factors allowed Hezbollah to inflict significant (but not decisive) casualty levels on the IDF.

213.     The status quo began to change, however, with the first reported use of an EFP by Hezbollah in southern Lebanon on October 5, 1998, when an Israeli HMMWV was struck, resulting in the deaths of two Israeli soldiers and the wounding of six more.

214.     EFPs introduced into the Israeli Security Zone in southern Lebanon very quickly began to significantly increase Israeli casualties because they were highly effective against Israeli armor and therefore diminished the IDF's ability to protect its patrols and supply lines, forcing the IDF to resupply their now isolated and beleaguered outposts by helicopter, thereby avoiding the use of armored convoys whenever possible.

215.     In 2000, the Israelis withdrew their forces to the current border with Lebanon rather than suffer further personnel losses that were becoming politically unsustainable.

216.     By the late 1990s, Hezbollah effectively deployed EFPs against IDF armor and had developed sophisticated tools to defeat IDF counter-IED measures.

217.     Another early warning sign of Hezbollah's threat to American personnel in Iraq occurred in May 2003 when Israeli naval commandos seized a small fishing boat off the country's northern coast and captured a Hezbollah explosives expert who had bomb detonators and computer disks on board.

218.    The computer disks contained detailed instructions on how to manufacture and assemble EFPs:

> Anti-armor devices -
>
> Like with anti-personnel devices, one of the most important factors in increasing the effectiveness of anti-armor devices is:
>
> 1. The speed of the explosive substance: the faster the explosive substance is and the more powerful it is, the more effective the device is.
> 2. The weight of the explosive substance: the greater the weight of the explosive substance, the more effective the device is.
> 3. The case: the thicker the case is, the more effective the device is. The container is normally between 5 mm and 2½ cm in thickness.
>
> Anti-armor devices come in two types: plate devices and hollow devices.
>
> 1. Plate devices: these are devices designed to be used against light armor, such as: Land Hummer and the M113 armored personnel carrier.
> EF
> To penetrate armor, these devices depend on a formed projectile moving at a speed 2,000 to 3,000 meters per second.
>
> This is a concave projectile

219.    Hezbollah successfully exported its TTP to Iraq – particularly its experience deploying EFPs against HMMWVs, including hiding IEDs and EFPs inside fiberglass 'rocks' painted to match the limestone geology of south Lebanon.

220.    Hezbollah's transfer of weapons, technology and tactics was critical to the effectiveness and lethality of its proxies in Iraq who would go on to kill and maim more than a thousand Americans between 2004 and 2011.

221.    As set forth below, the IRGC–QF and Hezbollah jointly played a pivotal role in fomenting sectarian violence in Iraq between 2004 and 2011, and they orchestrated numerous attacks against U.S. service members in Iraq, including nearly all attacks involving EFPs, IRAMs

and other specified weapons.

### B.  HEZBOLLAH'S KEY LEADERS AND CURRENT ORGANIZATIONAL STRUCTURE

222.  After its founding, Hezbollah evolved into a multifaceted, sophisticated, highly organized, politically powerful, and well-financed terrorist organization.

223.  Hezbollah now resembles a multinational corporate or governmental entity, with departments, agencies, branches, in-house banking, insurance, and other financial services, and media outreach. Its estimated enterprise value is worth billions of U.S. dollars.

224.  Hezbollah's network consists of a multitude of departments that assist its leadership in carrying out its mission, and includes, but is not limited to, entities that are tasked with: *first*, terrorist and paramilitary activities; *second*, social services and "charitable" activities; *third*, general fundraising; *fourth*, construction and infrastructure; *fifth*, financial and insurance services; and, *sixth*, media services. Notwithstanding Hezbollah's multifaceted nature, it is a single, unified entity dedicated to terrorism in the name of Allah.

### 1.  HEZBOLLAH'S EMBRACE OF TERRORISM IS OPEN AND PUBLIC.

225.  Hassan Nasrallah (discussed below) has been Hezbollah's supreme leader for decades.

226.  Mr. Nasrallah's public pronouncements leave no doubt about Hezbollah's embrace of terrorism. For example:

- "... put a knife in your shirt, then get close to an Israeli occupier and stab him." *(Nightline*, October 19, 2000)

- "Suicide attacks shake the enemy from within, they plunge him into an existential crisis, and thus prepare the ground for victory; these acts are completely legitimate, since there are no innocent civilians in Israel; rather they all are occupiers and accomplices to crime and massacre." (Statement broadcast on *Al-Manar* TV, September 14, 2001)

40

- "Martyrdom operations - suicide bombings - should be exported outside Palestine. I encourage Palestinians to take suicide bombings worldwide. Don't be shy about it." *(Washington Times,* December 6, 2002)

- "…This American administration is an enemy. Our motto, which we are not afraid to repeat year after year, is: 'Death to America.'" (Statement broadcast on *Al-Manar* TV, February 18-19, 2005)

- "The Lebanese resistance today inspires all the resistance in the world, all the free persons, all the noble people and all who refuse to surrender to American humiliation in the world. This is our victory, and this too is the result of our battle." (Hassan Nasrallah's speech after the July 2006 War "Divine Victory Rally" September 22, 2006)

- "There is no doubt that American terrorism is the source of all terrorism in the world. The Bush administration has turned the U.S. into a danger—threatening the whole world, on all levels." (Statement broadcast, November 2009)

### 2.    SHURA COUNCIL (MAJLIS AL-SHURA)

227.    Hezbollah's Shura Council (a/k/a Majlis al-Shura) is the decision-making body within the terrorist organization, composed of Hezbollah's highest in command—its Secretary-General, the heads of the other Councils (see below) and advisors to Hezbollah's leader, Hassan Nasrallah.

228.    All Councils in Hezbollah are subordinate to and overseen by the Shura Council.

229.    Hassan Nasrallah, Hezbollah's Secretary General, presides over the Shura Council and functions as the group's leader under the authority of the "jurist theologian" Ayatollah Ali Khamenei, Iran's second – and current – Supreme Leader.

230.    Hezbollah's Shura Council comprises the following members:

- **Hassan Nasrallah**. In 1992, after Mr. al-Musawi's death, Hassan Nasrallah became Hezbollah's leader and Secretary General. At all relevant times, he has remained in that position. He was designated as an SDT on January 24, 1995, and as an SDGT by the U.S. Department of the U.S. Department of the Treasury on May 16, 2018.

- **Naim Qassem**. Sheikh Naim Qassem is the Deputy Secretary General of Hezbollah. He was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on May 16, 2018.

- **Hashem Safieddine**. In 1995, Hashem Safieddine was promoted to the Majlis al-Shura. He is the Head of the Executive Council, the largest council in Hezbollah. The U.S. Department of the U.S. Department of the Treasury designated Mr. Safieddine as an SDGT on May 19, 2017.

- **Muhammad Yazbek**. Muhammad Yazbek is the Head of Hezbollah's Judicial Council. He was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on May 16, 2018. He is considered the personal representative of the Supreme Leader of the Islamic Revolution, Ali Khamenei, in Lebanon. Moreover, Mr. Yazbek manages many of Hezbollah's bank accounts.

- **Ibrahim Amin al-Sayyed**. Ibrahim Amin al-Sayyed is the Head of Hezbollah's Political Council. He was Hezbollah's first official spokesperson and was involved in the formation of Hezbollah in the 1980's. He was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on May 16, 2018.

- **Hussein Khalil**. Hussein Khalil is Nasrallah's top political advisor. He was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on May 16, 2018.

- **Hussein al-Shami**. Mr. Al-Shami is the current Head of the Islamic Resistance Support Organization and Bayt al-Mal, fundraising institutions that help finance Hezbollah. Due to Mr. Al-Shami's significant role in this effort, he was appointed to be a member of the Governing Council of Hezbollah. Prior to that time, Mr. Al-Shami headed Hezbollah's Social Services Unit. The U.S. Department of the U.S. Department of the Treasury designated Mr. Al-Shami as an SDGT on September 7, 2006.

### 3.   PARLIAMENTARY COUNCIL

231.   Hezbollah's Parliamentary Council is subordinate to the Shura Council and is composed of Hezbollah's Members of Lebanon's Parliament and Ministers, both current and past. This council supervises the actions of Hezbollah's bloc in Lebanon's parliament, "the Loyalty to the Resistance." In the latest Lebanese general elections, held on May 6, 2018, Hezbollah's bloc won 13 seats in the parliament.

### 4.   JIHAD COUNCIL

232.   The Jihad Council is the functional council underneath the Shura Council, responsible for Hezbollah's paramilitary and terrorist activities. It overseas the organization's "Resistance" operations, including oversight, recruitment, training, equipment and internal security. This includes Hezbollah's Islamic Jihad Organization ("IJO").

233.   The Jihad Council is officially headed by Hassan Nasrallah himself. Below are the most prominent figures in the military wing of Hezbollah.

### a.   IMAD MUGHNIYAH

234.   Imad Mughniyah was one of the founders of Hezbollah in the 1980s and headed the organization's terror apparatus, the IJO (under the supervision of the Jihad Council), until his death in 2008.

235.   Mr. Mughniyah was known as Hezbollah's "Chief of Staff" and, as such, oversaw Hezbollah's military, intelligence, and security apparatuses.

236.   He began his career in terrorism with the Palestinian Fatah movement and rose through the organization's ranks.

237.   He helped found and organize the unit that would eventually turn into Yasser Arafat's Force 17, a commando and special operations unit of Fatah in Beirut. After the PLO fled from Lebanon, Mr. Mughniyah joined Amal, and through Amal was introduced to the IRGC in Baalbek, Lebanon.

238.   Later, he joined Hezbollah and formed the organization's IJO with his brother-in-law and cousin, Mustafa Badr al-Din.

239.   Mr. Mughniyah was identified by both Israeli and American officials as personally involved in planning and directing many of Hezbollah's suicide bombings, deadly terrorist attacks,

murders, kidnappings and assassinations throughout the 1980s and 1990s against the United States and other Western countries, and against Israel and Jewish targets around the world.

240. Below is a partial list of Hezbollah's terrorist operations that were planned, directed, and/or executed by Mr. Mughniyah:

- April 18, 1983: A terrorist attack against the U.S. embassy in Beirut, resulting in the death of 63 people;

- October 23, 1983: A suicide bombing against the U.S. Peacekeeping Forces' barracks in Beirut, resulting in the death of 241 people;

- October 23, 1983: A suicide bombing against the French Peacekeeping Forces' barracks in Beirut, resulting in the death of 58 people;

- November 4, 1983: A suicide bombing against the IDF's headquarters in Tyre, resulting in the death of 60 people;

- December 12, 1983: A suicide bombing against the U.S. embassy in Kuwait, resulting in the death of 5 people;

- March 16, 1984: Kidnapping and torture of CIA Officer, William F. Buckley, who was murdered on June 3, 1985;

- September 20, 1984: A terrorist bombing against the U.S. Embassy annex in Beirut, killing 24 people;

- March 10, 1985: A terrorist attack against IDF soldiers, resulting in the death of 12 people;

- June 14, 1985: Hijacking of TWA Flight 847, resulting in the death of a U.S. Navy diver;

- December 3, 1985: Hijacking of Kuwait Airways Flight 221, resulting in the death of two American hostages;

- September 30, 1985: Kidnapping of four Soviet diplomats from the Soviet embassy in Lebanon, and eventual murder of the consular attaché;

- February 17, 1988: Kidnapping, torture and murder of Colonel William R. Higgins;

- April 5, 1988: Hijacking of Kuwait Airways Flight 422, resulting in the death of two Kuwaiti hostages;

- October 19, 1988: A terrorist attack against IDF officers, resuling in the death of 8 people;

- March 17, 1992: A suicide bombing against the Israeli embassy in Argentina, resulting in the death of 29 people;

- July 18, 1994: AMIA bombing in Argentina, in which a suicide bomber attacked the Jewish Community Center in Buenos Aires, resulting in the death of 85 people;

- June 25, 1996: Khobar Tower bombings, in which the U.S. Air Force housing complex was attacked by bombers, killing 19 U.S. Airmen, a Saudi national, and woulding 498 people;

- October 4, 2000: Kidnapping of Israeli citizen Elhanan Tannenbaum;

- October 7, 2000: Kidnapping and murder of 3 IDF soldiers;

- March 12, 2002: A terrorist attack in Matzuva, in which six Israelis were killed;

- February 14, 2005: Orchestrating of the assassination of Rafiq Hariri, former Prime Minister or Lebanon;

- April 4, 2005: Kidnapping and torture of two Israeli citizens; and

- July 12, 2006: Murder of three IDF soldiers, and kidnapping and eventual murder of two other soldiers (this kidnapping brought about the 2006 Lebanon War).

241.    Mr. Mughniyah also helped construct Hezbollah's military terrorist infrastructure in Lebanon, which was used against the IDF in 2006.

### b.  MUSTAFA BADR AL-DIN

242.    Mustafa Badr al-Din was a military leader of Hezbollah and both the cousin and brother-in-law of Imad Mughniyah (Mughniyah was married to Mustafa Badr al-Din's sister Sa'ada).

243.    Like his cousin Mr. Mughniyah, Mr. Badr al-Din served in Fatah's Force 17 in Beirut (before 1982) and joined Hezbollah with him.

244.    Mr. Badr al-Din later became an expert bomb maker.

245.    He headed Hezbollah's security apparatus and was a member of the Shura Council as well as Head of the IJO unit responsible for overseas operations. He was a key participant in the bombing of the U.S. Marine Corps barracks in Lebanon in 1983, killing 241 marines.

246.    After that bombing, Mr. Badr al-Din was soon dispatched to Kuwait to work with a joint Iraqi Da'wa Party–Hezbollah operation to attack Western targets at the behest of the IRGC.

247.    At the start of his career, Mr. Badr al-Din commanded the IRGC's operation to assassinate the Emir of Kuwait. The attempt failed, and he ultimately spent five years in a Kuwaiti jail. (He was also charged with the bombing of the American and French embassies in Kuwait City.)

248.    The Kuwaiti authorities sentenced him to death, but he fled from prison on during the Iraqi invasion of Kuwait in August 1990.

249.    Hezbollah had previously tried to gain his release, along with other Hezbollah operatives held in Kuwait, by hijacking airplanes as bargaining chips, including the hijacking of a TWA flight in 1985 and Kuwaiti aircraft in 1984 and 1988.

250.    In June 2011, the prosecutor of the Special Tribunal for Lebanon charged Mr. Badr al-Din with involvement in the February 14, 2005 bombing that killed former Lebanese Prime

Minister Rafiq Hariri and 21 others.

251.     The U.S. Department of the U.S. Department of the Treasury designated Mr. Badr al-Din as an SDGT in September 2012 "for providing support to Hizballah's terrorist activities in the Middle East and around the world." Saudi Arabia also designated Mr. Badr al-Din as a global terrorist linked to Hezbollah, and as an activist in the Syrian war.

### c.  MUHAMMAD KAWTHARANI

252.     Since 2003, Muhammad Kawtharani has been responsible for Hezbollah's Iraq portfolio, overseeing all of the organization's Iraqi operations. He has also assisted in coordinating the movement of Hezbollah fighters to support pro-regime forces in Syria.

253.     As the individual in charge of Hezbollah's Iraq activities, Mr. Kawtharani worked on behalf of Hezbollah's leadership to promote the group's interests in Iraq, including Hezbollah's efforts to provide training, funding, political, and logistical support to Iranian-backed terror cells in Iraq.

254.     As a member of Hezbollah's Political Council, Mr. Kawtharani also helped secure the release from Iraqi custody of senior Hezbollah commander Ali Mussa Daqduq. The latter was designated an SDGT by the U.S. Department of the U.S. Department of the Treasury in November 2012 and was responsible for numerous attacks against the Coalition Forces in Iraq, including the January 20, 2007, attack on a compound in Karbala that claimed the lives of five American soldiers and injured many others.

255.     Mr. Kawtharani was designated as an SDGT by the U.S. Department of the Treasury Department on August 22, 2013.

### 5.     JIHAD COUNCIL'S EXTERNAL SECURITY ORGANIZATION

256.     The Jihad Council's External Security Organization ("ESO") (also known as the

Islamic Jihad Organization) was established in 1983, after Hezbollah's attack on the U.S. military in Beirut.

257. ESO is a sub-directorate of the Jihad Council, working alongside, but distinct from, Hezbollah's formal militia activity in Lebanon.

258. The ESO is a discrete branch within Hezbollah, responsible for procurement, intelligence, counter-intelligence, surveillance, planning, coordination, and execution of terrorist attacks against Hezbollah's enemies outside of Lebanon.

259. The ESO was responsible for numerous significant attacks against targets outside of Lebanon including the following terrorist operations:

- On 18 July 2012, a bomb exploded on an Israeli tourist bus at Sarafovo Airport in Burgas, Bulgaria, killing the attacker, five Israelis and their Bulgarian bus driver. The Bulgarian authorities have charged two individuals in connection with the attack; they state the individuals were members of the Islamic Jihad Organization (IJO), an alias of ESO.

- On 18 July 1994, a van carrying explosives was detonated outside the Argentinian-Israeli Mutual Association in Buenos Aires, Argentina, killing 85 people and injuring more than 300 others. In 1999, Argentinian authorities issued an arrest warrant for ESO leader Imad Mughniyah for his alleged involvement. No group claimed responsibility for the attack and Hezbollah has repeatedly denied accusations that it conducted the attack. However, Argentinian authorities concluded that the ESO was responsible.

- On 17 March 1992, a truck laden with explosives was used to destroy the Israeli Embassy in Buenos Aires, killing 29 people and injuring 242 others. Although Hezbollah denied involvement, responsibility for the attack was claimed in the name of the IJO. Argentinian authorities eventually issued an arrest warrant for ESO leader Imad Mughniyah for organizing the attack.

### a. TALAL HAMIYAH

260. The ESO's current Commander is Talal Hamiyah, previously a deputy of Mr. Mughniyah's. Mr. Hamiyah was implicated in the 1992 and 1994 attacks in Argentina (listed

above). The U.S. Department of U.S. Department of the Treasury designated Mr. Hamiyah as an SDGT on September 13, 2012. The U.S. State Department is offering a reward of up to $7 million U.S. dollars for information that leads to Mr. Hamiyah's location, arrest, or conviction in any country.

### 6.    HEZBOLLAH'S BUSINESS AFFAIRS COMPONENT (BAC)

261.    Hezbollah's External Security Organization Business Affairs Component (BAC) is an international apparatus orchestrating Hezbollah's network of businesses and enterprises across the world, tasked with raising funds for Hezbollah through illicit activities, such as money laundering and drug trafficking, as well as ordinary business enterprises.[14]

262.    These proceeds are later used for purchasing weaponry and funding the organization's activities in Lebanon, Iraq and Syria.

263.    BAC's apparatus was founded by Imad Mughniyah but is now headed by Abdallah Safieddine and Adham Tabaja.

264.    According to the U.S. Drug Enforcement Administration, Hezbollah's BAC has developed extensive operational and financial linkages with various drug cartels and money laundering networks across South America:

> Members of the Hizballah BAC have established business relationships with South American drug cartels, such as La Oficina de Envigado, responsible for supplying large quantities of cocaine to the European and United States drug markets. Further, the Hizballah BAC continues to launder significant drug proceeds as part of a trade-based money laundering scheme known as the Black-Market Peso Exchange.

265.    As set forth in granular detail in this Complaint, Hezbollah is a complex organization with many components, but it is ultimately a single, unified entity that serves its

---

[14]    BAC also aided Hezbollah in other areas such as intelligence-gathering and weapons shipments.

central purpose, to wage jihad according to to its theological principles.

266.    Hezbollah's political leadership works collaboratively with its terrorism directorates, which are – in turn – part and parcel of its network of social welfare institutions and commercial enterprises that are ubiquitous in much of Lebanon and *openly* identify with the Movement.

267.    While its terrorist activities are conducted clandestinely, Hezbollah's political, social and commercial activity in Lebanon is conducted *openly* and is well understood by the Defendants who service the organization's financial and logistical needs.

268.    Much of the operational and financial detail set forth below is intended to demonstrate several, related points about Hezbollah's BAC networks and their interconnectivity with each other and with Lebanese financial institutions (including Defendants):

- Hezbollah's BAC operates prominent businesses in villages, cities and neighborhoods it controls. These include, for example, several amusement parks and theme restaurants and banquet halls in places like Dahiyah.[15]

  For example, **Al-Inmaa Engineering** (controlled by Adham Tabaja) is an SDGT and a core part of the BAC. It is closely tied to another Tabaja-owned project discussed below, the **Fantasy World** amusement park that serves the Hezbollah-dominated suburbs of Beirut. The connection between **Al-Inmaa Engineering** and Defendant SGBL's account holder, Fantasy World, is set forth on the former's website:

---

[15]    Dahiyah is the unofficial name of the munipalities in the southern suburbs of Beirut which are overwhelmingly populated by Lebanese Shi'a and politically and functionally dominated by Hezbollah.



- Hezbollah's BAC financiers (i.e. its leading businessmen) are all well-known and widely identified as part of Hezbollah, often serving as local political leaders as well as leading investors in Hezbollah-dominated villages and neighborhoods.

For example, Walid Ali Jaber, the Beirut director for Jihad al-Bina (SDGT) was also the Hezbollah candidate in municipal elections in Bourj el-Barajneh, a Hezbollah-dominated municipality near Beirut's international airport. Mr. Jaber is the director and founder of one of Jihad al-Bina's commercial entities, **Arch Consulting**—Defendant BLOM BANK's account holder. Arch Consulting's website proudly notes projects the company has worked on for Atlas Holding, a corporate alter-ego of the **Martyrs Foundation–Lebanon** (SDGT):



- Hezbollah's social welfare institutions are not only operated by senior Hezbollah operatives, but these institutions and their leaders are also actively involved in the BAC's commercial enterprises which, in turn, provided services to these social welfare institutions.

For example, the **Martyrs Foundation–Lebanon** (SDGT) owns Atlas Holding SAL, which operates a subsidiary - Defendant LEBANON AND GULF BANK's account holder, **Amana Plus** – a company that owns gas stations in Lebanon.



Another example: **Al-Ittam (Aytam Petroleum)** is a company owned by **Al-Mabarrat Charitable Society** (founded by Sheikh Muhammad Hussein Fadlallah - SDT). Fadlallah's son, Ali al-Sayyid Muhammad, sits on the company's board with Hamzah Safieddine, the brother of senior Hezbollah leaders, Hashem and Abdallah Safieddine (both SGDTs).

- The ownership and management of Hezbollah's BAC network of companies consists of overlapping directorates of individuals affiliated with Hezbollah. The same extended families (or clans) control many of Hezbollah's commercial assets in Lebanon and abroad, and the same pool of lawyers and accountants are employed to set up and "audit" these enterprises.

For example, **Car Escort Services (Offshore) SAL**, which maintains accounts with Defendant JAMMAL TRUST BANK, was designated an SDGT by the U.S. Department of the U.S. Department of the Treasury because it was "owned or controlled by Mr. Bazzi and Mr. Charara, who collectively own two-thirds of the company." Ali Youssef Charara is an SDGT closely associated with Adham Tabaja. Muhammad Ibrahim Bazzi, also an SDGT, is also affiliated with Ayman Joumaa's drug trafficking network. The third partner in the company is Ali Muhammad

Kharrubi (a/k/a Ali Mohammed Kharroubi), an SDNT,[16] who is also affiliated with Ayman Joumaa's drug trafficking network and is the founder of Ellissa Exchange Company SARL, a money exchange business (Specially Designated Narcotics-Kingpin ("SDNTK")) used by the Joumaa network. The Ellissa Exchange maintained an account with Defendant BLOM Bank.

- Many of these Hezbollah BAC operatives have been designated as SDGTs by the United States, but that has not affected Defendants' willingness to continue to provide financial services to these enterprises.

  For example, Defendants SGBL and BANQUE LIBANO-FRANCAISE each maintain accounts for Hoda for Touristic Services and Management Holding SAL, a company co-owned by U.S. designated Hezbollah financier, Ali Yussuf Charara.

269. In sum, Hezbollah operates in plain sight in Lebanon with the knowing and deliberate assistance of Defendants.

### a. HEZBOLLAH BAC LEADERSHIP

#### i. Abdallah Safieddine

270. Abdallah Safieddine heads Hezbollah's BAC.

271. Mr. Safieddine is also Hezbollah's longtime Tehran-based envoy to the IRGC and oversees Hezbollah's international drug trafficking networks and operations.

272. Mr. Safieddine was involved in Iranian officials' access to LCB and key LCB managers, who provide Iran and Hezbollah with banking services (including Eurodollar bank accounts and access to the U.S. financial system). He is also the brother of senior Hezbollah leader Hashem Safieddine, and of Hamzah Safieddine, who represents his brothers' and Hezbollah's interests on the boards of several companies and businesses.

#### ii. Adham Tabaja

273. Adham Hussein Tabaja is a Hezbollah leader and one of its most important

---

[16] Specially Designated Narcotics Trafficker.

financiers. Alongside Abdallah Safieddine, Mr. Tabaja presides over the BAC and operates an enormous network of companies and businesses, whose proceeds support Hezbollah's terrorist endeavors.

274.    For these reasons, Mr. Tabaja himself, his company, Al-Inmaa Group for Tourism Works, and its subsidiaries "Al-Inmaa Engineering and Contracting" and "Al-Inmaa for Entertainment and Leisure Projects" were all designated as SDGTs by the U.S. Department of the U.S. Department of the Treasury on June 10, 2015.

275.    Al-Inmaa Group's subsidiary "Al-Inmaa Engineering and Contracting" is one of the largest and most successful real estate companies in Lebanon. It has been used by Hezbollah as an "investment mechanism" and has provided Hezbollah with financial and organizational infrastructure for its real estate investment, construction, and money laundering requirements.

276.    According to the U.S. Department of the U.S. Department of the Treasury, "Tabaja maintains direct ties to senior Hizballah organizational elements, including the terrorist group's operational component, the Islamic Jihad, and holds properties in Lebanon on behalf of the group".[17]

277.    As a prominent Hezbollah leader, Adham Tabaja was the elected mayor of Kfar Tibnit (located in Nabatiya district in south Lebanon) until his recent resignation in 2017 as a result of his designation as an SDGT.

278.    Mr. Tabaja's successor as mayor is also a Hezbollah operative.

279.    Adham Hussein Tabaja is an investor and holds key positions in a wide variety of

---

[17]      In 2009, Adham Tabaja bought a plot of land at the cost of $27 million USD in meetings that took place at the LCB. According to a formal report issued by the Lebanese General Directorate of Land Registry & Cadastre from 2017, Adham Tabaja is also linked to Defendant MEAB regarding the following properties in Lebanon: Ras Beirut 3361 Section 27 Block A and Nabatieh al-Tahta 688.

Hezbollah commercial enterprises, which together form the "Tabaja Network." These entities also share common shareholders and officers, many of whom are U.S.-designated terrorist entities or individuals. Specifically, Mr. Tabaja is involved with the following Hezbollah-controlled businesses in Lebanon:

- **Lebanese Communication Group** (SDGT). This media holding company is the parent company of Hezbollah's satellite television station *al-Manar* and *al-Nour* radio station (see dedicated section below). The following individuals are shareholders with the company:

  o Adham Hussein Tabaja (SDGT);
  o Amin Muhammad Cherri;
  o Sultan Khalifa As'ad; and
  o Muhammad Hassan Raad (Head of Hezbollah's parliamentary bloc).

- **Al-Inmaa Group for Tourism Works** (SDGT) (and its subsidiaries). This company provides travel and tourism services. The following individuals are involved with the company:

  o Adham Hussein Tabaja (SDGT) is a founder, partner and authorized signatory;
  o Issam Ahmad Saad (SDGT) is an authorized signatory of the company, founder and partner;
  o Imad Ramez Wazani is an authorized signatory of the company, founder and partner;
  o Muhammad Taha Jumaa is an authorized signatory of the company, founder and partner;
  o Ibrahim Waked Issa is a founder and partner;
  o Nabil Mahmoud Assaf (SDGT) is a founder and partner;
  o Hassan Muhammad Attiya is a founder and partner;
  o Attallah Jamil Shaito is a founder and partner; and
  o Ali Hussein al-Ashi is the attorney for the company.

- **Al-Inmaa Engineering and Contracting** (SDGT). This company is a subsidiary of Al-Inmaa Group for Tourism Works and provides construction services. The following individuals are involved with the company:

  o Adham Hussein Tabaja (SDGT) is manager, partner, founder and authorized signatory;
  o Issam Ahmad Saad (SDGT) is an authorized signatory of the company, founder and partner;

- o Ibrahim Waked Issa is a founder, partner and authorized signatory;
- o Muhammad Taha Jumaa is an authorized signatory of the company, founder and partner;
- o Imad Ramez Wazani is a founder and partner;
- o Attallah Jamil Shaito is a founder and partner;
- o Nabil Mahmoud Assaf (SDGT) is a founder and partner;
- o Hassan Muhammad Attiya is a founder and partner;
- o Jihad Muhammad Qansu (SDGT) is the financial manager; he serves as statutory auditor of numerous companies associated with Hezbollah (see dedicated section below);
- o Abdul Latif Saad (SDGT) is the manager of Al-Inmaa Engineering and Contracting branch in Baghdad;
- o Ali Hussein al-Ashi is the attorney for the company;
- o Muhammad al-Mukhtar Fallah Kallas (SDGT) is an accountant; and
- o Muhammad Badr al-Din (SDGT) is the manager of Al-Inmaa Engineering and Contracting branch in Basra.

- **Al-Inmaa for Entertainment and Leisure Projects** (SDGT), which is a subsidiary of Al-Inmaa Group for Tourism Works.

- **Family Park SARL**, which is a subsidiary of Al-Inmaa for Entertainment and Leisure Projects (SDGT). The following individuals are involved with the company:

  - o Issam Ahmad Saad (SDGT) is a partner and authorized signatory;
  - o Raed Hashem al-Amin is a partner;
  - o Ali Rauf Shaito is a partner;
  - o Rauf Ali Shaito is a partner and authorized signatory; and
  - o Attallah Jamil Shaito is a partner and authorized signatory.

- **Car Care Center** (SDGT), which trades in new and used cars, and is a subsidiary of Al-Inmaa Group for Tourism Works. The following individuals are involved with the company:

  - o Hussein Ali Faour (SDGT) is a co-founder, partner and authorized signatory;
  - o Ali Saleh Shuaib is a co-founder;
  - o Batoul Hussein Faour is a co-founder and partner;
  - o Abdallah Hassan Romani is a partner; and
  - o Faruq Muhammad Raef Hammoud is the attorney for the company.

- **Golden Hall**. The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a founder, partner and authorized signatory;
  - o Imad Ramez Wazani is a founder, partner and authorized signatory;

56

- o Attiya Muhammad Abbas is a founder and partner;
- o Rita Hassam Abu Samra is a founder and partner; and
- o Ahmad Saad is the company's manager.

- **Trading Development Company SAL**. The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a founder;
  - o Imad Ramez Wazani is a founder;
  - o Attallah Jamil Shaito is a founder;
  - o Muhammad al-Mukhtar Fallah Kallas (SDGT) is director, partner and authorized signatory;
  - o Yasser Ibrahim Issa is director, partner and authorized signatory; and
  - o Naji Tawfiq al-Mazzawi is a partner.

- **Family House SARL**. The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a partner, director, co-founder and authorized signatory;
  - o Hassan Muhammad Attiya is a partner and co-founder;
  - o Imad Ramez Wazani is a partner, co-founder, director and authorized signatory;
  - o Zaher Ismail al-Zayek is a partner and co-founder;
  - o Ahmad Saad is the general manager; and
  - o Ali Hussein al-Ashi is the attorney for the company.

- **Fun World Company** (a/k/a Aalam al-Marah Co SAL). The following entities and individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a co-founder;
  - o Abbas Musallam Wahbah is a shareholder and board member;
  - o Issam Ahmad Saad (SDGT) is a co-founder;
  - o Muhammad Taha Jumaa is a co-founder;
  - o Imad Ramez Wazani is a co-founder;
  - o Ali Hussein al-Ashi is the attorney for the company;
  - o Fadi Ali Hawi is chairman, majority shareholder and authorized signatory;
  - o Ali Muhammad Qubaysi is the statutory auditor;
  - o Hassan Mussa Awada is a founder, board member and shareholder; and
  - o Trust Compass Insurance is a shareholder.

- **Farah Travels Company SAE**. The following individuals are involved with the company:

- o Adham Hussein Tabaja (SDGT) is director, partner and authorized signatory;
- o Abbas Ahmad Fahas is a partner;
- o Issam Ahmad Saad (SDGT) is a partner;
- o Ali Hussein Tabaja (brother of Adham Tabaja) is a partner; and
- o Nada Hassan Hijazi is a partner.

- **City Park SARL**. The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a founder and partner;
  - o Abbas Ahmad Fahas is a founder, partner and authorized signatory;
  - o Nada Hassan Hijazi is a founder and partner;
  - o Issam Ahmad Saad (SDGT) is a founder and partner;
  - o Romel Hussein Tabaja (brother of Adham Tabaja) is a founder and partner and;
  - o Butrus Michel Ghanimah is the attorney for the company.

- **Fantasy World SARL**. The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is director, founder, authorized signatory and partner;
  - o Romel Hussein Tabaja (brother of Adham Tabaja) is a co-founder;
  - o Amin Muhammad Cherri is a co-founder;
  - o Raouf Ali Shaito is a co-founder;
  - o Muhammad Amin Badr al-Din is a co-founder;
  - o Imad Muhammad Cherri is a founder and partner;
  - o Ali Adham Tabaja is a partner;
  - o Muhammad Adham Tabaja is a partner; and
  - o Ali Hussein al-Ashi is the attorney for the company.

- **Mudun Tourism Projects Company SAL** (a/k/a "Green City"). The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is a founder and member of the Board of Directors;
  - o Salah Abd al-Rauf Izz al-Din is a board member;
  - o Safi Ahmad Hussein Darwish is a board member;
  - o Hassan Mussa Awada is a board member;
  - o Hassan Abd al-Matlab Fneish (brother of Hezbollah operative Muhammad Fneish) is a founder and board member;
  - o Hassan Muhammad Ali Safieddine is a board member;
  - o Hussein Muhammad Bahsun is a board member;
  - o Ali Hussein al-Ashi is the attorney for the company;

- o Haydar al-Sayyed Hashem Hashem is a board member;
- o Yussuf Muhammad Hussein Faour is the director, chairman, founder and authorized signatory;
- o Ali Muhammad Jumaa is deputy chairman;
- o Muhammad Mustafa Kalash is statutory auditor;
- o Mustafa Abd al-Mun'im Hamdun is statutory auditor;
- o Hassan Abd al-Amir Dabuq is a co-founder;
- o Husan Salman Madlaj is a founder and board member;
- o Fayyad Abdallah Dimashq is a co-founder;
- o Ali Ahmad Qassir is a co-founder;
- o Muhammad Ali Abd al-Latif Mazih is a co-founder;
- o Muhammad Sa'id Dakrub is a co-founder; and
- o Hassan Dib Amar is a board member.

- **Global Cleaners SARL** (SDGT). The following individuals are involved with the company:

  - o Adham Hussein Tabaja (SDGT) is owner and manager;
  - o Issam Ahmad Saad (SDGT) is a partner and authorized signatory;
  - o Maitham Muhsin Ubayd al-Zaydi is a founder, partner and authorized signatory;
  - o Shibl Muhsin Ubayd al-Zaydi (SDGT) is a partner and founder;
  - o Muhammad Adham Tabaja is a partner;
  - o Adnan Hussein Kawtharani (SDGT) is a partner;
  - o Hassan Muhammad Faour is the attorney for the company;
  - o Ahmad Jawad Shalash al-Fartusi is a co-founder; and
  - o Raed Hamid Taher Abu Eini is a co-founder.

280. In addition to the companies listed above, the Tabaja Network consists of many more companies affiliated with Adham Tabaja, his family, and/or his companies but not directly headed by him, including the following entities:

- **Al-Yaqout Restaurant** is an affiliated company of City Park SARL and Fantasy World SARL along with Farah Travels Company SAE, Fun World Company, Medical Cooperation Co SAL, Development Group for Touristic Projects SARL, Family House SARL, and Al-Inmaa for Engineering and Contracting SARL.

- **Medical Cooperation Co SAL** (Al-Khiam Hospital SAL) is an affiliated company of City Park SARL and Fantasy World SARL, along with Al-Yakout Restaurant, Farah Travels Company SAE, Fun World Company, Development Group for Touristic Projects SARL, Family House SARL, and Al-Inmaa for Engineering and Contracting SARL.

- **Development Group for Touristic Projects SARL** is an affiliated company of City Park SARL and Fantasy World SARL, along with Al-Yakout Restaurant, Farah Travels Company SAE, Fun World Company, Medical Cooperation Co SAL, Family House SARL, and Al-Inmaa for Engineering and Contracting SARL.

- **New Land SARL**. The following individuals are involved with the company:

  o Imad Ramez Wazani is director, co-founder, partner and authorized signatory;
  o Tareq Ali Hawi is a co-founder and partner;
  o Nabil Mahmoud Assaf (SDGT) is a co-founder and partner;
  o Ahmad Saad was human resources manager; and
  o Ali Hussein al-Ashi is the attorney for the company.

- **Gresco for Contracting and Trading Company SARL**. The following individuals are involved with the company:

  o Muhammad Taha Jumaa is a co-founder, partner and authorized signatory;
  o Ibrahim Waked Issa is a co-founder, partner and authorized signatory;
  o Attallah Jamil Shaito is a co-founder, partner and authorized signatory;
  o Abd al-Karim Ahmad Saad is a co-founder and partner; and
  o Ali Hussein al-Ashi is the attorney for the company.

- **Sanabel for Urban Studies and Architectural Design SAL**. The following individuals are involved with the company:

  o Jihad Muhammad Qansu (SDGT) is chairman and statutory auditor;
  o Ali Hussein al-Haj is a shareholder, co-founder and authorized signatory;
  o Adnan Abd al-Halim Mahdi is a shareholder, co-founder and board member;
  o Rafat Said Yunis is a shareholder, co-founder and board member;
  o Fadi Dawud al-Nimr is a shareholder, co-founder and board member; and
  o Ali Hassan Berro is the attorney for the company.

- **Al-Inmaa General Contractors SARL**. The following individuals are involved with the company:

  o Ibrahim Waked Issa is a co-founder, authorized signatory and partner;
  o Attallah Jamil Shaito is a co-founder, authorized signatory and

partner;

- o Haidar Saadallah Zgheib is a co-founder, authorized signatory and partner; and
- o Ali Hussein al-Ashi is the attorney for the company.

- **King Company for Manufacturing Trading Building Materials SARL**. The following individuals are involved with the company:

  - o Ibrahim Waked Issa is an authorized signatory of the company, co-founder and partner;
  - o Ali Muhammad Qansu (SDGT) is an authorized signatory of the company;
  - o Mahdi Ali Awada is an authorized signatory of the company, co-founder and partner;
  - o Muhammad Ahmad Farhat is an authorized signatory of the company;
  - o Muhammad Fayyad Jafal is a co-founder; and
  - o Ali Adham Tabaja is a partner.

- **Development Studies SARL**. The following individuals are involved with the company:

  - o Nabil Mahmoud Assaf (SDGT) is director, co-founder, partner and authorized signatory;
  - o Issam Ahmad Saad (SDGT) is a co-founder and partner;
  - o Hassan Muhammad Attiya is director, co-founder, partner and authorized signatory;
  - o Ahmad Izzat Khalil Muhammad is director, co-founder, partner and authorized signatory;
  - o Zinab Muhammad Saraeb is a founder and partner; and
  - o Ali Hussein al-Ashi is the attorney for the company.

- **Alia Company SARL**. The following individuals are involved with the company:

  - o Nabil Mahmoud Assaf (SDGT) is an authorized signatory of the company, co-founder and partner;
  - o Zaher Hassan Dabuq is an authorized signatory of the company and co-founder;
  - o Yasser Hassan Dabuq is an authorized signatory of the company and co-founder;
  - o Muhammad Adham Tabaja (son of Adham Tabaja) is an authorized signatory of the company, co-founder and partner;
  - o City Food Company SARL is a partner; and
  - o Ali Hussein al-Ashi is the attorney for the company.

- **Farah Tyre Company**. The following individuals are involved with the company:

  o Hassan Muhammad Attiya is an authorized signatory of the company, co-founder and partner;
  o Ali Hussein Tabaja (brother of Adham Tabaja) is an authorized signatory of the company, co-founder and partner;[18]
  o Abbas Musallam Wahbah is a co-founder and partner; and
  o Ali Hussein al-Ashi is the attorney for the company.

- **Cheaito Group SARL**. The following individuals are involved with the company:

  o Attallah Jamil Shaito is an authorized signatory of the company and partner;
  o Ahmad Muhammad Shaito is an authorized signatory of the company and co-founder;
  o Fairuz Khalil Shaito is a co-founder and partner;
  o Attallah Khalil Shaito is a co-founder;
  o Najah Khalil Shaito is a co-founder and partner;
  o Zainab Khalil Shaito is a co-founder and partner; and
  o Hisham Ali Faqih is the attorney for the company.

- **Lebanese Bread & Confectionery Company SAL**. The following individuals are involved with the company:

  o Hassan Muhammad Tabaja is general director, chairman, shareholder, co-founder and authorized signatory;
  o Bassam Muhammad Tabaja is vice-chairman, board member, co-founder, shareholder and authorized signatory;
  o Jihad Muhammad Qansu (SDGT) is statutory auditor;
  o Ahmad Mustafa Mahmoud Hammoud is a shareholder, co-founder and board member; and
  o Ali Hussein al-Ashi is the attorney for the company.

- **African Fish Company (Offshore) SAL**. The following individuals are involved with the company:

  o Jihad Muhammad Qansu (SDGT) is a co-founder;
  o Ali Muhammad Qansu (SDGT) is statutory auditor;
  o Muhammad Abdallah al-Amin (SDGT) is a co-founder;
  o Ahmad Muhammad Makke is general director, chairman, shareholder, and authorized signatory;
  o Khalil Hassan Faqih is a shareholder, co-founder and board

---

[18]  Defendant MEAB took over Mr. Tabaja's shares in the company.

member;
  o Muhammad Khadir Mattar is a shareholder and board member; and
  o Faruq Muhammad Raef Hammoud is the attorney for the company.

- **Africa Invest Company (Offshore) SAL**. The following individuals are involved with the company:

  o Jihad Muhammad Qansu (SDGT) is a co-founder;
  o Muhammad Abdallah al-Amin (SDGT) is chairman, shareholder, co-founder and authorized signatory;
  o Rulan Amin Madi is statutory auditor;
  o Khalil Hassan Faqih is a shareholder and board member;
  o Ali Khalil Faqih is a shareholder and board member;
  o Hassan Said Farran is a co-founder; and
  o Malik Jamil al-Sayd is the attorney for the company.

- **Farah Trading Company for Iron & Building Materials SAE**. The following individuals are involved with the company:

  o Ali Hussein Tabaja (brother of Adham Tabaja) is an authorized signatory of the company and partner;
  o Muhammad Ali Hawi is an authorized signatory of the company and partner;
  o Ibrahim Waked Issa is an authorized signatory of the company and partner;
  o Batul Adham Tabaja is a partner;
  o Fatima al-Zahra Adham Tabaja is a partner; and
  o Wala Tabaja (daughter of Adham Tanaja) is a partner.

- **King Charcoal SARL**. The following individuals are involved with the company:

  o Ali Hussein Tabaja (brother of Adham Tabaja) is an authorized signatory of the company and partner;
  o Muhammad Adham Tabaja (son of Adham Tabaja) is an authorized signatory of the company and partner; and
  o Hussein Abd al-Rida Tabaja is an authorized signatory of the company and partner.

281. The following individuals were designated as SDGTs by OFAC as a result of their connections with Adham Hussein Tabaja:

- Hussein Ali Faour worked with Adham Tabaja to secure Al-Inmaa Engineering and Contracting projects in Iraq. Mr. Faur is a member of Hezbollah's Islamic Jihad and manager of Hezbollah's "Car Care

Center" (SDGT).

- Muhammad al-Mukhtar Kallas provided financial services to Adham Tabaja through his work as an accountant for SDGT Al-Inmaa Engineering and Contracting.

- Hassan Jamal al-Din provided financial services to Adham Tabaja through his work as an accountant for SDGT Al-Inmaa Engineering and Contracting.

- Shibl Muhsin Ubayd al-Zaydi facilitated money transfers from Iraq to Lebanon on behalf of Tabaja. Mr. al-Zaydi is a partner and founder of SDGT Global Cleaners SARL.

- Muhammad Abdallah al-Amin assisted Adham Tabaja in concealing funds and circumventing the impact of sanctions.

- Muhammad Noureddine used his company Trade Point International SARL (SDGT) in order to provide financial services to Adham Tabaja and his company Al-Inmaa Engineering and Contracting (SDGT).

- Hamdi Zaher El Dine, an employee of SDGT Trade Point International SARL, transferred funds to Adham Tabaja and to employees of Al-Inmaa Engineering and Contracting.

- Yussuf Hashim oversees Hezbollah operations in Iraq and arranged for the security and protection of Mr. Tabaja inside Iraq.

- Jihad Muhammad Qansu provided financial services to Adham Tabaja through his work as a financial manager for Al-Inmaa Engineering and Contracting (SDGT). Mr. Qansu assisted Adham Tabaja in accounting matters.

- Ali Muhammad Qansu maintained millions of dollars in bonds for Adham Tabaja.

- Issam Ahmad Saad is a managing partner and minority shareholder in Al-Inmaa Engineering and Contracting (SDGT).

- Nabil Mahmoud Assaf is purchasing manager and shareholder in Al-Inmaa Engineering and Contracting (SDGT).

- Abdul Latif Saad is the manager of Al-Inmaa Engineering and Contracting – Baghdad Branch (SDGT), and as such coordinated with Car Care Center (SDGT) and Global Cleaners SARL (SDGT) – both companies are subsidiaries of Adham Tabaja's Al-Inmaa Group for

Tourism Works (SDGT).

- Muhammad Badr al-Din is the manager of Al-Inmaa Engineering and Contracting – Basra Branch (SDGT) in Iraq.

- Muhammad Ibrahim Bazzi provided funds to Adham Tabaja and held a joint line of credit together with Mr.Tabaja.

- Ali Yussuf Charara worked together with Adham Tabaja on oil ventures in Iraq.

### iii.    Sultan Khalifa As'ad

282.    Sultan Khalifa As'ad is a prominent and longstanding Hezbollah leader and financier who serves as Deputy Chairman of the Executive Council for Municipal Affairs for Hezbollah and formerly headed the Finance Unit of Hezbollah.

283.    He was the founder of Hezbollah's construction arm, Jihad al-Bina, and one of its main front companies, the Meamar Company for Engineering and Development.

284.    Mr. As'ad was also the co-founder and partner of Hezbollah's think tank, the Consultative Center for Studies and Documentation.

285.    Mr. As'ad was also a founder and early shareholder in the Lebanese Communication Group (an SDGT), the parent company of Hezbollah's satellite television station and SDGT, *Al-Manar*.

286.    Mr. As'ad owns several properties associated with Hezbollah, including the building that houses the Lebanese Arts Association – Risalat, one of Hezbollah's leading cultural institutions.

287.    Mr. As'ad is also the largest shareholder in Compu House SARL, a Hezbollah-controlled company serving as a wholesale and retail seller of computers and software.

### iv.    Ali Yussuf Charara (a/k/a Ali Sharara)

288.    SDGT Ali Yussuf Charara is a Hezbollah operative and financier who owns and

operates a number of companies with his brother, Muhammad Yussuf Charara.

289.    Ali Yussuf Charara is chairman, general manager and the main shareholder of Spectrum Investment Group Holding SAL, a Lebanon-based telecommunications company that provides integrated telecommunications services in the Middle East, Africa, and Europe. On January 7, 2016, both Ali Yussuf Charara and Spectrum Investment Group Holding SAL were designated as SDGTs by the U.S. Department of the U.S. Department of the Treasury.

290.    According to the U.S. Department of the U.S. Department of the Treasury, Hezbollah invests millions of U.S. dollars with Mr. Charara on projects that financially support the organization.

291.    Ali Yussuf Charara also worked with Hezbollah supporter Kassem Hejeij (SDGT) of Defendant MIDDLE EAST AND AFRICA BANK and Adham Hussein Tabaja (SDGT) on oil ventures in Iraq.

292.    Mr. Charara is involved in several companies, including:

- **Spectrum Investment Group Holding SAL** (SDGT), which is a Lebanon-based telecommunications services company. The following individuals are involved with the company:

  o Ali Yussuf Charara is the chairman, co-founder, authorized signatory and the main shareholder (holds 750 shares);
  o Abd al-Halim al-Shaykh Musa Charara is the statutory auditor for the company;
  o Yussuf Abd al-Amir Charara is a shareholder (holding 20 shares) and a member of the board of directors;
  o Muhammad Yussuf Charara is a shareholder (holding 230 shares), co-founder and a member of the board of directors;
  o Ali Ibrahim Charara is a co-founder of the company; and
  o Muhammad Farid Mattar is the firm's attorney.

- **Spectrum International Investment Holding SAL** (SDGT), which is a Lebanon-based telecommunications services company. The following individuals are involved with the company:

  o Ali Yussuf Charara is chairman of the board of directors, a partner

(holding 1,760 shares), co-founder and authorized signatory;

- o Muhammad Yussuf Charara is a partner (holding 200 shares), co-founder and member of the board of directors;
- o Edmond Yussuf Saadeh serves as statutory auditor for the company; and
- o Muhammad Farid Mattar is the attorney, as well as a partner (holding 40 shares) and a member of the board of directors.

- **Spectrum (Offshore) SAL**. The following individuals are involved with the company:

  - o Ali Yussuf Charara (SDGT) is chairman, authorized signatory, co-founder and a shareholder;
  - o Edmond Yussuf Saadeh serves as statutory auditor for the company;
  - o Muhammad Yussuf Charara (Ali's brother) is a co-founder, shareholder and board member;
  - o Yussuf al-Shaykh Abd al-Amir Charara is a shareholder, co-founder and board member; and
  - o Muhammad Farid Mattar is the attorney for the company (serves as attorney for many Hezbollah-controlled companies).

- **B.I. Group Holding SAL**. The following individuals are involved with the company:

  - o Ali Yussuf Charara (SDGT) is a co-founder and a majority shareholder;
  - o Muhammad Yussuf Charara (Ali's brother) is a co-founder and shareholder; and
  - o Mohammad Farid Mattar is the attorney for the company as well as a co-founder and shareholder.

- **Signum International Holding SAL**. The following individuals are involved with the company:

  - o Ali Yussuf Charara (SDGT) is a co-founder and a major shareholder;
  - o Carla Saba Saba is a co-founder and a major shareholder; and
  - o Mohammad Farid Mattar is the attorney for the company as well as a co-founder and minor shareholder.

- **Car Escort Services (Offshore) SAL**, which is an import/export company based in Lebanon, designated an SDGT by the U.S. Department of the U.S. Department of the Treasury. The following individuals are involved with the company:

  - o Fuad Haidar Najm is liquidator;

- o Ali Muhammad Kharrubi (SDNT) is chairman, general manager, co-founder, authorized signatory and co-equal shareholder in the company;
- o Ali Yussuf Charara (SDGT) is a co-founder, board member, and co-equal shareholder in the company;
- o Muhammad Ibrahim Bazzi (SDGT) is a co-founder, board member, and co-equal shareholder in the company;
- o Edmond Yussuf Saadeh serves as statutory auditor for the company; and
- o Muhammad Farid Mattar is the attorney for the company.

- **Hoda for Touristic Services & Management Holding SAL**. Defendants SGLB and BANQUE LIBANO-FRANÇAISE maintain accounts for this company. The following individuals are involved with the company:

  - o Abbas Abd al-Latif Fawaz is chairman, co-founder, shareholder (holds 17,500 shares), and authorized signatory for the company;
  - o Ali Ahmad Ismail is a co-founder and shareholder (holds 7,500 shares);
  - o Ali Yussuf Charara (SDGT) is a co-founder, shareholder (holds 5,000 shares) and member of the board of directors;
  - o Jalal Muhammad Rashed Bitar is a co-founder and shareholder (holds 2,000 shares);
  - o Fadl Abbas Fawaz is a shareholder (holds 2,500 shares), co-founder and member of the board of directors;
  - o Sadeq Abbas Fawaz is a shareholder (holds 2,500 shares), co-founder and member of the board of directors;
  - o Ziyad Ali Ismail is a shareholder (holds 2,500 shares), co-founder and member of the board of directors;
  - o Ahmad Ali Ismail is a shareholder (holds 2,500 shares), co-founder, authorized signatory and member of the board of directors;
  - o Wa'il Jalal Bitar is a shareholder (holds 1,500 shares) and co-founder of the company;
  - o Nasser Jalal Bitar is a shareholder (holds 1,500 shares), co-founder and member of the board of directors;
  - o Fadi Fawzi Fawaz is a co-founder of the company;
  - o Abd al-Reda Abdallah Khorshid is a shareholder (holds 5,000 shares);
  - o Price-Waterhouse-Coopers is the audit firm for the company; and
  - o Muhammad Farid Mattar is the attorney for the company.

- **One Globe Operator SAL Holding**. The following individuals are involved with the company:

  - o E.B.D. Group Holding SAL is a shareholder (holds 818 shares) and

member of the board of directors;

- o  Ali Yussuf Charara (SDGT) is a co-founder of the company;
- o  Samir Subhi Abu-Hassan is an authorized signatory and a shareholder (holds one share);
- o  Raghid Wasif Charara is an authorized signatory, a shareholder (holds 100 shares), and member of the board of directors;
- o  Ihab Awsaf Ghurayb is an authorized signatory, a shareholder (holds 80 shares), and member of the board of directors;
- o  Ali Ibrahim Charara (see above) is a co-founder of the company;
- o  Abd al-Ghani Ra'if Qassem is a co-founder of the company;
- o  Wajih Masoun Maliki is a shareholder (holds one share), chairman and authorized signatory;
- o  Abd al-Halim al-Shaykh Mussa Charara serves as the statutory auditor for the company; and
- o  Muhammad Farid Mattar is the attorney for the company.

- **International Group Holding SAL**. The following individuals and entities are involved with the company:

  - o  Abbas Abd al-Latif Fawaz is director general, chairman, majority shareholder (holding 23,950 shares), co-founder, and authorized signatory for the company;
  - o  Ali Ahmad Ismail is vice president, a shareholder (holds 3,750 shares), co-founder, authorized signatory and member of the board of directors;
  - o  Ziyad Ali Ismail is a shareholder (holding 3,750 shares), co-founder, and member of the board of directors;
  - o  Nasrin Ali Ismail is a shareholder (holds 3,750 shares) and co-founder of the company;
  - o  Ahmad Ali Ismail is a shareholder (holds 3,750 shares), co-founder and member of the board of directors;
  - o  Fadl Abbas Fawaz is a shareholder (holds 5,000 shares), co-founder and member of the board of directors;
  - o  Sadeq Abbas Fawaz is a shareholder (holds 3,000 shares), co-founder and member of the board of directors;
  - o  Farah Abbas Fawaz is a shareholder (holds 3,000 shares) and co-founder of the company;
  - o  Ali Yussuf Charara is a co-founder of the company;
  - o  Abd al-Reda Abdallah Khorshid is co-foudner of the company;
  - o  Hoda for Touristic Services & Management Holding SAL is a minor shareholder in the company;
  - o  Wassim Hatem Shahin serves as the company's statutory auditor for the company; and
  - o  Muhammad Farid Mattar is the attorney for the company.

- **Medical Aid (Offshore) SAL** (MEDAID) was founded on December

69

12, 2002. The following individuals are involved with the company:

- o Ali Yussuf Charara (SDGT) is a co-founder of the company; and
- o Mohammed Samir Ali Ahmed is a co-founder of the company.

- **EBD Teltac (Offshore) SAL**, founded in 2003, operates in Iran as well as Lebanon. The following individuals are involved with the company:

  - o Ali Yussuf Charara (SDGT) is a co-founder of the company;
  - o Ali Ibrahim Charara is a co-founder of the company;
  - o Mohammad Farid Mattar is a co-founder of the company;
  - o Wajih Masoun al-Maliki is a co-founder of the company;
  - o Abd al-Halim Charara is a co-founder of the company;
  - o One Globe Operator Holding SAL holds 900 shares;
  - o Spectrum Investment Group Holding SAL (SDGT) holds 73 shares; and
  - o EBD Group (Holding) SAL holds 25 shares.

### v.    The Tajideen Family (a/k/a "Taj al-Din")

293.    The Tajideen family owns many businesses in Lebanon and several other countries.

294.    There were originally eleven siblings, of which nine are or were active in the Tajideen Network in some fashion:

- Kassim Muhammad Tajideen;
- Mahmoud Muhammad Tajideen;
- Hassan Muhammad Tajideen (deceased);
- Ali Muhammad Tajideen;
- Hussein Muhammad Tajideen;
- Fatimah Muhammad Tajideen;
- Yussuf Muhammad Tajideen;
- Ibrahim Muhammad Tajideen;
- Ahmad Muhammad Tajideen;
- Jaffar Muhammad Tajideen; and
- Mariam Muhammad Tajideen.

295.    The Tajideen brothers Kassim Tajideen, Ali Tajideen and Hussein Tajideen are Lebanese businessmen who have been designated as SDGTs for their role as Hezbollah fundraisers, money launderers, and financial contributors. Further, the other Tajideen family

members listed above, though not (yet) designated as SDGTs, play supporting roles in the Tajideen Network.

### (a) Kassim Tajideen

296. The eldest brother, Kassim Tajideen, has built a global network of food-trading companies and real-estate holdings in Lebanon and Africa.

297. In 2003, Kassim Tajideen was arrested in Belgium in connection with fraud, money laundering, and diamond smuggling.

298. On May 27, 2009, Kassim Tajideen was designated as an SDGT and identified by the U.S. Department of the U.S. Department of the Treasury as "an important financial contributor to Hizballah who operates a network of businesses in Lebanon and Africa. He has contributed tens of millions of dollars to Hizballah and has sent funds to Hizballah through his brother, a Hizballah commander in Lebanon. In addition, Kassim Tajideen and his brothers run cover companies for Hizballah in Africa."

299. Kassim Tajideen owns or controls several companies designated as SDGTs, including the following entities:

- **Tajco Company** (LTD; SARL; LLC). On December 9, 2010, Tajco was designated as an SDGT. Tajco is a multinational company involved with real estate, international trade, and merchandising based in The Gambia. It manages a series of grocery stores in The Gambia called "Kairaba Shopping Centre" (an SDGT), as well as other organizations throughout Lebanon, Sierra Leone, the Democratic Republic of Congo, Angola, and the British Virgin Islands. In 2013, it was reported that the company's name was changed to "Senesco Banjul." The following individuals are involved with the company:

  o  Kassim Tajideen is owner and founder (as of 2007);
  o  Ali Tajideen is a co-owner and director general of the company;
  o  Hassan Ali Tajideen is executive director of the company; and
  o  Hussein Tajideen is a co-owner and managing director in The Gambia.

- **Kairaba Supermarket** (a/k/a Kairaba Shopping Center). Kairaba Supermarket is a subsidiary business of SDGT Tajco Ltd. Both companies name Hussein Tajideen as the same point of contact and manager, and both use the same primary business address.[19]

- **Ovlas Trading SA**. Ovlas Trading SA is the parent company of Ovlas Trading (Offshore) SAL and Beton Liban SAL (a/k/a BL SAL). The company deals with general trading and food manufacturing. Ovlas Trading SA was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010. Ovlas Trading SA opened a branch in the British Virgin Islands in 2005, shortly after being founded in Lebanon. The company has held accounts in the following Defendant banks: BLOM BANK, LEBANESE SWISS BANK, BANQUE LIBANO-FRANCAISE SAL, BANK OF BEIRUT AND THE ARAB COUNTRIES SAL, and LEBANON AND GULF BANK. The following individuals are involved with the company:

  o Kassim Tajideen is the owner, according to the U.S. Department of the U.S. Department of the Treasury;
  o Hassan Muhammad Tajideen was the founder, managing director and a shareholder;
  o Ahmad Hassan Tajideen is a shareholder;
  o Najma Hassan Jabir (Hassan's wife) is a shareholder; and
  o Nadin Hassan Tajideen (Hassan's and Najma's daughter) is a shareholder.

- **Golfrate Holdings (Angola) LDA**. Owned by Kassim Tajideen, Golfrate is a wholly owned subsidiary of Ovlas Trading, with part of its main operations located in Angola.

- **Afri Belg Commercio E Industria LDA**. Afri Belg Commercio E Industria LDA, is a subsidiary of Ovlas Trading, and is presided over by Kassim Tajideen.

- **Grupo Arosfran Empreendimentos E Participacoes SARL** (Grupo Arosfran). Kassim Tajideen founded Grupo Arosfran in Luanda, Angola, in November 1991. He has been the primary decision-maker and leader of Grupo Arosfran, and a member of the Board of Directors. Grupo Arosfran is listed as either a branch or a subsidiary of Ovlas Trading on multiple international business websites.

300.    Kassim's brothers, Ali and Hussein Tajideen, were designated as SDGTs by the

---

[19]    A December 17, 2013 OFAC enforcement action demonstrates the way the Tajideen Network conducts its operations between Africa and Lebanon via U.S. dollar-clearing in the U.S. *See e.g.* https://www.U.S. Department of the Treasury.gov/resource-center/sanctions/CivPen/Documents/20131217_hsbc.pdf.

U.S. Department of the U.S. Department of the Treasury. Ali Tajideen and Hussein Tajideen were business partners of Kassim Tajideen.

### (b) Ali Tajideen

301.    Ali Tajideen was a Hezbollah commander in southern Lebanon, providing cash to Hezbollah in tranches as large as $1 million U.S. dollars each.

302.    Ali Tajideen is also a major player in Jihad al-Bina, the Lebanon-based construction company formed and operated by Hezbollah (described above), which was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury in February 2007.

303.    As of December 2010, and since at least December 2007, Ali Tajideen used Tajco SARL, operating as Tajco Company LLC, as the primary entity to purchase and develop properties in Lebanon on behalf of Hezbollah.

304.    Under the name of Tajco Company LLC, Ali Tajideen developed the properties, established mortgage loans, and acquired mortgage-life insurance to cover the mortgage borrowers.

305.    Ali Tajideen was designated by OFAC as an SDGT on December 9, 2010.

306.    Ali Tajideen controls or is affiliated with the following companies in Lebanon:

- **Al-Omran SARL**, which deals mainly with the buying and selling of ready-made concrete. The following individuals are involved with the company:

  o  Hassan Ali Tajideen was its authorized signatory before his death;
  o  Ali Muhammad Tajideen is a partner holding 100 shares;
  o  Hassan Ali Tajideen is a partner holding 100 shares; and
  o  Muhammad Ni'mah Shams al-Din is a partner holding 100 shares.

- **Al-Ataa Company**. Hassan Bazoun and Partners, which deals with import and export of real estate-related materials and products. The following individuals are involved with the company:

  o  Ali Tajideen is a partner, holding 3,729 shares;

- o Ali Ibrahim Tajideen (Ali Tajideen's nephew, Ibrahim Tajideen's son) is a partner, holding 648 shares;
- o Reda Ali Atawi is another prominent partner in the company;
- o Ibrahim Muhammad Rakin is the company's auditor. He also serves as auditor for General Medical Provider (Offshore) SAL (a/k/a GMP Offshore SAL) – a company belonging to the Qauq family, specifically to Zuhayr Yahya Qauq and his daughters. Zuhayr Qauq is Nabil Qauq's brother – the latter is a deputy of Hashem Safieddine's, Head of Hezbollah's Executive Council.

- **Advanced Sports Center SAL** (ASC), which runs a sports center located in Beirut. The following individuals are involved with the company:

  - o Yussuf Muhammad Tajideen is a co-founder; and
  - o Ali Tajideen is a co-founder.

- **Ad-Diyar Trading and Contracting SARL**, which deals with general trading, contracting, and real estate. The following individuals are involved with the company:

  - o Ali Tajideen is a partner in the company, owning 33 percent of the shares;
  - o Hassan Ali Suwaydan is another partner in the company, owning 33 percent of the shares; and
  - o Ibrahim Mahmoud Yussuf is a partner in Ad-Diyar, owning 33 percent of the shares. He is another prominent member of the Tajideen Network, as partner and board member in BMC SAL and Société Orientale Libanaise d'Investissement et Développement SAL.

- **Al-Izdihar for Contracting SARL**, which deals with real estate and construction. The following individuals are involved with the company:

  - o Ali Tajideen is the founder;
  - o Hassan Ali Abbas is a co-founder and a partner (holding 100 shares). He is also a partner in the Tajideen company Atwi and Abbas Trading Company, alongside Hassan Ali Tajideen and Amir Afif Abu Khalil;
  - o Hassan Ali Suwaydan is a partner; and
  - o Amir Afif Abu Khalil is the company's attorney.

- **Company for Development and Prosperity**, which deals mainly with the establishment, construction, and investment in parks, hotels, restaurants, and swimming pools. The following individuals are involved with the company:

74

o   Yussuf Muhammad Tajideen owns 17 percent of the company (5,000 shares);
o   Samiha Ibrahim Tajideen (Yussuf's wife) owns 17 percent of the company and is a member of the board of directors;
o   Ali Muhammad Tajideen is chairman, signed commissioner, and holds 10,000 shares;
o   Shawqi Ra'if Abu Khalil is registered as auditor, shareholder, and member of the board of directors; and
o   Amir Afif Abu Khalil is the attorney for the company.

- **Hyram Maritime SAL**, which was involved in transportation and logistics. According to its auditor, the company was closed down and has not been operational since 2013. The following individuals were involved with the company:

o   Ali Tajideen was co-founder;
o   Yussuf Tajideen was co-founder;
o   Ali Hussein Saad was shareholder (held 4,000 shares), signed commissioner and chairman;
o   Khadijah Amin Mahmoud was the company's vice-president, shareholder (owned 4,000 shares), and board member;
o   Elissar Hussein Sayegh (Fatimah Tajideen's daughter, Ali Tajideen's niece) was a shareholder (owns 2,000 shares) and board member;
o   Shawqi Ra'if Abu Khalil was auditor and held 4,000 shares; and
o   Amir Afif Abu Khalil was the company's attorney.

- **Tajco Company SAE**. Tajco Company SAE is the Lebanese sister company of Tajco. Tajco Company SAE has been used for many years as Hezbollah's conduit for purchasing land in Lebanon to expand its areas of control and to acquire strategic parcels for political and strategic purposes. The following individuals are involved with the company:

o   Kassim Tajideen (SDGT) is a co-founder;
o   Ali Tajideen (SDGT) is a partner and co-founder;
o   Nur al-Ayn Muhammad Ali Utwah (Ali Tajideen's wife) is a partner;
o   Hussein Tajideen (SDGT) is a partner;
o   Hassan Ali Tajideen is a partner;
o   Mahmoud Tajideen is a partner and co-founder;
o   Ibrahim Tajideen is a co-founder;
o   Yussuf Tajideen is a co-founder; and
o   Amir Afif Abu Khalil serves as the attorney.

- **Tajideen Building and Construction Enterprise** (a/k/a Tajideen Establishment for Building & Construction), which was established in 2004. The following individual, among others, is involved with the company:

75

o   Ali Tajideen is listed as a dealer.

**(c) Hussein Tajideen**

307.    Both Ali and Hussein Tajideen are among Hezbollah's top financiers in Africa. Hussein Tajideen is a primary Hezbollah fundraiser and prominent Hezbollah supporter in The Gambia. Hussein

308.    As of December 2010, and since at least March 2006, Hussein Tajideen owned 50 percent of Tajco Ltd, in Banjul, The Gambia, and served as the managing director of the company.

309.    Hussein Tajideen was designated an SDGT by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010 together with his brother, Ali.

310.    Tajideen resided in The Gambia for 15 years until he was expelled on June 7, 2013.

**(d) Ahmad Tajideen**

311.    Ahmad Tajideen manages the family's businesses and money laundering operations in the Congo.

312.    His food and diamond trade company Congo Futur is a front organization for Hezbollah and has been designated by OFAC as an SDGT.

313.    One of Congo Futur's subsidiary companies is Trans-M,[20] which won lucrative contracts from the Congolese government for forestry rights, contracts that netted Mr. Tajideen hundreds of millions of U.S. dollars in revenue and profits.

314.    Ahmad Tajideen controls or is affiliated with the following companies in Lebanon:

- **Al-Massar Real Estate SAL**. Although not (yet) designated as an SDGT, Al-Massar Real Estate SAL is clearly controlled by the Tajideen family. The following individuals are involved with the company:

  o   Ahmad Muhammad Tajideen is a member of the board of directors;
  o   Jaffar Muhammad Tajideen is a member of the board of directors;

---

[20]    Trans-M has changed its name to Cotrefor.

- o Yussuf Muhammad Tajideen is the company's chairman and a member of the board of directors;
- o Qassem Hassan Tajideen (their nephew) is a shareholder and board member;
- o Shawqi Ra'if Abu Khalil is the auditor;
- o Bassam Zafir Tamim is the accountant; and
- o Amir Afif Abu Khalil serves as the attorney.

- **Bream Star Line SAL Offshore**. The following individuals are involved with the company:

- o Ahmad Tajideen is a shareholder and co-founder;
- o Ali Hussein Saad is a founder, chairman, shareholder and signed commissioner; and
- o Khadijah Amin Mahmoud is deputy chairman, shareholder, co-founder and member of the board of directors.

### (e) Jaffar Muhammad Tajideen

315.    Jaffar Muhammad Tajideen is a member of the board of directors of Al-Massar Real Estate SAL (discussed above), together with his brothers Ahmad and Yussuf Muhammad Tajideen (the company's chairman).

### (f) Fatimah Tajideen

316.    Fatimah Tajideen was born in 1966. Fatimah Tajideen is the sister of the aforementioned Tajideen brothers. Although not directly involved in the Tajideen Network, her husband, Hussein Tawfiq Sayegh, and their daughter, Elissar Hussein Sayegh, are in several Tajideen holdings:

- **Afrimex (Offshore) SAL**. The following individuals are involved with the company:

- o Hussein Tawfiq Sayegh is a founder, vice president/vice chairman, member of the board of directors and shareholder;
- o Yussuf Muhammad Tajideen is a founder;
- o Elissar Hussein Sayegh is chairwoman and shareholder;
- o Hana Abdelkarim Jawad (Fatimah Tajideen's sister-in-law, Ibrahim Tajideen's wife) is a member of the board of directors;
- o Amir Afif Abu Khalil serves as the attorney; and
- o Shawqi Ra'if Abu Khalil serves as statutory auditor.

- **Union Real Estate Development Company SAL**. Deals with real estate, construction, and tourism. The company is owned wholly by members of the Tajideen family. The following individuals are involved with the company:

  o Hussein Tawfiq Sayegh is chairman, co-founder, signed commissioner and a shareholder (holds 75 shares);
  o Mahmoud Muhammad Tajideen is a majority shareholder (holding 750 shares), board member and co-founder;
  o Yussuf Muhammad Tajideen is vice president and co-founder, holding 100 shares;
  o Khadijah Hassan Matar (Mahmoud Tajideen's wife, Yussuf's sister in law) is a board member, co-founder, and holds 75 shares;
  o Shawqi Ra'if Abu Khalil is the company's auditor; and
  o Amir Afif Abu Khalil serves as the attorney.

- **Hyram Maritime SAL** (discussed above).

### (g) Mahmoud Muhammad Tajideen

317. Mahmoud Muhammad Tajideen is the brother of the aforementioned Tajideen brothers (SDGTs).

318. Mahmoud Muhammad Tajideen is directly involved in the Tajideen Network through two Tajideen holdings:

- **Union Real Estate Development Company SAL** (discussed above); and

- **Tajco Company SAE** (discussed above).

### (h) Yussuf Muhammad Tajideen

319. Yussuf Muhammad Tajideen was born in 1967. He is the brother of the aforementioned Tajideen brothers (SDGTs).

320. Yussuf Muhammad Tajideen is directly involved in the Tajideen Network through more than a dozen Tajideen holdings, including the following Hezbollah entities:

- **Tajco Company SAE** (discussed above).

- **Hyram Maritime SAL** (discussed above).

78

- **Al-Massar Real Estate SAL** (discussed above).

- **Afrimex (Offshore) SAL** (discussed above).

- **Al-Dalhamiya Country Club Company**. The following individuals are involved with the company:

  o Yussuf Muhammad Tajideen serves as general manager, chairman of the board, and shareholder;
  o Abdallah Tajideen (his son) serves as vice-chairman and a major shareholder;
  o Ibrahim Muhammad Tajideen is a principal shareholder;
  o Najmah Hassan Jabir (late Hassan Muhammad Tajideen's wife) is a principal shareholder;
  o Wafa Muhammad Nussar Alamah is a shareholder;
  o Wissam Hussein Hammoud is the attorney for the company;
  o Hussein Abd al-Muttalib Jawad is a shareholder; and
  o Shawqi Ra'if Abu Khalil serves as statutory auditor.

- **Rifieh Pour L'amélioration** (a/k/a Rural Real Estate Improvement SARL), which is a Lebanese real estate company founded in 1975. The company's offices are located in the Tajco building in Beirut. The following individuals are involved with the company:

  o Ibrahim Muhammad Tajideen is the majority shareholder, holding 69 percent of the company's shares;
  o Yussuf Muhammad Tajideen is a partner and shareholder;
  o Abduallah Yussuf Tajideen (Yussuf's son) is a partner and shareholder;
  o Hussein Abd al-Muttalib Jawad is a partner; and
  o Wissam Hussein Hammoud is the company's lawyer.

- **Union Real Estate Development Company SAL** (discussed above).

- **Advanced Sports Center - ASC SAL** (discussed above).

- **Lebanese Real Estate Development & Investment Company SAL**, which deals with purchasing real estate and the rights to it, leasing, investments, construction and tourism. The following individuals are involved with the company:

  o Yussuf Muhammad Tajideen is member of the board of directors and holds 12.5 percent of its shares (125 shares);
  o Najmah Hassan Jabir (Yussuf's sister-in-law, Hassan Muhammad Abd al-Hassan Tajideen's wife) is registered as founder, signed

commissioner, head of board of directors, and holds 50 percent of the shares;

o Shawqi Ra'if Abu Khalil is registered as auditor and supervising commissioner; and

o Amir Afif Abu Khalil is the attorney for the company.

- **Company for Development and Prosperity** (discussed above).

- **Distributions and Agencies Company SAL**, whcih deals with commercial works such as selling, buying, exporting, importing, and renting. The following individuals are involved with the company:

o Yussuf Muhammad Tajideen is the vice-president, signed commissioner, member of the board of directors, and owns 1,000 shares;

o Ahmad Hassan Tajideen is head of the board of directors, signed commissioner, and shareholder (26,500 shares);

o Hassan Ali Tajideen is a shareholder (2,000 shares);

o Ahmad Abd al-Karim Said Muhammad Jawad (Ibrahim Muhammad Tajideen's brother-in-law) is a shareholder (500 shares) and a member of the board of directors;

o Shawqi Ra'if Abu Khalil is the auditor; and

o Amir Afif Abu Khalil is the attorney for the company.

#### (i)  Hassan Muhammad Tajideen

321.    Hassan Muhammad Tajideen was born in 1960. He was the third oldest brother after Kassim and Mahmoud.

322.    Hassan was on board Ethiopian Airlines Flight 409 when it crashed into the Mediterranean Sea shortly after take-off from Beirut, Lebanon, in January 2010.

323.    Hassan Muhammad Tajideen was also heavily involved in the following Hezbollah-controlled companies:

- **Ovlas Trading SA** (discussed above); and

- **Al-Omran SARL** (discussed above).

#### (j)  Ibrahim Muhammad Tajideen

324.    Ibrahim is the younger brother of the aforementioned Tajideen brothers. Ibrahim,

alongside his wife Hana Abd al-Karim Jawad and their two adult children, Duaa and Ali, is involved with prominent companies and business of the Tajideen Network, directly linked to Hezbollah.

325. Ibrahim Tajideen is directly affiliated with the following Hezbollah-controlled companies:

- **Tajco Company SAE** (discussed above).

- **Enmaa Dalhamiya Company SAL** (a/k/a Deliku), which deals with real estate and construction. The following individuals are involved with the company:

    o Najmah Hassan Jabir (Hassan Muhammad Tajideen's wife) is the manager, a board member and partner (holds 785 shares);
    o Yussuf Muhammad Tajideen is chairman and partner (holds 829 shares);
    o Abdallah Yussuf Tajideen (Yussuf Muhammad Tajideen's son) is vice-president, a board member and partner (holds 536 shares);
    o Ibrahim Tajideen is the majority shareholder (holding 13,510 shares) and a board member;
    o Wafa Muhammad Nussar Alamah is a shareholder;
    o Hussein Abd al-Muttalib Jawad is a shareholder;
    o Shawqi Ra'if Abu Khalil is auditor; and
    o Wissam Hussein Hammoud is the attorney for the company.

- **Al-Dalhamiya Country Club Company** (discussed above).

- **Rifieh Pour L'amélioration** (discussed above).

### vi. Muhammad Ibrahim Bazzi

326. Muhammad Ibrahim Bazzi is a Hezbollah financier who has fundraised millions of dollars for Hezbollah through his business activities in Belgium, Lebanon, Iraq, and West Africa.

327. On May 17, 2018, Mr. Bazzi was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury. Five companies owned or controlled by Mr. Bazzi were also designated by the U.S. Department of the U.S. Department of the Treasury on the same date.

328. The following OFAC designated companies are owned or controlled by Mr. Bazzi:

- **Global Trading Group NV**;

- **Euro African Group**;

- **Africa Middle East Investment Holding SAL**;

- **Premier Investment Group (Offshore) SAL**; and

- **Car Escort Services (Offshore) SAL** (discussed above).

329.    Between 2009 and 2011, Mr. Bazzi had business connections with Abdallah Safieddine, the head of Hezbollah's External Security Organization Business Affairs Component (BAC) and Hezbollah's representative to Iran.

330.    In 2011, Mr. Bazzi and Mr. Safieddine worked to resolve a dispute and reestablish relations between Iran and the state of Gambia. According to the U.S. Department of the U.S. Department of the Treasury, Mr. Bazzi is a "close associate" of Yahya Jammeh, the former president of The Gambia who was sanctioned by the United States in December 2017 for his record of human rights abuses and money laundering.

331.    Mr. Bazzi maintains ties to other U.S. designated individuals, including Hezbollah financiers Adham Tabaja and Ali Yussuf Charara. He also has links to drug dealers and the U.S.-designated Ayman Joumaa, who runs Hezbollah's premiere drug trafficking network.

**vii.    Kamel Amhaz**

332.    Kamel Muhammad Amhaz and his brother Issam Muhammad Amhaz were designated SDGTs by the U.S. Department of the U.S. Department of the Treasury in July 2014 for aiding the procurement of sophisticated electronics for military equipment, including unmanned aerial vehicles ("UAVs") used in Hezbollah military operations in Syria and Israel.

333.    The brothers acquired these electronics using their Lebanon-based company, Stars Group Holding, and its six subsidiaries, which are listed below and were included in the OFAC

designation:

- **Stars Group Holding**, which sells cell phones and tablets. It owns several consumer electronics businesses in Beirut and elsewhere. The following individuals are involved with the company:

  o Kamel Amhaz is a board member and owns 40 percent of the company;
  o Issam Amhaz is the chairman and owns 40 percent of the company; and
  o Hani Amhaz, the youngest brother, is a board member and owns 20 percent of the company.

- **Unique Stars Mobile Phones LLC** (UAE) (Stars Group Holding subsidiary). The following individuals are involved with the company:

  o The company is owned by the Amhaz brothers; and
  o Ayman Ahmad Ibrahim is general manager; he was designated by OFAC on July 10, 2014, along with the Amhaz brothers.

- **Stars International Ltd** (Stars Group Holding subsidiary). The following individuals are involved with the company:

  o The company is owned by the Amhaz brothers; and
  o Ali Zuaytar is the general manager; he was designated on July 10, 2014, along with the Amhaz brothers.

- **Stars Communications Ltd** (Stars Group Holding subsidiary), which sells cell phones and other consumer electronics. The following individuals are involved with the company:

  o Kamel Amhaz is its founder, director and signed cGeneral ommissioner;
  o Ali Yusif Tarhini is a director;
  o Hussein Ahmad Amhaz is its founder and partner (owns 1 percent of the company);
  o Abdallah Zuhayr al-Sahili is majority shareholder and owns 98 percent of the company; and
  o Samira Muhammad al-Sahili is a partner and owns 1 percent of the company.

- **Teleserve Plus SAL** (Stars Group Holding subsidiary), which deals with communication and computers and was designated an SDGT on July 10, 2014. The following individuals are involved with the company:

83

- o Hani Amhaz is the general manager, chairman and majority shareholder; he owns 70 percent of the company;
- o Michel Gabriel Ma'rawi is a board member and partner; he owns 25 percent of the company;
- o Ahmad Hisham Amhaz is a board member; he owns 5 percent of the company; and
- o Ibrahim Muhammad Rakin is auditor.

- **Stars Communications (Offshore) SAL** (Stars Group Holding subsidiary), which imports electronics into Lebanon. The following individuals are involved with the company:

  - o Kamel Amhaz is chairman and majority shareholder; he owns 90 percent of the company;
  - o Fatima Ahmad Qubaysi is a board member and shareholder; she owns 5 percent of the company;
  - o Hani Amhaz is a board member and shareholder; he owns 5 percent of the company; and
  - o Ali Muhammad Amhaz is the general manager of the company.

- **Fastlink SAL** (Lebanon) (also identified as "Fastlink SARL" by the U.S. Department of the U.S. Department of the Treasury) (Stars Group Holding subsidiary), which imports electronics into Lebanon. The following individuals are involved with the company:

  - o Ali Muhammad Salem Abu Adas is Director, Founder and former partner.
  - o Louie Muhammad Khamis al-Natur is a previous partner;
  - o Muhammad Jawdat Ayyash Mustafa al-Barghuti is Director, Founder, Authorized Signatory and previous partner;
  - o Bashar Ibrahim Kamal is Director General and Authorized Signatory; and
  - o Kamel Amhaz is a majority shareholder and owns 99 percent of the company.

334. Another prominent member of the Amhaz brothers' network is Hanna Elias Khalifa, a Hezbollah operative and Lebanese businessman who has worked directly with Stars Group Holding network managers to facilitate these procurement activities on behalf of Hezbollah.

### viii. Hassan Shateri

335. Hassan Shateri (a/k/a Khoshnevis) was senior commander in the IRGC–QF. After the 2006 conflict between Hezbollah and Israel, Mr. Shateri was sent to Lebanon under the alias

of "Hussam Khoshnevis" and was put in charge of the Iranian Committee for the Reconstruction of Lebanon (ICRL).

336.    According to *Asharq al-Awsat*'s report, Shateri received $200 million U.S. dollars a year in order to restore Hezbollah's military capabilities and its position within Lebanon.

337.    With these funds, he created a business empire including banks, shopping malls, hotels, transport companies, radio and television networks, newspapers, and travel agencies.

338.    Mr. Shateri was designated an SDGT by U.S. Department of the U.S. Department of the Treasury in August 2010.

339.    According to the U.S. Department of the U.S. Department of the Treasury, Mr. Shateri also operated as then-Iranian President Ahmadinejad's personal representative in Lebanon.

340.    He was killed by Syrian rebels at the beginning of 2013.

341.    He was partner and founder of several companies linked to the Tajideen family, including the following entities:

- **New Roads SARL**, which deals with building materials, particularly cement. It is based in Nabatieh, South Lebanon. The following individuals are involved with the company:

  o   Hassan Shateri was a partner;
  o   Reda Ali Atawi of the Tajideen Network is a partner (through al-Ataa company, see below); and
  o   Muhammad Ali al-Sablani is a partner.

- **National Crushers Company SAL**, which deals with cement production. The following individuals are involved with the company:

  o   Muhammad Ali al-Sablani is chairman of the company;
  o   Hassan Shateri was the company's general director;
  o   Muhammad Haidar Qansu (a senior leader of Jihad al-Bina's network of commercial companies; specifically, Arch Consulting SAL) is a partner; and
  o   Kazem Abbas Darabi is a board member and partner.

- **Cleany & Company SARL**, which deals mainly with maintenance and

repairing of houses, offices, real estate and buildings. The following individuals are involved with the company:

- o Hassan Shateri founded the company and was a partner, holding 100 shares;
- o Muhammad Haidar Qansu is a co-founder and a shareholder, holding 100 shares; and
- o Jihad George Lutfi is the attorney for the company.

### b. BAC'S STABLE OF LAWYERS

342.     Hezbollah utilizes a small subset of Lebanese lawyers to help set up its network of companies. The association of one of these attorneys with an entity constitutes additional evidence that an entity or account is controlled by Hezbollah.

343.     Hezbollah's list of preferred attorneys includes the following individuals:

### i.     Ali Hassan Berro

344.     Ali Hassan Berro is an attorney for many of the companies associated with Hezbollah's money laundering network. In 2017, he even ran on behalf of Hezbollah for the post of Head of Beirut's Bar Association. Mr. Berro is affiliated with the following Hezbollah-controlled companies:

- **The Lebanese Arab Company for Touristic Services SARL**, which is owned and co-founded by the Al-Mabarrat Charitable Society. The following individuals are involved with the company:

  - o Hamzah Safieddine (brother of Hashem and Abdallah Safieddine, both SDGTs) is a co-owner, co-founder and authorized signatory for the company;
  - o Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah is a co-founder and authorized signatory;
  - o Jamal Ali Makke is a co-owner, co-founder and authorized signatory for the company;
  - o Ali al-Sayyid Muhammad Hussein Fadlallah is a co-owner, authorized signatory and co-founder of the company;
  - o Ra'fat Yunas Sa'id is an authorized signatory of the company; and
  - o Ali Hassan Berro is the attorney for the company.

- **Société Orientale Libanaise d'Investissement et Développement SAL (SOLID)**, which was founded by Atlas Holding. It imports readymade gardens, prefabricated houses and building materials. The following individuals are involved with the company:

  o Hassan Ali Tajideen is chairman, majority shareholder (holds 50 percent of the shares), is a co-founder and authorized signatory of the company;
  o Nur al-Ain Muhammad Ali Atwi (Hassan's mother) is a shareholder (holds 35 percent of the shares), co-founder and member of the board of directors;
  o Jihad Muhammad Qansu (SDGT) is listed as the company's auditor;
  o Ibrahim Mahmoud Yussuf is a partner and board member; and
  o Ali Hassan Berro is listed as the company's attorney.

- **Shahed Pharm Drugstore SARL**, which was co-founded and co-owned by Martyrs Foundation–Lebanon / Atlas Holding SAL sub-company (holds 2,700 shares). The following individuals are involved with the company:

  o Bilal Muhammad Ta is a manager, co-founder, authorized signatory and a shareholder (holds 150 shares);
  o Muhammad Ali Bashir is a co-founder of the company;
  o Shawki Nur al-Din is a co-founder of the company;
  o Qassem Muhammad Ali Bazzi is a manager, authorized signatory and a shareholder (holds 150 shares);
  o Mashhur Abd al-Nabi Hamqa serves as the company's statutory auditor for the company; and
  o Ali Hassan Berro is the attorney for the company.

- **Global Touristic Services SAL**. The company was founded in 2008, and it is almost entirely owned by Atlas Holding SAL and the Martyrs Foundation. The following individuals are involved with the company:

  o Muhammad Ali Bashir is a co-founder of the company;
  o Shawki Nur al-Din is a co-founder of the company;
  o Qassem Muhammad Ali Bazzi is a co-founder of the company;
  o Jihad Muhammad Qansu (SDGT) is listed as the company's auditor; and
  o Ali Hassan Berro is listed as the company's attorney.

- **Atlas Holding SAL**. The company was formally established in 2006; founded by SDGT Martyrs Foundation – Lebanon. The following individuals are involved with the company:

  o Muhammad Ali Bashir is a co-founder of the company;

- o Qassem Muhammad Ali Bazzi is general manager, chairman, majority shareholder (holds 24,000 shares) and authorized signatory;
- o Bilal Muhammad Ta is a shareholder (holds 3,000 shares) and member of the board of directors;
- o Osama Muhammad Aliq is a shareholder (holds 3,000 shares) and member of the board of directors;
- o Yussuf Abd al-Reda 'Asi is a co-founder of the company;
- o Ali Hassan Berro is the attorney for the company; and
- o Mashhur Abd al-Nabi Hamqah serves as statutory auditor for the company.

- **Assaha Travel and Tourism SARL**. The company is owned by Al-Mabarrat Charitable Society. The following individuals are involved with the company:

  - o Jaafar Saleh Aqil is the manager and authorized signatory;
  - o Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah is a co-founder and partner (5 percent of the shares);
  - o Jamal Makke is a co-founder and shareholder (5 percent of the shares); and
  - o Ali Hassan Berro is the attorney for the company.

- **Amana Sanitary and Paints Company LLC** (ASPCO).

- **Amana Plus Company**. The company operates gas stations in Lebanon and sells fuel. The following individuals are involved with the company:

  - o Atlas Holding SAL is a co-founder, member of the board of directors and shareholder (holds 9,997 shares);
  - o Mashhur Abd al-Nabi Hamqah serves as statutory auditor;
  - o Sharbel Yaqub Tarabiyah serves as statutory auditor;
  - o Osama Muhammad Aliq is a shareholder and member of the board of directors;
  - o Muhammad Ali Bashir is a co-founder of the company;
  - o Shawki Nur al-Din is a co-founder of the company;
  - o Qassem Muhammad Ali Bazzi is a co-founder, manager, chairman and authorized signatory of the company; and
  - o Ali Hassan Berro is the attorney for the company.

- **Live Energy SAL**. The following individuals are involved with the company:

  - o Ra'fat Sa'id Yunas is the general manager, a shareholder (holds 1,500 shares), co-founder, member of the board of directors, and authorized signatory for the company;

- o Jamal Ali Makke is a board member, majority shareholder (holds 5,500 shares), and authorized signatory of the company;
- o Muhammad Khair Issam Amru is a board member, shareholder (holds 1,500 shares) and co-founder of the company;
- o Ali Hussein al-Hajj is a shareholder (holds 1,500 shares) and co-founder of the company;
- o Samir Muhammad Nussar serves as statutory auditor of the company; and
- o Ali Hassan Berro serves as attorney for the company.

- **Arab American Company (Offshore) SAL**. The following individuals are involved with the company:

  - o Fuad Tawfiq Baydun is chairman, co-founder, authorized signatory, and a shareholder of the company (holds 6,000 shares);
  - o Nabil Abd al-Fattah is a co-founder, authorized signatory, member of the board of directors and shareholder of the company (holds 6,000 shares);
  - o Jamal Ali Makke is a co-founder, authorized signatory, member of the board of directors and majority shareholder of the company (holds 18,000 shares);
  - o Samir Muhammad Nussar serves as statutory auditor of the company; and
  - o Ali Hassan Berro serves as attorney for the company.

- **Sanabel for Urban Studies and Architectural Design SAL** (discussed above).

- **Al-Kawthar**. The company runs a clothing store chain in Lebanon and was co-founded (and owned) by the Martyrs Foundation–Lebanon through Atlas Holding SAL. The following individuals are involved with the company:

  - o Muhammad Ali Bashir a co-owner (1 percent of the shares) and co-founder of the company;
  - o Shawki Nur al-Din a co-owner (1 per cent of the shares) and co-founder of the company;
  - o Qassem Muhammd Ali Bazzi is an authorized signatory for the company; and
  - o Ali Hassan Berro is the attorney for the company.

- **Al-Amana SARL**. The company operates twelve gas stations under the name of Al-Amana in Beirut, South Lebanon and the Bekaa Valley in Lebanon and is owned by the Martyrs Foundation–Lebanon through Atlas Holding SAL, which holds 98 percent of Al-Amana SARL. The following individuals are involved with the company:

- o Qassim Muhammad Ali Bazzi is the general manager, co-founder, authorized signatory and owns 1 percent of the company;
- o Ahmad Hussin Haidar is a co-founder of the company;
- o Osama Muhammad Aliq owns 1 percent of the company;
- o Muhammad Ali Bashir is listed as a founder of the company; and
- o Ali Hassan Berro is the attorney for the company.

### ii.  Ali Hussein al-Ashi

345.    Ali Hussein al-Ashi is the attorney for many companies associated with Hezbollah's network, specifically the Tabaja Network; most prominent among them are Adham Tabaja's designated companies:

- **Al-Inmaa Engineering and Contracting** (discussed above); and
- **Al-Inmaa Group for Tourism Works** (discussed above).

### iii.  Amir Afif Abu Khalil

346.    Amir Afif Abu Khalil is an attorney in Tyre who is closely associated with the Tajideen Network. He is the attorney for the following OFAC designated Tajideen companies:

- **Tajco Company SAE** (discussed above).

- **Ovlas Trading SAL Off Shore**. The company was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010. The following individuals are involved with the company:

  - o Ahmad Hassan Tajideen is the chairman, majority shareholder (holds 3,000 shares), and authorized signatory for the company;
  - o Najmah Hassan Jaber (Ahmad's mother) is a shareholder (holds 1,250 shares), co-founder, and member of the board of directors;
  - o Anwar Hussein Sa'ad is a shareholder (holds 750 shares), co-founder, and member of the board of directors;
  - o Hassan Muhammad Abd al-Hassan Tajideen is a co-founder of the company (his wife remains on the board of directors after he died in a 2010 plane crash);
  - o Shawqi Ra'if Abu Khalil is auditor for the company; and
  - o Amir Afif Abu Khalil is the attorney for the company.

347.    In addition, he is the attorney for several more Tajideen companies, which are part of Hezbollah.

### iv.   Ashraf Assem Safieddine

348.   Ashraf Assem Safieddine is the attorney most associated with the Amhaz Network of companies. Among others, he is the attorney for:

- **Teleserve Plus SAL** (discussed above);

- **West Oil Investments Company (Offshore) SAL**: Involved in illicit activity; and

- **Creative Investment (Offshore) SAL**, a company that originated a fraud and corruption scheme, through which its staff, among them Ashraf Safieddine, were accused of money laundering.

### v.   Dima Hussein Dakrub

349.   Dima Hussein Dakrub is one of the attorneys affiliated with Muhammad Abdallah al-Amin's Network, which provides funds for Adham Tabaja. She is notably the attorney of Impulse SARL (owned by Mr. al-Amin), a company designated as an SDGT on October 4, 2018.

### vi.   Faruq Muhammad Raef Hammoud

350.   Faruq Muhammad Raef Hammoud is an attorney for companies affiliated with the al-Amin and Tabaja Networks; most prominent among them is the African Fish Company (Offshore) SAL, which Jihad Muhammad Qansu (SDGT), Ali Muhammad Qansu (SDGT), and Khalil Hassan Faqih (highly involved in all of Mr. al-Amin's designated companies) are part of.

### vii.   Hadi Ali Zabib

351.   Hadi Ali Zabib is the attorney for three companies, involving Jihad Muhammad Qansu and other members of the Tabaja-Amin Networks.

### viii.   Hiba Shawqi Shadhbek

352.   Hiba Shawqi Shadhbek is an attorney who participates in the Amhaz Network by way of affiliation with Ashraf Assem Safieddine.

### ix.   Ibrahim Abd al-Manam Awada

91

353.    Ibrahim Abd al-Manam Awada was a former president of Hezbollah's Lawyers Group, as well as its candidate to the Bar Association Council. He was part of the Association of the Qana Observatory for Human Rights, which is affiliated with Hezbollah alongside Osama Abbas Ramal (a prominent Hezbollah operative).

### x.    Muhammad Farid Mattar

354.    Muhammad Farid Mattar is an attorney for several companies that are controlled by Hezbollah, including the following entities that have been designated by the U.S. Department of the U.S. Department of the Treasury:

- **Car Escort Services (Offshore) SAL** (SDGT, discussed above);
- **Spectrum International Investment Holding SAL** (SDGT, discussed above);
- **Spectrum Investment Group Holding SAL** (SDGT, discussed above);
- **Hoda for Touristic Services & Management Holding SAL** (discussed above);
- **International Group Holding SAL** (discussed above);
- **One Globe Operator SAL Off Shore** (discussed above); and
- **B.I. Group Holding SAL**.

### xi.    Muhammad Hussein Dakrub

355.    Muhammad Hussein Dakrub is the attorney for many of al-Amin's companies; prominent among them are the following entities designated as SDGTs by OFAC:

- **M. Marine (Offshore) SAL**;
- **Lama Food International (Offshore) SAL**;
- **Sierra Gas (Offshore) SAL**;
- **Lama Foods SARL**; and
- **Shanghai (Offshore) SAL**.

### xii.    Nabil Kamil al-Akhras

356.    Nabil Kamil al-Akhras is a lawyer and related to the following list of companies affiliated with Jihad Muhammad Qansu (SDGT):

- **Amigo Travel and Transport SAL**;

- **Al-Ansab Lebanese for International Trading (Offshore) SAL** (a/k/a ALIT);
- **United Company (Offshore) SAL**;
- **Golden Fish (Offshore) SAL**;
- **Ifriqiya General Trading (Offshore) SAL**;
- **Al-Ghadaf Company for Trading & General Supplies (Offshore) SAL**;
- **Al-Twazon al-Handasy for General Contracting Company (Offshore) SAL**;
- **Mega Investment Group (Offshore) SAL** (a/k/a MIG);
- **Interafrica Trading Company (Offshore) SAL** (a/k/a ITC);
- **International Management & Finance Holding SAL** (a/k/a IMF); and
- **Blue Sky Holding SAL**.

### xiii.   Osama Abbas Ramal

357.    Between 2001 and 2010, Osama Abbas Ramal was mayor of Adaisseh village on behalf of the Hezbollah and Amal joint list. Mr. Ramal serves as the attorney for the following list of Hezbollah-related companies in Lebanon:

- **Seasons Corporation for Agricultural Projects and Services SARL**. The company provides agricultural services and establishes projects in the field of agriculture. The following individuals are involved with the company:

  o Ibrahim Abdallah Ismail is an authorized signatory, co-founder and shareholder (holds 1,220 shares) of the company;
  o Muhammad Ni'mah al-Hajj is an authorized signatory and shareholder (holds 260 shares);
  o Qassem Aliq is a co-founder of the company;
  o Abbas Muhammad Raslan is a co-founder of the company;
  o Fawzat Abdallah Ibrahim al-Hajj is a co-founder of the company;
  o Adel Mahmud Salim is a shareholder (holds 260 shares);
  o Tareq Muhammad al-Musawi is a shareholder (holds 260 shares); and
  o Osama Abbas Ramal is the company's attorney.

- **Dar al-Manar for Artistic Production and Distribution**.

- **Meamar Company for Engineering and Development**. The company was founded in 1988 and deals with constructing and building sporting facilities, Shi'a religious institutions, schools and hospitals. The following individuals are involved with the company:

- o Sultan Khalifa As'ad is the founder of the company;
- o Burhan Hassan Qataya is the manager, a shareholder (holds 10 shares), and authorized signatory for the company;
- o Hassan Suleiman Mudlej is a shareholder (holds 10 shares);
- o Mahmud Abbas Qassem is a shareholder (holds 5 shares);
- o Ali Yussuf Farhat is a shareholder (holds 5 shares);
- o Hussein Muhammad Kheir al-Din is manager and authorized signatory for the company;
- o Abbas Ibrahim Nasser is a co-founder of the company.;
- o Hissan Ali al-Balaghi is a co-founder of the company;
- o Qassem Aliq is a co-founder of the company; and
- o Osama Abbas Ramal is the attorney.

- **Beton Plus SAL**.

- **Media Publi Management SAR**.

- **Arch Consulting SARL**. The company has built hospitals, schools and religious institutions in the Hezbollah-controlled areas in Beirut, South Lebanon and the Bekaa. The company is also involved in tourism, infrastructure, and hydraulic projects, and was registered in early 2005 (operating previously under the name Research Institute of Jihad al-Bina). The following individuals are involved with the company:

  - o Walid Ali Jaber is the general manager, co-founder, authorized signatory and owns 40 percent of the company;
  - o Jaafar Mussa is a co-founder and owns 30 percent of the company;
  - o Muhammad Haidar Qansu is a co-founder and owns 30 percent of the company; and
  - o Osama Abbas Ramal is the company's attorney.

### xiv.    Wissam Hussein Hammoud

358.    Wissam Hussein Hammoud is a Lebanese lawyer and a local politician who is the mayor of a village near Tyre named Shihin. He is the attorney for the following list of companies related to the Tajideen Network, which supports Hezbollah financially and operationally:

- **Enmaa Dalhamiya Company SAL** (discussed above);
- **Rifieh Pour L'amélioration** (discussed above);
- **Al-Dalhamiya Country Club Company** (discussed above);
- **Shatha Investment & Contracting Company SAL**;
- **JST Sunset Real Estate Development & Development SAL**;
- **Cedar Man (Offshore) SAL**; and
- **Murex Investment and Development (Offshore) SAL**.

94

### xv.    Butrus Michel Ghanimah

359.    Butrus Michel Ghanimah is the attorney for Adham Tabaja's company, City Park SARL.

### xvi.    Marwan Saqr Saqr

360.    Marwan Saqr Saqr is the attorney of OGO Lebanon SAL, one of Ali Ibrahim Charara's more prominent companies.

### xvii.    Adib Yusif Tu'mah

361.    Adib Yusif Tu'mah (or Tohme) is the main lawyer of the Charara Network.

### xviii.    Jihad George Lutfi

362.    Jihad George Lutfi is the attorney for Cleany & Company SARL, a company affiliated with Hezbollah (two of its founders and shareholders are Hassan Shateri, SDGT, and Muhammad Haidar Qansu).

### c.  BAC'S STABLE OF ACCOUNTANTS / AUDITORS

363.    Hezbollah utilizes a small subset of Lebanese accountants and auditors to help maintain and "audit" its network of companies. The association of one of these accountants or auditors with an entity or account provides additional evidence that the entity or account is controlled by Hezbollah.

### i.    Jihad Muhammad Qansu

364.    Jihad Muhammad Qansu serves as statutory auditor of numerous companies associated with Hezbollah.

365.    On February 2, 2018, Mr. Qansu was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury for his role as financial manager of Al-Inmaa Engineering and Contracting (SDGT).

366.     Mr. Qansu is a business associate of Hezbollah operative and financier Adham Tabaja (SDGT), and assists Mr. Tabaja "in accounting matters, including resolving bank account issues."

367.     As part of his role in Al-Inmaa, Mr. Qansu worked on the company's operations together with Muhammad Al-Mukhtar Kallas (SDGT). He is affiliated, as founder or shareholder, with several companies that are part of the Tabaja Network.

368.     Jihad Muhammad Qansu is statutory auditor of the following companies:

- **Amigo Travel and Transport SAL** (aided and abetted by Defendant BYBLOS BANK).

- **Global Touristic Services SAL (GTS)** (aided and abetted by Defendant BYBLOS BANK) (discussed above).

- **Golden Fish (Offshore) SAL** (SDGT). Mr. Qansu is also a shareholder (holds 495 shares), co-founder, and board member of the company.

- **Rayan Foods SAL**. An import and export company that is part of the Al-Mabarrat / Fadlallah Network. The following individuals are involved with the company:

    o   The Lebanese-Arab Company for Touristic Services is a shareholder (63 percent);
    o   Ali Radwan Aidibi is a shareholder (31.81 percent);
    o   Ali Muhammad Hussein Fadlallah holds thirty shares and is the chairman;
    o   Jihad Muhammad Qansu (SDGT) is its auditor;
    o   Jamal Ali Makke is a board member and holds ten shares;
    o   Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah is a board member and holds ten shares; and
    o   Ali Hassan Berro is the attorney.

- **Société Orientale Libanaise d'Investissement et Développement SAL** (a/k/a Solid) (aided and abetted by Defendant BYBLOS BANK) (discussed above).

### ii.     Abd al-Halim al-Shaykh Mussa Charara

369.     Abd al-Halim al-Shaykh Mussa Charara serves as statutory auditor of numerous

companies associated with the "Charara Network," including the following Hezbollah-controlled entities:

- **Jumi Properties SAL**. The company's chairman, Ali Ibrahim Charara, is also co-founder of Spectrum Investment Group Holding SAL (SDGT, discussed above). The company's other key members include Nadir Ibrahim Charara, Dana Samir Hasbeini, and Nabil Faruq Ma'd.

- **Verdun 2523 SAL**. The company's chairman and owner, Ali Ibrahim Charara, is also co-founder of Spectrum Investment Group Holding SAL (SDGT, discussed above). The company's other key members include Rami Ibrahim Charara and Nadir Ibrahim Charara – brothers of Ali Ibrahim Charara, and attorney Mazin Nabil al-Husami.

- **Hamra 896 SAL**. The company's chairman, Ali Ibrahim Charara, is also co-founder of Spectrum Investment Group Holding SAL (SDGT, discussed above). The company's other key members are Nadir Ibrahim Charara, Jan Sulayman Abbud, Aydi Hizqiyal al-Hajj, Kamal Yussuf al-Haddad, and attorney Adib Yusif Tu'mah.

- **Spacenet (Offshore) SAL**. The company's key members are Rami Ibrahim Charara, Nadir Ibrahim Charara, Fawzi Zuhayr Abbud, Elias Antoine Atieh, Rami Rafiq Eitani, and attorney Adib Yusif Tu'mah.

- **Tel2 Media (Offshore) SAL**. The company's chairman, Ali Ibrahim Charara, is also co-founder of Spectrum Investment Group Holding SAL (SDGT, discussed above). The company's other key members are Rami Ibrahim Charara, Nadir Ibrahim Charara, Hisham Makki and attorney Adib Yusif Tu'mah.

- **Consortium Holding SAL Holding Company**. The company's chairman, Ali Ibrahim Charara, is also co-founder of Spectrum Investment Group Holding SAL (SDGT, discussed above). The company's other key members are Rami Ibrahim Charara, Nadir Ibrahim Charara, and Mazin attorney Nabil al-Husami.

- **One Globe Operator SAL Holding** (discussed above).

### iii. Mashhur Abd al-Nabi Hamqah

370. Mashhur Abd al-Nabi Hamqah serves as statutory auditor of the following Hezbollah-controlled entities:

- **Atlas Holding SAL** (discussed above): The company reportedly

manages its bank accounts at Defendant SGBL; and

- **Shahed Pharm Drugstore SARL** (discussed above) (aided and abetted by Defendant LEBANON AND GULF BANK).

### iv.    Shawqi Ra'if Abu Khalil

371.    Shawqi Ra'if Abu Khalil serves as statutory auditor of numerous companies associated with the Tajideen Network, including the following list of Hezbollah-controlled entities:

- **Ovlas Trading (Offshore) SAL** (SDGT, discussed above) (aided and abetted by Defendants BANK AUDI SAL and LEBANON AND GULF BANK);

- **Afrimex (Offshore) SAL** (discussed above): The company was founded by Yussuf Muhammad Tajideen – brother of Ali, Hussein and Kassim Tajideen – all SDGTs (aided and abetted by Defendant BYBLOS BANK);

- **Hyram Maritime SAL** (discussed above): The company was founded by Ali Muhammad Abd al-Hassan Tajideen (SDGT) (aided and abetted by Defendant BANK OF BEIRUT AND THE ARAB COUNTRIES);

- **Al-Dalhamiya Country Club Company** (discussed above): The company was founded by Yussuf and Ibrahim Tajideen, brothers of Hezbollah fundraisers Ali, Hussein and Kassim Tajideen – all SDGTs;

- **Company for Development and Prosperity** (discussed above): Hezbollah financier SDGT Ali Tajideen is chairman and partner of the company;

- **Distributions and Agencies Company SAL** (discussed above): Hassan Ali Tajideen, executive manager of Tajco (SDGT), and shareholder in Tajco SAE, is a shareholder; and

- **Al-Burhan Growth and Development Company SAL**: The company was founded by Hassan Ali Tajideen.

### v.    Samir Muhammad Nassar

372.    Samir Muhammad Nassar serves as statutory auditor of the following Hezbollah-controlled entities:

- **Arab American Company SAL Off Shore** (discussed above); and
- **Live Energy SAL** (discussed above).

### vi. Edmond Yussuf Saadeh

373. Edmond Yussuf Saadeh serves as statutory auditor of the following Hezbollah-controlled entities:

- **Car Escort Services (Offshore) SAL** (SDGT, discussed above);
- **Spectrum International Investment Holding SAL** (SDGT, discussed above); and
- **Spectrum (Offshore) SAL**: Part of the Charara network (discussed above).

### vii. Fadi Muhammad Ni'ma

374. Fadi Muhammad Ni'ma serves as statutory auditor of two companies affiliated with pro-Hezbollah channel *Al-Mayadeen*:

- **Amir (Offshore) SAL**: The company is headed by Ghassan bin Jeddo, the director of *Al-Mayadeen* channel. The company's other key members are his wife and son: Nada Qaimaqami (Iranian citizen) and Amir bin Jeddo, respectively; and

- **Al-Mayadeen (Offshore) SAL**: The company is headed by Ghassan bin Jeddo. The company's other key members are Nada Qaimaqami and Amir bin Jeddo.

### viii. Hussein Adel Izz al-Din

375. Hussein Adel Izz al-Din serves as statutory auditor of numerous companies associated with Hezbollah, including the following entities:

- **Stars Group Holding** (SDGT, discussed above);
- **KAF Investment SAL**, founded by Kamel Muhammad Amhaz (SDGT); and
- **Stars Communications Ltd** (SDGT, discussed above).

## 7. HEZBOLLAH'S "SOCIAL WELFARE" SECTOR – THE *DA'WA*

376. Hezbollah has developed a network of social welfare institutions or *da'wa* that it uses as an instrument of its political, psychological and military strategy.

377.  For example, Hezbollah provides welfare benefits to the families of its martyrs (*shahid*, or *shuhadaa*, plural), particularly their children.

378.  The children of Hezbollah's *shuhadaa* are privileged because they are educated in Hezbollah-subsidized schools and receive free health care in a country where for many years Lebanese citizens spent an estimated 40 percent of their income on medical expenses.

### a.  IRSO – THE ISLAMIC RESISTANCE SUPPORT ORGANIZATION (*HAY'AT DA'AM AL-MUQAWAMA AL-ISLAMIYA FI LUBNAN*)

379.  The Islamic Resistance Support Organization (IRSO), officially known in Arabic as *Hay'at Da'am al-Muqawama al-Islamiya Fi Luban*, is an umbrella organization that is used to solicit, collect and disperse donations in support of Hezbollah's terrorist activities.

380.  In 2016, Sheikh Nasrallah said that IRSO's mission is to provide Hezbollah with a "kind of financial and material support" as well as moral and political support.[21]

381.  IRSO was established in 1989 to professionalize Hezbollah's fund-raising campaigns. The money collected by IRSO is earmarked primarily for the purchase of weapons for Hezbollah terrorist-operations and support for its cadres.

382.  IRSO collects considerable sums of money in Lebanon from both private and public entities, including businesses, mosques, educational institutions, gas stations, shopping centers and road blocks.

383.  The IRSO maintains branches across Lebanon as well as a women's division and an international division.

---

[21]  Interestingly, at an IRSO event in 2013, Hassan Nasrallah gave a speech denying Hezbollah's involvement in any commercial activities, stating:

> I would like to reiterate that we do not have economic or investing projects in Lebanon or abroad. Well yes, we have service projects. However, we do not have projects that bring in profits and money. I will even make use of this occasion to tell the Lebanese that if anyone tells you that I have a commercial project in which he invested a capital and ask you to share with him or partake with him claiming that its returns are for the party or the party has a share in it, be sure that he is a liar.

384. Funds are raised in Lebanon and Muslim communities – especially Shi'a communities– around the world, mainly in the Gulf States and Western countries.

385. A pamphlet recovered by Israeli forces in Lebanon in 2006 states: "The resistance collection box is small and placed inside the house so that all members of the family will sense the importance of participating in supporting the resistance by contributing."

386. The IRSO also maintains the website www.moqawama.org, one of the official media organs of Hezbollah.

387. The IRSO is currently headed by Sayeed Qassem Tawil.

388. Previously, the IRSO was headed by Hussein al-Shami (a designated SDGT).

389. Al-Shami is a senior Hezbollah officer in several Hezbollah controlled-organizations, such as Bayt al-Mal and al-Qard al-Hassan, which also help Hezbollah fund its activities. He was also the director of Hezbollah's social services division.

390. Mr. Al-Shami was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury on September 7, 2006.

391. As mentioned above, Mr. Al-Shami is a Shura Council member due to his prominent position in Hezbollah's fundraising institutions.

392. IRSO was designated as an SDGT by the U.S. Department of the U.S. Department of the Treasury in August 2006.

393. According to the U.S. Department of the U.S. Department of the Treasury, IRSO solicited donations through Hezbollah's *al-Manar* satellite television in Lebanon.

394. In its 2006 press release, U.S. Department of the U.S. Department of the Treasury noted that: "[s]olicitation materials distributed by IRSO inform prospective donors that funds will be used to purchase sophisticated weapons and conduct operations. Indeed, donors can choose

from a series of projects to contribute to, including, supporting and equipping fighters and purchasing rockets and ammunition."

395.    Furthermore, the U.S. Department of the U.S. Department of the Treasury provided a copy of IRSO's donation form (allowing a donor to specify the Hezbollah program that the donation should be directed toward).

396.    IRSO openly offered prospective donors the opportunity to earmark funds toward different types of terrorist activities, including the acquisition of missiles and ammunition, and payments to terrorists. Both English and Arabic copies of IRSO's donation program form are appended hereto as **Exhibit 2**.

397.    Stuart Levey, then-U.S. U.S. Department of the Treasury Under Secretary for Terrorism and Financial Intelligence, noted in testimony before Congress that IRSO does not attempt to conceal its purpose:

> While some terrorist-supporting charities try to obscure their support for violence, *IRSO makes no attempt to hide its true colors*. IRSO's fundraising materials present donors with the option of sending funds to equip Hezbollah fighters *or to purchase missiles that Hezbollah uses to target civilian populations. IRSO works to inflict suffering rather than alleviate it.* (Emphasis added.)

398.    In fact, prior to IRSO's 2006 designation, Hezbollah used its television station, *Al-Manar*, to raise money through IRSO in support of Hezbollah's terror campaign by running commercials requesting wire transfers be sent to four Lebanese commercial banks (specifying the account numbers for donations, including an account at Defendant BYBLOS BANK.[22]

399.    The following bank accounts were held by IRSO for supporting and funding Hezbollah:

- FRANSABANK,       Al-Shiyah       Branch,       account       number:

---

[22]       Beirut Riyadh Bank was explicitly mentioned.

252010/692830.21;

- FRANSABANK, Al-Shiyah Branch, account number: 78.02.251.133553.0.8;

- BYBLOS BANK, Hreik Neighborhood Branch, account number: 78-2-252-133521-1-5;

- BANQUE LIBANO-FRANÇAISE SAL, Hreik Neighborhood Branch, account numbers: 657409.17 and 657469.171;

- LEBANON AND GULF BANK, Mazra'a Branch, account number: 202-336254;

- LEBANON AND GULF BANK, Mazra'a Branch, account number: 202-329665; and

- JAMAL TRUST BANK, Ghobeiry Branch, account number: 140-028355.28/0/5 (published in Al-Ahed Newspaper on February 21, 1986).

400. A July 25, 2006 report that aired on MSNBC demonstrated that: *first*, Hezbollah used U.S. currency to support its activities; and *second*, often did so openly, including its appeals for donations. During the MSNBC broadcast, an NBC reporter contacted a number advertised on *Al-Manar*, the Hezbollah-owned and -controlled Lebanese television network, posing as a prospective Hezbollah donor:

> NBC Reporter: I want to donate money to the Mujahideens [Hezbollah resistance], is this the right number?

> Hezbollah Facilitator: You have to send to The Lebanese-French Bank [Defendant BANQUE LIBANO–FRANCAISE SAL].

> NBC Reporter: Do you have the number?

> Hezbollah Facilitator: There is an account number. You deposit the money and wire it to the Lebanese French Bank.

> NBC Reporter: How can I know that this is accurate? I'm so worried to deposit the money, can you tell me and confirm that this money will be sent to the Mujahideen?

> Hezbollah Facilitator: Yes, sure.

NBC Reporter: And where are you from? Are you from the bank or no?

Hezbollah Facilitator: No. I'm from the resistance.

NBC Reporter: How would we know? I'm so worried when I deposit the money it will reach Mujahideen.

Hezbollah Facilitator: You go to the bank and deposit the money, and they will wire it to the Lebanese French Bank. You have to go the bank. Where are you calling from?

NBC Reporter: I am from America.

Hezbollah Facilitator: You have to go to the bank—any bank.

NBC Reporter: That for sure will reach the Mujabideen?

Hezbollah Facilitator: For sure. Do not mention resistance or anything like that. If you do, they won't wire them.

NBC Reporter: Thank you—God be with you. Bye bye.

Hezbollah Facilitator: You are welcome. God be with you.[23]

### b. JIHAD AL-BINA (A/K/A CONSTRUCTION JIHAD)

401.    Jihad al-Bina (a/k/a Jihad al-Binaa, a/k/a Jihad al-Bina'a, a/k/a Construction Jihad) was established in September 1988 and registered in Lebanon as a charitable organization.

402.    The Foundation's general manager, who is selected by Hezbollah's Shura Council, is responsible for Jihad al-Bina's operation.

403.    At the time, its founder and first general manager was Sultan Khalifa As'ad, who serves as Deputy Chairman of the Executive Council for Municipal Affairs for Hezbollah and formerly headed the Finance Unit of Hezbollah.

404.    Muhammad Said Khansa, one of Hezbollah's "Founding Fathers" serves as

---

[23]    Adam Ciralsky and Lisa Myers, *Hezbollah Banks Under Attack in Lebanon* (NBC News, Jul 25, 2006), archived at https://web.archive.org/web/20060809013901/http://www.msnbc msn.com:80/id/14015377/page/2/

Director of agricultural and environmental affairs at Jihad al-Bina. Since 1998, he has been elected three times as the mayor of Ghobeiry (a Hezbollah-dominated suburb of Beirut) as Hezbollah's candidate. He has also served as the President of the Union of the Dahiya Municipalities.

405.    Qassem Aliq, who was designated as an SDGT on July 24, 2007, served as the director of Jihad al-Bina.

406.    Ibrahim Abdallah Ismail, another prominent Hezbollah leader, also served on the board of Jihad al-Bina.

407.    In 2006, Walid Ali Jaber was named the Beirut director for Jihad al-Bina and was given responsibility for the rebuilding and reconstruction of the Dahiyeh area – a large quarter populated by Shi'a and situated in south Beirut.

408.    Walid Ali Jaber was also Hezbollah's candidate in the Burj al-Barajneh's (municipality located in the southern suburbs of Beirut between Rafic Hariri International Airport and Haret Hreik neighborhood) municipal elections.

409.    Ali Tajideen, a key Hezbollah financier and Hezbollah's commander in Hanouay, Tyre, Lebanon (who, as described above, was designated as an SDGT on December 9, 2010) was described by the U.S. U.S. Department of the Treasury as "a major player in Jihad Al-Bina."

410.    The organization was modeled on its Iranian counterpart, the Construction Jihad Movement—a perverse "Habitat for Humanity"-style charity working to support the holy war waged by Hezbollah against Israel and Iran's external enemies.

411.    Hezbollah's Jihad al-Bina rehabilitates and builds schools in remote villages and towns, subsidizes education in poor Shi'a areas, and is responsible for numerous infrastructure projects that help solidify Hezbollah's hold on the Shi'a populace in Lebanon.

412.    In exchange for improving their quality of life, Jihad al-Bina expects its Shi'a

beneficiaries to pledge their allegiance to Hezbollah.

413.    According to the U.S. Department of the U.S. Department of the Treasury's February 20, 2007, designation of Jihad al-Bina as an SDGT, Hezbollah operates the organization for its own construction needs as well as to attract popular support in Lebanon by sponsoring civilian construction projects.

414.    The U.S. Department of the U.S. Department of the Treasury described the organization as "a Lebanon-based construction company formed and operated by Hizballah. Jihad al-Bina receives direct funding from Iran, is run by Hizballah members, and is overseen by Hizballah's Shura Council, at the head of which sits Hezbollah's Secretary General Hassan Nasrallah."

415.    The U.S. Department of the U.S. Department of the Treasury further noted that "[i]n cases when intended solicitation targets were thought to object to the group's relationship with Hezbollah and the Iranian government, the organization employed deceptive practices, applying in the name of proxies not publicly linked to Hezbollah."

416.    Jihad al-Bina, as part of its efforts to continue its large-scale operations in Lebanon after it was designated by the United States, diversified into several private construction companies, principally to protect its bankers and major suppliers from any negative repercussions from openly doing business with Hezbollah's construction arm.

417.    The companies that Jihad al-Bina established and controlled for this sanctions evasion purpose include the following entities:

**i.    Meamar Company for Engineering and Development**

418.    Since its founding in 1998, Meamar Company for Engineering and Development has been involved with more than 150 projects, including constructing and building sporting

facilities, Shi'a religious institutions, schools and hospitals.

419. For these projects, Meamar's clients are almost exclusively organizations linked to Hezbollah, including the Islamic Health Society, the Iranian Committee for the Reconstruction of Lebanon ("ICRL"), the Mehdi Scouts, the Shahid Association, the Islamic Religious Education Association ("IREA") and municipalities controlled by Hezbollah Mayors (such as Ghobeyri in Beirut and Bint Jbeil in South Lebanon).

420. As detailed previously, among its founders are the SDGT Qassem Aliq, and Sultan Khalifa As'ad, who was the director of Jihad al-Bina itself. The construction company is currently headed by Hussein Muhammad Kheir al-Din and Burhan Hussein Qataya. Its attorney, as previously mentioned, is Osama Abbas Ramal.

## ii. Seasons Corporation for Agricultural Projects and Services SARL

421. As its name suggests, the company (discussed above) provides agricultural services and establishes projects in the field of agriculture. According to an agreement made between Jihad al-Bina and the Lebanese University's School of Agriculture, Seasons is obligated to provide courses for the school's students. As in the case of Meamar, SDGT Qassem Aliq is one of its founders.

## iii. Arch Consulting SARL

422. Arch Consulting (discussed above) is one of Hezbollah's main construction partners. The company has built hospitals, schools and religious institutions in the Hezbollah-controlled areas in Beirut, South Lebanon and the Bekaa Valley.

423. Arch Consulting is also involved in tourism, infrastructure, and hydraulic projects.

424. In international markets, the company built the Abidjan Islamic Cultural Center in the Ivory Coast, a Shi'a religious association established by a supporter of Hezbollah. Before

107

registering in early 2005, Arch Consulting operated under the name of Research Institute of Jihad al-Bina. Arch Consulting cooperates with more than 30 municipalities in South Lebanon and Beqaa, for which they consult and draw up engineering researches.

425.    The aforementioned Walid Ali Jaber is the general manager of Arch Consulting and owns 40 percent of it.

426.    Jaafar Mussa, another founder of Arch Consulting, owns 30 percent of it. Additionally, in 2016, he was a candidate in the municipal elections in his hometown Houmine al-Faouqa and won a seat.

427.    Muhammad Haidar Qansu is another founder of Arch Consulting and owns 30 percent of it. Additionally, Qansu was a Hezbollah candidate in the municipal elections in the Lebanese town Doueir in 2016.

428.    He was named a member in a municipal committee later that year. Aside from Arch Consulting,

429.    Mr. Qansu works with the aforementioned Hassan Shateri in National Crushers Company SAL and Cleany & Company SARL.

430.    The company's attorney is Osama Abbas Ramal.

### c. THE MARTYRS FOUNDATION–LEBANON (THE *SHAHID* FOUNDATION OR *MUA'ASSAT AL-SHAHID*)

431.    The Martyrs Foundation–Lebanon (a/k/a *Shahid* Foundation, a/k/a *Mua'assat al-Shahid*) is a branch of the Iranian Martyrs Foundation. It was established after the Israeli incursion into Lebanon in 1982, with the goal of supporting the families of Hezbollah fighters who died as a result of their attacks on the IDF.

432.    Martyrs Foundation–Lebanon is controlled and operated by Hezbollah and is one of the most open and notorious Hezbollah institutions in Lebanon.

433.    One of the Martyrs Foundation–Lebanon's associated organizations is the U.S.-based **Goodwill Charitable Organization** ("GCO").

434.    GCO was founded by the Martyrs Foundation-Lebanon as a fundraising office in Dearborn, Michigan.

435.    GCO was designated as an SDGT on July 24, 2007 by the U.S. Department of the U.S. Department of the Treasury as a "front organization that reports directly to the leadership of the Martyrs Foundation in Lebanon."

436.    According to the U.S. Department of the U.S. Department of the Treasury, Hezbollah's leaders in Lebanon instructed Hezbollah operatives in the United States to send their contributions to GCO and to contact the GCO for the purpose of contributing to the Martyrs Foundation–Lebanon.

437.    Since its founding, GCO has sent a significant amount of money to the Martyrs Foundation in Lebanon.

438.    The Martyrs Foundation–Lebanon glorifies death in jihad by cultivating Hezbollah's 'cult of the martyr'.

439.    The foundation's purpose since its inception has been to help Hezbollah wage jihad against the perceived enemies of Shi'a Islam.

440.    The Director of the Foundation is a Hezbollah operative named Shawki Nur al-Din and its former chairman was Hussein al-Shami, an SDGT (current head of the IRSO; discussed above).

441.    The Martyrs Foundation–Lebanon is made up of five institutes: The Culture Institute promotes Hezbollah's ideology of the shahid (or martyr); the Check and Balance Institute monitors and provides aid to the families of Hezbollah's martyrs; the Health Institute overseas

Hezbollah's hospitals and clinics for the families of the martyrs; the Social Institute is responsible for martyrs' children's education; and the most important of the five institutes is the Takaful Institute, whose director for much of the relevant period was Hussein al-Shami (also the director of the Foundation at the time).

442.    The Takaful Institute is essentially the fundraising arm of the foundation responsible for identifying *kafils* (benefactors) who will sponsor families of the martyrs.

443.    The Takaful Institute used Hezbollah media to recruit these *kafils,* printing photographs of the children of recently-deceased martyrs in its *Al Safir* publication.

444.    The Takaful Institute also targets the Lebanese Shi'a expat communities living in the Persian Gulf and in Africa.

445.    The Culture Institute aims at preserving the legacy of individual Hezbollah "martyrs" by transforming artifacts and their personal effects into icons. To this end, the Institute has established several local "museums," converting apartments located in Hezbollah quarters or villages and redesigning them as a kind of shrine in the hometown of the martyr.

446.    The shrines often include pieces of bloodied clothes the martyr wore when he was killed as well as photographs of the decedent in Hezbollah gear placed with family photos of the fallen, posing with his children or wife, or if unmarried, featured with his parents.

447.    The Culture Institute shrines often feature the Koran the martyrs allegedly used, opened to the page of *fatiha* (first sura of the Koran) and prayers said for the souls of the dead.

448.    As of November 2009, there were approximately 800 employees and volunteers working in the Foundation.

449.    The Martyrs Foundation–Lebanon claims to take care of approximately 5,000 people, including the families of Hezbollah's "martyrs" who died during the 2006 conflict with

Israel.

450.    According to the Martyrs Foundation–Lebanon's spokesman, Muhammad al-Husseini, the Foundation assists only people who are affiliated with Hezbollah.

451.    The Martyrs Foundation–Lebanon has established a large hospital in Hezbollah's stronghold in Beirut—the Dahiya (or southern suburbs of Beirut).

452.    There are several branches all over Lebanon. The main branches are located in Beirut, Baalbek (the western Beqaa), Tripoli, and Tyre.

453.    The Martyrs Foundation–Lebanon was designated as an SDGT on July 24, 2007.

454.    According to the U.S. Department of the U.S. Department of the Treasury, "Martyrs Foundation branches in Lebanon has also provided financial support to the families of killed or imprisoned Hizballah [sic]… In addition to fundraising responsibilities, senior Martyrs Foundation officials were directly involved in Hizballah operations against Israel during the July-August 2006 conflict."

455.    U.S. Department of the Treasury also found that:

> [T]he Martyrs Foundation is an Iranian parastatal organization that channels financial support from Iran to several terrorist organizations in the Levant, including Hezbollah, Hamas, and the Palestinian Islamic Jihad (PIJ). To this end, the Martyrs Foundation established branches in Lebanon staffed by leaders and members of these same terrorist groups. Martyrs Foundation branches in Lebanon has also provided financial support to the families of killed or imprisoned Hezbollah and PIJ members, including suicide bombers in the Palestinian territories.

456.    The Martyrs Foundation–Lebanon does not conduct itself like any recognizable charity in the United States. As detailed below, Defendant LCB exempted the Martyrs Foundation–Lebanon from signing cash transaction slips disclosing the source of funds for transactions up to

$100,000 per day at its Airport Road branch in Beirut.[24]

457.    The Martyrs Foundation–Lebanon imports and distributes cash (usually in U.S. dollars) at volumes that are unthinkable for a legitimate and ordinary charitable institution.

458.    The Martyrs Foundation owns and operates, among other facilities:

**i.    Al-Rasul al-Azam Hospital**

459.    The hospital is located in one of Beirut's southern suburbs, Burj al-Barajneh, which is effectively controlled and governed by Hezbollah.

460.    The Martyrs Foundation–Lebanon receives funding from the Imam Khomenei Relief Foundation (an SDGT discussed later in the Complaint), which pays all medical expenses for Hezbollah's wounded operatives and an estimated 70 percent of the cost of caring for civilians injured in "resistance"-related fighting.

461.    Al-Rasul al-Azam Hospital and the new Hezbollah hospitals recently built in the South and in Baalbek employ large staffs and maintain substantial pools of medical professionals whose livelihood depends on Hezbollah.

462.    The Lebanese Syndicate of Hospitals lists the Martyrs Foundation as having established the hospital and opened its doors in 1988.

463.    Dr. Muhammad Ali Bashir serves as the hospital's CEO, and Shawki Nur al-Din serves as the hospital's chairman.

---

[24]    The Financial Action Task Force (FATF), an independent inter-governmental body that develops and promotes policies to protect the global financial system against money laundering, terrorist financing and the financing of proliferation of weapons of mass destruction, issued a guide in 2015 titled *Combating The Abuse of Non-Profit Organisations*. It notes:

> There may be circumstances in which cash may be the only means possible for the NPO to operate, for example, to provide assistance to a particularly remote region where financial services are not available. While cash is inherently more risky to terrorist abuse, when cash is used, *it should be used appropriately in line with international and national laws and regulations, including cash declaration and/or cash disclosure requirements to promote greater transparency and accountability of the funds*." (Emphasis added.)

464. Al-Rasul al-Azam Hospital has a list of 1,800 Hezbollah martyrs' family members who receive preferential treatment, including priority appointments, superior rooms and nurses dedicated to their treatment.

465. This happens even though Al-Rasul al-Azam claims to be committed to treating all Lebanese citizens; it is common knowledge that Hezbollah fighters and their families receive top priority.

466. For example, a May 2013 article in *The New York Times* quotes a nurse from the hospital who stated that the facility was closed to civilian patients because it was "full of Hezbollah fighters." The article continues: "A Hezbollah militiaman stood guard with a walkie-talkie, near a large poster of a fighter who died recently and was commemorated as a martyr."

467. In honor of the hospital's 25th anniversary, Hezbollah's leader, Hassan Nasrallah, delivered a speech at the hospital. He acknowledged the role of the Martyrs Foundation–Lebanon in establishing the hospital and went on to describe the hospital as part of the jihad, of the resistance.

468. In July 2015, several sources published reports that an Iranian military delegation recovered the bodies of eight IRGC personnel after they were identified in, and transferred from, Al-Rasul al-Azam Hospital.

469. In November 2015, ISIS claimed responsibility for twin suicide attacks near the hospital that left 43 dead. ISIS has declared such attacks are an attempt to exact revenge on Hezbollah for its involvement in Syria.

470. As a result of the ISIS attacks on the hospital, Hezbollah has erected walls and iron and concrete barriers in the vicinity of the hospital.

471. Before the 2018 elections in Lebanon, the Hezbollah-affiliated publication *Al-Ahed*

published an article calling Lebanese voters to support Hezbollah because of the services provided by Al-Rasul al-Azam Hospital.

472. The article publicly noted that the hospital received over $1 million U.S. dollars per month from the Imam Khomeini Foundation that subsidized costs to patients and urged voters to cast ballots for those who protect the country with "blood and medicine."

### ii. Atlas Holding SAL

473. The Martyrs Foundation–Lebanon also owns a holding company, Atlas Holding SAL, which it formally established in 2006 but operated in other forms previously.

474. Atlas Holding SAL is effectively the investment arm of the Martyrs Foundation–Lebanon.

475. As detailed previously, Atlas Holding SAL was co-founded by Hezbollah operative and Al-Rasul al-Azam Hospital CEO, Muhammad Ali Bashir; is managed by Hezbollah operative Qassem Muhammad Ali Bazzi; and was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

476. Atlas Holding SAL makes no effort to conceal the fact that it is owned by the Martyrs Foundation–Lebanon, a U.S. SDGT.

477. Atlas Holding has a sister company (located at the same address) called **Atlas for Trade and Industry Ltd**.

478. Atlas for Trade and Industry Ltd. was co-founded by Qassem Aliq, who was designated as an SDGT on July 24, 2007, as "a Hizballah official who was previously the director for the Martyrs Foundation branch in Lebanon. In addition to overseeing Martyrs Foundation's operation, Aliq worked closely with senior Hizballah officials. Aliq currently serves as the director of Jihad al-Bina, a Lebanon-based construction company formed and operated by Hizballah and

previously designated by the U.S. Department of the Treasury."

479.    Another founder of this company is Adnan Muhammad Ali Qassir, who served as the Hezbollah mayor of Deir Qanoun En Nahr.

480.    As with Atlas Holding, Atlas for Trade and Industry Ltd. lists one of Hezbollah's lawyers, Ali Hassan Berro, as the company's attorney.

481.    Atlas Holding SAL owns or controls a number of commercial enterprises. These include:

### (a) Shahed Pharm Drugstore SARL

482.    Shahed Pharm Drugstore SARL (discussed above) was co-founded by Hezbollah operative and Al-Rasul al-Azam Hospital CEO Muhammad Ali Bashir and Martyrs Foundation–Lebanon Director Shawki Nur al-Din; is managed by Hezbollah operative Qassem Muhammad Ali Bazzi; and was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

483.    Defendant LEBANON AND GULF BANK acts as the banker for Martyrs Foundation–Lebanon / Atlas Holding SAL sub-company Shahed Pharm Drugstore SARL.

### (b) Al-Amana SARL

484.    Al-Amana SARL (discussed above) is owned by the Martyrs Foundation–Lebanon through Atlas Holding SAL, which holds 98 percent of Al-Amana SARL.

485.    As detailed previously, Hezbollah operative Qassim Muhammad Ali Bazzi is the general manager and owns 1 percent, and the remaining one per cent is held by Osama Muhammad Aliq. Muhammad Ali Bashir is listed as Founder of Al-Amana SARL. Al-Amana SARL was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

486.    Defendants LEBANON AND GULF BANK and BYBLOS BANK each provide banking services for this Hezbollah-controlled company.

### (c) Amana Plus Company

487. Amana Plus Company (discussed above) was co-founded by Hezbollah operative and Al-Rasul al-Azam Hospital CEO, Muhammad Ali Bashir, Martyrs Foundation–Lebanon Director, Shawki Nur al-Din, and Qassem Muhammad Ali Bazzi. It is also managed by Hezbollah operative Qassem Muhammad Ali Bazzi, and was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

### (d) Société Orientale Libanaise d'Investissement et Développement SAL

488. As detailed previously, Atlas Holding SAL is listed as a founder of the company (discussed above), but 50 percent of the registered shares belong to Hassan Ali Tajideen, executive manager of Tajco (SDGT), shareholder in Tajco SAE and son of Ali Tajideen—the U.S.-designated SDGT and Hezbollah financier, and his mother Nur al-Ain Muhammad Ali Atwi owns (35 percent) of the shares.

489. Jihad Muhammad Qansu, a U.S.-designated SDGT associated with Adham Tabaja, is listed as the company's auditor. One of Hezbollah's lawyers, Ali Hassan Berro, is listed as the company's attorney. Defendant BYBLOS BANK acts as the banker for this Hezbollah-controlled company.

### (e) Medical Equipment and Drugs International Corporation SAL

490. Medical Equipment and Drugs International Corporation SAL was established in 2013—*six years* after the U.S. designation of the Martyrs Foundation–Lebanon. It warehouses pharmaceutical products and medical equipment.

491. Hezbollah operative Qassem Muhammad Ali Bazzi is the company's manager.

492. Ninety percent of the company's shares are owned by Atlas Holding SAL, but at least four major Lebanese banks maintain accounts for it, including Defendants BYBLOS BANK

SAL, JAMMAL TRUST BANK SAL, BANK AUDI SAL and BANK OF BEIRUT SAL.

### (f) Al-Kawthar

493. Al-Kawthar is a clothing store chain in Lebanon. The company is owned by the Martyrs Foundation–Lebanon through Atlas Holding SAL, but 2 percent of the shares are owned by Hezbollah operative and Al-Rasul al-Azam Hospital CEO Muhammad Ali Bashir and Martyrs Foundation–Lebanon Director Shawki Nur al-Din (1 percent each). One of Hezbollah's lawyers, Ali Hassan Berro, is listed as the company's attorney.

494. Al-Baraka Bank acts as the banker for this Hezbollah-controlled company.

### (g) City Pharma SARL

495. City Pharma SARL is a Hezbollah-controlled pharmaceutical distributor also involved in counterfeit drug smuggling. As detailed previously, the company is owned by the Martyrs Foundation–Lebanon through Atlas Holding SAL, but 2 percent of the shares are owned by Hezbollah operative and Al-Rasul al-Azam Hospital CEO Muhammad Ali Bashir and Martyrs Foundation–Lebanon Director Shawki Nur al-Din. Defendant LEBANON AND GULF BANK acts as the banker for this Hezbollah-controlled company.

### (h) Global Touristic Services SAL (a/k/a GTS)

496. Global Touristic Services SAL (discussed above) is owned by the Martyrs Foundation–Lebanon through Atlas Holding SAL. It was founded in 2008, after the Martyrs Foundation–Lebanon was designated as an SDGT. The company claims to invest in tourism and hotel projects, hotels, restaurants, motels, furnished apartments, and restaurants in Lebanon and abroad. It also claims to invest in restaurants, cafes, snack bars, coffee and tea lounges of all grades as well as zoos, amusement parks and games, art museums, craft festivals and tourism festivals.

497. As previously detailed, Al-Rasul al-Azam Hospital's CEO Muhammad Ali Bashir

and Martyrs Foundation–Lebanon Director Shawki Nur al-Din are co-founders of the company along with Hezbollah operative Qassem Muhammad Ali Bazzi.

498.    Jihad Muhammad Qansu, a U.S.-designated SDGT associated with Adham Tabaja, is listed as the company's auditor, and one of Hezbollah's lawyers, Ali Hassan Berro, is listed as the company's attorney. Defendant BYBLOS BANK acts as the banker for this Hezbollah-controlled company.

### d. AL-MABARRAT CHARITABLE SOCIETY (A/K/A BENEVOLENT CHARITY SOCIETY)

499.    Al-Mabarrat Charitable Society was established in 1978 and was founded by Hezbollah's spiritual leader, Sheikh Muhammad Hussein Fadlallah, who was designated as an SDT in 1995.

500.    Al-Mabarrat operates a chain of schools, orphanages, clinics, educational and vocational centers, mosques and hospitals, including the Al-Hadi Institute.

501.    Just as Sheikh Fadlallah provided "spiritual guidance" and Islamic legal justifications for Hezbollah's terrorist activities but denied being a formal member of the organization, Al-Mabarrat has long maintained the pretense that it is sympathetic to, but not part of, Hezbollah.

502.    Sheikh Fadlallah's brother, Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah, serves as the organization's general manager.

503.    Sheikh Fadlallah's son, Ali al-Sayyid Muhammad Hussein Fadlallah, serves as the Association's president.

504.    Al-Mabarrat established a satellite organization in the United States known as "**Al-Mabarrat Society**," which was established in 1991 in Dearborn, Michigan.

505.    According to its English website, the charity's aim is to educate orphans and to

secure sponsors and donations for fifteen schools and nine orphanages in Lebanon and Iraq.

506. Talil Chahine, the former owner of the La Shish restaurant chain, was prominently linked to the U.S. organization prior to his indictment on federal tax evasion charges for allegedly concealing more than $20 million U.S. dollars in restaurant profits and funneling some of those funds to Lebanon.

507. In 2002, Chahine, whom federal prosecutors asserted had "connections at the highest levels of ... Hezbollah," attended an Al-Mabarrat fundraiser in Lebanon at which he and Fadlallah served as the keynote speakers.

508. On July 24, 2007, FBI agents raided Al-Mabarrat's office in Dearborn, and seized files, paperwork and financial records, but the organization was never indicted or closed.

509. In addition to funds it has raised in the United States through the Al-Mabarrat Society, the parent organization owns and operates several commercial enterprises in Lebanon and around the world. These include the following entities:

### i. Arab Lebanese Trading & Contracting Company

510. Arab Lebanese Trading & Contracting Company was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro. The company is co-owned by Al-Mabarrat's general manager, Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah, its president, Ali al-Sayyid Muhammad Hussein Fadlallah, and Hamzah Safieddine, the brother of two of Hezbollah's most powerful leaders, Hashem and Abdallah Safieddine.

511. Hamzah Safieddine's (nominal) ownership stake highlights the close connection between Al-Mabarrat and Hezbollah.

### ii. Assaha International Group (Offshore) SAL

512. Assaha International Group (Offshore) SAL was incorporated by one of

Hezbollah's lawyers, Ali Hassan Berro (who also owns some shares in the company). The company is co-owned by Al-Mabarrat's general manager, Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah, and an individual named Jamal Makke.

### iii.   Assaha Travel and Tourism SARL

513.    Assaha Travel and Tourism SARL, as discussed previously, was also incorporated by one of Hezbollah's lawyers, Ali Hassan Berro, but is owned by Al-Mabarrat directly.

514.    Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah and Jamal Makke co-founded the company and are partners in it, each one holding 5 percent of the shares.

515.    The company operates **Assaha Village,** a historically themed restaurant and event space in the heart of the Hezbollah-controlled southern outskirts of Beirut.

### iv.   Al-Ittam Company for General Trading and Fuels

516.    Al-Ittam Company for General Trading and Fuels (a/k/a Aytam Petroleum), is a company which deals with trade, import and export, "especially in the field of hydrocarbons trade and other petroleum derivatives." Its director is Hassan Hamd Surur (who is also the auditor of Assaha International Group Offshore SAL). Both Hamzah Safieddine's (nominal) ownership stake and Sheikh Fadlallah's brother and son serving as founders of the company highlight the close connection between Al-Mabarrat, Al-Ittam and Hezbollah.

517.    Additionally, the company is co-owned by Al-Mabarrat's general manager, Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah, Ahmad Muhammad Hussein Fadlallah (Sheikh Fadlallah's son), Abdallah Ismail al-Zayn, Ali al-Sayyid Muhammad Hussein Fadlallah (Sheikh Fadlallah's son), and Muhammad Ali al-Sayyid Abd al-Ra'uf Fadlallah (Sheikh Fadlallah's brother). Al-Mabarrat itself is listed as a partner.

518.    It was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro's sister—

Zeinab Hassan Berro.

### v.    The Lebanese-Arab Company for Touristic Services

519.    The Lebanese-Arab Company for Touristic Services is a tourism company. As previously detailed, it is owned by Al-Mabarrat, Jamal Ali Makke, Hamzah Ali Safieddine, Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah, and Ali al-Sayyid Muhammad Hussein Fadlallah. It was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

520.    The Lebanese-Arab Company for Touristic Services is the major shareholder (63 percent) of **Rayan Foods** (discussed above), nominally an import and export company that focuses on renting, manufacturing, buying and selling various kinds of machinery and equipment, building materials, artificial stones, sanitary ware, electricals, paints, fuel, wood, metals, plastic, fertilizers, agricultural medicines, material and non-material movables, labor and brokering, abroad and in Lebanon. It also purports to be involved in management, investment, construction and rental of restaurants, amusement parks, cafes, cinemas, hotels, furnished apartments, and the use of all tourism businesses.

521.    As detailed previously, another major shareholder of Rayan Foods SAL is Ali Radwan Aidibi (31.81 percent). Ali Muhammad Hussein Fadlallah holds thirty shares and is the chairman; Jihad Muhammad Qansu (SDGT) is its auditor; Jamal Ali Makke is a board member and holds ten shares; and Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah is a board member and holds ten shares. It was also incorporated by Hezbollah's Ali Hassan Berro.

### e.  IMAM KHOMENEI RELIEF FOUNDATION–LEBANON ("IKRC") (A/K/A ISLAMIC CHARITABLE EMDAD COMMITTEE)

522.    The Imam Khomenei Relief Foundation was formed in 1979 by the Iranian government as a charitable organization, officially to help poor families and allow them to regain financial stability. It operates throughout the Middle East and has branches all over the region. As

a key instrument of soft power used to promote Iran's ideological and political goals, IKRC is a humanitarian aid organization that also organizes anti-American protests, promotes Shi'a Islam and has been known to work closely with the IRGC–QF.

523. The Imam Khomenei Relief Foundation–Lebanon is the Lebanese branch of IKRC ("IRKC-Lebanon"). It was reportedly established in Lebanon in 1987 and became a public welfare association by a Lebanese presidential decree in 1994.

524. The Imam Khomenei Relief Foundation–Lebanon defined itself in 1997 as "a charitable NGO started by Hizbullah to alleviate social hardship in that part of the Lebanese population most affected by the Israeli occupation of the south of the country." IRKC–Lebanon maintains branches throughout Shi'a populated areas of Lebanon.

525. Hezbollah controls and sets the policy for the Imam Khomenei Relief Foundation–Lebanon and determines the allocation of its budget.

526. IRKC–Lebanon was designated as an SDGT on August 3, 2010.

527. According to the U.S. Department of the U.S. Department of the Treasury, IRKC–Lebanon "is a Hizballah social service organization that was created by the Government of Iran in the 1980s and is directed and run by Hizballah members or cadre. Iran has provided millions of dollars to the Hizballah-run branch in Lebanon since 2007. The IKRC has helped fund and operate Hizballah youth training camps, which have been used to recruit future Hizballah members and operatives. Hizballah Secretary General Hassan Nasrallah has acknowledged the IKRC branch in Lebanon as one of Hizballah's openly-functioning institutions linked to and funded by Iran."

## f. WOUNDED ASSOCIATION (A/K/A *MUASSASAT AL-JARHA* / AL-JARHA ASSOCIATION)

528. The Wounded Association (a/k/a *Muassasat al-Jarha*) was registered in Lebanon on October 31, 1992. The organization's stated focus is on caring for people wounded in the

"Resistance."

529.     The Wounded Association belongs to and is controlled by Hezbollah.

530.     For example, the Lebanon-based *Daily Star* published a feature story in 2002 about

the Wehbe family that received financial assistance from the Association:

> The purchase of the apartment and all its perks come with compliments
> from the Al-Jarha (Wounded) Association, which caters to the war-
> wounded and disabled and is one of the social services provided by
> Hizbullah.
>
> Established in 1989, the association, located in Beirut's southern suburbs,
> cares for over 3,000 men, women and children. Eighty percent of the men
> the association assists were resistance fighters.

531.     The Association also received mention in Hezbollah leader Naim Qassem's book,

*Hizbullah: The Story from Within.*

### 8.     MEDIA / ENTERTAINMENT

#### a.   Lebanese Communication Group

##### i.   *Al-Manar*

532.     *Al-Manar* started broadcasting in 1991 and began satellite broadcasts in

2000.

533.     *Al-Manar* raised funds for Hezbollah through advertisements broadcast

on the network and an accompanying website that requested donations for the terrorist

organization.

534.     As recently as late 2005, Hezbollah-affiliated charities aired commercials on *Al-

Manar*, providing contact information and bank account numbers for donations. Moreover,

Hezbollah Secretary General Nasrallah publicized an invitation for all Lebanese citizens to

volunteer for Hezbollah military training on *Al-Manar* and *Al-Nour* (discussed below).

535.     In addition to supporting Hezbollah, *Al-Manar* has also provided support to other

123

designated Palestinian terrorist organizations, including Palestinian Islamic Jihad ("PIJ") and Al Aqsa Martyrs Brigade, notably transferring tens of thousands of dollars for a PIJ-controlled charity. PIJ is listed as a Specially Designated Terrorist, Specially Designated Global Terrorist, and a Foreign Terrorist Organization by the U.S. Government, and is also named on the European Union's list of terrorist entities.

536. The U.S. Department of State added *Al-Manar* to the Terrorism Exclusion List (TEL) in December 2004. *Al-Manar* was designated by the U.S. Department of the U.S. Department of the Treasury as an SDGT on March 23, 2006.

### ii. Al-Nour

537. Al-Nour is Hezbollah's primary radio station. The station started broadcasting on May 9, 1988 and is supported by the IRGC. The station had several names, including: Voice of Islam (Sawt al-Islam), Voice of Faith (Sawt al-Iman), and Voice of the Oppressed (Sawt al-Mustadafin). The station broadcasts mostly news, but also programs with religious contents and programs about the lives of terrorists who were killed or captured.

538. Al-Nour was designated by the U.S. Department of the U.S. Department of the Treasury on March 23, 2006.

### b. Hezbollah's Baqiyat Allah Magazine

539. Baqiyat Allah Magazine was founded in 1991 as a cultural magazine to be distributed to Hezbollah operatives and commanders.

540. It is printed by Hezbollah's Dbouk International for Printing and General Trading, which was registered by leading Hezbollah-affiliated attorney Ali Hassan Berro.

541. The magazine is supervised by Al-Ma'aref Islamic Cultural Society.

542. A 2015 issue of the magazine (No. 119) describes Hezbollah's various charitable

institutions as part of the "society in resistance."

543.     Among the institutions described in the articles are the Islamic Resistance Support Organization ("IRSO"), The Martyrs Foundation–Lebanon, The Wounded Association, the Imam Khomenei Relief Foundation and Jihad al-Bina. The articles emphasize how these institutions are all integral parts of the Resistance.

### c.  Arts Council

544.     **Risalat (a/k/a Lebanese Arts Foundation)** was established in 2006, as a Hezbollah-run cultural institution. It is subordinate to Hezbollah's "Technical Activities" unit (part of the Executive Council, under Hashem Safieddine). Risalat operates exhibitions and offers art courses, lectures and workshops. It is headed by Kamal al-Din Kawtharani.

545.     **Mleeta Museum** (a/k/a "The Tourist Landmark of the Resistance," a/k/a "Museum for Resistance Tourism") is a "war" museum operated by Hezbollah's Executive Council.

546.     The museum was established on May 25, 2010 and aims to "circulate the culture of the resistance and work on building a resisting society; give attention to the ideological, artistic and cultural activities of relevance to the resistance; deepen the concept of martyrdom and explain its role in making life and preserving homeland, territory and sanctities."

547.     The site offers its visitors a chance to see its "spoils of war" exhibitions "gained by the resistance fighters since the beginning of the conflict with the enemy. In addition, information about the Zionist enemy and its different military formations are exhibited."

548.     Other sections of the museum include "The Pathway" – "a trail where thousands of Mujahedeen had positioned during the years of occupation… [and] launched to execute military operations against the opposing enemy outposts, reaching the occupied buffer zone." Another exhibit is titled "The Cave," which the museum states was "built by the resistance fighters for

shelter … dug in rotation by more than 1000 freedom fighters over a span of 3 years."

### d. Amusement Parks

549. The following Hezbollah-controlled entities operate in Lebanon:

- **Fantasy World SARL** is an amusement park with a restaurant operating in Beirut. It is headed by Adham Tabaja, who is also its founder, majority shareholder and board member. Amin Muhammad Cherri, a shareholder in al-Manar and Hezbollah's candidate for the parliament elections in 2005, is a co-founder of the company. The company's other partners and shareholders include Imad Muhammad Cherri, Ali Adham Tabaja and Muhammad Adham Tabaja. It was incorporated by Ali Hussein al-Ashi, a Hezbollah affiliated lawyer. Adham Tabaja's brother, Romel Hussein Tabaja, is listed as the company's co-founder.

- **City Park SARL** is a company which operates an amusement park and is part of Adham Tabaja's Al-Inmaa for Entertainment and Leisure Projects. Adham Tabaja, his brother Romel Tabaja, and Issam Ahmad Saad (SDGT) are shareholders and co-founders of the company. The company's other partners are Nada Hassan Hijazi and Abbas Ahmad Fahas. The company's attorney is Butrus Michel Ghanimah.

- **Family Park SARL** is a "Hezbollah-run and -financed amusement park," and part of Adham Tabaja's Al-Inmaa for Entertainment and Leisure Projects. The company's prominent partners are Raed Hashem al-Amin, Ali Rauf Shaito, Issam Ahmad Saad (SDGT), Rauf Ali Shaito, and Attallah Jamil Shaito.

- **Fun World Company** is an amusement park founded by Adham Tabaja and Issam Ahmad Saad (SDGT) and is affiliated with Tabaja's Al-Inmaa for Entertainment and Leisure Projects. The company's majority shareholder and chairman is Fadi Ali Hawi. Compass Insurance SAL (owned by the Tabaja family, and which also owned a substantial stake in LCB) is another shareholder. Other noteworthy co-founders are Muhammad Taha Jumaa, a prominent figure in Tabaja's Network as well as Hezbollah's candidate for a seat in the town of Houmine al-Fawqa; and Imad Ramez Wazani, another prominent part of the Tabaja Network. The company's lawyer is Ali Hussein al-Ashi.

- **Farah Tyre SARL** is (supposedly) an amusement park in Abbassiya, near Tyre. Abbas Muslim Wehbe is the majority shareholder; Hassan Muhammad Attiya (part of the Tabaja Network, candidate for a seat in al-Khiyam on behalf of Hezbollah's list) and Ali Hussein Tabaja (Adham's brother) are also partners.

- Other related companies are Family House SARL, Hoops, Nexus SARL, Mikalab Company LLC, Farah Company for Tourism/Farah Travels Company SAE, Alia Company SAE, Mudun Tourism Projects Company SAL "Green City," Global Touristic Services SAL and Rayan Foods SAL.

### e. Golf Courses

550. Al-Dalhamiya Country Club Company is a country club in the Bekaa Valley controlled by the Tajideen family.

551. Hassan Hejeij (SDGT), a Shi'a businessman, runs a company named SOCOFI (Société de Construction et de Financement), which owns the gold club Mindoubé in Gabon. His brother, Kassem Hejeij, has been designated by the U.S. Department of the U.S. Department of the Treasury on June 10, 2015, for supporting Hezbollah financially:

> In addition to his support to Adham Tabaja and his affiliated companies in Iraq, Hejeij has helped open bank accounts for Hizballah in Lebanon and provided credit to Hizballah procurement companies. Hejeij has also invested in infrastructure that Hizballah uses in both Lebanon and Iraq.

552. Along with his brother, Hassan Hejeij co-founded and was majority shareholder (58.75 percent) in MEAB.

### 9. AUTOMOTIVE SALES

553. The following Hezbollah-controlled entities operate in Lebanon and Africa:

- **Car Escort Services (Offshore) SAL** is an import/export company based in Lebanon. Its chairman and shareholder is Ali Muhammad Kharrubi (designated an SDNT by the U.S. Department of the U.S. Department of the Treasury). Other shareholders and board members are Ali Yussuf Charara and Muhammad Ibrahim Bazzi (SDGT), each holds 1000 shares. Both are prominent Hezbollah financiers.

- **Shaito Group SARL** deals with the trade of cars, machines and spare parts. Its co-founder and shareholder Attallah Jamil Shaito (a/k/a Shai'tu or Cheaito) is a prominent member of the Tabaja Network and holds various positions in companies directly owned by Adham Tabaja. Additionally, he is a politician from south Lebanon, and has run for a

seat in a Hezbollah-supported list in the Lebanese elections of 2004. In 2010, he was elected president of Bint Jbeil District's Municipalities' Federation. Other shareholders and partners in the company are his family members. The company's attorney is Hisham Ali Faqih.

- **Car Care Center and Mikalab Company**[25] is a Lebanese one-stop-shop for car services including problems fixing, cleaning, car sales, spare parts sales, and so forth. The company was designated by the the U.S. Department of the U.S. Department of the Treasury on June 2015 for its ties with Hezbollah. Former manager of Car Care Center, Hussein Ali Faour (SDGT), worked with Adham Hussein Tabaja to manage Al-Inmaa's projects in Iraq. Car Care Center is one of the most important companies established by Hezbollah. The company was located in a compound owned by Hezbollah in south Beirut and is secured by Hezbollah personnel. The company was incorporated by Faruq Muhammad Raef Hammoud, an attorney affiliated with the Tabaja Network (he is the attorney of African Fish Company SAL off shore, in which many prominent members of the Tabaja and al-Amin Networks are involved).

- **Ellissa Group SA** deals in sales of used cars in Africa, operating in Benin. It is owned by Ali Muhammad Kharrubi (who was designated, as mentioned above) and Ellissa Holding SAL, its parent company (of which, in turn, Kharrubi is majority shareholder as well). According to the investigation of the U.S. Drug Enforcement Administration, under the cover of selling used cars, Ali Muhammad Kharrubi's Ellissa company carries out illicit activities, including money laundering to finance Hezbollah. On January 18, 2012 the Beninese Government had decided to ban Ellissa Group.

- **Ellissa Park Cotonou/Ellissa Car Park** is a subsidiary of Ellissa Group SA and owned by it. It was also a part of Ayman Juma'a's drug trafficking and money laundering network. For this reason, it has been designated as SDNTK by the U.S. Department of the U.S. Department of the Treasury. Ellissa Park serves as an area to receive and sell used cars imported to the Cotonou port.

---

[25]     Car Care Center and Mikalab Company LLC appear to be the same company based on the fact that both companies had the same registration number as well as a few management personnel in common (as of December 2017 registry form). Mikalab Company is headed by Khidr Ali Abi Haidar, who is also a partner and shareholder in the company. Hussein Ali Faour and his son, Batul, are listed as co-founders of Mikalab as well. Other shareholders and partners are Abd al-Mu'in Jawad al-Amin and Abbas Ali Karim.

### 10.  ARMS DEALING

554.    Hezbollah has strong connections to (among others) an arms-dealing network in Nigeria.

555.    One of Hezbollah's most prominent arms dealers is Mustafa Reda Darwish Fawaz who was designated by the U.S. Department of the U.S. Department of the Treasury as an SDGT on February 26, 2015 "for acting for or behalf of Hizbullah."

556.    Mustafa Fawaz has been a significant donor to Hezbollah and a member of Hezbollah's Islamic Jihad Organization (IJO).

557.    He is a Lebanese citizen who owns a chain of supermarkets in Abuja, Nigeria called Amigo Supermarket Ltd (an SDGT) as well as the Wonderland Amusement Park and Resort Ltd (an SDGT) in Abuja, Nigeria.

558.    According to the U.S. Department of the U.S. Department of the Treasury, since the 1990s, Mustafa Fawaz has been involved in activities related to communications, surveillance, and reporting for Hezbollah. He communicated with Hezbollah in Lebanon by e-mail and reportedly received updates and newsletters regarding Hezbollah activities and distributed this information to other Hezbollah supporters in Abuja, Nigeria.

559.    According to the U.S. Department of the U.S. Department of the Treasury, Mr. Fawaz used special surveillance cameras based at Amigo Supermarket (SDGT) to monitor the movements of foreigners, especially Israelis.  He also provided Hezbollah with a report of his visit to the U.S. Embassy in Nigeria.

560.    As of at least mid-September 2003, Mustafa Fawaz solicited donations in Abuja, Nigeria, and helped arrange the transmission of these funds to Hezbollah in Lebanon.

561.    Mr. Fawaz maintained multiple accounts at Defendant BLOM BANK.

562. In mid-May 2013, the Nigerian State Security Service arrested Mustafa Fawaz and two other men after the discovery of an arms cache in a residence in the northern Nigerian city of Kano.

563. On May 30, 2013 Nigerian intelligence agents escorted journalists to a property in Kano and showed them a bunker where a massive haul of weapons had been stored.

564. A Nigerian official, Bassey Etang, described the room as a "Hezbollah armory."

565. Mustafa Fawaz reportedly confessed the details of Hezbollah activities in Nigeria and identified additional names of other Hezbollah IJO cell members in Nigeria, as well as a specific property in Kano, Nigeria, that was used to support terrorism.

566. In November of 2013, Fawaz and one of the men arrested with him were acquitted of the charges against them because Hezbollah was not an illegal organization in Nigeria.

567. The third man was convicted of conspiring to import weapons illegally.

568. Fouzi Reda Darwish Fawaz, Mustafa Fawaz's brother, was also part of Hezbollah's Nigerian network.

569. He was designated as an SDGT on February 26, 2015.

570. Fouzi Fawaz was a Hezbollah Foreign Relations Department (FRD) official in Abuja, Nigeria. The FRD claims to be in charge of "community relations;" but the primary goal of the FRD in Nigeria was to scout recruits for Hezbollah's military units, as well as to create and support Hezbollah's terrorist infrastructure in Africa and globally.

## 11. TECHNOLOGY & COMMUNICATIONS

571. Among the technology companies that generate revenue for Hezbollah are Spectrum Investment Group Holding SAL and Spectrum International Investment Holding SAL, Lebanon-based telecommunications companies controlled by Ali Yussuf Charara (an SDGT) and

his brother, Muhammad Yussuf Charara, that provide integrated telecommunications services in the Middle East, Africa, and Europe.

572.    The Company is involved in the following activities Telecommunication operations and management owning 50 percent of Gamtel - Gambia Telecommunications Company Ltd. (for fixed telephone lines), together with Gamcel (for mobile lines).

573.    In August 2008 Government of Gambia sold 50 percent shares of Gambia Telecommunications Company Ltd to Spectrum Investment Group.

574.    Spectrum Investment Group Holding SAL was established on May 27, 2003.

575.    Spectrum International Investment Holding SAL was founded on December 9, 2007.

576.    Both Spectrum Investment Group Holding SAL and Spectrum International Investment Holding SAL were designated as SDGTs on January 7, 2016.

577.    Principal Bankers of Spectrum Investment Group Holding SAL comprise the following Defendants:

- BANK AUDI, Verdun Branch, Beirut;
- JAMMAL TRUST BANK, Verdun Branch, Beirut;
- BLOM BANK; and
- LEBANON AND GULF BANK.

## 12.    NARCOTICS TRAFFICKING

578.    Hezbollah has exploited its control of Lebanon's Bekaa Valley to grow poppies and cannabis.

579.    Hezbollah has also established an extensive network of laboratories for the processing of heroin and hashish, (heroin,) mostly smuggled in from Afghanistan and Pakistan.

580.    The Bekaa Valley also serves as a transit point for cocaine harvested in Colombia.

581.    The Hamiyya clan of Teraya, the Telis and Mathloum clans from Ritaal, and the al-

Masri clan from Ta'ala are the most prominent- Hezbollah-affiliated clans in the Bekaa Valley who run the narcotics trade.

582.    Hezbollah has also cultivated strong ties to the Lebanese Shi'a expatriate communities around the world, particularly in Africa and South America (especially in the Tri-Border Area of Paraguay, Brazil, and Argentina), and it has used these connections to establish an extensive international operational infrastructure to launder money and drugs through the international financial system.

583.    During the last decade, drug trafficking organizations with links to Hezbollah have increasingly used countries along or near the West African coast as trans-shipment hubs for importing massive quantities of narcotics, particularly cocaine from South America, to be later distributed in Europe or elsewhere within Africa.

584.    Through a combination of privately-owned aircraft and maritime vessels, these Hezbollah-controlled organizations, predominantly based in Venezuela and Colombia, have transported hundreds of tons of cocaine, worth billions of dollars, to West African nations such as Benin, Sierra Leone, and Togo.

585.    According to a 2010 report by the U.S. Congressional Research Service, law enforcement officials seized at least 46 metric tons of cocaine bound for Europe via West Africa between 2005 and 2008.

586.    As much as 300 metric tons of cocaine, worth approximately $13.5 billion U.S. dollars, is estimated to be trafficked through West Africa to Europe each year.

587.    The wholesale profits reaped by narco-traffickers during this period are estimated to be approximately $3.5 billion U.S. dollars per year.

588.    Perhaps the most important Hezbollah operative involved in the drug trade is

Ayman Joumaa—a Specially Designated Narcotics Trafficker ("SDNT") who was indicted on November 23, 2011 and charged with conspiracy to distribute narcotics and conspiracy to commit money laundering.

589.    The indictment alleged that Joumaa and his co-conspirators coordinated the shipment of tens of thousands of kilograms of cocaine, including at least 85,000 kilograms of cocaine sold to Los Zetas, a Mexican drug cartel, between in or around 2005 to in or around 2007.

590.    The indictment also alleged that Joumaa laundered hundreds of millions of dollars in drug proceeds from West Africa, Europe, Mexico and the United States, largely for cocaine suppliers in Colombia and Venezuela, who paid Joumaa's organization a fee of between 8 percent and 14 percent of the laundered proceeds.

591.    According to the U.S. Government, Joumaa and his organization operate in Lebanon, West Africa, Panama and Colombia, and launder proceeds from their illicit activities, as much as $200 million per month, through various channels, including bulk cash smuggling operations and Lebanese exchange houses.

592.    According to the U.S. Government, Joumaa's organization pays fees to Hezbollah to facilitate the transportation and laundering of narcotics proceeds.

593.    For example, Mr. Joumaa's organization sends bulk cash shipments through. the Beirut International Airport and pays Hezbollah security to safeguard and transport the cash to its recipient.

594.    On January 26, 2011 the U.S. Department of the U.S. Department of the Treasury targeted Ayman Joumaa's drug and money laundering network. According to then OFAC Director, Adam J. Szubin, Ayman Joumaa (SDNT) ran "a complex money laundering scheme moving hundreds of millions of dollars of illicitly derived proceeds through businesses operated by him

and his associates".

595.    Ayman Joumaa's network used several money changers in Lebanon in order launder the drugs money, among them the Hassan Ayash Exchange Company, the Ellissa Exchange Company, and New Line Exchange Trust Company, all designated SDNTs on January 26, 2011.

596.    The following chart diagramming of the Joumaa Network was prepared by the U.S. Department of the U.S. Department of the Treasury:



597.    On October 1, 2015, the U.S. Department of the U.S. Department of the Treasury designated four Lebanese and two German nationals and eleven companies as Specially

Designated Narcotics Traffickers pursuant to the Foreign Narcotics Kingpin Designation Act (Kingpin Act).

598.     These individuals provided support for narcotics trafficking and money laundering activities conducted by Lebanese-Colombian drug trafficker and money launderer Ayman Saied Joumaa, key Joumaa associate Hassan Ayash, and the Joumaa criminal organization, which has ties to Hezbollah.

## 13.     PHARMACEUTICALS AND COUNTERFEITING MEDICATIONS

599.     Hezbollah is also heavily involved in the international sale of pharmaceuticals, including counterfeit medicines.

600.     Counterfeiting medications is an attractive business for Hezbollah because the investment required to establish the infrastructure for counterfeiting medications is relatively modest, but the profits can be comparable to those achieved from the sale of narcotics.

601.     The criminal sanctions for counterfeiting medications are minimal with far lighter sentences typically imposed than for drug trafficking.

602.     Hezbollah has actively sold large quantities of counterfeit drugs, including:

- Captagon, which contains the amphetamine fenethylline (a synthetic stimulant), used to treat attention deficit hyperactivity disorder (ADHD); and

- Plavix (an anti-coagulant pill used to treat cardiac disease).

## 14.     INTERNATIONAL TRADE

603.     At least hundreds of millions of dollars in U.S. currency are transported annually from Benin and other West African countries to Lebanon by money couriers, hawaladars, and currency brokers.

604.     These U.S. dollar-denominated funds include the proceeds of car sales from the

135

Benin car parks, along with the proceeds of narcotics trafficking, money laundering proceeds, and other crimes. A significant portion of this money moves through courier and security networks controlled by Hezbollah or individuals affiliated with Hezbollah.

605.    The proceeds of the car sales help to conceal and disguise the true source, nature, ownership, and control of the narcotics proceeds.

606.    For example, Ellissa Group (SDNT, discussed above)—headed by two Lebanese brothers Ali Muhammad Kharrubi (SDNTK) and Jamal Muhammad Kharrubi (SDNTK)—ran money exchange and used car selling companies in Lebanon and in Benin, Africa.

607.    On the night of January 17, 2012, the Benese Government arrested Ali Muhammad Kharrubi. His permanent residency status was withdrawn, he was declared "persona non grata" by Benese media and was extradited to the U.S. for his ties to Hezbollah.

608.    Similarly, according to the U.S. Government, between 2003 and 2011, at least 34 individuals who transported cash from Togo to Ghana also sought entry to the United States on non-immigrant visas. Most of them listed their employment as car buyers or car traders, and some identified as their points of contact U.S. car buyers who received wire transfers from LCB, the Hassan Ayash Exchange and the Ellissa Exchange discussed herein).

609.    Hezbollah also uses money couriers to transport millions of undeclared U.S. dollars. As just one example, on December 9, 2010, three individuals connecting through Paris on their way from Benin to Lebanon were arrested while carrying over $6.5 million in undeclared U.S. currency. One of the individuals was also carrying a business card for Ellissa Megastore, Ellissa's car lot in Cotonou.

610.    Hezbollsh frequently blurs the lines between narcotics trafficking, trade and money laundering. For example, a network of at least 44 Hezbollah-affiliated couriers *declared* over $97

million in U.S. currency at the border crossing between Ghana and Togo in West Africa in 2007 and 2008 alone.

611.    One of the individuals who transported money across the border between Ghana and Togo was Hassan Chokr, a Hezbollah weapons dealer.

## VII.    THE IRGC DEPLOYS HEZBOLLAH SIGNATURE WEAPONS IN IRAQ

612.    One of the first indications that Hezbollah operatives might be present in Iraq after the U.S.-led invasion came in an article in *The New York Time*s published in November 2003 that stated:

> Both American and Israeli intelligence have found evidence that Hezbollah operatives have established themselves in Iraq, according to current and former United States officials. Separately, Arabs in Lebanon and elsewhere who are familiar with the organization say Hezbollah has sent what they describe as a security team of up to 90 members to Iraq. The organization has steered clear of attacks on Americans, the American officials and Arabs familiar with Hezbollah agree.

613.    The reluctance to attack Americans was short-lived. During the next twelve months, Hezbollah would begin to gradually introduce both weapons and operational training into the Iraqi theatre that roughly corresponded to the U.S. military's effort to improve the armor protection of its vehicles.[26]

614.    Beginning in late 2004 and into early 2005, the U.S. military began deploying up-armored HMMWVs equipped with one inch of rolled homogeneous armor ("RHA") on all doors and one-inch thick ballistic glass windows that were capable of absorbing and/or deflecting shrapnel from basic (non-technologically advanced) IEDs and small arms fire.

615.    With the increasing ubiquity of the "up-armored" HMMWVs, improvised roadside

---

[26]    When American troops first invaded Iraq in 2003 and occupied Baghdad, generally only the U.S. military police possessed armored vehicles.

bombs became a much less effective weapon against U.S. personnel because their blasts and shrapnel could not penetrate American vehicles' increased armor plating.

616.    In response, the IRGC–QF directed Hezbollah to begin supplying their proxies with increasing numbers of EFPs that could defeat this newly-introduced American armor.

617.    An EFP warhead is normally constructed with a 3- to 12-inch diameter steel pipe with one end sealed with a welded steel plate and a priming hole for the insertion of a detonator. The open end of the pipe is then packed with high-energy ("HE") explosive and closed with a copper plate.

618.    After detonation, the explosion creates enormous pressure that accelerates the liner (copper plate) while simultaneously reshaping it into a molten slug.

619.    The EFPs Hezbollah deployed in Iraq were generally made with precision manufactured concave copper disk liners and HE explosives, such as Iranian-manufactured C-4, packed behind the liner.

620.    As with any explosive device, EFPs had to be first be armed, then triggered.

621.    "Arming" an EFP can best be described as transitioning the weapon from a passive or standby mode into an active, or ready mode. Once armed, an EFP is primed to detonate upon the occurrence of a given event.

622.    That event is known as the "trigger."

623.    In Iraq, EFPs were usually armed by remote frequency ("RF") or (insulated) command wire ("CW") capable of carrying a low-level electric charge with a maximum range of around 100 meters.

624.    RF arming could be achieved using something as simple as a key-fob or as complex as a dual-tone multi-function reference board using the inside a cell phone.

625. As noted above, a key signature of Hezbollah's TTP was the use of PIR devices in conjunction with EFPs.

626. Once remotely armed, by RF or command wire, an EFP would be triggered when the PIR would, for example, detect the heat signature of a passing vehicle and send an electrical current that set off the explosion within the EFP's casing.

627. In essence, passing American military vehicles would themselves trigger the EFPs.

628. To defeat Hezbollah's PIR triggers, Coalition Forces developed numerous counter-measures – just as the IDF had some years earlier.

629. For example, the American military developed a device named a "Rhino" that consisted of a flat piece of metal at the end of a boom that was attached to the front of the combat vehicle. The metal was heated by the vehicle's engine, creating a heat signature that simulated the heat of the vehicle. When effective, the Rhino would cause an EFP's PIR trigger to mistake the Rhino for the vehicle itself, resulting in the device's premature detonation.

630. Hezbollah, however, had gained extensive experience countering the IDF's tactics and quickly directed its agents in Iraq to recalibrate the aim of their EFPs, angling them backward to account for the recent deployment of heat-generating decoys.

631. While such emplacing techniques might appear elemental, in hostile conditions they are far more complex, requiring a keen understanding of average U.S. convoy speeds, the extension lengths of the rhinos, the distance of the EFP from the target, and other battlefield variables.

632. To evaluate the problem set presented, make targeting adjustments and communicate them across the battle space effectively is enormously challenging, particularly since the Hezbollah-directed cells were subject to surveillance, arrest and targeting.

139

633. Yet, notwithstanding these complexities, with the help and direction of Hezbollah, its local Shi'a terror cells began successfully emplacing EFP arrays at precise angles that countered the Rhinos and resumed inflicting maximum damage to these moving, armored targets.

634. In addition to EFPs, the IRGC–QF provided their proxies in Iraq with a variety of other lethal weapons that Hezbollah had previously tested aagainst the IDF in Lebanon.

635. During the 1980s and 1990s, Hezbollah frequently deployed 107 milimeter ("mm") and 122mm artillery rockets (frequently referred to as "Katyusha rockets") against IDF positions in southern Lebanon and against Israeli border towns in northern Israel.

636. IRGC–QF and Hezbollah proxies in Iraq trained and directed by Hezbollah used these same types of artillery rockets in their indirect fire attacks on U.S. and Coalition Forward Operating Bases and MNF–I Headquarters in the Green Zone.

637. Throughout 2004-2011, Hezbollah continuously adapted and modified tactics to adjust to U.S. Military counter-measures and then instituted those adaptations through the Iraqi terror cells they directed.

## VIII. HEZBOLLAH'S INVOLVEMENT IN TERRORISM IN IRAQ

638. Initially, the Hussein government sponsored the late Ayatollah Muhammad Sadiq al-Ṣadr, a leading Shi'a cleric in Iraq during much of Saddam Hussein's rule, as a relatively moderate counterbalance to the influence of more radical Shi'a religious leaders. The Hussein regime allowed Sadiq al-Sadr to appoint imams to lead mosques in hundreds of towns and cities.

639. Sadiq al-Sadr used this opportunity to develop a cohesive network under his guidance and control. He was particularly popular in the Shi'a slums of Baghdad and Basra and had established a network of mosques and social institutions that attempted to mirror Hezbollah's development in Lebanon.

140

640.     Unlike many of his Shi'a clerical peers, Mr. Sadr was not particularly favorably disposed toward Iran, even after the Islamic revolution in 1979, remaining instead an Arab nationalist and supporting Arab control of the seminaries of Najaf, traditionally dominated by senior clerics who are either Iranian-born or of Iranian descent.

641.     Nonetheless, the Hussein regime ultimately came to regard Sadr as a political threat and assassinated him and his two oldest sons, leaving his youngest son, Muqtada al-Sadr, as the de facto successor to what became known as the Sadrist Movement.

642.     The Sadrist Movement commanded the loyalty of perhaps millions of Iraqi Shi'a, but under the Hussein regime's rule it had no military capacity; it was almost exclusively a social and political movement.

643.     The 2003 U.S.-led invasion freed Muqtada al-Sadr and his followers from the constraints placed on them by the Hussein regime, and the young Sadr set his sights on becoming the preeminent leader of Iraq's Shi'a community.

644.     At the invitation of Iran's Supreme Leader, Ayatollah Khamenei, Mr. Sadr and his key deputies were formally received in Iran in June 2003, shortly after the U.S. invasion.

645.     General Abdul Reza Shahlai—a deputy commander of the IRGC–QF—served as the "chief of protocol" for the visit and Qasem Soleimani, IRGC–QF Commander, served as host to the Sadr delegation.

646.     Sadr also met with Ayatollah Khamenei during the visit and received assurances from General Shahlai that the IRGC–QF wanted to financially support the Sadrist movement.

647.     Shortly thereafter, the IRGC dispatched two of Hezbollah's most senior terror operatives, Imad Mughniyah and Mustafa Badr al-Din, to help organize and birth the creation of the Sadrist Movement's armed faction.

648.    On July 18, 2003, Sadr gave a sermon in the Great Mosque in Kufa in which he branded the newly-formed Iraqi government "nonbelievers" and announced the formation of a religious army to counter the government called "Jaysh al-Mahdi" or "JAM" – the Mahdi Army.

649.    Hezbollah operatives were present on the ground in Iraq following the U.S. invasion in 2003 and were directly involved in providing training and support to JAM from its inception.

650.    JAM featured several attractive assets for Iran and Hezbollah, including a strong base of support among the poorest and most disenfranchised Shi'a communities, a network of mosques and social institutions, and a vast supply of young, desperate men. However, it was an unruly and unprofessional organization ill-suited to confronting an advanced military in the way Hezbollah had successfully attacked the IDF.

651.    Imad Mughniyah and Mustafa Badr al-Din worked closely both with Sadr and his associates and the Iranian-sponsored Badr Corps (made up of Iraqi Shi'a who opposed the Hussein regime during the 1980–1988 Iran-Iraq War), but Hezbollah remained cautious and did not encourage either Badr or JAM to immediately confront Coalition Forces.

652.    As former Badr Corps leader and KH founder Abu Mahdi al-Muhandis (discussed below) would later explain to the Hezbollah-affiliated channel *Al-Mayadeen*:

> **Al-Muhandis**: Of course, my relationship with martyr Imad, the great martyr Imad [Mughniyah], and martyr Mustafa Badr a-Din, started in the early 1980s. This was a strong and operational relationship. The first ones to train the first Iraqi jihadi resistance groups in the beginning of the 1980s were Imad and Mustafa. They also had a major role in organizing the resistance cells against the Americans in Iraq.
>
> **Host**: Training Iraqis here, to fight the Americans?
>
> **Al-Muhandis**: Sure, they trained Iraqis. The first Iraqi cells, I was among them, after 2003.

> **Host**: After 2003…
>
> **Al-Muhandis**: They had a major role; their brothers and men still have an essential role in training and planning… they have a very important role.

653.    The same al-Muhandis was the mastermind behind the 1983 Kuwait bombings, and later became the founder of Kata'ib Hezbollah in Iraq and an advisor to Qasem Soleimani, the commnader of the IRGC–QF. Mustafa Badr al-Din, one of Hezbollah's leading bomb-makers at the time was arrested by Kuwait after the attacks and convicted for his role in the bombings. He later became a leading figure in Hezbollah after his escape from a Kuwaiti prison.

654.    As previously noted, in 2008, Imad Mughniyah was killed Syria.

655.    Ten years after his death, several of his former protégés gathered at an elaborate ceremony to pay tribute Mughniyah and extol his contributions to the terror campaign he helped launch in Iraq.

656.    At an event commemorating the anniversary of his death, on February 23, 2018, several Iraqi Shi'a notables spoke, including Abu Mahdi al-Muhandis who declared: "The martyr Mughniyah is still present in all fields of confrontation as [part of] a jihadist school that terrorized the enemies....".

657.    Qais Khazali, also in attendance, asserted that: "The pillars of the Islamic Resistance that took place in Iraq were the fruit of the martyr Mughniyah."

658.    He went on to say:

> I got to know him in 2003 or 2004. At that time when I met him, I didn't know that he is Imad Mughniyeh. I only knew him as "Haj Radwan." Imad Mughniyah was the person behind the Iraqi Resistance against the American occupation of Iraq. The first generation of the commanders of the Resistance were the product of the Mughniyah's training.

659.    Although Mughniyah was a key figure in Hezbollah's operational activities in Iraq, its political and diplomatic role in guiding Iraqi Shi'a factions was of equal, if not greater

importance.

660. For this purpose, Hezbollah tapped a senior member of its Political Council, Muhammad Kawtharani, to be responsible for the organization's Iraq portfolio. As the U.S. Department of the U.S. Department of the Treasury noted when it designated him an SDGT on August 22, 2013, Mr. Kawtharani was:

> [T]he individual in charge of Hizballah's Iraq activities, Kawtharani has worked on behalf of Hizballah's leadership to promote the group's interests in Iraq, including Hizballah efforts to provide training, funding, political, and logistical support to Iraqi Shi'a insurgent groups.

661. Mr. Kawtharani was an inspired choice because he not only previously lived in Iraq but had also been a pupil of Ayatollah Muhammad Sadiq al-Ṣadr.

662. Mr. Kawtharani wasted no time in contacting one of Sadr's most trusted deputies, Mustafa al-Yaqubi, soon after (and possibly before) the overthrow of the Saddam Hussein regime by Coalition Forces in 2003.

663. Mustafa al-Yaqubi had frequent contact with Mr. Kawtharani through the years and appears to have served as a primary channel for communications between Hezbollah and Sadr and his JAM militia.

664. From June 2003 through August 2004, at Iran's direction, Hezbollah's role was primarily to organize and train JAM gunmen and try to instill some discipline and professionalism into the organization so that it could effectively threaten U.S. and Coalition Forces across Iraq. Due to its conflict with Israel in Lebanon, Hezbollah possessed hard-earned specialized knowledge on how to deploy new tactical and technological counter-measures against a modern army.

665. Hezbollah was the obvious and natural choice for implementing the IRGC's policies in Iraq.

666. First, Hezbollah operatives were, like the Iraqi Sadrists, ethnically Arabs and spoke

Arabic, whereas the Iranian IRGC members were ethnically Persian and spoke Farsi.

667.    Second, there were many long-standing personal and intellectual connections between Hezbollah and the Sadrist Movement.

668.    According to a 2007 MNF–I report, "members of the Sadr movement have deep respect for Lebanese Hezbollah…. Hezbollah sends trainers to Iran to train Iraqi fighters on EFPs."

669.    For instance, Muqtada al-Sadr's father-in-law was Grand Ayatollah Muhammad Baqir al-Sadr, who was a contemporary of Hezbollah's spiritual leader, Muhammad Fadlallah.

670.    Hezbollah's leader, Hassan Nasrallah, received his religious education in Lebanon from a seminary that taught Baqir al-Sadr's teachings on Shi'ism.

671.    Despite the affinity between Hezbollah and the leaders of the Sadrist Movement, when Hezbollah slowly began to introduce EFPs into Iraq in small numbers at the IRGC's direction (during the late autumn of 2003 and into the first half of 2004), it did so through Iran's other, more established proxy, the Badr Corps.

672.    Unlike JAM, the Badr Corps had prior (and extensive) military training from, and its operatives had long-standing operational ties to, both the IRGC–QF and Hezbollah.[27]

673.    Most notable among the Badr Corps cells was the so-called "Sheibani Network" named after Hamid A'atabi al-Sheibani, also known as Abu Mustafa al-Sheibani.

674.    Accordingly, when Hezbollah introduced its most effective anti-armor weapon into Iraq, it began by training Badr Corp operatives on the emplacement of single EFPs with relatively primitive initiation systems—a process that allowed Hezbollah to test the weapons, assess the capabilities of its Iraqi proxies and probe Coalition Forces' responses to the threat.

---

[27]    The Badr Corps had long established four geographic commands inside Iraq, all with experience conducting attacks against the Hussein regime. The Baghdad-based command was supervised from an IRGC base in nearby Bakhtaran, Iran by Abu Mustafa al-Sheibani whose extensive smuggling routes were used both before and after the 2003 U.S.-led invasion for transporting weapons, men and money from Iran into Iraq.

675. According to the Chilcot Report released by the British Government, "[t]he first IED attack in Iraq using an Explosively Formed Projectile (EFP) took place against a UK Warrior vehicle in al-Amara in May 2004."

676. By this method of slowly introducing the weapon system and directing its use against British forces, Hezbollah was able to assess the capabilities of the Badr Corp personnel, assess the effectiveness of its tactics, techniques, and procedures and adjust those TTPs based on how first British (and later American) forces responded.

677. A July 2004 UK Joint Intelligence Committee ("JIC") assessment noted: "We also judge that Lebanese Hizballah will retain an influence in Iraq (Hizballah members may have been linked to the group that attacked the Sheraton Hotel) and could supply Iraqi groups with terrorist expertise and munitions."

678. The concern was well-founded.

679. On August 3, 2004, the UK Defence Intelligence Staff ("DIS") accurately predicted the evolution of the IED threat in Iraq: "IED technology in use with other Middle Eastern groups[,] especially Lebanese Hizballah, can be expected to appear in Iraq. This would include multiple systems, such as RC (Radio-Controlled) switched PIRs [Passive Infrared]."

680. By the summer of 2004, British intelligence had detected the EFP's appearance in southern Iraq:

> On 26 July, the DIS reported that an EFP IED had been found on 15 July in Baghdad. The DIS noted that the EFP IED design had not previously been encountered in Iraq but was, as with the find in May 2004, of a type associated with Lebanese Hizballah. There were also indications of Iranian involvement in the construction of the devices.

681. On December 2, 2004, a British Defence Intelligence Report titled "The Evolution of the IED Threat in Iraq" stated:

> Improvement in IED technology has been most significant in Shia areas since May [20]04, where technical progress has been made that we assess could only have been achieved through focused external assistance. *We assess that this may be due to an influx of Lebanese Hezbollah IED technology under Iranian sponsorship."* (Emphasis added.)

682.    Similarly, the United States Department of State Country Reports on Terrorism 2006 noted:

> Since at least 2004, Hizballah has provided training and logistics to select Iraqi Shia militants, including for the construction and use of shaped charge IEDs, which Hizballah developed against Israeli forces in southern Lebanon during the late 1990s and which can penetrate heavily armored vehicles.

683.    At the same time, it was supplying the Badr Corp with the initial training and direction to launch EFP attacks against Coalition Forces, Hezbollah also provided training and logistical support to JAM, but did not initially furnish JAM operatives with EFPs.

684.    A Sadrist uprising led by armed JAM forces in August 2004 in the Shi'a holy city of Najaf would soon change the direction of the conflict.

685.    In Najaf in August, JAM forces launched an uprising and soon confronted U.S. Marines other U.S. Army units and their tactical air support.

686.    As a result, JAM suffered significant casualties.

687.    Over the course of approximately three weeks, the U.S. military lost nine soldiers and Marines.

688.    An estimated 1,500 JAM fighters were killed and an undetermined number, most likely in the thousands, were wounded.

689.    IRGC–QF personnel were present during the bloodshed and carefully observed the fighting.

690.    The lesson from the uprising was clear—JAM members were too disorganized and undisciplined to cause any serious harm to Coalition Forces. Thus, shortly after the uprising in

147

Najaf was brought under control, Muqtada al-Sadr authorized his deputies to create what became known as the "Special Groups" to be supported and trained by Hezbollah and funded and controlled by the IRGC.

691.     Mr. Sadr's key deputies wanted to be able to deploy more professional (and lethal) forces that could successfully attack Coalition Forces in Iraq while his "regular" JAM militia concentrated on ethnic cleansing and kidnapping Sunnis as well as its traditional criminal enterprises.

692.     Initially, the Special Groups functioned essentially as regional commands under the overall leadership of Muqtada al-Sadr's senior deputies, including Qais al-Khazali and Akram al-Kaabi (a/k/a Akram Abbas al-Kabi).

693.     As the U.S. military later noted:

> When Special Groups were formed, [Qais Khazali] and Akram al-Kabi were named the general supervisors, or members of the Ishraf Committee (Ishraf means oversight and supervision). Qais and Layth [Qais' brother] were directly involved with Special Groups, and in this position, they would negotiate and procure weapons and IEDs from Iran and distribute them to JAM.

694.     Predictably, the IRGC and Hezbollah saw these newly-formed Special Groups (which they helped create and organize) as an opportunity to intensify Iran's control over JAM's terror apparatus.

695.     From the initial formation of JAM's Special Groups in 2004 through much of 2006, the IRGC used Hezbollah to train and direct Special Groups cells to target Coalition Forces.

696.     To this end, the IRGC–QF had previously instructed Hezbollah to create "Unit 3800," an entity dedicated to supporting Iraqi Shi'a terrorist groups targeting Multi National Forces–Iraq ("MNF–I").

697.     Unit 3800 was established by Hezbollah leader Hassan Nasrallah at Iran's behest.

698.     Unit 3800 trained, advised and directed the JAM "Special Groups" and Badr Corps in Iraq.

699.     Hezbollah also trained Special Groups and Badr Corps operatives at training camps in southern Lebanon and Iran, and Hezbollah's expertise in the use of EFPs, kidnapping, communications and small-unit operations were critical to the IRGC's operations in Iraq between 2003 and 2011.

700.     By early 2005, the presence of Hezbollah operatives in Iraq became an open secret when Iraqi Interior Minister Falah al-Naquib announced the arrest of eighteen Lebanese Hezbollah operatives on terrorism charges.

701.     On October 10, 2005, the British Broadcasting Company (BBC) reported that:

> An armour-piercing version of the bomb - blamed for the deaths of eight British soldiers this year - marks the latest advance in the insurgents' arsenal. *The UK has accused Iran of supplying the new weapon to militants in southern Iraq, via the Lebanese Hezbollah militia group,* although Tehran has denied this. (Emphasis added.)

702.     The UK's *Belfast Telegraph* reported in 2007 that Muqtada al-Sadr publicly acknowledged his organization's coordination with Hezbollah:

> Speaking in Tufa in Iraq, Muqtada al-Sadr, the head of the Mehdi Army, admitted to 'formal links' with Hizbollah. 'We have formal links with Hizbollah, we do exchange ideas and discuss the situation facing Shiites in both countries,' he said. 'It is natural that we would want to improve ourselves by learning from each other. We copy Hizbollah in the way they fight and their tactics, we teach each other, and we are getting better through this.'

703.     From September 2004 to late 2005, these newly-formed Special Groups conducted low-intensity operations against the British and U.S. military, launching increasing numbers of

EFP attacks but mostly training in Iran and Lebanon with Hezbollah and the IRGC–QF, developing their TTPs and preparing for the next round of conflict.[28]

704.    As Special Groups operatives detained by Coalition Forces later explained, only Hezbollah instructors taught Special Groups operatives the "Engineers Course" that focused on the construction and employment of EFPs.

705.    Not every Iraqi Special Group operative received this training. One detainee reported that "Engineers are special and have to be smart. If you are not smart no one will waste the time and expenses to send you to Iran to train to be an engineer because you will fail."

706.    Hezbollah also trained these "Engineers" on how to incorporate EFPs into the tactical design of ambushing MNF–I convoys, principally to kidnap U.S. and Coalition soldiers. The tactics for a kidnapping-ambush using EFPs closely resembled the tactics Hezbollah developed in attempting to kidnap IDF soldiers in southern Lebanon.

707.    One MNF–I interrogation of a Detainee revealed the extensive training he and other Iraqi operatives received from the IRGC–QF and Hezbollah for attacking MNF–I convoys with EFPs and other weapons:

> During one of [Detainee]'s training sessions, his group was instructed on techniques involving the attack of military convoys and abduction of POWs. Upon the arrival of a four-vehicle convoy, EFP's would be emplaced to disable the first three vehicles in a convoy. The attackers, who are hiding on one side of the road from an unidentified distance away, would successively fire upon the fourth vehicle with shoulder-fired missiles. Amidst the attack, two small groups of individuals would alternatively bound from the hidden area away from the road to the fourth vehicle while firing upon the fourth vehicle using small arms. The alternatively bounding small groups would advance to the vehicle, pull out any individual who is still living, and bring the individual back to an area where the attackers'

---

[28]    EFPs were provided by the IRGC for the *exclusive* purpose of targeting Coalition Forces, and Hezbollah's advanced training was provided exclusively to assist Special Groups to improve their emplacement of EFPs against United States and British armored vehicles. On rare occasions certain elements defied this directive. For example, EFPs were used in the assassinations of two provincial governors and two provincial police chiefs in the latter half of 2006. The U.S. military assessed that these events were contrary to IRGC policy.

own convoy of vehicles is waiting. In order to prevent a quick reaction force from arriving to aid the disabled convoys, a simultaneous mortar attack would be planned on a nearby military base. The simultaneous mortar attack would be followed through to keep the quick reaction force at the nearby base busy. Another way to prevent assistance from a quick reaction force would be to emplace more EFPs at a further distance down the same planned route as the military convoy.

708.   An attack combining an EFP and other methods of attacking a convoy is called a "complex attack."

709.   By 2007, MNF–I officials were reporting carefully planned, complex ambushes and retaliatory attacks on United States forces that included direct assaults on U.S. military outposts, ambushes in which American troops were captured and complex attacks that used multiple weapons to strike more than one U.S. military target.

710.   As Qais Khazali would later explain to his interrogators: " EFPs still come solely from Iran and there is currently nobody in Iraq manufacturing the components of an EFP."

711.   Hezbollah and the IRGC–QF also introduced their proxies to the use of 107mm and 122mm artillery rockets (which Hezbollah had previously deployed in large numbers against the IDF in southern Lebanon and against Israeli border towns in northern Israel).

712.   Both JAM and the Special Groups used these same types of rockets in their indirect fire attacks on U.S. and Coalition Forward Operating Bases and MNF–I Headquarters in the Green Zone.

713.   The IRGC also supplied JAM and JAM Special Groups with 240mm rockets (also known as the Fadjr-3) developed by the Shahid Bagheri Industries division of the Aerospace Industries Organization of Iran ("AIO").

151

714. Not only did the IRGC supply these weapons to both Hezbollah and (later) its Iraqi Shi'a proxies, but Hezbollah's TTP in the use of these weapons was also transferred to JAM and JAM Special Groups.

715. During a July 2, 2007 press briefing, U.S. Brigadier General Kevin J. Bergner noted that Special Groups were trained in Iran by Hezbollah instructors in a four-week long course that was titled "Artillery."

716. According to General Bergner, U.S. intelligence concluded that: "This course teaches the use of indirect fire weapons including 60mm and 120mm mortars, and 107mm, 122mm and 240mm rockets."

717. In May 2006, senior Hezbollah commander Ali Mussa Daqduq traveled to Tehran with Yussuf Hashim, a fellow Hezbollah operative and senior supervisor of Hezbollah operations in Iraq.

718. There they met with the Commander and Deputy Commander of the IRGC–QF Special External Operations.

719. Mr. Daqduq was directed to return to Iraq and report on the training and operations of the Special Groups and provide assessments on their training in mortars and rockets, use of IEDs and kidnapping operations.

720. General Shahlai—the aforementioned deputy commander in the IRGC–QF who met with Daqduq and Hashim—served as the case officer or supervisor of the Special Groups.

721. The United States later designated General Shahlai in September 2008 "for threatening the peace and stability of Iraq and the Government of Iraq." The U.S. Department of the U.S. Department of the Treasury further found that General Shahlai supplied weapons and training to the Iraqi Special Groups:

In late-August 2006, Shahlai provided material support to JAM Special Groups by supplying JAM Special Groups members with 122mm grad rockets, 240mm rockets, 107mm Katyushas, RPG-7s, 81mms, 60mm mortars, and a large quantity of C-4.

Shahlai also approved and coordinated the training of JAM Special Groups. As of May 2007, Shahlai served as the final approving and coordinating authority for all Iran-based Lebanese Hizballah training for JAM Special Groups to fight Coalition Forces in Iraq. In late-August 2006, Shahlai instructed a senior Lebanese Hizballah official to coordinate anti-aircraft rocket training for JAM Special Groups.

722.    The United States Department of State Country Reports on Terrorism 2006 noted

that Iran provided guidance and training to Iraqi Special Groups for carrying out attacks against

MNF–I and Coalition Forces:

Iran provided guidance and training to select Iraqi Shia political groups, and weapons and training to Shia militant groups to enable anti-Coalition attacks.  Iranian government forces have been responsible for at least some of the increasing lethality of anti-Coalition attacks by providing Shia militants with the capability to build IEDs with explosively formed projectiles similar to those developed by Iran and Lebanese Hezbollah.  The Iranian Revolutionary Guard was linked to armor-piercing explosives that resulted in the deaths of Coalition Forces.  The Revolutionary Guard, along with Lebanese Hezbollah, implemented training programs for Iraqi militants in the construction and use of sophisticated IED technology. *These individuals then passed on this training to additional militants in Iraq.* (Emphasis added.)

723.    The Australian government reported in 2006 that Hezbollah, along with the IRGC-

QF, was committing attacks in Iraq through insurgent groups it developed:

Hizballah has established an insurgent capability in Iraq, engaging in assassinations, kidnappings and bombings. The Hizballah units have been set up with the encouragement and resources of Iran's Revolutionary Guards al-Qods Brigades. Hizballah has also established a special training cell known as Unit 3800 (previously known as Unit 2800) specifically to train Shia fighters prior to action in Iraq.

724.    In July 2007, General Bergner briefed the media on how the IRGC–QF used

Hezbollah operatives in Iraq: "Iran's Quds Force, a special branch of Iran's Revolutionary Guards,

is training, funding and arming the Iraqi groups…. Iranian operatives are using Lebanese

surrogates to create Hezbollah-like capabilities. And it paints a picture of the level of effort in funding and arming extremist groups in Iraq."

725. Bergner further noted that: "The groups operate throughout Iraq. They planned and executed a string of bombings, kidnappings, sectarian murders and more against Iraqi citizens, Iraqi forces and coalition personnel. They receive arms -- including explosively formed penetrators, the deadliest form of improvised explosive device -- and funding from Iran. They also have received planning help and orders from Iran."

726. In October 2007, the U.S. Department of the U.S. Department of the Treasury designated the IRGC–QF[29] as an SDGT noting:

> The Qods Force has had a long history of supporting Hizballah's military, paramilitary, and terrorist activities, providing it with guidance, funding, weapons, intelligence, and logistical support. The Qods Force operates training camps for Hizballah in Lebanon's Bekaa Valley and has reportedly trained more than 3,000 Hizballah fighters at IRGC training facilities in Iran. The Qods Force provides roughly $100 to $200 million in funding a year to Hizballah and has assisted Hizballah in rearming in violation of UN Security Council Resolution 1701.
>
> In addition, the Qods Force provides lethal support in the form of weapons, training, funding, and guidance to select groups of Iraqi Shi'a militants who target and kill Coalition and Iraqi forces and innocent Iraqi civilians.

727. The U.S. State Department's 2007 Country Reports on Terrorism stated that the IRGC–QF and Hezbollah provided Iraqi Special Groups with the tools necessary to carry out attacks against armored Coalition vehicles:

> The [IRGC–QF] continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, mortars that have killed thousands of Coalition and Iraqi Forces, and explosively formed projectiles (EFPs) that have a higher lethality rate than other types of improvised explosive devised (IEDs) and are specially designed to defeat armored vehicles used by Coalition Forces. The Qods Force, in concert with

---

[29]    In October 2017, the U.S. Government designated the IRGC itself an SDGT "for the activities it undertakes to assist in, sponsor, or provide financial, material, or technological support for, or financial or other services to or in support of, the IRGC–QF."

Lebanese Hezbollah, provided training outside Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry.

728.   The U.S. State Department's 2008 Country Reports on Terrorism noted that Iran and Hezbollah continued attacks on MNF–I and Coalition Forces through their Iraqi proxies by:

> Provid[ing] lethal support, including weapons, training, funding, and guidance, to Iraqi militant groups that targeted Coalition and Iraqi forces and killed innocent Iraqi civilians. Iran's Qods Force continued to provide Iraqi militants with Iranian-produced advanced rockets, sniper rifles, automatic weapons, and mortars that have killed Iraqi and Coalition Forces as well as civilians. Tehran was [...] providing militants with the capability to assemble improvised explosive devices (IEDs) with explosively formed projectiles (EFPs) that were specially designed to defeat armored vehicles. The Qods Force*, in concert with Lebanese Hezbollah,* provided training both inside and outside of Iraq for Iraqi militants in the construction and use of sophisticated IED technology and other advanced weaponry. (Emphasis added.)

729.   Ali Mussa Daqduq conducted multiple visits to Iraq to undertake training needs assessments, survey the operational environment, and obtain feedback from Special Groups members in Iraq on their needs.

730.   This was intended to ensure that the training being designed and staffed by Hezbollah instructors would provide the greatest benefit to their students.

731.   In addition, Mr. Daqduq's assessments provided informed feedback to the IRGC–QF logisticians on the armaments the Special Groups fighters needed to meet their needs and improve their operational performance.

732.   Hezbollah's coordination with the IRGC–QF in support of Special Groups came into stark relief on January 20, 2007 when a team of approximately twelve AAH gunmen, disguised as U.S. soldiers, entered the Provincial Joint Coordination Center ("PJCC") in Karbala, where U.S. soldiers were conducting a meeting with local officials.

733.   Two months later, in March 2007, Coalition Special Forces captured Qais al-

Khazali, his brother Layth al-Khazali, and Daqduq in Basra.

734.    The documents, computers and media recovered from the target site as well as the subsequent interrogations of these men significantly supplemented the U.S. military's understanding of Hezbollah's operational role in Iraq and the IRGC–QF's central role in supporting and enabling the Special Groups.

735.    Mr. Khazali later described Mr. Daqduq as the "designer of the Special Groups."[30]

736.    MNF–I's exploitation of a computer that was captured during the 2007 raid revealed contents that confirmed the training and evaluation role that Mr. Daqduq performed. MNF–I described the contents as follows:

> Documents seized include: spreadsheets detailing weapons and targets, step-by-step instructions for operations/attacks; and numerous letters equivalent to after-action reports detailing attacks, including, for example; an ambush and IED attack on a MNF convoy in Karbala resulting in 4 X MNF KIA; an IED attack on a British patrol which destroyed two Land Rovers and killed the occupants; and a sniper attack on a British patrol which killed a British soldier.

737.    According to U.S. intelligence estimates following Mr. Daqduq's 2007 arrest, the IRGC–QF provided Hezbollah and Mr. Daqduq up to $3 million in U.S. currency every *month* to run Special Groups in Iraq.

738.    On January 9, 2008, the U.S. Department of the U.S. Department of the Treasury designated several individuals and entities "for threatening the peace and stability of Iraq and the Government of Iraq."

739.    These individuals included Ahmad Foruzandeh, a Brigadier General in the IRGC–QF.

---

[30]    Ali Mussa Daqduq was held in U.S. detention until November 2011 with the goal to continue to hold him in U.S. custody. The Iraqi Government denied the request, and he was transferred to Iraqi custody on December 18, 2011. The charges that the U.S. had brought against him were summarily rejected by an Iraqi Court in May 2012 as lacking evidence, and he was released from confinement, later returning to Lebanon.

740. According to the U.S. Department of the U.S. Department of the Treasury, Mr. Foruzandeh was directly involved in terrorist operations targeting MNF–I and Coalition Forces in Iraq:

> As of mid-February 2007, Foruzandeh ordered his Iranian intelligence officers to continue targeting Shia and Sunnis to further sectarian violence within Iraq. Foruzandeh is also responsible for planning training courses in Iran for Iraqi militias, including Sayyid al-Shuhada and Iraqi Hizballah [KH], to increase their ability to combat Coalition Forces. The training includes courses in guerilla warfare, light arms, marksmanship, planting improvised explosive devices (IEDs), and firing anti-aircraft missiles.

741. At the same time, the U.S. Department of the U.S. Department of the Treasury designated Abu Mustafa al-Sheibani for his role as the leader of the Sheibani Network, noting:

> The network's first objective is to fight U.S. forces, attacking convoys and killing soldiers. Its second objective is to eliminate Iraqi politicians opposed to Iran's influence. Elements of the IRGC were also sending funds and weapons to Al-Sheibani's network.
>
> Al-Sheibani's network – consisting of several hundred members – conducted IED attacks against Americans in the Baghdad region. As of March 2007, Al-Sheibani, known to transport Katyusha rockets to be used for attacks against Coalition Forces, launched rockets against Americans and made videos of the attacks to get money from Iran. As of April 2007, a member of Al-Sheibani's network supervised the transport of money and explosives from Iran for eventual arrival in Baghdad. In early-May 2007, Al-Sheibani's network assisted members of a Shia militia group by transporting them to Iran for training and providing them with weapons for their activities in Iraq.

742. A 2010 Department of Defense report confirmed that weapons Iran delivered to its proxy militias in Iraq included EFPs (with radio-controlled, remote arming and passive infrared detonators), IEDs, anti-aircraft weapons, mortars, 107 and 122mm rockets, rocket-propelled grenades and launchers, explosives, and small arms.

743.    The report also noted that "Lebanese Hizballah provides insurgents with the training, tactics and technology to conduct kidnappings, small unit tactical operations and employ sophisticated IEDs."

## IX.    HEZBOLLAH'S AND THE IRGC'S AGENTS & PROXIES IN IRAQ

### A.    THE BADR CORPS (a/k/a BADR ORGANIZATION)

744.    The Badr Corps was established in 1982 as the military wing of the Supreme Council for Islamic Revolution in Iraq ("SCIRI"), which was founded by Muhammad Baqr Hakim in Iran in 1982 during the Iran-Iraq War.

745.    From its headquarters in Iran, the Badr Corps operated extensive networks throughout Iraq in the 1990s. The group smuggled men and weapons into Iraq to conduct attacks against the Iraqi regime of Saddam Hussein.

746.    Like Hezbollah, the Badr Corps established clandestine offices in various businesses and social organizations in Iraq.

747.    The Badr Corps also used Iraqi front companies to recruit operatives, collect intelligence, and circulate propaganda materials in Shi'a populated areas.

748.    Before 2003, the Badr Corps served as Iran's most important surrogate inside Iraq, acting as a *de facto* arm of the IRGC-QF in conducting operations against Saddam Hussein's goverment.

749.    The Badr Corps received training and weapons from the IRGC and Hezbollah.

750.    Following the toppling of the Hussein regime in 2003, the IRGC saw an immediate opportunity to repatriate Muhammad Baqr Hakim to Iraq and carefully cultivate his party's growth within the new post-war political framework being developed by the Coalition Forces, while simultaneously slipping thousands of Badr Corp fighters back across the border.

158

751. After Saddam Hussein's overthrow in 2003, the Badr Corps renamed itself the Badr Organization, and many of its operatives joined the newly-formed Iraqi security forces.

752. Published reports indicate that thousands of members of the Badr Organization remained on the IRGC–QF payroll after 2004.

753. Several senior Badr Corps operatives later emerged as key conduits for funneling weapons to IRGC proxies in Iraq from 2004 through 2011, including the previously mentioned Abu Mustafa al-Sheibani, a key smuggler of deadly Iranian IEDs, and Jamal Ja'far Muhammad, a/k/a Abu Mahdi al-Muhandis (a/k/a "The Engineer"), who later led Kata'ib Hezbollah (discussed further below).

754. The IRGC–QF's Ramazan Corps, led by General Abdul Reza Shahlai was in charge of supporting Hezbollah-trained terror cells in Iraq and remains the largest Qods Force command outside of Iran. It coordinated, armed and directed the Badr Organization.

755. Although the Badr Organization evolved into a major political organization with seats in the new Iraqi parliament through its political wing SCIRI, it also played a significant role in facilitating Special Groups operations in Iraq.

756. Several senior Special Groups commanders such as Mr. al-Muhandis are, or were, Badr Organization personnel.

757. After 2003, Badr inserted hundreds of its Iranian-trained operatives into Iraq's state security organs (notably the Iraqi Ministry of Interior intelligence structure and key special forces and Iraqi Army units).

758. This infiltration of Iraqi police, intelligence, and military units not only assisted in Badr's efforts to murder former Hussein regime leaders and pursue ethnic cleansing of Sunni neighborhoods, but also made it possible for Badr operatives to regularly tip-off Special Groups

159

operatives of Coalition Forces' activities, and provided Badr's own terror cells with targeting guidance.

## B. ASA'IB AHL AL–HAQ ("AAH" OR THE "LEAGUE OF THE RIGHTEOUS")

759. Asa'ib Ahl Al–Haq ("AAH" or the "League of the Righteous") terrorist organization was a Special Group that was directed by Hezbollah and funded and armed by the IRGC–QF.

760. It conducted numerous attacks on Iraqi Security Forces and Coalition Forces, particularly on American targets.

761. AAH was originally established by senior JAM commander and later MNF–I detainee, Qais al-Khazali.

762. Qais Khazali was a pupil of Muqtada al-Sadr's father and later one of Muqtada al-Sadr's senior deputies. But he also maintained an uneasy rivalry with the younger al-Sadr that occasionally devolved into open hostilities.

763. Mr. Khazali had accompanied Mr. Sadr to Tehran in 2003, and he maintained contact with senior IRGC–QF leadership when he assumed control of Special Groups cells after 2004.

764. According to a report by the U.S. military:

In August 2006 MAS (Muqtada al-Sadr) asked [Qais al-Khazali] to lead a delegation to Tehran to discuss the situation in Iraq and Iranian support for JAM (Jaysh al-Mahdi (JAM) Militia subordinate to Muqtada al-Sadr). According to reporting, Ali Khamenei (Sayyid Ali Hosseini Khamenei was then and is still now the Supreme Leader of Iran) met with [Qais al-Khazali] and recruited him to lead a special group known as Asayb Al–Haq, or the K2 network. The K2 network would operate with the knowledge or authorization of MAS. [Qais al-Khazali] agreed. Iran was interested in working with [Qais al-Khazali] because of his influence on MAS. Layth (al-Khazali's brother, captured with him on 20 March 2007 in Basra, served as the Operations Chief for Asayb Al–Haq) and as a liaison between the secret

network formed by Qayis and the Iranians. In his position, Layth travelled frequently between Iraq, Iran and Syria.

765.    Qais al-Khazali and his brother Layth al–Khazali returned to Iraq, requisitioned the most experienced and capable fighters from Mr. Sadr's JAM terror cells and formed AAH.

766.    At first, AAH appears to have remained within JAM's orbit.

767.    At its inception, AAH was a Hezbollah-directed and IRGC-supplied cluster of terror cells that owed fealty to Mr. Sadr. Over time, it became a more cohesive entity that grew more independent of Sadr (even ceremonially). This evolution was the product of assessments made by senior Hezbollah commanders, including Ali Mussa Daqduq, who had travelled to Iraq at the IRGC–QF's behest to evaluate the training, organization and effectiveness of the Special Groups.

768.    Hezbollah identified Qais Khazali and Akram Kaabi as among the more capable JAM commanders, cultivated them, and ultimately recruited them to serve as direct proxies of the IRGC–QF.

769.    According to an April 2007 MNF–I report, Qais Khazali admitted that AAH received direct financing from the IRGC–QF.

770.    Within months of Qais Khazali's formation of AAH, he blessed the Hezbollah-planned and orchestrated raid on the PJCC in Karbala on January 20, 2007.

771.    As discussed more fully below, the kidnapping and murder of five American soldiers during the operation led to a concerted effort to locate the perpetrators, and it eventually resulted in the capture of both Khazali brothers in March 2007.

772.    Thereafter, despite the capture and detention of the Khazali brothers, AAH continued to function as a full-fledged terrorist organization because of the significant funding, training and supply of weapons it received from the IRGC, and from the training it received from,

and close cooperation it maintained with, Hezbollah.

773.    AAH was able to maintain a high-level offensive tempo from mid-2007 until the departure of United States forces from Iraq at the end of 2011, and Qais Khazali emerged from U.S. detention to become one of Iraq's most important political leaders.

774.    In sum, from 2006 to 2011, AAH operated as the IRGC-QF's direct terror proxy targeting U.S. personnel at the direction of Hezbollah, working in concert with the IRGC–QF.

775.    Iran harbored elements of its leadership (and their families), trained and supplied its operatives, and funded the AAH cells.

776.    Iran used Hezbollah to train and directed AAH to commit attacks on Americans in Iraq.

777.    AAH formally split from JAM in 2007 (though it continued to maintain significant ties with JAM cells even later).

778.    Since that time, AAH has conducted countless attacks against U.S. and Iraqi forces, targeted kidnappings of Westerners and Iraqis, rocket and mortar attacks on the U.S. Embassy, murdered American and British soldiers; and assassinated Iraqi officials.

779.    At his July 2, 2007 press briefing, Brigadier Gen. Bergner, spokesman for the MNF–I, noted the extensive financial support the IRGC-QF provided in developing the Special Groups:

> The Qods Force also supplies the special groups with weapons and funding of 750,000 to 3 million U.S. dollars a month. Without this support, these special groups would be hard pressed to conduct their operations in Iraq […] The Qods Force goal was to develop the Iraqi special groups into a network similar to the Lebanese Hezbollah. Special groups would be unable to conduct their terrorist attacks in Iraq without Iranian-supplied weapons and other support. Like Ali Mussa Daqduq, Qais [Khazali] main contact was [General Shahlai], the deputy commander for Qods Force Department of External Special Operations. Funding and training of the special groups started in 2004.

780. As MNF–I investigators would later learn, senior Lebanese Hezbollah commander Ali Mussa Daqduq not only provided training to AAH cells and advised them on terrorist operations, he also helped plan operations and had final approval over them.

781. Mr. Daqduq reported to Yussuf Hashim, the head of Lebanese Hezbollah Special Operations, and the latter reported to Hezbollah's Muhammad Kawtharani and General Shahlai, the director of the IRGC–QF External Operations.

### C. JAYSH AL MAHDI ("JAM" or the "MAHDI ARMY") AND THE PROMISED DAY BRIGADES ("PDB")

782. As noted above, Jaysh al-Mahdi ("JAM" or the "Mahdi Army") was established by radical Shi'a cleric Muqtada al-Sadr in June 2003 with the help of Imad Mughniyah and Mustafa Badr al-Din, two of Hezbollah's most senior commanders.

783. JAM expanded its territorial control of mixed or predominantly Shi'a neighborhoods and displaced or killed the local Sunni population.

784. JAM was able to gain initial control in many of the neighborhoods in and around Baghdad (such as Sadr City) by offering the Shi'a population protection and social services.

785. After Hezbollah and the IRGC–QF began their complete takeover of the Special Groups in 2006-2007, JAM receded to a degree.

786. In the summer of 2007, Mr. Sadr declared a six-month ceasefire and a ban on attacking Coalition Forces. According to a 2007 MNF–I report, during this time, Mr. Sadr was receiving approximately $2 million U.S. dollars per month from Iran.

787. For much of 2007-2008, he was also embroiled in political disputes with rival Shi'a parties, and JAM engaged in violent clashes with the Badr Corps in Karbala during a religious festival.

163

788. In June 2008, Mr. Sadr announced his intention to disband JAM to focus his organization on social, cultural and religious activities, but he soon further proclaimed that he would maintain an elite force, the Promised Day Brigades ("PDB"), to carry out attacks against Coalition Forces.

789. The PDB received funding and weapons from the IRGC and training and direction from both Hezbollah and the IRGC–QF and deployed many EFPs against American and Coalition Forces in Iraq after July 2008.

790. In August 2009 alone, MNF–I attributed 15 EFP attacks in Baghdad to PDB.

791. MNF–I took significant and forceful measures against the PDB, but because of the financial, logistical and operational support it received from both Hezbollah and the IRGC–QF, PDB was able to survive and continued to menace American forces in Iraq through 2011.

792. For example, on June 28, 2011, the PDB issued a statement claiming responsibility for ten mortar and Katyusha rocket attacks against U.S. military convoys in which U.S. officials confirmed that three U.S. troops were killed.

**D. KATA'IB HEZBOLLAH ("KH")**

793. Kata'ib Hezbollah ("KH") (Hezbollah Brigades) was active in Iraq from 2007 to 2011.

794. KH was founded by Abu Mahdi al-Muhandis, a member of the Badr Corps and one of the IRGC–QF's senior operatives in Iraq.

795. In the 1980s, al-Muhandis was a member of the Iraqi Da'wa Party, in which capacity he worked closely with the IRGC–QF and Lebanese Hezbollah.

796. KH's overall operations were run by Karim Ja'far Muhsin al-Ghanimi, described by the U.S. Department of the U.S. Department of the Treasury as "the overall leader of KH, which

has used facilities in Iran to send weapons to Iraq." According to the U.S. Government, "Ghanimi has organized KH military-related training in Iran from the IRGC–QF and Lebanese Hizballah. Ghanimi has sent money provided by the IRGC–QF to KH leaders in Iraq."

797.    KH functioned as Iran's premiere terror proxy in Iraq, and like other Special Groups, its operatives received extensive training from the IRGC–QF and Hezbollah, including Hezbollah's TTP for the use of explosives, as well as weapons like the RPG–29, EFP, and the deployment of Katyusha rockets for indirect fire attacks on U.S. forward operating bases.

798.    According to MNF–I, IRGC–QF provided RPG–29 anti-armor weapons exclusively to KH.

799.    The IRGC–QF also provided Improvised Rocket Assisted Munitions ("IRAMs") almost exclusively to KH.

800.    IRAMs are "flying IEDs"—explosive devices made from large metal canisters, such as propane gas tanks, filled with explosives, scrap metal and ball bearings, propelled into the air by rockets.

801.    IRAMs first appeared in southern Iraq in November 2007.

802.    Like other IEDs, IRAMs could be triggered remotely by radio control, or set to fire by way of a washing-machine timer. But, notwithstanding the fact that IRAMs were constructed from commonly-used "household" materials (such as, *e.g.*, propane tanks), proper assembly required a high-degree of technical sophistication that KH obtained from Hezbollah and the IRGC–QF.

803.     IRAMs were "purpose-built" for one thing: being lobbed over walls and Hesco[31] barriers at short ranges, preventing interception by C-RAM defense systems[32] that were protecting Coalition Forces manning bases in Iraq.

804.     The first known IRAM attack in Iraq occurred at Forward Operating Base ("FOB") Loyalty in Baghdad, which killed two American soldiers and wounded 16 others.

805.     A second attack in the Sha'ab neighborhood of Baghdad resulted from an accidental explosion of IRAMs likely intended for Combat Outpost Callahan, approximately 800-yards away from where the truck carrying the IRAMs prematurely exploded, killing 18 civilians and wounding an additional 29 people.

806.     IRAM attacks were particularly dangerous to U.S. troops, and had the potential to kill dozens in a single attack. Once launched, an incoming IRAM could not be stopped.

807.     A soldier spotting the approach of a suspected IRAM-bearing vehicle could have as little as "two seconds to decide whether the person emerging from it ha[d] just set it for firing or [was] simply an innocent driver getting out to change a tire."[33]

808.     The IRAM could be launched from either a frame resting on the ground or mounted on the bed of a truck and were designed to cause catastrophic damage and inflict mass casualties.

809.     IRAMs became a signature weapon of KH.

810.     KH operated mainly in Shi'a areas of Baghdad, such as Sadr City, and throughout southeastern Iraq conducting, *first*, rocket-propelled grenade (RPG) attacks; *second*, 107mm and

---

[31]     Hesco barriers are a multi-cellular barrier system manufactured from welded zinc-aluminum coated steel wire mesh, joined with vertical, helical-coil joints, and lined with a heavy-duty non-woven polypropylene geotextile. Once filled with earth, sand, and dirt, the Hesco barriers provide protection against conventional fire attacks.

[32]     Counter Rocket, Artillery, and Mortar, abbreviated "C-RAM" or "Counter-RAM," is a set of systems used to detect and/or destroy incoming artillery, rockets and mortar rounds in the air before they hit their ground targets, or simply provide early warning.

[33]     Robert Burns, *Lob Bombs' Biggest Worry for U.S. in Baghdad* (Associated Press, July 12, 2008).

240mm rocket attacks; *third*, IRAM attacks; and, *fourth*, EFP attacks on U.S. and Coalition Forces.

811.    KH was also supplied by Iran with their production model of the RPG–29 anti-armor shoulder fired weapon that was first used against U.S. Forces during operations in Sadr City, Baghdad.

812.    On June 24, 2009, the United States designated KH a Foreign Terrorist Organization.

813.    The State Department's notice of KH's FTO designation stated that:

> [KH] has been responsible for numerous violent terrorist attacks since 2007, including improvised explosive device bombings, rocket propelled grenade attacks, and sniper operations. Kata'ib Hezbollah [sic] also targeted the International Zone in Baghdad in a November 29, 2008 rocket attack that killed two UN workers. In addition, KH has threatened the lives of Iraqi politicians and civilians that support the legitimate political process in Iraq.

814.    KH was also simultaneously designated as an SDGT, because it was "responsible for numerous terrorist acts against Iraqi, U.S., and other targets in Iraq since 2007."

815.    The U.S. Department of the U.S. Department of the Treasury also designated KH pursuant to EO 13438.

816.    The U.S. Department of the U.S. Department of the Treasury 2009 press release announcing KH's designation explained that KH had "committed, directed, supported, or posed a significant risk of committing acts of violence against Coalition and Iraqi Security Forces…."

817.    The press release also quoted then-Under Secretary for Terrorism and Financial Intelligence Stuart Levey as stating "[t]hese designations play a critical role in our efforts to protect Coalition troops, Iraqi security forces, and civilians from those who use violence against innocents to intimidate and to undermine a free and prosperous Iraq."

818.    The U.S. Department of the Treasury press release also stated: "[f]urther, the IRGC–Qods Force provides lethal support to Kata'ib Hizballah and other Iraqi Shia militia groups

who target and kill Coalition and Iraqi Security Forces."

819.    The 2009 press release further reported that:

Between March 2007 and June 2008, Baghdad-based Kata'ib Hizballah cell members participated in multiple rocket-propelled grenade (RPG) and improvised rocket-assisted mortar (IRAM) attacks against U.S. forces. These attacks included a May 13, 2008 RPG–29 attack on a U.S. tank located in Sha'ab, Iraq, and a February 19, 2008 IRAM attack on a U.S. base near Rustamiya, Iraq. A February 19, 2008 rocket attack in the Rustamiya area resulted in one U.S. civilian killed and injuries to U.S. civilian and Coalition Forces personnel.

As of 2008, Kata'ib Hizballah was funded by the IRGC–Qods Force and received weapons training and support from Lebanon-based Hizballah. In one instance, Hizballah provided training—to include building and planting IEDs and training in coordinating small and medium arms attacks, sniper attacks, mortar attacks, and rocket attacks—to Kata'ib Hizballah members in Iran.

Recordings made by Kata'ib Hizballah for release to the public as propaganda videos further demonstrate that Kata'ib Hizballah conducted attacks against Coalition Forces. In mid-August 2008, Coalition Forces seized four hard drives from a storage facility associated with a Kata'ib Hizballah media facilitator. The four hard drives included approximately 1,200 videos showing Kata'ib Hizballah's sophisticated planning and attack tactics, techniques, and procedures, and Kata'ib Hizballah's use of the most lethal weapons—including RPG–29s, IRAMs, and EFPs—against Coalition Forces in Iraq.

One of the hard drives contained 35 attack videos edited with the Kata'ib Hizballah logo in the top right corner. Additionally, between February and September 2008, Al-Manar in Beirut, Lebanon, broadcast several videos showing Kata'ib Hizballah conducting multiple attacks against Coalition Forces in Iraq.

Immediately preceding the Government of Iraq's approval of the United States-Iraq security agreement in late November 2008, Kata'ib Hizballah posted a statement that the group would continue fighting Coalition Forces and threatened to conduct attacks against the Government of Iraq if it signed the security agreement with the United States.

820.    In 2008, the U.S. Department of Defense described the linkages it found between

KH, Iran and multiple terrorist attacks against Coalition Forces in Iraq—including KH's use of

EFPs:

> [A]lso known as Hezbollah Brigades, is a terrorist group believed to receive funding, training, logistics and material support from Iran to attack Iraqi and coalition forces using what the military calls 'explosively formed penetrators'— roadside bombs designed to pierce armor-hulled vehicles— and other weapons such as rocket-assisted mortars.

821. As noted above—and as stated by the U.S. Department of the U.S. Department of the Treasury in its July 2009 press release—throughout 2008, *Al-Manar*, Hezbollah's official television outlet in Lebanon (and itself a designated SDGT since May 2006), played numerous videos of KH launching rocket and IED attacks against U.S. troops.

822. In this manner, Hezbollah helped publicize KH's activities and wage psychological warfare against the United States.

823. U.S. Department of the Treasury designated KH's founder, Abu Mahdi al-Muhandis, an SDGT in July 2009 and announced the designation in the same press release announcing KH's designation.

824. The U.S. Department of the U.S. Department of the Treasury's press release noted:

> As of early 2007, al-Muhandis formed a Shia militia *group employing instructors from Hizballah* to prepare this group and certain Jaysh al-Mahdi (JAM) Special Groups for attacks against Coalition Forces. The groups received training in guerilla warfare, handling bombs and explosives, and employing weapons--to include missiles, mortars, and sniper rifles. In another instance as of September 2007, al-Muhandis led networks that moved ammunition and weapons--to include explosively formed penetrators (EFPs)—from Iran to Iraq, distributing them to certain JAM militias to target Coalition Forces. As of mid-February 2007, al-Muhandis also ran a weapons smuggling network that moved sniper rifles through the Iran-Iraq border to Shia militias that targeted Coalition Forces.

> Al-Muhandis also provided logistical support for attacks against Iraqi Security Forces and Coalition Forces conducted by JAM Special Groups and certain Shia militias. In one instance, in April 2008, al-Muhandis facilitated the entry of trucks—containing mortars, Katyusha rockets, EFPs, and other explosive devices—from Iran to Iraq that were then delivered to JAM Special Groups in Sadr City, Baghdad. Additionally, al-Muhandis

organized numerous weapons shipments to supply JAM Special Groups who were fighting Iraqi Security Forces in the Basrah and Maysan provinces during late March-early April 2008.

In addition to facilitating weapons shipments to JAM Special Groups and certain Shia militias, al-Muhandis facilitated the movement and training of Iraq-based Shia militia members to prepare them to attack Coalition Forces. In one instance in November 2007, al-Muhandis sent JAM Special Groups members to Iran to undergo a training course in using sniper rifles. Upon completion of the training course, the JAM Special Groups members had planned to return to Iraq and carry out special operations against Coalition Forces. Additionally, in early March 2007, al-Muhandis sent certain Shia militia members to Iran for training in guerilla warfare, light arms, marksmanship, improvised explosive devices (IED) and anti-aircraft missiles to increase the combat ability of the militias to fight Coalition Forces.

In addition to the reasons for which he is being designated today, al-Muhandis participated in the bombing of Western embassies in Kuwait and the attempted assassination of the Emir of Kuwait in the early 1980s. Al-Muhandis was subsequently convicted in absentia by the Kuwaiti government for his role in the bombing and attempted assassination. (Emphasis added.)

825. In a July 2010 press briefing, the then-MNF–I commander, U.S. Army General Ray Odierno, identified KH as the group behind increased threats to U.S. bases in Iraq.

826. General Odierno confirmed that KH operatives had gone to Iran for special training and then returned to Iraq.

827. General Odierno stated, "[T]hey are clearly connected to Iranian IRGC [Iranian Revolutionary Guard Corps]."

## X.  DEFENDANTS ARE DEPENDENT ON UNITED STATES CORRESPONDENT BANK ACCOUNTS AND U.S. DOLLAR CLEARING, INCLUDING DOLLAR CLEARING FOR HEZBOLLAH

828. As of the end of 2011, the Lebanese banking sector included 69 active commercial banks and two specialized medium- and long-term credit banks.

170

829.    According to the Central Bank of Lebanon (a/k/a Banque du Liban), Lebanon's banking system is well-regulated, exhibits good financial sector soundness indicators, and has good ratings relative to peers. It is an attractive destination for domestic and expatriate deposits because bank failures have never caused depositors to lose money (the Central Bank of Lebanon has chosen to deal with troubled monetary institutions largely through mergers).

830.    In reality, Lebanon is in many respects a failed state, dominated if not wholly controlled by Hezbollah, the world's most powerful terrorist organization, which plays a decisive role in its political and security arrangements and a significant role in its economy.

831.    Notwithstanding that reality, both Lebanon and Hezbollah are inextricably tied to the United States, including its payment system, stable currency, and robust financial services sector.

832.    In 2006, almost 75 percent of Lebanese bank deposits (i.e., $45 billion U.S. dollars) were in U.S. dollars.

833.    In 2018, approximately 67 percent of Lebanese bank deposits (i.e., around $120 billion U.S. dollars) were in U.S. dollars.

834.    As explained further below, Lebanon's banking system, including Hezbollah's financing machinery, depends substantially on Lebanon's ability to access U.S. dollars and clear them in New York.

835.    Lebanon maintains a consistent current account deficit and its credit rating is relatively weak.

836.    Lebanon is a predominantly importing country characterized by large trade deficits, generally offset by capital account inflows, domestic income earnings, and a large volume of cross-border remittances.

837.    The U.S. Department of the U.S. Department of the Treasury has characterized the

dynamics of the Lebanese banking system as follows:

> a steady flow of diaspora deposits in recent years have helped the Lebanese banking system to maintain relatively robust lending, improve asset quality, and maintain adequate liquidity and capitalization positions. However, banks remain highly exposed to the heavily indebted sovereign, carry significant currency risk on their balance sheets, and operate in a volatile political security environment…. Of particular relevance is the possibility that a portion of the substantial flow of remittances from the Lebanese diaspora, estimated at $7 billion—21% of GDP—in 2009, according to the World Bank, could be associated with underground finance and Trade-Based Money Laundering ("TBML") activities. Laundered criminal proceeds come primarily from Lebanese criminal activity and organized crime.

838.    To service its debt with minimal exportable production of its own, the Lebanese

government runs on debt on a scale that places it as the third most indebted economy in the world.

839.    For example, Lebanon's trade balance recorded deficits of approximately $7.9

billion U.S. dollars in 2007, $11.1 billion U.S. dollars in 2008, $11.2 billion U.S. dollars in 2009,

$12.3 billion U.S. dollars in 2010, and $12.8 billion U.S. dollars in 2011.

840.    In 2010, for example, Moody's rated Lebanon's government debt on the same level

as Senegal and Vietnam. Standard and Poor's and Fitch ranked Vietnam higher.

841.    In 2011, Lebanon's government debt service represented approximately 42.9

percent of total expenditures and 34.3 percent of total revenues.

842.    Compared to other countries, Lebanon has a high net outstanding public debt to

gross domestic product ("GDP") ratio, reaching 119 percent by the end of 2011.

843.    To finance its massive debt, Lebanon chose to link its economy to the U.S. dollar,

running a massive proportion of its economy through correspondent accounts with U.S. financial

institutions, largely in New York.

844.    Specifically, the Lebanese economy is dependent on the following inter-related

policies:

- For two decades the Lebanese pound has been pegged to the U.S. dollar at a fixed rate sometimes called a "currency peg."[34]

- To keep the public sector afloat, two thirds of the Lebanese banking sectors' balance sheets consist of loans to the Lebanese Central Bank and the Lebanese government.[35]

- The Lebanese Central Bank maintains high interest rates that keep money flowing into banks.

- With economic growth slowing and traditional sources of foreign exchange, such as tourism, real estate and foreign investment having proven insufficient, Lebanon heavily relies on the billions of U.S. dollars expatriate Lebanese deposit into its local banks.

845.    With its currency tied to the U.S. dollar and its dependence on infusions of U.S. dollars in hard currency from expatriate Lebanese, the entire structure of the Lebanese financial system is dependent on Lebanese commercial banks maintaining access to U.S. dollar-clearing capabilities through the maintenance of correspondent accounts with U.S. financial institutions.

846.    Therefore, the Lebanese banks have chosen to maintain correspondent banking relationships with U.S. financial institutions in New York.

847.    The fact that Lebanon has voluntarily waived its sovereign immunity defense as to any disputes relating to the government Notes it issues, accepts New York law as the governing

---

[34]    Since 1992, the Central Bank of Lebanon exchange rate policy has been to anchor the Lebanese pound to the U.S. dollar, utilizing both its hard currency (i.e. U.S. dollar) reserves and an aggressive interest rate policy to keep its domestic currency stable and avoid capital flight. Since 1999, the Central Bank of Lebanon has maintained its monetary policy of pegging the value of the Lebanese pound to the U.S. dollar at a fixed rate of 1,507.5 Lebanese pounds per $1.00 USD.

[35]    In 1997, according to data from the Federal Reserve Bank of St. Louis ("FRB–St. Louis"), a large number of Lebanese commercial banks began subscribing to Lebanon's Eurobond issues (continuing to do so for over 20 years). A "Eurobond" is an international bond that is denominated in a currency not native to the country – i.e. in this case bonds issued in U.S. dollars not Lebanese pounds. Between 2004 and 2011, Lebanon issued Eurobonds under the Note Program in an aggregate principal amount in excess of $22 billion U.S. dollars. Banks in Lebanon provide the bulk of both private sector and government financing, holding more than 50 percent of total sovereign debt.

law, and submits to jurisdiction in U.S. courts, highlights the fact that the entire Lebanese banking sector is dependent on access to U.S. dollars through networks of correspondent accounts.

848.   The willingness of Lebanon's banks, including Defendants, to finance the government is to a large degree explained by the fact that over half of these banks' assets are invested in Lebanon's sovereign debt (issued by either the Ministry of Finance or the Central Bank of Lebanon).

849.   The circularity and mutual dependence that this level of investment and re-investment in the sovereign creates is a high-risk strategy for the Central Bank of Lebanon and the commercial banks because it relies on an ever-increasing level of domestic and expatriate deposits, mostly in U.S. dollars.

850.   Ultimately, the ability of Lebanon's banks to continue financing the government rests on the steady growth of the banks' respective hard currency deposit base, fueled by U.S. dollar-denominated remittances and transfers from the Lebanese diaspora in general, and Hezbollah in particular.

851.   For instance, Lebanon's substantial influx of remittances from expatriates has been estimated by the World Bank at approximately $7.6 billion U.S. dollars annually over the last four years.

852.   This includes enormous amounts of U.S. dollars that flow from drug-trafficking, arms dealing, contracts obtained by Hezbollah operatives from friendly African governments and even ordinary (i.e., otherwise legal) trade conducted by Hezbollah's world-wide enterprises.

853.   It also includes massive amounts of Iranian financial support (most of it in U.S. dollars, the currency needed by Lebanon and earned by Iran in selling oil) that is laundered through Hezbollah and Iranian organizations based in Lebanon, and Hezbollah's commercial network and

Iran's sanctions evasions network globally that is then routed through Lebanese entities and banks.

854.    Not only are the Defendants herein aware of this, they *depend* on these U.S. dollars deposits from Hezbollah to flow from South America, Africa and elsewhere through the United States and into the balance sheets of the banks that in turn underwrite the Lebanese government's enormous and otherwise unsustainable debt structure.

855.    Thus, deposit accounts in Lebanese banks that receive U.S. dollars from Hezbollah are primarily U.S. dollar-denominated (Eurodollar) accounts.

856.    Lebanon is formally a member of the Middle East and North Africa Financial Action Task Force, an intergovernmental regional body similar to the global Financial Action Task Force.

857.    Lebanon's Financial Intelligence Unit ("FIU") is the Special Investigation Commission ("SIC–Beirut"), a nominally independent legal entity empowered to investigate suspicious financial transactions and freeze assets.

858.    However, according to the U.S. State Department's Bureau for International Narcotics and Law Enforcement Affairs, Lebanon faces significant money laundering and terrorism financing challenges by Hezbollah, the IRGC–QF, and other malign actors.

859.    This is inevitable in light of Hezbollah's preeminent role in the Lebanese government and its complementary position as an armed faction with capabilities far superior to the hapless Lebanese army (which it also dominates).

860.    Thus, there are no meaningful controls on Hezbollah's access to and use of the Lebanese banking system.

861.    In Lebanon, checks are the predominant payment instrument in use among non-banks, for both high-value and low-value payments.

862. Checks denominated in U.S. dollars account for over 95 percent of foreign currency checks, reflecting the importance of the U.S. dollar in Lebanese economic and financial transactions.

863. Payment transactions are settled primarily by the Central Bank of Lebanon over the accounts kept with it by members of the banking and financial sectors, including Defendants.

864. The Central Bank of Lebanon effects final settlement between accounts in its books for members of the Lebanese clearing system, which includes all of the Defendants herein.

865. Lebanese commercial banks, including Defendants, must ensure that the balances on their accounts at the Central Bank of Lebanon are sufficient at the end of each day to allow transfer orders to be executed and to maintain reserve requirements.

866. At the end of each day, remaining amounts from U.S. dollar-denominated transactions are settled through Central Bank of Lebanon's correspondent accounts in New York.

867. The entire structure of the Lebanese financial system is dependent on the Lebanese commercial banks, including Defendants, being able to maintain access to the Eurodollar market and direct or indirect correspondent accounts with banks in New York for the clearing and settling of U.S. dollar-denominated electronic funds transfers.

868. Thus, the Defendants and other Lebanese commercial banks are – of economic and political necessity – tied to and dependent on Hezbollah and the influx of U.S. dollars in cash and New York-based dollar clearing it provides to keep the precarious Lebanese banking system afloat.

## XI. DEFENDANTS' MATERIAL SUPPORT TO HEZBOLLAH

### A. SOCIETE GENERALE DE BANQUE AU LIBAN, SAL

#### 1. SGBL ACQUIRED LCB

869. LCB was a commercial bank based in Beirut, Lebanon that maintained a network

of 35 branches in Lebanon and a representative office in Montreal, Canada.

870.    In 2011, the bank wass eighth largest among Lebanese banks in assets.

871.    LCB was the majority shareholder of Prime Bank Limited, a private commercial bank and LCB subsidiary located in Serrekunda, The Gambia. LCB owned 51 percent of Prime Bank while the remaining shares were held by local and Lebanese partners.

872.    In February 2011, after the public disclsores by the United States Government revealed that LCB was a central actor in BAC's money laundering network for Hezbollah, the dangers posed to the entire Lebanese banking sector became immediately apparent.

873.    While LCB presented a clear and egregious case, including being found by the U.S. Government to have laundered enormous sums for Hezbollah through the Ellissa Money Exchange and others, it was was by no means alone among Lebanese commercial banks in providing substantial assistance to Hezbollah. To cite just one, Defendant BLOM BANK also maintained accounts for Ellissa Exchange.

874.    From the perspective of Lebanon's Central Bank and the country's largest commercial banks, it was critical that LCB's conduct be seen as aberrational and all legal issues with the United States reolved immediately.

**2.    SGLB ACQUIRED LCB'S LIABILITIES**

875.    Within months, pursuant to an agreement dated June 22, 2011 (the "Sale and Purchase Agreement") between LCB and SGBL, SGBL agreed to acquire substantially all of LCB's assets and liabilities, in exchange for the payment of a purchase price of $580 million U.S. dollars, subject to the final review and approval of the Central Bank of Lebanon – which had every reason to quickly consummate this banking marriage.

876.    A copy of the "Sale and Purchase Agreement" is attached hereto as **<u>Exhibit 1</u>**.

877. Section 2.3 of the "Sale and Purchase Agreement" stated:

The Assumed Liabilities consist *inter alia* of any and all of the Seller's liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the Seller's Business, all as at the Completion Date.

878. On September 7, 2011, the Central Council of the Central Bank of Lebanon granted its final approval of the acquisition by SGBL of the assets and liabilities of LCB.

879. LCB was immediately placed under liquidation and asked that its banking license be revoked, which request was promptly consented to by the Central Bank of Lebanon.

880. DOJ and the U.S. Department of the U.S. Department of the Treasury then quietly let SGBL pay a civil fine and quietly resolve the matter.

881. The result was solid victory for all concerned parties. DOJ and U.S. Department of the Treasury received credit for striking a powerful symbolic blow against Hezbollah's narcotics trafficking networks; the Central Bank of Lebanon contained the crisis that threatened to implicate nearly the entire Lebanese banking system in Hezbollah's financing; the Lebanese banking sector was freed to continue its highly lucrative financial services for Hezbollah; and Hezbollah itself was freed to continue and even more aggressively pursue its financial activities, content in the knowledge that the United States Government is, at most, prepared to inconvenience it slightly.

### a. **LCB KNOWINGLY PROVIDED MATERIAL SUPPORT TO HEZBOLLAH'S MARTYR FOUNDATION THROUGH ITS CORRESPONDENT BANK ACCOUNTS IN THE UNITED STATES**

882. From at least 2004 through at least July 2006, Hezbollah continuously maintained bank accounts at various LCB branches in Lebanon, for the Martyr Foundation-Lebanon.

883. As described above, the Martyr Foundation–Lebanon is an integral part of

Hezbollah and constitutes a key part of Hezbollah's financial arm.

884.    According to the DOJ, since 2003, LCB exempted the Martyr Foundation from signing cash transaction slips (discussed below) disclosing the source of funds for transactions up to $100,000 U.S. dollars per day at its Airport Road branch in Beirut, on the grounds that Martyr Foundation is nominally a "charity."

885.    The practical result was to allow Hezbollah to receive enormous amounts of cash deposited at its LCB accounts without creating a traceable record.

886.    From 2004 through at least July 2006, LCB facilitated dozens of dollar-denominated wire transfers totaling several million dollars on behalf of the Martyr Foundation - Lebanon through the U.S. correspondent account it maintained with AMEX-NEW YORK (since acquired by Standard Chartered Bank in 2008).

### b. LCB PROVIDED MATERIAL SUPPORT TO ABDALLAH SAFIEDDINE

887.    On February 10, 2011, FinCEN reported that "LCB managers are linked to Hezbollah officials outside Lebanon. For example, Hezbollah's Tehran-based envoy Abdallah Safieddine is involved in Iranian officials' access to LCB and key LCB managers, who provide them banking services."

888.    As described above, Abdallah Safieddine is the brother of senior Hezbollah leader, Hashem Safieddine. Hashem Safieddine is the head of Hezbollah's Executive Assembly and one of seven elected members of Hezbollah's ruling Shura Council.

889.    Between 2009 and 2010, Abdallah Safieddine and Muhammad Bazzi, discussed below, worked with the Central Bank of Iran to expand banking access between Iran and Lebanon.

890.    Abdallah Safieddine, who was designated as an SDGT on May 17, 2018, is Hezbollah's representative to Iran and acts as a conduit between Hezbollah and the IRGC.

891.    He is also the cousin of Hezbollah's leader, Hassan Nasrallah, who was first designated as an SDT on January 23, 1995.

### c.  LCB PROVIDED MATERIAL SUPPORT TO HEZBOLLAH'S OWN FINANCE UNIT

892.    LCB maintained banking relationships with Bayt al-Mal and Yousser Company for Finance and Investment ("Yousser"), which are key parts of Hezbollah's financing operations.

893.    On September 7, 2006, U.S. Department of the Treasury designateded Bayt al-Mal and Yousser SDGTs, announcing that it was "target[ing] Hizballah's Bank."

894.    U.S. Department of the Treasury found that Bayt al-Mal and Yousser "function as Hizbullah's unofficial U.S. Department of the Treasury, holding and investing its assets and serving as intermediaries between the terrorist groups and mainstream banks."

895.    U.S. Department of the Treasury further found that "Bayt al-Mal is a Hezbollah-controlled organization that performs financial services for the terrorist organization. Bayt al-Mal operates under the direct supervision of Hezbollah Secretary General Hassan Nasrallah. As Hizballah's main financial body, Bayt al-Mal serves as a bank, creditor, and investment arm for Hezbollah." The central headquarters of Bayt al-Mal was located in Beirut's southern suburbs.

896.    According to U.S. Department of the Treasury, "Bayt al-Mal utilizes the Yousser Company for Finance and Investment to secure loans and finance business deals for Hizballah companies."

897.    The head of Bayt al-Mal, Hussein al-Shami, was also a director of Yousser.

898.    The U.S. Department of the U.S. Department of the Treasury described Mr. Al-Shami as "a senior Hezbollah leader who has served as a member of Hezbollah's Shura Council [i.e., the council runs Hezbollah] and as the head of several Hezbollah-controlled organizations,

including the Islamic Resistance Support Organization. Mr. Shami is also responsible for foreign donations to Hezbollah fundraising organizations."

899.    LCB maintained banking relationships with Bayt al-Mal and Yousser, managed out of LCB's Airport Road branch.

### d. LCB MAINTAINED ACCOUNTS FOR VARIOUS HEZBOLLAH CONTROLLED ENTITIES

900.    LCB also maintained a banking relationship with Farah Company, a subsidiary of Yousser, with the relationship managed out of LCB'S Airport Road branch.

901.    LCB also maintained a banking relationship with Lebanese Arab Company for Touristic Services SARL, which was managed out of the Airport Road branch. As discussed above, this company was owned by the Al-Mabarrat Charitable Society and four individuals: Muhammad Baqir al-Sayyid Abd al-Ra'uf Fadlallah; Jamal Ali Makke; Ali al-Sayyid Muhammad Hussein Fadlallah; and Hamzah Safieddine.

902.    The Al-Mabarrat Charitable Society, described above, is a Hezbollah-controlled organization based in Lebanon.

903.    Muhammad Hussein Fadlallah was the founder of Al-Mabarrat Charitable Society and, as noted above, also Hezbollah's spiritual leader, up to his death in April 2010.

904.    Ali al-Sayyid Muhammad Hussein Fadlallah is Muhammad Hussein Fadlallah's son.

905.    Hamzah Safieddine, as described further above, is the brother of two of Hezbollah's most powerful leaders, Hashem and Abdallah Safieddine.

906.    LCB maintained a banking relationship with Rayan (Offshore) LLC, which was owned by, *inter alia*, Nawaf Moussaoui (a Hezbollah public spokesperson and Member of the

Lebanese Parliament), and Colonel Rida el-Moussaoui, (the brother-in-law of Muhammad Hamdoun, LCB Executive Board Member and Deputy general manager).

907.    LCB also maintained a banking relationship with Matrix (Offshore) SAL, a company controlled by Qassem Mohammad Ajami, a Hezbollah field commander who was killed in July 2017, and Muhammad Ali Izz-al-Din.

908.    Ajami and Ezzedine were business associates of Tajco SARL, which is described further above.

909.    LCB maintained a banking relationship with the Hassan Ayash Exchange; the exchange and its principals held accounts through LCB's branch in Verdun, Beirut.

910.    The Hassan Ayash Exchange (SDNT), also described above, was owned and controlled by Mahmoud Hassan Ayash (SDNT) and his son, Hassan Mahmoud Ayash (SDNT). Hassan Ayash has stated that he has family ties to Hezbollah, including its leader, Hassan Nasrallah. Hassan Ayash has stated that his connections to important people in Lebanon help him provide services for clients of his exchange.

911.    LCB also maintained a banking relationship with Ellissa Exchange (SDNT).[36] The exchange and its principals held accounts through LCB's branch in Verdun, Beirut.

912.    Ellissa Exchange was owned and controlled by Jamal Mohamad Kharrubi (SDNT) and Ali Muhammad Kharrubi (SDNT), "a self-proclaimed supporter of Hezbollah."

913.    The U.S. Government found that both the Elissa and the Hassan Ayash Exchanges facilitated bulk cash transfers and laundered money for Ayman Joumaa's narcoterrorism network, discussed above. The exchanges originated wire transfers to the United States, using LCB and LCB's New York-based correspondent banks, to fund the purchase of used cars.

---

[36]    Defendant BLOM BANK maintains accounts for Ellisa Exchange.

914. The wire transfers and car purchases were part of the money laundering scheme run through LCB and intended to disguise and conceal the source, nature, ownership and control of proceeds of narcotics trafficking for the benefit of Hezbollah.

**e. LCB DISREGARDED ANTI-MONEY LAUNDERING RULES FOR INDIVIDUALS AND ENTITIES ASSOCIATED WITH HEZBOLLAH**

915. During the relevant time period, LCB had a policy requiring cash transaction slips ("CTS") for all cash transactions greater than $10,000 U.S. dollars. CTSs required disclosure of the source of funds deposited and were filed with the Central Bank of Lebanon.

916. LCB's policy requiring CTSs accorded with the "Regulations on the Control of Financial and Banking Operations for Fighting Money Laundering," Basic Decision No. 7818 of the Banque du Liban (the Lebanese Central Bank), issued on May 16, 2001 (the "Regulations").

917. The Regulations contained "Know Your Customer" provisions whereby banks, including LCB, were required to "check the identity" of their clients.

918. The Regulations also contained provisions whereby banks, including LCB, were required in some circumstances to enquire about the source and destination of funds, the object of the operation, and the identities of both the beneficiary and the economic right owner of funds. Additionally, the Regulations required banks, including LCB, to give special attention to indicators of money laundering.

919. In or around September 2003, Ahmad Safa, LCB's Associate General Manager for Branches and Operations, granted exceptions to certain LCB clients from LCB's policy of requiring CTSs for cash transactions greater than $10,000 U.S. dollars.

920. The clients granted exceptions by Mr. Safa included individuals and entities (which are described in greater detail above) related to Hezbollah:

183

- Yousser Company (SDGT) was exempted from signing CTSs for cash transactions up to $50,000 U.S. dollars per week at the Nabatieh branch and up to $60,000 U.S. dollars per day at the Airport Road branch.

- Farah Company for Tourism (Farah Travels Company SAL, owned by Adham Tabaja and Issam Saad (SDGTs) among others) was exempted from signing CTSs for cash transactions up to 50 million Lebanese pounds per week at the Nabatieh branch, roughly equivalent to $33,000 U.S. dollars in 2003 dollars.

- Hussein al-Shami (SDGT), using the name Hussein Ali Muhammad Chami, was exempted from signing CTSs for cash transactions up to $30,000 U.S. dollars per week at the Nabatieh branch.

- Wahid Mahmoud Sbeity, another owner of the Yousser Company, was exempted from signing CTSs for cash transactions up to $30,000 U.S. dollars per week at the Nabatieh branch.

- Al-Shami and two other directors of Yousser Company were exempted from signing CTSs for cash transactions up to $200,000 U.S. dollars per day and 200 million Lebanese pounds ($132,000 U.S. dollars in 2003 dollars) per day at the Airport Road branch.

- Al-Mabarrat Charitable Society was exempted from signing CTSs for cash transactions up to $55,000 U.S. dollars per day at the Airport Road branch.

- Lebanese Arab Touristic Company, owned by Al-Mabarrat Charitable Society, was exempted from signing CTSs for cash transactions up to $22,000 U.S. dollars per day at the Airport Road branch.

- Al-Ittam (founded by Al-Mabarrat Charitable Society) was exempted from signing CTSs for cash transactions up to $50,000 U.S. dollars per day at the Airport Road branch.

921. The exemptions discussed in the preceding paragraph essentially allowed Hezbollah to transfer millions of U.S. dollars, convert those dollars to cash, and use them without being traceable.

922. In addition to enabling Hezbollah operatives to make large cash deposits without documentation, Ahmad Safa also disregarded internal LCB reports that raised concerns about lack of documentation relating to Ellissa Exchange.

184

923.    LCB was required to perform customer due diligence in accordance with regulations set forth by Lebanon's Central Bank to comply with anti-money laundering laws.

924.    A 2006 LCB customer due diligence report noted that the Ellissa Exchange and its principals were implicated in smuggling cash out of Africa through several channels, including cash smuggling on flights from Ghana to Beirut.

925.    The report further noted that LCB had limited "Know Your Customer" files for these clients and that another Lebanese commercial bank had closed its accounts with the Ellissa Exchange. The report described large cash deposits into accounts of the exchange's owners, transactions inconsistent with the nature and purpose of the accounts, and the exchange's failures to supply information about the nature and purpose of transactions.

**f.    LCB PARTICIPATED IN A MAJOR MONEY LAUNDERING SCHEME WITH HEZBOLLAH IN THE UNITED STATES INVOLVING NARCOTICS, USED CARS, AND THE TRANSFER OF OVER $250 MILLION U.S. DOLLARS THROUGH LCB'S NEW YORK CORRESPONDENT BANK ACCOUNTS**

926.    Ayman Joumaa, the Hezbollah narcotics trafficker and money launderer described above, controlled an international network of drug traffickers that transported, distributed and sold multi-ton bulk shipments of cocaine from South America, and laundered the proceeds—as much as $200 million U.S. dollars per month on behalf of Hezbollah.

927.    Mr. Joumaa's network was described by David S. Cohen, then - Under Secretary for Terrorism and Financial Intelligence, as "a sophisticated multi-national money laundering ring, which launders the proceeds of drug trafficking for the benefit of criminals and the terrorist group Hezbollah."

928.    FinCEN's February 10, 2011's "Finding that the Lebanese Canadian Bank SAL is a Financial Institution of Primary Money Laundering Concern," reported that the proceeds of Mr.

Joumaa's drug sales were laundered through various methods, including bulk cash smuggling operations and use of several Lebanese exchange houses that utilize accounts at LCB branches.

929.    On January 26, 2011, the U.S. Department of the U.S. Department of the Treasury designated Mr. Joumaa under the Foreign Narcotics Kingpin Designation Act, together with the Hassan Ayash Exchange and the Ellissa Exchange—the two exchanges houses discussed above—for their roles in Joumaa's laundering of narcotics proceeds.

930.    Both exchange houses used LCB to facilitate U.S. dollar – deominated transfers. As described below, these money laundering activities were, in part, for Hezbollah's benefit.

931.    As part of the money laundering scheme, LCB repeatedly and continuously used correspondent bank accounts in New York to transfer money for Hezbollah.

932.    FinCEN's February 10, 2011 report described how Joumaa instructed LCB to perform wire transfers in furtherance of two money laundering schemes:

> [S]ome of the funds move to LCB's U.S. correspondent accounts via suspiciously structured electronic wire transfers to multiple U.S.-based used car dealerships—some of which are operated by individuals who have been separately identified in drug-related investigations. The recipients use the funds to purchase vehicles in the United States, which are then shipped to West Africa and/or other overseas destinations, with the proceeds ultimately repatriated back to Lebanon. Other funds are sent through LCB's U.S. correspondent accounts to pay Asian suppliers of consumer goods, which are shipped to Latin America and sold, and the proceeds are laundered through a scheme known as the Black-Market Peso Exchange, in each case through other individuals referred to in this finding or via companies owned or controlled by them.

933.    According to FinCEN, Hezbollah derived financial support from this narco-trafficking and money-laundering scheme, and LCB managers were complicit in the money laundering activities.

934.    With LCB's support, Hezbollah financed its terrorist activity around the world. The proceeds from the drug sales were laundered through various methods, including bulk cash

186

smuggling operations and the use of several Lebanese exchange houses that utilized accounts at LCB branches managed by family members of other participants in the global money laundering network.

935.    The Hassan Ayash Exchange and the Ellissa Exchange were among those exchanges used to facilitate bulk cash transfers and launder money for Joumaa and Hezbollah.

936.    The U.S. Department of the U.S. Department of the Treasury found that LCB was likely the favored bank for the Joumaa-Hezbollah illegal banking activity:

> With respect to the exchanges and companies related to Ayman Joumaa, numerous instances indicate that substantial amounts of illicit funds may have passed through LCB. Since January 2006, hundreds of records with a cumulative equivalent value of $66.4 million identified a Lebanese bank that originated the transfer; approximately half of those were originated by LCB, for a cumulative equivalent value of $66.2 million, or 94%, thus, indicating that LCB probably is the favored bank for these exchange houses, particularly in the context of illicit banking activity. Similarly, a review of all dollar-denominated wire transfers with the two primary exchange houses either as sender or receiver between January 2004 and December 2008 showed 72% originated by one of the exchange houses through LCB.

937.    The movement of money was also facilitated by Oussama Salhab, a Hezbollah operative who controlled a network of money couriers based primarily in West Africa.

938.    Mr. Salhab, who is discussed below, and/or his relatives and associates owned, operated or controlled Cybamar Swiss, a Michigan company (with European affiliates) used as part of the money laundering network.

939.    The proceeds from the drug sales were deposited as bulk cash into the exchange houses, which in turn deposited the currency into their LCB accounts.

940.    Mr. Joumaa or the exchange houses then instructed LCB to perform wire transfers in furtherance of one of two TBML schemes.

941.    In the first scheme, Abou Jaoude, Mr. Hamdoun, and Mr. Safa used LCB to wire large amounts of U.S. currency to car buyers throughout the United States.

942.    The wire transfers passed through LCB's correspondent bank accounts at five New York banks: Bank of New York Mellon, Standard Chartered Bank, Wells Fargo Bank, JPMorgan Chase Bank, and Mashreq Bank.

943.    LCB made repeated, substantial use of the correspondent banking services of New York banks. Between 2007 and 2011, approximately 30 used-car purchasers received over 3,400 wire transfers equaling over $247 million U.S. dollars.

944.    According to the U.S. Government, between January 2007 and January 2011, the Hassan Ayash Exchange participated in the money-laundering conspiracy by sending approximately $142 million U.S. dollars by wire transfer to the United States for the purpose of purchasing or shipping used cars.

945.    In the same period, the Ellissa Exchange participated in the money-laundering conspiracy by sending approximately $62 million U.S. dollars by wire transfer to the United States for the purpose of purchasing or shipping used cars.

946.    Of the approximately $204 million U.S. dollars wired by the exchanges to the United States, approximately 84 percent of the money originated from accounts held at LCB, showing the extent of LCB's involvement in the money laundering scheme.

947.    According to the U.S. Government, both the Hassan Ayash Exchange and LCB knew that these transactions were:

> [T]he proceeds of illegal activities and that the transfers were in furtherance of a scheme intended to conceal and disguise the true source, nature, ownership, and control of those proceeds, and to promote those illegal activities; and that *this money laundering scheme benefitted Hezbollah*. (Emphasis added.)

948.    Account holders other than the Hassan Ayash Exchange and Ellissa Exchange initiated additional wire transfers of over $59 million U.S. dollars from accounts at LCB to bank accounts in the United States for the purchase or shipping of used cars in furtherance of the money laundering conspiracy.

949.    Some of the individuals linked to Hezbollah who sent wire transfers into the United States for the purchase of used cars as part of the money laundering scheme include: Ali Salhab (believed by the U.S. Government to be a relative of Ossama Salhab); Khodor Fakih, a Hezbollah operative from Lebanon who worked in the car business in Cotonou; Muhammad Hassan Hammoud, a Hezbollah supporter from Lebanon who owned a shipping company in Cotonou; and Yussuf Sobhi Nehme, a self-proclaimed Hezbollah supporter.

950.    The car buyers in the United States used the money transferred from LCB via its New York correspondent banks to purchase used cars.

951.    The "Salhab Companies," which included, but were not limited to, STE Nomeco SARL, STE Monaco SARL, the Salhab Travel Agency and Cybamar Swiss, were used extensively by Hezbollah operatives in the money-laundering operation.

952.    The Salhab Companies provided cover to Hezbollah operatives travelling to the United States to engage in the purchase of used cars. Additionally, STE Nomeco SARL owned and operated used car lots in Benin, used for the re-sale of cars acquired in the United States; STE Marco SARL was a transportation company operating between Togo and Ghana; and Cybamar Swiss was a shipping company frequently used by the car buyers to transport the cars to Africa.

953.    The Salhab Companies were owned, operated or controlled by Oussama Salhab or his relatives and associates. Mr. Salhab was a Hezbollah operative who was born in the Bekaa Valley of Lebanon.

954.   He was heavily involved in the used car business in Togo and Benin and controlled a network of money couriers who have: (a) travelled to the United States to transport cash and to purchase cars for shipment to West Africa, and (b) transported millions of dollars in cash from West Africa to Lebanon.

955.   Mr. Salhab's involvement with Hezbollah was known to the U.S. Government, which denied him entry into the United States:

> On or about November 22, 2009, Salhab flew into the Detroit Metropolitan Airport on a flight from Beirut. During an interview with a U.S. Customs and Border Protection ("CBP") officer, Salhab stated that he was travelling to the United States for business on behalf of Cybamar Swiss. He had on his person a business card identifying him as the President of STE Marco SARL. During a border inspection of a fingerprint-encrypted laptop Salhab carried with him, CBP officers found, among other things, images of Hezbollah Secretary General Hassan Nasrallah; audio of the Hezbollah anthem; images of Hezbollah militants stomping on an Israeli flag; and movie files of executions, hangings, torture, and beheadings. Salhab claimed that the images were placed on his computer by an employee, Houssam Mehana. Salhab was allowed to withdraw his application for admission into the United States and departed the country."[37]

956.   As a result of the designation, the U.S. Government blocked $700,000 U.S. dollars held by JP Morgan Chase Bank NA belonging to the Hassan Ayash Exchange and the Ellissa Exchange. The funds were in the process of being wired through an account in New York to an account held in the name of the Hassan Ayash Exchange at LCB in Lebanon.

957.   In another money-laundering scheme, Abou Jaoude, Mr. Hamdoun, and Mr. Safa used LCB to wire large amounts of U.S. dollar-denominated funds through the Eurodollar market to buy consumer goods from Asian suppliers.

958.   According to the U.S. Government, Hezbollah derived financial support from these criminal activities, and LCB managers were complicit in the money laundering scheme.

---

[37]   *U.S. v. Lebanese Canadian Bank, et al.*, 11 Civ 9186, Verified Amended Complaint (Oct. 26, 2012).

959.   The electronic funds transfers passed through LCB's correspondent bank accounts in the following five New York banks: Bank of New York Mellon, Standard Chartered Bank, Wells Fargo Bank, JPMorgan Chase Bank, and Mashreq Bank.

960.   The consumer goods from Asia were shipped to Latin America and sold. The proceeds of the sales were then laundered through the Black-Market Peso Exchange.

961.   The Black-Market Peso Exchange is a mechanism to place substantial amounts of currency from U.S. narcotics sales into U.S. financial institutions to avoid detection. In simple terms, drug cartels sell drug-related, U.S.-based currency to black market peso exchangers in Latin America – especially in Colombia—who, in turn, place the currency into U.S. bank accounts. The exchangers then sell monetary instruments drawn on their bank accounts to Colombian importers who use them to purchase foreign goods.[38]

962.   Through these schemes, LCB provided funds and services to or for the benefit of Hezbollah and participated in a channel for laundering proceeds of narcotics trafficking and other unlawful activities, to generate profits, fees and commissions to be paid to Hezbollah operatives and supporters who were involved in the money laundering scheme.

### g.   LCB'S GAMBIAN SUBSIDIARY, PRIME BANK, WAS CO-OWNED BY AN INDIVIDUAL DESIGNATED BY THE U.S. GOVERNMENT FOR PROVIDING MATERIAL SUPPORT FOR HEZBOLLAH.

963.   LCB was the majority shareholder of Prime Bank Limited, a private commercial bank in Serrekunda, The Gambia.

---

[38]   The money-laundering system that employs the Black-Market Peso Exchange works as follows: Drug cartels export drugs to the United States, where they are sold for dollars. A drug cartel enters into a "contract" with a Black Market Peso Exchanger. Pursuant to this "contract," the cartel sells its U.S. dollars to the exchanger's U.S. agent. Once the U.S. dollars are delivered, the peso exchanger deposits the agreed upon equivalent (of U.S. dollars) in local currency (usually Colombian pesos) into the cartel's account in Latin America. The laundered drug dollars are introduced into the U.S. banking system through structured transactions, and the exchanger has a pool of laundered funds to sell to Latin American importers who use the dollars to purchase goods, such as from Asian suppliers. These goods are transported to Latin America and sold.

964.    Prime Bank was officially opened as a subsidiary of LCB in May 2009.

965.    The most important minority shareholder in Prime Bank was Muhammad Ibrahim Bazzi, a Lebanese national later designated an SDGT.

966.    As described above, the U.S. Department of the U.S. Department of the Treasury designated Mr. Bazzi an SDGT on May 17, 2018 for assisting in, sponsoring or providing financial, technological or material support for—or financial or other services to or in support of Hezbollah.

967.    Mr. Bazzi was designated for being one of Hezbollah's top financiers, as well as for his links to drug dealers and money laundering to fund terrorism.

968.    Bazzi reportedly has links to Ayman Joumaa's organization.

969.    In addition to providing millions of dollars to Hezbollah, Mr. Bazzi was a close associate of Yahya Jammeh, the then-President of The Gambia, who was identified on December 21, 2017, in the annex to EO 13818, which implemented the Global Magnitsky Human Rights Accountability Act (the "Magnitsky Act").[39] Mr. Jammeh appointed Mr. Bazzi as The Gambia's honorary Consul to Lebanon.

970.    Mr. Bazzi derived significant amounts of money from Gambian oil contracts, which he won by providing Mr. Jammeh with illegal goods and services.

971.    For example, Euro Africa Group, a company Mr. Bazzi controlled and in which he was the biggest shareholder, made payments in 2013 totaling $2.55 million U.S. dollars to a foundation Jammeh controlled.

972.    Euro Africa Group held exclusive rights to import fuel to The Gambia between 2008 and 2013 and held a fuel supply deal with the state-run utility. Euro Africa Group was designated as an SDGT on May 17, 2018.

---

[39]     The Magnitsky Act addresses human rights abuses on a global scale. It allows the U.S. Government to sanction corrupt government officials implicated in abuses anywhere in the world.

973. Mr. Bazzi, who has been described as "Jammeh's business surrogate," was also allegedly involved in the sale of Iranian weapons to Hezbollah. He coordinated the exchange on behalf of Mr. Jammeh; the weapons were stored at Kanilai Farms in Jammeh's home village, and Mr. Bazzi allegedly used Prime Bank, LCB's subsidiary, for the financing.

974. Mr. Bazzi has also maintained ties to Adham Tabaja and Ali Yussuf Charara, whom the U.S. Department of the U.S. Department of the Treasury designated as SDGTs for providing material support to Hezbollah on June 10, 2015, and January 7, 2016, respectively. Both Messrs. Tabaja and Charara are described above.

975. According to the U.S. Government, Mr. Bazzi provided funds to Mr. Tabaja, with whom he held a joint line of credit and worked closely with Abdallah Safieddine. In sum, Mr. Bazzi coordinated his activities with the co-leaders of Hezbollah's BAC.

976. The following diagram regarding Hezbollah's illicit financing networks was prepared by the U.S. Department of the U.S. Department of the Treasury:



977. Mr. Tabaja's uncle, Ahmad Ali Tabaja, was the general manager, chairman and a shareholder of Trust Compass Insurance SAL, which in turn was a shareholder of LCB.

### 3. SGBL HAS AIDED AND ABETTED HEZBOLLAH

978. In addition to Defendant SGBL acquiring the liabilities of LCB and being the legal successor-in-interest to LCB and its criminal conduct, SGBL has itself long provided material support to, and aided and abetted, Hezbollah.

979. SGBL has knowingly held accounts and provided financial services to Hezbollah's Martyrs Foundation through Atlas Holding SAL (detailed above).

980. SGBL has knowingly held accounts and provided financial services to Hezbollah's Al-Mabarrat Charitable Society.

981.    SGBL has knowingly held accounts and provided financial services to Al-Inmaa Engineering and Contracting, the prominent Hezbollah construction and investment arm headed by Adham Tabaja (an SDGT).

982.    SGBL has knowingly held accounts and provided financial services to Al-Saad Establishment for Trading of Eggs, an IRGC–QF front company with close ties to Hezbollah.

983.    SGBL has knowingly held accounts and provided financial services to the publisher of Hezbollah's *Baqiyat Allah* magazine, a Hezbollah-controlled company called Dbouk International for Printing and General Trading.

984.    SGBL has knowingly held accounts and provided financial services to Hoda for Touristic Services and Management Holding SAL, a company controlled by two senior Hezbollah financiers, Abbas Abdel Latif Fawaz and Ali Yussuf Charara (an SDGT).

985.    SGBL has knowingly held accounts and provided financial services to Fantasy World SARL which operates the well-known Fantasy World amusement park in Hezbollah's stronghold of Dahiyah in the southern suburbs of Beirut that was founded and operated by Adham Tabaja, co-chairman of Hezbollah's BAC.

986.    SGBL knows or consciously avoided knowing that these companies are part of Hezbollah and its financial arm, and willing assisted Hezbollah in its commercial enterprises.

**B.    FRANSABANK SAL**

987.    Defendant FRANSABANK SAL has knowingly maintained accounts for, and provided material support that aided and abetted several core Hezbollah-controlled "charities" that are widely and publicly associated with, the organization including:

     a.  IRSO, Cheiah Branch (a/k/a Al-Shiyah)
        Account number: 252010/69283021

     b.  Martyrs Foundation–Lebanon

Account number: 21-10-0360062-73

c. Wounded Association; Muasassat al-Jarha
Account number: 805458023.

988.    In addition, Defenant FRANSABANK also maintains accounts for, and provided material support that aided and abetted Compu House SARL, the Hezbollah-controlled technology importer, founded and majority owned by Sultan Khalifa As'ad, Deputy Chairman of the Executive Council for Municipal Affairs, former head of Hezbollah's Finance Unit and former director of Jihad al-Bina.

989.    In August 2006, NBC News reported that the Israeli government had bombed FRANSABANK's offices in Beirut "which they claim help Hezbollah receive and move money around the world."

990.    According to NBC News, "[t]he Fransabank General Manager tells NBC 'We have no relationship with Hezbollah or any other political party anywhere. We don't have any relation and we refuse to have one.'"[40]

991.    At the same time, FRANSABANK maintained accounts for multiple Hezbollah institutions as well a BAC-entity, Compu House SARL, controlled by the well-known, long-standing Hezbollah leader, Sultan Khalifa As'ad.

**C.     BLOM BANK SAL**

992.    As set forth below, Defendant BLOM BANK maintains accounts for a wide-spectrum of Hezbollah entities and operatives ranging from the nominally charitable, to money-laundering for narcotics traffickers to arms dealers:

- Al-Mabarrat Charitable Society–Lebanon;

---

[40]     *See* Adam Ciralsky and Lisa Myers, *Hezbollah Banks Under Attack in Lebanon* (NBC News, July 25, 2006), archived at https://web.archive.org/web/20060810204050/http://www.msnbc msn.com/id/14015377.

- Arch Consulting SARL;

- Ellissa Exchange Company SARL;

- Ovlas Trading SA;

- Spectrum Investment Group Holding SAL;

- Mustafa Reda Darwish Fawaz;

- Teltac World Wide Incorprated (Offshore) SAL; and

- Beton Plus SAL.

993.   Taken as a whole, this roster of customers includes four designated Hezbollah persons or companies and entities widely and openly known to be associated with and/or controlled by designated entities belonging to Hezbollah.

994.   Defendant BLOM BANK's roster of Hezbollah-controlled customers reflects the bank's extensive commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's world-wide operations.

995.   BLOM BANK maintained accounts for Al-Mabarrat Charitable Society–Lebanon and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this prominent and well-known Hezbollah organization, founded by Hezbollah's "spiritual leader" Sheikh Muhammad Hussein Fadlallah, who was designated a terrorist by the United States in 1995.

996.   Defendant BLOM BANK maintained accounts for Ellissa Exchange Company SARL (an SDNT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known front

for Hezbollah's narcotics trafficking network run by Ayman Joumaa.[41]

997. Defendant BLOM BANK maintained accounts for Arch Consulting SARL and provided material support that aided and abetted Hezbollah, through its role in providing financial services to this prominent and well-known front for Hezbollah's construction arm, Jihad al-Bina (SDGT).

998. Defendant BLOM BANK maintained accounts for Ovlas Trading SA (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Tajideen Network of companies operated on behalf of Hezbollah's Business Affairs Component.

999. Defendant BLOM BANK maintained accounts for Spectrum Investment Group Holding SAL (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Charara Network of companies operated on behalf of Hezbollah's Business Affairs Component.

1000. Defendant BLOM BANK maintained accounts for Mustafa Reda Darwish Fawaz, (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known member of Hezbollah's Islamic Jihad Organization, who has supported the organization's communications, surveillance, and arms dealing activities in West Africa.

1001. Defendant BLOM BANK maintained accounts for Teltac World Wide Incorporated (Offshore) SAL and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this well-known part of the Charara

---

[41] BLOM Bank was identified by the U.S. Government as one of four Lebanese banks whose New York correspondent banks were used by Lebanese exchange houses to launder money for Hezbollah.

Network of companies operated on behalf of Hezbollah's Business Affairs Component.

1002.  Defendant BLOM BANK maintained accounts for Beton Plus SAL and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this part of Hezbollah's Business Affairs Component, co-founded by Salah Abd al-Rauf Azz al-Din, sometimes referred to as the Lebanese "Bernie Madoff," to whom the organization transferred the large sums it received from Iran in order to invest it in Europe and America.

## D.  MIDDLE EAST AFRICA BANK SAL ("MEAB")

1003.  Defendant MEAB was co-founded and -chaired—until June 2015—by Kassem Hejeij who stepped down as a result of being designated by the U.S. Department of the U.S. Department of the Treasury as an SDGT for his direct links to Hezbollah.

1004.  The bank was established to serve the needs of the Hejeij brothers, who owned a large construction business in Africa.

1005.  According to the U.S. Department of the U.S. Department of the Treasury:

> Hejeij is a Lebanese businessman that maintains direct ties to Hizballah organizational elements. In addition to his support to Adham Tabaja and his affiliated companies in Iraq, Hejeij has helped open bank accounts for Hizballah in Lebanon and provided credit to Hizballah procurement companies. Hejeij has also invested in infrastructure that Hizballah uses in both Lebanon and Iraq.

1006.  In 2007, Muhammad Bitar served as the manager of MEAB's Tyre Branch, where he attended a dinner in the honor of Iranian Authority for the Rehabilitation of Lebanon ("ICRL"), which took place in December 2007.

1007.  Among those in attendance were Hezbollah operatives Sheik Faez Alawiya (municipal work official), Sheik Haydar Daqmaq (media official) and Murtada Hashem (public relation official) as well as IRGC General Hassan Shateri (a/k/a Khoshnevis)—the director of

ICRL.[42]

1008. MEAB was involved in Hezbollah's conspiracy to launder narcotics trafficking proceeds through the sale of used cars in Africa.

1009. Between approximately January 2007 and early 2011, MEAB (along with three other Lebanesse banks), through its correspondent bank account(s) with U.S. financial institutions located in New York helped knowingly move tens of millions of dollars on behalf of Hezbollah that were ultimately laundered by money exchange businesses in Lebanon.

1010. Defendant MEAB has also knowingly held accounts (including Account No. 004-002-036-100250-012) and provided financial services to the Imam Khomenei Relief Foundation–Lebanon (SDGT).

1011. Defendant MEAB also maintained (and maintains) accounts and provided financial services to Al-Inmaa Engineering and Contracting, the prominent Hezbollah construction and investment arm headed by Adham Tabaja (an SDGT).

1012. Defendant MEAB has also knowingly held accounts and provided financial services to Fantasy World SARL which operates the well-known Fantasy World amusement park in Hezbollah's stronghold of Dahiyah in the southern suburbs of Beirut that was founded and operated by Adham Tabaja, co-chairman of Hezbollah's BAC.

1013. Moreover, a public campaign to support Hezbollah was announced on June 16, 2007 asking donors to contribute the money into a Hezbollah-owned bank account at Defendant MEAB, Account No. 10680.

**E.  BYBLOS BANK SAL**

1014. As set forth below, Defendant BYBLOS BANK SAL maintains accounts for a

---

[42]     Muhammad Bitar went on to serve as Regional Manager of Defendant LEBANON AND GULF BANK.

wide-spectrum of Hezbollah entities and operatives ranging from the core fundraising arm of Hezbollah's terror apparatus to a front for U.S. designated "social welfare" arm to various nodes within Hezbollah's Business Affairs Component:

- Islamic Resistance Support Organization;

- Al-Amana SARL;

- Global Touristic Services SAL (a/k/a GTS);

- Société Orientale Libanaise d'Investissement et Développement SAL (a/k/a Solid);

- Afrimex (Offshore) SAL;

- Amigo Travel and Transport SAL; and

- Medical Equipment and Drugs International Corporation SAL (a/k/a MEDIC).

1015.  Taken as a whole, this roster of customers includes the most infamous designated Hezbollah organization and many other key elements of its Business Affairs Component.

1016.  BYBLOS BANK's roster of Hezbollah-controlled customers reflects the Bank's extensive commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's world-wide operations.

1017.  Defendant BYBLOS BANK maintained accounts for the benefit of Islamic Resistance Support Organization and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this prominent and well-known Hezbollah organization.[43]

1018.  Defendant BYBLOS BANK maintained (and maintains) accounts for Al-Amana

---

[43]  BYBLOS's account for the "Resistance" at its Harel Hreik branch was broadcast openly on *Al-Manar*.

SARL, a company that owns gas stations in Lebanon (nominally owned by Atlas Holding) on behalf of the U.S.-designated Martyrs Foundation–Lebanon.

1019.   At all relevant time BYBLOS BANK knew (and knows) that Al-Amana SARL was (and is) a Hezbollah-controlled entity.

1020.   The company is owned by Atlas Holding—the well-known "investment arm" of the U.S.-designated Martyrs Foundation–Lebanon.

1021.   Its management includes prominent Hezbollah operatives Muhammad Ali Bashir, Shawki Muhammad Shafiq Nur El Din, Qassem Muhammad Ali Bazzi and Osama Muhammad Aliq.

1022.   Moreover, the company was set up by one of Hezbollah's principal attorneys, Ali Hassan Berro.

1023.   Defendant BYBLOS BANK maintained (and maintains) accounts for Global Touristic Services SAL (a/k/a GTS), a company nominally owned by Atlas Holding on behalf of the U.S.-designated Martyrs Foundation–Lebanon.

1024.   At all relevant time BYBLOS BANK knew (and knows) that Global Touristic Services SAL (a/k/a GTS) was (and is) a Hezbollah-controlled entity.

1025.   The company is also owned by Atlas Holding.

1026.   Its management includes prominent Hezbollah operatives Muhammad Ali Bashir, Shawki Muhammad Shafiq Nur El Din, Qassem Muhammad Ali Bazzi and Jihad Muhammad Qansu, an SDGT, who is part of Adham Tabaja's Network.

1027.   Moreover, the company was set up by one of Hezbollah's principal attorneys, Ali Hassan Berro.

1028.   Defendant BYBLOS BANK maintained (and maintains) accounts for Afrimex

(Offshore) SAL, a company founded by Yussuf Muhammad Tajideen (brother of two Tajideens who are designated as SDGTs).

1029. Afrimex (Offshore) SAL is part of the Tajideen family's network and Hezbollah's Business Affairs Component.

1030. Board members include Yussuf Muhammad Tajideen's sister-in-law, Ibrahim Muhammad Tajideen's wife, Hana Abdelkarim Jawad, and his brother-in-law, Hussein Tawfiq Sayegh, the husband of Fatimah Tajideen.

1031. Although the nominal ownership of the company is in the hands of undesignated members of the Tajideen family, because of the family's preeminent status as a leading Hezbollah family coupled with the fact that its lawyer and accountant are Amir Afif Abu Khalil and Shawqi Ra'if Abu Khalil – two individuals associated with multiple Hezbollah companies - it would have been obvious to Defendant BYBLOS BANK that they were aiding and abetting the Tajideen family and, by extension, Hezbollah by helping them operate their businesses and evade sanctions directed against the Tajideen Network and Hezbollah.

1032. The company was also set up by the same attorney / auditor – Shawqi Ra'if Abu Khalil – who was involved in setting up other (designated) Hezbollah / Tajideen Network companies such as Ovlas Trading SA.

1033. Defendant BYBLOS BANK maintained (and maintains) accounts for Amigo Travel and Transport SAL, a company that is part of Adham Tabaja's network of companies and Hezbollah's Business Affairs Component.

1034. The company management includes Jihad Muhammad Qansu, a designated SDGT identified as part of the Tabaja Network, and was co-founded by Khadir Ali Abi Haidar, who is also a director of the U.S.-designated Car Care Center (a/k/a Mikalab SARL), which is also part

of Adham Tabaja's network of companies and Hezbollah's Business Affairs Component.

1035. Moreover, the company was set up by an attorney, Nabil Kamil al-Akhras, who set up other companies controlled by Jihad Muhammad Qansu, including Al-Ansab Lebanese for International Trading (Offshore) SAL (a/k/a ALIT), Golden Fish (Offshore) SAL, and Mega Investment Group (Offshore) SAL (a/k/a MIG).

1036. Defendant BYBLOS BANK maintained (and maintains) accounts for Société Orientale Libanaise d'Investissement et Développement SAL (a/k/a Solid), a company that it knows is part of Hezbollah's Business Affairs Component.

1037. Defendant BYBLOS BANK knows that it is aiding Hezbollah by maintaining accounts for Société Orientale Libanaise d'Investissement et Développement SAL because the company was founded by Atlas Holding—the well-known "investment arm" of the U.S. designated Martyrs Foundation–Lebanon.

1038. Its management includes prominent Hezbollah operatives, including Hassan Ali Tajideen, the son of Ali Tajideen, a U.S.-designated Hezbollah financier.

1039. Hassan Ali Tajideen is currently executive manager of Tajco (an SDGT holding company through which Hassan's father and uncles launder and transfer money for Hezbollah.) and shareholder in Tajco SAE. Hassan's mother, Nur al-Ain Muhammad Ali Atwi, is also a shareholder in the company. She is the wife of Ali Tajideen, who was named an SDGT on December 9, 2010.

1040. Jihad Muhammad Qansu, an SDGT who is part of Adham Tabaja's Network, is listed as the company's auditor, and the company was set up by one of Hezbollah's principal attorneys, Ali Hassan Berro.

1041. Defendant BYBLOS BANK maintained (and maintains) accounts for Medical

Equipment and Drugs International Corporation SAL (a/k/a MEDIC), a Hezbollah-controlled company established in 2013 to sell pharmaceuticals and other medical products.

1042.  At all relevant time BYBLOS BANK knew (and knows) that Medical Equipment and Drugs International Corporation SAL was (and is) a Hezbollah-controlled entity.

1043.  The company is owned by Atlas Holding—the well-known "investment arm" of the U.S.-designated Martyrs Foundation–Lebanon which was designated seven years before the company was established.

1044.  Its management includes Qassem Muhammad Ali Bazzi—just as the other Atlas Holding portfolio companies do.

1045.  BYBLOS BANK's roster of Hezbollah-controlled customers reflects the bank's extensive commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's world-wide operations.

1046.  It also demonstrates the interconnectedness of Hezbollah's Business Affairs Component.   BYBLOS BANK's roster of Hezbollah-controlled customers includes companies with overlapping ownership and management structures that include representatives of the Martyrs Foundation–Lebanon, the Tajideen Network and the Tabaja Network – all working on behalf of the organization, with BYBLOS BANK providing its access to the banking sector and USD-clearing to ensure that the Business Affairs Component can carry out its mission, generate revenue for the organization and navigate American sanctions.

F.      **BANK AUDI SAL**

1047.  As set forth below, Defendant BANK AUDI SAL maintains accounts for a wide-spectrum of Hezbollah entities ranging from various nodes within Hezbollah's Business Affairs

Component to sub-divisions of Hezbollah's "social welfare" arm:

- Ovlas Trading (Offshore) SAL;

- Ovlas Trading SA;

- Spectrum International Investment Holding SAL;

- Spectrum Investment Group Holding SAL;

- Teltac World Wide Incorporated (Offshore) SAL;

- Al-Hadi Institution; and

- Medical Equipment and Drugs International Corporation SAL (a/k/a MEDIC).

1048.   Defendant BANK AUDI maintained (and maintains) accounts for Ovlas Trading (Offshore) SAL, which was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010.

1049.   The company is controlled by the Tajideen family—part of Hezbollah's Business Affairs Component.

1050.   The company's chairman, Ahmad Hassan Tajideen, is the son of Hassan Muhammad Abd al-Hassan Tajideen, the late older brother of Ali and Hussein Tajideen – both designated SDGTs.

1051.   Hassan Muhammad Abd al-Hassan Tajideen founded the company, and his wife remains on the board of directors after he died in a 2010 plane crash.

1052.   The company's auditor is Shawqi Ra'if Abu Khalil, who works at the Tajideen family's primary accounting/auditing firm.

1053.   The company's lawyer is Amir Afif Abu Khalil, the Tajideen family's primary attorney.

1054.   Defendant BANK AUDI maintained (and maintains) accounts for Ovlas Trading

SA, which was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010.

1055.   The company is controlled by the Tajideen family—part of Hezbollah's Business Affairs Component.

1056.   Hassan Muhammad Abd al-Hassan Tajideen founded the company, but after his death in 2010, the company is now owned by his brother, Qassem Tajideen (an SDGT since 2009), according to the U.S. Department of the U.S. Department of the Treasury.

1057.   Defendant BANK AUDI maintained (and maintains) accounts for Spectrum Investment Group Holding SAL (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Charara network of companies operated on behalf of Hezbollah's Business Affairs Component. Charara's Network has been described by the U.S. Government as "a key Hizballah support network."

1058.   Defendant BANK AUDI maintained (and maintains) accounts for Spectrum Investment Group Holding SAL

1059.   Defendant BANK AUDI maintained (and maintains) accounts for Teltac World Wide Inc. (Offshore) SAL and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Charara network of companies operated on behalf of Hezbollah's Business Affairs Component.

1060.   Teltac World Wide was founded by Ali Ibrahim Charara who co-founded the U.S. designated SDGT Spectrum Investment Group Holding SAL.

1061.   Defendant BANK AUDI maintained (and maintains) accounts for Al-Hadi

Institution, a charitable institution for disabled children owned and operated by Al-Mabarrat.

1062. While the institution provides genuine services to disabled children, it does so as part of Hezbollah's successful effort to galvanize support for its core mission and political program, i.e. Hezbollah sees Al-Mabarrat, the Martyrs Foundation and other outreach institutions as part of its wider efforts to proselytize and harden its domestic support for its terrorist program.

1063. Defendant BANK AUDI maintained (and maintains) accounts for Medical Equipment and Drugs International Corporation SAL (MEDIC), a Hezbollah-controlled company established in 2013 to sell pharmaceuticals and other medical products.

1064. At all relevant time BANK AUDI knew (and knows) that Medical Equipment and Drugs International Corporation SAL (MEDIC) was (and is) a Hezbollah-controlled entity.

1065. The company is owned by Atlas Holding—the well-known "investment arm" of the U.S.-designated Martyrs Foundation–Lebanon, which was designated seven years before the company was established.

1066. Its management includes Qassem Muhammad Ali Bazzi—just as the other Atlas Holding portfolio companies do.

1067. BANK AUDI's roster of Hezbollah-controlled customers reflects the bank's commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's world-wide operations.

G.    **LEBANON AND GULF BANK**

1068. As set forth below, Defendant LEBANON AND GULF BANK maintains accounts for the benefit of a wide-spectrum of Hezbollah entities ranging from the most infamous arm of Hezbollah's "social welfare" apparatus to various nodes within Hezbollah's Business Affairs

Component run by (a) the Martyrs Foundation (SDGT), (b) companies controlled by Adham Tabaja (SDGT), (c) the Tajideen family, and (d) the Charara Network:

- Islamic Resistance Support Organization;

- Al-Amana SARL;

- Amana Plus Company;

- Shahed Pharm Drugstore SARL (discussed above);

- City Pharma SARL;

- Al-Inmaa Engineering and Contracting;

- Ovlas Trading (Offshore) SAL;

- Ovlas Trading SA; and

- Spectrum Investment Group Holding SAL.

1069.   Defendant LEBANON AND GULF BANK has maintained accounts for and provided material support that aided and abetted the Hezbollah-controlled "charity" widely and publicly associated with the organization: Islamic Resistance Support Organization (IRSO), bank account numbers: 202-336254 and 202-329665 (nominally held by the al-Ma'rifa Society and al-Bushra Societies respectively—expressly and publicly soliciting donations for the benefit of IRSO).

1070.   Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for Al-Amana SARL and has provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Martyrs Foundation–Lebanon network of companies operated on behalf of Hezbollah's Business Affairs Component.

1071.   Al-Amana SARL operates 12 gas stations under the name of AL AMANA in

209

Beirut, South Lebanon and the Bekaa Valley in Lebanon.

1072.  The company is owned by the Martyrs Foundation–Lebanon (an SDGT) through Atlas Holding SAL but 2 percent of the shares are owned by Hezbollah operative and Al-Rasoul al-Azam Hospital CEO, Muhammad Ali Bashir, and Martyrs Foundation–Lebanon Director Shawki Nur al-Din.

1073.  Bashir is the company's manager, and Hezbollah operative Qassem Muhammad Ali Bazzi serves as a member of the board.

1074.  Al-Amana SARL was incorporated by one of Hezbollah's lawyers, Ali Hassan Berro.

1075.  Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for the related company (with the same founders and management), Amana Plus Company and has provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Martyrs Foundation–Lebanon network of companies operated on behalf of Hezbollah's Business Affairs Component.

1076.  Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for Shahed Pharm Drugstore SARL (with largely the same Hezbollah founders and management as Al-Amana SARL and Amana Plus Company) and has provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Martyrs Foundation–Lebanon network of companies operated on behalf of Hezbollah's Business Affairs Component.

1077.  Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for City Pharma (with largely the same Hezbollah founders and management as Al-Amana SARL,

Amana Plus Company and Shahed Pharm Drugstore SARL) and has provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Martyrs Foundation–Lebanon network of companies operated on behalf of Hezbollah's Business Affairs Component.

1078. City Pharma SARL was one of several Lebanese companies controlled by Hezbollah that was caught importing counterfeit medications from Southeast Asia and transferring them to factories in Europe where they were officially labeled as having been produced in Europe.

1079. The licenses of the 15 pharmacies were temporarily revoked but the counterfeit medications had reached hospitals, clinics, and pharmacies in Lebanon, where they had been prescribed to the public.

1080. Defendant LEBANON AND GULF BANK maintained (and maintains) accounts and provided vital financial services to Al-Inmaa Engineering and Contracting (SDGT), the prominent Hezbollah construction and investment arm headed by Adham Tabaja (an SDGT).

1081. Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for Ovlas Trading (Offshore) SAL which was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010.

1082. The company is controlled by the Tajideen family—part of Hezbollah's Business Affairs Component.

1083. The company's chairman, Ahmad Hassan Tajideen, is the son of Hassan Muhammad Abd al-Hassan Tajideen, the late older brother of Ali and Hussein Tajideen—both designated SDGTs.

1084. Hassan Muhammad Abd al-Hassan Tajideen founded the company, and his wife remains on the board of directors after he died in the 2010 plane crash.

1085.   The company's auditor is Shawqi Ra'if Abu Khalil—who works at the Tajideen family's primary accounting/auditing firm.

1086.   The company's lawyer is Amir Afif Abu Khalil—the Tajideen family's primary attorney.

1087.   Defendant LEBANON AND GULF BANK maintained accounts for Ovlas Trading SA, which was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010.

1088.   The company is controlled by the Tajideen family—part of Hezbollah's Business Affairs Component.

1089.   Hassan Muhammad Abd al-Hassan Tajideen founded the company, but after his death in 2010, the company is now owned by his brother, Qassem Tajideen (an SDGT since 2009), according to the U.S. Department of the U.S. Department of the Treasury.

1090.   Defendant LEBANON AND GULF BANK maintained (and maintains) accounts for Spectrum Investment Group Holding SAL (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known part of the Charara network of companies operated on behalf of Hezbollah's Business Affairs Component.

1091.   Mr. Charara's Network has been described by the U.S. Government as "a key Hizballah support network."

1092.   LEBANON AND GULF BANK's roster of Hezbollah-controlled customers reflects the Bank's extensive commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's

world-wide operations.

### H.  BANQUE LIBANO-FRANCAISE SAL

1093.  Defendant BANQUE LIBANO-FRANCAISE SAL has maintained accounts for and provided material support that aided and abetted the Hezbollah-controlled "charity" widely and publicly associated with the organization: Islamic Resistance Support Organization (IRSO) – Account numbers: 657409.17; 657469.171.

1094.  Defendant BANQUE LIBANO-FRANCAISE SAL maintained (and maintains) accounts for Ovlas Trading SA, which was designated by the U.S. Department of the U.S. Department of the Treasury on December 9, 2010.

1095.  The company is controlled by the Tajideen family—part of Hezbollah's Business Affairs Component.

1096.  Hassan Muhammad Abd al-Hassan Tajideen founded the company, but after his death in 2010, the company is now owned by his brother, Qassem Tajideen (an SDGT since 2009), according to the U.S. Department of the U.S. Department of the Treasury.

1097.  Defendant BANQUE LIBANO-FRANCAISE SAL has knowingly held accounts and provided vital financial services to Hoda for Touristic Services and Management Holding SAL, a company controlled by two senior Hezbollah financiers, Abbas Abdel Latif Fawaz and Ali Yussuf Charara (an SDGT).

1098.  Defendant BANQUE LIBANO-FRANCAISE SAL has knowingly held accounts and provided vital financial services to Al-Inmaa Engineering and Contracting (SDGT), the prominent Hezbollah construction and investment arm headed by Adham Tabaja (an SDGT).

1099.  Defendant BANQUE LIBANO-FRANCAISE SAL has knowingly held accounts and provided vital financial services to REEM Pharmaceutical SAL a designated SDGT since

213

2017, owned by Muhammad Abd-al-Amir Farhat, a Hezbollah operative with close ties to the IRGC–QF.

1100.  BANQUE LIBANO-FRANCAISE's roster of Hezbollah-controlled customers reflects the Bank's extensive commitment to substantially assist Hezbollah's operations by providing financial services, including critical access to U.S. dollar-clearing, the U.S. and international financial systems and essential means to evade U.S. efforts to confront Hezbollah's world-wide operations.

## I.   BANK OF BEIRUT SAL

1101.  Defendant BANK OF BEIRUT SAL has maintained accounts for and provided material support that aided and abetted Hezbollah's BAC.

1102.  Defendant BANK OF BEIRUT maintained an account for Mustafa Reda Darwish Fawaz (an SDGT) and provided material support that aided and abetted Hezbollah, through its role in knowingly providing financial services to this U.S.-designated, prominent and well-known member of Hezbollah's Islamic Jihad Organization, who has supported the organization's communications, surveillance, and arms dealing activities in West Africa.

1103.  Defendant BANK OF BEIRUT also maintains accounts for and provided material support that aided and abetted Compu House SARL, the Hezbollah-controlled technology importer, founded and majority owned by Sultan Khalifa As'ad, Deputy Chairman of the Executive Council for Municipal Affairs, former head of Hezbollah's Finance Unit and former director of Jihad al-Bina.

1104.  Defendant BANK OF BEIRUT has also knowingly held accounts and provided vital financial services to Medical Equipment and Drugs International Corporation SAL MEDIC, another entity that is part of Hezbollah's network of pharmaceutical companies. Although the

company was established after the period relevant to this action, because it is owned by Atlas Holding SAL – i.e. Martyrs Foundation–Lebanon – BANK OF BEIRUT's willingness to provide material support to one of Hezbollah's most prominent organizations in recent years confirms that BANK OF BEIRUT continues to provide material support to Hezbollah even when its customers' ties to Hezbollah are glaringly obvious.

### J.    BANK OF BEIRUT AND THE ARAB COUNTRIES

1105.   Defendant BANK OF BEIRUT AND THE ARAB COUNTRIES ("BBAC") has maintained accounts for and provided material support that aided and abetted Hezbollah's BAC.

1106.   BBAC has knowingly held accounts and provided vital financial services to Al-Inmaa Engineering and Contracting, a designated SDGT controlled by Adham Tabaja, the prominent Hezbollah financier.

1107.   BBAC has knowingly held accounts and provided vital financial services to Ovlas Trading SA, the Lebanese arm of the Tajideen family network of companies.

1108.   BBAC has knowingly held accounts and provided vital financial services to Hyram Maritime SAL, part of the Tajideen family network of companies.

1109.   BBAC has knowingly held accounts and provided vital financial services to Vatech SARL, an SDGT controlled by Fadi Hussein Serhan (also an SDGT).

1110.   Serhan is a Hezbollah procurement agent who serves as the general manager of Vatech SARL, which was used to purchase sensitive technology and equipment for Hezbollah.

1111.   Serhan has purchased unmanned aerial vehicles (UAVs) and accessories, and various electronic equipment from companies in the United States, Europe, Asia, and the Middle East.

1112.   BBAC has knowingly held accounts and provided vital financial services to Teltac

World Wide Incorporated (Offshore) SAL, headed by Ali Ibrahim Charara who serves as its chairman and CEO.

1113.   Ali Ibrahim Charara is also a Co-Founder of Spectrum Investment Group Holding SAL, the U.S.-designated company led by Hezbollah financier, Ali Yussuf Charara (also an SDGT).

### K.   JAMAL TRUST BANK SAL

1114.   Defendant JAMAL TRUST BANK SAL has maintained accounts for and provided material support that aided and abetted the Hezbollah-controlled "charity" widely and publicly associated with Hezbollah's Islamic Resistance Support Organization ("IRSO").

1115.   IRSO has openly advertised and solicited donations published with its JAMAL TRUST BANK account 140/028355.28/0/5 at its branch in Ghobeiry (Hezbollah's stronghold in the southern suburbs of Beirut).

1116.   Defendant JAMAL TRUST BANK has knowingly held accounts and provided vital financial services to Car Escort Services (Offshore) SAL, the prominent Hezbollah automotive company which is itself an SDGT and is owned by three prominent members of Hezbollah's BAC, Ali Muhammad Kharrubi, Ali Yussuf Charara and Muhammad Ibrahim Bazzi – all designated by the U.S. Department of the Treasury.

1117.   Defendant JAMAL TRUST BANK has knowingly held accounts and provided vital financial services to Spectrum International Investment Holding SAL and Spectrum Investment Group Holding SAL—both designated SDGTs and both controlled by well-known Hezbollah financier and BAC leader, Ali Charara.

216

1118.   Defendant JAMAL TRUST BANK has knowingly held accounts and provided vital financial services to New All Pharma SARL, part of Hezbollah's network of pharmaceutical companies.

1119.   Defendant JAMAL TRUST BANK has also knowingly held accounts and provided vital financial services to Medical Equipment and Drugs International Corporation SAL MEDIC, another entity that is part of Hezbollah's network of pharmaceutical companies. Although the company was established after the period relevant to this action, because it is owned by Atlas Holding SAL – i.e. Martyrs Foundation–Lebanon – JAMAL TRUST BANK's willingness to provide material support to one of Hezbollah's most prominent organizations in recent years confirms that JAMAL TRUST BANK continues to provide material support to Hezbollah even when its customers' ties to it are glaringly obvious.

## XII.   THE PLAINTIFFS

### 1.   THE MAY 3, 2005 ATTACK – BAGHDAD

**The Bartlett Family**

1120.   Plaintiff Robert Bartlett is a citizen of the United States and domiciled in the State of Virginia.

1121.   On May 3, 2005, Robert Bartlett, then 31, was serving in the U.S. military in Iraq.

1122.   He was driving in a convoy when an EFP emplaced by Special Groups struck his vehicle.

1123.   The weapon used to injure Mr. Bartlett was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1124.   As a result of the attack, part of Mr. Bartlett's head was severed.

1125.   He also suffered third-degree burns on his neck, face and hands; internal bleeding; and a collapsed lung.

1126.   Mr. Bartlett has undergone multiple surgeries, including plastic surgery on his head and his bottom lip.

1127.   Mr. Bartlett nearly died on several occasions following the attack and was significantly physically impaired for several years following the attack.

1128.   Mr. Bartlett suffers from PTSD and has constant nightmares.

1129.   He has participated in group therapy to treat the emotional injuries he sustained as a result of the attack.

1130.   As a result of the attack, and the injuries he suffered, Plaintiff Robert Bartlett has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1131.   Plaintiff Terrel Charles Bartlett is a citizen of the United States and domiciled in the State of Arizona. He is the father of Robert Bartlett.

1132.   Plaintiff Linda Jones is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Robert Bartlett.

1133.   Plaintiff Shawn Bartlett is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Robert Bartlett.

1134.   As a result of the attack, and the injuries Robert Bartlett suffered, Plaintiffs Terrel Charles Bartlett, Linda Jones and Shawn Bartlett have experienced severe mental anguish and extreme emotional pain and suffering.

## 2.      THE JANUARY 12, 2004 ATTACK – BAGHDAD

**The Crockett Family**

1135.   Ricky Leon Crockett was a citizen of the United States and domiciled in the State

of Georgia.

1136.   On January 12, 2004, Ricky Leon Crockett, then 37, was serving in the U.S. military in Iraq when an IED emplaced by JAM terror operatives detonated near the vehicle.

1137.   Ricky Leon Crockett died from penetrating shrapnel injuries he sustained in the explosion.

1138.   The terror cell that emplaced the IED that killed Ricky Leon Crockett was trained by Hezbollah and funded and armed by the IRGC-QF.

1139.   Plaintiff Maxine E. Crockett is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Ricky Leon Crockett.

1140.   Plaintiff Maxine E. Crockett brings an action individually and on behalf of the Estate of Ricky Leon Crockett, as its legal representative.

1141.   Plaintiff Marvise L. Crockett is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Ricky Leon Crockett.

1142.   As a result of the attack, and the death of Ricky Leon Crockett, Plaintiffs Maxine E. Crockett and Marvise L. Crockett have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 3.   THE APRIL 4, 2004 ATTACK – BAGHDAD

**The Arsiaga Family**

1143.   Robert R. Arsiaga was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

1144.   On April 4, 2004, Robert R. Arsiaga, aged 25, was serving in the United States military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled

grenades and small-arms fire.

1145.   Robert R. Arsiaga was killed in the attack.

1146.   The terror cell that emplaced the IED that killed Robert R. Arsiaga was trained by Hezbollah and funded and armed by the IRGC-QF.

1147.   Plaintiff Tracie Arsiaga is a citizen of the United States and domiciled in the State of Texas. She is the widow of Robert R. Arsiaga.

1148.   Plaintiff Tracie Arsiaga brings an action individually and on behalf of the Estate of Robert R. Arsiaga, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

1149.   Plaintiff Sylvia Macias is a citizen of the United States and domiciled in the State of Texas.  She is the mother of Robert R. Arsiaga.

1150.   Plaintiff Gilbert Arsiaga, Jr. is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

1151.   Plaintiff George Arsiaga is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

1152.   Plaintiff Matthew Arsiaga is a citizen of the United States and domiciled in the State of Texas.  He is the brother of Robert R. Arsiaga.

1153.   Plaintiff Angel Munoz is a citizen of the United States and domiciled in the State of Texas.  She is the sister of Robert R. Arsiaga.

1154.   Plaintiff Robi Ann Galindo is a citizen of the United States and domiciled in the State of Texas.  She is the sister of Robert R. Arsiaga.

1155.   Jeremy Arsiaga was a citizen of the United States at the time of the death of Robert R. Arsiaga. He was the brother of Robert R. Arsiaga. Jeremy Arsiaga died on September 4, 2015.

1156.   Patricia Arsiaga is the surviving widow of Jeremy Arsiaga. Patricia Arsiaga brings an action on behalf of the Estate of Jeremy Arsiaga.

1157.   As a result of the attack, and the death of Robert R. Arsiaga, the late Jeremy Arsiaga experienced, and Plaintiffs Tracie Arsiaga, Sylvia Macias, Gilbert Arsiaga, Jr., George Arsiaga, Matthew Arsiaga, Angel Munoz and Robi Ann Galindo have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

**The Cason Family**

1158.   Ahmed A. Cason was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

1159.   On April 4, 2004, Ahmed A. Cason, aged 24, was serving in the United States military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled grenades and small-arms fire.

1160.   Ahmed A. Cason was killed in the attack.

1161.   The terror cell that emplaced the IED that killed Ahmed A. Cason was trained by Hezbollah and funded and armed by the IRGC-QF.

1162.   Plaintiff Cedric Hunt, Sr. is a citizen of the United States and domiciled in the State of Alabama. He is the step-father of Ahmed A. Cason.

1163.   As a result of the attack, and the death of Ahmed A. Cason, Plaintiff Cedric Hunt, Sr. has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his step-son's society, companionship, comfort, advice and counsel.

**The Greenwood Family**

1164.   Plaintiff Steven Greenwood is a citizen of the United States and domiciled in the

State of Texas.

1165.  On April 4, 2004, Steven Greenwood, then 20, was serving in the United States military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled grenades and small-arms fire.

1166.  The terror cell that emplaced the IED that injured Steven Greenwood was trained by Hezbollah and funded and armed by the IRGC-QF.

1167.  As a result of the attack, Mr. Greenwood suffered shrapnel wounds to his wrist which caused nerve damage.

1168.  He was initially treated in Iraq for his injuries, but the nerve damage could not be treated there. Approximately one week after the attack, he was sent to Landstuhl, Germany where he was further treated for his wounds.

1169.  He was then sent back to the U.S. where he had surgery to remove the shrapnel.

1170.  He also suffers from Post-Traumatic Stress Disorder ("PTSD") and depression.

1171.  He has sought treatment for his wounds, PTSD and depression.

1172.  As a result of the attack, and the injuries he suffered, Plaintiff Steven Greenwood has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Hiller Family**

1173.  Stephen Dustin Hiller was a citizen of the United States and domiciled in the State of Alabama.

1174.  On April 4, 2004, Stephen Dustin Hiller, aged 25, was serving in the U.S. military in Iraq when his unit was engaged in small arms fire with members of JAM in Sadr City, Iraq.

1175.  Stephen Dustin Hiller was killed by JAM rocket-propelled grenade ("RPG") fire while engaged in the exchange of gunfire with members of JAM.

1176.   The terror cell that fired at Stephen Dustin Hiller was trained by Hezbollah and funded and armed by the IRGC-QF.

1177.   Plaintiff Stephen W. Hiller is a citizen of the United States and domiciled in the State of Alabama. He is the father of Stephen Dustin Hiller.

1178.   Plaintiff Stephen W. Hiller brings an action individually and behalf of the Estate of Stephen Dustin Hiller, as its legal representative.

1179.   As a result of the attack, and the death of Stephen Dustin Hiller, Plaintiff Stephen W. Hiller has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

### 4.   THE APRIL 9, 2004 ATTACK – BAGHDAD

**The Church Family**

1180.   Plaintiff Jeremy Church is a citizen of the United States and domiciled in the State of Missouri.

1181.   On April 9, 2004, Jeremy Church, then 26, was serving in the U.S. military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled grenades and small-arms fire.

1182.   He was driving in a convoy when an IED and an RPG struck his vehicle.

1183.   The terror cell that executed the attack in which Jeremy Church was injured was trained by Hezbollah and funded and armed by the IRGC-QF.

1184.   Mr. Church suffers from hearing issues as a result of the rocket fire and detonation of the IED. He continues to experience ringing in his ears.

1185.   He has experienced severe headaches.

1186.   Mr. Church has been diagnosed with PTSD.

223

1187. He has sought treatment, including counseling.

1188. He has been prescribed anti-anxiety medications, anti-depressants, and medication to address sleep-related issues.

1189. As a result of the attack, and the injuries he suffered, Plaintiff Jeremy Church has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1190. Plaintiff Sandra Hankins is a citizen of the United States and domiciled in the State of Texas. She is the of mother of Jeremy Church.

1191. As a result of the attack, and the injuries Jeremy Church suffered, Plaintiff Sandra Hankins has experienced severe mental anguish and extreme emotional pain and suffering.

**The Fisher Family**

1192. Steven Scott Fisher was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

1193. On April 9, 2004, Steven Scott Fisher, aged 43, was serving as a civilian contractor in Iraq when the convoy in which he was traveling was attacked by JAM terror operatives with rocket-propelled grenades and small-arms fire.

1194. Steven Scott Fisher was killed in the attack.

1195. The terror cell that executed the attack in which Steven Scott Fisher was killed was trained by Hezbollah and funded and armed by the IRGC-QF.

1196. Plaintiff Ingrid Fisher is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Steven Scott Fisher.

1197. Plaintiff Ingrid Fisher brings an action individually and on behalf of the Estate of Steven Scott Fisher, as its legal representative.

1198.   Plaintiff Kristin Walker is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Steven Scott Fisher.

1199.   Plaintiff Steven T. Fisher is a citizen of the United States and domiciled in the State of Virginia. He is the son of Steven Scott Fisher.

1200.   Plaintiff Kathleen Gramkowski is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Steven Scott Fisher.

1201.   As a result of the attack, and the death of Steven Scott Fisher, Plaintiffs Ingrid Fisher, Kristin Walker, Steven T. Fisher, and Kathleen Gramkowski have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 5.    THE JUNE 4, 2004 ATTACK – BAGHDAD

**The Carvill Family**

1202.   Frank T. Carvill was a citizen of the United States and domiciled in the State of New Jersey when he was killed in Iraq.

1203.   On June 4, 2004, Frank T. Carvill, aged 51, was serving in the United States military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled grenades and IEDs in Baghdad.

1204.   Frank T. Carvill was killed in the attack.

1205.   The terror cell that executed the attack in which Frank T.Carvill was killed was trained by Hezbollah and funded and armed by the IRGC-QF.

1206.   Plaintiff Mary Carvill is a citizen of the United States and domiciled in the State of New Jersey. She is the mother of Frank T. Carvill.

1207.   Plaintiff Peggy Carvill-Liguori is a citizen of the United States and domiciled in the State of New Jersey. She is the sister of Frank T. Carvill.

1208.   Plaintiff Peggy Carvill-Liguori brings an action individually and on behalf of the Estate of Frank T. Carvill, as its legal representative.

1209.   Plaintiff Daniel Carvill is a citizen of the United States and domiciled in the State of New Jersey. He is the brother of Frank T. Carvill.

1210.   As a result of the attack, and the death of Frank T. Carvill, Plaintiffs Mary Carvill, Peggy Carvill-Liguori and Daniel Carvill have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

6.      **THE JUNE 29, 2004 ATTACK – BAGHDAD**

**The Adle Family**

1211.   Patrick Adle was a citizen of the United States and domiciled in the State of Maryland when he was killed in Iraq.

1212.   On June 29, 2004, Patrick Adle, aged 21, was serving in the U.S. military in Iraq when a roadside bomb emplaced by JAM terror operatives detonated near the vehicle in which he was traveling in Baghdad.

1213.   Patrick Adle was killed in the attack.

1214.   The terror cell that emplaced the roadside bomb that killed Patrick Adle was trained by Hezbollah and funded and armed by the IRGC-QF.

1215.   Plaintiff Pamela Adle-Watts is a citizen of the United States and domiciled in the State of Maryland. She is the mother of Patrick Adle.

226

1216.   Plaintiff Pamela Adle-Watts brings an action individually and on behalf of the Estate of Patrick Adle, as its legal representative.

1217.   Plaintiff John Watts is a citizen of the United States and domiciled in the State of Maryland. He is the step-father of Patrick Adle.

1218.   As a result of the attack, and the death of Patrick Adle, Plaintiffs Pamela Adle-Watts and John Watts have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

## 7.   THE JULY 27, 2004 ATTACK – BALAD RUZ

**The Talbert Family**

1219.   DeForest L. Talbert was a citizen of the United States and domiciled in the State of West Virginia.

1220.   On July 27, 2004, DeForest L. Talbert, then 24, was serving in the U.S. military in Iraq when an IED detonated near the vehicle.

1221.   On July 27, 2004, DeForest L. Talbert was traveling in an M998 Humvee in the vicinity of Balad Ruz close to the Iranian border and IRGC-QF smuggling routes when his vehicle was struck with an IED.

1222.   DeForest L. Talbert was killed in the attack.

1223.   The terror cell that emplaced the IED that killed DeForest L. Talbert was trained by Hezbollah and funded by the IRGC-QF.

1224.   Plaintiff Gloria Nesbitt is a citizen of the United States and domiciled in the State of Virginia. She is the mother of DeForest L. Talbert.

1225.   Plaintiff Gloria Nesbitt brings an action individually and on behalf of the Estate of DeForest L. Talbert, as its legal representative.

1226.   Plaintiff D.J.H., a minor, represented by his legal guardian Frances Hamilett, is a citizen of the United States and domiciled in the State of West Virginia. He is the son of DeForest L. Talbert.

1227.   Plaintiff Chiquita Talbert is a citizen of the United States and domiciled in the State of Virginia. She is the sister of DeForest L. Talbert.

1228.   Plaintiff Tawanna Talbert Darring is a citizen of the United States and domiciled in the State of Maryland. She is the sister of DeForest L. Talbert.

1229.   Plaintiff Latasha Marble is a citizen of the United States and domiciled in the State of Virginia. She is the sister of DeForest L. Talbert.

1230.   Plaintiff James Talbert is a citizen of the United States and domiciled in the State of Virginia. He is the brother of DeForest L. Talbert.

1231.   As a result of the attack, and the death of DeForest L. Talbert, Plaintiffs Gloria Nesbitt, D.J.H., Chiquita Talbert, Tawanna Talbert Darring, Latasha Marble and James Talbert have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society companionship, comfort, advice and counsel. advice and counsel.

## 8.    THE AUGUST 5, 2004 ATTACK – NAJAF

**The Rocha Family**

1232.   Moses Rocha was a citizen of the United States and domiciled in the State of New Mexico when he was killed in Iraq.

1233.   On August 5, 2004, Moses Rocha, aged 33, was serving in the U.S. military in Iraq when his unit was attacked by JAM terror operatives with rocket-propelled grenades and small-arms fire.

1234.   Moses Rocha was killed in the attack.

1235.   The terror cell that executed the attack in which Moses Rocha was killed was trained by Hezbollah and funded and armed by the IRGC-QF.

1236.   Plaintiff Miranda Pruitt is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Moses Rocha.

1237.   Plaintiff Velina Sanchez is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Moses Rocha.

1238.   Plaintiff Velina Sanchez brings an action individually and on behalf of the Estate of Moses Rocha, as its legal representative.

1239.   Plaintiff Aloysius Sanchez, Sr. is a citizen of the United States and domiciled in the State of New Mexico. He is the step-father of Moses Rocha.

1240.   Plaintiff Rommel Rocha is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

1241.   Plaintiff Phillip Sanchez is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

1242.   Plaintiff Aloysius Sanchez, Jr. is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Moses Rocha.

1243.   As a result of the attack, and the death of Moses Rocha, Plaintiffs Miranda Pruitt, Velina Sanchez, Aloysius Sanchez, Sr., Rommel Rocha, Phillip Sanchez, and Aloysius Sanchez, Jr. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Reynoso Family**

1244.   Yadir G. Reynoso was a citizen of the United States and domiciled in the State of Washington.

1245.   On August 5, 2004, Yadir G. Reynoso, aged 27, was serving in the U.S. military in Iraq when his unit was engaged in small arms fire with JAM terror operatives in Najaf, Iraq.

1246.   Yadir G. Reynoso was killed in the exchange of gunfire with JAM terror operatives.

1247.   The terror cell that fired at Yadir G. Reynoso was trained by Hezbollah and funded and armed by the IRGC-QF.

1248.   Plaintiff Gloria P. Reynoso is a citizen of the United States and domiciled in the State of Washington. She is the mother of Yadir G. Reynoso.

1249.   Plaintiff Gloria P. Reynoso brings an action individually and on behalf of the Estate of Yadir G. Reynoso, as its legal representative.

1250.   Plaintiff Jasmin Reynoso is a citizen of the United States and domiciled in the State of Washington. She is the sister of Yadir G. Reynoso.

1251.   Plaintiff Patricia Reynoso is a citizen of the United States and domiciled in the State of Washington. She is the sister of Yadir G. Reynoso.

1252.   Plaintiff Jose Reynoso is a citizen of the United States and domiciled in the State of Washington. He is the brother of Yadir G. Reynoso.

1253.   As a result of the attack, and the death of Yadir G. Reynoso, Plaintiffs Gloria P. Reynoso, Jasmin Reynoso, Patricia Reynoso, and Jose Reynoso have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 9.   THE AUGUST 6, 2004 ATTACK – NAJAF

**The Wells Family**

1254.   Larry Lloyd Wells was a citizen of the United States and domiciled in the State of Louisiana.

1255. On August 6, 2004, Larry Lloyd Wells, aged 22, was serving in the U.S. military in Iraq when his unit was engaged in small arms fire with JAM terror operatives in the Wadi al-Salam Cemetery in Najaf, Iraq.

1256. Larry Lloyd Wells was killed by sniper fire from JAM terror operatives.

1257. The terror cell that fired at Larry Lloyd Wells was trained by Hezbollah and funded and armed by the IRGC-QF.

1258. Plaintiff Ashley Wells Simpson is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Larry Lloyd Wells.

1259. Plaintiff Ashley Wells Simpson brings an action individually and on behalf of the Estate of Larry Lloyd Wells, as its legal representative.

1260. Plaintiff Chad Wells is a citizen of the United States and domiciled in the State of Louisiana. He is the brother of Larry Lloyd Wells.

1261. Plaintiff Crystal Stewart is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Larry Lloyd Wells.

1262. Plaintiff Chasity Wells-George is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Larry Lloyd Wells.

1263. Plaintiff Candice Machella is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Larry Lloyd Wells.

1264. Plaintiff Billy Doal Wells is a citizen of the United States and domiciled in the State of Tennessee. He is the brother of Larry Lloyd Wells.

1265. As a result of the attack, and the death of Larry Lloyd Wells, Plaintiffs Ashley Wells Simpson, Chad Wells, Crystal Stewart, Chasity Wells-George, Candice Machella, and Billy

Doal Wells have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

### 10. THE AUGUST 15, 2004 ATTACK – NAJAF

**The Sapp Family**

1266.   Brandon Robert Sapp was a citizen of the United States and domiciled in the State of Florida.

1267.   On August 15, 2004, Brandon Robert Sapp, then 21, was serving in the U.S. military in Najaf, Iraq when the M2 Bradley Fighting Vehicle he was operating rolled over a 500-pound IED emplaced by JAM terror operatives that sent the Bradley and Brandon Robert Sapp airborne, killing him.

1268.   The terror cell that emplaced the IED that killed Brandon Robert Sapp was trained by Hezbollah and funded and armed by the IRGC-QF.

1269.   Plaintiff Hope Elizabeth Veverka is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Brandon Robert Sapp.

1270.   As a result of the attack, and the death of Brandon Robert Sapp, Plaintiff Hope Elizabeth Veverka has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 11. THE AUGUST 16, 2004 ATTACK – SADR CITY

**The Heath Family**

1271.   David Michael Heath was a citizen of the United States and domiciled in the State of Indiana.

1272. On August 16, 2004, David Michael Heath, aged 30, was serving in the U.S. military in Iraq when an IED emplaced by JAM terror operatives detonated near his vehicle followed by smalls arms fire and a subsequent RPG attack in Sadr City.

1273. David Michael Heath was killed in the attack by a gunshot wound to his head by JAM terror operatives.

1274. The terror cell that fired at David Michael Heath was trained by Hezbollah and funded and armed by the IRGC-QF.

1275. Plaintiff Donna Jean Heath is a citizen of the United States and domiciled in the State of Indiana. She is the wife of David Michael Heath.

1276. Plaintiff Donna Jean Heath brings an action individually and on behalf of the Estate of David Michael Heath, as its legal representative.

1277. Plaintiff Lola Jean Modjeska is a citizen of the United States and domiciled in the State of Indiana. She is the mother of David Michael Heath.

1278. Plaintiff John David Heath is a citizen of the United States and domiciled in the State of Florida. He is the father of David Michael Heath.

1279. As a result of the attack, and the death of David Michael Heath, Plaintiffs Donna Jean Heath, Lola Jean Modjeska, and John David Heath have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's society, companionship, comfort, advice and counsel.

## 12. THE AUGUST 18, 2004 ATTACK – SADR CITY

### The Martir Family

1280. Jacob David Martir was a citizen of the United States and domiciled in the State of Connecticut.

233

1281.   On August 18, 2004, Jacob David Martir, aged 21, was serving in the U.S. military in Iraq when his unit was engaged in small arms fire with JAM terror operatives in Sadr City.

1282.   Jacob David Martir was shot and killed by JAM terror operatives while engaged in the exchange of gunfire.

1283.   The terror cell that fired at Jacob David Martir was trained by Hezbollah and funded and armed by the IRGC-QF.

1284.   Plaintiff Olga Lydia Gutierrez is a citizen of the United States and domiciled in the State of Connecticut. She is the mother of Jacob David Martir.

1285.   Plaintiff Olga Lydia Gutierrez brings an action individually and on behalf of the Estate of Jacob David Martir, as its legal representative.

1286.   Plaintiff Ismael Martir is a citizen of the United States and domiciled in the State of Florida. He is the brother of Jacob David Martir.

1287.   As a result of the attack, and the death of Jacob David Martir, Plaintiffs Olga Lydia Gutierrez and Ismael Martir have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 13.   THE AUGUST 25, 2004 ATTACK – NAJAF

**The Arredondo Family**

1288.   Alexander Scott Arredondo was a citizen of the United States and domiciled in the State of Massachusetts.

1289.   On August 25, 2004, Alexander Scott Arredondo, aged 20, was serving in the U.S. military in Iraq when his unit was engaged in small arms fire with JAM terror operatives in Najaf, Iraq.

1290.   Alexander Scott Arredondo was killed by sniper fire from JAM terror operatives.

1291.   The terror cell that fired at Alexander Scott Arredondo was trained by Hezbollah and funded and armed by the IRGC-QF.

1292.   Plaintiff Victoria M. Foley is a citizen of the United States and domiciled in the State of Massachusetts. She is the mother of Alexander Scott Arredondo.

1293.   Plaintiff Victoria M. Foley brings an action individually and on behalf of the Estate of Alexander Scott Arredondo, as its legal representative.

1294.   Plaintiff Nathaniel Foley is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Alexander Scott Arredondo.

1295.   As a result of the attack, and the death of Alexander Scott Arredondo, Plaintiffs Victoria M. Foley and Nathaniel Foley have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 14.      THE AUGUST 26, 2004 ATTACK – NAJAF

**The DeWilde Family**

1296.   Plaintiff Michael Scott DeWilde is a citizen of the United States and domiciled in the State of Texas.

1297.   On August 26, 2004, Michael Scott DeWilde, then 37, was serving in the U.S. military in Iraq.

1298.   On August 26, 2004, Michael Scott DeWilde was seriously injured when he came under fire from a rocket-propelled grenade fired by JAM terror operatives.

1299.   The terror cell that executed the attack in which Michael Scott DeWilde was injured was trained by Hezbollah and funded and armed by the IRGC-QF.

1300.   As a result of the attack, Michael Scott DeWilde sustained shrapnel injuries to his arm requiring him to medevaced from the scene and treated at the nearest Forward Operating Base.

1301.   As a result of the attack, and the injuries he suffered, Plaintiff Michael Scott DeWilde has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 15.   THE FEBRUARY 10, 2005 ATTACK

**The Morris Family**

1302.   Plaintiff Steven Morris is a citizen of the United States and domiciled in the State of North Carolina.

1303.   Steven Morris served in the U.S. military in Iraq on multiple rotations from March 2003 through 2011 as a member of a Special Operations Unit.

1304.   On February 10, 2005, Mr. Morris sustained a traumatic brain injury ("TBI") as well as neck and shoulder injuries when he was knocked from his armored vehicle *en* route to an operation against JAM Special Forces north of Sab' Abkar section of Baghdad.

1305.   On a separate occasion, he sustained an additional TBI from the blast wave of an Iranian 122mm rocket launched by JAM Special Groups.

1306.   As a result of the attack, and the injuries he suffered, Plaintiff Steven Morris has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1307.   Plaintiff Danielle Dechaine-Morris is a citizen of the United States and domiciled in the State of North Carolina. She was the wife of Steven Morris.

1308.   Plaintiff Nicholas Morris is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Steven Morris.

1309. Plaintiff K.M., a minor represented by his legal guardian, Danielle Dechaine-Morris, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Steven Morris.

1310. As a result of the attack, and the injuries Steven Morris suffered, Plaintiffs Danielle Dechaine-Morris, Nicholas Morris and K.M. have experienced severe mental anguish and extreme emotional pain and suffering.

## 16. THE JUNE 8, 2005 ATTACK – BAGHDAD

**The Arizola Family**

1311. Roberto Arizola, Jr. was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

1312. On June 8, 2005, Roberto Arizola, Jr., aged 31, was serving in the U.S. military near Rustimaya when an IED emplaced by JAM Special Groups terror operatives detonated near his vehicle.

1313. Roberto Arizola, Jr. was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

1314. Plaintiff Monica Arizola is a citizen of the United States and domiciled in the State of Texas. She is the widow of Roberto Arizola, Jr.

1315. Plaintiff Roberto Aaron Arizola is a citizen of the United States and domiciled in the State of Texas. He is the son of Roberto Arizola, Jr.

1316. Plaintiff Roberto Arizola, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Roberto Arizola, Jr.

1317. Plaintiff Cecilia Arizola is a citizen of the United States and domiciled in the State of Texas. She is the mother of Roberto Arizola, Jr.

1318.   Plaintiff Danny Arizola is a citizen of the United States and domiciled in the State of Texas. He is the brother of Roberto Arizola, Jr.

1319.   Plaintiff Ricardo Arizola is a citizen of the United States and domiciled in the State of Texas. He is the brother of Roberto Arizola, Jr.

1320.   As a result of the attack, and the death of Roberto Arizola, Jr., Plaintiffs Monica Arizola, Roberto Aaron Arizola, Roberto Arizola, Sr., Cecilia Arizola, Danny Arizola and Ricardo Arizola have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's brother's society, companionship, comfort, advice and counsel.

**17.    THE JUNE 27, 2005 ATTACK – BAGHDAD**

**The Klecker Family**

1321.   Deborah Klecker was a citizen of the United States and domiciled in the State of Oregon when she was killed in Iraq.

1322.   On June 27, 2005, Deborah Klecker, aged 51, was working as a civilian contractor providing mentoring and training to Iraqi police officers when she was killed by an IED planted and detonated near her vehicle by JAM Special Groups.

1323.   Deborah Klecker was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

1324.   Plaintiff Greg Klecker is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Deborah Klecker.

1325.   As a result of the attack, and the death of Deborah Klecker, Plaintiff Greg Klecker has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his sister's society, companionship, comfort, advice and counsel.

18.     **THE JULY 3, 2005 ATTACK – BAGHDAD**

**The Montgomery Family**

1326.   Ryan Montgomery was a citizen of the United States and domiciled in the State of Kentucky when he was killed in Iraq.

1327.   On July 3, 2005, Ryan Montgomery, aged 22, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his High Mobility Multipurpose Wheeled Vehicle ("HMMWV") in Baghdad.

1328.   Ryan Montgomery was killed in the attack.

1329.   The weapon used to kill Ryan Montgomery was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1330.   Plaintiff Raymond Montgomery is a citizen of the United States and domiciled in the State of Kentucky. He is the father of Ryan Montgomery.

1331.   Plaintiff Patricia Montgomery is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of Ryan Montgomery.

1332.   Plaintiff Bryan Montgomery is a citizen of the United States and domiciled in the State of Kentucky. He is the brother of Ryan Montgomery.

1333.   As a result of the attack, and the death of Ryan Montgomery, Plaintiffs Raymond Montgomery, Patricia Montgomery and Bryan Montgomery have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

19. **THE JULY 27, 2005 ATTACK**

**The Wood Family**

1334. Plaintiff Tony Wood is a citizen of the United States and domiciled in the State of Hawaii.

1335. On July 27, 2005, Tony Wood, age 38, was serving in the U.S. military in Iraq.

1336. Mr. Wood was returning to his base when his vehicle was struck by an EFP emplaced by Special Groups.

1337. The weapon used to injure Mr. Wood was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1338. As a result of the attack, he sustained significant injuries due to the impact of a large amount of shrapnel that pierced his body armor.

1339. Mr. Wood received extensive medical treatment at various hospitals, where he spent a number of months.

1340. He was also in a coma for over forty (40) days and developed numerous infections that required treatment.

1341. The shrapnel affected numerous internal organs, and he underwent over 20 separate surgeries.

1342. Mr. Wood continues to experience pain and limitations to his activities each day.

1343. Mr. Wood suffers from PTSD and has experienced severe depression.

1344. He has participated in treatment programs to address his emotional problems and has been on medication to address this condition.

1345. As a result of the attack, and the injuries he suffered, Plaintiff Tony Wood has

240

experienced severe physical and mental anguish and extreme emotional pain and suffering.

1346.   Plaintiff Joedi Wood is a citizen of the United States and domiciled in the State of Hawaii. She is the wife of Tony Wood.

1347.   Plaintiff Adam Wood is a citizen of the United States and domiciled in the State of Hawaii. He is the son of Tony Wood.

1348.   Plaintiff Megan Wood is a citizen of the United States and domiciled in the State of Hawaii. She is the daughter of Tony Wood.

1349.   As a result of the attack, and the injuries suffered by Tony Wood, Plaintiffs Joedi Wood, Adam Wood and Megan Wood have experienced severe mental anguish, and extreme emotional pain and suffering.

## 20.    THE AUGUST 2, 2005 ATTACK – BASRA

**The Vincent Family**

1350.   Steven Vincent was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1351.   On August 2, 2005, Steven Vincent, a 49-year old journalist, was reporting on the deteriorating security situation in Basra when he was kidnapped by JAM, taken hostage for several hours and then shot and killed by JAM operatives.

1352.   The JAM terrorist operatives that abducted and murdered Steven Vincent were trained by Hezbollah and funded and armed by the IRGC-QF and acted under their joint direction.

1353.   Plaintiff Lisa Ramaci is a citizen of the United States and domiciled in the State of New York. She is the widow of Steven Vincent.

1354.   Plaintiff Lisa Ramaci brings an action individually and on behalf of the Estate of Steven Vincent, as its legal representative.

1355.   Plaintiff Isabell Vincent is a citizen of the United States and domiciled in the State of California. She is the mother of Steven Vincent.

1356.   Plaintiff Charles Vincent is a citizen of the United States and domiciled in the State of California. He is the father of Steven Vincent.

1357.   As a result of the attack, and the death of Steven Vincent, Plaintiffs Lisa Ramaci, Isabell Vincent and Charles Vincent have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband/son's society, companionship, comfort, advice and counsel.

21.   **THE AUGUST 7, 2005 ATTACK – BAGHDAD**

**The Kalladeen Family**

1358.   Anthony N. Kalladeen was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1359.   On August 7, 2005, Anthony N. Kalladeen, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1360.   Anthony N. Kalladeen died on August 8, 2005 as a result of the injuries he sustained in the attack.

1361.   The weapon used to kill Anthony N. Kalladeen was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1362.   Plaintiff Maria Vidal is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of Anthony N. Kalladeen.

1363.   As a result of the attack, and the death of Anthony N. Kalladeen, Plaintiff Maria Vidal has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 22.   THE SEPTEMBER 2, 2005 ATTACK – BAGHDAD

**The Hassler Family**

1364.   Plaintiff Tamara Hassler is a citizen of the United States and domiciled in the State of North Carolina.

1365.   On September 2, 2005, Tamara Hassler, then 36, was serving as a civilian contractor for DynCorp International in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which she was traveling in Baghdad.

1366.   The weapon used to injure Tamara Hassler was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1367.   As a result of the attack, Ms. Hassler suffered bruising in her sacroiliac joint, soft tissue damage to her piriformis muscle, and injuries to her right hip.

1368.   Ms. Hassler also suffered from three bulging discs in her lower back as a result of the attack, as well as atrophied discs in her neck.

1369.   Ms. Hassler was also diagnosed with hearing loss, PTSD, and a TBI.

1370.   Ms. Hassler has been treated by numerous doctors and physical therapists for her injuries and has been prescribed medication to treat her symptoms.

1371.   As a result of the attack, and the injuries she suffered, Plaintiff Tamara Hassler has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1372.   Plaintiff Richard E. Hassler is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Tamara Hassler.

1373.   Plaintiff Joanne Sue Hassler is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Tamara Hassler.

1374.   As a result of the attack, and the injuries Tamara Hassler has suffered, Plaintiffs Richard E. Hassler and Joanne Sue Hassler have experienced severe mental anguish and extreme emotional pain and suffering.

**The Huckfeldt Family**

1375.   Plaintiff Scott Huckfeldt is a citizen of the United States and domiciled in the State of Arizona.

1376.   On September 2, 2005, Scott Huckfeldt, then 37, was serving as a civilian contractor for DynCorp International in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

1377.   The weapon used to injure Scott Huckfeldt was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1378.   As a result of the attack, Scott Huckfeldt suffered injuries to his left knee.

1379.   Mr. Huckfeldt was also diagnosed with PTSD.

1380.   As a result of the attack, and the injuries he suffered, Plaintiff Scott Huckfeldt has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1381.   Plaintiff Kathryn Huckfeldt is a citizen of the United States and domiciled in the State of Arizona. She is the wife of Scott Huckfeldt.

1382.   Plaintiff Alisha Huckfeldt is a citizen of the United States and domiciled in the State of Arizona. She is the daughter of Scott Huckfeldt.

1383.   Plaintiff Matthew Huckfeldt is a citizen of the United States and domiciled in the State of Arizona. He is the son of Scott Huckfeldt.

1384.   As a result of the attack, and the injuries Scott Huckfeldt has suffered, Plaintiffs Kathryn Huckfeldt, Alisha Huckfeldt and Matthew Huckfeldt have experienced severe mental anguish and extreme emotional pain and suffering.

**The Newman Family**

1385.   Plaintiff Timothy Newman is a citizen of the United States and domiciled in the State of South Carolina.

1386.   On September 2, 2005, Timothy Newman, then 41, was serving as a civilian contractor for DynCorp International in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

1387.   The weapon used to injure Timothy Newman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1388.   As a result of the attack, Mr. Newman's legs were injured, and his right leg had to be amputated above the knee.

1389.   Mr. Newman's left hand was injured, and it had to be partially amputated at the wrist.

1390.   Mr. Newman received a penetrating wound to his chest and abdomen and suffered a broken spine and various broken bones.

1391.   Mr. Newman was also diagnosed with PTSD and a TBI.

1392.   As a result of the attack, and the injuries he suffered, Plaintiff Timothy Newman has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1393.   Plaintiff Padraic J. Newman is a citizen of the United States and domiciled in the State of South Carolina. He is the son of Timothy Newman.

1394.   As a result of the attack, and the injuries Timothy Newman has suffered, Plaintiff Padraic J. Newman has experienced severe mental anguish and extreme emotional pain and suffering.

### 23.     THE SEPTEMBER 6, 2005 ATTACK – BAGHDAD

**The Jonaus Family**

1395.   Jude Jonaus was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

1396.   On September 6, 2005, Jude Jonaus, aged 27, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his HMMWV in Baghdad.

1397.   Jude Jonaus was killed in the attack.

1398.   The weapon used to kill Jude Jonaus was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1399.   Plaintiff Amenia Jonaus is a citizen of the United States and domiciled in the State of Florida. She is the mother of Jude Jonaus.

1400.   Plaintiff Amenia Jonaus brings an action individually and on behalf of the Estate of Jude Jonaus, as its legal representative.

1401.   Plaintiff Gernessoit Jonaus is a citizen of the United States and domiciled in the State of Florida. He is the father of Jude Jonaus.

1402.   Plaintiff Daphnie Jonaus Martin is a citizen of the United States and domiciled in the State of Florida. She is the sister of Jude Jonaus.

1403.   Plaintiff Ricky Jonaus is a citizen of the United States and domiciled in the State of South Carolina. He is the brother of Jude Jonaus.

1404.   Plaintiff Marckendy Jonaus is a citizen of the United States and domiciled in the State of Florida. He is the brother of Jude Jonaus.

1405.   Plaintiff Claire Jonaus is a citizen of the United States and domiciled in the State of Florida. She is the sister of Jude Jonaus.

1406.   Plaintiff Sharen Jonaus Martin is a citizen of the United States and domiciled in the State of Florida. She is the sister of Jude Jonaus.

1407.   As a result of the attack, and the death of Jude Jonaus, Plaintiffs Amenia Jonaus, Gernessoit Jonaus, Daphnie Jonaus Martin, Ricky Jonaus, Marckendy Jonaus, Claire Jonaus and Sharen Jonaus Martin have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 24.     THE SEPTEMBER 26, 2005 ATTACK – BAGHDAD

**The Tuliau Family**

1408.   Tulsa T. Tuliau was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1409.   On September 26, 2005, Tulsa T. Tuliau, aged 33, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1410.   Tulsa T. Tuliau was killed in the attack.

1411.   The weapon used to kill Tulsa T. Tuliau was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1412.   Plaintiff Masina Tuliau is a citizen of the United States and domiciled in the State of Washington. She is the mother of Tulsa T. Tuliau.

1413.   As a result of the attack, and the death of Tulsa T. Tuliau, Plaintiff Masina Tuliau has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 25.   THE SEPTEMBER 28, 2005 ATTACK – UMM QASR

**The Morin Family**

1414.   Steve Morin, Jr. was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

1415.   On September 28, 2005, Steve Morin, Jr., aged 34, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1416.   Steve Morin, Jr. was killed in the attack.

1417.   The weapon used to kill Steve Morin, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1418.   Plaintiff Gwendolyn Morin-Marentes is a citizen of the United States and domiciled in the State of Texas. She is the widow of Steve Morin, Jr.

1419.   Plaintiff Gwendolyn Morin-Marentes brings an action individually and on behalf of the Estate of Steve Morin, Jr., as its legal representative.

1420.   Plaintiff Esteban Morin is a citizen of the United States and domiciled in the State

of Texas. He is the son of Steve Morin, Jr.

1421.  Plaintiff Audelia (Audrey) Morin is a citizen of the United States and domiciled in the State of Texas. She is the mother of Steve Morin, Jr.

1422.  Plaintiff Estavan (Steve) Morin, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Steve Morin, Jr.

1423.  Plaintiff Brianna Renee Navejas is a citizen of the United States and domiciled in the State of Texas. She is the step-daughter of Steve Morin, Jr.

1424.  As a result of the attack, and the death of Steve Morin, Jr., Plaintiffs Gwendolyn Morin-Marentes, Esteban Morin, Audrey Morin, Steve Morin, Sr. and Brianna Renee Navejas have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's society, companionship, comfort, advice and counsel.

**The Martinez Family**

1425.  Plaintiff Margarito A. Martinez, Jr. is a citizen of the United States and domiciled in the State of Texas.

1426.  On September 28, 2005, Margarito Martinez, then 36, was serving in the U.S. military in Iraq.

1427.  He was driving in a convoy when an EFP emplaced by Special Groups struck the lead vehicle.

1428.  The weapon used to injure Margarito Martinez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1429.  After the lead vehicle was stuck by an EFP, Margarito got out of his vehicle to check on the occupants of the vehicle that had been struck. He saw that Steve Morin had been hit

in the back of the skull and appeared to be dead.

1430.   He then checked on Elizabeth Jacobson who had been in Steve Morin's HMMWV and observed that she had been decapitated.

1431.   Finally, he checked on Andy Martinez who was the gunner in the HMMWV. Andy was standing in the turret and couldn't hear or see anything. Margarito got on top of the vehicle and pulled Andy out. He cut off some of Andy's clothing to start an IV line for him.

1432.   As a result of the attack, Mr. Martinez suffers from PTSD.

1433.   As a result of the attack, and the injuries he suffered, Plaintiff Margarito Martinez, Jr. has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 26.   THE OCTOBER 6, 2005 ATTACK – BAGHDAD

**The Robinson Family**

1434.   Jeremiah Robinson was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

1435.   On October 6, 2005, Jeremiah Robinson, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1436.   Jeremiah Robinson was killed in the attack.

1437.   The weapon used to kill Jeremiah Robinson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1438.   Plaintiff Amy Lynn Robinson is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Jeremiah Robinson.

1439.   Plaintiff Floyd Burton Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the father of Jeremiah Robinson.

1440.   Plaintiffs Amy Lynn Robinson and Floyd Burton Robinson bring an action individually and on behalf of the Estate of Jeremiah Robinson, as its legal representatives.

1441.   Plaintiff Jacob Michael Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Jeremiah Robinson.

1442.   Plaintiff Lucas William Robinson is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Jeremiah Robinson.

1443.   As a result of the attack, and the death of Jeremiah Robinson, Plaintiffs Amy Lynn Robinson, Floyd Burton Robinson, Jacob Michael Robinson and Lucas William Robinson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Burns Family**

1444.   Plaintiff Alvis Burns is a citizen of the United States and domiciled in the State of Arizona.

1445.   On October 6, 2005, Alvis Burns, then 41, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1446.   The weapon used to injure Alvis Burns was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1447.   As a result of the blast, Alvis Burns's skull was cracked and shrapnel was lodged in his brain.

1448.   Mr. Burns experienced brain swelling and he underwent brain surgery. He has been diagnosed with a TBI.

1449.  Mr. Burns suffered shrapnel in his face and throughout his left arm. He also sustained hearing loss as a result of the blast.

1450.  Mr. Burns fell in and out of comas and was, at times, in a vegetative state for long periods. He was fed through a feeding tube.

1451.  As a result of the injuries sustained in the attack and following his many procedures, Mr. Burns has had to relearn how to swallow, eat, speak, and walk.

1452.  He experiences pain in his legs and feet and currently uses an electric wheelchair and at times, a walker.

1453.  As a result of the attack, and the injuries he suffered, Plaintiff Alvis Burns has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1454.  Plaintiff JoDee Johnson is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Alvis Burns.

1455.  Plaintiff James Higgins is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Alvis Burns.

1456.  Plaintiff Wendy Coleman is a citizen of the United States and domiciled in the State of Washington. She is the sister of Alvis Burns.

1457.  As a result of the attack, and the injuries Alvis Burns has suffered, Plaintiffs JoDee Johnson, James Higgins, and Wendy Coleman have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Radke Family**

1458.  Plaintiff Brian Radke is a citizen of the United States and domiciled in the State of Washington.

252

1459. On October 6, 2005, Brian Radke, then 30, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1460. The weapon used to injure Brian Radke was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1461. As a result of the attack, Brian Radke sustained shrapnel to his body, including a piece that clipped his carotid artery.

1462. He also sustained shrapnel in his right leg and he has undergone reconstructive knee surgery.

1463. His jaw was fractured in multiple locations, and he lost his right finger.

1464. His left arm was fractured in two locations, and his median nerve was severed.

1465. He has undergone numerous surgical procedures, including those to address the severed nerve and to emplace rods and to apply skin grafts in his left arm.

1466. He was in a coma, during which time he was fed by a feeding tube and breathed through a trach tube.

1467. Mr. Radke still has pieces of shrapnel in his body, including some fragments lodged in his brain.

1468. Mr. Radke's injuries have required physical therapy and occupational therapy.

1469. Mr. Radke has been diagnosed with PTSD and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

1470. As a result of the attack, and the injuries he suffered, Plaintiff Brian Radke has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1471.   Plaintiff Nova Radke is a citizen of the United States and domiciled in the State of Arizona. She is the wife of Brian Radke.

1472.   As a result of the attack, and the injuries Brian Radke has suffered, Plaintiff Nova Radke has experienced severe mental anguish, and extreme emotional pain and suffering.

**The Vernier Family**

1473.   Plaintiff Steven Vernier, Jr. is a citizen of the United States and domiciled in the State of Tennessee.

1474.   On October 6, 2005, Steven Vernier, Jr., then 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1475.   The weapon used to injure Steven Vernier, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1476.   As a result of the blast, Steven Vernier, Jr. sustained shrapnel to his face, neck, right shoulder, right wrist, and his thighs.

1477.   He also sustained first degree burns.

1478.   He has experienced and continues to experience hearing loss in both ears.

1479.   He has undergone procedures to remove the shrapnel.

1480.   The injuries he sustained resulted in a loss of range of motion in his right shoulder and right wrist.

1481.   He has been prescribed medication for pain. The pain continues to the present day.

1482.   Mr. Vernier has experienced flashbacks, nightmares, and extreme survivor's guilt.

1483.   He has been diagnosed with PTSD and has sought counseling.

1484.   As a result of the attack, and the injuries he suffered, Plaintiff Steven Vernier, Jr. has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 27.   THE DECEMBER 8, 2005 ATTACK – BAGHDAD

**The Smith Family**

1485.   Kevin J. Smith was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

1486.   On December 8, 2005, Kevin J. Smith, aged 28, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1487.   Kevin J. Smith was killed in the attack.

1488.   The weapon used to kill Kevin J. Smith was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1489.   Plaintiff Clifford L. Smith, Jr. is a citizen of the United States and domiciled in the State of Florida. He is the father of Kevin J. Smith.

1490.   Plaintiff Clifford L. Smith, Jr. brings an action individually and on behalf of the Estate of Kevin J. Smith, as its legal representative.

1491.   Plaintiff Georgianna Stephens-Smith is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Kevin J. Smith.

1492.   Plaintiff Corena Martin is a citizen of the United States and domiciled in the State of Florida. She is the sister of Kevin J. Smith.

1493.   As a result of the attack, and the death of Kevin J. Smith, Plaintiffs Clifford L. Smith, Jr., Georgianna Stephens-Smith, and Corena Martin have experienced severe mental

anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Mattis Family**

1494.   Plaintiff Adam Mattis is a citizen of the United States and domiciled in the State of Texas.

1495.   On December 8, 2005. Adam Mattis, then 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1496.   The weapon used to injure Adam Mattis was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1497.   Mr. Mattis was driving a HMMWV, the second vehicle in a five-vehicle convoy, when his vehicle was hit by an EFP.

1498.   Mr. Mattis was hit by shrapnel in his right arm. The shrapnel hit his bicep and went into his shoulder. The shrapnel cut and cauterized an artery.

1499.   Following the attack, he was medevaced to a combat support hospital in Iraq for initial treatment. He was not allowed to leave Iraq for further treatment to his wounds until the end of his deployment in January 2006 which resulted in Methicillin-resistant Staphylococcus aureus (MRSA), a secondary infection.

1500.   After his deployment ended in January 2006, he initially sought treatment at a civilian hospital in Savannah, Georgia and then at Fort Stewart.

1501.   Mr. Mattis has also sought treatment at the VA.

1502.   He has been diagnosed with a TBI and PTSD.

1503.   As a result of the attack, and the injuries he suffered, Plaintiff Adam Mattis has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Peterson Family**

1504.   Plaintiff Terrance Peterson, III is a citizen of the United States and domiciled in the State of Arizona.

1505.   On March 23, 2008, Terrance Peterson, then 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1506.   The weapon used to injure Terrance Peterson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1507.   Mr. Peterson was an occupant in the second vehicle traveling in a five-vehicle convoy, when his vehicle was hit by an EFP.

1508.   Mr. Peterson was hit by shrapnel in his right foot, both knees and his left arm. He had multiple fractures and tissue damage. The brachial artery in his right arm was severed.

1509.   Following the attack, Mr. Peterson was taken to FOB Loyalty to stabilize him and was then taken to Balad for surgery to repair the brachial artery. From there he was transferred to Landstuhl, Germany and then to Walter Reed Army Medical Center where he spent the next 9 months. Ultimately, he was sent to Wynn Army Hospital at Fort Stewart where he finished out his military service.

1510.   Mr. Peterson has undergone 33 surgeries as a result of the attack.

1511.   As a result of the attack, and the injuries he suffered, Plaintiff Terrance Peterson, III has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1512.   Plaintiff Petra Spialek is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Terrance Peterson, III.

1513.   As a result of the attack, and the injuries Terrance Peterson, III has suffered, Plaintiff Petra Spialek has experienced severe mental anguish, and extreme emotional pain and suffering.

## 28.   THE DECEMBER 25, 2005 ATTACK – BAGHDAD

**The Cardinal Family**

1514.   Anthony Cardinal was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

1515.   On December 25, 2005, Anthony Cardinal, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1516.   Anthony Cardinal was killed in the attack.

1517.   The weapon used to kill Anthony Cardinal was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1518.   Plaintiff David G. Cardinal, Jr. is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Anthony Cardinal.

1519.   Plaintiff David G. Cardinal, Jr. brings an action individually and on behalf of the Estate of Anthony Cardinal, as its legal representative.

1520.   As a result of the attack, and the death of Anthony Cardinal, Plaintiff David G. Cardinal, Jr. has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

## 29.    THE JANUARY 5, 2006 ATTACK – NAJAF

**The Hecker Family**

1521.   William F. Hecker, III was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

1522.   January 5, 2006, William F. Hecker, III, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1523.   William F. Hecker, III was killed in the attack.

1524.   The weapon used to kill William F. Hecker, III was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1525.   Plaintiff Richelle Hecker is a citizen of the United States and domiciled in the State of Colorado. She is the widow of William F. Hecker, III.

1526.   Plaintiff Richelle Hecker brings an action individually and on behalf of the Estate of William F. Hecker, III, as its legal representative.

1527.   Plaintiff Victoria Hecker is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of William F. Hecker, III.

1528.   Plaintiff W.H., a minor represented by his legal guardian, Richelle Hecker, is a citizen of the United States and domiciled in the State of Colorado. He is the son of William F. Hecker, III.

1529.   Plaintiff C.H., a minor represented by her legal guardian, Richelle Hecker, is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of William F. Hecker, III.

1530.   Plaintiff William F. Hecker, Jr. is a citizen of the United States and domiciled in State of Colorado.  He is the father of William F. Hecker, III.

1531.   Plaintiff Nancy Hecker is a citizen of the United States and domiciled in the State of Colorado. She is the mother of William F. Hecker, III.

1532.   Plaintiff John D. Hecker is a citizen of the United States and domiciled in the State of New York. He is the brother of William F. Hecker, III.

1533.   As a result of the attack, and the death of William F. Hecker, III, Plaintiffs Richelle Hecker, Victoria Hecker, W.H., C.H., William F. Hecker, Jr., Nancy Hecker and John D. Hecker have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Mariano Family**

1534.   Robbie M. Mariano was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

1535.   January 5, 2006, Robbie M. Mariano, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1536.   Robbie M. Mariano was killed in the attack.

1537.   The weapon used to kill Robbie M. Mariano was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1538.   Plaintiff Robert F. Mariano is a citizen of the United States and domiciled in State of California.  He is the father of Robbie M. Mariano.

1539.   Plaintiff Robert F. Mariano brings an action individually and on behalf of the Estate of Robbie M. Mariano, as its legal representative.

1540.   Plaintiff Debra Mariano is a citizen of the United States and domiciled in the State of California. She is the mother of Robbie M. Mariano.

1541.   Plaintiff Bobbie D. Mariano is a citizen of the United States and domiciled in the State of California. He is the brother of Robbie M. Mariano.

1542.   As a result of the attack, and the death of Robbie M. Mariano, Plaintiffs Robert F. Mariano, Debra Mariano and Bobbie D. Mariano have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The White Family**

1543.   Stephen J. White was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

1544.   January 5, 2006, Stephen J. White, aged 39, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1545.   Stephen J. White was killed in the attack.

1546.   The weapon used to kill Stephen J. White was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1547.   Plaintiff Vickie Michay White is a citizen of the United States and domiciled in the State of Texas.  She is the widow of Stephen J. White.

1548.   Plaintiff Vickie Michay White brings an action individually and on behalf of the Estate of Stephen J. White, as its legal representative.

1549.   As a result of the attack, and the death of Stephen J. White, Plaintiff Vickie Michay White has experienced severe mental anguish, extreme emotional pain and suffering, and loss of

her husband's society, companionship, comfort, advice and counsel.

### 30. THE JANUARY 5, 2006 ATTACK – BAGHDAD

**The Lopez Reyes Family**

1550.   Jason Lopez Reyes was a citizen of the United States and domiciled in the Puerto Rico.

1551.   On January 5, 2006, Jason Lopez Reyes, then 29, was serving in the U.S. military in Iraq when a duak-array EFP emplaced by Special Groups detonated near his vehicle.

1552.   Jason Lopez Reyes was killed in the attack.

1553.   The weapon used to kill Jason Lopez Reyes was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1554.   Plaintiff Gladys E. Reyes Centeno is a citizen of the United States and domiciled in Puerto Rico. She is the mother of Jason Lopez Reyes.

1555.   Plaintiff Veronica Lopez Reyes is a citizen of the United States and domiciled in Puerto Rico. She is the sister of Jason Lopez Reyes.

1556.   Plaintiff Veronica Lopez Reyes brings an action individually and on behalf of the Estate of Jason Lopez Reyes, as its legal representative.

1557.   Plaintiff Zoraima Lopez is a citizen of the United States and domiciled in the State of Texas. She is the sister of Jason Lopez Reyes.

1558.   As a result of the attack, and the death of Jason Lopez Reyes, Plaintiffs Gladys E. Reyes Centeno, Veronica Lopez Reyes, and Zoraima Lopez have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 31. THE JANUARY 18, 2006 ATTACK – BASRA

**The Hickman Family**

1559.   Richard Thomas "Rick" Hickman was a citizen of the United States and domiciled in the State of Georgia, when he was killed in Iraq.

1560.   On January 18, 2006, Richard Hickman, aged 52, a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1561.   Richard Hickman was killed in the attack.

1562.   The weapon used to kill Richard Hickman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1563.   Plaintiff Jennifer Link is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Richard Hickman.

1564.   Plaintiff Sharon Johnston is a citizen of the United States and domiciled in the State of Florida. She is the sister of Richard Hickman.

1565.   As a result of the attack, and the death of Richard Hickman, Plaintiffs Jennifer Link and Sharon Johnston have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's/brother's society, companionship, comfort, advice and counsel.

### 32. THE FEBRUARY 17, 2006 ATTACK – BAGHDAD

**The Lee Family**

1566.   Plaintiff Kenny Lee is a citizen of the United States and domiciled in the State of Virginia.

1567.   On February 17, 2006, Kenny Lee, then 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1568.   The weapon used to injure Kenny Lee was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1569.   As a result of the attack, Kenny Lee was stunned and incapacitated by the force of the concussive blast and shrapnel that entered his body in his buttocks region and partially exited from his back. Because the M1114 remained operational after the detonation, Mr. Lee remained in shock and did not realize he had been hit with copper shrapnel from the EFP until he noticed that the back of his uniform was completely bloodstained. A few days after the explosion, he discovered a concussive bruise approximately ten inches in diameter on his chest as a result of the explosion. Mr. Lee has lost flexibility due to the scarring from his injuries in addition to back pain and sciatic pain.

1570.   As a result of the attack, and the injuries he suffered, Plaintiff Kenny Lee has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1571.   Plaintiff Tom B. Lee is a citizen of the United States and domiciled in the State of Connecticut. He is the father of Kenny Lee.

1572.   Plaintiff Ling P. Lee is a citizen of the United States and domiciled in the State of Connecticut. She is the mother of Kenny Lee.

1573.   As a result of the attack, and the injuries Kenny Lee suffered, Plaintiffs Tom B. Lee and Ling P. Lee have experienced severe mental anguish and extreme emotional pain and suffering.

33.     **THE FEBRUARY 18, 2006 ATTACK – BAGHDAD**

**The Matheny Family**

1574.   Charles E. Matheny, IV was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

1575.   On February 18, 2006, Charles E. Matheny, IV, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1576.   Charles E. Matheny, IV was killed in the attack.

1577.   The weapon used to kill Charles E. Matheny, IV was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1578.   Plaintiff Deborah Noble is a citizen of the United States and domiciled in the State of Texas. She is the mother of Charles E. Matheny, IV.

1579.   Plaintiff Deborah Noble brings an action individually and on behalf of the Estate of Charles E. Matheny, IV, as its legal representative.

1580.   Plaintiff David Noble is a citizen of the United States and domiciled in the State of Texas. He is the step-father of Charles E. Matheny, IV.

1581.   Plaintiff Charles E. Matheny, III is a citizen of the United States and domiciled in the State of Washington. He is the father of Charles E. Matheny, IV.

1582.   As a result of the attack, and the death of Charles E. Matheny, IV, Plaintiffs Deborah Noble, David Noble and Charles E. Matheny, III have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

34.   **THE FEBRUARY 20, 2006 ATTACK –HINDIYAH**

**The Collado Family**

1583.   Jay T. Collado was a citizen of the United States and domiciled in the State of South Carolina when he was killed in Iraq.

1584.   On February 20, 2006, Jay T. Collado, aged 31, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1585.   Jay T. Collado was killed in the attack.

1586.   The weapon used to kill Jay T. Collado was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1587.   Plaintiff Judy Collado is a citizen of the United States and domiciled in the State of California. She is the widow of Jay T. Collado.

1588.   Plaintiff Kaiya Collado is a citizen of the United States and domiciled in the State of California. She is the daughter of Jay T. Collado.

1589.   As a result of the attack, and the death of Jay T. Collado, Plaintiffs Judy Collado and Kaiya Collado have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Waldeck Family**

1590.   Plaintiff Justin Waldeck is a citizen of the United States and domiciled in the State of Illinois.

1591.   On February 20, 2006, Justin Waldeck was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

266

1592.   The weapon used to injure Justin Waldeck was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1593.   As a result of the attack, Mr. Waldeck sustained shrapnel injuries to his right knee and significant injuries to his left hand. The metacarpal bones in his left hand had to be fused and he suffered nerve damage to his left pinky.

1594.   As a result of the attack, and the injuries he suffered, Plaintiff Justin Waldeck has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 35.   THE FEBRUARY 20, 2006 ATTACK – BAGHDAD

**The Kuhlmeier Family**

1595.   Daniel Kuhlmeier was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

1596.   February 20, 2006, Daniel Kuhlmeier, aged 30, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1597.   Daniel Kuhlmeier was killed in the attack.

1598.   The weapon used to kill Daniel Kuhlmeier was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1599.   Plaintiff Tanja Kuhlmeier is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Daniel Kuhlmeier.

1600.   Plaintiff Tanja Kuhlmeier brings an action individually and on behalf of the Estate of Daniel Kuhlmeier, as its legal representative.

1601.  Plaintiff K.K., a minor represented by her legal guardian, Tanja Kuhlmeier, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Daniel Kuhlmeier.

1602.  Plaintiff Robert J. Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. He is the father of Daniel Kuhlmeier.

1603.  Plaintiff Theresa A. Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of Daniel Kuhlmeier.

1604.  Plaintiff Theresa Ann Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Daniel Kuhlmeier.

1605.  Plaintiff Edward Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of Daniel Kuhlmeier.

1606.  Plaintiff Thomas Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of Daniel Kuhlmeier.

1607.  Plaintiff John Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania resident. He is the brother of Daniel Kuhlmeier.

1608.  Plaintiff Robert W. Kuhlmeier is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of Daniel Kuhlmeier.

1609.  As a result of the attack, and the death of Daniel Kuhlmeier, Plaintiffs Tanja Kuhlmeier, K.K., Robert J. Kuhlmeier, Theresa A. Kuhlmeier, Theresa Ann Kuhlmeier, Edward Kuhlmeier, Thomas Kuhlmeier, John Kuhlmeier, and Robert W. Kuhlmeier have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

36.    **THE FEBRUARY 26, 2006 ATTACK – BAGHDAD**

**The Farr Family**

1610.   Clay P. Farr was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

1611.   On February 26, 2006, Clay P. Farr, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1612.   Clay P. Farr was killed in the attack.

1613.   The weapon used to kill Clay P. Farr was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1614.   Plaintiff Patrick Farr is a citizen of the United States and domiciled in the State of California. He is the father of Clay P. Farr.

1615.   Plaintiff Patrick Farr brings an action individually and on behalf of the Estate of Clay P. Farr, as its legal representative.

1616.   Plaintiff Silver Farr is a citizen of the United States and domiciled in the State of California. She is the step-mother of Clay P. Farr.

1617.   Plaintiff Carrol Alderete is a citizen of the United States and domiciled in the State of California. She is the mother of Clay P. Farr.

1618.   Plaintiff Anthony Alderete is a citizen of the United States and domiciled in the State of California. He is the step-father of Clay P. Farr.

1619.   Plaintiff Chad Farr is a citizen of the United States and domiciled in the State of California. He is the brother of Clay P. Farr.

1620.   As a result of the attack, and the death of Clay P. Farr, Plaintiffs Patrick Farr, Silver

Farr, Carrol Alderete, Anthony Alderete and Chad Farr have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Hunter Family**

1621.   Wesley Hunter was a citizen of the United States and domiciled in the State of New York when he was injured in Iraq.

1622.   On February 26, 2006, Wesley Hunter, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1623.   Wesley Hunter was injured in the attack, and he died on September 18, 2008 from the injuries he sustained in the attack.

1624.   The weapon used to kill Wesley Hunter was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1625.   Plaintiff Rayanne Hunter is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Wesley Hunter.

1626.   Plaintiff Rayanne Hunter brings an action individually and on behalf of the Estate of Wesley Hunter, as its legal representative.

1627.   Plaintiff W.H., a minor represented by his legal guardian Rayanne Hunter, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Wesley Hunter.

1628.   Plaintiff T.H., a minor represented by her legal guardian Rayanne Hunter, is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Wesley Hunter.

1629.   As a result of the attack, and the death of Wesley Hunter, Plaintiffs Rayanne Hunter, W.H. and T.H. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 37.   THE MARCH 13, 2006 ATTACK – RUSTAMIYAH

**The Lewis Family**

1630.   Bryan A. Lewis was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

1631.   On March 13, 2006, Bryan A. Lewis, aged 32, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1632.   Bryan A. Lewis was killed in the attack.

1633.   The weapon used to kill Bryan A. Lewis was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1634.   Plaintiff Fabersha Flynt Lewis is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Bryan A. Lewis.

1635.   As a result of the attack, and the death of Bryan A. Lewis, Plaintiff Fabersha Flynt Lewis has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

### 38.   THE MARCH 26, 2006 ATTACK – BAGHDAD

**The Bershefsky Family**

1636.   Plaintiff Christopher Anthony Bershefsky is a citizen of the United States and domiciled in the State of Pennsylvania.

1637.   On March 26, 2006, Christopher Anthony Bershefsky, then 32, was a private contractor with Erinys International, a British security company, in Iraq. He had been in Iraq for approximately three months during this assignment. He had also previously served in the United States Marine Corps for six years with his discharge having taken place in 1998.

1638.   Mr. Bershefsky was driving an armored Ford F350 vehicle en route to his base after completing a mission a few miles outside the international zone in Baghdad. He was approximately two miles from Gate 2 to enter the international zone when his vehicle was struck by an EFP emplaced by Special Groups. The force of the blast blew through Mr. Bershefsky's door.

1639.   The weapon used to injure Mr. Bershefsky was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1640.   As a result of the attack, Mr. Bershefsky sustained a fractured pelvis, damaged sciatic nerve, muscle tissue loss due to debridement in his left leg, damages to his left foot which was rendered mostly inoperable, a torn urethra, and additional shrapnel injuries that have caused him to have a colostomy bag and suffer from urological deficits. In addition to the physical injuries he sustained, Mr. Bershefsky also suffers from severe depression, anxiety, and Post-Traumatic Stress Disorder.

1641.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Anthony Bershefsky has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 39.    THE APRIL 1, 2006 ATTACK – BAGHDAD

**The Devora-Garcia Family**

1642.   Israel Devora-Garcia was domiciled in the State of Texas when he was killed in

Iraq. He became a citizen of the United States posthumously.

1643.   On April 1, 2006, Israel Devora-Garcia, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated while he was conducting a dismounted patrol.

1644.   Israel Devora-Garcia was killed in the attack.

1645.   The weapon used to kill Israel Devora-Garcia was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1646.   Plaintiff Lorenzo Sandoval, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the step-father of Israel Devora-Garcia.

1647.   Plaintiff Lorenzo Sandoval, Sr. brings an action individually and on behalf of the Estate of Israel Devora-Garcia, as its legal representative.

1648.   Plaintiff Lorenzo Sandoval, Jr. is a citizen of the United States and domiciled in the State of Texas. He is the brother of Israel Devora-Garcia.

1649.   Plaintiff Adrian Sandoval is a citizen of the United States and domiciled in the State of Texas. He is the brother of Israel Devora-Garcia.

1650.   Plaintiff Rosa Esther Sandoval is a citizen of the United States and domiciled in the State of Kentucky. She is the sister of Israel Devora-Garcia.

1651.   As a result of the attack, and the death of Israel Devora-Garcia, Plaintiffs Lorenzo Sandoval, Sr., Lorenzo Sandoval, Jr., Adrian Sandoval and Rosa Esther Sandoval have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

273

40. **THE APRIL 12, 2006 ATTACK – MISIAB**

**The Bandhold Family**

1652.    Scott Bandhold was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1653.    On April 12, 2006, Scott Bandhold, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1654.    Scott Bandhold was killed in the attack.

1655.    The weapon used to kill Scott Bandhold was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1656.    Plaintiff Henry J. Bandhold, Sr. is a citizen of the United States and domiciled in the State of Florida. He is the father of Scott Bandhold.

1657.    Plaintiff Henry J. Bandhold, Sr. brings an action individually and on behalf of the Estate of Scott Bandhold, as its legal representative.

1658.    Plaintiff Afonso Bandhold is a citizen of the United States and domiciled in Portugal. He is the son of Scott Bandhold.

1659.    Plaintiff Mariana Bandhold is a citizen of the United States and domiciled in the State of California. She is the daughter of Scott Bandhold.

1660.    Plaintiff H. Joseph Bandhold is a citizen of the United States and domiciled in the State of New York. He is the brother of Scott Bandhold.

1661.    Plaintiff Donald C. Bandhold is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Scott Bandhold.

1662.    As a result of the attack, and the death of Scott Bandhold, Plaintiffs Henry J.

Bandhold, Sr., Afonso Bandhold, Mariana Bandhold, H. Joseph Bandhold and Donald C. Bandhold have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society, companionship, comfort, advice and counsel.

### 41. THE APRIL 16, 2006 ATTACK – BAWB ASH-SHAM

**The Stein Family**

1663.   Plaintiff Joshua P. Stein is a citizen of the United States and domiciled in the State of Texas.

1664.   On April 16, 2006, Joshua P. Stein, then 22, was serving in the U.S. military in Iraq. He was traveling in a convoy from the Iraqi Police compound conducting route clearance when the vehicle he was driving, a Bradley Fighting Vehicle that was the second in the convoy, was hit with a dual-array EFP emplaced by Special Groups on the left side of the vehicle on ASR Dover in the Bawb Ash-Sham village north of Baghdad.

1665.   The weapon used to injure Joshua P. Stein was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1666.   As a result of the attack, Mr. Stein sustained double above-the-knee amputations, two broken forearms, elbow replacement in his left arm, fasciotomy on his right arm, nerve and muscle damage to both forearms causing him to lose feeling in both of his forearms, and a TBI. Mr. Stein was in a coma for nearly a month following the attack and awoke from the coma in a military hospital in Texas after having been airlifted to Balad, Iraq, and Landstuhl, Germany.

1667. Joshua P. Stein has received extensive medical treatment at various hospitals including various surgeries and prosthetic fittings where he has spent years in treatment. He has

been unable to utilize prosthetics because his right leg was not long enough after the amputation, so he is wheelchair-bound for ambulation.

1668.   As a result of the attack, and the injuries he suffered, Plaintiff Joshua P. Stein has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1669.   Plaintiff Nicole B. Stein is a citizen of the United States and domiciled in the State of Texas. She is the wife of Joshua P. Stein.

1670.   Plaintiff R.M.S., a minor, represented by her legal guardian Joshua P. Stein, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Joshua P. Stein.

1671.   Plaintiff J.S.S., a minor, represented by her legal guardian Joshua P. Stein, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Joshua P. Stein.

1672.   Plaintiff Jesse P. Stein is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Joshua P. Stein.

1673.   As a result of the attack, and the injuries Joshua P. Stein suffered, Plaintiffs Nicole B. Stein, R.M.S., and J.S.S. and Jesse P. Stein have experienced severe mental anguish and extreme emotional pain and suffering.

**The Shelswell Family**

1674.   Plaintiff Michael Paul Alan Shelswell is a citizen of the United States and domiciled in the State of Colorado.

1675.   On April 16, 2006, Michael Paul Alan Shelswell, then 23, was serving in the U.S. military in Iraq. He was sitting in the rear of a Bradley Fighting Vehicle traveling in a convoy from the Iraqi Police compound conducting route clearance when the Bradley was hit with a dual-array

EFP emplaced by Special Groups on the left side of the vehicle on ASR Dover in the Bawb Ash-Sham village north of Baghdad.

1676.   The weapon used to injure Michael Paul Alan Shelswell was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1677.   As a result of the attack, Michael Paul Alan Shelswell was hit with the concussive blast in his face causing a TBI in addition to sustaining chemical burns to his face and upper body as the Bradley caught on fire as a result of the EFP detonation. He continues to suffer from vision and hearing difficulties, sustained memory loss memory loss, suffered a stroke in 2009 related to his injuries, and suffers from severe PTSD that has caused him to suffer from suicidal ideation in the past and makes it impossible for him to be in confined spaces.

1678.   As a result of the attack, and the injuries he suffered, Plaintiff Michael Paul Alan Shelswell has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 42.   THE APRIL 25, 2006 ATTACK – SADR CITY

**The Roberts Family**

1679.   Plaintiff Erik Roberts is a citizen of the United States and domiciled in the State of Pennsylvania.

1680.   On April 25, 2006, Erik Roberts, then 22, was serving in the U.S. military in Iraq.

1681.   He was driving in a convoy when an EFP emplaced by Special Groups struck his vehicle.

1682.   The weapon used to injure Mr. Roberts was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

1683.   Mr. Roberts' right femur was severed.

1684.   He had had more than one dozen surgeries to treat his right femur and has suffered numerous infections.

1685.   As a result of the attack, and the injuries he suffered, Plaintiff Erik Roberts has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1686.   Plaintiff E.C.R., a minor, represented by her legal representative Erik Roberts, is a citizen of the United States and domiciled in the State of Tennessee. She is the daughter of Erik Roberts.

1687.   Plaintiff Robin Roberts is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Erik Roberts.

1688.   Plaintiff James Craig Roberts is a citizen of the United States and domiciled in the State of Ohio. He is the father of Erik Roberts.

1689.   Plaintiff Cara Roberts is a citizen of the United States and domiciled in the State of Tennessee. She is the sister of Erik Roberts.

1690.   Plaintiff Colin Roberts is a citizen of the United States and domiciled in the State of Tennessee. He is the brother of Erik Roberts.

1691.   As a result of the attack, and the injuries Erik Roberts suffered, Plaintiffs E.C.R., Robin Roberts, James Craig Roberts, Cara Roberts and Colin Roberts have experienced severe mental anguish and extreme emotional pain and suffering.

**The Murphy Family**

1692.   Plaintiff Luke Murphy is a citizen of the United States and domiciled in the State of Florida.

278

1693.   On April 25, 2006, Luke, then 24, was serving in the U.S. military in Iraq.

1694.   He was driving in a convoy when an EFP emplaced by Special Groups struck his vehicle.

1695.   The weapon used to injure Mr. Murphy was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1696.   The explosive charge passed through Mr. Murphy's right leg, amputating it. Portions of his left leg muscles were destroyed, and he sustained a compound fracture of his left tibia and fibula, rendering his left leg useless.  Smoke began filling the inside of the vehicle.

1697.   The vehicle ultimately crashed into a wall and Mr. Murphy eventually found a way to exit the vehicle. He crawled on the ground, dragging the remaining stump of his right leg and injured left leg while he continued to experience significant blood loss.

1698.   Mr. Murphy has undergone over 30 procedures to address the injuries sustained in the attack, including those involving the additional shortening of the stump of his right leg and issues involving the problems that have developed with his left leg and foot.

1699.   Mr. Murphy has been prescribed anti-depressants and medication to assist with sleep issues.

1700.   As a result of the attack, and the injuries he suffered, Plaintiff Luke Murphy has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1701.   Plaintiff Willette Murphy is a citizen of the United States and domiciled in the State of Florida. She is the mother of Luke Murphy.

1702.   As a result of the attack, and the injuries Luke Murphy suffered, Plaintiff Willette Murphy has experienced severe mental anguish and extreme emotional pain and suffering.

**The Irwin Family**

1703.   Plaintiff Shane Irwin is a citizen of the United States and domiciled in the State of Florida.

1704.   On April 25, 2006, Shane Irwin, then 23, was serving in the U.S. military in Iraq.

1705.   He was driving in a convoy when an EFP emplaced by Special Groups struck his vehicle.

1706.   The weapon used to injure Mr. Irwin was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1707.   As a result of the attack, Mr. Irwin suffered lacerations, smoke inhalation and ruptured ear drums. He also suffers from a TBI and PTSD.

1708.   As a result of the attack, and the injuries he suffered, Plaintiff Shane Irwin has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1709.   Plaintiff T.R., a minor represented by her legal guardian, Shane Irwin, is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Shane Irwin.

1710.   Plaintiff Helen Marguerite Irwin is a citizen of the United States and domiciled in the State of Florida. She is the mother of Shane Irwin.

1711.   Plaintiff Nicole Irwin is a citizen of the United States and domiciled in the State of Florida. She is the sister of Shane Irwin.

1712.   As a result of the attack, and the injuries Shane Irwin suffered, Plaintiffs T.R., Helen Marguerite Irwin and Nicole Irwin have experienced severe mental anguish and extreme emotional pain and suffering.

43.     **THE APRIL 28, 2006 ATTACK – BAGHDAD**

**The Gomez Family**

1713.   Jose Gomez was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1714.   On April 28, 2006, Jose Gomez, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1715.   Jose Gomez was killed in the attack.

1716.   The weapon used to kill Jose Gomez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1717.   Plaintiff Maria Gomez is a citizen of the United States and domiciled in the State of New York.  She is the mother of Jose Gomez.

1718.   Plaintiff Maria Gomez brings an action individually and on behalf of the Estate of Jose Gomez, as its legal representative.

1719.   As a result of the attack, and the death of Jose Gomez, Plaintiff Maria Gomez has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

44.     **THE MAY 2, 2006 ATTACK – BAGHDAD**

**The Greer Family**

1720.   Plaintiff John Dana Greer is a citizen of the United States and domiciled in the State of Texas.

1721.   On May 2, 2006, John David Greer, then 49, was a civilian contractor with Blackwater Security Consulting in Iraq.

281

1722.   Mr. Greer was driving a South African Mamba vehicle in a four-vehicle caravan en route to the Iraqi Ministry of Finance when the vehicle he was driving was struck by five EFPs emplaced by Special Groups.

1723.   The weapon used to injure Mr. Greer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1724.   As a result of the attack, Mr. Greer lost his right hand from above the wrist and sustained third-degree burns on his upper chest.

1725.   He also suffered trauma to his back that necessitated a later L4 to S1 fusion.

1726.   Mr. Greer sustained a TBI injury that has impacted his short- and long-term memory.

1727.   He has been diagnosed with PTSD.

1728.   Mr. Greer received extensive medical treatment and has undergone various surgeries and prosthetic fittings.

1729.   As a result of the attack, and the injuries he suffered, Plaintiff John Dana Greer has experienced severe physical pain and mental anguish and extreme emotional pain and suffering.

1730.   Plaintiff Stephanie C. Sander is a citizen of the United States and domiciled in the State of California. She is the daughter of John David Greer.

1731.   Plaintiff Christopher D. Greer is a citizen of the United States and domiciled in the State of Georgia. He is the son of John David Greer.

1732.   Plaintiff Joseph L. Greer is a citizen of the United States and domiciled in the State of Arizona. He is the brother of John David Greer.

1733.   Plaintiff Carl K. Greer is a citizen of the United States and domiciled in the State of Arizona. He is the brother of John David Greer.

1734.   As a result of the attack, and the injuries John Dana Greer suffered, Plaintiffs Stephanie Sander, Christopher D. Greer, Joseph L. Greer, and Carl K. Greer have experienced severe mental anguish and extreme emotional pain and suffering.

**The Joyner Family**

1735.   Plaintiff Christopher Joyner is a citizen of the United States and domiciled in the State of North Carolina.

1736.   On May 2, 2006, Christopher Joyner, then 37, was a civilian contractor with Blackwater Security Consulting in Iraq.

1737.   Mr. Joyner was the Vehicle Commander riding in the passenger seat of the South African Mamba that was the fourth vehicle in a four-vehicle caravan en route to the Iraqi Ministry of Finance when the vehicle he was riding in was struck by an EFP array emplaced by Special Groups.

1738.   The weapon used to injure Mr. Joyner was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1739.   As a result of the attack, Mr. Joyner suffered multiple fragment wounds to his face and the globe of his right eye. He also sustained shrapnel wounds to his right upper extremity and left lower extremity.

1740.   The severity of the injuries to his right eye resulted in the loss of use of the eye, and the eye had to be surgically removed.

1741.   He also sustained sinus fractures, loss of teeth, and a large wound to his right jaw.

1742.   Mr. Joyner continues to have shrapnel lodged in his right forearm and his face.

1743.   Mr. Joyner has been diagnosed as having cognitive deficits as a result of the attack that impair his short-term memory and his ability to engage in abstract thinking and remaining on topic in conversation.

1744.   He has also received psychological treatment and counseling following the attack and was diagnosed with Acute Stress Disorder.

1745.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Joyner has experienced severe physical pain and mental anguish and extreme emotional pain and suffering.

1746.   Plaintiff Anne P. "Poppy" Joyner is a citizen of the United States and domiciled in the State of North Carolina. She is the wife of Christopher Joyner.

1747.   Plaintiff Necole Dunlow Smith is a citizen of the United States and domiciled in the State of North Carolina. She is the step-sister of Christopher Joyner.

1748.   As a result of the attack, and the injuries Christopher Joyner suffered, Plaintiffs Anne P. "Poppy" Joyner and Necole Dunlow Smith have experienced severe mental anguish and extreme emotional pain and suffering.

**The Mills Family**

1749.   Plaintiff Michael R. Mills is a citizen of the United States and domiciled in the State of West Virginia.

1750.   On May 2, 2006, Michael Mills, then 37, was a civilian contractor with Blackwater Security Consulting in Iraq.

1751.   Mr. Mills was one of two gunners riding in an armored vehicle that was struck by a multiple EFP array emplaced by Special Groups.

1752. The weapon used to injure Mr. Mills was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1753. As a result of the attack, Mr. Mills sustained blast and shrapnel injuries to his face, shoulder, and torso. It also caused a torn meniscus in his left knee.

1754. Mr. Mills received extensive medical treatment and underwent various surgeries over a number of years.

1755. As a result of the attack, and the injuries he suffered, Plaintiff Michael Mills has experienced severe physical pain and mental anguish and extreme emotional pain and suffering.

1756. Plaintiff M.R.M., a minor, represented by his legal guardian Michael Mills, is a citizen of the United States and domiciled in the State of New Jersey. He is the son of Michael Mills.

1757. Plaintiff M.R.M., a minor, represented by his legal guardian Michael Mills, is a citizen of the United States and domiciled in the State of New Jersey. He is the son of Michael Mills.

1758. As a result of the attack, and the injuries Michael Mills suffered, Plaintiffs M.R.M. and M.R.M. have experienced severe mental anguish and extreme emotional pain and suffering.

### 45. THE MAY 3, 2006 ATTACK – NASIRIYAH

**The Palinsky Family**

1759. Jerry A. Palinsky, Jr. was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

1760. On May 3, 2006, Jerry A. Palinsky, Jr., aged 42, was working as a civilian contractor with EODT in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1761. Jerry A. Palinsky, Jr. was killed in the attack.

1762. The weapon used to kill Jerry A. Palinsky, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1763. Plaintiff Eddie Jo Palinsky is a citizen of the United States and domiciled in the State of Washington. She is the widow of Jerry A. Palinsky, Jr.

1764. Plaintiff Eddie Jo Palinsky brings an action individually and on behalf of the Estate of Jerry A. Palinsky, Jr., as its legal representative.

1765. Plaintiff Jerry A. Palinsky, II is a citizen of the United States and domiciled in the State of Oregon. He is the son of Jerry A. Palinsky, Jr.

1766. Plaintiff Adina Palinsky is a citizen of the United States and domiciled in the State of Washington. She is the daughter of Jerry A. Palinsky, Jr.

1767. Plaintiff Jerry A. Palinsky, Sr. is a citizen of the United States and domiciled in the State of Washington. He is the father of Jerry A. Palinsky, Jr.

1768. Plaintiff Kathleen Hoke is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Jerry A. Palinsky, Jr.

1769. Plaintiff Joel Palinsky is a citizen of the United States and domiciled in the State of Washington. He is the brother of Jerry A. Palinsky, Jr.

1770. Plaintiff Karaleen Herb is a citizen of the United States and domiciled in the State of Oregon. She is the sister of Jerry A. Palinsky, Jr.

1771.   As a result of the attack, and the death of Jerry A. Palinsky, Jr., Plaintiffs Eddie Jo Palinsky, Jerry A. Palinsky, II, Adina Palinsky, Jerry A. Palinsky, Sr., Kathleen Hoke, Joel Palinsky and Karaleen Herb have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Stoneking Family**

1772.   Plaintiff Eric Brandon Stoneking is a citizen of the United States and domiciled in the State of Virginia.

1773.   On May 3, 2006, Eric Brandon Stoneking, then 26, was working as a civilian contractor with EODT in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1774.   The weapon used to injure Eric Brandon Stoneking was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1775.   As a result of the attack, Mr. Stoneking sustained a TBI, the loss of two tendons in his right arm, major facial trauma on the left side to his upper mandible and lower jaw, shrapnel and burns to the face, left shoulder, and torso.   Additionally, Mr. Stoneking has suffered from PTSD.

1776.   Mr. Stoneking has received extensive medical treatment at various hospitals for the extensive injuries he sustained on May 3, 2006.

1777.   As a result of the attack, and the injuries he suffered, Plaintiff Eric Brandon Stoneking has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1778.   Plaintiff Carrie Sue Stoneking is a citizen of the United States and domiciled in Germany. She is the mother of Eric Brandon Stoneking.

1779.   Plaintiff Faith Renee Stoneking is a citizen of the United States and domiciled in Germany. She is the sister of Eric Brandon Stoneking.

1780.   As a result of the attack, and the injuries Eric Brandon Stoneking suffered, Plaintiffs Carrie Sue Stoneking and Faith Renee Stoneking have experienced severe mental anguish and extreme emotional pain and suffering.

### 46.   THE MAY 5, 2006 ATTACK – BAGHDAD

**The Saenz Family**

1781.   Carlos N. Saenz was a citizen of the United States and domiciled in the State of Nevada when he was killed in Iraq.

1782.   On May 5, 2006, Carlos N. Saenz, aged 46, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1783.   Carlos N. Saenz was killed in the attack.

1784.   The weapon used to kill Carlos N. Saenz was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1785.   Plaintiff Nanette Saenz is a citizen of the United States and domiciled in the State of Nevada. She is the widow of Carlos N. Saenz.

1786.   Plaintiff Nanette Saenz brings an action individually and on behalf of the Estate of Carlos N. Saenz, as its legal representative.

1787.   Plaintiff Juan Saenz is a citizen of the United States and domiciled in the State of Nevada. He is the son of Carlos N. Saenz.

1788.   Plaintiff Joaqina Saenz Chorens is a citizen of the United States and domiciled in the State of Nevada. She is the mother of Carlos N. Saenz.

1789.   Plaintiff Luz Maria Estrada-Pulido is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

1790.   Plaintiff Frances Catherine Castro is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

1791.   Plaintiff Elva Espinoza is a citizen of the United States and domiciled in the State of Nevada. She is the sister of Carlos N. Saenz.

1792.   As a result of the attack, and the death of Carlos N. Saenz, Plaintiffs Nanette Saenz, Juan Saenz, Joaqina Saenz Chorens, Luz Maria Estrada-Pulido, Frances Catherine Castro and Elva Espinoza have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Vacho Family**

1793.   Nathan J. Vacho was a citizen of the United States and domiciled in the State of Wisconsin when he was killed in Iraq.

1794.   On May 5, 2006, Nathan J. Vacho, aged 29, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1795.   Nathan J. Vacho was killed in the attack.

1796.   The weapon used to kill Nathan J. Vacho was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1797.   Amanda Vacho is a citizen of the United States and domiciled in the State of Wisconsin. She is the legal guardian of Plaintiff E.V. and co-legal representative of the Estate of

Nathan J. Vacho.

1798.  Amanda Vacho brings an action solely on behalf of Plaintiff E.V., minor, and on behalf of the Estate of Nathan J. Vacho, as its co-legal representative.

1799.  Plaintiff E.V., a minor represented by her legal guardian Amanda Vacho, is a citizen of the United States and domiciled in the State of Wisconsin. She is the daughter of Nathan J. Vacho.

1800.  Plaintiff Bayli Vacho is a citizen of the United States and domiciled in the State of Wisconsin. She is the daughter of Nathan J. Vacho.

1801.  Plaintiff Bayli Vacho brings an action individually and on behalf of the Estate of Nathan J. Vacho, as its co-legal representative.

1802.  Plaintiff John Vacho is a citizen of the United States and domiciled in the State of Wisconsin. He is the father of Nathan J. Vacho.

1803.  Carol Vacho was a citizen of the United States at the time of the death of Nathan J. Vacho. She was the mother of Nathan J. Vacho. She died on November 9, 2013.

1804.  Plaintiff John Vacho brings an action individually and on behalf of the Estate of Carol Vacho, as its legal representative.

1805.  Plaintiff Ashley Vacho Leslie is a citizen of the United States and domiciled in the State of Wisconsin. She is the sister of Nathan J. Vacho.

1806.  As a result of the attack, and the death of Nathan J. Vacho, the late Carol Vacho experienced, and Plaintiffs E.V., Bayli Vacho, John Vacho and Ashley Vacho Leslie have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's/son's/brother's society, companionship, comfort, advice and counsel.

47.  **THE MAY 6, 2006 ATTACK – DIWANIYAH**

**The Veverka Family**

1807.  David M. Veverka was a citizen of the United States and domiciled in the State of Pennsylvania when he was killed in Iraq.

1808.  On May 6, 2006, David M. Veverka, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1809.  David M. Veverka was killed in the attack.

1810.  The weapon used to kill David M. Veverka was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1811.  Plaintiff Ronald Veverka is a citizen of the United States and domiciled in the State of Pennsylvania. He is the father of David M. Veverka.

1812.  Plaintiff Carol Polley is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of David M. Veverka.

1813.  Plaintiff Keith Veverka is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of David M. Veverka.

1814.  Plaintiff Douglas Veverka is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of David M. Veverka.

1815.  Plaintiff Sandra Soliday is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of David M. Veverka.

1816.  As a result of the attack, and the death of David M. Veverka, Plaintiffs Ronald Veverka, Carol Polley, Keith Veverka, Douglas Veverka and Sandra Soliday have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's

society, companionship, comfort, advice and counsel.

### 48.    THE MAY 14, 2006 ATTACK – BAGHDAD

**The West Family**

1817.   Robert H. West was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

1818.   On May 14, 2006, Robert H. West, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1819.   Robert H. West was killed in the attack.

1820.   The weapon used to kill Robert H. West was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1821.   Plaintiff Jeanette West is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Robert H. West.

1822.   Plaintiff Jeanette West brings an action individually and on behalf of the Estate of Robert H. West, as its legal representative.

1823.   Plaintiff Shelby West is a citizen of the United States and domiciled in the State of Colorado. She is the daughter of Robert H. West.

1824.   As a result of the attack, and the death of Robert H. West, Plaintiffs Jeanette West and Shelby West have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Engeman Family**

1825.   John W. Engeman was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

1826.   On May 14, 2006, John W. Engeman, aged 45, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1827.   John W. Engeman was killed in the attack.

1828.   The weapon used to kill John W. Engeman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1829.   Plaintiff Donna Engeman is a citizen of the United States and domiciled in the State of Texas. She is the widow of John W. Engeman.

1830.   Plaintiff Donna Engeman brings an action individually and on behalf of the Estate of John W. Engeman, as its legal representative.

1831.   As a result of the attack, and the death of John W. Engeman, Plaintiff Donna Engeman has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

### 49.   THE MAY 21, 2006 ATTACK – MOSUL

**The Shumate Family**

1832.   Plaintiff Shannon Shumate is a citizen of the United States and domiciled in the State of Missouri.

1833.   On May 21, 2006, Shannon Shumate, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1834.   The weapon used to injure Mr. Shumate was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1835.   As a result of the attack, Shannon Shumate sustained injuries to his head and back and suffered hearing loss. He also suffers from PTSD.

1836.   Mr. Shumate continues to experience pain in his back as well as ringing in his ears and hearing loss. He continues to suffer from PTSD and has flash backs when he drives at night.

1837.   As a result of the attack, and the injuries he suffered, Plaintiff Shannon Shumate has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1838.   Plaintiff Lauren Shumate is a citizen of the United States and domiciled in the State of Kansas. She is the daughter of Shannon Shumate.

1839.   Plaintiff L.S., a minor, represented by her legal guardian Shannon Shumate, is a citizen of the United States and domiciled in the State of Missouri. She is the daughter of Shannon Shumate.

1840.   Plaintiff L.S., a minor, represented by his legal guardian Shannon Shumate, is a citizen of the United States and domiciled in the State of Missouri. He is the son of Shannon Shumate.

1841.   As a result of the attack, and the injuries Shannon Shumate has suffered, Plaintiffs Lauren Shumate, L.S. and L.S. have experienced severe mental anguish and extreme emotional pain and suffering.

**50.   THE MAY 25, 2006 ATTACK – BAGHDAD**

**The DiCenzo Family**

1842.   Douglas Andrew DiCenzo was a citizen of the United States and domiciled in the State of New Hampshire.

1843.   On May 25, 2006, Douglas Andrew DiCenzo, then 30, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1844.   Douglas Andrew DiCenzo was killed in the attack.

1845.   The weapon used to kill Douglas Andrew DiCenzo was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1846.   Plaintiff Nicole DiCenzo is a citizen of the United States and domiciled in the State of Georgia. She is the wife of Douglas Andrew DiCenzo.

1847.   Plaintiff Nicole DiCenzo brings an action individually and on behalf of the Estate of Douglas Andrew DiCenzo, as its legal representative.

1848.   Plaintiff D.D., a minor, represented by his legal guardian, Nicole DiCenzo, is a citizen of the United States and domiciled in the State of Georgia. He is the son of Douglas Andrew DiCenzo.

1849.   Plaintiff Larry DiCenzo is a citizen of the United States and domiciled in the State of Florida. He is the father of Douglas Andrew DiCenzo.

1850.   Plaintiff Kathy Crane is a citizen of the United States and domiciled in the State of New Hampshire. She is the mother of Douglas Andrew DiCenzo.

1851.   As a result of the attack, and the death of Douglas Andrew DiCenzo, Plaintiffs Nicole DiCenzo, D.D., Larry DiCenzo, and Kathy Crane have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's society, companionship, comfort, advice and counsel.

**The Blair Family**

1852.   Robert Edward Blair was a citizen of the United States and domiciled in the State of Florida.

1853. On May 25, 2006, Robert Edward Blair, then 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1854. Robert Edward Blair was killed in the attack.

1855. The weapon used to kill Robert Edward Blair was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1856. Plaintiff Johnny Allen Blair is a citizen of the United States and domiciled in the State of Montana. He is the father of Robert Edward Blair.

1857. Plaintiff Johnny Allen Blair brings an action individually and on behalf of the Estate of Robert Edward Blair, as its legal representative.

1858. Plaintiff Charlee Blair Webb is a citizen of the United States and domiciled in the State of Florida. She is the sister of Robert Edward Blair.

1859. As a result of the attack, and the death of Robert Edward Blair, Plaintiffs Johnny Allen Blair and Charlee Blair Webb have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 51. THE JUNE 5, 2006 ATTACK – BAGHDAD

**The Lawson Family**

1860. Isaac S. Lawson was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

1861. On June 5, 2006, Isaac S. Lawson, aged 35, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1862. Isaac S. Lawson was killed in the attack.

1863.  The weapon used to kill Isaac S. Lawson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1864.  Plaintiff Suzzettee Lawson is a citizen of the United States and domiciled in the State of California. She is the widow of Isaac S. Lawson.

1865.  Plaintiff Suzzettee Lawson brings an action individually and on behalf of the Estate of Isaac S. Lawson, as its legal representative.

1866.  Plaintiff C.L., a minor represented by her legal guardian Suzzettee Lawson, is a citizen of the United States and domiciled in the State of California. She is the daughter of Isaac S. Lawson.

1867.  As a result of the attack, and the death of Isaac S. Lawson, Plaintiffs Suzzettee Lawson and C.L. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Eastlund Family**

1868.  Plaintiff Arne Eastlund is a citizen of the United States and domiciled in the State of California.

1869.  On June 5, 2006, Arne Eastlund, age 45, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP emplaced by Special Groups.

1870.  The weapon used to injure Mr. Eastlund was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1871.  Following the attack, pieces of one of the occupants on the vehicle, Isaac Lawson, landed on Mr. Eastlund's lap.

1872.   As a result of the attack, Mr. Eastlund sustained significant injuries to his back.

1873.   He also sustained burns to his body and has suffered hearing loss.

1874.   He has undergone multiple surgeries and procedures to address the injuries to his back. He continues to seek treatment for his back and neck.

1875.   Mr. Eastlund has been diagnosed with a TBI and PTSD.

1876.   As a result of the attack, and the injuries he suffered, Plaintiff Arne Eastlund has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1877.   Plaintiff Tina Eastlund is a citizen of the United States and domiciled in the State of California. She is the wife of Arne Eastlund.

1878.   Plaintiff Sven Eastlund is a citizen of the United States and domiciled in the State of California. He is the son of Arne Eastlund.

1879.   Plaintiff Taylor Eastlund is a citizen of the United States and domiciled in the State of California. She is the step-daughter of Arne Eastlund.

1880.   Plaintiff Elizabeth Jo Eastlund is a citizen of the United States and domiciled in the State of California. She is the mother of Arne Eastlund.

1881.   As a result of the attack, and the injuries Arne Eastlund suffered, Plaintiffs Tina Eastlund, Sven Eastlund, Taylor Eastlund, and Elizabeth Jo Eastlund have experienced severe mental anguish and extreme emotional pain and suffering.

**The Adamson Family**

1882.   Plaintiff Matthew Adamson is a citizen of the United States and domiciled in the State of Oklahoma.

1883. On June 5, 2006, Matthew Adamson, age 21, was serving in the U.S. military in Iraq. He was the gunner in a vehicle traveling in the same convoy as Arne Eastlund when Arne Eastlund's vehicle was struck by an EFP emplaced by Special Groups. ("the Adamson vehicle")

1884. As a result of the explosion, Mr. Adamson was thrown back, injuring his head.

1885. The weapon used to injure Mr. Adamson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1886. Mr. Adamson has experienced frequent and severe headaches. He also experiences memory loss.

1887. Mr. Adamson has been diagnosed with a modified TBI.

1888. He has also been diagnosed with PTSD.

1889. Mr. Adamson has sought counseling and has been prescribed medication, including anti-depressants, to treat his condition.

1890. As a result of the attack, and the injuries he suffered, Plaintiff Matthew Adamson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1891. Plaintiff R.A., a minor represented by his legal guardian Matthew Adamson, is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Matthew Adamson.

1892. Plaintiff Kathy Adamson is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of Matthew Adamson.

1893. Plaintiff Richard Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the father of Matthew Adamson.

1894.   Plaintiff Christopher Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

1895.   Plaintiff Jeffrey Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

1896.   Plaintiff Justin Adamson is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Matthew Adamson.

1897.   As a result of the attack, and the injuries Matthew Adamson suffered, Plaintiffs R.A., Kathy Adamson, Richard Adamson, Christopher Adamson, Jeffrey Adamson, and Justin Adamson have experienced severe mental anguish and extreme emotional pain and suffering.

**The Shepard Family**

1898.   Plaintiff James Shepard is a citizen of the United States and domiciled in the State of Oklahoma.

1899.   On June 5, 2006, James Shepard, age 32, was serving in the U.S. military in Iraq. He was the Truck Commander of the Adamson vehicle, traveling in the same convoy as Arne Eastlund when Arne Eastlund's vehicle was struck by an EFP emplaced by Special Groups.

1900.   The weapon used to injure Mr. Shepard was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1901.   Following the attack, the Adamson vehicle traveled towards the location where Arne Eastlund's vehicle had stopped.

1902.   After exiting his vehicle, James Shepard went to the vehicle and opened the door. There, he saw Isaac Lawson moving, despite the fact that there were pieces of Lawson's face or neck visible in the interior of the vehicle.

1903. James Shepard helped remove Isaac Lawson from the vehicle.

1904. James Shepard continues to vividly recall the attack and his actions as well as what he witnessed following the attack.

1905. Mr. Shepard has experienced extreme survivor's guilt.

1906. He has been diagnosed with PTSD and has sought counseling.

1907. As a result of the attack, and the injuries he suffered, Plaintiff James Shepard has experienced severe mental anguish and extreme emotional pain and suffering.

**The Sklaney Family**

1908. Plaintiff John P. Sklaney, III is a citizen of the United States and domiciled in the State of Oklahoma.

1909. On June 5, 2006, John Sklaney, age 35, was serving in the U.S. military in Iraq. He was the driver of the Adamson vehicle, traveling in the same convoy as Arne Eastlund when Arne Eastlund's vehicle was struck by an EFP emplaced by Special Groups.

1910. The weapon used to injure Mr. Sklaney was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1911. Following the attack, the Adamson vehicle traveled towards the location where the Arne Eastlund's vehicle had stopped.

1912. After exiting his vehicle, John P. Sklaney, III went to Arne Eastlund's vehicle. He saw Isaac Lawson, including the fact that Isaac Lawson's leg had been severed.

1913. Together with James Shepard, John P. Sklaney, III removed Isaac Lawson from the vehicle. Mr. Sklaney helped to place Isaac Lawson on a stretcher.

1914. Mr. Sklaney has experienced survivor's guilt.

1915.   He has experienced memory loss and has been diagnosed with PTSD.

1916.   Mr. Sklaney has sought counseling and has been prescribed medication to treat depression.

1917.   As a result of the attack, and the injuries he suffered, Plaintiff John P. Sklaney, III has experienced severe mental anguish and extreme emotional pain and suffering.

### 52.    THE JUNE 8, 2006 ATTACK – AL KUT

**The Crabtree Family**

1918.   Daniel Crabtree was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

1919.   On June 8, 2006, Daniel Crabtree, aged 31, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1920.   Daniel Crabtree was killed in the attack.

1921.   The weapon used to kill Daniel Crabtree was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1922.   Plaintiff Kathy Crabtree is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Daniel Crabtree.

1923.   Plaintiff Kathy Crabtree brings an action individually and on behalf of the Estate of Daniel Crabtree, as its legal representative.

1924.   Plaintiff M.C., a minor represented by her legal guardian, Kathy Crabtree, is a citizen of the United States and domiciled in the State of Ohio. She is the daughter of Daniel Crabtree.

1925.   Plaintiff Judy Ann Crabtree is a citizen of the United States and domiciled in the

State of Georgia. She is the mother of Daniel Crabtree.

1926.   Plaintiff Ronald Wayne Crabtree is a citizen of the United States and domiciled in the State of Ohio. He is the father of Daniel Crabtree.

1927.   Plaintiff Debra Wigbels is a citizen of the United States and domiciled in the State of Georgia. She is the sister of Daniel Crabtree.

1928.   Plaintiff Ronald William Crabtree is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Daniel Crabtree.

1929.   As a result of the attack, and the death of Daniel Crabtree, Plaintiffs Kathy Crabtree, M.C., Judy Ann Crabtree, Ronald Wayne Crabtree, Debra Wigbels and Ronald William Crabtree have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

### 53.   THE JUNE 9, 2006 ATTACK – DIWANIYAH

**The Slaven Family**

1930.   Benjamin J. Slaven was a citizen of the United States and domiciled in the State of Nebraska when he was killed in Iraq.

1931.   On June 9, 2006, Benjamin J. Slaven aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1932.   Benjamin J. Slaven was killed in the attack.

1933.   The weapon used to kill Benjamin J. Slaven was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1934.   Plaintiff Judy Huenink is a citizen of the United States and domiciled in the State of Nebraska. She is the mother of Benjamin J. Slaven.

1935.   Plaintiff Judy Huenink brings an action individually and on behalf of the Estate of Benjamin J. Slaven, as its legal representative.

1936.   Plaintiff Sean Slaven is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Benjamin J. Slaven.

1937.   Plaintiff Chastity Dawn Laflin is a citizen of the United States and domiciled in the State of Nebraska. She is the sister of Benjamin J. Slaven.

1938.   Plaintiff Nicole Landon is a citizen of the United States and domiciled in the State of Nebraska. She is the sister of Benjamin J. Slaven.

1939.   Plaintiff Misti Fisher is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Benjamin J. Slaven.

1940.   As a result of the attack, and the death of Benjamin J. Slaven, Plaintiffs Judy Huenink, Sean Slaven, Chastity Dawn Laflin, Nicole Landon and Misti Fisher have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 54.   THE JUNE 10, 2006 ATTACK – RUSTAMIYAH

**The Friedrich Family**

1941.   Plaintiff Steven J. Friedrich is a citizen of the United States and domiciled in the State of Florida.

1942.   On June 10, 2006, then 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1943.   The weapon used to injure Mr. Friedrich was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1944.   As a result of the attack, Mr. Friedrich sustained bilateral eardrum perforations and shrapnel injuries to his left forehead, right shoulder, and right leg.

1945.   He has undergone multiple surgeries on his ears and suffers from tinnitus.

1946.   As a result of the attack, and the injuries he suffered, Plaintiff Steven J. Friedrich has experienced severe physical pain and mental anguish and extreme emotional pain and suffering.

1947.   Plaintiff A.F., a minor, represented by her legal guardian Steven J. Friedrich, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of Steven J. Friedrich.

1948.   As a result of the attack, and the injuries Steven J. Friedrich suffered, Plaintiff A.F. has experienced severe mental anguish and extreme emotional pain and suffering.

## 55.   THE JULY 11, 2006 ATTACK – KARBALA

**The Derise Family**

1949.   Plaintiff Philip Alan Derise is a citizen of the United States and domiciled in the State of Washington.

1950.   On July 11, 2006, Philip Alan Derise, then 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling outside of Karbala.

1951.   The weapon used to injure Philip Alan Derise was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1952.   As a result of the attack, Mr. Derise suffered a loss of hearing and eyesight.

1953.   Mr. Derise was also diagnosed with a concussion, a TBI, and PTSD.

1954.   As a result of the attack, and the injuries he suffered, Plaintiff Philip Alan Derise has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 56.   THE JULY 15, 2006 ATTACK – BAGHDAD

**The Contreras Family**

1955.   Andres J. Contreras was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

1956.   On July 15, 2006, Andres J. Contreras, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

1957.   Andres J. Contreras was killed in the attack.

1958.   The weapon used to kill Andres J. Contreras was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1959.   Plaintiff Norma Alicia Contreras is a citizen of the United States and domiciled in the State of California. She is the mother of Andres J. Contreras.

1960.   Plaintiff Jonathan Contreras, Sr. is a citizen of the United States and domiciled in the State of California. He is the father of Andres J. Contreras.

1961.   Plaintiff Carlos Contreras is a citizen of the United States and domiciled in the State of California. He is the brother of Andres J. Contreras.

1962.   Plaintiff Cesar Contreras is a citizen of the United States and domiciled in the State of California. He is the brother of Andres J. Contreras.

1963.   Plaintiff Hernan Contreras is a citizen of the United States and domiciled in the State of California. He is the brother of Andres J. Contreras.

1964.   Plaintiff Noel Contreras is a citizen of the United States and domiciled in the State of California. He is the brother of Andres J. Contreras.

1965.   Plaintiff Dannyel Contreras is a citizen of the United States and domiciled in the State of California. He is the brother of Andres J. Contreras.

1966.   As a result of the attack, and the death of Andres J. Contreras, Plaintiffs Norma Alicia Contreras, Jonathan Contreras, Sr., Carlos Contreras, Cesar Contreras, Hernan Contreras, Noel Contreras and Dannyel Contreras have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 57.   THE JULY 17, 2006 ATTACK – BAGHDAD

**The Pugh Family**

1967.   Kenneth Irving Pugh was a citizen of the United States and domiciled in the State of Texas.

1968.   On July 17, 2006, Kenneth Irving Pugh, then 39, was serving in the U.S. military in Iraq when his checkpoint in southeast Baghdad came under sniper fire from JAM Special Groups.

1969.   Kenneth Irving Pugh was killed in the attack from a gunshot wound to his head.

1970.   The terror cell operatives that fired at Kenneth Irving Pugh were trained by Hezbollah and funded and armed by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF, as their proxy.

1971.   Plaintiff Sharon M. Pugh is a citizen of the United States and domiciled in the State of Kentucky. She is the widow of Kenneth Irving Pugh.

1972.   Plaintiff Sharon M. Pugh brings an action individually and on behalf of the Estate of Kenneth Irving Pugh, as its legal representative.

1973.   Plaintiff Britney E. Carter is a citizen of the United States and domiciled in the State of Kentucky. She is the stepdaughter of Kenneth Irving Pugh.

1974.   Plaintiff Alicia Pearson is a citizen of the United States and domiciled in the State of Kentucky. She is the stepdaughter of Kenneth Irving Pugh.

1975.   As a result of the attack, and the death of Kenneth Irving Pugh, Plaintiffs Sharon M. Pugh, Britney E. Carter, and Alicia Pearson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 58.    THE JULY 22, 2006 ATTACK – SADR CITY

**The Evans Family**

1976.   Plaintiff Daniel J. Evans is a citizen of the United States and domiciled in the State of Texas.

1977.   On July 22, 2006, Daniel J. Evans, then19, was serving in the U.S. military in Iraq. He was riding in the second vehicle of a four-vehicle convoy in the north-bound lane of Route Pluto en route to providing assistance to another unit involved in a previous IED attack in the vicinity of Sadr City when the M1114 vehicle in which he was riding in the rear passenger-side seat was hit by an EFP emplaced by Special Groups from the right side of the vehicle.

1978.   The weapon used to injure Daniel J. Evans was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1979.   As a result of the attack, Daniel J. Evans sustained a TBI having been rendered unconscious from the blast for approximately 16 hours. He also suffered from a collapsed left lung and injuries to his left shoulder. He was also diagnosed with PTSD.

1980.   As a result of the attack, and the injuries he suffered, Plaintiff Daniel J. Evans has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1981.   Plaintiff Justin Evans is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Daniel J. Evans.

1982.   As a result of the attack, and the injuries Daniel J. Evans suffered, Plaintiff Justin Evans has experienced severe mental anguish and extreme emotional pain and suffering.

### 59.   THE JULY 25, 2006 ATTACK – BAGHDAD

**The Graves Family**

1983.   Joseph A. Graves was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

1984.   On July 25, 2006, Joseph A. Graves, aged 21, was serving in the U.S. military in Iraq when the convoy he was travelling came under RPG and small arms fire from JAM Special Groups operatives.

1985.   Joseph A. Graves was killed in the attack.

1986.   Joseph A. Graves was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

1987.   Plaintiff Kevin Graves is a citizen of the United States and domiciled in the State of California. He is the father of Joseph A. Graves.

1988.   As a result of the attack, and the death of Joseph A. Graves, Plaintiff Kevin Graves has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

**60.     THE AUGUST 26, 2008 ATTACK – SADR CITY**

**The Koulchar Family**

1989.   Plaintiff Nicholas Gene Koulchar is a citizen of the United States and domiciled in the State of Michigan.

1990.   On August 26, 2008, Nicholas Gene Koulchar, then 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. Nicholas Gene Koulchar was the gunner in an RG-33 armored vehicle that was the lead vehicle in a convoy conducting route-clearing in the vicinity of Route Grizzlies and Route Gold in Sadr City. Nicholas Gene Koulchar's vehicle was struck by an EFP that had been mounted at a height of 86 inches in a shack near the side of the road.

1991.   The weapon used to injure Nicholas Gene Koulchar was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

1992.   As a result of the attack, Mr. Koulchar sustained traumatic bilateral above-knee amputations, scarring on his lower body and back, genital trauma, facial scars, ulnar neuropathy and dysesthesia in his right hand, tinnitus, and PTSD. He was transported to a Medical Aid Station in Sadr City and then to central Baghdad where he was stabilized following multiple surgeries and then airlifted to Landstuhl, Germany and then to Walter Reed Army Medical Center in Washington, DC.

1993. Nicholas Gene Koulchar has received extensive medical treatment at various hospitals including various surgeries and prosthetic fittings where he has spent years in treatment.

1994. As a result of the attack, and the injuries he suffered, Nicholas Gene Koulchar has experienced severe physical and mental anguish and extreme emotional pain and suffering.

1995. Plaintiff Michael Koulchar is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Nicholas Gene Koulchar.

1996. As a result of the attack, and the injuries Nicholas Gene Koulchar suffered, Plaintiff Michael Koulchar has experienced severe mental anguish and extreme emotional pain and suffering.

**61. THE AUGUST 26, 2006 ATTACK – JISR DIYALA**

**The Zayas Family**

1997. Edgardo Zayas was a citizen of the United States and domiciled in the Commonwealth of Massachusetts.

1998. On August 26, 2006, Edgardo Zayas, then 30, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. Edgardo Zayas was in a five-vehicle convoy with and was serving as the driver in the lead M1114 in the convoy.

1999. Edgardo Zayas was killed in the attack.

2000. The weapon used to injure Edgardo Zayas was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2001. Plaintiff Suheil Campbell is a citizen of the United States and domiciled in the State of Massachusetts. She is the widow of Edgardo Zayas.

2002. Plaintiff Suheil Campbell brings an action individually and on behalf of the Estate of Edgardo Zayas, as its legal representative.

2003. Plaintiff Alexander Zayas is a citizen of the United States and domiciled in the State of Massachusetts. He is the son of Edgardo Zayas.

2004. Plaintiff A.Z.-C., a minor, represented by her legal guardian Suheil Campbell, is a citizen of the United States and domiciled in the State of Massachusetts. She is the daughter of Edgardo Zayas.

2005. As a result of the attack, and the death of Edgardo Zayas, Plaintiffs Suheil Campbell, Alexander Zayas, and A.Z.-C. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

## 62. THE SEPTEMBER 3, 2006 ATTACK – BAGHDAD

### The Andino Family

2006. Edwin A. Andino, Jr. was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

2007. On September 3, 2006, Edwin A. Andino, Jr., aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2008. Edwin A. Andino, Jr. was killed in the attack.

2009. The weapon used to kill Edwin A. Andino, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2010. Plaintiff Cathy Andino is a citizen of the United States and domiciled in the State of Virginia. She is the mother of Edwin A. Andino, Jr.

2011. Plaintiff Cathy Andino brings an action individually and on behalf of the Estate of Edwin A. Andino, Jr., as its legal representative.

2012. As a result of the attack, and the death of Edwin A. Andino, Jr., Plaintiff Cathy Andino has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 63. THE SEPTEMBER 20, 2006 ATTACK – BAGHDAD

**The Puertas Family**

2013. Plaintiff Luis Junior Puertas is a citizen of the United States and domiciled in the State of Florida.

2014. On September 20, 2006, Luis Junior Puertas, then 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. He was the driver of the lead vehicle in a four-vehicle convoy traveling north on Route Gold adjacent to the Khansa neighborhood in the eastern portion of Baghdad when a multiple-array EFP planted inside the bottom of a newly constructed light pole detonated next to the vehicle.

2015. The weapon used to injure Luis Junior Puertas was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2016. As a result of the attack, Mr. Puertas lost his left foot as a result of an EFP entering the vehicle and sustained significant damage to his right leg as well. He underwent above-the-knee amputations on both legs as a result of the damages inflicted by the EFP. He also sustained a loss of equilibrium due to damage sustained to his ears.

2017. Mr. Puertas has received extensive medical treatment at various hospitals including various surgeries and prosthetic fittings where he has spent months in treatment.

2018.   As a result of the attack, and the injuries he suffered, Plaintiff Luis Junior Puertas has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2019.   Plaintiff Lidia Sullivan is a citizen of the United States and domiciled in the State of Florida. She is the mother of Luis Junior Puertas.

2020.   Plaintiff Gabriela D. Puertas Vergara-Donoso is a citizen of the United States and domiciled in the State of Florida. She is the sister of Luis Junior Puertas.

2021.   As a result of the attack, and the injuries Luis Junior Puertas suffered, Plaintiffs Lidia Sullivan and Gabriela D. Puertas Vergara-Donoso have experienced severe mental anguish and extreme emotional pain and suffering.

### 64.   THE SEPTEMBER 30, 2006 ATTACK – BAGHDAD

**The Melendez Family**

2022.   Plaintiff Christopher Michael Melendez is a citizen of the United States and domiciled in the State of Florida.

2023.   On September 30, 2006, Christopher Michael Melendez, then 19 years, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. Christopher Michael Melendez was a gunner in an M1114 vehicle on a routine patrol on Route Florida in the Mashtal neighborhood of Baghdad when his vehicle was disabled by a direct hit from an EFP on the driver's side of the vehicle.

2024.   The weapon used to injure Christopher Michael Melendez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2025.   As a result of the attack, Mr. Melendez's left leg was amputated above the knee, he sustained a TBI, an injury to his brachial plexus causing weakness in his dominant hand, tinnitus,

314

jaw fractures, post-traumatic headaches, facial and hand nerve damage, disfiguring head and facial scarring, burns, and additional shrapnel injuries.

2026.   Mr. Melendez has received extensive medical treatment at various hospitals including various surgeries and prosthetic fittings where he has spent months in treatment.

2027.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Michael Melendez has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2028.   Plaintiff Narciso Melendez is a citizen of the United States and domiciled in the State of New York. He is the father of Christopher Michael Melendez.

2029.   Plaintiff Christina Melendez is a citizen of the United States and domiciled in the State of Georgia. She is the sister of Christopher Michael Melendez.

2030.   As a result of the attack, and the injuries Christopher Michael Melendez suffered, Plaintiffs Narciso Melendez and Christina Melendez have experienced severe mental anguish and extreme emotional pain and suffering.

## 65.   THE OCTOBER 4, 2006 ATTACK – BAGHDAD

**The Barattieri Family**

2031.   Guy Barattieri was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

2032.   On October 4, 2006, Guy Barattieri, aged 36, was serving as a civilian contractor with Falcon Security in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2033.   Guy Barattieri was killed in the attack.

2034.   The weapon used to kill Guy Barattieri was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

2035.   Plaintiff Laurel Barattieri is a citizen of the United States and domiciled in the State of Washington. She is the widow of Guy Barattieri.

2036.   Plaintiff Laurel Barattieri brings an action individually and on behalf of the Estate of Guy Barattieri, as its legal representative.

2037.   Plaintiff Patricia Wheatley is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Guy Barattieri.

2038.   Plaintiff Rebecca Barattieri is a citizen of the United States and domiciled in the State of Washington. She is the sister of Guy Barattieri.

2039.   Plaintiff Nicole Barattieri is a citizen of the United States and domiciled in the State of Kentucky. She is the sister of Guy Barattieri.

2040.   Plaintiff Gina Tesnar is a citizen of the United States and domiciled in the State of Kentucky. She is the sister of Guy Barattieri.

2041.   As a result of the attack, and the death of Guy Barattieri, Plaintiffs Laurel Barattieri, Patricia Wheatley, Rebecca Barattieri, Nicole Barattieri and Gina Tesnar have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 66.   THE OCTOBER 13, 2006 ATTACK – BAGHDAD

**The Stanton Family**

2042.   Kenny Frances Stanton, Jr. was a citizen of the United States and domiciled in the State of California.

2043.   On October 13, 2006, Kenny Frances Stanton, Jr., then 20, was serving in the U.S. military in Iraq when his unit was struck by an IED emplaced by JAM Special Groups terror

operatives in the Sholeh neighborhood in northwest Baghdad.

2044. Kenny Frances Stanton, Jr. was killed in the attack.

2045. Kenny Frances Stanton, Jr. was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2046. Plaintiff Gloria L. Magana is a citizen of the United States and domiciled in the State of California. She is the mother of Kenny Frances Stanton, Jr.

2047. Plaintiff Gloria L. Magana brings an action individually and on behalf of the Estate of Kenny Frances Stanton, Jr., as its legal representative.

2048. Plaintiff Mario Stanton is a citizen of the United States and domiciled in the State of California. He is the brother of Kenny Frances Stanton, Jr.

2049. Plaintiff Brandie Stanton is a citizen of the United States and domiciled in the State of California. She is the sister of Kenny Frances Stanton, Jr.

2050. Plaintiff Terrymarie Stanton is a citizen of the United States and domiciled in the State of California. She is the sister of Kenny Frances Stanton, Jr.

2051. As a result of the attack, and the death of Kenny Frances Stanton, Jr., Plaintiffs Gloria L. Magana, Mario Stanton, Brandie Stanton, and Terrymarie Stanton have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 67.   THE OCTOBER 17, 2006 ATTACK – BAQUBAH

**The Frigo Family**

2052. Nathan J. Frigo was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

2053. On October 17, 2006, Nathan J. Frigo, aged 23, was serving in the U.S. military in

Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2054.  Nathan J. Frigo was killed in the attack.

2055.  The weapon used to kill Nathan J. Frigo was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2056.  Plaintiff Fred Frigo is a citizen of the United States and domiciled in the State of Indiana. He is the father of Nathan J. Frigo.

2057.  As a result of the attack, and the death of Nathan J. Frigo, Plaintiff Fred Frigo has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

**The Haupt Family**

2058.  Ryan Haupt was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

2059.  On October 17, 2006, Ryan Haupt, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2060.  Ryan Haupt was killed in the attack.

2061.  The weapon used to kill Ryan Haupt was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2062.  Plaintiff Nannette Bryne-Haupt is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Ryan Haupt.

2063.  Plaintiff Lynn Forehand is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of Ryan Haupt.

2064.   Plaintiff Lynn Forehand brings an action individually and on behalf of the Estate of Ryan Haupt, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

2065.   Plaintiff Lance Haupt is a citizen of the United States and domiciled in the State of Arizona. He is the father of Ryan Haupt.

2066.   Plaintiff Rhonda Haupt is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

2067.   Plaintiff Tifany Thompson is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

2068.   Plaintiff Sabrina Cumbe is a citizen of the United States and domiciled in the State of California. She is the sister of Ryan Haupt.

2069.   As a result of the attack, and the death of Ryan Haupt, Plaintiffs Nannette Bryne-Haupt, Lynn Forehand, Lance Haupt, Rhonda Haupt, Tifany Thompson and Sabrina Cumbe have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 68.   THE OCTOBER 20, 2006 ATTACK – BAGHDAD

**The Witte Family**

2070.   Kevin M. Witte was a citizen of the United States and domiciled in the State of Oregon when he was killed in Iraq.

2071.   On October 20, 2006, Kevin M. Witte, aged 27, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2072.   Kevin M. Witte was killed in the attack.

2073.   The weapon used to kill Kevin M. Witte was a Hezbollah-designed and Iranian-

manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2074.   Plaintiff William Witte is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Kevin M. Witte.

2075.   Plaintiff William Witte brings an action individually and on behalf of the Estate of Kevin M. Witte, as its legal representative.

2076.   As a result of the attack, and the death of Kevin M. Witte, Plaintiff William Witte has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 69.   THE OCTOBER 22, 2006 ATTACK – BAGHDAD

**The Mock Family**

2077.   Willsun Mock was a citizen of the United States and domiciled in the State of Kansas when he was killed in Iraq.

2078.   On October 22, 2006, Willsun Mock, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2079.   Willsun Mock was killed in the attack.

2080.   The weapon used to kill Willsun Mock was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2081.   Plaintiff Michael Mock is a citizen of the United States and domiciled in the State of Kansas. He is the father of Willsun Mock.

2082.   Plaintiff Tammy Dorsey is a citizen of the United States and domiciled in the State of Kansas. She is the sister of Willsun Mock.

2083.   Plaintiff Eric Phye is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Willsun Mock.

2084.   As a result of the attack, and the death of Willsun Mock, Plaintiffs Michael Mock, Tammy Dorsey and Eric Phye have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Gmachowski Family**

2085.   Plaintiff James Gmachowski is a citizen of the United States and domiciled in the State of California.

2086.   On October 22, 2006, James Gmachowski, then 19, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle.

2087.   The weapon used to injure James Gmachowski was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2088.   As a result of the blast, a golf-ball-sized piece of copper was lodged in James Gmachowski back which required invasive surgery to remove. The wound took roughly five months to heal. Mr. Gmachowski was also diagnosed with a TBI and PTSD.

2089.   As a result of the attack, and the injuries he suffered, Plaintiff James Gmachowski has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 70.   THE OCTOBER 22, 2006 ATTACK – BAGHDAD

**The Brian Family**

2090.   Brian Brian was a citizen of the United States and domiciled in the State of Arkansas when he was killed in Iraq.

2091. On October 22, 2006, Brian Brian, then 58, was serving as a civilian contractor for DynCorp International in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2092. The weapon used to kill Brian Brian was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2093. Plaintiff Constance Brian is a citizen of the United States and domiciled in the State of Arkansas. She is the widow of Brian Brian.

2094. Plaintiff Constance Brian brings an action individually and on behalf of the Estate of Brian Brian, as its legal representative.

2095. Plaintiff Amber Hensley is a citizen of the United States and domiciled in the State of North Dakota. She is the daughter of Brian Brian.

2096. As a result of the attack, and the death of Brian Brian, Plaintiffs Constance Brian and Amber Hensley experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**71.** **THE OCTOBER 22, 2006 ATTACK – BAGHDAD**

**The Haines Family**

2097. Plaintiff David W. Haines is a citizen of the United States and domiciled in the State of Kentucky.

2098. On October 22, 2006, David W. Haines, then 41, was serving in the U.S. military in Iraq.

2099. Mr. Haines was a member of a mounted patrol conducting a route reconnaissance to the military hospital in Baghdad when an EFP emplaced by Special Groups struck his vehicle.

2100.  The weapon used to injure Mr. Haines was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2101.  As a result of the attack, Mr. Haines sustained a fracture of his right femur that resulted in his right and left legs being different lengths; shrapnel injuries to his right hand, left arm, right leg, and buttocks; burns to his body; and nerve damage.

2102.  He has undergone multiple surgeries to repair the fracture to his femur and had multiple skin grafts.

2103.  As a result of the nerve damage that he incurred, Mr. Haines continues to experience limited mobility in his left arm and hand and sensation problems.

2104.  He has been diagnosed with PTSD and has sought counseling for emotional injuries resulting from the attack.

2105.  As a result of the attack, and the injuries he suffered, Plaintiff David W. Haines has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2106.  Plaintiff Dawn Haines is a citizen of the United States and domiciled in the State of Kentucky. She is the wife of David W. Haines.

2107.  Plaintiff Colin Haines is a citizen of the United States and domiciled in the State of Kentucky. He is the son of David W. Haines.

2108.  Plaintiff Mackenzie Haines is a citizen of the United States and domiciled in the State of Kentucky. She is the daughter of David W. Haines.

2109.  As a result of the attack, and the injuries suffered by David W. Haines, Plaintiffs Dawn Haines, Colin Haines and Mackenzie Haines have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Alabsawi Family**

2110.   Plaintiff Karar Alabsawi is a citizen of the United States and domiciled in the State of Pennsylvania.

2111.   On October 22, 2006, Karar Alabsawi was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2112.   The weapon used to injure Karar Alabsawi was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2113.   As a result of the attack, Mr. Alabsawi lost his left leg. He also suffered significant injuries to his left arm which he is unable to use as well as shrapnel wounds and burns on his body.

2114.   As a result of the attack, and the injuries he suffered, Plaintiff Karar Alabsawi has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Taylor Family**

2115.   David G. Taylor, Jr. was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

2116.   On October 22, 2006, David G. Taylor, Jr., aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2117.   David G. Taylor, Jr. was killed in the attack.

2118.   The weapon used to kill David G. Taylor, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2119.   Plaintiff Michelle Taylor is a citizen of the United States and domiciled in the State of Florida. She is the widow of David G. Taylor, Jr.

2120.   Plaintiff Michelle Taylor brings an action individually and on behalf of the Estate of David G. Taylor, Jr. as its legal representative.

2121.   Plaintiff J.T., a minor represented by his legal guardian, Michelle Taylor, is a citizen of the United States and domiciled in the State of Florida. He is the son of David G. Taylor, Jr.

2122.   Plaintiff Phyllis Taylor is a citizen of the United States and domiciled in the State of Florida. She is the mother of David G. Taylor, Jr.

2123.   Plaintiff John Taylor is a citizen of the United States. He is the brother of David G. Taylor, Jr.

2124.   As a result of the attack, and the death of David G. Taylor, Jr., Plaintiffs Michelle Taylor, J.T., Phyllis Taylor and John Taylor have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Taylor Family**

2125.   Plaintiff Brian G. Taylor is a citizen of the United States and domiciled in the State of Florida.

2126.   On October 22, 2006, Brian G. Taylor was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2127.   The weapon used to injure Brian G. Taylor was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2128.   As a result of the attack, Mr. Taylor lost his right leg. He also suffered injuries to his right thigh, loss of muscle, skin and part of his femur, a dislocated knee, a damaged femoral artery, and compartment syndrome.

2129.   As a result of the attack, and the injuries he suffered, Plaintiff Brian G. Taylor has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Recendez Family**

2130.   Plaintiff Judas Recendez is a citizen of the United States and domiciled in the State of California.

2131.   On October 22, 2006, Judas Recendez was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2132.   The weapon used to injure Mr. Recendez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2133.   As a result of the attack, both of Mr. Recendez's legs were amputated below the knee. He also sustained shrapnel injuries to the lower part of his body from the waist down, hearing and vision damage, and nerve damage in his left hand.

2134.   As a result of the attack, and the injuries he suffered, Plaintiff Judas Recendez has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**72.   THE OCTOBER 22, 2006 ATTACK – SADR CITY**

**The Norager Family**

2135.   Plaintiff Tyler Norager is a citizen of the United States and domiciled in the State of Utah.

2136.   On October 22, 2006, Tyler Norager was serving in the U.S. military in Iraq when

an EFP emplaced by Special Groups detonated near his vehicle.

2137.   The weapon used to injure Mr. Norager was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2138.   As a result of the attack, Mr. Norager sustained shrapnel wounds to the face, the right side of his body, and the top of his spine. His injuries have caused him long-term, permanent back pain.

2139.   As a result of the attack, and the injuries he suffered, Plaintiff Tyler Norager has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2140.   Plaintiff Shalee Norager is a citizen of the United States and domiciled in the State of Utah. She is the wife of Tyler Norager.

2141.   Plaintiff M.N., a minor resented by her legal guardian, Tyler Norager, is a citizen of the United States and domiciled in the State of Utah. She is the daughter of Tyler Norager.

2142.   As a result of the attack, and the injuries suffered by Tyler Norager, Plaintiffs Shalee Norager and M.N. have experienced severe mental anguish, and extreme emotional pain and suffering.

### 73.   THE OCTOBER 23, 2006 ATTACK – BAGHDAD

**The Bock Family**

2143.   Amos Bock was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

2144.   On October 23, 2006, Amos Bock, aged 24, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2145.   Amos Bock was killed in the attack.

2146.   The weapon used to kill Amos Bock was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2147.   Plaintiff Harry Riley Bock is a citizen of the United States and domiciled in the State of Missouri. He is the father of Amos Bock.

2148.   Plaintiff Jill Ann Bock is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Amos Bock.

2149.   Plaintiff Mariah Simoneaux is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Amos Bock.

2150.   As a result of the attack, and the death of Amos Bock, Plaintiffs Harry Riley Bock, Jill Ann Bock, and Mariah Simoneaux have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 74.    THE OCTOBER 2006 ATTACK – BAGHDAD

**The Al-Taie Family**

2151.   Ahmed Al-Taie was born in Iraq, but left Iraq in 1980 with his family. Prior to 2004 he moved to the United States.

2152.   In 2004 Ahmed Al-Taie enlisted in the U.S. Army Reserves and was deployed to Baghdad in 2005 as part of a Provincial Reconstruction Team. There, he served as a translator.

2153.   On May 15, 2006, Ahmed Al-Taie was naturalized as a United States citizen.

2154.   In October 2006, Ahmed Al-Taie was visiting his wife in the Karrada neighborhood of Bagdad.  While there, the AAH abducted Ahmed Al-Taie and held him captive.

2155.   In February 2007, an affiliate of the AAH posted a video of Ahmed Al-Taie in captivity.

2156.   Sometime prior to February 22, 2012, while the AAH held Ahmed Al-Taie prisoner, the AAH murdered Ahmed Al-Taie.

2157.   On February 22, 2012, the AAH released Ahmed Al-Taie's remains to the Iraqi government as part of a prisoner exchange.

2158.   Plaintiff Kousay Al-Taie is a citizen of the United States and domiciled in the State of Michigan. He is the father of Ahmed Al-Taie.

2159.   Plaintiff Kousay Al-Taie brings an action individually and on behalf of the Estate of Ahmed Al-Taie, as its legal representative.

2160.   Plaintiff Nawal Al-Taie is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Ahmed Al-Taie.

2161.   Plaintiff Bashar Al-Taie is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Ahmed Al-Taie.

2162.   Plaintiff Hathal K. Taie is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Ahmed Al-Taie.

2163.   As a result of the attack, and the death of Ahmed Al-Taie, Plaintiffs Kousay Al-Taie, Nawal Al-Taie, Bashar Al-Taie, Hathal K. Taie have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 75.   THE NOVEMBER 2, 2006 ATTACK – BAGHDAD

**The Kruger Family**

2164.   Eric Kruger was a citizen of the United States and domiciled in the State of Texas

when he was killed in Iraq.

2165. On November 2, 2006, Eric Kruger, aged 44, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2166. Eric Kruger was killed in the attack.

2167. The weapon used to kill Eric Kruger was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2168. Plaintiff Lawrence Kruger is a citizen of the United States and domiciled in the State of Texas. He is the father of Eric Kruger.

2169. Plaintiff Lawrence Kruger brings an action individually and on behalf of the Estate of Eric Kruger, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

2170. Plaintiff Carol Kruger is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Eric Kruger.

2171. Plaintiff C.K., a minor represented by his conservator, Lawrence Kruger, is a citizen of the United States and domiciled in the State of Colorado. He is the son on Eric Kruger.

2172. Plaintiff E.K., a minor represented by her conservator, Lawrence Kruger, is a citizen of the United States and domiciled in the State of Colorado. She is the daughter on Eric Kruger.

2173. Plaintiff Douglas Kruger is a citizen of the United States and domiciled in the State of Texas. He is the brother of Eric Kruger.

2174. Plaintiff Kristy Kruger is a citizen of the United States and domiciled in the State of Texas. She is the sister of Eric Kruger.

2175.   As a result of the attack, and the death of Eric Kruger, Plaintiffs Lawrence Kruger, Carol Kruger, C.K., E.K., Douglas Kruger and Kristy Kruger have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/ father's/brother's society, companionship, comfort, advice and counsel.

**The Finken Family**

2176.   Paul Finken was a citizen of the United States and domiciled in the State of Iowa when he was killed in Iraq.

2177.   On November 2, 2006, Paul Finken, aged 40, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2178.   Paul Finken was killed in the attack.

2179.   The weapon used to kill Paul Finken was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2180.   Plaintiff Jackie Farrar-Finken is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Paul Finken.

2181.   Plaintiff Jackie Farrar-Finken brings an action individually and on behalf of the Estate of Paul Finken, as its legal representative.

2182.   Plaintiff Emilie Finken is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Paul Finken.

2183.   Plaintiff C.F., a minor represented by her legal guardian, Jackie Farrar-Finken, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Paul Finken.

2184.   Plaintiff J.F., a minor represented by her legal guardian, Jackie Farrar-Finken, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Paul Finken.

2185.   Plaintiff Stephen Finken is a citizen of the United States and domiciled in the State of Iowa. He is the brother of Paul Finken.

2186.   Plaintiff Alan Finken is a citizen of the United States and domiciled in the State of Colorado. He is the brother of Paul Finken.

2187.   Plaintiff Richard Finken is a citizen of the United States and domiciled in the State of Iowa. He is the brother of Paul Finken.

2188.   Plaintiff David Finken is a citizen of the United States and domiciled in the State of Iowa. He is the brother of Paul Finken.

2189.   Plaintiff Mark Finken is a citizen of the United States and domiciled in the State of Iowa. He is the brother of Paul Finken.

2190.   Plaintiff Peter Finken is a citizen of the United States and domiciled in the State of Connecticut. He is the brother of Paul Finken.

2191.   Plaintiff Jean Pruitt is a citizen of the United States and domiciled in the State of Iowa. She is the sister of Paul Finken.

2192.   Plaintiff Joan Henscheid is a citizen of the United States and domiciled in the State of Iowa. She is the sister of Paul Finken.

2193.   As a result of the attack, and the death of Paul Finken, Jackie Farrar-Finken, Emilie Finken, C.F., J.F., Stephen Finken, Alan Finken, Richard Finken, David Finken, Mark Finken, Peter Finken, Jean Pruitt and Joan Henscheid have experienced severe mental anguish, extreme

emotional pain and suffering, and loss of their husband's/father's/brother's society, companionship, comfort, advice and counsel.

76. **THE NOVEMBER 9, 2006 ATTACK – BAGHDAD**

**The McCoy Family**

2194. Gregory McCoy was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

2195. On November 2, 2006, Gregory McCoy, aged 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2196. Gregory McCoy was killed in the attack.

2197. The weapon used to kill Gregory McCoy was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2198. Plaintiff Lori Ann McCoy is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Gregory McCoy.

2199. Plaintiff Lori Ann McCoy brings an action individually and on behalf of the Estate of Gregory McCoy, as its legal representative.

2200. Plaintiff Logan McCoy is a citizen of the United States and domiciled in the State of Colorado. He is the son of Gregory McCoy.

2201. Plaintiff T.M., a minor represented by his legal guardian, Lori Ann McCoy, is a citizen of the United States and domiciled in the State of Colorado. He is the son of Gregory McCoy.

2202. As a result of the attack, and the death of Gregory McCoy, Lori Ann McCoy, Logan McCoy and T.M. have experienced severe mental anguish, extreme emotional pain and suffering,

and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Cox Family**

2203.   Plaintiff Glenn Michael Cox is a citizen of the United States and domiciled in the State of Florida.

2204.   On November 9, 2006, Glenn Michael Cox, then 45, was serving as a civilian contractor for DynCorp International in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

2205.   The weapon used to injure Glenn Michael Cox was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2206.   As a result of the attack, Mr. Cox received multiple shrapnel injuries to his right side.

2207.   Mr. Cox's right ulna was shattered, as were most of the bones in his right hand.  As a result, Mr. Cox has an artificial knuckle in his right hand.  Shrapnel severed a nerve in his right forearm, and he still has a large amount of scarring on his arm and hand.

2208.   Mr. Cox also suffers from hearing loss as a result of the attack.

2209.   As a result of the attack, and the injuries he suffered, Plaintiff Glenn Michael Cox has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**77.   THE NOVEMBER 13, 2006 ATTACK – BAGHDAD**

**The Kim Family**

2210.   Jang Ho Kim was domiciled in the State of California when he was killed in Iraq. He became a citizen of the United States posthumously.

2211.   On November 13, 2006, Jang Ho Kim, aged 20, was serving in the U.S. military in

Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2212.   Jang Ho Kim was killed in the attack.

2213.   The weapon used to kill Jang Ho Kim was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2214.   Plaintiff Sangsoon Kim is a citizen of the United States and domiciled in the State of California. She is the mother of Jang Ho Kim.

2215.   Plaintiff Seop (Steve) Kim is a citizen of the United States and domiciled in the State of California. He is the father of Jang Ho Kim.

2216.   Plaintiff Seop (Steve) Kim brings an action individually and on behalf of the Estate of Jang Ho Kim, as its legal representative.

2217.   Plaintiff Michelle Kim is a citizen of the United States and domiciled in the State of California. She is the sister of Jang Ho Kim.

2218.   As a result of the attack, and the death of Jang Ho Kim, Plaintiffs Sangsoon Kim, Seop (Steve) Kim and Michelle Kim have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Lamb Family**

2219.   Plaintiff Kurtiss Lamb is a citizen of the United States and domiciled in the State of Tennessee.

2220.   On November 13, 2006, Kurtiss Lamb, then 24, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle.

2221.   The weapon used to injure Kurtiss Lamb was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2222.   As a result of the blast, Kurtiss Lamb suffered partial paralysis to his arm and bulging disks in his lumbar spine. Mr. Lamb was also diagnosed with a TBI.

2223.   As a result of the attack, and the injuries he suffered, Plaintiff Kurtiss Lamb has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**78.   THE NOVEMBER 16, 2006 ATTACK – BASRA**

**The Coté Family**

2224.   Jonathon M. Coté was a citizen of the United States and domiciled in the State of New York, when he was kidnapped and killed in Iraq.

2225.   On November 16, 2006, Jonathon Coté was serving as a civilian contractor for Crescent Security near Basra, Iraq when he was kidnapped, held hostage, tortured, and ultimately murdered by JAM Special Groups.

2226.   Mr. Coté's remains were mutilated after he was executed. On April 23, 2008, the FBI announced that it had identified the remains of Mr. Coté – which were recovered four days prior – and made arrangements to return Mr. Coté's remains to his family.

2227.   Jonathon M. Coté was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2228.   Plaintiff Francis L. Coté is a citizen of the United States and domiciled in the State of New York. He is the father of Jonathon Coté.

2229.   Plaintiff Nancy Coté is a citizen of the United States and domiciled in the State of New York. She is the step-mother of Jonathon Coté.

2230.   Plaintiff Christopher Coté is a citizen of the United States and domiciled in the State of New York. He is the brother of Jonathon Coté.

2231.   Plaintiff Samantha Dunford is a citizen of the United States and domiciled in the State of New York. She is the step-sister of Jonathon Coté.

2232.   Plaintiff Maximillian Shroyer is a citizen of the United States and domiciled in the Ohio. He is the step-brother of Jonathon Coté.

2233.   As a result of the November 16, 2006 attack, and the subsequent kidnapping and execution of Jonathon Coté, Plaintiffs Francis L. Coté, Nancy Coté, Christopher Coté, Samantha Dunford and Maxilillian Shroyer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Johnson-Reuben Family**

2234.   Paul Johnson-Reuben was a citizen of the United States and domiciled in the State of Minnesota, when he was kidnapped and killed in Iraq.

2235.   On November 16, 2006, Paul Johnson-Reuben was serving as a civilian contractor for Crescent Security near Basra, Iraq when he was kidnapped, held hostage, tortured, and ultimately murdered by JAM Special Groups.

2236.   Mr. Johnson-Reuben's remains were mutilated after he was executed. In April 2008, Mr. Johnson-Reuben's remains were returned to his family.

2237.   Paul Johnson-Reuben was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2238.   Plaintiff Casey Reuben a citizen of the United States and domiciled in the State of Minnesota. She is the daughter of Paul Johnson-Reuben.

2239. Plaintiff Bree Reuben a citizen of the United States and domiciled in the State of Minnesota. She is the daughter of Paul Johnson-Reuben.

2240. Plaintiff Patrick Reuben a citizen of the United States and domiciled in the State of Wisconsin. He is the twin brother of Paul Johnson-Reuben.

2241. As a result of the attack, and the death of Paul Johnson-Reuben, Plaintiffs Casey Reuben, Bree Reuben and Patrick Reuben have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's/brother's society, companionship, comfort, advice and counsel.

**The Munns Family**

2242. Joshua Munns was a citizen of the United States and domiciled in the State of California, when he was kidnapped and killed in Iraq.

2243. On November 16, 2006, Joshua Munns was serving as a civilian contractor for Crescent Security near Basra, Iraq when he was kidnapped, held hostage, tortured, and ultimately murdered by JAM Special Groups.

2244. Mr. Munn's remains were mutilated after he was executed. In April 2008, Mr. Munn's remains were returned to his family.

2245. Joshua Munns was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2246. Plaintiff Jackie Stewart is a citizen of the United States and domiciled in the State of California. She is the mother of Joshua Munns.

2247. Plaintiff Mark Munns is a citizen of the United States and domiciled in the State of California. He is the father of Joshua Munns.

2248.   Plaintiff Crista Munns is a citizen of the United States and domiciled in the State of California. She is the step-mother of Joshua Munns.

2249.   As a result of the attack, and the death of Joshua Munns, Plaintiffs Jackie Stewart, Mark Munns and Crista Munns have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

**The Young Family**

2250.   John Young was a citizen of the United States and domiciled in the State of Missouri, when he was kidnapped and killed in Iraq.

2251.   On November 16, 2006, John Young, aged 44, was serving as a civilian contractor for Crescent Security near Basra, Iraq when he was kidnapped, held hostage, tortured, and ultimately murdered by JAM Special Groups.

2252.   Mr. Young's remains were mutilated after he was executed. In March 2008, Mr. Young's remains were returned to his family.

2253.   John Young was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2254.   Plaintiff Sharon DeBrabander is a citizen of the United States and domiciled in the State of Arizona. She is the mother of John Young.

2255.   Plaintiff Dennis DeBrabander is a citizen of the United States and domiciled in the State of Arizona. He is the step-father of John Young.

2256.   Plaintiff Nicole DeBrabander is a citizen of the United States and domiciled in the State of Arizona. She is the sister of John Young.

2257.   Plaintiff Joella Pratt is a citizen of the United States and domiciled in the State of Missouri. She is the sister of John Young.

2258.  As a result of the attack, and the death of John Young, Plaintiffs Sharon DeBrabander, Dennis DeBrabander, Nicole DeBrabander and Joella Pratt have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 79.  THE NOVEMBER 26, 2006 ATTACK – BAGHDAD

**The Fraser Family**

2259.  David M. Fraser was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

2260.  On November 26, 2006, David M. Fraser, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2261.  David M. Fraser was killed in the attack.

2262.  The weapon used to kill David M. Fraser was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2263.  Plaintiff Helen Fraser is a citizen of the United States and domiciled in the State of Texas. She is the mother of David M. Fraser.

2264.  Plaintiff Richard Fraser is a citizen of the United States and domiciled in the State of Texas. He is the father of David M. Fraser.

2265.  Plaintiff Richard Fraser brings an action individually and on behalf of the Estate of David M. Fraser, as its legal representative.

2266.  As a result of the attack, and the death of David M. Fraser, Plaintiffs Helen Fraser and Richard Fraser have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

80. **THE DECEMBER 3, 2006 ATTACK – BAGHDAD**

**The English Family**

2267. Shawn L. English was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

2268. On December 3, 2006, Shawn L. English, aged 35, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2269. Shawn L. English was killed in the attack.

2270. The weapon used to kill Shawn L. English was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2271. Plaintiff Tricia English is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Shawn L. English.

2272. Plaintiff Nathan English is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

2273. Plaintiff N.C.E., a minor represented by his legal guardian Tricia English, is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

2274. Plaintiff A.S.E., a minor represented by his legal guardian Tricia English, is a citizen of the United States and domiciled in the State of Ohio. He is the son of Shawn L. English.

2275. Todd Daily is a citizen of the United States and domiciled in the State of Ohio. He brings an action on behalf of the Estate of Shawn L. English, as its legal representative.

2276. As a result of the attack, and the death of Shawn L. English, Plaintiffs Tricia English, Nathan English, N.C.E. and A.S.E. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort,

advice and counsel.

**The Starkey Family**

2277.  Plaintiff Joshua Starkey is a citizen of the United States and domiciled in the State of Georgia.

2278.  On December 3, 2006, Joshua Starkey, then 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2279.  The weapon used to injure Joshua Starkey was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2280.  As a result of the attack, shrapnel impacted Joshua Starkey's body on his right shoulder and right side of his face. He also sustained burns to his face and shoulder.

2281.  Joshua Starkey has been diagnosed with PTSD.  He has sought out counseling and has been prescribed medication to address related issues.

2282.  As a result of the attack, and the injuries he suffered, Plaintiff Joshua Starkey has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**81.  THE DECEMBER 4, 2006 ATTACK – BAGHDAD**

**The Hinson Family**

2283.  Plaintiff Brent Hinson is a citizen of the United States and domiciled in the State of Florida.

2284.  On December 4, 2006, Brent Hinson, then 19, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2285.  The weapon used to injure Brent Hinson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

2286.   As a result of the attack, Brent Hinson suffered shrapnel injuries and was unable to walk for two weeks following the attack. He also required physical therapy.

2287.   As a result of the attack, and the injuries he suffered, Plaintiff Brent Hinson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2288.   Plaintiff William Hinson is a citizen of the United States and domiciled in the State of Florida. He is the father of Brent Hinson.

2289.   Plaintiff Fran Hinson is a citizen of the United States and domiciled in the State of Florida. She is the mother of Brent Hinson.

2290.   Plaintiff Hilary Westerberg is a citizen of the United States and domiciled in the State of New Hampshire. She is the sister of Brent Hinson.

2291.   As a result of the attack, and the injuries suffered by Brent Hinson, Plaintiffs William Hinson, Fran Hinson and Hilary Westerberg have experienced severe mental anguish, and extreme emotional pain and suffering.

## 82.      THE DECEMBER 10, 2006 ATTACK – BAGHDAD

**The Gibson Family**

2292.   Brennan C. Gibson was a citizen of the United States and domiciled in the State of Oregon when he was killed in Iraq.

2293.   On December 10, 2006, Brennan C. Gibson aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2294.   Brennan C. Gibson was killed in the attack.

2295.   The weapon used to kill Brennan C. Gibson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

2296.   Plaintiff Linda Gibson is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Brennan C. Gibson.

2297.   Plaintiff John Gibson is a citizen of the United States and domiciled in the State of Oregon. He is the step-father of Brennan C. Gibson.

2298.   Plaintiff Stephanie Gibson Webster is a citizen of the United States and domiciled in the State of Oregon. She is the step-sister of Brennan C. Gibson.

2299.   Plaintiff Sean Elliott is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Brennan C. Gibson.

2300.   Plaintiff Travis Gibson is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Brennan C. Gibson.

2301.   As a result of the attack, and the death of Brennan C. Gibson, Plaintiffs Linda Gibson, John Gibson, Stephanie Gibson Webster, Sean Elliott and Travis Gibson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 83.   THE DECEMBER 20, 2006 ATTACK – BAGHDAD

**The Little Family**

2302.   Plaintiff William Ronald Little is a citizen of the United States and domiciled in the State of Florida.

2303.   On December 20, 2006, William Ronald Little, then 43, and a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2304.   Mr. Little was injured in the attack.

2305.   The weapon used to injure Mr. Little was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2306.   As a result of the attack, Mr. Little sustained shrapnel to his right eye socket necessitating the placement of a metal plate under his right eye. Shrapnel also impacted the right side of his face and his arm.

2307.   He lost a portion of muscle tissue in his back and shoulder area and part of his right tricep muscle was detached. He no longer has full range of motion in his right arm.

2308.   He sustained nerve damage to his right cheek, sinus area, and his upper lip.  He has undergone rhinoplasty and other procedures to address the injuries to these areas.

2309.   As a result of the attack, and the injuries he suffered, Plaintiff William Ronald Little has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2310.   Plaintiff Brenda Little is a citizen of the United States and domiciled in the State of Florida. She is the wife of William Ronald Little.

2311.   Plaintiff Kira Sikes is a citizen of the United States and domiciled in the State of Florida. She is the daughter of William Ronald Little and Brenda Little.

2312.   Plaintiff William Ronald Little, Jr. is a citizen of the United States and domiciled in the State of Florida. He is the son of William Ronald Little and Brenda Little.

2313.   Brenda Little brings an action individually and on behalf of William Ronald Little, Jr. as his power of attorney.

2314.   As a result of the attack, and the injuries William Ronald Little has suffered, Plaintiffs Brenda Little, Kira Sikes and William Ronald Little, Jr. have experienced severe mental anguish, and extreme emotional pain and suffering.

345

**The Denman Family**

2315.   Plaintiff Joshua Denman is a citizen of the United States and domiciled in the State of Florida.

2316.   On December 20, 2008, Joshua Denman, then 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2317.   Joshua Denman was injured in the attack.

2318.   The weapon used to injure Joshua Denman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2319.   As a result of the attack, Plaintiff Joshua Denman sustained shrapnel in his right arm and right hand.  He has undergone surgery and procedures to address the removal of shrapnel and scar tissue.

2320.   As a result of the attack, and the injuries he suffered, Plaintiff Joshua Denman has experienced physical and mental anguish and extreme emotional pain and suffering.

**84.      THE DECEMBER 22, 2006 ATTACK – BAGHDAD**

**The Nantz Family**

2321.   Plaintiff Randolph Delbert Nantz is a citizen of the United States and domiciled in the State of Texas.

2322.   On December 22, 2006, Randolph Delbert Nantz, then 38, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2323.   The weapon used to injure Randolph Delbert Nantz was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2324. As a result of the blast, Randolph Delbert Nantz suffered serious injuries, including nerve damage, burns on 23% of his body, and the amputation of his left leg below the knee.

2325. As a result of the attack, and the injuries he suffered, Plaintiff Randolph Delbert Nantz has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2326. Plaintiff Joshua Ryan Nantz is a citizen of the United States and domiciled in the State of Texas. He is the son of Randolph Delbert Nantz.

2327. As a result of the attack, and the injuries suffered by Randolph Delbert Nantz, Plaintiff Joshua Ryan Nantz has experienced severe mental anguish, and extreme emotional pain and suffering.

### 85. THE DECEMBER 27, 2006 ATTACK – BAGHDAD

**The McCormick Family**

2328. Clinton McCormick was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

2329. On December 27, 2006, Clinton McCormick, aged 20, was serving in the United States military in Iraq when IED emplaced by JAM Special Groups detonated near his vehicle.

2330. Clinton McCormick was killed in the attack.

2331. Clinton McCormick was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2332. Plaintiff Lori Ann McCormick is a citizen of the United States and domiciled in the State of Florida. She is the mother of Clinton McCormick.

2333. Plaintiff Lori Ann McCormick brings an action individually and on behalf of the Estate of Clinton McCormick, as its legal representative.

347

2334. As a result of the attack, and the death of Clinton McCormick, Lori Ann McCormick has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 86. THE DECEMBER 30, 2006 ATTACK – BAGHDAD

**The Sullivan Family**

2335. John M. Sullivan was a citizen of the United States and domiciled in the State of Tennessee when he was killed in Iraq.

2336. On December 30, 2006, John M. Sullivan, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2337. John M. Sullivan was killed in the attack.

2338. The weapon used to kill John M. Sullivan was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2339. Plaintiff Deborah Beavers is a citizen of the United States and domiciled in the State of Tennessee. She is the mother of John M. Sullivan.

2340. As a result of the attack, and the death of John M. Sullivan, Plaintiff Deborah Beavers has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 87. THE DECEMBER 31, 2006 ATTACK – BAGHDAD

**The Blohm Family**

2341. Alan R. Blohm was a citizen of the United States and domiciled in the State of Alaska when he was killed in Iraq.

2342. On December 31, 2006, Alan R. Blohm, aged 21, was serving in the U.S. military

in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2343.  Alan R. Blohm was killed in the attack.

2344.  The weapon used to kill Alan R. Blohm was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2345.  Plaintiff Denise Vennix is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Alan R. Blohm.

2346.  Plaintiff Denise Vennix brings an action individually and on behalf of the Estate of Alan R. Blohm, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

2347.  Chris Blohm was a citizen of the United States at the time of the death of Alan R. Blohm. He was the father of Alan R. Blohm. He died on May 4, 2017.

2348.  Plaintiff Jeremy Blohm is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Alan R. Blohm.

2349.  Plaintiff Jeremy Blohm brings an action individually and on behalf of the Estate of Chris Blohm, as its legal representative.

2350.  Plaintiff Kiana Blohm is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Alan R. Blohm.

2351.  As a result of the attack, and the death of Alan R. Blohm, the late Chris Blohm experienced, and Plaintiffs Denise Vennix, Jeremy Blohm and Kiana Blohm have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 88.   THE DECEMBER 31, 2006 ATTACK – BAQUBAH

**The Smith Family**

2352.   Richard Smith was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

2353.   On December 31, 2006, Richard Smith, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2354.   Richard Smith was killed in the attack.

2355.   The weapon used to kill Richard Smith was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2356.   Plaintiff James Smith is a citizen of the United States and domiciled in the State of Texas. He is the father of Richard Smith.

2357.   Plaintiff Megan Mauk is a citizen of the United States and domiciled in the State of Texas. She is the sister of Richard Smith.

2358.   As a result of the attack, and the death of Richard Smith, Plaintiffs James Smith and Megan Mauk have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 89.   THE JANUARY 14, 2007 ATTACK – BAGHDAD

**The Vaccaro Family**

2359.   Plaintiff Robert Vaccaro is a citizen of the United States and domiciled in the State of Rhode Island.

2360.   On January 14, 2007, Robert Vaccaro, then 23, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

2361.   The weapon used to injure Robert Vaccaro was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2362.   Mr. Vaccaro was in a coma for three weeks following the attack and endured several surgeries.

2363.   As a result of the attack, Mr. Vaccaro was diagnosed with a TBI, which caused him to suffer from seizures.

2364.   Mr. Vaccaro has had speech therapy, occupational therapy, and physical therapy for his injuries.

2365.   Robert Vaccaro has also been diagnosed with PTSD.

2366.   Robert Vaccaro has been prescribed medication to treat his injuries.

2367.   As a result of the attack, and the injuries he suffered, Plaintiff Robert Vaccaro has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 90.   THE JANUARY 18, 2007 ATTACK – BAGHDAD

**The Rechenmacher Family**

2368.   William Joshua Rechenmacher was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

2369.   On January 18, 2007, William Joshua Rechenmacher, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2370.   William Joshua Rechenmacher was killed in the attack.

2371.   The weapon used to kill William Joshua Rechenmacher was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2372.   Plaintiff Joanne Gutcher is a citizen of the United States and domiciled in the State of Florida. She is the mother of William Joshua Rechenmacher.

2373.   As a result of the attack, and the death of William Joshua Rechenmacher, Plaintiff Joanne Gutcher has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 91.   THE JANUARY 20, 2007 ATTACK – KARBALA

2374.   In the early evening of January 20, 2007, Iran launched a coordinated terrorist attack against the Provincial Joint Coordination Center ("PJCC") in Karbala, about thirty miles south of Baghdad.

2375.   The attack on the PJCC was largely planned by Hezbollah, under the direction of Ali Musa Daqduq, and carried out by Hezbollah agents, Asa'ib Ahl al-Haq ("AAH") operatives led by Qais al-Khazali.

2376.   Just after nightfall, a five-car convoy of black GMC Suburban sport-utility vehicles ("SUVs") – the type frequently used by the U.S. Government in Iraq – made its way through three checkpoints on the access road approaching the PJCC.

2377.   The vehicles contained at least a dozen AAH operatives dressed in U.S. military-style fatigues, carrying American-type weapons.

2378.   After they entered the PJCC compound, the five vehicles split up, with some parking in front, and others waiting at the Iraqi Police checkpoints along the southern approach to the PJCC compound.

2379.   After exiting their vehicles, the AAH terrorists greeted in fluent English the two U.S. soldiers guarding the PJCC's western entrance before launching a surprise attack.

2380.   The AAH operatives shot and wounded the two U.S. soldiers outside the PJCC's main building and opened fire on the PJCC compound with automatic rifles, while two small teams quickly moved inside the main building and assaulted the Communications Room with small arms fire.

2381.   One U.S. soldier, Johnathon M. Millican, fell on a grenade that was thrown into the Communications Room, while other soldiers prevented the attackers from overrunning their position.

2382.   Although Millican was killed, and several other U.S. soldiers injured, his selfless act provided his fellow soldiers in the PJCC's main building a few extra moments to recover and begin returning fire.

2383.   For his act of bravery, Johnathon M. Millican was posthumously awarded the Silver Star medal by the U.S. Army.

2384.   At the same time that AAH terrorists were attacking the PJCC's main building, other AAH operatives conducted a coordinated attack on the compound's barracks and back gate, before abducting four U.S. soldiers (the two wounded soldiers and two officers from inside the main building) and fleeing the compound.

2385.   Five of the AAH getaway vehicles drove east, crossing the Euphrates River and then turned north. The other three departed in the opposite direction to confuse any pursuing forces.

2386.   After over an hour of travel on the main roads, the five SUVs were stopped at a checkpoint in Mahawil, after U.S. forces put out a radio alert regarding the abducted soldiers.

2387.   The AAH terrorists then abandoned the main road for back roads, and the Iraqi Police and Iraqi Army forces at the Mahawil checkpoint gave chase.

2388.   Realizing the likelihood of escaping with their captives was low, and darkness making back road navigation all but impossible, the AAH operatives murdered the four Americans they had just kidnapped, and abandoned their bodies and the vehicles near the town of Mahawil. Three of the four Americans died at the scene.

2389.   Only one of the four abducted U.S. soldiers, Brian S. Freeman, was still alive when rescuers reached the scene. Two of the soldiers were found in the back of one of the SUVs, handcuffed together and shot dead. A third soldier was found dead on the ground, near the abandoned vehicles. Brian S. Freeman had also been shot in the head, and died on the way to the hospital.

2390.   The terrorist group that planned and executed the PJCC attack, AAH, was trained and armed by Iran's IRGC with Hezbollah's assistance.

2391.   On March 20, 2007, two months after the attack was perpetrated, Hezbollah operative Ali Musa Daqduq ("Daqduq") and AAH leader Qais al-Khazali and his brother Laith al-Khazali were captured by Coalition Forces in southern Iraq.

2392.   The United States Government charged them with responsibility for the Karbala PJCC attack.

2393.   Documents captured with Qais al-Khazali showed that the IRGC-QF had gathered detailed information on "soldiers' activities, shift changes and defenses" at the PJCC "and this information was shared with the attackers."

2394.   A 22-page memorandum found with Daqduq "detailed the planning, preparation, approval process and conduct of the [Karbala] operation," among others. Other documents

discussed tactics to attack Iraqi and Coalition Forces.

2395. Daqduq also had a personal journal that noted his having met with Special Groups members who were targeting other Iraqis and Coalition Forces in the Diyala province using Improvised Explosive Devices ("IEDs"), as well as small-arms fire.

2396. According to U.S. military officials, both Daqduq and Qais al-Khazali admitted that senior leadership within the IRGC-QF knew of and helped plan the Karbala attack.

2397. It was later reported that U.S. spy satellites spotted a full-scale mockup of the Karbala PJCC at the IRGC-QF Farj Garrison in the city of Ahwaz, Iran.

2398. Analysis of the satellite imagery indicated that the IRGC had duplicated the PJCC's layout to specifically train the AAH operatives for the attack.

2399. The terror attack on the PJCC was commanded by Azhar al-Dulaymi. He was trained by Hezbollah operatives, including Daqduq, near the city of Qom, Iran, where he and his AAH operatives trained to execute military-style, precision kidnappings.

2400. Although al-Dulaymi commanded the attack, Daqduq, a longtime Hezbollah commander, masterminded it, authorized it and directed its execution down to the minor details.

2401. Daqduq advised AAH commanders al-Dulaymi and Qais al-Khazali and served as a liaison between the IRGC-QF and Qais al-Khazali, who along with his brother Laith al-Khazali, oversaw the attack.

2402. The U.S. U.S. Department of the Treasury Department's November 19, 2012 press release announcing Daqduq's designation as an SDGT stated, in part:

> Daqduq is a senior Hezbollah commander responsible for numerous attacks against Coalition Forces in Iraq, including planning an attack on the Karbala Joint Provincial Coordination Center (JPCC) [sic] on January 20, 2007, which resulted in the deaths of five U.S. soldiers.

2403. Daqduq is Lebanese-born and served in Hezbollah for twenty-four years prior to

355

the attack on the Karbala PJCC.

2404.   Daqduq served as a bodyguard for Hezbollah leader Hassan Nasrallah and also led Hezbollah operations in large areas of Lebanon.

2405.   According to the U.S. Government, Daqduq "was in Iraq working as a surrogate for Iranian Revolutionary Guards Corps Quds Force operatives involved with special groups."

2406.   In 2005, Daqduq was directed by senior Lebanese Hezbollah leadership to go to Iran and work with the IRGC-QF to train Iran's proxies in Iraq.

2407.   According to the U.S. Government: "In May 2006, [Daqduq] traveled to Tehran with Yussef Hashim, a fellow Lebanese Hezbollah and head of their operations in Iraq. There they met with the commander and deputy commander of the Iranian Quds Force special external operations."

2408.   Daqduq was ordered to Iraq to report on the training and operations of the Iraqi Special Groups.

2409.   In the year prior to his capture in 2007, Daqduq made four trips to Iraq where he monitored and reported on the training and arming of the Special Groups in mortars and rockets, manufacturing and employment of IEDs, and kidnapping operations.

2410.   Most significantly, Daqduq was tasked with organizing the Special Groups in ways that mirrored how Hezbollah was organized in Lebanon.

2411.   Daqduq also helped the IRGC train Iraqis at multiple sites in Iran.

2412.   Using training groups of approximately twenty to sixty Iraqis at a time, Daqduq instructed his trainees on how to use EFPs, mortars and rockets, as well as intelligence, sniper and kidnapping operations.

2413.   The IRGC then provided operational, intelligence and logistical support to insert

the terrorist trainees back into various Iraqi cities where they rejoined their respective Special Groups.

2414. The IRGC also supplied the Groups with weapons and a funding stream ranging from an estimated $750,000 to $3 million per month.

2415. On April 26, 2007, the Commander of the Multi-National Force-Iraq, Gen. David Petraeus, gave a briefing in which he stated:

> The Iranian involvement has really become much clearer to us and brought into much more focus during the interrogation of the members -- the heads of the Khazali network and some of the key members of that network that have been in detention now for a month or more. This is the head of the secret cell network, the extremist secret cells. They were provided substantial funding, training on Iranian soil, advanced explosive munitions and technologies as well as run of the mill arms and ammunition, in some cases advice and in some cases even a degree of direction. When we captured these individuals -- the initial capture, and then there have been a number of others since then -- we discovered, for example, a 22-page memorandum on a computer that detailed the planning, preparation, approval process and conduct of the operation that resulted in five of our soldiers being killed in Karbala. It also detailed -- there are numerous documents which detailed a number of different attacks on coalition forces, and our sense is that these records were kept so that they could be handed in to whoever it is that is financing them. And there's no question, again, that Iranian financing is taking place through the Quds force of the Iranian Republican Guards Corps.

2416. The Americans killed during the Karbala attack included Brian S. Freeman, Johnathon M. Millican, Shawn P. Falter and Johnathan B. Chism. The Americans injured during the Karbala attack included Billy Wallace, Evan Kirby, Johnny Washburn and Marvin Thornsberry.

**The Freeman Family**

2417. Brian S. Freeman was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

2418.   Plaintiff Charlotte Freeman is a citizen of the United States and domiciled in the State of California. She is the widow of Brian S. Freeman.

2419.   Plaintiff Charlotte Freeman brings an action individually and on behalf of the Estate of Brian S. Freeman as its legal representative.

2420.   Plaintiff G.F., a minor represented by his legal guardian Charlotte Freeman, is a citizen of the United States and domiciled in the State of California. He is the son of Brian S. Freeman.

2421.   Plaintiff I.F., a minor represented by her legal guardian Charlotte Freeman, is a citizen of the United States and domiciled in the State of California. She is the daughter of Brian S. Freeman.

2422.   Plaintiff Kathleen Snyder is a citizen of the United States and domiciled in the State of Utah. She is the mother of Brian S. Freeman.

2423.   Plaintiff Albert Snyder is a citizen of the United States and domiciled in the State of Utah. He is the step-father of Brian S. Freeman.

2424.   Plaintiff Randolph Freeman is a citizen of the United States and domiciled in the State of California. He is the father of Brian S. Freeman.

2425.   Plaintiff Kathaleen Freeman is a citizen of the United States and domiciled in the State of California. She is the step-mother of Brian S. Freeman.

2426.   Plaintiff Richard Lee is a citizen of the United States and domiciled in the State of California. He is the step-brother of Brian S. Freeman.

2427.   As a result of the attack, and the death of Brian S. Freeman, Plaintiffs Charlotte Freeman, G.F., I.F., Kathleen Snyder, Albert Snyder, Randolph Freeman, Kathaleen Freeman and Richard Lee have experienced severe mental anguish, extreme emotional pain and suffering, and

loss of their husband's/son's/father's society, companionship, comfort, advice and counsel.

**The Chism Family**

2428. Johnathan B. Chism was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

2429. Plaintiff Danny Chism is a citizen of the United States and domiciled in the State of Louisiana. He is the father of Johnathan B. Chism.

2430. Plaintiff Elizabeth Chism is a citizen of the United States and domiciled in the State of Louisiana. She is the mother of Johnathan B. Chism.

2431. Plaintiff Elizabeth Chism brings an action individually and on behalf of the Estate of Johnathan B. Chism as its legal representative.

2432. Plaintiff Vanessa Chism is a citizen of the United States and domiciled in the State of Louisiana. She is the step-mother of Johnathan B. Chism.

2433. Plaintiff Julie Chism is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Johnathan B. Chism.

2434. As a result of the attack, and the death of Johnathan B. Chism, Plaintiffs Danny Chism, Elizabeth Chism, Vanessa Chism, and Julie Chism have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Falter Family**

2435. Shawn P. Falter was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

2436. Plaintiff Russell J. Falter is a citizen of the United States and domiciled in the State of New York. He is the father of Shawn P. Falter.

2437.   Plaintiff Russell J. Falter brings an action individually and on behalf of the Estate of Shawn P. Falter, as its legal representative.

2438.   Plaintiff Linda Falter is a citizen of the United States and domiciled in the State of New York. She is the step-mother of Shawn P. Falter.

2439.   Plaintiff Marjorie Falter is a citizen of the United States and domiciled in the State of New York. She is the sister of Shawn P. Falter.

2440.   Plaintiff Russell C. Falter is a citizen of the United States and domiciled in the State of New York. He is the brother of Shawn P. Falter.

2441.   Plaintiff John Sackett is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Shawn P. Falter.

2442.   Plaintiff Jason Sackett is a citizen of the United States and domiciled in the State of New York. He is the brother of Shawn P. Falter.

2443.   Plaintiff Michael Lucas is a citizen of the United States and domiciled in the State of New York. He is the step-brother of Shawn P. Falter.

2444.   Plaintiff Marsha Novak is a citizen of the United States and domiciled in the State of California. She is the step-sister of Shawn P. Falter.

2445.   Plaintiff David Lucas is a citizen of the United States and domiciled in the State of New York. He is the step-brother of Shawn P. Falter.

2446.   Plaintiff Tim Lucas is a citizen of the United States and domiciled in the State of New York. He is the step-brother of Shawn P. Falter.

2447.   Plaintiff Andrew Lucas is a citizen of the United States and domiciled in the State of Alaska. He is the step-brother of Shawn P. Falter.

2448.   As a result of the attack, and the death of Shawn P. Falter, Plaintiffs Linda Falter,

Russell J. Falter, Marjorie Falter, Russell C. Falter, John Sackett, Jason Sackett, Michael Lucas, Marsha Novak, David Lucas, Tim Lucas, and Andrew Lucas have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Millican Family**

2449.   Johnathon M. Millican was a citizen of the United States and domiciled in the State of Alaska when he was killed in Iraq.

2450.   Plaintiff Shannon Millican is a citizen of the United States and domiciled in the State of Alabama. She is the widow of Johnathon M. Millican.

2451.   Plaintiff Shannon Millican brings an action individually and on behalf of the Estate of Johnathon M. Millican, as its legal representative.

2452.   Plaintiff Paul Mitchell Millican is a citizen of the United States and domiciled in the State of Alabama. He is the father of Johnathon M. Millican.

2453.   As a result of the attack, and the death of Johnathon M. Millican, Plaintiffs Shannon Millican and Paul Mitchell Millican have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's society, companionship, comfort, advice and counsel.

**The Fritz Family**

2454.   Jacob Fritz was a citizen of the United States and domiciled in the State of Nebraska when he was killed in Iraq.

2455.   Plaintiff Noala Fritz is a citizen of the United States and domiciled in the State of Nebraska. She is the mother of Jacob Fritz.

2456.   Plaintiff Noala Fritz brings an action individually and on behalf of the Estate of

Jacob Fritz, as its legal representative.

2457.   Lyle Fritz was a citizen of the United States at the time of the death of Jacob Fritz. He was the father of Jacob Fritz. Lyle Fritz died on June 11, 2011.

2458.   Plaintiff Noala Fritz brings an action individually and on behalf of the Estate of Lyle Fritz, as its legal representative.

2459.   Plaintiff Daniel Fritz is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Jacob Fritz.

2460.   Plaintiff Ethan Fritz is a citizen of the United States and domiciled in the State of Nebraska. He is the brother of Jacob Fritz.

2461.   As a result of the attack, and the death of Jacob Fritz, the late Lyle Fritz experienced, and Plaintiffs Noala Fritz, Daniel Fritz, and Ethan Fritz have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Wallace Family**

2462.   Plaintiff Billy Wallace is a citizen of the United States and domiciled in the State of Indiana.

2463.   Mr. Wallace was wounded while helping to defend the PJCC's main building.

2464.   He sustained serious shrapnel injuries when a grenade exploded in the doorway of the room that he was defending.

2465.   Mr. Wallace also suffered hearing loss and tinnitus.

2466.   He suffers from Post-Traumatic Stress Disorder ("PTSD") for which he has received ongoing treatment.

2467.   As a result of the attack, and the injuries he suffered, Plaintiff Billy Wallace has

experienced severe physical and mental anguish and extreme emotional pain and suffering.

2468.  Plaintiff Stefanie Wallace is a citizen of the United States and domiciled in the State of Indiana. She is the wife of Billy Wallace.

2469.  Plaintiff Austin Wallace is a citizen of the United States and domiciled in the State of Florida. He is the son of Billy Wallace.

2470.  Plaintiff Devon Wallace is a citizen of the United States and domiciled in the State of Indiana. He is the son of Billy Wallace.

2471.  Plaintiff C.W., a minor represented by his legal guardians Billy Wallace and Stefanie Wallace, is a citizen of the United States and domiciled in the State of Indiana. He is the son of Billy Wallace.

2472.  As a result of the attack, and the injuries Billy Wallace suffered, Plaintiffs Stefanie Wallace, Austin Wallace, Devon Wallace and C.W. have experienced severe mental anguish and extreme emotional pain and suffering.

**The Kirby Family**

2473.  Plaintiff Evan Kirby is a citizen of the United States and domiciled in the State of Ohio.

2474.  Mr. Kirby was wounded during the attack on the PJCC's barracks.

2475.  As a result of an explosion that occurred during the attack, Mr. Kirby was thrown into the air and sustained injuries to his back and spine.

2476.  The aforementioned injuries have caused him great pain.

2477.  As a result of the attack, and the injuries he suffered, Plaintiff Evan Kirby has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2478.  Plaintiff Marcia Kirby is a citizen of the United States and domiciled in the State

of Ohio. She is the mother of Evan Kirby.

2479.   Plaintiff Steven Kirby is a citizen of the United States and domiciled in the State of Ohio. He is the father of Evan Kirby.

2480.   As a result of the attack and the injuries Evan Kirby suffered, Plaintiffs Marcia Kirby and Steven Kirby have experienced severe mental anguish and extreme emotional pain and suffering.

**The Washburn Family**

2481.   Plaintiff Johnny Washburn is a citizen of the United States and domiciled in the State of Wisconsin.

2482.   Mr. Washburn was wounded while helping to defend the PJCC's main building.

2483.   He was in the same room as Johnathon M. Millican when the grenade detonated that killed Mr. Millican.

2484.   In addition to witnessing Mr. Millican's murder, Mr. Washburn also observed other soldiers being killed and injured.

2485.   Mr. Washburn attempted to assist the aforementioned soldiers.

2486.   His clothing was covered in blood, causing him great distress, as he was initially unable to determine if the blood was his own or belonged to one of the surrounding soldiers.

2487.   These images and memories of what he witnessed throughout the attack have caused him great distress.

2488.   He has experienced sleep-related problems and headaches following the attack.

2489.   As a result of the attack, and the injuries he suffered, Plaintiff Johnny Washburn has experienced severe mental anguish and extreme emotional pain and suffering.

**The Thornsberry Family**

2490.   Plaintiff Marvin Thornsberry is a citizen of the United States and domiciled in the State of Michigan.

2491.   Mr. Thornsberry was in the PJCC's adjacent building when the attack occurred.

2492.   He has experienced survivor's guilt following the attack.

2493.   Mr. Thornsberry has been prescribed medication to address issues of depression and anxiety.

2494.   As a result of the attack, and the injuries he suffered, Plaintiff Marvin Thornsberry has experienced severe mental anguish and extreme emotional pain and suffering.

2495.   Plaintiff Cynthia Thornsberry is a citizen of the United States and domiciled in the State of Michigan. She is the wife of Marvin Thornsberry.

2496.   Plaintiff A.B., a minor represented by his legal guardian Cynthia Thornsberry, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Cynthia Thornsberry and the step-son of Marvin Thornsberry.

2497.   Plaintiff M.T., a minor represented by her legal guardians Marvin Thornsberry and Cynthia Thornsberry, is a citizen of the United States and domiciled in the State of Michigan. She is the daughter of Marvin Thornsberry and Cynthia Thornsberry.

2498.   Plaintiff N.T., a minor represented by his legal guardians, Marvin Thornsberry and Cynthia Thornsberry, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Marvin Thornsberry and Cynthia Thornsberry.

2499.   Plaintiff L.T., a minor represented by her legal guardians, Marvin Thornsberry and Cynthia Thornsberry, is a citizen of the United States and domiciled in the State of Michigan. She is the daughter of Marvin Thornsberry and Cynthia Thornsberry.

2500.   As a result of the attack and the injuries Marvin Thornsberry suffered, Plaintiffs Cynthia Thornsberry, A.B., M.T., N.T., and L.T. have experienced severe mental anguish and extreme emotional pain and suffering.

### 92.   THE JANUARY 22, 2007 ATTACK – BAGHDAD

**The Stout Family**

2501.   Brandon L. Stout was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

2502.   On January 22, 2007, Brandon L. Stout, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2503.   Brandon L. Stout was killed in the attack.

2504.   The weapon used to kill Brandon L. Stout was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2505.   Plaintiff Tracy Anderson is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Brandon L. Stout.

2506.   Plaintiff Jeffrey Anderson is a citizen of the United States and domiciled in the State of Michigan. He is the step-father of Brandon L. Stout.

2507.   Plaintiff Adam G. Stout is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Brandon L. Stout.

2508.   Plaintiff Andrew Jeffrey Anderson is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Brandon L. Stout.

2509.   Plaintiff Elizabeth Lynn Islas is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Brandon L. Stout.

2510.  As a result of the attack, and the death of Brandon L. Stout, Plaintiffs Tracy Anderson, Jeffrey Anderson, Adam G. Stout, Andrew Jeffrey Anderson and Elizabeth Lynn Islas have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

93.  **THE JANUARY 25, 2007 ATTACK – BAGHDAD**

**The Fuller Family**

2511.  Alexander H. Fuller was a citizen of the United States and domiciled in the State of Massachusetts when he was killed in Iraq.

2512.  On January 25, 2007, Alexander H. Fuller, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2513.  Alexander H. Fuller was killed in the attack.

2514.  The weapon used to kill Alexander H. Fuller was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2515.  Plaintiff Anastasia Fuller is a citizen of the United States and domiciled in the State of Massachusetts. She is the widow of Alexander H. Fuller.

2516.  Plaintiff Anastasia Fuller brings an action individually and on behalf of the Estate of Alexander H. Fuller, as its legal representative.

2517.  Plaintiff A.F., a minor represented by her legal guardian Anastasia Fuller, is a citizen of the United States and domiciled in the State of Massachusetts. She is the daughter of Alexander H. Fuller.

2518.  As a result of the attack, and the death of Alexander H. Fuller, Plaintiffs Anastasia Fuller and A.F. have experienced severe mental anguish, extreme emotional pain and suffering,

and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Balsley Family**

2519.  Michael C. Balsley was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

2520.  On January 25, 2007, Michael C. Balsley, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2521.  Michael C. Balsley was killed in the attack.

2522.  The weapon used to kill Michael C. Balsley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2523.  Plaintiff Samantha Balsley is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Michael C. Balsley.

2524.  Plaintiff Samantha Balsley brings an action individually and on behalf of the Estate of Michael C. Balsley, as its legal representative.

2525.  Plaintiff L.R.-W., a minor represented by his legal guardian Samantha Balsley, is a citizen of the United States and domiciled in the State of Virginia. He is the son of Michael C. Balsley.

2526.  As a result of the attack, and the death of Michael C. Balsley, Plaintiffs Samantha Balsley and L.R.-W. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

94.  **THE JANUARY 27, 2007 ATTACK – BAGHDAD**

**The Hobson Family**

2527.   Plaintiff Heath Damon Hobson is a citizen of the United States and domiciled in the Commonwealth of Massachusetts.

2528.   On January 27, 2007, Heath Damon Hobson, then 34, was serving in the U.S. military in Iraq.

2529.   Heath Damon Hobson was in the motor pool at Camp Travis in the U.S. Embassy compound in Baghdad when multiple rockets were fired by Special Groups operatives at the compound and landed in his proximity.

2530.   Heath Damon Hobson was injured in the attack perpetrated by Hezbollah-trained Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2531.   As a result of the attack, Heath Damon Hobson sustained a shrapnel-induced open leg fracture and an arterial tear and significant blood loss. He was evacuated to a Combat Support Hospital where he underwent an arterial graft to salvage his leg and received external fixation to stabilize his leg. He was then flown to Balad, Iraq and then to Germany finally arriving at Walter Reed Army Hospital in Washington, DC to be treated for his injuries. To this day, he has a loss of the use of his right foot and ankle, bone and soft-tissue loss, nerve damage, vascular damage, disfigurement, and PTSD.

2532.  Mr. Hobson has received extensive medical treatment at various hospitals to address the injuries he sustained in the attack.

2533.   As a result of the attack, and the injuries he suffered, Plaintiff Heath Damon Hobson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2534.   Plaintiff Jodi Michelle Hobson is a citizen of the United States and domiciled in the State of Massachusetts. She is the wife of Heath Damon Hobson.

2535.   Plaintiff M.D.H., a minor, represented by his legal guardian Heath Damon Hobson, is a citizen of the United States and domiciled in the State of Massachusetts. He is the son of Heath Damon Hobson.

2536.   As a result of the attack, and the injuries Heath Damon Hobson suffered, Plaintiffs Jodi Michelle Hobson and M.D.H. have experienced severe mental anguish and extreme emotional pain and suffering.

## 95.    THE JANUARY 27, 2007 ATTACK – TAJI

**The Garrigus Family**

2537.   Mickel D. Garrigus was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

2538.   On January 27, 2007, Mickel D. Garrigus, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2539.   Mickel D. Garrigus was killed in the attack.

2540.   The weapon used to kill Mickel D. Garrigus was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2541.   Plaintiff Deadra Garrigus is a citizen of the United States and domiciled in the State of Washington. She is the mother of Mickel D. Garrigus.

2542.   Plaintiff Deadra Garrigus brings an action individually and on behalf of the Estate of Mickel D. Garrigus, as its legal representative.

370

2543.  Plaintiff David Garrigus is a citizen of the United States and domiciled in the State of Washington. He is the step-father of Mickel D. Garrigus.

2544.  Plaintiff Nichole Garrigus is a citizen of the United States and domiciled in the State of Washington. She is the sister of Mickel D. Garrigus.

2545.  Plaintiff Kyla Ostenson is a citizen of the United States and domiciled in the State of Washington. She is the sister of Mickel D. Garrigus.

2546.  Plaintiff Matthew Garrigus is a citizen of the United States and domiciled in the State of Washington. He is the brother of Mickel D. Garrigus.

2547.  As a result of the attack, and the death of Mickel D. Garrigus, Plaintiffs Deadra Garrigus, David Garrigus, Nichole Garrigus, Kyla Ostenson and Matthew Garrigus have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 96.  THE FEBRUARY 1, 2007 ATTACK – BAGHDAD

### The Ryan Family

2548.  Plaintiff Shawn Ryan is a citizen of the United States and domiciled in the State of Texas.

2549.  On February 1, 2007, Shawn Ryan was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2550.  The weapon used to injure Shawn Ryan was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2551.  As a result of the attack, Mr. Ryan sustained shrapnel injuries that left him permanently disabled.

2552.   As a result of the attack, and the injuries he suffered, Plaintiff Shawn Ryan has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 97.   THE FEBRUARY 2, 2007 ATTACK – MAHMUDIYAH

**The Dunn Family**

2553.   Terrence Dunn was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

2554.   On February 2, 2007, Terrence Dunn, aged 38, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2555.   Terrence Dunn was killed in the attack.

2556.   The weapon used to kill Terrence Dunn was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2557.   Plaintiff Sharon Y. Dunn Smith is a citizen of the United States and domiciled in the State of Texas. She is the sister of Terrence Dunn.

2558.   Plaintiff Sharon Y. Dunn Smith brings an action individually and on behalf of the Estate of Terrence Dunn, as its legal representative.

2559.   Plaintiff Dennis Dunn is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Terrence Dunn.

2560.   As a result of the attack, and the death of Terrence Dunn, Plaintiffs Sharon Y. Dunn Smith and Dennis Dunn have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

**The Landeck Family**

2561.   Kevin C. Landeck was a citizen of the United States and domiciled in the State of

Illinois when he was killed in Iraq.

2562. On February 2, 2007, Kevin C. Landeck, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2563. Kevin C. Landeck was killed in the attack.

2564. The weapon used to kill Kevin C. Landeck was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2565. Plaintiff Richard Landeck is a citizen of the United States and domiciled in the State of Illinois. He is the father of Kevin C. Landeck.

2566. Plaintiff Victoria Landeck is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Kevin C. Landeck.

2567. As a result of the attack, and the death of Kevin C. Landeck, Plaintiffs Richard Landeck and Victoria Landeck have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

## 98. THE FEBRUARY 26, 2007 ATTACK – DIWANIYAH

### The Beardsley Family

2568. William J. Beardsley was a citizen of the United States and domiciled in the State of Minnesota when he was killed in Iraq.

2569. On February 26, 2007, William J. Beardsley, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2570. William J. Beardsley was killed in the attack.

2571. The weapon used to kill William J. Beardsley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2572. Plaintiff Lavonna Harper is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of William J. Beardsley.

2573. As a result of the attack, and the death of William J. Beardsley, Plaintiff Lavonna Harper has experienced the loss of her son's society, companionship, comfort, advice and counsel.

## 99. THE MARCH 15, 2007 ATTACK – BAQUBAH

**The Harris Family**

2574. Blake Harris was a citizen of the United States and domiciled in the State of Georgia when he was killed in Iraq.

2575. On March 15, 2007, Blake Harris, aged 27, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

2576. Blake Harris was killed in the attack.

2577. The weapon used to kill Blake Harris was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

2578. Plaintiff Melba Anne F. Harris is a citizen of the United States and domiciled in the State of Georgia. She is the mother of Blake Harris.

2579. Plaintiff Paul D. Harris is a citizen of the United States and domiciled in the State of Georgia. He is the father of Blake Harris.

2580. As a result of the attack, and the death of Blake Harris, Plaintiffs Melba Anne F. Harris and Paul D. Harris have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

100.    **THE MARCH 20, 2007 ATTACK – BAGHDAD**

**The Glawson Family**

2581.   Curtis E. Glawson was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

2582.   On March 20, 2007, Curtis E. Glawson, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2583.   Curtis E. Glawson was killed in the attack.

2584.   The weapon used to kill Curtis E. Glawson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2585.   Plaintiff Hyunjung Glawson is domiciled in the State of Florida. She is the widow of Curtis E. Glawson.

2586.   Plaintiff Hyunjung Glawson brings an action individually and on behalf of the Estate of Curtis E. Glawson, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

2587.   Plaintiff Yolanda M. Brooks is a citizen of the United States and domiciled in the State of Alabama. She is the mother of Curtis E. Glawson.

2588.   Plaintiff Curtis Glawson, Sr. is a citizen of the United States and domiciled in the State of Georgia. He is the father of Curtis E. Glawson.

2589.   Plaintiff Kierra Glawson is a citizen of the United States and domiciled in the State of Louisiana. She is the sister of Curtis E. Glawson.

2590.   Cortez Glawson was a citizen of the United States at the time of the death of Curtis E. Glawson. He was the brother of Curtis E. Glawson. Cortez Glawson died on January 24, 2018.

2591.   Sabrina Glawson is a citizen of the United States and domiciled in the State of Alabama. She brings an action on behalf of the Estate of Cortez Glawson, as its legal representative.

2592.   Plaintiff Jazmon Reyna is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Curtis E. Glawson.

2593.   As a result of the attack, and the death of Curtis E. Glawson, the late Cortez Glawson experienced, and Plaintiffs Hyunjung Glawson, Yolanda M. Brooks, Curtis Glawson, Sr., Kierra Glawson and Jazmon Reyna have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 101.   THE MARCH 23, 2007 ATTACK – NASIRIYAH

**The Sabinish Family**

2594.   Plaintiff Ryan Sabinish is a citizen of the United States and domiciled in the State of Minnesota.

2595.   On March 23, 2007, Ryan Sabinish, then 25, was serving in the U.S. military in Iraq.

2596.   Mr. Sabinish, a gunner, was tasked with protecting his base from mortar and rocket attacks.

2597.   While he was conducting his operations, his vehicle was struck by an EFP emplaced by Special Groups.

2598.   The weapon used to injure Mr. Sabinish was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2599.   As a result of the attack, Mr. Sabinish experienced severe blood loss and sustained injuries to his back, hip, and lower extremities.

2600.   In addition, shrapnel penetrated and scarred his right arm.

2601.   Mr. Sabinish has been diagnosed with a TBI.

2602.   He also suffers from PTSD.

2603.   Mr. Sabinish has been hospitalized for his emotional injuries and has sought mental health treatment as an outpatient. He continues to seek treatment.

2604.   He has been prescribed medication to address his emotional health issues, and he continues to take medication to treat his emotional injuries.

2605.   As a result of the attack, and the injuries he suffered, Plaintiff Ryan Sabinish has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2606.   Plaintiff R.J.S., a minor represented by her legal guardian Ryan Sabinish, is a citizen of the United States and domiciled in the State of Minnesota. She is the daughter of Ryan Sabinish.

2607.   Plaintiff S.J.S., a minor represented by her legal guardian Ryan Sabinish, is a citizen of the United States and domiciled in the State of Minnesota. She is the daughter of Ryan Sabinish.

2608.   As a result of the attack, and the injuries suffered by Ryan Sabinish, Plaintiffs R.J.S. and S.J.S. have experienced severe mental anguish, and extreme emotional pain and suffering.

## 102.   THE MARCH 27, 2007 ATTACK – BAGHDAD

**The Thomas Family**

2609.   Sean M. Thomas was a citizen of the United States and domiciled in the State of Pennsylvania when he was killed in Iraq.

2610.   On March 27, 2007, Sean M. Thomas, aged 33, was serving in the U.S. military when he was killed in a 107mm rocket attack perpetrated by JAM Special Groups operatives.

2611.   Sean M. Thomas was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2612.   Plaintiff Carrie Thompson is a citizen of the United States and domiciled in the State of Pennsylvania. She is the widow of Sean M. Thomas.

2613.   Plaintiff Carrie Thompson brings a claim individually and on behalf of the Estate of Sean M. Thomas, as its legal representative.

2614.   Plaintiff A.T., a minor represented by her legal guardian, Carrie Thompson, is a citizen of the United States and domiciled in the State of Pennsylvania. She is the daughter of Sean M. Thomas.

2615.   Plaintiff Daniel Thomas, Sr. is a citizen of the United States and domiciled in the State of Pennsylvania. He is the father of Sean M. Thomas.

2616.   Plaintiff Diana Thomas is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of Sean M. Thomas.

2617.   Plaintiff Daniel Thomas, Jr. is a citizen of the United States and domiciled in the State of Pennsylvania. He is the brother of Sean M. Thomas.

2618.   Plaintiff Kelly Gillis is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Sean M. Thomas.

2619.   Plaintiff Melinda Flick is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Sean M. Thomas.

2620.   As a result of the attack, and the death of Sean M. Thomas, Plaintiffs Carrie Thompson, A.T., Daniel Thomas Sr., Diana Thomas, Daniel Thomas Jr., Kelly Gillis and Melinda

Flick have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

### 103. THE MARCH 31, 2007 ATTACK – DIWANIYAH

**The Christopher Family**

2621. Kwesi Christopher was a citizen of the United States and domiciled in Brooklyn, in the State of New York, when he was killed in Iraq.

2622. On March 31, 2007, Kwesi Christopher, aged 25, a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near him.

2623. Kwesi Christopher was killed in the attack.

2624. The weapon used to kill Kwesi Christopher was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2625. Plaintiff Ann Christopher is a citizen of the United States and domiciled in the State of Florida. She is the mother of Kwesi Christopher.

2626. Plaintiff Ann Christopher brings an action individually and on behalf of the Estate of Kwesi Christopher, as its legal representative.

2627. As a result of the attack, and the death of Kwesi Christopher, Plaintiff Ann Christopher has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 104. THE APRIL 4, 2007 ATTACK – NASIRIYAH

**The Sabinish Family**

2628. Plaintiff Ryan Sabinish is a citizen of the United States and domiciled in the State

of Minnesota.

2629.   On April 4, 2007, Ryan Sabinish, then 25, was serving in the U.S. military in Iraq.

2630.   Mr. Sabinish was driving the third vehicle of a convoy when an EFP emplaced by Special Groups detonated near the first vehicle. During the attack, a secondary IED detonated, striking an Iraqi civilian vehicle.

2631.   The weapon used in the attack was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2632.   Mr. Sabinish dismounted his vehicle to pull security and would not allow the civilian vehicle to drive away from the scene. He witnessed a wounded child inside the vehicle die.

2633.   Mr. Sabinish was subsequently diagnosed with PTSD and has experienced suicidal ideation. He has been hospitalized for his emotional injuries and has sought mental health treatment as an outpatient.

2634.   Mr. Sabinish continues to seek treatment, including counseling, and has been prescribed anti-anxiety medications, anti-depressants, and medication to address sleep-related issues. He continues to take medication to treat his emotional injuries.

2635.   As a result of the attack, and the injuries he suffered, Ryan Sabinish has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2636.   Plaintiff R.J.S., a minor represented by her legal guardian Ryan Sabinish, is a citizen of the United States and domiciled in the State of Minnesota. She is the daughter of Ryan Sabinish.

2637.   Plaintiff S.J.S., a minor represented by her legal guardian Ryan Sabinish, is a citizen

380

of the United States and domiciled in the State of Minnesota. She is the daughter of Ryan Sabinish.

2638.    As a result of the attack, and the injuries suffered by Ryan Sabinish, Plaintiffs R.J.S. and S.J.S. have experienced severe mental anguish, and extreme emotional pain and suffering.

## 105.    THE APRIL 6, 2007 ATTACK – BAGHDAD

**The Fuentes Family**

2639.    Daniel A. Fuentes was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

2640.    On April 6, 2007, Daniel A. Fuentes, aged 19, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2641.    Daniel A. Fuentes was killed in the attack.

2642.    The weapon used to kill Daniel A. Fuentes was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2643.    Plaintiff Nancy Fuentes is a citizen of the United States and domiciled in the State of New York. She is the mother of Daniel A. Fuentes.

2644.    Plaintiff Nancy Fuentes brings an action individually and on behalf of the Estate of Daniel A. Fuentes.

2645.    Plaintiff Armando Fuentes is a citizen of the United States and domiciled in the State of New York. He is the father of Daniel A. Fuentes.

2646.    Plaintiff Julio Fuentes is a citizen of the United States and domiciled in the State of New York. He is the brother of Daniel A. Fuentes.

2647.    Plaintiff Tatyana Fuentes is a citizen of the United States and domiciled in the State of New York. She is the sister of Daniel A. Fuentes.

381

2648.   Plaintiff Emma McGarry is a citizen of the United States and domiciled in the State of New York. She was the fiancée of Daniel A. Fuentes.

2649.   Plaintiff D.J.F., a minor represented by his legal guardian, Emma McGarry, is a citizen of the United States and domiciled in the State of New York. He is the son of Daniel A. Fuentes.

2650.   As a result of the attack, and the death of Daniel A. Fuentes, Plaintiffs Nancy Fuentes, Armando Fuentes, Julio Fuentes, Tatyana Fuentes, Emma McGarry and D.J.F. have experienced the loss of her son's/brother's/fiancée's/father's society, companionship, comfort, advice and counsel.

## 106.   THE APRIL 6, 2007 ATTACK – SADR CITY

**The Kirby Family**

2651.   Plaintiff John Kirby is a citizen of the United States and domiciled in the State of Texas.

2652.   On April 6, 2007, John Kirby, then 31, was serving in the U.S. military in Iraq when both an EFP and an ambulance rigged with explosives detonated near his vehicle.

2653.   The weapon used to injure John Kirby was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2654.   As a result of the attack, Mr. Kirby suffered burns on his upper back. He also suffers from TBI and PTSD.

2655.   As a result of the attack, and the injuries he suffered, Plaintiff John Kirby has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 107. THE APRIL 7, 2007 ATTACK – BAGHDAD

**The Murphy-Sweet Family**

2656.  Philip A. Murphy-Sweet was a citizen of the United States and domiciled in the State of Idaho when he was killed in Iraq.

2657.  On April 7, 2007, Philip A. Murphy-Sweet, aged 42 was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2658.  Philip A. Murphy-Sweet was killed in the attack.

2659.  The weapon used to kill Philip A. Murphy-Sweet was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2660.  Plaintiff Michael Murphy-Sweet is a citizen of the United States and domiciled in the State of Idaho. He is the brother of Philip A. Murphy-Sweet.

2661.  Plaintiff Elizabeth Murphy-Sweet is a citizen of the United States and domiciled in the State of Idaho. She is the sister of Philip A. Murphy-Sweet.

2662.  Plaintiff Anona Gonelli is a citizen of the United States and domiciled in the State of Idaho. She is the sister of Philip A. Murphy-Sweet.

2663.  As a result of the attack, and the death of Philip A. Murphy-Sweet, Plaintiffs Michael Murphy-Sweet, Elizabeth Murphy-Sweet and Anona Gonelli have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

### 108. THE APRIL 9, 2007 ATTACK – BAGHDAD

**The Walton Family**

2664.  Brett A. Walton was a citizen of the United States and domiciled in the State of

Oregon when he was killed in Iraq.

2665.   On April 9, 2007, Brett A. Walton, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2666.   Brett A. Walton was killed in the attack.

2667.   The weapon used to kill Brett A. Walton was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2668.   Plaintiff Lindsay Young is a citizen of the United States and domiciled in the State of Oregon. She is the widow of Brett A. Walton.

2669.   Plaintiff Lindsay Young brings an action individually and on behalf of the Estate of Brett A. Walton, as its legal representative.

2670.   Plaintiff S.W., a minor represented by her legal guardian Lindsay Young, is a citizen of the United States and domiciled in the State of Oregon. She is the daughter of Brett A. Walton.

2671.   As a result of the attack, and the death of Brett A. Walton, Plaintiffs Lindsay Young and S.W. have experienced the loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Holden Family**

2672.   Brian L. Holden was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

2673.   On April 9, 2007, Brian L. Holden, aged 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his HMMWV in Baghdad.

2674.   Brian L. Holden was killed in the attack.

2675.   The weapon used to kill Brian L. Holden was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2676.   Plaintiff Leasa Dollar is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Brian L. Holden.

2677.   Plaintiff Eugene DeLozier is a citizen of the United States and domiciled in the State of Washington. He is the step-father of Brian L. Holden.

2678.   As a result of the attack, and the death of Brian L. Holden, Plaintiffs Leasa Dollar and Eugene DeLozier have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

**109.   THE APRIL 13, 2007 ATTACK – BAGHDAD**

**The Bowman Family**

2679.   Larry R. Bowman was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

2680.   On April 13, 2007, Larry R. Bowman, aged 29, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2681.   Larry R. Bowman was killed in the attack.

2682.   The weapon used to kill Larry R. Bowman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2683.   Plaintiff Michelle Klemensberg is a citizen of the United States and domiciled in the State of California. She is the widow of Larry R. Bowman.

2684.   Plaintiff Michelle Klemensberg brings an action individually and on behalf of the Estate of Larry R. Bowman, as its legal representative.

2685.   As a result of the attack, and the death of Larry R. Bowman, Plaintiff Michelle Klemensberg has experienced the loss of her late husband's society, companionship, comfort, advice and counsel.

### 110.   THE APRIL 15, 2007 ATTACK – BAGHDAD

**The Lilley Family**

2686.   Plaintiff Scott Lilley is a citizen of the United States and domiciled in the State of New Mexico.

2687.   On April 15, 2007, Scott Lilley, then 28, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2688.   The weapon used to injure Mr. Lilley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2689.   As a result of the attack, shrapnel struck Mr. Lilley's head and entered his skull. He developed significant swelling of the brain.

2690.   Surgeons removed a portion of Mr. Lilley's skull to alleviate the swelling.

2691.   He remained in a coma for over 24 hours.

2692.   Mr. Lilley also underwent procedures in an attempt to prevent brain aneurisms.

2693.   The injury to his brain resulted in Mr. Lilley's inability to do simple and complex tasks that included walking, eating, and talking.

2694.   His received physical and occupational therapy so he could relearn these and other skills.

2695.   Mr. Lilley has developed short-term memory loss since the attack and has difficulty following up with tasks and recalling information.  He has been diagnosed with ADHD and has been prescribed medication to address this condition.

2696.   As a result of the attack, and the injuries he suffered, Plaintiff Scott Lilley has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2697.   Plaintiff Frank Lilley is a citizen of the United States and domiciled in the State of New Mexico. He is the father of Scott Lilley.

2698.   Plaintiff Jolene Lilley is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Scott Lilley.

2699.   Plaintiff Matthew Lilley is a citizen of the United States and domiciled in the State of Texas. He is the brother of Scott Lilley.

2700.   As a result of the attack, and the injuries Scott Lilley suffered, Plaintiffs Frank Lilley, Jolene Lilley, and Matthew Lilley have experienced severe mental anguish and extreme emotional pain and suffering.

## 111.   THE APRIL 16, 2007 ATTACK – BAGHDAD

**The Starcevich Family**

2701.   Lucas V. Starcevich was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

2702.   On April 16, 2007, Lucas V. Starcevich, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2703.   Lucas V. Starcevich was killed in the attack.

2704.   The weapon used to kill Lucas V. Starcevich was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction,

using specialized training and components supplied by Hezbollah and the IRGC.

2705.   Plaintiff Ava Tomson is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Lucas V. Starcevich.

2706.   Plaintiff Ava Tomson brings an action individually and on behalf of the Estate of Lucas V. Starcevich, as its legal representative.

2707.   Plaintiff Richard Tomson is a citizen of the United States and domiciled in the State of Illinois. He is the step-father of Lucas V. Starcevich.

2708.   Plaintiff Bradley Starcevich is a citizen of the United States and domiciled in the State of Illinois. He is the father of Lucas V. Starcevich.

2709.   Plaintiff Glenda Starcevich is a citizen of the United States and domiciled in the State of Illinois. She is the step-mother of Lucas V. Starcevich.

2710.   Plaintiff Ariana Starcevich is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Lucas V. Starcevich.

2711.   Plaintiff Trenton Starcevich is a citizen of the United States and domiciled in the State of California. He is the brother of Lucas V. Starcevich.

2712.   Plaintiff Samantha Tomson is a citizen of the United States and domiciled in the State of Illinois. She is the step-sister of Lucas V. Starcevich.

2713.   Plaintiff Andrew Tomson is a citizen of the United States and domiciled in the State of Illinois. He is the step-brother of Lucas V. Starcevich

2714.   As a result of the attack, and the death of Lucas V. Starcevich, Plaintiffs Ava Tomson, Richard Tomson, Bradley Starcevich, Glenda Starcevich, Ariana Starcevich, Trenton Starcevich, Samantha Tomson and Andrew Tomson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship,

comfort, advice and counsel.

### 112. THE APRIL 28, 2007 ATTACK – BAGHDAD

**The Stevens Family**

2715.   Plaintiff Jared S. Stevens is a citizen of the United States and domiciled in the State of Maryland.

2716.   On April 28, 2007, Jared S. Stevens was serving in the U.S. military in Iraq when he came under sniper fire by JAM Special Groups.

2717.   Jared S. Stevens was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2718.   As a result of the attack, Mr. Stevens was shot in the lip, lacerating it.

2719.   As a result of the attack, and the injuries he suffered, Plaintiff Jared S. Stevens has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 113. THE APRIL 28, 2007 ATTACK – SALMAN PAK

**The Hicks Family**

2720.   Glenn Dale Hicks, Jr. was a citizen of the United States and domiciled in the State of Texas.

2721.   On April 28, 2007, Glenn Dale Hicks, Jr., then 24, was serving in the U.S. military in Iraq when an IED emplaced by Special Groups detonated the near his vehicle. His unit was on a routine patrol heading southwest on Route Kelp in the vicinity of Salman Pak, Iraq when the M1151 in which he was traveling was struck by an IED and subsequent small arms fire.

2722.   Glenn Dale Hicks, Jr. was killed in the attack from blast injuries.

2723.   The Special Groups terror cell operatives that emplaced the IED that killed Glenn Dale Hicks, Jr. were trained by Hezbollah and funded and supplied by the IRGC-QF and they

launched the attack at the direction of both Hezbollah and the IRGC-QF, as their proxy.

2724.   Plaintiff Susan Maria Doskocil Hicks is a citizen of the United States and domiciled in the State of Texas. She is the mother of Glenn Dale Hicks, Jr.

2725.   Plaintiff Susan Maria Doskocil Hicks brings an action individually and on behalf of the Estate of Glenn Dale Hicks, Jr., as its legal representative.

2726.   Plaintiff Glenn Dale Hicks, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the father of Glenn Dale Hicks, Jr.

2727.   Plaintiff David James Hicks is a citizen of the United States and domiciled in the State of Texas. He is the brother of Glenn Dale Hicks, Jr.

2728.   Plaintiff John Christopher Hicks is a citizen of the United States and domiciled in the State of Texas. He is the brother of Glenn Dale Hicks, Jr.

2729.   Plaintiff S.L.H., a minor, represented by his legal guardian Susan Maria Doskocil Hicks, is a citizen of the United States and domiciled in the State of Texas. He is the brother of Glenn Dale Hicks, Jr.

2730.   As a result of the attack, and the death of Glenn Dale Hicks, Jr., Plaintiffs Susan Maria Doskocil Hicks, Glenn Dale Hicks, Sr., David James Hicks, John Christopher Hicks, and S.L.H. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 114.   THE APRIL 29, 2007 ATTACK – BAGHDAD

**The Funcheon Family**

2731.   Alexander J. Funcheon was a citizen of the United States and domiciled in the State of Kansas when he was killed in Iraq.

2732.   On April 29, 2007, Alexander J. Funcheon, aged 21, was serving in the U.S.

military in Iraq when an EFP emplaced by Special Groups detonated near his unit.

2733. Alexander J. Funcheon was killed in the attack.

2734. The weapon used to kill Alexander J. Funcheon was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2735. Plaintiff Karen Funcheon is a citizen of the United States and domiciled in the State of Kansas. She is the mother of Alexander J. Funcheon.

2736. Plaintiff Karen Funcheon brings an action individually and on behalf of the Estate of Alexander J. Funcheon, as its legal representative.

2737. Plaintiff Robert Funcheon is a citizen of the United States and domiciled in the State of Kansas. He is the father of Alexander J. Funcheon.

2738. As a result of the attack, and the death of Alexander J. Funcheon, Plaintiffs Karen Funcheon and Robert Funcheon have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

**The Martin Family**

2739. Jay E. Martin was a citizen of the United States and domiciled in the State of Maryland when he was killed in Iraq.

2740. On April 29, 2007, Jay E. Martin, aged 29, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his unit.

2741. Jay E. Martin was killed in the attack.

2742. The weapon used to kill Jay E. Martin was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

391

2743. Plaintiff Dwight Martin is a citizen of the United States and domiciled in the State of Maryland. He is the father of Jay E. Martin.

2744. Plaintiff Dwight Martin brings an action individually and on behalf of the Estate of Jay E. Martin, as its legal representative.

2745. Plaintiff Dove Deanna Adams is a citizen of the United States and domiciled in the State of Maryland. She is the sister of Jay E. Martin.

2746. Plaintiff Raven Adams is a citizen of the United States and domiciled in the State of Maryland. She is the sister of Jay E. Martin.

2747. Plaintiff Lark Adams is a citizen of the United States and domiciled in the State of Maryland. She is the sister of Jay E. Martin.

2748. As a result of the attack, and the death of Jay E. Martin, Plaintiffs Dwight Martin, Dove Deanna Adams, Raven Adams and Lark Adams have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's/son's society, companionship, comfort, advice and counsel.

### 115. THE MAY 3, 2007 ATTACK – BAGHDAD

**The Potter Family**

2749. Jerome Potter was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

2750. On May 3, 2007, Jerome Potter, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2751. Jerome Potter was killed in the attack.

2752. The weapon used to kill Jerome Potter was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

2753.   Plaintiff Holly Burson is a citizen of the United States and domiciled in the State of Washington. She is the mother of Jerome Potter.

2754.   Plaintiff Holly Burson brings an action individually and on behalf of the Estate of Jerome Potter, as its legal representative.

2755.   As a result of the attack, and the death of Jerome Potter, Plaintiff Holly Burson has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 116.   THE MAY 3, 2007 ATTACK – MUSAYYIB

**The Umbrell Family**

2756.   Colby J. Umbrell was a citizen of the United States and domiciled in the State of Pennsylvania when he was killed in Iraq.

2757.   On May 3, 2007, Colby J. Umbrell aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2758.   Colby J. Umbrell was killed in the attack.

2759.   The weapon used to kill Colby J. Umbrell was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2760.   Plaintiff Nancy Umbrell is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of Colby J. Umbrell.

2761.   Plaintiff Nancy Umbrell brings an action individually and on behalf of the Estate of Colby J. Umbrell, as its legal representative.

2762.   Plaintiff Mark Umbrell is a citizen of the United States and domiciled in the State

of Pennsylvania. He is the father of Colby J. Umbrell.

2763. Plaintiff Casey Boehmer is a citizen of the United States and domiciled in the State of Maryland. She is the sister of Colby J. Umbrell.

2764. As a result of the attack, and the death of Colby J. Umbrell, Plaintiffs Nancy Umbrell, Mark Umbrell and Casey Boehmer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of her brother's society, companionship, comfort, advice and counsel.

## 117.   THE MAY 5, 2007 ATTACK – KAMALIYAH

### The Smith Family

2765. Plaintiff Jeremy D. Smith is a citizen of the United States and domiciled in the State of North Carolina.

2766. On May 5, 2007, Jeremy D. Smith was serving in the U.S. military in COP Bushmaster in Kamaliyah, Iraq when he was injured in a mortar attack perpetrated by JAM Special Groups operatives.

2767. Jeremy D. Smith was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2768. As a result of the attack, Jeremy Smith suffered shrapnel injuries to his right arm and right leg. He also suffered a damaged a ligament in his right ankle.

2769. As a result of the attack, and the injuries he suffered, Plaintiff Jeremy D. Smith has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 118.   THE MAY 6, 2007 ATTACK – BAGHDAD

### The Dixon Family

2770. Robert J. Dixon was a citizen of the United States and domiciled in the State of

Minnesota when he was killed in Iraq.

2771.   On May 6, 2007, Robert J. Dixon aged 27, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2772.   Robert J. Dixon was killed in the attack.

2773.   The weapon used to kill Robert J. Dixon was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2774.   Ilene Dixon was a citizen of the United States at the time of the death of Robert J. Dixon. She was the mother of Robert J. Dixon. She died on November 18, 2014.

2775.   Plaintiff Daniel Dixon is a citizen of the United States and domiciled in the State of Michigan. He is the father of Robert J. Dixon.

2776.   Plaintiff Daniel Dixon brings an action individually and on behalf of the Estate of Ilene Dixon as its legal representative.

2777.   Plaintiff Daniel Dixon also brings an action on behalf of the Estate of Robert J. Dixon, as its co-legal representative.

2778.   Jessica Hubbard is a citizen of the United States and domiciled in the State of Michigan. She is the ex-wife of Robert J. Dixon and is the legal guardian of Plaintiffs M.R. and L.R. and co-legal representative of the Estate of Robert J. Dixon.

2779.   Jessica Hubbard brings an action solely on behalf of Plaintiffs M.R. and L.R., minors and on behalf of the Estate of Robert J. Dixon, as its co-legal representative.

2780.   Plaintiff M.R., a minor represented by his legal guardian, Jessica Hubbard, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Robert J. Dixon.

2781.   Plaintiff L.R., a minor represented by his legal guardian, Jessica Hubbard, is a citizen of the United States and domiciled in the State of Michigan. He is the son of Robert J. Dixon.

2782.   Plaintiff David Dixon is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Robert J. Dixon.

2783.   Plaintiff Daniel Austin Dixon is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Robert J. Dixon.

2784.   Plaintiff Gretchen Lang is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Robert J. Dixon.

2785.   As a result of the attack, and the death of Robert J. Dixon, the late Ilene Dixon experienced, and Plaintiffs Daniel Dixon, M.R., L.R., David Dixon, Daniel Austin Dixon and Gretchen Lang have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society, companionship, comfort, advice and counsel.

## 119.   THE MAY 6, 2007 ATTACK – BAGHDAD

**The Martinez Family**

2786.   Virgil C. Martinez was a citizen of the United States and domiciled in the State of Utah when he was killed in Iraq.

2787.   On May 6, 2007, Virgil C. Martinez, aged 33, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2788.   Virgil C. Martinez was killed in the attack.

2789.   The weapon used to kill Virgil C. Martinez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2790. Plaintiff Rebecca J. Oliver is a citizen of the United States and domiciled in the State of Utah. She is the mother of Virgil C. Martinez.

2791. Plaintiff Daniel C. Oliver is a citizen of the United States and domiciled in the State of Utah. He is the step-father of Virgil C. Martinez.

2792. Plaintiff Kimberlee Austin-Oliver is a citizen of the United States and domiciled in the State of Utah. She is the sister of Virgil C. Martinez.

2793. As a result of the attack, and the death of Virgil C. Martinez, Plaintiffs Rebecca J. Oliver, Daniel C. Oliver and Kimberlee Austin-Oliver have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 120. THE MAY 8, 2007 ATTACK – SALMAN PAK

**The Little Family**

2794. Kyle A. Little was a citizen of the United States and domiciled in the State of Massachusetts when he was killed in Iraq.

2795. On May 8, 2007, Kyle A. Little, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2796. Kyle A. Little was killed in the attack.

2797. The weapon used to kill Kyle A. Little was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2798. Plaintiff Tiffany M. Little is a citizen of the United States and domiciled in the State of Alabama. She is the widow of Kyle A. Little.

2799. Plaintiff Tiffany M. Little brings an action individually and on behalf of the Estate

of Kyle A. Little as its legal representative.

2800.   Plaintiff K.L., a minor represented by her legal guardian Tiffany M. Little, is a citizen of the United States and domiciled in the State of Alabama. She is the daughter of Kyle A. Little.

2801.   Plaintiff Shelley Ann Smith is a citizen of the United States and domiciled in the State of Massachusetts. She is the mother of Kyle A. Little.

2802.   Plaintiff Dakota Smith-Lizotte is a citizen of the United States and domiciled in the State of Massachusetts. He is the brother of Kyle A. Little.

2803.   Plaintiff Shyanne Smith-Lizotte is a citizen of the United States and domiciled in the State of Massachusetts. She is the sister of Kyle A. Little.

2804.   As a result of the attack, and the death of Kyle A. Little, Plaintiffs Tiffany M. Little, K.L., Shelley Ann Smith, Dakota Smith-Lizotte, and Shyanne Smith-Lizotte have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

### 121.   THE MAY 8, 2007 ATTACK – BAGHDAD

**The Stephens Family**

2805.   Blake Stephens was a citizen of the United States and domiciled in the State of Idaho when he was killed in Iraq.

2806.   On May 8, 2007, Blake Stephens, aged 25, was serving in the United States military in Iraq when an EFP emplaced by JAM Special Groups detonated near his vehicle near Salman Pak, a town south of Baghdad.

2807.   Blake Stephens was killed in the attack.

2808.   The weapon used to kill Blake Stephens was a Hezbollah-designed and Iranian-

manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2809.   Plaintiff Erin Lee Dructor is a citizen of the United States and domiciled in the State of California. She is the widow of Blake Stephens.

2810.   Plaintiff Erin Lee Dructor brings an action individually and on behalf of the Estate of Blake Stephens, as its legal representative.

2811.   Plaintiff Trent Stephens is a citizen of the United States and domiciled in the State of Idaho. He is the father of Blake Stephens.

2812.   Plaintiff Kathleen Stephens is a citizen of the United States and domiciled in the State of Idaho. She is the mother of Blake Stephens.

2813.   Plaintiff Derek Stephens is a citizen of the United States and domiciled in the State of Idaho. He is the brother of Blake Stephens.

2814.   Plaintiff Rhett Stephens is a citizen of the United States and domiciled in the State of California. He is the brother of Blake Stephens.

2815.   Plaintiff Summer Stephens is a citizen of the United States and domiciled in the State of California. She is the sister of Blake Stephens.

2816.   Plaintiff Brittani Hobson is a citizen of the United States and domiciled in the State of Idaho. She is the sister of Blake Stephens.

2817.   As a result of the attack, and the death of Blake Stephens, Plaintiffs Erin Lee Dructor, Trent Stephens, Kathleen Stephens, Derek Stephens, Rhett Stephens, Summer Stephens, and Brittani Hobson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

**122.**   **THE MAY 9, 2007 ATTACK – AL-HILLAH**

**The Conner Family**

2818.   Bradly D. Conner was a citizen of the United States and domiciled in the State of Idaho when he was killed in Iraq.

2819.   On May 9, 2007, Bradly D. Conner, aged 41, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2820.   Bradly D. Conner was killed in the attack.

2821.   The weapon used to kill Bradly D. Conner was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2822.   Plaintiff Cynthia Conner is a citizen of the United States and domiciled in the State of Alabama. She is the widow of Bradly D. Conner.

2823.   As a result of the attack, and the death of Bradly D. Conner, Plaintiff Cynthia Conner has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's companionship, comfort, advice and counsel.

**123.**   **THE MAY 11, 2007 ATTACK – AL ISKANDARIYAH**

**The Farrar Family**

2824.   William A. Farrar was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

2825.   On May 11, 2007, William A. Farrar, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2826.   William A. Farrar was killed in the attack.

2827.   The weapon used to kill William A. Farrar was a Hezbollah-designed and Iranian-

400

manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2828.   Plaintiff William Farrar, Sr. is a citizen of the United States and domiciled in the State of California. He is the father of William A. Farrar.

2829.   Plaintiff William Farrar, Sr. brings an action individually and on behalf of the Estate of William A. Farrar, as its legal representative.

2830.   As a result of the attack, and the death of William A. Farrar, Plaintiff William Farrar, Sr. has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

## 124.   THE MAY 14, 2007 ATTACK – BAGHDAD

**The Brooks Family**

2831.   Plaintiff Joshua Brooks is a citizen of the United States and domiciled in the State of Tennessee.

2832.   On May 14, 2007, Joshua Brooks, then 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups hit the HMMWV in which he was traveling in Baghdad.

2833.   The weapon used to injure Joshua Brooks was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2834.   The blast shattered Mr. Brooks' left fibula.

2835.   Mr. Brooks also suffered tissue loss in his left leg, nerve and tendon damage in his left foot and ankle, and scarring on his left foot.

2836.   Mr. Brooks has undergone over twenty surgeries to treat his injuries. His injuries have also necessitated extensive physical therapy.

2837.  Mr. Brooks was diagnosed with PTSD and a TBI. He has been prescribed medication and has sought counseling to treat the emotional impact of the attack.

2838.  As a result of the attack, and the injuries he suffered, Plaintiff Joshua Brooks has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2839.  Plaintiff Joyce Brooks is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of Joshua Brooks.

2840.  Plaintiff Danny Brooks is a citizen of the United States and domiciled in the State of Kentucky.  He is the father of Joshua Brooks.

2841.  Plaintiff Daniel Tyler Brooks is a citizen of the United States and domiciled in the State of Kentucky. He is the brother of Joshua Brooks.

2842.  As a result of the attack, and the injuries Joshua Brooks has suffered, Plaintiffs Joyce Brooks, Danny Brooks and Daniel Tyler Brooks have experienced severe mental anguish and extreme emotional pain and suffering.

### 125.  THE MAY 18, 2007 ATTACK – BAGHDAD

**The Brown Family**

2843.  Scott J. Brown was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

2844.  On May 18, 2007, Scott J. Brown, aged 33, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2845.  Scott J. Brown was killed in the attack.

2846.  The weapon used to kill Scott J. Brown was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2847.   Plaintiff Delilah Brown is a citizen of the United States and domiciled in the State of Tennessee. She is the widow of Scott J. Brown.

2848.   Plaintiff Delilah Brown brings an action individually and on behalf of the Estate of Scott J. Brown, as its legal representative.

2849.   As a result of the attack, and the death of Scott J. Brown, Plaintiff Delilah Brown has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

### 126.   THE MAY 29, 2007 ATTACK – SADR CITY

**The Kirby Family**

2850.   Plaintiff John Kirby is a citizen of the United States and domiciled in the State of Texas.

2851.   On May 29, 2007, John Kirby, then 31, was serving in the U.S. military in Iraq when he came under sniper fire by JAM Special Groups.

2852.   John Kirby was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

2853.   As a result of the attack, Mr. Kirby was shot in the arm breaking his humerus in three places and later requiring an implant.

2854.   As a result of the attack, and the injuries he suffered, Plaintiff John Kirby has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 127.   THE JUNE 2, 2007 ATTACK – BAGHDAD

**The Dressler Family**

2855.   Shawn E. Dressler was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

2856.  On June 2, 2007, Shawn E. Dressler, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2857.  Shawn E. Dressler was killed in the attack.

2858.  The weapon used to kill Shawn E. Dressler was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2859.  Plaintiff Tonya K. Dressler is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Shawn E. Dressler.

2860.  Plaintiff Ardith Cecil Dressler is a citizen of the United States and domiciled in the State of Arizona. He is the father of Shawn E. Dressler.

2861.  Plaintiff Melissa Dressler is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Shawn E. Dressler.

2862.  Plaintiff Tanya Suzette Dressler is a citizen of the United States and domiciled in the State of Arkansas. She is the sister of Shawn E. Dressler.

2863.  Plaintiff Daniel Dressler is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Shawn E. Dressler.

2864.  Plaintiff James Dressler is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Shawn E. Dressler.

2865.  As a result of the attack, and the death of Shawn E. Dressler, Plaintiffs Tonya K. Dressler, Ardith Cecil Dressler, Melissa Dressler, Tanya Suzette Dressler, Daniel Dressler and James Dressler have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

**The Brown Family**

2866. Joshua D. Brown was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

2867. On June 2, 2007, Joshua D. Brown, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2868. Joshua D. Brown was killed in the attack.

2869. The weapon used to kill Joshua D. Brown was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2870. Plaintiff Elizabeth Masterson is a citizen of the United States and domiciled in the State of Michigan. She is the widow of Joshua D. Brown.

2871. Plaintiff Elizabeth Masterson brings an action individually and on behalf of the Estate of Joshua D. Brown, as its legal representative.

2872. Plaintiff Marian Brown is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Joshua D. Brown.

2873. Plaintiff Wayne Brown is a citizen of the United States and domiciled in the State of Michigan. He is the father of Joshua D. Brown.

2874. As a result of the attack, and the death of Joshua D. Brown, Plaintiffs Elizabeth Masterson, Marian Brown and Wayne Brown have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's society, companionship, comfort, advice and counsel.

128.  **THE JUNE 5, 2007 ATTACK – KIRKUK**

**The Balmer Family**

2875.   Ryan A. Balmer was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

2876.   On June 5, 2007, Ryan A. Balmer, aged 33, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2877.   Ryan A. Balmer was killed in the attack.

2878.   The weapon used to kill Ryan A. Balmer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2879.   Plaintiff Danielle Sweet is a citizen of the United States and domiciled in the State of Florida. She is the widow of Ryan A. Balmer.

2880.   Plaintiff Danielle Sweet brings an action individually and on behalf of the Estate of Ryan A. Balmer, as its legal representative.

2881.   Plaintiff A.B., a minor represented by his legal guardian Danielle Sweet, is a citizen of the United States and domiciled in the State of Florida. He is the son of Ryan A. Balmer.

2882.   Plaintiff G.B., a minor represented by her legal guardian Danielle Sweet, is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Ryan A. Balmer.

2883.   As a result of the attack, and the death of Ryan A. Balmer, Plaintiffs Danielle Sweet, A.B. and G.B. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Kuglics Family**

2884.   Matthew J. Kuglics was a citizen of the United States and domiciled in the State of

Ohio when he was killed in Iraq.

2885. On June 5, 2007, Matthew J. Kuglics, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2886. Matthew J. Kuglics was killed in the attack.

2887. The weapon used to kill Matthew J. Kuglics was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2888. Plaintiff Donna Kuglics is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Matthew J. Kuglics.

2889. Plaintiff Donna Kuglics brings an action individually and on behalf of the Estate of Matthew J. Kuglics, as its legal representative.

2890. Plaintiff Les Kuglics is a citizen of the United States and domiciled in the State of Ohio. He is the father of Matthew J. Kuglics.

2891. Plaintiff Emily Adams is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Matthew J. Kuglics.

2892. As a result of the attack, and the death of Matthew J. Kuglics, Plaintiffs Donna Kuglics, Les Kuglics and Emily Adams have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 129. THE JUNE 6, 2007 ATTACK – BAGHDAD

**The Gajdos Family**

2893. Shawn D. Gajdos was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

407

2894.   On June 6, 2007, Shawn D. Gajdos, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2895.   Shawn D. Gajdos was killed in the attack.

2896.   The weapon used to kill Shawn D. Gajdos was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2897.   Plaintiff Derek Gajdos is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Shawn D. Gajdos.

2898.   Plaintiff Tammy DenBoer is a citizen of the United States and domiciled in the State of Michigan. She is the sister of Shawn D. Gajdos.

2899.   As a result of the attack, and the death of Shawn D. Gajdos, Plaintiffs Derek Gajdos and Tammy DenBoer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

**130.   THE JUNE 8, 2007 ATTACK – BAGHDAD**

**The Campbell Family**

2900.   Plaintiff Brandeaux Campbell is a citizen of the United States and domiciled in the State of Texas.

2901.   On June 8, 2007, Brandeaux Campbell, then 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle.

2902.   The weapon used to injure Mr. Campbell was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2903.   Brandeaux Campbell was severely wounded in the attack resulting in a concussion, slicing open his forehead, mouth, and tongue, and lodging shrapnel in both his shoulder and leg.

2904.   As a result of the attack, and the injuries he suffered, Plaintiff Brandeaux Campbell has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Wilson Family**

2905.   Plaintiff Ryan Wilson is a citizen of the United States and domiciled in the State of Florida.

2906.   On June 8, 2007, Ryan Wilson was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle.

2907.   The weapon used to injure Mr. Wilson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2908.   Ryan Wilson was severely wounded in the attack resulting in shrapnel wounds to his right arm.

2909.   As a result of the attack, and the injuries he suffered, Plaintiff Ryan Wilson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2910.   Plaintiff Jami Lin Wilson is a citizen of the United States and domiciled in the State of Florida. She is the wife of Ryan Wilson.

2911.   As a result of the attack, and the injuries Ryan Wilson has suffered, Plaintiff Jami Lin Wilson has experienced severe mental anguish and extreme emotional pain and suffering.

### 131.   THE JUNE 10, 2007 ATTACK – BAGHDAD

**The Lammers Family**

2912.   Plaintiff Matthew Lammers is a citizen of the United States and domiciled in the

State of North Carolina.

2913.   On June 10, 2007, Matthew Lammers, then 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2914.   Matthew Lammers was injured in the attack.

2915.   The weapon used to injure Matthew Lammers was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2916.   As a result of the attack, Matthew Lammers' left hand was completely severed. Both of his legs were nearly severed below his kneecaps.

2917.   His femoral arteries had been cut and he lost a significant amount of blood.

2918.   After the attack he began to asphyxiate due to his lungs filling with bodily fluids. Mr. Lammers remained conscious while this occurred.

2919.   Mr. Lammers' injuries necessitated that he undergo surgery to fully amputate both of his legs below the knees. He has been rendered a triple amputee.

2920.   He underwent multiple procedures and frequent wound cleanings. His treatment included debridement of muscle tissue.

2921.   Mr. Lammers has prosthetics to assist with the use of his left hand. He must use a wheelchair to ambulate.

2922.   He has experienced and continues to experience severe phantom limb pain and pain in his back.

2923.   He has undergone extensive physical therapy.

2924.   He has been diagnosed with a TBI.

2925.   Mr. Lammers has also been diagnosed with PTSD and depression and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

2926.   Mr. Lammers continues to experience pain and emotional distress each day and he receives continuing treatment for his injuries.

2927.   As a result of the attack, and the injuries he suffered, Plaintiff Matthew Lammers has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2928.   Plaintiff Alicia Lammers is a citizen of the United States and domiciled in the state of North Carolina. She is the wife of Matthew Lammers.

2929.   Plaintiff Barbara Lammers is a citizen of the United States and domiciled in the state of Kansas. She is the mother of Matthew Lammers.

2930.   Plaintiff Gary Lammers is a citizen of the United States and domiciled in the state of Kansas. He is the father of Matthew Lammers.

2931.   Plaintiff Stacy Pate is a citizen of the United States and domiciled in the state of Kansas. She is the sister of Matthew Lammers.

2932.   As a result of the attack, and the injuries Matthew Lammers has suffered, Plaintiffs Alicia Lammers, Barbara Lammers, Gary Lammers and Stacy Pate have experienced severe mental anguish and extreme emotional pain and suffering.

**The Gomez Family**

2933.   Plaintiff Angel Gomez is a citizen of the United States and domiciled in the State of Texas.

2934.   On June 10, 2007, Angel Gomez, then 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

2935.   The weapon used to injure Angel Gomez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2936.   The blast injured Mr. Gomez's right leg, necessitating its amputation below the knee.

2937.   Angel Gomez sustained shrapnel to his back, which resulted in complete muscle atrophy in his back.

2938.   Angel Gomez was wearing Interceptor Body Armor ("IBA"), which included ballistic plates to protect his abdomen.  The shrapnel hit the IBA plates, which slit Mr. Gomez's abdomen open and caused internal injuries.

2939.   Mr. Gomez was also diagnosed with a concussion, a TBI, and PTSD.

2940.   Mr. Gomez lived in a hospital for a year and a half while receiving treatment and undergoing numerous surgeries.  He has been prescribed medication to treat his injuries.

2941.   As a result of the attack, and the injuries he suffered, Plaintiff Angel Gomez has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 132.   THE JUNE 11, 2007 ATTACK – BAGHDAD

**The Payne Family**

2942.   Cameron K. Payne was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

412

2943.   On June 11, 2007, Cameron K. Payne, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2944.   Cameron K. Payne was killed in the attack.

2945.   The weapon used to kill Cameron K. Payne was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2946.   Plaintiff Denise Jackson is a citizen of the United States and domiciled in the State of California. She is the mother of Cameron K. Payne.

2947.   As a result of the attack, and the death of Cameron K. Payne, Plaintiff Denise Jackson has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 133.   THE JUNE 13, 2007 ATTACK - SCANIA

**The Parker Family**

2948.   Richard Parker was a citizen of the United States and domiciled in the State of Maine when he was killed in Iraq.

2949.   On June 13, 2007, Richard Parker, aged 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2950.   Richard Parker died on June 14, 2007 as a result of injuries sustained in the attack.

2951.   The weapon used to kill Richard Parker was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2952.   Plaintiff Scott Hood is a citizen of the United States and domiciled in the State of Maine. He is the father of Richard Parker.

413

2953.   Plaintiff Flora Hood is a citizen of the United States and domiciled in the State of Maine. She is the step-mother of Richard Parker.

2954.   Plaintiff Dixie Flagg is a citizen of the United States and domiciled in the State of Maine. She is the mother of Richard Parker.

2955.   Plaintiff Stephanie Hood is a citizen of the United States and domiciled in the State of Maine. She is the sister of Richard Parker.

2956.   Plaintiff Cheyenne Flagg is a citizen of the United States and domiciled in the State of Maine. She is the sister of Richard Parker.

2957.   Plaintiff William Parker is a citizen of the United States and domiciled in the State of Maine. He is the brother of Richard Parker.

2958.   Plaintiff Meghan Parker-Crockett is a citizen of the United States and domiciled in the State of Maine. She is the sister of Richard Parker.

2959.   As a result of the attack, and the death of Richard Parker, Plaintiffs Scott Hood, Flora Hood, Dixie Flagg, Stephanie Hood, Cheyenne Flagg, William Parker, and Meghan Parker-Crockett have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's\brother's society, companionship, comfort, advice and counsel.

### 134.   THE JUNE 14, 2007 ATTACK – SCANIA

**The Moores Family**

2960.   Plaintiff Andrew Moores is a citizen of the United States and domiciled in the State of Maine.

2961.   On June 14, 2007, Andrew Moores, then 23, was serving in the United States military in Iraq. Mr. Moores was the truck commander in a gun truck that was part of a convoy

tasked with escorting military vehicles between Kuwait and Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2962.  The weapon used to injure Andrew Moores was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2963.  As a result of the attack, Andrew Moores took shrapnel in his left hand and suffered injury to his right shoulder, which necessitated surgery and physical therapy. He experiences limitations on his shoulder movement to this day.

2964.  Mr. Moores also injured his neck as a result of the attack and takes medication for pain.

2965.  Andrew Moores was diagnosed with PTSD, for which he sought counseling. He takes medication for his PTSD, as well as medication for the sleep issues he experiences stemming from the attack.

2966.  As a result of the attack, and the injuries he suffered, Plaintiff Andrew Moores has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 135.  THE JUNE 17, 2007 ATTACK – BAGHDAD

**The Tracy Family**

2967.  Jacob Tracy was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

2968.  On June 17, 2007, Jacob Tracy, aged 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

415

2969.   Jacob Tracy was injured in the attack and died on June 18, 2007 from the injuries he sustained in the attack.

2970.   The weapon used to kill Jacob Tracy was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2971.   Plaintiff Sheila Tracy is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Jacob Tracy.

2972.   Plaintiff Sheila Tracy brings an action individually and on behalf of the Estate of Jacob Tracy, as its legal representative.

2973.   Plaintiff Donald Tracy is a citizen of the United States and domiciled in the State of Illinois. He is the father of Jacob Tracy.

2974.   Plaintiff Nichole Sweeney is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Jacob Tracy.

2975.   Plaintiff Christina Sheridan is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Jacob Tracy.

2976.   As a result of the attack, and the death of Jacob Tracy, Plaintiffs Sheila Tracy, Donald Tracy, Nichole Sweeney, and Christina Sheridan have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Benson Family**

2977.   Plaintiff Matthew Benson is a citizen of the United States and domiciled in the State of Arizona.

2978.  On June 17, 2007, Matthew Benson, then 28, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

2979.  The weapon used to injure Matthew Benson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2980.  As a result of the attack, Matthew Benson sustained a skull fracture.

2981.  Copper shavings were embedded in Matthew Benson's body.

2982.  Mr. Benson also sustained burns and bruising on his back as well as lacerations to his hands, face, and head.

2983.  Mr. Benson has experienced severe headaches.

2984.  Mr. Benson has been diagnosed with PTSD.

2985.  As a result of the attack, and the injuries he suffered, Plaintiff Matthew Benson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

2986.  Plaintiff Melissa Benson is a citizen of the United States and domiciled in the State of Arizona. She is the wife of Matthew Benson.

2987.  Plaintiff C.B., a minor represented by his legal guardian, Matthew Benson, is a citizen of the United States and domiciled in the State of Arizona. He is the son of Matthew Benson.

2988.  Plaintiff B.B., a minor represented by his legal guardian, Matthew Benson, is a citizen of the United States and domiciled in the State of Arizona. He is the son of Matthew Benson.

2989.   Plaintiff Daniel P. Benson is a citizen of the United States and domiciled in the State of Kansas. He is the father of Matthew Benson.

2990.   Plaintiff Carol Benson is a citizen of the United States and domiciled in the State of Kansas. She is the mother of Matthew Benson.

2991.   Plaintiff Daniel R. Benson is a citizen of the United States and domiciled in the State of Kansas. He is the brother of Matthew Benson.

2992.   As a result of the attack, and the injuries Matthew Benson has suffered, Plaintiffs Melissa Benson, C.B., B.B., Daniel P. Benson, Carol Benson and Daniel R. Benson have experienced severe mental anguish, and extreme emotional pain and suffering.

### 136.   THE JUNE 21, 2007 ATTACK – BAGHDAD

**The Spencer Family**

2993.   Raymond N. Spencer was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

2994.   On June 21, 2007, Raymond N. Spencer, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

2995.   Raymond N. Spencer was killed in the attack.

2996.   The weapon used to kill Raymond N. Spencer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

2997.   Plaintiff Raymond Nigel Spencer, Sr. is a citizen of the United States and domiciled in the State of Idaho. He is the father of Raymond N. Spencer.

2998.   Plaintiff Sylvia Johnson Spencer is a citizen of the United States and domiciled in the State of Idaho. She is the step-mother of Raymond N. Spencer.

2999.   As a result of the attack, and the death of Raymond N. Spencer, Plaintiffs Raymond Nigel Spencer, Sr. and Sylvia Johnson Spencer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

### 137.   THE JUNE 23, 2007 ATTACK – BAGHDAD

**The Moody Family**

3000.   Michael Dean Moody, Jr. was a citizen of the United States and domiciled in the State of Virginia.

3001.   On June 23, 2007, Michael Dean Moody, Jr., then 21, was serving in the U.S. military in Iraq when an IED emplaced by JAM Special Groups detonated near his vehicle while patrolling south of Sadr City. The IED strike was followed by small arms fire in the vicinity of the explosion.

3002.   Michael Dean Moody, Jr. was killed in the attack.

3003.   Michael Dean Moody, Jr. was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3004.   Plaintiff Michael Dean Moody, Sr. is a citizen of the United States and domiciled in the State of Virginia. He is the father of Michael Dean Moody, Jr.

3005.   Plaintiff Michael Dean Moody, Sr. brings an action individually and on behalf of the Estate of Michael Dean Moody, Jr., as its legal representative.

3006.   Plaintiff Connie Moody is a citizen of the United States and domiciled in the State of Virginia. She is the mother of Michael Dean Moody, Jr.

3007.   Plaintiff Kedrick Dante Moody is a citizen of the United States and domiciled in the State of Virginia. He is the brother of Michael Dean Moody, Jr.

3008.  As a result of the attack, and the death of Michael Dean Moody, Jr., Plaintiffs Michael Dean Moody, Sr., Connie Moody, and Kedrick Dante Moody have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 138.  THE JUNE 25, 2007 ATTACK – BAGHDAD

**The Edwards Family**

3009.  Plaintiff Drew Edwards is a citizen of the United States and domiciled in the State of Missouri.

3010.  On June 25, 2007, Drew Edwards, then 22, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

3011.  The weapon used to injure Drew Edwards was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3012.  As a result of the attack, Drew Edwards suffered an injury to his neck.

3013.  Mr. Edwards has been diagnosed with a TBI.

3014.  Mr. Edwards was also diagnosed with PTSD. He has been prescribed medication to address the emotional impact of the attack.

3015.  As a result of the attack, and the injuries he suffered, Plaintiff Drew Edwards has experienced physical pain, severe mental anguish and extreme emotional pain and suffering.

3016.  Plaintiff Donielle Edwards is a citizen of the United States and domiciled in the State of Missouri. She is the wife of Drew Edwards.

3017. As a result of the attack, and the injuries Drew Edwards has suffered, Plaintiff Donielle Edwards has experienced severe mental anguish and extreme emotional pain and suffering.

**The Craig Family**

3018. Andre Craig, Jr. was a citizen of the United States and domiciled in the State of Connecticut when he was killed in Iraq.

3019. On June 25, 2007, Andre Craig, Jr., aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3020. Andre Craig, Jr. was killed in the attack.

3021. The weapon used to kill Andre Craig, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3022. Plaintiff Arifah Hardy is a citizen of the United States and domiciled in the State of Connecticut. She was the fiancée of Andre Craig, Jr.

3023. Plaintiff T.C., a minor represented by her legal guardian, Arifah Hardy, is a citizen of the United States and domiciled in the State of Connecticut. She is the daughter of Andre Craig, Jr.

3024. Plaintiff Aundra Craig is a citizen of the United States and domiciled in the State of Connecticut. He is the father of Andre Craig, Jr.

3025. Plaintiff Joyce Craig is a citizen of the United States and domiciled in the State of Connecticut. She is the mother of Andre Craig, Jr.

3026. Plaintiff Debra Cook-Russell is a citizen of the United States and domiciled in the State of Connecticut. She is the sister of Andre Craig, Jr.

3027.   Plaintiff Nashima Williams Craig is a citizen of the United States and domiciled in the State of Connecticut. She is the sister of Andre Craig, Jr.

3028.   Plaintiff Matthew Craig is a citizen of the United States and domiciled in the State of Connecticut. He is the brother of Andre Craig, Jr.

3029.   Plaintiff Jonathan Craig is a citizen of the United States and domiciled in the State of Connecticut. He is the brother of Andre Craig, Jr.

3030.   Plaintiff Andre Brown is a citizen of the United States and domiciled in the State of Connecticut. He is the brother of Andre Craig, Jr.

3031.   Plaintiff Michael Cook is a citizen of the United States and domiciled in the State of Connecticut. He is the brother of Andre Craig, Jr.

3032.   Plaintiff Valencia Cook is a citizen of the United States and domiciled in the State of Connecticut. She is the sister of Andre Craig, Jr.

3033.   As a result of the attack, and the death of Andre Craig, Jr., Plaintiffs Aundra Craig, Joyce Craig, Debra Cook-Russell, Nashima Williams Craig, Jonathan Craig, Andre Brown, Michael Cook and Valencia Cook have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their fiancée's/father's/son's/brother's society, companionship, comfort, advice and counsel.

### 139.   THE JUNE 28, 2007 ATTACK – BAGHDAD

**The Crow Family**

3034.   William J. Crow was a citizen of the United States and domiciled in the State of Kansas when he was killed in Iraq.

3035.   On June 28, 2007, William J. Crow, aged 28, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3036.   William J. Crow died on June 28, 2007 as a result of injuries sustained in the attack.

3037.   The weapon used to kill William J. Crow was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3038.   Plaintiff Katherine M. Crow is a citizen of the United States and domiciled in the State of Texas. She is the widow of William J. Crow.

3039.   Plaintiff Katherine M. Crow brings an action individually and on behalf of the Estate of William J. Crow, as its legal representative.

3040.   Plaintiff K.A.C., a minor represented by her legal guardian, Katherine M. Crow, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of William J. Crow.

3041.   Plaintiff K.E.C., a minor represented by her legal guardian, Katherine M. Crow, is a citizen of the United States and domiciled in the State of Texas. She is the daughter of William J. Crow.

3042.   Plaintiff Candace Cathryn Hudson is a citizen of the United States and domiciled in the State of Florida. She is the sister of William J. Crow.

3043.   Kathryn Ann Mondini was a citizen of the United States at the time of the death of William J. Crow. She was the mother of William J. Crow. She died on April 18, 2014.

3044.   Plaintiff Candace Cathryn Hudson brings an action individually and on behalf of the Estate of Kathryn Ann Mondini, as its legal representative.

3045.   As a result of the attack, and the death of William J. Crow, the late Kathryn Ann Mondini experienced, and Plaintiffs Katherine M. Crow, K.A.C., K.E.C. and Candace Cathryn Hudson have experienced and continue to experience severe mental anguish, extreme emotional

pain and suffering, and loss of their son's/husband's/father's/brother's society, companionship, comfort, advice and counsel.

### 140.    THE JUNE 29, 2007 ATTACK – BAGHDAD

**The Adair Family**

3046.   James L. Adair was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3047.   One June 29, 2007, James L. Adair, aged 26, was serving in the U.S. military in Iraq when EFP emplaced by Special Groups detonated near his vehicle.

3048.   James L. Adair was killed in the attack.

3049.   The weapon used to kill James L. Adair was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3050.   Plaintiff Amanda B. Adair is a citizen of the United States and domiciled in the State of Texas. She is the sister of James L. Adair.

3051.   As a result of the attack, and the death of James L. Adair, Plaintiff Amanda B. Adair has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

### 141.    THE JUNE 30, 2007 ATTACK – BAGHDAD

**The Tutwiler Family**

3052.   Plaintiff Patrick Tutwiler is a citizen of the United States and domiciled in the State of Tennessee.

3053.   On June 30, 2007, Patrick Tutwiler was serving in the U.S. military in Iraq when he came under sniper fire by JAM Special Groups terror operatives.

3054. As a result of the attack, Mr. Tutwiler was shot through the face and neck.

3055. Patrick Tutwiler was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3056. As a result of the attack, and the injuries he suffered, Plaintiff Patrick Tutwiler has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3057. Plaintiff Crystal Tutwiler is a citizen of the United States and domiciled in the State of Tennessee. She is the wife Patrick Tutwiler.

3058. As a result of the attack, and the injuries suffered by Patrick Tutwiler, Plaintiff Crystal Tutwiler has experienced severe mental anguish, and extreme emotional pain and suffering.

## 142. THE JULY 5, 2007 ATTACK – BAGHDAD

### The Ring Family

3059. Michelle R. Ring was a citizen of the United States and was domiciled in the State of Oregon when she was killed in Iraq.

3060. On July 5, 2007, Michelle R. Ring, aged 26, was serving in the U.S. military when she was killed in a mortar attack perpetrated by JAM Special Groups terror operatives.

3061. Michelle R. Ring was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3062. Plaintiff Shirley Stearns is a citizen of the United States and is domiciled in the State of Oregon. She is the mother of Michelle R. Ring.

3063. Plaintiff John Stearns is a citizen of the United States and is domiciled in the State of Oregon. He is the father of Michelle R. Ring.

3064.   Plaintiffs Shirley Stearns and John Stearns bring an action individually and on behalf of the Estate of Michelle R. Ring, as its legal representatives.

3065.   Plaintiff Karen Hall is a citizen of the United States and is domiciled in the State of Alaska. She is the sister of Michelle R. Ring.

3066.   Plaintiff Marilyn Haybeck is a citizen of the United States and is domiciled in the State of Oregon. She is the sister of Michelle R. Ring.

3067.   Plaintiff Marc Stearns is a citizen of the United States and is domiciled in the State of Oregon. He is the son of Michelle R. Ring.

3068.   James Cole is a citizen of the United States and domiciled in the State of Tennessee. He was the ex-husband of Michelle R. Ring and is the legal guardian of Plaintiff B.C. James Cole brings an action solely on behalf of Plaintiff B.C., a minor.

3069.   Plaintiff B.C., a minor represented by his legal guardian, James Cole, is a citizen of the United States and is domiciled in the State of Tennessee. He is the son of Michelle R. Ring.

3070.   As a result of the attack, and the death of Michelle R. Ring, Plaintiffs Shirley Stearns, John Stearns, Karen Hall, Marilyn Haybeck, Marc Stearns and B.C. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their daughter's/sister's/mother's society, companionship, comfort, advice and counsel.

### 143.   THE JULY 6, 2007 ATTACK – BAGHDAD

**The Lamie Family**

3071.   Gene Lamie was a citizen of the United States and domiciled in the State of Georgia when he was killed in Iraq.

3072.   On July 6, 2007, Gene Lamie, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

426

3073.   Gene Lamie was killed in the attack.

3074.   The weapon used to kill Gene Lamie was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3075.   Plaintiff John D. Lamie is a citizen of the United States and domiciled in the State of Georgia. He is the brother of Gene Lamie.

3076.   As a result of the attack, and the death of Gene Lamie, Plaintiff John D. Lamie has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

## 144.   THE JULY 6, 2007 ATTACK – BAGHDAD

**The Lewis Family**

3077.   Jason Dale Lewis was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

3078.   On July 6, 2007, Jason Dale Lewis, aged 30, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3079.   Jason Dale Lewis was killed in the attack.

3080.   The weapon used to kill Jason Dale Lewis was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3081.   Plaintiff Donna Lewis is a citizen of the United States and domiciled in the State of Virginia. She is the widow of Jason Dale Lewis.

3082.   Plaintiff Donna Lewis brings an action individually and on behalf of the Estate of Jason Dale Lewis, as its legal representative.

427

3083.   Plaintiff J.L., a minor represented by his legal guardian Donna Lewis, is a citizen of the United States and domiciled in the State of Virginia. He is the son of Jason Dale Lewis.

3084.   Plaintiff J.L., a minor represented by his legal guardian Donna Lewis, is a citizen of the United States and domiciled in the State of Virginia. He is the son of Jason Dale Lewis.

3085.   Plaintiff G.L., a minor represented by her legal guardian Donna Lewis, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Jason Dale Lewis.

3086.   Plaintiff Jean Mariano is a citizen of the United States and domiciled in the State of Connecticut. She is the mother of Jason Dale Lewis.

3087.   As a result of the attack, and the death of Jason Dale Lewis, Plaintiffs Donna Lewis, J.L., J.L., G.L. and Jean Mariano have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their spouse's/father's/son's society, companionship, comfort, advice and counsel.

**The McRill Family**

3088.   Robert McRill was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

3089.   On July 6, 2007, Robert McRill, aged 42, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3090.   Robert McRill was killed in the attack.

3091.   The weapon used to kill Robert McRill was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3092.   Plaintiff Katherine McRill-Fellini is a citizen of the United States and domiciled in

428

the State of Virginia. She is the widow of Robert McRill.

3093.  Plaintiff Katherine McRill-Fellini brings an action individually and on behalf of the Estate of Robert McRill, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

3094.  Plaintiff Brett Coke is a citizen of the United States and domiciled in the State of New York. He is the step-son of Robert McRill.

3095.  Plaintiff Brian Coke is a citizen of the United States and domiciled in the State of Virginia. He is the step-son of Robert McRill.

3096.  Plaintiff Ronald McRill is a citizen of the United States and domiciled in the State of California. He is the brother of Robert McRill.

3097.  As a result of the attack, and the death of Robert McRill, Plaintiffs Katherine McRill-Fellini, Brett Coke, Brian Coke and Ronald McRill have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/brother's society, companionship, comfort, advice and counsel.

### 145.  THE JULY 6, 2007 ATTACK – BAGHDAD

**The Mergele Family**

3098.  Plaintiff Matthew L. Mergele is a citizen of the United States and domiciled in the State of Tennessee.

3099.  On July 6, 2007, Matthew L. Mergele was serving in the U.S. military in Iraq when an IED emplaced by JAM Special Groups terror operatives detonated while he was on a dismounted patrol near Rustimaya.

3100.  Matthew L. Mergele was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3101.  As a result of the attack, Mr. Mergele was blown back by the blast. He suffered difficulty hearing in his left ear, ringing in his ears and headaches.

3102.  As a result of the attack, and the injuries he suffered, Plaintiff Matthew L. Mergele has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 146.  THE JULY 7, 2007 ATTACK – BAGHDAD

**The Miller Family**

3103.  Mikeal Miller was a citizen of the United States and domiciled in the State of Oregon when he was injured in Iraq.

3104.  On July 7, 2007, Mikeal Miller, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3105.  Mikeal Miller was severely injured in the attack when shrapnel went through his left eye and lodged in the back of his head.

3106.  Mikeal never regained consciousness after the attack.

3107.  Mikeal remained in a coma and died on January 27, 2008.

3108.  The weapon used to kill Mikeal Miller was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3109.  Plaintiff Rene Pool is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Mikeal Miller.

3110.  As a result of the attack, and the death of Mikeal Miller, Plaintiff Rene Pool has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 147.   THE JULY 11, 2007 ATTACK – BAGHDAD

**The Hollcroft Family**

3111.   Plaintiff Derek Allen Hollcroft is a citizen of the United States and domiciled in the State of Florida.

3112.   On July 11, 2007, Derek Allen Hollcroft, then 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle

3113.   The weapon used to injure Derek Allen Hollcroft was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3114.   As a result of the attack, Derek Allen Hollcroft sustained a TBI and post-concussion syndrome that has caused frequent chronic headaches and migraines and affected his memory.

3115.   As a result of the attack, and the injuries he suffered, Derek Allen Hollcroft has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 148.   THE JULY 17, 2007 ATTACK – BAGHDAD

**The Bobb Family**

3116.   Brandon K. Bobb was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

3117.   On July 17, 2007, Brandon K. Bobb, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3118.   Brandon K. Bobb was killed in the attack.

3119.   The weapon used to kill Brandon K. Bobb was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3120.   Plaintiff Paula C. Bobb-Miles is a citizen of the United States and domiciled in the State of Texas. She is the mother of Brandon K. Bobb.

3121.   Plaintiff Paula C. Bobb-Miles brings an action individually and on behalf of the Estate of Brandon K. Bobb, as its legal representative.

3122.   Plaintiff Johnny Javier Miles, Sr. is a citizen of the United States and domiciled in the State of Texas. He is the step-father of Brandon K. Bobb.

3123.   Plaintiff Johnny Javier Miles, Jr. is a citizen of the United States and domiciled in the State of Texas. He is the brother of Brandon K. Bobb.

3124.   Plaintiff Racquel Arnae Bobb Miles is a citizen of the United States and domiciled in the State of Texas. She is the sister of Brandon K. Bobb.

3125.   As a result of the attack, and the death of Brandon K. Bobb, Plaintiffs Paula C. Bobb-Miles, Johnny Javier Miles, Sr., Johnny Javier Miles, Jr. and Racquel Arnae Bobb Miles have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Joshua Family**

3126.   Ron J. Joshua, Jr. was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3127.   On July 17, 2007, Ron J. Joshua, Jr., aged 19, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3128.   Ron J. Joshua, Jr. was killed in the attack.

3129.   The weapon used to kill Ron J. Joshua, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3130. Plaintiff Ursula Ann Joshua is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Ron J. Joshua, Jr.

3131. Plaintiff Ursula Ann Joshua brings an action individually and on behalf of the Estate of Ron J. Joshua, Jr. as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

3132. As a result of the attack, and the death of Ron J. Joshua, Jr., Plaintiff Ursula Ann Joshua has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

### 149. THE JULY 17, 2007 ATTACK – SADR CITY

**The Harrelson Family**

3133. James J. Harrelson was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

3134. On July 17, 2007, James J. Harrelson, aged 19, was serving in the United States military in Iraq when JAM-Special Groups detonated an IED near his vehicle in Sadr City, Baghdad.

3135. James J. Harrelson was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3136. Plaintiff Tammy Kinney is a citizen of the United States and domiciled in the State of Alabama. She is the mother of James J. Harrelson.

3137. As a result of the attack, and the death of James J. Harrelson's, Plaintiff Tammy Kinney has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

**The Price Family**

3138.   Plaintiff Daniel Price is a citizen of the United States and domiciled in the State of Illinois.

3139.   On July 17, 2007, Daniel Price, aged 20, was serving in the United States military in Iraq when JAM-Special Groups detonated an IED near his vehicle in Sadr City, Baghdad.

3140.   Daniel Price was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3141.   As a result of the attack, Mr. Price suffered shrapnel wounds to his face which cut his tear duct and also suffered a fractured leg.

3142.   Mr. Price also suffers from a TBI and PTSD.

3143.   As a result of the attack, and the injuries he suffered, Plaintiff Daniel Price has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3144.   Plaintiff Steven Price a citizen of the United States and domiciled in the State of Tennessee. He is the brother of Daniel Price.

3145.   As a result of the attack and the injuries Daniel Price suffered, Plaintiff Steven Price has experienced severe mental anguish and extreme emotional pain and suffering.

**The Aieti Family**

3146.   Plaintiff Tausolo Aieti is a citizen of the United States and domiciled in the State of Nevada.

3147.   On July 17, 2007, Tausolo Aieti, aged 20, was serving in the United States military in Iraq when JAM-Special Groups detonated an IED near his vehicle in Sadr City, Baghdad.

3148.   Tausolo Aieti was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3149. As a result of the attack, Mr. Aieti suffered a broken leg.

3150. Mr. Aieti also suffers from a TBI and PTSD.

3151. As a result of the attack, and the injuries he suffered, Plaintiff Tausolo Aieti has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3152. Plaintiff Imo Aieti is a citizen of the United States and domiciled in the State of Texas. He is the brother of Tausolo Aieti.

3153. Plaintiff Lisi Aieti is a citizen of the United States and domiciled in the State of Utah. She is the sister of Tausolo Aieti.

3154. Plaintiff Poloka Aieti is a citizen of the United States and domiciled in the State of Utah. He is the brother of Tausolo Aieti.

3155. As a result of the attack, and the injuries suffered by Tausolo Aieti, Plaintiffs Imo Aieti, Lisi Aieti and Poloka Aieti have experienced severe mental anguish, and extreme emotional pain and suffering.

## 150. THE JULY 17, 2007 ATTACK – BAGHDAD

**The Bouten Family**

3156. Plaintiff Christopher Bouten is a citizen of the United States and domiciled in the State of Kentucky.

3157. On July 17, 2007, Christopher Bouten was serving in the United States military in Iraq when he was injured during a mortar attack launched by JAM Special Groups terror operatives in the Kamaliyah neighborhood in eastern Baghdad.

3158. Christopher Bouten was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3159.  As a result of the attack, Mr. Bouten suffered shrapnel wounds to his back, neck and leg.

3160.  As a result of the attack, and the injuries he suffered, Plaintiff Christopher Bouten has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3161.  Plaintiff Erin Bouten is a citizen of the United States and domiciled in the State of Kentucky. She is the wife of Christopher Bouten.

3162.  As a result of the attack and the injuries Christopher Bouten suffered, Plaintiff Erin Bouten has experienced severe mental anguish and extreme emotional pain and suffering.

**151.   THE JULY 19, 2007 ATTACK – HUSSEINYAH**

**The Dudek Family**

3163.  Plaintiff Daniel Dudek is a citizen of the United States and domiciled in the State of Washington.

3164.  On July 19, 2007, Daniel Dudek was serving in the U.S. military in Iraq.

3165.  Mr. Dudek was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3166.  The weapon used to injure Mr. Dudek was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3167.  As a result of the attack, Mr. Dudek suffers from limited paralysis in his hips and legs, and complete paralysis in both of his ankles and feet. He also has a Lumbar 3/4 cauda equina with no glute muscles and no ability to move the muscles in his calf/ankles/feet and has reduced feeling in his legs down to his ankles. He also has a deep shrapnel hole in his back and pieces of fragmentation all throughout his left arm, hips, and buttocks area

436

3168.  As a result of the attack, and the injuries he suffered, Plaintiff Daniel Dudek has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3169.  Plaintiff Margaret Dudek is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Daniel Dudek.

3170.  Plaintiff Katie Woodard is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Daniel Dudek.

3171.  Plaintiff Sarah Dudek is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Daniel Dudek.

3172.  Plaintiff Andrew Dudek is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Daniel Dudek.

3173.  As a result of the attack, and the injuries suffered by Daniel Dudek, Plaintiffs Margaret Dudek, Katie Woodard, Sarah Dudek and Andrew Dudek have experienced severe mental anguish, and extreme emotional pain and suffering.

## 152.  THE JULY 23, 2007 ATTACK – BAGHDAD

**The Florexil Family**

3174.  Camy Florexil was a citizen of the United States and domiciled in the State of Pennsylvania when he was injured in Iraq.

3175.  On July 23, 2007, Camy Florexil, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3176.  Camy Florexil was injured in the attack and died on July 24, 2007 from the injuries he sustained in the attack.

3177. The weapon used to kill Camy Florexil was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3178. Plaintiff Emanuela Florexil is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Camy Florexil.

3179. Plaintiff Emanuela Florexil brings an action individually and on behalf of the Estate of Camy Florexil, as its legal representative.

3180. As a result of the attack, and the death of Camy Florexil, Plaintiff Emanuela Florexil has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her brother's society, companionship, comfort, advice and counsel.

### 153. THE JULY 24, 2007 ATTACK – BAGHDAD

**The Miller Family**

3181. Plaintiff Joseph T. Miller is a citizen of the Unites States and domiciled in the State of Ohio.

3182. On July 24, 2007, Joseph T. Miller was serving was serving in the U.S. military in Iraq.

3183. Mr. Miller was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3184. The weapon used to injure Mr. Miller was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3185. As a result of the attack, Mr. Miller suffered a ruptured left ear drum, a TBI and post-concussive syndrome.

3186.   As a result of the attack, and the injuries he suffered, Plaintiff Joseph T. Miller has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 154.   THE JULY 24, 2007 ATTACK – UMM QASR

**The Harrington Family**

3187.   Plaintiff Sean Harrington is a citizen of the United States and domiciled in the State of Pennsylvania.

3188.   On July 24, 2007, Sean Harrington, then 22, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling outside of Umm Qasr.

3189.   The weapon used to injure Sean Harrington was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3190.   Shrapnel from the EFP struck Sean Harrington's head and face, and copper from the EFP's liner remains fused to his face.

3191.   The impacting shrapnel has resulted in a partial loss of sight in his right eye and most of his hearing in his right ear.

3192.   Mr. Harrington has been diagnosed with a TBI. Medication has been prescribed to address this condition. He continues to endure migraines as a result of the attack.

3193.   Mr. Harrington was also diagnosed with PTSD a result of the attack, for which he has received treatment.

3194.   As a result of the attack, and the injuries he suffered, Plaintiff Sean Harrington has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 155. THE JULY 31, 2007 ATTACK – BAGHDAD

**The Heinlein Family**

3195.   Charles T. Heinlein, Jr. was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

3196.   On July 31, 2007, Charles T. Heinlein, Jr., aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3197.   Charles T. Heinlein, Jr. was killed in the attack.

3198.   The weapon used to kill Charles T. Heinlein, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3199.   Plaintiff Jessica Heinlein is a citizen of the United States and domiciled in the State of Washington. She is the widow of Charles T. Heinlein, Jr.

3200.   Plaintiff Jessica Heinlein brings an action individually and on behalf of the Estate of Charles T. Heinlein, Jr., as its legal representative.

3201.   Plaintiff Charles Heinlein, Sr. is a citizen of the United States and domiciled in the State of Michigan. He is the father of Charles T. Heinlein, Jr.

3202.   Plaintiff Jody Lyn Heinlein is a citizen of the United States and domiciled in the State of Texas. She is the sister of Charles T. Heinlein, Jr.

3203.   As a result of the attack, and the death of Charles T. Heinlein, Jr., Plaintiffs Jessica Heinlein, Charles Heinlein, Sr. and Jody Lyn Heinlein have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

**The Jairala Family**

3204. Alfred H. Jairala was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

3205. On July 31, 2007, Alfred H. Jairala, aged 29, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

3206. Alfred H. Jairala was killed in the attack.

3207. The weapon used to kill Alfred H. Jairala was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3208. Plaintiff Margarita Aristizabal is a citizen of the United States and domiciled in the State of Florida. She is the widow of Alfred H. Jairala.

3209. Plaintiff Margarita Aristizabal brings an action individually and on behalf of the Estate of Alfred H. Jairala, as its legal representative.

3210. Plaintiff J.J., a minor represented by her legal guardian, Margarita Aristizabal, is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Alfred H. Jairala.

3211. Plaintiff Sebastian Niuman is a citizen of the United States and domiciled in the State of Florida. He is the step-son of Alfred H. Jairala.

3212. As a result of the attack, and the death of Alfred H. Jairala, Plaintiffs Margarita Aristizabal, J.J., and Sebastian Niuman have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

156.  **THE AUGUST 6, 2007 ATTACK – BAGHDAD**

**The Neiberger Family**

3213.   Christopher Neiberger was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

3214.   On August 6, 2007, Christopher Neiberger, aged 22, was serving in the United States military in Iraq when an EFP emplaced by JAM Special Groups detonated near his vehicle in Baghdad.

3215.   Christopher Neiberger was killed in the attack.

3216.   The weapon used to kill Christopher Neiberger was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3217.   Plaintiff Richard Neiberger is a citizen of the United States and domiciled in the State of Florida. He is the father of Christopher Neiberger.

3218.   Plaintiff Mary Neiberger is a citizen of the United States and domiciled in the State of Florida. She is the mother of Christopher Neiberger.

3219.   Plaintiff Ami Neiberger is a citizen of the United States and domiciled in the State of Virginia. She is the sister of Christopher Neiberger.

3220.   Plaintiff Robert Neiberger is a citizen of the United States and domiciled in Washington, D.C. He is the brother of Christopher Neiberger.

3221.   Plaintiff Eric Neiberger is a citizen of the United States and domiciled in Florida. He is the brother of Christopher Neiberger.

3222.   Plaintiff Eric Neiberger brings an action individually and on behalf of the Estate of Christopher Neiberger, as its legal representative.

3223.   As a result of the attack, and the death of Christopher Neiberger, Plaintiffs Richard Neiberger, Mary Neiberger, Ami Neiberger, Robert Neiberger, and Eric Neiberger have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 157.   THE AUGUST 14, 2007 ATTACK – BAGHDAD

**The Casey Family**

3224.   Plaintiff Brian J. Casey is a citizen of the United States and domiciled in the State of Montana.

3225.   On August 14, 2007, Brian J. Casey was serving in the U.S. military in Iraq when he came under sniper fire by JAM Special Groups terror operatives.

3226.   Brian J. Caset was injured in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3227.   As a result of the attack, Mr. Casey suffered a collapsed lung and fractured ribs.

3228.   As a result of the attack, and the injuries he suffered, Plaintiff Brian J. Casey has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3229.   Plaintiff Brittany Hogan is a citizen of the United States and domiciled in the State of Montana. She was the wife of Brian J. Casey.

3230.   Plaintiff Shelley Ann Casey is a citizen of the United States and domiciled in the State of North Carolina. She is mother of Brian J. Casey.

3231.   Plaintiff Richard Casey is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Brian J. Casey.

3232. As a result of the attack, and the injuries suffered by Brian J. Casey, Plaintiffs Brittany Hogan, Shelley Ann Casey and Richard Casey have experienced severe mental anguish, and extreme emotional pain and suffering.

## 158. THE AUGUST 17, 2007 ATTACK – BASRA

### The Chand Family

3233. Michael Chand, Sr. was a citizen of the United States and domiciled in the State of California when he was kidnapped and killed in Iraq.

3234. Michael Chand, Sr. worked in southeast Iraq as a civilian contractor who provided security relating to road construction projects.

3235. On August 17, 2007, Mr. Chand's convoy was ambushed by roughly 300 JAM fighters near the JAM stronghold of Amarah, northwest of Basra. Mr. Chand suffered a gunshot wound in the ambush and was kidnapped by JAM.

3236. He was held in captivity by JAM for several years afterwards and was tortured in captivity. He was 52 years old at the time of his kidnapping.

3237. On or about March 13, 2010, his body was returned to the U.S. Government. The autopsy report revealed that Mr. Chand was killed by multiple gunshot wounds to the head and body, and his injuries were consistent with the conclusion that he had been tortured.

3238. Initial reports of the August 17, 2007 attack suggested that Mr. Chand had been killed in the attack.

3239. On August 24, 2007, the U.S. State Department officially informed Mr. Chand's wife that he was dead.

3240. On October 31, 2007, the State Department reversed course and informed his wife, Mrs. Sally Chand, that, according to eyewitnesses, Mr. Chand was actually alive and being held

in captivity. However, efforts to secure his release over the next several years failed, and, on or about March 13, 2010, the Chand family learned that Jaysh al-Mahdi had tortured and executed Mr. Chand while he was being held in captivity.

3241.   The JAM terror cell that kidnapped and murdered Michael Chand was trained by Hezbollah and funded and armed by the IRGC-QF.

3242.   Plaintiff Sally Chand is a citizen of the United States and domiciled in the State of California. She is the widow of Michael Chand, Sr.

3243.   Plaintiff Sally Chand brings an action individually and on behalf of the Estate Michael Chand, Sr., as its legal representative.

3244.   Plaintiff Michael Chand, Jr. is a citizen of the United States and domiciled in the State of California. He is the son of Michael Chand, Sr.

3245.   Plaintiff Christina Mahon is a citizen of the United States and domiciled in the State of California. She is the daughter of Michael Chand, Sr.

3246.   Plaintiff Ryan Chand is a citizen of the United States and domiciled in the State of California. He is the son of Michael Chand, Sr.

3247.   Plaintiff Brenda Chand is a citizen of the United States and domiciled in the State of California. She is the daughter of Michael Chand, Sr.

3248.   As a result of the August 17, 2007 attack, and the subsequent kidnapping and execution of Michael Chand, Sr., Plaintiffs Sally Chand, Michael Chand, Jr., Christina Mahon, Ryan Chand and Brenda Chand have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 159.   THE AUGUST 23, 2007 ATTACK – BAGHDAD

**The Bowen Family**

3249.   Plaintiff Mario Bowen is a citizen of the United States and domiciled in the State of Tennessee.

3250.   On August 23, 2007, Mario Bowen was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3251.   The weapon used to injure Mario Bowen was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3252.   As a result of the attack, Mr. Bowen was rendered unconscious. He suffers from a TBI, memory loss, headaches and speech issues.

3253.   As a result of the attack, and the injuries he suffered, Plaintiff Mario Bowen has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 160.   THE AUGUST 23, 2007 ATTACK – AZIZIYAH

**The Hochstetler Family**

3254.   Plaintiff James David Hochstetler is a citizen of the United States and domiciled in the State of Tennessee.

3255.   On August 23, 2007, James David Hochstetler, then 29, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3256.   The weapon used to injure James David Hochstetler was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3257.   As a result of the blast, James David Hochstetler suffered serious injuries, including

severe injuries to his hand and face.

3258.   As a result of the attack, and the injuries he suffered, Plaintiff James David Hochstetler has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3259.   Plaintiff Leanne Lizabeth Hochstetler is a citizen of the United States and domiciled in the State of Tennessee. She is the wife of James David Hochstetler.

3260.   Plaintiff J.H., a minor represented by his legal guardian, Leanne Lizabeth Hochstetler, is a citizen of the United States and domiciled in the State of Tennessee. He is the son of James David Hochstetler.

3261.   Plaintiff P.H., a minor represented by her legal guardian, Leanne Lizabeth Hochstetler, is a citizen of the United States and domiciled in the State of Tennessee. She is the daughter of James David Hochstetler.

3262.   Plaintiff Kyle Austin Marshall is a citizen of the United States and domiciled in the State of Tennessee. He is the son of James David Hochstetler.

3263.   As a result of the attack, and the injuries suffered by James David Hochstetler, Plaintiffs Leanne Lizabeth Hochstetler, J.H., P.H. and Kyle Austin Marshall have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Tully Family**

3264.   Michael Tully was a citizen of the United States and domiciled in the State of Pennsylvania when he was killed in Iraq.

3265.   On August 23, 2007, Michael Tully, aged 33, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3266.   Michael Tully was killed in the attack.

3267.   The weapon used to kill Michael Tully was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3268.   Plaintiff John Richard Tully is a citizen of the United States and domiciled in the State of Pennsylvania. He is the father of Michael Tully.

3269.   Plaintiff John Richard Tully brings an action individually and on behalf of the Estate of Michael Tully, as its legal representative.

3270.   Plaintiff Marilyn Louise Tully is a citizen of the United States and domiciled in the State of Pennsylvania. She is the mother of Michael Tully.

3271.   Plaintiff Slade Victor Tully is a citizen of the United States and domiciled in the State of Pennsylvania. He is the son of Michael Tully.

3272.   Plaintiff John Richard Tully II is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Michael Tully.

3273.   Plaintiff Heather Ann Farkas is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Michael Tully.

3274.   As a result of the attack, and the death of Michael Tully, Plaintiffs John Richard Tully, Marilyn Louise Tully, Slade Victor Tully, John Richard Tully II and Heather Ann Farkas have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society, companionship, comfort, advice and counsel.

**The Hunt Family**

3275.   Plaintiff Robert James Hunt is a citizen of the United States and domiciled in the State of Washington.

3276.   On August 23, 2007, Robert James Hunt, then 37, was serving in the U.S. military

448

in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3277.   The weapon used to injure Robert James Hunt was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3278.   As a result of the blast, Robert James Hunt suffered lacerations to his neck and head. He also suffered shrapnel wounds to the left side of his head, upper torso, right arm and right hand.

3279.   As a result of the attack, and the injuries he suffered, Plaintiff Robert James Hunt has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3280.   Plaintiff M.A.H., a minor represented by his legal guardian, Robert James Hunt, is a citizen of the United States and domiciled in the State of Washington. He is the son of Robert James Hunt.

3281.   Plaintiff A.M.H., a minor represented by her legal guardian, Robert James Hunt, is a citizen of the United States and domiciled in the State of Washington. She is the daughter of Robert James Hunt.

3282.   Plaintiff Boonchob "Lynn" Prudhome is a citizen of the United States and domiciled in the State of Texas. She is the mother of Robert James Hunt.

3283.   As a result of the attack, and the injuries suffered by Robert James Hunt, Plaintiffs M.A.H., A.M.H. and Boonchob "Lynn" Prudhome have experienced severe mental anguish, and extreme emotional pain and suffering.

### 161.   THE SEPTEMBER 2, 2007 ATTACK – BAGHDAD

**The White Family**

3284.   Delmar White was a citizen of the United States and domiciled in the State of

Kentucky when he was killed in Iraq.

3285.   On September 2, 2007, Delmar White, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated by his vehicle.

3286.   Delmar White was killed in the attack.

3287.   The weapon used to kill Delmar White was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3288.   Plaintiff Michele White is a citizen of the United States and domiciled in the State of Kentucky. She is the widow of Delmar White.

3289.   Plaintiff Michele White brings an action individually and on behalf of the Estate of Delmar White, as its legal representative.

3290.   Plaintiff S.W., a minor represented by his legal guardian, Michele White, is a citizen of the United States and domiciled in the State of Kentucky. He is the son of Delmar White.

3291.   Plaintiff Shelby White is a citizen of the United States and domiciled in the State of Kentucky. She is the daughter of Delmar White.

3292.   Plaintiff Perry White is a citizen of the United States and domiciled in the State of Kentucky. He is the brother of Delmar White.

3293.   Plaintiff Robert White is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Delmar White.

3294.   As a result of the attack, and the death of Delmar White, Plaintiffs Michele White, S.W., Shelby White, Perry White and Robert White have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/brother's companionship, comfort, advice and counsel.

162.   **THE SEPTEMBER 2, 2007 – RUSTAMIYAH**

**The Wold Family**

3295.   Plaintiff Joshua P.G. Wold is a citizen of the United States and domiciled in the State of Oregon.

3296.   On September 2, 2007, Joshua P.G. Wold was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. The convoy he was travelling in also came under small arms fire.

3297.   The weapon used to injure Joshua P.G. Wold was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3298.   As a result of the attack and the injuries sustained in the attack, Mr. Wold required partial amputation of his right foot.

3299.   As a result of the attack, and the injuries he suffered, Plaintiff Joshua P.G. Wold has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3300.   Plaintiff E.W., a minor represented by her legal guardian Joshua P.G. Wold, is a citizen of the United States and domiciled in the State of Oregon. She is the daughter of Joshua P.G. Wold.

3301.   Plaintiff P.A., a minor represented by her legal guardian Joshua P.G. Wold, is a citizen of the United States and domiciled in the State of Oregon. She is the step-daughter of Joshua P.G. Wold.

3302.   Plaintiff Celeste Yantis is a citizen of the United States and domiciled in the State of Washington. She was the wife of Joshua P.G. Wold.

451

3303. As a result of the attack, and the injuries suffered by Joshua P.G. Wold, Plaintiffs E.W., P.A. and Celeste Yantis have experienced severe mental anguish, and extreme emotional pain and suffering.

### 163. THE SEPTEMBER 4, 2007 ATTACK – BAGHDAD

#### The Murray Family

3304. Joel L. Murray was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

3305. On September 4, 2007, Joel L. Murray, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3306. Joel L. Murray was killed in the attack.

3307. The weapon used to kill Joel L. Murray was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3308. Plaintiff Maricel Murray is a citizen of the United States and domiciled in the State of Kansas. She is the widow of Joel L. Murray.

3309. Plaintiff Maricel Murray brings an action individually and on behalf of the Estate of Joel L. Murray, as its legal representative.

3310. Plaintiff J.M., a minor represented by his legal guardian, Maricel Murray, is a citizen of the United States and domiciled in the State of Kansas. He is the son of Joel L. Murray.

3311. As a result of the attack, and the death of Joel L. Murray, Plaintiffs Maricel Murray and J.M. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Shelton Family**

3312. Randol S. Shelton was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

3313. On September 4, 2007, Randol S. Shelton, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3314. Randol S. Shelton was killed in the attack.

3315. The weapon used to kill Randol S. Shelton was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3316. Plaintiff Bryan S. Shelton is a citizen of the United States and domiciled in the State of Illinois. He is the father of Randol S. Shelton.

3317. Plaintiff Bryan S. Shelton brings an action individually and on behalf of the Estate of Randol S. Shelton, as its legal representative.

3318. Plaintiff Darlene Shelton is a citizen of the United States and domiciled in the State of Illinois. She is the mother of Randol S. Shelton

3319. Plaintiff Amanda Shelton is a citizen of the United States and domiciled in the State of Illinois. She is the sister of Randol S. Shelton.

3320. Plaintiff Bryan T. Shelton is a citizen of the United States and domiciled in the State of Illinois. He is the brother of Randol S. Shelton.

3321. As a result of the attack, and the death of Randol S. Shelton, Plaintiffs Bryan S. Shelton, Darlene Shelton, Amanda Shelton and Bryan T. Shelton have experienced severe mental anguish, extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

164.   **THE SEPTEMBER 12, 2007 ATTACK- BAGHDAD**

**The Laird Family**

3322.   Plaintiff Dan Laird is a citizen of the United States and domiciled in the State of Florida.

3323.   On September 12, 2007, Mr. Laird, then 32, was a civilian contractor with Blackwater Worldwide in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3324.   The weapon used to injure Dan Laird was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC

3325.   As a result of the blast, Dan Laird suffered a concussion and nerve damage in his right leg, a level 5 AC separation which required him to undergo surgery on his right shoulder.

3326.   He also sustained emotional injuries, including panic attacks and anxiety, for which he has sought counseling.

3327.   As a result of the attack, and the injuries he suffered, Plaintiff Dan Laird has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3328.   Plaintiff Angela M. Laird is a citizen of the United States and domiciled in the State of Florida. She is the wife of Dan Laird.

3329.   Plaintiff Jordan M. Laird is a citizen of the United States and domiciled in the State of Florida. He is the son of Dan Laird.

3330.   Plaintiff Hunter L. Laird is a citizen of the United States and domiciled in the State of Florida. She is the daughter of Dan Laird.

3331.   Plaintiff C.L., a minor represented by his legal guardian, Angela M. Laird, is a

citizen of the United States and domiciled in the State of Florida. He is the son of Dan Laird.

3332. As a result of the attack, and the injuries Dan Laird has suffered, Plaintiffs Angela M. Laird, Jordan M. Laird, Hunter L. Laird and C.L. have experienced severe mental anguish, and extreme emotional pain and suffering.

### 165. THE SEPTEMBER 22, 2007 ATTACK – RUSTAMIYAH

### The Reeves Family

3333. Joshua H. Reeves was a citizen of the United States and domiciled in the State of Georgia when he was killed in Iraq.

3334. On September 22, 2007, Joshua H. Reeves, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by JAM Special Groups detonated near his vehicle.

3335. Joshua H. Reeves initially survived the EFP detonation, losing consciousness from the pain and shock of the injuries he suffered. Although he initially survived the attack, he died from his injuries later that day. Joshua H. Reeves died one day after his first child, a son, was born.

3336. The weapon used to kill Joshua H. Reeves was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3337. Plaintiff Leslie K. Reeves-Hardcastle is a citizen of the United States and domiciled in the State of Tennessee. She is the widow of Joshua H. Reeves.

3338. Plaintiff Leslie K. Reeves-Hardcastle brings an action individually and on behalf of the Estate of Joshua Reeves, as its legal representative.

3339. Plaintiff J.R., a minor represented by his legal guardian, Leslie K. Reeves-Hardcastle, is a citizen of the United States and domiciled in the State of Tennessee. He is the son of Joshua H. Reeves.

3340.   Plaintiff James L. Reeves is a citizen of the United States and domiciled in the State of Georgia. He is the father of Joshua H. Reeves.

3341.   Plaintiff W. Jean Reeves is a citizen of the United States and domiciled in the State of Georgia. She is the mother of Joshua H. Reeves.

3342.   Plaintiff Jared Reeves is a citizen of the United States and domiciled in the State of Georgia. He is the brother of Joshua H. Reeves.

3343.   Plaintiff Sherri C. Holiman is a citizen of the United States and domiciled in the State of Florida. She is the sister of Joshua H. Reeves.

3344.   Plaintiff Joni Ariel Reeves Little is a citizen of the United States and domiciled in the State of Florida. She is the sister of Joshua H. Reeves.

3345.   As a result of the September 22, 2007 attack, and the death of Joshua Reeves, Plaintiffs Leslie K. Reeves-Hardcastle, J.R., James L. Reeves, W. Jean Reeves, Jared Reeves, Sherri C. Holiman and Joni Ariel Reeves Little have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

## 166.   THE SEPTEMBER 26, 2007 ATTACK – BAGHDAD

**The Lee Family**

3346.   Plaintiff William Lee is a citizen of the United States and domiciled in the State of Virginia.

3347.   On September 26, 2007, William Lee, then 44, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. William Lee was seated behind the driver in an up-armored M1151 vehicle traveling southwest on Route Raiders in the Saidiya neighborhood of Iraq when the vehicle in which he was traveling was struck by an EFP.

456

3348.   The weapon used to injure William Lee was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3349.   As a result of the attack, Mr. Lee sustained shrapnel injuries to his face including above his right eye and to various other parts of his body. One piece of shrapnel became lodged in his right medial sinus cavity while another piece of shrapnel impacted the subcutaneous nerve network in his right thigh which has caused intermittent shooting pain in his right leg which continues to a lesser degree even today. He has been informed that there is a likely piece of shrapnel from the EFP also lodged in his right anterior cruciate ligament. He has also suffered from PTSD.

3350.   As a result of the attack, and the injuries he suffered, Plaintiff William Lee has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3351.   Plaintiff Alexandria L. Lee is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of William Lee.

3352.   Plaintiff William J. Lee is a citizen of the United States and domiciled in the State of Virginia. He is the son of William Lee.

3353.   Plaintiff Lillie Lai Lee is a citizen of the United States and domiciled in the State of Virginia. She is the ex-wife of William Lee. They were married at the time of the attack in which William Lee was injured and did not obtain a divorce until December 2018. The marital discord resulting in divorce was caused in significant part by the PTSD that William Lee has battled since he was injured in the EFP attack.

3354.   As a result of the attack, and the injuries William Lee suffered, Plaintiffs Alexandria L. Lee, William J. Lee, and Lillie Lai Lee have experienced severe mental anguish and extreme emotional pain and suffering.

**The Hunt Family**

3355.   Plaintiff Jennifer Lynn Hunt is a citizen of the United States and domiciled in the State of Maryland.

3356.   On September 26, 2007, Jennifer Lynn Hunt, then 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. Jennifer Lynn Hunt was the driver in an up-armored M1151 vehicle traveling southwest on Route Raiders in the Saidiya neighborhood of Iraq when the vehicle that she was driving was struck by an EFP.

3357.   The weapon used to injure Jennifer Lynn Hunt was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3358.   As a result of the attack, Jennifer Lynn Hunt sustained shrapnel wounds to her face and to both of her arms, nerve damage to her dominant hand, burn injuries to her back, scarring, and PTSD.

3359.   As a result of the attack, and the injuries she suffered, Plaintiff Jennifer Lynn Hunt has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**167.   THE SEPTEMBER 29, 2007 ATTACK – BAGHDAD**

**The Golembe Family**

3360.   Plaintiff Christopher Golembe is a citizen of the United States and domiciled in the State of West Virginia.

3361.   On September 29, 2007, Christopher Golembe, then 22, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP emplaced by Special Groups.

3362.   The weapon used to injure Christopher Golembe was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction,

using specialized training and components supplied by Hezbollah and the IRGC.

3363. Mr. Golembe sustained a concussion as a result of the attack.

3364. He has nightmares and has experienced survivor's guilt.

3365. He has been diagnosed with PTSD and has sought counseling.

3366. Mr. Golembe has suffered memory loss since the attack and has difficulty recalling information.

3367. As a result of the attack, and the injuries he suffered, Plaintiff Christopher Golembe has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3368. Plaintiff Kathryn Head is a citizen of the United States and domiciled in the State of Virginia. She is the of mother of Christopher Golembe.

3369. As a result of the attack, and the injuries Christopher Golembe suffered, Plaintiff Kathryn Head has experienced severe mental anguish and extreme emotional pain and suffering.

**The Watts Family**

3370. Plaintiff Christopher Watts is a citizen of the United States and domiciled in the State of Texas.

3371. On September 29, 2007, Christopher Watts, then 22, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP emplaced by Special Groups.

3372. The weapon used to injure Christopher Watts was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3373. Mr. Watts sustained a concussion as a result of the attack. He has been diagnosed with a TBI.

3374. He experiences memory loss and at times his speech is slurred.

459

3375.   He has been prescribed anti-depressants and medication to address sleep-related issues.

3376.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Watts has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 168.   THE SEPTEMBER 30, 2007 ATTACK – BAGHDAD

**The Olguin Family**

3377.   Randell Olguin was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3378.   On September 30, 2007, Randell Olguin, aged 24, was serving in the U.S. military in Iraq when his unit came under sniper fire by JAM Special Groups terror operatives.

3379.   Randell Olguin was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3380.   Randell Olguin was killed in the attack.

3381.   Plaintiff Janet L. Rios is a citizen of the United States and domiciled in the State of Texas. She is the sister of Randell Olguin.

3382.   Plaintiff Anita Baker is a citizen of the United States and domiciled in the State of Texas. She is the sister of Randell Olguin.

3383.   Plaintiff Jennie L. Morin is a citizen of the United States and domiciled in the State of Texas. She is the sister of Randell Olguin.

3384.   As a result of the attack, and the death of Randell Olguin, Plaintiffs Janet L. Rios, Anita Baker and Jennie L. Morin have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

### 169.   THE OCTOBER 18, 2007 ATTACK – BAGHDAD

**The Geiger Family**

3385.   Wayne M. Geiger was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

3386.   On October 18, 2007, Wayne M. Geiger, aged 23, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Baghdad.

3387.   Wayne M. Geiger was killed in the attack.

3388.   The weapon used to kill Wayne M. Geiger was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3389.   Plaintiff Randall Geiger is a citizen of the United States and domiciled in the State of California. He is the father of Wayne M. Geiger.

3390.   Plaintiff Randall Geiger brings an action individually and on behalf of the Estate of Wayne M. Geiger, as its legal representative.

3391.   Plaintiff Kimberly Geiger is a citizen of the United States and domiciled in the State of California. She is the mother of Wayne M. Geiger.

3392.   Plaintiff Jesseca Lyn Tsosie is a citizen of the United States and domiciled in the State of California. She is the sister of Wayne M. Geiger.

3393.   As a result of the attack, and the death of Wayne M. Geiger, Plaintiffs Randall Geiger, Kimberly Geiger and Jesseca Lyn Tsosie have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's companionship, comfort, advice and counsel.

461

**170.**     **THE OCTOBER 21, 2007 ATTACK – ISKANDARIYAH**

**The Donoho Family**

3394.   Plaintiff Eric Donoho is a citizen of the United States and domiciled in the State of Indiana.

3395.   On October 21, 2007, Eric Donoho, then 29, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Iskandariyah.

3396.   The weapon used to injure Eric Donoho was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3397.   Mr. Donoho suffered a concussion as a result of the blast.

3398.   Mr. Donoho was also diagnosed with a TBI and PTSD.  He has been prescribed daily medication to address these conditions.

3399.   Mr. Donoho continues to endure migraines as a result of the attack.

3400.   As a result of the attack, and the injuries he suffered, Plaintiff Eric Donoho has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**171.**     **THE OCTOBER 29, 2007 ATTACK – UMM QASR**

**The Ginavan Family**

3401.   Plaintiff Tyler Ginavan is a citizen of the United States and domiciled in the State of Kansas.

3402.   On October 29, 2007, Tyler Ginavan, then 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Umm Qasr.

3403.   The weapon used to injure Mr. Ginavan was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3404.   As a result of the attack, copper from the EFP lodged in Mr. Ginavan's face, neck, knee, and calf. Copper from the EFP remains fused to Mr. Ginavan's jawline.

3405.   Tyler Ginavan has been diagnosed with PTSD, and he has received treatment and counseling. He has been prescribed medication to address both the physical pain and emotional impact of the attack.

3406.   As a result of the attack, and the injuries he suffered, Plaintiff Tyler Ginavan has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 172.   THE NOVEMBER 7, 2007 ATTACK – BAGHDAD

**The Tiffner Family**

3407.   Benjamin David Tiffner was a citizen of the United States and domiciled in the State of West Virginia when he was killed in Iraq.

3408.   On November 7, 2007, Benjamin David Tiffner, aged 31, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle in Baghdad.

3409.   Benjamin David Tiffner was killed in the attack.

3410.   The weapon used to kill Benjamin David Tiffner was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3411.   Plaintiff Timothy Tiffner is a citizen of the United States and domiciled in the State of Tennessee. He is the father of Benjamin David Tiffner.

3412.   Plaintiff Timothy Tiffner brings a claim individually and on behalf of the Estate of Benjamin David Tiffner, as its legal representative.

3413.   Plaintiff Judith Tiffner is a citizen of the United States and domiciled in the State of Tennessee.  She is the mother of Benjamin David Tiffner.

3414.   Plaintiff Joshua Tiffner is a citizen of the United States and domiciled in the State of Utah. He is the brother of Benjamin David Tiffner.

3415.   Plaintiff Seth Tiffner is a citizen of the United States and domiciled in the State of Alabama. He is the brother of Benjamin David Tiffner.

3416.   Plaintiff Sarah Crosby is a citizen of the United States and domiciled in the State of Alaska. She is the sister of Benjamin David Tiffner.

3417.   As a result of the attack, and the death of Benjamin David Tiffner, Plaintiffs Timothy Tiffner, Judith Tiffner, Joshua Tiffner, Seth Tiffner and Sarah Crosby have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 173.   THE NOVEMBER 14, 2007 ATTACK – BAGHDAD

**The Burks Family**

3418.   Peter Burks was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3419.   On November 14, 2007, Peter Burks, aged 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle in Baghdad.

3420.   Peter Burks was killed in the attack.

3421.   The weapon used to kill Peter Burks was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

3422. Plaintiff Alan Burks is a citizen of the United States and domiciled in the State of Texas. He is the father of Peter Burkes.

3423. Plaintiff Alan Burks brings a claim individually and on behalf of the Estate of Peter Burks, as its legal representative.

3424. Plaintiff Jackie Merck Hlastan is a citizen of the United States and domiciled in the State of Texas. She is the mother of Peter Burks.

3425. Plaintiff G.B., a minor represented by her legal guardian, Alan Burks, is a citizen of the United States and domiciled in the State of New Jersey. She is the sister of Peter Burks.

3426. Plaintiff Alison Burks McRuiz is a citizen of the United States and domiciled in the State of Texas. She is the sister of Peter Burks.

3427. Plaintiff Sarah Phillips is a citizen of the United States and domiciled in the State of Texas. She is the sister of Peter Burks.

3428. Plaintiff Zachary Burks is a citizen of the United States and domiciled in the State of Alabama. He is the brother of Peter Burks.

3429. As a result of the attack, and the death of Peter Burks, Plaintiffs Alan Burks, Jackie Merck Hlastan, G.B., Alison Burks McRuiz, Sarah Phillips and Zachary Burks have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**174.** **THE NOVEMBER 26, 2007 ATTACK – AZIZIYAH**

**Juneau Family**

3430. William ("Bill") Juneau was a citizen of the Unites States and domiciled in the State of Minnesota when he was killed in Iraq.

3431.   On November 26, 2007, William Juneau, aged 36, was serving as a civilian contractor in southern Iraq when an IED emplaced by JAM Special Groups terror operatives detonated near his vehicle.

3432.   William Juneau was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3433.   Plaintiff Bridget Juneau is a citizen of the United States and domiciled in the State of Minnesota. She is the twin sister of William Juneau.

3434.   Plaintiff Bridget Juneau brings an action individually and on behalf of the Estate of William Juneau, as its legal representative.

3435.   Plaintiff Stephanie Juneau is a citizen of the United States and domiciled in the State of Montana. She is the sister of William Juneau.

3436.   As a result of the attack, and the death of William Juneau, Plaintiffs Bridget Juneau and Stephanie Juneau have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their brother's society, companionship, comfort, advice and counsel.

## 175.   THE DECEMBER 1, 2007 ATTACK – BAGDAD

**The Reece Family**

3437.   Matthew K. Reece was a citizen of the United States and domiciled in the State of Arkansas when he was killed in Iraq.

3438.   On December 1, 2007, Matthew K. Reece, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3439.   Matthew K. Reece was killed in the attack.

3440.   The weapon used to kill Matthew K. Reece was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

3441. Plaintiff Tammy Vanderwaal is a citizen of the United States and domiciled in the State of Arkansas. She is the mother of Matthew K. Reece.

3442. Plaintiff A.L.R., a minor represented by her legal guardian Tammy Vanderwaal, is a citizen of the United States and domiciled in the State of Arkansas. She is the daughter of Matthew K. Reece.

3443. Plaintiff Preston Shane Reece is a citizen of the United States and domiciled in the State of Arkansas. He is the brother of Matthew K. Reece.

3444. Plaintiff Shaylyn C. Reece is a citizen of the United States and domiciled in the State of Arkansas. She is the sister of Matthew K. Reece.

3445. As a result of the attack, and the death of Matthew K. Reece, Plaintiffs Tammy Vanderwaal, A.L.R., Preston Shane Reece and Shaylyn C. Reece have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's/brother's society, companionship, comfort, advice and counsel.

## 176. THE DECEMBER 9, 2007 ATTACK – AZ ZUBAYDIYAH

### The Shaw Family

3446. Micah Shaw was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

3447. On December 9, 2007, Micah Shaw, aged 32, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3448. Micah Shaw was killed in the attack.

3449. The weapon used to kill Micah Shaw was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

3450. Plaintiff Elena Shaw is a citizen of the United States and domiciled in the State of New Hampshire. She is the widow of Micah Shaw.

3451. Plaintiff C.S., a minor represented by his legal guardian Elena Shaw, is a citizen of the United States and domiciled in the State of New Hampshire. He is the minor son of Micah Shaw.

3452. Plaintiff L.S., a minor represented by her legal guardian Elena Shaw, is a citizen of the United States and domiciled in the State of New Hampshire. She is the minor daughter of Micah Shaw.

3453. Plaintiff Emily Shaw is a citizen of the United States and domiciled in the State of Pennsylvania. She is the daughter of Micah Shaw.

3454. As a result of the attack, and the death of Micah Shaw, Plaintiffs Elena Shaw, C.S., L.S. and Emily Shaw have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Doheny Family**

3455. Michael Doheny was a citizen of the United States and domiciled in the State of Nebraska when he was killed in Iraq.

3456. On December 9, 2007, Michael Doheny, aged 30, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3457. Michael Doheny was killed in the attack.

468

3458.   The weapon used to kill Michael Doheny was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3459.   Plaintiff Melissa Doheny is a citizen of the United States and domiciled in the State of Nebraska. She is the widow of Michael Doheny.

3460.   Plaintiff Melissa Doheny brings a claim individually and on behalf of the Estate of Michael Doheny, as its legal representative.

3461.   Plaintiff Kathy Kugler is a citizen of the United States and domiciled in the State of Nebraska. She is the mother of Michael Doheny.

3462.   Plaintiff Robert Kugler is a citizen of the United States and domiciled in the State of Oregon. He is the brother of Michael Doheny.

3463.   As a result of the attack, and the death of Michael Doheny, Plaintiffs Melissa Doheny, Kathy Kugler and Robert Kugler have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

**The Evrard Family**

3464.   Steven Evrard was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3465.   On December 9, 2007, Steven Evrard, aged 36, was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3466.   Steven Evrard was killed in the attack.

3467.   The weapon used to kill Steven Evrard was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3468.   Plaintiff Tanya Evrard is a citizen of the United States and domiciled in the State of Texas. She is the widow of Steven Evrard.

3469.   As a result of the attack, and the death of Steven Evrard, Plaintiff Tanya Evrard has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's companionship, comfort, advice and counsel.

**The Johnson Family**

3470.   Plaintiff Billy Johnson is a citizen of the United States and domiciled in the State of Tennessee.

3471.   On December 9, 2007, Billy Johnson was serving as a civilian contractor in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3472.   The weapon used to injure Billy Johnson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3473.   As a result of the attack, Mr. Johnson's right leg was amputed below the knee. He also required multiple surgical implants in his left leg and left arm. In addition, Mr. Johnson suffered amputation of one finger on his left hand and partial amputation of a finger on his right hand.

3474.   Mr. Johnson has endured more than fifty surgical procedures including multiple skin grafts. He also sustained a TBI and suffers from PTSD.

3475.   As a result of the attack, and the injuries he suffered, Plaintiff Billy Johnson has

experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 177. THE JANUARY 6, 2008 ATTACK – BAGHDAD

#### The Gudridge Family

3476. James D. Gudridge was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

3477. On January 6, 2008, James D. Gudridge, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3478. James D. Gudridge was killed in the attack.

3479. The weapon used to kill James D. Gudridge was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3480. Plaintiff Judy Hoffman is a citizen of the United States and domiciled in the State of Florida. She is the mother of James D. Gudridge.

3481. Plaintiff Ashley Gudridge Houppert is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of James D. Gudridge.

3482. As a result of the attack, and the death of James D. Gudridge, Plaintiffs Judy Hoffman and Ashley Gudridge Houppert have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

#### The Schichtl Family

3483. Plaintiff Joshua Schichtl is a citizen of the United States and domiciled in the State of Florida.

3484. On January 6, 2008, Joshua Schichtl, then 40, was serving in the U.S. military in

Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3485.   The weapon used to injure Joshua Schichtl was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3486.   As a result of the attack, Joshua Schichtl sustained shrapnel to his body, impacting his left eye, face and bicep. He also lost the use of his right eye.

3487.   As a result of the blast, his cheekbone and roof of his mouth were shattered, and he lost several of his teeth. His lower jawbone was broken in 19 locations and he has had pins placed in the area to attempt to provide some stability. He is still unable to open his mouth as wide as necessary and chewing continues to be difficult.

3488.   Joshua Schichtl received medical treatment both as an in-patient and resident for approximately five years.

3489.   He has undergone multiple surgeries including bone and skin grafts, many of which have involved the reconstruction of his mouth.

3490.   Significant scarring is apparent on his face.

3491.   Joshua Schichtl has been diagnosed with a TBI and an anxiety disorder and has sought and continues to seek counseling.

3492.   He still experiences frequent pain.

3493.   As a result of the attack, and the injuries he suffered, Plaintiff Joshua Schichtl has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3494.   Plaintiff Mark Schichtl is a citizen of the United States and domiciled in the State of Arkansas. He is the father of Joshua Schichtl.

3495.   Plaintiff Katherine Prowse is a citizen of the United States and domiciled in the

State of Arkansas. She is the sister of Joshua Schichtl.

3496.   Plaintiff Nicholas Prowse is a citizen of the United States and domiciled in the State of Arkansas. He is the brother of Joshua Schichtl.

3497.   Plaintiff H.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

3498.   Plaintiff S.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

3499.   Plaintiff C.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

3500.   Plaintiff A.S., a minor represented by his legal guardian, Joshua Schichtl, is a citizen of the United States and domiciled in the State of Florida. He is the son of Joshua Schichtl.

3501.   As a result of the attack, and the injuries Joshua Schichtl has suffered, Plaintiffs Mark Schichtl, Katherine Prowse, Nicholas Prowse, H.S., S.S., C.S. and A.S. have experienced severe mental anguish, and extreme emotional pain and suffering.

**The Wadleigh Family**

3502.   Plaintiff Steve Wadleigh is a citizen of the United States and domiciled in the State of Washington.

3503.   On January 6, 2008, Steve Wadleigh, then 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3504.   The weapon used to injure Steve Wadleigh was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3505.   As a result of the attack, Steve Wadleigh sustained shrapnel to his face, neck, and

shoulder. Shrapnel was imbedded in his jaw bone, necessitating both facial surgery oral surgeries.

3506. The impact of the blast caused his head to be thrown into the window of the vehicle. Mr. Wadleigh sustained a concussion and has been diagnosed with a TBI.

3507. In addition, his ear drum was perforated, and his tooth was broken.

3508. The vision in his left eye has been diminished and he continues to experience pain in his shoulder and hip.

3509. He has been diagnosed with PTSD and he has sought counseling. He has experienced night terrors and has been prescribed medication to address them and other sleep-related issues.

3510. The effects of the PTSD, along with the TBI, impact his daily living.

3511. As a result of the attack, and the injuries he suffered, Plaintiff Steve Wadleigh has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3512. Plaintiff Lea-Ann Wadleigh is a citizen of the United States and domiciled in the State of Washington. She is the wife of Steve Wadleigh.

3513. As a result of the attack, and the injuries Steve Wadleigh has suffered, Plaintiff Lea-Ann Wadleigh has experienced severe mental anguish, and extreme emotional pain and suffering.

## 178. THE JANUARY 30, 2008 ATTACK – BAGHDAD

**The Lukow Family**

3514. Plaintiff Michael Lukow is a citizen of the United States and domiciled in the State of Utah.

3515. On January 30, 2008, Michael Lukow was serving in the U.S. military in Iraq.

3516. Mr. Lukow was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3517.  The weapon used to injure Mr. Lukow was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3518.  As a result of the attack, Mr. Lukow's foot was amputated.

3519.  As a result of the attack, and the injuries he suffered, Plaintiff Michael Lukow has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3520.  Plaintiff Rikki Lukow is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Michael Lukow.

3521.  Plaintiff Bruce Lukow is a citizen of the United States and domiciled in the State of Colorado. He is the father of Michael Lukow.

3522.  Plaintiff Joseph Lukow is a citizen of the United States and domiciled in the State of Colorado. He is the brother of Michael Lukow.

3523.  Plaintiff Andrew Lukow is a citizen of the United States and domiciled in the State of Wisconsin. He is the brother of Michael Lukow.

3524.  Plaintiff Kristen Kelley is a citizen of the United States and domiciled in the State of Colorado. She is the sister of Michael Lukow.

3525.  As a result of the attack and the injuries Michael Lukow suffered, Plaintiff Rikki Lukow, Bruce Lukow, Joseph Lukow, Andrew Lukow and Kristen Kelley have experienced severe mental anguish and extreme emotional pain and suffering.

## 179.  THE FEBRUARY 19, 2008 ATTACK – BAGHDAD

**The Alvarez Family**

3526.  Conrad Alvarez was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3527.   On February 19, 2008, Conrad Alvarez, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3528.   Conrad Alvarez was injured in the attack and died on February 20, 2008 from the injuries he sustained in the attack.

3529.   The weapon used to kill Conrad Alvarez was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3530.   Plaintiff Maira Alvarez is a citizen of the United States and domiciled in the State of Texas. She is the widow of Conrad Alvarez.

3531.   Plaintiff Maira Alvarez brings a claim individually and on behalf of the Estate of Conrad Alvarez, as its legal representative.

3532.   Plaintiff K.A., a minor represented by his legal guardian, Maira Alvarez, is a citizen of the United States and domiciled in the State of Texas. He is the son of Conrad Alvarez.

3533.   Angela Alvarez is a citizen of the United States and domiciled in the State of California. She is the ex-wife of Conrad Alvarez and is the legal guardian of Plaintiffs A.A. and C.A. Angela Alvarez brings an action solely on behalf of Plaintiffs A.A. and C.A., both minors.

3534.   Plaintiff A.A., a minor represented by her legal guardian, Angela Alvarez, is a citizen of the United States and domiciled in the State of California. She is the daughter of Conrad Alvarez.

3535.   Plaintiff C.A., a minor represented by her legal guardian, Angela Alvarez, is a citizen of the United States and domiciled in the State of California. She is the daughter of Conrad Alvarez.

3536.   Plaintiff Belinda Garcia is a citizen of the United States and domiciled in the State of Texas. She is the mother of Conrad Alvarez.

3537.   As a result of the attack, and the death of Conrad Alvarez, Plaintiffs Maira Alvarez, K.A., A.A., C.A. and Belinda Garcia have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's society, companionship, comfort, advice and counsel.

**The Whitehorse Family**

3538.   Plaintiff Jason Whitehorse is a citizen of the United States and domiciled in the State of New Mexico.

3539.   On February 19, 2008, Jason Whitehorse, then 22, was serving in the U.S. military in Iraq.

3540.   Mr. Whitehorse was on a routine patrol in Baghdad when his vehicle was struck by an EFP emplaced by Special Groups.

3541.   The weapon used to injure Mr. Whitehorse was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3542.   As a result of the attack, he sustained injuries due to the impact of shrapnel impacting his body.  This has resulted in scarring.

3543.   Apart from the shrapnel-related injuries he also sustained burns to his skin. This has also resulted in scarring.

3544.   Mr. Whitehorse has been diagnosed with PTSD and major depression and has received treatment and counseling.

3545.  Mr. Whitehorse continues to experience emotional distress, depression and survivor's guilt.

3546.  As a result of the attack, and the injuries he suffered, Plaintiff Jason Whitehorse has experienced severe mental anguish and extreme emotional pain and suffering.

### 180.  THE FEBRUARY 19, 2008 ATTACK – BAGHDAD

**The Mann Family**

3547.  Plaintiff Jeffrey C. Mann is a citizen of the United States and domiciled in the State of North Carolina.

3548.  On February 19, 2008, Jeffrey C. Mann, then 25, was serving in the U.S. military in Iraq.

3549.  Jeffrey C. Mann was inside a building at Forward Operating Base Rustamiyah in the southeast portion of Baghdad when the base was hit with a barrage of Improvised Rocket-Assisted Munitions ("IRAMs") fired from a dump truck in close proximity to the base.

3550.  One of the rockets caused a fuel tank on the base to explode which destroyed part of the building in which Jeffrey C. Mann was standing.

3551.  KH operatives fired the IRAMs at the base. Those operatives were trained by Hezbollah and funded and supplied by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF as their proxy.

3552.  The concussive blast of the explosion threw Jeffrey C. Mann backward, and he hit his head causing him to lose consciousness.

3553.  As a result of the attack, Jeffrey C. Mann suffered a TBI that has impeded his ability to concentrate or work. He also suffers from migraines and difficulty in completing tasks. The injuries he sustained have also caused him impaired vision and loss of feeling in part of his face in

addition to tinnitus and hearing loss. He also suffered injuries to his back which now require him to walk with a cane when walking for any extended period of time while also suffering pain and numbness in his legs. He also suffers from PTSD.

3554.   As a result of the attack, and the injuries he suffered, Jeffrey C. Mann has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 181.   THE MARCH 11, 2008 ATTACK – BABIL PROVINCE

**The West Family**

3555.   Laurent J. West was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

3556.   On March 11, 2008, Laurent J. West, aged 32, was serving in the U.S. military in Iraq when an IED (likely an EFP) was emplaced and detonated near his vehicle by JAM Special Groups.

3557.   Laurent J. West was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3558.   Plaintiff Michelle West is a citizen of the United States and domiciled in the State of New Mexico. She is the widow of Laurent J. West.

3559.   As a result of the attack, and the death of Laurent J. West, Plaintiff Michelle West has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

### 182.   THE MARCH 12, 2008 ATTACK – CAMP ADDER

**The Samten Family**

3560.   Tenzin Lobsang Samten was a citizen of the United States and domiciled in the State of Arizona.

3561.   On March 12, 2008, Tenzin Lobsang Samten, aged 33, was serving in the U.S. military in Iraq near the city of An-Nasiriyah when his vehicle was struck by mortar fire launched by JAM Special Groups terror operatives.

3562.   Tenzin Lobsang Samten was killed in the attack.

3563.   The attack that killed Tenzin Lobsang Samten was carried out by JAM Special Groups operatives working at the behest of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing tactics taught to them by Hezbollah.

3564.   Plaintiff Rebecca L. Samten-Finch is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Tenzin Lobsang Samten.

3565.   Plaintiff Rebecca L. Samten-Finch brings an action individually and on behalf of the Estate of Tenzin Lobsang Samten, as its legal representative.

3566.   Plaintiff D.A.S., a minor, represented by her legal guardian, Rebecca L. Samten-Finch, is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Tenzin Lobsang Samten.

3567.   Plaintiff M.B.S., a minor, represented by his legal guardian, Rebecca L. Samten-Finch, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Tenzin Lobsang Samten.

3568.   As a result of the attack, and the death of Tenzin Lobsang Samten, Plaintiffs Rebecca L. Samten-Finch, D.A.S., and M.B.S. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Bradley Family**

3569.   Juantrea Tyrone Bradley was a citizen of the United States and domiciled in the

State of North Carolina.

3570.   On March 12, 2008, Juantrea Tyrone Bradley, then 28, was serving in the U.S. military in Ira near the city of An-Nasiriyah when his vehicle was struck by mortar fire launched by JAM Special Groups terror operatives.

3571.   Juantrea Tyrone Bradley was killed in the attack.

3572.   The attack that killed Juantrea Tyrone Bradley was carried out by JAM Special Groups operatives working at the behest of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing tactics taught to them by Hezbollah.

3573.   Plaintiff Ava Lanette Bradley is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Juantrea Tyrone Bradley.

3574.   Plaintiff Ava Lanette Bradley brings an action individually and on behalf of the Estate of Juantrea Tyrone Bradley, as its legal representative.

3575.   Plaintiff A.D.B., a minor, represented by her legal guardian, Ava Lanette Bradley, is a citizen of the United States and domiciled in the State of North Carolina. She is the daughter of Juantrea Tyrone Bradley.

3576.   Plaintiff T.T.B., a minor, represented by his legal guardian, Ava Lanette Bradley, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Juantrea Tyrone Bradley.

3577.   Plaintiff J.T.B., a minor, represented by his legal guardian, Ava Lanette Bradley, is a citizen of the United States and domiciled in the State of North Carolina. He is the son of Juantrea Tyrone Bradley.

3578.   Plaintiff Anthony Hudson is a citizen of the United States and domiciled in the State of North Carolina. He is the step-son of Juantrea Tyrone Bradley.

3579. As a result of the attack, and the death of Juantrea Tyrone Bradley, Plaintiffs Ava Lanette Bradley, A.D.B., T.T.B., J.T.B., and Anthony Hudson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 183. THE MARCH 14, 2008 ATTACK – MUSAYYIB

**The Bewley Family**

3580. Plaintiff Austin Bewley is a citizen of the United States and domiciled in the State of Oregon.

3581. On March 14, 2008, Austin Bewley, then 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling on the way to Baghdad.

3582. The weapon used to injure Austin Bewley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3583. Mr. Bewley suffered shrapnel wounds in his left leg, right hand, and face.

3584. Mr. Bewley was also diagnosed with PTSD.

3585. Mr. Bewley was prescribed pain medication and medication to regrow the nerve in his leg. He was also prescribed medication to treat the symptoms of his PTSD.

3586. As a result of the attack, and the injuries he suffered, Plaintiff Austin Bewley has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 184. THE MARCH 17, 2008 ATTACK – BAGHDAD

**The Levi Family**

3587. Plaintiff Christopher Levi is a citizen of the United States and domiciled in the State

of New York.

3588.   On March 17, 2008, Christopher Levi, then 23, was serving in the U.S. military in Iraq.

3589.   Mr. Levi was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3590.   The weapon used to injure Mr. Levi was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3591.   As a result of the attack, Mr. Levi lost both of his legs.

3592.   He also sustained a fracture of his right ulna and loss of the second metacarpal in his right hand.

3593.   In addition to adjusting to life as a double amputee through the use of prosthetics and a wheelchair, Mr. Levi continues to experience numbness in his left arm.

3594.   He also suffers from a TBI.

3595.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Levi has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3596.   Plaintiff Eric Levi is a citizen of the United States and domiciled in the State of New York. He is the father of Christopher Levi.

3597.   Plaintiff Debra Levi is a citizen of the United States and domiciled in the State of New York. She is the mother of Christopher Levi.

3598.   Plaintiff Emily Levi is a citizen of the United States and domiciled in the State of New York. She is the sister of Christopher Levi.

3599.   Plaintiff Kimberly Vesey is a citizen of the United States and domiciled in the State

of New York. She is the sister of Christopher Levi.

3600.  As a result of the attack, and the injuries suffered by Christopher Levi, Plaintiffs Eric Levi, Debra Levi, Emily Levi and Kimberly Vesey have experienced severe mental anguish, and extreme emotional pain and suffering.

### 185.  THE MARCH 17, 2008 ATTACK – BAGHDAD

**The Elledge Family**

3601.  Michael D. Elledge was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

3602.  On March 17, 2008, Michael D. Elledge, aged 41, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

3603.  Michael D. Elledge was killed in the attack.

3604.  The weapon used to kill Michael D. Elledge was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

3605.  Plaintiff Marion Crimens is a citizen of the United States and domiciled in the State of Florida. She is the mother of Michael D. Elledge.

3606.  Plaintiff Timothy W. Elledge is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Michael D. Elledge.

3607.  As a result of the attack, and the death of Michael D. Elledge, Plaintiffs Marion Crimens and Timothy W. Elledge have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Simpson Family**

3608.  Christopher Simpson was a citizen of the United States and domiciled in the State

of Virginia when he was killed in Iraq.

3609.   On March 17, 2008, Christopher Simpson, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3610.   Christopher Simpson was killed in the attack.

3611.   The weapon used to kill Christopher Simpson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3612.   Plaintiff Mary Catherine McLaughlin is a citizen of the United States and domiciled in the State of New York. She is the mother of Christopher Simpson.

3613.   As a result of the attack, and the death of Christopher Simpson, Plaintiff Mary Catherine McLaughlin has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

## 186.   THE MARCH 23, 2008 ATTACK – BAGHDAD

### The Habsieger Family

3614.   Andrew J. Habsieger was a citizen of the United States and domiciled in the State of Missouri when he was killed in Iraq.

3615.   On March 23, 2008, Andrew J. Habsieger, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3616.   Andrew J. Habsieger was killed in the attack.

3617.   The weapon used to kill Andrew J. Habsieger was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3618.   Plaintiff Brenda Habsieger is a citizen of the United States and domiciled in the

State of Missouri. She is the mother of Andrew J. Habsieger.

3619.   Plaintiff Brenda Habsieger brings an action individually and on behalf of the Estate of Andrew J. Habsieger, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

3620.   Plaintiff Michael Habsieger is a citizen of the United States and domiciled in the State of Missouri. He is the father of Andrew J. Habsieger.

3621.   Jacob Michael Habsieger was a citizen of the United States at the time of the death of Andrew J. Habsieger. He was the brother of Andrew J. Habsieger. Jacob Michael Habsieger died on March 5, 2018.

3622.   Amber Habsieger is a citizen of the United States and domiciled in the State of Missouri. She brings an action on behalf of the Estate of Jacob Michael Habsieger, as its legal representative.

3623.   As a result of the attack, and the death of Andrew J. Habsieger, the late Jacob Michael Habsieger experienced, and Plaintiffs Brenda Habsieger and Michael Habsieger have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Hake Family**

3624.   Christopher M. Hake was a citizen of the United States and domiciled in the State of Oklahoma when he was killed in Iraq.

3625.   On March 23, 2008, Christopher M. Hake, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3626.   Christopher M. Hake was killed in the attack.

3627.   The weapon used to kill Christopher M. Hake was a Hezbollah-designed and

Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3628.   Plaintiff Kelli D. Hake is a citizen of the United States and domiciled in the State of Oklahoma. She is the widow of Christopher M. Hake.

3629.   Plaintiff Kelli D. Hake brings an action individually and on behalf of the Estate of Christopher M. Hake, as its legal representative.

3630.   Plaintiff G.H., a minor represented by his legal guardian Kelli D. Hake, is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Christopher M. Hake.

3631.   Plaintiff Denice York is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of Christopher M. Hake.

3632.   Plaintiff Russel York is a citizen of the United States and domiciled in the State of Oklahoma. He is the step-father of Christopher M. Hake.

3633.   Plaintiff Peter Hake is a citizen of the United States and domiciled in the State of Oklahoma. He is the father of Christopher M. Hake.

3634.   Plaintiff Jill Hake is a citizen of the United States and domiciled in the State of Oklahoma. She is the step-mother of Christopher M. Hake.

3635.   Plaintiff Zachary Hake is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Christopher M. Hake.

3636.   Plaintiff Keri Hake is a citizen of the United States and domiciled in the State of Oklahoma. She is the sister of Christopher M. Hake.

3637.   Plaintiff Skylar Hake is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Christopher M. Hake.

3638.   Plaintiff Jennifer Renee York is a citizen of the United States and domiciled in the

State of Oklahoma. She is the step-sister of Christopher M. Hake.

3639. Plaintiff Jason York is a citizen of the United States and domiciled in the State of Oklahoma. He is the step-brother of Christopher M. Hake.

3640. As a result of the attack, and the death of Christopher M. Hake, Plaintiffs Kelli D. Hake, G.H., Denice York, Russel York, Peter Hake, Jill Hake, Zachary Hake, Keri Hake, Skylar Hake, Jennifer Renee York and Jason York have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Delgado Family**

3641. George Delgado was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

3642. On March 23, 2008, George Delgado, aged 21, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

3643. George Delgado was killed in the attack.

3644. The weapon used to kill George Delgado was an Iranian-manufactured EFP provided to Iranian-funded and -trained terror operatives in Iraq.

3645. Plaintiff Maria E. Calle is a citizen of the United States and domiciled in the State of California. She is the mother of George Delgado.

3646. Plaintiff Maria E. Calle brings an action individually and on behalf of the Estate of George Delgado, as its legal representative.

3647. Plaintiff Cynthia Delgado is a citizen of the United States and domiciled in the State of California. She is the sister of George Delgado.

3648. As a result of the attack, and the death of George Delgado, Plaintiffs Maria E. Calle

488

and Cynthia Delgado have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**<u>The McCoy Family</u>**

3649.   Steve A. McCoy was a citizen of the United States and domiciled in the State of Georgia when he was injured in Iraq.

3650.   On March 23, 2008, Steve A. McCoy, aged 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

3651.   As a result of the attack, Steve A. McCoy sustained third degree burns over 98% of his body. The explosion and resulting fire also caused the loss of some fingers, his ear, and his nose.

3652.   After initial treatment in Iraq and Germany, Steve A. McCoy received extensive treatment in the United States. During the course of his treatment he underwent a number of skin grafts.

3653.   He was heavily sedated for hours each day so that his bandages could be changed, and his wounds could be treated.

3654.   Occasionally, he was conscious and able to communicate through blinking and other methods. Following a tracheotomy procedure, he developed a limited ability to speak.

3655.   His condition also required respiratory therapy and dialysis treatment.

3656.   Steve A. McCoy died on June 10, 2008 as a result of the injuries he sustained in the attack.

3657.   Plaintiff Tabitha McCoy is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Steve A. McCoy.

3658.   Plaintiff Tabitha McCoy brings an action individually and on behalf of the Estate of Steve A. McCoy, as its legal representative.

3659.   Plaintiff L.M., a minor represented by his legal guardian Tabitha McCoy, is a citizen of the United States and domiciled in the State of Georgia. He is the son of Steve A. McCoy.

3660.   Plaintiff R.M., a minor represented by her legal guardian Tabitha McCoy, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Steve A. McCoy.

3661.   As a result of the attack, and the death of Steve A. McCoy, Plaintiffs Tabitha McCoy, L.M. and R.M. have experienced severe mental anguish, extreme emotional pain and suffering and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Fieser Family**

3662.   Plaintiff Matthew Fieser is a citizen of the United States and domiciled in the State of Washington.

3663.   On March 23, 2008, Matthew Fieser, then 25, was serving in the U.S. military in Iraq.

3664.   He was an occupant in a vehicle traveling in the same convoy when an EFP emplaced by Special Groups detonated near the lead vehicle, resulting in the deaths of four soldiers that day and the death of Steve A. McCoy, who subsequently died as a result of his injuries.

3665.   The weapon that caused the deaths of the soldiers who had been traveling in the lead vehicle was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

490

3666.   Following the blast, the lead vehicle began to burn, eventually burning uncontrollably.

3667.   Steve A. McCoy, the truck commander of the lead vehicle exited the vehicle, his body and clothes on fire. Nearly all his clothes had been burned off.

3668.   After the vehicle in which Mr. Fieser was traveling approached the disabled vehicle he dismounted. While engulfed in flames, Steve A. McCoy began running towards Mr. Fieser, screaming and crying out to him.

3669.   Although severely burned all over his body, Steve A. McCoy remained conscious following the attack. After a period of time, Mr. Fieser helped to move Mr. McCoy onto a support to prepare him for transport.

3670.   Mr. Fieser traveled alongside Steve A. McCoy and continued to talk to him he was transported to the hospital. Throughout this period, Steve A. McCoy continued to scream with pain and cough up a foamy substance.

3671.   After arriving at the hospital Mr. Fieser learned that the other occupants of the lead vehicle had been severely burned, could not be extricated from their vehicle, and did not survive.

3672.   Mr. Fieser has been diagnosed with PTSD and has experienced nightmares.

3673.   Mr. Fieser has sought counseling and has been prescribed medication, including anti-depressants, to treat his condition.

3674.   As a result of the attack, and the injuries he suffered, Plaintiff Matthew Fieser has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Carrington Family**

3675.   Plaintiff Benjamin Daniel Carrington is a citizen of the United States and domiciled in the State of Georgia.

3676.   On March 23, 2008, Benjamin Daniel Carrington, then 22, was serving in the U.S. military in Iraq.

3677.   Mr. Carrington was the driver of the vehicle in which Plaintiff Matthew Fieser was traveling when an EFP emplaced by Special Groups detonated near the lead vehicle in the convoy, resulting in the deaths of four soldiers that day and the death of Steve A. McCoy, who subsequently died as a result of his injuries.

3678.   The weapon that caused the deaths of the soldiers who had been traveling in the lead vehicle was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3679.   Mr. Carrington witnessed the attack scene and the aftermath, including the soldier who was engulfed in flames.

3680.   He has been diagnosed with PTSD.

3681.   Mr. Carrington has sought counseling and has been prescribed medication to treat his condition.

3682.   As a result of the attack, and the injuries he suffered, Plaintiff Benjamin Daniel Carrington has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Heslop Family**

3683.   Plaintiff Jonathan Heslop is a citizen of the United States and domiciled in the State of Ohio.

3684.   On March 23, 2008, Jonathan Heslop, then 23, was serving in the U.S. military in Iraq.

492

3685.   Jonathan Heslop was the gunner of the vehicle that Benjamin Carrington was driving and was traveling in the same convoy when an EFP emplaced by Special Groups detonated near the lead vehicle, resulting in the deaths of four soldiers that day and the death of Steve A. McCoy, who subsequently died as a result of his injuries.

3686.   The weapon that caused the deaths of the soldiers who had been traveling in the lead vehicle was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3687.   Mr. Heslop witnessed the attack scene and the aftermath, including seeing Mr. McCoy when he was engulfed in flames.

3688.   Jonathan Heslop has been diagnosed with PTSD.

3689.   Mr. Heslop has sought counseling to address the PTSD and the impact that the attack has had upon him. He has been prescribed medication to treat this condition.

3690.   As a result of the attack, and the injuries he suffered, Plaintiff Jonathan Heslop has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Mason Family**

3691.   Plaintiff Russell Mason is a citizen of the United States and domiciled in the State of Maryland.

3692.   On March 23, 2008, Russell Mason, then 23, was serving in the U.S. military in Iraq.

3693.   Russell Mason was the commander of the convey and was an occupant in the vehicle being driven by Benjamin Carrington traveling in the same convoy when an EFP emplaced

by Special Groups detonated near the lead vehicle, resulting in the deaths of four soldiers that day and the death of Steve A. McCoy, who subsequently died as a result of his injuries.

3694.   The weapon that caused the deaths of the soldiers who had been traveling in the lead vehicle was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3695.   Following the blast, the lead vehicle began to burn, eventually burning uncontrollably.

3696.   Steve A. McCoy, the truck commander of the lead vehicle exited the vehicle, his body and clothes on fire. Nearly all his clothes had been burned off.

3697.   After the vehicle in which Mr. Mason was traveling approached the disabled vehicle he dismounted. While engulfed in flames, Steve A. McCoy began running towards Mr. Fieser, screaming and crying out to him.

3698.   While trying to help Steve A. McCoy, they came under fire from the ground floor and a second-floor window positions south of where the convey had been attacked.

3699.   He suffers from PTSD and has experienced survivor's guilt. He has received treatment and counseling for these issues.

3700.   As a result of the attack, and the injuries he suffered, Plaintiff Russell Mason has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Pool Family**

3701.   Plaintiff Andy Pool is a citizen of the United States and domiciled in the State of Arkansas.

3702.   On March 23, 2008, Andy Pool, then 26, was serving in the U.S. military in Iraq.

494

3703.   Andy Pool was an occupant of the vehicle that Benjamin Carrington was driving when an EFP emplaced by Special Groups detonated near the lead vehicle in the convoy, resulting in the deaths of four soldiers that day and the subsequent death of Steve A. McCoy.

3704.   The weapon that caused the deaths of the soldiers who had been traveling in the lead vehicle was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3705.   Mr. Pool witnessed the attack scene and the aftermath, including seeing Steve A. McCoy when he was engulfed in flames. Although essentially unrecognizable, Mr. Pool realized it was Steve A. McCoy solely from his tattoo that was somewhat visible.

3706.   Mr. Pool traveled alongside Steve A. McCoy and continued to talk to him as he was transported to the hospital. Throughout this period, Steve A. McCoy continued to scream with pain. While en route to the hospital, Steve A. McCoy asked Andy Pool to tell his wife and children that he loved them.

3707.   Andy Pool endures extreme survivor's guilt. He has also experienced nightmares and sleep issues.

3708.   He has been diagnosed with PTSD.

3709.   Mr. Pool has sought counseling to address the PTSD and the impact that the attack has had upon him. He has been prescribed medication to treat this condition and the sleep issues that have developed since the attack.

3710.   As a result of the attack, and the injuries he suffered, Plaintiff Andy Pool has experienced severe physical and mental anguish and extreme emotional pain and suffering.

187.  **THE MARCH 23, 2008 ATTACK – BAGHDAD**

**The Converse Family**

3711.  Paul R. Converse was a citizen of the United States and domiciled in the State of Washington.

3712.  On March 23, 2008, Paul R. Converse, then 56, was a civilian working as an auditor for the Special Inspector General for Iraq Reconstruction ("SIGIR") in Baghdad.

3713.  On March 23, 2008, a barrage of six 107mm rockets were fired by JAM Special Groups into the Green Zone in Baghdad where Paul R. Converse was working on Easter Sunday.

3714.  Paul R. Converse was mortally wounded in the rocket attack and succumbed to his wounds the following day.

3715.  The JAM Special Groups terror operatives that murdered Paul R. Converse were trained by Hezbollah and funded and armed by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF, as their proxy.

3716.  Plaintiff Frank L. Converse is a citizen of the United States and domiciled in the State of Washington. He is the brother of Paul R. Converse.

3717.  Plaintiff Frank L. Converse brings an action individually and on behalf of the Estate of Paul R. Converse, as its legal representative.

3718.  As a result of the attack, and the death of Paul R. Converse, Plaintiff Frank L. Converse has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

188.  **THE MARCH 27, 2008 ATTACK – SADR CITY**

**The Gerber Family**

3719.  Plaintiff Anthony M. Gerber is a citizen of the United States and domiciled in the

State of Washington.

3720. On March 27, 2008, Anthony M. Gerber was serving in the U.S. military in Iraq.

3721. Mr. Gerber was in a convoy when an EFP emplaced by Special Groups struck the vehicle immediately in front of his.

3722. The weapon used to injure Mr. Gerber was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3723. Additionally, Mr. Gerber was also involved in additional attacks involving JAM during the Battle of Sadr City. He was involved in several counter-offensives against JAM terrorists. He was the target of regular ambushes by JAM that relied on the use of women and children as human shields and RPG and sniper attacks. Mr. Gerber was also part of: the fight surrounding the construction of the wall on Route Gold; the battle involving Chris Kyle depicted in American Sniper; the fighting to interdict JAM attempts to resupply Sadr City and/or counter JAM attempts to overwhelm the Americans on the flanks of Sadr City during the Battle of Sadr City.

3724. As a result of this attack and the additional combat Mr. Geber was involved in, he suffered multiple concussions and suffers from PTSD, a TBI, chronic back pain and tinnitus.

3725. As a result of the attack, and the injuries he suffered, Plaintiff Anthony M. Gerber has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Gregston Family**

3726. Plaintiff Charles B. Gregston served in Iraq as part of the 1-2 Stryker Calvary Regiment. He is a citizen of the United States and domiciled in the State of California.

3727. During 2007 and 2008, Charles B. Gregston was deployed in and/or near Sadr City,

Iraq for 15 months. For the entire Battle of Sadr City, Charles B. Gregston was either directly in Sadr City or doing patrols on the outskirts of the area. Charles B. Gregston's second and final deployment was from November 2009 to December 2010, when he was stationed on the outskirts of Baghdad.

3728.   During both deployments in Iraq, Charles B. Gregston's unit confronted JAM Special Groups. Charles B. Gregston was an immediate responder during the JAM Special Groups sniper attack that killed Randell Olguin on September 30, 2007, and the JAM Special Groups EFP attack that killed Joshua A. Molina and injured Plaintiff Anthony M. Gerber on March 27, 2008. Charles B. Gregston was exposed to multiple roadside bombs while his unit patrolled JAM Special Groups strongholds.

3729.   The weapon used to kill Joshua A. Molina was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3730.   The attacks described herein were perpetrated by JAM Special Groups operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

3731.   Due to his multiple encounters with JAM, JAM Special Groups and exposure to multiple blasts from JAM and JAM Special Groups devices, Charles B. Gregston sustained a number of injuries, including PTSD, TBIs, and tinnitus, resulting in, among other things, permanent hearing loss. Due to his injuries, Charles B. Gregston received a 100% disability rating from the VA.

3732.   As a result of the JAM and JAM Special Groups attacks, Charles B. Gregston has experienced severe physical and mental anguish and extreme emotional pain and suffering.

189.    **THE MARCH 29, 2008 ATTACK – BAGHDAD**

**The Miller Family**

3733.   Patrick J. Miller was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

3734.   On March 29, 2008, Patrick J. Miller aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3735.   Patrick J. Miller was killed in the attack.

3736.   The weapon used to kill Patrick J. Miller was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3737.   Plaintiff Kimberly Miller is a citizen of the United States and domiciled in the State of Florida. She is the mother of Patrick J. Miller.

3738.   Plaintiff Michael J. Miller is a citizen of the United States and domiciled in the State of Florida. He is the brother of Patrick J. Miller.

3739.   As a result of the attack, and the death of Patrick J. Miller, Plaintiffs Kimberly Miller and Michael J. Miller have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

190.    **THE MARCH 29, 2008 ATTACK – BAGHDAD**

**The Reiher Family**

3740.   Plaintiff Carl Reiher is a citizen of the United States and domiciled in the State of Arkansas.

3741.   On March 29, 2008, Carl Reiher was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3742. The weapon used to injure Carl Reiher was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3743. As a result of the attack, Mr. Reiher's left arm was amputated. He also sustained multiple burns injuries.

3744. As a result of the attack, and the injuries he suffered, Plaintiff Carl Reiher has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 191. THE MARCH 30, 2008 ATTACK – BAGHDAD

**The Bailey Family**

3745. Plaintiff Walter Bailey is a citizen of the United States and domiciled in the State of Florida.

3746. On March 30, 2008, Walter Bailey, then 19, was serving in the U.S. military in Iraq.

3747. Mr. Bailey was returning to base when his vehicle was struck by an EFP emplaced by Special Groups.

3748. The weapon used to injure Mr. Bailey was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3749. As a result of the attack, Mr. Bailey sustained multiple pieces of shrapnel in his right arm and both legs. He was also struck by shrapnel in his face and arm.

3750. As a result of the attack, Walter Bailey lost consciousness.

3751. He has been diagnosed with both a TBI and PTSD.

3752. Mr. Bailey has also experienced memory loss.

3753. He has sought and continues to avail himself of counseling for the emotional

injuries caused by the attack.

3754.   As a result of the attack, and the injuries he suffered, Plaintiff Walter Bailey has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3755.   Plaintiff Cassandra Bailey is a citizen of the United States and domiciled in the State of Florida. She is the wife of Walter Bailey.

3756.   As a result of the injuries suffered by Walter Bailey, Cassandra Bailey has sought counseling and been prescribed medication.

3757.   As a result of the attack, and the injuries Walter Bailey suffered, Plaintiff Cassandra Bailey has experienced severe mental anguish, and extreme emotional pain and suffering.

**192.   THE MARCH 30, 2008 ATTACK – BAGHDAD**

**The Gilmore Family**

3758.   Terrell W. Gilmore, Sr. was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

3759.   On March 30, 2008, Terrell W. Gilmore, Sr., aged 38, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3760.   Terrell W. Gilmore, Sr. was killed in the attack.

3761.   The weapon used to kill Terrell W. Gilmore, Sr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3762.   The terrorist group that planned and executed the attack, the Mahdi Army/Special Groups, was trained and armed by Iran's IRGC-QF with the assistance of Hezbollah.

3763.   Plaintiff Kacey Gilmore is a citizen of the United States and domiciled in the State of Louisiana. She is the daughter of Terrell W. Gilmore, Sr.

3764.   Plaintiff Terrell Gilmore, Jr. is a citizen of the United States and domiciled in the State of Louisiana. He is the son of Terrell W. Gilmore, Sr.

3765.   As a result of the attack, and the death of Terrell W. Gilmore, Sr., Plaintiffs Kacey Gilmore and Terrell Gilmore, Jr. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's society, companionship, comfort, advice and counsel.

### 193.   THE MARCH 31, 2008 ATTACK – BAGHDAD

**The Dhanoolal Family**

3766.   Dayne D. Dhanoolal was a citizen of the United States and domiciled in the State of New York when he was killed in Iraq.

3767.   On March 31, 2008, Dayne D. Dhanoolal, aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3768.   Dayne D. Dhanoolal was killed in the attack.

3769.   The weapon used to kill Dayne D. Dhanoolal was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3770.   Plaintiff Kynesha Dhanoolal is a citizen of the United States and domiciled in the State of South Carolina. She is the widow of Dayne D. Dhanoolal.

3771.   Plaintiff Kynesha Dhanoolal brings an action individually and on behalf of the Estate of Dayne D. Dhanoolal.

3772.   As a result of the attack, and the death of Dayne D. Dhanoolal, Plaintiff Kynesha Dhanoolal has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

194. **THE APRIL 3, 2008 ATTACK – SADR CITY**

**The Robinson Family**

3773. Plaintiff Jason Robinson is a citizen of the United States and domiciled in the State of Virginia.

3774. On April 3, 2008, Jason Robinson was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3775. The weapon used to injure Jason Robinson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3776. As a result of the attack, Jason Robinson's sustained shrapnel wounds to his face, neck and shoulder. The blast also dislocated two lumbar disks and ruptured both of his eardrums.

3777. As a result of the attack, and the injuries he suffered, Plaintiff Jason Robinson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3778. Plaintiff Frances Robinson is a citizen of the United States and domiciled in the State of Virginia. She is the wife of Jason Robinson.

3779. Plaintiff E.R., a minor represented by her legal guardian, Frances Robinson, is a citizen of the United States and domiciled in the State of Virginia. She is the daughter of Jason Robinson.

3780. Plaintiff William Justin Weatherly is a citizen of the United States and domiciled in the State of Virginia. He is the step-son of Jason Robinson.

3781. Plaintiff Michael Weatherly is a citizen of the United States and domiciled in the State of Texas. He is the step-son of Jason Robinson.

3782. As a result of the attack, and the injuries suffered by Jason Robinson, Plaintiffs

Frances Robinson, E.R., William Justin Weatherly and Michael Weatherly have experienced severe mental anguish, and extreme emotional pain and suffering.

195. **THE APRIL 6, 2008 ATTACK – BAGHDAD**

**The Pickett Family**

3783. Emanuel Pickett was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

3784. On April 6, 2008, Emanuel Pickett, aged 34, was serving in the U.S. military when he was involved in a mortar and rocket attack, including 107mm rockets.

3785. Emanuel Pickett was killed in the attack launched by JAM Special Groups terror operatives.

3786. The attack was perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3787. Plaintiff Merlese Pickett is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Emanuel Pickett.

3788. Plaintiff Merlese Pickett brings an action individually and on behalf of the Estate of Emanuel Pickett as its legal representative.

3789. Plaintiff Harry Cromity is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Emanuel Pickett.

3790. Plaintiff Marlen Pickett is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Emanuel Pickett.

3791. Plaintiff Kemely Pickett is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Emanuel Pickett.

3792.   Plaintiff Vivian Pickett is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Emanuel Pickett.

3793.   Plaintiff Kyshia Sutton is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Emanuel Pickett.

3794.   As a result of the attack, and the death of Emanuel Pickett, Plaintiffs Merlese Pickett Harry Cromity, Marlen Pickett, Kemely Pickett, Vivian Pickett and Kyshia Sutton have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 196.   THE APRIL 6, 2008 ATTACK – BAGHDAD

**The Scott Family**

3795.   Stephen K. Scott was a citizen of the United States and domiciled in the State of Alabama when he was killed in Iraq.

3796.   On April 6, 2008, Stephen K. Scott, aged 54, was serving in the United States military in Iraq when JAM Special Groups terror operatives attacked his unit.

3797.   Stephen K. Scott was killed in the attack.

3798.   The attack was perpetrated by JAM Special Groups terror operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

3799.   Plaintiff Rachel M. Gillette is a citizen of the United States and domiciled in the State of Missouri. She is the daughter of Stephen K. Scott.

3800.   Plaintiff Rebekah Scott is a citizen of the United States and domiciled in the State of Missouri. She is the daughter of Stephen K. Scott.

3801.   As a result of the attack, and the death of Stephen K. Scott, Plaintiffs Rachel M.

505

Gillette and Rebekah Scott have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their father's society, companionship, comfort, advice and counsel.

**The Wolfer Family**

3802.   Stuart Wolfer was a citizen of the United States and domiciled in the State of Idaho when he was killed in Iraq.

3803.   On April 6, 2008, Stuart Wolfer, aged 36, was serving in the United States military in Iraq when JAM Special Groups terror operatives attacked his unit.

3804.   Stuart Wolfer was killed as a result of injuries sustained in the attack.

3805.   The attack was perpetrated by JAM Special Groups terror operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

3806.   Plaintiff Lee Wolfer is a citizen of the United States and domiciled in the State of Iowa. She is the widow of Stuart Wolfer.

3807.   Plaintiff Lee Wolfer brings an action individually and on behalf of the Estate of Stuart Wolfer, as its legal representative.

3808.   Plaintiff L.W., a minor represented by her legal guardian, Lee Wolfer, is a citizen of the United States and domiciled in the State of Iowa. She is the daughter of Stuart Wolfer.

3809.   Plaintiff M.W., a minor represented by her legal guardian, Lee Wolfer, is a citizen of the United States and domiciled in the State of Iowa. She is the daughter of Stuart Wolfer.

3810.   Plaintiff I.W., a minor represented by her legal guardian, Lee Wolfer, is a citizen of the United States and domiciled in the State of Iowa. She is the daughter of Stuart Wolfer.

3811.   Plaintiff Beverly Wolfer is a citizen of the United States and domiciled in the State of New York. She is the sister of Stuart Wolfer.

3812.   As a result of the attack, and the death of Stuart Wolfer, Plaintiffs Lee Wolfer, L.W., M.W., I.W., and Beverly Wolfer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/husband's/father's/brother's society, companionship, comfort, advice and counsel.

### 197.   THE APRIL 7, 2008 ATTACK – BAGHDAD

**The Smith Family**

3813.   Timothy Smith was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

3814.   On April 7, 2008, Timothy Smith, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3815.   Timothy Smith was killed in the attack.

3816.   The weapon used to kill Timothy Smith was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3817.   Plaintiff Patricia Smith is a citizen of the United States and domiciled in the State of California. She is the mother of Timothy Smith.

3818.   Plaintiff Michael Smith is a citizen of the United States and domiciled in the State of Florida. He is the father of Timothy Smith.

3819.   Plaintiff Jacqueline A. Smith is a citizen of the United States and domiciled in the State of California. She is the sister of Timothy Smith.

3820.   Plaintiff Thomas Smith is a citizen of the United States and domiciled in the State of California. He is the brother of Timothy Smith.

3821.   As a result of the attack, and the death of Timothy Smith, Plaintiffs Patricia Smith,

Michael Smith, Jacqueline A. Smith and Thomas Smith have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 198. THE APRIL 7, 2008 ATTACK – BAGHDAD

#### The Vaughn Family

3822. Richard A. Vaughn was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

3823. On April 7, 2008, Richard A. Vaughn, aged 22, was serving in the U.S. military in Iraq when a vehicle in his unit, 1st Battalion, 66th Armor Regiment, 1st Brigade Combat Team, 4th Infantry Division, was struck by an EFP emplaced by Special Groups and Vaugh and his unit came under attack by RPGs and small arms fire.

3824. Richard A. Vaughn was killed in the attack.

3825. The weapon used in the attack that killed Richard A. Vaughn was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3826. Plaintiff Rachelle Idol is a citizen of the United States and domiciled in the State of North Carolina. She is the widow of Richard A. Vaughn.

3827. Plaintiff James Vaughn is a citizen of the United States and domiciled in the State of Arizona. He is the father of Richard A. Vaughn.

3828. Plaintiff Jeannine Vaughn is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Richard A. Vaughn.

3829. Plaintiff Clifford Vaughn is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Richard A. Vaughn.

3830. As a result of the attack, and the death of Richard A. Vaughn, Plaintiffs Rachelle Idol, James Vaughn, Jeannine Vaughn and Clifford Vaughn have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

### 199. THE APRIL 8, 2008 ATTACK – KHARGULIAH

**The Hartley Family**

3831. Jeffery Hartley was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3832. On April 8, 2008, Jeffery Hartley, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3833. Jeffery Hartley was killed in the attack.

3834. The weapon used to kill Jeffery Hartley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3835. Plaintiff David Hartley is a citizen of the United States and domiciled in the State of Texas. He is the father of Jeffery Hartley.

3836. Plaintiff David Hartley brings an action individually and on behalf of the Estate of Jeffery Hartley, as its legal representative.

3837. Plaintiff David Wayne Hartley is a citizen of the United States and domiciled in the State of Texas. He is the brother of Jeffrey Hartley.

3838. Plaintiff Kaylie Hartley is a citizen of the United States and domiciled in the State of Texas. She is the sister of Jeffery Hartley.

3839. Plaintiff Lisa Duncan is a citizen of the United States and domiciled in the State of

509

Texas. She is the sister of Jeffery Hartley.

3840.   As a result of the attack, and the death of Jeffery Hartley, Plaintiffs David Hartley David Wayne Hartley, Kaylie Hartley and Lisa Duncan have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**200.**   **THE APRIL 9, 2008 ATTACK – SADR CITY**

**The Ault Family**

3841.   Jesse A. Ault was a citizen of the United States and domiciled in the State of Virginia when he was killed in Iraq.

3842.   On April 9, 2008, Jesse A. Ault, aged 28, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3843.   Jesse A. Ault was killed in the attack.

3844.   The weapon used to kill Jesse A. Ault was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3845.   Plaintiff Virginia Billiter is a citizen of the United States and domiciled in the State of West Virginia. She is the mother of Jesse A. Ault.

3846.   Plaintiff Eric Billiter is a citizen of the United States and domiciled in the State of West Virginia. He is the step-father of Jesse A. Ault.

3847.   Plaintiff Adrianne Kidd is a citizen of the United States and domiciled in the State of North Carolina. She is the step-sister of Jesse A. Ault.

3848.   As a result of the attack, and the death of Jesse A. Ault, Plaintiffs Virginia Billiter, Eric Billiter and Adrianne Kidd have experienced severe mental anguish, extreme emotional pain

and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 201. THE APRIL 12, 2008 ATTACK

**The Swinton Family**

3849. Plaintiff Allen Swinton is a citizen of the United States and domiciled in the State of Georgia.

3850. On April 12, 2008, Allen Swinton, then 33, was serving in the U.S. military in Iraq.

3851. Mr. Swinton's unit was providing escort duties when his vehicle was struck by an EFP emplaced by Special Groups.

3852. The weapon used to injure Mr. Swinton was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3853. As a result of the explosion, Mr. Swinton's artery was severed; he lost a great amount of blood; multiple pieces of shrapnel entered his lower extremities; and his right hand was injured.

3854. Mr. Swinton underwent surgery to tie his artery; he also underwent multiple surgeries to remove shrapnel from his body.

3855. He has also undergone physical therapy to treat the injuries he sustained to his legs and hand.

3856. Mr. Swinton continues to experience pain in his lower extremities and will likely require additional treatment to address the remaining shrapnel in his body.

3857. As a result of the attack, and the injuries he suffered, Plaintiff Allen Swinton has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3858.   Plaintiff Temika Swinton is a citizen of the United States and domiciled in the State of Georgia. She is the wife of Allen Swinton.

3859.   Plaintiff T.S., a minor represented by her legal guardian Temika Swinton, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Allen Swinton and Temika Swinton.

3860.   Plaintiff T.S., a minor represented by her legal guardian Temika Swinton, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Allen Swinton and Temika Swinton.

3861.   Plaintiff T.B., a minor represented by her legal guardian Temika Swinton, is a citizen of the United States and domiciled in the State of Georgia. She is the daughter of Temika Swinton and the step-daughter of Allen Swinton.

3862.   Plaintiff Linda Pritchett is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Allen Swinton.

3863.   As a result of the attack, and the injuries Allen Swinton suffered, Plaintiffs Temika Swinton, T.S., T.S., T.B. and Linda Pritchett have experienced severe mental anguish and extreme emotional pain and suffering.

## 202.   THE APRIL 12, 2008 ATTACK – BAGHDAD

**The Allmon Family**

3864.   William E. Allmon was a citizen of the United States and domiciled in the State of Oklahoma when he was killed in Iraq.

3865.   On April 12, 2008, William E. Allmon, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3866.   William E. Allmon was killed in the attack.

512

3867.   The weapon used to kill William E. Allmon was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3868.   Plaintiff William Allmon is a citizen of the United States and domiciled in the State of Georgia. He is the father of William E. Allmon.

3869.   Plaintiff William Allmon brings an action individually and on behalf of the Estate of William E. Allmon, as its legal representative.

3870.   As a result of the attack, and the death of William E. Allmon, Plaintiff William Allmon has experienced severe mental anguish, extreme emotional pain and suffering and loss of his son's society, companionship, comfort, advice and counsel.

### 203.   THE APRIL 17, 2008 ATTACK – SADR CITY

**The Sloan Family**

3871.   Plaintiff Ronald Sloan is a citizen of the United States and domiciled in the State of Tennessee.

3872.   On April 17, 2008, Ronald Sloan, age 32, was serving in the U.S. military in Iraq.

3873.   Mr. Sloan was on patrol in Sadr City when the Abrams tank he was in was struck by an EFP emplaced by Special Groups.

3874.   The weapon used to injure Mr. Sloan was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3875.   As a result of the attack, Mr. Sloan was struck by shrapnel on the right side of his face and neck.

3876. He was medevaced to the 86th combat support hospital for treatment of his wounds. He was then sent to the Green Zone for further evaluation.

3877. Mr. Sloan also suffers from PTSD as a result of the attack.

3878. As a result of the attack, and the injuries he suffered, Plaintiff Ronald Sloan has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**204. THE APRIL 21, 2008 ATTACK – BASRA**

**The Vandegrift Family**

3879. Matthew R. Vandegrift was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

3880. On April 21, 2008, Matthew R. Vandegrift, aged 28, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3881. Matthew R. Vandegrift was killed in the attack.

3882. The weapon used to kill Matthew R. Vandegrift was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3883. Plaintiff Mary Jane Vandegrift is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Matthew R. Vandegrift.

3884. Plaintiff Mary Jane Vandegrift brings an action individually and on behalf of the Estate of Matthew R. Vandegrift, as its legal representative.

3885. John Vandegrift was a citizen of the United States at the time of the death of Matthew R. Vandegrift. He was the father of Matthew R. Vandegrift. John Vandegrift died on September 23, 2016.

3886. Plaintiff Mary Jane Vandegrift brings an action individually and on behalf of the

514

Estate of John Vandegrift, as its legal representative.

3887.   As a result of the attack, and the death of Matthew R. Vandegrift, the late John Vandegrift experienced, and Plaintiff Mary Jane Vandegrift has experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

### 205.   THE APRIL 21, 2008 ATTACK – SADR CITY

**The Thomsen Family**

3888.   Plaintiff Mark E. Thomsen is a citizen of the Unites States and domiciled in the State of Arkansas.

3889.   On April 21, 2008, Mark E. Thomsen was serving in the U.S. military in Iraq when his unit was attacked with an IRAM.

3890.   The attack was perpetrated by Hezbollah-trained and IRGC-QF-supplied operatives of the JAM and KH Special Groups acting as agents and proxies of Hezbollah and the IRGC-QF.

3891.   As a result of the attack, Mark E. Thomsen suffered a concussion. He also suffers from a TBI and PTSD.

3892.   As a result of the attack, and the injuries he suffered, Plaintiff Mark E. Thomsen has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3893.   Plaintiff Ardell Thomsen is a citizen of the United States and domiciled in the State of Arkansas. She is the mother of Mark E. Thomsen.

3894.   Plaintiff Ralph Thomsen is a citizen of the United States and domiciled in the State of Arkansas. He is the father of Mark E. Thomsen.

3895.   As a result of the attack, and the injuries suffered by Mark E. Thomsen, Plaintiffs Ardell Thomsen and Ralph Thomsen have experienced severe mental anguish, and extreme

emotional pain and suffering.

### 206.    THE APRIL 21, 2008 ATTACK – BAGHDAD

**The Bogart Family**

3896.    Plaintiff Evan D. Bogart is a citizen of the Unites States and domiciled in the State of Arizona.

3897.    On April 21, 2008, Evan Bogart was serving was serving in the U.S. military in Iraq.

3898.    Mr. Bogart was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3899.    The weapon used to injure Mr. Bogart was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3900.    As a result of the attack, Mr. Bogart sustained burns and blast injuries to his face as well as a shrapnel injury to his left shoulder. He also suffers from PTSD and tinnitus.

3901.    As a result of the attack, and the injuries he suffered, Plaintiff Evan D. Bogart has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3902.    Plaintiff Lani D. Bogart is a citizen of the Unites States and domiciled in the State of Arizona. She is the mother of Evan D. Bogart.

3903.    Plaintiff Douglas R. Bogart is a citizen of the Unites States and domiciled in the State of Arizona. He is the brother of Evan D. Bogart.

3904.    Plaintiff Christopher Bogart is a citizen of the Unites States and domiciled in the State of Arizona. He is the brother of Evan D. Bogart.

3905.   Plaintiff Cana Hickman is a citizen of the Unites States and domiciled in the State of Texas. She is the sister of Evan D. Bogart.

3906.   As a result of the attack, and the injuries suffered by Evan D. Bogart, Plaintiffs Lani D. Bogart, Douglas R. Bogart, Christopher Bogart and Cana Hickman have experienced severe mental anguish, and extreme emotional pain and suffering.

### 207.   THE APRIL 21, 2008 ATTACK – SADR CITY

**The Rosa-Valentin Family**

3907.   Plaintiff Luis Rosa-Valentin is a citizen of the United States and domiciled in the State of Maryland.

3908.   On April 21, 2008, Luis Rosa-Valentin, then 24, was serving in the U.S. military in Iraq.

3909.   Mr. Rosa-Valentin was on foot patrol in the Al Amin neighborhood of Baghdad when he was struck by an EFP emplaced by Special Groups.

3910.   The weapon used to injure Mr. Rosa-Valentin was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3911.   As a result of the attack, Mr. Rosa-Valentin lost both of his legs and his left arm. He also suffered blindness in one eye, lost his hearing, and broke every bone in his face.

3912.   He has also been diagnosed with a TBI and PTSD.

3913.   As a result of the attack, and the injuries he suffered, Plaintiff Luis Rosa-Valentin has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3914.   Plaintiff M.R., a minor represented by her legal guardian Luis Rosa-Valentin, is a citizen of the United States and domiciled in the State of Maryland. She is the daughter of Luis

Rosa-Valentin.

3915.   Plaintiff Iliana M. Rosa-Valentin is a citizen of the Unites States and domiciled in the State of Maryland. She is the sister of Luis Rosa Valentin.

3916.   As a result of the attack, and the injuries suffered by Luis Rosa-Valentin, Plaintiffs M.R. and Iliana M. Rosa-Valentin have experienced severe mental anguish, and extreme emotional pain and suffering.

### 208.   THE APRIL 28, 2008 ATTACK – BAGHDAD

**The Marion Family**

3917.   Adam L. Marion was a citizen of the Unites States and domiciled in the State of North Carolina when he was killed in Iraq.

3918.   On April 28, 2008, Adam L. Marion, aged 26, was serving in the U.S. military in Iraq when his unit was attacked with IRAMs by Hezbollah-trained and IRGC-QF-supplied operatives of the KH Special Groups acting as agents and proxies of Hezbollah and the IRGC-QF.

3919.   Adam L. Marion was killed in the attack.

3920.   Plaintiff Pam Marion is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Adam L. Marion.

3921.   Plaintiff Donnie Marion is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Adam L. Marion.

3922.   Plaintiff Adrian McCann is a citizen of the United States and domiciled in the State of North Carolina. She is the sister of Adam L. Marion.

3923.   As a result of the attack, and the death of Adam L. Marion, Plaintiffs Pam Marion, Donnie Marion and Adrian McCann have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and

counsel.

**The Stone Family**

3924.  Mark Stone was a citizen of the United States and domiciled in the State of Texas when he was killed in Iraq.

3925.  On April 28, 2008, Mark Stone, aged 22, was serving in the U.S. military in Iraq when his unit was attacked with IRAMs by Hezbollah-trained and IRGC-QF-supplied operatives of the KH Special Groups acting as agents and proxies of Hezbollah and the IRGC-QF.

3926.  Mark Stone was killed in the attack.

3927.  Plaintiff Don Jason Stone is a citizen of the United States and domiciled in the State of Texas. He is the brother of Mark Stone.

3928.  As a result of the attack, and the death of Mark Stone, Plaintiff Don Stone has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his brother's society, companionship, comfort, advice and counsel.

**The Sloan Family**

3929.  Plaintiff Ronald Sloan is a citizen of the United States and domiciled in the State of Tennessee.

3930.  On April 28, 2008, Ronald Sloan, age 32, was serving in the U.S. military in Iraq when his unit was attacked with IRAMs by Hezbollah-trained and IRGC-QF-supplied operatives of the KH Special Groups acting as agents and proxies of Hezbollah and the IRGC-QF.

3931.  As a result of the attack, Mr. Sloan was knocked unconscious. He also suffered ear pain and general discomfort.

3932.  Mr. Sloan has subsequently been diagnosed as suffering from a TBI and PTSD.

3933.  As a result of the attack, and the injuries he suffered, Plaintiff Ronald Sloan has

experienced severe physical and mental anguish and extreme emotional pain and suffering

### 209. THE APRIL 28, 2008 ATTACK – SADR CITY

**The Woodard Family**

3934.  Plaintiff David Woodard is a citizen of the United States and domiciled in the State of Georgia.

3935.  On April 28, 2008, David Woodard, then 34, was serving was serving in the U.S. military in Iraq.

3936.  Mr. Woodard was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3937.  The weapon used to injure Mr. Woodard was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3938.  As a result of the attack, a large fragment from the EFP struck Mr. Woodard's right leg and blew out four inches of his leg bone. Two large shrapnel fragments entered his left calf, removing approximately 25% of the calf muscle and another fragment entered near his Achilles tendon.

3939.  As a result of the attack, and the injuries he suffered, Plaintiff David Woodard has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3940.  Plaintiff D.M.W., a minor represented by his legal guardian David Woodard, is a citizen of the United States and domiciled in the State of Georgia. He is the son of David Woodard.

3941.  As a result of the attack, and the injuries suffered by David Woodard, Plaintiff D.W.M. has experienced severe mental anguish, and extreme emotional pain and suffering.

### 210.     THE APRIL 28, 2008 ATTACK – SADR CITY

**The Magers Family**

3942.   Plaintiff Adam Magers is a citizen of the United States and domiciled in the State of Missouri.

3943.   On April 28, 2008, Adam Magers was serving was serving in the U.S. military in Iraq and was at Joint Security Station Thawra in Sadr City when it was attacked with IRAMs by Hezbollah-trained and IRGC-QF-supplied operatives of the KH Special Groups acting as agents and proxies of Hezbollah and the IRGC-QF.

3944.   As a result of the attack, Mr. Magers suffered lacerations on his left arm, hands, right ear and small cuts on the back of his neck. He also sustained injuries to his shoulder which ultimately required surgery

3945.   As a result of the attack, and the injuries he suffered, Plaintiff Adam Magers has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 211.     THE APRIL 29, 2008 ATTACK – BAGHDAD

**The Kaplan Family**

3946.   Plaintiff Preston Charles Kaplan is a citizen of the United States and domiciled in the State of Texas.

3947.   On April 28, 2008, Preston Charles Kaplan, then 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle. He was the turret gunner in an M1114 up-armored Humvee that was hit with an EFP on the front passenger-side door while traveling in the Kadhimiya neighborhood of Baghdad.

3948.   The weapon used to injure Preston Charles Kaplan was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3949.   As a result of the attack, Preston Charles Kaplan sustained a penetrating wound to his right leg including blast injuries to his tibial shaft. Shrapnel lacerated his popliteal artery and injured his peroneal nerve. He also sustained a TBI, bilateral hearing loss, tinnitus, scarring, sleep apnea, GERD, and PTSD. After numerous attempts to save his right leg below the knee, he underwent a below-the-knee amputation 19 months after the attack and suffered additional infections following the amputations that required significant additional surgeries.

3950.   Mr. Kaplan has received extensive medical treatment at various hospitals including various surgeries and prosthetic fittings where he has spent years in treatment.

3951.   As a result of the attack, and the injuries he suffered, Preston Charles Kaplan has experienced severe physical and mental anguish and extreme emotional pain and suffering.

3952.   Plaintiff Nicole A. Kaplan is a citizen of the United States and domiciled in the State of Texas. She is the wife of Preston Charles Kaplan.

3953.   Plaintiff Noni Kaplan is a citizen of the United States and domiciled in the State of California. She is the mother of Preston Charles Kaplan.

3954.   Plaintiff David Kaplan is a citizen of the United States and domiciled in the State of California. He is the father of Preston Charles Kaplan.

3955.   Plaintiff Jaime Zarcone is a citizen of the United States and domiciled in the State of California. She is the sister of Preston Charles Kaplan.

3956.   Plaintiff Jessalyn Holt is a citizen of the United States and domiciled in the State of California. She is the sister of Preston Charles Kaplan.

3957.   As a result of the attack, and the injuries Preston Charles Kaplan suffered, Plaintiffs Nicole A. Kaplan, Noni Kaplan, David Kaplan, Jaime Zarcone, and Jessalyn Holt have experienced severe mental anguish and extreme emotional pain and suffering.

### 212.   THE APRIL 29, 2008 ATTACK – SADR CITY

**The Garza Family**

3958.   Plaintiff Luis Garza is a citizen of the United States and domiciled in the State of Florida.

3959.   On April 29, 2008, Luis Garza, then 22, was serving was serving in the U.S. military in Iraq.

3960.   Mr. Garza was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

3961.   The weapon used to injure Mr. Garza was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3962.   As a result of the attack, Mr. Garza suffered shrapnel injuries to his face. He also suffers from PTSD and sleep apnea. Eventually, part of his kidney had to be removed as a result of the wounds he suffered.

3963.   As a result of the attack, and the injuries he suffered, Plaintiff Luis Garza has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 213.   THE APRIL 30, 2008 ATTACK – BAGHDAD

**The Tucker Family**

3964.   Ronald J. Tucker was a citizen of the Unites States and domiciled in the State of Colorado when he was killed in Iraq.

3965.   On April 30, 2008, Ronald J. Tucker, aged 21, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his HMMWV in Baghdad.

3966.   Ronald J. Tucker was killed in the attack.

3967.   The weapon used to kill Ronald J. Tucker was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3968.   Plaintiff Susan Arnold is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Ronald J. Tucker.

3969.   Plaintiff Susan Arnold brings an action individually and on behalf of the Estate of Ronald J. Tucker, as its legal representative.

3970.   Plaintiff David Arnold is a citizen of the United States and domiciled in the State of Colorado. He is the step-father of Ronald J. Tucker.

3971.   Plaintiff Samantha Tucker is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Ronald J. Tucker.

3972.   Plaintiff Brandon Arnold is a citizen of the United States and domiciled in the State of Colorado. He is the brother of Ronald J. Tucker.

3973.   Plaintiff Daisy Tucker is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Ronald J. Tucker.

3974.   As a result of the attack, and the death of Ronald J. Tucker, Plaintiffs Susan Arnold, David Arnold, Samantha Tucker, Brandon Arnold and Daisy Tucker have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 214.   THE MAY 1, 2008 ATTACK – SADR CITY

**The Daggett Family**

3975.   John K. Daggett was a citizen of the United States and domiciled in the State of Arizona when he was injured in Iraq.

3976.   On May 1, 2008, John K. Daggett, aged 21, was serving in the U.S. military in Iraq when a rocket propelled grenade fired by a JAM Special Groups terror operative hit the vehicle in which he was travelling.

3977.   John K. Daggett was injured in the attack, and he died on May 15, 2008 from the injuries he sustained in the attack.

3978.   John K. Daggett was killed in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

3979.   Plaintiff John Daggett is a citizen of the United States and domiciled in the State of Arizona. He is the father of John K. Daggett.

3980.   Plaintiff Colleen Czaplicki is a citizen of the United States and domiciled in the State of Arizona. She is the mother of John K. Daggett.

3981.   As a result of the attack, and the death of John K. Daggett, Plaintiffs John Daggett and Colleen Czaplicki have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

### 215.   THE MAY 2, 2008 ATTACK – BAGHDAD

**The Hicks Family**

3982.   Corey L. Hicks was a citizen of the United States and domiciled in the State of Arizona when he was killed in Iraq.

3983.   On May 2, 2008, Corey L. Hicks, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3984.   Corey L. Hicks was killed in the attack.

3985.   The weapon used to kill Corey L. Hicks was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3986.   Plaintiff Russel Hicks, Sr. is a citizen of the United States and domiciled in the State of Wyoming. He is the father of Corey L. Hicks.

3987.   Plaintiff Russel Hicks, Jr. is a citizen of the United States and domiciled in the State of Arizona. He is the brother of Corey L. Hicks.

3988.   As a result of the attack, and the death of Corey L. Hicks, Plaintiffs Russel Hicks, Sr. and Russel Hicks, Jr. have experienced severe mental anguish, extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 216.   THE MAY 9, 2008 ATTACK – BAGHDAD

**The Williamson Family**

3989.   Plaintiff Wesley Williamson is a citizen of the United States and domiciled in the State of Texas.

3990.   On May 9, 2008, Wesley Williamson, then 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

3991.   The weapon used to injure Mr. Williamson was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

3992.   As a result of the attack, Mr. Williamson's right ulna and radius were completely

shattered, and his posterior interosseous nerve was severed.

3993.  Shrapnel also penetrated his body.

3994.  Mr. Williamson received medical treatment in Iraq, Germany, Washington D.C., and Brooke Army Medical Center in San Antonio, Texas.

3995.  He has undergone multiple procedures to stabilize his condition and address his injuries.

3996.  In an attempt to regain functionality of his right arm and hand, Mr. Williamson underwent multiple surgeries.

3997.  These surgeries included the installation of plates and 16 screws in his right arm and tendon transfer surgery.

3998.  Mr. Williamson underwent occupational therapy for approximately 18 months. During that time, he was prescribed medications to manage the pain that he experienced.

3999.  The injury to his hand has resulted in a loss of dexterity to his fingers. This has forced Mr. Williamson to re-learn simple everyday tasks such as typing.

4000.  He experiences pain and limitations of movement daily.

4001.  Mr. Williamson has suffered memory loss since the attack and has difficulty recalling information.

4002.  He has been diagnosed with PTSD and a TBI, and has sought counseling and been prescribed medication to treat those conditions.

4003.  As a result of the attack, and the injuries he suffered, Plaintiff Wesley Williamson has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4004.  Plaintiff Jesse Williamson is a citizen of the United States and domiciled in the State of New Mexico. He is the brother of Wesley Williamson.

4005.    As a result of the attack, and the injuries Wesley Williamson has suffered, Plaintiff Jesse Williamson has experienced severe mental anguish, and extreme emotional pain and suffering.

### 217.    THE MAY 9, 2008 ATTACK – SADR CITY

**The Garza Family**

4006.    Plaintiff Luis Garza is a citizen of the United States and domiciled in the State of Florida.

4007.    On May 9, 2008, Luis Garza, then 22, was serving was serving in the U.S. military in Iraq.

4008.    Mr. Garza was in a convoy when an EFP emplaced by Special Groups struck his vehicle.

4009.    The weapon used to injure Mr. Garza was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4010.    As a result of the attack, Mr. Garza suffered shrapnel injuries to his face. He also suffers from PTSD and sleep apnea. Eventually, part of his kidney had to be removed as a result of the wounds he suffered.

4011.    As a result of the attack, and the injuries he suffered, Plaintiff Luis Garza has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 218.    THE MAY 9, 2008 ATTACK – SADR CITY

**The Magers Family**

4012.    Plaintiff Adam Magers is a citizen of the United States and domiciled in the State of Missouri.

4013.   On May 9, 2008, Adam Magers was serving was serving in the U.S. military in Iraq.

4014.   Mr. Magers was in a convoy when four separate EFPs emplaced by Special Groups struck the convoy in which he was traveling.

4015.   The weapon used to injure Mr. Magers was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4016.   As a result of the attack, Mr. Magers suffers from a TBI.

4017.   As a result of the attack, and the injuries he suffered, Plaintiff Adam Magers has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 219.   THE MAY 11, 2008 ATTACK – BAGHDAD

**The O'Neill Family**

4018.   Plaintiff Patrick O'Neill is a citizen of the United States and domiciled in the State of Virginia.

4019.   On May 11, 2008, Patrick O'Neill, then 18, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4020.   Patrick O'Neill was injured in the attack.

4021.   The weapon used to injure Patrick O'Neill was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4022.   As a result of the attack, Patrick O'Neill was rendered unconscious.

4023.   He had sustained shrapnel in his back, buttock, and right shoulder and had also suffered injuries to his neck and face.

4024.   His shoulder had been fractured and his right ear was severed in multiple places.

4025.   Shrapnel had also pierced through Mr. O'Neill's body, causing his right lung to collapse.

4026.   He continues to experience pain in his chest and shoulder.

4027.   Mr. O'Neill was diagnosed with PTSD and has sought counseling. He continues to have nightmares stemming from the attack.

4028.   As a result of the attack, and the injuries he suffered, Plaintiff Patrick O'Neill has experienced physical and mental anguish and extreme emotional pain and suffering.

4029.   Plaintiff John O'Neill is a citizen of the United States and domiciled in the State of Virginia. He is the father of Patrick O'Neill.

4030.   Plaintiff Dianne O'Neill is a citizen of the United States and domiciled in the State of Virginia. She is the mother of Patrick O'Neill.

4031.   As a result of the attack, and the injuries Patrick O'Neill has suffered, Plaintiffs John O'Neill and Dianne O'Neill have experienced severe mental anguish, and extreme emotional pain and suffering.

**220.   THE MAY 11, 2008 ATTACK – BALAD**

**The Luckett Family**

4032.   Plaintiff Daniel Luckett is a citizen of the United States and domiciled in the State of Kentucky.

4033.   On May 11, 2008, Daniel Luckett, then 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4034.   The weapon used to injure Daniel Luckett was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

4035. As a result of the attack, Daniel Luckett's left foot was sheared off above the ankle and his right foot was cut off above the toes.

4036. As a result of the attack, and the injuries he suffered, Plaintiff Daniel Luckett has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 221. THE MAY 25, 2008 ATTACK – AN-NAJAF

### The Gasper Family

4037. Frank J. Gasper was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

4038. On May 25, 2008, Frank J. Gasper, aged 25, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling in Najaf.

4039. Frank J. Gasper was killed in the attack.

4040. The weapon used to kill Frank J. Gasper was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4041. Plaintiff Breanna Lynn Gasper is a citizen of the United States and domiciled in the State of Georgia. She is the widow of Frank J. Gasper.

4042. Plaintiff Breanna Lynn Gasper brings an action individually and on behalf of the Estate of Frank J. Gasper, as its legal representative.

4043. Plaintiff Jamie Barnes is a citizen of the United States and domiciled in the State of California. She is the sister of Frank J. Gasper.

4044.   As a result of the attack, and the death of Frank J. Gasper, Plaintiffs Breanna Lynn Gasper and Jamie Barnes have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/brother's society, companionship, comfort, advice and counsel.

## 222.   THE JUNE 7, 2008 ATTACK – BAGHDAD

**The Hurst Family**

4045.   David R. Hurst was a citizen of the United States and domiciled in the State of Louisiana when he was killed in Iraq.

4046.   On June 7, 2008, David R. Hurst, aged 31, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4047.   David R. Hurst was killed in the attack.

4048.   The weapon used to kill David R. Hurst was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4049.   Plaintiff Max W. Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the father of David R. Hurst.

4050.   Plaintiff Max W. Hurst brings an action individually and on behalf of the Estate of David R. Hurst, as its legal representative.

4051.   Plaintiff Lillian Hurst is a citizen of the United States and domiciled in the State of Louisiana. She is the step-mother of David R. Hurst.

4052.   Plaintiff Christopher Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the brother of David R. Hurst.

4053.   Plaintiff Mark Hurst is a citizen of the United States and domiciled in the State of Louisiana. He is the brother of David R. Hurst.

4054.   As a result of the attack, and the death of David R. Hurst, Plaintiffs Max W. Hurst, Lillian Hurst, Christopher Hurst and Mark Hurst have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 223.   THE JUNE 24, 2008 ATTACK - BAGHDAD

**The Farley Family**

4055.   Steven L. Farley was a citizen of the United States and domiciled in the State of Oklahoma when he was killed in Iraq.

4056.   Steven L. Farley worked in Iraq under the auspices of the U.S. Department of State as a member of a Provincial Reconstruction Team ("PRT") in eastern Baghdad in 2008.

4057.   On June 24, 2008, a JAM-Special Groups cell executed a sophisticated assassination bombing in a local government office in Sadr City that targeted Americans and local government officials who were not Sadr followers. The bomb killed eleven people, including Mr. Farley and three other Americans.

4058.   The attack was perpetrated by JAM Special Groups operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

4059.   Plaintiff Donna Farley is a citizen of the United States and domiciled in the State of Oklahoma. She is the widow of Steven Farley.

4060.   Plaintiff Noel J. Farley, Sr. is a citizen of the United States and domiciled in the State of Oklahoma. He is the father of Steven Farley.

4061.  Plaintiff Barbara Farley is a citizen of the United States and domiciled in the State of Oklahoma. She is the mother of Steven Farley.

4062.  Plaintiff Brett Farley is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Steven Farley.

4063.  Plaintiff Cameron Farley is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Steven Farley.

4064.  Plaintiff Chris Farley is a citizen of the United States and domiciled in the State of Oklahoma. He is the son of Steven Farley.

4065.  Plaintiff Vickie McHone is a citizen of the United States and domiciled in the State of Oklahoma. She is the sister of Steven Farley.

4066.  Plaintiff Noel S. Farley is a citizen of the United States and domiciled in the State of Oklahoma. He is the brother of Steven Farley.

4067.  As a result of the June 24, 2008 attack, and the death of Steven Farley, Plaintiffs Donna Farley, Noel J. Farley, Sr., Barbara Farley, Brett Farley, Jessica Farley, Cameron Farley, Chris Farley, Vickie McHone and Noel S. Farley have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Suveges Family**

4068.  Nicole Suveges was a citizen of the United States and domiciled in the State of Illinois when she was killed in Iraq.

4069.  Nicole Suveges was a political scientist who worked for BAE Systems in the Human Terrain System (HTS) program in eastern Bagdad in 2008. The HTS program was designed to promote cultural understanding between U.S. military and Iraqis.

534

4070. On June 24, 2008, a JAM-Special Groups cell executed a sophisticated assassination bombing in a local government office in Sadr City that targeted Americans and local government officials who were not Sadr followers. The bomb killed eleven people, including Ms. Suveges and three other Americans.

4071. The attack was perpetrated by JAM Special Groups operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

4072. Plaintiff David C. Iverson is a citizen of the United States and domiciled in the State of Maryland. He is the widower of Nicole Suveges.

4073. As a result of the attack, and the death of Nicole Suveges, Plaintiff David C. Iverson has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his wife's society, companionship, comfort, advice and counsel.

### 224.  THE AUGUST 4, 2008 ATTACK – BAGHDAD

**The Menke Family**

4074. Jonathan D. Menke was a citizen of the United States and domiciled in the State of Indiana when he was killed in Iraq.

4075. On August 4, 2008, Jonathan D. Menke, aged 22, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4076. Jonathan D. Menke was killed in the attack.

4077. The weapon used to kill Jonathan D. Menke was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4078. Plaintiff Daniel Menke is a citizen of the United States and domiciled in the State

of Indiana. He is the father of Jonathan D. Menke.

4079. Plaintiff Daniel Menke brings an action individually and on behalf of the Estate of Jonathan D. Menke, as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

4080. Plaintiff Paula Menke is a citizen of the United States and domiciled in the State of Indiana. She is the step-mother of Jonathan D. Menke.

4081. Plaintiff Matthew Menke is a citizen of the United States and domiciled in the State of Indiana. He is the step-brother of Jonathan D. Menke.

4082. Plaintiff Nichole Lohrig is a citizen of the United States and domiciled in the State of Indiana. She is the sister of Jonathan D. Menke.

4083. As a result of the attack, and the death of Jonathan D. Menke, Plaintiffs Daniel Menke, Paula Menke, Matthew Menke and Nichole Lohrig have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 225. THE AUGUST 13, 2008 ATTACK – BAGHDAD

**The Hale Family**

4084. James M. Hale was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

4085. On August 13, 2008, James M. Hale, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4086. James M. Hale was killed in the attack.

4087. The weapon used to kill James M. Hale was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using

specialized training and components supplied by Hezbollah and the IRGC.

4088.   Plaintiff Jessica H. Williams is a citizen of the United States and domiciled in the State of Texas. She is the widow of James M. Hale.

4089.   Plaintiff Jessica H. Williams brings an action individually and on behalf of the Estate of James M. Hale, as its legal representative.

4090.   Plaintiff J.M.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

4091.   Plaintiff J.J.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

4092.   Plaintiff J.H., a minor represented by his legal guardian, Jessica H. Williams, is a citizen of the United States and domiciled in the State of Texas. He is the son of James M. Hale.

4093.   As a result of the attack, and the death of James M. Hale, Plaintiffs Jessica H. Williams, J.M.H., J.J.H. and J.H. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

### 226.   THE AUGUST 26, 2008 ATTACK – SADR CITY

**The Alfonso Family**

4094.   Carlo E. Alfonso was domiciled in the State of Washington when he was killed in Iraq.

4095.   On August 26, 2008, Carlo E. Alfonso, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4096.   Carlo E. Alfonso was killed in the attack.

4097.   The weapon used to kill Carlo E. Alfonso was a Hezbollah-designed and Iranian-

manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4098. Plaintiff Rosemarie Alfonso is a citizen of the United States and domiciled in the State of Washington. She is the widow of Carlo E. Alfonso.

4099. Plaintiff K.B., a minor represented by his legal guardian Rosemarie Alfonso, is a citizen of the United States and domiciled in the State of Washington. He is the son of Carlo E. Alfonso.

4100. As a result of the attack, and the death of Carlo E. Alfonso, Plaintiffs Rosemarie Alfonso and K.B. have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's society, companionship, comfort, advice and counsel.

**The Latham Family**

4101. Plaintiff Tyler Latham is a citizen of the United States and domiciled in the State of Michigan.

4102. On August 26, 2008, Tyler Latham, age 22, was serving in the U.S. military in Iraq, when his vehicle was struck by an EFP emplaced by Special Groups.

4103. The weapon used to injure Tyler Latham was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4104. As a result of the attack, Mr. Latham sustained significant injuries to his left hand. This required complex surgery to reconnect tendons and ligaments in that hand.

4105. The damage to his hand has necessitated extensive physical therapy.

4106. He also sustained significant injuries due to the impact of multiple pieces of shrapnel in his face, legs, and arm. This necessitated surgery and treatment.

4107.   He continues to experience limitations in strength and mobility of his left hand.

4108.   He suffers with chronic pain in his left hand and arm.

4109.   In addition, Mr. Latham has been diagnosed with a TBI.

4110.   As a result of the attack, and the injuries he suffered, Plaintiff Tyler Latham has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 227.   THE SEPTEMBER 4, 2008 ATTACK – BAGHDAD

**The Mayne Family**

4111.   Kennith W. Mayne was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

4112.   On September 4, 2008, Kennith W. Mayne, aged 29, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4113.   Kennith W. Mayne was killed in the attack.

4114.   The weapon used to kill Kennith W. Mayne was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4115.   Plaintiff Michelle Benavidez is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Kennith W. Mayne.

4116.   Plaintiff Michelle Benavidez brings an action individually and on behalf of the Estate of Kennith W. Mayne, as its legal representative.

4117.   Plaintiff Daniel Benavidez is a citizen of the United States and domiciled in the State of Colorado. He is the step-father of Kennith W. Mayne.

4118.   Plaintiff Christina Biederman is a citizen of the United States and domiciled in the State of Colorado. She is the sister of Kennith W. Mayne.

4119.   Plaintiff Daniel Benavidez, Jr. is a citizen of the United States and domiciled in the State of Colorado. He is the brother of Kennith W. Mayne.

4120.   Plaintiff Jennifer Morman is a citizen of the United States and domiciled in the State of Colorado. She is the sister of Kennith W. Mayne.

4121.   As a result of the attack, and the death of Kennith W. Mayne, Plaintiffs Michelle Benavidez, Daniel Benavidez, Christina Biederman, Daniel Benavidez, Jr. and Jennifer Morman have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Miller Family**

4122.   Plaintiff Christopher Miller is a citizen of the United States and domiciled in the State of Ohio.

4123.   On September 4, 2008, Christopher Miller, then 19, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4124.   The weapon used to injure Christopher Miller was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC

4125.   As a result of the attack, Mr. Miller lost part of his right leg, rendering him a below-the-knee amputee.

4126.   He also lost part of his left leg.

4127.   Mr. Miller developed gangrene in both his leg and foot, necessitating multiple medical procedures.

4128.   During part of his treatment, he was placed in a medically-induced coma.

4129.   Mr. Miller has received physical therapy.

4130.   He has also received counseling for his emotional injuries.

4131.   As a result of the attack, and the injuries he suffered, Plaintiff Christopher Miller has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 228.   THE OCTOBER 5, 2008 ATTACK – MUSAYYIB

**The Bearfield Family**

4132.   Plaintiff Bryant Bearfield is a citizen of the United States and domiciled in the State of New York.

4133.   On October 5, 2008, Bryant Bearfield, then 23, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near the vehicle in which he was traveling on Route Cleveland.

4134.   The weapon used to injure Bryant Bearfield was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4135.   As a result of the blast, Bryant Bearfield suffered shrapnel wounds to his head, and a concussion. Mr. Bearfield was also diagnosed with anxiety as a result of the attack.

4136.   As a result of the attack, and the injuries he suffered, Plaintiff Bryant Bearfield has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 229.   THE OCTOBER 16, 2008 ATTACK – BAQUBAH

**The Eggleston Family**

4137.   Cody J. Eggleston was a citizen of the United States and domiciled in the State of Oregon when he was injured in Diyala Province, Iraq and subsequently died as a result of those injuries.

4138.   On October 16, 2008, Cody J. Eggleston, aged 21, was serving in the U.S. military

541

when he was involved in a 107mm rocket attack perpetrated by JAM Special Groups.

4139.   Cody J. Eggleston was fatally injured in the attack and died on October 24, 2008 from the injuries he sustained in the attack.

4140.   The attack was perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

4141.   Plaintiff Angeline (Angie) Jackson is a citizen of the United States and domiciled in the State of Oregon. She is the mother of Cody J. Eggleston.

4142.   Plaintiff Kaytrina Jackson is a citizen of the United States and domiciled in the State of Oregon. She is the sister of Cody J. Eggleston.

4143.   Plaintiff Shilyn Jackson is a citizen of the United States and domiciled in the State of Oregon. She is the sister of Cody J. Eggleston.

4144.   As a result of the attack, and the death of Cody J. Eggleston, Plaintiffs Angie Jackson, Kaytrina Jackson and Shilyn Jackson have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 230.   THE DECEMBER 28, 2008 ATTACK – SADR CITY

**The Gonzales Family**

4145.   Tony J. Gonzales was a citizen of the United States and domiciled in the State of California when he was killed in Iraq.

4146.   On December 28, 2008, Tony J. Gonzales, aged 20, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4147.   Tony J. Gonzales was killed in the attack.

4148.   The weapon used to kill Tony J. Gonzales was a Hezbollah-designed and Iranian-

manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4149.   Plaintiff Tony Gonzales is a citizen of the United States and domiciled in the State of Texas. He is the father of Tony J. Gonzales.

4150.   Plaintiff Marlynn Gonzales is a citizen of the United States and domiciled in the State of Texas. She is the mother of Tony J. Gonzales.

4151.   Plaintiff Tamara Runzel is a citizen of the United States and domiciled in the State of California. She is the sister of Tony J. Gonzales.

4152.   Plaintiff Megan People is a citizen of the United States and domiciled in the State of California. She is the sister of Tony J. Gonzales.

4153.   Plaintiff Shaula Shaffer is a citizen of the United States and domiciled in the State of Texas. She is the sister of Tony J. Gonzales.

4154.   As a result of the attack, and the death of Tony J. Gonzales, Plaintiffs Tony Gonzales, Marlynn Gonzales, Tamara Runzel, Megan People, and Shaula Shaffer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 231.   THE DECEMBER 28, 2008 ATTACK – SADR CITY

**The Paul Family**

4155.   Plaintiff Carllie Paul is a citizen of the United States and domiciled in the State of Florida.

4156.   On December 28, 2008, Carllie Paul, then 22, was serving in the U.S. military in Iraq when his M1151 vehicle was attacked with grenades and small arms fire by JAM Special Groups terror operatives.

4157. Carllie Paul was injurd in the attack perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

4158. As a result of the attack, Carllie Paul sustained burns to both of his arms resulting in lasting scars and injuries to his back. He was airlifted to Landstuhl, Germany where he stayed for approximately two weeks after which he was transferred to Fort Bliss, Texas. He also suffered from severe PTSD. He has difficulty sleeping, experiences nightmares, and suffers from depression, anxiety, and suicidal ideation.

4159. As a result of the attack, and the injuries he suffered, Carllie Paul has experienced severe physical and mental anguish and extreme emotional pain and suffering.

## 232. THE JANUARY 10, 2009 ATTACK – BAGHDAD

**The Bauer Family**

4160. Justin Bauer was a citizen of the United States and domiciled in the State of Colorado when he was killed in Iraq.

4161. On January 10, 2009, Justin Bauer, aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4162. Justin Bauer was killed in the attack.

4163. The weapon used to kill Justin Bauer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4164. Plaintiff Kari Carosella is a citizen of the United States and domiciled in the State of Colorado. She is the widow of Justin Bauer.

4165. Plaintiff Kari Carosella brings an action individually and on behalf of the Estate of Justin Bauer, as its legal representative, for his death and any suffering and/ or economic loss

he/his Estate sustained as a result of the attack.

4166.   Plaintiff Gregory Bauer is a citizen of the United States and domiciled in the State of New Mexico. He is the father of Justin Bauer.

4167.   Plaintiff Connie Haddock is a citizen of the United States and domiciled in the State of Colorado. She is the mother of Justin Bauer.

4168.   Plaintiff Jacob Bauer is a citizen of the United States and domiciled in the State of Colorado. He is the brother of Justin Bauer.

4169.   Plaintiff Jeremy Bauer is a citizen of the United States and domiciled in the State of Colorado Mexico. He is the brother of Justin Bauer.

4170.   As a result of the attack, and the death of Justin Bauer, Plaintiffs Kari Carosella, Gregory Bauer, Connie Haddock, Jacob Bauer and Jeremy Bauer have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Bradley Family**

4171.   Plaintiff Andrew Bradley is a citizen of the United States and domiciled in the State of Texas.

4172.   On January 10, 2009, Andrew Bradley, then 20, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

4173.   The weapon used to injure Andrew Bradley was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4174.   As a result of the attack, Mr. Bradley lost part of his right leg, rendering him a below-the-knee amputee.

4175.   He also sustained burns on his left foot and has experienced nerve damage in that foot.

4176.   Apart from treatment in Iraq and Germany, Mr. Bradley received in-patient treatment at Brooke Army Medical Center for over one year.

4177.   Surgeons performed bone reconstruction to retain as much of his joint area as possible.

4178.   He also underwent multiple procedures to address infections in his wounds.

4179.   He has received physical therapy and has been prescribed medications to address pain resulting from his injuries.

4180.   Mr. Bradley has also required treatment for medical conditions that developed from issues involving his prosthetics.

4181.   Mr. Bradley continues to experience pain and emotional distress each day, and he receives treatment for his injuries as necessary.

4182.   As a result of the attack, and the injuries he suffered, Plaintiff Andrew Bradley has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4183.   Plaintiff Julie Salhus is a citizen of the United States and domiciled in the State of Texas. She is the mother of Andrew Bradley.

4184.   Plaintiff Kristen Galen is a citizen of the United States and domiciled in the State of Texas. She is the sister of Andrew Bradley.

4185.   As a result of the attack, and the injuries Andrew Bradley suffered, Plaintiffs Julie Salhus and Kristen Galen have experienced severe mental anguish and extreme emotional pain and suffering.

**The Ward Family**

4186.   Plaintiff Patrick Ward is a citizen of the United States and domiciled in the State of Pennsylvania.

4187.   On January 10, 2009, Patrick Ward, then aged 36, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

4188.   Mr. Ward was an occupant in the third vehicle traveling in a four-vehicle convoy, when the lead vehicle was hit by an EFP.

4189.   The EFP used to injure Patrick Ward was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC

4190.   After the EFP impacted the lead vehicle. Mr. Ward got out of is vehicle and went to check on the occupants of the lead vehicle. He observed that the back of Justin Bauer's legs had been blown off and that he appeared to be dead. He assisted the medic in extricating Andrew Bradley, whose right leg had been severed, out of the HMMWV.

4191.   Following the explosion of the EFP, the convoy was attacked by a sniper on a nearby roof.

4192.   As a result of the attack, Mr. Ward was diagnosed with PTSD. He sought counseling once he came back to the U.S.

4193.   As a result of the attack, Plaintiff Patrick Ward has experienced severe mental anguish and extreme emotional pain and suffering.

4194.   Plaintiff Jarrett Ward is a citizen of the United States and domiciled in the State of Pennsylvania. He is the son of Patrick Ward.

547

4195.   As a result of the attack, and the injuries Patrick Ward suffered, Plaintiff Jarrett Ward has experienced severe mental anguish and extreme emotional pain and suffering.

### 233.   THE JANUARY 18, 2009 ATTACK – BAGHDAD

**The Andrade Family**

4196.   Roberto Andrade, Jr. was a citizen of the United States and domiciled in the State of Illinois when he was killed in Iraq.

4197.   On January 18, 2009, Roberto Andrade, Jr., aged 26, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4198.   Roberto Andrade, Jr. was killed in the attack.

4199.   The weapon used to kill Roberto Andrade, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4200.   Plaintiff Roberto Andrade, Sr. is a citizen of the United States and domiciled in the State of Arizona. He is the father of Roberto Andrade, Jr.

4201.   Plaintiff Roberto Andrade, Sr. brings an action individually and on behalf of the Estate of Roberto Andrade, Jr., as its legal representative, for his death and any suffering and/ or economic loss he/his Estate sustained as a result of the attack.

4202.   Plaintiff Veronica Pena Andrade is a citizen of the United States and domiciled in the State of Arizona. She is the step-mother of Roberto Andrade, Jr.

4203.   Plaintiff Sandra Valencia is a citizen of the United States and domiciled in the State of Arizona. She is the mother of Roberto Andrade, Jr.

4204.   Plaintiff Angelica Andrade is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Roberto Andrade, Jr.

4205.   Plaintiff Veronica Denisse Andrade is a citizen of the United States and domiciled in the State of Arizona. She is the sister of Roberto Andrade, Jr.

4206.   As a result of the attack, and the death of Roberto Andrade, Jr., Plaintiffs Roberto Andrade, Sr., Veronica Pena Andrade, Sandra Valencia, Angelica Andrade, and Veronica Denisse Andrade have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 234.   THE FEBRUARY 26, 2009 ATTACK – ADHAMIYAH

**The Connelly Family**

4207.   Brian Connelly was a citizen of the United States and domiciled in the State of New Jersey when he was killed in Iraq.

4208.   On February 26, 2009, Brian Connelly, aged 26, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle in the Adhamiyah District in eastern Baghdad.

4209.   Brian Connelly was killed in the attack.

4210.   The weapon used to kill Brian Connelly was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4211.   Plaintiff Kara Connelly is a citizen of the United States and domiciled in the State of New Jersey. She is the widow of Brian Connelly.

4212.   Plaintiff Jean Dammann is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Brian Connelly.

4213.   Plaintiff Mark Dammann is a citizen of the United States and domiciled in the State of Ohio. He is the father of Brian Connelly.

4214.   Plaintiff Kevin Connelly is a citizen of the United States and domiciled in the State of New Jersey. He is the brother of Brian Connelly.

4215.   As a result of the attack, and the death of Brian Connelly, Plaintiffs Kara Connelly, Jean Dammann, Mark Dammann and Kevin Connelly have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

## 235.   THE APRIL 22, 2009 ATTACK – BAGHDAD

### The Davis Family

4216.   Brad A. Davis was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

4217.   On April 22, 2009, Brad A. Davis, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4218.   Brad A. Davis was killed in the attack.

4219.   The weapon used to kill Brad A. Davis was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4220.   Plaintiff Theresa Davis is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Brad A. Davis.

4221.   As a result of the attack, and the death of Brad A. Davis, Plaintiff Theresa Davis has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

236.   **THE MAY 16, 2009 ATTACK – BASRA**

**The Schaefer Family**

4222.   David Schaefer was a citizen of the United States and domiciled in the State of Illinois, County of St. Clair, when he was killed in Iraq.

4223.   On May 16, 2009, David Schaefer, aged 27, was serving in the United States military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4224.   David Schaefer was killed in the attack.

4225.   The weapon used to kill David Schaefer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4226.   Plaintiff Rhonda Kemper is a citizen of the United States and domiciled in the State of Kentucky. She is the mother of David Schaefer.

4227.   As a result of the attack, and the death of David Schaefer, Plaintiff Rhonda Kemper has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her son's society, companionship, comfort, advice and counsel.

237.   **THE MAY 17, 2009 ATTACK – BAGHDAD**

**The Canine Family**

4228.   Plaintiff Robert Canine is a citizen of the United States and domiciled in the State of Missouri.

4229.   On May 17, 2009, Robert Canine, age 29, was serving in the U.S. military in Iraq.

4230.   Mr. Canine was on a routine patrol in northwest Baghdad when his vehicle was struck by an EFP emplaced by Special Groups.

4231.   The weapon used to injure Mr. Canine was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4232.   As a result of the attack, he sustained significant injuries due to the impact of shrapnel and portions of the explosive device impacting his body.

4233.   Mr. Canine's injuries included significant damage to his right leg and foot and the essential removal of the toes of his left foot as well as the loss of a great deal of blood.

4234.   The injuries necessitated the amputation of his right leg and left foot.

4235.   Apart from the injuries to his legs and feet, he also sustained a large laceration that ran from his buttocks to the back of his knee. It was determined that muscle and tissue was removed in these areas due to the blast.

4236.   Mr. Canine has suffered infections that have required treatment and assessment.

4237.   Apart from medical treatment while in Iraq, Mr. Canine received treatment and rehabilitation at Walter Reed Hospital for approximately 18 months.

4238.   Mr. Canine has been diagnosed with PTSD and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

4239.   Mr. Canine continues to experience pain and emotional distress each day, and he receives treatment for his injuries.

4240.   As a result of the attack, and the injuries he suffered, Plaintiff Robert Canine has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4241.   Plaintiff S.C., a minor, represented by his legal guardian Robert Canine, is a citizen of the United States and domiciled in the State of Missouri. He is the son of Robert Canine.

4242.   Plaintiff Janet Jones is a citizen of the United States and domiciled in the State of Missouri. She is the mother of Robert Canine.

4243.   Plaintiff Calvin Canine is a citizen of the United States and domiciled in the State of Missouri. He is the father of Robert Canine.

4244.   Plaintiff James Canine is a citizen of the United States and domiciled in the State of Missouri. He is the brother of Robert Canine.

4245.   Plaintiff Jennifer Roose is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Robert Canine.

4246.   As a result of the attack, and the injuries Robert Canine suffered, Plaintiffs S.C., Janet Jones, Calvin Canine and Jennifer Roose have experienced severe mental anguish and extreme emotional pain and suffering.

**The Murphy Family**

4247.   Plaintiff Rhett Murphy is a citizen of the United States and domiciled in the State of Minnesota.

4248.   On May 17, 2009, Rhett Murphy, then 30, was serving in the U.S. military in Iraq.

4249.   Mr. Murphy was on a routine patrol in northwest Baghdad when his vehicle was struck by an EFP.

4250.   The weapon used to injure Mr. Murphy was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4251.   As a result of the attack, he sustained significant injuries due to the impact of shrapnel impacting his body. This has resulted in scarring.

4252. Apart from the shrapnel-related injuries he also sustained injuries to the tendons in his left hand a fracture of his finger. These have necessitated various surgical procedures.

4253. Mr. Murphy has been diagnosed with PTSD and major depression and has received treatment and counseling. He has been prescribed medication to address both the pain and emotional impact of the attack.

4254. Mr. Murphy continues emotional distress and he receives treatment for his injuries.

4255. As a result of the attack, and the injuries he suffered, Plaintiff Rhett Murphy has experienced severe physical and mental anguish and extreme emotional pain and suffering.

**The Landtiser Family**

4256. Plaintiff Roady Landtiser is a citizen of the United States and domiciled in the State of Oklahoma.

4257. On May 17, 2009, Roady Landtiser, then 21, was serving in the U.S. military in Iraq.

4258. Mr. Landtiser was on a routine patrol in northwest Baghdad when his vehicle was struck by an EFP.

4259. The weapon used to injure Mr. Landtiser was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4260. As a result of the attack, he sustained a concussion and was rendered unconscious.

4261. He developed tinnitus in his right ear and this condition continues to the present day.

4262. Mr. Landtiser has experienced flashbacks and night terrors.

554

4263.   He has been diagnosed with PTSD. He has received treatment, has been prescribed medication, and sought counseling for these issues.

4264.   As a result of the attack, and the injuries he suffered, Plaintiff Roady Landtiser has experienced severe mental anguish and extreme emotional pain and suffering.

**The Richards Family**

4265.   Plaintiff Nathan Richards is a citizen of the United States and domiciled in the State of Florida.

4266.   On May 17, 2009, Nathan Richards, then 22, was serving in the U.S. military in Iraq.

4267.   Mr. Richards was on a routine patrol in northwest Baghdad when his vehicle was struck by an EFP.

4268.   The weapon used to injure Mr. Richards was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4269.   As a result of the attack, he sustained a concussion and was knocked unconscious. His eardrum was also ruptured as a result of the blast.

4270.   Mr. Richards has developed vertigo and has experienced migraines.

4271.   He has been diagnosed with a TBI and has dealt with long-term and short-term memory loss.

4272.   He has been diagnosed with PTSD and has had nightmares and flashbacks as well as experienced survivor's guilt. He has received treatment and counseling for these issues.

4273.   As a result of the attack, and the injuries he suffered, Plaintiff Nathan Richards has experienced severe mental anguish and extreme emotional pain and suffering.

4274. Plaintiff Steven Richards is a citizen of the United States and domiciled in the State of Massachusetts. He is the father of Nathan Richards.

4275. As a result of the attack, and the injuries suffered by Nathan Richards, Plaintiff Steven Richards has experienced severe mental anguish, and extreme emotional pain and suffering.

### 238. THE JUNE 14, 2009 ATTACK – BALAD

**The Songer Family**

4276. Plaintiff Christopher Songer is a citizen of the United States and domiciled in the State of Washington.

4277. On June 14, 2009, Christopher Songer, then 36, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4278. The weapon used to injure Christopher Songer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4279. As a result of the attack, Christopher Songer suffered a broken middle finger, deep lacerations on both hands requiring reconstructive surgery, shrapnel throughout his body, burns to hands, arms, face and legs, a large should wound and multiple bone fractures. He also suffered from smoke inhalation which damaged lungs, nerve damage and hearing loss. He also suffers from a TBI.

4280. As a result of the attack, and the injuries he suffered, Plaintiff Christopher Songer has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4281. Plaintiff Kimberly Songer is a citizen of the United States and domiciled in the State of Washington. She is the wife of Christopher Songer.

4282. Plaintiff C.S., a minor represented by his legal guardian, Kimberly Songer, is a citizen of the United States and domiciled in the State of Washington. He is the son of Christopher Songer.

4283. As a result of the attack, and the injuries suffered by Christopher Songer, Plaintiffs Kimberly Songer and C.S. have experienced severe mental anguish, and extreme emotional pain and suffering.

### 239. THE JUNE 28, 2009 ATTACK – BAGHDAD

**The David Family**

4284. Timothy A. David was a citizen of the United States and domiciled in the State of Michigan when he was killed in Iraq.

4285. On June 28, 2009, Timothy A. David, aged 28, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4286. Timothy A. David was killed in the attack.

4287. The weapon used to kill Timothy A. David was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4288. Plaintiff Linda David is a citizen of the United States and domiciled in the State of Michigan. She is the mother of Timothy A. David.

4289. Plaintiff Linda David brings an action individually and on behalf of the Estate of Timothy A. David, as its legal representative.

4290. Michael David was a citizen of the United States at the time of the death of Timothy A. David. He was the father of Timothy A. David. Michael David passed away on May 30, 2018.

4291. Plaintiff Linda David brings an action individually and on behalf of the Estate of

Michael David, as its legal representative.

4292.   Plaintiff Christopher David is a citizen of the United States and domiciled in the State of Michigan. He is the brother of Timothy A. David.

4293.   As a result of the attack, and the death of Timothy A. David, the late Michael David experienced, and Plaintiffs Linda David and Christopher David have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

### 240.   THE JULY 16, 2009 ATTACK – BASRA

**The Drevnick Family**

4294.   Daniel P. Drevnick was a citizen of the United States and domiciled in the State of Minnesota when he was killed in Iraq.

4295.   On July 16, 2009, Daniel P. Drevnick, aged 22, was serving in the U.S. military when he was killed by a 107mm rocket launched by JAM Special Groups.

4296.   The attack was perpetrated by Hezbollah-trained JAM Special Groups under the control and direction of the IRGC-QF and Hezbollah.

4297.   Plaintiff Kenneth J. Drevnick is a citizen of the United States and domiciled in the State of Wisconsin. He is the father of Daniel P. Drevnick.

4298.   As a result of the attack, and the death of Daniel P. Drevnick, Plaintiff Kenneth J. Drevnick has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

### 241.   THE SEPTEMBER 8, 2009 ATTACK – TIKRIT

**The Myers Family**

4299.   Zachary T. Myers was a citizen of the United States and domiciled in the State of

Ohio when he was killed in Iraq.

4300.   On September 8, 2009, Zachary T. Myers, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4301.   Zachary T. Myers was killed in the attack.

4302.   The weapon used to kill Zachary T. Myers was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4303.   Plaintiff Megan Marie Sabatino is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Zachary T. Myers.

4304.   Plaintiff Megan Marie Sabatino brings an action individually and on behalf of the Estate of Zachary T. Myers, as its legal representative.

4305.   Plaintiff R.N.S., a minor represented by her legal guardian Megan Marie Sabatino, is a citizen of the United States and domiciled in the State of Ohio. She is the daughter of Zachary T. Myers.

4306.   Plaintiff Tonya Freeman is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of Zachary T. Myers.

4307.   Plaintiff Jerry L. Myers is a citizen of the United States and domiciled in the State of Ohio. He is the father of Zachary T. Myers.

4308.   Plaintiff Jeffrey D. Price is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of Zachary T. Myers.

4309.   As a result of the attack, and the death of Zachary T. Myers, Plaintiffs Megan Marie Sabatino, R.N.S., Tonya Freeman, Jerry L. Myers and Jeffrey D. Price have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/father's/son's/

brother's society, companionship, comfort, advice and counsel.

**The Smith Family**

4310.   Shannon M. Smith was a citizen of the United States and domiciled in the State of Ohio when he was killed in Iraq.

4311.   On September 8, 2009, Shannon M. Smith was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4312.   Shannon M. Smith was killed in the attack.

4313.   The weapon used to kill Shannon M. Smith was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4314.   Plaintiff Cassie Collins is a citizen of the United States and domiciled in the State of Ohio. She is the widow of Shannon M. Smith.

4315.   Plaintiff Cassie Collins brings an action individually and on behalf of the Estate of Shannon M. Smith as its legal representative.

4316.   Plaintiff Deborah Smith is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Shannon M. Smith.

4317.   Plaintiff James Smith is a citizen of the United States and domiciled in the State of Ohio. He is the father of Shannon M. Smith.

4318.   Plaintiff Cory Smith is a citizen of the United States and domiciled in the State of Ohio. He is the brother of Shannon M. Smith.

4319.   Plaintiff Christina Smith is a citizen of the United States and domiciled in the State of Ohio. She is the sister of Shannon M. Smith.

4320.   As a result of the attack, and the death of Shannon M. Smith, Plaintiffs Cassie

Collins, Deborah Smith, James Smith, Cory Smith and Christina Smith have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their husband's/son's/brother's society, companionship, comfort, advice and counsel.

242. **THE SEPTEMBER 8, 2009 ATTACK – BAGHDAD**

**The Helton Family**

4321. Joseph D. Helton, Jr. was a citizen of the United States and domiciled in the State of Georgia when he was killed in Iraq.

4322. On September 8, 2009, Joseph D. Helton, Jr., aged 24, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4323. Joseph D. Helton Jr. was killed in the attack.

4324. The weapon used to kill Joseph D. Helton, Jr. was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4325. Plaintiff Joseph Helton, Sr. is a citizen of the United States and domiciled in the State of Washington. He is the father of Joseph D. Helton, Jr.

4326. Plaintiff Joseph Helton, Sr. brings an action individually and on behalf of the Estate of Joseph D. Helton, Jr., as its legal representative.

4327. Plaintiff Jessica Cabot is a citizen of the United States and domiciled in the State of California. She is the sister of Joseph D. Helton, Jr.

4328. Plaintiff Jeanne Rhea McManus is a citizen of the United States and domiciled in the State of Pennsylvania. She is the sister of Joseph D. Helton, Jr.

4329. As a result of the attack, and the death of Joseph D. Helton, Jr., Plaintiffs Joseph Helton, Sr., Jessica Cabot, and Jeanne Rhea McManus have experienced severe mental anguish,

extreme emotional pain and suffering and loss of their son's/brother's society, companionship, comfort, advice and counsel.

**The Wise Family**

4330.   Plaintiff Victor Ray Wise, II is a citizen of the United States and domiciled in the State of Kentucky.

4331.   On September 8, 2009, Victor Ray Wise, II, then 22, was serving in the U.S. military in Iraq when an EFP detonated near his vehicle.

4332.   The weapon used to injure Victor Ray Wise, II was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4333.   Mr. Wise was in the gunner's hatch when the EFP hit the vehicle he was in.

4334.   He was extricated from the vehicle and tourniquets were placed on his legs and was initially treated at Camp Falcon. He was then taken to a hospital up north for surgery.

4335.   He was subsequently taken to Landstuhl, Germany and then Walter Reed Army Medical Center where he spent six months. He has undergone eleven surgeries. After six months at Walter Reed Army Medical Center, Mr. Wise was sent to Omaha Offutt Air Force Base, where he was treated at the base hospital.

4336.   The EFP hit Mr. Wise's legs. He had to have some of his toes amputated. He also sustained nerve damage to his legs and is missing muscles in legs, some of which had to be amputated.

4337.   Mr. Wise was diagnosed with PTSD as a result of the attack.

4338.   As a result of the attack, and the injuries he suffered, Plaintiff Victor Ray Wise, II has experienced severe physical and mental anguish and extreme emotional pain and suffering.

243. **THE JANUARY 18, 2010 ATTACK – BAGHDAD**

**The Lester Family**

4339. Plaintiff Theodore Lester is a citizen of the United States and domiciled in the State of Texas.

4340. On January 18, 2010, Theodore Lester, then 32, and a former soldier in the U.S. military, was serving as a civilian contractor in Baghdad, Iraq when his camp was attacked with Katyusha rockets deployed by JAM Special Groups.

4341. While running for cover from the Katyusha rockets, Mr. Lester was injured in the attack when he stepped into an existing mortar impact hole. Mr. Lester fell to the ground and was forced to crawl to cover.

4342. The rocket attack was perpetrated by JAM Special Groups terror operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

4343. Mr. Lester was only able to obtain an X-ray of his foot a day later, which revealed that he had fractured three bones in his left foot. Mr. Lester still experiences pain in his left leg and foot from his injuries.

4344. Mr. Lester was subsequently diagnosed with, and treated for, PTSD.

4345. As a result of the attack, and the injuries he suffered, Plaintiff Theodore Lester has experienced severe physical and mental anguish and extreme emotional pain and suffering.

244. **THE APRIL 27, 2010 ATTACK - KHALIS**

**The Coe Family**

4346. Keith Coe was a citizen of the United States and domiciled in the State of Florida when he was killed in Iraq.

4347.   On April 27, 2010, Keith Coe, aged 30, was serving in the U.S. military in Iraq.

4348.   Mr. Coe was north of his base in Iraq when his vehicle was struck by an EFP emplaced by Special Groups.

4349.   The weapon used to kill Mr. Coe was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4350.   Plaintiff Katrina Coe is a citizen of the United States and domiciled in the State of Tennessee. She is the widow of Keith Coe.

4351.   Plaintiff Katrina Coe brings an action individually and on behalf of the Estate of Keith Coe, as its legal representative.

4352.   Plaintiff K.A.C., a minor represented by his legal guardian, Katrina Coe, is a citizen of the United States and domiciled in the State of Tennessee. He is the son of Keith Coe.

4353.   Plaintiff K.A.C., a minor represented by his legal guardian, Katrina Coe, is a citizen of the United States and domiciled in the State of Tennessee. He is the son of Keith Coe.

4354.   Plaintiff K.A.C., a minor represented by her legal guardian, Katrina Coe, is a citizen of the United States and domiciled in the State of Tennessee. She is the daughter of Keith Coe.

4355.   Plaintiff Rhonda Smith is a citizen of the United States and domiciled in the State of Florida. She is the mother of Keith Coe.

4356.   Plaintiff Matthew Coe is a citizen of the United States and domiciled in the State of Florida. He is the brother of Keith Coe.

4357.   Plaintiff Sabrina Chapman is a citizen of the United States and domiciled in the State of Florida. She is the sister of Keith Coe.

564

4358.   As a result of the attack, and the death of Keith Coe, Plaintiffs Katrina Coe, K.A.C., K.A.C., K.A.C., Rhonda Smith, Matthew Coe and Sabrina Chapman have experienced severe physical and mental anguish and extreme emotional pain and suffering and loss of their husband's/father's/son's/brother's society, companionship, comfort, advice and counsel.

**The Baumhoer Family**

4359.   Plaintiff Nicholas Baumhoer is a citizen of the United States and domiciled in the State of Indiana.

4360.   On April 27, 2010, Nicholas Baumhoer, age 20, was serving in the U.S. military in Iraq.

4361.   Mr. Baumhoer was north of his base in Iraq when his vehicle was struck by an EFP emplaced by Special Groups.

4362.   The weapon used to injure Mr. Baumhoer was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4363.   As a result of the attack, he sustained significant injuries due to the impact of shrapnel to his face and left arm. He also sustained a concussion.

4364.   Mr. Baumhoer underwent surgery to address internal bleeding and the removal of shrapnel.

4365.   As a result of the attack, and the injuries he suffered, Plaintiff Nicholas Baumhoer has experienced severe physical and mental anguish and extreme emotional pain and suffering.

### 245.  THE MARCH 10, 2011 ATTACK – BAGHDAD

**The Kinsey Family**

4366.  Plaintiff James Kinsey is a citizen of the United States and domiciled in the State of Arkansas.

4367.  On March 10, 2011, James Kinsey, then 34, was serving in the U.S. military in Iraq when his base came under indirect fire by JAM Special Groups terror operatives working at the direction of Hezbollah and the IRGC-QF, using weapons supplied by the IRGC-QF and employing training provided by Hezbollah.

4368.  An Iranian-made 240mm rocket exploded within the base perimeter, approximately 50 meters from where Mr. Kinsey was standing.

4369.  The resulting blast threw Mr. Kinsey into a barrier wall, and he suffered a severe concussion.

4370.  Mr. Kinsey was later diagnosed with a TBI and PTSD from the attack.

4371.  As a result of the attack, and the injuries he suffered, Plaintiff James Kinsey has experienced severe mental anguish and extreme emotional pain and suffering.

### 246.  THE APRIL 22, 2011 ATTACK – NUMANIYAH

**The Stiggins Family**

4372.  Antonio Stiggins was a citizen of the United States and domiciled in the State of New Mexico when he was killed in Iraq.

4373.  On April 22, 2011, Antonio Stiggins, aged 25, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4374.  Antonio Stiggins was killed in the attack.

4375. The weapon used to kill Antonio Stiggins was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4376. Plaintiff Angel Mayes is a citizen of the United States and domiciled in the State of New Mexico. She is the mother of Antonio Stiggins.

4377. Plaintiff Angel Mayes brings an action individually and on behalf of the Estate of Antonio Stiggins, as its legal representative.

4378. Plaintiff Luke Stiggins is a citizen of the United States and domiciled in the State of New Mexico. He is the father of Antonio Stiggins.

4379. Plaintiff Donald Mayes is a citizen of the United States and domiciled in the State of New Mexico. He is the step-father of Antonio Stiggins.

4380. As a result of the attack, and the death of Antonio Stiggins, Plaintiffs Angel Mayes, Luke Stiggins, and Donald Mayes have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's society, companionship, comfort, advice and counsel.

## 247. THE MAY 22, 2011 ATTACK – BAGHDAD

**The Beattie Family**

4381. Clifford Beattie was a citizen of the United States and domiciled in the State of Washington when he was killed in Iraq.

4382. On May 22, 2011, Clifford Beattie, aged 37, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4383. Clifford Beattie was killed in the attack.

4384. The weapon used to kill Clifford Beattie was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4385. Plaintiff Rhonda Beattie is a citizen of the United States and domiciled in the State of Ohio. She is the mother of Clifford Beattie.

4386. Plaintiff Rhonda Beattie brings an action individually and on behalf of the Estate of Clifford Beattie, as its legal representative.

4387. Plaintiff Jaydean Hamilton is a citizen of the United States and domiciled in the State of Washington. She is the daughter of Clifford Beattie.

4388. As a result of the attack, and the death of Clifford Beattie, Plaintiffs Rhonda Beattie and Jaydean Hamilton have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/father's society, companionship, comfort, advice and counsel.

### 248. <u>THE JUNE 6, 2011 ATTACK – BAGHDAD</u>

**<u>The Fishbeck Family</u>**

4389. Christopher Brook Fishbeck was a citizen of the United States and domiciled in the State of California.

4390. On June 6, 2011, Christopher Brook Fishbeck, then 24 was serving in the U.S. military in Iraq when the base he was at, Forward Operating Base Loyalty in Baghdad, came under attack by IRAMs.

4391. Christopher Brook Fishbeck was killed in the attack.

4392. KH operatives fired the IRAMs at the base. Those operatives were trained by Hezbollah and funded and supplied by the IRGC-QF and they launched the attack at the direction

of both Hezbollah and the IRGC-QF as their proxy. Specifically, KH claimed responsibility for the attack that killed Christopher Brook Fishbeck.

4393. Plaintiff Stephanie Kidder is a citizen of the United States and domiciled in the State of California. She is the wife of Christopher Brook Fishbeck.

4394. As a result of the attack, and the death of Christopher Brook Fishbeck, Plaintiff Stephanie Kidder has experienced severe mental anguish, extreme emotional pain and suffering, and loss of her husband's society, companionship, comfort, advice and counsel.

## 249.   THE JUNE 29, 2011 ATTACK – WASIT PROVINCE

**The White Family**

4395. Plaintiff George D. White is a citizen of the United States and domiciled in the State of Minnesota.

4396. On June 29, 2011, George D. White, then 39, was serving in the U.S. military in Iraq when his unit was attacked with IRAMs fired by KH Special Groups terror operatives.

4397. Those operatives were trained by Hezbollah and funded and supplied by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF as their proxy.

4398. The rocket fire and one of the many explosions caused George D. White to be thrown toward the bunker.

4399. Immediately following the attack, George D. White suffered vision and hearing loss as well as ringing in his ears. The vision loss – encompassing his night vision – and the ringing in his ears continue to the present.

4400. He has been diagnosed with a TBI, and has experienced severe headaches, nightmares and difficulty sleeping – all conditions that he has received treatment for.

4401. In addition, George D. White suffers from PTSD and depression.

4402. As a result of the attack, and the injuries he suffered, Plaintiff George D. White has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4403. Plaintiff Natalia White is a citizen of the United States and domiciled in the State of Minnesota. She is the wife of George D. White.

4404. Plaintiff Kristin White is a citizen of the United States and domiciled in the State of Texas. She is the daughter of George D. White.

4405. Plaintiff George J. White is a citizen of the United States and domiciled in the State of Florida. He is the father of George D. White.

4406. Plaintiff Edna Luz Burgos is a citizen of the United States and domiciled in Puerto Rico. She is the mother of George D. White.

4407. As a result of the attack, and the injuries George D. White suffered, Plaintiffs Natalia White, Kristin White, George J. White and Edna Luz Burgos have experienced severe mental anguish and extreme emotional pain and suffering.

**The McCulley Family**

4408. Plaintiff John McCulley is a citizen of the United States and domiciled in the State of Texas.

4409. On June 29, 2011, John McCulley, then 32, a former soldier in the U.S. military, was serving as a civilian contractor in Iraq when he was attacked with IRAMs fired by KH Special Groups terror operatives.

4410. Those operatives were trained by Hezbollah and funded and supplied by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF as their proxy.

4411.   Two rockets landed near Mr. McCulley.

4412.   Mr. McCulley was struck by shrapnel.

4413.   His right arm was severed at the elbow, and his left leg was badly damaged.

4414.   Mr. McCulley was hospitalized on several occasions to treat his injuries, and he has had more than 20 surgeries.

4415.   Mr. McCulley has been diagnosed with a TBI, PTSD, and has been treated for depression.

4416.   As a result of the attack, and the injuries he suffered, Plaintiff John McCulley has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4417.   Plaintiff Stephanie McCulley is a citizen of the United States and domiciled in the State of Texas. She is the wife of John McCulley.

4418.   Plaintiff T.M., a minor represented by his legal guardians John McCulley and Stephanie McCulley, is a citizen of the United States and domiciled in the State of Texas. He is the son of John McCulley.

4419.   Plaintiff R.M., a minor represented by his legal guardians John McCulley and Stephanie McCulley, is a citizen of the United States and domiciled in the State of Texas. He is the son of John McCulley.

4420.   As a result of the attack, and the injuries John McCulley suffered, Plaintiffs Stephanie McCulley, T.M., and R.M. have experienced severe mental anguish and extreme emotional pain and suffering.

**The Field Family**

4421.   Plaintiff Donald Field is a citizen of the United States and domiciled in the State of Texas.

4422.   On June 29, 2011, Donald Field, then 42, was serving in the U.S. military in Iraq when his unit was attacked with IRAMs fired by KH Special Groups terror operatives.

4423.   Those operatives were trained by Hezbollah and funded and supplied by the IRGC-QF and they launched the attack at the direction of both Hezbollah and the IRGC-QF as their proxy.

4424.   One of the many explosions caused a concrete retaining wall to fall, portions of which landed on Donald Field, rendering him unconscious.

4425.   When he came to, he was able to extricate himself from the debris and noticed much of his clothing had been burned and torn.

4426.   Both lower lobes of Donald Field's lungs had collapsed due to the force of the blast and the concrete wall having landed on him.

4427.   He sustained injuries to his back, primarily to his lower vertebrae, requiring surgery.  He has limited motion.

4428.   He has been prescribed medication to address the pain he experiences on a daily basis.

4429.   As a result of the blast, Mr. Field also suffered first and second-degree burns on his head, neck, and the back of his arms.

4430.   Mr. Field also injured the right side of his head and right ear.  He has experienced and continues to deal with short-term cognitive and memory issues.  He has undergone multiple surgeries to address the injuries to his head and ear.

4431.   Mr. Field has been diagnosed with a TBI.

4432.   He has sought counseling and continues to seek treatment with a psychiatrist. He has been prescribed medication for anxiety and mood-related issues.

4433.   As a result of the attack, and the injuries he suffered, Plaintiff Donald Field has experienced severe physical and mental anguish and extreme emotional pain and suffering.

4434.   Plaintiff Angelica Field is a citizen of the United States and domiciled in the State of Texas. She is the of wife of Donald Field.

4435.   Plaintiff Senovia Field is a citizen of the United States and domiciled in the State of Texas. She is the of daughter of Donald Field.

4436.   Plaintiff Selicia Field is a citizen of the United States and domiciled in the State of Texas. She is the of daughter of Donald Field.

4437.   As a result of the attack, and the injuries Donald suffered, Plaintiffs Angelica Field, Senovia Field and Selicia Field have experienced severe mental anguish and extreme emotional pain and suffering.

### 250.   THE JULY 7, 2011 ATTACK BAGHDAD

**The Newby Family**

4438.   Nicholas W. Newby was a citizen of the United States and domiciled in the State of Idaho when he was killed in Iraq.

4439.   On July 7, 2011, Nicholas W. Newby, aged 20, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4440.   Nicholas W. Newby was killed in the attack.

4441.   The weapon used to kill Nicholas W. Newby was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4442.   Plaintiff Theresa Hart is a citizen of the United States and domiciled in the State of Idaho. She is the mother of Nicholas W. Newby.

4443.   Plaintiff Wayne Newby is a citizen of the United States and domiciled in the State of Idaho. He is the father of Nicholas W. Newby.

4444.   Plaintiff Nathan Newby is a citizen of the United States and domiciled in the State of Idaho. He is the brother of Nicholas W. Newby.

4445.   As a result of the attack, and the death of Nicholas W. Newby, Plaintiffs Theresa Hart, Wayne Newby and Nathan Newby have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

## 251.   THE JULY 15, 2011 ATTACK – BASRA

**The Elliott Family**

4446.   Daniel L. Elliott was a citizen of the United States and domiciled in the state of North Carolina when he was killed in Iraq.

4447.   On July 15, 2011, Daniel L. Elliott, aged 21, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4448.   Daniel L. Elliott was killed in the attack.

4449.   The weapon used to kill Daniel L. Elliott was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4450.   Plaintiff Ed Elliott is a citizen of the United States and domiciled in the State of North Carolina. He is the father of Daniel L. Elliott.

4451.   As a result of the attack, and the death of Daniel L. Elliott, Plaintiff Ed Elliott has experienced severe mental anguish, extreme emotional pain and suffering, and loss of his son's society, companionship, comfort, advice and counsel.

**252.** **THE NOVEMBER 14, 2011 ATTACK – BAGHDAD**

**The Hickman Family**

4452. David Emanuel Hickman was a citizen of the United States and domiciled in the State of North Carolina when he was killed in Iraq.

4453. On November 14, 2011, David Emanuel Hickman, aged 23, was serving in the U.S. military in Iraq when an EFP emplaced by Special Groups detonated near his vehicle.

4454. David Emanuel Hickman was killed in the attack.

4455. The weapon used to kill David Emanuel Hickman was a Hezbollah-designed and Iranian-manufactured EFP emplaced by agents of Hezbollah and the IRGC-QF at their direction, using specialized training and components supplied by Hezbollah and the IRGC.

4456. Plaintiff Veronica Hickman is a citizen of the United States and domiciled in the State of North Carolina. She is the mother of David Emanuel Hickman.

4457. Plaintiff David Eugene Hickman is a citizen of the United States and domiciled in the State of North Carolina. He is the father of David Emanuel Hickman.

4458. Plaintiff Devon Fletcher Hickman is a citizen of the United States and domiciled in the State of North Carolina. He is the brother of David Emanuel Hickman.

4459. As a result of the attack, and the death of David Emanuel Hickman, Plaintiffs Veronica Hickman, David Eugene Hickman and Devon Fletcher Hickman have experienced severe mental anguish, extreme emotional pain and suffering, and loss of their son's/brother's society, companionship, comfort, advice and counsel.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## CIVIL LIABILITY UNDER 18 U.S.C. § 2333(a) FOR VIOLATION OF 18 U.S.C. § 2339B CONSTITUTING ACTS OF INTERNATIONAL TERRORISM

4460.   Plaintiffs repeat and re-allege every allegation of the foregoing paragraphs as if fully set forth herein.

4461.   During all relevant times, each Defendant knew that Hezbollah engaged in acts of international terrorism and each Defendant knew that Hezbollah had been designated an FTO.

4462.   Each Defendant knowingly provided material support to Hezbollah during the period between 2003 through 2011 and allowed Hezbollah to transfer millions of dollars through the U.S. financial system for the benefit of Hezbollah.

4463.   Each Defendant's conduct *involved* violent acts or acts dangerous to human life that constitute violations of 18 U.S.C. § 2339B.

4464.   By knowingly providing material support to Hezbollah, each Defendant's conduct objectively appeared to be intended to intimidate or coerce a civilian population or influence the policy of a government by intimidation or coercion by substantially assisting Hezbollah in operating its global terror network.

4465.   By knowingly providing material support to Hezbollah and providing a financial lifeline in the form of global access to critical U.S. dollars, each Defendant substantially and foreseeably contributed to Hezbollah's capacity to orchestrate, direct and commit terrorist acts, including the terrorist attack that injured Plaintiffs.

4466.   Each Defendant's activities occurred primarily outside the United States.

4467. As the U.S. Department of the U.S. Department of the Treasury noted in 2016 (quoting Adam J. Szubin, then acting Under Secretary for Terrorism and Financial Intelligence), Hezbollah "relies upon accomplices in the business community to place, manage, and launder its terrorist funds."

4468. The Defendants herein were the most central accomplices relied upon by Hezbollah for facilitating its financial operations.

4469. Defendants' knowing provision of material support to FTO Hezbollah was a substantial reason that Hezbollah was able to orchestrate the terrorist attacks at issue.

4470. , Defendants' knowing provision of material support to FTO Hezbollah increased its ability to plan, direct and orchestrate deadly attacks that were a foreseeable consequence of facilitating the transfer of millions of U.S. dollars to persons and entities controlled by Hezbollah.

**SECOND CLAIM FOR RELIEF**

**CIVIL LIABILITY UNDER 18 U.S.C. § 2333(d) FOR AIDING AND ABETTING HEZBOLLAH, A FOREIGN TERRORIST ORGANIZATION**

4471. Plaintiffs repeat and re-allege every allegation of the foregoing paragraphs as if fully set forth herein.

4472. Plaintiffs were all injured by acts of international terrorism as defined by 18 U.S.C. § 2331.

4473. Plaintiffs were all injured by acts of international terrorism committed, planned or authorized by FTO Hezbollah (and in some cases, also FTO Kata'ib Hezbollah).

4474. Hezbollah had been designated as an FTO (in 1997) as of the date of all the attacks alleged herein.

4475. As set forth in detail above, the IRGC–QF tasked Hezbollah with organizing its Iraqi agents to launch terrorist attacks on U.S. service members in Iraq.

4476.   Accordingly, Hezbollah trained, organized, advised and directed various terror cells who acted as its agents, launching attacks on U.S. and Coalition Forces at Hezbollah's behest and under its guidance.

4477.   Each defendant aided and abetted Hezbollah in its commission of these acts of international terrorism, including the terrorist attacks that injured Plaintiffs, by providing substantial and vital assistance to Hezbollah during the period between 2003 through 2011 and allowing it to transfer hundreds of millions of dollars through the U.S. financial system for its benefit.

4478.   Defendants' substantially assisted Hezbollah by, *inter alia*, laundering hundreds of millions of dollars for Hezbollah that it needed to sustain its operations and to commit acts of international terrorism.

4479.   Each Defendant understood its role in helping fuel Hezbollah's illicit activities, was aware that by providing substantial assistance to Hezbollah it was aiding and abetting Hezbollah's terrorist and criminal activities and nonetheless continually assisted Hezbollah in its efforts.

4480.   The amount and extent of assistance each Defendant provided—illegal access to millions of U.S. dollars and the international financial system—was integral to the overall terrorist activities of Hezbollah and the foreseeable acts of terrorism at issue.

4481.   Each Defendant provided this substantial assistance to Hezbollah for years.

4482.   Each Defendant knew that Hezbollah was not only an FTO, but among the most dangerous terrorist groups in the world, and that providing illegal access to the U.S. financial system would foreseeably aid Hezbollah in committing acts of international terrorism, including terrorism in Iraq.

4483.   As the U.S. Department of the U.S. Department of the Treasury noted in 2016 (quoting Adam J. Szubin, then acting Under Secretary for Terrorism and Financial Intelligence), Hezbollah "relies upon accomplices in the business community to place, manage, and launder its terrorist funds."

4484.   The Defendants herein were the most central accomplices relied upon by Hezbollah to assist it in collecting and distributing its operational funding and they fully understood their role in Hezbollah's operations.

4485.   Plaintiffs' injuries were proximately caused by Hezbollah's conduct, which each Defendant substantially assisted.

### THIRD CLAIM FOR RELIEF

### CIVIL LIABILITY UNDER 18 U.S.C. § 2333(d) FOR SGBL AND MEAB'S CONSPIRACY WITH HEZBOLLAH, A FOREIGN TERRORIST ORGANIZATION

4486.   Plaintiffs repeat and re-allege all allegation of the foregoing paragraphs as if fully set forth herein.

4487.   Defendants SGBL (as the legal successor to LCB) and MEAB conspired with FTO Hezbollah during the period between 2003 through 2011 to provide Hezbollah with illegal material support in the form of financial services critical to Hezbollah's capacity to commit acts of international terrorism.

4488.   Defendants SGBL and MEAB agreed with Hezbollah, its agents and corporate entities to participate in unlawful acts (violations of U.S. criminal laws including 18 U.S.C. § 2339B) and provided substantial assistance to Hezbollah in furtherance of the common scheme by which these Defendants clandestinely served as a conduit for Hezbollah's illicit financing network.

579

4489.   Defendants SGBL and MEAB knew the objective of the conspiracy was to provide material support for and increase Hezbollah's capacity to, *inter alia*, commit acts of international terrorism.

4490.   Defendants SGBL and MEAB knew that entering into a conspiracy to provide material support to FTO Hezbollah in the form of illegal access to the U.S. financial system and millions of U.S. dollars would in fact substantially contribute to Hezbollah's capacity to commit acts of international terrorism.

4491.   Accordingly, Defendants knew they were playing a role in and facilitating Hezbollah's violent activities.

4492.   Plaintiffs' injuries were proximately caused by overt acts performed by Hezbollah as a consequence of, in furtherance of, and pursuant to, the Defendants' and Hezbollah's conspiracy to provide material support for terrorism.

## FOURTH CLAIM FOR RELIEF

## SUCCESSOR LIABILITY OF SGBL

4493.   Plaintiffs repeat and re-allege all allegation of the foregoing paragraphs as if fully set forth herein.

4494.   In accordance with the Purchase Agreement dated June 22, 2011, Defendant SGBL assumed all of the assets and liabilities of LCB and therefore became successor-in-interest to LCB, continuing to operate in substantially the same manner as LCB.

4495.   SGBL is liable for the acts of LCB to the same extent that LCB would be found liable.

4496.   SGBL is liable for LCB's violation of 18 U.S.C. §§ 2333(a), 2333(d) and 2339B.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

(a)     Accept jurisdiction over this action;

(b)     Enter judgment against each Defendant and in favor of Plaintiffs for compensatory damages in amounts to be determined at trial;

(c)     Enter judgment against each Defendant and in favor of Plaintiffs for treble damages pursuant to 18 U.S.C. § 2333;

(d)     Enter judgment against each Defendant and in favor of Plaintiffs for any and all costs sustained in connection with the prosecution of this action, including attorneys' fees, pursuant to 18 U.S.C. § 2333; and

(e)     Grant such other and further relief as justice requires.


PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.

Dated: January 1, 2019


By      /s/ William Friedman
        **OSEN LLC**
        William Friedman, Esq.
        Gerard Filitti, Esq.
        Michael Radine, Esq.
        Dina Gielchinsky, Esq.
        2 University Plaza, Suite 402
        Hackensack, NJ 07601
        (201) 265-6400
        (201) 265-0303 Fax

        **TURNER & ASSOCIATES, P.A.**
        Tab Turner, Esq.
        (pro hac vice to be submitted)
        4705 Somers Avenue, Suite 100
        North Little Rock, AR 72116
        (501) 791-2277

**MOTLEY RICE, LLC**
John M. Eubanks, Esq.
(pro hac vice to be submitted)
28 Bridgeside Boulevard, P.O. Box 1792
Mount Pleasant, South Carolina 29465
(843) 216-9000

Attorneys for Plaintiffs