OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601
T. 201.265.6400   F. 201.265.0303

1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 212.354.0111

March 4, 2019

**VIA ECF**

The Honorable Carol Bagley Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al.*
    **19-cv-00007 (CBA)(VMS)**

Dear Judge Amon:

  We write on Plaintiffs' behalf in accordance with the Court's February 25, 2019 Minute Order directing counsel to respond to Docket Entry No. 47, a February 14, 2019 letter from proposed intervenor Achraf Safieddine ("Letter") in which he "seek[s] leave to intervene pursuant [sic] Fed. R. Civ. P. 24 for the limited purpose of moving to strike the false, impertinent, and scandalous allegations made against him" in the Complaint. Letter at 1.[1] Specifically, Mr. Safieddine maintains that the Complaint's allegations implicate him in "money laundering," "fraud," and "corruption," and are "demonstrably false" and irrelevant to the action. *Id.*

  Mr. Safieddine seeks to intervene in this case as of right under Fed. R. Civ. P. 24(a)(2),[2] to protect an alleged "interest related to the property or transaction that is the subject of the action, where the disposition of the action may impair or impede [his] ability to protect that interest, and where [his] rights are not adequately protected by the existing parties." Letter at 2. He relies upon *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996), which addressed the potential adverse effect of a court decision on the privileged communications of two third parties. The *Sackman* court never reached the issue of whether a potential reputational injury would constitute sufficient grounds to intervene under Rule 24. Mr. Safieddine also relies upon *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 373 (2d Cir. 1981), which involved Penthouse Magazine lawyer Norman Ray Grutman's efforts to intervene in an appeal of a decision against his client – which involved Rule 37 sanctions – that Grutman asserted might damage his reputation. The Court of Appeals succinctly granted his request to intervene:

---

[1] Plaintiffs are cognizant of the Court's instruction to limit letters responding to pre-motion conference letters to three pages, *see* Indiv. Mot. Prac. and Rs. of Hon. Amon, 3.A, but respectfully request leave to submit this overlong letter given the fact-intensive issues raised by Mr. Safieddine's letter.

[2] Mr. Safieddine contends that he is also entitled to permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1). Letter at 2.

> Intervention by Norman Ray Grutman is granted. The judgments and orders of the district court are affirmed. Since Judge Griesa did not decide whether Penthouse or Grutman should be ordered to pay Playboy's reasonable expenses caused by Penthouse's failure to obey his order, as he was required to do by Rule 37(b), F.R.Civ.P., we remand the case for such a determination.

*Id.* at 392. The intervention requested here does not involve a claim of privilege or work product protection, or any judicial determination concerning Mr. Safieddine's conduct (let alone Rule 37 sanctions). The absence of procedural prejudice of the kind described in the cases Mr. Safieddine cites should itself be dispositive of his motion, as a matter of law.

Moreover, even if the Court granted leave to intervene as of right (or permissively), to succeed on a Rule 12(f) motion to strike "any redundant, immaterial, impertinent, or scandalous matter," the moving party must demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001) (*quoting Koch v. Dwyer*, No. 98 Civ. 5519, 2000 WL 1458803, at *1 (S.D.N.Y. Sept. 29, 2000)).

Further, motions to strike are not generally "favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999). *See also Lipsky v. Commonwealth United Corporation*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that motions to strike are disfavored and should be granted only if "there is a strong reason to do so"). Although Mr. Safieddine cannot meet Rule 12(f)'s exacting burden, Plaintiffs nonetheless take this Court's invitation to more fully set forth the basis for the allegations about which Mr. Safieddine complains.

Plaintiffs allege that Hezbollah's Business Affairs Component ("BAC") operates as an interconnected network of individuals and companies, ultimately benefitting Hezbollah's terrorist activities. Plaintiffs provide detailed allegations setting forth the network's components, how they operate, and the critical role Defendants have played in facilitating the network's operations. One component of the network is the alleged role multiple Lebanese attorneys have played in setting up the corporate structures used by Hezbollah's BAC. The common links between different companies and sub-networks within the BAC's network constitute circumstantial evidence of Defendants' knowledge that particular entities were controlled by the BAC, given – among other things – shareholders, lawyers and accountants who appear repeatedly in connection with both designated and undesignated BAC-controlled entities.

One node of that larger BAC network is known as the Amhaz Network. As the U.S. Treasury Department noted when it designated several of its component parts as Specially Designated Global Terrorists ("SDGTs"):

The U.S. Department of the Treasury targeted a key Hizballah procurement network today by designating brothers Kamel and Issam Mohamad Amhaz, their consumer electronics business Stars Group Holding based in Beirut, Lebanon, its subsidiaries, and certain managers and individuals who support their illicit activities. Today's actions were taken pursuant to E.O. 13224, which targets terrorists and those providing support to terrorists, or acts of terrorism.

Exhibit 1 attached hereto.

Although the Amhaz brothers were designated by the United States as terrorists affiliated with Hezbollah, Mr. Safieddine moves to strike the following two paragraphs of the Complaint:

348.   Ashraf Assem Safieddine is the attorney most associated with the Amhaz Network of companies. Among others, he is the attorney for:

- **Teleserve Plus SAL** (discussed above);
- **West Oil Investments Company (Offshore) SAL**: Involved in illicit activity; and
- **Creative Investment (Offshore) SAL**, a company that originated a fraud and corruption scheme, through which its staff, among them Ashraf Safieddine, were accused of money laundering.

352.   Hiba Shawqi Shadhbek is an attorney who participates in the Amhaz Network by way of affiliation with Ashraf Assem Safieddine.

Mr. Safieddine does not deny that he was affiliated with the Amhaz brothers prior to their July 2014 designation but asserts that he has had no affiliation with them since that time. Letter at 2, 3. He also objects to the statement that he, among others, was "accused of money laundering" in connection with his work for Creative Investment (Offshore) SAL. Id. at 2.[3]

Much of Plaintiffs' information concerning Mr. Safieddine's association with the Amhaz Network comes from a detailed report published by C4ADS, a "nonprofit organization dedicated to data-driven analysis and evidence-based reporting of conflict and security issues worldwide." Exhibit 2 attached hereto. Plaintiffs independently verified Mr. Safieddine's involvement as: (1) "Co-Founder" and "Attorney" for Teleserve Plus SAL (also designated by the U.S. Treasury on July 10, 2014 as part of the Amhaz Network), Exhibit 3 attached hereto; (2) "Founder" and "Attorney" of West Oil Investments Company (Offshore) SAL, Exhibit 4 attached hereto; and (3) "Co-Founder, "Director," "Shareholder" and "Attorney" for Creative Investment (Offshore) SAL, Exhibit 5 attached hereto.

---

[3]   Mr. Safieddine also moves to strike Paragraph 352 on the vague grounds that it "repeat[s] Mr. Safieddine's name to give the imprimatur of the wrongdoing." However, the assertion in Paragraph 352 is accurate: Hiba Shawqi Shadhbek is listed as the "Attorney" for Stars Communications Ltd (also designated on July 10, 2014 as part of the Amhaz Network), Exhibit 6 attached hereto, but she is also actively involved in a half-dozen other companies together with Mr. Safieddine.

The C4ADS Report states in part:

> Separately, **Hussein Fahd Rahal, Jihad Hussein El Annan, and Achraf Assem Safieddine** have each, at one time, been listed on Lebanese Ministry of Justice documents alongside Kamel Amhaz. These three individuals have also been associated with a number of other Lebanese companies, often overlapping in corporate affiliations, as shown in the chart below. This network includes a company named **Special Operations Group**, founded by Kamel Amhaz, which renewed a weapons import license through the Lebanese government that was valid through 2016. According to records from the Lebanese Ministry of Justice, Amhaz may no longer hold shares in the company, but it appeared to be active as of May 2018.
>
> Achraf Assem Safieddine is a lawyer active in Lebanon who appeared on Lebanese Ministry of Justice records as the legal representative for the sanctioned company **Teleserve Plus**. Safieddine was also affiliated with two of Kamel Amhaz's unsanctioned companies in Lebanon, as well as 17 other companies alongside the aforementioned El Annan and Rahal. In addition to these 19 companies, there are 62 additional telecommunications, shipping, and trade companies for which Safieddine is a legal representative, shareholder, founder, or director. Safieddine's law offices claim to have a sister company in the US, an angle explored further below.
>
> Safieddine has been associated with two Lebanese law firms, **Law Offices of Achraf A. Safieddine** and **Safieddine, Khoury and Jezzni Law Office**. The first law firm's website, as of May 2018, listed services including offshore company incorporation (including in multiple secrecy jurisdictions), real estate acquisition in Lebanon and the US, and advice on legal defense regulations for the US, Lebanon, Qatar, the Czech Republic, and other jurisdictions. Through this firm, Safieddine has been associated with at least four companies dealing in weapons and security. Two of the security companies that the law firm claimed to have worked with were founded, owned, or managed by Safieddine, El Annan, Rahal, or Kamel Amhaz.

Exhibit 2 at 50.

The report also provides a link analysis image linking Mr. Safieddine's activities to those of other members of the Amhaz Network.



In sum, Plaintiffs have a good faith basis to believe that Mr. Safieddine is an attorney who has been associated with the Amhaz Network, including the three companies specified in Paragraph 348, one of which is a designated SDGT.

As for Mr. Safieddine's objection to the statement that he was "accused of money laundering" in connection with his work for Creative Investment (Offshore) SAL, the C4ADS Report states:

> One of Safieddine's business partners in West Oil Investment, **Jamal Abdelhussein Basma**, was blacklisted in 2001 by the UN and prohibited from traveling due to his role as an "informal advisor" to former Liberian President Charles Taylor. Despite this restriction, the Liberian Chamber of Commerce listed Basma as President of West Oil Investment in Liberia as recently as April 2018. Both Basma and Safieddine were also listed as officers in the Lebanon-based **West Oil Investments Co Sal Off Shore**, for which Safieddine appeared as a registered founder and legal representative in Lebanese Ministry of Justice documents, while Basma appeared as a founder, shareholder, manager, authorized signatory, and the President of the Board in Lebanese Ministry of Justice documents.

> Previous investigations by the UN Panel of Experts (UNPOE) in Liberia found that West Oil Investment, along with two other companies tied to Basma, colluded with **Edwin Melvin Snowe**, former director of the state-owned Liberian Petroleum and Refining Company (LPRC), who also happens to be the former son-in-law of Charles Taylor. West Oil was accused of defrauding the UN Mission in Liberia (UNMIL) of $1.77 million by overcharging UNMIL. In August 2004, the UN, under Security Council Resolution 1532, froze Snowe's assets for his involvement in this corrupt self-enrichment scheme.

The UNPOE investigation also discovered that throughout this corruption scheme, Snowe maintained a personal bank account in Lebanon that received hundreds of thousands of dollars from the Lebanese company **Creative Investments SAL**.[4] These transfers continued after Snowe's assets were frozen by the UN in 2004. Corporate records published by the Lebanese Ministry of Justice listed four employees for Creative Investments SAL, three of whom are Jamal Abdelhussein Basma, **Ghassan Basma** (his relative), and Achraf Safieddine, who was listed as the company's founder, shareholder, member of the board, and legal representative. This discovery suggests that not only did Safieddine have ties to the company that allegedly originated the fraud and corruption scheme, but he also had a connection to the company that transmitted the corrupt proceeds from Liberia to Lebanon, likely through the international financial system.

Exhibit 2 at 51 (bold in original, underlining added, footnotes omitted).

Mr. Safieddine is not a defendant in the *Bartlett* case, nor does the Complaint specifically allege that he has violated any U.S. laws, but he *does* admit to a pre-July 2014 business relationship with SDGTs (which the public record supports), *was* a co-founder of another SDGT, Teleserve Plus, and the United Nations *did* issue a report implicating another company he was involved in (Creative Investment (Offshore) SAL) in suspicious financial activities associated with fraud and corruption in Liberia.[5]

In sum, Mr. Safieddine's ties to the Amhaz Network are a matter of documented fact, and the Complaint's allegations are accurate as stated. Any reputational harm Mr. Safieddine may suffer from *inferences* the public might draw from his past or current associations is a function of his choice of business associates and not due to any impropriety in the Complaint.

Respectfully submitted,

/s/ Gary M. Osen

cc: All counsel via ECF

---

[4] The U.N. report is accessible at http://www.poa-iss.org/CASAUpload/ELibrary/S-2007-340-Ex-Liberia-E.pdf (last accessed March 4, 2019) at 24.

[5] On July 27, 2018, *The Wall Street Journal* published an article that discussed the C4ADS report and quoted Mr. Safieddine's response to allegations that he was involved with Mr. Amhaz in a company that imported weapons. *See* Exhibit 7 attached hereto.