UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ROBERT BARTLETT, *et al.*,                :
                                          :
       Plaintiffs,                      :   **Case No. 19-cv-7 (CBA)(VMS)**
                                          :
-against-                                 :
                                          :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,  :
*et al.*,                                 :
                                          :
       Defendants.                      :
------------------------------------------------------------------------x

# PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO ACHRAF SAFIEDDINE'S MOTION FOR LIMITED INTERVENTION

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................ ii

I.    INTRODUCTION ............................................................................................................... 1

II.   STATEMENT OF FACTS .................................................................................................. 4

III.  ARGUMENT ....................................................................................................................... 6

  A.  Movant Fails to Meet the Legal Standard Required for Rule 24 Intervention. ................... 6

  B.  Movant's Motion Must Fail Because He Cannot Prevail on His Rule 12(f) Motion. ......... 8

  C.  Granting Movant's Motion to Intervene Would Necessitate Considerable Satellite
      Litigation to Determine the Full Extent of Mr. Safieddine's Ties to Hezbollah and Its
      Money Laundering Operations. ......................................................................................... 10

IV.   CONCLUSION .................................................................................................................. 11

## TABLE OF AUTHORITIES

**Cases**

*In re PaineWebber Inc. Ltd. Partnerships Litig.*,
   94 F.3d 49 (2d Cir. 1996) ................................................................................................. 4

*Jane Doe 1 v. United States*,
   No. 08-cv-80736 (KAM), 2015 WL 11254692 (S.D. Fla. Apr. 7, 2015) ................................ 7

*Landesbank Baden-Württemberg v. RBS Holdings USA, Inc.*,
   14 F. Supp. 3d 488 (S.D.N.Y. 2014) ................................................................................... 1

*Lipsky v. Commonwealth United Corp.*,
   551 F.2d 887 (2d Cir. 1976) ........................................................................................ 1, 10

*Lynch v. Southampton Animal Shelter Found., Inc.*,
   278 F.R.D. 55 (E.D.N.Y. 2011) .......................................................................................... 8

*Sackman v. Liggett Grp., Inc.*,
   167 F.R.D. 6 (E.D.N.Y. 1996) ............................................................................................ 6

*Schneider v. Dumbarton Developers, Inc.*,
   767 F.2d 1007 (D.C. Cir. 1985) ......................................................................................... 4

*Sunshine Cellular v. Vanguard Cellular Systems, Inc.*,
   810 F. Supp. 486 (S.D.N.Y. 1992) ..................................................................................... 8

*Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*,
   No. 16-cv-4254 (KPF), 2017 WL 5905574 (S.D.N.Y. Nov. 29, 2017) ................................ 8

**Statutes**

18 U.S.C. § 2333 ........................................................................................................................ 2

**Rules**

Fed. R. Civ. P. 12(f) ........................................................................................................ 1, 4, 9, 11
Fed. R. Civ. P. 21 ....................................................................................................................... 7
Fed. R. Civ. P. 24 ............................................................................................................... *passim*

I.      INTRODUCTION

Movant Achraf Safieddine seeks to intervene in this action for the limited purpose of moving to strike two paragraphs from the Complaint on the purported basis that the allegations contained therein are "outrageous, scandalous and impertinent," Movant's Memorandum of Law in Support of his Motion to Intervene ("Movant's Brief" or "Mem.") at 1, and "politically motivated." Mem. at 2. Movant's motion to intervene should be denied because he cannot articulate the type of interest required for intervention under Fed. R. Civ. P. 24. Even if the Court found that Mr. Safieddine cleared Rule 24's high threshold, the remedy he seeks – striking portions of a pleading under Fed. R. Civ. P. 12(f) – is extreme and generally disfavored. And in this Circuit, when considering whether to strike complaint allegations on a Rule 12(f) motion "on the ground that the matter is impertinent and immaterial, it is settled that the motion will be denied unless it can be shown that no evidence in support of the allegation would be admissible." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976). *See also id.* ("[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint on the grounds that the material could not possibly be relevant on the sterile field of the pleadings alone."). To prevail on a motion under Rule 12(f), the moving party must show "that (1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Landesbank Baden-Württemberg v. RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014) (internal quotation marks and citation omitted).

Movant's brief does not challenge the accuracy of the *actual* statements contained in the two paragraphs of the Complaint that refer to Mr. Safieddine; nor do the exhibits to his declaration relate to the companies identified in the paragraphs at issue. Instead, Movant's brief focuses on

*inferences* that may be drawn from Mr. Safieddine's unsavory associations. Mr. Safieddine concedes that he acted as the lawyer for Amhaz Network companies during the time period relevant to the Complaint. Moreover, Mr. Safieddine cannot dispute the fact that as "founder" and "attorney" for a company called Creative Investment (Offshore) SAL, he and others were "accused of money laundering." Movant's Brief asserts that the Complaint itself states that "he was involved with a scheme of 'fraud,' 'corruption' and 'money laundering.' Mem. at 3. Since the *accusations* are a matter of public record, Movant's Brief simply drops the word "accused" from its description of the offending language.

Further, the assertions set forth in paragraphs 348 and 352 are not only true and supportable by admissible evidence previously submitted to this Court, *see* Plaintiffs' March 4, 2019 Ltr. to Hon. Amon, ECF No. 70, but they are also relevant to this action. Plaintiffs have alleged that the 11 Defendant banks provided material support to and aided and abetted Hezbollah in violation of 18 U.S.C. § 2333(a) and (d). Specifically, Plaintiffs have alleged that these banks held accounts and provided financial services for interlocking networks of entities and individuals that are part of Hezbollah's Business Affairs Component ("BAC"), the financial backbone of Hezbollah's militant wing, the Islamic Jihad Organization. To succeed in their claims, Plaintiffs must prove that (1) the entities and individuals identified are part of Hezbollah's networks; (2) Defendants knew or were deliberately indifferent to the fact that these entities and individuals were part of the BAC and other Hezbollah networks; and (3) Defendants aided and abetted and provided financial services to those entities and individuals.

Some Hezbollah organizations such as the Islamic Resistance Support Organization (which held accounts with Defendants Fransabank, Byblos Bank, Lebanon & Gulf Bank, Jamal Trust Bank and Banque Libano-Française, Complaint at ¶ 399), the Martyrs Foundation (which held

2

accounts with Defendants Byblos Bank, Lebanon & Gulf Bank, Jamal Trust Bank, Bank of Beirut and Bank Audi, *id.* at ¶¶ 482-498), and the Imam Khomeini Foundation (which held accounts with Defendants Middle East Africa Bank, *id.* at ¶ 1010) are openly and notoriously affiliated with Hezbollah, and are designated as Specially Designated Global Terrorists ("SDGTs") by the Department of Treasury. Other, less public nodes within the vast Hezbollah networks have also been designated, including significant numbers of BAC entities and individuals – like the Amhaz brothers. However, these networks are so sprawling, new BAC companies propagate so quickly, and designated entities reconstitute in new forms so readily once they are designated, that it is not possible for the Department of Treasury to designate every entity and individual that is part of the BAC and other Hezbollah networks. Thus, while the Lebanese business community and its banking sector are highly aware of which entities and individuals are affiliated with Hezbollah, establishing those connections is far more difficult for anyone analyzing these networks from outside the tight-knit world of Lebanese commerce.

    The Complaint therefore goes to great lengths to outline the ways in which the BAC and other Hezbollah networks overlap through interconnected ownership structures and the employment of a stable of Lebanese lawyers and accountants that set up and handle the paperwork for these entities. Specifically, a recurring list of Lebanese attorneys have long played a critical role in setting up the corporate structures used by the BAC. These ever-evolving corporate structures, which are created and torn down in the wake of U.S. terrorism-threat financing sanctions, constitute one element of circumstantial evidence of the Defendant banks' knowledge that particular entities were controlled by the BAC. Plaintiffs have alleged – among other things – the recurrent appearance of the same shareholders, lawyers and accountants who, like Mr. Safieddine, appear repeatedly in connection with both designated and undesignated BAC-

3

controlled entities. Far from irrelevant, let alone "politically motivated," Mem. at 2, paragraphs 348 and 352 are part of a meticulous and detailed effort to map a small part of the daunting network that has for decades relied upon Defendants to gain access to the U.S. financial system and launder billions of dollars for Hezbollah's benefit.

Mr. Safieddine's motion is futile, as even if he is permitted to intervene as of right or permissively for the limited purpose of bringing a Rule 12(f) motion, the Rule 12(f) motion will surely fail. He is, however, correct in two respects: He is not (yet) a party to this action and Plaintiffs have not yet made any allegation that any company he is associated with maintained accounts with one of the Defendants. However, should the Court grant Mr. Safieddine's motion to intervene, he would be treated as a party[1] and the full scope of his involvement in Hezbollah-affiliated companies, including, but not limited to, the one designated entity associated with him listed in the Complaint, would become central to the eventual disposition of his Rule 12(f) motion (*see* section III.C *infra*).

## II.   STATEMENT OF FACTS

If permitted to intervene in this action, Mr. Safieddine intends to move pursuant to Rule 12(f) to strike the following two paragraphs of the Complaint:

> 348.   Ashraf Assem Safieddine is the attorney most associated with the Amhaz Network of companies. Among others, he is the attorney for:
>
> - **Teleserve Plus SAL** (discussed above);
> - **West Oil Investments Company (Offshore) SAL**: Involved in illicit activity; and
> - **Creative Investment (Offshore) SAL**, a company that originated a fraud and corruption scheme, through which its staff, among them Ashraf Safieddine, were accused of money laundering.

---

[1] Although Rule 24 does not explicitly bestow the status of "party" on an intervenor, it is well-settled that once a court approves an application for intervention, the intervenor "becomes a full participant in the lawsuit and is treated just as if it were an original party." *Schneider v. Dumbarton Developers, Inc.*, 767 F.2d 1007, 1017 (D.C. Cir. 1985); *accord In re PaineWebber Inc. Ltd. Partnerships Litig.*, 94 F.3d 49, 52 (2d Cir. 1996) (intervenor becomes a party when motion to intervene is granted).

4

> 352.  Hiba Shawqi Shadhbek is an attorney who participates in the Amhaz Network by way of affiliation with Ashraf Assem Safieddine.

Mr. Safieddine does not deny that he was affiliated with the Amhaz brothers prior to their July 2014 designation by the Department of Treasury as SDGTs, but he asserts that he has not affiliated with them since he "was informed of the . . . sanctions against [them]." Safieddine Decl. at ¶¶ 10-11, 16. He also objects to the statement that he, among others, was accused of money laundering in connection with his work for Creative Investment (Offshore) SAL – inaccurately paraphrasing the Complaint to omit the words "were accused," to elide that the Complaint is citing public documents, including a United Nations report. *Id.* at 13.[2]

The bulk of Mr. Safieddine's declaration ("Safieddine Decl.") is devoted to asserting that certain allegations contained within a report produced by the Center for Advanced Defense Studies, Inc. (the "C4ADS Report") are false. However, the only relevant allegations *here* are the those contained within the two paragraphs that Mr. Safieddine seeks to strike from the Complaint. Plaintiffs have previously provided the Court with a copy of the C4ADS report to demonstrate that (i) Creative Investment (Offshore) SAL through its staff, among them Ashraf Safieddine*,* "were accused of money laundering" and (ii) the C4ADS report's statement to that effect was itself based on a United Nations report.[3] Although there is no reason to believe that the C4ADS report is

---

[2]  Mr. Safieddine has also stated his intention to move to strike Paragraph 352 on the vague grounds that it "repeat[s] Mr. Safieddine's name to give the imprimatur of the wrongdoing." *Id.* However, the assertion in Paragraph 352 is accurate and uncontested by Mr. Safieddine: Hiba Shawqi Shadhbek is listed as the "Attorney" for Stars Communications Ltd (also designated on July 10, 2014 as part of the Amhaz Network). *See* Pls. March 4, 2019 Ltr., ECF No. 70, Ex. 6, and https://www.treasury.gov/press-center/press-releases/Pages/jl2562.aspx. She is also actively involved in a half-dozen other companies with Mr. Safieddine – another fact he does not contest.

[3]  A copy of the report was previously provided to the Court in Plaintiffs' March 4, 2019 letter, ECF No. 70, Ex. 2. The U.N. report is accessible at http://www.poa-iss.org/CASAUpload/ELibrary/S-2007-340-Ex-Liberia-E.pdf (last accessed March 4, 2019).

inaccurate in any meaningful respect, a motion to intervene in this case is not the appropriate vehicle for Mr. Safieddine to adjudicate his dissatisfaction with that report.

### III.     ARGUMENT

#### A.     Movant Fails to Meet the Legal Standard Required for Rule 24 Intervention.

Mr. Safieddine seeks to intervene in this case as of right under Fed. R. Civ. P. 24(a)(2),[4] to protect an alleged "interest related to the property or transaction that is the subject of the action, where the disposition of the action may impair or impede [his] ability to protect that interest, and where [his] rights are not adequately protected by the existing parties." Mem. at 10. The Moving Brief relies primarily upon *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20-21 (E.D.N.Y. 1996), which addressed the potential adverse effect of a court decision ordering disclosure of privileged communications of two third parties. However, the *Sackman* court never reached the issue of whether a potential reputational injury would constitute sufficient grounds to intervene under Rule 24: "While the Court would be inclined to grant CTR's request for limited intervention under either Fed.R.Civ.P. 24(a)(2), or Rule 24(b), based on this alleged reputation injury, it need not reach this issue. Both the CTR's and the tobacco products manufacturers' interest in protecting its privileged communications are sufficient to support their motions." *Id.* at 21.

Notwithstanding the *Sackman* court's dicta relied upon by Mr. Safieddine, Mem. at 11, Mr. Safieddine's facts are inapposite to those presented here. *Sackman* involved privileged communications that had yet to be disclosed to the public, and the intervention was sought to protect that information. By contrast, in this case, Mr. Safieddine takes issue with accurate, publicly available, open-source information.

---

[4]     Mr. Safieddine contends that he is also entitled to permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1). Mem. at 11. As shown herein, this request is also groundless.

6

Movant's reliance on *Jane Doe 1 v. United States*, No. 08-cv-80736 (KAM), 2015 WL 11254692 (S.D. Fla. Apr. 7, 2015) as grounds for permitting intervention to strike "scandalous matters," Mem. at 10, is misplaced. First, the case never reached the issue of Rule 24 intervention. Certain Jane Does moved to join the proceedings under Fed. R. Civ. P. 21, and in doing so alleged that non-party Alan Dershowitz had participated in Jeffrey Epstein's alleged sex trafficking of under-aged girls. Mr. Dershowitz then sought to intervene under Rule 24 to "strike the outrageous and impertinent allegations made against him." 2015 WL 11254692, at *3. The Court denied Mr. Dershowitz's motion as moot, because it instead struck *sua sponte* the allegations at issue in the Rule 21 motion—*not* because they were scandalous, but because they were "unnecessary to the determination of whether [movants] should be permitted to join Petitioners' claim …. The factual details regarding with whom and where the Jane Does engaged in sexual activities are immaterial and impertinent to the central claim (i.e., that they were known victims . . . and the Government owed them CVRA duties) …." *Id.* As shown below, the allegations at issue here are relevant to Plaintiffs' claims. Moreover, unlike Mr. Safieddine, Mr. Dershowitz did not contest the allegations because he claimed to have *ceased* engaging in the conduct alleged or because the allegations stated that he was *accused* of involvement in some unlawful conduct.

Accordingly, Mr. Safieddine cites no authority in which "reputational harm" was recognized as the basis for a third party's motion to intervene under Rule 24, much less when the *stated* allegations at issue were not denied. Incredibly, Mr. Safieddine asserts instead that he faces the likelihood of "physical harm at any time by the *real* agents of Hezbollah, on me, personally, and my family, including my wife and three children," Safieddine Decl., ¶ 53, *not* because of his association with designated Hezbollah operatives; *not* because that association was described in a

7

report by a think tank and *not* because it was described in *The Wall Street Journal*, but because of two (factually accurate) paragraphs in a 4,496 paragraph complaint.

Having failed to meet Rule 24's requirements, Movant is therefore left only to argue that the allegations contained in paragraphs 348 and 352 are irrelevant to this case. As discussed below, this argument is also without merit.

### B. Movant's Motion Must Fail Because He Cannot Prevail on His Rule 12(f) Motion.

Motions to strike "are not favored, and will be denied unless the allegations have no possible relation to the controversy." *Sunshine Cellular v. Vanguard Cellular Systems, Inc.*, 810 F. Supp. 486, 499 (S.D.N.Y. 1992) (citing *Laverpool v. New York City Transit Auth.*, 760 F. Supp. 1046, 1061 (E.D.N.Y. 1991)). "[T]here has arisen since the adoption of [Rule 12(f)] general judicial agreement, as reflected in the extensive case law on the subject that [motions to strike under Rule 12(f)] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." *Trodale Holdings LLC v. Bristol Healthcare Investors, L.P.*, No. 16-cv-4254 (KPF), 2017 WL 5905574, at *15 (S.D.N.Y. Nov. 29, 2017), (quoting *VNB Realty, Inc. v. Bank of Am. Corp.*, No. 11-cv-6805 (DLC), 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 13, 2013)). Accordingly, in order to succeed on his Rule 12(f) motion, Mr. Safieddine would have to demonstrate that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." *Lynch v. Southampton Animal Shelter Found., Inc.*, 278 F.R.D. 55, 63 (E.D.N.Y. 2011) (quoting *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)).

As discussed above, Mr. Safieddine cannot reach the second or third requirements of Rule 12(f) because he has failed the first. But even if the second requirement were assessed, Mr. Saffiedine would not satisfy it because the allegations have a clear bearing on the issues in the case. Plaintiffs allege that Hezbollah's BAC operates as an interconnected network of individuals and companies. *See, e.g.*, Complaint ¶ 1146. Plaintiffs provide detailed allegations setting forth (a part of) the network's components, how the networks operate, and the critical role Defendants have played in facilitating the network's operations. One component of the network is the alleged role a stable of Lebanese attorneys, like Mr. Safieddine, have played in setting up the corporate structures used by Hezbollah's BAC. *See id.*, ¶¶ 342-62. The common links between different companies and sub-networks within the BAC's network constitute circumstantial evidence of various companies' participation in the network and Defendants' knowledge that particular entities were controlled by the BAC.

One node of that larger BAC network is the Amhaz Network. *See id.*, ¶¶ 332-34. As the Department of Treasury noted when it designated several of its component parts as SDGTs:

> The U.S. Department of the Treasury targeted a key Hizballah procurement network today by designating brothers Kamel and Issam Mohamad Amhaz, their consumer electronics business Stars Group Holding based in Beirut, Lebanon, its subsidiaries, and certain managers and individuals who support their illicit activities. Today's actions were taken pursuant to E.O. 13224, which targets terrorists and those providing support to terrorists, or acts of terrorism.[5]

Plaintiffs respectfully submit that the allegations regarding Mr. Safieddine bear directly upon central controversies of this litigation, namely that: (1) there exists a network of corporate entities controlled by Hezbollah that the terrorist organization uses for illicit purposes; (2) this web

---

[5] *See* Press Release, U.S. Dep't of the Treasury, "Treasury Sanctions Procurement Agents Of Hizballah Front Company Based in Lebanon With Subsidiaries In The UAE And China," (July 10, 2014), *available at* https://www.treasury.gov/press-center/press-releases/pages/jl2562.aspx.

9

of front companies and corporate entities propagates too quickly for the U.S. government to designate them all comprehensively; and (3) the defendant Lebanese banks *know* that these entities are part of Hezbollah's BAC, yet have continued to provide them with access to the U.S. financial system.

Mr. Safieddine may challenge his relevance to this litigation, but "questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided," and should not be decided on the "sterile field of the pleadings alone." *Lipsky*, 551 F.2d at 893.

> C.  **Granting Movant's Motion to Intervene Would Necessitate Considerable Satellite Litigation to Determine the Full Extent of Mr. Safieddine's Ties to Hezbollah and Its Money Laundering Operations.**

In the event that Mr. Safieddine were permitted to intervene pursuant to Rule 24, his Rule 12(f) motion would necessitate extensive discovery because it would be predicated on a series of statements that Plaintiffs would be entitled to test. Namely, while Mr. Safieddine does not directly contest the *stated* allegations in the two paragraphs at issue, he contends that they create a negative and untrue inference, rebuttable by a series of assertions, including:

- "[T]he alleged connections between" Mr. Safieddine and the Amhaz brothers "are nonexistent." Safieddine Decl., ¶ 15.

- Mr. Safieddine "formally (and informally) dissociated [him]self with the Amhaz brothers . . . dating back to July 2014—as soon as [he] was informed of the U.S. Department of Treasury's sanctions against the Amhaz brothers." *Id.*, ¶ 16.

- That Mr. Safieddine's "role in filing and assisting with business formation in Lebanon was ministerial in nature and no different than LegalZoom's role in filing and assisting with business formation in the U.S." *Id.*, ¶ 27.

By making representations to the Court that are outside the four corners of the Complaint, Mr. Safieddine has further opened the door to discovery of his relationship with persons and entities affiliated with Hezbollah, including the Amhaz brothers. To address these assertions, as

10

well as his claims of reputational harm, in the course of Rule 12(f) motion practice, Plaintiffs would need to explore the full range of his financial relationships and communications with participants in Hezbollah's financial networks.

Plaintiffs respectfully submit that neither Rule 24 nor Rule 12(f)'s requirements are met here, but to the extent that the Court wishes to provide Mr. Safieddine an opportunity to "clear his name" in these proceedings, Plaintiffs are prepared to test the factual assertions he has made to this Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court should deny Mr. Safieddine's motion for limited intervention.

Dated: April 8, 2019

By   /s/ Gary M. Osen
**OSEN LLC**
Gary Osen, Esq.
William Friedman, Esq.
2 University Plaza, Suite 402
Hackensack, NJ 07601
(201) 265-6400
(201) 265-0303 Fax


**TURNER & ASSOCIATES, P.A.**
Tab Turner, Esq.
(*pro hac vice* to be submitted)
4705 Somers Avenue, Suite 100
North Little Rock, AR 72116
(501) 791-2277

**MOTLEY RICE, LLC**
John M. Eubanks, Esq.
(*pro hac vice* to be submitted)
28 Bridgeside Boulevard, P.O. Box 1792
Mount Pleasant, South Carolina 29465
(843) 216-9000

Attorneys for Plaintiffs