

Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, D.C.  20037

O   +1 202 457 6000
F   +1 202 457 6315
squirepattonboggs.com

Gassan A. Baloul
T   +1 202 457 6155
gassan.baloul@squirepb.com

May 31, 2019

**VIA ECF**

Hon. Carol Bagley Amon
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: *Bartlett, et al. v. Société Générale de Banque au Liban SAL, et al.*, **Case No. 19-cv-007 (E.D.N.Y.)**

Dear Judge Amon:

This law firm represents MEAB s.a.l. (sued as Middle East Africa Bank) ("MEAB"), one of the Defendants in the above-referenced action. Pursuant to Section 3(A) of the Court's Individual Motion Practices and Rules and its February 27, 2019 Order, we write to request a pre-motion conference in advance of MEAB's motion to dismiss. MEAB joins and incorporates by reference herein the letter filed jointly today by all Defendants. We submit this separate letter to further address two issues: (1) Plaintiffs' third claim, alleging conspiracy against MEAB (and Société Générale de Banque au Liban ("SGBL")); and (2) factors specific to MEAB that make clear that Plaintiffs cannot establish personal jurisdiction.

**(1)  Plaintiffs' conspiracy claim against MEAB should be dismissed.** Plaintiffs' third claim alleges MEAB is liable under 18 U.S.C. § 2333(d) of the Antiterrorism Act of 1990 ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), for conspiring with Hezbollah. (Compl. at 579-580.) This claim must be dismissed because Plaintiffs have not alleged facts that, if true, would show MEAB conspired to commit any act of international terrorism, or conspired with the individuals or entities who committed the attacks from which Plaintiffs' injuries arise.

"The crux of any conspiracy is an agreement between the co-conspirators." *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 394-96 (7th Cir. 2018). "Although 'a conspirator [need] not agree to commit or facilitate each and every part of the offense,' she must 'reach an agreement with the *specific intent* that' the conspiratorial goal be completed." *Id.* (quoting *Ocasio v. United States*, 136 S. Ct. 1423, 1429 (2016)). "The plain language . . . suggests that JASTA liability lies where the secondary tortfeasor [conspired with] the principal tortfeasor in committing such an act of international terrorism. . . . In other words, to be subject to secondary liability under JASTA on the

Squire Patton Boggs (US) LLP is part of the international legal practice Squire Patton Boggs, which operates worldwide through a number of separate legal entities.

Please visit squirepattonboggs.com for more information.

Squire Patton Boggs (US) LLP

VIA ECF

Hon. Carol Bagley Amon
May 31, 2019

basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism." *O'Sullivan v, Deutsche Bank AG,* 2019 U.S. Dist. LEXIS 53134, *35-38 (S.D.N.Y. Mar. 28, 2019). "A person who is indifferent to the goals of an ongoing conspiracy does not become a party to this conspiracy merely because that person knows that his or her actions might somehow be furthering that conspiracy." *Kemper*, 911 F.3d at 394-396 (internal quotations omitted) (dismissing claim where facts suggested bank "engaged in business dealings that incidentally assisted a separate terrorism-related conspiracy involving Iran" but not that the bank "ever agreed to join that conspiracy.").

Here, Plaintiffs do not allege that MEAB "conspired to commit an act of international terrorism," as required under JASTA. Rather, they allege MEAB "was involved in Hezbollah's conspiracy to *launder narcotics trafficking proceeds* through the sale of used cars in Africa." (Compl. ¶ 1008 (emphasis supplied).) Plaintiffs further allege that MEAB "conspired with FTO Hezbollah . . . to provide Hezbollah with illegal material support in the form of financial services" to persons affiliated with Hezbollah. (*Id.*, ¶¶ 4487-4488.) Plaintiffs have not alleged that MEAB *knew* that any individuals or entities to which it provided routine banking services were affiliated with Hezbollah. Even if Plaintiffs could establish such knowledge, it would be insufficient to show that MEAB conspired to commit terrorist *acts*. As the Second Circuit has recognized, secondary liability for "an *act* of international terrorism requires more than the provision of material support to a designated terrorist *organization*." *Linde v. Arab Bank, PLC*, 882 F.3d 314, 327 (2d Cir. 2018).

In addition, under JASTA, conspiracy liability applies only to a defendant "who conspires with the person who committed" the act of international terrorism—to be distinguished from "the person who . . . planned[] or authorized" the act. *Weiss v. Nat'l Westminster Bank PLC*, 278 F. Supp. 3d 636, 650 (E.D.N.Y. 2017). Here, the Complaint does not allege that Hezbollah (the organization with which MEAB allegedly conspired) committed any of the attacks at issue. Rather, the Complaint alleges that "Special Groups"—*i.e.*, Iraqi paramilitary cells—committed the attacks, and that Hezbollah "directed" those groups or was involved in training or providing weapons to the attackers. This is insufficient to create conspiracy liability under *Weiss. See also O'Sullivan*, 2019 U.S. Dist. LEXIS 53134, *37 (dismissing claims where complaint failed to demonstrate that banks "entered into any agreements with the FTOs that committed the attacks at issue"). The Complaint does not allege that MEAB conspired with, or had *any* contact with, any Special Group. Indeed, Plaintiffs do not even identify which particular Special Group committed most of the attacks.

Plaintiffs also have not alleged that any agreement between MEAB and Hezbollah proximately caused their injuries. In the ATA context, courts are particularly wary of permitting plaintiffs to use conspiracy allegations to circumvent the proximate cause requirement. *See Kemper*, 911 F.3d at 395-396 ("If [plaintiff's] conspiracy liability theory could succeed on these facts, it would undermine the causation analysis required by the ATA's use of the phrase 'by reason of.' . . . The further down the causal chain a defendant sits, the more diligent a plaintiff must be to plead facts that plausibly suggest that the defendant entered into an agreement to support terrorism."). Here, Plaintiffs have not alleged that MEAB agreed to commit an act of international terrorism, or that MEAB conspired with the individuals or entities that committed the attacks at issue. Further, the Complaint shows that MEAB's routine banking services cannot have been the *proximate* cause of Plaintiffs' injuries because funds allegedly were directed to Hezbollah by intermediaries—"money exchange businesses in Lebanon"—*not* by MEAB. (Compl. ¶ 1009.)

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Carol Bagley Amon
May 31, 2019

**(2) Plaintiffs Have Not Plead Facts Sufficient to Establish Jurisdiction.** Plaintiffs admit MEAB is a Lebanese bank headquartered in Beirut. (*See* Compl. ¶¶ 69-70.) It cannot be "at home" here, as required for general jurisdiction. *See Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014); *Waldman v. PLO*, 835 F.3d 317, 331 (2d Cir. 2016).

Nor have Plaintiffs alleged facts that would permit the exercise of specific jurisdiction here. For specific jurisdiction, Plaintiffs must demonstrate that "the defendant's *suit-related conduct*—their role in the . . . terror attacks at issue—creates a *substantial connection* with the forum State pursuant to the ATA." *Waldman*, 835 F.3d at 335 (emphasis added). In an ATA case, "[t]he relevant 'suit-related conduct'" is "the conduct that could have subjected [defendant] to liability under the ATA." *Id.* When the defendant is a bank, the financial services must evidence not only "repeated use of New York's banking system," but also that those financial services served "*as an instrument for accomplishing the alleged wrongs* for which the plaintiffs seek redress." *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 171 (2d Cir. 2013) (emphasis added). Accordingly, to assert a *prima facie* basis for specific jurisdiction, Plaintiffs must allege facts that, at a minimum, would establish that: (1) MEAB processed sufficient transfers through its New York correspondents to create a "substantial connection" with the forum; and, (2) those fund transfers gave rise to Plaintiffs' injuries. *Id.*

Plaintiffs have not met this test. They assert that MEAB (along with three other Lebanese banks) "helped knowingly move tens of millions of dollars on behalf of Hezbollah" through New York between 2007 and 2011. (Compl. ¶ 1009.) But Plaintiffs have not shown the requisite causal connection between the alleged transfers through New York and the attacks in Iraq at issue. They thus fail to show "conduct" by MEAB, in or directed at the United States, "that could have subjected [it] to liability under the ATA," as *Waldman* and *Licci* require. Plaintiffs have not identified a single dollar transferred through MEAB's correspondent accounts that substantially assisted in any attack or was ultimately transferred to any Special Group. Further, the dollar value of MEAB's alleged financial transfers through the U.S. was a small fraction of Hezbollah's alleged "$1 billion dollars a year" in funding and "[i]ts estimated enterprise value . . . worth billions of U.S. dollars." (Compl. ¶¶ 8, 223.)

Nor is the theory of "conspiracy jurisdiction," *see Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68 (2d Cir. 2018), availing. Plaintiffs cannot satisfy the requirements "that (1) a conspiracy existed; (2) [MEAB] participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that coconspirator to jurisdiction in that state." *Id.* at 87. For the reasons stated in Defendants' joint letter, Plaintiffs have not presented a *prima facie* case of jurisdiction over *any* Defendant. There is no non-conclusory allegation that any transaction processed through any correspondent bank in New York involving MEAB was "in furtherance of" any purported conspiracy. Plaintiffs have not alleged that MEAB conspired to commit the acts that give rise to their injuries. Finally, the U.S. enforcement actions against alleged co-conspirator Lebanese Canadian Bank ("LCB") (Compl. ¶¶ 928, 932-33), do not implicate MEAB in LCB's alleged activities. *See Contant v. Bank of Am. Corp.*, 17 Civ. 3139 (LGS), 2019 U.S. Dist. LEXIS 84251, *15-20 (S.D.N.Y. May 17, 2019) (rejecting conspiracy jurisdiction over banks not implicated in U.S. enforcement actions against other defendants). Put simply, Plaintiffs have not plausibly alleged *either* a conspiracy involving MEAB *or* jurisdiction over MEAB. They cannot plausibly claim the combination of these insufficient allegations establishes *both*.

Squire Patton Boggs (US) LLP

**VIA ECF**

Hon. Carol Bagley Amon
May 31, 2019

        Respectfully submitted,

        SQUIRE PATTON BOGGS (US) LLP


        */s/ Gassan A. Baloul*
        Gassan Adnan Baloul
        Michell R. Berger
        Squire Patton Boggs (US) LLP
        2550 M Street, NW
        Washington, DC 20037
        202-457-6000
        gassan.baloul@squirepb.com
        mitchell.berger@squirepb.com

        *Attorneys for Defendant MEAB s.a.l.*
        *(sued as Middle East Africa Bank SAL)*

cc: All counsel of record (via ECF)