**ASHCROFT LAW FIRM**

May 31, 2019

**VIA ECF**

Honorable Carol Bagley Amon
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al., 19-cv-007 (E.D.N.Y.)

Dear Judge Amon:

We represent Société Générale de Banque au Liban S.A.L. ("SGBL"), one of the Defendants in the above-referenced matter.  Pursuant to Section 3(A) of Your Honor's Individual Motion Practices and Rules and the February 27, 2019 Order, we submit this letter to request a pre-motion conference in advance of a contemplated motion to dismiss.  This letter incorporates by reference a joint letter submitted by all Defendants, eleven of the largest financial institutions in Lebanon, addressing common issues, including Counts I & II, in which Plaintiffs, U.S. military personnel and their families, assert primary & secondary liability claims under the Anti-Terrorism Act, 18 U.S.C. § 2331, *et seq.* ("ATA").  This letter also incorporates the legal arguments in the letter submitted by MEAB s.a.l. (sued as Middle East and Africa Bank) ("MEAB") addressing Count III, which asserts an ATA conspiracy claim against MEAB and SGBL (strictly as an alleged legal successor).  This letter primarily addresses an issue unique to SGBL, namely, Count IV, which asserts a successor liability claim based on a subsequent asset purchase by SGBL.

**Background.**  SGBL is headquartered in Lebanon and offers an array of banking, insurance, and financial services in Lebanon and in the region.  SGBL is part of the international network of Société Générale, SA, one of the largest European financial services groups.  Almost ten years ago, in an arms-length, all-cash transaction arising from a competitive bidding process, SGBL purchased some, but not all, of the assets & liabilities of non-defendant Lebanese Canadian Bank S.A.L. ("LCB"), which had been designated a financial institution of primary money laundering concern by the United States.  Compl. ¶¶ 51, 52. The asset purchase had the support of not only the Central Bank of Lebanon, but also the U.S. Departments of Treasury and Justice.  SGBL worked for many months with independent, international compliance experts and auditors to screen LCB's accounts so SGBL could avoid taking on tainted assets associated with money laundering.  The integrity of the process – and of SGBL itself – was widely reported and recognized at the time, including by U.S. government officials.  For its part, LCB continues as a viable company in Lebanon, and continues to defend ATA lawsuits in federal & state courts in New York.

**Plaintiffs' Claims.**  Plaintiffs' overarching and broad theory is that Lebanese banks somehow bear responsibility under the ATA for injuries to U.S. military personnel in Iraq during the War in Iraq based on the banks' alleged provision of routine banking services to entities that Plaintiffs claim were somehow associated with or controlled by Hezbollah, which allegedly facilitated or supported the attacks (Counts I & II).  Plaintiffs also seek to hold SGBL responsible under successor liability causes of action (Counts III & IV) for the prior alleged conduct of LCB, which Plaintiffs conclusory allege conspired and provided material support to terrorists, committed acts of international terrorism, and aided and abetted that conduct in violation of the ATA.

**SGBL's Contemplated Motion to Dismiss.**  SGBL abhors terrorism in all its forms, and believes that the fatalities and injuries to members of the U.S. military serving in Iraq, and the loss suffered by their families and friends, are tragic.  But SGBL had absolutely nothing to do with those injuries.  SGBL therefore plans to move to dismiss Counts I & II for the reasons, and based upon application of standards, in the Joint Letter, and plans to move to dismiss Counts III & IV, the successor liability-based claims against it, for the reasons discussed below.

For the successor claims, the issue before this Court is whether a foreign, good-faith asset purchaser may be forced into U.S. courts to defend civil liability claims under the ATA for the alleged ***pre-transfer conduct*** of another foreign bank under a foreign sales & purchase agreement: (1) where there is no general jurisdiction over either the predecessor or the alleged successor; (2) where Congress has not in the ATA explicitly or by implication provided for a civil successor liability cause of action or remedy against an asset purchaser; (3) where the ATA narrowly defines its extraterritorial reach to "acts of international terrorism," which reaches "violent" and "dangerous" acts ***by culpable actors*** who commit terrorist acts or assist those who do, and not to apply U.S. law (whether federal, state or federal common law) to foreign corporations and foreign business transactions; and, in any event (4) where the traditional U.S. corporate law rule is that a corporation that acquires the assets of another is generally ***not*** liable for the torts of the predecessor. The answer plainly is "no," and Counts III & IV should be dismissed, along with Counts I & II.

*1. Plaintiffs fail to make a prima facie showing that SGBL is subject to personal jurisdiction to permit adjudication of the successor liability-based claims.*  Plaintiffs cannot plausibly allege that this Court has general jurisdiction over SGBL.  *Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014) ("general jurisdiction" limited essentially to where a company is incorporated or has its principal place of business); Compl. ¶¶ 36, 37 (SGBL incorporated and headquartered in Lebanon).  In the absence of general jurisdiction that would allow a plaintiff to pursue any and all claims against a defendant, a plaintiff must allege facts supporting the exercise of specific personal jurisdiction over each claim.  *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to each claim asserted."); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 923 (2011) (defendants cannot be made to answer in a forum "with respect to matters unrelated to the forum connections").

Here, the complaint does not allege any conduct by SGBL in the forum or otherwise that has any connection or relationship to Counts III & IV.  To the contrary, any alleged conduct "proscribed by the ATA" is LCB's, *see* Compl. ¶4495, not SGBL's.  *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 342 (2d Cir. 2016); *id.* at 335 (relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum") (citations and quotations omitted) (emphasis in original); N.Y. CPLR 302(a) (specific jurisdiction proper where cause of action arises out of defendant's "transact[ion of] any business within the state").  The exercise of jurisdiction over SGBL thus plainly would violate due process.  *See Waldman*, 835 F.3d at 343 (defendant's conduct in U.S. must "g[i]ve rise" to the Plaintiffs' injury); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (tortious conduct must be "expressly aimed" at U.S.).

*2. The ATA does not authorize a private civil right of action or remedy against a foreign asset purchaser like SGBL.*  As an initial matter, SGBL is not legally the successor to LCB for any alleged ATA liability based on its asset purchase.  But even assuming jurisdiction were proper and SGBL could be properly considered a "successor," the text of the ATA makes no mention of

successor liability. Instead, it authorizes federal courts to hear claims and impose liability essentially against two categories of culpable defendants: individuals and entities responsible for "acts of international terrorism," and those responsible for aiding and abetting or conspiring in that specific conduct with a foreign terrorist organization. 18 U.S.C. § 2333(a), (d).

Because Congress did not expressly or impliedly authorize a private right of action based on successor liability against a foreign asset purchaser that claim is unavailable. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 179 (1994) (statutory silence on the subject means there is none); *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) ("statutory silence on the subject of secondary liability means there is none"); *cf. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452-53 (2002) ("Where Congress wanted to provide for successor liability in the Coal Act, it did so explicitly"). The ATA's text, structure, purpose, and legislative history support this conclusion, particularly given Congress's clear intent to limit liability to bad actors who knowingly and intentionally commit terrorism or terrorism-related acts. *See* 18 U.S.C. § 2331(1) (defining the term "international terrorism"); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (for secondary liability, defendant must be "aware that, by assisting the principal, it [was] itself assuming a role in terrorist activities").

This result also is compelled by extraterritoriality principles, as the claims purport to apply U.S. law to hold a business incorporated under the law of a foreign country civilly liable for the acts of another foreign corporation. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."); *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016) ("providing a private civil remedy for foreign conduct creates a potential for international friction beyond that presented by merely applying U.S. substantive law to that foreign conduct"); *Jesner v. Arab Bank plc*, 138 S. Ct. 1386, 1405 (2018) (plurality opinion) (declining to find additional corporate liability in part because the ATA "is part of a comprehensive statutory and regulatory regime," which "reflect[s] the careful deliberation of the political branches on when, and how, banks should be held liable").

***3. Even if a successor liability cause of action is implied, Plaintiffs fail to allege facts plausibly showing that SGBL is liable under the ATA, including application of any exceptions to the traditional successor liability rule***. The traditional U.S. common law rule is that an asset purchaser does not become liable for any of the liabilities of the predecessor arising prior to the transfer. Any exceptions to that rule are narrowly construed. Plaintiffs' allegations in support of any successor liability on the part of SGBL are facially insufficient and the claim is simply implausible. Plaintiffs additionally fail to allege facts showing LCB is liable under the ATA, thus undermining any purported SGBL liability. *See* Joint Letter.

***4. Plaintiffs fail to allege facts plausibly showing that SGBL, as alleged successor to LCB, has any conspiracy-related ATA liability.*** For many of the same reasons, Plaintiffs' derivative conspiracy claim (Count III) should be dismissed. Alternatively, the claim should be dismissed because Plaintiffs have not alleged facts plausibly showing LCB conspired to commit an "act of international terrorism," or conspired with the individuals or entities who committed the attacks, or that any alleged agreement proximately caused Plaintiffs' injuries. *See* MEAB Letter.

For purposes of briefing, SGBL proposes submitting a single supplemental brief comprising no more than 50 pages to address the four (4) counts against it.

Respectfully submitted,

/s/ Michael J. Sullivan
Michael J. Sullivan