# ASHCROFT LAW FIRM™

August 16, 2019

**VIA ECF**

Honorable Carol Bagley Amon
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  <u>Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al., 19-cv-007 (E.D.N.Y.)</u>

Dear Judge Amon:

We represent Société Générale de Banque au Liban S.A.L. ("SGBL"), one of the Defendants in the above-referenced matter.  Pursuant to Section 3(A) of Your Honor's Individual Motion Practices, we submit this letter to request a pre-motion conference in advance of a contemplated motion to dismiss Plaintiffs' first amended complaint ("FAC").  *See* ECF No. 105.  This letter incorporates by reference a joint letter submitted today by all Defendants, twelve of the largest financial institutions in Lebanon, addressing common issues, including Counts I, II & III, in which Plaintiffs, U.S. military personnel and their families, assert primary & secondary (aiding & abetting and conspiracy) liability claims under the Anti-Terrorism Act, 18 U.S.C. §2331, *et seq*. ("ATA").  This letter – and SGBL's contemplated motion – primarily addresses an issue unique to SGBL, Count IV, which asserts a successor liability claim based on a subsequent asset purchase.

**Background.**  SGBL is headquartered in Lebanon and offers an array of banking, insurance, and financial services in Lebanon and in the region.  SGBL is part of the international network of Société Générale, SA, one of the largest European financial services groups.  Almost ten years ago, in an arms-length, all-cash transaction arising from a competitive bidding process, SGBL purchased some, but not all, of the assets & liabilities of non-defendant Lebanese Canadian Bank S.A.L. ("LCB"), which had been designated a financial institution of primary money laundering concern by the United States.  The asset purchase had the support of not only the Central Bank of Lebanon, but also the U.S. Departments of Treasury and Justice.  SGBL worked for many months with independent, international compliance experts and auditors to screen LCB's accounts so SGBL could avoid taking on tainted assets associated with money laundering.  The integrity of the process – and of SGBL itself – was widely reported and recognized at the time, including by U.S. government officials.  For its part, LCB continues as a viable company in Lebanon, and continues to defend ATA-related lawsuits in federal & state courts in New York.

**Plaintiffs' Claims.**  Plaintiffs' overarching theory is that Lebanese banks somehow bear responsibility under the ATA for injuries to U.S. military personnel in Iraq during the War in Iraq based on the banks' alleged provision of routine banking services to entities that Plaintiffs claim were somehow associated with or controlled by Hezbollah, which allegedly facilitated or supported the attacks (Counts I, II & III).  Plaintiffs' additional theory with respect to SGBL is that it "is liable for the acts of LCB to the same extent that LCB would be found liable" based on SGBL's later purchase of certain assets and liabilities of LCB (Count IV).  FAC ¶5694.

**SGBL's Contemplated Motion to Dismiss.**  SGBL abhors terrorism in all its forms, and believes that the fatalities and injuries to members of the U.S. military serving in Iraq, and the loss

suffered by their families and friends, are tragic. But SGBL had absolutely nothing to do with those attacks and injuries. SGBL therefore plans to move to dismiss Counts I, II & III for the reasons in the Joint Letter, and plans to move to dismiss Count IV, the successor liability-based claim against it, for the reasons discussed below.

For the successor liability count, the question before this Court is whether SGBL, a foreign bank and good-faith asset purchaser, may be forced into U.S. courts to face civil liability under the ATA based on the alleged pre-transfer conduct of another foreign bank under a foreign sales and purchase agreement, where: (1) the amended complaint contains *no* allegations of any U.S. conduct by SGBL connected to the successor liability claim; (2) Congress has not in the ATA provided for a civil cause of action or remedy based upon successor liability; (3) the ATA narrowly defines its extraterritorial reach to "acts of international terrorism," which reaches "violent" and "dangerous" acts by culpable actors who commit terrorist acts or assist those who do, but not to ordinary business conduct by foreign corporations engaged in foreign transactions; (4) the traditional U.S. corporate law rule is that a corporation that purchases the assets of another corporation (the "successor") is generally *not* liable for the torts of the seller (the "predecessor"); and even so, (5) it is entirely speculative (and implausible) that any of LCB's (the predecessor) liabilities that allegedly may have been assumed by SGBL (the successor) had any connection to the injuries alleged in the case. Because the answer unquestionably is "no," Count IV should be dismissed, along with Counts I, II & III.

***1. Plaintiffs fail to make a prima facie showing that SGBL is subject to personal jurisdiction to permit adjudication of the successor liability claim.*** Plaintiffs cannot plausibly show general jurisdiction over SGBL. *Daimler AG v. Bauman*, 571 U.S. 117, 120 (2014) ("general jurisdiction" limited essentially to where a company is incorporated or has its principal place of business); FAC ¶¶121, 122 (SGBL incorporated and headquartered in Lebanon). In the absence of general jurisdiction that would allow a plaintiff to pursue any claim against a defendant, a plaintiff must allege facts supporting the exercise of specific personal jurisdiction over each claim. *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) ("A plaintiff must establish the court's jurisdiction with respect to each claim asserted."); *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 923 (2011) (defendants cannot be made to answer in a forum "with respect to matters unrelated to the forum connections").

Here, the amended complaint does not allege any conduct by SGBL in the forum or otherwise that has any connection to Count IV. To the contrary, any alleged conduct "proscribed by the ATA" is LCB's, *see* FAC ¶5694, not SGBL's. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 342 (2d Cir. 2016); *id.* at 335 (relationship "must arise out of contacts that the 'defendant *himself*' creates with the forum") (citations and quotations omitted) (emphasis in original); N.Y. CPLR §302(a) (specific jurisdiction proper where cause of action arises out of defendant's "transact[ion of] any business within the state"). The exercise of jurisdiction over SGBL therefore would violate due process. *See Waldman*, 835 F.3d at 343 (defendant's conduct in U.S. must "g[i]ve rise" to the Plaintiffs' injury); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 674 (2d Cir. 2013) (tortious conduct must be "expressly aimed" at U.S.).

***2. The ATA does not authorize a private civil right of action or remedy against a foreign asset purchaser like SGBL.*** As an initial matter, SGBL is not legally the successor to LCB for any alleged ATA liability based on its asset purchase. But even assuming jurisdiction were proper

and SGBL could be properly considered a "successor," the text of the ATA makes no mention of successor liability. Instead, it authorizes federal courts to hear claims and impose liability essentially against two categories of culpable defendants: individuals and entities responsible for "acts of international terrorism," and those responsible for aiding and abetting or conspiring in that specific conduct with a foreign terrorist organization. 18 U.S.C. §2333(a), (d).

Because Congress did not authorize a private right of action based on successor liability against a foreign asset purchaser, that claim is unavailable. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 179 (1994) (statutory silence on the subject means there is none); *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) ("statutory silence on the subject of secondary liability means there is none"); *cf. Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452-53 (2002) ("Where Congress wanted to provide for successor liability in the Coal Act, it did so explicitly"). The ATA's text, structure, purpose, and legislative history support this conclusion, particularly given Congress's clear imposition of liability to bad actors who knowingly commit terrorism-related acts. *See* 18 U.S.C. §2331(1) (defining "international terrorism"); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018) (for secondary liability, defendant must be "aware that, by assisting the principal, it [was] itself assuming a role in terrorist activities").

This result also is compelled by extraterritoriality principles, as the claim purports to apply U.S. law to hold a business incorporated under the law of a foreign country civilly liable for the acts of another foreign corporation. *See Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none."); *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090, 2101 (2016) (presumption against extraterritoriality operates to limit a statute's provision to its terms); *Jesner v. Arab Bank plc*, 138 S. Ct. 1386, 1405 (2018) (plurality opinion) (declining to find additional corporate liability in part because the ATA "is part of a comprehensive statutory and regulatory regime," which "reflect[s] the careful deliberation of the political branches on when, and how, banks should be held liable").

**3. Even if a successor liability cause of action is implied, Plaintiffs fail to allege facts plausibly showing that SGBL is liable under the ATA, including application of any exceptions to the traditional successor liability rule.** The traditional U.S. common law rule is that an asset purchaser does not become liable for any of the liabilities of the predecessor arising prior to the transfer. Any exceptions to that rule are narrowly construed. Plaintiffs' allegations in support of any successor liability on the part of SGBL are facially insufficient and the claim is simply implausible. Even so, Plaintiffs fail to allege facts showing either that: (1) the liabilities SGBL purportedly assumed had any connection to the alleged injuries; or (2) that the ATA extends liability to LCB for providing banking services, thus undermining any purported SGBL liability.

Per your Honor's Individual Rules, the parties have met and conferred regarding a briefing schedule, which is set forth in the Joint Letter. Previously, your Honor allowed SGBL to file a supplemental brief not to exceed 25 pages. *See* Scheduling Order dated June 12, 2019. We respectfully propose filing a brief of the same length in support of the renewed motion to dismiss.

                            Respectfully submitted,

                            /s/ Michael J. Sullivan
                            Michael J. Sullivan