UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

ROBERT BARTLETT, et al.,

                              Plaintiffs,

                - v -

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN
SAL, et al.,

                              Defendants.

------------------------------------------------------------

No. 1:19-cv-00007-CBA-VMS

**SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF RENEWED MOTION
TO DISMISS BY DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.
ADDRESSING COUNT IV (SUCCESSOR LIABILITY)**

Dated:  November 1, 2019

**ASHCROFT LAW FIRM, LLC**

Michael J. Sullivan
Brian J. Leske
200 State Street, 7th Floor
Boston, MA 02109
T:  617-573-9400
F:  617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de
Banque au Liban S.A.L.*

## <u>TABLE OF CONTENTS</u>

*Introduction*..........................................................................................................1

FACTUAL STATEMENT ...................................................................................2

    A.   SGBL ...............................................................................................2

    B.   SGBL Purchases Some, But Not All, Of LCB's Assets And Liabilities............................2

    C.   U.S. Officials Seek Civil Forfeiture Of Certain Of LCB's Assets And Recognize
SGBL Has No Successor Liability Based On Its Asset Purchase ......................3

    D.   LCB Continues To Exist As A Corporation In Lebanon And To Defend
ATA-Related Lawsuits ........................................................4

LEGAL FRAMEWORK ......................................................................................5

LEGAL STANDARDS ........................................................................................6

SUMMARY OF ARGUMENT ............................................................................6

ARGUMENT .......................................................................................................7

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL TO ADJUDICATE
    COUNT IV (SUCCESSOR LIABILITY)................................................7

    A.   SGBL Is Not Subject To Personal Jurisdiction As To Count IV.......................7

         1.   <u>New York's long-arm statute does not permit the exercise of specific
jurisdiction over SGBL</u> .......................................................7

         2.   <u>Federal due process does not permit the exercise of jurisdiction over SGBL</u> .............8

    B.   Alternative Personal Jurisdictional Theories Are Unavailable To Plaintiffs......................9

         1.   <u>Even assuming New York recognizes an "inherited jurisdictional status" theory,
it would not confer personal jurisdiction over SGBL</u> ..................................9

         2.   <u>The discretionary exercise of "pendent personal jurisdiction" is neither
available nor warranted</u> ........................................................10

II.  COUNT IV (SUCCESSOR LIABILITY) FAILS TO STATE A CLAIM UPON
    WHICH RELIEF MAY BE GRANTED ..............................................12

    A.   The ATA Does Not Authorize Successor Liability Against An Asset Purchaser ............12

1. The text of the ATA does not explicitly create successor liability ............................12

2. The presumption against extraterritoriality bars implication of a successor liability claim or remedy ...................................................................13

3. The ATA's text, structure, legislative history, and purpose shows no intent to create successor liability ............................................................................15

    a. The ATA's plain language extends only to primary and secondary liability .........................................................................................................16

    b. The ATA's structure and liability provisions contradict an intent to impose successor liability on an asset purchaser ...............................................16

    c. The ATA's legislative history shows that Congress intended to impose liability only on culpable actors ...................................................................17

    d. The ATA's purpose, including its intended beneficiaries, does not support successor liability against an asset purchaser ......................................18

4. No other circumstances justify the creation of a successor liability cause of action under a federal common law ....................................................19

B. SGBL Is Not Liable For LCB's Alleged Tortious Conduct Committed Prior To The Asset Purchase .........................................................................................20

1. The long-standing rule is that a corporation that acquires the assets of another is not liable for the torts of the predecessor ...............................................20

2. None of the exceptions to the non-liability rule for an asset purchaser apply here ..................................................................................................21

    a. The assumption of liability exception does not apply because SGBL did not expressly or impliedly assume LCB's tort liabilities, let alone any ATA-related liabilities connected to Plaintiffs' injuries ................................21

    b. The *de facto* merger exception does not apply because there is no common ownership of LCB and SGBL after the purchase ...........................................22

    c. The continuation of the predecessor exception does not apply because there is no common ownership and LCB continues in existence today ..........23

    d. The fraudulent conveyance exception does not apply because the asset purchase was an arm's length transaction arising from a competitive bidding process ....................................................................................23

    C.    SGBL Has No Successor Liability Because Its Predecessor Has No Liability
          Under The ATA ...................................................................................................24

*Conclusion* .....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Arroyo v. Mountain Sch.*,
892 N.Y.S.2d 74 (1st Dep't 2009) ............................................................ 8

*Bank v. Hydra Grp., LLC,*
2017 WL 6806665 (E.D.N.Y. Dec. 1, 2017) ........................................ 23

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ................................................................................ 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 22

*Boim v. Holy Land Found. For Relief & Dev.*,
549 F.3d 685 (7th Cir. 2008) ........................................................... 13, 16

*Bristol-Myers Squibb Co. v. Superior Court of California*,
137 S. Ct. 1773 (2017) ............................................................................ 12

*Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.,*
635 F.3d 48 (2d Cir. 2011) ..................................................................... 21

*Cannon v. University of Chicago*,
441 U.S. 677 (1979) ................................................................................ 15

*Cargo Partner AG v. Albatrans, Inc.*,
352 F.3d 41 (2d Cir. 2003) ................................................................. 2, 23

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A.,
511 U.S. 164 (1994) ................................................................................ 13

*Correctional Services Corp. v. Malesko*,
534 U. S. 61 (2001) ................................................................................. 15

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ 9, 12

*Dritsas v. Amchem Prod., Inc.*,
79 N.Y.S.3d 470 (N.Y. Sup. Ct. 2018), *order reversed by*
94 N.Y.S.3d 264 (1st Dep't 2019) ......................................................... 23

*Ehrenfeld v. Mahfouz*,
489 F. 3d 542 (2d Cir. 2007) .................................................................... 7

*Erie R. Co. v. Tompkins*,
  304 U.S. 64 (1938) ........................................................................................ 19

*Freeman v. HSBC Holdings PLC*,
  2019 WL 4452364 (E.D.N.Y. Sept. 16, 2019) ........................................ 24

*Goodyear Dunlop Tires Operations, S. A. v. Brown*,
  564 U.S. 915 (2011) ...................................................................................... 11

*Halberstam v. Welch*,
  705 F.2d 472 (D.C. Cir. 1983) ............................................................... 6, 25

*Hargrave v. Oki Nursery, Inc.*,
  646 F.2d 716 (2d Cir. 1980) ...................................................................... 11

*In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*,
  757 F. Supp. 2d. 260 (S.D.N.Y. 2010) ...................................................... 4

*In re Terrorist Attacks on Sept. 11, 2001*,
  714 F.3d 118 (2d Cir. 2013) ................................................................... 9, 13

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995) ............................................................................ 4

*IUE AFL–CIO Pension Fund v. Herrmann*,
  9 F.3d 1049 (2d Cir. 1993) ....................................................................... 11

*Jesner v. Arab Bank plc*,
  138 S. Ct. 1386 (2018) ....................................................... 5, 14, 15, 17

*Kaplan v. Lebanese Canadian Bank SAL*,
  2019 WL 4869617 (S.D.N.Y. Sept. 20, 2019) ...................................... *passim*

*Kiobel v. Royal Dutch Petroleum Co.*,
  133 S. Ct. 1659 (2013) ............................................................................... 14

*Ladjevardian v. Laidlaw–Coggeshall, Inc.*,
  431 F. Supp. 834 (S.D.N.Y. 1977) .......................................................... 23

*Lelchook v. LCB*,
  1:18-cv-12401-GBD (U.S. Dist. Ct., S.D.N.Y. 2010) ............................ 4

*Licci v. LCB*,
  Index No.: 505931/2015, Supreme Court of the State of New York,
  County of Kings: part 66 (Velasquez, J.S.C.) ......................................... 4

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ........................................................................ *passim*

*Morrison v. Nat'l Austl. Bank Ltd.*,
    561 U.S. 247 (2010) ................................................................................... *passim*

*New York v. National Service Industries, Inc.*,
    460 F. 3d 201 (2d Cir. 2006) .............................................................................. 18

*Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO*,
    451 U.S. 77 (1981) ............................................................................................... 15

*O'Sullivan v. Deutsche Bank AG*,
    2019 WL 1409446 (S.D.N.Y. Mar. 28, 2019) ............................................ 24, 25

*RJR Nabisco, Inc. v. European Community ("RJR")*,
    136 S. Ct. 2090 (2016) ............................................................................... *passim*

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) .............................................................................. 5, 13

*Schenin v. Micro Copper Corp.*,
    272 F.Supp. 523 (S.D.N.Y. 1967) ..................................................................... 10

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) .............................................................................. 11

*Semenetz v. Sherling & Walden, Inc.*,
    851 N.E.2d 1170, 7 N.Y.3d 194 (2006) ...................................................... *passim*

*Siegel v. HSBC N.A. Holdings, Inc.*,
    933 F.3d 217 (2d Cir. 2019) ............................................................................... 24

*Small v. U.S.*,
    544 U.S. 385 (2005) ........................................................................................... 14

*Societe Generale v. Florida Health Sciences Ctr.*,
    2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) ................................................... 10

*Sosa v. Alvarez-Machain*,
    542 U.S. 692 (2004) ........................................................................................... 15

*Sunward Elec., Inc. v. McDonald*,
    362 F.3d 17 (2d Cir. 2004) ................................................................................... 7

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
    451 U.S. 630 (1981) ...................................................................... 15, 16, 17, 19

*United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n,*
   916 F.3d 143 (2d Cir. 2019) ........................................................................ 7, 9, 10

*U.S. v. Bestfoods,*
   524 U.S. 51 (1998) ............................................................................................. 20

*U.S. v. Lebanese Canadian Bank SAL,*
   Case No. 1:11-cv-09186-PAE (U.S. Dist. Ct., S.D.N.Y.) ............................................ 3

*Vasquez v. Ranieri Cheese Corp.,*
   2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010) ...................................................... 23

*Walden v. Fiore,*
   571 U.S. 277 (2014) .......................................................................................... 12

*Waldman v. Palestine Liberation Org.,*
   835 F.3d 317 (2d Cir. 2016) .............................................................................. 7, 9

**Statutes**

18 U.S.C. § 2331(1) ...................................................................................... 14

18 U.S.C. § 2333 .......................................................................................... 18

18 U.S.C. § 2333(a) .............................................................................. 12, 14, 16

18 U.S.C. § 2333(d) .............................................................................. 12, 14,16

18 U.S.C. § 2336(a) ...................................................................................... 24

Fed. R. Civ. P. 4(k)(1)-(2)................................................................................. 8

Fed. R. Evid. 201 ........................................................................................... 4

**Other Authorities**

138 Cong. Rec. S17260 (daily ed. Oct. 7, 1992) .......................................... 19

Hearing on S. 2465 Before the S. Comm. on the Judiciary, 101st Cong. 46-47 (1990)............... 19

S. REP. 102-342, S. Rep. No. 342, 102ND Cong., 2ND Sess. 1992,
   1992 WL 187372 (Leg. Hist.) ................................................................. 17

**Treatises**

Prosser on Torts, §2 at pp. 9-10 ............................................................................................... 16

**Regulations**

N.Y. CPLR 302(a) ........................................................................................................................ 7

N.Y. CPLR 302(a)(1) .................................................................................................................. 8

N.Y. CPLR 302(a)(2) .................................................................................................................. 8

N.Y. CPLR 302(a)(3) .................................................................................................................. 8

***Introduction***

Plaintiffs' attempt to pursue Defendant Société Générale de Banque au Liban S.A.L. ("SGBL") in this litigation as a *de facto* international terrorist, a supporter of Hezbollah, and an entity responsible for the alleged prior bad acts of another bank is implausible, offensive, and lacks all merit as a matter of both law and fact.  The complaint allegations pertaining to SGBL – in addition to being unsupported and utterly conclusory – are belied both by common-sense and publicly-available information known to the Plaintiffs and their lawyers for many, many years.

Almost ten years ago, in an arms-length, all-cash transaction arising from a competitive bidding process, SGBL purchased some, but not all, of the assets and liabilities of the Lebanese Canadian Bank SAL ("LCB"), after LCB had been designated by the United States as "a financial institution of primary money laundering concern."  As Plaintiffs admit, the purchase of certain "clean" assets had the support of not only the Central Bank of Lebanon ("Central Bank"), but also the U.S. Departments of Treasury and Justice.  SGBL worked for many months with independent, international compliance experts and respected auditing firms to screen LCB's accounts, customers, loan portfolios and operations, to help ensure SGBL would avoid taking on accounts and customers who might be associated with money laundering.

The integrity of the asset purchase process – and of SGBL itself – was widely reported and recognized at the time.  In fact, U.S. government officials characterized SGBL as a "responsible owner," and concluded that SGBL would not assume successor liability arising from its lawful purchase of certain of LCB's assets and liabilities.  *See infra* at 3-4.

Now, instead of suing the individuals or entities that carried out the attacks that caused the injuries to U.S. military personnel in Iraq during the War in Iraq, or, with respect to the successor claim against SGBL, pursuing its purported predecessor that committed the alleged bad acts, Plaintiffs have created an implausible narrative and legal theory under which banks that provide

routine banking services to customers have primary and secondary liability under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA") (Counts I, II and III), and, separately, that SGBL is responsible for all of LCB's earlier alleged tortious acts (Count IV). Am. Compl. ¶5694.  These claims have no support under the ATA, and Plaintiffs' attempt to hold a foreign bank and good-faith asset purchaser like SGBL liable should be rejected both on jurisdictional grounds and for failing to allege facts plausibly showing the existence of any ATA-related liability arising from either its own conduct or that of LCB.[1]

FACTUAL STATEMENT[2]

### A.  SGBL

SGBL is a Lebanese joint stock company incorporated in 1953 and headquartered in Lebanon. Am. Compl. ¶¶121, 122.  It offers a wide array of banking, insurance, and financial services to individuals and corporations in Lebanon and the region.  SGBL is part of the international network of Société Générale, SA, one of the largest European financial services groups. *Id.* ¶126.

### B.  SGBL Purchases Some, But Not All, Of LCB's Assets And Liabilities

After LCB's designation as "a financial institution of primary money laundering concern" in 2011, the Central Bank proceeded with a competitive sale of LCB's assets and certain liabilities pursuant to Lebanese law.  *Id.* ¶140.[3]  SGBL was deemed the highest bidder and agreed to purchase

---

[1] SGBL and ten of the Defendants have filed a Joint Memorandum of Law in Support of a Motion to Dismiss Counts I, II, and III (Primary, Aiding & Abetting, and Conspiracy ATA Liability), which Plaintiff have asserted against all Defendants ("*Joint Brief*").  This Supplemental Memorandum addresses Count IV (Successor Liability), which Plaintiffs have asserted against SGBL only.  SGBL hereby incorporates by reference the legal standards, analyses, and arguments in the *Joint Brief*.

[2] SGBL accepts as true all complaint allegations that are well-pleaded, non-conclusory, and not contradicted by other complaint allegations or facts of which this Court may take judicial notice.  SGBL's motion relies upon the complaint, materials the complaint incorporates by reference, and documents subject to judicial notice.

[3] Asset sales differ in nature from mergers and stock acquisitions.  An asset sale is neither the acquisition of a business entity, nor a merger of the seller and buyer.  Instead, it is a transfer of property, tangible or intangible.  That is, "the nature of an asset sale is that the seller's ownership interest in the entity is given up in exchange for consideration." *Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003).  SGBL's no-stock, all-cash transaction therefore cannot be characterized as a corporate reorganization, continuation of a business, or a merger (statutory or otherwise).

some, but not all, of LCB's assets and liabilities for $580 million cash subject to the final valuation adjustments, review and approval of the Central Bank.  *Id.* ¶1463.  SGBL and LCB entered into a sale and purchase agreement ("SPA") in Lebanon, of which Plaintiffs include but a single (out-of-context and misleading) paragraph.  *See* Dkt. 105-2.  Plaintiffs rely on this SPA paragraph to suggest that SGBL assumed ***all*** of LCB's assets and liabilities without reservation, Am. Compl. ¶¶138, 139, but that characterization is false.  As Plaintiffs later concede, SGBL declined to assume certain LCB's customers and accounts based in large measure upon a compliance process undertaken by independent international compliance experts and a parallel auditing proceeding implemented by SGBL that utilized a scoring methodology to screen LCB's accounts, customers, and operations.  *Id.* ¶5693.  Based on SGBL's due diligence and commitment to combat money laundering and the financing of terrorist organizations, the United States supported the purchase and considered SGBL a "responsible owner."[4]

### C.  U.S. Officials Seek Civil Forfeiture Of Certain Of LCB's Assets And Recognize SGBL Has No Successor Liability Based On Its Asset Purchase

While the transaction was pending, the Justice Department sought a civil forfeiture of $150 million in what the Government believed to be LCB assets that were being held in escrow by a third-party financial institution in connection with the asset purchase by SGBL.  *U.S. v. Lebanese Canadian Bank SAL*, Case No. 1:11-cv-09186-PAE (U.S. Dist. Ct., S.D.N.Y.).  SGBL filed a claim as an innocent, lawful owner of a portion of the escrow funds in March 2013.  *See* Declaration of Michael J. Sullivan, dated November 1, 2019 ("Sullivan Decl."), Ex. A (Sworn Claim Asserting Interest in Seized Property) ("Claim"), ¶13.  The Government, LCB, and SGBL reached an agreement as to the disposition of LCB's seized funds in June 2013.  Sullivan Decl.,

---

[4] *See* Jo Becker, *Beirut Bank Seen as a Hub of Hezbollah's Financing* (*The New York Times*, Dec. 13, 2011) available at  https://www.nytimes.com/2011/12/14/world/middleeast/beirut-bank-seen-as-a-hub-of-hezbollahs-financing.html. Plaintiffs refer to this article in footnote 14 to paragraph 97 of the amended complaint.

Ex. B (Stipulation and Order of Settlement ("Stipulation" or "Stip.")). Tellingly, the Government explicitly stated that SGBL would assume no successor liability:

> 10. The United States shall not bring any claim against SGBL, its directors, officers, shareholders, agents, employees, or affiliates arising out of the lawful acquisition of LCB's assets and liabilities pursuant to the Sale and Purchase Agreement, for the Alleged Scheme and/or under a theory of successor liability.

Stip., ¶10. The Stipulation also makes clear that SGBL faced no liability in the action, and that LCB, for its part, made no admission of any wrongdoing. Stip., ¶¶2, 4.[5] Despite the well-publicized nature of both the asset purchase transaction and the civil forfeiture proceeding, and being on notice of same, Plaintiffs made no attempt to sue LCB, or to attach LCB's seized funds.[6]

### D. LCB Continues To Exist As A Corporation In Lebanon And To Defend ATA-Related Lawsuits

Although LCB was forced into liquidation, LCB remains a viable corporation in Lebanon. In the United States, LCB continues to defend ATA-related lawsuits in federal and state courts in New York. *See, e.g.*, *Kaplan v. Lebanese Canadian Bank SAL,* 2019 WL 4869617 (S.D.N.Y. Sept. 20, 2019) (granting LCB's motion to dismiss); *Lelchook v. Lebanese Canadian Bank SAL*, 1:18-cv-12401-GBD (U.S. Dist. Ct., S.D.N.Y. 2010) (currently stayed); *Licci v. LCB*, Index No.: 505931/2015, Supreme Court of the State of New York, County of Kings: part 66 (Velasquez, J.S.C.) (LCB's motion to dismiss pending).

Notably, U.S. District Court Judge George B. Daniels recently granted LCB's motion to dismiss in *Kaplan*, an ATA action arising out of a series of rocket attacks carried out by Hezbollah

---

[5] The Stipulation contradicts Plaintiffs' conclusory suggestion that, at the time of the asset forfeiture proceeding, LCB "was by that time effectively owned and controlled by Defendant SGBL." Am. Compl. ¶1344. When ruling on a motion to dismiss, this Court may consider documents relied upon by Plaintiff and publicly available filings. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam); Fed. R. Evid. 201.

[6] *See* Jo Becker, *U.S. Sues Businesses It Says Helped Hezbollah* (The New York Times, Dec. 16, 2011) available at https://www.nytimes.com/2011/12/16/world/middleeast/us-sues-american-and-lebanese-businesses-it-says-helped-hezbollah-money-laundering.html. This is a related piece to the article referenced by Plaintiffs (*see* n. 4). "On a motion to dismiss, a court may take judicial notice of the publication of a newspaper article." *In re Bank of Am. Corp. Sec., Deriv. and ERISA Litig.*, 757 F. Supp. 2d 260, 302 (S.D.N.Y. 2010).

in Israel in 2006.  Judge Daniels found that LCB had no primary or secondary liability based upon its alleged provision of banking services (including by conducting wire transfers) to Hezbollah through Hezbollah's affiliates.  2019 WL 4869617, at *3-7; *see infra* at 24-25 (discussing *Kaplan*).

## LEGAL FRAMEWORK

"The Anti-Terrorism Act . . . is part of a comprehensive statutory and regulatory regime that prohibits terrorism and terrorism financing."  *Jesner v. Arab Bank plc*, 138 S. Ct. 1386, 1405 (2018) (plurality opinion).  As such, it "reflect[s] the careful deliberation of the political branches on when, and how, banks should be held liable for the financing of terrorism."  *Id.*; *see id.* at 1405 (declining "to displace this considered statutory and regulatory structure by holding banks subject to common-law liability" under the Alien Tort Statute).

When originally enacted, "the ATA afforded civil relief only against the principals perpetrating acts of international terrorism."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 319 (2d Cir. 2018); 18 U.S.C. § 2333(a).  At that time, Congress authorized "no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others."  *Linde*, 882 F.3d at 319.  The reasoning for declining to extend the categories of persons and entities who would be liable for treble damages under the ATA beyond the statutory text was straightforward:  Congress's "statutory silence on the subject of secondary liability means there is none."  *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013).

In JASTA, Congress expanded ATA civil liability to reach "'any person who aids and abets, by knowingly providing substantial assistance [to], or who conspires with the person who committed such an act of international terrorism.'"  *Linde*, 882 F.3d at 320 (quoting 18 U.S.C. § 2333(d)(2)).  Just as primary liability requires a defendant to have acted with objective terroristic intent, *see* 18 U.S.C. § 2331(1) (defining the term "international terrorism"), "[a]iding and abetting requires the secondary actor to be 'aware' that, by assisting the principal, it is itself assuming a

'role' in terrorist activities." *Linde,* 882 F.3d at 330 (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)).

Congress's careful and deliberate limitations regarding private liability under the ATA is not surprising given its extraterritorial implications. As the United States has observed, when it comes to the ATA, "other important interests" – including the "the United States' vital interest in maintaining close cooperative relationships with . . . [various non-US] partners in the fight against terrorism" – "are at stake." Brief of the United States as Amicus Curiae, *Arab Bank, PLC v. Linde*, No. 12-1485, 2014 WL 2191224, at *19 (U.S. May 23, 2014).

## LEGAL STANDARDS

The standards for failing to make a *prima facie* showing of personal jurisdiction and for failing to state a claim under the ATA are set forth in the *Joint Brief*, which SGBL adopts here.

## SUMMARY OF ARGUMENT

The successor liability claim against SGBL (Count IV) should be dismissed for four independent reasons. *First*, Plaintiffs have failed to allege facts showing SGBL is subject to personal jurisdiction to permit adjudication of its purported successor liability. The amended complaint does not allege any conduct by SGBL in the forum or otherwise that has any connection to that determination. *Second*, although the ATA authorizes a cause of action based on primary and secondary liability, the ATA does not authorize a cause of action or theory of recovery based on *successor* liability against a foreign asset purchaser. *Third,* even if the ATA authorizes a private right of action or remedy based on successor liability, the long-standing rule is that an asset purchaser (SGBL) is not liable for any of the tort liabilities of the predecessor (LCB) arising prior to the transfer. *Fourth*, although SGBL does not have any successor liability, to the extent it did, SGBL would only be liable to the same extent as its predecessor. Recent ATA opinions show that LCB's conduct does not meet the definitional requirements or satisfy the proximate causation

standard to state a primary liability claim under the ATA, nor does it meet threshold requirements to state a secondary liability (aiding and abetting or conspiracy) claim under JASTA.

## ARGUMENT

## I.     THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL TO ADJUDICATE COUNT IV (SUCCESSOR LIABILITY)

Plaintiffs fail to make a *prima facie* showing of personal jurisdiction over SGBL for the primary and secondary ATA liability claims (Counts I, II & III), or the successor liability claim (Count IV).[7]   The exercise of personal jurisdiction over the claims must be assessed independently because "[a] plaintiff must establish the court's jurisdiction with respect to each claim asserted." *Sunward Elec., Inc. v. McDonald*, 362 F.3d 17, 27 (2d Cir. 2004).

### A.  SGBL Is Not Subject To Personal Jurisdiction As To Count IV

The amended complaint bases jurisdiction on both state law and federal law, including its service provisions.  Am. Compl. ¶119.  Neither provides a basis to exercise personal jurisdiction over SGBL to determine successor liability because SGBL has not purposefully directed its conduct, or engaged in any conduct related to that claim in the forum or in the U.S.  *United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n* ("*U.S. Bank*"), 916 F.3d 143, 150 (2d Cir. 2019); *see also Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 335 (2d Cir. 2016) (defendant's "suit-related conduct must create a "substantial connection" with the U.S.); *Ehrenfeld v. Mahfouz*, 489 F. 3d 542, 547 (2d Cir. 2007) (exercise of personal jurisdiction must comport with constitutional due process, whether asserted under federal service provisions or state long-arm statutes).

### 1.  New York's long-arm statute does not permit the exercise of specific jurisdiction over SGBL

Plaintiffs do not allege any facts that would support jurisdiction under New York's long-arm statute for the successor claim.  *See* N.Y. CPLR 302(a) (specific jurisdiction may be exercised

---

[7] SGBL respectfully reserves its right to challenge personal jurisdiction as a factual matter should it become necessary.

only if a cause of action arises out of a defendant's "transact[ion of] any business within the state"; "tortious act within the state"; or, in certain circumstances, "tortious act without the state causing injury to person or property within the state").  The amended complaint fails each test.

*First*, Plaintiffs do not allege successor liability arises from SGBL's alleged transaction of business in New York, which Plaintiffs allege is the use of correspondent bank accounts in New York.  Am. Compl. ¶120.  Under N.Y. CPLR 302(a)(1), the exercise of jurisdiction over a non-domiciliary that transacts business in the state is only proper where the action "arise[s] directly out of this transaction." *Arroyo v. Mountain Sch.*, 892 N.Y.S.2d 74, 76 (1st Dep't 2009).  The complaint does not meet this standard because it does not allege any facts showing that SGBL did anything in New York giving rise to successor liability, which Plaintiffs allege arise from a SPA in Lebanon, Am. Compl. ¶137, and where the alleged tortious conduct is LCB's, not SGBL's. *See id.* ¶5695 ("Defendant SGBL is liable for LCB's violation[s]").

*Second*, Plaintiffs do not allege the claim arises out of any tortious activities committed by SGBL in New York.  *See* N.Y. CPLR 302(a)(2) (providing for specific jurisdiction over a non-domiciliary that commits a tortious act within the state).  Any alleged tortious activities in violation of the ATA were allegedly committed by LCB, not SGBL, and also are more properly said to have taken place abroad where the banking services to customers took place, rather than in New York.

*Third*, Plaintiffs do not allege that any tortious act abroad caused any injury in New York. *See* N.Y. CPLR 302(a)(3) (providing, under certain conditions, for specific jurisdiction over a non-domiciliary that commits a tortious act outside the state that causes injury within the state).  Instead, the amended complaint alleges that the injuries took place in Iraq.  Am. Compl. ¶1.

### 2.  Federal due process does not permit the exercise of jurisdiction over SGBL

Neither would federal due process principles permit the exercise of jurisdiction over SGBL. *See* Fed. R. Civ. P. 4(k)(1)-(2).  As an initial matter, there is no all-purpose or "general jurisdiction"

that would permit a court to hear all claims against SGBL, including those unrelated to the forum state. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (general jurisdiction exists essentially where the corporation is incorporated or has its principal place of business); Am. Compl. ¶¶121-22 (SGBL incorporated and headquartered in Lebanon). In the absence of general jurisdiction, a plaintiff must show a defendant is subject to specific jurisdiction. *See U.S. Bank*, 916 F.3d at 150 (defendant must have purposefully availed itself or directed its conduct into the forum and plaintiff's claim must arise out of or relate to the defendant's forum conduct).

According to Plaintiffs, SGBL's single mode of U.S. conduct is the maintenance (and generic and conclusory use) of correspondent bank accounts in New York. Am. Compl. ¶120. Again, those alleged contacts have ***nothing to do with any alleged successor liability***, which Plaintiffs allege were created by a SPA in Lebanon and where the alleged conduct giving rise to ATA liability is not SGBL's, but rather LCB's. *Waldman*, 835 F.3d at 343 (***defendant's*** conduct in U.S. must "g[i]ve rise" to the Plaintiffs' injury); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 676 (2d Cir. 2013) (tortious conduct must be "expressly aimed" at U.S.).[8] Plaintiffs consequently fail to make a *prima facie* showing of personal jurisdiction over SGBL.

**B. Alternative Personal Jurisdictional Theories Are Unavailable To Plaintiffs**

**1. Even assuming New York recognizes an "inherited jurisdictional status" theory, it would not confer personal jurisdiction over SGBL**

Jurisdiction over SGBL cannot be based on alternative theories such as "inherited jurisdictional status" under which personal jurisdiction may be found over a non-resident successor based on the alleged earlier in-state contacts of its predecessor. Even assuming New York

---

[8] Nor does SGBL's filing of a claim and its subsequent agreement in the asset forfeiture proceedings confer personal jurisdiction. The Stipulation made clear that: "The signing of this Stipulation and Settlement Order does not constitute consent by … SGBL to personal jurisdiction over … SGBL, other than for the purpose of enforcing this Stipulation and Order." Stip., ¶25. The Claim also made clear that no rights were waived regarding jurisdiction. Claim, at 1.

recognizes this theory,[9] and LCB's prior contacts would be jurisdictionally sufficient – two points this Court need not reach and SGBL certainly does not concede – the theory would not apply to an asset purchaser, or any other party who is not "substantively responsible" for the tort.  *Semenetz v. Sherling & Walden, Inc.*, 851 N.E.2d 1170, 1173, n.2, 7 N.Y.3d 194 (2006) ("we need not and do not address plaintiff's argument that personal jurisdiction may properly be imputed to a successor corporation whenever it is substantively responsible for its predecessor's allegedly tortious conduct"); *U.S. Bank*, 916 F.3d at 157 ("The insurmountable hurdle in plaintiff's path [in seeking to subject the defendant to New York jurisdiction on the basis of its successor liability] is the sound distinction in law between a statutory merger and an acquisition of assets.") (quoting *Schenin v. Micro Copper Corp.*, 272 F.Supp. 523, 526 (S.D.N.Y. 1967)).[10]

### 2.   The discretionary exercise of "pendent personal jurisdiction" is neither available nor warranted

Equally so, allowing Plaintiffs' tenuous jurisdictional allegations supporting their sweeping primary and secondary ATA claims to somehow permit adjudication of a successor liability question involving SGBL under a discretionary "pendent personal jurisdiction" theory lacks a legitimate basis.  As an initial matter, pendent personal jurisdiction does not create jurisdiction in the U.S. where it otherwise does not exist.  The doctrine instead recognizes that where personal jurisdiction may be proper in a federal district (or state) court or, a ***state*** claim can be heard in another federal district that does not have jurisdiction over the defendant under two conditions:  the court already has personal jurisdiction to adjudicate a substantial federal right and

---

[9] *See U.S. Bank*, 916 F.3d at 159 (suggesting that under New York law, successor liability "'do[es] not and cannot confer [personal] jurisdiction over the successor in the first instance'") (citation omitted) (Chin, J. concurring).

[10] As one federal court has observed, the New York cases that have imputed jurisdiction do not stand for the proposition that "minimum contacts could be transferred" based solely on the successor liability exceptions.  *Societe Generale v. Florida Health Sciences Ctr.*, 2003 WL 22852656, *4 (S.D.N.Y. Dec. 1, 2003).  Instead, jurisdiction was found, unlike here, by consent because a successor assumed contractual obligations, such as a forum selection clause, or by explicitly ratifying a predecessors' conduct.  *Id*. at *4 (listing cases involving assumption of contracts).

- 10 -

the claim derives from the same nucleus of fact. *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719 (2d Cir. 1980) ("Congress granted district courts power also to consider state law claims provided they had a nucleus of pertinent facts in common with a substantial federal claim"); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1056 (2d Cir. 1993) (where a federal statute authorizes nationwide service of process, and the federal and state claims 'derive from a common nucleus of operative fact', the district court may assert personal jurisdiction over the parties to the related state law claims even if personal jurisdiction is not otherwise available") (citations omitted).

The exercise of pendent personal jurisdiction here is both unavailable and unwarranted for four reasons. *First*, the successor liability count in this case is not a state law claim – it is a cause of action or theory of recovery arising under federal law (the ATA). *Second*, no other federal district or state court in the U.S. has personal jurisdiction over SGBL to hear the successor liability claim, thus undercutting key rationales and objectives underlying the doctrine, which include juridical efficiency and fairness. *See Hargrave*, 646 F.2d at 720-21 ("[w]ere plaintiffs prohibited from asserting all their claims in this case they could bring action in a United States district court in California on the claims not heard in New York," or in state court). Indeed, application of the doctrine would, among other things, effectively find **general** personal jurisdiction over SGBL where there is none, thereby undermining the very distinction between general and specific jurisdiction in violation of federal due process principles. *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 923 (2011) (defendants cannot be made to answer "with respect to matters unrelated to the forum connections"); *accord BMS*, 137 S. Ct. at 1780; *see also Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006) (application violates due process).

*Third*, in any event, the successor liability claim does not arise out of the same nucleus of facts. The key issue for the successor count surrounds foreign contractual and corporate law issues

- 11 -

related to the asset purchase with different evidence and witnesses needed to prove SGBL liability. This is wholly distinct from the question of ATA liability based on the provision of banking services needed to resolve each of the other counts. *Fourth*, this jurisdictional theory (and the "inherited status" theory discussed above) simply cannot be reconciled with recent Supreme Court decisions substantially limiting the exercise of both general and specific jurisdiction and requiring a specific connection between the defendant's contacts *and the specific claims*. *See Bristol-Myers Squibb Co. v. Superior Court of California ("BMS")*, 137 S. Ct. 1776, 1781 (2017) (requiring "a connection between the forum and the specific claims at issue"); *Walden*, 571 U.S. 277, 284 (2014) ("relationship must arise out of contacts that the defendant himself creates with the forum"); *accord Daimler*, 571 U.S. at 134-36 (general jurisdiction cannot be based on imputed contacts of subsidiaries to corporate parents, often referred to as "agency jurisdiction").[11]

## II.   COUNT IV (SUCCESSOR LIABILITY) FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A.  The ATA Does Not Authorize Successor Liability Against An Asset Purchaser

Even assuming this Court may exercise jurisdiction over SGBL, Count IV should be dismissed because there is no successor liability provision in the ATA granting a private right of action or theory of recovery against an asset purchaser like SGBL.

#### 1.   <u>The text of the ATA does not explicitly create successor liability</u>

The ATA makes no specific mention of successor liability.  Instead, Congress authorized federal courts to hear claims and impose liability only against two categories of culpable defendants – any individual or entity directly responsible for "acts of international terrorism," or any individual or entity "who aids and abets" or "conspires" with that terrorist. 18 U.S.C. §§ 2333(a), (d).  Successor asset purchasers like SGBL do not qualify under the statutory language

---

[11] SGBL also notes that in the event this Court dismisses the ATA claims in Counts I-III for lack of jurisdiction or failure to state a claim, there would be no basis to exercise pendent personal jurisdiction over SGBL for Count IV.

defining either liability.  Because Congress in the ATA did not mention, let alone explicitly authorize, liability against a successor *who had no knowledge and played no role whatsoever in the attacks causing injuries*, the claim or theory is unavailable.  *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver*, N.A., 511 U.S. 164, 165 (1994) (statutory silence on the subject means there is none); *cf. Barnhart v. Sigmon Coal Co*., 534 U.S. 438, 452-53 (2002) ("Where Congress wanted to provide for successor liability in the Coal Act, it did so explicitly").

Indeed, when faced with a similar question whether to impliedly expand the ATA's scope of liability beyond what was plain in the text, this Circuit declined:  Congress's "statutory silence on the subject of secondary liability means there is none." *Rothstein v. UBS AG*, 708 F.3d 82, 98 (2d Cir. 2013); *see also Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*); *accord In re Terrorist Attacks on Sept. 11, 2001,* 714 F.3d 118, 123-24 (2d Cir. 2013).  The same can be said here:  just as Congress's silence meant that it did not authorize *secondary* liability under the ATA prior to JASTA, Congress's silence here means it has not authorized *successor* liability.  Indeed, Congress's clear intent in the ATA is to punish bad actors who commit or help commit terrorist acts.  As a successor, SGBL did neither.

## 2.  The presumption against extraterritoriality bars implication of a successor liability claim or remedy

Nor should this Court imply a successor liability cause of action or remedy against an asset purchaser in the ATA, which would have the effect of applying U.S. law to a foreign asset purchase transaction between two foreign entities and potentially imposing a new federal substantive legal liability on a foreign corporation.  The presumption against extraterritoriality precludes that result.

Where, as here, a federal statute is not purely domestic in application, the presumption against extraterritoriality is the relevant, fundamental background principle to be applied, and not any other "traditional rule[s]," such as common law principles.  *RJR Nabisco, Inc. v. European*

*Community ("RJR")*, 136 S. Ct. 2090, 2109 (2016).  To respect this interpretive cannon, courts must adopt a bright-line rule that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none."  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010).[12]  The rule is implicated with respect to the ATA because "[w]hen a statute provides for some extraterritorial application, the presumption against extraterritoriality operates to limit that provision to its terms."  *RJR*, 136 S. Ct. at 2102 (citing *Morrison*, 561 U. S., at 265); *see also RJR*, 136 S. Ct. at 2101 ("The scope of an extraterritorial statute thus turns on the limits Congress has (or has not) imposed on the statute's foreign application"); *Small v. U.S.*, 544 U.S. 385, 388-89 (2005) (while Congress has the power to impose liability for acts that occur abroad, it must make the extraterritorial scope of a statute clear).

For ATA liability, Congress has specifically granted federal courts jurisdiction to reach certain acts of international terrorism against U.S. nationals.  *See* 18 U.S.C. § 2333(a) (authorizing civil action for injury "by reason of an act of international terrorism"); 28 U.S.C. § 2333(d) (secondary liability for "an injury arising from an act of international terrorism"); 18 U.S.C. § 2331(1) (defining the term "international terrorism").  Congress has not, however, instructed U.S. law to apply beyond the (evil) conduct constituting "acts of international terrorism" to reach matters of (business) conduct, such as a foreign asset purchase transaction or other corporate law matters between two foreign entities.  *RJR,* 136 S. Ct. at 2100 (the question is not whether a court thinks "Congress would have wanted" a statute to apply to foreign conduct "if it had thought of

---

[12] The Supreme Court recently has applied the presumption against extraterritoriality to preclude implication of a private right of action or remedy in a variety of contexts, including those based on the common law.  *See Morrison*, 561 U.S. at 255 (applying presumption to the Securities Exchange Act of 1934); *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013) (applying the presumption to find no federal common law cause of action under the Alien Tort Statute); *RJR*, 136 S. Ct. at 2090 (applying the presumption independently to aspects of federal statute and finding a private cause of action does not apply abroad); *Jesner*, 138 S. Ct.1410 (declining to find common law corporate liability under the Alien Tort Statute).

the situation," but whether Congress has affirmatively and unmistakably instructed that the statute will do so) (quoting *Morrison*, 561 U.S. at 261).

In the absence of the necessary, explicit Congressional guidance, the ATA does not reach corporate law matters abroad, including those surrounding a foreign asset purchase agreement (like the SPA here) between two foreign corporations. *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 727 (2004) (decision to imply or create an implied right of action in a federal statute where Congress has not directly spoken is "better left to legislative judgment in the great majority of cases") (quoting *Correctional Services Corp. v. Malesko*, 534 U. S. 61, 68 (2001)); *Jesner*, 138 S. Ct. at 1389-90 (there is much "doubt on the authority of courts to extend or create private causes of action [against corporations] even in the realm of domestic law," let alone foreign corporations).

### 3.   The ATA's text, structure, legislative history, and purpose shows no intent to create successor liability

To the extent the lack of explicit authorization in the ATA and the application of presumption of extraterritoriality does not end this Court's inquiry, there is no indication that Congress intended to create a successor liability in the ATA, let alone affirmatively and unmistakably intended to do so and for it to apply abroad.  Typically, courts look to the following factors to determine whether Congress intended to create a right or remedy in a federal statute: (1) the language of the statute itself, (2) the structure of the statutory scheme, (3) the statute's legislative history, (4) the underlying purpose and identity of the statute's intended beneficiaries, and (5) other constitutional and prudential considerations. *Cannon v. University of Chicago*, 441 U.S. 677, 689 (1979); *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO.,* 451 U.S. 77, 91 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639 (1981).

The Supreme Court has warned, however, that: "In almost any statutory scheme, there may be a need for judicial interpretation of ambiguous or incomplete provisions. But the authority to

construe a statute is fundamentally different from the authority to fashion a new rule or to provide a new remedy which Congress has decided not to adopt." *Northwest Airlines, Inc.*, 451 U.S. at 97. Here, each of the factors above shows that Congress intended the ATA to reach only culpable actors involved in terrorism or terrorism-related activities, and not successors.

### a. The ATA's plain language extends only to primary and secondary liability

As noted, the ATA does not explicitly create a private action or remedy based on successor liability, and instead expressly creates and authorizes only primary and secondary liability against culpable actors involved in terrorism or terrorism-related conduct. 18 U.S.C. §§ 2333(a) (creating liability for committing "act of international terrorism"), 2333(d) (creating liability for "any person who aids and abets, by knowingly providing substantial assistance [to], or who conspires with …"). Of course, by definition, a successor-in-interest neither committed the earlier terrorist act, nor aided and abetted or conspired with a terrorist/FTO to commit that act as the text requires.

### b. The ATA's structure and liability provisions contradict an intent to impose successor liability on an asset purchaser

The structure of the ATA shows that Congress did not intend the civil liability provisions to apply to a foreign asset purchaser for three reasons. *First*, to be liable under the ATA, a defendant must harbor a terrorist intent. *See supra* at 5-6. This intent element is lacking with respect to a successor asset purchaser who played no role in the alleged misconduct.

*Second*, the ATA provides for treble damages. 18 U.S.C. § 2333(a). Such damages, "not being compensatory, tend to have punitive aim." *Boim*, 549 F.3d at 692; *Texas Industries, Inc.*, 451 U.S. at 639 ("The very idea of treble damages reveals an intent to punish past, and to deter future, unlawful conduct."). Punitive damages are seldom if ever imposed unless the defendant is found to have engaged in circumstances showing serious wrongdoing and culpability. *Boim*, 549 F.3d at 692; Prosser on Torts, § 2 at pp. 9-10. The imposition of treble damages on an asset

- 16 -

purchaser who engaged in no deliberate wrongdoing, let alone conduct that would justify punitive damages, cuts squarely against a finding that Congress intended the ATA to apply to a successor.

*Third*, the presence of an elaborate enforcement and damages mechanism in the ATA contradicts any legislative intent to create additional private remedies.  As "a comprehensive statutory and regulatory regime" designed to combat terrorism and terrorism-financing, the ATA "reflect[s] the careful deliberation of the political branches on when, and how, banks should be held liable for the financing of terrorism." *Jesner*, 138 S. Ct. at 1405 (plurality opinion).  The ATA's criminal, as well as civil remedies and treble damages, thus "strongly evidences an intent not to authorize additional remedies." (quoting *Northwest Airlines,* 451 U.S. at 93-94 and citing *Texas Industries,* 451 U.S. at 639).

### c.  The ATA's legislative history shows that Congress intended to impose liability only on culpable actors

The ATA's legislative history (both as enacted and later as amended by JASTA) further confirms the conclusion that Congress did not seek to impose liability against a successor asset purchaser.  Most fundamentally, the U.S. Senate Report reauthorizing the ATA explains Congress's intent in creating a remedy against those ***responsible for acts of terrorism***:

> Title X would allow the law to catch up with contemporary reality by providing victims of terrorism with a remedy for a wrong that, by its nature, falls outside the usual jurisdictional categories of wrongs that national legal systems have traditionally addressed. By its provisions for compensatory damages, treble damages, and the imposition of liability ***at any point along the causal chain of terrorism***, it would interrupt, or at least imperil, the flow of money.

S. REP. 102-342, S. Rep. No. 342, 102ND Cong., 2ND Sess. 1992, 1992 WL 187372 (Leg. Hist.) P.L. 102-572, at 27 (emphasis added).  While Congress intended to provide compensation to victims, "the imposition of liability" and recovery of money was to be from those "along the causal chain of terrorism."  *Id*.  A claim against a successor based upon an arms-length purchase of assets falls outside this stated intent.

- 17 -

Nor does anything in the legislative history of JASTA – the Justice Against **Sponsors** of Terrorism Act (emphasis added) – suggest that Congress was concerned with authorizing private civil suits with theories based upon successor liability.  To the contrary, JASTA chiefly added a theory of secondary liability, and statutory notes and statements do not suggest Congress intended to expand the ATA further to include successor liability through its new provisions or definitions. *See* 18 U.S.C. § 2333 Statutory Note (Findings § 7) (authorizing civil claims for providing support "to the persons or organizations responsible for their injuries"); *Id.* (Purpose) (authorizing relief against those who "have provided material support").

### d.  The ATA's purpose, including its intended beneficiaries, does not support successor liability against an asset purchaser

Neither does the purpose of the ATA support a finding of a successor liability for three reasons.  *First*, that successor liability may help ensure full compensation to a victim has been rejected as a justification for its implication.  *See New York v. National Service Industries, Inc.*, 460 F. 3d 201, 214 (2d Cir. 2006) (observing that when considering the argument that "the sale of assets and dissolution of the original company destroys the products-liability plaintiffs' remedies," New York's highest court has ruled that "this was merely a statement of the problem" and insufficient to find successor liability) (citing *Semenetz,* 851 N.E.2d at 1174).

*Second*, the justification that the lack of successor liability will defeat the purpose of the ATA likewise lacks a legal and factual basis.  As a legal matter, this type of argument has been made before in varying contexts and the Supreme Court has consistently found it insufficient as an interpretative tool.  *RJR*, 136 S. Ct. at 2110 (justification is merely an improper attempt to "divin[e] what Congress would have wanted"); *Morrison*, 529 U.S. at 261 (a court is not authorized to choose a construction of a statute even if it effectuates Congress' "overriding purpose" where the statute is unambiguous).  As a factual matter, the ATA private civil remedy provision without

- 18 -

successor liability still does exactly what Congress intended: to cut off money to terrorists in the causal chain of terrorism. Beyond civil remedies, the Government also has a robust arsenal of antiterrorism tools, including criminal prosecutions, asset freezes, and export controls under the ATA and other statutes, which more directly advance antiterrorism law enforcement than their civil counterparts. *See* 138 Cong. Rec. S17260 (daily ed. Oct. 7, 1992); Antiterrorism Act of 1990: Hearing on S. 2465 Before the S. Comm. on the Judiciary, 101st Cong. 46-47 (1990).

*Third*, while it is true that the beneficiaries of ATA are victims of terrorist attacks, it does not follow that Congress intended – let alone clearly intended – to allow them to recover damages for their injuries from any available source. Indeed, there is no amount of money that can replace a loved one, and, for some families, a court-entered judgment or finding that a person, entity or organization is responsible may be more important than a monetary award. This sense of justice is neither achieved nor served by a judgment against an innocent successor.

### 4. No other circumstances justify the creation of a successor liability cause of action under a federal common law

There are two narrowly drawn circumstances where a court may formulate new causes of action pursuant to the common law: "those in which a federal rule of decision is 'necessary to protect uniquely federal interests,' and those in which Congress has given the courts the power to develop substantive law." *Texas Industries*, 451 U.S. at 640 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Neither are present here. Private suits brought by private parties pursuant to a federal statute do not, without more, implicate uniquely federal interests, which "concern[] with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases." *Texas Industries*, 451 U.S. at 640-41, 642. Next, the authority of the courts to fashion new or additional remedies is circumscribed where, as here, Congress has enacted an extensive remedial scheme

designed to enforce the statutory provisions at issue. *Id*. at 643-44 (noting a "sharp distinction between the lawmaking powers conferred [on the federal courts] in defining violations and the ability to fashion the relief available to parties claiming injury").

* * *

In sum, while there are broad remedial domestic statutes (like CERCLA) where Congress has authorized damages for harm without regard to fault and knowledge, and where courts have implied successor liability, the ATA is not such a statute. Its liability provisions (with scienter requirements and treble damages) apply extraterritorially only to culpable actors. A successor liability claim is therefore unavailable and Count IV should be dismissed.

## B. SGBL Is Not Liable For LCB's Alleged Tortious Conduct Committed Prior To The Asset Purchase

Even assuming the ATA somehow authorizes successor liability, the amended complaint fails to state a claim because it is well settled that, as an asset purchaser, SGBL is not liable for LCB's alleged torts prior to the transaction, and has no successor liability.[13]

### 1. The long-standing rule is that a corporation that acquires the assets of another is not liable for the torts of the predecessor

New York takes a somewhat dim view of successor liability. *See Semenetz*, 851 N.E.2d at 1174 ("extending liability to the corporate successor places responsibility" on the wrong party); *id*. at 1175 (rejecting a "product line" exception whose adoption "would mark 'a radical change from existing law implicating complex economic considerations better left to be addressed by the Legislature.'") (citations omitted). New York follows the traditional rule that "a corporation which

---

[13] In the event the Court implies the availability of a successor liability cause of action or remedy under the ATA, there remains a question as to the content of that federal law (*i.e.*, federal common law). Here, the traditional corporate common law rule in the United States and in New York is that generally an asset purchaser (the "successor") does not become liable for any of the liabilities of the seller (the "predecessor") arising prior to the transfer. *See U.S. v. Bestfoods*, 524 U.S. 51 (1998) (in the absence of statutory authorization, courts are not free to impose federal statutory liability under standards that depart from the well-established principles of common law). Because the standards are not materially different and there is no justification for displacing state law, SGBL will look to New York for the purposes of this memorandum.

acquires the assets of another is not liable for the torts of the predecessor corporation," except under certain narrow circumstances. *Semenetz*, 851 N.E.2d at 1172. "These exceptions arise where a successor corporation "expressly or impliedly assume[s] [its] predecessor's tort liability"; or "there [is] a consolidation or merger of seller and purchaser"; or "the purchasing corporation [is] a mere continuation of the selling corporation"; or "the transaction is entered into fraudulently to escape such obligations." *Id.* (citing *Schumacher*, 451 N.E.2d 195, 198)). The amended complaint fails to state a claim against SGBL because it does not allege facts plausibly showing that any exception to the non-liability rule applies.

### 2.   None of the exceptions to the non-liability rule for an asset purchaser apply here

The amended complaint fails to allege facts plausibly showing that any of the four exceptions to the non-liability rule applies to SGBL's good-faith asset purchase arising from a competitive bidding process.[14]

### a.   The assumption of liability exception does not apply because SGBL did not expressly or impliedly assume LCB's tort liabilities, let alone any ATA-related liabilities connected to Plaintiffs' injuries

The crux of Plaintiffs' successor liability claim is that SGBL is responsible for all of LCB's past conduct and assumed LCB's alleged ATA tort liability. Am Compl. ¶139 ("by assuming all of LCB's liabilities, Defendant SGBL also assumed LCB's liability for the banking and financial services that LCB knowingly performed for Hezbollah"); *see also id.* ¶5694 ("Defendant SGBL is liable for the acts of LCB to the same extent that LCB would be found liable."). This theory is fundamentally flawed for several reasons. *First*, Plaintiffs' allegation is utterly conclusory. Nor

---

[14] Plaintiffs bear the burden of proving successor liability. *See Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Publ'g Corp.*, 635 F.3d 48, 52 (2d Cir. 2011) ("Because the 'general rule' is that a purchaser of assets does not assume the predecessor's liability, it follows that the proponent of successor liability must offer proof that one of the [ ] exceptions to the general rule applies.").

does the inclusion of a single paragraph from the SPA between LCB and SGBL – which lacks any context whatsoever – save this conclusory allegation. *Id*. ¶5686. *Second*, Plaintiffs contradict their own theory by admitting in their complaint that SGBL did ***not*** assume all of LCB's assets and liabilities (and instead sought to reject those associated with money laundering) and that many LCB accounts "migrated" to other Lebanese banks. *Id*. ¶5693; *see generally id*. ¶103. Under these circumstances, Plaintiffs do not allege facts plausibly showing that SGBL ***expressly*** assumed responsibility for LCB's prior conduct and/or tort liability, let alone for LCB's ATA-related liabilities, to meet their burden of showing an exception to the non-liability rule applies.[15]

Furthermore, even if SGBL assumed some of LCB's liabilities by virtue of the transaction, there is nothing beyond rank speculation to conclude that SGBL assumed any particular LCB liability that is connected or has any relationship to any alleged injury in this case. While the amended complaint alleges that SGBL "elected to maintain" certain accounts, *id*. ¶1470, and speculates that "there is no indication" that certain other "accounts were ever closed by Defendant SGBL," *id*. ¶5689, conspicuous by its absence is any allegation that any customer account allegedly assumed by SGBL is connected to, let alone caused, any attack caused any injury in this case. Plaintiffs consequently fail to state non-conclusory facts plausibly showing this exception to the non-liability rule applies. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007).

### b. The *de facto* merger exception does not apply because there is no common ownership of LCB and SGBL after the purchase

Plaintiffs do not allege – because they cannot – that there is any common or continuity of ownership by LCB after the all-cash asset purchase by SGBL. This is fatal because New York law requires a showing of continuity of ownership to establish the existence of a *de facto* merger.

---

[15] The LCB forfeiture Stipulation likewise confirms SGBL did not ***impliedly*** assume the LCB's liabilities for its past conduct involving money laundering given the Government's declaration that SGBL would face no successor liability.

*Cargo Partner*, 352 F.3d at 47 ("continuity of ownership is the essence of a merger" and "is what helps [] distinguish a merger from an asset sale"); *Vasquez v. Ranieri Cheese Corp.*, 2010 WL 1223606, at *13 (E.D.N.Y. Mar. 26, 2010) ("In harmony with this legal theory, courts have also held that there is no continuity of ownership where assets are purchased solely with cash.") (citation omitted); *Dritsas v. Amchem Products, Inc.*, 94 N.Y.S.3d 264, 265 (1st Dep't 2019) (exception inapplicable where assets purchased with cash and predecessor had no ownership).

### c. The continuation of the predecessor exception does not apply because there is no common ownership and LCB continues in existence today

Under New York law, successor liability under a continuation theory only attaches with "a common identity of directors, stockholders and the existence of only one corporation at the completion of the transfer." *See Ladjevardian v. Laidlaw–Coggeshall, Inc.*, 431 F. Supp. 834, 839 (S.D.N.Y. 1977); *see id.* (continuation envisions more of a reorganization, rather than a sale). "Some courts have observed that the mere-continuation and de-facto-merger doctrines are so similar that they may be considered a single exception." *Cargo Partner*, 352 F.3d at 45 n.3 (citations omitted). As with *de facto* merger, this exception is inapplicable because LCB continues to exist and defend lawsuits, and there is no common ownership. *Dritsas v. Amchem Prod., Inc.*, 79 N.Y.S.3d 470, 476 (N.Y. Sup. Ct. 2018) ("the seller's survival in any form renders the mere continuation doctrine inapplicable"), *order reversed on other grounds*, 94 N.Y.S.3d 264, *supra*.

### d. The fraudulent conveyance exception does not apply because the asset purchase was an arm's length transaction arising from a competitive bidding process

The complaint does not allege any facts showing that the asset purchase was a fraudulent conveyance. The circumstances show the opposite. Am. Compl. ¶1448 ("SGBL was the winning bidder to acquire LCB"); *Bank v. Hydra Grp., LLC*, 2017 WL 6806665, at *8 (E.D.N.Y. Dec. 1, 2017), *reconsideration denied*, 2017 WL 9938286 (E.D.N.Y. Dec. 20, 2017), *and report and*

*recommendation adopted*, 2018 WL 296092 (E.D.N.Y. Jan. 4, 2018) ("A transaction is not fraudulent if it is both an exchange for value and made in good faith.").

* * *

Because Plaintiffs have not alleged facts showing that SGBL is liable for LCB's tortious conduct prior to the asset purchase, the successor claim must be dismissed.

## C. SGBL Has No Successor Liability Because Its Predecessor Has No Liability Under The ATA

Even assuming (a) this Court has personal jurisdiction over SGBL, (b) the ATA authorizes a successor liability cause of action or remedy against a foreign asset purchaser, (c) Plaintiffs have alleged facts plausibly showing SGBL assumed liability for LCB's earlier torts, Count IV still fails because, as with the other Lebanese banks, LCB's alleged provision of financial services does not give rise to primary or secondary liability under the ATA. *See Joint Brief.* Because SGBL is only liable to the same extent as its predecessor, and LCB has none, the successor liability claim fails.[16]

This conclusion is supported, if not compelled, by a consistent line of recent cases, including many in this Circuit, rejecting similar arguments of ATA liability as those made here. *See, e.g., Siegel v. HSBC N.A. Holdings, Inc.*, 933 F.3d 217 (2d Cir. 2019); *O'Sullivan v. Deutsche Bank AG*, 2019 WL 1409446, at *9 (S.D.N.Y. Mar. 28, 2019); *Freeman v. HSBC Holdings PLC*, 2019 WL 4452364 (E.D.N.Y. Sept. 16, 2019); *Kaplan*, 2019 WL 4869617. For instance, in dismissing a primary liability claim against LCB in *Kaplan*, Judge Daniels concluded that LCB's provision of financial services does not equate to international terrorism, and that, even if it did, "[t]he causal link between [LCB's] provision of financial services and Plaintiffs' injuries is too attenuated to support a finding of proximate cause. 2019 WL 4869617, at *4. In dismissing the

---

[16] SGBL also notes that Congress included an act-of-war exception in the ATA that excludes from the private civil liability provisions harm arising from internationally-recognized armed conflict such as the U.S. military operations throughout the time period in the complaint. 18 U.S.C. § 2336(a). SGBL reserves the right to argue that this also precludes LCB (and SGBL) liability should it become necessary in these proceedings.

secondary liability claims, Judge Daniels (correctly) concluded:  "Plaintiffs fail to plausibly allege that [LCB], when processing wire transfers, conspired with or aided and abetted Hizbollah in perpetrating the rocket attacks."  *Id*. at *5.  This makes sense because by providing financial services to its customers, LCB cannot be said to have been "aware" it was playing a "role" in terrorist activity, let alone be said to have "substantially assist[ed] the principal violation."  *See also Linde*, 882 F.3d at 328-331; *Halberstam*, 705 F.2d at 477.  As in *Kaplan*, nor are there *non-conclusory* allegations here in support of any conspiracy liability that "would lead one to infer that [LCB] shared any common goal of committing an act of international terrorism."  2019 WL 4869617, at *5; *O'Sullivan*, 2019 WL 1409446, at *9 ("[T]o be subject to secondary liability under JASTA on the basis of a conspiracy, a defendant must have conspired to commit an act of international terrorism."); *see also Kaplan*, 2019 WL 4869617, at *5 ("fatal to Plaintiffs' claim for conspiracy liability is their failure to sufficiently allege any unlawful agreement between Defendant and Hizbollah").

Finally, as Judge Daniels aptly notes, while "the U.S. Treasury's analysis and the [Justice Department's] complaint in the forfeiture action include damning allegations that [LCB] was involved in a money laundering scheme with links to Hizbollah," the processing of funds through LCB accounts does not plausibly allege that LCB "knowingly and intentionally supported Hizbollah in perpetrating the rocket attacks," or that "Hizbollah received any of those funds or that Defendant knew or intended that Hizbollah would receive the funds."  *Kaplan*, 2019 WL 4869617, at *6-7 (emphasis supplied).  The same can be said here:  the LCB money laundering allegations are insufficient to support ATA liability, which, in turn, results in no successor liability for SGBL.

## Conclusion

The complaint against SGBL should be dismissed in its entirety with prejudice.

Respectfully submitted,

November 1, 2019                    **ASHCROFT LAW FIRM, LLC**

                    By:     /s/ Michael J. Sullivan
                            Michael J. Sullivan
                            Brian J. Leske
                            Ashcroft Law Firm, LLC
                            200 State Street, 7th Floor
                            Boston, MA 02109
                            617-573-9400

                            Email: msullivan@ashcroftlawfirm.com
                            Email: bleske@ashcroftlawfirm.com

                            *Attorneys for Defendant Société Générale de*
                            *Banque au Liban S.A.L.*