UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------------

ROBERT BARTLETT, et al.,

       Plaintiffs,

  - v -

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN
SAL, et al.,

       Defendants.

----------------------------------------------------------------------

: : : : : : : : : : : :

No. 1:19-cv-00007-CBA-VMS

**SUPPLEMENTAL REPLY BRIEF IN FURTHER SUPPORT OF RENEWED MOTION
TO DISMISS BY DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.
ADDRESSING COUNT IV (SUCCESSOR LIABILITY)**

Dated:  January 31, 2020

**ASHCROFT LAW FIRM, LLC**

Michael J. Sullivan
Brian J. Leske
200 State Street, 7th Floor
Boston, MA 02109
T:  617-573-9400
F:  617-933-7607
msullivan@ashcroftlawfirm.com
bleske@ashcroftlawfirm.com

*Counsel for Société Générale de
Banque au Liban S.A.L.*

# TABLE OF CONTENTS

*Preliminary Statement* ...................................................................................................................1

ARGUMENT ....................................................................................................................................2

I.  THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL TO ADJUDICATE
   ITS PURPORTED SUCCESSOR LIABILITY IN COUNT IV.................................................2

    A.  Successor Liability Allegations Do Not Create And Confer Personal Jurisdiction
   Over A Defendant In The First Instance................................................................................3

        1.  Precedential opinions in New York show that there must be an independent basis
   for personal jurisdiction beyond allegations of successorship.......................................3

        2.  Plaintiffs' reliance on Second Circuit *dicta* regarding the imputation of personal
   jurisdiction based upon alleged successorship is misplaced..........................................5

        3.  The circumstances here do not qualify for the narrow "inherit[ed] jurisdictional
   status" exception recognized by some New York courts................................................7

    B.  The Exercise Of "Successor Personal Jurisdiction" Here Would Not Comport With
   Federal Due Process Principles...............................................................................................9

    C.  Because SGBL's Alleged Predecessor Is Not Subject To Personal Jurisdiction,
   SGBL Is Not Subject To Personal Jurisdiction Under An Imputation Theory..................12

II. THE ATA DOES NOT AUTHORIZE FEDERAL COURTS TO ADJUDICATE
   FOREIGN SUCCESSOR LIABILITY AND IMPOSE ATA SUCCESSOR LIABILITY
   ON A FOREIGN ASSET PURCHASER.................................................................................12

    A.  Congress Has Not Clearly and Explicitly Authorized A Private Civil Lawsuit
   Against An Asset Purchaser Based Upon Successor Liability ...........................................13

    B.  Because LCB Is Not Liable Under The ATA, SGBL Has No Successor Liability...........15

*Conclusion* ...................................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Abbacor, Inc. v. Miller,*
2001 WL 1006051 (S.D.N.Y. Aug. 31, 2001) ................................................................ 7, 8

*Applied Hydro–Pneumatics v. Bauer Mfg.*
68 A.D.2d 42, 416 N.Y.S.2d 817 (App. Div. 2d Dep't 1979) ...................................... 8

*Barnhart v. Sigmon Coal Co.,*
534 U.S. 438 (2002) ................................................................................................ 13, 14

*Boim v. Holy Land Found. For Relief & Dev.,*
549 F.3d 685 (7th Cir. 2008) .......................................................................................... 13

*BRG Corporation v. Chevron U.S.A., Inc.,*
163 A.D.3d 1495, 82 N.Y.S.3d 798 (App. Div. 4th Dep't 2018) ..................................... *passim*

*Bristol-Myers Squibb Co. v. Superior Court of California,*
137 S. Ct. 1773 (2017) ................................................................................................. 11

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ................................................................................................ 10, 11

*Cargo Partner AG v. Albatrans, Inc.,*
352 F.3d 41 (2d Cir. 2003) .............................................................................................. 6

*Daimler AG v. Bauman,*
571 U.S. 117 (2014) ............................................................................................... *passim*

*Erie R. Co. v. Tompkins,*
304 U.S. 64 (1938) ........................................................................................................ 12

*Goodyear Dunlop Tires Operations, S. A. v. Brown,*
564 U.S. 915 (2011) ....................................................................................................... 11

*Helicopteros Nacionales de Colombia, S.A. v. Hall,*
466 U.S. 408 (1984)………………………………………………………………………...10

*Kaplan v. Lebanese Canadian Bank SAL,*
2019 WL 4869617 (S.D.N.Y. Sept. 20, 2019)................................................... *passim*

*Kiobel v. Royal Dutch Petroleum Co.,*
133 S. Ct. 1659 (2013) .................................................................................................. 14

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
2004 WL 2071689 (S.D.N.Y. Sept. 16, 2004) ........................................................... 1

*Morrison v. Nat'l Austl. Bank Ltd.*,
561 U.S. 247 (2010) ................................................................................................. 15

*RJR Nabisco, Inc. v. European Community*,
136 S. Ct. 2090 (2016) ............................................................................................. 14

*Rodriguez v. Banco Central*,
777 F. Supp. 1043 (D.P.R. 1991), *aff'd*, 990 F.2d 7 (1st Cir. 1993) ................................ 12, 13

*Rothstein v. UBS AG*,
708 F.3d 82 (2d Cir. 2013) ....................................................................................... 13

*Rush v. Savchuk*,
444 U.S. 320 (1980) ................................................................................................. 10

*Schenin v. Micro Copper Corp.*,
272 F.Supp. 523 (S.D.N.Y. 1967) ............................................................................ 8, 9

*Schumacher v. Richards Shear Co.*,
59 N.Y.2d 239, 451 N.E.2d 195, 464 N.Y.S.2d 437 (1983) ....................................... 6

*Semenetz v. Sherling & Walden, Inc.*,
21 A.D.3d 1138, 801 N.Y.S.2d 78 (App. Div. 3d Dep't 2005), *aff'd on other grounds*,
7 N.Y.3d 194, 818 N.Y.S.2d 819, 851 N.E.2d 1170 (2006) ............................... *passim*

*Societe Generale v. Florida Health Sciences Ctr.*,
2003 WL 22852656 (S.D.N.Y. Dec. 1, 2003) ...................................................... 7, 8, 9

*SPV Osus Ltd. v. UBS AG*,
882 F.3d 333 (2d Cir. 2018) ..................................................................................... 12

*TBA Glob., LLC v. Fidus Partners, LLC*,
132 A.D.3d 195, 15 N.Y.S.3d 769 (App. Div. 1st Dep't 2015) ................................... 6

*United States Bank Nat'l Ass'n v. Bank of Am. Nat'l Ass'n*,
916 F.3d 143 (2d Cir. 2019) ............................................................................. *passim*

*Vasquez v. Ranieri Cheese Corp.*,
2010 WL 1223606 (E.D.N.Y. Mar. 26, 2010) ......................................................... 6, 7

*Walden v. Fiore*,
571 U.S. 277 (2014) ........................................................................................ *passim*

*Waldman v. Palestine Liberation Org.*,
  835 F.3d 317 (2d Cir. 2016) ....................................................................................... 9, 10

*World-Wide Volkswagen Corp. v. Woodson*,
  444 U. S. 286 (1980) ................................................................................................ 11, 12

*Preliminary Statement*

Rather than squarely confront Société Générale de Banque au Liban S.A.L.'s ("SGBL") legal arguments regarding (a) the lack of any contacts that would allow this Court to exercise personal jurisdiction to adjudicate the successor liability count, or (b) the lack of any Congressional authorization in the ATA that would allow this Court to adjudicate and impose successor liability, Plaintiffs instead repeat one (unsupported) factual allegation after another seeking to convince the Court that, somewhere and somehow, SGBL is a bad actor responsible and complicit in money laundering, terrorist financing, and a calculated effort to take human life. This characterization, of course, is false and flatly contradicted by documents Plaintiffs themselves rely upon in their amended complaint, including New York Times articles and a U.S. Department of Justice asset forfeiture settlement agreement with SGBL's alleged predecessor, the Lebanese Canadian Bank ("LCB"), which confirms the United States' view that SGBL is a "responsible owner" and not responsible for LCB's conduct based upon its "acquisition of LCB's assets and liabilities … under a theory of successor liability."[1]

In any event, this Court need not weigh or resolve any factual issues to conclude that the successor liability count against SGBL must be dismissed. Plaintiffs' theory of imputed personal jurisdiction has been flatly rejected in New York and violates fundamental due process principles.

---

[1] Plaintiffs also go to great lengths to convince the Court that SGBL assumed all of LCB's assets and liabilities by repeating a single paragraph of a complex foreign asset purchase agreement. *See* Plaintiffs' Opposition ("Opp.") at 70, 71; First Amended Complaint ("FAC") ¶¶138, 5686. While SGBL recognizes that it is not entitled to disprove this allegation at this stage of proceeding – and, for that matter, will not be goaded into doing so by Plaintiffs, *see* Opp. at 70 – SGBL cannot help but point out again that LCB continues to exist as a corporation in Lebanon and continues to defend lawsuits based upon pre-acquisition conduct, which cannot be reconciled with Plaintiffs' all-encompassing assumption. *See* SGBL Supplemental Memorandum of Law in Support of Renewed Motion to Dismiss ("SGBL MOL") at 4-5; *see, e.g., Kaplan v. Lebanese Canadian Bank SAL*, 2019 WL 4869617 (S.D.N.Y. Sept. 20, 2019) (appeal pending). SGBL also notes that the referenced paragraph says that liabilities are assumed only "to the extent they relate to the Seller's Business," which, by definition, means there are liabilities that are presumably not assumed because they do not relate to LCB's business. *Accord Linens of Europe, Inc. v. Best Mfg., Inc.*, 2004 WL 2071689, at *8 (S.D.N.Y. Sept. 16, 2004) (contractual assumption of "routine commercial liability incurred 'in the ordinary course of business'" did not include "tortious liability arising out of unlawful activity").

- 1 -

Nor does the Anti-Terrorism Act ("ATA") authorize a successor liability action against SGBL. Plaintiffs' theory that successor liability is available as a remedy unless Congress *excludes* it from the ATA gets the inquiry exactly backwards. To the contrary, it is well settled that Congress must affirmatively manifest its intention to *include* a federal liability or remedy in a statutory scheme, particularly where it is to be imposed upon a foreign corporation.

In sum, whether styled by Plaintiffs as a count, cause of action, or mechanism to transfer liability – distinctions without a difference because personal jurisdiction for purposes of Count IV must be assessed independently from any conclusions regarding Counts I-III, and any imposition of federal liability on a foreign entity must arise from explicit Congressional action – the successor claim must be dismissed on personal jurisdiction grounds or for failing to state a claim.[2]

## ARGUMENT

**I.    THIS COURT LACKS PERSONAL JURISDICTION OVER SGBL TO ADJUDICATE ITS PURPORTED SUCCESSOR LIABILITY IN COUNT IV**

Plaintiffs' underlying successorship theory in Count IV is that a Lebanese Sale and Purchase Agreement ("SPA") between LCB and SGBL "transfers liability to SGBL," Opp. at 74, n. 57, and, in turn, allows the entry of judgment against SGBL if Plaintiffs are successful in this litigation. FAC ¶5695; *id*. Prayer for Relief, (b). But Plaintiffs do not allege – because they cannot – that the SPA has or had any connection or relationship to New York or the United States. Under these circumstances, it is difficult to see how due process principles would allow this Court to exercise personal jurisdiction to adjudicate and impose federal liability on SGBL on that basis.

To escape this result, Plaintiffs contend that by (allegedly) purchasing LCB's assets and liabilities, SGBL "inherited" LCB's jurisdictional status (presumably for any claim or with respect

---

[2] Even under their own (mistaken) theories, SGBL is only subject to personal jurisdiction and potential ATA liability if its purported successor, LCB, is subject to personal jurisdiction and is liable under the ATA. As explained in the Moving Defendants' Memorandum of Law and Reply (collectively, the "Joint Briefs"), neither is the case. This provides additional, independent grounds for dismissal of Count IV against SGBL. *See* SGBL MOL, at 9-10, 24-25.

- 2 -

to any lawsuit that might be made against LCB anywhere in the United States now or in the future). Opp. at 74. Such a sweeping theory should be rejected because (1) successor principles are a means to establish tort liability, not jurisdiction, (2) the exercise of an imputed or inherited jurisdictional theory does not comport with federal due process, and, in any event, (3) the theory assumes SGBL's predecessor, LCB, would be subject to personal jurisdiction, which it is not.

### A. Successor Liability Allegations Do Not Create And Confer Personal Jurisdiction Over A Defendant In The First Instance

#### 1. Precedential opinions in New York show that there must be an independent basis for personal jurisdiction beyond allegations of successorship

New York law does not recognize a defendant's alleged successor liability as a basis for exercising personal jurisdiction. The principles and common law exceptions under which a corporate successor may be subject to liability for the torts of its predecessor "deal with the concept of tort liability, not jurisdiction." *BRG Corporation v. Chevron U.S.A., Inc.*, 163 A.D.3d 1495, 82 N.Y.S.3d 798, 799 (App. Div. 4th Dep't 2018) ("*BRG*"); *see also Semenetz v. Sherling & Walden, Inc.*, 21 A.D.3d 1138, 801 N.Y.S.2d 78 (App. Div. 3d Dep't 2005), *aff'd on other grounds* 7 N.Y.3d 194, 818 N.Y.S.2d 819, 851 N.E.2d 1170 (2006). In other words, a successorship theory is applicable only as a means of establishing a defendant's liability and an independent basis for exercising personal jurisdiction over an alleged successor is required.

In *BRG*, for example, "plaintiffs contend[ed] that personal jurisdiction exists over defendant because it ostensibly bears successor liability for a predecessor corporation that was itself subject to personal jurisdiction in New York." 82 N.Y.S.3d at 799.[3] The trial court agreed with this imputation theory and denied defendant Valero Energy Corporation's ("VEC") motion

---

[3] *BRG* was an appeal from an order of the Supreme Court, Monroe County (William K. Taylor, J.), entered September 22, 2017. Because the Decision and Order ("*BRG* Dec.") is not available on-line, SGBL attaches a faxed copy to the Declaration of Michael J. Sullivan as Exhibit A. As discussed in more detail *infra* at p. 7, facts in the Decision cast serious doubt over the correctness of *dicta* in a recent Second Circuit case regarding the interplay between successor liability allegations and personal jurisdiction in the context of a merger (which is relevant but not the case here).

to dismiss for lack of personal jurisdiction. *BRG* Dec. at 4-5 (finding "the existence of facts to suggest that VEC is a successor-interest and as such this Court has personal jurisdiction over it").

The Fourth Department unanimously reversed, agreeing with another New York appellate department that allegations of successor liability were insufficient to show personal jurisdiction, and instead only could be used to impose liability in a jurisdiction where personal jurisdiction could independently be found:

> The Third Department, however, expressly rejected that jurisdictional theory in *Semenetz* (*see id.* at 1140, 801 N.Y.S.2d 78). The "successor liability rule[s]," wrote the *Semenetz* court, "deal with the concept of tort liability, not jurisdiction. When and if [successor liability] is found applicable, the corporate successor would be subject to liability for the torts of its predecessor in any forum having *in personam* jurisdiction over the successor, but ***the [successor liability rules] do not and cannot confer such jurisdiction over the successor in the first instance***" (*id.*).

82 N.Y.S.3d at 799 (emphasis added).

Notably, the underlying trial court decision shows that the basis for alleged successorship was a merger between VEC and another company. *BRG* Dec. at 4 ("in merger documents between VEC and Ultramar Diamond Shamrock Corporation, the 'effects of the merger' were described as VEC assuming 'all debts, liabilities and duties of [Ultramar Diamond Shamrock Corporation.]'"). Even so, the appellate court ruled that the merger and all-encompassing assumption did not permit the exercise of personal jurisdiction over the alleged successor.

As noted in *BRG*, the Third Department in *Semenetz* reached the same conclusion, reversing a trial court ruling that had held that "inasmuch as [the predecessor] was subject to long-arm jurisdiction … [the purchaser of "all of its assets, including goodwill, trade names and inventory"] likewise was subject to such jurisdiction as the successor." *Semenetz*, 801 N.Y.S.2d at 80, 81.[4]  The New York appellate courts' holdings in *BRG* and *Semenetz* are sound and show

---

[4] The New York Court of Appeals affirmed but did not reach the personal jurisdictional issue.  In that declination, however, the Court suggested that imputation of personal jurisdiction would only be appropriate if the successor is

that Plaintiffs' claimed basis for personal jurisdiction over SGBL for Count IV – imputation of LCB's jurisdictional status based upon an alleged successor-in-interest status – lacks merit and provides no basis for the exercise of personal jurisdiction over SGBL.

### 2. Plaintiffs' reliance on Second Circuit *dicta* regarding the imputation of personal jurisdiction based upon alleged successorship is misplaced

Plaintiffs piece together quotations from *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d 143 (2019) ("*U.S. Bank*"), to argue that their successorship allegations are sufficient to show personal jurisdiction. Opp. at 74, 75. Any reliance on that decision is entirely misplaced – in fact, both the majority and concurring opinions confirm that SGBL's status as an alleged successor through an asset and liability purchase does not subject it to personal jurisdiction.

*First*, because the majority concluded that defendant Bank of America, N.A., the successor entity following its merger with LaSalle Bank, N.A., had "forfeited, and/or waived" the argument that it was not subject to personal jurisdiction, the majority's subsequent discussion of the issue is *dicta*. *U.S. Bank*, 916 F.3d at 155; *see id*. ("Because the issue is forfeited, we do not rule on it.").

*Second*, even so, the majority's view – specifically, that it "can see no reason why, in a suit to enforce a merger partner's contract, the entity that survives the merger should not be subject to personal jurisdiction in whatever court the actions of the merger partner in relation to the contract would have made the merger partner subject" – explicitly limits any jurisdictional imputation to instances where, as noted, there has been a merger and there is one "entity that survives the merger." *U.S. Bank*, 916 F.3d at 155; *see, e.g., id*. at 156 ("while successor liability based on acquisition of a predecessor's assets does not necessarily make the defendant also amenable to jurisdiction where the predecessor's actions would have made the predecessor subject to specific

---

"substantively responsible" for the tort. *See Semenetz*, 7 N.Y.3d at 199, n. 2 ("Because we do not adopt the 'product line' exception, we need not and do not address plaintiff's argument that personal jurisdiction may properly be imputed to a successor corporation whenever it is substantively responsible for its predecessor's allegedly tortious conduct.").

jurisdiction, the rule is different where the successor liability of the defendant derives from a merger with the predecessor"); *id*. at 157 ("while the holding of *Semenetz* was that successor liability on the basis of … exceptions to successor-nonliability does not confer on the successor the jurisdictional status of the predecessor, the decision explicitly recognizes that the rule is otherwise when the successor status results from merger with the predecessor").

Here, of course, there was no merger between SGBL and LCB as a matter of law. *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 47 (2d Cir. 2003) (under New York law, "continuity of ownership is the essence of a merger"; "[i]t is, by contrast, the nature of an asset sale that the seller's ownership interest in the entity is given up in exchange for consideration; the parties do not become owners together of what formerly belonged to each."). As Plaintiffs allege and concede, the purported successorship here flows from an all-cash, no-stock purchase by SGBL of certain LCB's assets and liabilities, arising from a competitive bidding process, without any allegation of continuing ownership by LCB or its shareholders (directly or indirectly) after the transaction, with two separate entities existing after the transaction, and with SGBL exercising no control, oversight, or corporate relationship with LCB afterwards. *See Cargo Partner AG*, 352 F.3d at 47 ("Because there is no continuity of ownership here, the asset purchase was not a merger ... called something else.") (internal quotations omitted); *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 244-45, 451 N.E.2d 195, 198, 464 N.Y.S.2d 437, 440 (1983) (no merger exists where predecessor survives the transaction as "a distinct, albeit meager, entity"); *TBA Glob., LLC v. Fidus Partners, LLC*, 132 A.D.3d 195, 210, 15 N.Y.S.3d 769, 780 (App. Div. 1st Dep't 2015) ("We agree with the Second Circuit that, under New York law, continuity of ownership is the touchstone of the de facto merger concept and thus a necessary predicate to a finding of de facto merger.") (citations and internal quotation marks omitted); *Vasquez v. Ranieri Cheese Corp.*, 2010 WL

1223606, at *13 (E.D.N.Y. Mar. 26, 2010) ("there is no continuity of ownership where assets are purchased solely with cash") (citation omitted); *see also* SGBL MOL at 20-24.  Jurisdictional imputation is therefore unavailable to Plaintiffs under *dicta* in that opinion.

*Third*, although the majority suggested that merger provides a basis for an imputation of personal jurisdiction, that conclusion does not appear to be a correct statement of New York law, as the concurrence observed.  *U.S. Bank*, 916 F.3d at 155; *see id*. at 159-60 (citing *BRG*, 82 N.Y.S.3d at 799) (Chin, J., concurring).  To reach its conclusion, the majority observed that the appellate decision in "*BRG* did not explain the basis for deeming [the defendant] a successor in interest to the tortfeasor," and "[t]he decision says nothing to suggest that [the defendant] had merged with the predecessor."  *U.S. Bank*, 916 F.3d at 158; *see also id*. at 156 ("So far as appears from the decisions, none of [the concurrence's] cases involves successor liability based on merger").  Now having reviewed the decision on appeal in *BRG*, it is clear that the case *did* involve a merger, with the successor assuming "all debts, liabilities and duties of [the predecessor]."  *BRG* Dec. at 4.  Even with that merged status and express assumption of liabilities, the appellate court unanimously held that it could not and would not impute the predecessor's jurisdictional status to confer personal jurisdiction upon the successor.  *See BRG*, 82 N.Y.S.3d at 799.  The same should hold true here, particularly given the absence of a formal merger between SGBL and LCB.[5]

**3.**  **The circumstances here do not qualify for the narrow "inherit[ed] jurisdictional status" exception recognized by some New York courts**

Both *Semenetz* and *BRG* suggest circumstances – none of which are present here – where a successor may inherit the jurisdictional status of its predecessor: "(*Societe Generale v. Florida*

---

[5] The revelation discussed immediately above may help explain the majority's (erroneous) conjecture that the concurring judge "may have been misled by *BRG's* slight misquotation of the *Semenetz* precedent."  *U.S. Bank*, 916 F.3d at 158.  Respectfully, it appears to have been the majority to have misunderstood New York law, which does not permit imputation of jurisdictional status solely based on alleged successor status.  And while there are instances where a successor may inherit its predecessor's jurisdictional status under New York law (which SGBL discusses next), it is for independent reasons beyond alleged successor status or having expressly assumed liabilities.

*Health Sciences Ctr.*, 2003 WL 22852656, *4 [S.D.N.Y. Dec. 1, 2003]; *see e.g. Abbacor, Inc. v. Miller*, 2001 WL 1006051, *3 [S.D.N.Y. Aug. 31, 2001]; *Applied Hydro–Pneumatics v. Bauer Mfg.*, 68 A.D.2d 42, 416 N.Y.S.2d 817 [1979]; *see generally Schenin v. Micro Copper Corp.*, 272 F.Supp. 523, 526 [S.D.N.Y.1967] ).” *Semenetz*, 801 N.Y.S.2d at 81 (brackets in original).  In each of these instances, the successor is not subject to personal jurisdiction simply because it might be responsible for paying the judgment (*e.g.*, because an exception to the successor nonliability rule might apply), or because the successor might have assumed the predecessor’s assets and liabilities. *Accord Societe Generale*, 2003 WL 22852656, at *4 (doubting that “personal jurisdiction over [the successor defendant] should be determined by reference to its predecessor’s contacts with New York.”).  Instead, the successor might be subject to personal jurisdiction because the alleged circumstances surrounding successorship have some other independent jurisdictional significance.

For instance, a successor may be subject to personal jurisdiction where it assumes a predecessor’s written contract with a forum selection clause and the action arises from that contract, or when it performs a predecessor’s contracts, constituting a ratification of a predecessor’s actions. *See Societe Generale*, 2003 WL 22852656, at *4 (“personal jurisdiction over the original contracting party had been gained via a forum selection clause” to litigate any contract dispute in New York); *Abbacor, Inc.*, 2001 WL 1006051, at *3 (“Consent may be either express or implied, and typically takes the form of a contractual agreement containing a New York forum selection clause or the defendant's voluntary participation in certain state processes.”); *Applied Hydro–Pneumatics*, 416 N.Y.S.2d at 820 (“voluntary election to complete the contracts constituted … ratification” conferring personal jurisdiction).  In other words, “[t]he issue was not, as it is here, whether minimum contacts could be transferred, but whether the defendant’s assumption of its predecessor’s rights and obligations constituted a voluntary adoption of all of the

terms of the contracts that the predecessor had executed." *Societe Generale*, 2003 WL 22852656, at *4.

Although there is now substantial doubt on this point, merger, too, may provide a basis for personal jurisdiction over the sole surviving company under the theory that "a successor by merger is deemed by operation of law to be both the surviving corporation and the absorbed corporation." *See U.S. Bank*, 916 F.3d at 156 (*dicta*); *Schenin,* 272 F.Supp. at 526 (suggesting that a "statutory merger" might permit the exercise of personal jurisdiction under New York law); *but see BRG*, 82 N.Y.S.3d 798 (rejecting the imputation of the predecessor's jurisdictional status to the surviving merged entity).  But this is neither here nor there, as the instant action, which arises in tort with no plausible claim of merger, presents none of the circumstances above and creates no independent basis for personal jurisdiction over SGBL.[6]

## B. The Exercise Of "Successor Personal Jurisdiction" Here Would Not Comport With Federal Due Process Principles

The exercise of personal jurisdiction over SGBL by imputing LCB's earlier jurisdictional contacts based exclusively on a foreign asset purchase agreement that has no connection to New York or the United States would not comport with federal due process principles for several reasons.  *See Waldman v. PLO*, 835 F.3d 317, 331, 343 (2d Cir. 2016) (defendants must have "sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction," and the exercise of personal jurisdiction must "comport[] with 'traditional notions of fair play and substantial justice' under the circumstances" (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 126-27 (2014)).

---

[6] The concern expressed by the majority in *U.S. Bank* (and repeated by Plaintiffs here, Opp. at 75, n.58), that, in the absence of a contrary rule allowing jurisdiction over a successor-by-merger, corporations may "arrange a merger with a dummy corporation and thus avoid being subject to an undesired jurisdiction in the state where its actions incurred the liability" seems exaggerated and, in any event, ignores courts' inherent ability to avoid manipulations of the legal system.  *See generally Schenin*, 272 F.Supp. at 526 (absent "a scheme to avoid jurisdiction," courts "are obliged to recognize the transaction in the form adopted by the parties thereto").

The Supreme Court has long held that that personal jurisdiction must be based on the contacts the *defendant* has with the forum. *See Daimler AG*, 571 U.S. at 127 (for purposes of general jurisdiction, the defendant essentially must be "at home" in the forum); *Waldman*, 835 F.3d at 335 (for purposes of specific jurisdiction, the "relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State") (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). This makes sense because due process limits "principally protect the liberty of the nonresident defendant." *Walden v. Fiore*, 571 U.S. 277, 284 (2014); *see also Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("[t]he requirements of *International Shoe* . . . must be met as to each defendant"). Here, SGBL – and not LCB – is the defendant in this case, and any jurisdictional conduct should be limited to that of SGBL.

Decisions recalibrating and significantly limiting both general and specific personal jurisdiction further confirm that personal jurisdiction *cannot* be based upon the conduct of agents or other third parties. *Daimler*, 571 U.S. at 134-36 (general jurisdiction cannot be based on imputed contacts of subsidiaries to corporate parents, often referred to as "agency jurisdiction"); *Walden*, 571 U.S. at 285 (the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State"). Imputing LCB's tortious conduct to SGBL in this case for jurisdictional purposes would represent the "unilateral activity of another party or a third person," and violate due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984); *see Burger King Corp.*, 471 U.S. at 475 (same); *see Walden*, 571 U.S. at 284 (same).

Jurisdiction by imputation also is at odds with theories underlying specific personal jurisdiction where courts focus on "the relationship among the defendant, the forum, and the litigation." *Walden*, 571 U.S. at 283-84 (citations omitted). To satisfy due process, a defendant

- 10 -

must "have purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State." *U.S. Bank*, 916 F.3d at 150 (quoting *Bristol-Myers Squibb Co. v. Super. of Cal., S.F. Cty.*, 137 S. Ct. 1773, 1785 (2017)). It also requires that "the plaintiff's claim must arise out of or relate to the defendant's forum conduct." *U.S. Bank*, 916 F.3d at 150 (*quoting Bristol-Myers Squibb*, 137 S. Ct. at 1786).

It is undisputed that neither SGBL independently, nor SGBL and LCB together, engaged in any jurisdictionally relevant acts, that is, took any action in New York or the U.S. related to SGBL's purchase of certain assets and liabilities of LCB. Plaintiffs theory therefore fails both jurisdictional tests because: (1) SGBL did not purposefully avail itself of any law or benefit in New York, or purposefully direct any conduct to the United States; and (2) there are no forum contacts that arise or relate to Plaintiffs' claim to transfer and impose ATA liability on SGBL. Far from creating a "substantial connection," Plaintiffs cannot point to *any* SGBL conduct that has any relationship to the U.S. with perhaps the exception of SGBL's alleged use of correspondent accounts, which has *nothing* to do with the SPA or LCB's alleged tortious conduct many years ago. The exercise of personal jurisdiction consequently would violate due process. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (defendants cannot be made to answer "with respect to matters unrelated to the forum connections"); *Walden*, 571 U.S. at 283 (due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts") (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U. S. 286, 291 (1980)).

Finally, due process principles seek to foster predictability and to permit out-of-state defendants "to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Daimler*, 134 S. Ct. at 762 (quoting *Burger King Corp.*, 471 U. S. at 472) (internal quotation marks omitted). The Supreme Court has warned

- 11 -

that these protections are especially important where foreign corporations are involved. *Daimler*, 134 S. Ct. at 760-62. A jurisdictional imputation theory would undermine these important goals and may have the potential of subjecting a foreign asset purchaser to personal jurisdiction in the U.S. whenever and wherever it acquires a liability of another company, whether that company is a U.S. corporation or not, and whether or not the asset purchase has any connection to the U.S. Such a sweeping theory – particularly one that reaches latent, unknown lawsuits based on alleged criminal activity by a predecessor's employees – cannot be reconciled with due process.[7]

**C. Because SGBL's Alleged Predecessor Is Not Subject To Personal Jurisdiction, SGBL Is Not Subject To Personal Jurisdiction Under An Imputation Theory**

Because Plaintiffs fail to show that LCB's correspondent banking activity *proximately caused* battlefield injuries in Iraq, specific jurisdiction is unavailable over LCB and, by extension, SGBL. *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 344 (2d Cir. 2018); *see* Joint Briefs.

**II.   THE ATA DOES NOT AUTHORIZE FEDERAL COURTS TO ADJUDICATE FOREIGN SUCCESSOR LIABILITY AND IMPOSE ATA SUCCESSOR LIABILITY ON A FOREIGN ASSET PURCHASER**

SGBL did not commit the alleged tortious conduct in Count IV. FAC ¶5683. To impute and transfer *federal* liability, as Plaintiffs request this Court to do, there must be a basis in *federal* statutory law for successor liability. *See Erie R. C. v. Tompkins*, 304 U.S. 64, 78 (1938) ("There is no federal general common law."). Here, irrespective of whether Count IV is considered a cause of action or a transfer of liability, Plaintiffs cannot show that Congress authorized a private right of action or remedy directly against a foreign asset purchaser premised upon successorship, particularly given the presumption against extraterritoriality that applies to the ATA. *See generally Rodriguez v. Banco Central*, 777 F. Supp. 1043, 1064 (D.P.R. 1991), *aff'd*, 990 F.2d 7 (1st Cir.

---

[7] Nor did SGBL consent to personal jurisdiction for all tort liabilities later brought against its predecessor in any jurisdiction. Consent needs to be explicit and knowing and, even so, "foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World-Wide Volkwagen Corp*, 444 U.S. at 295.

1993) ("successor liability should be found only sparingly and in extreme cases due to the requirement that RICO liability only attaches to knowing affirmatively willing participants").

### A. Congress Has Not Clearly and Explicitly Authorized A Private Civil Lawsuit Against An Asset Purchaser Based Upon Successor Liability

Plaintiffs do not dispute that the ATA makes no mention of successor liability and contains no explicit provision authorizing or extending its reach to such a remedy or defendant.  Instead, they contend that it is nonetheless available because "the ATA does not exclude successor liability." Opp. at 71 (initial capitalization removed).  This formulation gets it exactly backwards.  The burden is on Plaintiffs to show that clear authority exists in the ATA to adjudicate, transfer and impose substantive liability on SGBL based on its status as a successor, which Plaintiffs cannot meet.  *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013) (rejecting secondary liability "because it does not appear to us that Congress intended § 2333(a) to permit recovery on such a theory"); *Boim v. Holy Land Foundation for Relief and Development* ("*Boim III*"), 549 F.3d 685, 689 (7th Cir. 2008) (*en banc*) ("statutory silence on the subject of secondary liability means there is none; and section 2333(a) … does not mention aiders and abettors or other secondary actors").  Plaintiffs' attempt to distinguish *Rothstein* and *Boim III* on the basis that it "does not limit who is liable under the ATA," Opp. at 72, is, itself, nonsense.  *See Rothstein*, 708 F.3d at 98 (reproducing the *Boim III* quotation, *supra*, regarding the lack of mention of "actors").  In fact, the lesson of *Rothstein* is that the authority to impose civil liability – whether secondary or successor – on a new category of actors – whether aiders and abettors or successors – must be found in the statute's text.

This understanding is confirmed by *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 454 (2002), where a majority of the Supreme Court declined to impose successor liability because Congress had not explicitly stated its intention to make it available.  The Court observed that if Congress wanted to include successor liability "it could have done so clearly and explicitly." *Id*.

Notably, the dissent had argued that "clear evidence of coherent congressional intent" (which is not present with respect to the ATA) supported the broad availability of successor liability and that a contrary reading would lead to "absurd" results, yet that reasoning was insufficient to overcome the lack of explicit authorization in the statute.  534 U.S. at 463 (Stevens, J., dissenting).

Recognizing the absence of any express authority to support successor liability, *see* SGBL MOL at 15-19 (discussing lack of support in text, structure, and purpose), Plaintiffs contend (without any meaningful analysis) that it should be implied as the Second Circuit did with respect to CERCLA decades ago.  Opp. at 71.  CERCLA, however, was a broad, remedial domestic statute that imposed liability regardless of fault that had to be read and interpreted against the backdrop of U.S. corporate law, including its recognition of successor liability in certain circumstances.

The ATA is not such a statute.  Its civil private right of action and remedies are limited, by its own terms, to narrow terrorist-related activities abroad.  This is important because contrary to Plaintiffs' cursory consideration, Opp. at 73-74, the presumption against extraterritoriality applies, as it does to any statutory scheme or claim that seeks to impose federal liability over a foreign corporation, including by transferring it.  *RJR Nabisco, Inc. v. European Community* ("*RJR*"), 136 S. Ct. 2090, 2102 (2016); *see also Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013).  For such statutes, "the relevant background principle is the presumption against extraterritoriality," not "'traditional rule[s]'" such as U.S. corporate common law. *RJR*, 136 S. Ct. at 2109.

Plaintiffs' suggestion that the presumption does not apply because courts routinely interpret foreign contracts under foreign law and Plaintiffs were not injured by the "foreign asset purchase transaction," Opp. at 74, misses the point in two respects.  *First*, it is not the interpretation that is of consequence, but rather the imposition of federal liability (a) on a foreign entity, (b) where the conduct *creating* the succession or transfer of liability took place entirely abroad, and (c) where

the ATA by its own terms applies extraterritorially only to terrorism-related acts.  *See Kiobel*, 569 U.S. at 115 (for purposes of the presumption, the question is "whether a claim may reach conduct occurring in the territory of a foreign sovereign").  *Second*, courts justifiably *are* wary to adjudicate contractual obligations (a) between two foreign corporations (particularly where one would not be present), (b) under a foreign agreement, (c) governed by foreign law, and (d) in contravention of another sovereign's interest in resolving disputes between corporations created under its own law.  It is for this reason that the presumption against extraterritoriality exists as a matter of statutory interpretation and, where, as here, there is no unmistakable statement from Congress in the ATA, the successor claim is unavailable.  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010) ("When a statute gives no clear indication of an extraterritorial application, it has none.").

### B.  Because LCB Is Not Liable Under The ATA, SGBL Has No Successor Liability

SGBL is only liable as a successor to the same extent as its predecessor.  Because LCB's alleged conduct does not meet the definitional requirements for primary or secondary liability under the ATA, *see Kaplan*, 2019 WL 4869617, at \*3-\*6; Joint Briefs, SGBL is not liable either.[8]

### *Conclusion*

Plaintiffs had every opportunity to sue LCB, the alleged tortfeasor, both before and during the highly-publicized asset purchase where LCB shareholders received $500 MM+ and *where $150MM of LCB's funds* were seized in New York by the U.S. Government.  Plaintiffs' decision not to sue LCB, and instead seek to have SGBL defend LCB's ATA-related liability, so many years after the conduct at issue, is wholly inconsistent with notions of fair play and equitable principles underlying successor liability.  Count IV should be dismissed with prejudice.

---

[8] Assuming arguendo that personal jurisdiction exists and the ATA authorizes a successor liability action, SGBL looked to New York successorship principles, but, as noted, that was solely for purposes of its motion to dismiss. SGBL MOL at 20, n. 13.  Should it become necessary, SGBL reserves the right to argue that another law applies.

- 15 -

Respectfully submitted,

January 31, 2020                              **ASHCROFT LAW FIRM, LLC**

                         By:     /s/ Michael J. Sullivan
                                 Michael J. Sullivan
                                 Brian J. Leske
                                 Ashcroft Law Firm, LLC
                                 200 State Street, 7th Floor
                                 Boston, MA 02109
                                 617-573-9400

                                 Email: msullivan@ashcroftlawfirm.com
                                 Email: bleske@ashcroftlawfirm.com

                                 *Attorneys for Defendant Société Générale de*
                                 *Banque au Liban S.A.L.*