# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
mayerbrown.com

**Mark G. Hanchet**
T: (212) 506 2695:
MHanchet@mayerbrown.com

March 3, 2020

VIA ECF

Honorable Carol Bagley Amon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al.*, 19 Civ. 007 (CBA) (VMS)

Dear Judge Amon:

On behalf of the Moving Defendants,[1] we write in response to Plaintiffs' February 27, 2020, letter regarding what Plaintiffs contend is "new authority" supporting their opposition to the Moving Defendants' motion to dismiss. ECF No. 146. Plaintiffs' authority is a February 26, 2020, statement from the U.S. Department of Treasury designating 15 Lebanese individuals and companies—several of which appear in the Amended Complaint—as SDGTs. *Id.*

That these entities are now being designated in 2020 underscores that they were not designated before (or even near) the time of Plaintiffs' injuries—which occurred between 2004 and 2011. As the Moving Defendants explained, the designation of entities *after* Plaintiffs' injuries does not support a plausible inference that the Moving Defendants were aware of a connection between these entities and Hezbollah *before* the injuries occurred. *See* Moving Defendants' Joint Reply in Support of Motion to Dismiss ("Joint Reply"), ECF No. 140, at 13-14. These 2020 designations certainly do not suggest that Moving Defendants were aware that, by supposedly maintaining bank accounts for these entities nine or more years *before* any

---

[1] The Moving Defendants are (1) Société Générale de Banque au Liban S.A.L., (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) Lebanon & Gulf Bank S.A.L., (9) Banque Libano Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Honorable Carol Bagley Amon
March 3, 2020
Page 2

*designation*, they were playing a role in the terrorist activities of Hezbollah between 2004 and 2011, as required to state an aiding-and-abetting claim under JASTA. *Id*.

      Plaintiffs' submission ignores the *actual* new ATA authority in this Circuit: Judge Laura Taylor Swain's decision last week in *O'Sullivan v. Deutsche Bank AG*, 2020 WL 906153 (S.D.N.Y. Feb. 25, 2020) (enclosed). In *O'Sullivan*—a prior decision of which was discussed at length in the parties' motion to dismiss briefing—the plaintiffs asserted ATA and JASTA claims against international banks, alleging that the defendants provided banking services to Iranian entities linked to Hezbollah and other terror organizations leading to plaintiffs' injuries in Iraq. *See, e.g.,* Joint Reply at 2, 7, 9, 11, 20, 22-23 citing *O'Sullivan*. In her most recent ruling, Judge Swain denied as futile the plaintiffs' motion for leave to amend their complaint—which Judge Swain had previously dismissed (without prejudice)—and dismissed the complaint with prejudice as against the moving defendants. *O'Sullivan* is the latest in a line of decisions dismissing ATA and JASTA claims against financial institutions similar to those asserted here.

                Respectfully submitted,

                /s/ *Mark G. Hanchet*

                Mark G. Hanchet

Cc: Counsel of Record (via ECF)

Encl.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

TIMOTHY O'SULLIVAN et al.,

      Plaintiffs,

-v-                                      No. 17 CV 8709-LTS-GWG

DEUTSCHE BANK AG et al.,

      Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION & ORDER

Plaintiffs, members of the United States armed forces who were injured in terrorist attacks in Iraq between 2003 and 2011, as well as estates and family members of deceased military victims of such attacks, bring this action against seventeen financial institutions[1] pursuant to the civil liability provision of the Antiterrorism Act of 1992, 18 U.S.C. § 2333(a) (the "ATA"), as amended by the Justice Against Sponsors of Terrorism Act, Pub. L. No. 114-222, 130 Stat. 854 (2016) ("JASTA") (codified at 18 U.S.C. § 2333(d)(2)). On March 28, 2019, the Court granted Defendants' motion pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint (docket entry no. 1, the "Compl.") for failure to state a claim

---

[1] Defendants in this action are Deutsche Bank AG ("Deutsche Bank"), HSBC Bank USA, N.A., HSBC Holdings Plc, HSBC Bank Plc, HSBC Bank Middle East Limited, HSBC North America Holdings, Inc. (together, the "HSBC Defendants"), Commerzbank AG ("Commerzbank"), Commerzbank AG, New York Branch, Barclays Bank Plc ("Barclays"), BNP Paribas S.A. ("BNPP"), Standard Chartered Bank ("SCB"), Royal Bank Of Scotland N.V., Royal Bank Of Scotland Plc (together, the "RBS Defendants"), Crédit Agricole S.A. ("CASA"), Crédit Agricole Corporate & Investment Bank ("CACIB"), Credit Suisse AG ("Credit Suisse") and Bank Saderat Plc ("Bank Saderat"). Defendants, with the exception of Bank Saderat, jointly oppose Plaintiffs' motion for leave to amend their complaint and are collectively referred to herein as "Defendants." Bank Saderat has not appeared or otherwise defended this action, and a certificate of default as to Bank Saderat was entered on May 17, 2018. (See docket entry no. 126.)

upon which relief can be granted.  (Docket entry no. 195, the "2019 Opinion.")  Among other things, the 2019 Opinion dismissed Plaintiffs claims for primary liability under the ATA because the Complaint did not allege plausibly that Defendants' conduct proximately caused Plaintiffs' injuries, or that Defendants' conduct constituted acts of international terrorism, as that term is defined in the ATA.  (Id. at 10-18.)  The Court also dismissed Plaintiffs' JASTA conspiracy liability claims, finding that the Complaint did not allege plausibly the existence of an unlawful agreement to commit an act of international terrorism, and that Defendants' alleged provision of material support to various Iranian entities "is so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism."  (Id. at 19-21.)  Finally, the Court dismissed Plaintiffs' aiding and abetting liability claims under JASTA because the Complaint was devoid of factual allegations from which the Court could infer that Defendants were "generally aware" that, by providing financial services, they were thereby playing a "role" in a foreign terrorist organization's ("FTO's") violent or life-endangering activities.  (Id. at 22.)  The Court granted Plaintiffs an opportunity in the 2019 Opinion to move for leave to amend their Complaint.  (Id. at 23.)

Now before the Court is Plaintiffs' motion for leave to file their proposed Amended Complaint (docket entry no. 197-1, the "AC").  (Docket entry no. 197.)  The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 2338.  The Court has reviewed the parties' submissions carefully (including Notices of Supplemental

Authority and responses thereto) and, for the following reasons, Plaintiffs' motion for leave to file their proposed Amended Complaint is denied.

BACKGROUND

The Court assumes the parties' familiarity with the background of this case, which is laid out in detail in the 2019 Opinion. (2019 Opinion at 2-9.) The following supplemental recitation of facts is drawn from the AC, the well-pleaded factual content of which is taken as true for purposes of this motion practice.[2]

Plaintiffs are U.S. nationals and the families of U.S. nationals who were serving as members of, or contractors for, the U.S. armed forces at the time that they were injured or killed in terrorist attacks in Iraq from 2003 to 2011. (AC ¶ 11.) Defendants are international

---

[2] The AC attaches as exhibits the expert declarations of Thomas E. Nollner, Donald Semesky, Jr., Robert Mazur, and the declaration of Everett Stern, a former HSBC employee (AC Exs. 1-4). Plaintiffs assert that their contents should be taken into account in evaluating the sufficiency of the complaint, as "written instruments" under Federal Rule of Civil Procedure 10(c) or as documents "integral" to the 573-page AC. The Court declines to do so. In this Circuit, Rule 10(c) is understood to authorize consideration of matter "consistent with the general understanding of what a legal or written instrument is, i.e., a legal document that defines rights, duties, entitlements or liabilities, such as a statute, contract, will, promissory note or share certificate." Smith v. Hogan, 794 F.3d 249, 254 (2d Cir. 2015) (citation and internal quotation marks omitted). The proffered declarations comprise no such content. Rather, they are analyses purporting to marshal additional circumstantial facts to bolster inferences conclusorily proffered in the AC. Nor are they properly taken into account as "integral" to the AC; they are not documents that have "independent legal significance to [Plaintiff's] claim" and are not ones upon whose "terms and effect" Plaintiff relied in preparing and tendering the AC. See id. at 254-255. The same reasoning applies to the hundreds of pages of additional exhibits appended to the AC. Furthermore, as the Smith Court observed, treating such an assemblage of ancillary documents as part of a complaint would "eviscerat[e]" "Rule 8(a)'s requirement of a short and plain statement of a claim for which relief could be granted." Id. at 255; see also Ong v. Chipotle Mexican Grill, Inc., 294 F. Supp. 3d 199, 224-225 (S.D.N.Y. 2018) (striking expert declaration attached to complaint because, among other things, it was not relied upon by plaintiffs in drafting their complaint).

financial institutions with banking operations in the United States. (Id. ¶¶ 227-327.) Like the original Complaint, the AC alleges primarily that Defendants "illegally misuse[d] the U.S. banking system to provide material support for terrorism" by "deliberately evading U.S. economic sanctions, conducting illicit trade-finance transactions, using evasive money-laundering tactics and disguising financial payments to and from U.S. dollar-denominated accounts." (Id. ¶ 1.) Specifically, Plaintiffs allege that Defendants' provision of financial services to the government of Iran and its "Agents and Proxies"[3] in violation of U.S. sanctions, industry standards, and other duties imposed by U.S. law, helped Iran fund and support the terrorist organizations that carried out the attacks that injured Plaintiffs. (Id. ¶¶ 1-200.)

The AC asserts thirteen claims for relief.[4] Plaintiffs' First and Fifth Claims for Relief allege that Defendants are liable under JASTA for participating in a conspiracy to provide material support for international terrorism in violation of 18 U.S.C. § 2339A and § 2339B.[5] (Id.

---

[3] Like the original Complaint, the AC defines Iran's "Agents and Proxies" as "Iran's terrorism network," including Bank Markazi Jomhouri Islami Iran ("Bank Markazi"), Bank Melli Iran ("Bank Melli"), Bank Saderat Plc, the Islamic Republic of Iran Shipping Lines ("IRISL"), Mahan Air, Iran Air, the National Iranian Oil Company ("NIOC"), the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"), the Iranian Ministry of Intelligence and Security ("MOIS"), and the "Terrorist Groups." (AC ¶ 1 n.2.) "Terrorist Groups" refers to, among others, Hezbollah, al Qaeda, Ansar al Islam ("AAI"), and the "Special Groups." (Id. ¶ 5 n.5.) The term "Special Groups" in the AC "refers to terrorist organizations established and funded by Iran," including Jaysch al Mahdi ("JAM"), Kata'ib Hizballah ("KH"), Asa'ib Ahl al Haq ("AAH"), and "others . . . which were responsible for the terrorist attacks at issue in this Action." (Id. ¶¶ 5 n.5, 30 n.15.)

[4] Plaintiffs have renumbered and added claims for relief to the 573-page AC, however, the allegations of fact underlying each of the AC's thirteen claims for relief are materially unchanged from those underlying the ten claims for relief in Plaintiffs' original 533-page Complaint.

[5] Section 2339A criminalizes the provision of material support or resources "knowing or intending that they are to be used in preparation for, or in carrying out, a violation of [certain specified statutory provisions, including 18 U.S.C. § 2332, which criminalizes killing or inflicting bodily injury on U.S. nationals abroad]." 18 U.S.C.S. § 2339A (LexisNexis 2008). Section 2339B criminalizes the provision of material support or resources to a foreign terrorist organization with the knowledge that "the organization is a

¶¶ 2320-2369, 2467-2521.) Plaintiffs' Second Claim for Relief alleges that Defendants are liable under JASTA for aiding and abetting an act of international terrorism by providing material support to an FTO within the meaning of 18 U.S.C. § 2339B. (Id. ¶¶ 2370-2411.) Plaintiffs' Third and Fourth Claims for Relief allege that Defendant Commerzbank is liable under JASTA for conspiring with, and aiding and abetting acts of international terrorism sponsored by, Waisenkinderprojekt Libanaon e.V. (the "Orphans Project"). (Id. ¶¶ 2412-2444, 2445-2466.) Plaintiffs' Sixth and Seventh Claims for Relief allege that Defendants are liable under the ATA's primary liability provision for providing material support to Iran and its Agents and Proxies in violation of 18 U.S.C. § 2339A and § 2339B. (Id. ¶¶ 2522-2553.) Plaintiffs' Eighth and Tenth Claims for Relief assert that Commerzbank is liable under the ATA's primary liability provision for providing material support in violation of 18 U.S.C. § 2339A and § 2339B to the Orphans Project, IRGC, and IRISL, which in turn led to the provision of substantial assistance to, among others, Hezbollah and the Special Groups, thereby "preparing and facilitating acts of terrorism" that caused Plaintiffs' injuries. (Id. ¶¶ 2573-2581, 2602-2613.) Plaintiffs' Ninth Claim for Relief alleges that SCB is liable under the ATA's primary liability provision for providing material support in violation of 18 U.S.C. § 2339A to the IRGC-QF, Hezbollah, al Qaeda, AAI, KH, JAM, "and/or other terrorist organizations," through its provision of financial services to, among others, Mahan Air and Iran's Ministry of Defense and Armed Forces Logistics ("MODAFL"). (Id. ¶¶ 2582-2601.) Finally, Plaintiffs' Eleventh, Twelfth, and Thirteenth Claims for Relief allege that Defendants are liable under the ATA's primary liability provision

---

designated terrorist organization," that "the organization has engaged or engages in terrorist activity," or "that the organization has engaged or engages in terrorism." 18 U.S.C.S. § 2339B (LexisNexis 2008).

for conducting financial transactions with Iran in violation of 18 U.S.C. § 2332d,[6] which transactions constitute acts of international terrorism.[7] (Id. ¶¶ 2614-2644, 2645-2660, 2661-2681.)

## DISCUSSION

Federal Rule of Civil Procedure 15(a) provides that leave to amend the pleadings "should [be] freely give[n] when justice so requires." Fed. R. Civ. P. 15(a). Leave to amend may, however, be denied if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) would prejudice the opposing party, or (4) would be futile. Kim v. Kimm, 884 F.3d 98, 105 (2d Cir. 2018). A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Ballard v. Parkstone Energy, LLC, No. 06 CV 13099, 2008 WL 4298572, at *3 (S.D.N.Y. Sept. 19, 2008).

Under the Rule 12(b)(6) standard, the Court accepts as true the non-conclusory factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007). To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007). However, a "pleading that offers labels and conclusions or

---

[6] Section 2332d provides that any "United States person, knowing or having reasonable cause to know that a country is designated . . . as a country supporting international terrorism, [that] engages in a financial transaction with the government of that country, shall be fined under this title, imprisoned for not more than 10 years, or both." 18 U.S.C.S. § 2332d (LexisNexis 2008).

[7] Plaintiffs' Eleventh Claim for Relief is asserted solely against the HSBC Defendants, and their Thirteenth Claim for Relief is asserted solely against BNPP. Plaintiffs' Thirteenth Claim for Relief also alleges that BNPP is liable for engaging in financial transactions with the government of Sudan in violation of 18 U.S.C. § 2332d.

a formulaic recitation of elements of a cause of action will not do." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). To state a claim upon which relief can be granted, its factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

Primary Liability Claims Under 18 U.S.C. § 2333(a)

As explained in the 2019 Opinion, to prevail on a claim for primary civil liability under the ATA, a plaintiff must show: "(1) an injury to a U.S. national, (2) an act of international terrorism, and (3) causation." Shaffer v. Deutsche Bank AG, 2017 WL 8786497, at *3 (S.D. Ill. Dec. 7, 2017), aff'd sub nom. Kemper v. Deutsche Bank AG, 911 F.3d 383, 387 (7th Cir. 2018). "[I]nternational terrorism" is defined as activities that: "(A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States . . . ; (B) appear to be intended—(i) to intimidate or coerce a civilian population; (ii) to influence the policy of a government by intimidation or coercion; or (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and (C) occur primarily outside the territorial jurisdiction of the United States . . . ." 18 U.S.C.S. § 2331(1) (LexisNexis 2008). Violations of 18 U.S.C. § 2332d, 18 U.S.C. § 2339A, or 18 U.S.C. § 2339B are not necessarily sufficient in and of themselves to constitute acts of international terrorism under the ATA. Linde v. Arab Bank, PLC, 882 F.3d 314, 326 (2d Cir. 2018) ("The provision of material support to a designated terrorist organization in violation of § 2339B can certainly satisfy [] part of the statutory definition. But, to qualify as international terrorism, a defendant's act must also involve violence or endanger human life.") (emphasis in original). Plaintiffs must also allege plausibly that Defendants' conduct proximately caused Plaintiffs' injuries. Rothstein v. UBS AG, 708 F.3d 82, 95 (2d Cir. 2013).

In the 2019 Opinion, the Court concluded that Plaintiffs had failed to allege plausibly that Defendants' conduct proximately caused Plaintiffs' injuries because "the provision of financial services to Iran or various Iranian entities is insufficient on its own to support a plausible inference that the transferred funds were subsequently used to finance terrorism." (2019 Opinion at 15.) Plaintiffs point to numerous allegations in the AC which they contend cure the deficiencies identified by the Court in the 2019 Opinion. For example, Plaintiffs argue that they have shortened the causal chain by adding allegations that the attacks that killed or injured Plaintiffs were carried out by foreign terrorist organizations like Hezbollah and Al Qaeda "working in concert with" Iraq-based militias, rather than by the militias themselves. (Docket entry no. 198, Mot. at 6; AC ¶ 33.) Plaintiffs also contend that the AC pleads proximate cause by "showing the substantial connection between Defendants' conduct and the money transferred to terrorists," and "showing the substantial connection between Defendants' conduct and the weapons the terrorists used to kill/injure Plaintiffs." (Mot. at 22.) Finally, Plaintiffs argue that the AC now "explains in detail" how Defendants' actions "directly imperiled human life." (Id. at 23.)

Plaintiffs' arguments are belied by the AC's factual allegations, which are materially unchanged from those in the original Complaint and thus fail to state a claim for primary liability under the ATA for substantially the reasons identified in the 2019 Opinion. Plaintiffs' attempt to group together actors at one end of the causal chain does not ameliorate the central flaws of their original Complaint. Even if the attacks that killed or injured Plaintiffs were committed directly by FTOs, under Rothstein and its progeny, Plaintiffs' attenuated causal chain would still be insufficient. See Rothstein, 708 F.3d at 97 (finding allegations that defendants engaged in unlawful U.S. currency transactions with Iran, through various "Iranian Government

Organs" that provided support to FTOs such as Hamas and Hezbollah, insufficient to allege plausibly that defendants proximately caused plaintiffs' injuries).

Nor are Plaintiffs' restyled allegations regarding, for example, the transferral of $2 billion to Hezbollah, the provision of financial services to Specially Designated Nationals, and transactions that allegedly enabled Iran to manufacture explosively formed penetrators sufficient to frame plausibly their allegation of proximate cause.  A close examination of the factual allegations underlying Plaintiffs' argument demonstrates that the AC's allegations in this regard are substantially similar to those of the original Complaint.  (Compare, e.g., AC ¶¶ 1660, 1668 (alleging that "Iranian banks and their customers provided over $2 billion in material support to Hezbollah," and that Defendants provided financial services to those banks) with Compl. ¶¶ 828, 876, 911, 925, 1174 (alleging that Iranian banks "facilitate[] Iran's transfer of hundreds of millions of dollars to Hizballah and other terrorist organizations each year").)  Like the original Complaint, the AC alleges that Defendants provided financial services to Iran and various Iranian banks, airlines, shipping and oil companies that had connections to terrorist organizations such as the IRGC-QF, Hezbollah, and Al-Qaeda, and that those terrorist organizations funded and supported the groups that carried out the attacks that killed or injured Plaintiffs.

As the Court explained in the 2019 Opinion, these allegations are insufficient to state plausibly a claim for primary liability under the ATA.  The AC does not allege that Defendants participated in the attacks themselves, nor does it allege plausibly that Defendants provided money or goods directly to any foreign terrorist organization or direct perpetrator of a

relevant attack.[8] Moreover, the AC proffers no nonconclusory allegation that the funds processed by Defendants for various Iranian banks, airlines, shipping and oil companies were in fact transferred to the terrorist groups that perpetrated the attacks, or that Iran and its Agents and Proxies would have been unable to assist the terrorist groups in carrying out the attacks without Defendants' assistance. Defendants' alleged provision of financial services to a state sponsor of terrorism alone is insufficient to support a plausible inference that the transferred funds were subsequently used to finance terrorism or to provide munitions for terrorist activities because, as explained in the 2019 Opinion, Iran "is a sovereign state with 'many legitimate agencies, operations, and programs to fund.'" Owens v. BNP Paribas, 897 F.3d 266, 276 (D.C. Cir. 2018) (quoting Rothstein, 708 F.3d at 97).

Because the AC does not allege facts from which the Court can infer plausibly that Defendants' conduct proximately resulted in Plaintiffs' injuries, leave to amend Plaintiffs' primary liability claims is denied as futile.[9]

---

[8] For example, Plaintiffs argue that, with respect to defendant Commerzbank's provision of financial services to the Orphans Project, the AC cures the deficiencies previously identified by the Court by alleging that Commerzbank was aware that the Orphans Project "was directly connected to Hezbollah" because the Orphans Project publicized that it transferred its funds to the bank account of the Lebanese Martyrs Foundation, a "well-known 'social services' organization that utilizes its $100 million dollar annual budget to subsidize and award the families of suicide bombers." (See AC ¶¶ 1642-1650.) However, as in the original Complaint, these allegations do not support a plausible inference that the funds transferred to the Orphans Project were subsequently directed to one of the groups that committed the attacks that injured Plaintiffs. See In re Terrorist Attacks on September 11, 2011, 714 F.3d 118, 124 (2d Cir. 2013) (finding allegations that defendants "provided funding to purported charity organizations known to support terrorism that, in turn, provided funding to al Qaeda and other terrorist organizations" insufficient to allege proximate cause under Rothstein.)

[9] Even if the allegations in the AC were sufficient to plead proximate cause, leave to amend Plaintiffs' primary liability claims would still be futile because the AC does not allege plausibly that Defendants' conduct constituted acts of international terrorism under the ATA. The AC contains primarily conclusory recitations that Defendants' actions "were dangerous to human life by their nature," "directly serv[ed] to augment the

Secondary Liability Claims Under 18 U.S.C. § 2333(d)(2)

JASTA provides that, "[i]n an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under [8 U.S.C. § 1189] as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism." 18 U.S.C.S. § 2333(d)(2) (LexisNexis 2018). Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983) "provides the proper legal framework for how [civil aiding and abetting and conspiracy] liability should function." 18 U.S.C. § 2333 Statutory Note (Findings and Purpose § 5). Thus, to state a claim for civil conspiracy, a plaintiff must allege: "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme." Halberstam, 705 F.2d at 477. A claim for aiding and abetting liability under the Halberstam construct requires proof of three elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall

---

resources of Iran," "knowingly assist[ed] Iran in its covert contravention of laws and regulations designed . . . to combat the flow of financing to terrorists," and "objectively appear to have been intended to . . . intimidate or coerce" civilians or affect the conduct of a government "by facilitating Iran's ability to prepare for and/or carry out mass destruction and murder." (See, e.g., AC ¶ 782, 1657, 2367, 2400, 2402, 2438, 2440, 2462, 2464, 2515, 2517, 2548, 2550, 2567, 2569, 2578, 2579, 2598, 2599, 2608, 2609, 2640, 2642, 2656, 2658, 2674, 2679.) As explained in the 2019 Opinion, these allegations do not provide a proper factual basis for inferences that Defendants' provision of banking services constituted acts dangerous to human life that arguably appear to be intended to intimidate or coerce civilians or affect the conduct of a government, as required under the ATA.

illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." Id. The secondary actor must be "generally aware" that, by assisting the principal, "it is itself assuming a role in terrorist activities." Linde, 882 F.3d at 329 (internal quotations omitted).

The Court determined in the 2019 Opinion that Plaintiffs had not alleged plausibly a claim for aiding and abetting liability under JASTA because they had failed to allege that Defendants were "generally aware" that they had taken a "role" in the attacks that killed or injured Plaintiffs by providing financial services to various Iranian entities. (2019 Opinion at 22.) Plaintiffs argue that Section VI of the AC adds allegations "demonstrating Defendants' general awareness they were intentionally undertaking a role in Iran's material support for terrorism." (Mot. at 8-9.) The cited section of the AC alleges primarily that, because Defendants were "legally required, by many different laws and regulations, to assume a role in the prevention of terrorist financing," and Defendants elected not to comply with those requirements when they provided financial services to various sanctioned Iranian entities, that Defendants were generally aware that they were "assuming a role in the financing of terrorism." (See AC ¶¶ 1651-1714.) As explained in the 2019 Opinion, however, allegations that Defendants knowingly violated laws that were designed principally to prevent terrorist activity do not allege plausibly a general awareness that Defendants had assumed a role in a foreign terrorist organization's act of international terrorism. See Linde, 882 F.3d at 329 ("[A]iding and abetting an act of international terrorism requires more than the provision of material support to a designated terrorist organization.") (emphasis in original).

Plaintiffs also argue that the same allegations that demonstrate the plausibility of their aiding and abetting theory of liability cure any deficiencies with respect to their conspiracy

theory of liability.  The Court determined in the 2019 Opinion that the original Complaint did not state a claim for conspiracy liability under JASTA because, among other things, Plaintiffs had failed to allege facts from which the Court could infer that Defendants shared the common goal of committing an act of international terrorism, or that Defendants entered into any agreements with the foreign terrorist organizations that allegedly committed the attacks at issue.  (2019 Opinion at 20-21.)  The AC, like the original Complaint, relies primarily upon the theory that, by facilitating financial transactions for various Iranian entities with the knowledge that Iran is a state sponsor of terrorism, and that such transactions were in violation of U.S. laws designed to prevent the funding of terrorist activities, Defendants joined a conspiracy whose goal was to "provid[e] Iran and the Iranian Bank Co-Conspirators . . . the ability to illegally transfer billions of dollars (undetected) through the United States[.]"  (AC ¶ 795.)  The Court rejected a similar theory in the 2019 Opinion, finding that "Defendants' alleged provision of material support to Iranian entities is so far removed from the acts of terrorism that injured Plaintiffs that the Court cannot infer that Defendants shared the common goal of committing an act of international terrorism."  (2019 Opinion at 20.)

Because the AC, like the original Complaint, proffers no facts from which the Court can infer that Defendants knowingly played a role in the terrorist activities that injured Plaintiffs or that Defendants entered into any agreement to commit the acts of international terrorism that injured Plaintiffs, leave to assert Plaintiffs' aiding and abetting and conspiracy liability claims is denied.

CONCLUSION

For the foregoing reasons, Plaintiffs' motion for leave to file their proposed Amended Complaint is denied. The original Complaint is hereby dismissed with prejudice in its entirety as against Defendants Deutsche Bank AG, HSBC Bank USA, N.A., HSBC Holdings Plc, HSBC Bank Plc, HSBC Bank Middle East Limited, HSBC North America Holdings, Inc., Commerzbank AG, Commerzbank AG, New York Branch, Barclays Bank Plc, BNP Paribas S.A., Standard Chartered Bank, Royal Bank Of Scotland N.V., Royal Bank Of Scotland Plc, Crédit Agricole S.A., Crédit Agricole Corporate & Investment Bank, and Credit Suisse AG.

This Memorandum Opinion and Order resolves docket entry no. 197. This action remains referred to Magistrate Judge Gorenstein for general pre-trial management.

SO ORDERED.

Dated: New York, New York
February 25, 2020

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge