OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601        1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400   F. 201.265.0303                          T.212.354.0111

December 15, 2020

**VIA ECF**

Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      **Re:**    *Bartlett, et al. v. Société Générale de Banque au Liban, et al.*, 1:19-cv-00007

Dear Judge Amon:

      Pursuant to Rule 3.A of Your Honor's Individual Motion Practices and Rules, Plaintiffs respectfully write (1) in response to Defendants' December 8, 2020 letter ("Defendants' Letter" or "Ltr.")[1], ECF No. 167, seeking permission to move the Court to certify its November 25, 2020, Memorandum and Order ("Opinion" or "Op.") for interlocutory appeal under 28 U.S.C. § 1292(b), and an accompanying stay of this case, and (2) requesting related relief if the Court grants Defendants' request.

      **A.**    **Disposition of the *Licci/Kaplan* Appeal Will Resolve the "Controlling Question of Law."**

      The proper interpretation and application of the Justice Against Sponsors of Terrorism Act ("JASTA") amendment to the Anti-Terrorism Act ("ATA") is the subject of five pending appeals in the Second Circuit. Oral argument has been conducted in four of them,[2] and is scheduled in the fifth, *Freeman v. HSBC Holdings, PLC*, No. 19-3970, for February 2021. As Your Honor notes, while the issues are "highly contested," "the Second Circuit's decisions in the pending appeals may largely resolve those issues." Op. at 37.

      Moreover, Defendants' broad statement of the controlling question of law—"what connection between alleged banking services, terrorist activities, and injury must a plaintiff asserting a JASTA aiding and abetting claim plead?" (Ltr. at 2)—is, to the extent it can be answered as phrased, already before the Second Circuit in several cases, particularly in *Licci* (captioned *Kaplan* in the district court). In *Licci*, the district court required allegations that

---

[1]    Defendants' Letter was filed on behalf of all Defendants except Jammal Trust Bank SAL ("JTB"), which filed its own letter on December 9, 2020, ECF No. 168, seeking the same relief.

[2]    *Licci v. Lebanese Canadian Bank, SAL*, No. 19-3522; *Honickman v. BLOM Bank SAL*, No. 20-575; *Strauss v. Crédit Lyonnais, S.A.*, No. 19-865; and *Weiss v. Nat'l Westminster Bank PLC*, No. 19-863.

"Defendant knowingly and intentionally supported Hizbollah in perpetrating the rocket attacks." *Kaplan v. Lebanese Canadian Bank, SAL*, 405 F. Supp. 3d 525, 536 (S.D.N.Y. 2019). At oral argument, LCB's counsel (who represents Defendants Byblos Bank SAL, Bank of Beirut and the Arab Countries SAL, and Lebanon & Gulf Bank SAL in this case) argued:

> There is no allegation here that the bank encouraged the rocket attacks. And the specific attacks are actually important; there does have to be a connection. The general awareness speaks to assisting violent and life-endangering activities in general. But there is, as you note in Footnote -- I think it's 10 to the *Linde* decision -- and certainly when you look closely at the *Siegel* decision, you will see that there are consistent references to whether there's any connection between the rocket attacks and the -- and the bank, in terms of knowingly doing something.

*Licci* Transcript at 33:18-34-5 (attached as Exhibit A).

The Second Circuit in *Linde v. Arab Bank, PLC* expressly rejected the argument that a defendant must be found to have "intentionally supported [a Foreign Terrorist Organization ("FTO")] in perpetrating the [terrorist] attacks." 882 F.3d 314, 329 (2018). Moreover, there was no jury finding in *Linde* that Arab Bank knew about, let alone specifically intended to assist, the three terrorist attacks at issue on appeal.[3] In any event, because *Kaplan*'s (erroneous) holding was adopted by several courts, including *Freeman v. HSBC Holdings, PLC*, 465 F. Supp. 3d 220 (E.D.N.Y. 2020) ("*Freeman II*") and *Honickman v. BLOM Bank SAL*, 432 F. Supp. 3d 253 (E.D.N.Y. 2020), the "connection between alleged banking services, terrorist activities, and injury" a plaintiff must plead will be significantly clarified by the Second Circuit's decision in *Licci*. In fact, at the December 10, 2020, oral argument in *Honickman*, Judge Pooler advised the parties that given "*[Licci] v. Lebanese Canadian Bank* ... that was argued in November, ... we may very well wind up holding this case for the decision in that case." *Honickman* Transcript at 25:17-20 (attached as Exhibit B). Accordingly, the Second Circuit's forthcoming decision in *Licci* will almost certainly clarify the legal standard for pleading the elements of aiding and abetting claims under JASTA.

### B. A Stay Is Not Warranted.

A stay of the proceedings is not warranted because, as this Court has noted, the factual allegations set forth in the Amended Complaint materially distinguish it from the district court cases Defendants rely upon. For example, this Court distinguished the allegations here from cases "[w]here courts have discounted [terrorism] designations" because "there was a temporal disconnect between the attacks and designations." Op. at 20 (citing *Honickman*, 432 F. Supp. 3d at 267). Similarly, this Court distinguished cases that "involved bank customers whose designation as terrorists came only after the attacks at issue." Op. at 31 (citing *Kaplan*, 405 F. Supp. 3d at 536;

---

[3] "Such awareness may not require proof of the specific intent demanded for criminal aiding and abetting culpability, *i.e.*, defendant's intent to participate in a criminal scheme as 'something that he wishes to bring about and seek by his action to make it succeed.' Nor does awareness require proof that Arab Bank knew of the specific attacks at issue when it provided financial services for Hamas." *Linde*, 882 F.3d at 329 (quoting *Rosemond v. United States*, 572 U.S. 65, 76 (2014)) (footnote omitted).

*Honickman*, 432 F. Supp. 3d at 265). This Court also distinguished cases where "courts declined to infer general awareness based on publicly available information." Op. at 21 (citing *Kaplan*, 405 F. Supp. 3d at 535; *Averbach v. Cairo Amman Bank*, No. 19-cv-0004-GHW-KHP, 2020 WL 486860, at *12 (E.D.N.Y. Jan. 21, 2020)). Plaintiffs maintain that all three of these district court cases are wrongly decided, but regardless of the Second Circuit's decision in *Licci*, the allegations here nevertheless set the instant case apart.

If, however, the Court grants a stay, it should be limited to the disposition of *Licci*, upon which the other cases rely.

### C. If A Stay is Granted, Plaintiffs Should Be Permitted to Issue Document Preservation Subpoenas to Third Parties.

Courts have permitted parties to send preservation requests and subpoenas to third parties to ensure that information relevant to pending litigation is not destroyed. *See, e.g., In re Smith Barney Transfer Agent Litig.*, No. 05-cv-7583 (WHP), 2012 WL 1438241, at *3 (S.D.N.Y. Apr. 25, 2012); *In re Refco, Inc.*, No. 05-cv-8626 (GEL), 2006 WL 2337212, at *5 (S.D.N.Y. Aug. 8, 2006). This measure is particularly vital in this case because (1) Defendants' alleged course of conduct dates back as far as 17 years ago, thus greatly increasing the risk that New York correspondent banks will not retain financial records vital to Plaintiffs' claims, and (2) U.S.-based records are likely to be particularly important because Defendants are likely to assert Lebanese bank secrecy as a bar to discovery of records located in Lebanon.

### D. If the Court Grants Defendants' Motion to Certify an Interlocutory Appeal, Judicial Economy Warrants That the Court Certify Two Additional Questions for Appeal.

#### 1. The Proper Legal Standard for Primary Liability

The first question is: "whether providing financial services to a known Foreign Terrorist Organization is an activity that 'involve[s] violent acts or acts dangerous to human life' within the meaning of 18 U.S.C. § 2331(1)?" This Court held, as a matter of law, that the financial services described in the Amended Complaint were not. *See* Op. at 16. However, in *Linde*, the Second Circuit held that:

> We conclude only that providing *routine* financial services to members and associates of terrorist organizations is not so akin to providing a loaded gun to a child as to excuse the charging error here and *compel a finding that as a matter of law*, the services were violent or life-endangering acts that appeared intended to intimidate or coerce civilians or to influence or affect governments.

882 F.3d at 327 (emphasis added). The Second Circuit there remanded based on financial services that were arguably less dangerous to human life than those dismissed as a matter of law here.

This is particularly important because the financial services allegedly rendered in this case were to entities such as "IRSO—which was publicly designated by the U.S. government as a key Hezbollah fundraiser for violent terrorist attacks," Op. at 20, and "customers such as IRSO, Martyrs Foundation, and IKRC [that] fundraise and recruit for the kinds of terrorist attacks alleged here." Op. at 26 (citations omitted). Considering *Linde*'s holding, a substantial ground for difference of opinion exists on this issue, and an interlocutory appeal would also hasten resolution of this issue because it would "ha[ve] precedential value for a large number of cases." *Flo & Eddie, Inc. v. Sirius XM Radio Inc.*, No. 13-cv-5784 (CM), 2015 WL 585641, at *1 (S.D.N.Y. Feb. 10, 2015) (internal quotation marks omitted). For instance, it would address the primary liability claims in *Averbach* and *Freeman II*, as well.

### 2. The Extent to Which Personal Jurisdiction Extends to a Successor-in-Interest That Acquires "All" of its Predecessors' liabilities

The second question is: "whether a successor-in-interest that explicitly assumes all liabilities of another company, but where no de facto merger occurs, is nevertheless subject to personal jurisdiction wherever the predecessor would be for those same liabilities, particularly where the successor is already subject to the court's jurisdiction in the suit?" The Court found that a merger (de facto or otherwise) is a necessary element for successor jurisdiction. Op. at 34-35. While the Court cited cases where a de facto merger was a sufficient basis for asserting jurisdiction, none of them held that assumption of all liabilities was *not* sufficient.[4] The question presented involves an issue upon which a substantial ground for difference of opinion exists, and an interlocutory appeal would hasten resolution of this issue. Finally, resolution would have broader implications in situations analogous to those where "a corporation liable to suit in a state in which it does not wish to be sued could simply arrange a merger with a dummy corporation" to avoid suit. Op. at 34 (citing *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 156 (2d Cir. 2019)).

Respectfully submitted,

/s/ Gary M. Osen

Encls.

cc:   All counsel (via ECF)

---

[4] One of the cases cited in the opinion (Op. at 33), *In re Nazi Era Cases Against German Defendants Litig.*, surveyed New York cases and found that they "teach that successor-jurisdiction in New York can be present in the following situations: (1) merger or de facto merger; (2) *express or implied assumption of liabilities*, including by a ratification of the predecessor's activities; or (3) acquisition of assets or reorganization undertaken to fraudulently avoid jurisdiction." 153 F. App'x 819, 823 (3d Cir. 2005) (emphasis added).