**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

ROBERT BARTLETT, *et al.*,

               Plaintiffs,

     v.

SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, *et al.*,

               Defendants.

Case No. 1:19-cv-00007 (CBA) (VMS)

## MOTION FOR SUBSTITUTION OF PARTY, TO INTERVENE, AND TO DISMISS BASED ON SUBJECT MATTER JURISDICTION AND INTERNATIONAL COMITY

BAKER HOSTETLER LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Attorneys for Defendant*
*Jammal Trust Bank SAL*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................. 1

II.    SUBSTITUTION OF PARTY UNDER RULE 25(C) IS WARRANTED ....................... 3

III.   INTERVENTION UNDER RULE 24 IS WARRANTED ................................. 6

     A.    Intervention as of Right is Warranted ................................................. 7

          1.    Impairment of Interest .................................................... 7

          2.    Adequacy of Representation ......................................... 11

     B.    Permissive Intervention ................................................................. 14

IV.   THE ACTION SHOULD BE DISMISSED FOR WANT OF SUBJECT
     MATTER JURISDICTION .................................................................... 15

     A.    Plaintiffs' Claims Are Not Redressable ........................................... 16

          1.    JTB's Single Domestic Asset is Unavailable to Redress Plaintiffs'
              Injuries ...................................................................... 17

          2.    JTB's Lebanese Assets Are Likewise Unavailable to Redress
              Plaintiffs' Injuries ....................................................... 21

          3.    Redressability Cannot Be Obtained Because the Disposition of
              JTB's Assets are Controlled by an Agent or Instrumentality of a
              Foreign Sovereign ....................................................... 23

     B.    Any Judgment Rendered in Plaintiffs' Favor Would Be an Advisory
          Opinion ..................................................................................... 23

     C.    Plaintiffs' Claims Are Barred by Sovereign Immunity ....................... 26

          1.    The Lebanese Central Bank is an Agent or Instrumentality of a
              Foreign State ............................................................. 27

          2.    The Liquidator Is the Real Party in Interest ........................... 29

          3.    Plaintiffs' Claims Are Also Barred Under the ATA's Sovereign
              Immunity Provision .................................................... 32

V.    INTERNATIONAL COMITY REQUIRES DISMISSAL ............................... 34

i

A.   Comity Dismissal is "Particularly Appropriate" Because JTB Is Undergoing Foreign Liquidation .......................................................... 35

B.   U.S. Interests Will Be Served by Lebanon's Liquidation of JTB ........................ 37

VI.   CONCLUSION ............................................................................................................ 39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re $6,871,042.36*,
217 F. Supp. 3d 84 (D.D.C. 2016) .........................................................................9

*Adam Joseph Res. v. CNA Metals Ltd.*,
919 F.3d 856 (5th Cir. 2019) ..............................................................................7

*Allied Fidelity Ins. Co. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*,
677 F. Supp. 562 (N.D. Ill. 1988) ......................................................................31

*Allstate Life Ins. Co. v. Linter Grp. Ltd.*,
994 F.2d 996 (2d Cir. 1993)................................................................14, 35, 36, 37

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989)...........................................................................................33

*Barnes v. Sec. Life of Denver Ins. Co.*,
945 F.3d 1112 (10th Cir. 2019) ...........................................................................7

*Berg v. Kingdom of the Netherlands*,
No. 2:18-cv-3123-BHH, 2020 WL 2829757 (D.S.C. Mar. 6, 2020) ......................23

*Bridgeport Guardians, Inc. v. Delmonte*,
602 F.3d 469 (2d Cir. 2010)................................................................................8

*Calderon-Cardona v. Bank of New York Mellon*,
770 F.3d 993 (2d Cir. 2014)...........................................................................19, 20

*Calderon-Cardona v. JP Morgan Chase Bank, N.A.*,
867 F. Supp. 2d 389 (S.D.N.Y. 2011),
*aff'd in part and vacated in part*, 770 F.3d 993 (2d Cir. 2014) ............................20

*Cardenas v. Smith*,
733 F.2d 909 (D.C. Cir. 1984) ............................................................................22

*Chicago & S. Air Lines v. Waterman S.S. Corp.*,
333 U.S. 103 (1948)........................................................................................24, 25

*Church v. City of Huntsville*,
30 F.3d 1332 (11th Cir. 1994) ...........................................................................16

*Ciecro v. Mnuchin*,
857 F.3d 407 (D.C. Cir. 2017) ...........................................................................22

iii

*Citibank, N.A. v. Park-Kenilworth Indus., Inc.*,
    109 B.R. 321 (N.D. Ill. 1989) ........................................................10

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..........................................................18, 20

*Clark v. Putnam Cty.*,
    168 F.3d 458 (11th Cir. 1999) ......................................................11

*Commack Self-Serv. Kosher Meats, Inc. v. Rubin*,
    170 F.R.D. 93 (E.D.N.Y. 1996).................................................14, 15

*Continental Ins. Co. v. Law Office of Thomas J. Walker, Jr.*,
    171 F.R.D. 183 (D. Md. 1997)......................................................10

*Cunard S.S. Co. v. Salen Reefer Serv. AB*,
    773 F.2d 452 (2d Cir. 1985).........................................................35

*Dellums v. U.S. Nuclear Regulatory Comm'n*,
    863 F.2d 968 (D.C. Cir. 1988) .....................................................22

*Dep't of Commerce v. New York*,
    139 S. Ct. 2551 (2019).........................................................16, 17

*In re Dessaint*,
    No. 13 Misc. 99(RJS)-Pt. 1, 2014 WL 12029369 (S.D.N.Y. Jan. 17, 2014)..........................25

*Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*,
    12 F.3d 317 (2d Cir. 1993)..................................................4, 8, 30, 31

*Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*,
    810 F. Supp. 1375 (S.D.N.Y. 1993),
    *rev'd*, 12 F.3d 317 (2d Cir. 1993) ..................................................31

*E.M. v. New York City Dep't of Educ.*,
    758 F.3d 442 (2d Cir. 2014).......................................................17, 20, 23

*EM Ltd. v. Banco Central de la Republica Argentina*,
    800 F.3d 78 (2d Cir. 2015).........................................................28

*Esparza v. Indymac Bank, F.S.B.*,
    No. 4:09-cv-03891-SBA, 2010 WL 2925391 (N.D. Cal. July 26, 2010) .................5

*F.D.I.C. v. Wrapwell Corp.*,
    922 F. Supp. 913 (S.D.N.Y. 1996)...........................................5, 8, 31

*Fabe v. Aneco Reins. Underwriting Ltd.*,
    784 F. Supp. 448 (S.D. Ohio 1991) ..............................................5, 8, 31

*Faculty, Alumni & Students Opposed to Racial Preferences v. N.Y. Univ. L. Rev.*,
   No. 18 Civ. 9184 (ER), 2020 WL 1529311, slip op. (S.D.N.Y. Mar. 31, 2020)....................18

*Fed. Ins. Co. v. European Am. Realty, Ltd.*,
   No. 1:07-cv-0355-WSD, 2007 WL 4531946 (N.D. Ga. Dec. 18, 2007) ................................10

*Filler v. Hanvit*,
   378 F.3d 213 (2d Cir. 2004)....................................................................................................28

*Finanz AG Zurich v. Banco Economico S.A.*,
   192 F.3d 240 (2d Cir. 1999).............................................................................................. *passim*

*Foshee v. Forethought Fed. Sav. Bank*,
   No. 09-2674-JPM-dkv, 2010 WL 11598052 (W.D. Tenn. May 14, 2010) ...........................10

*Golden Ins. Co. v. PCF State Restorations, Inc.*,
   17-CV-5390 (BCM), 2018 WL 10593630 (S.D.N.Y. May 11, 2018)......................................8

*In re Gorsoan Ltd.*,
   No. 17-cv-5912(RJS), 2020 WL 3172777, slip op. (S.D.N.Y. June 15, 2020) ......................25

*Great Atlantic & Pacific Tea Co., Inc. v. Town of E. Hampton*,
   178 F.R.D. 39 (E.D.N.Y. 1998) .................................................................................12, 13, 14

*Greater Tampa Chamber of Commerce v. Goldschmidt*,
   627 F.2d 258 (D.C. Cir. 1980)...............................................................................................22

*Greene v. United States*,
   996 F.2d 973 (9th Cir. 1993) ...................................................................................................7

*Hilton v. Guyot*,
   159 U.S. 113 (1895)................................................................................................................34

*Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*,
   602 F. Supp. 1378 (S.D.N.Y. 1985)...............................................................................5, 9, 31

*Impact Dev., LLC v. Metro Bank of Dade Cnty.*,
   No. 11-601723-CIV-UNGARO, 2011 WL 13217254 (S.D. Fla. Mar. 17,
   2011) ........................................................................................................................................5

*Independence Party of Richmond Cty. v. Graham*,
   413 F.3d 252 (2d Cir. 2005)..............................................................................................24, 26

*Ins. Corp. of Hannover, Inc. v. Latino Americana de Reaseguros, S.A.*,
   868 F. Supp. 520 (S.D.N.Y. 1994).............................................................................................5

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
   412 F.3d 418 (2d Cir. 2005)........................................................................................34, 35, 39

*Kleeberg v. Eber*,
   No. 16-CV-9517, 2019 WL 1416898 (S.D.N.Y. Mar. 28, 2019) ............................................14

*Kurd v. Republic of Turkey*,
   No. 18-1117 (CKK), 2020 WL 587982 (D.D.C. Feb. 6, 2020) .............................................26

*Lawton v. Republic of Iraq*,
   581 F. Supp. 2d 43 (D.D.C. 2008) ........................................................................................33

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).................................................................................................... *passim*

*Mills v. Green*,
   159 U.S. 651 (1895)..............................................................................................................24

*Natural Res. Defense Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*,
   834 F.2d 60 (2d Cir. 1987).........................................................................................12, 13, 14

*Indiana ex rel. Naylor v. Indiana State Teachers Ass'n*,
   No. 1:09-cv-1506, 2010 WL 11569420 (S.D. Ind. Mar. 16, 2010) .......................................10

*NML Capital, Ltd. v. Banco Central de la Republica Argentina*,
   652 F.3d 172, 188 (2d Cir. 2011).........................................................................................28

*Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17 (D.D.C. 2017),
   *aff'd*, 756 Fed. App'x 16 (D.C. Cir. 2019) ...........................................................................32

*Nolte Assocs., Inc. v. Hotel Gold Crown Champa, LLC*,
   Civ. No. 1:11-cv-00508-DME-CBS, 2012 WL 32662 (D. Colo. Jan. 6, 2012) ......................5

*Nuesse v. Camp*,
   385 F.2d 694 (D.C. Cir. 1967) ...............................................................................................7

*Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17 (D.D.C. 2013),
   *aff'd*, 764 F.3d 31 (D.C. Cir. 2014) ....................................................................................32

*Olin Corp. v. Lamorak Ins. Co.*,
   325 F.R.D. 85 (S.D.N.Y. 2018) ..............................................................................................7

*Purnell v. City of Akron*,
   925 F.2d 941 (6th Cir. 1991) .................................................................................................7

*In re Reliance Grp. Holdings, Inc. Sec. Litig.*,
   No. 00-CV-4653 (TPG), 2004 WL 601973 (S.D.N.Y. Feb. 24, 2004) ..................................10

*Republic of Austria v. Altmann*,
   541 U.S. 677 (2004)..............................................................................................................33

*Republic of Philippines v. Westinghouse Elec. Corp.*,
    43 F.3d 65 (3d Cir. 1994) ................................................................37

*Rosado v. Pruitt*,
    No. 17-CV-4843 (ERK), 2018 WL 262835 (E.D.N.Y. Jan. 2, 2018) ......................................7

*S&S Mach. Co. v. Masinexportimport*,
    706 F.2d 411 (2d Cir. 1983)................................................................28

*Sackman v. Liggett Grp., Inc.*,
    167 F.R.D. 6 (E.D.N.Y. 1996) ................................................................11

*Samantar v. Yousef*,
    560 U.S. 305 (2010)................................................................13, 29

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993)................................................................26, 27

*Scherer v. Opportunities Industrialization Ctr. of Greater Milwaukee*,
    No. 05-C-261, 2006 WL 2375522 (E.D. Wis. Aug. 15, 2006)......................................9, 10, 12

*Schwartz v. Town of Huntington Zoning Bd of App.*,
    191 F.R.D. 357 (E.D.N.Y. 2000) ................................................................12, 13, 14

*Sokolow v. Palestine Liberation Organization*,
    583 F. Supp. 2d 451 (S.D.N.Y. 2008)................................................................34, 35

*St. Pierre v. United States*,
    319 U.S. 41 (1943)................................................................24, 25

*In re Stanford Int'l Bank, Ltd.*,
    Civ. No. 3:09-CV-0721-N, 2012 WL 13093940 (N.D. Tex. July 30, 2012)............................5

*Summit Contractors, Inc. v. Amerisure Mut. Ins. Co.*,
    No. 8:13-CV-925, 2014 WL 4814884 (M.D. Fla. Sept. 22, 2014)....................................13

*Tang Yee-Chan v. Immundi*,
    686 F. Supp. 1004 (S.D.N.Y. 1987)................................................................25

*Town of Deerfield v. FCC*,
    992 F.2d 420 (2d Cir. 1993)................................................................24

*Trbovich v. United Mine Workers of Am.*,
    404 U.S. 528 (1972)................................................................11

*Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38 (D.D.C. 2019),
    *appeal filed*, No. 19-5360 (D.C. Cir. Dec. 23, 2019)................................................................23

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe*,
    164 F.3d 1080 (8th Cir. 1999) ............................................................................7

*U.S. Fidelity & Guar. Co. v. Executive Ins. Co.*,
    893 F.2d 517 (2d Cir. 1990)......................................................................5, 8, 31

*U.S. Postal Serv. v. Brennan*,
    579 F.2d 188 (2d Cir. 1978)........................................................................11, 15

*Ungar v. Palestine Liberation Org.*,
    402 F.3d 274 (1st Cir. 2005)........................................................................33, 34

*United States Sec. & Exch. Comm'n v. Collector's Coffee, Inc.*,
    No. 19 Civ. 4355 (LGS), 2020 WL 1548046 (S.D.N.Y. Apr. 1, 2020)................4, 6

*United States v. Alcalay*,
    No. 2:87-mj-jmc-01, 2019 WL 2450913, slip op. (D. Vt. June 12, 2019) ............22

*United States v. Batato*,
    833 F.3d 413 (Floyd, J., dissenting)..................................................................25

*United States v. McClure*,
    241 Fed. App'x 105 (4th Cir. 2007) ..................................................................16

*Utah Ass'n of Counties v. Clinton*,
    255 F.3d 1246 (10th Cir. 2001) ........................................................................11

*Van Vliet v. Van Vliet*,
    No. 4:14cv151, 2015 WL 631360 (E.D. Va. 2015)..............................................26

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983)..........................................................................................27

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*,
    825 F.2d 709 (2d Cir. 1987)..............................................................................37

*Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
    922 F.2d 92 (2d Cir. 1990)................................................................................11

*Williams v. Connolly*,
    Civ. No. 17-1631, 2017 WL 5479508 (D.N.J. Nov. 15, 2017),
    *aff'd*, 734 Fed. App'x 8134 (3d Cir. 2018) ......................................................23

*Worlds v. Dep't of Health & Rehab. Servs.*,
    929 F.2d 591 (11th Cir. 1991) ............................................................................7

*XL Specialty Ins. Co. v. Lakian*,
    632 Fed. App'x 667 (2d Cir. 2015)......................................................................8

*Zurich Cap. Markets Inc. v. Coglianese*,
   236 F.R.D. 379 (N.D. Ill. 2006) ..................................................................9

**Rules**

Fed. R. Civ. P. 12(b)(1) ....................................................................1, 15, 27

Fed. R. Civ. P. 17(a) .................................................................................29

Fed. R. Civ. P. 24(a) .....................................................................1, 6, 7, 8,11

Fed. R. Civ. P. 24(b) ..............................................................................6, 14

Fed. R. Civ. P. 25(c) ...................................................................1, 3, 4, 5, 6, 12

**Statutes**

8 U.S.C. § 1182(a)(3)(B)(iii) ...................................................................19, 20

12 U.S.C. § 1811(a) ..................................................................................36

Anti-Terrorism Act, 18 U.S.C. §§ 2333(d), 2337(2) ........................................ *passim*

Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1603 .................... *passim*

Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 ...........18, 19, 20, 21

Law of 1 Aug. 1963, Code of Money and Credit, (Leb.) ...................................2, 27, 28

Law 110, art. 14 (Leb.) ..........................................................................3, 36

Law 110, art. 17 (Leb.) ........................................................................ *passim*

**Other Authorities**

U.S. Const. art. III, § 2 .....................................................................1, 16, 23, 24

31 C.F.R. § 594.201(a) ...........................................................................17, 24

31 C.F.R. § 594.202(e) ...........................................................................17, 24

31 C.F.R. § 594.203(a) ...........................................................................17, 24

31 C.F.R. § 594.301 ..............................................................................17, 24

31 C.F.R. § 594.312 ..............................................................................17, 24

31 C.F.R. § 594.505 .................................................................................17

31 C.F.R. § 594.506(d) ..............................................................................17

84 Fed. Reg. 46,782-01 (Sept. 5, 2019) ............................................................................1

13A WRIGHT & MILLER, § 3531.6 (3d ed., Apr. 2020 update)....................................17

Erwin Chemerinsky, *Federal Jurisdiction* § 2.2 (4th ed. 2003) ...................................16

Exec. Order No. 13224 § 1(a)(iii)....................................................................................24

H.R. Rep. No. 1487, 94th Cong., 2d Sess. 15-16, *reprinted in* 1976 U.S.C.C.A.N.
    6604................................................................................................................................28

S. Rep. No. 102-342, 102d Cong., 2d Sess. (July 27, 1992) ..........................................33

Pursuant to Federal Rule of Civil Procedure 25(c), Defendant Jammal Trust Bank SAL ("JTB") hereby moves to substitute Dr. Muhammad Baasiri ("the Liquidator" or "Dr. Baasiri"), in his official capacity as Liquidator of JTB, as the named defendant in place of JTB. In the alternative, pursuant to Federal Rule of Civil Procedure 24, Dr. Baasiri, in his official capacity as JTB's Liquidator, respectfully moves to intervene, either as of right or permissively, as a defendant in this action.

Depending on the outcome of the two procedural motions outlined above, JTB and/or the Liquidator respectfully move, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss this action for want of subject matter jurisdiction based upon Article III, § 2's requirement of redressability and its prohibition on advisory opinions, as well as sovereign immunity under both the Foreign Sovereign Immunities Act ("FSIA") and the Anti-Terrorism Act ("ATA"). In the alternative, JTB and/or the Liquidator move to dismiss based on the common law doctrine of international comity.

## I.    INTRODUCTION

Lebanon has been in a political and economic crisis since 2019. *See* Declaration of Dr. Muhammad Baasiri ("Baasiri Decl.") filed herewith, ¶ 16. Consequently, like many Lebanese banks, JTB's deposits declined precipitously, creating a severe liquidity problem. *Id.* ¶ 17. To make matters worse, on August 29, 2019, the U.S. Department of Treasury's Office of Foreign Assets Control ("OFAC") designated JTB a Specially Designated Global Terrorist ("SDGT"). 84 Fed. Reg. 46,782-01, at 46,782-83 (Sept. 5, 2019). While OFAC's designation is not a judicial or legal judgment, *see* ECF No. 135 at 1-3, it greatly amplified JTB's liquidity crisis by making it impossible to transfer money in U.S. dollars, the dominant currency in Lebanese and international money markets. Baasiri Decl. ¶¶ 19-21. Because of the designation, the Lebanese Central Bank ("Central Bank") froze JTB's deposits and other banks terminated their

relationships with JTB. *Id. ¶* 22. Thus, on September 24, 2019, JTB sought liquidation and was placed in receivership pursuant to Article 17 of Law 110 of Lebanese law ("Law 110"), a true and accurate translation of which is attached as Exhibit A to the Baasiri Decl.; *see also* Baasiri Decl. ¶ 23.

Pursuant to Lebanon's liquidation law, JTB has ceased all banking operations and its assets are being liquidated. Law 110, art. 17 ¶¶ 2, 5; Baasiri Decl. ¶¶ 25-28, 45-48. In addition, pursuant to Lebanon's liquidation law, the Central Bank has confirmed a Liquidator, Dr. Baasiri, who is statutorily charged with overseeing JTB's liquidation "under the supervision and control of the Central Bank of Lebanon." Law 110, art. 17 ¶ 2; Baasiri Decl. ¶¶ 1, 2, 26, 46. The liquidation process under Lebanese law allows the Central Bank to "acquire the bank's assets and all its rights." Letter from Riad Toufic Salamé, Governor, Central Bank of Lebanon, to Chairman, Jammal Trust Bank S.A.L., Sept. 27, 2019 ("Central Bank Letter") a true and accurate translation of which is attached as Exhibit B to the Baasiri Decl.; *see also* Law 110, art. 17 ¶ 2.

Prior to his appointment as JTB's liquidator, Dr. Baasiri was Vice Governor of the Central Bank of Lebanon. Baasiri Decl. ¶ 5. Neither Dr. Baasiri, nor any member of his liquidation team, was involved with JTB prior to its liquidation. *Id*. ¶ 4. The JTB liquidation team is paid from the assets of the failed bank, *id*. ¶¶ 6, 51, but as noted above, any disposition of those assets is controlled by the Central Bank. Law 110, art. 17 ¶ 2; Baasiri Decl. ¶¶ 2, 25-26, 45-46. Thus, all payments to the JTB liquidation team, and all other payments for liquidation-related expenses, require the approval of the Central Bank.

The Lebanese Central Bank is a public entity established by the Law of 1 Aug. 1963, Code of Money and Credit, tit. II (Leb.) ("Code of Money & Credit"), a true and accurate translation of which is appended to the Second Declaration of Dr. Muhammad Baasiri. Under an

Article 17 liquidation such as JTB's, the Lebanese National Institute for the Guarantee of Deposit ("NIGD") guarantees JTB's deposits and is statutorily obligated to pay a guaranty amount to the Liquidator, "who will disburse it to the depositories benefitting from it." Law 110, arts. 14, 17 ¶ 2; Baasiri Decl. ¶¶ 29-30.

Lebanese law requires that if there is any surplus remaining after JTB's liquidated claims are paid, such surplus will be returned to the NIGD, up to the amount it paid in deposit guarantees; any surplus beyond that belongs to the Central Bank. Law 110, art. 17 ¶ 8; Baasiri Decl. ¶¶ 32-33. Accordingly, Lebanese law expressly disallows any return of equity to JTB's shareholders as part of the liquidation process. Baasiri Decl. ¶ 34.

Here, however, there is no surplus. JTB's assets fall short of its liabilities by nearly 162 billion Lebanese Pounds. Baasiri Decl. ¶ 55. JTB's assets will pay about 90% of JTB's depositors, with the remaining ten percent paid by the NIGD and thus, the Lebanese public. *Id.* ¶ 49. Moreover, even if there were a surplus, Lebanese law requires that the surplus be used to pay only *liquidated* debts. *Id.* ¶¶ 35-40, 53-56. Even assuming that Plaintiffs were to secure a judgment against JTB, that judgment would not be "liquidated" unless and until it was recognized by a Lebanese court. *Id.* ¶¶ 36, 53. In addition, Lebanese law requires that, to obtain payment from any liquidation surplus, a claim must be liquidated before the liquidation process has ended. *Id.* ¶¶ 37-40, 54. Thus, even assuming *arguendo* that there was a surplus here—which there is not—any judgment won by Plaintiffs would need to be recognized by a Lebanese court prior to the end of JTB's liquidation. The typical Lebanese liquidation takes approximately two to five years. *Id.* ¶ 43.

## II.    SUBSTITUTION OF PARTY UNDER RULE 25(C) IS WARRANTED

Under Federal Rule of Civil Procedure 25(c), "If an interest is transferred, the action may be continued by or against the original party unless the court, on motion, orders the transferee to

be substituted in the action or joined with the original party." Fed. R. Civ. P. 25(c). While

substitution is within the sound discretion of this Court, courts "frequently grant substitution

where a party has fully transferred its interest to another person or entity." *United States Sec. &*

*Exch. Comm'n v. Collector's Coffee, Inc.*, No. 19 Civ. 4355 (LGS), 2020 WL 1548046, at *2

(S.D.N.Y. Apr. 1, 2020) (citing numerous cases).

Here, JTB's interests have been transferred, by operation of Lebanese law, to the

Liquidator and Central Bank. A liquidation under Article 17 of Law 110 "allows the Central

Bank of Lebanon to acquire the bank's assets and all its rights." Central Bank Letter; *see also*

Law 110, art. 17 ¶ 2. Specifically, on September 24, 2019, JTB was placed in a liquidation

receivership pursuant to Lebanese law, immediately ceased all banking operations, and its assets

and rights are now controlled by the Central Bank of Lebanon and its Liquidator. *Id.*; Baasiri

Decl. ¶¶ 25-27. The Liquidator is statutorily charged with overseeing JTB's liquidation, which is

"done under the supervision and control of the Central Bank of Lebanon." Law 110, art. 17 ¶ 2;

Baasiri Decl. ¶¶ 2, 26, 46. While JTB's liquidation is ongoing, any claims against JTB can only

be paid by the Liquidator, pursuant to the strictures of Lebanese law. Baasiri Decl. ¶¶ 32-40.

Once JTB's liquidation has ended—a process expected to take from two to five years—there will

be no successor entity from whom claims may be recovered. Baasiri Decl. ¶¶ 41, 43, 57.

Courts routinely grant Rule 25(c) substitution motions made by liquidators and receivers,

who are considered to be the "real party in interest" in actions against the entity undergoing

liquidation. *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 245 (2d Cir. 1999)

("*Banco Economico*") (Brazilian bank liquidator, appointed by Brazilian Central Bank, is real

party in interest); *Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 12

F.3d 317, 327-28 (2d Cir. 1993) ("*Galadari*") (liquidation committee established by United Arab

Emirates was real party in interest); *U.S. Fidelity & Guar. Co. v. Executive Ins. Co.*, 893 F.2d 517, 517 n.1 (2d Cir. 1990) (New York state insurance liquidation bureau is real party in interest in suit against insurance company undergoing state liquidation); *F.D.I.C. v. Wrapwell Corp.*, 922 F. Supp. 913, 917 (S.D.N.Y. 1996) (FDIC is real party in interest in case involving bank undergoing liquidation); *Fabe v. Aneco Reins. Underwriting Ltd.*, 784 F. Supp. 448, 450 (S.D. Ohio 1991) (liquidators appointed by Supreme Court of Bermuda are real party in interest in suit against corporation undergoing liquidation); *Hong Kong Deposit & Guar. Co. Ltd. v. Hibdon*, 602 F. Supp. 1378, 1382 (S.D.N.Y. 1985) (Hong Kong liquidator is real party in interest).

Accordingly, because the Liquidator is the real party in interest here, substitution under Rule 25(c) is warranted. *See, e.g., Nolte Assocs., Inc. v. Hotel Gold Crown Champa, LLC*, Civ. No. 1:11-cv-00508-DME-CBS, 2012 WL 32662, at *5 (D. Colo. Jan. 6, 2012) (allowing FDIC, as bank receiver, to substitute because "[n]o one doubts that FDIC became the real party in interest after its appointment as receiver"); *Impact Dev., LLC v. Metro Bank of Dade Cnty.*, No. 11-601723-CIV-UNGARO, 2011 WL 13217254, at *1 (S.D. Fla. Mar. 17, 2011) (granting substitution for FDIC, as bank receiver, because it was the "real party in interest in the instant action"); *Esparza v. Indymac Bank, F.S.B.*, No. 4:09-cv-03891-SBA, 2010 WL 2925391, at *2 (N.D. Cal. July 26, 2010) (same); *Wrapwell Corp.*, 922 F. Supp. at 917 (same); *Ins. Corp. of Hannover, Inc. v. Latino Americana de Reaseguros, S.A.*, 868 F. Supp. 520, 523 (S.D.N.Y. 1994) (insurance company liquidator substituted as real party in interest)*; see also U.S. Fidelity & Guar. Co.*, 893 F.2d at 517 (insurance company liquidator is real party in interest); *In re Stanford Int'l Bank, Ltd.*, Civ. No. 3:09-CV-0721-N, 2012 WL 13093940, at *5 (N.D. Tex. July 30, 2012) (liquidator is real party in interest); *Fabe*, 784 F. Supp. at 450 (foreign liquidator of oil and gas company is real party in interest).

Moreover, in deciding whether to grant a Rule 25(c) motion, a court should consider "whether substitution will expedite and simplify the action." *Collector's Coffee*, 451 F. Supp. 3d at 298 (citing and quoting *In re Rates-Viper Patent Litig.*, 2011 WL 856261, at *1 (S.D.N.Y. Mar. 10, 2011) and *Banyai v. Mazur*, 2009 WL 3754198, at *3 (S.D.N.Y. Nov. 5, 2009)). Here, substitution will expedite and simplify the action by allowing the real party in interest, the Liquidator, directly to assert defenses that, if granted, will terminate the action. Specifically, if the motion for substitution is granted, the Liquidator will assert a lack of subject matter jurisdiction—based on lack of redressability and sovereign immunity under both the FSIA and ATA—as well as international comity. While JTB can (and will) indirectly assert these defenses if the motion for substitution is denied, it would be more direct and accurate, as a matter of law, to allow these arguments to be made directly by the Liquidator, who is an agent of the Lebanese Central Bank.

For the foregoing reasons, defendant JTB requests that this Court exercise its discretion under Rule 25(c) to enter an order substituting therefor as defendant in this case, "Dr. Muhammad Baasiri, in his official capacity as Liquidator of Jammal Trust Bank SAL."

## III.   INTERVENTION UNDER RULE 24 IS WARRANTED

Alternatively, if the Rule 25 motion for substitution is denied, Dr. Baasiri, in his official capacity as Liquidator of JTB, respectfully moves pursuant to Federal Rule of Civil Procedure 24 to intervene as a defendant in this action. As elaborated below, intervention as of right is warranted because under Lebanese law, as Liquidator of JTB, Dr. Baasiri has a legal interest in JTB's property and its disposition, which would necessarily be encumbered by any judgment in Plaintiffs' favor, and those interests cannot be adequately represented by JTB. In the alternative, the Liquidator requests leave to intervene permissively under Rule 24(b), as the Liquidator has defenses that share common questions of both law and fact with the main action.

A.     Intervention as of Right is Warranted

To intervene as a matter of right under Rule 24(a), the intervenor must establish that he "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In considering a motion to intervene, "the court must accept as true non-conclusory allegations of the motion." *Rosado v. Pruitt*, No. 17-CV-4843 (ERK), 2018 WL 262835, at *1 (E.D.N.Y. Jan. 2, 2018) (quoting *SEC v. Callahan*, 2 F. Supp. 3d 427, 436 (E.D.N.Y. 2014)). Courts construe Rule 24(a)(2) liberally and resolve any doubts in favor of the proposed intervenors. *Olin Corp. v. Lamorak Ins. Co.*, 325 F.R.D. 85, 87 (S.D.N.Y. 2018) (Rule 24 "is to be liberally construed") (quoting *Degrafinreid v. Ricks*, 417 F. Supp. 2d 403, 407 (S.D.N.Y. 2006)); *see also Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 864 (5th Cir. 2019) ("Rule 24 is to be liberally construed"); *Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1121 (10th Cir. 2019) (court follows "a somewhat liberal line in allowing intervention" with "central concern . . . [being] the practical effect of the litigation on the applicant"); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor."); *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993) (Rule 24(a) "is construed broadly in favor of applicants for intervention"); *Purnell v. City of Akron*, 925 F.2d 941, 950 (6th Cir. 1991) ("Rule 24 is broadly construed in favor of potential intervenors").

1.     *Impairment of Interest*

"[T]he 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967); *accord Worlds v. Dep't of Health & Rehab. Servs.*,

929 F.2d 591, 594 (11th Cir. 1991). "For an interest to be cognizable by Rule 24(a)(2), it must be 'direct, substantial, and legally protectable.'" *Bridgeport Guardians, Inc. v. Delmonte*, 602 F.3d 469, 473 (2d Cir. 2010) (quoting *Wash. Elec. Co-op., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990)). "This test, however, is 'one of inclusion rather than exclusion.'" *XL Specialty Ins. Co. v. Lakian*, 632 Fed. App'x 667, 669 (2d Cir. 2015) (quoting 7C CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 1908.1, at 309 (3d ed. 2007)). "[W]here the intervenor's interest arises from the same 'core legal and factual issues' raised by the underlying lawsuit, intervention is frequently granted." *Golden Ins. Co. v. PCF State Restorations, Inc.*, 17-CV-5390 (BCM), 2018 WL 10593630, at *3 (S.D.N.Y. May 11, 2018) (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 2015 WL 4619663, at *12 (S.D.N.Y. Aug. 3, 2015)).

Here, the Liquidator claims an interest that will, as a practical matter, be impaired or impeded by this lawsuit. A lawsuit involving property that is subject to liquidation will, as a practical matter, directly impair or impede the liquidator's ability to protect their interest in such property. As elaborated *infra* Section IV.C.2., under binding Second Circuit precedent, a Liquidator becomes the real party in interest in a suit brought against the entity undergoing liquidation. *See Banco Economico*, 192 F.3d at 245 (Brazilian bank liquidator, appointed by Brazilian Central Bank, is real party in interest); *Galadari*, 12 F.3d at 327-28 (liquidation committee established by United Arab Emirates was real party in interest); *U.S. Fidelity & Guaranty Co.*, 893 F.2d at 517 n.1 (New York state insurance liquidation bureau is real party in interest in suit against insurance company undergoing state liquidation); *Wrapwell Corp.*, 922 F. Supp. at 917 (FDIC is real party in interest in case involving bank undergoing liquidation); *Fabe*, 784 F. Supp. at 450 (liquidators appointed by Supreme Court of Bermuda are real party in

interest in suit against corporation undergoing liquidation); *Hong Kong Deposit & Guar. Co.*, 602 F. Supp. at 1382 (Hong Kong liquidator is real party in interest).

Indeed, as a matter of logic, the Liquidator's interests will, as a practical matter, be impaired by this lawsuit because of the very nature of a liquidation. Specifically, in a liquidation, there are limited funds from which to pay competing claims against the entity undergoing liquidation. Here, as elaborated above, there is no surplus with which to redress any judgment in Plaintiffs' favor; JTB's assets fall short of its liabilities by nearly 162 billion Lebanese pounds. Baasiri Decl. ¶ 55. The Liquidator thus has a legal interest in the funds that could be used to satisfy the Plaintiffs' claims, and this lawsuit will, as a practical matter, impair or impede the Liquidators' ability to protect those interests under Lebanese law.

Courts routinely hold that where there are limited funds from which to pay multiple claimants, intervention of right is necessary to protect a proposed intervenor's interest in such limited funds. For example, in *In re $6,871,042.36*, 217 F. Supp. 3d 84, 87 (D.D.C. 2016), a Brazilian liquidator was granted intervention of right because a civil forfeiture action threatened to impair the liquidator's interest in the same funds. *Id.* at 94 ("The Court further finds that this action threatens to impair the Liquidator's interest in the resolution of its claim to the Venus Account Funds."). Similarly, in *Zurich Cap. Markets Inc. v. Coglianese*, 236 F.R.D. 379 (N.D. Ill. 2006), the court allowed intervention of right by a Bahamian liquidator of a mutual fund, finding that the liquidator "has both an interest in the merits and the specific property involved in the litigation." *Id.* at 385. The court reasoned that because "the Liquidator asserts that he has a property interest in the same funds that [the plaintiff] seeks to recover," the proceeding "will jeopardize the Official Liquidator's interest in protecting its claim for funds invested in [the mutual fund] for the benefit of eligible investors." *Id.* at 386. Likewise, in *Scherer v.*

*Opportunities Industrialization Ctr. of Greater Milwaukee*, No. 05-C-261, 2006 WL 2375522 (E.D. Wis. Aug. 15, 2006), the court granted intervention as of right to a receiver liquidating the assets of a corporation. *Id*. at *1. The receiver "claim[ed] a legal obligation to protect the assets of the receivership's existing creditors" and the court reasoned, "If judgment is entered for the plaintiff in this case, the Receiver will have fewer assets available for existing creditors. With fewer assets, the Receiver has less of an ability to meet its claimed obligation" to those existing creditors. *Id*. at *3. Accordingly, "the [Receiver's] existing interest [wa]s more than a mere 'betting' interest" and thus sufficient to satisfy Rule 24(a)(2). *Id*. Likewise, in *Citibank, N.A. v. Park-Kenilworth Indus., Inc*., 109 B.R. 321, 324 (N.D. Ill. 1989), the court granted intervention of right to a bankruptcy trustee who had "a direct interest in the subject matter of the suit" because he "has a statutory duty to protect the assets of the estate . . . ." *Id*. at 324. *See also Foshee v. Forethought Fed. Sav. Bank*, No. 09-2674-JPM-dkv, 2010 WL 11598052, at *3 (W.D. Tenn. May 14, 2010) (intervention by receiver of funeral home); *In re Reliance Grp. Holdings, Inc. Sec. Litig*., No. 00-CV-4653 (TPG), 2004 WL 601973, at *1 (S.D.N.Y. Feb. 24, 2004) (intervention by insurance company liquidator); *Indiana ex rel. Naylor v. Indiana State Teachers Ass'n*, No. 1:09-cv-1506, 2010 WL 11569420, at *3 (S.D. Ind. Mar. 16, 2010) (intervention of right based on intervenor's claim to limited funds in insurance trust); *Fed. Ins. Co. v. European Am. Realty, Ltd*., No. 1:07-cv-0355-WSD, 2007 WL 4531946, at *1 (N.D. Ga. Dec. 18, 2007) (intervention based, in part, on limited funds); *Continental Ins. Co. v. Law Office of Thomas J. Walker, Jr.*, 171 F.R.D. 183, 185 (D. Md. 1997) (intervention of right because estate had "limited funds" and if plaintiffs succeeded, movants interests would be impaired).

Here, because there is no surplus to pay JTB's obligations after its depositors are paid, any judgment obtained by Plaintiffs potentially conflicts with the Liquidators' statutory

obligation to prioritize JTB's depositors.[1] This conflict—indeed, this lawsuit in general—drains the limited funds available to the Liquidator to fulfill his statutory obligations. The longer this lawsuit proceeds, the more money will be siphoned from the limited funds available for the Liquidator to distribute in accordance with Lebanese law. This action thus potentially undermines the distribution priorities established by Lebanese law and frustrates the Liquidator's ability to carry out his statutory duties. Given the practical impact this litigation has on the Liquidator's legal interests and obligations under Lebanese law, he has "an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest . . . ." Fed. R. Civ. P. 24(a)(2).

### 2. Adequacy of Representation

The existing parties to this suit do not "adequately represent" the Liquidator's interests. Fed. R. Civ. P. 24(a)(2). According to the Supreme Court, the burden of demonstrating inadequacy of the existing parties "should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *accord U.S. Postal Serv. v. Brennan*, 579 F.2d 188, 191 (2d Cir. 1978); *Wash. Elec. Co-op*, 922 F.2d at 98; *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 22 (E.D.N.Y. 1996). Once a party has demonstrated an interest that may be, as a practical matter, impaired or impeded by disposition of the action it is "entitled to intervene as of right unless that interest is adequate represented by the parties." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1254 (10th Cir. 2001). Accordingly, the "presumption [of adequacy] is weak; in effect, it merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary." *Clark v. Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999).

---

[1] It is worth noting that Plaintiffs' claims are not against JTB's depositors. Like any other bank, JTB has thousands of innocent depositors, including individuals, families and small businesses.

A proposed intervenor may rebut the presumption of adequate representation by demonstrating that it has a legal argument that "could not be equally asserted" by the existing parties. *Schwartz v. Town of Huntington Zoning Bd of App.*, 191 F.R.D. 357, 359 (E.D.N.Y. 2000); *accord Great Atlantic & Pacific Tea Co., Inc. v. Town of E. Hampton,* 178 F.R.D. 39, 43 (E.D.N.Y. 1998) ("To prevail on its theory of inadequate representation, [putative intervenor] would need to demonstrate . . . [an interest] that could not be equally asserted by the [existing party].""). When a liquidator "adds a defense and objection to the case that the [existing] defendant does not . . . [his] interests are not adequately represented . . . ." *Scherer*, 2006 WL 2375522, at *4.

Here, while JTB and the Liquidator share the same broad ultimate objective—i.e., dismissal of Plaintiffs' claims against JTB—the presumption of adequate representation is rebutted because JTB and the Liquidator have materially different legal interests and abilities to assert anticipated defenses. The Liquidator has "colorable legal defenses that [JTB] would be less able to assert." *Natural Res. Defense Council, Inc. v. N.Y. State Dep't of Envtl. Conservation*, 834 F.2d 60, 62 (2d Cir. 1987).

Specifically, pursuant to Lebanese law, JTB is no longer an ongoing banking concern. Law 110, art. 17 ¶ 5; Baasiri Decl., ¶¶ 27-28, 47-48. The Liquidator, appointed by the Central Bank, is statutorily charged with winding up JTB's affairs pursuant to Lebanese law. Law 110, art. 17 ¶ 2; Baasiri Decl. ¶¶ 1, 26, 45, 46. The reality, therefore, is that the entity Plaintiffs initially sued—JTB—no longer has material interests in this suit. For this reason alone, the Liquidator should be granted intervention as of right.[2]

---

[2] Indeed, because JTB's interests have been transferred to the Central Bank of Lebanon, the Liquidator is simultaneously seeking substitution of the Liquidator for JTB, in his official capacity, pursuant to Federal Rule of Civil Procedure 25(c).

For example, in *Summit Contractors, Inc. v. Amerisure Mut. Ins. Co.*, No. 8:13-CV-925, 2014 WL 4814884 (M.D. Fla. Sept. 22, 2014), the district court granted intervention of right to an entity (BCA) to whom the original party (Summit) had assigned its interests under various insurance policies. *Id*. at *3. The court concluded that the original party, Summit, did not adequately represent the proposed intervenor's interests, reasoning, "Since Summit assigned its interest . . . to BCA, Summit no longer has an interest in obtaining relief . . . under the . . . policies. The Court finds that BCA has met its minimal burden as to adequacy of representation." *Id*. Thus, because the original party had assigned its interests to the proposed intervenor, the original party "no longer ha[d] an interest" in the subject matter of the lawsuit, rendering it an inadequate representative of the proposed intervenor. Similarly here, Lebanese liquidation law has assigned all interest in JTB's property to the Central Bank of Lebanon, and JTB itself "no longer has an interest" in the subject matter of this suit. *See* Central Bank Letter (liquidation of JTB "allows the Central Bank of Lebanon to acquire [JTB's] assets and all its rights.").

Moreover, once JTB's interests were transferred to the Central Bank, several unique legal and factual issues arose. Specifically, in his official capacity, the Liquidator may raise "colorable legal defenses that [JTB] would be less able to assert[,]" *Natural Res. Defense Council*, 834 F.2d at 62, or "could not be equally asserted" by JTB. *Schwartz*, 191 F.R.D. at 359; *Great Atlantic & Pacific Tea Co.*, 178 F.R.D. at 43. As a liquidator appointed by the Lebanese Central Bank, the Liquidator can directly assert, in his official capacity, the defense of sovereign immunity. 28 U.S.C. § 1603(a) (extending sovereign immunity to agents or instrumentalities of a foreign state); 18 U.S.C. § 2337(2) (extending sovereign immunity to foreign states and officers or employees thereof acting in their official capacity or under color of legal authority); *see also Samantar v. Yousef*, 560 U.S. 305, 325, 326 (2010) (noting that "some actions against an official

13

in his official capacity should be treated as actions against the foreign state itself" and foreign officials "may be entitled to immunity under the common law"). While JTB can, as a technical matter, assert sovereign immunity as a defense, the defense loses vigor when not directly asserted by the sovereign or its agent or instrumentality. Similarly, the Liquidator, as an agent of the Lebanese Central Bank, can assert directly the defense of international comity, which the Second Circuit has recognized as "particularly appropriate" when invoked by government-appointed liquidators and receivers. *See Banco Economico*, 192 F.2d at 246; *see also Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 998-1000 (2d Cir. 1993). While JTB can technically assert this defense as well, it—like sovereign immunity—loses force when asserted by a party that is not an agent or instrumentality of a sovereign.

Because the Liquidator has "colorable legal defenses that [JTB] would be less able to assert," *Natural Res. Defense Council*, 834 F.2d at 62, and that cannot be "equally asserted" by JTB, *Schwartz*, 191 F.R.D. at 359; *Great Atlantic & Pacific Tea Co.,* 178 F.R.D. at 43, the presumption of adequate representation has been rebutted here.

B.    Permissive Intervention

Alternatively, the Court may, in its broad discretion, grant permissive intervention under Rule 24(b). "[T]he standard for permissive intervention is more liberal than that for intervention as of right, and requires at a minimum that the proposed intervenor has a 'claim or defense that shares with the main action a common question of law or fact.'" *Kleeberg v. Eber*, No. 16-CV-9517, 2019 WL 1416898, at *3 (S.D.N.Y. Mar. 28, 2019) (quoting *N. Shore-Long Island Jewish Health Sys.*, 2015 WL 777248, at *24 and Fed. R. Civ. P. 24(b)(1)(B)). Rule 24(b)'s common question requirement is "not to be read in a technical sense, but only require[s] some interest on the part of the applicant." *Commack Self-Serv. Kosher Meats, Inc. v. Rubin*, 170 F.R.D. 93, 106 (E.D.N.Y. 1996) (quoting *Dow Jones & Co., Inc. v. U.S. Dep't of Justice*, 161 F.R.D. 247, 254

(S.D.N.Y. 1995)). In considering whether to grant permissive intervention, the "principal consideration" is "whether the intervention will unduly delay or prejudice the rights of the existing parties." *Id.*; *accord Brennan*, 579 F.2d at 191. The court should "also . . . consider whether the applicant will benefit by intervention[,]" *Brennan*, 579 F.2d at 191 (citing 7A WRIGHT & MILLER § 1913), the nature and extent of the proposed intervenor's interests, and whether the intervenor "will significantly contribute to the full development of the underlying factual issues . . . and to the just and equitable adjudication of the legal questions presented." *Id.* at 192 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, as elaborated above, there are numerous questions of law and fact common to the Liquidator and the main action, including the merits of Plaintiffs' claims and the defenses of sovereign immunity and international comity. In addition, the Liquidator's interest in any disposition of, or encumbrance on, JTB's property is direct, statutorily defined, and driven by Lebanon's sovereign interests. And finally, allowing the Liquidator to intervene will not unduly delay or prejudice the rights of the existing parties, as intervention will permit a more robust and properly developed presentation of the legal and factual issues at stake, allowing the Liquidator to raise the sovereign immunity and comity issues directly. This, in turn contributes to a more equitable adjudication of the legal and factual issues.

## IV.     THE ACTION SHOULD BE DISMISSED FOR WANT OF SUBJECT MATTER JURISDICTION

Depending on how the Court rules on the two procedural motions elaborated above (i.e., the motion for substitution and the alternative motion for intervention) JTB and/or the Liquidator move to dismiss this action for want of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure. There are three independent bases for 12(b)(1) dismissal here:

(1) Plaintiffs lack standing under Article III, § 2 of the Constitution because their injury is unlikely to be redressed by a favorable decision; (2) any judgment rendered would be an advisory opinion because JTB's assets, both domestic and in Lebanon, are controlled by third parties not before this Court; and (3) the Central Bank and its Liquidator, which now control the disposition of JTB's assets, are entitled to sovereign immunity. In the alternative, JTB and/or the Liquidator move to dismiss based on the common law doctrine of international comity

      A.    <u>Plaintiffs' Claims Are Not Redressable</u>

      To have standing under Article III, section 2 of the Constitution, a plaintiff must "present an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged behavior; and *likely to be redressed* by a favorable ruling." *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)) (italics added); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Absent a redressable injury, a judicial determination of a plaintiff's claim would amount to an advisory opinion prohibited by Article III's case and controversy requirement." *Church v. City of Huntsville*, 30 F.3d 1332, 1335 (11th Cir. 1994). Thus, redressability assures that the exercise of federal judicial power "does not entail the issuance of an advisory opinion . . . and that the exercise of a court's remedial powers will actually redress the alleged injury." *United States v. McClure*, 241 Fed. App'x 105, 108 (4th Cir. 2007) (quoting and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 129 (1983) (Marshall, J., dissenting)); *see also* Erwin Chemerinsky, *Federal Jurisdiction* § 2.2 (4th ed. 2003) (justiciability doctrines "prevent review where there is not a sufficient likelihood that the federal court decision will make some difference.").

      As the parties invoking federal jurisdiction, Plaintiffs must establish all three *Lujan* elements, 504 U.S. at 560, demonstrating "that there is a '*substantial likelihood* that the relief

requested will redress the injury claimed.'" *E.M. v. New York City Dep't of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 75 n.20 (1978)). Plaintiffs cannot carry that burden here for three reasons.

        1.     *JTB's Single Domestic Asset is Unavailable to Redress Plaintiffs' Injuries*

Plaintiffs' claims are not "*likely to be redressed* by a favorable ruling[,]" *Dep't of Commerce,* 139 S. Ct. at 2565, because JTB's single asset located in the United States—a correspondent account at a New York bank[3]—is now controlled by OFAC, a party not before the court. It is axiomatic that there is no standing when a judgment's ability to redress a plaintiff's injury depends on uncertain action by *third parties not before the court*. *See, e.g.*, 13A WRIGHT & MILLER, § 3531.6, n.44 (3d ed., Apr. 2020 update) ("Standing may be denied . . . when the court concludes that effective relief depends on a nonparty that will not—or is not likely to—conform to the principles that might be announced by the judgment.") (citing cases).

JTB's New York correspondent account has been blocked by OFAC and cannot be transferred in any manner, including by judicial process or order, without a specific license being granted by OFAC. 31 C.F.R. §§ 594.201(a), 594.203(a), 594.301, 594.312, 594.505.[4] As OFAC puts it, "[a]nother word for [blocking] is 'freezing.' It is simply a way of controlling targeted property. Title to the blocked property remains with the target, but the exercise of powers and

---

[3] Banks use correspondent accounts to make transfers and payments with foreign currency. JTB's correspondent account in New York is located at the Standard Chartered Bank of New York and has a current balance of approximately $8 million. Baasiri Decl. ¶ 10.

[4] Indeed, particularly illustrative of OFAC's extensive claims to control blocked property is 31 C.F.R. § 594.202(e), which provides: "Except to the extent otherwise provided by law or unless licensed pursuant to this part, any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property in which on or since the effective date there existed an interest of a person whose property or interests in property are blocked pursuant to § 594.201(a)." *See also* 31 C.F.R. § 594.506(d) ("Entry into a settlement agreement affecting property or interests in property or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 594.201(a) is prohibited except to the extent otherwise provided by law or unless specifically licensed in accordance with § 594.202(e).").

privileges normally associated with ownership is prohibited without authorization from OFAC. Blocking immediately imposes an across-the-board prohibition against transfers or dealings of any kind with regard to the property." U.S. Dep't of Treasury, *Basic Information on OFAC and Sanctions*, *available at* https://www.treasury.gov/resource-center/faqs/Sanctions/Documents/faq_all.html (Question 9: "What do you mean by 'blocking'?"). Any authorization with respect to any change in the status of blocked property is granted entirely at OFAC's discretion.

Plaintiffs' ability to obtain redressability as against JTB's New York correspondent account thus "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict . . . it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Lujan*, 504 U.S. at 562 (internal quotation marks and citations omitted); *accord Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013); *see also Faculty, Alumni & Students Opposed to Racial Preferences v. N.Y. Univ. L. Rev.*, No. 18 Civ. 9184 (ER), 2020 WL 1529311, slip op. at *6 (S.D.N.Y. Mar. 31, 2020).

Plaintiffs cannot carry their burden of establishing redressability via JTB's frozen New York correspondent account. Plaintiffs have weakly asserted, ECF No. 156, at 2 n.2, that Section 201(a) of the Terrorism Risk Insurance Act of 2002, Pub. L. No. 107-297, 116 Stat. 2322 ("TRIA"), codified as a note to 28 U.S.C. § 1610, renders JTB's blocked correspondent account a redressable source. Section 201(a) of TRIA allows litigants with a "judgment against a terrorist party on a claim based upon an act of terrorism," to execute against blocked assets "of that terrorist party" to satisfy that judgment. However, "the statutory text of TRIA unambiguously

requires that there (1) be a judgment, (2) against a terrorist party, and (3) the claim underlying the judgment be based on an act of terrorism." *Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 999 (2d Cir. 2014). At a minimum, however, Plaintiffs here cannot meet the third requirement because they have not alleged a claim "based on an act of terrorism" as defined in TRIA.

Specifically, TRIA defines an "act of terrorism" to include a violent act, meant to coerce the U.S. civilian population or affect U.S. government policy, resulting in damage within the United States, or on an air carrier, vessel, or the premises of a U.S. mission overseas, *and* that has been *certified as an act of terrorism by the Secretary of the Treasury*, in concurrence with the Secretary of State and the Attorney General. No such certification has been, or could be, made with respect to the terrorist acts responsible for Plaintiffs' injuries.[5]

TRIA also defines an "act of terrorism" to include "any terrorist activity (as defined in section 212(a)(3)(B)(iii) of the Immigration and Nationality Act (8 U.S.C. 1182(a)(3)(B)(iii))." That section defines "terrorist activity" as an unlawful activity that involves (1) "hijacking or sabotage of any conveyance"; (2) "seizing or detaining, and threatening to kill, injure, or continue to detain, another individual" to compel action or inaction by a third party as a condition of release; (3) violent attacks on internationally protected persons; (4) assassination; (5) the use of any weapons of mass destruction or other weapons, dangerous devices, explosives or firearms "(other than for mere personal gain), with intent to endanger, directly or indirectly,

---

[5] Such certifications are made under TRIA § 102, for purposes of determining when that statute's federal "backstop" on resulting insurance losses is available. And this provision generally applies only to attacks resulting in damage in the territorial United States. *See* TRIA § 102(1)(A)(iii). The Treasury Department has, in fact, taken the position that terrorist attacks occurring overseas on U.S. military installations are not certifiable as "acts of terrorism" under TRIA. *See* U.S. Treasury Interpretive Letter, "TRIA Applicability to U.S. Military Bases Abroad" (Nov. 29, 2004) *available at* https://home.treasury.gov/policy-issues/financial-markets-financial-institutions-and-fiscal-service/federal-insurance-office/terrorism-risk-insurance-program/statutes-regulations-and-interim-guidance.

the safety of one or more individuals or to cause substantial damage to property;" or a "threat, attempt, or conspiracy to do any of the foregoing." 8 U.S.C. § 1182(a)(3)(B)(iii).

Plaintiffs have not alleged that JTB took part in any of these activities, all of which involve particular, defined acts of violence. Rather, they have alleged a claim under 18 U.S.C. § 2333(d) for aiding and abetting Hezbollah in its "acts of international terrorism." Am. Compl., ECF No. 105, ¶¶ 5664-5673. However, the assistance JTB and the other defendants allegedly provided to Hezbollah remains financial services. *Id.* ¶¶ 4477, 4478.[6]

As a result, no judgment Plaintiffs might secure against JTB would be "on a claim based upon an act of terrorism" as defined in TRIA. Consequently, JTB's OFAC blocked assets would not be available to satisfy any judgment plaintiffs secure, except by OFAC license. Such a license, of course, is entirely dependent upon OFAC's discretion and thus prevents Plaintiffs from carrying their burden of establishing a "substantial likelihood" of redressability. *E.M.*, 758 F.3d at 450; *Lujan*, 504 U.S. at 562; *Clapper*, 568 U.S. at 414.

In addition, TRIA's application also depends upon JTB being a "terrorist party" with the relevant accounts blocked *at the time a judgment issues and execution is sought*. In *Calderon-Cardona*, 770 F.3d at 999-1000, the Second Circuit concluded that judgment holders could not execute against blocked North Korean assets because, although North Korea was a "terrorist party" at the time the suit was filed, this designation had been lifted by the time the judgment was issued. *See also Calderon-Cardona v. JP Morgan Chase Bank, N.A.*, 867 F. Supp. 2d 389, 396 (S.D.N.Y. 2011) ("the most natural reading of TRIA § 201(a) is that it requires a judgment debtor to be a 'terrorist party' both at the time of the underlying judgment and at the time of the

---

[6] To the extent that its motivation is in issue, Plaintiffs have not alleged that JTB engaged in banking services on behalf of Hezbollah other than for monetary gain.

enforcement proceeding.") (citing *Ministry of Defense v. Elahi*, 129 S. Ct. 1732, 1739 (2009)) (asset is a "blocked asset" under TRIA only if was blocked at the time the court of appeals concluded that judgment-holder was free to attach it), *aff'd in part and vacated in part*, 770 F.2d at 1002 (2d Cir. 2014).

If JTB ceases to exist as a result of its liquidation before judgment, or before execution against the assets is sought, the predicate requirements of TRIA cannot be satisfied. Given that JTB is already in liquidation, it would be entirely speculative whether Plaintiffs could recover under TRIA, as this depends on the facts existing at the time the judgment is issued and execution is sought. "Redressability requires that it be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotation marks omitted).

### 2.     *JTB's Lebanese Assets Are Likewise Unavailable to Redress Plaintiffs' Injuries*

It is equally unlikely that Plaintiffs' claims may be redressed via JTB's Lebanese assets because, under Lebanese law, the Liquidator cannot recognize unliquidated claims. Baasiri Decl. ¶¶ 35-41, 53-56. Indeed, to obtain redress via JTB's assets in Lebanon, Plaintiffs must satisfy four contingencies: (1) succeed on the merits; (2) file suit in a Lebanese court and convince it to recognize the U.S. judgment, thus liquidating it; (3) establish that there is a "surplus" available to satisfy the liquidated judgment; and (4) achieve 1-3 before JTB's liquidation has concluded. *Id*. Only if *all four* of these actions are successful can Plaintiffs' claims be redressed.

Here, there is no likelihood of Plaintiffs' claims being redressed by JTB's Lebanese assets because such redressability would require recognition by the Lebanese courts, in a context that would be *inconsistent with Lebanese law*. Baasiri Decl. ¶¶ 53-56. As explained above, there is no "surplus" available to pay claims such as Plaintiffs'. *Id*. ¶¶ 50, 55-56. Lebanese law

prioritizes the payment of depositors, and all other claims (such as Plaintiffs') may be paid only *after* JTB's depositors are satisfied, assuming such other claims are liquidated prior to the conclusion of the liquidation process. Baasiri Decl. ¶¶ 32-41, 54-57.

Understandably, in situations such as this, courts are "particularly reluctant to find standing where the third party upon whose conduct redressability depends is a foreign sovereign." *Ciecro v. Mnuchin*, 857 F.3d 407, 419 (D.C. Cir. 2017). Redressability cannot be established "when the effectiveness of the relief requested depends on the unforeseeable actions of a foreign nation[,]" *Dellums v. U.S. Nuclear Regulatory Comm'n*, 863 F.2d 968, 976 (D.C. Cir. 1988), including situations in which "the relief . . . could be obtained only through the consent of the [foreign] government." *Cardenas v. Smith*, 733 F.2d 909, 914 (D.C. Cir. 1984); *see also United States v. Alcalay*, No. 2:87-mj-jmc-01, 2019 WL 2450913, slip op. at *9 (D. Vt. June 12, 2019).

Thus, even if Plaintiffs obtain a favorable judgment from this court prior to the conclusion of JTB's liquidation, there is an independent obstacle—recognition of their judgment by a Lebanese court—that renders redressability far too speculative. Indeed, it is not just speculative but *certain* that Lebanese courts will refuse to recognize and liquidate any U.S. judgment because *there is no surplus that would permit such recognition under Lebanese law*. Baasiri Decl. ¶ 56; *see also Greater Tampa Chamber of Commerce v. Goldschmidt,* 627 F.2d 258, 265 (D.C. Cir. 1980) (no redressability when plaintiff failed to overcome showing of independent obstacles of Senate approval and United Kingdom action).

Moreover, even assuming *arguendo* that a Lebanese court would somehow liquidate Plaintiffs' claim, it is highly unlikely that any such liquidation would occur *before* JTB's liquidation is completed. Baasiri Decl. ¶¶ 35-40, 53-54. Once liquidation ends, JTB will longer

no exist, and there will be no successor from whom liquidated debts may be recovered.

*Id*. ¶¶ 41, 57.

Thus, redressability remains far too speculative to carry Plaintiffs' burden of satisfying the constitutional standard for standing. *Lujan*, 504 U.S. at 560 (redressability "must be 'likely,' as opposed to merely 'speculative'"); *E.M.*, 758 F.3d at 450 (plaintiff must demonstrate "that there is a '*substantial likelihood* that the relief requested will redress the injury claimed.'").

> 3. *Redressability Cannot Be Obtained Because the Disposition of JTB's Assets are Controlled by an Agent or Instrumentality of a Foreign Sovereign*

Finally, as elaborated *infra* Section IV.C., the disposition of JTB' assets is now controlled by the Central Bank of Lebanon and its Liquidator, which are entitled to sovereign immunity under both U.S. and Lebanese law. Baasiri Decl. ¶ 42. "With a finding of sovereign immunity, there is no longer a redressable controversy . . . [as] [t]here is no injury the Court can redress." *Williams v. Connolly*, Civ. No. 17-1631 (RBK/AMD), 2017 WL 5479508, at *10 (D.N.J. Nov. 15, 2017), *aff'd*, 734 Fed. App'x 8134 (3d Cir. 2018). The Central Bank's sovereign immunity thus independently renders Plaintiffs' claims non-redressable. *See Berg v. Kingdom of the Netherlands*, No. 2:18-cv-3123-BHH, 2020 WL 2829757, at *18-19 (D.S.C. Mar. 6, 2020) (sovereign immunity of some defendants precludes redressability as to other defendants who claim interest in same property); *cf. Trump v. Comm. on Ways & Means*, 415 F. Supp. 3d 38, 48-49 (D.D.C. 2019) (if congressional defendants lack immunity under the Speech and Debate Clause, "the Court could redress Mr. Trump's harm"), *appeal filed*, No. 19-5360 (D.C. Cir. Dec. 23, 2019).

B.   Any Judgment Rendered in Plaintiffs' Favor Would Be an Advisory Opinion

Because the court cannot grant Plaintiffs any effective relief, a judgment in this case likewise will be an advisory opinion prohibited by Article III's "case or controversy"

requirement. *Town of Deerfield v. FCC*, 992 F.2d 420, 427 (2d Cir. 1993) ("One facet of the case-or-controversy requirement is that an Article III court is not permitted to render advisory opinions."). A "federal court is without power to . . . give advisory opinions which cannot affect the rights of the litigants in the case before it." *St. Pierre v. United States*, 319 U.S. 41, 42 (1943). There is no live "case" or "controversy" under Article III—and thus, no subject matter jurisdiction—if it is "impossible for th[e] court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever . . . ." *Mills v. Green*, 159 U.S. 651, 653 (1895). *Accord Independence Party of Richmond Cty. v. Graham*, 413 F.3d 252, 255 (2d Cir. 2005). Where effective relief is not available to a party, a court "must dismiss the case, rather than issue an advisory opinion." *Independence Party*, 413 F.3d at 255 (quoting *ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir. 2004)).

This Court cannot provide effective relief regarding either JTB's domestic or Lebanese assets. As discussed *supra* Section IV.A.1., OFAC has blocked JTB's single domestic asset—its New York correspondent bank account. When an asset is frozen by OFAC, "the exercise of powers and privileges normally associated with ownership is prohibited without authorization from OFAC." U.S. Dep't of Treasury, *Basic Information on OFAC and Sanctions*, *available at* https://www.treasury.gov/resource-center/faqs/Sanctions/Documents/faq_all.html (Question 9). Pursuant to OFAC regulations, the funds in JTB's New York correspondent account cannot be transferred by any judicial process or order unless OFAC, *in its sole discretion*, grants a specific license to do so. 31 C.F.R. §§ 594.201(a), 594.202(e), 594.203(a), 594.301, 594.312. Whether to grant a special license lies within the plenary discretion of the Secretary of the Treasury, in consultation with the Secretary of State, the Secretary of Homeland Security, and the Attorney General. E.O. 13224 § 1(a)(iii). As stated by the Supreme Court in *Chicago & S. Air Lines v.*

*Waterman S.S. Corp.*, 333 U.S. 103 (1948), a judgment that is "subject to later review or alteration by administrative action," is, by definition, "not binding and conclusive on the parties" and thus constitutes an advisory opinion. *Id.* at 114 (citing numerous cases).

Thus, any judgment rendered by this Court affecting JTB's New York correspondent account would be effectively "subject to later review" by OFAC, which controls the account and can discretionarily refuse to issue a special license affecting it. *Waterman S.S. Corp.*, 333 U.S. at 114. The Court's judgment therefore could not "affect the rights of the litigants" regarding the account, *St. Pierre*, 319 U.S. at 42, and would thus constitute a mere advisory opinion issued to the Executive branch.

This Court likewise lacks power to adjudicate conclusively Plaintiffs' rights to JTB's assets located in Lebanon. As elaborated *supra* Section IV.A.2., any judgment in Plaintiffs' favor will require recognition by a Lebanese court. Baasiri Decl. ¶¶ 36-40, 53-54. It would not be binding on Lebanese courts, and "[t]here is no legal authority permitting the Court to issue what would be an advisory opinion to a foreign tribunal." *In re Dessaint*, No. 13 Misc. 99(RJS)-Pt. 1, 2014 WL 12029369, at *2 (S.D.N.Y. Jan. 17, 2014); *In re Gorsoan Ltd.*, No. 17-cv-5912(RJS), 2020 WL 3172777, slip op. at *5 (S.D.N.Y. June 15, 2020) (federal statute permits federal court to aid discovery in foreign proceeding but does not permit it to engage in fact-finding, which would amount to advisory opinion to foreign court); *Tang Yee-Chan v. Immundi*, 686 F. Supp. 1004, 1011 (S.D.N.Y. 1987) (Article III prohibits federal court from rendering advisory opinion to foreign court regarding prosecution); *see also United States v. Batato*, 833 F.3d 413, 440 (Floyd, J., dissenting) ("I see no valid reason why a court should be prohibited from giving advisory opinions to domestic branches of government and yet be permitted to issue advisory opinions to foreign sovereigns.").

Because any judgment by the Court granting Plaintiffs relief against JTB's Lebanese assets is merely advisory, it "must dismiss the case, rather than issue an advisory opinion" to Lebanese courts regarding a Lebanese bank, controlled by the Lebanese Central Bank, undergoing a liquidation pursuant to Lebanese law. *Independence Party*, 413 F.3d at 255.

This court additionally lacks power conclusively to adjudicate the parties' rights to JTB's Lebanese assets because, as elaborated *infra* Section IV.C., JTB's Lebanese assets are now controlled by the Central Bank of Lebanon and its Liquidator, which are entitled to sovereign immunity. An instrumentality of a foreign state, or its property, is "presumptively immune from the jurisdiction of the United States courts; unless a specified [statutory] exception applies, a federal court lacks subject-matter jurisdiction" over claims against it or its property. *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993); 28 U.S.C. § 1603(a); *Kurd v. Republic of Turkey*, No. 18-1117 (CKK), 2020 WL 587982, at *4 (D.D.C. Feb. 6, 2020) ("U.S. courts have no power to hear a case brought against a foreign sovereign *unless* one of the exceptions applies."). The prohibition on advisory opinions inheres within cases such as this one, in which the defendant is entitled to sovereign immunity. *See, e.g., Van Vliet v. Van Vliet*, No. 4:14cv151, 2015 WL 631360, at *3 (E.D. Va. 2015) (refusing to render advisory opinion that would affect U.S. sovereign immunity).

C.     <u>Plaintiffs' Claims Are Barred by Sovereign Immunity</u>

When JTB entered liquidation on September 24, 2019, Plaintiffs' suit functionally became a suit against the Central Bank, as Lebanese law grants the Central Bank, through its Liquidator, authority to liquidate JTB and "acquire the bank's assets and all its rights." Central Bank Letter. This Court cannot, however, exercise subject matter jurisdiction against the Central Bank, due to the FSIA.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Nelson*, 507 U.S. at 355 (citation omitted). Unless one of the specific statutory exceptions applies, "a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id.*; *see also Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488-89 (1983) (FSIA grants "foreign state[s]" immunity from "the jurisdiction of the courts of the United States and of the states," unless a limited set of exceptions applies.) There is no applicable exception here. Accordingly, this case also must be dismissed under 12(b)(1) for want of subject matter jurisdiction under FSIA.

1.   *The Lebanese Central Bank is an Agent or Instrumentality of a Foreign State*

FSIA defines "foreign state" expansively, declaring that it "includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." 28 U.S.C. § 1603(a). Subsection (b) then defines "agency or instrumentality" as follows:

> An "agency or instrumentality of a foreign state" means any entity—
>
> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an *organ of a foreign state* or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b) (italics added).

There can be no dispute that the Central Bank is an agency or instrumentality of the Lebanese state entitled to sovereign immunity under the FSIA. It was created by a public law of Lebanon. *See* Code of Money & Credit. The Central Bank's capital is appropriated by the Lebanese legislature. *Id.* tit. II, art. 15. Its governors are appointed by Lebanon's Council of

Ministers. *Id.* tit. II, art. 18. It is supervised by Lebanon's Ministry of Finance. *Id.* tit. II, art. 41. It exercises the "exclusive" sovereign function of issuing Lebanese currency, *id.* tit. II, art. 47, and its employees and officers are prohibited from undertaking "commercial operations of their own." *Id.* tit. II, art. 127. *See also Filler v. Hanvit*, 378 F.3d 213, 217 (2d Cir. 2004) (recognizing these as factors to identify instrumentality of a foreign state).

The Second Circuit held in *S&S Mach. Co. v. Masinexportimport*, 706 F.2d 411 (2d Cir. 1983), that state-owned central banks are "the paradigm of a state agency or instrumentality" that "indisputably are included in the § 1603(b) definition of 'agency or instrumentality.'" *Id.* at 414. *See also* H.R. Rep. No. 1487, 94th Cong., 2d Sess. 15-16, *reprinted in* 1976 U.S.C.C.A.N. 6604, 6614) ("As a general matter, entities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including . . . a central bank"). Accordingly, under binding Second Circuit precedent, the Central Bank of Lebanon is immune from lawsuits in American courts under the FSIA. *See EM Ltd. v. Banco Central de la Republica Argentina*, 800 F.3d 78, 82-83 (2d Cir. 2015) (Argentina's central bank is immune under FSIA); *NML Capital, Ltd. v. Banco Central de la Republica Argentina*, 652 F.3d 172, 188 (2d Cir. 2011) ("[F]oreign central banks are not treated as generic 'agencies or instrumentalities' of a foreign state under FSIA; they are given 'special protections' benefitting the particular sovereign interest in preventing the attachment and execution of central bank property."); *Banco Economico*, 192 F.3d at 245-46 (liquidators of bank undergoing liquidation by Brazilian Central Bank were real parties in interest and thus an "agency or instrumentality" of Brazil under FSIA).

2.      *The Liquidator Is the Real Party in Interest*

In *Samantar v. Yousuf*, 560 U.S. 305, the Supreme Court recognized that, in assessing claims of sovereign immunity, courts should be cognizant of the real party in interest.[7] *Id*. at 325 (suits against individual in official capacity "should be treated as actions against the foreign state itself, as the state is the real party in interest."). More specifically, several Second Circuit decisions confirm that liquidators appointed by sovereign entities are the real party in interest in any litigation involving the entity undergoing liquidation.

For example, in *Banco Economico*, 192 F.3d at 245, the Second Circuit concluded that it was appropriate to remove[8] a breach of contract suit against a private Brazilian bank because the bank's liquidator, who was appointed by the Central Bank of Brazil to unwind the bank's affairs, was "the real party in interest and [was] an 'agency or instrumentality of a foreign state' as defined in 28 U.S.C. § 1603(b)." *Id*. The court reasoned: "Brazil's Central Bank appoints the liquidator and decrees an extrajudicial liquidation pursuant to Brazilian law. The duly-appointed liquidator is required to act 'in the interest of public economy, private savings, and national security' when fulfilling his duties. The liquidator also represents the bankrupt's estate in court and can file suit on the estate's behalf." *Id*. While the parties did not dispute that the liquidator was the real party in interest, the Second Circuit agreed that this legal conclusion was "supported by the record" based on these facts. *Id*.

---

[7] Federal Rule of Civil Procedure 17(a) requires that actions "must be *prosecuted* in the name of the real party in interest." Fed. R. Civ. P. 17(a) (italics added). Rule 17(a) thus recognizes that, to have standing, the *plaintiff* must be the real party in interest. Rule 17(a) does not mention *defendants* but, as elaborated in Section IV.A., the independent, constitutional requirement of redressability ensures that a civil suit must be brought against a defendant capable, based upon the court's judgment, of redressing plaintiff's injury. In addition, as elaborated in the text above, Second Circuit precedent requires that, for purposes of assessing sovereign immunity under the FSIA, a state-appointed liquidator must be considered the "real party in interest."

[8] 28 U.S.C. §1330(a) (extending district court jurisdiction to "any nonjury civil action against a foreign state" without regard to amount in controversy).

The same facts are present here. As an agent of the Lebanese Central Bank, the Liquidator may dispose of all the bank's assets and assume all of its rights. Central Bank Letter; Law 110, art 17 ¶¶ 1-2. The Liquidator acts "under the supervision and control of the Central Bank of Lebanon." Law 110, art. 17 ¶ 2. The Liquidator is statutorily obligated to prioritize the rights of depositors, thereby protecting the interests of private savings and the public economy of Lebanon. *Id*. Under Lebanese law, therefore, the Central Bank and its designated Liquidator, Dr. Baasiri, now control the disposition of JTB's assets and represent its interests therein.

Another Second Circuit decision, *Galadari*, 12 F.3d 317, is instructive. There, plaintiffs sued a citizen of Dubai (Galadari) and a partnership he managed (Commodities) for recovery on a note. *Id*. at 320. Five days after the lawsuit was filed, the Emirate of Dubai, United Arab Emirates ("the Emirate") established a liquidation Committee to wind up the business affairs and liquidate the assets of Galadari. *Id*. An amended and supplemental complaint was filed, asserting claims directly against the Emirate and the liquidation Committee.

The liquidation Committee asserted several affirmative defenses, including sovereign immunity. *Galadari*, 12 F.3d at 320. It argued that because the liquidation was authorized by the Emirate, and conducted by individuals appointed by that sovereign, plaintiff's claims were "directly against the Emirate and the Committee as an instrumentality of the Emirate." *Id*. at 324. The plaintiff in *Galadari* did not dispute that the liquidation Committee was an "agency or instrumentality" of the Emirate under the FSIA, instead arguing, *inter alia*, that sovereign immunity had been waived. *Id*. at 324, 325-328.

The Second Circuit demurred to the district court's conclusion that "the [liquidation] Committee was the 'real party in interest'" and concluded that it had "consistently invoked FSIA immunity or reserved the right to do so in the future" and thus, no waiver had occurred. *Id*. at

327-28. *See also Drexel Burnham Lambert Grp. Inc. v. Comm. of Receivers for Galadari*, 810 F. Supp. 1375, 1384 (S.D.N.Y. 1993) ("When the [liquidation] Committee assumed the responsibility of marshalling and liquidating Galadari's assets, it became the real party in interest as to those assets. Under New York law, a liquidator is the real party in interest as to the assets and interests for which he or she is responsible.") *rev'd*, *Galadari*, 12 F.3d 317.

In addition, in *U.S. Fidelity & Guaranty*, 893 F.2d 517, the Second Circuit concluded that in a suit against an insurance company, which was assigned to another insurance company (Union), the "real party in interest . . . is the New York State Insurance Department, Liquidation Bureau" because an order of liquidation had been entered against Union, and a liquidator appointed pursuant to New York Law. *Id.* at 517 n.1.

Lower courts, both within and outside the Second Circuit, routinely agree that sovereign-appointed liquidators are properly characterized as the real party in interest in lawsuits filed against the entity undergoing such liquidation. *See, e.g.*, *Wrapwell Corp.*, 922 F. Supp. at 917 (concluding that FDIC's takeover of a bank rendered FDIC the real party in interest in case involving the bank); *Fabe*, 784 F. Supp. at 450 ("[O]nce Forum was ordered into liquidation, the real party in interest in this action became, not the corporation, but the liquidators of the corporation appointed by the Supreme Court of Bermuda."); *Allied Fidelity Ins. Co. v. Continental Ill. Nat'l Bank & Trust Co. of Chicago*, 677 F. Supp. 562, 563 (N.D. Ill. 1988) ("[B]ecause Allied is now in liquidation, Allied's liquidator, the Indiana Commissioner of Insurance . . . is the real party in interest"); *Hong Kong Deposit & Guar. Co.*, 602 F. Supp. at 1382 (Hong Kong liquidator is real party in interest because under Hong Kong law, "liquidators are vested with significant powers to 'carry on the business of the company,' to dispose of the

31

insolvent corporation's assets, to adjust claims, to conduct litigation, and to 'do all such other things necessary to wind up the affairs of the company.'")

This case is no different. A Lebanese Central Bank-approved and supervised liquidator, Dr. Baasiri, is charged with winding up JTB's affairs pursuant to Lebanese law. JTB no longer has any meaningful, independent status apart from the Central Bank; its operations are shut down, and the Liquidator and Lebanese Central Bank direct and control the disposition of its assets. Indeed, "even if [Plaintiffs] [were] to obtain [their] desired judgment . . . against" JTB, they would need to look to the Central Bank in order to recover. *Nnaka v. Fed. Republic of Nigeria*, 238 F. Supp. 3d 17, 31 (D.D.C. 2017), *aff'd Nnaka v. Fed. Republic of Nigeria*, 756 Fed. App'x 16 (D.C. Cir. 2019); *see also Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34-35 (D.D.C. 2013) (suit against Kenyan officials should be treated as against Kenya, which is "real party in interest" because "any damages that [plaintiff] recovers in this suit will be payable by the Kenyan government"), *aff'd*, 764 F.3d 31 (D.C. Cir. 2014). Thus, because any recovery would necessarily have to come from the Central Bank, which is an instrumentality of the State of Lebanon under 28 U.S.C. § 1603(a), Plaintiffs' claims must be dismissed due to sovereign immunity under the FSIA.

### 3. Plaintiffs' Claims Are Also Barred Under the ATA's Sovereign Immunity Provision

Finally, dismissal for want of subject matter jurisdiction is also required under the plain language of the ATA. All of Plaintiffs' claims against JTB derive from ATA section 2333, Am. Compl., ECF No. 105, ¶¶ 5647-5681, which declares: "No action shall be maintained under section 2333 of [the ATA] against . . . a foreign state, an agency of a foreign state, or an officer or employee of a foreign state or an agency thereof acting within his or her official capacity or under color of legal authority." 18 U.S.C. § 2337(2).

Unlike the FSIA, the ATA contains no definition of the term "foreign state." It is clear, however, that the "two statutes [are] to be read *in pari materia*." *Ungar v. Palestine Liberation Org.*, 402 F.3d 274, 282 (1st Cir. 2005). As the Supreme Court stated in *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989), "the text and structure of the FSIA demonstrate Congress' intention that the FSIA be the *sole basis* for obtaining jurisdiction over a foreign state in our courts." *Id*. at 434 (italics added). Indeed, the preamble to the FSIA broadly declares, "[c]laims of foreign states to immunity should henceforth be decided by courts of the United States and of the States in conformity with the principles set forth in this chapter." 28 U.S.C. § 1602.

The ATA's legislative history likewise indicates congressional awareness that Section 2337(2) of the ATA should be read *in pari materia* with the FSIA: "This provision maintains the status quo, in accordance with the Foreign Sovereign Immunities Act, with respect to sovereign states and their officials: there can be no cause of action for international terrorism against them." S. Rep. No. 102-342, 102d Cong., 2d Sess. (July 27, 1992), at 47. *See also Lawton v. Republic of Iraq*, 581 F. Supp. 2d 43, 46 (D.D.C. 2008). Moreover, in the post-ATA decision of *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004), the Court unequivocally declared that the FSIA should be applied to *all* claims of sovereign immunity. *Id*. at 691; *see also Ungar*, 402 F.3d at 283.

For these reasons, courts have uniformly held that Section 2337(2) of the ATA should be construed consistent with the FSIA. As the First Circuit explained, "[n]othing in either the language or legislative history of the ATA gives any indication that Congress intended the newer statute to supercede, rather than to mirror, the detailed jurisdictional framework described in the FSIA." *Ungar*, 402 F.3d at 282-83. Likewise, in *Sokolow v. Palestine Liberation Organization*,

33

583 F. Supp. 2d 451 (S.D.N.Y. 2008), the court concluded that the "ATA's exclusion, of foreign states and governmental actors from its coverage, is consistent with, and to be applied in accordance with, the ordinary sovereign immunity principles codified in the FSIA." *Id*. at 457 (citing cases).

In this case, as elaborated above, the real party in interest is Dr. Baasiri, in his official capacity as JTB's Liquidator, who acts under the color of legal authority granted by Article 17 of Law 110 of Lebanese law, under the supervision and control of the Lebanese Central Bank. Law 110, art. 17 ¶ 2; *see also* Central Bank Letter. Accordingly, this Court lacks subject matter to adjudicate Plaintiffs' claims pursuant to 18 U.S.C. § 2337(2).

## V.      INTERNATIONAL COMITY REQUIRES DISMISSAL

Recognized principles of international comity also require dismissal as to JTB. International comity is "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895). The Second Circuit has stated that international comity "is clearly concerned with maintaining amicable working relationships between nations, a 'shorthand for good neighbourliness, common courtesy and mutual respect between those who labour in adjoining judicial vineyards.'" *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 423 (2d Cir. 2005) (quoting *British Airways Bd. v. Laker Airways Ltd*., [1984] E.C.C. 36, 41 (Eng. C.A.)). Comity is "not an imperative

obligation of courts but rather is a discretionary rule of practice, convenience, and expediency." *Id*. (internal quotation marks omitted).

A.   Comity Dismissal is "Particularly Appropriate" Because JTB Is Undergoing <u>Foreign Liquidation</u>

The Second Circuit "ha[s] repeatedly noted the importance of extending comity to foreign bankruptcy proceedings." *Banco Economico*, 192 F.3d at 246. The rationale for this rule is that "[t]he granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic, or piecemeal fashion." *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 458 (2d Cir. 1985). "Consequently, American courts have consistently recognized the interest of foreign courts in liquidating or winding up the affairs of their own domestic business entities." *Id*. (citing numerous cases).

The Second Circuit has clarified that when there is a foreign proceeding that "functions similarly" to a bankruptcy proceeding, comity is "particularly appropriate." *Banco Economico*, 192 F.3d at 243, 246. Liquidation proceedings have repeatedly been held to "function[] similarly" to bankruptcy and thus particularly warrant invocation of comity. For example, in *Allstate Life Insurance Co. v. Linter Group, Ltd*., 994 F.2d 996, the Second Circuit affirmed the district court's comity-based dismissal of a lawsuit filed against defendants undergoing liquidation in Australia. *Id*. at 998-1000. The *Allstate* court held that "there is no requirement that Australian liquidation proceedings be identical to United States bankruptcy proceedings." *Id*. at 999 (citing cases). Instead, "[w]hat is important is that Australian law provides a stay procedure to centralize all claims and 'enable[] the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner." *Id*. (quoting *Cunard S.S. Co.*, 773 F.2d at 458). Where such

35

equitable, orderly and systematic foreign liquidations occur, the Second Circuit held, "comity has long been recognized as appropriate." *Id*. at 1000.

Even more analogously, in *Banco Economico* the Second Circuit affirmed the comity-based dismissal of a suit against a Brazilian bank undergoing liquidation pursuant to Brazilian law. 192 F.3d at 242-244. The Second Circuit noted that, pursuant to Brazil's liquidation law, "an extrajudicial *liquidation functions similarly to a bankruptcy proceeding* filed in the United States . . . ." *Id*. (italics added). Because the Brazilian liquidation functioned similarly to a bankruptcy proceeding, *id*., the Circuit agreed with the district court that deference, grounded in international comity, was owed to the ongoing Brazilian liquidation process. *Id*. at 246.

Likewise here, Lebanon's liquidation proceeding against JTB "functions similarly to a bankruptcy proceeding," *id*. at 244, and there is accordingly a "particular need" to extend comity to the Lebanese liquidation proceeding. *Id*. at 247 (quoting *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B*., 825 F.2d 709, 713 (2d Cir. 1987)). Indeed, Lebanon's sovereign interests arguably are even greater in a liquidation proceeding than in an ordinary bankruptcy reorganization. A liquidation, by definition, involves multiple claimants to a limited quantity of assets. The process of, and prioritization of claims under, a liquidation will therefore reflect the relevant sovereign's policy choices. Allowing a U.S. proceeding to go forward therefore will inevitably create conflict with the foreign sovereign's policy choices about prioritization of claim payment, creating potential diplomatic and other tensions.

Much like U.S. law, Lebanese law prioritizes payment of depositors in a bank liquidation; it does not place tort or statutory claimants above depositors, as doing so would threaten both private citizens and the Lebanese banking financial system. *Compare* 12 U.S.C. § 1811(a) *et seq*. (FDIC) *with* Law 110, art. 14. The United States would not tolerate a foreign court's interference

with the FDIC's orderly liquidation of a U.S. bank, and Lebanon will undoubtedly feel the same if a U.S. court interferes with its liquidation process. Indeed, as previously elaborated, there is no surplus to pay liquidated debts after JTB's depositors are paid. Baasiri Decl. ¶ 56. Any recovery obtained by Plaintiffs—putting aside the issues regarding recognition by Lebanese courts— would directly conflict with Lebanese law, which *prioritizes payment of JTB's depositors.* Allowing Plaintiffs' suit to move forward will undermine the Lebanese liquidation of JTB and the single, orderly proceeding it provides for disposition of claims against it. *See Victrix S.S. Co*., 825 F.2d at 713-14 ("The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding . . . ."). Accordingly, dismissal based on comity is "particularly appropriate" when there is an ongoing foreign liquidation because comity reflects what "is essentially a version of the golden rule: a concept of doing to others as you would have them do to you." *Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 75 (3d Cir. 1994) (quotation marks omitted).

In short, this case is indistinguishable from *Banco Economico* and *Allstate Life.* In both cases, as here, the defendant was a foreign business entity undergoing liquidation pursuant to foreign law. In both cases, as here, the foreign sovereign's liquidation provides a centralized process whereby claims can be resolved in "equitable, orderly and systematic manner." *Allstate Life*, 994 F.2d at 999. In both cases, the Second Circuit affirmed the propriety of comity-based dismissals based on the pending foreign liquidation proceedings.

B.    U.S. Interests Will Be Served by Lebanon's Liquidation of JTB

While comity should not be extended when doing so would "violate the laws or public policy of the United States," *Banco Economico*, 192 F.3d at 246, no conflict with domestic law exists here. The U.S. has an interest, reflected in the Anti-Terrorism Act, in punishing those who knowingly facilitate acts of terrorism and providing compensation to its victims. But this

37

domestic interest will not be undermined by a comity-based dismissal. Indeed, in *Banco Economico*, the U.S. had a special interest in "maintain[ing] New York's status as a commercial and forfaiting center." *Id*. at 246-47. But the starting point of the Second Circuit's analysis was to reiterate the "particular need to extend comity to foreign bankruptcy proceedings" such as liquidation proceedings. *Id*. at 247 (quoting *Victrix S.S. Co*., 825 F.2d at 713).

Moreover, as in *Banco Economico*, a comity-based dismissal will serve, not undermine, U.S. interests. JTB's liquidation was precipitated by OFAC designating it as an SDGT, which left JTB unable to transfer any money in U.S. dollars, creating an immediate liquidity crisis and trust issues with correspondent banks. Baasiri Decl. ¶¶ 19-23. Upon OFAC's designation, moreover, the Lebanese Central Bank, in recognition of, and respect for, the United States' position, immediately froze JTB's deposits. *Id*. ¶ 22.

The liquidation of JTB under Lebanese law, therefore, is not contrary to U.S. policy but in *furtherance* thereof. JTB's liquidation punishes JTB in the most severe manner possible, effectuating the United States' policy of punishing facilitators of terrorist acts. Lebanese liquidation law mandated that JTB cease all banking operations, its assets are now being liquidated under the direction and control of the Liquidator and Central Bank, and its shareholders have lost all equity. Through the liquidation process, therefore, JTB will be permanently deleted as a Lebanese banking concern. Baasiri Decl. ¶¶ 28, 47-48. In addition, the U.S. interest in facilitating recovery for victims of terrorism can be furthered, even if Plaintiffs' claims against JTB are dismissed, as Plaintiffs can recover full compensation from the remaining defendants.

Accordingly, the Lebanese liquidation of JTB is entitled to deference and dismissal based on international comity is "particularly appropriate." *Banco Economico*, 192 F.3d at 246; *see also Altos Hornos de Mexico*, 412 F.3d at 424.

## VI.    CONCLUSION

For the foregoing reasons, defendant JTB requests that this Court exercise its discretion under Rule 25(c) to enter an order substituting therefor as defendant in this case, "Dr. Muhammad Baasiri, in his official capacity as Liquidator of Jammal Trust Bank SAL." In the alternative, Dr. Baasiri, in his official capacity as JTB's liquidator, requests that the Court grant his motion to intervene, either as of right or by permission, as a defendant in this action. Finally, the Court should dismiss this action for want of subject matter jurisdiction or in the alternative, dismiss based on the common law doctrine of international comity.

Dated: November 17, 2020                              Respectfully submitted,

                                                      By: */s/ David B. Rivkin, Jr.*
                                                      David B. Rivkin, Jr.
                                                      Mark W. DeLaquil
                                                      Elizabeth Price Foley
                                                      BAKER HOSTETLER LLP
                                                      Washington Square, Suite 1100
                                                      1050 Connecticut Avenue, N.W.
                                                      Washington, DC 20036
                                                      T: 202.861.1500
                                                      F: 202.861.1783
                                                      drivkin@bakerlaw.com
                                                      mdelaquil@bakerlaw.com
                                                      efoley@bakerlaw.com