

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
mayerbrown.com

**Mark G. Hanchet**
T: (212) 506 2695
MHanchet@mayerbrown.com

June 21, 2021

<u>VIA ECF</u>

Honorable Carol Bagley Amon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al.*, 19 Civ. 007 (CBA) (VMS)

Dear Judge Amon:

The parties submit this joint letter in the above-referenced action in response to the Court's December 30, 2020 Minute Order ("Order"). The Order stayed the proceedings but provided that "[t]his stay shall expire upon the Second Circuit's issuance of an opinion in *Reuvane, et al. v. Lebanese Canadian Bank*, SAL, No. 19-3522-cv."[1] The parties were directed to file a joint letter no later than 10 days from the issuance of the *Kaplan* opinion setting forth "how they wish to proceed--including whether any party seeks (i) a further stay of proceedings pending opinions in additional Second Circuit cases, or (ii) the opportunity to move for dismissal of Plaintiffs' Second Amended Complaint in light of new Second Circuit guidance." On June 9, 2021, the Second Circuit issued its decision in *Kaplan*. 2021 WL 2345642 (2d Cir. June 9, 2021). The parties conferred last week, and they set forth their positions on the above-mentioned issues, successively, below.

### **Moving Defendants' Position**

As this Court correctly anticipated, the Second Circuit elucidated the elements required to plead aiding-and-abetting and conspiracy claims under JASTA in its *Kaplan* decision. And since the Court issued its motion to dismiss ruling in this case on November 25, 2020, Plaintiffs have

---

[1] The case was restyled for appeal as *Licci v. Lebanese Canadian Bank, PLC*. The Second Circuit subsequently restyled the case *Kaplan v. Lebanese Canadian Bank, PLC*, and it will be referred to as *Kaplan* herein.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

filed the operative, Second Amended Complaint (ECF 189), which has not yet been the subject of any motion practice. The Moving Defendants[2] anticipate moving to dismiss the Second Amended Complaint, and respectfully submit that briefing on that motion should be deferred until the Second Circuit issues a decision in *Honickman v. BLOM Bank*, SAL, No. 20-575, which was briefed and argued in December 2020. Aware that *Kaplan* had been argued just a few weeks earlier, the Second Circuit directed the parties in *Honickman* to submit post-argument briefing focused exclusively on "how [*Kaplan*] applies to th[e] case." *See Honickman*, No. 23-575, ECF 96. That briefing is due July 9, 2021. The Second Circuit therefore will provide guidance imminently on the application of *Kaplan* and its prior decision in *Siegel v. HSBC North America Holdings*, 933 F.3d 217 (2d Cir. 2019) to a pleading that, like the Second Amended Complaint here, lacks many of the distinctive allegations made against Lebanese Canadian Bank in the *Kaplan* case. Deferring the briefing of the *Bartlett* motion to dismiss until the Second Circuit issues a decision in *Honickman* is therefore appropriate.

In *Kaplan*, the Second Circuit reversed Judge Daniels' dismissal of the plaintiffs' JASTA aiding-and-abetting claims against Lebanese Canadian Bank ("LCB"). 2021 WL 2345642, at *1. Plaintiffs were injured in Israel in 2006 in rocket attacks perpetrated by Hezbollah. *Id*. They alleged that LCB laundered millions of dollars in wire transfers in violation of its own internal policies for five bank customers that were integral components of Hezbollah and afforded these particular customers special treatment pursuant to a "long-standing official policy and practice of support for Hezbollah[ ]" and Hezbollah's "anti-Israel program, goals and activities." *Id*. at *6, *8. The special treatment that LCB allegedly provided included exempting the five customers from reporting requirements for large cash transactions, "allow[ing] them to deposit large sums in various accounts at different LCB branches--totaling more than $2.5 million dollars a week []--without disclosing their source, thereby circumventing sanctions imposed in order to hinder terrorist activity." *Id*. at 19. The *Kaplan* plaintiffs also alleged that Hezbollah repeatedly and publicly acknowledged its relationship with these particular customers in advance of the 2006 rocket attacks. They further alleged that LCB had a history of facilitating Hezbollah activity, citing a 2002 United Nations report that concluded LCB had a banking relationship with "a Hezbollah-linked money laundering gang," to which LCB responded by labeling the report Israeli propaganda and increasing the credit limits for the customers in question. *Id*. at *5.

The Second Circuit found that these allegations gave rise to a plausible inference that LCB was not engaged in "routine" banking, but instead in providing "money-laundering banking services" to the five customers in violation of Lebanese banking regulations and, as such, was knowingly playing a role in Hezbollah's terrorist activities. *Id*. at *18. The court also found that the alleged volume of illicit transactions for the Hezbollah-linked customers supported a plausible inference that LCB's alleged assistance was "knowing" and "substantial." *Id*. at 19.

---

[2] The Moving Defendants are (1) Société Générale de Banque au Liban S.A.L., (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) Lebanon & Gulf Bank S.A.L., (9) Banque Libano Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank s.a.l.

No such allegations are present here. No Moving Defendant is alleged to have provided any alleged bank customer with "special treatment" or "money-laundering services," much less the opportunity to make $2.5 million per week in unreported cash deposits. In fact, the Second Amended Complaint in this case identifies no particular transactions that the Moving Defendants facilitated for any alleged bank customer. To the extent that Plaintiffs allege that the Moving Defendants "maintained accounts" at some unspecified time for alleged bank customers with ties to Hezbollah, those are precisely the types of "routine banking services" that the Second Circuit in *Linde* and *Siegel* found permissible—even if they were for an affiliate of an FTO—as distinguished from the allegations against LCB of money laundering on behalf of FTO affiliates in *Kaplan*.

Likewise, the Second Amended Complaint does not allege that Hezbollah publicly acknowledged any Moving Defendant's customer as "integral" to Hezbollah's operations, or that any Moving Defendant actively supported Hezbollah's money laundering efforts. And unlike in *Kaplan*, Hezbollah did not perpetrate the violence at issue here; that was done by Shia militias in Iraq during Operation Iraqi Freedom, adding layers of remoteness not present in *Kaplan*. Indeed, the allegations in *Kaplan* only underscore the relative weakness of allegations against the Moving Defendants here.[3]

Not surprisingly, Plaintiffs advocate a broad application of *Kaplan* and present it as dispositive of the claims here. The parties' starkly different views of the impact and application of *Kaplan* highlights the propriety of staying the case until the Second Circuit applies *Kaplan*, *Siegel* and *Linde* to the pleadings in *Honickman*, which it will do imminently. As this Court observed in its motion to dismiss decision,

> the issues in this case are highly contested and [] the Second Circuit's decisions in the pending appeals may largely resolve those issues. For these reasons, today's decision is without prejudice to any party filing an application to stay these proceedings for a limited period, in light of the possibility that the Second Circuit's decisions in the pending appeals could resolve certain issues in this case.

ECF 164 at 37-38.

That rationale counsels a continuation of the stay in place for the limited period of time the Second Circuit requires to decide *Honickman,* the last of the pending appeals referred to by this Court in its order. The Moving Defendants propose that the Court adopt the following schedule.

---

[3] *Kaplan* also confirmed that JASTA conspiracy claims require plausible allegations that a defendant "conspired with" the principal actor. 2021 WL 2345642, at *10. The Second Amended Complaint contains no allegations that the Moving Defendants "conspired with" the persons that committed the attacks at issue here, and Plaintiffs' conspiracy claims, which were not addressed in substance in the Court's November 25, 2020, dismissal decision, are subject to dismissal on this basis.

Within 10 days of the Second Circuit's decision in *Honickman*, the Moving Defendants (jointly or individually) will either (1) file a pre-motion conference letter requesting leave to file a motion to dismiss the Second Amended Complaint, pursuant to which Moving Defendants will file a motion to dismiss 60 days after the Second Circuit issues its decision in *Honickman*; Plaintiffs file their opposition 60 days after the moving papers are filed; and Moving Defendants file their reply papers 30 days after the opposition, or (2) advise the Court of their intent to answer with a proposed date.[4]

## **Jammal Trust Bank SAL's Position**

Defendant Jammal Trust Bank SAL and movant-substitute party Dr. Muhammad Baasiri, in his official capacity as Liquidator of Jammal Trust Bank SAL (collectively "JTB"), agree with the other defendants that judicial economy is best served by continuing to stay this action pending resolution of *Honickman*. JTB further takes the position that the Court should continue to adjourn all deadlines concerning JTB, pending a decision on its pending motion for substitution of party, to intervene, and to dismiss based on subject matter jurisdiction and international comity.

In its December Order, the Court provided for the parties to state their positions in this letter concerning "how they wish to proceed" following the decision in Kaplan, including whether "a further stay of proceedings" is appropriate. As set forth in more detail in that motion, the claims concerning JTB are barred by sovereign immunity. "Subject matter jurisdiction under the FSIA … must be decided before the suit can proceed." *Security Pac. Nat'l Bank v. Derderian*, 872 F.2d 281, 283–84 (9th Cir.1989). This is because "[i]mmunity under the FSIA is not only immunity from liability, but immunity from suit." *Id. See also Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 (2d Cir. 2001) ("The district court's review of the evidence before it on a motion to dismiss based on an assertion of sovereign immunity has particular significance because of the necessity of resolving that issue early on if possible. Sovereign immunity under the FSIA is immunity from suit, not just from liability. Such immunity is effectively lost if a case is permitted to go to trial.") (cleaned up).

Accordingly, with regard to claims concerning JTB, all deadlines should remain adjourned until resolution of its claim to sovereign immunity. If the Court deems another motion on this point specifically directed to the Second Amended Complaint to be appropriate, in the interest of judicial economy JTB requests that the Court construe this statement as a pre-motion letter, in which case JTB represents that Plaintiffs oppose the requested relief. JTB further states that Plaintiffs oppose JTB expressing its position in this letter that all deadlines concerning proceedings against it should remain adjourned.

---

[4] Although, as a matter of judicial economy, the Moving Defendants believe that the short stay requested herein would allow the parties to brief, and the Court to consider the impact of both the *Kaplan* and *Honickman* Second Circuit decisions at the same time, rather than seriatim in supplemental submissions, the Moving Defendants respectfully request that if the Court is not inclined to continue the stay pending the outcome of the *Honickman* appeal, it adopt the same schedule for the motion to dismiss outlined above should the Moving Defendants (jointly or individually) move at this time to dismiss the Second Amended Complaint.

## **Plaintiffs' Position**

Plaintiffs oppose Defendants' request that this Court impose a further stay of the proceedings pending the Second Circuit's issuance of an opinion in *Honickman v. Blom Bank SAL*, No. 20-575, or any other JASTA case now pending before the Second Circuit. As an initial matter, Plaintiffs note that, contrary to the Moving Defendants' assertion in footnote 4 seeking to "continue the stay," the Court's Order expressly stated that the stay would expire after *Kaplan* was issued. This Court has already denied Defendants' motions to dismiss Plaintiffs' JASTA claims, ECF No. 164, and the *Kaplan* decision supports the Court's decision. *Kaplan* is particularly instructive because the *Kaplan* and *Bartlett* cases focus on the same Foreign Terrorist Organization ("FTO"), Hezbollah, and many of the same Hezbollah Specially Designated Global Terrorist ("SDGT") core entities and individuals like the Martyrs Foundation and Yousser. In addition, both cases involve much of the same alleged conduct and one of the same defendants.

*Honickman* presents no unique legal or factual issues necessary to inform the Court's opinion here that are not present in *Kaplan* or were not available to Defendants when they moved to dismiss the operative complaint. *See* FRCP 12(g).[5] For instance, *Honickman* does not address the fact that Hezbollah used proxies in Iraq to commit attacks against U.S. forces. This Court has already rejected this argument. This Court has likewise already rejected Defendants' argument that Plaintiffs alleged no particular transactions that any Moving Defendant facilitated for any alleged bank customer, and the complaint here provides far more specific transactional details than any referenced in the *Kaplan* complaint. *See, e.g.,* SAC ¶1175 (mapping an illustrative transaction for the Joumaa and Tajideen networks for $269,678 on August 5, 2009).

In fact, in rejecting Plaintiffs' citation to the Seventh Circuit's decision in *Boim v. Holy Land Found. for Relief and Dev.*, 549 F.3d 685 (7th Cir. 2008) (*en banc*), the district court in *Honickman* found that the lower court's decision in *Kaplan* "provides a more appropriate point of reference," and after a lengthy discussion of that decision it concluded the "same analysis applies even more strongly here." Thus, while the "pure question of law" (as characterized by Defendants in their §1292 motion for interlocutory relief which this Court denied) is the same in *Honickman* as in *Kaplan,* the former simply provides less analogous allegations than *Bartlett* does. The "pure question of law" has been decided by the Second Circuit in a manner that *entirely* supports this Court's prior decision denying Defendants' motions to dismiss Plaintiffs' JASTA claims. Therefore, there is no basis for Defendants to renew their motions to dismiss since there are "no substantial arguments for dismissal" or "strong showing that the plaintiff's case is unmeritorious." *Hong Leong Finance Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013) (internal citations omitted). Nor do Defendants possess any other viable grounds for a stay. JTB's request for a stay of discovery pending the Court's decision on its second motion to dismiss is outside the scope of the Court's December 30, 2020 Minute Order, which was limited to the effect of pending "Second Circuit guidance." Plaintiffs advised JTB's counsel that the appropriate

---

[5] That is equally true for the Moving Defendants' recycled arguments about Plaintiffs' conspiracy claims. No JASTA conspiracy claim was raised on appeal in *Kaplan*; nor was a conspiracy claim pleaded in *Honickman*.

Mayer Brown LLP

Honorable Carol Bagley Amon
June 21, 2021
Page 6

vehicle for such a motion is through a pre-motion letter to the Court, not the joint letter described in the Court's Minute Order.

      Accordingly, Plaintiffs request that Defendants' applications for a further stay be denied.

      Respectfully submitted,

      /s/ *Mark G. Hanchet*

      Mark G. Hanchet

Cc: Counsel of Record (via ECF)