# Exhibit B



April 22, 2022

**VIA EMAIL**

Ari Ungar
Osen LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601

      Re:    *Bartlett et al. v. Société Générale de Banque au Liban S.A.L. et al.*, 19-cv-0007 (E.D.N.Y.) – Defendant Société Générale de Banque au Liban S.A.L.'s Responses and Objections to Plaintiffs' First Request for the Production of Documents

Dear Mr. Ungar:

On behalf of Société Générale de Banque au Liban S.A.L. ("SGBL"), we write to respond to your March 22, 2022 letter setting forth certain "questions and requests for clarifications" concerning SGBL's Responses and Objections to the Plaintiffs' First Request for Production.

As an initial matter, we note that many of your questions presume that SGBL has gathered and reviewed all of the documents potentially responsive to the Requests. Given Plaintiffs' complete failure to tailor the Requests to the facts alleged against each defendant in this case, that assumption is unwarranted and unreasonable. No effort has been made by Plaintiffs to tailor the Requests to the individuals and entities alleged to be customers of SGBL in the Second Amended Complaint (the "Complaint") (ECF No. 189). Exhibit 1 to the Requests seeks documents for a total of 673 individuals; Exhibit 2 seeks documents for a total of 283 individuals and entities. It would be unduly burdensome to provide the detailed information sought in your letter. In order to engage in any further discussions on the burdens involved in searching for documents related to individuals and entities that are not alleged to be customers of SGBL, Plaintiffs should first identify the factual basis for alleging that SGBL provided any financial services to that individual or entity. In addition, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were SGBL customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

Subject to the foregoing, we respond below to each of the points in your March 22 letter.

1. **Please identify the specific provisions of Articles 6 and 8 of Lebanese Law 44/2015 that provide the basis for withholding the requested information as well as any cases or other materials you may rely upon in asserting your bank secrecy objections.**

In accordance with the court's order that Defendants "provide the relevant citations and, to the extent available, the Lebanese authority on which [Defendants] plan to rely in support of any [Lebanese bank secrecy] objections," DE 264 at 53-54, SGBL states—without waiving its right to rely on additional authority, including but not limited to any authority identified by any expert witness it retains—that the citations on which it currently intends to rely for its Lebanese bank secrecy objections include: (1) the Lebanese Law of September 3, 1956 on Banking Secrecy; (2) Articles 36, 44, 127, 148, 151, 155, 190 & 203 of the Lebanese Code of Money and Credit of August 1, 1963; (3) Articles 6 & 8 of Law No. 44 of November 24, 2015 on Fighting Money Laundering and Terrorist Financing; (4) Article 55 of Law No. 161 of August 17, 2011 on Financial Markets; (5) Article 12.6 of Basic Circular 83 of the Banque du Liban of May 18, 2001; and (6) Article 579 of the Lebanese Criminal Code. Unofficial English translations of laws referenced in the first four citations above are available online at Banque du Liban, Laws and Circulars, at https://www.bdl.gov.lb/laws/index/5/32/Laws.html, as is an unofficial English translation of the circular referenced in the fifth citation above, at https://www.bdl.gov.lb/circulars/index/5/33/0.

2. **Please provide us with your definition of the scope of "the subject matter … of records [] relevant to the claims or defenses in this Litigation," as referenced in all of your Specific Responses and Objections.**

SGBL defines the "scope of the subject matter… relevant to the claims or defenses in this Litigation" in accordance with Fed. R. Civ. P. 26, which provides, among other limitations, that the scope of discovery is limited to "matter that is relevant to any party's claim or defense."

If Plaintiffs have a different view of the appropriate definition of the "scope of the subject matter of records relevant to this Litigation," please provide it to us prior to our telephonic meet and confer.

3. **Please provide us with your definition of what customers are those "as to whom SGBL could potentially be subject to liability under the remaining claims against SGBL," as referenced in your Response to Requests Nos. 1-3.**

SGBL defines the customers "as to whom SGBL could potentially be subject to liability under the remaining claims against SGBL and the allegations asserted against SGBL in the Second Amended Complaint" as an individual or entity that the Complaint alleges in non-conclusory fashion is a customer of SGBL for which SGBL provided, during the relevant timeframe, banking services plausibly connected to the ATA claims at issue in the litigation and for which SGBL may have

ATA liability independent of it acquiring the assets and liabilities of Defendant Lebanese Canadian Bank.

4. **This question consists of several subparts. For convenience, we have broken them out below.**

   a. **For any putatively privileged Account Opening Records in its possession, custody, or control does SGBL intend to produce a privilege log, and if so, when does SGBL anticipate doing so?**

First, SGBL confirms that it will comply with its obligation to furnish a privilege log, as set forth in Federal Rule of Civil Procedure Rule 26 and Local Rule of Civil Procedure Rule 26.2, "where a claim of privilege is asserted in objecting to any means of discovery or disclosure." As to foreign legal restrictions of the type at issue here, such as Lebanese bank secrecy, Fed. R. Civ. P. 26 and Local Rule of Civil Procedure 26.2 do not contemplate the creation of a privilege log. In any event, Plaintiffs have sufficient information to contest SGBL's objections based on Lebanese law. If Plaintiffs believe that they need additional information to oppose SGBL's objections, SGBL will meet and confer on the issue.

   b. **Please set forth what "reasonable search" you conducted, including providing us with (1) the search methods you used (for example, keywords, Boolean search terms or Technology Assisted Review software); (2) the list of keywords or Boolean search terms you used; (3) the Technology Assisted Review software you used; (4) the database query terms you used; and (5) the core and/or legacy banking systems, communication servers (for example, electronic mail and financial messaging), file servers and back-ups you searched.**

SGBL states that it is premature to conduct searches because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

   c. **Is it SGBL's contention that under Fed. R. Civ. P. 26 it is obligated to search only for the names of individuals or entities that have been identified as SGBL customers in the Second Amended Complaint? If not, please set forth the scope of SGBL's search parameters.**

The parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery. Once that issue is resolved, SGBL's obligations concerning its search obligations will be clearer. It is SGBL's contention that, subject to clarification by agreement of the parties or the Court, it is obligated to search only for those individuals or entities alleged to be customers of



SGBL as to whom SGBL could potentially be subject to liability under the remaining claims against SGBL and the allegations asserted against SGBL in the Complaint.

At the forthcoming meet and confer, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the complaint in fact are or were so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

5. **In your Response to Request No. 2, you state that it "would be unduly burdensome and not proportional to the needs of this Litigation to search all of SGBL's transactional records over a period of nine years to respond to this Request."**

   **Consistent with the inquiry above pertaining to the scope of the search you conducted, please set forth in detail the nature of the burden involved in searching for the records requested.**

Under Federal Rule of Civil Procedure 26, discovery sought must be proportional to the needs of the case. Plaintiffs' Requests for Production contain lists that include approximately 956 names, not counting alternative spellings, including approximately 130 names that are found nowhere in the Complaint, with no attempt to tailor the requests to persons or entities that are alleged to be customers of SGBL.

Prior to our telephonic meet and confer, please explain the basis for your position that any names other than the persons or entities alleged to be SGBL customers are relevant to this matter, including explaining from what source you obtained each of the names listed and your basis, if any, for believing that those names have conducted transactions involving SGBL. In addition, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were SBGL customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

6. **Please set forth whether SGBL has sought a waiver from any of the customers it has identified, and if it has, please state the number of requests issued and the status of those requests.**

It is premature for SGBL to seek waivers for several reasons, including the following. First, the parties have not yet agreed to, and the court has not yet entered, a protective order, and so it is not possible to disclose to any persons from whom a waiver is sought how the document subject to disclosure would be utilized and protected from misuse. Second, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

7. **For Requests Nos. 1-3, please state when SGBL anticipates commencing production of responsive records, if any**.

SGBL states that it is premature to respond because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery, the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery, and SGBL's objections pursuant to Lebanese law have not been resolved.

8. **Please set forth which SGBL systems are "reasonably accessible" and which systems (likely to store responsive data) are (according to SGBL) less accessible and what specific burdens and expenses are associated with retrieval of sources that "are not reasonably accessible." Please set forth in which locations (computer systems for electronically stored data; physical locations for paper records) SGBL believes "responsive documents reasonably would be expected to be found," and where "responsive documents can reasonably be expected to be maintained," and whether these are different from each other and from the "reasonably accessible" systems described above.**

SGBL states that it is premature to specify its systems and locations because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

9. **Please confirm that SGBL is asserting that Lebanese bank secrecy law prohibits it from disclosing communications from the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1. Please also confirm that SGBL is asserting that Lebanese bank secrecy law prohibits it from disclosing communications to the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1.**

The applicability of Lebanese bank secrecy depends on the content of the communication or document at issue, not the location of the communication or document. The question above does not specify whether the communication at issue relates to a bank customer, and therefore, it is not possible to determine whether the communication would be governed by Lebanese bank secrecy or not, regardless of its location.

10. **This question consists of several subparts. For convenience, we have broken them out below.**
    a. **Please confirm that SGBL intends to search for all the aliases provided and the Arabic spellings where provided.**

SGBL confirms that, subject to its objections as to scope, it intends to search for all the aliases (and alternative spellings) provided by Plaintiffs and the Arabic spellings where provided by Plaintiffs.



> b. **Please provide the languages in which data are stored in each of your relevant systems (e.g., English, Arabic, French) and the technical methods and software SGBL used for searching its non-English language records.**

SGBL states that it is premature to specify technical methods and software for use in searching because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

> 11. **Is it SGBL's contention that it will not search for joint accounts or beneficial accounts?**

Subject to its objections, SGBL will conduct a reasonable search for any accounts, including but not limited to joint accounts, as to which an alleged customer of SGBL is a named accountholder.

Although you have defined "beneficial owner," you have not defined "beneficial account." Please define "beneficial account."

> 12. **Please confirm that SGBL will treat records relating to the same transaction but involving different types of data, structured data, and/or metadata as nonduplicative.**

Subject to its objections, SGBL confirms that if it produces a document that includes metadata, SGBL will produce the metadata. If two or more documents contain the same data, and differ only as to format or formatting, SGBL will produce the information only once. SGBL will meet and confer concerning the most appropriate format in which to produce a single instance of duplicative information.

> 13. **Please confirm that SGBL does not object to creating documents such as "a custom-created query or report" to search its databases, as the Sedona Principles explains is often required. 15 SEDONA CONF. J. 171, 181 (2014).**

First, it is premature to discuss searches of databases because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Second, the Sedona Principles provide in relevant part: "Other than situations where a large portion of a given database is responsive, it may be best practice to collect that responsive data by saving a copy of a subset of the database information to a separate location, such as a specifically-designed table, a separate database, or a text delimited file by means of a query or report. In some cases, a pre-existing ('canned') query or report may exist that can be used for this purpose. In other cases, a custom-created query or report will need to be used." The approach this question takes is misguided because the Sedona Principles are not meant to be applied in the abstract, and because the Sedona Principles encourage a flexible approach, rather than preconceived notions that certain approaches are necessarily superior.



Please confirm that, to the extent any databases are to be searched once scope objections are resolved, Plaintiffs do not object to discussing *all* of the relevant best practices identified in the Sedona Principles and reaching agreement on the approach that is most appropriate to database at issue.

* * *

We look forward to your responses, and to speaking further.

Sincerely,

Michael J. Sullivan