# Exhibit L

# Dechert
LLP

Three Bryant Park
1095 Avenue of the Americas
New York, NY  10036-6797
+1 212 698 3500  Main
+1 212 698 3599  Fax
www.dechert.com

---

**LINDA C. GOLDSTEIN**

Linda.Goldstein@dechert.com
+1 212 698 3817  Direct
+1 212 698 3599  Fax

April 22, 2022

**VIA EMAIL**

Ari Ungar
Osen LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601
aungar@osenlaw.com

Re:  *Bartlett et al. v. Société Générale de Banque au Liban S.A.L. et al.* -- Defendant BLOM Bank SAL's Responses and Objections to Plaintiffs' First Request for the Production of Documents

Dear Mr. Ungar:

On behalf of Defendant BLOM Bank SAL ("BLOM"), we write to respond to your March 29, 2022 letter setting forth certain "questions and requests for clarifications" concerning BLOM's Responses and Objections to the Plaintiffs' First Request for Production.

As an initial matter, we note that many of your questions presume that BLOM has gathered and reviewed all of the documents potentially responsive to the Requests.  Given Plaintiffs' complete failure to tailor the Requests to the facts alleged against each defendant in this case, that assumption is unwarranted and unreasonable.  No effort has been made by Plaintiffs to tailor the Requests to the 31 individuals and entities alleged to be customers of BLOM in the Second Amended Complaint (ECF No. 189).  Exhibit 1 to the Requests seeks documents for a total of 673 individuals; Exhibit 2 seeks documents for a total of 283 individuals and entities.  It would be unduly burdensome to provide the detailed information sought in your letter for documents regarding a very large multiple of the individuals and entities that are alleged to be customers of BLOM in the Second Amended Complaint.  In order to engage in any further discussions on the burdens involved in searching for documents related to individuals and entities that are not alleged to be customers of BLOM, Plaintiffs should first identify the factual basis for alleging that BLOM provided any financial services to that individual or entity.

Subject to the foregoing, we respond below to each of the points in your March 29 letter.

1. **In paragraph 3 of your General Responses and Objections, BLOM states that it objects to the disclosure of information protected by any privilege or protection, including "the professional secrecy obligation under Article 579 of the Lebanese Criminal Code, privilege accorded to regulatory submissions made pursuant to Lebanese Law 44/2015, Circular 83**



> of the Banque du Liban, the Lebanese Code of Money and Credit of 1963 article 55 of Lebanese Law 161/2011 ...."
>
> **Please provide us with a copy of Article 579 of the Lebanese Criminal Code, Circular 83 of the Banque du Liban, and the Lebanese Code of Money and Credit of 1963 article 55 of Lebanese Law 161/2011, as well as any cases or other materials you may rely upon in asserting your bank secrecy objections, along with English translations.**

In accordance with the Court's order that Defendants "provide the relevant citations and, to the extent available, the Lebanese authority on which [Defendants] plan to rely in support of any [Lebanese bank secrecy] objections," DE 264 at 53-54, BLOM states—without waiving its right to rely on additional authority, including but not limited to any authority identified by any expert witness it retains—that the citations on which it currently intends to rely for its Lebanese bank secrecy objections include: (1) the Lebanese Law of September 3, 1956 on Banking Secrecy; (2) Articles 36, 44, 127, 148, 151, 155, 190 & 203 of the Lebanese Code of Money and Credit of August 1, 1963; (3) Articles 6 & 8 of Law No. 44 of November 24, 2015 on Fighting Money Laundering and Terrorist Financing; (4) Article 55 of Law No. 161 of August 17, 2011 on Financial Markets; (5) Article 12.6 of Basic Circular 83 of the Banque du Liban of May 18, 2001; and (6) Article 579 of the Lebanese Criminal Code. English translations of laws referenced in the first four citations above are available on online at Banque du Liban, Laws and Circulars, at https://www.bdl.gov.lb/laws/index/5/32/Laws.html, as is an English translation of the circular referenced in the fifth citation above, at https://www.bdl.gov.lb/circulars/index/5/33/0. This information should be sufficient so that the meet and confer can be productive.

> 2. **Please provide us with your definition of the scope of information/records/documents "relevant to any party's claim or defense related to this Litigation," as referenced in paragraph 2 of your General Responses and Objections and all of your Specific Responses and Objections.**

BLOM defines the "scope of the subject matter ... relevant to the claims or defenses in this Litigation" in accordance with Federal Rule of Civil Procedure 26, which provides, among other limitations, that the scope of discovery is limited to "matter that is relevant to any party's claim or defense."

If Plaintiffs have a different view of the appropriate definition of the "scope of the subject matter of records relevant to this Litigation," please provide it to us prior to our telephonic meet and confer.

> 3. **You state in your Responses to Requests Nos. 1-3 that "BLOM will produce non-privileged [documents], in its possession, custody or control, if any, for the time period January 1, 2003 through November 30, 2011, that can be located through a reasonable search, concerning only the persons and entities listed in Exhibit 1 alleged to be customers of**



> BLOM as to whom BLOM could potentially be subject to liability under the claims and allegations asserted against BLOM in the Second Amended Complaint."
>
> For any putatively privileged Account Opening Records in its possession, custody, or control does BLOM intend to produce a privilege log, and if so, when does BLOM anticipate doing so?

First, BLOM confirms that it will comply with its obligation to furnish a privilege log, as set forth in Federal Rule of Civil Procedure Rule 26 and Local Rule of Civil Procedure Rule 26.2, "where a claim of privilege is asserted in objecting to any means of discovery or disclosure." As to foreign legal restrictions of the type at issue here, such as Lebanese bank secrecy, Fed. R. Civ. P. 26 and Local Rule of Civil Procedure 26.2 do not contemplate the creation of a privilege log. In any event, Plaintiffs have sufficient information to contest BLOM's objections based on Lebanese law. If Plaintiffs believe that they need additional information to oppose BLOM's objections, Bank Audi will meet and confer on the information needed and how BLOM can provide it.

> Please set forth whether BLOM has sought a waiver from any of the customers it has identified, and if it has, please state the number of requests issued and the status of those requests.

It is premature for BLOM to seek waivers for several reasons, including the following. First, the parties have not yet agreed to, and the Court has not yet entered, a protective order, and so it is not possible to disclose to any persons from whom a waiver is sought how the document subject to disclosure would be utilized and protected from misuse. Second, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.[1]

Within 60 days of the entry of an appropriate protective order and the completion of the parties' meet and confer, BLOM will begin to seek waivers, insofar as practicable, from current or former customers not subject to BLOM's objections on scope, subject to the caveat that BLOM may not have current contact information for former customers.

> Please set forth what "reasonable search" you conducted, including providing us with (1) the search methods you used (for example, keywords, Boolean search terms or Technology

---

[1] As used herein, "objections as to scope" refers to all objections in BLOM's Responses and Objections to Plaintiffs Request for Production of Documents other than those related to Lebanese bank secrecy and other prohibitions, privileges and protections; and "scope of discovery" refers to discovery appropriate in light of those objections as determined by agreement of the parties and/or order of the court.



> **Assisted Review software); (2) the list of keywords or Boolean search terms you used; (3) the Technology Assisted Review software you used; (4) the database query terms you used; and (5) the core and/or legacy banking systems, communication servers (for example, electronic mail and financial messaging), file servers and back-ups you searched.**

It is premature to conduct searches because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Notwithstanding that this request is premature, BLOM states that with respect to requests that are not subject to BLOM's objections as to scope, BLOM has searched its core banking systems using the terms provided by Plaintiffs in their Requests for Production to identify accounts held in those names, but has not searched for all Transactional Records related to those names.

> **Is it BLOM's contention that under Fed. R. Civ. P. 26 it is obligated to search only for the names of individuals or entities that have been identified as BLOM customers in the Second Amended Complaint? If not, please set forth the scope of BLOM's search parameters.**

Subject to the Court's ruling on the pending motion to dismiss, BLOM will search only the names of individuals or entities that have been identified as BLOM customers in the Second Amended Complaint as to whom BLOM could potentially be subject to liability under the claims and allegations asserted against BLOM.

> 4. **In paragraph 1 of your Common Responses and Objections, you write that "[t]o comply with the Requests for documents or information involving hundreds of individuals and entities that are not alleged to be customers of BLOM and/or as to whom BLOM could not potentially be subject to liability under the claims and allegations asserted against BLOM in the Second Amended Complaint, BLOM would have to search *the entirety* of its records over a period of at least nine years to locate those names."**
>
> **Consistent with the inquiry above pertaining to the scope of the search you conducted, please set forth in detail the nature of the burden involved in searching for the records requested.**

Under Federal Rule of Civil Procedure 26, discovery sought must be proportional to the needs of the case. Plaintiffs' Requests for Production contain lists that include approximately 956 names, not counting alternative spellings, including approximately 130 names that are found nowhere in the Second Amended Complaint, and including only 31 that are alleged to be customers of BLOM. Prior to our telephonic meet and confer, please explain the basis for your position that any names other than the 31 persons or entities



April 22, 2022
Page 5

alleged to be BLOM customers are relevant to this matter, including explaining from what source you obtained each of the names listed and your basis, if any, for believing that those names have conducted transactions involving BLOM.

Without prejudice to BLOM's right to expand upon its answer, for illustrative purposes, below is a high-level overview of the burden associated with certain of the documents that Plaintiffs have requested.

BLOM maintains some responsive documents from the relevant time period electronically, such as SWIFT transfers. However, Account Opening Records, certain Transactional Records, and certain Compliance Records are maintained in hard copy format in multiple off-site locations. Locating responsive documents will require searching the documents individually, by-hand. BLOM would need to hire hundreds if not thousands of additional staff to review all of these records in a reasonable time frame. Additionally, creating producible copies of these original, hard copy, records will be burdensome and expensive.

5. **Please provide us with your definition of what customers are those "as to whom BLOM could potentially be subject to liability under the claims and allegations asserted against BLOM," as referenced in paragraph 1 of your Common Responses and Objections and your Responses to Requests Nos. 1-3.**

As set forth in BLOM's Common Objection 9, the Second Amended Complaint fails to allege that BLOM provided services during the relevant time period to customers that were allegedly migrated from Lebanese Canadian Bank ("LCB"), and, therefore, BLOM could not potentially be subject to liability for such customers under the Second Amended Complaint. References to customers "as to whom BLOM could potentially be subject to liability under the claims and allegations asserted against BLOM" excludes these customers that were allegedly migrated from LCB.

6. **For Requests Nos. 1-3, where BLOM states that it "will produce" records subject to various objections, please state when it anticipates commencing production of responsive records, if any.**

Subject to its objections including as to scope, and to the extent permitted under Lebanese law, BLOM will begin a rolling production of documents no later than 90 days after the parties reach an agreement and/or the Court has resolved any dispute concerning BLOM's objections as to the scope of Plaintiffs' Request for Production.

7. **In your objection to our definition of "Account Opening Records," you state that BLOM objects to the extent it would require it to produce Account Opening Documents that "are stored only in hard copy and are not indexed or organized by customer."**



> **In paragraph 6 of your General Responses and Objections, you object "to perform anything more than a reasonable and diligent search for documents where responsive documents reasonably would be expected to be found."**
>
> **Please identify:**
>
> - **The data sources BLOM maintains in hard copy form, including those that are or are not indexed, and the specific burdens and expenses associated with retrieval of hard copy and non-indexed sources.**
>
> - **Where "documents reasonably would be expected to be found" in BLOM's systems.**

The Account Opening Records from the relevant time period are maintained in hard copy format in an off-site location. Account Opening Records pre-dating 2017 are not indexed and are not maintained in an electronically searchable format. Locating responsive documents will require searching the documents individually, by-hand. BLOM would need to hire hundreds if not thousands of additional staff to review these records in a reasonable time frame. Additionally, creating producible copies of these original, hard copy, records will be burdensome and expensive.

> 8. **In your Response to Request No. 7, you state that it "would be unduly burdensome to request that BLOM search the entirety of its transactional records, as the Request requires, to identify such payments."**
>
> **Please set forth in detail the nature of the burden involved in searching for the records requested, and the different sources or locations of BLOM's "transactional records."**

Some of the Transactional Records from the relevant time period, such as SWIFT transfers, are maintained electronically and can be searched electronically. However, the relevant time period ended over 10 years ago and retrieving historical data is burdensome. Moreover, Request No. 7 seeks documents and communication related to so called "Martyrs" payments without any specificity as to who such individuals are. BLOM cannot search its banking systems for unidentified individuals and to the extent that Plaintiffs provide BLOM with more identifying information about the alleged "Martyrs," BLOM is limited to searches by ordering party or beneficiary.

Other types of Transactional Records from the relevant time period are maintained in hard copy format. Specifically, checks, letters of credit, letters of guarantee and any Transactional Records with a client written request are maintained in hard copy format. Locating responsive documents will require searching the documents individually, by-hand. BLOM would need to hire hundreds if not thousands of additional



staff to review these records in a reasonable time frame. Additionally, creating producible copies of these original, hard copy, records will be burdensome and expensive.

9. In your Response to Request No. 9, which seeks all communications to or from the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1, you incorporate, *inter alia*, paragraph 3 of your General Responses and Objections and paragraph 8 of your Common Responses and Objections, both of which refuse the disclosure of information protected by "Lebanese Law 44/2015...," and the latter of which also refuses the disclosure of information protected by "Lebanon's Law of September 3, 1956 on Banking Secrecy ('Lebanon's Banking Secrecy Act')."

   **Please confirm that BLOM is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications from the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1.**

   **Please also confirm that BLOM is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications to the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1.**

The applicability of Lebanese bank secrecy depends on the content of the communication or document at issue, not the location of the parties to the communication or document. The question above does not specify whether the hypothetical communications at issue relate to protected information of a bank customer, and therefore, it is not possible to determine whether the communication would be governed by Lebanese bank secrecy or not, regardless of the location of the parties to the communication.

10. In your Objection to Instruction No. 13, you state that "[a]ny reasonable search BLOM undertakes in response to Plaintiffs' Request will be limited to the precise spellings of names that Plaintiffs have provided, and the precise names of entities, including corporate form that Plaintiffs have provided on Exhibit 1 and Exhibit 2."

    **Please confirm that BLOM intends to search for all the aliases (and alternative spellings) provided and the Arabic spellings where provided.**

    **Please provide the languages in which data are stored in each of your relevant systems (e.g., English, Arabic, French) and the technical methods and software BLOM used for searching its non-English language records.**

BLOM confirms that, subject to its objections as to scope, it intends to search for all the aliases (and alternative spellings) provided by Plaintiffs and the Arabic spellings where provided by Plaintiffs.



Most documents maintained by BLOM are in English or Arabic. It is premature to specify technical methods and software for use in searching because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

11. **In paragraph 1 of your Objections to Definitions, you state that BLOM objects to search for "accounts 'controlled by or for the benefit of a listed person or entity,'" on the grounds that,** *inter alia*, **the term is "unduly vague and ambiguous."**

   **Is it BLOM's contention that it will not search for joint accounts or beneficial accounts?**

Subject to its objections as to scope, BLOM will search (and in fact has searched) for any accounts, including but not limited to joint accounts, as to which an alleged customer of BLOM is a named accountholder.

Although you have defined "beneficial owner," you have not defined "beneficial account." Please define "beneficial account." The names of beneficial owners or signatories for accounts held by entities are not entered into BLOM's electronic systems and hence cannot be searched.

12. **In your objection to our definition of "Transactional Records," you object "insofar as it calls for duplicative production of documents," and state that "[i]nsofar as records are available on multiple systems, BLOM will produce them only once."**

   **Please confirm that BLOM will treat records relating to the same transaction but involving different types of data, structured data, and/or metadata as non-duplicative.**

Subject to its objections as to scope and burden, BLOM confirms that if it produces a document that includes metadata, BLOM will produce the metadata. If two or more documents contain the same data, and differ only as to format or formatting, BLOM may produce the information only once. BLOM will meet and confer concerning the most appropriate format in which to produce a single instance of duplicative information.

13. **In paragraph 10 of your General Responses and Objections, you state that "BLOM objects to the Requests to the extent that they purport to require it to create or generate documents that do not currently exist and/or are not maintained in BLOM's usual course of business."**

   **Please confirm that BLOM does not object to creating documents such as "a custom-created query or report" to search its databases, as the Sedona Principles explains is often required. 15 SEDONA CONF. J. 171, 181 (2014).**





April 22, 2022
Page 9

First, it is premature to discuss searches of databases because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Second, the Sedona Principles provide in relevant part: "Other than situations where a large portion of a given database is responsive, it may be best practice to collect that responsive data by saving a copy of a subset of the database information to a separate location, such as a specifically-designed table, a separate database, or a text delimited file by means of a query or report. In some cases, a pre-existing ('canned') query or report may exist that can be used for this purpose. In other cases, a custom-created query or report will need to be used."  The question you have posed is misguided because the Sedona Principles are not meant to be applied in the abstract, and because the Sedona Principles encourage a flexible approach, rather than preconceived notions that certain approaches are necessarily superior.

Please confirm that, to the extent any databases are to be searched once scope objections are resolved, Plaintiffs do not object to discussing *all* of the relevant best practices identified in the Sedona Principles and reaching agreement on the approach that is most appropriate to any database at issue.

   14. **In your Responses to Requests Nos. 1-3, you state that BLOM will produce responsive records "[s]ubject to and without waiver of its objections...."**

       **Please confirm whether BLOM has located records responsive to these requests but is withholding them. Please also confirm that BLOM will produce a log that describes the nature of the records not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected or otherwise subject to an objection, will enable us to assess the claim.**

First, this question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.  With regard to requests not subject to BLOM's objections as to scope, BLOM confirms that it has located responsive documents that it is withholding on grounds of Lebanese bank secrecy.

Second, please see our answer to the first part of question 3.

   15. **In paragraph 2 of your Common Responses and Objections, you state that "BLOM objects to the Requests because Exhibits 1 and 2 do not include sufficient information (such as an individual's place of birth, mother's name, national registration number or commercial business number) to enable BLOM to match an individual or entity named in the Requests to an individual or entity whose name appears in BLOM's records."**



April 22, 2022
Page 10

> **Please identify which individuals and entities BLOM will not search for on the basis of this objection.**

This question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the Court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Prior to our telephonic meet and confer, please explain why you cannot provide more detail concerning *all* of the names you have requested that BLOM search. To the extent you maintain that you cannot supply additional information, please explain how you have concluded that the names (especially certain common Arabic names, e.g., Ahmad Saad [no surname provided by Plaintiffs], Adel Mansour, Ali Hussein Harb), are relevant without knowing more details about them.

We look forward to your responses, and to speaking further.

Sincerely,

*Linda C. Goldstein*

Linda C. Goldstein