# Exhibit O

Mayer Brown LLP
1999 K Street, N.W.
Washington, DC 20006-1101
United States of America

T: +1 202 263 3000
F: +1 202 263 3300

mayerbrown.com

**Alex C. Lakatos**
Partner

April 22, 2022

VIA E-MAIL

Ari Ungar
Osen LLC
190 Moore Street, Suite 272
Hackensack, New Jersey 07601

Re:   *Bartlett et al. v. Société Générale de Banque au Liban S.A.L. et al.*, 19-cv-0007 (E.D.N.Y.) – Defendant Bank Audi SAL's Responses and Objections to Plaintiffs' First Request for the Production of Documents

Dear Mr. Ungar:

On behalf of Defendant Bank Audi SAL ("Bank Audi"), we write to respond to your March 23, 2022 letter setting forth certain "questions and requests for clarifications" concerning Bank Audi's Responses and Objections to the Plaintiffs' First Request for Production.

As an initial matter, we note that many of your questions presume that Bank Audi has gathered and reviewed all of the documents potentially responsive to the Requests. Given Plaintiffs' complete failure to tailor the Requests to the facts alleged against each defendant in this case, that assumption is unwarranted and unreasonable. No effort has been made by Plaintiffs to tailor the Requests to the 39 individuals and entities alleged to be customers of Bank Audi in the Second Amended Complaint (ECF No. 189). Exhibit 1 to the Requests seeks documents for a total of 673 individuals; Exhibit 2 seeks documents for a total of 283 individuals and entities. It would be unduly burdensome to provide the detailed information sought in your letter for documents regarding a very large multiple of the individuals and entities that are alleged to be customers of Bank Audi in the Second Amended Complaint. In order to engage in any further discussions on the burdens involved in searching for documents related to individuals and entities that are not alleged to be customers of Bank Audi, Plaintiffs should first identify the factual basis for alleging that Bank Audi provided any financial services to that individual or entity.

Subject to the foregoing, we respond below to each of the points in your March 23 letter.

1. **Please provide us with a copy of Article 579 of the Lebanese Criminal Code as well as any cases or other materials you may rely upon in asserting your bank secrecy objections, along with English translations.**

    In accordance with the Court's order that Defendants "provide the relevant citations and, to the extent available, the Lebanese authority on which [Defendants] plan to rely in support of any [Lebanese bank secrecy] objections," DE 264 at 53-54, Bank Audi states—without waiving

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership) and Tauil & Chequer Advogados (a Brazilian partnership).

- 747353368.4

Ari Ungar
April 22, 2022
Page 2

its right to rely on additional authority, including but not limited to any authority identified by any expert witness it retains—that the citations on which it currently intends to rely for its Lebanese bank secrecy objections include: (1) the Lebanese Law of September 3, 1956 on Banking Secrecy; (2) Articles 36, 44, 127, 148, 151, 155, 190 & 203 of the Lebanese Code of Money and Credit of August 1, 1963; (3) Articles 6 & 8 of Law No. 44 of November 24, 2015 on Fighting Money Laundering and Terrorist Financing; (4) Article 55 of Law No. 161 of August 17, 2011 on Financial Markets; (5) Article 12.6 of Basic Circular 83 of the Banque du Liban of May 18, 2001; and (6) Article 579 of the Lebanese Criminal Code. English translations of laws referenced in the first four citations above are available on online at Banque du Liban, Laws and Circulars, at https://www.bdl.gov.lb/laws/index/5/32/Laws.html, as is an English translation of the circular referenced in the fifth citation above, at https://www.bdl.gov.lb/circulars/index/5/33/0. This should be sufficient so that the meet and confer can be productive.

2. **Please provide us with your definition of the scope of "the subject matter . . . of records [] relevant to the claims or defenses in this Litigation," as referenced in your Responses to Requests Nos. 1-3 and 5-9.**

Bank Audi defines the "scope of the relevant to the claims or defenses in this Litigation" in accordance with Fed. R. Civ. P. 26, which provides, among other limitations, that the scope of discovery is limited to any "matter that is relevant to any party's claim or defense."

If Plaintiffs have a different view of the appropriate definition of the "scope of the subject matter of records relevant to this Litigation," please provide it to us prior to our telephonic meet and confer.

3. **This question consists of several subparts. For convenience, we have broken them out below.**

   a. **For any putatively privileged Account Opening Records in its possession, custody, or control does Bank Audi intend to produce a privilege log, and if so, when does Bank Audi anticipate doing so?**

First, Bank Audi confirms that it will comply with its obligation to furnish a privilege log, as set forth in Federal Rule of Civil Procedure Rule 26 and Local Rule of Civil Procedure Rule 26.2, "where a claim of privilege is asserted in objecting to any means of discovery or disclosure." As to foreign legal restrictions of the type at issue here, such as Lebanese bank secrecy, Fed. R. Civ. P. 26 and Local Rule of Civil Procedure 26.2 do not contemplate the creation of a privilege log. In any event, Plaintiffs have sufficient information to contest Bank Audi's objections based on Lebanese law. If Plaintiffs believe that they need additional information to oppose Bank Audi's objections, Bank Audi will meet and confer on the information needed and how Bank Audi can provide it.

Ari Ungar
April 22, 2022
Page 3

      **b. Please set forth whether Bank Audi has sought a waiver from any of the customers it has identified, and if it has, please state the number of requests issued and the status of those requests.**

It is premature for Bank Audi to seek waivers for several reasons, including the following. First, the parties have not yet agreed to, and the court has not yet entered, a protective order, and so it is not possible to disclose to any persons from whom a waiver is sought how the document subject to disclosure would be utilized and protected from misuse. Second, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.[1]

Within 60 days of the entry of an appropriate protective order and the completion of the parties' meet and confer Bank Audi will begin to seek waivers, insofar as practicable, from customers not subject to Bank Audi's objections on scope.

      **c. Please set forth what "reasonable search" you conducted, including providing us with (1) the search methods you used (for example, keywords, Boolean search terms or Technology Assisted Review software); (2) the list of keywords or Boolean search terms you used; (3) the Technology Assisted Review software you used; (4) the database query terms you used; and (5) the core and/or legacy banking systems, communication servers (for example, electronic mail and financial messaging), file servers and back-ups you searched.**

It is premature to conduct searches because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Notwithstanding that this request is premature, Bank Audi states that with respect to requests that are not subject to Bank Audi's objections as to scope, Bank Audi has searched its core banking systems using the terms provided by Plaintiffs in their Requests for Production.

---

[1] As used herein, "objections as to scope" refers to all objections in Bank Audi's Responses and Objections to Plaintiffs Request for Production of Documents other than those related to Lebanese bank secrecy and other prohibitions, privileges and protections; and "scope of discovery" refers to discovery appropriate in light of those objections as determined by agreement of the parties and/or order of the court.

Ari Ungar
April 22, 2022
Page 4

      d. **Is it Bank Audi's contention that under Fed. R. Civ. P. 26 it is obligated to search only for the names of individuals or entities that have been identified as Bank Audi customers in the Second Amended Complaint? If not, please set forth the scope of Bank Audi's search parameters.**

The parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery. Once that issue is resolved, Bank Audi's obligations concerning its search obligations will be clearer. It is Bank Audi's contention that, subject to clarification by agreement of the parties or the Court, only the names of individuals or entities that have been identified as Bank Audi customers are potentially subject to discovery.

At the forthcoming meet and confer, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the complaint in fact are or were so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which Hamas' attacks were foreseeable.

4. **Please set forth in detail the nature of the burden involved in searching for the records requested.**

Under Federal Rule of Civil Procedure 26, discovery sought must be proportional to the needs of the case. Plaintiffs' Requests for Production contain lists of over 900 names, not counting alternative spellings, including approximately 130 names that are found nowhere the Second Amended Complaint, and including only 39 that are alleged to be customers of Bank Audi. Prior to our telephonic meet and confer, please explain the basis for your position that any names other than the 39 persons or entities alleged to be Bank Audi customers are relevant to this matter, including explaining from what source you obtained each of the names listed and your basis, if any, for believing that those names have conducted transactions involving Bank Audi.

Without prejudice to Bank Audi's right to expand upon its answer, for illustrative purposes, below is a high level overview of the burden associated with certain of the documents that Plaintiffs have requested.

- **Customer File (Static Customer Data).** Bank Audi's customer files typically contain certain static customer records (e.g., account opening applications and agreements, power of attorney documents, certain Know-Your-Customer documents, and customer identification). Customer files for former customers typically are available only in hard copy, and are such files are not consistently centrally organized (that is, such files frequently are maintained at branches throughout Lebanon, and in some instances, may be stored in one or more warehouses), and are not consistently centrally indexed, necessitating a manual search at numerous locations and requiring that documents contained in such files be manually identified and scanned. Customer files for current customers may be

Ari Ungar
April 22, 2022
Page 5

- maintained in the same manner as described above, although it is not uncommon for the customer files of current customers to have been scanned and saved electronically; in those instances, each scanned document within the customer file would have to be manually retrieved on a document-by-document basis.

- **Daily Jacket (Transactional Records).** Most transactional records affiliated with a particular account (e.g., credit and debt advice, customer instructions, bank checks, personal checks, payment orders) are scanned but not electronically searchable, that are organized by the Branch where the transaction occurred, and further organized by transaction date. Daily jackets are not indexed or organized by customer, therefore, to find—for example—a check for a particular account, it would be necessary to identify the date on which the check was written and the relevant branch, and then review all of the transactions for that particular day manually until the check is located. For a single account that was moderately active, it would take a full time employee dedicated exclusively to task at least several weeks to obtain all transactional records from the daily jacket.

- **Emails.** Email archiving occurs on an *ad hoc* basis depending largely on the changes in job position and responsibilities of the relevant custodian, and the difficulty of obtaining such emails will depend on the particular custodians at issue and the number of custodians.

5. **For Requests Nos. 1-9, where Bank Audi states that it "will produce" records subject to various objections, please state when it anticipates commencing production of responsive records, if any.**

Subject to its objections including as to scope, and to the extent permitted under Lebanese law, Bank Audi will begin a rolling production of documents no later than 90 days after the parties reach an agreement and/or the court has resolved any dispute concerning Bank's Audi's objections as to the scope of Plaintiffs Request for Production. Bank Audi notes that, given the nature of Plaintiffs' request for production that focus on seeking customer-related information, and given the strictures of Lebanese law, it is possible that there will be few, if any, documents that can be produced before Bank Audi's objections pursuant to Lebanese law are resolved.

6. **Please identify:**

    a. **Bank Audi's "active systems" and its systems "that are no longer part of normal business operations," and the specific burdens and expenses associated with retrieval of the non-active sources.**

Bank Audi has many active systems ("systems of record") and a complex systems architecture. Its current core banking system is Oracle FLEXCUBE Universal Banking System (**"FCUBS"**). At this time, Bank Audi believes that there are no responsive documents on decommissioned systems that would be unduly burdensome for it to obtain, but reserves its rights

Ari Ungar
April 22, 2022
Page 6

to object on that basis if Plaintiffs seek, or clarify their document requests to indicate that they are seeking, documents available only on such systems.

> **b. The data sources Bank Audi maintains in hard copy form, including those that are or are not indexed, and the specific burdens and expenses associated with retrieval of hard copy and non-indexed sources.**

Please see the illustrative answer provided to question 4, above.

> **c. The dates ranges and types of data stored on these systems and other factors that make data on the non-active systems "likely … duplicative of ESI available from other more readily accessible sources."**

Please see the response to question 6a, above.

> **d. Where "documents reasonably would be expected to be found" in Bank Audi's systems.**

Documents that Bank Audi maintains on its systems of record would reasonably be expected to be found on those systems. For example, account statements can be obtained from Bank Audi's systems of record. Other documents can reasonably be expected to be found, for example, in the Bank Audi's customer files and daily jacket, as set forth in response to question 6 above.

> **7. Please confirm that Bank Audi is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications from the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1. Please also confirm that Bank Audi is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications to the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1.**

The applicability of Lebanese bank secrecy depends on the content of the communication or document at issue, not the location of the communication or document. The question above does not specify whether the communication at issue relates to a bank customer, and therefore, it is not possible to determine whether the communication would be governed by Lebanese bank secrecy or not, regardless of its location.

> **8. Please confirm that Bank Audi intends to search for all the aliases (and alternative spellings) provided and the Arabic spellings where provided. Please provide the languages in which data are stored in each of your relevant systems (e.g., English, Arabic, French) and the technical methods and software Bank Audi used for searching its non-English language records.**

Ari Ungar
April 22, 2022
Page 7

Bank Audi confirms that, subject to its objections as to scope, it intends to search for all the aliases (and alternative spellings) provided by Plaintiffs and the Arabic spellings where provided by Plaintiffs.

Bank Audi's FLEXCUBE system operates exclusively in English. Original Bank Audi documents are generally in English or Arabic. Emails typically will be in English, Arabic, or French. It is premature to specify technical methods and software for use in searching because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery. It is also unnecessary, because Bank Audi has the technological capacity to search its FLEXCUBE system by the English names that Plaintiffs supplied in Exhibit 1 and Exhibit 2 to the Requests for Production and, subject to its objections, has done so.

**9. Is it Bank Audi's contention that it will not search for joint accounts or beneficial accounts?**

Subject to its objections as to scope, Bank Audi will search (and in fact has searched) for any accounts, including but not limited to joint accounts, as to which an alleged customer of Bank Audi is a named accountholder, a signatory, or holds a power of attorney.

Although you have defined "beneficial owner," you have not defined "beneficial account." Please define "beneficial account."

**10. Please confirm that Bank Audi will treat records relating to the same transaction but involving different types of data, structured data, and/or metadata as nonduplicative.**

Subject to its objections as to scope and burden, Bank Audi confirms that if it produces a document that includes metadata, Bank Audi will produce the metadata. If two or more documents contain the same data, and differ only as to format or formatting, Bank Audi will produce the information only once. Bank Audi will meet and confer concerning the most appropriate format in which to produce a single instance of duplicative information.

**11. Please confirm that Bank Audi does not object to creating documents such as "a custom-created query or report" to search its databases, as the Sedona Principles explains is often required. 15 SEDONA CONF. J. 171, 181 (2014).**

First, it is premature to discuss searches of databases because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Second, the Sedona Principles provide in relevant part: "Other than situations where a large portion of a given database is responsive, it may be best practice to collect that responsive data by saving a copy of a subset of the database information to a separate location, such as a specifically-designed table, a separate database, or a text delimited file by means of a query or

Ari Ungar
April 22, 2022
Page 8

report. In some cases, a pre-existing ('canned') query or report may exist that can be used for this purpose. In other cases, a custom-created query or report will need to be used." The approach this question takes is misguided because the Sedona Principles are not meant to be applied in the abstract, and because the Sedona Principles encourage a flexible approach, rather than preconceived notions that certain approaches are necessarily superior.

Please confirm that, to the extent any databases are to be searched once scope objections are resolved, Plaintiffs do not object to discussing *all* of the relevant best practices identified in the Sedona Principles and reaching agreement on the approach that is most appropriate to database at issue.

**12. Please define what qualifies an Account Record, Transactional Record or Compliance Record as "historical," which of these records Bank Audi objects to producing, and whether it will produce them notwithstanding its objection.**

Please see our illustrative answer to question 4 above.

**13. Please confirm that Bank Audi has located records responsive to these requests but is withholding them. Please also confirm that Bank Audi will produce a log that describes the nature of the records not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable us to assess the claim.**

First, this question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery. With regard to requests not subject to Bank Audi's objections as to scope, Bank Audi confirms that it has located responsive documents that it is withholding on grounds of Lebanese bank secrecy.

Second, please see our answer to question 3.a.

**14. Please confirm whether Bank Audi is prepared to produce some Account Opening Records but not others and which types it will produce and which it will withhold. Please also clarify whether Bank Audi has already located Account Opening Records of the type it is prepared to produce.**

To begin, Bank Audi objects to producing Account Opening Records that would be unduly burdensome to obtain or which cannot be obtained with reasonable efforts, including, for example and without limitation, company by-laws, audited accounts, and annual reports that are not generally maintained in the Bank's Customer File.

The second question above is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved

Ari Ungar
April 22, 2022
Page 9

the disputes, if any, between the parties as to the appropriate scope of discovery. Bank Audi has located account opening records of the type it would be prepared to produce, if it were able to so in compliance with Lebanese law.

**15. Please identify which individuals and entities Bank Audi will not search for on the basis of this objection [that there is insufficient information to obtain a match].**

This question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Prior to our telephonic meet and confer, please explain why you cannot provide more detail concerning *all* of the names you have requested that Bank Audi search. To the extent you maintain that you cannot supply additional information, please explain how you have concluded that the names (especially certain common Arabic names, e.g., Ahmad Saad [no surname provided by Plaintiffs]; Adel Mansour, Ali Hussein Harb), are relevant without knowing more details about them.

**16. Please clarify whether Bank Audi is: limiting its searches to that precise English spelling or is including other common transliterations; including its name in Arabic; and including its subordinate parts (such as its electoral wing, the Loyalty to the Resistance Bloc).**

Bank Audi will search the precise English spelling of all transliterations in English and Arabic provided to Bank Audi by the Plaintiffs, but it will not search for transliterations that were not provided by Plaintiffs. Bank Audi will search for the precise names of entities provided by Plaintiffs, including their incorporation status (SAL, SARL, LLC, etc.). Bank Audi will not search for the names of subordinate or affiliate entities that are not provided by Plaintiffs. Prior to our telephonic meet and confer, please specify whether Plaintiffs intent to supplement their requests with additional English spellings, transliterations, incorporation status information, or the like, and if so, when Plaintiffs intend to do that. Without waiving its right to object, Bank Audi states that it is willing to consider such supplementation by Plaintiffs to extent it is reasonable.

We look forward to your responses, and to speaking further.

Sincerely,


**Mayer Brown LLP**

Mayer Brown LLP

Ari Ungar
April 22, 2022
Page 10

By:  _____
　　　　　　　Alex C. Lakatos