# Exhibit P

# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
F: +1 212 262 1910

mayerbrown.com

**Mark G. Hanchet**
T: +1 212 506 2695
F: +1 212 506 5695
mhanchet@mayerbrown.com

April 22, 2022

VIA E-MAIL

Ari Ungar
Osen LLC
190 Moore Street
Suite 272
Hackensack, NJ 07601

Re: *Bartlett et al. v. Société Générale de Banque au Liban S.A.L. et al., 19-cv-0007 (E.D.N.Y.) – Defendant Banque Libano-Française's Responses and Objections to Plaintiffs' First Request for the Production of Documents*

Dear Mr. Ungar:

    On behalf of Defendant Banque Libano-Française ("BLF"), we write to respond to your March 31, 2022 letter setting forth certain "questions and requests for clarifications" concerning BLF's Responses and Objections to Plaintiffs' First Request for the Production of Documents ("Requests").

    As an initial matter, we note that many of your questions presume that BLF has gathered and reviewed all of the documents potentially responsive to the Requests. Given Plaintiffs' complete failure to tailor the Requests to the facts alleged against each defendant in this case, that assumption is unwarranted and unreasonable. No effort has been made by Plaintiffs to tailor the Requests to the approximate 30 individuals and entities alleged to be customers of BLF in the Second Amended Complaint (the "Complaint") (ECF No. 189). Exhibit 1 to the Requests seeks documents for a total of 673 individuals; Exhibit 2 seeks documents for a total of 283 individuals and entities. It would be unduly burdensome to provide the detailed information sought in your letter for documents regarding a very large multiple of the individuals and entities that are alleged to be customers of BLF in the Complaint. In order to engage in any further discussions on the burdens involved in searching for documents related to individuals and entities that are not alleged to be customers of BLF, Plaintiffs should first identify the factual basis for alleging that BLF provided any financial services to that individual or entity. In addition, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were BLF customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

    Subject to the foregoing, we respond below to each of the points in your March 31 letter.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Ari Ungar
April 22, 2022
Page 2

1. **Please provide us with a copy of Article 579 of the Lebanese Criminal Code as well as any cases or other materials you may rely upon in asserting your bank secrecy objections, along with English translations.**

    In accordance with the court's order that Defendants "provide the relevant citations and, to the extent available, the Lebanese authority on which [Defendants] plan to rely in support of any [Lebanese bank secrecy] objections," DE 264 at 53-54, BLF states—without waiving its right to rely on additional authority, including but not limited to any authority identified by any expert witness it retains—that the citations on which it currently intends to rely for its Lebanese bank secrecy objections include: (1) the Lebanese Law of September 3, 1956 on Banking Secrecy; (2) Articles 36, 44, 127, 148, 151, 155, 190 & 203 of the Lebanese Code of Money and Credit of August 1, 1963; (3) Articles 6 & 8 of Law No. 44 of November 24, 2015 on Fighting Money Laundering and Terrorist Financing; (4) Article 55 of Law No. 161 of August 17, 2011 on Financial Markets; (5) Article 12.6 of Basic Circular 83 of the Banque du Liban of May 18, 2001; and (6) Article 579 of the Lebanese Criminal Code. Unofficial English translations of laws referenced in the first four citations above are available online at Banque du Liban, Laws and Circulars, at https://www.bdl.gov.lb/laws/index/5/32/Laws.html, as is an unofficial English translation of the circular referenced in the fifth citation above, at https://www.bdl.gov.lb/circulars/index/5/33/0.

2. **Please provide us with your definition of the scope of "the subject matter . . . of records [] relevant to the claims or defenses in this Litigation," as referenced in your Responses to Requests Nos. 1-3 and 5-9.**

    BLF defines the "scope of the subject matter . . . relevant to the claims or defenses in this Litigation" in accordance with Federal Rule of Civil Procedure 26, which provides, among other limitations, that the scope of discovery is limited to "matter that is relevant to any party's claim or defense."

    If Plaintiffs have a different view of the appropriate definition of the "scope of the subject matter of records relevant to this Litigation," please provide it to us prior to our telephonic meet and confer.

3. **This question consists of several subparts. For convenience, we have broken them out below.**

    a. **For any putatively privileged Account Opening Records in its possession, custody, or control does BLF intend to produce a privilege log, and if so, when does BLF anticipate doing so?**

    First, BLF states that a privilege log is not appropriate in this case because Federal Rule of Civil Procedure 26 and Local Rule of Civil Procedure 26.2 do not contemplate the creation of a privilege log in response to foreign legal restrictions of the type at issue here. In any event,

Ari Ungar
April 22, 2022
Page 3

Plaintiffs have sufficient information to contest BLF's objections based on Lebanese law. If Plaintiffs believe that they need additional information to oppose BLF's objections, BLF will meet and confer on the issue.

>   **b. Please set forth whether BLF has sought a waiver from any of the customers it has identified, and if it has, please state the number of requests issued and the status of those requests.**

It is premature for BLF to seek waivers for several reasons, including the following. First, the parties have not yet agreed to, and the court has not yet entered, a protective order, and so it is not possible to disclose to any persons from whom a waiver is sought how the document subject to disclosure would be utilized and protected from misuse. Second, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

>   **c. Please set forth what "reasonable search" you conducted, including providing us with (1) the search methods you used (for example, keywords, Boolean search terms or Technology Assisted Review software); (2) the list of keywords or Boolean search terms you used; (3) the Technology Assisted Review software you used; (4) the database query terms you used; and (5) the core and/or legacy banking systems, communication servers (for example, electronic mail and financial messaging), file servers and back-ups you searched.**

It is premature to conduct searches because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

>   **d. Is it BLF's contention that under Fed. R. Civ. P. 26 it is obligated to search only for the names of individuals or entities that have been identified as BLF customers in the Second Amended Complaint? If not, please set forth the scope of BLF's search parameters.**

The parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery. Once that issue is resolved, BLF's obligations concerning its search obligations will be clearer. It is BLF's contention that *at most*, only the names of individuals or entities that have been identified as BLF customers are potentially subject to discovery.

At the forthcoming meet and confer, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were BLF customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities

Ari Ungar
April 22, 2022
Page 4

that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

4. **Please set forth in detail the nature of the burden involved in searching for the records requested.**

Under Federal Rule of Civil Procedure 26, discovery sought must be proportional to the needs of the case. Plaintiffs' Requests for Production contain lists that include approximately 956 names, not counting alternative spellings, including approximately 130 names that are found nowhere in the Complaint, and include only approximately 30 that are alleged to be customers of BLF. Prior to our telephonic meet and confer, please explain the basis for your position that any names other than the approximately 30 persons or entities alleged to be BLF customers are relevant to this matter, including explaining from what source you obtained each of the names listed and your basis, if any, for believing that those names have conducted transactions involving BLF. In addition, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were BLF customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

5. **For Requests Nos. 1-3, where BLF states that it "will produce" records subject to various objections, please state when it anticipates commencing production of responsive records, if any.**

Subject to its objections and to the extent permitted under Lebanese law, BLF will begin a rolling production of documents no later than 90 days after the parties reach an agreement and/or the court has resolved any dispute concerning BLF's objections, including as to the scope of Plaintiffs' Requests for Production.

6. **Please set forth in detail the nature of the burden involved in searching for the records requested [in Requests 2-6 and 9]:**

Under Federal Rule of Civil Procedure 26, discovery sought must be proportional to the needs of the case. Plaintiffs' Requests for Production contain lists that include approximately 956 names, not counting alternative spellings, including approximately 130 names that are found nowhere in the Complaint, and include only approximately 30 that are alleged to be customers of BLF. Prior to our telephonic meet and confer, please explain the basis for your position that any names other than the approximately 30 persons or entities alleged to be BLF customers are relevant to this matter, including explaining from what source you obtained each of the names listed and your basis, if any, for believing that those names have conducted transactions

Ari Ungar
April 22, 2022
Page 5

involving BLF. In addition, Plaintiffs should be prepared to explain the basis for their contention that various individuals or entities identified in the Complaint in fact are or were BLF customers. Moreover, Plaintiffs should be prepared to explain the basis for saying that each of the alleged customers was so closely intertwined with Hezbollah's violent terrorist activities that one can reasonably infer that the bank was generally aware while it was providing banking services to that customer that it was playing a role in unlawful activities from which the attacks were foreseeable.

7. **Please confirm that BLF is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications from the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1. Please also confirm that BLF is asserting that Lebanese bank secrecy laws prohibit it from disclosing communications to the U.S. concerning Hezbollah or Agents of Hezbollah and/or the persons and entities listed in Exhibit 1.**

The applicability of Lebanese bank secrecy depends on the content of the communication or document at issue, not the location of the communication or document. The question above does not specify whether the communication at issue relates to a bank customer, and therefore, it is not possible to determine whether the communication would be governed by Lebanese bank secrecy or not, regardless of its location.

8. **Please confirm that BLF intends to search for all the aliases (and alternative spellings) provided and the Arabic spellings where provided. Please provide the languages in which data are stored in each of your relevant systems (e.g., English, Arabic, French) and the technical methods and software BLF used for searching its non-English language records.**

BLF confirms that, subject to its objections as to scope, it intends to use reasonable efforts to search for all the aliases (and alternative spellings) provided by Plaintiffs and the Arabic spellings where provided by Plaintiffs.

Most documents maintained by BLF are in French, English or Arabic. It is premature to specify technical methods and software for use in searching because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

9. **Is it BLF's contention that it will not search for joint accounts or beneficial accounts?**

Subject to its objections as to scope, BLF will conduct a reasonable search for any accounts, including but not limited to joint accounts, as to which an alleged customer of BLF is a named accountholder. Please define "beneficial account."

Ari Ungar
April 22, 2022
Page 6

**10. Please confirm that BLF will treat records relating to the same transaction but involving different types of data, structured data, and/or metadata as nonduplicative.**

Subject to its objections as to scope and burden, BLF confirms that if it produces a document that includes metadata, BLF will produce the metadata. If two or more documents contain the same data, and differ only as to format or formatting, BLF will produce the information only once. BLF will meet and confer concerning the most appropriate format in which to produce a single instance of duplicative information.

**11. Please confirm that BLF does not object to creating documents such as "a custom-created query or report" to search its databases, as the Sedona Principles explains is often required. 15 SEDONA CONF. J. 171, 181 (2014).**

First, it is premature to discuss searches of databases because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Second, the Sedona Principles provide in relevant part: "Other than situations where a large portion of a given database is responsive, it may be best practice to collect that responsive data by saving a copy of a subset of the database information to a separate location, such as a specifically-designed table, a separate database, or a text delimited file by means of a query or report. In some cases, a pre-existing ('canned') query or report may exist that can be used for this purpose. In other cases, a custom-created query or report will need to be used." The approach this question takes is misguided because the Sedona Principles are not meant to be applied in the abstract, and because the Sedona Principles encourage a flexible approach, rather than preconceived notions that certain approaches are necessarily superior.

Please confirm that, to the extent any databases are to be searched once scope objections are resolved, Plaintiffs do not object to discussing *all* of the relevant best practices identified in the Sedona Principles and reaching agreement on the approach that is most appropriate to the database at issue.

**12. Please confirm whether BLF has located records responsive to these requests but is withholding them. Please also confirm that BLF will produce a log that describes the nature of the records not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable us to assess the claim.**

This question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

Ari Ungar
April 22, 2022
Page 7

**13. Please identify which individuals and entities BLF will not search for on the basis of this objection [that there is insufficient information to obtain a match].**

    This question is premature because, among other things, the parties have not yet reached an agreement on the appropriate scope of discovery and the court has not yet resolved the disputes, if any, between the parties as to the appropriate scope of discovery.

    Prior to our telephonic meet and confer, please explain why you cannot provide more detail concerning *all* of the names you have requested that BLF search. To the extent you maintain that you cannot supply additional information, please explain how you have concluded that the names are relevant without knowing more details about them.

    We look forward to your responses, and to speaking further.

Sincerely,

*/s/ Mark G. Hanchet*

Mark G. Hanchet

747392632