1

```
1              UNITED STATES DISTRICT COURT

2          EASTERN DISTRICT OF NEW YORK (BROOKLYN)
```

| | |
|---|---|
| ROBERT BARTLETT, et al,<br><br>                 Plaintiffs,<br><br> v.<br><br> SOCIETE GENERALE DE BANQUE AU<br> LIBAN SAL, et al,<br><br>                 Defendants. | Case No. 1:19-cv-00007-CBA-TAM<br><br> Brooklyn, New York<br> May 10, 2022<br> 3:36 p.m. |

```
       TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE HEARING
              BEFORE THE HONORABLE TARYN A. MERKL
                 UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For the Plaintiffs:          Gary Osen, Esq.
                             Aaron Schlanger, Esq.
                             Ari Ungar, Esq.
                             Dina Gielchinsky, Esq.
                             Michael Radine, Esq.
                             Osen, LLC
                             190 Moore Street
                             Suite 272
                             Hackensack, NJ 07601

For the Defendants:          Mitchell R. Berger, Esq.
(Middle East Africa Bank     Gassan Baloul, Esq.
SAL and Lebanon and Gulf     Joseph Alonzo, Esq.
Bank SAL)                    Squire Patton Boggs (US), LLP
                             1211 Avenue of the Americas
                             Ste 26th Floor
                             New York, NY 10036

For the Defendant:           Mitchell R. Berger, Esq.
(Fenicia Bank)               Gassan Baloul, Esq.
                             (see above for address)

For the Defendant:           Alex C. Lakatos, Esq.
(Bank Audi SAL)              Marc R. Cohen, Esq.
                             Mayer Brown LLP
                             1999 K Street, NW
                             Washington, DC 20037
```

| | | |
|---|---|---|
| 1 | For the Defendant: | Linda Goldstein, Esq. |
| | (Fransabank SAL and BLOM | Margaret Mortimer, Esq. |
| 2 | Bank SAL) | Dechert, LLP |
| | | 1095 Avenue of the Americas |
| 3 | | New York, NY 10036 |
| 4 | For the Defendant: | Michael Sullivan, Esq. |
| | (Societe Generale de | Brian Leske, Esq. |
| 5 | Banque au Liban SAL) | Ashcroft Law Firm, LLC |
| | | 200 State Street 7 |
| 6 | | Boston, MA 02109 |
| 7 | For the Defendant: | Henry S. Weisburg, Esq. |
| | (Bank of Beirut SAL) | Shearman & Sterling, LLP |
| 8 | | 599 Lexington Avenue |
| | | New York, NY 10022 |
| 9 | | |
| | For the Defendant: | Robert Hamburg, Esq.Esq. |
| 10 | (Banque Libano-Francaise | Mark G. Hanchet, Esq. |
| | SAL) | Victoria Whitney, Esq. |
| 11 | | Mayer Brown LLP |
| | | 1221 Avenue of the Americas |
| 12 | | New York, NY 10020 |
| 13 | For the Defendants: | Jonathan Siegfried, Esq. |
| | (Bank of Beirut and | Erin Collins, Esq. |
| 14 | the Arab Countries SAL | Jeffrey Rotenberg, Esq. |
| | and Byblos Bank SAL) | DLA Piper LLP (US) |
| 15 | | 1251 Avenue Of The Americas |
| | | New York, NY 10020 |
| 16 | | |
| | Clerks: | Kaity Chan, Deepa Devanathan |
| 17 | | |
| | Court Recorder: | Electronic Sound Recording |
| 18 | | |
| | Transcription Service: | Chris Hwang |
| 19 | | Abba Reporting |
| | | PO Box 223282 |
| 20 | | Chantilly, Virginia  20153 |
| | | (518) 302-6772 |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | Proceedings recorded by electronic sound recording; | |
| | transcript produced by transcription service. | |
| 25 | | |

## INDEX

Page

Court's Ruling                                44

1          (Call to order at 3:36 p.m.)

2               THE COURT:  Good afternoon.

3               Ms. Chan, could you call the case, please?

4               THE CLERK:  This is civil cause for a status

5    conference, docket 19-CV-7, Bartlett, et al v. Societe Generale

6    de Banque au Liban SAL, et al.

7               Before asking the parties to state their appearance,

8    I would like to note the following.

9               Persons granted remote access to proceedings are

10   reminded of the general prohibition against photographing,

11   recording, and rebroadcasting of court proceedings.

12               Violation of these prohibitions may result in

13   sanctions, including removal of court-issued media credentials,

14   restricted entry to future hearings, denial of entry to future

15   hearings, or any other sanctions deemed necessary by the Court.

16               Will the parties please state their appearances for

17   the record, starting with the Plaintiffs?

18               MR. OSEN:  Good afternoon, Your Honor, it's Gary Osen

19   from Osen, LLC on behalf of the Plaintiffs.  I'm joined by my

20   colleagues, Ari Ungar, Michael Radine, Dina Gielchinsky, and

21   Aaron Schlanger.  And I'll be speaking today for the

22   Plaintiffs.  Thank you.

23               THE COURT:  Good afternoon.

24               And on behalf of Societe Generale?

25               MR. SULLIVAN:  Yes, good afternoon, Your Honor.

1    Michael Sullivan and Brian Leske of the Ashcroft firm on behalf

2    of Societe Generale Bank of Lebanon.  And Mr. Leske will be

3    speaking on behalf of SGBL, Your Honor.

4              THE COURT:  Okay.  And for Fransabank?  If somebody

5    is speaking, they are on mute.  Do we have any for Fransabank?

6              Okay, Middle East Africa Bank?

7              MR. BERGER:  Good afternoon, Your Honor, it's

8    Mitchell Berger from Squire, Patton, Boggs joined by my

9    colleague Gassan Baloul and Joseph Alonzo.  And to save time in

10   calling roll, we also appear for Fenicia Bank and Lebanon and

11   Gulf Bank.

12             THE COURT:  Okay, great, thank you.

13             And I believe next after that is BLOM Bank?  Anybody?

14   Same counsel as Fransabank, so --

15             MS. GOLDSTEIN:  Your Honor, this is Linda Goldstein.

16   Do you hear me now?

17             THE COURT:  I can, thank you.

18             MS. GOLDSTEIN:  Okay, my apologies.  There's a

19   problem with my microphone.  Linda Goldstein from Dechert for

20   both BLOM Bank and Fransabank.  And I should be joined on the

21   line by my colleague Margaret Mortimer.

22             THE COURT:  Okay, thank you.  I was surprised, Ms.

23   Goldstein, since you were one of our primary speakers at some

24   of the other conferences, but I did not hear you, so I'm glad

25   that you're here.  All right.

1          MS. GOLDSTEIN:  Yeah, (indiscernible) here for the

2     roll.

3          THE COURT:  Okay, so Byblos Bank?

4          MR. SIEGFRIED:  Good afternoon, Your Honor, this is

5     Jonathan Siegfried from DLA Piper.  I'm joined by my colleagues

6     Jeff Rotenberg and Erin B. Collins.

7          THE COURT:  Okay.

8          MR. SIEGFRIED:  And that is also for BBAC.

9          THE COURT:  All right.  So Bank Audi SAL?

10         MR. LAKATOS:  Good afternoon, Your Honor.  This is

11    Alex Lakatos for Mayer Brown.  I'm also joined here by my

12    colleague Marc Cohen, also with Mayer Brown.

13         THE COURT:  Okay.  Bank of Beirut?

14         MR. WEISBERG:  Yes, this is Henry Weisburg at

15    Shearman & Sterling for Bank of Beirut.

16         THE COURT:  Good afternoon, Mr. Weisburg.  Is anybody

17    with you, sir?

18         MR. WEISBERG:  No, I'm -- unfortunately, I'm by

19    myself.

20         THE COURT:  Okay.  Lebanon and Gulf Bank, you

21    are -- is it you, Mr. Siegfried?

22         MR. BERGER:  Lebanon and Gulf Bank, Your Honor, this

23    is Mitchell Berger.  We appear for -- from Squire, Patton,

24    Boggs.  We appear for Lebanon and Gulf Bank as well as Fenicia

25    Bank and MEA Bank, formerly known as Middle East and Africa

1   Bank.

2          THE COURT:  Got it.  All right, thank you.

3          And Bank Libano-Francaise?

4          MR. HAMBURG:  Good afternoon, Your Honor, it's Rob

5   Hamburg of Mayer Brown.  And I'm joined on the line by my

6   colleague Mark Hanchet and Victoria Whitney.

7          THE COURT:  Okay.  And Jammal Trust Bank?  All right.

8          Right, so is there anybody who has not put their

9   appearance on the record who would like to?  I'm going to

10  repeat that.  If anybody is trying to put their appearance on

11  the record, they are on mute.

12          All right, so it looks like everybody has entered

13  their appearance.  So thank you for that.

14          So we're here today following a couple of filings

15  pertaining to the current effort to engage in some limited

16  discovery.

17          We, of course, had a status conference back in

18  December, where we discussed going forward with some

19  third-party subpoenas and set a schedule.  The parties

20  apparently are not in agreement as to next steps despite that

21  schedule.

22          So I would like to turn it over to Mr. Osen to get us

23  an update as to where we are and what is sort of going on with

24  regard to this current iteration of the discovery issue.

25          MR. OSEN:  Good afternoon, again, Your Honor.  This

1    is Gary Osen for the Plaintiffs.  Let me start with the first

2    issue, which was the third-party subpoenas.

3              And there -- all of those subpoenas that Your Honor

4    directed were served on the third-party banks and they have

5    begun the process at least of searching for and reviewing

6    responsive records.

7              None of the four have yet produced any documents

8    because of the fact that the protective order has not been

9    entered in this case yet.

10             But I understand that all four have some responsive

11   documents in varying degrees of production if you will.

12             So, you know, as far as the protective order itself

13   is concerned, we've had a longstanding exchange about that

14   going back to July of last year.

15             And we're just now awaiting the Defendants' response

16   to our response of May 4th.  And there are only a couple of

17   outstanding issues, so we anticipate getting that resolved one

18   way or the other hopefully by the end of this month.

19             Our hope is that it'll be done by consent.  If not,

20   we'll submit competing orders before the end of the month, but

21   I think it's fair to say the issues that are still outstanding

22   are very narrow.

23             THE COURT:  Okay, and it's your hope that you'd be

24   able to file the proposed protective order by the end of the

25   month?

1    MR. OSEN:  Yes, I think from our standpoint, the

2    issues are down to the wire.  And so, if we can't resolve it,

3    we'll know that probably within a week.

4          And hopefully we can resolve it and jointly submit,

5    but either way, we should have something for Your Honor in the

6    month of May.

7          THE COURT:  Okay, so thank you -- I think it does

8    make sense to take these things just one at a time.

9          Is there any Defendant who would like to be heard

10   with regard to the protective order?  Does anybody object to

11   the idea that I would ask the parties to submit the proposed

12   protective order by the end of the month, May 31st?

13         MR. BERGER:  Good afternoon, Your Honor, this is

14   Mitchell Berger from Squire, Patton, Boggs responding to the

15   first part about whether I want to be heard as opposed to

16   objecting.

17         Just to provide a little more context on this, which

18   is we are certainly going to try to resolve the remaining

19   issues, but they're linked to some extent to the bank secrecy

20   issue that we'll be talking about before.

21         But as Mr. Osen said, I think at worst, what will

22   happen is we will tender to the Court one or two issues that

23   will require resolution.  It can certainly be done this month.

24         THE COURT:  Okay, thank you for that.  Anybody else

25   on the protective order question?  Going once, going twice.

1    All right, I don't hear any other voices on the protective

2    order.

3              So I will request that the parties continue to meet

4    and confer on the protective order and attempt to resolve any

5    and all disputes as to it and narrow those disputes as much as

6    possible if they cannot be resolved.

7              And I would appreciate if the parties are able to

8    file jointly their proposed protective order by May 31st.  In

9    the alternative, I guess we will get competing versions.  I

10   need to make a determination, but I would ask that they be

11   submitted by May 31st per the parties' request.

12             All right, Mr. Osen, back to you.  Second issue?

13             MR. OSEN:  So the second issue as I understand it is

14   a -- is essentially now a scheduling issue.  Your Honor will

15   recall that back in December, the parties submitted competing

16   proposals for how to proceed with the bank secrecy motion

17   practice.

18             And the Court ultimately adopted the Defendants'

19   schedule, which calls for the parties to call for the

20   Plaintiffs to serve the discovery request, which we did call on

21   the Defendants to, you know, file their objections or I should

22   say serve their objections by I believe March 18th.

23             Then, we were supposed to confer over the next 30

24   days with a schedule for briefing to commence either on a

25   motion to compel and/or protective order on May 2nd.

1      And obviously, as the Court now knows on May 2nd, we

2 did file our Motion to Compel as per the schedule.  And really,

3 the issue comes down to this.

4      The Defendants clearly want effectively a sur-reply

5 because the way it works when we move to compel is that we

6 get -- they oppose and then we reply.  If they had filed a

7 timely motion for protective order, we would have opposed and

8 they would reply.

9      And for whatever reason, they were unable or

10 unwilling to file on May 2nd, hence their last-minute request

11 to modify the schedule on the Friday before the Monday filing

12 date.

13      So the only issue here as I see it is just whether

14 they get a sur-reply.  They've proposed a process by which they

15 would oppose our Motion to Compel on the date which the Court

16 set for June 2nd and then built in sort of a opportunity to

17 cross move for protective order if they decide to do so, thus

18 giving them a sort of reply to the protective order brief on

19 July 14.

20      In my view, Your Honor, that's unnecessary in that

21 they clearly have our views comprehensively on the subject and

22 can just abide by the schedule they have support for and which

23 the Court entered.

24      If the Court is inclined nonetheless to permit them a

25 sur-reply, then I think, you know, doing so makes more sense

1    than having cross-motion practice, which in effect will just

2    add to the Court's workload.

3         So I don't think this is a huge issue, but obviously,

4    we were not very pleased with the way the process unfolded

5    leading up to the briefing schedule.  And I think that's

6    reflected in the exchange of letters.

7         But I don't want to belabor that point.  I think we

8    are where we are, which is that our Motion to Compel is on

9    file.

10         They're obviously in a position and their letter

11   reflects the ability to respond to that by June 2nd.

12         And then, it's just a question of whether the Court

13   wants to in our view reward them for the way this has played

14   out with a sur-reply.

15         But either way, I think whether it's not granted at

16   all as we would prefer or Your Honor does grant it, the best

17   way to do this is to not burden the Court with, you know, now

18   adding cross motions beyond what was contemplated in the

19   schedule.

20         THE COURT:  Okay.  And who -- is anybody taking leave

21   now on behalf of the moving Defendants?

22         MR. BERGER:  Your Honor, it's Mitchell Berger.  I

23   suppose I get that short straw.

24         THE COURT:  All right.  So, Mr. Berger --

25         MR. BERGER:  Yes, Your Honor, so --

1        THE COURT:  -- do you want to respond?

2        MR. BERGER:  Yes, several points.  First of all, we

3   did take to heart what we saw as a very strong admonition in

4   Your Honor's December 13, 2021 order to make every effort in

5   the meet and confer sessions to narrow the disputes before

6   motions either to compel or for protective order were filed.

7        And what is the impetus for our letter to the Court,

8   which proposed an adjustment on the briefing schedule really is

9   the outgrowth of the meet and confer process, which was first

10  we didn't think the meet and confer process had reached a

11  natural conclusion.

12       We thought there was a lot more work we could get

13  done.  And we had proposed a three-week extension to the

14  Plaintiffs, but they said, no, they don't want to wait any

15  longer.  They felt their clients had waited long enough.  They

16  wanted to file it May 2nd.

17       In response to that, we said, well, that doesn't make

18  a lot of sense because we don't really know what issues you're

19  going to be raising because the meet and confer process has not

20  finished.

21       And therefore, it would be more efficient if we would

22  de-link the potential motion for a protective order rather than

23  filing one in a vacuum and file one in response.  They declined

24  to do that, as well as declining an extension.

25       We didn't make up the sort of four-brief process.

1    The same types of bank secrecy and motions to compel in other

2    bank cases in the Eastern District, two cases before Judge Kuo

3    in which at least one of them, Mr. Osen was involved, Judge Kuo

4    has set a four-brief schedule.

5            In that case, Mr. Osen's side gets the last word by

6    way of a sur-reply, but it's hardly a novel thing to have

7    motions where there is a separate motion to compel and a

8    separate motion for protective order.

9            What we're looking to do is to try to be as efficient

10   as possible with the Court's time.  It may be that we will not

11   file a motion for protective order.  We filed our letter before

12   we saw Mr. Osen's motion because we really had no other

13   opportunity to do so.

14           And if I might, this also relates to a point they

15   made in their letter.  We didn't think it was appropriate for a

16   further letter.

17           We thought we would raise it with the Court, which

18   is, look, we have been moving as expeditiously as possible.

19   Each of the banks filed its objections to the Plaintiffs'

20   document request as scheduled on March 18.

21           Each of those objections and responses was followed

22   up by a letter from Plaintiffs' side.  Each bank made a

23   comprehensive effort to try to address those questions.

24           That process simply took longer than anyone would

25   have hoped, which is why we made our initial proposal to extend

1    the meet and confer process for three weeks.

2            But I will say, and I don't want to burden the Court

3    with chapter and verse on this kind of back and forth between

4    Plaintiffs and Defense counsel, but at all times when we were

5    having these discussions, Plaintiffs' counsel accepted our

6    statements that it was going to take a little more time and

7    that we were going to need to take a little more time to

8    respond to the letter.

9            That's why we asked for the extension.  We ultimately

10   agreed to hold an initial meet and confer call on April 28th,

11   which we did.

12           But as I say, we didn't feel like the work was done

13   there, but we certainly feel like we had been moving the

14   process along as much as possible, considering that we're on

15   the receiving side for these requests.  And candidly, we have a

16   lot more work to do than the Plaintiffs do in simply making

17   these requests.

18           THE COURT:  Any other Defendant want to be heard on

19   this question at this time?  Nobody's speaking.  Any other

20   Defendants?

21           Okay, Mr. Osen, back to you.

22           MR. OSEN:  Well, Your Honor, I'm happy to go through

23   the chapter and verse of what occurred if that's of interest to

24   the Court.  Needless to say, I don't agree with most of what

25   Mr. Berger has to say.

1      And I'm happy he raised the issue of our case in

2  front of Magistrate Judge Kuo and our bank because that's

3  exactly the opposite of what has transpired there -- in this

4  case.

5      There, Judge Kuo held a conference much like Your

6  Honor on January 20th of this year.  And both parties to the

7  dispute wanted to move first.  The Defendant wanted to move for

8  a protective order and we wanted to move for compel -- to

9  compel.

10      And the Court said, well, look, essentially what

11  you're fighting over is who gets a sur-reply.  And so, what she

12  did there was have the Defendant move for protective order.  We

13  opposed.  They replied.  And then, just this past week, we

14  filed our -- this past Monday, we filed our sur-reply.

15      What that shows is that when Defense counsel wants a

16  certain schedule and wants to make those kinds of arguments,

17  it's, you know, they're perfectly capable of doing so.

18      Here, the schedule is one the Defendants asked for.

19  We opposed it.  We thought it was overly generous.

20      And our experience in multiple cases involving

21  briefing of bank secrecy is that the Defendants delay, delay,

22  delay.

23      And of course, that suits their interest.  It doesn't

24  our clients' interest.  So we are consistent in seeking to

25  expedite what is admittedly a very slow process.

1     That all being said, we -- obviously, Your Honor

2   issued the schedule that you did in December.  And we've abided

3   by it.

4     And just so we're clear, no Defendant, not one,

5   complied with Your Honor's April 18th meet and confer deadline.

6   Not one sent us a responsive letter before or on that date.  We

7   didn't complain about it.  We didn't raise it with the Court.

8     It's frankly par for the course in these kinds of

9   discussions because unlike normal discovery, where the parties

10  are negotiating over, you know, scope, or search terms, or

11  other things that deal with, you know, what are the most easily

12  accessible records and the like, bank secrecy is a global

13  objection to production.

14    It involves, as Your Honor knows, application of the

15  restatement factors and so forth, which are set forth in our

16  brief.

17    And so, it's at a much sort of higher level of

18  disagreement than sort of the nuts and bolts of traditional

19  discovery, which is why it's amenable to the kind of briefing

20  that we submitted on May 2nd.

21    Beyond that, I mean, I'm happy to go chapter and

22  verse, but I think Your Honor understands the broad strokes of

23  what occurred here.

24    And I'm happy to answer any questions, but I think it

25  really just comes down to, you know, whether or not you grant

1    them a sur-reply on July 14th as they requested.

2          Or as Mr. Berger suggests, changing the schedule.

3    Nothing has changed except the Defendants' delay in responding,

4    but if that's to be rewarded, then of course, you know, we will

5    respond to whatever motions they may file.

6          THE COURT:  Mr. Berger?

7          MR. BERGER:  Yeah, there's quite a bit that I would

8    want to respond to.  First of all, it's a bit of a gotcha to

9    say that, yes, throughout the entire process we kept them

10   advised that it was going to take longer and that they

11   acquiesced and then said that's fine.

12         And then, to write a letter to the Court and then to

13   make remarks to the Court to say, oh, that was terrible.  It

14   was a violation of Court order.  It's an outrage.

15         I mean, we operate on the premise, candidly, that

16   grown-up counsel can figure out issues like this and that they

17   try to figure out most of them by themselves.  And that's what

18   we were trying to do here.

19         There's hardly any defiance of the Court's order.

20   What we were trying to do was have a meaningful meet and confer

21   process, which we frankly have not had, which is why what you

22   have is a Motion to Compel that tells barely half the story.

23         I'm sure Your Honor's had a chance to look at it.  It

24   tells the U.S. interest's side of the story.  Bank secrecy

25   involves telling the Lebanese law side of the story.

1         But let's just skip that for a moment and go to what

2    I think is the important lesson of these other cases against

3    Arab Bank that I mentioned, where there's this four-brief

4    schedule, which is the things that Plaintiffs want right now,

5    which is a ruling from the Court on a motion to compel

6    overruling bank secrecy is so many steps ahead of where we

7    should be as reflected in the cases before, not only Magistrate

8    Judge Kuo, but in the Lindy (phonetic) case because the 2nd

9    Circuit, which is the next step here, Your Honor, respectfully,

10   is that we would -- we need a ruling as the Lindy case out of

11   the 2nd Circuit says, what are the documents requested from us

12   that are sufficiently specific and important to the litigation

13   and not available from other sources?

14        And then, once we have that kind of narrow, which we

15   attempted to do through the meet and confer process, where we

16   said could we stop talking about 688 individuals and entities?

17        Then, we need letters rogatory as were issued in the

18   case before Judge Kuo, as were issued in Lindy to the Lebanese

19   authorities saying now that the Court in the U.S. has narrowed

20   these requests to something appropriate, would you please,

21   Lebanese authorities, authorize the production of these?

22        That's what happened in the Miller and Pam v. Arab

23   Bank cases before Judge Kuo.  That is what happened in the

24   Lindy cases of before Judges Gershon and Kogan and then up to

25   the 2nd Circuit.

1          And what we're trying to do is simply efficiently

2   position these issues for this Court's disposition, which is

3   why we think that can be done more effectively with a

4   opposition and cross-motion for protective order.

5          But if Your Honor wants only three briefs, then

6   candidly, we can do that.  We would just suggest that perhaps

7   we be given more time for them.

8          I know Mr. Osen thinks that we're only playing for

9   time, but as he mentioned in his letter in Lindy, these issues

10   took 10 years.

11          What we're talking about is the blink of an eye of a

12   couple of extra weeks, either additional time for an opposition

13   of a motion to compel or time for a sur-reply on a cross-motion

14   for protective order.

15          THE COURT:  Mr. Berger, you've indicated previously

16   that you're not certain whether there will even be a motion for

17   protective order?  What is the over under on that?

18          MR. BERGER:  Well, I would say, Your Honor, it really

19   is the Court's preference.  Here's the issue.  The issues are

20   the two that I outlined, which is whether the Court would find

21   it more efficient for us to raise the two key Lindy issues,

22   namely scope, specificity, importance, availability for

23   alternative means, and letters rogatory, whether you want us to

24   raise that exclusively in opposition or in a motion for cross-

25   motion for protective order.

1        We do have the burden on foreign law.  That motion

2    turns on Lebanese law.  You can search far and wide in the

3    motion for protective order.  You will see scant reference to

4    what the Lebanese law is.

5        We think it would be useful for us to be able to lay

6    that out, not only affirmatively now that we've seen their

7    motion to compel in a motion for protective order, but also if

8    necessary, in a sur-reply, which is really the second brief,

9    the reply in a support of a motion for protective order, which

10   is long way of saying the over -- the likelihood and the over

11   under is it's likely that we would file such a motion.

12        THE COURT:  Okay, so you said two issues.  You said,

13   one, would be whether the Court would find it more efficient to

14   raise the Lindy issues and letters rogatory issues or to raise

15   it exclusively in opposition.

16        What was the -- what was your -- what were you going

17   to go with number 2?

18        MR. BERGER:  No, no, those are the two issues --

19        THE COURT:  Okay.

20        MR. BERGER:  -- which is the scope issue and the

21   letters rogatory.  The question is whether Your Honor would

22   find that most efficiently framed in one brief from us?

23        We do think Lebanese law is highly important here.

24   And they're likely in their response to raise questions of

25   Lebanese law.

1          We think it would be more efficient if we had the

2    opportunity to close out on that issue on which they will be

3    the first to tell the Court we have the burden of proof.

4          THE COURT:  So, Mr. Osen, you know, I am in no -- I

5    certainly sympathize with your frustration that the original

6    schedule that was proposed, which anticipated these motions

7    being filed sort of simultaneously on May 2nd was not met by

8    the Defendants.  And I am sympathetic to that.

9          Although I don't think, Mr. Berger, that it's really

10   entirely fair to characterize Mr. Osen's remarks in the manner

11   that you did.

12         He was simply stating what he believed to be the

13   historical facts of the dates on which you spoke.  I did not

14   hear any other aspersions.

15         As to the timing of the motion, I am nothing but

16   practical.  I don't particularly care about the orders of the

17   briefs.

18         I don't think that a sur-reply is a magical, final

19   word that's going to carry any greater or less weight than any

20   other arguments.  The arguments that have merit will be the

21   arguments that carry the weight.

22         So, you know, Mr. Osen, as far -- as I understand it,

23   you know, it's certainly frustrating that things did not go

24   according to plan, but is there any significant prejudice to

25   this new proposed schedule?

1          MR. OSEN:  Yes, Your Honor.  If I can digress for

2    just one moment, because Mr. Berger, again, referenced the

3    Miller v. Arab Bank proceeding.

4          In that very case, and the minute order is dated

5    January 20th, 2022, Judge Kuo heard the same arguments from

6    defendant in that case proposing first the motion to limit

7    scope, relevance, and proportionality and then to permit

8    defendant to obtain waivers from its customers, and then

9    proceed with briefing on bank secrecy.

10         The Plaintiffs unsurprisingly argued that it was no

11   reason to bifurcate consideration of those two legal issues.

12         And this is what the Court said, just so that we're

13   clear about it.  The Court agrees with plaintiffs and grants

14   leave to defendant to file a single motion for a protective

15   order on the basis of scope, relevancy, proportionality of the

16   request, and foreign bank secrecy laws.

17         That's essentially the same schedule that Your Honor

18   entered obviously with different dates.

19         And that's the standard procedure in bank secrecy

20   cases.  Sometimes the plaintiffs move, sometimes the defendants

21   move.

22         And again, this is really all about a sur-reply,

23   which is why to Your Honor's point, we don't strongly object to

24   their July 14th proposal for the last word.

25         You know, there hasn't been a case yet, maybe this

1    will be the first one, but there hasn't been a case yet in any

2    federal court in which the interests of a foreign sovereign and

3    bank secrecy have been found to overcome the U.S. interests in

4    Anti-Terrorism Act cases.

5              So, you know, again, the sur-reply doesn't matter as

6    much to us as it is not to burden the Court with completely

7    unnecessary cross-motion practice on the same issues.

8              So, and Your Honor, I'll just point out, has not

9    placed any page limits or precluded any argument in the

10   parties' briefing.

11             So they're free to make whatever arguments they want

12   on June 2nd.  And if they feel they haven't made enough of them

13   after they get our reply on June 23rd, I think it is, then if

14   Your Honor wants to grant them a sur-reply, I think that'll be

15   a lot more efficient and less painful for the Court than having

16   to deal with cross-motions that are completely unnecessary.

17             MR. SIEGFRIED:  Your Honor?

18             THE COURT:  Is that Mr. Berger?

19             MR. BERGER:  Your Honor, this is Mr. Berger.  I'm --

20   I hear one of my colleagues.  I simply wanted to know if I

21   could before my colleague speaks offer both a -- just a point

22   of fact that may be of interest to the Court and perhaps an

23   alternative practical proposal, understanding that the Court's

24   desire to approach this practically, which is it is certainly

25   true that Judge Kuo in January of 2022 issued a minute order as

1  Mr. Osen described.

2       But what's relevant here to the point I was making

3  earlier is an order that she entered two years earlier in the

4  same litigation.

5       And Your Honor, this is case 18-CV-02192.  And it's

6  Docket Number 60.  It is an order that long before the briefing

7  two year later, that was discussed by Judge Kuo, required the

8  issuance of letters rogatory to try to get the assistance of

9  the Lebanese and in that case additionally Jordanian and

10  Palestinian authorities to agree to waive bank secrecy.

11       So there's just two important points from that, which

12  is respectfully, Mr. Osen is skipping a step when he says he

13  wants to get to closure on this motion to compel.

14       We have to go through this letter rogatory process.

15  And I'm not making it up.  I respectfully refer the Court to

16  that January 10, 2020 order from Judge Kuo.

17       And that is -- leads me to my practical proposal,

18  which is I don't think at least speaking for my three clients,

19  my colleagues can speak up, maybe the more practical thing to

20  do so that we can lay all these issues out for the Court,

21  because there's a lot to lay out, is simply to extend the

22  current time from June 2nd, by some amount of time.

23       And we'll do our best to put everything into a single

24  brief.  Every lawyer has a different view on whether they want

25  a closing brief or something else.

1          Our goal is to give all of these issues, including

2    the very important issue about letters rogatory full treatment

3    to the Court and that's takes both time and it takes space.

4          And I appreciate Mr. Osen saying that at least from

5    his perspective, he felt -- didn't feel constrained by page

6    limits.  And I guess we shouldn't be either.

7          THE COURT:  How much time are you -- would you need,

8    Mr. Berger, if it was to be consolidated?

9          MR. BERGER:  Again, I -- you know, I'm ahead of my

10   colleagues here, but look, we're talking about -- we asked for

11   three weeks on the back end.  I think we might be able to make

12   better use of these three weeks if you added them into the

13   opposition schedule.

14         We have affidavits we have to secure on Lebanese law.

15   We have affidavits we have to secure on Lebanese procedure for

16   issuing the all-important letters rogatory.  We have to address

17   all the other issues they have in there.

18         That at least for my three clients would I think suit

19   us just as well, which is to have more time to give you

20   everything in one package.

21         THE COURT:  Mr. Osen?

22         MR. OSEN:  Your Honor, I'm sorry, one of Mr. Berger's

23   colleagues wanted to say something so I'll (indiscernible).

24         THE COURT:  Oh, okay.  I'm sorry, please just state

25   your appearance for the record so we have a clear record,

1   should anybody ever want to transcribe the proceeding, we know

2   who's speaking and I know who's speaking now.

3          MR. SIEGFRIED:  Sure.  Your Honor, this is Jonathan

4   Siegfried.  I listened quietly to the argument going forward.

5   I happen to have been one of the attorneys in the Pam, Miller

6   case.

7          And I think there have been one or two things that

8   were left out that are relevant for your consideration.

9          That is, number one, a significant difference between

10  a situation there and here with respect to Mr. Osen's comment

11  that the bank in that case moved for a protective order.

12         First was because we had had a discussion weeks

13  earlier with Mr. Osen in which Mr. Osen made clear that he was

14  not going to limit in any way the requests that he had made.

15         He had a similar type situation where he was asking

16  for I think in that case 678 names or thereabouts to be on

17  accounts, which he wanted access to.

18         So we had weeks in advance to understand that this

19  was an overly broad, what we believed to be an overly broad

20  request as to which we would need to seek a protective order.

21         And so, when we -- before Kuo -- Judge Kuo, we said

22  we wanted to make a motion for protective order.  And it's

23  rather interesting to hear the conversation today, because Mr.

24  Osen did not talk about one consolidated brief in opposition at

25  that point.  He said, well, then, we have a motion to compel.

1          And so, it became protective order, motion to compel,

2    or reply.  And then, he had the final what he is now calling a

3    sur-reply on his cross-motion.

4          The second -- so there -- as opposed to the situation

5    here, where it was literally just last week at the end of last

6    week that in the meet and confer, when we said to Mr. Osen,

7    we'd like to talk about how you would like -- how you would

8    like to limit or whether we can narrow the scope of the

9    request, Mr. Osen said the requests are as narrow as they're

10   going to be.  I have nothing to discuss about that issue.

11         So we did not have the same luxury of several weeks

12   to again to prepare a protective order motion.  I assume he had

13   his motion to compel in the works.

14         Why is that all significant and why do I believe that

15   actually you do need the motion and the cross-motion in each

16   instance?

17         Because -- and I was also a counsel in <u>Lindy</u>.

18   Because Your Honor, the courts so far, obviously you're free to

19   do whatever you choose to do, but the courts when they're

20   talking about bank secrecy and international comity have thus

21   far in this type of case tended to conclude that before

22   ordering a bank to potentially violate the laws of its home

23   country by ruling on bank secrecy, that international comity

24   suggests that the proper course is to let -- through a letters

25   rogatory process is let the foreign authority at least have the

1    first word on whether it might authorize the production of the

2    documents.

3            So then, you're not ordering you as a judge in the

4    U.S., you're not ordering a foreign bank to violate its home

5    country laws.  And it gives deference to the foreign authority

6    by giving them the opportunity to rule on it first.

7            But in order for the foreign authority to properly

8    rule on the request, it needs to know what is it being asked to

9    agree to.

10           And that usually would be a court -- some form of

11   order from the court, which says we think I think -- I, Judge

12   Merkl, believe that these are requests that have an appropriate

13   scope.

14           So the scope of the requests and the ruling on the

15   scope of the requests is critical as the precursor to the

16   letters rogatory, because they form the basis for the letters

17   rogatory.

18           So you may have at the end of the day as a practical

19   matter, you may have a situation where you do have fully

20   briefed both a protective order motion regarding scope and a

21   bank secrecy motion.

22           And it may well be that you end up as others have,

23   Judge Korelsky (phonetic) for example and others have agreed,

24   which is to come up with what you consider to be document

25   requests that are of a proper scope, which are then taken to

1    the foreign authority to rule on.

2              And then, after you have the response of the foreign

3    authority, the foreign authority may rule that the banks are

4    still barred by bank secrecy.  The foreign authority may say,

5    well, we could go so far, but not all the way.

6              The bank could say the foreign authority might under

7    a circumstance like this might say we'll grant it.

8              But in light of the response of the foreign

9    authority, you then really have your full record for deciding

10   whether or not you will order a bank to produce,

11   notwithstanding the view of the foreign authority, but it is a

12   process that does recognize international comity and gives the

13   foreign authority the opportunity first.

14             So I think having been through this before with Mr.

15   Osen, if you wanted us to go first, I would say we should be

16   changing the schedule around.

17             And we could file the protective order, but I think

18   you're going to need to have litigated before you the issue of

19   scope in order to set up the request to the foreign

20   authorities.

21             And that to me probably would -- let's assume it's a

22   protective order by us, it's a cross-motion, I think we

23   probably would end up wanting the reply to the cross-motion

24   because what Mr. Osen says about scope in his response may or

25   his answer may need a response by us on this scope issue.

1           And that's really all I wanted to say, but I thought

2     you should have a fuller sense of what's happened in both the

3     Lindy and Miller cases.

4           THE COURT:  Thank you, Mr. Siegfried.

5           Mr. Osen, is there anything you'd like to say in

6     response?

7           MR. OSEN:  Your Honor, I'm always happy to talk about

8     the history of the Lindy case or the Miller case, but I suspect

9     Your Honor wants a more practical approach to resolving this.

10    But if I'm wrong, just let me know and I'm happy to respond to

11    all of that.

12          I think where we kind of left off a while back was

13    the question of Mr. Berger's theorizing that he could at least

14    for his clients sort of respond.

15          I know that this is all a shock.  They've only had

16    the discovery request since December 31st, but that being said,

17    they need more time to prepare their opposition.

18          You know, if they want to move the deadlines three

19    weeks instead of a sur-reply, they want to move the June 23rd

20    date and our dates get moved on reply, you know, we're amenable

21    to that.

22          I do think Your Honor should recognize that the same

23    arguments you just heard are precisely the kind of things they

24    can put in their brief.

25             1 brief, 11 briefs whatever it is, and of course will

1    respond to it.  And Your Honor will assess who's accurately

2    reflecting the prior case law and so forth.  I think that's all

3    for the brief.

4         And I don't think cross moving here simplifies your

5    life, but at the end of the day, either way, it sounds like

6    they're going to get an additional three weeks or more to game

7    this out.  And so, we'll respond accordingly.

8         THE COURT:  Well, I am of course interested in

9    efficiency, but I'm not interested in setting a schedule that

10   leaves the Court with a number of questions, which could then

11   lead to additional requests for briefing, oral argument.

12        You know, who knows where it could go if parties are

13   not -- don't feel that they've had the opportunity to make a

14   full record through the briefing schedule.

15        So as frustrating as it may be for you, Mr. Osen,

16   I -- you know, don't see any significant prejudice to the

17   Plaintiffs to adopt the Defendants' revised schedule that was

18   set forth in the April 29th letter from the moving Defendants.

19        And, you know, it is really immaterial to me whether

20   something is styled as a cross-motion or a response with a

21   complicated argument.  You know, it really doesn't matter.

22        I'm interested in the relief sought, the arguments,

23   and the law.  And we will fashion whatever opinion and order

24   that we craft in response to all this briefing on the substance

25   and on the merits.  The exact styling of the briefing doesn't

1    matter that much to me.

2         So, you know, to include any need to respond to

3    questions of scope, taking Mr. Siegfried's comments into

4    consideration, and then the -- given the lack of prejudice

5    articulated by the Plaintiffs as to the proposed schedule set

6    forth in the April 29th letter, I am inclined to permit the

7    Defendants to oppose the Motion to Compel and cross move on

8    June 2nd and then to permit the Plaintiffs to reply by June

9    23rd, and then the reply in support of the motion for

10   protective order on July 14th, absent some compelling objection

11   that I haven't heard so far.

12        So is there anything, Mr. Osen, that -- else you'd

13   like to add?

14        MR. OSEN:  No, Your Honor.  I think you made your

15   position clear.  And we'll abide -- at least on our end, we'll

16   abide by any schedule the Court orders.

17        THE COURT:  Okay.  So are the any other Defendants,

18   moving Defendants or otherwise, who would like -- I don't know

19   who we just lost or gained.  I just heard some beeping.  Are

20   there any other Defendants who would like to be heard on the

21   question of this schedule?

22        MR. LAKATOS:  Your Honor, this is Alex Lakatos on

23   behalf of Bank Audi.  Without trying to throw too much of a

24   wrench into the works, it may be a little bit of a challenge to

25   pull together the affidavits on Lebanese law and so forth.

1      And I do want to go back to something Mr. Berger said

2  at the beginning, which it may be just a little bit more time

3  built into that would be enormously helpful if it's not too

4  much, you know, imposition to ask.

5          THE COURT:  How much time?

6          MR. LAKATOS:  Two weeks?

7          THE COURT:  What are you proposing with specificity?

8  Are you proposing to push the entire schedule out two weeks?

9  What is your -- what is your request?

10          MR. LAKATOS:  Yes, the request would be to push the

11  entire schedule out by two weeks, all the dates in the letter

12  pushed by two weeks.

13          THE COURT:  I mean, Mr. Lakatos, it's hard for me to

14  understand how the Defendants didn't know that they needed to

15  start to pull together affidavits on Lebanese law well in

16  advance of today, given the schedule that we set back in

17  December.

18          MR. LAKATOS:  Yes, understood, Your Honor.  There's

19  also a second affidavit of quite some length attached to

20  Plaintiffs' motion on the U.S. position that we certainly

21  didn't anticipate either.

22          THE COURT:  Mr. Osen, do you have a position on this

23  request to push this entire schedule out two weeks?

24          MR. OSEN:  I can just say, Your Honor, that in every

25  major new case involving bank secrecy, we always submit a

1    affidavit on the U.S. interests.

2            I think you'll -- you're starting to see the

3    challenge we face in these cases.  Defendants always want more

4    time, have more excuses, discover new things that, you know, at

5    least from our standpoint were evident six months ago or

6    longer.

7            But at the end of the day, Your Honor's going to

8    grant what schedule you feel appropriate.  So, you know, we'll

9    accept whatever that is.  And as I said from our standpoint,

10   we'll make every effort to meet the deadlines the Court sets.

11           MR. BERGER:  Your Honor, this is Mitchell Berger.  If

12   I could just be heard briefly?

13           THE COURT:  Uh-huh.

14           MR. BERGER:  And I fully accept Your Honor's

15   admonition about not overreading Mr. Osen's comments, but

16   it -- they're really quite unfair in this sense.

17           It's Mr. Osen who chose to sue in essence the entire

18   Lebanese banking industry.  It is Mr. Osen and his colleagues

19   who chose to ask for bank records for 688 individuals and

20   entities, hundreds of which these Defendants didn't serve in

21   any capacity.

22           And we have been trying to narrow this.  In the grand

23   scheme of things and just the timing I gave you concerning the

24   Miller and Pam case, where there was the two-year gap between

25   when letters rogatory were issued and when briefing occurred,

1      we're actually moving quite quickly.

2              I understand Mr. Osen and his clients are frustrated,

3      but we're talking matters of weeks here when these cases do

4      take time precisely because of the important international

5      comity interests at issue that Mr. Siegfried mentioned.

6              So we'll take our lumps on not having met the April

7      18th deadline and having met instead on April 28th, but

8      candidly, that is the blink of an eye a rounding error in the

9      amount of time that it takes to get these issues handled

10     correctly.

11             MR. SIEGFRIED:  Your Honor --

12             MS. GOLDSTEIN:  If I could add one point.  This is

13     Linda Goldstein for (indiscernible).

14             THE COURT:  Ms. Goldstein, I can't hear you very

15     well.  Make sure you're close to your microphone, please.

16             MS. GOLDSTEIN:  Okay, is this better, Your Honor?

17             THE COURT:  Yes.

18             MS. GOLDSTEIN:  The one point that I wanted to add,

19     which distinguishes this case certainly from the Lindy case and

20     from many of the other cases is as Mr. Berger pointed out, this

21     is essentially a case against the entire Lebanese banking

22     industry.

23             We're trying to be mindful of not presenting Your

24     Honor with, you know, six different or seven different Defense

25     responses from the seven different lawyers involved, but

1  presenting an omnibus response, which requires a great deal of

2  coordination.

3          The identification of experts who are acceptable to

4  all of our clients.  And this does take time that I for one did

5  not fully appreciate back in December.

6          MR. LAKATOS:  Your Honor, this is Alex Lakatos for

7  Bank Audi again.  Just circling back to the very first thing we

8  discussed which was, you know, the third-party discovery.

9          And you know, one of the factors we discussed on the

10  call today was in terms of Lebanese bank secrecy, what is

11  available from other sources.

12          And we've yet to see what it is that Plaintiffs have

13  been able to get from the Defendants -- I'm sorry from the

14  third-parties, who they've subpoenaed.

15          We've been talking about a protective order needing

16  to go into place first and that happening at the end of this

17  month.  The time that we're requesting would allow a little

18  time for that to happen.

19          And I would also add, you know, it's been a bit of a

20  source of frustration for us at Bank Audi that Plaintiffs have

21  not subpoenaed Citibank, which is our third-party

22  correspondent.

23          And we'd like to, you know, see what they're able to

24  get there, which also goes to this question of, you know, what

25  is it that can be obtained from third-party sources, which is

1    certainly relevant, doesn't make a lot of sense to order the

2    banks to produce something and possibly something in violation

3    of law.  If they can't produce it, the Plaintiffs can get it

4    elsewhere.

5              So, that would in fact, you know, be something that

6    would be able to play out a little bit further a little

7    additional time.

8              And that hopefully, you know, we would like to see a

9    subpoena to Citibank, so that it could play out for Bank Audi

10    who uses that correspondent bank.

11             THE COURT:  So, Mr. Osen, two questions.  One, what

12    do you make of Mr. Lakatos' argument with regard to the

13    third-party bank subpoena responses and how that should factor

14    into this schedule?

15             And two, I think you and I can agree we certainly

16    don't want six to seven responses from the individual

17    Defendants.  So how do those two things play into your response

18    here, sir?

19             MR. OSEN:  Thank you, Your Honor.  So, first of all,

20    to be clear, although transactional records from third-party

21    banks may be helpful, the most critical information about the

22    bank's state of mind is knowledge of its customers and counter

23    parties is exclusively resident in the bank's own control.

24             And so, third-party discovery has a marginal

25    relevance to the bank secrecy discussion, but not a whole lot

1    when you consider the core records and the fact that they're

2    exclusively in the custody of the Defendants.

3           As far as Citibank per se is concerned, we complied

4    with the Court's direction with respect to the four banks that

5    were identified in the call last December.

6           We have no per se objection to serving Citibank or

7    any other Defendant, sorry, third-party bank.

8           But I will note that there has been nothing to

9    prevent Bank Audi from requesting those records from its own

10   counter party or for that matter any of the other Defendants

11   here from seeking records from those same parties and

12   presumably without the need of a subpoena, since they are, you

13   know, involved with them contractually for correspondent

14   banking services.  So I think to a large degree that's kind of

15   a red herring in this particular proceeding.

16          As far as the coordination goes, you know, from our

17   standpoint, we got served with, you know, with somewhat

18   different responses from the different banks on their

19   objections.

20          We certainly received letters, some of which were

21   very similar and others that had, you know, somewhat different

22   positions on certain issues.

23          I don't have a preference honestly between getting 11

24   or 7 briefs or 1.  I think there's obviously benefit on certain

25   common issues to, you know, all the Defendants have the same

1    position for example on scope, relevance, burden, and so forth.

2          So I think those are easy enough for them to address

3    collectively.  They might conceivably have different positions

4    on the scope of Lebanese bank secrecy or other things in which

5    case I think they're entitled to make separate submissions if

6    that's what they want.

7          But the key point here is that the bank secrecy issue

8    and Lebanese bank secrecy has been on the table since the

9    beginning of this case since the Motion to Dismiss, the

10   original Motions to Dismiss were denied.

11         They've known this issue is looming.  It's an issue

12   that has been raised and discussed for literally more than a

13   year.

14         So while I'm sympathetic to the fact that they may

15   have underestimated the time it takes to get one of their

16   declarations lined up, the core issues here have been in front

17   of them for a long time.

18         So again, from my standpoint, you know, Mr. Berger

19   says that these are a blink of an eye.  The reason they're

20   blink of an eye is that if each time there's a dispute in a

21   briefing, the schedule gets pushed out, weeks turn into months,

22   turn into years.

23         What happened in Lindy, for example, was not a

24   product of the complexity of the system or the arguments.  It's

25   the product of the Defendants in that case engaging in

1    sanctionable conduct that delayed the proceedings for many

2    years.

3            We don't want to see that there.  We obviously want

4    the documents.  We want to make our case and engage in normal

5    discovery.

6            But that's why we try to be flexible.  And that's why

7    when Your Honor said, you know, do you want, you know, what's

8    your position on the schedule?  We say, look, you know, even

9    though it's their schedule that they're now try to renegotiate,

10   we understand that Your Honor wants to be practical and it's

11   better to not have them come back yet another time re-

12   negotiating it.  So we appreciate that.

13           And if that means that you're going to give them more

14   time, so be it.  I mean, from our standpoint, we know that we

15   have clients who are missing limbs, who had their faces blown

16   off by the customers of these banks.

17           So we have a very different view, but we certainly

18   understand the practical side of this.  And so, you know, if

19   Your Honor tells us you're going to adopt their schedule,

20   great.

21           I think it's remarkable that having submitted at the

22   11th hour this revised schedule, they want to now renegotiate

23   that.

24           At some point, Your Honor's going to have to decide

25   how much renegotiation you're going to allow, but we'll abide

1     by whatever the ultimate dates set are.

2              THE COURT:  All right, I heard somebody preparing

3     steak.  Who is that?

4              MR. BERGER:  Your Honor, it's Mitchell Berger.  I

5     actually want to agree with one thing that Mr. Osen said and

6     maybe that will draw a line under the practicality here, which

7     is the one thing I think the Plaintiffs and the moving

8     Defendants agree on is that we want to solve the bank secrecy

9     problem for yes.

10             We, too, want to produce the documents.  That

11    procedure is a time-consuming procedure.  That is why we

12    emphasize the letters rogatory.

13             We're not actually trying to roll the log down here

14    for years and waste time.  I think what we want to do is

15    position this in a way where Your Honor gets to address the

16    scope issue, gets to say here are the documents that we think

17    are -- that the Court thinks are important.

18             These are the documents the Court is going to request

19    by way of letter rogatory, which both sides are going to

20    support to the Lebanese authorities to lift bank secrecy.

21             Rather than sanctionable conduct, which nobody on the

22    bank side wants and Mr. Osen says nobody on the Plaintiff's

23    side want.

24             We simply want to get this positioned so that the

25    Court is in the best position to issue those letters rogatory

1    so that everybody gets the yes answer that they want.

2            If that takes a couple of more weeks, then I

3    apologize on behalf of the 11, 12 bank Defendants in this case

4    that coordinating on these issues does take time.

5            You know, it's simply a function of the law of big

6    numbers here.  They sued a lot of Defendants.  They have

7    separate law firms.  We apologize for that, but we're simply

8    trying to get it right because we like they want to solve the

9    bank secrecy issue.

10           THE COURT:  All right, anybody else want to add to

11    Mr. Berger's remarks or respond to Mr. Osen?

12           All right, I understand the frustration.  I do.  I

13    also want to be practical and efficient.  And I am, you know, a

14    little frustrated, not going to lie, that the May 2nd target

15    date for the filing of the motion for protective order and the

16    motion to compel were not met or were clarified as to sort of

17    the why the Defendants were not able to file their protective

18    order in accordance with that schedule, which as Mr. Osen

19    points out, you had requested.

20           That being said, I'd rather move forward than

21    continue to look backward.  And I want to give the parties

22    sufficient time to be as efficient as possible to coordinate

23    amongst themselves in the case of the Defendants to submit as

24    consolidated a position as is possible given the complexity of

25    these issues and given your respective clients' individual

1   positions on the issues and, you know, the way they may differ.

2            I really do appreciate the Defendants' efforts to

3   coordinate and to be, you know, as unified as is feasible,

4   while still zealously representing your clients.

5            So, in the interest of that, I am prepared to extend

6   the scheduling order as the parties requested.  And Mr.

7   Lakatos, I will give you these two weeks, but I'm not going to

8   give you guys any extensions.

9            So please do not send a letter two days before these

10  deadlines and say, oh, but we actually need another two weeks.

11           The parties have proposed -- the Defendants proposed

12  the schedule we set back in December.  The Defendants proposed

13  the schedule that they've now asked for additional time on.

14           And I am sympathetic to the complexity of

15  collaborating across law firms and all of those things, but

16  please note if I grant these extra two weeks now and I grant

17  this proposed schedule now, there will not be extensions on

18  this schedule.  Is everybody clear on that?  All right.

19           MR. LAKATOS:  Yes, Your Honor.

20           THE COURT:  So thank you.  Who was that, Mr. Lakatos?

21           MR. LAKATOS:  Yes, I felt like I should say, yes,

22  Your Honor.

23           THE COURT:  I appreciate it.

24           MR. LAKATOS:  (Indiscernible.)

25           THE COURT:  I just want to make clear for the record.

1    I -- it's hard to tell voices on these calls when there are

2    many of you, but it did sound like you.  So thank you for that.

3            So I will go ahead and enter a minute entry and order

4    reflecting this revision to the plan.  And I do encourage the

5    parties to continue to meet and confer, narrow the issues as

6    much as possible.

7            I appreciate the Defendants' efforts to narrow and,

8    you know, come out with united positions to the extent that's

9    feasible.

10           With that, is there anything else that we can take up

11   today, Mr. Osen?

12           MR. OSEN:  The only thing, Your Honor, is when you

13   fashion the schedule, and I understand the June 2nd date's

14   going to be moved, I'd ask the Court to build in a little extra

15   time on our reply, just to be mindful of the July 4th holiday

16   weekend.

17           So I don't know -- I don't know precisely when the

18   schedule will fall, but if it -- if our time falls into that

19   period, if you can give us an extra, you know, three, four days

20   beyond the I guess it's three weeks that are contemplated, that

21   would be great.

22           THE COURT:  That's fine with me.  Any objection to

23   that, Mr. Berger?

24           MR. BERGER:  No, certainly not.  It would be churlish

25   of us to do so.  So, I mean, to the extent just trying to

1    understand practically the dates Your Honor's going to set.

2            If you're going to set June 16th for the moving

3    Defendants' opening papers, and if Mr. Osen wants rather than

4    July 7th, which would be three weeks thereafter, July 14th,

5    which is an additional week.

6            And then, we could set our closing brief whatever you

7    want to call it to three weeks thereafter, so that Mr. Osen

8    feels well taken care of with four weeks, that's all fine with

9    us.

10           THE COURT:  I think that that's fine.

11           Mr. Osen, so we're looking at June 16th, July 14th,

12   and August 4th, all right?

13           MR. OSEN:  Yes, Your Honor.

14           THE COURT:  All right, anything that I can

15   take -- anything else, Mr. Osen?

16           MR. OSEN:  Not from me, Your Honor.

17           THE COURT:  Mr. Berger?

18           MR. BERGER:  Not from me, Your Honor.  Thank you.

19           THE COURT:  Ms. Goldstein?

20           MS. GOLDSTEIN:  Nothing further, Your Honor.

21           THE COURT:  Mr. Lakatos?

22           MR. LAKATOS:  Nothing further.  Thank you so much,

23   Your Honor.

24           THE COURT:  All right, is there anybody else who has

25   anything else they'd like to add?  You know, pause, come off

1  mute, identify yourself and who you represent.  All right,

2  going once, going twice.

3          All right, I again appreciate the coordination and

4  having, you know, somebody kind of take the lead on these

5  conferences.  They really wouldn't be manageable in this format

6  without that.

7          So I do appreciate your efforts in that regard to the

8  Defendants.  And I look forward to learning more about the case

9  through this briefing.

10          And we will look -- you know, have -- put in an entry

11  order on the docket later today reflecting the revised schedule

12  and please adhere to it.

13          As I indicated, we aren't going to be extending the

14  time on short notice, all right, guys?  Hope everybody stays

15  safe.  Take care.

16          ATTORNEYS (IN UNISON):  Thank you, Your Honor.

17          THE COURT:  Bye bye.

18      (Proceedings concluded at 4:42 p.m.)

19

20

21

22

23

24

25

1                               **CERTIFICATE**

2

3

4         I, Chris Hwang, court approved transcriber, certify

5 that the foregoing is a correct transcript from the official

6 electronic sound recording of the proceedings in the above-

7 entitled matter.

8

9

10

11

12

13     _____     May 26, 2022

14     Chris Hwang               Date

15     Transcriber

16

17

18

19

20

21

22

23

24

25