# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
mayerbrown.com

**Mark G. Hanchet**
T: (212) 506 2695
MHanchet@mayerbrown.com

June 22, 2023

<u>VIA ECF</u>

Honorable Carol Bagley Amon
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Bartlett, et al. v. Société Générale de Banque au Liban S.A.L., et al.*, 19 Civ. 007 (CBA) (TAM)

Dear Judge Amon:

The Moving Defendants[1] write regarding the Supreme Court's May 18, 2023, decision in *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206 (2023), which announced a new standard for assessing JASTA aiding-and-abetting claims and rejected key elements of the Second Circuit standard under which the Banks' motions to dismiss were denied. *Taamneh* compels dismissal of Plaintiffs' claims[2] and the Moving Defendants request a conference to discuss a motion for reconsideration of the Court's motion to dismiss Orders (ECF 164 and 291) or for judgment on the pleadings.

In *Taamneh*, the Supreme Court unanimously held that JASTA aiding-and-abetting claims require a plaintiff to plausibly allege that the defendant "consciously, voluntarily, and culpably participate[d] in" the terrorist attack at issue in the case "so as to help make it succeed." 143 S. Ct. at 1223, 1230. Plaintiffs in *Taamneh* alleged that Twitter, Facebook, and Google aided and abetted ISIS in its 2017 attack at an Istanbul nightclub. *Id.* at 1215. The Court found the plaintiffs' allegations that the companies provided communication services directly to ISIS users (allowing ISIS to recruit, fund-raise, and spread terrorist propaganda), and that the companies served that terrorist content to other users, were insufficient to survive a motion to dismiss. *Id.* at 1230-31. In

---

[1] The Moving Defendants (also referred to herein as the "Banks") are (1) Société Générale de Banque au Liban S.A.L., (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) LGB Bank s.a.l., (9) Banque Libano Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank S.A.L.

[2] Although Plaintiffs also assert a conspiracy claim, the Court has never addressed the legal sufficiency of that claim and it is precluded by the Second Circuit's decision in *Freeman v. HSBC Holdings PLC*, 57 F. 4th 66 (2d. Cir. 2023).

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

Honorable Carol Bagley Amon
June 22, 2023
Page 2

reaching this conclusion, the Court explained how JASTA's "knowing and substantial assistance" requirement for aiding and abetting must be analyzed—and rejected critical aspects of the approach previously taken by the Second Circuit.

*First*, the Supreme Court made clear that JASTA aiding-and-abetting requires more than assistance to a terrorist organization, such that a terrorist act is a foreseeable consequence. Rather, a defendant "must have aided and abetted (by knowingly providing substantial assistance) another person in the commission of the actionable wrong—here, an act of international terrorism." 143 S. Ct. at 1224. The Court explained that the "focus" must remain on the act of international terrorism at issue in the case, and any attempt to hold a defendant liable for multiple attacks committed by a terrorist group would require a showing of "pervasive, systemic, and culpable assistance," such as where defendants "intentionally associated themselves with [a terrorist organization's] operations or affirmatively gave aid that would assist each of [the] terrorist acts" and "formed a near-common enterprise" with the terrorist group. *Id*. at 1228. The Second Circuit, by contrast, has stated that "knowing and substantial assistance to the actual injury-causing act—here, Hamas's attacks—is unnecessary." *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 499 (2d Cir. 2021).

*Second*, *Taamneh* held that JASTA's requirement of "knowing" provision of substantial assistance is more demanding than the "general awareness" element of an aiding-and-abetting claim. 143 S. Ct. at 1229. The Court specifically criticized the Ninth Circuit for "analyz[ing] the 'knowing' subelement as a carbon copy of the antecedent element of whether the defendants were 'generally aware' of their role in ISIS' overall scheme." *Id*. The Second Circuit had adopted the same now-rejected approach as the Ninth, holding that "[t]he 'knowledge component'" of a JASTA aiding-and-abetting claim "d[oes] not require [defendant] to 'know' anything more … than what [it] knew for the general awareness element." *Honickman,* 6 F.4th at 499-500 (quoting *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 864 (2d Cir. 2021)).

*Third*, *Taamneh* criticized the Ninth Circuit for "hav[ing] understood JASTA's approval of *Halberstam*'s 'legal framework' as requiring it to hew tightly to the precise formulations that *Halberstam* used." 143 S. Ct. at 1223. Rather, courts should "ascertain the 'basic thrust' of *Halberstam*'s elements and determine how to 'adap[t]' its framework" to the facts of a particular case by keeping in mind "the common law of aiding and abetting upon which *Halberstam* rested and to which JASTA's common-law terminology points." *Id*. at 1220. That requires allegations supporting a plausible inference that "the defendant consciously and culpably 'participate[d]' in a wrongful act so as to help 'make it succeed.'" *Id*. at 1223. In addition, the "knowing" and "substantial assistance" prongs must be considered in tandem: "less substantial assistance require[s] more scienter" to "infer conscious and culpable assistance" and "if the assistance were direct and extraordinary then a court might more readily infer conscious participation in the underlying tort." *Id*. at 1222. The Second Circuit has followed the same now-rejected approach as the Ninth, and separately addressed "knowing" and "substantial assistance" without focus on the "conceptual core" animating the *Halberstam* framework. *See Honickman*, 6 F.4th at 499-500.

*Fourth*, *Taamneh* held that the arm's-length, generally available nature of the commercial services allegedly provided weighs strongly against a finding of knowing substantial assistance.

Honorable Carol Bagley Amon
June 22, 2023
Page 3

*Id*. at 1229-30 ("the Ninth Circuit should have given much greater weight to defendants' arm's-length relationship with ISIS—which was essentially no different from their relationship with their millions or billions of other users—and their undisputed lack of intent to support ISIS."). And the Court found error in the Ninth Circuit's focus "primarily on the value of defendants' platforms *to ISIS*, rather than whether defendants culpably associated themselves with ISIS' actions." *Id*. The Second Circuit has made the same errors. *See Honickman*, 6 F.4th at 499.

Naturally, this Court applied then-current Second Circuit precedent in denying the Banks' motions to dismiss. But those Orders cannot be reconciled with *Taamneh*.[3] In its 2020 Order, this Court did not address the "knowing" prong of "knowing substantial assistance." Rather, it limited its mens rea analysis to the *Halberstam* general awareness element, addressing the Banks' alleged awareness of their customers' connections to Hezbollah. *Taamneh* makes clear that this is not correct. 143 S. Ct. at 1224. Nor did that Order "focus" on the Banks' alleged assistance in the 267 attacks at issue, but rather on assistance to Hezbollah writ large, wrongly implying JASTA liability for "each and every [Hezbollah attack] committed anywhere in the world." *Id*. at 1228. Moreover, the Court acknowledged the "gap" between the Banks' alleged provision of arms-length services in Lebanon to Hezbollah-linked customers and attacks perpetrated by Shia militias 500 miles away in Iraq (ECF 164 at 26), and yet it did not demand a greater showing of knowing or intentional assistance by the Banks to account for this remoteness, as *Taamneh* directs. The 2022 Order relied again on the now-rejected reasoning in the 2020 Order, concluding that *Kaplan* and *Honickman*, "if anything lowered the bar to state a JASTA aiding-and-abetting claim." ECF 291 at 7.

Properly applied, *Taamneh* compels dismissal of Plaintiffs' aiding-and-abetting claims. Plaintiffs have not plausibly alleged that the Banks "consciously, voluntarily, and culpably participate[d] in" the 267 terrorist attacks at issue in the case "so as to help make [them] succeed." Indeed, Plaintiffs have expressly disclaimed any obligation to plead knowing assistance with respect to any attack. *See* ECF 249 at 10 (rejecting the notion that "Plaintiffs must show that Defendants knew they were facilitating the attacks that injured Plaintiffs" as "flatly wrong."). Plaintiffs allege instead that the Banks were generally aware that some of their millions of customers were associated with Hezbollah, that banking services and access to U.S. dollars are "vital" to Hezbollah, and that terrorist violence was therefore foreseeable and generally supported by the Banks' provision of such services. *See* Second Amended Complaint (ECF 189) at 2, 281-374 (describing "Defendants' Material Support to Hezbollah"). *Taamneh*, which involved pre-attack services provided directly to ISIS users, teaches that the allegations here, without more, are insufficient to plead that the Banks "culpably participated" in any of the 267 attacks at issue.

Reconsideration has been granted by one court to address the new, controlling standard in *Taamneh* (*see Bonacasa v. Standard Chartered*, 22-cv-3320 (S.D.N.Y.) (Ramos, J.)), and either that vehicle or a motion for judgment on the pleadings under Rule 12(c) would be appropriate here. The Banks are prepared to file their motion within 45 days of the Court granting this request.

---

[3] A district court is not bound by a Second Circuit decision if its rationale is rejected, implicitly or expressly, by the Supreme Court. *See United States v. Moreno*, 2000 WL 1843232, at *5 (S.D.N.Y. Dec. 14, 2000) (Sotomayor, J.).

Mayer Brown LLP

Honorable Carol Bagley Amon
June 22, 2023
Page 4

                                        Respectfully submitted,

                                        /s/ *Mark G. Hanchet*

                                        Mark G. Hanchet

Cc: Counsel of Record (via ECF)