

190 Moore Street, Suite 272, Hackensack, New Jersey  07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York  10018
T: 212 354 0111
www.osenlaw.com

July 21, 2023

**VIA ECF**

Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-00007
             Motion for Leave to Use Discovery in Another Action

Dear Magistrate Judge Merkl:

      Pursuant to the Protective Order entered in this case, ECF No. 273,[1] Plaintiffs respectfully request leave to reference a subset of transactional records produced by third-party banks in this litigation in amended complaints due to be filed on September 26, 2023 in a set of cases involving largely the same Plaintiffs and many of the same terrorist attacks: *Freeman v. HSBC Holdings plc*, No. 14-cv-6601 (PKC) (CLP) (E.D.N.Y.) ("*Freeman I*"), *Freeman v. HSBC Holdings plc*, No. 18-cv-7359 (PKC) (CLP) (E.D.N.Y.) ("*Freeman II*"), and *Stephens v. HSBC Holdings plc*, No. 18-cv-7439 (PKC) (CLP) (E.D.N.Y.) (together, the "*Freeman* Actions").[2] Plaintiffs have sought the position of the third party U.S. clearing banks whose records would be implicated by this motion, KBC Bank and Standard Chartered Bank ("SCB"). KBC Bank has stated that it does not object to Plaintiffs' request as set forth herein. Counsel for SCB have advised us that they will oppose Plaintiffs' request. (SCB is a defendant in the *Freeman* Actions.) Counsel for both third-party banks, as well as the court presiding over the *Freeman* Actions, are copied on this letter.[3]

      A subset of the records from KBC and SCB are relevant to the *Freeman* Actions because the *Bartlett* and *Freeman* cases involve similar theories of liability, and the records indicate that certain defendants in the *Freeman* Actions maintained accounts and received or initiated transactions through the United States for certain Hezbollah-affiliated entities and individuals. As stated above, *Bartlett* and the *Freeman* Actions involve many of the same Plaintiffs and terrorist attacks. And, as in *Bartlett*, the plaintiffs in the *Freeman* Actions brought claims under the Justice

---

[1]    The Protective Order provides that "a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." *Id.* at 3.

[2]    Counsel here represents plaintiffs in *Freeman I*, *Freeman II*, and a third case, *Bowman v. HSBC Holdings plc*, No. 19-cv-2146 (PKC) (CLP) (E.D.N.Y.), which was recently consolidated with *Freeman II*. The plaintiffs in *Stephens* are represented by separate counsel. However, as explained herein, the *Freeman* court has authorized both *Freeman II* and *Stephens* counsel to coordinate the filing of their respective amended complaints.

[3]    Given the nature of the relief requested and because KBC Bank does not oppose the motion and SCB (which does) is a non-party, Plaintiffs have not styled this as a joint letter regarding a discovery dispute between parties, and anticipate that SCB will set forth its position separately.

Against Sponsors of Terrorism Act ("JASTA") against several banks (primarily European banks, rather than the Lebanese banks involved in *Bartlett*). The *Freeman* Actions plaintiffs alleged that these banks provided illegal banking services to agents or components of Iran's terror apparatus—which includes the Islamic Revolutionary Guard Corps ("IRGC") and Iran's Lebanese proxy, Hezbollah—the terrorist organizations responsible for the attacks in both cases.

The *Freeman* and *Stephens* plaintiffs intend to use these records to bolster their allegations in their anticipated amendments of their complaints due on September 26, 2023. Although their aiding and abetting claims were initially dismissed, the *Freeman II* plaintiffs moved to amend their complaints on the grounds that subsequent decisions in the Second Circuit (*Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021)) cast doubt on the court's bases for dismissal of those claims. Accordingly, during a June 27, 2023, status conference, Judge Chen granted the *Freeman II* plaintiffs leave to file an amended complaint (the *Stephens* plaintiffs may amend as of right). Also at that conference, undersigned counsel alerted Judge Chen to the *Freeman* plaintiffs' desire to incorporate certain evidence obtained during third-party discovery in *Bartlett* in their forthcoming amended complaint.[4]

At this stage, the *Freeman* plaintiffs only intend to include in their amended complaints certain information from the records: (1) the names of the alleged Hezbollah-affiliated entities and individuals in the transaction summaries; (2) the names of the *Freeman* defendants which held the relevant accounts; (3) the dollar amounts of the transactions processed on behalf of the relevant Hezbollah-affiliated customers between 2003-2011; and, where relevant, (4) transactional dates. For purposes of the amended complaints, neither the name of the correspondent banks nor the routing codes or account numbers of the Hezbollah-affiliated customers need be disclosed, and if agreed to by the *Freeman* court, the Hezbollah-affiliated customers and transactional dates would be redacted on the public docket while the unredacted information remains under seal. Counsel for the defendants in the *Freeman* Actions can agree in writing to the terms of the *Bartlett* Protective Order extending those protections to the *Freeman* Actions until a comparable protective order is entered in that case.

Courts generally permit using discovery obtained in one case in another case, so long as there is no evidence that the discovery was obtained in bad faith. "[W]here the discovery sought is relevant to a good faith [claim] in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order [barring that use]." *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). *See also Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y. 1973) ("[U]nless it can be shown that the discovering party is exploiting the instant litigation solely to assist in other litigation before a foreign forum, federal courts do allow full use of the information in other forums. Indeed, there must be some evidence of bad faith in the institution of the suit on the part of the discovering party before a court will act to limit the

---

[4] Although discovery was stayed in *Freeman* pending resolution of the motions to dismiss, that was to reduce burden on *defendants in that case*. No burden will be created here, where the records have already been produced in *Bartlett* and would be discoverable in the *Freeman* Actions. *See Duling*, 266 F.R.D. at 77 (permitting use of records in "future" litigations). Plaintiffs should not be required to pretend they do not know pertinent facts about the *Freeman* defendants *until* they survive a motion to dismiss. *See Fulwiley v. United States*, No. 07-cv-1121 (NAM) (GHL), 2009 WL 10722253, at *2 (N.D.N.Y. Feb. 10, 2009) ("the purpose of the liberal federal court discovery rules is to make a trial less a game of blind man's bluff and more a fair contest. In this fashion it is more likely that the truth will be disclosed and justice accomplished.").

discovery process."). As courts have noted, "such use across proceedings promotes efficiency and avoids waste." *Duling*, 266 F.R.D. at 76. *See also Cipollone v. Liggett Grp., Inc.*, 113 F.R.D. 86, 92 (D.N.J. 1986) (explaining that "consistent with" Fed. R. Civ. P. 1, which emphasizes "the just, speedy, and inexpensive determination of every action," "a number of courts have rejected requests to limit the use of discovery to the litigation in which it is initially obtained.").

The *Bartlett* case was clearly brought in good faith; indeed, the case has survived multiple motions to dismiss. And while courts have noted a concern that parties in state court or in criminal cases could bring federal civil cases "chiefly for the purpose of exploiting the liberal discovery devices available in federal civil actions," *Dove*, 963 F.2d at 19, both *Bartlett* and *Freeman* are civil cases in this federal district. The subpoenas on KBC and SCB were also made in good faith and were tailored to elicit evidence specifically relevant to the *Bartlett* Defendants. In fact, the SCB subpoena was issued by Plaintiffs at the Court's direction—and at the *Defendants'* request. *See* 12/13/2021 Minute Order; conference transcript of same date, generally from 21:17-23:1-11. The subpoenas mirror the requests served on Defendants, and "the Court has [had] little difficulty concluding that discovery" on the vast majority of the names in those requests "may yield relevant evidence" in this matter. Bank Secrecy Order, 2023 WL 2734641, at *8.[5] Because the records were properly requested, there is no reason to limit their use in other cases. *See Devlin v. Transportation Commc'ns Int'l Union*, No. 95-cv-0752-JFK-JCF, 2000 WL 28173, at *7 (S.D.N.Y. Jan. 14, 2000) ("the defendants are confusing the initial determination of whether information should be disclosed with the purposes for which it may thereafter be used") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978)).

Moreover, the records are not themselves "embarrassing" to any third parties, unlike the employee personnel files at issue in *Duling*, which detailed "the employees' compensation, discipline, medical conditions, financial accounts, background checks, child support obligations, legal matters, police investigations, immigration status and arbitrations," 266 F.R.D. at 60—and which decision *permitted* using documents in other cases. They are (facially) commercial transactions, not personnel files (and thus are not even "financial accounts" as in *Duling*), and Plaintiffs do not intend to reference the production of the records themselves or names of transactional parties or counterparties not alleged to be associated with Hezbollah or the IRGC. Finally, if and when the *Freeman* Actions survive motions to dismiss and these records become relevant in discovery in those cases, the parties in those cases will enter into a protective order in that case and the *Freeman* plaintiffs will agree to the same level of protection for the use of the records in that case as ordered in this one.

Finally, also as stated above, KBC does not oppose this motion. SCB is differently situated because it is a defendant in the *Freeman* Actions.[6] However, just because "discovery will be detrimental to its position in parallel lawsuits …. is not a reason for a court to impose a protective order." *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981).

---

[5] And, indeed, they resulted in the production of relevant evidence in this case, including over 3,000 transactions totaling over $850 million involving *Bartlett* Defendants and alleged Hezbollah-affiliated entities and individuals. *See* Pls. Reply in Support of Motion to Compel, ECF No. 295 at 36.

[6] Plaintiffs' counsel provided to SCB a preliminary list of individuals and entities they believe to be relevant to the *Freeman/Stephens* amended complaints and have confirmed that they are solely interested in transactions where defendants in the *Freeman* Actions *maintained accounts* and received or initiated transactions through the United States for Hezbollah-affiliated entities and individuals.

In sum, subject to the confidentiality safeguards described above and in the Proposed Order attached as <u>Exhibit 1</u> herein, Plaintiffs respectfully request that the Court permit Plaintiffs to reference certain information obtained in *Bartlett* third-party discovery in the *Freeman* cases.

Respectfully submitted,

/s/ Gary M. Osen

cc:   Hon. Pamela Chen, U.S.D.J.
      All counsel (via ECF)
      Counsel for KBC Bank
      Counsel for Standard Chartered Bank
      Counsel for *Stephens* plaintiffs