# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

July 28, 2023

By ECF

The Honorable Taryn A. Merkl,
   United States Magistrate Judge,
      U.S. District Court for the Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

      Re:    *Bartlett* v. *Société Générale de Banque au Liban SAL*, No. 19-cv-00007-CBA-TAM

Dear Judge Merkl:

      I write on behalf of non-party Standard Chartered Bank ("SCB") in opposition to Plaintiffs' request (ECF No. 335, the "Letter Motion") to vitiate this Court's June 8, 2022 Joint Stipulation and Protective Order (ECF No. 273, "Protective Order"), which mandates that confidential discovery material produced in this case "be used in good faith *in relation to this case* . . . and for no other purpose." (Protective Order at 8 (emphasis added).)

      Over the course of several months in 2022, in express reliance on the Protective Order, SCB produced detailed information about tens of thousands of correspondent banking transactions in response to a sweeping non-party subpoena served by Plaintiffs in this case. Plaintiffs now seek to use unspecified portions of those banking records to amend their complaints in two entirely separate cases brought against SCB, one of which was dismissed years ago and the other stayed since its inception. Plaintiffs' requested relief is unjustified and contrary to the normal discovery procedures provided for in the Federal Rules of Civil Procedure. Plaintiffs provide no legitimate reason to modify the Protective Order, and their request should be denied.

      **A.**    **Procedural Background**

      Plaintiffs' Letter Motion largely ignores the context in which SCB produced documents as a non-party to this case. SCB did so in express reliance upon the Protective Order's confidentiality and use restrictions, in light of the fact that the same Plaintiffs' counsel pursuing Anti-Terrorism Act ("ATA") claims in this action previously had attempted to plead ATA claims against SCB in other actions.

      ***The Freeman Cases.*** In 2014, many of the Plaintiffs here, together with the same counsel that represents them in this case, filed a lawsuit against SCB and several other banks asserting conspiracy claims under the ATA arising out of attacks in Iraq between 2004 and 2011. (Compl. ¶¶ 1, 12–723, *Freeman* v. *HSBC Holdings plc*, No. 14-cv-6601-PKC-CLP (E.D.N.Y. Nov. 10, 2014) (hereinafter, "*Freeman I*").) In 2019, the Honorable Pamela K. Chen dismissed

The Honorable Taryn A. Merkl                                                                                          -2-

the *Freeman I* claims with prejudice, issued a final judgment, and denied the plaintiffs' motion for reconsideration. *See* 413 F. Supp. 3d 67, 99 (E.D.N.Y. 2019). On January 5, 2023, the Second Circuit affirmed Judge Chen's dismissal of *Freeman I*. *See* 57 F.4th 66, 72 (2d Cir. 2023), *cert. pet. docketed*, No. 22-1117 (May 16, 2023). Other plaintiffs represented by the same counsel filed two copycat complaints asserting both conspiracy and aiding-and-abetting claims under the ATA, based on the same factual predicate as in *Freeman I*, which Plaintiffs refer to as *Freeman II*.[1] On June 5, 2020, Judge Chen dismissed all claims against SCB in the *Freeman II* cases. *Freeman* v. *HSBC Holdings plc*, 465 F. Supp. 3d 220, 235 (E.D.N.Y. 2020). The only reason final judgment was not entered in *Freeman II* is that the plaintiffs never resolved claims against a defaulting defendant, Bank Saderat. No discovery was ever authorized or taken in *Freeman II*.

   ***The Stephens Case.*** Plaintiffs' request here also appears to be made on behalf of another set of plaintiffs and separate counsel who have no role in the *Freeman* cases. That case, called *Stephens* v. *HSBC Holdings plc*, No. 18-cv-7439-PKC-CLP (E.D.N.Y.), has been stayed since its inception, pending various threshold decisions in the *Freeman* cases, including decisions on dispositive motions. (Minute Entry, *Stephens*, No. 18-cv-7439-PKC-CLP (E.D.N.Y. June 27, 2023).)

   ***The Subpoena.*** More than eighteen months after Judge Chen dismissed *Freeman II*, Plaintiffs issued a subpoena to non-party SCB for banking records. (Ex. 1.) In response, SCB agreed to search for and produce correspondent banking transaction records referencing hundreds of names that Plaintiffs identified as relevant to *Bartlett*. But SCB objected to producing those records in the absence of a protective order and agreed to begin producing documents only after a suitable protective order was entered by Your Honor ensuring that the records produced would remain confidential and be used only in the *Bartlett* action. (Ex. 2, Email from A. Ungar to H. van Hemmen dated June 8, 2022.) Plaintiffs' counsel understood and agreed to these conditions, and after the Protective Order issued, Plaintiffs' counsel confirmed to SCB how to properly designate the information produced to ensure it was covered by the Protective Order. (*Id.*) When producing documents, SCB repeated that the information was being "provided to [Plaintiffs' counsel] for use in the above-referenced matter only"—*i.e.*, *Bartlett*. (Ex. 3, Letter from J. Obie to A. Ungar dated Nov. 4, 2022.) In total, SCB searched for transaction data referencing 233 names that Plaintiffs provided, which resulted in the production of 53,486 transaction records for the period between 2003 and 2021.

   ***Requests To Amend the Dismissed Complaints in Freeman II and Stephens.*** Separately, in late 2021, after claims against SCB and other defendants in *Freeman II* had been dismissed, the plaintiffs moved to file a second amended complaint. (Mot. to Amend, *Freeman II*, No. 18-cv-7359-PKC-CLP (E.D.N.Y. Aug. 11, 2021) (ECF No. 95).) Plaintiffs did not attempt to obtain discovery from SCB. Judge Chen ultimately held a status conference on June 27, 2023. Noting that the standard for assessing the futility of a proposed amended pleading essentially

---

[1]   *See* Compl., *Freeman* v. *HSBC Holdings plc*, No. 18-cv-7359-PKC-CLP (E.D.N.Y. Dec. 26, 2018) (ECF No. 1), *and* Compl., *Bowman* v. *HSBC Holdings plc*, No. 19-cv-2146-PKC-CLP (E.D.N.Y. Apr. 11, 2019) (ECF No. 1). On July 13, 2023, Judge Chen consolidated *Freeman II* and *Bowman*. (Order, *Freeman*, No. 18-cv-7359-PKC-CLP (E.D.N.Y. July 13, 2023).)

The Honorable Taryn A. Merkl                                                                                          -3-

mirrors the standard applicable to a motion to dismiss, Judge Chen authorized the *Freeman II* plaintiffs to file a second amended complaint in lieu of filing a formal motion for leave to amend, and set a briefing schedule for renewed motions to dismiss. (Minute Entry, *Freeman II*, No. 18-cv-7359-PKC-CLP (E.D.N.Y. June 27, 2023).) Because *Stephens* had been stayed from its inception pending the resolution of various issues in the *Freeman* cases, at the June 27, 2023 conference, Judge Chen also granted leave for the *Stephens* plaintiffs to file an amended complaint by September 26, 2023. (*Id.*) The cases otherwise remain stayed and no discovery has been authorized in any of them.

***Plaintiffs' Vague Request To Use Subpoenaed SCB Information.*** Shortly before the June 27, 2023 conference before Judge Chen, Plaintiffs' counsel contacted SCB directly seeking a blanket consent to use information SCB produced in *Bartlett* to support their proposed amended complaint in *Freeman II*. (Ex. 4, Email from M. Radine to J. Obie dated June 19, 2023.) Thereafter, SCB's counsel attempted to meet and confer and repeatedly requested that Plaintiffs' counsel specify the particular information from the reams of banking transaction data produced that Plaintiffs here thought they needed for an amended complaint in *Freeman II*. Plaintiffs' counsel evaded those requests by making only vague assertions about "Hezbollah-affiliated entities" and providing an "initial list" of 26 names that are referenced in some way in nearly 23,000 of the 53,000 total transactions produced by SCB in this case. (Ex. 5, Email from M. Radine to A. Finn dated July 12, 2023.) In their Letter Motion, Plaintiffs now contend that they seek to share and use: (1) unspecified names of "alleged Hezbollah-affiliated entities and individuals," (2) names of unspecified banks "which held the relevant accounts," and (3) unspecified dollar amounts and dates of transactions processed on behalf of those entities and individuals. (Letter Motion at 2.) Plaintiffs have yet to provide SCB a complete list of the names, dollar amounts, or dates of particular transactions that they seek to use in *Freeman II* and *Stephens*.

**B.      Plaintiffs Have Not Demonstrated Any "Extraordinary Circumstance or Compelling Need" Required To Modify the Protective Order.**

The Protective Order that has been in place since the outset of discovery in this matter is clear: Producing parties, including non-parties like SCB, may designate as confidential "customer lists, financial information," and "other potentially sensitive information." (Protective Order at 4.) Upon designation as confidential, the Protective Order mandates that the information "shall not be furnished, shown, or disclosed" to anyone other than those authorized as part of this case, and is only "to be used in good faith in relation to this case . . . and for no other purpose." (*Id.* at 6, 8.) At the conclusion of the case, that information "shall be returned to the Designating Party or shall be destroyed" at the request of the producing party. (*Id.* at 14–15.) There is no dispute that the information produced here by SCB was properly designated as confidential and falls within the scope of the Protective Order. And SCB expressly relied upon the Protective Order in making its productions, as described above. (Ex. 2.)

Ignoring the plain terms of the Protective Order, Plaintiffs argue that courts "generally permit using discovery obtained in one case in another case" absent "bad faith." (Letter Motion at 2.) That is not the law. Where, as here, a party seeks to use information subject to a protective order in a manner inconsistent with that order, that party bears the burden to demonstrate

The Honorable Taryn A. Merkl -4-

why a modification of the order is warranted. *In re MTBE Prods. Liab. Litig.*, 60 F. Supp. 3d 399, 403–04 (S.D.N.Y. 2014) ("Plaintiffs—who have stipulated to both protective orders—bear the burden of persuading the Court to dissolve them prematurely."). Courts in this Circuit apply "a strong presumption against modifying protective orders, because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence." *Arcesium LLC* v. *Advent Software, Inc.*, 2022 WL 621973, at *3 (S.D.N.Y. Mar. 3, 2022) (citing *Kiobel* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018)); *see also S.E.C.* v. *TheStreet.com,* 273 F.3d 222, 229–30 (2d Cir. 2001) ("It is . . . presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied.").[2]

When a producing party like SCB relies on a protective order to produce documents, "a District Court should not modify a protective order granted under Rule 26(c) absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *TheStreet.com,* 273 F.3d 222 at 229 (cleaned up); *Dorsett* v. *County of Nassau*, 289 F.R.D. 54, 68-69 (E.D.N.Y. 2012) (same). This high burden is enhanced when, as here, the producing party is a non-party to the litigation. *Cohen* v. *City of New York*, 255 F.R.D. 110, 117 (S.D.N.Y. 2008) (courts should "take steps to relieve a nonparty" of prejudicial burden "even when such accommodations might not be provided to a party"); *Antman* v. *Uber Techs., Inc.*, 2016 WL 164294, at *2 (N.D. Cal. Jan. 14, 2016) ("[N]onparties subject to production subpoenas . . . deserve extra protection from the courts.").

Plaintiffs do not even attempt to meet their burden to demonstrate why modifying the Protective Order is warranted here. Plaintiffs do not contend that the Protective Order was improvidently granted, and the desire of Plaintiffs' counsel to use confidential information they learned in one case to try to revive dismissed claims in other cases is neither proper nor compelling. Rather, it is contrary to the fundamental principles of how discovery is supposed to work in civil litigation in federal courts. As one court explained, "discovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim, not in order to permit a plaintiff to find out whether he has such a claim, and still less to salvage a lawsuit that has already been dismissed for failure to state a claim." *Podany* v. *Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004). Here, Plaintiffs have never stated a claim against SCB, and the Federal Rules of Civil Procedure do not provide for discovery in order to formulate a complaint. *Cf.* Fed. R. Civ. P. 27 (authorizing limited pre-complaint discovery to preserve testimony). In part for this reason, at least one court has rejected a similar request by a party to use discovery obtained in one case to try to plead a claim in another. *Arcesium*, 2022 WL 621973, at *3–4 (rejecting a request "to permit [a party] to use discovery material protected under [a] Protective Order to draft their Proposed Complaint against [the other party] in a new and separate suit" even though the complaint would "involve the same parties, relate to the same [product] and

---

[2] Although Section C of the Protective Order states that a party may file a "letter motion to request permission to use Discovery Material in another case or matter" (Protective Order at 3), that statement concerns the procedure by which a party may seek to modify the restrictions contained in the Protective Order and does not in any way alter the normal standard to modify a protective order in this Circuit.

The Honorable Taryn A. Merkl -5-

the same contractual relationship, and would be filed in the same court"). Further, as courts have recognized, Plaintiffs' assertion about "efficiency" in having their counsel use confidential SCB bank records for another case (Letter Motion at 3) is "hardly an extraordinary or compelling circumstance" justifying the modification of a protective order. *Med. Diagnostic Imaging, PLLC* v. *Carecore Nat'l, LLC*, 2009 WL 2135294, at *2 (S.D.N.Y. 2009).

None of the cases on which Plaintiffs rely supports their contention that sharing discovery between two cases is common when, as here, a protective order that has been in place since the outset strictly forbids it. In fact, as one decision on which Plaintiffs rely recognized, courts often "limit such secondary use of discovery" including, as here, through the issuance of a protective order. *Duling* v. *Gristede's Operating Corp.*, 266 F.R.D. 66, 76–77 (S.D.N.Y. 2010) (collecting cases). None of Plaintiffs' cited cases involved the modification of a preexisting protective order, and all recognized the well-established limits on sharing protected information across different cases. For example, one case cited by Plaintiffs involved a party seeking a new protective order prospectively limiting the use of discovery. *Dove* v. *Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). Here, SCB specifically relied upon the Protective Order limiting use of discovery material to this action when it produced these documents. And in another case, the court actually imposed a protective order prohibiting the use of documents in another action unless Plaintiffs would "identify them" and show why they are "responsive to actual documents requests served in that [other] action." *Duling*, 266 F.R.D. at 75. That is not what the Protective Order here allows, and in any case Plaintiffs have not identified with any specificity the information they seek to use, nor has discovery been authorized in the dismissed and stayed *Freeman* cases.

In addition, Plaintiffs will not be unreasonably prejudiced in any way by adhering to the Protective Order. The Letter Motion fails to explain why any of SCB's confidential bank records produced in this action are actually needed to file amended complaints in the *Freeman* or *Stephens* actions. Instead, Plaintiffs seek open-ended permission from this Court to use unspecified information their counsel may wish to pluck from SCB's confidential banking records about tens of thousands of transactions in a complaint in an entirely different case. The Protective Order never contemplated such a use, and the Federal Rules of Civil Procedure do not allow it.

\*   \*   \*

In sum, the Court should reject Plaintiffs' attempt to use this case to obtain pre-complaint discovery in separate cases where discovery has not been authorized, all in clear violation of the plain terms of the Protective Order. Plaintiffs' Letter Motion should be denied.

Respectfully,

*/s/ Andrew J. Finn*
Andrew J. Finn

(Attachments)

cc:   All counsel of record (via ECF)