

190 Moore Street, Suite 272, Hackensack, New Jersey  07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York  10018
T: 212 354 0111
www.osenlaw.com

August 1, 2023

**VIA ECF**

Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-00007
> Reply to Defendants' and Standard Chartered Bank's Opposition to Plaintiffs' Motion for Leave to Use Discovery in Another Action

Dear Magistrate Judge Merkl:

We write in reply to objections lodged by Defendants, ECF No. 338 ("Def. Ltr."), and Standard Chartered Bank ("SCB"), ECF No. 339 ("SCB Ltr."), a defendant in the *Freeman* Actions, to Plaintiffs' motion for leave to use transactional records produced in *Bartlett* by non-parties SCB and KBC Bank ("KBC") in the *Freeman* Actions ("Motion"), ECF No. 335. KBC does not object to the Motion.

Defendants and SCB attempt to frame Plaintiffs' request as one to modify the PO, which they purport (incorrectly) comes with a "high burden." Def. Ltr. at 2. This misconstrues the PO and the agreement the parties reached: the PO need not be modified to use records in another litigation because the PO itself already contemplates sharing of information in another case: "A Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." PO ¶ C. This provision is independent of the *modification* provision in paragraph K of the PO, which permits the parties to move for modification of the PO: "This Protective Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information." These separate provisions are not redundant.

The provision for the use of records in another litigation was negotiated-for by the parties— Plaintiffs specifically proposed it in response to Defendants' proposal of the sentence before it, limiting the use of records to this action in the first instance. The provision ensures that requesting parties can use records produced pursuant to the PO in "another case or matter" (Plaintiffs later added "matter" to cover law enforcement requests), subject to Court supervision ensuring that the information is used in other cases for a good faith purpose (as set out in the cases Plaintiffs identified in their prior letter.)

SCB, recognizing the effect of the provision, argues in a footnote that the provision only "concerns the *procedure* by which a party may seek to modify the restrictions contained in the Protective Order and does not in any way alter the normal standard to modify a protective order in

this Circuit." SCB Ltr. at 4 n.2 (emphasis added). SCB and its counsel, of course, were not a party to the drafting of the PO. Its "interpretation" of the PO is incorrect—it is not a modification provision at all, which is in paragraph K, and it is not limited to setting out the "letter motion" procedure (which is absent from paragraph K because the *method* of contacting the court—letter motion vs. formal motion—was not even raised by the parties in their exchanges of proposed language as it was not a significant issue).

That said, Plaintiffs can easily meet the modification standard misstated by Defendants and SCB, as well as their other assorted objections.

**Defendants' Stated Objections**

Defendants are not a "Producing Party" or a "Designating Party" as defined by the Protective Order ("PO") but claim an interest in the limited disclosure of information produced by KBC and SCB, citing *Solow v. Conseco, Inc.*, No. 06-cv-5988 (BSJ) (THK), 2008 WL 190340, at *4 (S.D.N.Y. Jan. 18, 2008). Def. Ltr. at n.2. But *Solow* held that a non-producing party has standing to object where it demonstrates that the records sought are "private, confidential, privileged, or highly sensitive" for *it*. Defendants have made no such showing and, as explained below, <u>Plaintiffs had no intention of identifying *Bartlett* Defendants in the *Freeman* amended complaint and will not do so</u>, completely obviating their primary concerns. Accordingly, the Court need not consider their objections; nonetheless, Plaintiffs address them below.

Defendants argue Plaintiffs must meet the standard for modifying a protective order delineated in *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979). "Modification" is not required here, as explained above. But it is also inapplicable because—as Defendants omit—the *Martindell* standard only applies where "there has been reasonable reliance by a party or deponent" on the protective order in producing the records at issue. *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) (citing *Martindell*, 594 F.2d at 296). Absent such reliance, "the *Martindell* standard 'never c[o]me[s] into play.'" *In re EPDM*, 255 F.R.D. 308, 319 (D. Conn. 2009) (citing *TheStreet.Com*, 273 F.3d at 234). As explained below, the productions here were not made "in reliance" on the PO.

Defendants' other objections are no more meritorious. *First*, Defendants object that the *Bartlett* Plaintiffs are not fully co-extensive with the plaintiffs in the *Freeman* Actions, which include the *Stephens* case, and argue that that "distinction is critical." Def. Ltr. at 1 (emphasis in original).[1] In reality, over 1,200 plaintiffs overlap, and the fact that *a few percent* do not is hardly "critical." On the contrary, even third parties (let alone substantially the same parties) can seek to access records if they satisfy the factors for permissive intervention under Federal Rule of Civil Procedure 24(b). *See In re EPDM*, 255 F.R.D. at 314-17 ("every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders") (quoting *EEOC v. Nat'l Children's Ctr., Inc.*, 146 F.3d

---

[1] Contrary to Defendants' fevered speculation that "information obtained in this case may have already been shared with the 'plaintiffs in *Stephens* [who are] represented by separate counsel,'" Def. Ltr. at 3, Plaintiffs here have shared no documents of any kind with *Stephens* counsel. The inclusion of the *Stephens* plaintiffs in the Motion is intended purely for the benefit and convenience of the *Freeman* court, which would otherwise be compelled to simultaneously review motions to dismiss with divergent factual allegations. *Bartlett/Freeman* counsel have no economic interest in the *Stephens* case or any other motive for including them in this motion.

1042, 1045 (D.C. Cir. 1998)). The *Freeman* and *Stephens* plaintiffs easily meet the intervention requirements here.[2]

*Second,* Defendants argue that granting the Motion "would signal to both Lebanese authorities and the customers from whom Defendants seek waivers that the discovery sought would likewise be used in other contexts far beyond their stated purpose." Def. Ltr. at 1-2. But the express terms of the PO set forth a procedure by which "Discovery Material [that] has been produced pursuant to a customer's waiver of Lebanese Bank Secrecy protections" may be subject to "a motion to request permission to use Discovery Material in another case or matter." PO ¶ C. Thus, Lebanese authorities and customers from whom Defendants seek waivers are already on notice of the possibility that a request for permission to use Discovery Material in another case may occur even as to records originating from Lebanon. However, no such request is implicated here, where the records at issue are resident in New York and are subject to both this Court's subpoena power and the *Freeman* court's independent power to grant discovery.

*Third,* Defendants argue that Plaintiffs have "conspicuously" failed to "promise that they would not make allegations identifying the *Bartlett* Defendants in the *Freeman* Actions or in *Stephens*." Def. Ltr. at 3. Defendants' argument has no basis in law, as courts may modify protective orders to allow discovery to be used against the same defendants which were signatories to those orders. *See, e.g.*, *Charter Oak Fire Ins. Co. v. Electrolux Home Prod., Inc.*, 287 F.R.D. 130, 131 (E.D.N.Y. 2012) (granting the plaintiff's motion to modify the protective order "to allow documents and testimony produced in this case to be shared by lawyers representing plaintiff, or one of its parent or subsidiary companies, in other cases against [the same defendant] Electrolux"). Moreover, many of the transactions at issue do not even involve a *Bartlett* Defendant at all. The sole focus of the Motion is information involving the *Freeman* defendants' customers who are affiliated with or alter egos of Hezbollah. Accordingly, as stated above, to the extent that a *Bartlett* Defendant happens to appear in the transactional chain of a particular relevant transaction involving a *Freeman* defendant customer, that fact would <u>not</u> be referenced in the amended *Freeman* (or *Stephens*) complaint.

*Fourth,* Defendants contend that Plaintiffs' failure to list every transaction which may potentially be incorporated into the *Freeman* Action amended complaints would "make it virtually impossible for Defendants and the Court to ensure that Plaintiffs comply with the Protective Order and the bounds of any order granting their request." Def. Ltr. at 3. In authorizing parties to use information produced from one case in another, courts do not require an itemized list of every record. *See, e.g., Charter Oak Fire Ins.*, 287 F.R.D. at 134–35 (modifying a protective order for generalized use of records in "any other pending or future action" relating to the same facts).

Nevertheless, Plaintiffs do not object to providing the Court, Defendants, and SCB with a final list of transactions prior to the filing of the *Freeman* amended complaint. Plaintiffs' counsel have already provided SCB with its preliminary list of names of entities and individuals and a

---

[2] Specifically: (i) their request to use the records is timely, *In re EPDM*, 255 F.R.D. at 315 ("The present suit remains ongoing, therefore the motion to intervene is timely."); (ii) the cases "share[] a common question of law or fact with the underlying suit," *id.* at 316; (iii) the *Freeman* and *Stephens* plaintiffs have "an independent basis of jurisdiction" for their suits (which they do not even need to demonstrate in these circumstances where they are "asking the court to exercise a power it undoubtedly already has—the power to modify the protective order in the underlying litigation"), *id.* at 317; and (iv) "defendants have not shown that any undue delay or prejudice to the adjudication of their rights in the present case would result" from the *Freeman* and *Stephens* plaintiffs' requests for this relief, *id.*

comprehensive spreadsheet containing the universe of potentially relevant transactions that could be implicated by the Motion, but the list is not yet finalized because counsel continue to draft the amended complaint and contend with both technical challenges pertaining to the structure of the data SCB has produced and the complexity of mapping Hezbollah and IRGC money laundering networks.

**SCB's Stated Objections**

SCB understandably does not want any subset of records it produced in this case to be used in a manner that strengthens the allegations in *Freeman* and potentially increases its risk of future civil liability. However, it articulates no burden or unfair prejudice resulting from the Motion, and Plaintiffs have already stated repeatedly that the records in *Freeman* will be used with equivalent protections. *See Charter Oak Fire Ins. Co.*, 287 F.R.D. at 134 ("because the plaintiff in this action and any related action would be bound by the Protective Order, there will not be public dissemination, which is what the Protective Order in this case was designed to prevent").

Moreover, SCB's rendering of the governing legal standard is incorrect. As stated above, a party *opposing* modification of a protective order must first demonstrate that it reasonably relied on such order when producing documents. In the Second Circuit, courts consider four factors in assessing whether a party has reasonably relied on a protective order such that its modification would be inappropriate: (1) its scope; (2) its language; (3) the level of inquiry the court undertook before granting it; and (4) the nature of the parties' reliance on it. *See Charter Oak Fire Ins. Co.*, 287 F.R.D. at 132; *In re EPDM*, 255 F.R.D. at 318.

Only if such reliance is demonstrated will the *Martindell* framework[3] cited by the *Bartlett* Defendants "c[o]me into play," requiring the movant demonstrate "a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need," *TheStreet.Com*, 273 F.3d at 234. *See also Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 n.7 (2d Cir. 2004); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 342 (S.D.N.Y. 2003) (finding "the heightened 'extraordinary circumstances' burden for unsealing documents … not appropriate given the open-ended and unilateral deference to the parties, the plain language of the Protective Order, and the implications of a contrary interpretation").

SCB's reliance argument that it only produced records responsive to the *Bartlett* subpoena because the PO in this case "strictly forbids" their use in other litigation, SCB Ltr. at 5, is unsupported by these four factors.

*First*, unlike the narrow protective order in *Martindell* which covered only the "depositions, including transcripts of testimony and documents furnished by the defendants, [which] were to be made available only to the parties and their counsel and not to be used for any purpose other than the preparation for and conduct of the litigation," *id.* at 293, the PO in *Bartlett* comprises "[a] blanket protective order [that] grants sweeping protection to most, if not all, discovery materials produced in a litigation, even discovery material that a party would have been required to disclose in the absence of a protective order." *In re EPDM*, 255 F.R.D. at 319.

---

[3] The Circuit in *Martindell* affirmed the district court's refusal to modify the protective order in that civil case and provide the government access to pre-trial testimony as part of a criminal investigation to bring perjury and obstruction of justice charges against those deponents. *See id.* at 296-97. The court concluded that the deponents had only agreed to testify in reliance on the protective order and would otherwise have invoked their Fifth Amendment rights. *See id.* at 293.

"Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *Id.* (quoting *Pub. Citizen v. Liggett Grp., Inc.*, 858 F.2d 775, 790 (1st Cir. 1988)).

*Second*, the express language of the PO in this case does not lend itself to reasonable reliance that it will afford permanent secrecy. When "certain non-parties are permitted to access the confidential information, and the parties contemplated the Confidentiality Order may be modified with a court order[, t]hough these provisions do not completely undercut the parties' reliance, the language does reduce the reasonableness of the parties' reliance on the Confidentiality Order for 'absolute and unchanging confidentiality.'" *Pasiak v. Onondaga Cmty. Coll.*, No. 616-cv-1376 (TJM) (TWD), 2020 WL 2781616, at *2 (N.D.N.Y. May 29, 2020) (citing *In re EPDM*, 255 F.R.D. at 321). Thus, reliance is "not reasonabl[e]" where the order "specifically contemplates that relief from the provisions of the order may be sought at any time." *In re EPDM*, 255 F.R.D. at 320 (citation omitted).

The PO in this case expressly contemplates not only the relatively common provision for relief found in paragraph K but, as explained above, it also provides a specific mechanism for seeking to use discovery in other cases or matters. The PO further contemplates the need for disclosure to non-parties, setting up specific procedures for making such disclosures to, *inter alia*, experts or non-testifying consultants who are employed or retained by a party, professional vendors, any mediator or arbitrator engaged by the parties, and trial and deposition witnesses who have signed the PO's annexed confidentiality agreement. PO ¶ E(1)-(3). Finally, the PO itself sets no time limit on any challenge to a confidentiality designation. PO ¶ H.

Moreover, where orders are limited to pretrial proceedings, they may not justify reliance. As the Second Circuit noted in *TheStreet.Com*:

> [A]ppellants ... could not have relied on the permanence of the protective order.... By its very terms, [the order] was applicable solely to the pretrial stages of the litigation ... [and] would be reconsidered upon commencement of the trial.... Any reliance on such a sweeping temporary protective order simply was misplaced.

273 F.3d at 231 (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987)) (alterations in *TheStreet.Com*). Here, confidentiality presumptively expires at least for some materials at trial. PO ¶ L. SCB cannot therefore tenably argue that it relied on the PO to provide absolute and unchanging confidentiality of Discovery Material.

*Third*, a protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause. *See Fournier*, 242 F. Supp. 2d at 341. *See also In re EPDM*, 255 F.R.D. at 319 (holding that "*[s]tipulated* blanket orders are even less resistant to a reasonable request for modification," as the parties never had to make a "good cause" showing under Rule 26(c) of the need for the protection of the records). Here, the PO was negotiated and stipulated to between the parties with no hearing to show good cause.

*Fourth*, the "classic situation in which a party 'relies' on a protective order is where the party creates material during the course of the litigation on the understanding that it will be kept confidential—for example, by signing a settlement document or by giving confidential testimony." *Allen v. City of New York*, 420 F. Supp. 2d 295, 300–01 (S.D.N.Y. 2006) (internal citations omitted). *See also Palmieri v. State of N.Y.*, 779 F.2d 861, 865 (2d Cir. 1985) That was certainly

true in *Martindell*, involving testimony in a civil case where deponents had waived their Fifth Amendment rights, 594 F.2d at 295-96, but it is hardly the case here—**SCB would have been compelled to produce the Discovery Material even in the absence of a protective order.** *See In re EPDM*, 255 F.R.D. at 323 (reliance "not reasonable" as to materials "they would have been compelled to produce even in the absence of such an order").

Despite demonstrating that SCB could not have relied on the PO as the sole basis for producing records it was legally *required* to provide, Plaintiffs can also satisfy the standard for "compelling need" or "extraordinary circumstances" (although they do not need to). The court in *Tradewinds Airlines, Inc. v. Soros*, No. 08-cv-5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) held this standard satisfied upon the following showing also present here:

> [T]here is a compelling need for modification here to avoid considerable unnecessary effort and expense. Plaintiffs' claims in the North Carolina action are closely related to the claims brought before this Court. Without modification of the Protective Order, the same discovery materials will likely have to be reviewed and re-produced, needlessly causing duplication of effort and extra expense. And importantly, because the proposed modifications maintain the same protections regarding public disclosure, there is no significant prejudice to any party.

The court in *Charter Oak Fire Ins.* held similarly, finding "a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations [proceeding in Canada] against Electrolux, especially in the absence of any discernible prejudice to Electrolux. If the Protective Order is not modified, plaintiff will be forced to litigate the exact same issue in each and every case." 287 F.R.D. at 134. Moreover, the modification there applied to "pending and future actions." *Id.* It stands to reason that the Court should allow the use of discovery materials by plaintiffs bringing cases proceeding in the same courthouse based on similar facts and circumstances who are already in possession of the information.

SCB argues that Plaintiffs cannot seek to "revive dismissed claims in other cases" or engage in "pre-complaint discovery." However (as SCB acknowledges), the *Freeman* court has already granted the plaintiffs leave to amend their complaints—but not (just) to add new factual allegations, but because (as SCB omits) its dismissal of the *Freeman* plaintiffs' aiding and abetting claims has, in the plaintiffs' view, been called into question by subsequent Second Circuit decisions. *See generally Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021). SCB also omits that it will face no burden of "pre-complaint discovery," as these records were *already* produced and are in Plaintiffs' possession. SCB only asks this Court to prevent the *Freeman* court from deciding the sufficiency of the claims in that case based on what those plaintiffs already know – *i.e.,* adjudication on the merits. *See In re EPDM*, 255 F.R.D. at 316 (rejecting argument that discovery in other case "has not yet commenced").

In sum, subject to the confidentiality safeguards described above and in the Proposed Order attached as <u>Exhibit 1</u> to the Motion, Plaintiffs respectfully request that the Court permit the *Freeman* plaintiffs to reference certain information obtained in *Bartlett* third-party discovery in the *Freeman* Actions. Given the <u>September 26, 2023</u>, deadline for filing the amended complaint in *Freeman*, we respectfully request the Court address this matter as expeditiously as it can, subject of course to its availability and the requirements of its docket.

**Letter to Honorable Taryn A. Merkl, U.S.M.J.**
**August 1, 2023**
**Page 7 of 7**

                                      Respectfully submitted,

                                      /s/ Gary M. Osen


cc:      Hon. Pamela Chen, U.S.D.J.
           All counsel, including for SCB (via ECF)
           Counsel for KBC Bank
           Counsel for *Stephens* plaintiffs