UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

ROBERT BARTLETT, *et al.*,                     :
                                               :
            Plaintiffs,                         :        **Case No. 19-cv-7 (CBA)(TAM)**
                                               :
      -against-                                 :
                                               :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,  :
*et al.*,                                        :
                                               :
            Defendants.                         :

---------------------------------------------------------------------x

**PLAINTIFFS' RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE MERKL'S
SEPTEMBER 27, 2023, BENCH RULING AND MINUTE ORDER**

## TABLE OF CONTENTS

STANDARD OF REVIEW .............................................................................................. 1

FACTUAL BACKGROUND OF THE *FREEMAN* ACTIONS ..................................... 1

PROCEDURAL HISTORY ........................................................................................... 4

ARGUMENT .................................................................................................................. 8

I.   UNDER THE CONTROLLING LEGAL STANDARD, THE COURT SHOULD HAVE PERMITTED THE LIMITED USE OF THIRD-PARTY INFORMATION IN THE *FREEMAN* ACTIONS UNDER THE TERMS OF THE PROTECTIVE ORDER. ............. 8

II.  EVEN IF THE PROTECTIVE ORDER'S OWN LANGUAGE WERE INSUFFICIENT TO WARRANT PERMITTING THE LIMITED USE OF THIRD-PARTY INFORMATION IN THE *FREEMAN* ACTIONS, THE COURT STILL SHOULD HAVE GRANTED PLAINTIFFS' REQUESTED RELIEF UNDER THE LEGAL STANDARD ARTICULATED IN *MARTINDELL* ................................................................................ 12

   A.   SCOPE OF THE PROTECTIVE ORDER ..................................................... 13

   B.   LANGUAGE OF THE PROTECTIVE ORDER .......................................... 15

   C.   DEGREE OF INQUIRY COURT UNDERTOOK BEFORE GRANTING THE PROTECTIVE ORDER ................................................................. 16

   D.   NATURE OF THE PARTIES' RELIANCE ON THE PROTECTIVE ORDER ........... 17

   E.   THE DECISION ERRONEOUSLY SETS FORTH THE SCOPE AND NATURE OF THE INFORMATION AT ISSUE ................................................................. 21

III. ALTHOUGH THE DECISION DOES NOT ADDRESS WHETHER THE STANDARD FOR EXTRAODINARY CIRCUMSTANCES HAS BEEN MET, THE CIRCUMSTANCES HERE CLEARLY SATISFY THAT STANDARD .......................... 22

IV.  THE DECISION DOES NOT EXPRESSLY ADDRESS WHETHER ITS DENIAL OF PLAINTIFFS' MOTION APPLIES TO INFORMATION KBC BANK CONSENTED TO DISCLOSE PURSUANT TO PLAINTIFFS' PROPOSED ORDER. ................................ 24

CONCLUSION .............................................................................................................. 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Allen v. City of N.Y.*,
    420 F. Supp. 2d 295 (S.D.N.Y. 2006) ................................................................. 18

*Arcesium LLC v. Advent Software, Inc.*,
    No. 20-cv-04389 (MKV), 2022 U.S. Dist. LEXIS 37781 (S.D.N.Y. Mar. 3, 2022)................ 18

*Bartlett v. Société Générale De Banque Au Liban Sal*,
    19-CV-00007 (CBA) (VMS)
    2023 U.S. Dist. LEXIS 56982 (E.D.N.Y. Mar. 31, 2023)....................................... 5, 11

Bartlett v. Société Générale De Banque Au Liban Sal,
    19-CV-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921 (E.D.N.Y. Nov. 25, 2020) ....... 4

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*,
    287 F.R.D. 130 (E.D.N.Y. 2012)................................................................. 13, 20, 23

*Devlin v. Transportation Commc'ns Int'l Union*,
    No. 95-cv-0742 (JFK) (JCF), 2000 U.S. Dist. LEXIS 264 (S.D.N.Y. Jan. 13, 2000) ............. 11

*Dove v. Atl. Cap. Corp.*,
    963 F.2d 15 (2d Cir. 1992) ...................................................................... 10, 11

*Duling v. Gristede's Operating Corp.*,
    266 F.R.D. 66 (S.D.N.Y. 2010) ...................................................................... 20

*Fournier v. McCann Erickson*,
    242 F. Supp. 2d 318 (S.D.N.Y. 2003) ............................................................ 16, 17

*Freeman v. HSBC Holdings plc*,
    413 F. Supp. 3d 67 (E.D.N.Y. 2019) ................................................................. 2

*Freeman v. HSBC Holdings plc*,
    465 F. Supp. 3d 220 (E.D.N.Y. 2020) ............................................................... 2

*Freeman v. HSBC Holdings plc*,
    57 F.4th 66 (2d Cir. 2023)........................................................................... 2

*Honickman v. BLOM Bank SAL*,
    6 F.4th 487 (2d Cir. 2021)........................................................................... 2

*Ideal Steel Supply Corp. v. Anza*,
    652 F.3d 310 (2d Cir. 2011) ........................................................................ 11

*In re Agent Orange Prod. Liab. Litig.*,
   821 F.2d 139 (2d Cir. 1987) ........................................................................................ 15, 16

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*,
   101 F.R.D. 34 (C.D. Cal. 1984) ....................................................................................... 14

*In re EPDM*,
   255 F.R.D. 308 (D. Conn. 2009) ............................................................................... *passim*

*In re Iwasaki Elec. Co.*,
   No. 19-82 (TPG), 2005 U.S. Dist. LEXIS 10185 (S.D.N.Y. May 24, 2005) ................... 8, 9, 10

*In re September 11 Litig.*,
   262 F.R.D. 274 (S.D.N.Y. 2009) ..................................................................................... 13

*Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*,
   No. 05-cv-2745 (JGK) (RLE), 2010 U.S. Dist. LEXIS 19510 (S.D.N.Y. Mar. 2, 2010) ........ 14

*Kaplan v. Lebanese Canadian Bank, SAL*,
   999 F.3d 842 (2d Cir. 2021) ............................................................................................. 2

*Lugosch v. Pyramid Co.*,
   435 F.3d 110 (2d Cir. 2006) ............................................................................................ 14

*Martindell v. International Tel. & Tel. Corp.*,
   594 F.2d 291 (2d Cir. 1979) ...................................................................................... 13, 18

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ........................................................................................................ 11

*Palmieri v. State of N.Y.*,
   779 F.2d 861 (2d Cir. 1985) ............................................................................................ 18

*Pasiak v. Onondaga Cmty. Coll.*,
   No. 616- cv-1376 (TJM) (TWD), 2020 WL 2781616 (N.D.N.Y. May 29, 2020) ................... 15

*S.E.C. v. TheStreet.com*,
   273 F.3d 222 (2d Cir. 2001) ............................................................................... 10, 13, 15

*TradeWinds Airlines, Inc. v. Soros*,
   No. 08-cv-5901 (JFK), 2016 U.S. Dist. LEXIS 94735 (S.D.N.Y. July 20, 2016) ............. 13, 22

*Twitter, Inc. v. Taamneh*,
   143 S. Ct. 1206 (2023) ..................................................................................................... 2

*U.S. Philips Corp. v. Iwasaki Elec. Co.*,
   142 Fed. Appx. 516 (2d Cir. 2005) .............................................................................. 8, 10

*United States v. Calderon*,
   No. 15-cr-25 (JCH), 2017 U.S. Dist. LEXIS 200295 (D. Conn. Dec. 1, 2017) ...................... 19

*United States v. Hooker Chemicals & Plastics Corp.*,
   90 F.R.D. 421 (W.D.N.Y. 1981).......................................................................................... 20

*United States v. Ngono*,
   No. 16-cr-367 (PAC), 2021 U.S. Dist. LEXIS 127499 (S.D.N.Y. July 8, 2021)................. 18

*Zobay v. MTN Grp. Ltd.*,
   2023 U.S. Dist. LEXIS 176598 (E.D.N.Y. Sept. 28, 2023)................................................ 24

**Statutes**

18 U.S.C. § 2333(d) ................................................................................................................... 2

28 U.S.C. § 636(b)(1)(A)........................................................................................................... 1

**Rules**

Fed. R. Civ. P. 45..................................................................................................................... 19

Fed. R. Civ. P. 72(a) .................................................................................................................. 1

Fed. R. Evid. 502(b).................................................................................................................. 21

Plaintiffs respectfully object, pursuant to Federal Rule of Civil Procedure 72(a), to Magistrate Judge Merkl's bench ruling issued during the September 27, 2023, status conference ("Bench Ruling") and accompanying Minute Entry and Order dated the same day (with the Bench Ruling, the "September 27, 2023, Order"), denying Plaintiffs' Letter Motion for Leave to Use Discovery in Another Action ("Motion to Use Discovery"). The transcript of the September 27, 2023, conference is attached hereto as **Exhibit 1**.

## STANDARD OF REVIEW

Congress has made clear that, while "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court .... A judge of the court may reconsider any pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Fed. R. Civ. P. 72(a) provides that when a non-dispositive pretrial matter is referred to a magistrate judge, parties have 14 days after being served with a copy of the magistrate judge's order to file objections. Plaintiffs respectfully submit that Magistrate Judge Merkl's Bench Ruling and accompanying Minute Entry and Order are clearly erroneous and contrary to law.

## FACTUAL BACKGROUND OF THE *FREEMAN* ACTIONS

The *Freeman v. HSBC Holdings plc* cases first commenced on November 10, 2014, five years before this case was commenced. These are *Freeman v. HSBC Holdings plc*, No. 14-cv-6601 (PKC) (CLP) (E.D.N.Y.) ("*Freeman I*") and *Freeman v. HSBC Holdings plc*, No. 18-cv-7359 (PKC) (CLP) (E.D.N.Y.) ("*Freeman II*") (the "Freeman Actions").[1] They are essentially a mirror image of *Bartlett*, in which almost entirely the same plaintiffs (approximately 99% of the 1,212 plaintiffs in the *Freeman* cases are also Plaintiffs in *Bartlett*) injured in essentially the same attacks

---

[1]     A third case, *Bowman v. HSBC Holdings plc*, No. 19-cv-2146 (PKC) (CLP) (E.D.N.Y.), was recently consolidated with *Freeman II*.

brought claims against foreign banks for assisting the terror networks responsible for those attacks under the Justice Against Sponsors of Terrorism Act ("JASTA") amendment to the Anti-Terrorism Act. Specifically, the *Freeman* plaintiffs allege that the defendants in that case – six European-headquartered banks and the UK subsidiary of an Iranian bank – knowingly provided substantial illegal banking services to agents or components of Iran's terror apparatus, which includes the Islamic Revolutionary Guard Corps ("IRGC") and Iran's Lebanese proxy, Hezbollah, the Foreign Terrorist Organizations ("FTOs") responsible for the attacks in both cases.[2]

*Freeman I* was dismissed on September 16, 2019, 413 F. Supp. 3d 67 (E.D.N.Y. 2019). The Second Circuit affirmed *on other grounds* on January 5, 2023, 57 F.4th 66 (2d Cir. 2023), and the Supreme Court denied certiorari on October 2, 2023, No. 22-1117. *Freeman II* was dismissed on June 5, 2020, 465 F. Supp. 3d 220 (E.D.N.Y. 2020), and the case was stayed (including plaintiffs' motion for leave to amend their complaint, *Freeman II*, ECF No. 95) pending the appeal in *Freeman I*, and then pending the outcome of *Twitter, Inc. v. Taamneh*, No. 21-1496, decided by the Supreme Court on May 18, 2023, 143 S. Ct. 1206 (2023). In the interim, the Court of Appeals clarified the scope of JASTA, 18 U.S.C. § 2333(d), in *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021), *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), and the *Freeman I* appellate decision.

During a June 27, 2023, status conference following the *Taamneh* decision, the *Freeman* plaintiffs renewed their request to amend *Freeman I* and *II* (first vacating the *Freeman I* judgment) to conform to the standards set forth in the intervening decisions, *see* June 27, 2023, *Freeman* Tr.,

---

[2]     As explained below, the *Freeman* Actions allege that the defendants "aided and abetted … the IRGC (FTO) and Hezbollah (FTO)" in committing the attacks at issue. *Freeman II*, Amended Complaint, ECF No. 72 ("FAC"), ¶ 3746. The FAC further alleges that "[e]ach Defendant knowingly provided substantial assistance, directly or indirectly, to the IRGC and its agents … and Hezbollah." *Id.*, ¶ 3747. In fact, there is an entire section of the FAC dedicated to allegations that Standard Chartered Bank facilitated transactions on behalf of "an Agent of Hezbollah." FAC § VI.K.2.c., pp. 181-184. Indeed, the term "Hezbollah" appears approximately 1,100 times in the FAC.

annexed hereto as **Exhibit 2**, at 8-10, and to incorporate records produced by third parties in *Bartlett*, *see id.* at 10:18-23 ("And part of what we envision in amending *Freeman II/Bowman* or consolidated case, if your Honor goes that way, would be to ask the district court in *Bartlett* to allow us to incorporate certain information we gathered from third-party subpoenas in that case and to include them in some form under seal or redacted form in a *Freeman* consolidated amended complaint.").

Plaintiffs suggested that the *Freeman* defendants "would have to enter into a protective order in the next 90 days or the defendants would have to sign the protective order in the *Bartlett* case so they could have the information," *id.*, 42:7-10, to which the court replied that "certainly that second option seems relatively easy to facilitate. And I would imagine the Court in *Bartlett* would be agreeable to that. Given especially that the protective order seems to contemplate that the information could be used in other cases or shared at least in the – for purposes of other cases. And you're the plaintiff there and obviously the plaintiff []here." *Id.*, 42:11-17. Present at that status conference was *Freeman* defendant Standard Chartered Bank ("SCB"), which "flagged the issue" that it had produced documents in *Bartlett* as a third-party "on the understanding that they would be used for that case." *Id.*, 43:25-44:2. The *Freeman* court noted the "interesting wrinkle," *id.*, 44:25, but agreed that the plaintiffs "ha[ve] a point that, you know, if a party obtains information in the context of one case, it doesn't really preclude them, let's say, if they think it establishes other liability against a third-party, I don't think, from using that information against a third-party, even to bring an action from the start as opposed to here may be using it in a context of an already initiated action." *Id.*, 46:5-11.

In a Minute Entry following the status conference, the *Freeman* court authorized the consolidation of *Freeman II* and a related case, *Bowman*, absent objection by the defendants (none

were filed). After ordering extensions pending resolution of the use of discovery issues in this case, the *Freeman* court ordered the plaintiffs to file their amended complaints by December 27, 2023.[3]

## PROCEDURAL HISTORY

Like the *Freeman* Actions, this case was brought by Plaintiffs (almost entirely overlapping with the *Freeman* plaintiffs) who were injured or killed in terrorist attacks in Iraq allegedly committed, planned, and authorized jointly by Hezbollah and the IRGC between 2004 and 2011. Both cases allege that the respective defendant financial institutions provided material support to various components of that terrorism apparatus. For example, the *Bartlett* Second Amended Complaint alleges that Defendants "aided and abetted Hezbollah in its commission of these acts of international terrorism, including the terrorist attacks that injured Plaintiffs, by providing substantial and vital assistance to Hezbollah and its IJO during the period between 2003 through 2011 and transferring hundreds of millions of dollars through the U.S. financial system for its benefit." ECF No. 189, ¶ 5703. In *Freeman*, Plaintiffs alleged that the defendants "aided and abetted … the IRGC (FTO) and Hezbollah (FTO) (and their agents and proxies acting in concert with them and at their direction), who were the persons … that committed the acts of international terrorism set forth herein." *Freeman II*, Amended Complaint, ECF No. 72, ¶ 3746.

On November 25, 2020, this Court denied Defendants' motions to dismiss Plaintiffs' claims under JASTA, 2020 U.S. Dist. LEXIS 229921 (E.D.N.Y. Nov. 25, 2020).

On October 8, 2021, this Court authorized Plaintiffs to issue discovery requests on Defendants. Of greatest relevance here, on December 13, 2021, Magistrate Judge Merkl ordered

---

[3]    As a courtesy to the *Freeman* court, Plaintiffs' requested relief incorporated the use of information by the plaintiffs in *Stephens v. HSBC Holdings Plc*, No. 18-cv-7439-PKC-CLP (E.D.N.Y.), a related case on the same schedule as *Freeman*. The *Stephens* plaintiffs are represented by separate counsel and do not overlap with the *Bartlett* Plaintiffs.

Plaintiffs, at ***Defendants' request***,[4] "to issue their anticipated third-party subpoenas to the four major correspondent banks discussed at the conference (Standard Charter[ed], Bank of New York, JP Morgan, and Wells Fargo)." In compliance with the Court's order, Plaintiffs served third-party subpoenas on these four banks, as well as other financial institutions.

Concurrently, the parties (excluding SCB, which is not a Defendant) negotiated the *Bartlett* Protective Order ("PO") governing production by Defendants and third parties in this case. ECF No. 273. The PO defines protected documents broadly. It limits the use of the documents outside of the *Bartlett* litigation, but with various caveats. Of chief relevance here is Paragraph C ("Use of Discovery Material"), which states:

> All Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation). **However, a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter.** To the extent Discovery Material has been produced pursuant to a customer's waiver of Lebanese Bank Secrecy protections, and a Party files a motion to request permission to use Discovery Material in another case or matter, the Designating Party who obtained the customer's waiver shall promptly notify the customer of the motion, which customer will have a reasonable opportunity to object to said motion, as will the Designating Party. (Emphasis added.)

The paragraph is the negotiated product of Defendants initially requesting the first sentence and Plaintiffs requesting the second. The parties then addressed the possibility that such a request may be made of discovery produced pursuant to a customer's waiver of Lebanese bank secrecy objections (however unlikely that is, as Magistrate Judge Merkl observed in her order rejecting Defendants' bank secrecy arguments, 2023 U.S. Dist. LEXIS 56982, at *66-67 (E.D.N.Y. Mar. 31, 2023), obligating the "Designating Party" who obtained the customer's waiver to "promptly

---

[4]      Defendants argued that Plaintiffs should try to obtain Defendants' transactional records from third-party banks that participated in the transactions as part of their bank secrecy arguments, Joint Mem. of Law in Supp. of Def's Mot. for Protective Order and in Opp. to Pl's' Mot. to Compel, ECF No. 276 at 10, which argument the Court later rejected in its Bank Secrecy Order, 2023 U.S. Dist. LEXIS 56982.

notify the customer of the motion" so that the customer and the Designating Party "have a reasonable opportunity to object to said motion."

This language of Paragraph C was negotiated separately from the modification of the PO provision contained in Paragraph K of the PO: "This Protective Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information." These separate provisions – Paragraphs C and K – are not redundant.

During the *Freeman* status conference referenced above, the court stated that "I don't foresee there being a problem with somehow, whatever that form takes, using information in that case and providing it to the defendants in this case." *Freeman*, June 27, 2023, Tr. 42:18-20 (cleaned up). Plaintiffs then conferred with KBC Bank and SCB. At SCB's request, Plaintiffs provided it with a preliminary list of Hezbollah-related entities and individuals whose transactions (produced by SCB) Plaintiffs would likely reference in the *Freeman* amended complaint, followed by a comprehensive spreadsheet containing the subset of potentially relevant SCB transactions that Plaintiffs may seek to reference in the *Freeman* Actions. KBC Bank stated that it did not object to Plaintiffs' request as set forth herein. Counsel for SCB stated that it would oppose Plaintiffs' request. An updated list of entities and individuals likely to be referenced in the *Freeman* amended complaint is attached hereto as **Exhibit 3** (filed under seal).[5]

In their Motion to Use Discovery, Plaintiffs explained that a subset of the records from KBC and SCB are relevant to the *Freeman* Actions because the *Bartlett* and *Freeman* cases involve similar theories of liability, and the records indicate that certain defendants in the *Freeman* Actions maintained accounts and received or initiated transactions through the United States for certain

---

[5]     Exhibit 3 is intended to be illustrative rather than a definitive *final* list of all persons and entities intended to be disclosed as the *Freeman* defendants' customers.

Iranian and Hezbollah-affiliated entities and individuals. *See* ECF No. 335, at 1. Plaintiffs also explained that the *Freeman* plaintiffs only intend to include in their amended complaints certain circumscribed information from the records (all references would be made under seal with redactions on the public docket): (1) the names of the alleged Hezbollah-affiliated entities and individuals in the transaction summaries; (2) the names of the *Freeman* defendants which held the relevant accounts; (3) the dollar amounts of the transactions processed on behalf of the relevant Hezbollah-affiliated customers between 2003-2011; and, where relevant, (4) transactional dates.

For purposes of the amended complaints, neither the name of the *Bartlett* Defendant banks/correspondent banks nor the routing codes or account numbers of the Hezbollah-affiliated customers would be disclosed, and if agreed to by the *Freeman* court, the Hezbollah-affiliated customers and transactional dates would be wholly redacted on the public docket while the unredacted information remains under seal. Furthermore, in order to access the sealed complaints, the defendants in the *Freeman* Actions would be required to agree in writing to the terms of the *Bartlett* Protective Order extending those protections to the *Freeman* Actions until a comparable protective order is entered in those cases. *See id.* at 2.

SCB and the *Bartlett* Defendants filed oppositions to the Motion to Use Discovery on July 28, 2023, ECF Nos. 338 and 339, and Plaintiffs filed a reply in support of their Motion on August 1, 2023, ECF No. 340. Defendants filed a joint response to Plaintiffs' reply on August 9, 2023, ECF No. 341. During the September 27, 2023, status conference, Magistrate Judge Merkl issued her Bench Ruling denying the Motion to Use Discovery, following which the Minute Entry and Order was issued. The Bench Ruling relied on "the Second Circuit's teachings in *TheStreet[.com]* and in the *Martindell* case," and found that Plaintiffs must meet the standards set out in those cases for modifying their PO but failed to do so.

**ARGUMENT**

I.   **UNDER THE CONTROLLING LEGAL STANDARD, THE COURT SHOULD HAVE PERMITTED THE LIMITED USE OF THIRD-PARTY INFORMATION IN THE *FREEMAN* ACTIONS UNDER THE TERMS OF THE PROTECTIVE ORDER.**

Paragraph C of the PO in this case explicitly permits the parties to move the Court to use discovery produced in this case in other cases and matters, signifying that the parties did not rely on the PO for protection otherwise. PO ¶ C ("a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter."). As the Second Circuit has explained, such language indicates that using the records (subject to court supervision) in other cases is permissible without meeting the "extraordinary circumstance or compelling need" standard required for modification under *TheStreet.com* and *Martindell*. *See U.S. Philips Corp. v. Iwasaki Elec. Co.*, 142 Fed. Appx. 516, 518 (2d Cir. 2005) (discussed *infra*).

The Second Circuit decision in *In re Iwasaki Elec. Co.* is particularly instructive. There, the parties were engaged in patent litigation in the United States, Germany and Japan. The U.S. litigation was in the Southern District of New York, and Iwasaki had taken certain depositions in the Southern District case and documents had been produced by U.S. Philips to Iwasaki in that case. *See In re Iwasaki Elec. Co.*, No. 19-82 (TPG), 2005 U.S. Dist. LEXIS 10185, at *1 (S.D.N.Y. May 24, 2005). In connection with this discovery, the parties entered into a Stipulated Protective Order which was approved by the then assigned judge. Paragraph 10 of that order provided in pertinent part:

> 10. All discovery material, whether or not designated "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS' EYES ONLY" shall be used solely for the prosecution or defense of the claims in this action and shall not be used for any business, commercial, competitive, personal or other purpose, including patent prosecution.

*Id.* at *2. That language is similar to the first sentence of Paragraph C of the *Bartlett* PO.

Paragraph 11 of the *Iwasaki* order provided:

> 11. In the event a party wishes to disclose CONFIDENTIAL or CONFIDENTIAL ATTORNEYS' EYES ONLY material for use in a related legal action, such party shall provide written notice to the party or non-party who has produced such material, identifying (i) the related action, (ii) the material sought to be disclosed and (iii) the reason for the proposed disclosure. The written notice shall be delivered so as to be received by the producing party at least twenty (20) days in advance of the proposed disclosure. If the producing party objects in writing to the proposed disclosure, the disclosure shall not be made. If such an objection is made, the party seeking disclosure may move before this Court for an order allowing such disclosures.

*Id.* This language is functionally similar to the second sentence in Paragraph C of the *Bartlett* PO. *Bartlett* Paragraph C states that "a Party may move before the Court in this Litigation by letter motion to request permission," and *Iwasaki* Paragraph 11 states that the "party seeking disclosure may move before this Court for an order allowing such disclosures." In fact, the *Bartlett* PO is slightly broader, as it permits use of discovery "in another case or matter" without the limitation to "related cases" in *Iwasaki*. As in *Iwasaki*, Defendants were sufficiently sophisticated to understand the language they negotiated and agreed to.

Iwasaki sought an order in that case allowing it to use certain portions of the deposition transcripts and certain of the produced documents in connection with the German and Japanese proceedings, and U.S. Philips objected. *See id.* at *3.

Judge Griesa wrote:

> There was a lengthy discussion of the *Martindell* and *S.E.C. [v. TheStreet.com]* cases at the hearing, at the conclusion of which it was quite apparent that **these decisions simply have no bearing on the present case**. Moreover, the Stipulated Protective Order, by its express language, does not contain the kind of bar which U.S. Philips argues for, and indeed invites modification where the purpose is for use in other litigation. This is clear from the language quoted earlier in this opinion. Paragraph 10 provides that the discovery material is to be used solely in connection with the Southern District action, and is not to be used for "business, commercial, competitive, personal or other reasons, including patent prosecution." But, as to use in a *related* legal action, paragraph 11 specifically contemplates such usage

and provides a procedure to be followed, which has been followed and is still being followed by Iwasaki.

*Id.* at *5 (emphasis added).

On appeal, *U.S. Philips* argued that the district court erred in modifying the protective order to grant Iwasaki's motion without requiring Iwasaki to show the sort of "extraordinary circumstance or compelling need" required by this court in *S.E.C. v. TheStreet.com*, 273 F.3d 222, 229 (2d Cir. 2001). 142 F. App'x at 518.

The Second Circuit disagreed. It held:

> While paragraph 10 of the protective order prohibits certain uses of discovery materials, paragraph 11 clearly contemplates the possibility that the parties will wish to use confidential material in related actions and, accordingly, provides that, "if the producing party objects," then "the party seeking disclosure may move before [the district court] for an order allowing such disclosure." Thus, the district court, in ruling on Iwasaki's § 1782 application, enforced rather than modified the terms of the protective order. Although U.S. Philips contends that the parties did not intend paragraph 11 to permit disclosure absent a showing of extraordinary circumstance or compelling need, the plain language of the protective order, which affords broad discretion to the district court, does not support that argument. Indeed, if U.S. Philips and Royal Philips had wished to limit paragraph 11 disclosure in such a fashion, these sophisticated parties could certainly have drafted the protected order to so state. They did not.

*Id.* Like the district court in *In re Iwasaki*, Magistrate Judge Merkl would have been *enforcing* rather than modifying the terms of the protective order by granting the relief requested – which is explicitly contemplated by Paragraph C of the *Bartlett* PO.

The appropriate standard, then, is the absence of bad faith – the standard also applied in the absence of protective orders. *See Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) ("[W]here the discovery sought is relevant to a good faith [claim] in the federal case, the mere fact that it may be used in other litigation does not mandate a protective order [barring that use].").

In demonstrating that the discovery was obtained in good faith, Plaintiffs described how the *Bartlett* case was clearly brought in good faith, having survived multiple motions to dismiss. Furthermore, none of the concerns that parties in state court or in criminal cases could bring federal civil cases "chiefly for the purpose of exploiting the liberal discovery devices available in federal civil actions," *Dove*, 963 F.2d at 19, are present here, as both *Bartlett* and *Freeman* are civil cases in this federal district.[6] The subpoenas on KBC and SCB were also made in good faith and were narrowly-tailored to elicit evidence specifically relevant to the *Bartlett* Defendants; in fact, the SCB subpoena was issued by Plaintiffs at the Court's direction, and at the *Defendants'* request. *See* 12/13/21 Minute Order; 12/13/21 Tr., generally from 21:17-23:1-11. The subpoenas mirror the document requests Plaintiffs served on Defendants which this Court had "little difficulty concluding … may yield relevant evidence." 2023 U.S. Dist. LEXIS 56982, at *47. Because the records were properly requested, there is no reason to limit their use in other cases. *See Devlin v. Transportation Commc'ns Int'l Union*, No. 95-cv-0742 (JFK) (JCF), 2000 U.S. Dist. LEXIS 264, at *20 (S.D.N.Y. Jan. 13, 2000) ("the defendants are confusing the initial determination of whether information should be disclosed with the purposes for which it may thereafter be used") (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978)).

Magistrate Judge Merkl reviewed Paragraph C and held:

> With regard to the language of the order, as has been discussed at length, the protective order in this case is very clear. It states that -- in paragraph C that all discovery materials, or any copies, summaries or abstracts thereof shall be used solely for the purpose of conducting this litigation, including for purposes of mediating or otherwise attempting to settle this litigation; however, a party may move before the Court in this litigation by letter motion to request permission to

---

[6]     Additionally, Plaintiffs note that the use of discovery in the *Freeman* Actions does not implicate the concerns raised when plaintiffs whose complaints have been dismissed for failure to state a cause of action seek to commence discovery in order to bolster their pleadings. "*Twombly* is meant to allow the parties and the court to avoid the expense of discovery and other pretrial motion practice when the complaint states no plausible claim on which relief can be granted." *Ideal Steel Supply Corp. v. Anza*, 652 F.3d 310, 325 (2d Cir. 2011). Such expense is obviously avoided "if evidence that had already been produced during discovery would fill the perceived gaps in the Complaint." *Id.*

> use discovery material in another case or matter. So, the language as to what material is covered is clear. There's a mechanism in place to come to the Court. And I interpret that language to be against the backdrop of preexisting Second Circuit case law at the time that this was drafted.

9/27/23 Tr. at 57:22-58:12. But Magistrate Judge Merkl did not then apply *Dove*'s "absence of bad faith" standard as is required.

Instead, during the September 27, 2023, hearing, Magistrate Judge Merkl queried Plaintiffs' counsel whether they "actually believe that anybody who entered into the protective order thought that that provision did away with preexisting circuit law on the topic of protective orders." *Id.* at 20:17-21. When Plaintiffs explained that the language had been negotiated, Magistrate Judge Merkl again expressed her skepticism, asking: "[B]asically, a negotiated contract between the various parties who negotiated it and those who then later acted in reliance on it, do you think that they were reading that provision as doing away with *Martindell* and others binding Second Circuit precedent?" *Id.* at 21:8-13. Despite the PO's clear language, Magistrate Judge Merkl then dispensed with the good faith standard altogether: "There's a mechanism in place to come to the Court. And I interpret that language to be against the backdrop of preexisting Second Circuit case law at the time that this was drafted." *Id.* at 58:9-12. In short, having flatly rejected Plaintiffs' view (a view supported by the Circuit law quoted above), the Court erroneously applied the legal standard set forth in the *Martindell* and *TheStreet.Com* cases—decisions that, in the words of the *In re Iwasaki* court, "simply have no bearing on the present case."

## II. EVEN IF THE PROTECTIVE ORDER'S OWN LANGUAGE WERE INSUFFICIENT TO WARRANT PERMITTING THE LIMITED USE OF THIRD-PARTY INFORMATION IN THE *FREEMAN* ACTIONS, THE COURT STILL SHOULD HAVE GRANTED PLAINTIFFS' REQUESTED RELIEF UNDER THE LEGAL STANDARD ARTICULATED IN *MARTINDELL*

*Iwasaki* makes clear that the Magistrate Judge should simply have implemented the terms of Paragraph C of the PO and granted Plaintiffs' requested relief. However, even in cases where a

PO does *not* contain the explicit language of Paragraph C, under the legal standard in this Circuit, the result would have been exactly the same. This is because the *Martindell* standard only applies where "there has been reasonable reliance by a party or deponent" on the protective order in producing the records at issue. *TheStreet.Com*, 273 F.3d at 229 (citing *Martindell*, 594 F.2d at 296). Absent such reliance, "the *Martindell* standard 'never c[o]me[s] into play.'" *In re EPDM*, 255 F.R.D. 308, 319 (D. Conn. 2009) (citing *TheStreet.Com*, 273 F.3d at 234).

Neither SCB nor KBC "relied" on the PO here. As Judge Bianco noted in *Charter Oak Fire Ins. Co. v. Electrolux Home Prods*.:

> "'An examination of Second Circuit case law reveals the following factors are relevant when determining whether a party has reasonabl[y] relied on the protective order (1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order.'"

287 F.R.D. 130, 132 (E.D.N.Y. 2012) (quoting *In re September 11 Litig*., 262 F.R.D. 274, 277 (S.D.N.Y. 2009)). "Additional considerations that may influence a court's decision to grant modification include: the type of discovery material the collateral litigant seeks and the party's purpose for seeking modification." *Id.* (quoting *In re EPDM*, 255 F.R.D. at 318).

As explained below, the September 27, 2023, Order (1) failed to consider the first two factors, (2) inverted the standard for the third factor, (3) misconstrued the meaning of the term "reliance" in the fourth factor, (4) misstated "the type of discovery material" sought to be disclosed and (5) did not address the party's purpose for seeking modification.

## A.    SCOPE OF THE PROTECTIVE ORDER

Courts find a reduced degree of reliance on "blanket" protective orders "covering all documents produced during the litigation, not a targeted order covering only certain documents," *TradeWinds Airlines, Inc. v. Soros*, No. 08-cv-5901 (JFK), 2016 U.S. Dist. LEXIS 94735, at *5 (S.D.N.Y. July 20, 2016), "because it is more difficult to show a party reasonably relied on a

blanket order in producing documents or submitting to a deposition," *In re EPDM*, 255 F.R.D. at 319. *See also Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd.*, No. 05-cv-2745 (JGK) (RLE), 2010 U.S. Dist. LEXIS 19510, at *16 (S.D.N.Y. Mar. 2, 2010) ("While umbrella orders, granted as an accommodation to the parties, may be useful and expeditious in large scale litigation, they can simultaneously be overbroad and abusive.") (internal citations omitted). Faced with the assertion by a party opposing a request to modify a confidentiality order that without it, "discovery would have come to a complete stand-still," this Circuit noted that while "[u]mbrella protective orders do serve to facilitate discovery in complex cases," they "should not substantively expand the protection provided by Rule 26(c)(7) or countenanced by the common law of access." *Lugosch v. Pyramid Co.*, 435 F.3d 110, 126 (2d Cir. 2006) (citing *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D. Cal. 1984) (quotation marks omitted).

The PO in this case comprises "[a] blanket protective order [that] grants sweeping protection to most, if not all, discovery materials produced in a litigation, even discovery material that a party would have been required to disclose in the absence of a protective order." *In re EPDM*, 255 F.R.D. at 319. The definition of "Confidential Information" includes, but is not limited to, a vast list of broadly defined items, including "commercial data, such as … financial information … and other potentially sensitive information … or proprietary information." PO ¶ D.2. It is hard to imagine what it does *not* apply to, especially where subpoena recipients are financial institutions. "Although such blanket protective orders may be useful in expediting the flow of pretrial discovery materials, they are by nature overinclusive and are, therefore, peculiarly subject to later modification." *In re EPDM*, 255 F.R.D. at 319. Magistrate Judge Merkl *flipped* this analysis by finding that "rel[iance]" is established *because* "protective orders facilitate discovery and

efficiency." 9/27/23 Tr. at 57. *See also id.* at 56-57. Nor did she analyze at all whether this PO was itself a "blanket" order.

## B.      LANGUAGE OF THE PROTECTIVE ORDER

Magistrate Judge Merkl's analysis failed to address the specific language of the PO to determine whether it afforded permanent confidentiality. When "certain non-parties are permitted to access the confidential information, and the parties contemplated the Confidentiality Order may be modified with a court order[, t]hough these provisions do not completely undercut the parties' reliance, the language does reduce the reasonableness of the parties' reliance on the Confidentiality Order for 'absolute and unchanging confidentiality.'" *Pasiak v. Onondaga Cmty. Coll.*, No. 616-cv-1376 (TJM) (TWD), 2020 WL 2781616, at *2 (N.D.N.Y. May 29, 2020).

Thus, reliance is "not reasonabl[e]" where the order "specifically contemplates that relief from the provisions of the order may be sought at any time." *In re EPDM*, 255 F.R.D. at 320 (citation omitted). Moreover, where orders are limited to pretrial proceedings, they may not justify reliance. As the Second Circuit noted in *TheStreet.Com*:

> [A]ppellants ... could not have relied on the permanence of the protective order....
> By its very terms, [the order] was applicable solely to the pretrial stages of the
> litigation ... [and] would be reconsidered upon commencement of the trial.... Any
> reliance on such a sweeping temporary protective order simply was misplaced.

273 F.3d at 231 (citing *In re Agent Orange Prod. Liab. Litig.*, 821 F.2d 139, 147 (2d Cir. 1987)) (alterations in *TheStreet.Com*).

The PO in this case expressly contemplates the need for disclosure to non-parties, setting up specific procedures for making such disclosures to, *inter alia*, experts or non-testifying consultants who are employed or retained by a party, professional vendors, any mediator or arbitrator engaged by the parties, and trial and deposition witnesses who have signed the PO's annexed confidentiality agreement. PO ¶ E(1)-(3). Additionally, the PO sets no time limit on any

challenge to a confidentiality designation, PO ¶ H, and confidentiality under the PO presumptively expires at least for some materials at trial. PO ¶ L. All of these provisions cut against denying Plaintiffs' relief, but none of them were addressed, let alone weighed as a factor in determining whether to grant the relief sought. Magistrate Judge Merkl did state that "the language as to what material is covered is clear," but she referred only to the "mechanism in place to come to the Court," not the provisions creating exceptions for disclosure. She also made clear she was referring only to that mechanism when she interpreted "that language to be against the backdrop of preexisting Second Circuit case law at the time that this was drafted." 9/27/23 Tr. at 57:22-58:12.

### C.   DEGREE OF INQUIRY COURT UNDERTOOK BEFORE GRANTING THE PROTECTIVE ORDER

A protective order granted on the basis of a stipulation by the parties carries less weight than a protective order granted after a hearing to show good cause. *See In re EPDM*, 255 F.R.D. at 319 (holding that "[s]tipulated blanket orders are even less resistant to a reasonable request for modification," as the parties never had to make a "good cause" showing under Rule 26(c) of the need for the protection of the records). Assessing a protective order's language providing for resolving future disputes over confidentiality designations similar to the PO, the court in *Fournier v. McCann Erickson* found that the language exhibited "the same kind of deference and pervasive protection without Court review that the Second Circuit found to constitute 'extraordinary circumstances' justifying the unsealing of documents." 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003) (citing *In re Agent Orange*, 821 F.2d at 147-48). Specifically, the protective order allowed for the unilateral designation of materials as confidential, and in the event of a dispute, required the parties to first attempt to resolve the matter themselves, following which the court would address the matter de novo. *See id.* at 341-42. According to the court, this language "recognizes the highly deferential nature of the designations made by the parties in the first instance and in the absence

of disagreement." *Id.* at 342. The PO was similarly negotiated and stipulated to between the parties

with no hearing to show good cause, and also introduces Court oversight over a designation after

the parties fail to resolve the matter themselves. PO ¶ H.

Yet, Magistrate Judge Merkl held that:

> By permitting the parties to engage in the protective-order process on their
> own and not burdening the Court, I do not find that the Court's lack of
> involvement in any way undercuts the strength of this protective order. To
> the contrary, one of the stated purposes the Second Circuit has repeatedly
> looked to in relying on affirming or upholding parties reliance on protective
> orders is the idea the protective orders facilitate discovery and efficiency.
> And although plaintiffs contend that it would be efficient to transfer the
> discovery in this case over to the other cases, those efficiencies are different
> than the efficiencies that the Second Circuit recognizes in the protective-
> order context.
>
> By promoting efficiency and permitting the parties to engage in discovery
> in the way that they have conducted here is important. It's an important
> principle that needs to be encouraged and protected, or else all sensitive
> subpoenas would come back to the Court for litigation, protective orders,
> and that simply would bring the discovery process to a grinding halt. **So, I
> don't find that the lack of inquiry or lack of involvement in putting a
> protective order in this case has any weight whatsoever in my
> determination to enforce the protective order in this case.**

9/27/23 Tr. at 56:20-57:21 (emphasis added). But failing to give "any weight whatsoever" to the

fact that the protective order here was granted on the basis of a stipulation by the parties rather

than granted after a hearing to show good cause is directly contrary to the applicable legal standard

which requires the court to weigh this factor. *See Fournier*, 242 F. Supp. 2d at 341. *See also In re

EPDM*, 255 F.R.D. at 319 (holding that "*[s]tipulated* blanket orders are even less resistant to a

reasonable request for modification," as the parties never had to make a "good cause" showing

under Rule 26(c) of the need for the protection of the records).

### D.    NATURE OF THE PARTIES' RELIANCE ON THE PROTECTIVE ORDER

The "classic situation in which a party 'relies' on a protective order is where the party

creates material during the course of litigation on the understanding that it will be kept confidential

-- for example, by signing a settlement document or by giving confidential testimony." *In re EPDM*, 255 F.R.D. at 322-23 (citing *Allen v. City of N.Y.*, 420 F. Supp. 2d 295, 300 (S.D.N.Y. 2006)). That "was the case in *Martindell*," *id.* at 323, where the Circuit affirmed the district court's refusal to modify the protective order in a civil case and provide the government access to pre-trial testimony as part of a criminal investigation to bring perjury and obstruction of justice charges against those deponents. *See Martindell*, 594 F.2d at 295-97. The court concluded that the deponents had only agreed to testify in reliance on the protective order and would otherwise have invoked their Fifth Amendment rights. *See id.* at 293. *See also Palmieri v. State of N.Y.*, 779 F.2d 861, 865 (2d Cir. 1985) ("the very papers and information that the Attorney General seeks apparently would not even have existed but for the sealing orders and the magistrate's personal assurances of confidentiality, upon which the appellants apparently relied in agreeing to enter closed-door settlement negotiations.").

Similarly, parties may be held to have justifiably relied on protective orders when they agree to provide documents that they would have been entitled to produce in redacted form, but instead produced without redactions, which the receiving party benefited from by a faster production. *See, e.g.*, *Arcesium LLC v. Advent Software, Inc.*, No. 20-cv-04389 (MKV), 2022 U.S. Dist. LEXIS 37781, at *14 (S.D.N.Y. Mar. 3, 2022) (denying motion to use discovery in new litigation against the producing defendants where they produced documents containing trade secrets without redaction, which would have been "extraordinarily time consuming and expensive," in reliance on the protective order); *United States v. Ngono*, No. 16-cr-367 (PAC), 2021 U.S. Dist. LEXIS 127499, at *5 (S.D.N.Y. July 8, 2021) (denying criminal defendant's motion to use the discovery produced by the government in his civil case, finding reasonable reliance by the government on the protective order in the criminal case since it "allowed Ngono to

quickly receive unredacted documents and gain access to documents that he might not otherwise even [have] been entitled to under Rule 16 or Rule 17 of the Federal Rules of Criminal Procedure") (internal citation and quotation marks omitted); *United States v. Calderon*, No. 15-cr-25 (JCH), 2017 U.S. Dist. LEXIS 200295, at *14-15 (D. Conn. Dec. 1, 2017) (denying criminal defendant's motion to use the discovery produced by the government in his FOIA case, finding reasonable reliance by the government on the protective order in the criminal case because without it, "the USDA would not have produced unredacted documents containing potentially confidential information without any review").

In this case, SCB was legally *obligated* to produce records responsive to Plaintiffs' third-party subpoena pursuant to Fed. R. Civ. P. 45. SCB's counsel admitted that SCB could not have avoided production of documents had there been no PO in this case. Instead, he only contended that without a PO "we would have thought much more about, you know, particular -- and required plaintiffs to show us why each one of these names on the list was somehow relevant to the *Bartlett* case. That would be the first. And the second would be we would have sought a protective order." 9/27/23 Tr., 42:4-11. Plaintiffs did not ask SCB to produce more material than it wanted to by making any specific assurances relating to the PO. SCB only requested that it be notified in advance of any potential disclosure outside of *Bartlett*, which notice Plaintiffs provided, to preserve the opportunity to object (which it has).

But "where the parties have not given up any rights and indeed would have been compelled to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong. In such cases, the protective order has been granted to parties concerned about disclosing non-public information and as a convenience to avoid time-consuming discovery disputes and document-by-document good cause showings." *In re EPDM*, 255 F.R.D.

at 323. *See also Charter Oak*, 287 F.R.D. at 133 (finding that this factor weighed against applying the presumption against modification because, "[i]n this case, Electrolux does not argue that it would not be required to produce the documents in question in each related litigation").

Nevertheless, Magistrate Judge Merkl erroneously found "substantial reliance by Standard Chartered Bank in the determination to produce these records," "credit[ing] [SCB counsel] Mr. Finn's representation that, if they were in the position where there was no protective order in place in this case, they would have sought a protective order prior to complying with the subpoena because of the nature of the information sought." 9/27/23 Tr. at 59:5-13. SCB did not have the option of "determining" whether to produce records, and its assertion that it would have sought a protective order in the absence of one is certainly plausible, but legally meaningless because *Dove*'s presumption against barring the use of records in other cases would still apply. Just because "discovery will be detrimental to its position in parallel lawsuits …. is not a reason for a court to impose a protective order." *United States v. Hooker Chemicals & Plastics Corp.*, 90 F.R.D. 421, 426 (W.D.N.Y. 1981). *See also Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72-74 (S.D.N.Y. 2010) (where publicizing discovery would cause "harm and embarrassment" to the producing party, that party may demonstrate the requisite "good cause" for entry of a protective order – albeit one "crafted to balance plaintiffs' and defendants' interests"). Here, SCB would be hard pressed to obtain blanket confidentiality for spreadsheets reflecting commercial transactions that are over ten years old. Moreover, as Plaintiffs explained in their Motion to Use Discovery, they are *not* seeking public disclosure of this subset of data.[7]

---

[7]   Plaintiffs explained they would file relevant information under seal and "do not intend to reference the production of the records themselves or names of transactional parties or counterparties <u>not</u> alleged to be associated with Hezbollah or the IRGC." ECF No. 335 at 3 (emphasis in original). Plaintiffs explained in their reply letter brief that they had no intention of naming the *Bartlett* Defendants in the *Freeman* amended complaints in connection with *Bartlett* discovery. ECF No. 340 at 2. And in the event that the *Freeman* Actions survive motions to dismiss, and these records become relevant in discovery in those cases, the parties in those cases will enter into a protective order and the *Freeman* plaintiffs will agree to the same level of protection for the use of the records in that case as ordered in

SCB's insistence that it would have more carefully produced records is equally unavailing–while Fed. R. Evid. 502(b) protects inadvertent disclosures of privileged records in certain circumstances, there is no concordant protection for parties which choose to satisfy their production burdens by simply dumping files wholesale on the requesting party to sift through, rather than conducting their own close review.

### E.   THE DECISION ERRONEOUSLY SETS FORTH THE SCOPE AND NATURE OF THE INFORMATION AT ISSUE

Magistrate Judge Merkl describes the information sought as follows:

> Inherent in bank records is the inclusion of sensitive personal data, personal identifiers, all kinds of financial information. There may be, you know, various sensitive personal data of the type that was specifically designated to be provided special confidential protection under the protective order.

9/27/23 Tr. at 58:21-59:2. The Proposed Order and Plaintiffs' letter briefs make it abundantly clear that (1) Plaintiffs seek to share limited information (in summary form) with the *Freeman* court and parties under the same confidentiality terms already in place in this case and (2) even these disclosures do not include "sensitive personal data" or "personal identifiers." On the contrary, Plaintiffs requested to <u>file under seal</u> the names of Hezbollah-affiliated individuals and entities (many designated as Specially Designated Global Terrorists ("SDGTs") who were customers of *Freeman* defendants and engaged in transactions that are now more than a decade old. *See supra*, at 20 n.7.

Below is a distillation of the type of *hypothetical* (that is, not drawn from any actual record produced by SCB) disclosure Plaintiffs are seeking to disclose under seal:

> Defendant Standard Chartered Bank maintained an account for Hezbollah's Martyrs Foundation and transferred at least $5 million for that Hezbollah-controlled organization through New York correspondent accounts in the course of 50 transactions during the relevant period.

---

this one. *See* ECF No. 335 at 3 and ECF No. 335-1 (Proposed Order providing that "The *Freeman* Action plaintiffs are expected to take reasonable steps to treat the records with the same level of protection required under the Protective Order entered in this case, ECF No. 273, subject to any modifications ordered by the Court in the *Freeman* Actions.").

Plaintiffs proposed to completely redact such sentences in the public docket version of the complaint, which as shown above are already stripped of any *Bartlett* defendant names or other identifying information. The limited language above would appear in the *sealed* version of the complaint and be available only to the *Freeman* parties' counsel, subject to the confidentiality terms of the *Bartlett* PO. That cannot fairly be described as exposing "sensitive personal data" or "personal identifiers" of the kind courts afford (limited) protections.

## III.  ALTHOUGH THE DECISION DOES NOT ADDRESS WHETHER THE STANDARD FOR EXTRAODINARY CIRCUMSTANCES HAS BEEN MET, THE CIRCUMSTANCES HERE CLEARLY SATISFY THAT STANDARD

Setting aside the language of Paragraph C of the PO and Magistrate Judge Merkl's misapplication of the reliance standards from *Martindell* and *TheStreet.com* discussed above, Plaintiffs can *also* satisfy those cases' standard for "compelling need" or "extraordinary circumstances" (although they do not need to). The court in *Tradewinds Airlines, Inc.*, held this standard was satisfied upon the following showing also present here:

> [T]here is a compelling need for modification here to avoid considerable unnecessary effort and expense. Plaintiffs' claims in the North Carolina action are closely related to the claims brought before this Court. Without modification of the Protective Order, the same discovery materials will likely have to be reviewed and re-produced, needlessly causing duplication of effort and extra expense. And importantly, because the proposed modifications maintain the same protections regarding public disclosure, there is no significant prejudice to any party.

2016 U.S. Dist. LEXIS 94735, at *6.

The court in *Charter Oak Fire Ins.* Held similarly, finding "a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations [proceeding in Canada] against Electrolux, especially in the absence of any discernible

prejudice to Electrolux. If the Protective Order is not modified, plaintiff will be forced to litigate the exact same issue in each and every case." 287 F.R.D. at 134. Moreover, the modification there applied to "pending and future actions." *Id.* It stands to reason that the Court should allow the use of discovery materials by plaintiffs bringing cases proceeding in the same courthouse based on similar facts and circumstances who are already in possession of the information.

Magistrate Judge Merkl appears to have rejected a finding of extraordinary circumstances or compelling need on the theory that Plaintiffs could refer to the information they seek to use in their amended complaints in the *Freeman* Actions "on information and belief:"

> I mean, that's really, I think, the million-dollar question that hasn't been answered by plaintiff, the – what your compelling need is, or extraordinary circumstance, given that you can modify [amend?] on information and belief.

9/27/23 Tr. at 48:12-16. *See also id.*, 47:22-48:9:

> So what about the issue of prejudice that Mr. Finn alluded to with regard to your ability to amend your complaint, regardless of your access to these materials? As you know, under Rule 12, you have to provide on – you know, upon information and belief, good-faith allegations as to why there is a valid theory of the case with the understanding that you wouldn't be ordinarily in a position to provide specific transaction records and things along those lines because discovery hasn't commenced. Why is that not appropriate here? Why do you need the actual evidence?

This analysis either misconstrues Plaintiffs' confidentiality obligations, Fed. R. Civ. P. 12 standards, or the rigorous pleading requirements for JASTA aiding and abetting claims. In any event, it is clearly erroneous. First, Plaintiffs cannot properly reference information on the public docket that derives exclusively from information produced under the PO. Thus, returning to the earlier hypothetical, without the relief sought here, Plaintiffs are not permitted to plead that:

> Upon information and belief, Defendant Standard Chartered Bank maintained an account for Hezbollah's Martyrs Foundation and transferred at least $5 million for that Hezbollah-controlled organization through New York correspondent accounts in the course of 50 transactions during the relevant period.

23

Alternatively, if Plaintiffs pleaded the same information in compliance with the PO and without the relief sought, it would read something like this:

> Upon information and belief, Defendant Standard Chartered Bank maintained an account for a well-known Hezbollah-controlled organization and transferred significant sums of money for that Hezbollah-controlled organization during the relevant period.

Even if that level of detail is permissible under the PO, we are aware of no court that has found generalized allegations of that kind sufficiently plausible and non-conclusory so as to sustain a JASTA aiding and abetting claim (nor can Magistrate Judge Merkl credit that language on the *Freeman* court's behalf). *See e.g., Zobay v. MTN Grp. Ltd.*, 2023 U.S. Dist. LEXIS 176598, *101-102 (E.D.N.Y. Sept. 28, 2023) (noting that allegations "made upon information and belief" must still be "supported by specific facts asserting the basis for those beliefs"). Put simply, the prejudice to Plaintiffs is obvious, and Magistrate Judge Merkl's proposed alternatives do not lessen the prejudice to Plaintiffs or diminish their need for the information in the form contemplated for use in the *Freeman* cases.

## IV.   THE DECISION DOES NOT EXPRESSLY ADDRESS WHETHER ITS DENIAL OF PLAINTIFFS' MOTION APPLIES TO INFORMATION KBC BANK CONSENTED TO DISCLOSE PURSUANT TO PLAINTIFFS' PROPOSED ORDER.

Immediately after the Court issued the September 27, 2023, Order, Plaintiffs requested clarification from the Court on the order as it related to KBC Bank's records. Letter from G. Osen to Hon. Merkl dated Sept. 27, 2023, ECF No. 345. The Order did not clearly state whether it applied to information produced by KBC Bank, which did *not* object to the use in *Freeman* of the records it produced in *Bartlett*, subject to the same confidentiality protections that are applied to those records as in *Bartlett*. However, Plaintiffs have not received any clarification or response from the Court prior to today's filing.

## CONCLUSION

Plaintiffs respectfully request that the Court set aside Magistrate Judge Merkl's Bench Ruling and September 27, 2023, Order. *See* Fed. R. Civ. P. 72(a). Plaintiffs further request that the Court enter the [Proposed] Order submitted on July 21, 2023, ECF No. 335-1.

Dated: October 11, 2023
      Hackensack, New Jersey

                                        Respectfully submitted,

                                        **OSEN LLC**

By      /s/ Gary M. Osen
                    Gary M. Osen
                    Ari Ungar
                    Michael Radine
                    Aaron Schlanger
                    Dina Gielchinsky
                    190 Moore Street, Suite 272
                    Hackensack, NJ 07601
                    (201) 265-6400

                    **TURNER & ASSOCIATES, P.A.**
                    Tab Turner
                    4705 Somers Avenue, Suite 100
                    North Little Rock, AR 72116
                    (501) 791-2277

                    **MOTLEY RICE, LLC**
                    Michael Elsner
                    John Eubanks
                    28 Bridgeside Boulevard,
                    P.O. Box 1792
                    Mount Pleasant, SC 29465
                    (843) 216-9000

                    *Attorneys for Plaintiffs*