UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROBERT BARTLETT, *et al.*,<br><br>Plaintiffs,<br><br>-v.-<br><br>SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL, *et al.*,<br><br>Defendants. | No. 1:19-CV-00007 (CBA) (TAM) |

**STANDARD CHARTERED BANK'S MEMORANDUM**
**IN OPPOSITION TO PLAINTIFFS' RULE 72(a) OBJECTION**

Sharon L. Nelles (nelless@sullcrom.com)
Andrew J. Finn (finna@sullcrom.com)
Bradley P. Smith (smithbr@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

October 25, 2023

*Attorneys for Standard Chartered Bank*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....... 1

BACKGROUND ....... 3

STANDARD OF REVIEW ....... 11

ARGUMENT ....... 11

I. Judge Merkl Correctly Held That Plaintiffs' Proposed Use of Discovery for the *Freeman* Actions Would Violate the Protective Order ....... 12

II. Judge Merkl Correctly Held That Plaintiffs Failed to Meet the High Burden for Modifying the Protective Order ....... 16

A. SCB Relied on the Protective Order When Producing Documents as a Non-Party ....... 17

B. No "Extraordinary Circumstances" Exist That Would Support Modifying the Protective Order ....... 22

CONCLUSION ....... 25

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ahmed* v. *T.J. Maxx Corp.*,
103 F. Supp. 3d 343 (E.D.N.Y. 2015) ....................11

*Arcesium LLC* v. *Advent Software, Inc.*,
2022 WL 621973 (S.D.N.Y. Mar. 3, 2022) .................... *passim*

*Best Payphones, Inc.* v. *Dobrin*,
409 F. Supp. 3d 130 (E.D.N.Y. 2018) ....................11

*Bruno* v. *Zimmer, Inc.*,
2016 WL 4507004 (E.D.N.Y. Aug. 26, 2016)....................24

*Charter Oak Fire Ins. Co.* v. *Electrolux Home Prod., Inc.*,
287 F.R.D. 130 (E.D.N.Y. 2012)....................22

*Clear Channel Outdoor, LLC* v. *City of New Rochelle*,
2022 WL 12404476 (S.D.N.Y. Oct. 20, 2022)....................12

*In re EPDM*,
255 F.R.D. 308 (D. Conn. 2009)....................19

*Freeman* v. *HSBC Holdings plc*,
413 F. Supp. 3d 67 (E.D.N.Y. 2019) ....................4

*Freeman* v. *HSBC Holdings plc*,
465 F. Supp. 3d 220 (E.D.N.Y. 2020) ....................4

*Freeman* v. *HSBC Holdings plc*,
57 F.4th 66 (2d Cir. 2023) ....................4

*In re Iwasaki Elec. Co., Ltd.*,
2005 WL 1251787 (S.D.N.Y. May 26, 2005) ....................14, 15, 16

*Kiobel ex rel. Samkalden* v. *Cravath, Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018)....................22

*Main St. Legal Servs., Inc.* v. *Nat'l Sec. Council*,
811 F.3d 542 (2d Cir. 2016)....................24

*Martindell* v. *Int'l Tel. & Tel. Corp.*,
594 F.2d 291 (2d Cir. 1979).................... *passim*

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Med. Diagnostic Imaging, PLLC* v. *Carecore Nat., LLC*,
2009 WL 2135294 (S.D.N.Y. July 16, 2009) ....................21

*In re MTBE Prods. Liab. Litig.*,
60 F. Supp. 3d 399 (S.D.N.Y. 2014)....................16

*Pall Corp.* v. *Entegris, Inc.*,
655 F. Supp. 2d 169 (E.D.N.Y. 2008) ....................11

*Podany* v. *Robertson Stephens, Inc.*,
350 F. Supp. 2d 375 (S.D.N.Y. 2004).................... *passim*

*S.E.C.* v. *TheStreet.Com*,
273 F.3d 222 (2d Cir. 2001).................... *passim*

*Tradewinds Airlines, Inc.* v. *Soros*,
2016 WL 3951181 (S.D.N.Y. July 20, 2016) ....................24

*U.S. Philips Corp.* v. *Iwasaki Elec. Co.*,
142 F. App'x 516 (2d Cir. 2005) ....................14, 15

*Zeitlin* v. *Palumbo*,
532 F. Supp. 3d 64 (E.D.N.Y. 2021) ....................8, 24

**Rules**

Fed. R. Civ. P. 72(a) ....................3, 11

Fed. R. Civ. P. 26(c) ....................16

## PRELIMINARY STATEMENT

Plaintiffs seek permission to ignore their agreements and misuse confidential records that they obtained from non-party Standard Chartered Bank ("SCB") through a subpoena in this action in order to try to revive already dismissed complaints against SCB in another set of lawsuits (the "*Freeman* actions") where no discovery was ever authorized.[1] This is an abuse of the discovery process. SCB expressly conditioned its agreement to produce documents to Plaintiffs here on the entry of a protective order that would ensure that those records would not be used or otherwise disclosed outside of this case. Plaintiffs accepted that condition—they negotiated the protective order with Defendants, reported to SCB when it was entered by the Court, and confirmed to SCB how it should designate its materials as "Confidential" in order to invoke the protections afforded by that order (ECF No. 273, the "Protective Order"). SCB then produced more than fifty thousand transaction records in reliance on the Protective Order's provisions.

Now, with SCB's records in hand, Plaintiffs argue that the Protective Order never actually protected them in the first place, or if it did protect them, those protections should be cast aside. According to Plaintiffs, the use restrictions in the Protective Order, which SCB invoked each time it produced documents, are meaningless, providing no more protection than the discovery rules that would be "applied in the absence of protective orders." (ECF No. 348 ("Pls.' Br.") at 10.) This, of course, is not the position Plaintiffs took when they were negotiating the Protective Order. (*See* ECF No. 341 at 5 (noting that "the protective order's language sufficiently

[1] The *Freeman* actions include: *Freeman* v. *HSBC Holdings plc*, No. 14-cv-6601-PKC-CLP (E.D.N.Y.) ("*Freeman I*"); *Freeman* v. *HSBC Holdings plc*, No. 18-cv-7359-PKC-CLP (E.D.N.Y.) ("*Freeman II*"); and *Bowman* v. *HSBC Holdings plc*, No. 19-cv-2146-PKC-CLP (E.D.N.Y.), which has been consolidated with *Freeman II*. There is also a fourth case, *Stephens* v. *HSBC Holdings plc*, No. 18-cv-7439-PKC-CLP (E.D.N.Y.), and Plaintiffs seek to share SCB's confidential banking records with counsel for the *Stephens* plaintiffs as well.

safeguards the confidentiality of any records Defendants may produce").) Plaintiffs also argue that the text of the Protective Order was not something on which SCB reasonably relied (Pls.' Br. at 13–20), which is belied by the clear and un-contradicted record developed before the Magistrate Judge.

Judge Merkl rightly declined to condone Plaintiffs' effort to vitiate the Protective Order. In rejecting Plaintiffs' arguments, Judge Merkl reached the sound and unremarkable conclusions that (i) the Protective Order meant what it says—namely, that confidential materials "shall not be copied, reproduced, summarized, extracted, or abstracted . . . except to the extent doing so is reasonably necessary for conducting this Litigation" (ECF No. 273 at § E.8); (ii) under Second Circuit law, "there is a strong presumption against the modification of a protective order"; and (iii) when parties rely on a protective order, the Court should only modify it where there is "some extraordinary circumstance or compelling need." *S.E.C.* v. *The Street.Com*, 273 F.3d 222, 229 (2d Cir. 2001). As Judge Merkl found, non-party SCB reasonably relied on those negotiated protections when it produced the records of tens of thousands of transactions for use in *this* case. (*See* ECF No. 348-1 at 57:4–19, 60:8–13.) Judge Merkl likewise found that Plaintiffs' desire to use unspecified information from those records to try to draft an amended complaint in another action presents neither an extraordinary circumstance nor a compelling need. (ECF No. 348-1 at 11:4-10, 60:14–24.)

SCB has already litigated the *Freeman* plaintiffs' claims to dismissal, and will move to dismiss any amended complaint that is filed in that case, which is premised on an entirely different theory than Plaintiffs have here ever asserted. But Plaintiffs here should not be permitted to fish through SCB's confidential banking records produced for this case only in the hope of coming up with something that might save their already-dismissed *Freeman* claims. Plaintiffs fail

to show Judge Merkl's conclusions were either "clearly erroneous" or "contrary to law," the high bar required to set aside her Order under Fed. R. Civ. P. 72(a), and Plaintiffs' objections to Judge Merkl's ruling from the bench and subsequent September 27 Order should therefore be overruled.

**BACKGROUND**

Plaintiffs' summary of the *Freeman* actions and their supposed connection to this case is highly misleading. Those actions are not, nor have they ever been, "essentially a mirror image of *Bartlett*." (Pls.' Br. at 1.) While there are overlapping plaintiffs and plaintiffs' counsel, the *Freeman* defendants are entirely different, and it was Plaintiffs' decision to make sure that this case would proceed separately from the *Freeman* actions by asserting claims predicated on an entirely different theory of liability. And, contrary to Plaintiffs' suggestions otherwise (*see* Pls.' Br. at 3, 6), the *Freeman* court has never authorized discovery and indeed rejected Plaintiffs' very recent request that it do so. (*Freeman II*, Order dated Sept. 15, 2023.)

***The Freeman Actions.*** On November 10, 2014, a group of plaintiffs represented by the same counsel as Plaintiffs here filed a lawsuit against SCB and several other banks asserting conspiracy claims under the Anti-Terrorism Act ("ATA") arising out of attacks in Iraq between 2004 and 2011. (Compl. ¶¶ 1, 12–723, *Freeman I*, ECF No. 1.) On December 26, 2018, additional plaintiffs, represented by the same counsel, filed a separate complaint asserting both conspiracy and aiding-and-abetting claims under the ATA, based on the same factual predicate as in *Freeman I* and against the same defendants. (Compl., *Freeman II*, ECF No. 1.) A third nearly identical case, *Bowman* v. *HSBC Holdings plc*, No. 19-cv-2146-PKC-CLP (E.D.N.Y.), was initiated against the same defendants on April 11, 2019. All of those cases have proceeded before Judge Chen.

In 2019, Judge Chen dismissed all claims in *Freeman I* against SCB and the other defendants with prejudice, issued a final judgment, and denied the plaintiffs' motion for

reconsideration, finding that plaintiffs had failed to plead any plausible conspiracy or aiding-and-abetting claim under the ATA. 413 F. Supp. 3d 67, 98-99 (E.D.N.Y. 2019). On June 5, 2020, Judge Chen dismissed all claims against SCB and all non-defaulting defendants in the *Freeman II* and *Bowman* cases for similar reasons. *Freeman* v. *HSBC Holdings plc*, 465 F. Supp. 3d 220, 235 (E.D.N.Y. 2020). The only reason final judgment has not been entered in *Freeman II* and *Bowman* is that the plaintiffs have delayed for years completing a damages inquest as to the defaulting defendant, Bank Saderat.

As Judge Chen recognized in her dismissal orders, Plaintiffs' theory in all the *Freeman* actions centered on allegations that SCB and other defendant banks conspired with the Government of Iran, "multiple state-affiliated and private Iranian entities," and Bank Saderat "for the purposes of evading U.S. sanctions on financial and business dealings with Iran, conducting illicit trade-finance transactions, concealing the involvement of Iranian agents in financial payments to and from United States dollar-denominated accounts, and facilitating Iran's provision of material support to support terrorist activities and organizations, including Hezbollah." 465 F. Supp. 3d at 224–25.

On January 5, 2023, the Second Circuit affirmed Judge Chen's dismissal of *Freeman I*. *See* 57 F.4th 66, 72 (2d Cir. 2023). The United States Supreme Court denied certiorari on October 2, 2023. 2023 WL 6377871 (Oct. 2, 2023). Because no legally cognizable claims have been pled and there is not even an operative complaint against any non-defaulting defendants, discovery has never been authorized or taken in any of the *Freeman* actions.

***The Stephens Case.*** Two days after Plaintiffs' counsel filed *Freeman II* in December 2018, another set of plaintiffs represented by separate counsel with no role in *Bartlett* or the *Freeman* actions filed a copycat complaint that is also now assigned to Judge Chen.

*Stephens* v. *HSBC Holdings plc*, No. 18-cv-7439-PKC-CLP (E.D.N.Y. Dec. 28, 2018). The *Stephens* case has been stayed since its inception pending various threshold decisions in the *Freeman* actions, including the Supreme Court's recent denial of certiorari on October 2, and discovery has never been authorized or taken. (*Stephens*, Minute Entry dated June 27, 2023.)

***The Bartlett Case.*** Also in December 2018, within days of filing *Freeman II*, Plaintiffs filed the present action. While plaintiffs designated each of the *Freeman* actions and *Stephens* as related to each other, they did not so designate this case. (Civil Cover Sheet, *Bartlett*, ECF No. 1-1 § VIII.) There was good reason for that:

*First*, the two sets of cases involve different parties. Plaintiffs did not pursue claims in *Bartlett* against SCB or any of the *Freeman* defendants. And while the *Bartlett* plaintiffs' group is comprised of many of the same individuals that were also plaintiffs in *Freeman I* or *Freeman II*, approximately 50 plaintiffs in the *Freeman* actions are not plaintiffs in *Bartlett*.

*Second*, contrary to Plaintiffs' assertions, the claims in this case are not the same as those asserted—and dismissed—in the *Freeman* actions. Plaintiffs here are pursuing distinct theories of liability against different sets of bank defendants based on different alleged financial relationships. The commonality is that all of the complaints include general allegations that mention both Hezbollah and Iran, and there are similar allegations with respect to the overlapping attacks. But whereas the *Freeman* cases alleged a purported conspiracy to evade sanctions against Iran, the *Bartlett* complaint focuses on an alleged Lebanon-based "criminal enterprise" that assisted the "social welfare organizations, companies, and operatives" of the terrorist group Hezbollah. (*Bartlett*, ECF No. 189 (SAC) ¶¶ 9–12.) According to the *Bartlett* complaint, the Lebanese defendant banks "agree[d] to help Hezbollah" utilize its "commercial apparatus" to launder funds and ship illicit materials along "Hezbollah corporate routes," which allegedly also

had the effect of enabling terrorist attacks. (*Id.* ¶¶ 9, 21, 24.) It was that theory—distinct from the *Freeman* actions—on which this Court permitted Plaintiffs' claims here to proceed to discovery. *See Bartlett* v. *Société Générale de Banque au Liban SAL*, 2020 WL 7089448, at *1–2 (E.D.N.Y. Nov. 25, 2020); *see also id.* at *7 (distinguishing *Freeman I*).

***The Bartlett Subpoena and Protective Order.*** On December 27, 2021, Plaintiffs issued a 33-page subpoena to non-party SCB for banking records concerning 682 persons and entities purportedly relevant to the allegations in this case. (ECF No. 339-1.) The subpoena asked that SCB apply expansive search parameters and numerous alternative spellings to identify information regarding these entities. (*Id.* at 1–3.) After significant negotiation, SCB agreed to search for correspondent banking transaction records referencing the names that Plaintiffs identified, but only if a suitable protective order was entered that would limit their subsequent use. (ECF No. 339-2, at 2.) Plaintiffs agreed to that condition.

On June 8, 2022, Judge Merkl entered the Protective Order. (ECF No. 273.) The Protective Order offers two layers of protection for the banking records at issue here.

- First, it provides that "all items or information . . . produced or generated" in discovery "shall be used solely for the purpose of conducting this Litigation." This restriction is accompanied by a provision stating that "a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." (ECF No. 273 §§ B.2, C.)

- Second, it further restricts usage of "Protected Information"—defined to include customer lists, personal identifying information, or other sensitive commercial or personal data—to a specific set of persons for use only in this case. (*Id.* §§ B.6, D.1-2, E.1.) Material designated as Protected Information "shall not be copied, reproduced, summarized, extracted, or abstracted" except as "necessary for conducting this Litigation." (*Id.* § E.8.)

The Protective Order says nothing about moving to lift the use restrictions on documents falling under this higher level of protection for use in another case.

The same day that the Protective Order was entered, Plaintiffs contacted SCB, noting that a "protective order [was] now signed by the Court," and asking for "a timetable for [SCB's] production of responsive documents." (ECF No. 339-2 at 2.) SCB sought and received confirmation from Plaintiffs' counsel as to how it should designate the records to ensure that they would be treated as Protected Information under the Protective Order. (*Id.*) Not surprisingly, given the extensive history with Plaintiffs and their counsel, when producing documents in response to the non-party subpoena, SCB repeated that the information was being "provided to [Plaintiffs' counsel] for use in the above-referenced matter only"—*i.e.*, *Bartlett*. (ECF No. 339-3, at 2.) In addition, those records include personal identifying information about parties originating and receiving U.S. Dollar transactions, as well as beneficiaries and intermediaries involved in those transactions. In total, SCB located and produced data referencing 233 of the names that Plaintiffs provided, which resulted in the production of records of 53,486 correspondent banking transactions spanning a nearly 18-year period from 2003 to 2021. On November 4, 2022, SCB completed its agreed-to production in response to the subpoena. (*Id.*)

***Requests To Amend in the Freeman Actions.*** On January 19, 2023, shortly after the Second Circuit affirmed the dismissal of *Freeman I* on January 5, 2023, plaintiffs in the still-open *Freeman* actions (*Freeman II* and *Bowman*, which have since been consolidated) requested permission from Judge Chen to amend their pleadings, purportedly in order to "further conform them to the standards set forth" in two decisions issued by the Second Circuit in the years since all claims were dismissed against all non-defaulting defendants. The *Freeman* plaintiffs also requested leave to file a motion to vacate the final judgment in *Freeman I* to allow for amending

the pleadings in that case. (*Freeman II*, ECF No. 108, at 1, 6.) The *Freeman* plaintiffs never suggested to Judge Chen that discovery was necessary to do so. Judge Chen set a conference for June 27, 2023 to consider the *Freeman* plaintiffs' various requests and to discuss amendment in the stayed *Stephens* action.

Shortly before the June 27, 2023 conference before Judge Chen, Plaintiffs' counsel contacted SCB seeking its blanket consent to use information SCB produced as a non-party in *Bartlett* to support a proposed amended complaint in *Freeman II*, and at the conference *Freeman* plaintiffs' counsel raised for the first time with the *Freeman* Court that they would be seeking information produced in *Bartlett* for use in formulating an amended complaint. (ECF No. 339-4.) Plaintiffs contend that at that conference, Judge Chen somehow endorsed their approach. (Pls.' Br. at 3; ECF No. 348-2 at 41:8-42:24.) That is not what happened. As reflected in the transcript, after SCB raised concerns about the *Freeman* plaintiffs' vague plan to misuse the materials SCB provided in *Bartlett* under the Protective Order to try to further the *Freeman* actions (*see* ECF No. 348-2 at 43:20–45:21), Judge Chen deferred ruling on the issue. (ECF No. 348-2 at 46:11–12 ("I must confess, I haven't really looked into this issue.").) Notably, *Freeman* plaintiffs did not ask Judge Chen for permission to engage in discovery, which of course would not be proper. *Zeitlin* v. *Palumbo*, 532 F. Supp. 3d 64, 70 (E.D.N.Y. 2021) ("[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim."). Judge Chen did authorize the *Freeman II* and *Stephens* plaintiffs to file amended complaints and set a briefing schedule for motions to dismiss,[2] and decided that any request by plaintiffs for the

[2] Notably, Judge Chen did not conclude that permitting the *Freeman II* plaintiffs to amend was proper, but found that "there's some practical appeal" to allowing those plaintiffs to file an amended pleading together with the *Stephens* plaintiffs, who still had the ability to amend as of right. (ECF No. 348-2 at 32:18–19.) Judge Chen noted at the same time that defendants "[s]urely"

*Bartlett* materials needed to be "resolved in the *Bartlett* case." (*Freeman II*, Minute Entry dated June 27, 2023.)

Thereafter, SCB's counsel met and conferred with counsel for Plaintiffs and repeatedly requested that Plaintiffs' counsel specify what information from the reams of banking transaction data produced here Plaintiffs thought was needed for an amended complaint in *Freeman II*. Plaintiffs' counsel responded with only vague assertions about "Hezbollah-related individuals and entities" and providing an "initial list" of names that are referenced in some way in tens of thousands of transactions produced by SCB in this case. (ECF No. 339-5.)[3]

***Request To Judge Chen to Misuse Bartlett Discovery for the Freeman Actions.*** On July 21, 2023, Plaintiffs submitted a letter motion to Judge Merkl, requesting permission to use the materials SCB produced in response to their non-party subpoena so that they could amend their complaints in *Freeman II* and *Bowman*, as well as the complaint in *Stephens*. (ECF No. 335.) In their letter motion, Plaintiffs claimed that they sought to share and use (1) unspecified names of "alleged Hezbollah-affiliated entities and individuals," (2) names of unspecified banks "which held the relevant accounts," and (3) unspecified dollar amounts and dates of transactions processed on behalf of those entities and individuals. (*Id.* at 2.)

Instead of waiting to permit Judge Merkl to decide their request, on September 13, 2023, the *Freeman II* plaintiffs moved before Judge Chen to lift the stay of discovery and permit

---

would "move to deny leave to file that amended complaint" as part of their response. (*Id.* at 32:25–33:2.)

[3] In making their case to this Court, Plaintiffs provide only an "illustrative rather than a definitive" list that in no way narrows the scope of the information that they might seek to use in *Freeman II*. (Pls.' Br. at 6 n.5.) Plaintiffs have included citations to the *Bartlett* complaint where some of these names are mentioned, but their relevance to the *Freeman* actions has never been explained to SCB or the Court. (ECF No. 351.)

them to subpoena the same *Bartlett* discovery materials (apparently asking permission to "subpoena" themselves), arguing that because they already possessed the records, "[Second] Circuit case law permits use of records from one case in another so long as they were not obtained in bad faith." (*Freeman II*, ECF No. 113, at 2.) Judge Chen swiftly denied that request "given the pending discovery motion in *Bartlett* . . . and the existence of [a] protective order in that case." (*Freeman II*, Order dated Sept. 15, 2023.)

***Magistrate Judge Merkl's Decision***. At a hearing on September 27, 2023, Judge Merkl denied Plaintiffs' motion to modify the Protective Order. As the Court held in a well-reasoned oral decision from the bench, the "very clear" text of the Protective Order did not permit Plaintiffs to simply request and receive SCB's discovery materials, and instead required that they move to modify the Protective Order "against the backdrop of preexisting Second Circuit case law." (ECF No. 348-1 at 60.) Relying on *S.E.C.* v. *TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001), and *Martindell* v. *Int'l Tel. & Tel. Corp.*, 594 F.2d 291 (2d Cir. 1979), Judge Merkl found that there was "substantial reliance" by SCB on the "carefully negotiated" Protective Order, which had been a condition of SCB producing confidential information to Plaintiffs here, and that modifying it would be "presumptively unfair." (ECF No. 348-1 at 56–57.) Judge Merkl thereby denied Plaintiffs' motion without prejudice "in the absence of any sort of . . . discovery in the other matters" (*id.* at 60), as permitting use of the documents would otherwise result in pre-complaint discovery that is not contemplated under the Federal Rules of Civil Procedure, much less under the Protective Order's use restrictions.

Shortly thereafter, the *Freeman* plaintiffs sought "a stay of the current deadlines" to file amended complaints "pending resolution of" their anticipated objection to Judge Merkl's order. (*Freeman II*, ECF No. 115, at 1.) Judge Chen denied that request, and set a new deadline for amended complaints of December 27, 2023. (*Freeman II*, Order dated Oct. 2, 2023.)

Plaintiffs then filed the instant objection.

## STANDARD OF REVIEW

All agree that Judge Merkl's decision should not be disturbed unless Plaintiffs can demonstrate it was "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "[M]agistrate judges are 'afforded broad discretion in resolving discovery disputes'" and their decisions are reviewed under this "highly deferential" standard. *Best Payphones, Inc.* v. *Dobrin*, 409 F. Supp. 3d 130, 134 (E.D.N.Y. 2018) (quoting *McNamee* v. *Clemens*, 2014 WL 1338720, at *2 (E.D.N.Y. Apr. 2, 2014)). Accordingly, "the district court must affirm the decision of the magistrate judge unless the district court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Pall Corp.* v. *Entegris, Inc.*, 655 F. Supp. 2d 169, 172 (E.D.N.Y. 2008) (quotation omitted). This standard "imposes a heavy burden on the objecting party, and only permits reversal where the magistrate judge abused [his or her] discretion." *Ahmed* v. *T.J. Maxx Corp.*, 103 F. Supp. 3d 343, 350 (E.D.N.Y. 2015) (citations omitted).

## ARGUMENT

Judge Merkl's rulings were entirely proper and consistent with Second Circuit law. Judge Merkl reasonably construed the Protective Order to which the parties stipulated and that she approved, and found it did not give Plaintiffs the ability to freely use properly designated Protected Information in other cases. (ECF No. 348-1 at 56:11–19.) As a result, Judge Merkl applied the standard all agree applies to requests to modify a protective order where a party relies on such an order: The requesting party must make a "showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need." *S.E.C.* v. *TheStreet.Com*, 273 F.3d at 229 (quoting *Martindell*, 594 F.2d at 296). Plaintiffs' arguments that the Protective Order imposes no meaningful restrictions on their use of SCB's confidential records in other cases are all unavailing

under a plain reading of the Protective Order and the undisputed facts, and Plaintiffs have not demonstrated any extraordinary circumstances justifying modification of that order.

## I. JUDGE MERKL CORRECTLY HELD THAT PLAINTIFFS' PROPOSED USE OF DISCOVERY FOR THE *FREEMAN* ACTIONS WOULD VIOLATE THE PROTECTIVE ORDER.

Stipulated orders, like the Protective Order here, should be read in conformity with "contractual interpretation principles." *Clear Channel Outdoor, LLC* v. *City of New Rochelle*, 2022 WL 12404476, at *4 (S.D.N.Y. Oct. 20, 2022). As Judge Merkl found in interpreting the Protective Order that she herself entered, the Protective Order plainly restricts Plaintiffs' use of SCB's confidential materials to this case. Under Section D of the Protective Order, any party that produces information in this action may designate materials as "Protected Information" as long as it has a "good faith basis for the designation." (ECF No. 273, § D.1.) Protected Information includes "financial information" and "sensitive personal data." (*Id.* at § D.2.) Because SCB's response to the non-party subpoena consisted of "bank records" that "[i]nherent[ly]" contain "sensitive personal data" and "financial information," Judge Merkl found that SCB's documents properly qualified for the protections afforded to confidential materials under the Protective Order. (*See* ECF No. 348-1 at 59:13–23.) Plaintiffs do not dispute this finding. Having found that SCB properly designated materials as Protected Information, the Protective Order lays out in Section E the limited persons that Plaintiffs may share SCB's information with in connection with *this lawsuit*, and that use is restricted further "to the extent . . . reasonably necessary for conducting this Litigation." (ECF No. 273 § E.8.) Plaintiffs' proposed sharing of SCB's Protected Information with the *Freeman* and *Stephens* plaintiffs so that they can attempt to revive dismissed complaints is nowhere contemplated in the Protective Order.

In their objections, Plaintiffs argue that the Protective Order does not impose any restrictions at all on the use of SCB's confidential banking records in other actions. (Pls.' Br.

at 11.) Instead, Plaintiffs argue, in determining whether their use of SCB's confidential banking records should be limited to this action, the Court must just apply the same standard that is "also applied in the absence of protective orders." (*Id.* at 10.) In other words, Plaintiffs contend that the Protective Order has essentially no use restrictions at all. Plaintiffs rely exclusively on one sentence contained in Section C of the Protective Order, which does not support their arguments. Section C states in relevant part:

> All Discovery material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation). However, a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter.

(ECF No. 273 § C.) Relying on the last sentence of that section, Plaintiffs claim that the intent behind this provision was to permit the use of discovery material in other cases at the whim of either party. According to Plaintiffs, this means that they may use non-party SCB's confidential records in any other action, including to pursue a new complaint against SCB, without any *modification* to the Protective Order by the Court. Indeed, according to Plaintiffs, permitting them unrestricted access to SCB's confidential materials "would have been *enforcing*" the Protective Order. (Pls.' Br. at 10.) Plaintiffs are wrong. Section C does not purport to govern "Protected Information"—rather, it governs "Discovery Material" generally. "Protected Information" is subject to the additional restrictions set forth in Section E, which is clear that confidential materials cannot be "copied, reproduced, summarized, extracted, or abstracted . . . except to the extent doing so is reasonably necessary for conducting this Litigation." (ECF No. 273 § E.8.) There is no dispute that SCB's banking records were properly designated as Protected Information.

Moreover, as Judge Merkl correctly ruled, Section C does not purport to alter the normal standards for modifying the Protective Order's use restrictions. As Judge Merkl explained,

the language in Section C does not do away with "preexisting Second Circuit case law" on the strict standard necessary to modify a protective order, but rather must be "interpret[ed] . . . against the backdrop" of that standard. (ECF No. 348-1 at 59:8–12.) The language in Section C that contemplates the filing of a letter motion requesting access to discovery materials sets forth "a mechanism" for attempting to demonstrate extraordinary circumstances or compelling need and does not displace the substantive standard that applies to altering the use restrictions on documents produced under a protective order. (*See id.*) Any other reading would render the Protective Order's use restrictions meaningless, because any party could vitiate them by making a simple request to the Court stating the materials were obtained without "bad faith." (Pls.' Br. at 10-11.)

Judge Merkl's ruling is also consistent with contemporaneous evidence of the parties' intent when negotiating the Protective Order. (*See* ECF No. 341.) During those negotiations, Plaintiffs insisted on including language in Section C about "mov[ing] before the Court . . . to request permission to use Discovery Material" because, in their view, "[v]irtually every protective order [they] have been involved in contains language noting that a party can move to ***modify*** the order." (*Id.* at 8 (emphasis added).) Plaintiffs subsequently stressed to Defendants that it was "critical" to incorporate this language so that the parties do not "foreclose the possibility of moving before the Court" to modify the order. (*Id.* at 5 (emphasis added).) Having themselves insisted on the language in Section C purportedly to preserve the ability to *file a motion* seeking *modification* of the Protective Order, Plaintiffs cannot now claim that provision actually reflects an agreement to grant them free use of confidential materials in other actions.

Plaintiffs rely heavily on *In re Iwasaki Elec. Co., Ltd.*, 2005 WL 1251787 (S.D.N.Y. May 26, 2005); *affirmed U.S. Philips Corp.* v. *Iwasaki Elec. Co.*, 142 F. App'x 516 (2d Cir. 2005), a case never cited in submissions before Judge Merkl. (*See* Pls.' Br. at 8–10.) That

case has no application here. In *Iwasaki*, unlike here, the same parties were "engaged in patent litigation in the United States, Germany, and Japan" over the same technology in "closely related" proceedings. *Iwasaki*, 2005 WL 1251787, at *1. Because the parties were litigating similar issues across several jurisdictions, their stipulated protective order was explicit that parties could use "CONFIDENTIAL" or "CONFIDENTIAL ATTORNEYS' EYES ONLY" documents in "related legal action[s]" by "provid[ing] written notice" to a producing party. *Id.* If the producing party "object[ed] in writing" to the use in a related action, the party seeking disclosure was permitted to move "for an order allowing such disclosures." *Id.* Also unlike here, the *Iwasaki* plaintiff invoked a statute—28 U.S.C. § 1782—that granted the right to obtain discovery in the U.S. for foreign proceedings in Germany and Japan. The court granted the discovery request, recognizing that the protective order entered in that case "specifically contemplates" use of confidential discovery materials in "the German and Japanese litigation." *Iwasaki*, 2005 WL 1251787, at *2; *see Philips*, 142 F. App'x at 518 ("the protective order . . . clearly contemplates the possibility that the parties will wish to use confidential material in related actions . . .").

Unlike the plaintiffs in *Iwasaki*, the *Freeman* plaintiffs have no right to discovery (their claims against SCB have been dismissed, and at no time was discovery authorized), and the Protective Order does not contemplate sharing of discovery in any related action. (ECF No. 273 at §§ C, E.8.) Rather, as noted, the Protective Order does not even contemplate a procedure for using material designated as "Protected Information" in another case absent consent of the producing party. By contrast, the order in *Iwasaki* was negotiated by two parties recognizing they may use the same discovery "in a *related* legal action" between the same parties. *Iwasaki*, 2005 WL 1251787, at *2. What Plaintiffs here want is to hand over discovery they obtained from a third party, SCB, to a set of plaintiffs pursuing claims in other actions against different defendants

premised on different theories of liability. Among those different defendants is the very non-party that produced discovery in reliance on language in a Protective Order that says expressly that this could not happen. Had the *Bartlett* parties intended for that to happen, the Protective Order should have said so. And as is plain from SCB's communications with Plaintiffs, it would never have agreed to produce confidential materials under such a provision. *See infra* § II.A.

The Protective Order, by its plain terms, prohibits Plaintiffs from providing SCB's confidential banking records to another set of plaintiffs pursuing other claims. It is irrelevant that there is partial overlap of plaintiffs and plaintiffs' counsel.

## II. JUDGE MERKL CORRECTLY HELD THAT PLAINTIFFS FAILED TO MEET THE HIGH BURDEN FOR MODIFYING THE PROTECTIVE ORDER.

Where, as here, a party seeks to use information subject to a protective order in a manner inconsistent with that order, that party bears the burden to demonstrate why a modification of the order is warranted. *See In re MTBE Prods. Liab. Litig.*, 60 F. Supp. 3d 399, 403–04 (S.D.N.Y. 2014) ("Plaintiffs—who have stipulated to both protective orders—bear the burden of persuading the Court to dissolve them prematurely."). There is no dispute as to the standard that applies: "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.'" *The Street.com*, 273 F.3d at 229 (quoting *Martindell* v. *Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). Moreover, it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied." *TheStreet.Com,* 273 F.3d at 229–30. As Judge Merkl correctly held, SCB reasonably relied on the use restrictions in the Protective Order, and Plaintiffs have not demonstrated any extraordinary circumstances or a compelling need to misuse SCB's banking records for some other case.

**A. SCB Relied on the Protective Order When Producing Documents as a Non-Party.**

Judge Merkl properly conducted the inquiry prescribed under Second Circuit law and found that SCB reasonably relied on the Protective Order based on the factual record before her. Contrary to Plaintiffs' best efforts to obscure the concept of "reasonable reliance," that inquiry is a simple one, to be answered in light of circumstances surrounding the production of the materials at issue. *Martindell*, like the present case, involved a stipulated protective order entered by the court that made depositions "confidential and used solely by the parties for prosecution or defense of the action." 594 F.2d at 293. It was obvious that "testimony had been given in reliance upon the protective order" because that order had been entered in advance of the depositions, and the deponents might have objected or refused to give complete testimony without the guarantees in the protective order. *Id.* at 296. By contrast, in *TheStreet.Com*, reliance was deemed impossible because confidentiality had been waived under one protective order, and the second protective order at issue had not been entered until *after* the testimony had already been provided. *See* 273 F.3d at 233–34. More recently, in *Arcesium LLC* v. *Advent Software, Inc.*, 2022 WL 621973 (S.D.N.Y. Mar. 3, 2022), the court found reasonable reliance where, as here, a party produced materials that it designated as "Confidential" under a protective order that limited their use to "this litigation." *Id.* at *1–2. The producing party, the court held, reasonably relied upon the protective order's restrictions on use of those materials, and the receiving party could not use that material to draft a complaint in a new action against the producing party. *Id.*

As Judge Merkl correctly found, the record here amply demonstrates SCB's reliance on the Protective Order. (*See* ECF No. 348-1 at 57:4–19.) First, after receiving the subpoena before the Protective Order issued, SCB informed counsel for Plaintiffs that it would be "unable to disclose [SCB's] records before understanding how their confidentiality will be

ensured" and that Plaintiffs' counsel should inform SCB "when the final [protective order] agreement has been entered." (ECF No. 339-2 at 2.) Once Judge Merkl entered the Protective Order, SCB then further asked for confirmation from Plaintiffs' counsel that marking documents as "CONFIDENTIAL" would ensure their treatment as "Confidential Information" (and therefore Protected Information) under the Protective Order, and Plaintiffs' counsel responded in the affirmative. (*Id.* at 1–2.) Then, when SCB produced the records, it made the appropriate designations and specifically noted that the documents were for use "in the above-referenced matter only." (ECF No. 339-3.) Plaintiffs did not object to this invocation of the Protective Order and never suggested that they may seek to hand over this information to plaintiffs in other cases. Based on this record, it is abundantly clear that SCB specifically relied upon the Protective Order when producing banking records. Indeed, had a suitable Protective Order not been in place restricting use of produced records to this case, SCB would have sought its own protective order. (ECF No. 348-1 at 60:8–13.)

Plaintiffs argue SCB could not have relied on the Protective Order because "SCB was legally obligated to produce records responsive to Plaintiffs' third party subpoena." (Pls.' Br. at 19.) But that is not how third-party subpoenas (or party discovery requests) work generally or in this case, and the same could be said for any party or non-party that produces documents in a lawsuit pursuant to a document request or subpoena. In fact, Plaintiffs' subpoena was wildly overbroad, seeking "All Transaction Records" involving any of the 682 listed entities or persons and any Defendant, as well as "All Compliance Records" relating to any of the 682 listed entities or persons and all Defendants. (ECF No. 339-1 at 9.) As is common with third-party subpoenas, rather than litigate the scope or refuse to produce documents, SCB attempted to reach a compromise conditioned on confidentiality and use restrictions of the material produced. This is

clear-cut reliance upon a protective order that must receive the robust protection from modification compelled by the Second Circuit. *See Martindell*, 594 F.2d at 296.

Plaintiffs seek to disregard this factual record by relying upon *In re EPDM*, 255 F.R.D. 308 (D. Conn. 2009), which articulated a multi-factor test for reasonable reliance that examines: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Id.* at 318. While this test from the District of Connecticut has been used by some courts to discern whether reliance could be *inferred* in the absence of a record demonstrating a party's reliance on a protective order, here there is direct evidence of reliance. Nonetheless, Judge Merkl herself considered these factors correctly and in line with more recent and factually similar cases than those relied upon by Plaintiffs.

***Scope of the Protective Order.*** Plaintiffs argue that the Protective Order here is a "blanket order," and therefore SCB's reliance is somehow less reasonable. *Id.* at 319. But the Protective Order here is not a "blanket order" for properly designated Protected Information, which SCB's information indisputably is. (ECF No. 273 § E.8.) As the court in *Arcesium* found, a protective order is not a "blanket order" when it (i) is limited the definition of "confidential information" to "three specifically delineated categories of documents," (ii) requires that "any designation of confidentiality must be made in 'good faith,'" and (iii) "allows the receiving party to challenge those designations and for the Court to intervene if the parties cannot reach an agreement." 2022 WL 621973, at *4 (collecting similar cases). Each of these reasons is equally or more applicable to the Protective Order here. (*See* ECF No. 273 § D.2 (providing two specific categories of "Confidential Information"); *id.* § D.1 (requiring that a Producing Party have "a

good faith basis for the designation"); *id.* § H (providing a process for the challenging of designations and court intervention).)

***Language of the Protective Order.*** As Judge Merkl held, the language of the Protective Order "is very clear" (ECF No. 348-1 at 58:22–24), and could not lead to any conclusion other than that the documents produced under its provisions would be "used solely for the purpose of conducting this Litigation" (ECF No. 273 § C) and "not be copied, reproduced, summarized, extracted, or abstracted by the Receiving Party except to the extent doing so is reasonably necessary for conducting this Litigation" (*id.* § E.8).[4] The cases cited by Plaintiffs in which courts did not find reliance dealt with protective orders that expressly applied only to pretrial proceedings. (Pls.' Br. at 15.) The Protective Order here addresses the use of Protected Information at trial (ECF No. 273 § L) and its terms "survive the termination of this Litigation" and provide for the return or destruction of all protected information once concluded. (*Id.* §§ M, N.) "Where a Protective Order includes terms for the destruction of all documents designated as confidential at the end of the litigation, Courts have routinely concluded that these provisions suggest that the parties could reasonably expect that any information produced subject to the Protective Order would ordinarily not be used in other matters." *Arcesium*, 2022 WL 621973, at *4 (cleaned up). The Protective Order also provides procedures to maintain the confidentiality of materials "offered and received into evidence at trial," including affording the producing party the opportunity to

[4] As pure misdirection, Plaintiffs note that the Protective Order contains provisions permitting law firms, vendors, and experts to have access to documents. Of course, all of these categories of persons are permitted access only if that information "is to be used in good faith in relation to *this case*," and they sign a confidentiality agreement annexed to the Protective Order. (ECF No. 273 §§ E.3, E.4) (emphasis added.) Such limited and carefully circumscribed access by non-parties fully comports with the fundamental protection at issue here, which is that protected materials "shall be used solely for the purpose of conducting this Litigation." (*Id.* § C; *see also id.* § E.8.)

object to and seek redaction of such materials, to the extent that they contain sensitive information. (ECF No. 273 § L.)[5]

***Cause to Enter the Protective Order***. Plaintiffs argue that reliance on the Protective order was not reasonable because it was stipulated to and not "granted after a hearing to show good cause." (Pls.' Br. at 16.) Plaintiffs ignore the fact that the Protective Order specifically states that it was entered upon "good cause having been shown." (ECF No. 273 at 1.) At the September 27 hearing, Judge Merkl again considered whether good cause existed for the Protective Order, and reaffirmed the importance of the protections that it offered. (ECF No. 348-1 at 57:20-58:21.) These findings of good cause weigh in support of a finding of reliance. *Arcesium*, 2022 WL 621973, at *5 (reliance supported where the Court "carefully reviewed the terms of the proposed order," which "specifically state[d] that 'the Court found that good cause exists for the issuance of this order,'" and where "[t]he Court continues to find that there was good cause for the protective order . . .").

***Nature of SCB's Reliance***. SCB's reliance here could not be clearer: SCB was expressly unwilling to produce *anything* to Plaintiffs unless and until a protective order was in place providing for confidentiality and restricting use to this case. (ECF No. 339-2 at 2.) As found by Judge Merkl, SCB also did forego, to its detriment, the many procedural options available to a non-party served by a subpoena, including seeking a protective order. (ECF No. 348-1 at 60:3-

[5] There is no merit to the suggestion that reliance is undermined by provisions of the Protective Order permitting a party to seek modification or challenge a designation. The same is true of any order. *See Med. Diagnostic Imaging, PLLC* v. *Carecore Nat., LLC*, 2009 WL 2135294, at *3 (S.D.N.Y. July 16, 2009) ("While, of course, that protection is subject to modification by the Court, by definition, any court order is subject to that court's modification. Such a provision does not, in this Court's view, undermine the parties' expectation that the Protective Order in these cases will not be modified to allow confidential materials they produced in this litigation to be used in other litigation . . .").

13.) It is common sense that where "a party produces documents that could 'expose it to additional litigation,' it is more likely that there was reliance." *Arcesium*, 2022 WL 621973, at *5 (quoting *Errant Gene Therapeutics, LLC* v. *Sloan-Kettering Inst. for Cancer Rsch.*, 2017 WL 4641247, at *4 (S.D.N.Y. Oct. 16, 2017)). Given the volume and sensitive nature of these records, there was ample cause for concern that an adversary might attempt to fish through them and misuse them against SCB or others. For that reason, SCB, a non-party, produced them pursuant to the express provision in the Protective Order that they remain confidential and only be used in connection with the *Bartlett* litigation.[6]

**B. No "Extraordinary Circumstances" Exist That Would Support Modifying the Protective Order.**

As Judge Merkl recognized (ECF No. 348-1 at 58:10-21), because protective orders "encourag[e] full disclosure of all evidence that might conceivably be relevant," courts apply "a strong presumption against the modification of a protective order" that is overcome only with a showing of "some extraordinary circumstance or compelling need." *Kiobel ex rel. Samkalden* v. *Cravath, Swaine & Moore LLP*, 895 F.3d 238, 247 (2d Cir. 2018) (quotation omitted). Plaintiffs fail to show that such compelling circumstances exist. Indeed, Plaintiffs fail even to say, with "specificity, which documents, which transactions" they sought to use, meaning that the Court had

[6] Plaintiffs suggest that Judge Merkl "erroneously" considered the sensitive nature of SCB's materials, since Plaintiffs have proposed to maintain confidentiality over SCB's information if they were permitted to use it in *Freeman II*. (Pls.' Br. at 21–22.) Plaintiffs misconstrue her words. Judge Merkl explained that SCB's "bank records" were exactly the kinds of materials that met the heightened protections available to "Protected Information" under the Protective Order (ECF No. 348-1 at 59:13–60:2), including the explicit prohibition against their ***use*** outside of this litigation. (ECF No. 273 §§ C, E.8.) Whether the records would remain non-public in Plaintiffs' proposed *Freeman II* complaint is thus entirely beside the point.

"nothing specific on which to make any kind of factual finding . . . of compelling need." (ECF No. 348-1 at 11:4-10.)[7]

Judge Merkl properly focused on Plaintiffs' bid to give SCB's confidential banking records to the *Freeman* and *Stephens* plaintiffs in the hope they might find something to save their already-dismissed claims. In particular, Judge Merkl correctly held that Plaintiffs could not show compelling need for the materials because of the "factual circumstance[s]" of *Freeman II*—specifically, "the absence of any sort of blessing by Judge Pollak or Judge Chen to commence discovery in the other matters." (*Id.* at 60:14–18.) Judge Merkl specifically invited Plaintiffs to reapply for use of the documents in *Freeman II* if "the factual circumstance[s]" change to the point that "discovery is commencing, and the discovery may be cross-applied." (*Id.* at 60:19–24; *see also Bartlett*, Minute Entry and Order dated Sept. 27, 2023 ("[T]he Court denies Plaintiffs' motion, without prejudice, if discovery commences in a case in which they seek to use discovery obtained in the *Bartlett* case.").) That has not happened.

The use of confidential banking records obtained in this case to draft a new complaint in other cases in which the claims have been dismissed and discovery has not been authorized does not constitute an "extraordinary circumstance." It is an abuse of process. In *Arcesium*, defendants in one action sought to modify a protective order "to permit them to use discovery material . . . to draft their [p]roposed [c]omplaint against [the p]laintiff in a new and separate suit." 2022 WL 621973, at *3. Even though the proposed new complaint would "involve the same parties, relate to the same [product] and the same contractual relationship, and would be filed in the same court," the court rejected the request to modify the protective order because while

7 Far from providing clarity in this regard, Plaintiffs' Exhibit 3 has *expanded* the number of transactions that Plaintiffs claim they might use from the previously identified 23,000 to more than 29,000. (ECF No. 348-3.)

plaintiffs had every right to pursue separate actions, they did not have the right to use protected information from one action to plead the other. *Id.* at *3–4.

As the Second Circuit has recognized, "[a] plaintiff who has failed adequately to state a claim is not entitled to discovery." *Main St. Legal Servs., Inc.* v. *Nat'l Sec. Council*, 811 F.3d 542, 567 (2d Cir. 2016). Instead, "Plaintiffs need to have adequate information in their possession at the time they file their complaint," and cannot rely on "discovery" as "a fishing expedition for Plaintiffs to obtain information to try and create claims." *Bruno* v. *Zimmer, Inc.*, 2016 WL 4507004, at *5 (E.D.N.Y. Aug. 26, 2016). "[D]iscovery is authorized solely for parties to develop the facts in a lawsuit in which a plaintiff has stated a legally cognizable claim." *Zeitlin* v. *Palumbo*, 532 F. Supp. 3d 64, 70 (E.D.N.Y. 2021) (quoting *Podany* v. *Robertson Stephens, Inc.*, 350 F. Supp. 2d 375, 378 (S.D.N.Y. 2004)). That is how the Federal Rules of Civil Procedure are supposed to work, and what Plaintiffs here seek to circumvent entirely.[8]

Plaintiffs stress that modification is warranted because *Freeman II* is "proceeding in the same courthouse" as this action and is "based on similar facts and circumstances." (Pls.' Br. at 23.) But if these actions were as related as Plaintiffs now claim, then they would have filed one complaint against all of the bank defendants five years ago. Plaintiffs instead opted to file

---

[8] The cases that Plaintiffs cite (Pls.' Br. at 22–23) do not suggest otherwise. *Charter Oak Fire Insurance Co.* v. *Electrolux Home Products, Inc.* involved several ongoing product liability actions against the same defendant manufacturer that were based on "the same alleged product defect." 287 F.R.D. 130, 134 (E.D.N.Y. 2012). Given that materials from one action were plainly "discoverable in the related actions" (which had not been dismissed and had proceeded to discovery), the court found that modifying the protective order was appropriate as "an efficient and effective means of avoiding duplicative and costly discovery." *Id.* Cases involving products liability actions proceeding in parallel against the same defendant—where "courts have frequently permitted the sharing of discovery among plaintiffs," *id.*—bear no relation to this case. *Tradewinds Airlines, Inc.* v. *Soros* likewise involved "closely related" actions with identity of parties where the court found compelling need to modify a protective order to avoid the "needless[] . . . duplication of effort and extra expense." 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016).

*Bartlett* within days of *Freeman II* without designating them as "related." This action has proceeded to discovery while the different claims in *Freeman II* have been dismissed and there is currently no operative complaint against SCB. Discovery has never been authorized in *Freeman II* (or in any of the related cases pending before Judge Chen), and when Plaintiffs sought to open discovery for the very purpose of obtaining the same materials they seek now, Judge Chen denied their motion. (*Freeman II*, Order dated Sept. 15, 2023.) Plaintiffs have no right to SCB's confidential materials—and certainly no *compelling need* that justifies modifying the Protective Order.

**CONCLUSION**

For the foregoing reasons, the Court should overrule Plaintiffs' objections to Judge Merkl's well-reasoned bench ruling and the September 27 Order.

Dated: October 25, 2023
New York, New York

Respectfully submitted,

*/s/ Andrew J. Finn*

Sharon L. Nelles (nelless@sullcrom.com)
Andrew J. Finn (finna@sullcrom.com)
Bradley P. Smith (smithbr@sullcrom.com)
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Telephone: (212) 558-4000
Facsimile: (212) 558-3588

*Attorneys for Standard Chartered Bank*