UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT BARTLETT, *et al*.,

                              Plaintiffs,

           -against-

SOCIETE GENERALE DE BANQUE AU LIBAN
SAL, *et al*.,

                              Defendants.

---

No. 19-cv-00007 (CBA) (TAM)

**DEFENDANTS'[1] OPPOSITION TO PLAINTIFFS'
OBJECTIONS TO MAGISTRATE JUDGE MERKL'S ORDER
DENYING MODIFICATION OF THE PARTIES' PROTECTIVE ORDER**

---

[1] Defendants are (1) Société Générale de Banque au Liban S.A.L., (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) LGB Bank s.a.l., (9) Banque Libano Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank S.A.L.

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ................................................................................................................. 2

    I.    The Extensively Negotiated Protective Order Must Be Modified for Plaintiffs to Use Records Produced in this Case in the *Freeman* Actions............. 2

    II.    The *Freeman* Actions Are Not "Mirror Images" of *Bartlett*. ............................... 5

    III.   Judge Merkl Correctly Denied Plaintiffs' Application to Modify the Protective Order in a Carefully Reasoned Order. .................................................. 6

ARGUMENT ................................................................................................................... 10

    I.    Standard of Review. ............................................................................................ 10

    II.    Judge Merkl Correctly Held that the *Martindell* Presumption Applies Because Plaintiffs Are Seeking to Modify the Protective Order. ....................... 10

    III.   Judge Merkl Correctly Concluded that Plaintiffs' Request Fails to Satisfy the Long-Established Standard Under Binding Second Circuit Law. ................. 14

            A.    Plaintiffs Failed to Show a Compelling Need or Extraordinary Circumstances. ........................................................................................... 14

            B.    SCB, KBC Bank, and Defendants Reasonably Relied on the PO and any Modification Will Undermine Defendants' Efforts to Seek Bank Secrecy Waivers from the Lebanese Government and Bank Customers. ........................................................................................... 18

CONCLUSION................................................................................................................. 23

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arcesium LLC v. Advent Software, Inc.*,
   No. 20-cv-4389, 2022 WL 621973 (S.D.N.Y. Mar. 3, 2022) .......................................... *passim*

*Bank v. Verde Energy USA, Inc.*,
   No. 19-cv-1472, 2020 WL 5596046 (E.D.N.Y. Sept. 18, 2020) ............................................13

*Bartlett v. Société Générale de Banque au Liban SAL*,
   No. 19-CV-00007, 2020 WL 7089448 (E.D.N.Y. Nov. 25, 2020) ................................. *passim*

*Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc.,*
   287 F.R.D. 130 (E.D.N.Y. 2012) ................................................................................16, 20, 22

*Cruden v. Bank of New York*,
   957 F.2d 961 (2d Cir. 1992) ..............................................................................................12, 13

*Daniels v. City of New York*,
   200 F.R.D. 205 (S.D.N.Y. 2001) .............................................................................................17

*Dove v. Atlantic Capital Corp.*,
   963 F.2d 15 (2d Cir. 1992) ................................................................................................13, 14

*In re EPDM*,
   255 F.R.D. 308 (D. Conn. 2009) ..............................................................................................20

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*,
   No. 15-CV-2044, 2017 WL 4641247 (S.D.N.Y. Oct. 16, 2017) ..............................................21

*Eutectic Corp. v. Metco, Inc.*,
   61 F.R.D. 35 (E.D.N.Y. 1973) .................................................................................................13

*Freeman v. HSBC Holdings PLC*,
   413 F. Supp. 3d 67 (E.D.N.Y. 2019) ............................................................................. *passim*

*Fritz v. LVNV Funding, LLC*,
   587 F. Supp. 3d 1 (E.D.N.Y. 2022) .........................................................................................10

*Grief v. Nassau Cnty.*,
   246 F. Supp. 3d 560 (E.D.N.Y. 2017) ....................................................................................10

*In re Hornbeam Corp.*,
   No. 14-mc-424, 2020 WL 4698955 (S.D.N.Y. Aug. 13, 2020) ...............................................16

*In re Iwasaki Elec. Co.*,
No. M19-82, 2005 WL 1251787 (S.D.N.Y. May 26, 2005) .................................................13

*Knitting Fever, Inc. v. Coats Holdings Ltd.*,
No. CV05-1065 (DRH)(WDW), 2012 WL 13098758 (E.D.N.Y. Aug. 27, 2012) ...........................................................................................................................................14

*Martindell v. International Telephone & Telegraph Corp.*,
594 F.2d 291 (2d Cir. 1979) ........................................................................................ *passim*

*Maryland Cas. Co. v. W.R. Grace & Co.*,
No. 83-cv-7451, 1994 WL 419787 (S.D.N.Y. Aug. 10, 1994) ..............................................16

*MBIA Inc. v. Fed. Ins. Co.*,
652 F.3d 152 (2d Cir. 2011) ..................................................................................................11

*Med. Diagnostic Imaging, PLLC* v. *Carecore Nat'l, LLC*,
No. 06 Civ. 7764, 2009 WL 2135294 (S.D.N.Y. July 16, 2009) ...........................................16

*Mental Disability L. Clinic v. Hogan*,
739 F. Supp. 2d 201 (E.D.N.Y. 2010) ..................................................................................10

*Minpeco S.A. v. Conticommodity Servs., Inc.*,
832 F.2d 739 (2d Cir. 1987) ..................................................................................................13

*Scanlan v. Town of Greenwich*,
No. 3:18CV01322(KAD), 2021 WL 1352994 (D. Conn. Apr. 12, 2021) ..................20, 21, 22

*SEC v. TheStreet.com*,
273 F.3d 222 (2d Cir. 2001) ........................................................................................ *passim*

*In re Sept. 11 Litig.*,
262 F.R.D. 274 (S.D.N.Y. 2009) ..........................................................................................13

*In re ServiCom, LLC*,
No. 18-31722, 2022 WL 1272136 (Bankr. D. Conn. Apr. 27, 2022) .....................................17

*Stephens v. HSBC Holdings Plc*,
No. 18-cv-7439-PKC-CLP (E.D.N.Y.) ..............................................................................5, 15

*TradeWinds Airlines, Inc. v. Soros*,
2016 WL 3951181 (S.D.N.Y. July 20, 2016) ........................................................................16

*U.S. Philips Corp. v. Iwasaki Electric Co.*,
142 F. App'x 516 (2d Cir. 2005) ......................................................................................12, 13

*United States v. Isiofia*,
370 F.3d 226 (2d Cir. 2004) ..................................................................................................10

*In re Unseal Civ. Discovery Materials*,
   No. 19-MC-00179 (SN), 2021 WL 1164272 (S.D.N.Y. Mar. 24, 2021)................................21

*Weiner v. McKeefery*,
   No. 11-CV-2254, 2014 WL 2048381 (E.D.N.Y. May 19, 2014) ...........................................10

*In re Zyprexa Prods. Liab. Litig.*,
   260 F.R.D. 13 (E.D.N.Y. 2009) ...........................................................................................10

**Other Authorities**

Fed. R. Civ. P. 1 ...................................................................................................................20

Fed. R. Civ. P. 26(c) ........................................................................................................15, 18

Fed. R. Civ. P. 27(a) ...............................................................................................................14

Fed. R. Civ. P. 45 ...................................................................................................................23

Fed. R. Civ. P. 72(a) ........................................................................................................10, 18

## PRELIMINARY STATEMENT

In a carefully reasoned ruling, Magistrate Judge Taryn A. Merkl denied Plaintiffs' request to modify the Protective Order (the "PO"). Plaintiffs sought leave to use highly sensitive bank records produced by non-parties Standard Chartered Bank ("SCB") and KBC Bank to amend their complaints in unrelated cases involving different defendants, different plaintiffs, different factual allegations, different legal claims, and different law firms. Judge Merkl applied the governing legal standard and correctly denied Plaintiffs' request. None of Plaintiffs' arguments challenging that decision—each of which Judge Merkl carefully considered and rejected—warrants reversal.

*First*, Judge Merkl correctly determined that Plaintiffs' request was governed by the presumption articulated by the Second Circuit in *Martindell v. International Telephone & Telegraph Corp.*, 594 F.2d 291 (2d Cir. 1979), and *SEC v. TheStreet.com*, 273 F.3d 222 (2d Cir. 2001). Those long-established precedents require a party seeking to modify a protective order to demonstrate a compelling need or extraordinary circumstances. Plaintiffs' argument that *Martindell* and its progeny do not apply is simply wrong as a matter of law. It is also belied by the PO's "very clear" provisions and Plaintiffs' own representations during the parties' negotiations that the relevant language in the PO simply provides "that a party can move to modify the order." *See infra* at 5, 13.

*Second*, Judge Merkl correctly applied the *Martindell* presumption to reject Plaintiffs' request. She correctly held that Plaintiffs had failed to demonstrate a compelling need or extraordinary circumstances to modify the PO. Among other things, Plaintiffs failed to even identify the relevant set of third-party bank records they seek to use, and nothing in the PO permits Plaintiffs' lawyers to use discovery in *this case* as pre-complaint discovery to revive dismissed claims in *another case* where discovery has not commenced. Any modification of the PO is

1

especially inappropriate where, as here, there is "reasonable reliance" on the PO both by the parties who negotiated it and ultimately agreed to it, and by the non-parties who produced the discovery. *TheStreet.com,* 273 F.3d at 229 (citing *Martindell*, 594 F.2d at 296).

*Third*, Plaintiffs' request to modify the PO in this fashion risks hampering ongoing discovery efforts in this case. Defendants are currently engaged in good faith efforts to produce customer records—requested by Plaintiffs—both by obtaining customer waivers and through the Court-issued letters rogatory process. Any decision by the relevant Lebanese authorities or bank customers waiving bank secrecy protections is likely to be predicated on the parties' and the Court's assurances that any discovery obtained here will not be used for other purposes. Reversing Judge Merkl's decision would signal to Lebanese authorities and bank customers that they cannot rely on the PO to protect their sensitive information.

For all of these reasons, Plaintiffs cannot overcome the highly deferential plain error standard of review. The Court should thus overrule the objections.

## BACKGROUND

### I.    The Extensively Negotiated Protective Order Must Be Modified for Plaintiffs to Use Records Produced in this Case in the *Freeman* Actions.

Judge Merkl correctly found that the *Bartlett* Protective Order (ECF 272) ("PO") was "carefully negotiated" by the parties during "back and forth" negotiations. *See* September 27, 2023 Status Conference Hearing Transcript ("Tr.") (ECF 348-1) Tr. 56:7-10; *see also* May 10, 2022 Status Conference (ECF 271) Tr. 8:12-14 (Plaintiffs' counsel acknowledging "as far as the protective order itself is concerned, we've had a longstanding exchange about that going back to July of last year."); May 10, 2022 Minute Entry and Order (directing the parties, "to continue to

2

meet and confer regarding a proposed protective order"). In turn, Judge Merkl fully reviewed the proposed PO before modifying and approving it on June 8, 2022 (ECF 273).[2]

The structure and plain language of the PO demonstrate that, absent a court order modifying the PO, all Discovery Material can be used solely for purposes of this litigation, and that designated-confidential Discovery Material is further restricted and cannot be disclosed to unauthorized parties. *See* PO, §§ C (specifying that Discovery Material "shall be used solely for the purpose of conducting this Litigation"); D (establishing procedures for designating Discovery Material as "Confidential Information" or "Confidential Information – Attorneys' Eyes Only"); E (identifying persons or entities permitted to see Confidential Information); F (prohibiting disclosure of subpoenaed Confidential Information, absent court order); G (allowing post-production confidentiality designations); H (establishing procedures for challenging confidentiality designations by "an appropriate motion" to the Court); and K (establishing procedures for seeking a "further order of this Court" to modify the PO).

The full context of those provisions of the PO makes clear that the penultimate sentence of Section C establishes solely a ***procedural mechanism*** for a party to seek a Court order to "use Discovery Material in another case or matter," ***not an alteration of the substantive rules*** in this Circuit for such other-case use. In full, Section C of the PO provides that:

> All Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation). However, ***a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter***. To the extent Discovery

---

[2] Contrary to Plaintiffs' allegations, the Court did not approve the parties' stipulated protective order wholesale, and instead modified it "to the extent that any portion of the protective order, including Sections E(7) and I(4), is inconsistent with this Court's procedures for sealing or limiting the distribution of documents or the standards governing the ability of this Court to permit the sealing or distribution of documents, the Court's practices and standards shall be followed by the parties and will govern any dispute." June 8, 2022 Order (ECF 273).

Material has been produced pursuant to a customer's waiver of Lebanese Bank Secrecy protections, and a Party files a motion to request permission to use Discovery Material in another case or matter, the Designating Party who obtained the customer's waiver shall promptly notify the customer of the motion, which customer will have a reasonable opportunity to object to said motion, as will the Designating Party.

ECF 272 at 3-4 (emphasis added). Section K, in turn, states that the PO "shall be binding upon the Parties" and "may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions." *Id.* at 13. The penultimate sentence of PO Section C thus operates no differently than PO Section F.2, which requires a court order before designated-confidential Discovery Material—defined as "Protected Information"—can be disclosed in response to a subpoena, and PO Section H, which requires a court order to de-designate putative Protected Information. These sections establish purely procedural mechanisms ensuring judicial review of efforts to expand the use of Discovery Material outside of this Litigation, and do not establish substantive standards for a court to apply in conducting such judicial review. Of necessity, therefore, the substantive standards for courts to apply in those instances are those established by Circuit law outside of the PO itself.

Even if the PO's plain language left any room for doubt, the negotiating history of the PO makes clear that the penultimate sentence of Section C establishes solely a procedural mechanism for a Party to seek modification of the PO, not a substantive standard for the Court to apply in considering modification. Indeed, that is precisely how Plaintiffs' counsel justified the language in Section C during the parties' extensive negotiations. After Defendants initially struck the relevant language in Section C from a draft of the PO—raising the same concerns articulated herein—Plaintiffs' counsel implored Defendants to reconsider in an April 6, 2022 email, explaining: "Virtually every protective order we have been involved in contains language ***noting that a party can move to modify the order***." ECF 341 at Ex. A, at 2 (also attached as Exhibit A

hereto) (emphasis added).  On May 4, 2022, Plaintiffs' counsel "recognize[d]" Defendants' concerns about "the importance of the protective order for bank customers that might potentially agree to waive Lebanese bank secrecy," but nevertheless again argued that they "cannot stipulate to" omitting the language in question from Section C because it would "foreclose the ***possibility*** of moving before the Court" to modify the PO's general prohibition against the use of discovery materials outside of this case.  *Id.* at 5 (emphasis in original).  Plaintiffs' own contemporaneous representations underscore that Section C merely reserves Plaintiffs' right to "move ***to modify***" the PO to allow for the use of Discovery Material in other cases.

## II.    The *Freeman* Actions Are Not "Mirror Images" of *Bartlett*.

Plaintiffs seek to use discovery produced in this case in two separate actions[3]— *Freeman v. HSBC Holdings plc*, No. 14-cv-6601 (PKC) (CLP) (E.D.N.Y.) ("*Freeman I*") and *Freeman v. HSBC Holdings plc*, No. 18-cv-7359 (PKC) (CLP) (E.D.N.Y.) ("*Freeman II*")—which they contend are "essentially a mirror image of *Bartlett*, in which almost entirely the same plaintiffs" were "injured in essentially the same attacks[.]"  ECF 348 at 1-2.

Although it is true that there are substantial similarities between the dismissed claims in *Freeman* and the claims here, the cases are not identical.  The *Freeman* Actions involve allegations that the defendant banks evaded U.S. sanctions on Iran, including through the use of wire-stripping and illicit trade-finance transactions.  *Freeman v. HSBC Holdings PLC*, 413 F. Supp. 3d 67, 73

---

[3] Plaintiffs initially sought to "incorporate[] the use of information by the plaintiffs" in a third action— *Stephens v. HSBC Holdings Plc*, No. 18-cv-7439-PKC-CLP (E.D.N.Y.)—where the "*Stephens* plaintiffs are represented by separate counsel and do not overlap with the *Bartlett* Plaintiffs."  ECF 348 at 4 n.3. Although Plaintiffs request that the Court enter the proposed order submitted on July 21, 2023 (ECF 335-1) which would allow the *Stephens* plaintiffs (in addition to the Freeman plaintiffs) to use the materials at issue, Obj. 25, Plaintiffs' substantive arguments do not address *Stephens* and therefore, Plaintiffs appear to have abandoned that request.  In any event, Judge Merkl properly denied Plaintiffs' request to share the information at issue with the *Stephens* plaintiffs and that order should be affirmed for the same reasons discussed herein.

(E.D.N.Y. 2019).  No such allegations are made here, where Defendants are primarily alleged to have provided otherwise lawful banking services to customers that Plaintiffs say are associated with Hezbollah.  *See Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-CV-00007, 2020 WL 7089448, at *2 (E.D.N.Y. Nov. 25, 2020).

The *Freeman* Actions also involve different claims and different sets of plaintiffs from those in this case, including approximately 50 individuals who are not Plaintiffs here.  Tr. 12:3-10 (Plaintiffs acknowledging "there are plaintiffs in Bartlett who are not in Freeman and some in Freeman who are not in Bartlett"); *see also* Tr. 13:3-5 ("The Court:  Are the plaintiffs in Freeman 100 percent included in Bartlett; yes or no?  Mr. Osen:  No.").  The distinction matters because the *Freeman* plaintiffs who are not Plaintiffs in *Bartlett* have no basis in the PO to ***access, review, or be informed of the content*** of confidential documents in this case, much less ***use*** those documents in another case.  Thus, while Plaintiffs' application purports to come from "Plaintiffs" in this case, in reality, it is a request by ***Plaintiffs' counsel*** to use *Bartlett* discovery that they believe may help them prosecute claims on behalf of other clients in other cases.

### III.    Judge Merkl Correctly Denied Plaintiffs' Application to Modify the Protective Order in a Carefully Reasoned Order.

On September 27, 2023, after a lengthy hearing on Plaintiffs' motion, the Court held that Plaintiffs had "not demonstrated an 'extraordinary circumstance or compelling need' to modify the protective order in this case, on which non-party Standard Chartered Bank and the Moving Defendants have demonstrated significant reliance."[4]  September 27, 2023 Minute Entry and Order; *see also* October 13, 2023 Order on Plaintiffs' Request for Clarification (confirming the

---

[4] By consent of the parties and non-party SCB, Plaintiffs' letter motion for a pre-motion conference was converted to the motion and the Court considered all subsequent related filings before issuing its decision. Tr. 52:13-53:11.

6

September 27, 2023 order applied to discovery produced by KBC Bank).  The Court explained that "in accordance with the Second Circuit's observation in *S.E.C. v. TheStreet.com*, 273 F.3d 222 at 230, it is presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied."  Tr. 55:14-19.  Judge Merkl added that "the Second Circuit's teachings in *TheStreets* [sic] and in the *Martindell* case give the Court substantial concern that upending the parties agreed-upon protective order in this case, which did help to facilitate the discovery production, would be fundamentally unfair to the parties who acted in reliance on it."  Tr. 55:20-56:3.

From the start, Judge Merkl correctly understood Plaintiffs' application as a request to ***modify*** the PO.  Tr. 7:8-9 ("we are here with regard to the ***modification*** of the protective order" (emphasis added)); Tr. 9:13-14 ("So this is plaintiffs' motion seeking to ***modify*** the protective order." (emphasis added)).  Section C of the PO states that "all discovery materials, or any copies, summaries or abstracts thereof shall be used ***solely for the purpose of conducting this litigation*** … however, a party may move before the Court in this litigation by letter motion to request permission to use discovery material in another case or matter."  Tr. 57:25-58:7 (emphasis added).  "There's a mechanism in place to come to the Court.  And I interpret that language to be against the backdrop of preexisting Second Circuit case law"—including *Martindell* and *TheStreet.com*— "at the time that this was drafted."  Tr. 58:9-12.  The Court found the terms of the PO—which were "carefully negotiated" (Tr. 56:8-10)—to be "very clear."  Tr. 57:22-24; *see also* Tr. 56:9-10 (finding that the "parties went back and forth on" the PO's language).

The Court also held that "there was substantial reliance on the protective order that was put into place in this case."  Tr. 56:4-6.  As Defendants explained, Plaintiffs' "request threatens to undermine the letters rogatory process … that's ongoing right now by signaling to Lebanese

authorities that plaintiffs will seek to use discovery in other proceedings, despite the protective order's clear statement that documents produced here will only be used in this litigation." Tr. 44:8-14. Defendants added that "plaintiffs just simply misrepresent the nature of Subsection C in the protective order and the governing standard for modifying it." Tr. 44:5-7.

Additionally, Judge Merkl found "that there was substantial reliance by Standard Chartered Bank in the determination to produce these records." Tr. 59:3-13. The Court credited SCB's representations about its own reliance on the PO,[5] including its contemporaneous correspondence with Plaintiffs' counsel, which the Court found reflected "the importance of the protective order being in place prior to producing the records and [SCB's] reliance not only on the protective order, but on the confidentiality designation specifically as needing to be present in the case prior to their willingness to comply with the subpoena." Tr. 56:12-19.

In so holding, the Court found Plaintiffs' arguments unpersuasive. First, the Court rejected Plaintiffs' contention that "*Martindell* has [no] relevance here whatsoever" (Tr. 21:14-15), concluding that there was no evidence that Defendants intended the PO to be read as "doing away with *Martindell* and other [sic] binding Second Circuit precedent." Tr. 21:10-15. Second, the Court found that Plaintiffs had not identified a "compelling need … or extraordinary circumstance,

---

[5] *See, e.g.,* Tr. 28:10-18 ("At the time that Standard Chartered received the subpoena, the protective order was not in place, but we had been told that it was being negotiated between the parties in the case. And so Standard Chartered waited with plaintiffs' counsel agreement to wait until the protective order would issue. And upon the issuance of the protective order, confirm with plaintiffs' counsel that the protective order was in place."); Tr. 29:13-15 ("So the first point of a factual reliance on the protective order here, I don't think the record could be clearer."); Tr. 30:3-5 ("these transactions, were produced in good faith to – you know, pursuant to the protective order"); Tr. 32:16-25 ("Your Honor, if plaintiffs' counsel had indicated to Standard Chartered Bank when they issued this subpoena that maybe they would use some of the tens of thousands of records that the bank was producing for some other case, and to try to, in particular, revive claims that had been dismissed for years against Standard Chartered Bank – I think there would have been a different outcome in how that – those documents were produced because that would have been on its face improper[.]"); Tr. 42:11-14 ("It was made very clear to the plaintiffs … that Standard Chartered was not going to produce anything in the absence of a protective order.").

given that [Plaintiffs] can modify [their complaint] on information and belief." Tr. 48:13-16. The Court also highlighted the fact that the request to modify the PO was made by a different set of plaintiffs than those in this case. Tr. 13:3-10 ("The Court: Are the plaintiffs in Freeman 100 percent included in Bartlett; yes or no? Mr. Osen: No … but I don't think that makes any difference legally. The Court: I disagree[.]"). Nor was the opaque nature of Plaintiffs' request lost on the Court. *See* Tr. 17:16-25 ("As I read this, I have no idea if you're seeking to include three lines of data, five transactions or thousands, and it matters in terms of, kind of, what you are seeking to do and whether you can show a compelling need. Mr. Osen: Well, I can't – I can't quantify it at the moment … I think it's reasonable to say it implicates probably thousands of lines of data.").[6]

Finally, the Court rejected Plaintiffs' argument that the strength of the PO was undercut because it was negotiated by the parties without "burdening the Court." Tr. 56:20-24. To the contrary, Judge Merkl found that "one of the stated purposes the Second Circuit has repeatedly looked to in relying on affirming or upholding parties' reliance on protective orders is the idea the protective orders facilitate discovery and efficiency" and the parties' reliance on the PO in this case "permit[ed] the parties to engage in discovery." Tr. 56:25-57:12. Otherwise, Judge Merkl explained, "all sensitive subpoenas would come back to the Court for litigation, protective orders, and that simply would bring the discovery process to a grinding halt. So I don't find that the lack of inquiry or lack of involvement in putting a protective order in this case has any weight whatsoever in my determination to enforce the protective order in this case." Tr. 57:14-21.

---

[6] By appending Exhibit 3 (filed under seal) to their brief objecting to Judge Merkl's order, Plaintiffs implicitly concede that their request to Judge Merkl was deficient and now attempt to cure that deficiency by purporting to identify "Entities Identified in Standard Chartered Bank/KBC Bank Productions Likely to Be Referenced in the *Freeman* Amended Complaint." As discussed below, Exhibit 3 falls far short of what is legally required for Plaintiffs to show any compelling need to use the Protected Information.

## ARGUMENT

### I.    Standard of Review.

"Federal Rule of Civil Procedure 72(a) provides for deferential review of a magistrate judge's determinations." *In re Zyprexa Prods. Liab. Litig.*, 260 F.R.D. 13, 16 (E.D.N.Y. 2009); *Grief v. Nassau Cnty.*, 246 F. Supp. 3d 560, 568 (E.D.N.Y. 2017) (magistrate judge "was well within her discretion to decline the Plaintiff's invitation" to modify the scope of a protective order). "[A] party seeking to overturn a discovery ruling by a magistrate judge generally bears a heavy burden." *Mental Disability L. Clinic v. Hogan*, 739 F. Supp. 2d 201, 203–04 (E.D.N.Y. 2010) (cleaned up). "Because the order resolved a nondispositive motion, this Court reviews [the magistrate judge's] order for 'clear error.'" *Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 4 (E.D.N.Y. 2022); *see* Fed. R. Civ. P. 72(a). "This standard is highly deferential and only permits reversal where the magistrate abused [her] discretion." *Mental Disability L. Clinic*, 739 F. Supp. 2d at 203. Under this standard, the question is whether the magistrate judge "fail[ed] to apply or misapplie[d] relevant statutes, case law or rules of procedure," *see Weiner v. McKeefery*, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (quotation marks and citation omitted), or, in entering a finding of fact, rendered a decision that leaves this Court "with the definite and firm conviction that a mistake has been committed," *see United States v. Isiofia*, 370 F.3d 226, 232 (2d Cir. 2004).

### II.    Judge Merkl Correctly Held that the *Martindell* Presumption Applies Because Plaintiffs Are Seeking to Modify the Protective Order.

Plaintiffs contend that the *Martindell* presumption against modification does not apply because "Paragraph C of the PO . . . explicitly permits the parties to move the Court to use discovery produced in this case in other cases and matters, signifying that the parties did not rely on the PO for protection otherwise." Obj. 8. But this argument is contradicted by the PO's

10

unambiguous provisions, Plaintiffs' own representations made during the parties' negotiations, and binding Second Circuit law.

The plain language of the PO dictates that Plaintiffs' request requires modification of the PO. Here, after carefully reviewing the plain language of the applicable PO provisions—which "in this case is very clear" (Tr. 57:24)—Judge Merkl correctly determined that the PO must be *modified* for Plaintiffs to use the records produced in this case in other cases. *See MBIA Inc. v. Fed. Ins. Co.*, 652 F.3d 152, 171 (2d Cir. 2011) ("Contracts are construed to give the intention of the parties effect, so an unambiguous contract 'must be enforced according to the plain meaning of its terms.'" (citation omitted)).

Indeed, as Section C of the PO makes clear, "[a]ll Discovery Material . . . shall be used solely for the purpose of conducting this Litigation." Plaintiffs seek to thwart that restriction by relying on the PO's statement that "a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." ECF 272 at 3. But, as Judge Merkl explained, that provision described the "mechanism in place to come to the Court"—which is all the more clear when "interpret[ing] that language to be against the backdrop of preexisting Second Circuit case law at the time that this was drafted." Tr. 57:22-58:12. Judge Merkl's conclusion is also consistent with the PO's Section K, which in turn states that the PO "shall be binding upon the Parties" and "may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions." ECF 272 at 13. In addition, through Section D(6) of the PO, the parties further "agree[d] to extend the provisions of this Protective Order to Confidential Information produced in this case by any third party in response to discovery requests or subpoenas[.]" *Id.* at 6. Thus, both the structure and plain

language of the PO demonstrate that Discovery Material cannot be used or disclosed outside the context of this litigation, without a court order modifying those limitations.

The drafting history of the relevant provision confirms that Plaintiffs themselves understood the provision to require modification.  After Defendants initially struck the relevant language in Section C from a draft of the PO, Plaintiffs' counsel objected, explaining: "Virtually every protective order we have been involved in contains language ***noting that a party can move to modify the order***."  ECF 341 at Ex. A (emphasis added).  Then, in a follow-up email, Plaintiffs' counsel expressed concern that omitting the language in question from Section C would "foreclose the ***possibility*** of moving before the Court" to modify the PO's general prohibition against the use of discovery materials outside of this case.  *Id.* (emphasis in original).  Thus, far from blanket permission to use *Bartlett* discovery materials in Plaintiffs' counsel's other cases (and for other clients) for any "good faith purpose" (ECF 340 at 1), Plaintiffs' own words make clear that Section C merely reserves Plaintiffs' right to "move ***to modify***" the PO in order to allow for the use of discovery materials in other cases.  Plaintiffs do not even address this point.[7]

Plaintiffs' efforts to undermine Judge Merkl's straightforward interpretation of the PO fail.  *First*, Plaintiffs try to circumvent the PO's plain language by arguing that, had Judge Merkl granted their request, she would have been "*enforcing* rather than modifying the terms of a protective order."  Obj. 10.  In support of this proposition, Plaintiffs devote several pages to *U.S. Philips Corp. v. Iwasaki Electric Co.*, 142 F. App'x 516, 518 (2d Cir. 2005), a four-page non-precedential summary order affirming a district court's declination to apply *Martindell* under circumstances

---

[7] The result remains the same even if this dispute is guided by the application of ordinary contract-law principles rather than the Court's interpretation of its own order—"[u]nder New York law, a written contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed."  *Cruden v. Bank of New York*, 957 F.2d 961, 976 (2d Cir. 1992).

where parties to a U.S. patent lawsuit negotiated a protective order that specifically contemplated the use of discovery obtained in that litigation in specifically identified, *related* foreign litigation between the *same parties* and their affiliates. Unlike the PO here, the *Iwasaki* protective order included a contractual carve-out expressly authorizing the discovery obtained in litigation pending in the United States to be "***use[d] in a related legal action***" underway in Germany and Japan where the "issues in the German and Japanese litigations are closely related to those in the Southern District action." *In re Iwasaki Elec. Co.*, No. M19-82, 2005 WL 1251787, at *1 (S.D.N.Y. May 26, 2005) (emphasis added). In this case, the PO does not permit use of discovery in some specifically identified "related legal action," let alone unrelated actions involving different plaintiffs, different defendants, different law firms, different facts, and different claims. As a result, the proper enforcement of the agreement's plain text and evident structure requires Plaintiffs to move to modify the PO under the Second Circuit's longstanding *Martindell* analysis. *See Cruden*, 957 F.2d at 976; *see also Eutectic Corp. v. Metco, Inc.*, 61 F.R.D. 35, 42–43 (E.D.N.Y. 1973). Plaintiffs' contrary view would impermissibly "rewrite[] the bargain that was struck" by the parties. *Bank v. Verde Energy USA, Inc.*, No. 19-cv-1472, 2020 WL 5596046, at *6 (E.D.N.Y. Sept. 18, 2020) (quoting *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 163 (1990)).

*Second*, Plaintiffs fault Judge Merkl for failing to apply the bad faith standard articulated in *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992). Obj. 10. But, as Defendants previously explained, *see* ECF 338 at 2 n.4, Plaintiffs' reliance on *Dove* is fundamentally misplaced. That case addresses circumstances where no protective order exists. *Dove*, 963 F.2d at 19. And it is well-settled that "[o]nce a protective order is in place . . . the applicable standard is that of *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)." *In re Sept. 11 Litig.*, 262 F.R.D. 274, 277 (S.D.N.Y. 2009); *Minpeco S.A. v. Conticommodity Servs., Inc.*, 832

13

F.2d 739, 742 (2d Cir. 1987) (finding that the district court correctly applied the *Martindell* standard requiring a showing of "compelling need" to justify a modification to a protective order); *Knitting Fever, Inc. v. Coats Holdings Ltd.,* No. CV05-1065 (DRH)(WDW), 2012 WL 13098758, at *2 (E.D.N.Y. Aug. 27, 2012) (finding that "[o]nce a protective order is in place," "the *Martindell* presumption against modification" applies). Because a PO is in place here, Judge Merkl correctly concluded that the *Martindell* presumption applies, which obviated any need to address *Dove*.

III.    **Judge Merkl Correctly Concluded that Plaintiffs' Request Fails to Satisfy the Long-Established Standard Under Binding Second Circuit Law.**

A.    **Plaintiffs Failed to Show a Compelling Need or Extraordinary Circumstances.**

As Judge Merkl correctly determined, Plaintiffs have not demonstrated an "extraordinary circumstance or compelling need" to modify the PO. September 27, 2023 Minute Entry and Order. Plaintiffs here are seeking to use third-party bank records as impermissible pre-complaint discovery to revive their dismissed claims in the *Freeman* Actions. Obj. 2-3; Fed. R. Civ. P. 27(a) (authorizing limited pre-complaint discovery to preserve testimony only). Discovery has not been authorized in the other actions; to the contrary, the claims against European bank defendants have long been dismissed. And Judge Merkl found an utter "absence of any sort of blessing by Judge Pollak or Judge Chen to commence discovery in the other matters." Tr. 59:14-18. Because Plaintiffs failed to establish a compelling need for the requested discovery, Judge Merkl properly rejected Plaintiffs' attempt to undermine the "vital function" of protective orders. *Martindell*, 594 F.2d at 295 (protective orders "secure the just, speedy and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant" (cleaned up)).

In reaching this decision, Judge Merkl considered the scope of Plaintiffs' broad request. Tr. 10:4-14; 16:12-25; 17:1-19:4. The fact that Plaintiffs are seeking to use a large amount of data

"matters in terms of … whether [Plaintiffs] can show a compelling need." Tr. 17:16-20. Yet, when asked by Judge Merkl, Plaintiffs were unable to "quantify" how much data they purportedly needed. Instead, they speculated it is "probably" in the magnitude of "thousands of lines of data." Tr. 17:16-25. Plaintiffs also refused to provide the necessary specificity that would enable the Court to evaluate their request. Tr. 16:12-20 (describing generally the transactions will involve the *Freeman* defendants, when appearing on either side of a transaction). Even now Plaintiffs decline to give the Court "a definitive *final* list of all persons and entities" they want to disclose in the amended complaint. Obj. 6 n.5 (describing Exhibit 3's list of requested entities and individuals as merely "illustrative"). Indeed, Plaintiffs' lack of specificity would make it virtually impossible for Defendants and the Court to ensure that Plaintiffs comply with the Protective Order and the bounds of any order granting their request. *See Martindell,* 594 F.2d at 295 ("a valid Rule 26(c) protective order is to be fully and fairly enforceable"). Without knowing which specific documents—and what specific information within those documents—are covered by Plaintiffs' nebulous request, neither this Court nor Defendants could police any use or misuse by Plaintiffs of the information in the *Freeman* Actions. That is precisely why precision is required in this setting. *See id.*[8] As Judge Merkl correctly concluded, Plaintiffs' sweeping, nebulous request warrants a compelling need, which Plaintiffs failed to establish.

Plaintiffs propose that the "extraordinary circumstance or compelling need" standard should be watered down here because, in their view, some parties are the same and the allegations

---

[8] This is no theoretical concern. In fact, in their letter motion, Plaintiffs' counsel intimated that information obtained in this case may have already been shared with the "plaintiffs in *Stephens* [who are] represented by separate counsel." ECF 335 at 1 & n.2. While Plaintiffs later denied sharing Protected Information with the *Stephens* plaintiffs (ECF 340 at 2 n.1), they nonetheless stated in their motion that "the *Freeman* court has authorized" the *Freeman* and *Stephens* counsel to coordinate. ECF 335 at 1 & n.2. However, only *this Court* can authorize Plaintiffs to use or disclose discovery produced in *this litigation* pursuant to the PO in this case.

are substantially similar.  Obj. 22-23.  Courts have frequently rejected this argument.  "Although fostering judicial economy and avoiding duplicative discovery are laudable goals … they hardly amount to extraordinary circumstances or compelling need."  *Maryland Cas. Co. v. W.R. Grace & Co.*, No. 83-cv-7451, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994); *In re Hornbeam Corp.*, No. 14-mc-424, 2020 WL 4698955, at *3-4 (S.D.N.Y. Aug. 13, 2020) (rejecting Plaintiff's argument that "judicial economy" and the "sake of convenience" necessitate modifying a protective order to permit use of discovery materials in a separate action); *Med. Diagnostic Imaging, PLLC* v. *Carecore Nat'l, LLC*, No. 06 Civ. 7764, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) ("Plaintiffs fail to identify an extraordinary circumstance or a compelling need" when the sole justifications offered are the elimination of "expensive, complex, and largely duplicative discovery efforts").

None of Plaintiffs' case citations supports their effort to evade the PO and the Second Circuit's binding precedents.  Obj. 23.  In *Charter Oak Fire Insurance Co. v. Electrolux Home Products, Inc.*, the parties were the same and both disputes related to an alleged defect in the defendant's lint trap which was causing fires.  287 F.R.D. 130, 131 (E.D.N.Y. 2012).  Similarly, in *TradeWinds Airlines, Inc. v. Soros* the court modified the protective order to permit the same plaintiff to use produced discovery material in another case with almost identical alter-ego claims against the defendant's subsidiary.  No. 08-cv-5901 (JFK), 2016 WL 3951181, *1-2 (S.D.N.Y. July 20, 2016).  Here, both the plaintiffs and the defendants are different—as are the specific claims at issue.  When asked by Judge Merkl if the "plaintiffs in Freeman [are] 100 percent included in Bartlett; yes or no?" Plaintiffs conceded "no," they are not the same group of plaintiffs.  Tr. 13:3-10.  Moreover, the *Bartlett* and *Freeman* disputes are not "related."  As referenced *supra*, the *Bartlett* action involves claims against **Lebanese banks** alleged to have held accounts for

16

individuals and entities alleged to be affiliated with Hezbollah, while the *Freeman* actions involve different claims against **European banks** alleged to have violated OFAC sanctions on Iran by facilitating transactions involving Iranian parties.  *See* Tr. 11:4-25.  It is plain from Judge Merkl's ruling that she carefully considered the specific facts of Plaintiffs' request before arriving at her well-reasoned opinion that Plaintiffs have failed to show a compelling need to modify the protective order.

Finally, Plaintiffs argue that failure to modify the protective order will prejudice them because they otherwise cannot meet their pleading burden in the *Freeman* actions.  Obj. 24. Plaintiffs fail to cite any case which has adopted their position that pleading burdens *in another case* are an "extraordinary circumstance or compelling need."  In fact, other courts which have considered similar requests have rejected them.  *See Arcesium LLC v. Advent Software, Inc.*, No. 20-cv-4389, 2022 WL 621973, at *3–4 (S.D.N.Y. Mar. 3, 2022) (rejecting a request to permit a party to use protected discovery material "to draft their Proposed Complaint against [the other party] in a new and separate suit" even though the complaint would "involve the same parties, relate to the same [product] and the same contractual relationship, and would be filed in the same court"); *Daniels v. City of New York*, 200 F.R.D. 205, 210 (S.D.N.Y. 2001) (rejecting the federal Government's request to modify a protective order when the Government's "access could also pave the way for criminal prosecutions and give the Government an undue advantage in framing its complaint");  *In re ServiCom, LLC*, No. 18-31722, 2022 WL 1272136, at *2 (Bankr. D. Conn. Apr. 27, 2022) (rejecting movant's request to modify a protective order and warning movants that they "cannot cite to or quote any evidence obtained under the Protective Order", but they were "free to file a new and separate suit").  Were it otherwise, any plaintiff with dismissed claims (like the *Freeman* plaintiffs) could point to their effort to revive those claims to satisfy the

17

"extraordinary circumstance or compelling need" standard.  That makes no sense.  For all these reasons, Judge Merkl applied the governing law and correctly held that Plaintiffs have failed to demonstrate an "extraordinary circumstance or compelling need" to modify the PO.

**B.    SCB, KBC Bank, and Defendants Reasonably Relied on the PO and any Modification Will Undermine Defendants' Efforts to Seek Bank Secrecy Waivers from the Lebanese Government and Bank Customers.**

Despite Judge Merkl's thorough and extensive findings on this record that the non-party banks both reasonably and explicitly relied on the PO before making their productions,[9] Plaintiffs now make the incredible claim that "neither SCB nor KBC 'relied' on the PO here."  Obj. 13.  "Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'"  *TheStreet.com,* 273 F.3d at 229 (citing *Martindell*, 594 F.2d at 296).  As discussed *supra*, Plaintiffs have not demonstrated any extraordinary circumstance or compelling need warranting modification of the PO.

Further, modification is particularly inappropriate where, as here, the record evidence indisputably shows that the non-parties relied on the PO as the *sine qua non* for agreeing to disclose highly sensitive banking records.  Equally, Plaintiffs' request to modify the PO was properly denied because granting modification could seriously risk derailing Defendants' good faith efforts to produce customer records through either customer waivers or the letters rogatory issued by the Court.  The parties have previously agreed that any information obtained through the letters rogatory process would be "subject to the provisions of the. . . Protective Order issued by this Court to protect their confidentiality."  ECF 329-1 at 4; ECF 331-2 at 5.  On August 14, 2023, the

---

[9] The Court should also overrule the objections for the reasons set forth in SCB's Memorandum in Opposition to Plaintiffs' Rule 72(a) Objection.

Court issued the letters rogatory.  In so doing, it affirmatively represented to the Lebanese authorities that, "[i]n order to preserve the confidentiality of the documents requested and to ensure that the documents and information contained therein are available only for use in this legal proceeding, the Court has issued a Protective Order."  ECF 342 at 1.  Thus, any decision by the relevant Lebanese authorities waiving bank secrecy protections would be predicated on the parties' and the Court's assurances that any discovery obtained in the instant action cannot be used in any other action.  ECF 272.

These concerns were raised with the Court by Defendants both in their letter response to Plaintiffs' motion to modify the PO and again at the hearing on the motion.  Defendants stated in their letter that "granting Plaintiffs' request under these circumstances would risk harming our clients' efforts to produce customer records protected by Lebanese bank secrecy laws either through customer waivers or letters rogatory issued by the Court."  *See* ECF 338 at 1-2.  And counsel for Defendants explained during the hearing that "[t]his request threatens to undermine the letters rogatory process that's [underway] by signaling to Lebanese authorities that plaintiffs will seek to use discovery in other proceedings, despite the protective order's clear statement that documents produced here will only be used in this litigation."  Tr. 44:7-14.  Plaintiffs have not offered any response to this concern, neither then nor now.

Relatedly, the parties further agreed that any information obtained through customer waivers would similarly be governed and protected by the express terms of the PO.  Indeed, the PO expressly contemplates discovery from customer waivers.  ECF 272 at 3-4 ("To the extent Discovery Material has been produced pursuant to a customer's waiver of Lebanese Bank Secrecy protections, and a Party files a motion to request permission to use Discovery Material in another case or matter, the Designating Party who obtained the customer's waiver shall promptly notify

the customer of the motion, which customer will have a reasonable opportunity to object to said motion, as will the Designating Party."). Yet, had Judge Merkl allowed Plaintiffs to circumvent the PO and use third-party discovery in other matters, customers who receive waiver requests would reasonably fear that the protections promised in the PO will not actually restrict the use of their customer information to this case. *See* Advisory Committee's Notes on 2015 Amendments to Fed. R. Civ. P. 1 ("[T]he administration of civil justice regularly include pleas to discourage over-use, misuse, and abuse of procedural tools that increase cost and result in delay. Effective advocacy is consistent with—and indeed depends upon—cooperative and proportional use of procedure.").

In reaching her decision, Judge Merkl analyzed the following factors to determine reasonable reliance: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Charter Oak Fire Ins.*, 287 F.R.D. at 132; *Arcesium*, 2022 WL 621973, at *3 (stating that weighing of these factors is done by "[m]ost Courts in this Circuit"). The first three factors cannot be read in isolation and must be analyzed "upon consideration of the entire record." *Scanlan v. Town of Greenwich*, No. 3:18CV01322(KAD), 2021 WL 1352994, at *8 (D. Conn. Apr. 12, 2021).

With respect to scope, the plain terms of the PO make clear that it is not a "blanket" protective order.[10] First, as noted above, the definition of confidential information has two-tiers,

---

[10] Plaintiffs cannot seriously argue that Judge Merkl failed to "analyze at all whether this PO was itself a 'blanket' order," Obj. 15, when: (1) they specifically ***argued to Judge Merkl*** at the hearing that "the PO in this case comprises what the EPDM court calls 'a blanket protective order,'" Tr. 23:1-12; (2) counsel for SCB responded that "the scope of it . . . is the only really natural reading," Tr. 30:3-11; and (3) Judge Merkl explicitly told the parties that the court "***evaluated the four-part test plaintiff has suggested that I review***," Tr. 55:20-56:3 (emphasis added). Plaintiffs make no effort to analyze the PO's terms, instead relying on *In re EPDM*, 255 F.R.D. 308 (D. Conn. 2009), a case granting modification of a protective order very

20

each with a specific and limited definition:  (1) "Confidential Information" (PO § D(2)); and (2) "Confidential Information – Attorneys' Eyes Only".  *Id.* § D(3); *Arcesium*, 2022 WL 621973, at *4 (finding no "blanket" protective order when definition of confidential information in order is limited to specifically delineated categories of documents).  Second, where, as here, "any designation of confidentiality must be made in 'good faith,'" the PO cannot be a "blanket" order.  *Arcesium*, 2022 WL 621973, at *4; PO § D(1) ("A Producing Party may designate Discovery Material . . . under this Protective Order if it has a good faith basis for the designation.").  Third, "though parties may unilaterally designate documents as confidential, the Protective Order also allows the receiving party to challenge those designations and for the Court to intervene if the parties cannot reach an agreement."  *Arcesium*, 2022 WL 621973, at *4; PO § H.  "As such, this was not a 'blanket protective order.'"  *Arcesium*, 2022 WL 621973, at *4; *see In re Unseal Civ. Discovery Materials*, No. 19-MC-00179 (SN), 2021 WL 1164272, at *3 (S.D.N.Y. Mar. 24, 2021) ("The Protective Order is not a blanket order that might be disfavored; instead, the definition of Confidential Information is limited and subject to objective standards, and the parties may designate material only in 'good faith' after attorney review."); *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, No. 15-CV-2044, 2017 WL 4641247, at *3 (S.D.N.Y. Oct. 16, 2017) (protective order not overly broad where its scope was "specific and targeted" and "describes what type of documents would be considered highly confidential.").

Next, after carefully reviewing the relevant PO provisions, Judge Merkl concluded that it was reasonable for the non-parties to rely on the language of the PO because, had there not been a

---

different from the PO at issue here.  In any event, as courts in this Circuit make clear, the breadth of a protective order alone is insufficient to warrant modification, particularly under circumstances when a party has ***failed to identify a single transaction*** that they wish to use in other litigation, or when the discovery in question implicates important privacy interests.  *Cf. Scanlan*, 2021 WL 1352994, at *8 (noting that courts must always "take[] the privacy interests at stake . . . very seriously").

"protective order in place in this case, they would have sought a protective order prior to complying with the subpoena because of the nature of the information sought."  Tr. 59:3-13; *see* Tr. 57:22-58:7 (analyzing Section C); Tr. 58:8-10 (analyzing mechanism under Section C and K); Tr. 58:13-20 (analyzing Section D); *accord Arcesium*, 2022 WL 621973, at *4 (quoting *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 121 (S.D.N.Y. 2015)).

Plaintiffs then fault Judge Merkl for "failing to give 'any weight whatsoever'" to the third factor—the level of inquiry the court undertook—because "the protective order here was granted on the basis of a stipulation by the parties rather than granted after a hearing to show good cause[.]" Obj. 17.  This argument is without basis in law and fact.  Judge Merkl amply considered this factor, Tr. 56:20-25; 58:21-59:2, and although there arguably may not have been a "'showing of good cause at the time the Protective Order was issued,' a Protective Order [is] still issued for good cause where trade secrets were included in the discovery and redaction would be extraordinarily time consuming and expensive for the parties," *see Arcesium*, 2022 WL 621973, at *5 (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 164 F.R.D. 346, 357 (S.D.N.Y. 1996)); *see also Scanlan*, 2021 WL 1352994, at *8 (courts must always "take[] the privacy interests at stake . . . very seriously").  As Judge Merkl explained, the protections in place in the PO make eminent sense, because "[i]nherent in bank records is the inclusion of sensitive personal data, personal identifiers, all kinds of financial information.  There may be, you know, various sensitive personal data of the type that was specifically designated to be provided special confidential protection under the protective order."  Tr. 58:21-59:2.  Thus, there was good cause for the PO.

As to the fourth factor—the nature of reliance on the order—Plaintiffs argue that "the presumption against modification is not as strong," *Charter Oak*, 287 F.R.D. at 133 (citation omitted), because "SCB was legally *obligated* to produce records responsive to Plaintiffs' third-

party subpoena pursuant to Fed. R. Civ. P. 45," and "SCB's counsel admitted that SCB could not have avoided production of documents had there been no PO in this case."  Obj. 19.  "However, where, as apparently may be the case here, a party produces documents that could 'expose it to additional litigation,' it is more likely that there was reliance."  *Arcesium*, 2022 WL 621973, at *5 (quoting *Errant Gene Therapeutics*, 2017 WL 4641247, at *4).  In this case, "[t]hat is exactly what appears to have happened here as [Plaintiffs] now seek to use documents disclosed to them in a subsequent suit against [the producing party]."  *Id.*

For these reasons, the Court should overrule Plaintiffs' objections and affirm Judge Merkl's decision with respect to the documents produced by SCB and KBC Bank.

## CONCLUSION

For the foregoing reasons, the Court should overrule Plaintiffs' objections in their entirety.

Respectfully submitted,

Dated: October 25, 2023

DECHERT LLP

By: /s/ Jonathan R. Streeter
Jonathan R. Streeter
1095 Avenue of the Americas
Three Bryant Park
New York, NY 10036
212-698-3500
Email: jonathan.streeter@dechert.com

Michael H. McGinley
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
215-994-4000
Email: michael.mcginley@dechert.com

*Attorneys for Defendants BLOM Bank
SAL and Fransabank SAL*

SQUIRE PATTON BOGGS (US) LLP

By: /s/ Gassan A. Baloul
Gassan A. Baloul
Mitchell R. Berger
2550 M Street, NW
Washington, DC 20037
202-457-6155
Email: gassan.baloul@squirepb.com
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants MEAB Bank
s.a.l., Fenicia Bank S.A.L., and LGB Bank
s.a.l.*

23

MAYER BROWN LLP

By: /s/ Mark G. Hanchet
Mark G. Hanchet
Robert W. Hamburg
1221 Avenue of the Americas
New York, NY 10020
212-506-2500
Email: mhanchet@mayerbrown.com
Email: rhamburg@mayerbrown.com


*Attorneys for Defendant Banque-Libano Française SAL*

MAYER BROWN LLP

By: /s/ Andrew J. Pincus
Andrew J. Pincus
Marc R. Cohen
Alex C. Lakatos
1999 K Street, NW
Washington, DC 20006
202-263-3220
Email: apincus@mayerbrown.com
Email: mcohen@mayerbrown.com
Email: alakatos@mayerbrown.com

*Attorneys for Defendant Bank Audi SAL*


DLA PIPER LLP (US)

By: /s/ Jonathan D. Siegfried
Jonathan D. Siegfried
Erin Collins
1251 Avenue of The Americas
New York, NY 10020
212-335-4925
Email: jonathan.siegfried@dlapiper.com
Email: erin.collins@dlapiper.com

*Attorneys for Defendants Byblos Bank SAL, Bank of Beirut and the Arab Countries SAL, and Bank of Beirut s.a.l.*

ASHCROFT LAW FIRM, LLC

By: /s/ Michael J. Sullivan
Michael J. Sullivan
Brian J. Leske
200 State Street, 7th Floor
Boston, MA 02109
617-573-9400
Email: msullivan@ashcroftlawfirm.com
Email: bleske@ashcroftlawfirm.com

*Attorneys for Defendant Société Générale de Banque au Liban S.A.L.*

24

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2023, I caused a copy of the foregoing to be filed with the Court's ECF system, which will cause notice of its filing to be served electronically upon all the parties to this proceeding.

_/s/ Jonathan R. Streeter_
Jonathan R. Streeter