```
                       UNITED STATES DISTRICT COURT
                       EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - X

TERREL CHARLES BARTLETT,      :
ET AL.,
                                      19-CV-00007(CBA)
          Plaintiffs          :


          -against-           :
                                      United States Courthouse
                                      Brooklyn, New York
SOCIETE GENERALE DE BANQUE
AU LIBAN SAL, ET AL.          :
                                      August 22, 2023
          Defendants.         :       10:00 a.m.

- - - - - - - - - - - - - - X


         TRANSCRIPT OF PREMOTION CONFERENCE VIA TELEPHONE
              BEFORE THE HONORABLE CAROL B. AMON
                   UNITED STATES DISTRICT JUDGE


APPEARANCES:


For the Plaintiffs:           OSEN LLC
                              190 Moore Street, Suite 272
                              Hackensack, NJ 07601
                              BY: GARY M. OSEN, ESQ.


For the Defendants:           MAYER BROWN LLP
                              1221 Avenue of the Americas
                              New York, NY 10020
                              BY: MARK G. HANCHET, ESQ.


Court Reporter:               Andronikh M. Barna
                              225 Cadman Plaza East
                              Brooklyn, New York
                              (718) 613-2178


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.
```

1     THE LAW CLERK:  This is Bartlett v. Banque Liban,
2 No. 19-CV-7 on for a premotion conference
3     I'm going to ask the parties to please state their
4 appearances, just the parties that are principally going to be
5 speaking, beginning with counsel for defendants, please.
6 Thank you.
7     MR. HANCHET:  Good morning, Your Honor.
8     This is Mark Hanchet from Mayer Brown representing
9 Banque Libano-Francaise.  I have been designated to speak
10 primarily on behalf of the defense.
11     THE COURT:  Good morning.
12     MR. OSEN:  Good morning, Your Honor.
13     This is Gary Osen from Osen, LLC.  I will be
14 speaking today on behalf of the plaintiffs.
15     THE COURT:  All right.  Good morning.
16     All right, Mr. Hanchet, it is your application here
17 for either a motion for reconsideration or a motion to
18 judgment on the pleadings.  Which is it?
19     MR. HANCHET:  Well, Your Honor, we think
20 reconsideration is appropriate.  That's what's happened in the
21 Southern District of New York post *Twitter*.  A couple of
22 cases -- Judge Schofield, Judge Ramos, a couple of judges,
23 have entertained reconsideration applications following
24 decisions that they issued denying motions to dismiss, so
25 that's probably the most appropriate vehicle here, Your Honor.

3

1  However, if Your Honor is concerned about the timeliness of
2  this application notwithstanding the fact that *Twitter* was
3  decided very recently, we would be prepared to move for
4  judgment on the pleadings, but we think reconsideration is the
5  appropriate vehicle.
6              THE COURT:  Well, in the conclusion of your letter
7  you say "reconsideration has been granted," but I take it what
8  you mean is that you have been permitted to make the motion,
9  not that reconsideration was actually granted.
10             MR. HANCHET:  Oh, Your Honor, that is absolutely
11 correct.  That was a misstatement if that's how it reads.
12 Reconsideration has been permitted, that's exactly right.
13             THE COURT:  Okay.  I just wanted to clarify that.
14             Let me ask you whether it will be your position that
15 the Second Circuit case law is wrongly decided such that you
16 will be asking me to make that determination in light of
17 *Taamneh*.
18             MR. HANCHET:  Yes, Your Honor, that's our position.
19             THE COURT:  So you do not see that there is any
20 different analysis that the Court should make based on its
21 interpretation of Second Circuit law, although presumably you
22 still think that is wrongly decided, but it is your position
23 that Second Circuit law is now incorrect in light of the
24 *Taamneh;* is that correct?
25             MR. HANCHET:  Well, that's a very sweeping

1   statement, Your Honor.  I would only refine it a little bit.
2   What we're talking about is the aiding-and-abetting claim.
3   The standard set forth by the Supreme Court in *Twitter* is
4   absolutely inconsistent with the Second Circuit authority set
5   forth in *Honickman* and *Kaplan*, and therefore we believe that
6   the Second Circuit is wrong in that respect.
7               THE COURT:  Well, that is a pretty high standard for
8   you to reach for me to make the decision that the
9   Second Circuit is wrong.  It has to be pretty clear that that
10  is the case before I, the District Court, would determine that
11  they are wrong, correct?
12              MR. HANCHET:  Well, Your Honor, we've submitted
13  authority, the *Moreno* case, where the Court made that exact
14  determination.  Here, I just don't think there's any way that
15  an objective reader could see the standard set forth, in
16  *Honickman* for instance, being consistent with the
17  Supreme Court.  I can elaborate on that if you would like,
18  Your Honor, but it's pretty clear, we've set forth in our
19  letter, and I think the Court has the ability to proceed with
20  this application.
21              THE COURT:  I think there is a statement -- excuse
22  me, I am a little hoarse.
23              There is a statement in *Taamneh* that says that there
24  may be, for example, situations where the provider of routine
25  services does so in an unusual way and provides such dangerous

5

wares that selling those goods to a terrorist group would constitute aiding and abetting. Don't the allegations here suggest that they provided routine services in an unusual way and, for instance, that they engaged in money laundering?

MR. HANCHET: With respect, Your Honor, no. These were routine services as alleged as the first principle. But secondly, this issue was never briefed, Your Honor. The exception that you allude to, to the general rule that's set forth in *Twitter,* has never been challenged by the defendants in this case. We never had an opportunity because that standard was never articulated until very recently. So we would say that the allegations in the complaint here cannot be fit into the exception that the Supreme Court has established and it's a very narrow exception, the one that Your Honor is alluding to.

THE COURT: Does counsel for the plaintiffs want to be heard, Mr. Osen? Let me just hear from you briefly.

MR. OSEN: Sure, Your Honor. This is Gary Osen for the plaintiff.

So, first of all, just two quick procedural notes, one which you alluded to, Your Honor, which is, first of all, this motion as a reconsideration motion would be technically untimely. It was filed 34 days -- that is, the premotion letter was filed 34 days, not 14, after the *Taamneh* decision came out, and that in this district, Local Rule 6.3 applies

1  where reconsideration is predicated on new authority.  So
2  that's just one point.
3  　　　　　The other, of course, is the one you alluded to,
4  which is that the Supreme Court has issued a decision, the
5  defendants say, its intention with Circuit precedent, but
6  there's pretty clear precedent, which we've cited in our
7  letter, from the Second Circuit which suggest that Your Honor
8  really should not be making a determination at this juncture
9  to sort of reverse or vacate Second Circuit precedent.
10 　　　　　And, of course substantively, we couldn't disagree
11 more with Mr. Hanchet's characterizations.  First of all,
12 they're essentially saying this case is analogous to *Taamneh*,
13 a case which involved social media companies that allegedly
14 didn't adequately take down posts from ISIS, they didn't take
15 them down fast enough or efficiently enough, what the Supreme
16 Court characterized as, quote/unquote, "passive nonfeasance."
17 So, the first question is, is this a case of passive
18 nonfeasance and even if you believed and accepted that it was
19 at least arguable that knowingly laundering billions of
20 dollars on behalf of an Islamic jihad organization, much of it
21 by the way in bulk cash from narcotics, diamonds and weapons
22 trafficking, would qualify as passive nonfeasance.
23 　　　　　Then the -- then, of course, the defendants, now
24 they do a sidestep, the one part of the *Taamneh* decision that
25 actually addresses financial services, and that's Google's

1  alleged ad revenue sharing with ISIS users.  But for Google,
2  the Supreme Court actually suggested that these -- I should
3  say, never suggested that these allegations amounted to
4  passive nonfeasance.  Instead, the Court says that the
5  plaintiff had alleged nothing about the amount of money that
6  Google supposedly shared with ISIS and that if it shared only
7  $50 with someone affiliated with ISIS, aiding and abetting
8  would be inappropriate.  So, Your Honor, if this case were
9  about $50 or even $50,000, we wouldn't all be here.
10             In fact, this case involves a massive, decades-long
11 criminal enterprise in which these defendants played a leading
12 role.  And so when this case was actually filed in January of
13 2019, since that time, one of the defendants in this case has
14 itself been designated as an SDGT, a Specially Designated
15 Global Terrorist, and more than a dozen individuals and
16 entities we identified in the complaint as belonging to
17 Hezbollah have since been designated for the reasons
18 identified in the complaint.  And they're not just random
19 people, they're the customers and coconspirators of the
20 defendants.  So this case so eminently involves the kind of
21 pervasive and systemic and culpable assistance of Hezbollah
22 that the Supreme Court describes.
23             I can go further.
24             THE COURT:  Counsel, let me just ask you a question.
25             MR. OSEN:  Sure.

8

1  THE COURT: You seek to hold defendants here
2  responsible for hundreds of attacks.
3  MR. OSEN: Right.
4  THE COURT: Is it your argument that they have aided
5  and abetted every Hezbollah-led attack during the relevant
6  time period?
7  MR. OSEN: Yes.
8  THE COURT: Have you shown in the allegations that
9  it systemically and pervasively assisted Hezbollah?
10 MR. OSEN: Absolutely. And we can't imagine a case
11 where that would be more so than here. We allege, to be
12 clear, that they actually called this decades-long money
13 laundering scheme "The System." It is systemic, pervasive
14 and, in fact, it was their core business model for more than a
15 decade. And the evidence of that is not just in the
16 complaint, although it's obviously voluminously there, but it
17 has been since reinforced by the subsequent collapse of the
18 Lebanese banking system precisely because they were running
19 this cash-based Ponzi scheme which was funded largely by
20 Hezbollah and its narcotics trafficking.
21 THE COURT: Let me ask you another question.
22 If defendants go forward and make these motions, it
23 would be appropriate for this court to apply the standards in
24 *Taamneh*, correct? You would agree with that? Without
25 commenting one way or the other on whether it changed

9

1   Second Circuit law, you agree that it would be appropriate for
2   me to apply the standards in the most recent Supreme Court
3   case, correct?
4               MR. OSEN:  Sure.  Our view is that the Supreme Court
5   decision in *Taamneh* is very copacetic with the Second Circuit
6   decision.
7               THE COURT:  Thank you.
8               MR. OSEN:  And I'm happy to elaborate on that
9   further.
10              But we don't see any material difference between the
11  holding from the Second Circuit and Supreme Court.
12              THE COURT:  All right.  Thank you.
13              Let me just ask counsel for the defendant.  I will
14  permit you to file your motion in light of the standard in
15  *Taamneh*, but you have to decide what motion you want to file,
16  or I do not know if you want to file alternative motions.  So,
17  do you know now what you intend to file, which motion you
18  intend to file, or both?  Or what is your position?
19              MR. HANCHET:  Well, Your Honor, we intend to file a
20  motion to reconsider.  That seems to be the vehicle that has
21  been adopted by Judge Ramos and Judge Schofield.  We think
22  it's appropriate here.  If the Court will entertain that
23  motion, that's what we will file.
24              THE COURT:  Well, how do you deal with the argument
25  about the Local Rule that your motion is untimely?

1    MR. HANCHET:  Your Honor, we'd like to consult as a
2 group and revert.  We can give you our position, you know,
3 imminently, but not on this call, Your Honor.  We haven't
4 discussed this exact issue, to be honest with you.
5    THE COURT:  Well, I will permit you to file a
6 motion, but, you know, counsel can also respond to the motion.
7 For instance, if you file a motion for reconsideration, you
8 can file the motion, but counsel, of course, would be able to
9 respond that it was untimely.  So, I mean, that could be one
10 of their arguments, just so you understand that.  In other
11 words, I am not resolving that issue by saying you can go
12 forward and file the motion, just so that is clear.
13    MR. HANCHET:  That's absolutely clear, Your Honor.
14 Thank you.
15    THE COURT:  Okay.  When can you file the motions
16 here?
17    MR. HANCHET:  We'd like to file it imminently.  We
18 proposed in our letter within 45 days of this conference.
19    THE COURT:  That is imminent?
20    MR. HANCHET:  Your Honor, it's a sea change.
21 Notwithstanding what Mr. Osen says, this *Twitter* case is a big
22 deal, so we would like to brief it -- if Your Honor wants it
23 before then, we can make it happen.
24    THE COURT:  Mr. Osen, do you have any objection to
25 that schedule, to a 45-day?

1    MR. OSEN:  Well, Your Honor, given that Mr. Hanchet
2 claims that it's a sea change, we don't agree with that, but I
3 think from our perspective, if we have to yet again brief one
4 more motion for reconsideration or however it's filed, we
5 would seek leave to amend the complaint to include all the
6 additional information we have gathered since the last filing
7 two and a half years ago.
8    THE COURT:  But how is the new information that you
9 have gathered, if it is post the attacks and post the banking
10 allegations, why is that going to be relevant?
11   MR. OSEN:  Well, Your Honor, to be clear, we're
12 talking about allegations and facts that are from the relevant
13 time period; they've just been gathered, including from
14 third-party discovery, since the time of the last filing of
15 the complaint.
16   So, for example, Your Honor, since we last filed,
17 third-party discovery -- I think we alluded to it in our
18 letter -- has identified close to a billion dollars in
19 transactions on behalf of myriads of Hezbollah entities
20 through these defendant banks, some of which we allege in the
21 complaint and obviously can concretize more fully but others
22 that are new and further elaborate.  In addition, we've
23 continued to do our ongoing investigation, so we have numerous
24 allegations that we would add that, again, you know, just from
25 the structuring of the complaint standpoint, that's all done

12

1  in the last complaint as pre *Honickman*, pre *Kaplan*, as well as
2  pre Taamneh.  So if we're going to go down this road, we think
3  the Court should have the benefit of the most comprehensive
4  complaint that -- and, of course, the parties would react on
5  that basis.
6         THE COURT:  Well, your complaint is already
7  exceedingly long.  Is there any way you can pare down your
8  complaint and add these new allegations to it?  You know, I
9  think it --
10        MR. OSEN:  Well, I don't think you can pare it down.
11  So we are definitely sensitive to the length of the complaint,
12  Your Honor, but two points on that.
13        First, its length is dictated by the scope and
14  systemic and pervasive nature of the defendants' criminal
15  conduct.
16        But in an answer to your question, I think one way
17  that we can address that is by, you know, attaching or
18  incorporating charts or exhibits that reduce the verbiage but
19  there's still the essentials of the allegation.  So, for
20  example, listing all the accounts and dollar amounts for
21  various Hezbollah customers and so forth in a way that has
22  already been explained in the complaint who they are but now
23  adds additional details about the volume and nature of the
24  transactions.
25        THE COURT:  Well, it is already 788 pages.  How much

1 longer do you think it is going to be?

2 MR. OSEN: I frankly didn't think we would be in
3 this position, Your Honor, so I haven't drafted it, but I
4 would imagine it could be another 30 pages.

5 THE COURT: So you can do this, file your amended
6 complaint by when?

7 MR. OSEN: I think realistically, Your Honor, it
8 will take us 90 days to compile it all.

9 THE COURT: 90 days? I mean --

10 MR. OSEN: Your Honor, we're talking about a billion
11 dollars plus in just transactional records. It would have to
12 be distilled. You know, I would say, Your Honor, like I
13 believe it was Abraham Lincoln said: I have a long speech
14 because I didn't have time to write a shorter one. To make it
15 short and condense it and summarize it in the most efficient
16 form for the Court, it requires a lot of forensic analysis and
17 reduction, so that's what we would ask for.

18 THE COURT: Well, I suppose it makes sense. If you
19 claim you can amend it to add allegations that would
20 strengthen the complaint in light of the Supreme Court
21 decision, it makes sense for you to do that before Counsel
22 goes through the time of moving to dismiss something and then
23 being told, well, we can add to that.

24 I would like you to do that within 60 days as
25 opposed to 90 days so we can get this moving. And I would

14

1  also like you to provide to both Court and Counsel a redline
2  version showing precisely what you have added.  Okay?
3              MR. OSEN:  Yes, I think that makes sense,
4  Your Honor.
5              One sort of note.  I don't know precisely how
6  Your Honor wants to handle it, but some of that information
7  that we would add is subject to the protective order in this
8  case and so presumably we would file a sealed version or
9  redacted version on the docket and both the redline and the
10 full complaint would be filed under seal.
11             THE COURT:  Obviously, though, so counsel could see
12 a copy though?
13             MR. OSEN:  Right, of course.
14             THE COURT:  All right.  It is okay to proceed that
15 way.
16             MR. OSEN:  Okay.  Thank you, Your Honor.
17             THE COURT:  Ms. Saltzman, do you have some dates to
18 set a schedule?
19             And let me just ask counsel for the defendants.  You
20 would have 45 days from the filing of the amended complaint.
21 Okay?
22             MR. HANCHET:  Yes, Your Honor.
23             And I guess that would simply be a regular 12(b)
24 motion, right --
25             THE COURT:  Right.

Andronikh M. Barna, Official Court Reporter, RPR, CRR

15

1          MR. HANCHET: -- to dismiss?

2          THE COURT: Yes.

3          MR. HANCHET: Okay.

4          THE COURT: Yes --

5          MR. HANCHET: Understood.

6          THE COURT: Since an amended complaint, I think you
7 are right.

8          Okay. All right. So Ms. Saltzman, 60 days would be
9 what?

10          THE LAW CLERK: Yes, I think October 20th for the
11 amended complaint.

12          THE COURT: Okay.

13          THE LAW CLERK: And then December 4th for the motion
14 to dismiss.

15          THE COURT: And if we give the same 45 days to
16 plaintiff, what would that be?

17          THE LAW CLERK: One moment.

18          Thursday, January 18th, 2024.

19          THE COURT: Okay. And a reply two weeks later would
20 be what?

21          THE LAW CLERK: Let me see.

22          Sorry, one moment.

23          February 1st.

24          THE COURT: Okay. And do we have a date in early
25 March to set down for oral argument?

16

1  THE LAW CLERK: Yes, let me take a look.
2  Let's see. We could do Monday the 4th.
3  THE COURT: Okay. At 2:00?
4  THE LAW CLERK: Yes.
5  THE COURT: Monday, March 4th at 2:00.
6  Okay. That is the schedule.
7  Thank you, gentlemen.
8  MR. OSEN: Thank you, Your Honor.
9  (Matter concluded.)

11  \* \* \* \* \*

13  I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

15  /s/ Andronikh M. Barna          August 22, 2023
16  ANDRONIKH M. BARNA              DATE

Andronikh M. Barna, Official Court Reporter, RPR, CRR