


190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

November 16, 2023

**VIA ECF**

Honorable Carol Bagley Amon
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**Re: *Bartlett, et al. v. Société Générale de Banque au Liban, et al.*, 1:19-cv-00007**

Dear Judge Amon:

Plaintiffs respectfully write in response to the Court's November 8, 2023, Order. A redlined courtesy copy of the Third Amended Complaint ("TAC") was delivered to Chambers on October 24, 2023, and contemporaneously served via e-mail on Defendants. However, in accordance with the Court's direction to file the redline under seal, Plaintiffs will do so simultaneously with the filing of this letter.

Plaintiffs acknowledge that the additions to the TAC, which were made to address information disclosed or obtained after the initiation of this suit or developments in JASTA case law since the filing of the Second Amended Complaint ("SAC"), were more extensive than they anticipated.

A significant percentage of the new allegations in the TAC reflect summaries of records produced by third parties evidencing financial services Defendants provided to various Hezbollah-affiliated persons and entities.[1] These allegations provide additional accountholders and specific timeframes and dollar amounts routed through New York correspondent bank accounts for the benefit of numerous accountholders at Defendants' banks who were affiliated with Hezbollah. These allegations further support the "pervasive and systemic" nature of Defendants' assistance to Hezbollah. *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1230 (2023). And because the Magistrate Judge's March 31, 2023, Memorandum & Order, ECF No. 320, overruling Defendants' bank secrecy objections initially limited letters rogatory to customer relationships alleged in the SAC to keep them "manageable," these additional allegations should ultimately facilitate the discovery process by further clarifying the relevance of Plaintiffs' identification of various individuals and entities listed in the TAC and the "pervasive and systemic" nature of the conduct at issue.

---

[1] *See* TAC Redline, pages ("pp.") 190, 199, 200, 271, 273, 294, 355, 357-58, 360-61, 364-66, 367-69, 372-73, 378, 379, 380-81, 384, 385, 386, 387, 390-91, 392-95, 397, 399-400, 401, 402, 403-04, 407-08, 409, 410, 411, 412-14, 416, 418-19, 426, 427, 429-431, 433-34, 435-36, 438, 440-41, 442, 446, 447-48, 449, 453-54, 455-64.

Many of the remaining additional allegations relate to recent, post-litigation disclosures and events:

(i) Updated allegations noting that the Lebanese economy has collapsed—the SAC described the workings of the Lebanese financial system, described it as a Ponzi scheme from which Defendants benefitted, and predicted its eventual collapse. *See* SAC, ECF No. 189, ¶ 83. The TAC simply notes that the collapse of the Lebanese economy has since occurred;[2]

(ii) Updates concerning individuals and entities listed in the SAC who have since been designated as Specially Designated Global Terrorists ("SDGTs") by the U.S. Treasury Department;[3]

(iii) Additional facts that further support Plaintiffs' allegations that Defendants worked closely with Hezbollah and that Hezbollah's Islamic Jihad Organization operatives coordinated their illicit activities with Defendants;[4]

(iv) Allegations reflecting information obtained from a publicized December 2020 data breach published on the internet of Hezbollah's unlicensed bank, Al-Qard al-Hasan Association ("AQAH"), identifying seven Defendants that continued to provide accounts and financial services (including correspondent banking services) to AQAH after it was designated in 2007 and until at least 2022;[5]

(v) Allegations regarding Hezbollah accounts at Defendant Byblos Bank published as part of a June 4, 2022, Lebanese television report investigating the 2020 murder of a former senior compliance officer at Byblos Bank who investigated his employer's relationship with Hezbollah;[6] and

(vi) Allegations reflecting information obtained from a data breach published on the internet of Defendant Jammal Trust Bank records that occurred after its designation as an SDGT in 2019.[7]

These additions from publicly available news reports, published data breaches, and other sources of information, provide further evidence of Defendants' knowing substantial assistance, rendered "consciously, voluntarily, and culpably," to Hezbollah. *Taamneh*, 143 S. Ct. at 1230.

Other additions constitute "public source" information from the relevant period, which are largely media articles. The majority of those allegations identify certain customers of specified Defendants as affiliated with Hezbollah, engaged in criminal conduct, and/or closely intertwined with Hezbollah's violent terrorist activities.[8] Others describe Hezbollah's drug trafficking activities,[9] trade-based money laundering,[10] charitable fronts,[11] and targeting of U.S. and Coalition

---

2 *See* TAC Redline, pp. 19-21.
3 *See id.*, pp. 130-33.
4 *See id.*, pp. 355, 359 (SGBL), p. 378 (MEAB Bank).
5 *See id.*, pp. 129-34, 361-62, 385, 395-96, 415, 443, 451, 466.
6 *See id.*, pp. 387-89.
7 *See id.*, pp. 443-45.
8 *See id.*, pp. 96, 104-06, 121-23, 135, 139-40, 169-72, 192-97, 213-18, 219-25, 240-41.
9 *See id.*, pp. 275-79.
10 *See id.*, pp. 304-06.
11 *See id.*, pp. 96, 104-106.

forces in Iraq.[12] These allegations track the Second Circuit's decisions in *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842 (2d Cir. 2021) and *Honickman v. BLOM Bank SAL*, 6 F.4th 487 (2d Cir. 2021), which found scienter sufficiently alleged where the complaint alleged "public sources such as media articles," *id.* at 502 n.18, describing customers' affiliation with terrorist groups and other relevant information. These additions are extensive because the list of Defendants' alleged Hezbollah-affiliated customers is long and there are 13 Defendants with a multitude of Hezbollah-affiliated customers. These extensive "public source" allegations also further demonstrate that Defendants' "pervasive and systemic" assistance to Hezbollah was readily knowable to them during the relevant period not only because a significant number of their customers were publicly identified as criminals, weapons traffickers, and/or Hezbollah operatives or entities, but also because the money laundering methods Hezbollah engaged in, including trafficking in African diamonds, trade-based money laundering, and narcotics trafficking, were all publicly known at the time – as was Hezbollah's affiliation with so-called charities like the Martyrs Foundation and Jihad al-Bina, both SDGTs.

Finally, in several places throughout the TAC, lists of Defendants' Hezbollah-affiliated accountholders were included for the Court's convenience.[13]

Respectfully submitted,

/s/ Gary M. Osen

cc: All counsel

---

[12] *See id.*, pp. 470-71.

[13] *See id.*, pp. 25-27, 369, 379, 386-87, 408, 416, 426-27, 434, 440, 447, 453-54.