UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ROBERT BARTLETT, et al.,

                   Plaintiffs,              <u>NOT FOR PUBLICATION</u>
                                     **MEMORANDUM & ORDER**
     -against-                       19-CV-00007 (CBA) (TAM)

SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, et al.,

                  Defendants.
------------------------------------------------------x
**AMON, United States District Judge:**

       On September 27, 2023, the Honorable Taryn A. Merkl, United States Magistrate Judge,

denied Plaintiffs' Letter Motion for Leave to Use Discovery in <u>Bartlett</u> in Another Action.  (ECF

Docket Entry ("D.E.") # 346).  Plaintiffs appeal Magistrate Judge Merkl's Discovery Order

pursuant to 28 U.S.C. § 636(b)(1)(A) and Federal Rule of Civil Procedure 72. (D.E. # 348.)  For

the reasons set forth below, Plaintiffs' appeal is DENIED.

## BACKGROUND

       Plaintiffs are seeking to use discovery obtained from non-parties KBC Bank and Standard

Chartered Bank ("SCB") in this case to support their amended complaint in other actions where

SCB is a named defendant: <u>Freeman v. HSBC Holdings plc</u>, No. 14-cv-6601 (PKC) (CLP)

(E.D.N.Y.) ("<u>Freeman I</u>") and <u>Freeman v. HSBC Holdings plc</u>, No. 18-cv-7359 (PKC) (CLP)

(E.D.N.Y.) ("<u>Freeman II</u>") (together, the "<u>Freeman</u> Actions").

       The <u>Freeman</u> Actions were commenced in 2014 and bear some similarities to <u>Bartlett</u>.

Plaintiffs are similar but not identical; all but approximately 50 of the 1,212 plaintiffs in the

<u>Freeman</u> cases are also Plaintiffs in <u>Bartlett</u>.  The <u>Freeman</u> plaintiffs were also injured in terror

attacks and brought actions against different foreign banks alleged to have assisted the terror

networks responsible for those attacks under the Justice Against Sponsors of Terrorism Act ("JASTA") amendment to the Anti-Terrorism Act. However, the <u>Freeman</u> Actions are brought against different defendants, six European-headquartered banks and the UK subsidiary of an Iranian bank, alleged to have knowingly provided illegal banking services to agents or components of terrorist organizations in Iran. The <u>Freeman</u> Actions also proceed on different theories of liability than the causes of action brought here.

The procedural history of the <u>Freeman</u> Actions is long and complex. Relevant to this appeal, <u>Freeman I</u> and <u>Freeman II</u> were both dismissed for failure to state a claim in 2019 and 2020, respectively. 413 F. Supp. 3d 67 (E.D.N.Y. 2019); 465 F. Supp. 3d 220 (E.D.N.Y. 2020). The decision in <u>Freeman I</u> was affirmed by the Second Circuit on other grounds in 2023, 57 F.4th 66 (2d Cir. 2023), and the Supreme Court denied certiorari on October 2, 2023, No. 22-1117. <u>Freeman II</u> was stayed pending the appeal in <u>Freeman I</u> and then pending the outcome of <u>Twitter, Inc. v. Taamneh</u>, No. 21-1496, a case clarifying the standard for aiding-and-abetting liability under JASTA, which was decided by the Supreme Court on May 18, 2023, 598 U.S. 471 (2023).

Following the <u>Twitter</u> decision, plaintiffs in the <u>Freeman</u> Actions were granted leave to amend their complaint to conform to the standards set forth in <u>Twitter</u> and "to incorporate records produced by third parties in <u>Bartlett</u>." (D.E. # 348 at 3). The District Judge in <u>Freeman</u> made clear that she was not ruling or taking a position on whether the <u>Bartlett</u> protective order allowed the <u>Freeman</u> plaintiffs to use <u>Bartlett</u> discovery material in the <u>Freeman</u> complaint. (<u>Id.</u> Ex. B at 46.) Plaintiffs in <u>Freeman</u> also filed a motion to lift the stay of discovery and permit them to subpoena the same <u>Bartlett</u> materials. (<u>Freeman II</u>, D.E. # 113 at 2.) The District Judge presiding over <u>Freeman</u> denied that motion "given the pending discovery motion in <u>Bartlett</u> . . . and the existence of [a] protective order in that case." (<u>Freeman II</u>, Text Order dated Sept. 15, 2023.)

Plaintiffs then filed a Motion to Use Discovery with the Magistrate Judge in this case. (D.E. # 335.) Plaintiffs explained that a subset of the records from KBC Bank and SCB, produced in Bartlett as third-party discovery, are relevant to the Freeman Actions because "the records indicate that certain defendants in the Freeman Actions maintained accounts and received or initiated transactions through the United States for certain Iranian and Hezbollah-affiliated entities and individuals." (D.E. # 348 at 6-7.) Plaintiffs are seeking to include a subset of such discovery in the Freeman amended complaint: "(1) the names of the alleged Hezbollah-affiliated entities and individuals in the transaction summaries; (2) the names of the Freeman defendants which held the relevant accounts; (3) the dollar amounts of the transactions processed on behalf of the relevant Hezbollah-affiliated customers between 2003-2011; and, where relevant, (4) transactional dates." (Id. at 7.)

Freeman defendant SCB and the Bartlett defendants oppose the disclosure of discovery in this case for purposes of amending the Freeman complaints based on the protective order entered in Bartlett ("PO").[1] (D.E. ## 338; 339.) In 2022, the parties in this case negotiated the PO as part of the discovery process. (D.E. # 273.) The PO defines all material disclosed and produced in this litigation as Discovery Material, which is afforded the following protection:

> All Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation). However, a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter.

(PO Par. C.)

---

[1] After the Magistrate Judge issued the September 27, 2023 order, Plaintiffs requested clarification from the Court on the order as it applied to KBC Bank's records. KBC Bank apparently did not object to use of the records it produced in Bartlett in the Freeman Actions. (Dkt. # 345.) Following the filing of this appeal, the Magistrate Judge ordered on the docket that the September 27, 2023 order is applicable to discovery provided by KBC Bank for the same reasons discussed in the prior order. (Text Order dated Oct. 13, 2023.) Since the parties have not fully briefed the discovery issue as to KBC Bank, I take no position at this time on whether the PO precludes the disclosure of KBC Bank's discovery material.

3

The PO provides additional protection for Confidential Information, a subset of Discovery Material. Confidential Information includes sensitive commercial and personal data including "financial information", "customer lists", and other "sensitive personal data that may be subject to U.S. or foreign laws." (PO Par. D.) A producing party may designate Discovery Material as Confidential Information "if it has a good faith basis for the designation." (Id.) Confidential Information is provided heightened protection as compared to other Discovery Material and may not be "furnished, shown, or disclosed by the Receiving Party to any person or entity" except under explicit and limited circumstances. (Id. Par. E.)

The PO also contains a modification provision that states: "This Protective Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information." (Id. Par. K.)

Magistrate Judge Merkl denied the motion to use the <u>Bartlett</u> discovery in <u>Freeman</u>, finding that:

> Plaintiff has not demonstrated an "extraordinary circumstance or compelling need" to modify the protective order in this case, on which non-party Standard Chartered Bank and the Moving Defendants have demonstrated significant reliance. <u>See generally</u> S.E.C. v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001); <u>see also</u> <u>id.</u> at 230 (observing that it is "presumptively unfair for courts to modify protective orders which assure confidentiality and upon which the parties have reasonably relied").

(Text Entry dated Oct. 13, 2023.) Plaintiffs maintain that they are not seeking to modify the PO because the disclosure of Discovery Material in a related matter is anticipated in the PO. (D.E. # 348 at 8.)

## STANDARD OF REVIEW

Under 28 U.S.C. § 636(b)(1)(A), a district court may set aside a magistrate judge's order on a non-dispositive pretrial matter if it is "clearly erroneous or contrary to law." 28 U.S.C.

§ 636(b)(1)(A); see also Fed. R. Civ. P. 72(a).  Matters concerning discovery "usually are committed to the discretion of the magistrate, reviewable by the district court under the 'clearly erroneous or contrary to law' standard." Thomas E. Hoar, Inc. v. Sara Lee Corp., 900 F.2d 522, 525 (2d Cir. 1990).  An order is clearly erroneous if "'on the entire evidence' the Court is 'left with the definite and firm conviction that a mistake has been committed.'" Mental Disability Law Clinic v. Hogan, 739 F. Supp. 2d 201, 203 (E.D.N.Y. 2010) (quoting Easley v. Cromartie, 532 U.S. 234, 235 (2001)).  An order is contrary to law if it "fails to apply or misapplies relevant statutes, case law or rules of procedure." Weiner v. McKeefery, No. 11-CV-2254, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014) (citation omitted).  This standard of review is highly deferential. Williams v. Rosenblatt Sec., Inc., 236 F. Supp. 3d 802, 803 (S.D.N.Y. 2017) (citation omitted).

## DISCUSSION

Defendants and SCB argue that the application to use Confidential Information in another case constitutes a request to modify the PO subject to the standard set forth in S.E.C. v. TheStreet.Com and Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291 (2d Cir. 1979).  That standard requires the moving party to show "some extraordinary circumstance or compelling need." TheStreet.Com, 273 F.3d at 229 (quoting Martindell, 594 F.2d at 296).  Plaintiffs assert that they do not seek a modification since the disclosure of all Discovery Material is anticipated in Paragraph C of the PO, which operates independently of the modification provision in Paragraph K. (D.E. # 348 at 5-6; D.E. 273 Par. K.)  Plaintiffs argue that they are seeking to enforce the terms of the PO, not modify them.  (D.E. # 348 at 5-6.)

The Magistrate Judge's conclusion that Plaintiffs are seeking a modification of the PO was not clearly erroneous or contrary to law.  The relevant sentence here is Paragraph C, "a Party may

move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." I agree with the Magistrate Judge that this is a procedural provision which simply provides a mechanism for modification. This reading is supported by the record of communications between the parties during negotiation of Paragraph C of the PO. In an email chain between the parties while exchanging proposed drafts of the PO, Plaintiffs stated that they were seeking language in Paragraph C "noting that a party can move to <u>modify</u> the order." (D.E. # 341 Ex. A at 2) (emphasis added).

Although Plaintiffs emphasize Paragraph C in their motion, it bears noting that other sections support that the disclosure of this particular material would be a modification of the PO. Although the section of the PO on Discovery Material broadly covers the disputed material, there is a section that specifically governs Confidential Information. When SCB made its disclosures, it designated the material as Confidential Information and specifically noted that the documents were for use "in the above-referenced matter only." (D.E. # 339-3.) Plaintiffs did not and do not object to this designation. As discussed, Confidential Information receives a heightened level of protection not afforded to ordinary Discovery Material. (PO Par. E.) There is thus no indication that the PO anticipates the disclosure of the Confidential Information at issue without modifying the contract. This reading is consistent with the actual modification provision. <u>See id.</u> Par. K ("This Protective Order may be changed by further order of this Court, and without prejudice to the rights of a Party to move for relief from any of its provisions, or to seek or agree to different or additional protection for any particular material or information.").

In their appeal, Plaintiffs rely heavily on <u>U.S. Philips Corp. v. Iwasaki Elec. Co.</u>, 142 Fed. App'x. 516 (2d Cir. 2005), a case they failed to cite in their briefing before Magistrate Judge Merkl. In that case, the Second Circuit ruled that using discovery material in a related patent litigation

when the protective order anticipated such disclosure did not constitute a modification of the protective order. Id. at 518. That case is distinguishable. Unlike here, the Iwasaki action was brought by the same plaintiff against the same defendant in suits filed in the U.S., Germany, and Japan that proceeded under the same theories of liability in dispute of the same facts. In re Iwasaki Elec. Co., Ltd., No. 19-82 (TPG), 2005 WL 1251787, at *1 (S.D.N.Y. May 26, 2005). Although the protective order in Iwasaki stated that confidential information would only be used for the claims in the present action, it contained a detailed carve-out for related cases:

> In the event a party wishes to disclose CONFIDENTIAL or CONFIDENTIAL ATTORNEYS' EYES ONLY material for use in a related legal action, such party shall provide written notice to the party or nonparty who has produced such material, identifying (i) the related action, (ii) the material sought to be disclosed and (iii) the reason for the proposed disclosure. The written notice shall be delivered so as to be received by the producing party at least twenty (20) days in advance of the proposed disclosure. If the producing party objects in writing to the proposed disclosure, the disclosure shall not be made. If such an objection is made, the party seeking disclosure may move before this Court for an order allowing such disclosures.

Id. Because the parties were litigating similar issues across jurisdictions, their protective order was explicit about using the protected discovery material in a "related legal action." Id. The relatedness of the foreign cases alongside the specificity of the language in the protective order led the Second Circuit to find that the protective order "contemplates the possibility that the parties will wish to use confidential material in related actions." 142 Fed. App'x. at 518. The plain language thus indicated that disclosure was an enforcement of the protective order, not a modification that would require plaintiffs to show "extraordinary circumstance or compelling need" under Martindell. Id. The language of the PO in this case is not similarly specific. Disclosure here is more appropriately viewed as a modification to the PO.

Plaintiffs have failed to show that the Magistrate Judge's decision that the requested modification was not warranted under Martindell and TheStreet.Com was clearly erroneous. See

In re MTBE Prods. Liab. Litig., 60 F. Supp. 3d 399, 403-04 (S.D.N.Y. 2014).  Under Martindell, "[w]here there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c) 'absent a showing of improvidence in the grant of the order or some extraordinary circumstance or compelling need.'" The Street.com, 273 F.3d at 229 (quoting Martindell, 594 F.2d at 296).  "There is a strong presumption against modifying protective orders because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence." Arcesium LLC v. Advent Software, Inc., No. 20-cv-4389, 2022 WL 621973 at *3 (S.D.N.Y. Mar. 3, 2022) (citing In re Teligent, Inc., 640 F.3d 53, 59 (2d Cir. 2011) and Kiobel by Samkalden v. Cravath, Swaine & Moore LLP, 895 F.3d 238, 247 (2d Cir. 2018)).

To determine whether a party has reasonably relied on the protective order, courts in the Second Circuit have evaluated several factors: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order.'" Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc., 287 F.R.D. 130, 132 (E.D.N.Y. 2012) (quoting In re September 11 Litig., 262 F.R.D. 274, 277 (S.D.N.Y. 2009)).  Courts additionally consider factors such as the party's purpose for seeking modification. In re EPDM Antitrust Litig., 255 F.R.D. 308, 318-319 (D. Conn. 2009).  Although Magistrate Judge Merkl did not separately articulate each factor, she noted that she was applying this four-part inquiry to assess reliance.  (D.E. # 346 at 56.)

Courts may address the first three factors together "upon consideration of the entire record." Scanlan v. Town of Greenwich, No. 3:18-CV-01322 (KAD), 2021 WL 1352994, at *8 (D. Conn. Apr. 12, 2021).  With respect to the scope and language, there can be a reduced degree of reliance on "blanket" protective orders "covering all documents produced during the litigation,

not a targeted order covering only certain documents," TradeWinds Airlines, Inc. v. Soros, No. 08-cv-5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016), "because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition," In re EPDM, 255 F.R.D. at 319. Here, the specific documents Defendants seek to protect are not "all documents," but rather Confidential Information that is specifically defined. (PO Par. E.)

As to the third factor, Plaintiffs contend that reliance on the PO is less persuasive where the orders were agreed to rather than entered by the Court after a finding of good cause. (D.E. # 348 at 16-17 (citing In re EPDM, 255 F.R.D. at 321).) However, the cases they cite distinguish between negotiated agreements versus protective orders granted after the court found good cause, which carry more weight. See In re EPDM, 255 F.R.D. at 321; Fournier v. Erickson, 242 F. Supp. 2d 318, 341 (S.D.N.Y. 2003) ("The heightened 'extraordinary circumstances' burden for unsealing documents . . . contemplates the Court already having considered each document in the first instance according to a 'good cause' standard".). Although no hearing was held here, Magistrate Judge Merkl did sign the protective order where she found "good cause having been shown." (D.E. # 273 at 1.) The court's involvement and the parties' reliance on it, therefore, is not diminished simply because the parties negotiated and agreed on the language which was subsequently approved by the court. See Arcesium, 2022 WL 621973, at *5 (finding reasonable reliance on the protective order where the court found that there was good cause).

The fourth factor also supports reasonable reliance by SCB. "[W]here . . . a party produces documents that could 'expose it to additional litigation,' it is more likely that there was reliance." Id. at *5 (citing Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch., No. 15-CV-2044 (AJN), 2017 WL 4641247, at *4 (S.D.N.Y. Oct. 16, 2017)).  This is precisely the

circumstance SCB finds itself in now.  In line with the protections of the PO, SCB specifically stated upon production that the documents were for use "in the above-referenced matter only." (D.E. # 339-3.)  SCB credibly argues that if there were no PO, it would have sought one before turning over the material.  (D.E. # 354 at 18.)

In addition to these four factors, courts consider the purpose and type of materials sought by the requesting party when deciding a motion to modify the protective order.  In re EDPM, 255 F.R.D. at 324.  Modification, while sometimes promoting efficiency, should not be used to "subvert a limitation on discovery."  Id.  Here, the Freeman plaintiffs are seeking to use the discovery in Bartlett to revive a case where they have been denied discovery to support a proposed amended complaint.

Considering all these factors, I agree with the Magistrate Judge that SCB relied on the protective order when making disclosures.  The PO here is similar to the one in Martindell itself, where the protective order was entered in advance of depositions and acted as a known protection throughout discovery.  Martindell, 594 F.2d at 296.  As in Martindell, it was reasonable for the parties here to rely on the protection afforded by the PO.

Finally, Plaintiffs' filing does not allege any extraordinary circumstance or compelling need to make the requested disclosure.  Although Plaintiffs cite cases that found compelling need to share discovery for efficiency reasons, those cases involved (1) related matters; (2) that were already engaged in discovery; and (3) the absence of prejudice.  See Tradewinds Airlines, Inc., 2016 WL 3951181, at *2 ("Without modification of the Protective Order, the same discovery materials will likely have to be reviewed and re-produced, needlessly causing duplication of effort and extra expense. And importantly, because the proposed modifications maintain the same protections regarding public disclosure, there is no significant prejudice to any party."); Charter

Oak Fire Ins. Co., 287 F.R.D. at 134 (finding "a compelling and extraordinary need to share these common discovery materials with counsel for the same plaintiff in other related litigations against Electrolux, especially in the absence of any discernible prejudice to Electrolux.")    The circumstances here are different. As noted, these are not the same parties, and the Freeman parties at this stage in their litigation have not been permitted to engage in discovery. Therefore, the prejudice of using SCB's third-party disclosures in Bartlett to establish a cause of action against SCB in another case is apparent.

## CONCLUSION

Plaintiffs have failed to establish that the Magistrate Judge's decision on Plaintiffs' Motion for Leave to Use Discovery in Bartlett in Another Action was clearly erroneous or contrary to law. Plaintiffs' appeal of the Magistrate Judge's decision is therefore DENIED.

SO ORDERED.

Dated: December 21, 2023
     Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge