# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, New York 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.
BRUSSELS • FRANKFURT • LONDON • PARIS
BEIJING • HONG KONG • TOKYO
MELBOURNE • SYDNEY

February 29, 2024

By ECF

The Honorable Carol B. Amon,
   United States District Judge,
      U.S. District Court for the Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

The Honorable Taryn A. Merkl,
   United States Magistrate Judge,
      U.S. District Court for the Eastern District of New York,
         225 Cadman Plaza East,
           Brooklyn, New York 11201.

      Re:    *Bartlett* v. *Société Générale de Banque au Liban SAL*, No. 19-cv-00007-CBA-TAM ("*Bartlett*")

Dear Judge Amon and Judge Merkl:

      We write on behalf of non-party Standard Chartered Bank ("SCB") in connection with this Court's Orders dated September 27, 2023 (Minute Order dated Sept. 27, 2023) and December 21, 2023 (ECF No. 368) to inform the Court of recent developments in *Freeman* v. *HSBC Holdings plc*, No. 18-cv-7359-PKC-CLP (E.D.N.Y.) ("*Freeman II*"), and *Freeman et al.* v. *HSBC Holdings PLC et al.*, 1:14-cv-06601-PKC-CLP ("*Freeman I*"), both pending before Judge Pamela K. Chen. We also request that the Court enter an order (i) confirming for Judge Chen in *Freeman I* and *Freeman II* that this Court's prior holdings that the Protective Order in this case (ECF No. 273) do not permit Plaintiffs or their counsel to use materials that SCB and KBC Bank ("KBC") produced and designated as "Confidential Information" for any purpose other than the *Bartlett* case, including to try to support plaintiffs' motion to vacate the final judgment of dismissal in *Freeman I*, to formulate an amended complaint in *Freeman II*, or to make discovery requests in *Freeman II* or in any other case, and (ii) admonishing the *Freeman I* and *Freeman II* plaintiffs' counsel against any further misuse of those materials.

      As the Court will recall, in December, 2021, Plaintiffs in this case served a subpoena for documents on SCB and KBC. SCB and KBC produced banking records in response to that subpoena and designated them as "Confidential Information" under the Protective Order entered by the Court on June 8, 2022. A year later, Plaintiffs sought permission from this Court

to use some unidentified subset of those records to formulate an amended complaint in *Freeman II*, where SCB is a defendant and where all of the plaintiffs' claims have been dismissed. At a hearing held on September 27, 2023, Judge Merkl denied Plaintiffs' request, ruling that Plaintiffs and their counsel were not entitled to use the confidential non-party records in *Freeman II*. (*Bartlett*, Minute Order dated Sept. 27, 2023; *see also Bartlett*, Sept. 27, 2023 Hr'g Tr. 57–59, ECF No. 346.) Judge Merkl specifically found that the records Plaintiffs sought to use had been properly designated as "Confidential Information" under the Protective Order and "Plaintiff ha[d] not demonstrated an 'extraordinary circumstance or compelling need' to modify the protective order in this case" in order to use SCB's produced records for the *Freeman II* case. (*Bartlett*, Minute Order dated Sept. 27, 2023.)

Plaintiffs appealed that decision to Judge Amon, who affirmed on December 21, 2023. (*Bartlett*, ECF No. 368.) In doing so, the Court recognized that "the *Freeman* plaintiffs [were] seeking to use the discovery in *Bartlett* to revive a case where they ha[d] been denied discovery to support a proposed amended complaint," and held that the Protective Order precluded that use and no modification of that Order was warranted because "SCB [had] relied on the protective order when making disclosures," "it was reasonable for the parties . . . to rely on the protection afforded by the [Protective Order]," and the *Freeman II* Plaintiffs had "not allege[d] any extraordinary circumstance or compelling need" to modify the Protective Order. (*Id.* at 10.) The Court further emphasized that "the *Freeman* parties at this stage in their litigation have not been permitted to engage in discovery. Therefore, the prejudice of using SCB's third-party disclosures in *Bartlett* to establish a cause of action against SCB in another case is apparent." (*Id.* at 11.)

Ignoring this Court's Orders, on December 27, 2023, the *Freeman II* plaintiffs used Confidential Information subject to the Protective Order in drafting an amended complaint in *Freeman II*, and then, after losing their appeal to Judge Amon, filed a 704-page Second Amended Complaint in *Freeman II* (the "*Freeman II* SAC"), with 47 pages of redacted allegations that those plaintiffs admit were "sourced from" the confidential banking records that SCB and KBC had produced to Plaintiffs here and that are subject to the Protective Order. (*Freeman II*, ECF No. 117, at 3 n.5.) Worse still, the *Freeman II* plaintiffs also purported to describe those records, mischaracterizing them as "highly relevant records" that "provide additional evidence that some of the Defendants knowingly provided substantial assistance to the IRGC and Hezbollah." (*Id.*) In order to feign compliance with the Protective Order, the *Freeman II* plaintiffs did not publicly file those allegations, or disclose them to the *Freeman II* court or the other parties in that case— but they have unabashedly "used" the *Bartlett*-derived materials in *Freeman II* by (a) inserting redacted allegations that the plaintiffs, by their own account, had "sourced from" those materials; (b) asserting (incorrectly) that the materials support their claims against SCB and others; and (c) using counsel's description of those materials to seek discovery in *Freeman II*. In particular, the *Freeman II* plaintiffs and their counsel have now sought discovery from SCB and KBC of the records that SCB and KBC produced in this case in order to unmask their proposed allegations in the *Freeman II* SAC. (*Freeman II*, ECF No. 120 at 1.) Incredibly, in seeking leave to pursue that discovery from Judge Chen, the *Freeman II* plaintiffs argued that Plaintiffs have not violated the Protective Order by using the *Bartlett* discovery outside of *Bartlett* because they did not publicly

disclose the specific contents of the protected documents. (*See id.* at 1 n.1; *Freeman II*, ECF No. 124 at 1 ("Self-evidently, Plaintiffs have not violated any court orders since they have not disclosed any information produced under the orders to any unauthorized parties."))

On February 5, 2024, Judge Chen held a conference to consider the *Freeman II* plaintiffs' request for discovery, and thereafter permitted the *Freeman II* plaintiffs to provisionally serve a discovery request on SCB and set a briefing schedule for SCB to oppose that request. (*Freeman II*, Minute Entry dated Feb. 6, 2024.) In addition, Judge Chen invited SCB to file a letter with this Court seeking confirmation that Plaintiffs' use of the *Bartlett* Confidential Information to formulate complaint allegations and discovery requests in *Freeman II* constitutes a prohibited "use" under the Protective Order. (*E.g.*, *Freeman II*, Feb. 5, 2024 Conference Tr. at 24:10–21.) In so doing, Judge Chen observed that "if Judge Amon and Merkl rule [in *Bartlett*] that even making a request to get [the *Bartlett* discovery] again in another case constitutes use that's prohibited by the [*Bartlett*] protective order, I think that will pretty much foreclose any further argument before me because I don't think I have the ability to go around that way." (*Id.* at 69:20–25.) SCB has opposed discovery in *Freeman II* (*see Freeman II*, SCB's Letter dated Feb. 29, 2024, attached hereto as **Exhibit A**), and now seeks this Court's confirmation of the proper scope of the Protective Order.

Contrary to plaintiffs' arguments before Judge Chen, the Protective Order here precludes use of "Discovery Material" and "Confidential Information" for any purpose other than conducting the *Bartlett* litigation. In particular, Section C of the Protective Order states clearly that "[a]ll Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation)." (*Bartlett*, ECF No. 273 at 3.) The "Litigation" is defined as "the above-captioned case"—i.e., *Bartlett*. (*Id.* at 1.) With regard to Confidential Information, which SCB and KBC properly designated records they produced in this case, the Protective Order further provides that (i) "[t]he Receiving Party of any Protected Information under this Protective Order shall maintain such material in a reasonably secure location and manner that ensures access is limited to the persons authorized under this Protective Order"; (ii) "Protected Information shall not be copied, reproduced, summarized, extracted, or abstracted by the Receiving Party except to the extent doing so is reasonably necessary for conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation), or the enforcement of insurance rights with respect to this Litigation"; and (iii) only specific categories of witnesses and other participants in the Litigation are allowed to access such material, and even then they "are only authorized to receive Protected Information if such Protected Information is to be used in good faith in relation to this case, such as in preparation for, during the course of, or in review of deposition or (subject to the provisions of Section D(5)) hearing or trial testimony, and for no other purpose." (*Id.* at 8–9.)[1]

---

[1] As Judge Merkl noted during the September 27, 2023 hearing on Plaintiffs' request to use SCB's materials: "With regard to the language of the order, as has been discussed at length, the protective order in this case is very clear. It states that—in paragraph C that all discovery materials,

Accordingly, and contrary to the assertions of Plaintiffs' counsel in *Freeman II* (*see, e.g.*, *Freeman II*, ECF No. 120 at 1 n.1; ECF No. 124 at 1), the Protective Order does not permit *any* use of SCB's or KBC's Confidential Information by a receiving party (*i.e.*, Plaintiffs) for any purpose other than this Litigation, unless the Court modifies the Protective Order or SCB consents. (*E.g.*, *Bartlett*, ECF No. 273 at 3 ("[A] Party may move before the Court *in this Litigation* [i.e., *Bartlett*] by letter motion to request permission to use Discovery Material in another case or matter." (emphasis added)); *Bartlett*, ECF No. 368 at 5, 7 ("The Magistrate Judge's conclusion that Plaintiffs are seeking a modification of the PO was not clearly erroneous or contrary to law. * * * Disclosure [of the documents] here is more appropriately viewed as a modification to the PO.").) Neither condition was met here; the Court did not modify the Protective Order, and SCB has not consented.

Even so, the *Freeman II* plaintiffs have repeatedly used the *Bartlett* Confidential Information in *Freeman II*, and continue to do so, in violation of the clear terms of the Protective Order and this Court's subsequent Orders. Specifically, the *Freeman II* plaintiffs mined tens of thousands of confidential banking records that SCB and KBC produced as non-parties in this case for information to help them formulate amended complaint allegations in *Freeman II*. They then purported to include that Confidential Information in redacted form in the *Freeman II* SAC, teasing the *Freeman II* court with 164 entirely blacked-out paragraphs of new allegations without actually filing them under seal (or at all). They mischaracterized these redacted allegations as "provid[ing] additional evidence that some of the Defendants knowingly provided substantial assistance to the IRGC and Hezbollah" and asserted that the records from which those allegations were sourced "will presumably be subject to discovery in this case" (*Freeman II*, ECF No. 117, at 3 n.5) in a transparent effort to pique the court's curiosity about what lay beneath, and to create the false impression that those materials were already properly included in, or inevitably should be added to bolster, their operative pleading. They then further used those redacted allegations as an excuse to seek discovery that they represented to Judge Chen would be limited to only those materials reflected in the redacted allegations, but which in reality sought "[a]ll Transactional Records" relating to 361 individuals and 321 entities over a period of 19 years, regardless of whether or not those individuals or entities have anything to do with the allegations in the *Freeman II* SAC.

And, to make matters worse, this week, Plaintiffs' counsel filed a motion to vacate the final judgment of dismissal in *Freeman I* on behalf of another set of plaintiffs—several hundred of whom have had no involvement in *Bartlett*—and purported to describe the substance of the *Bartlett*-derived and redacted *Freeman II* SAC allegations. (*See Freeman I*, Pls.' Mem. of Law in

---

or any copies, summaries or abstracts thereof shall be *used solely for the purpose of conducting this litigation,* including for purposes of mediating or otherwise attempting to settle this litigation; however, a party may move *before this Court in this litigation* by letter motion to request permission to use discovery material in another case or matter." (*Bartlett*, Sept. 27, 2023 Hr'g Tr. 57:22–58:9, ECF No. 346 (emphasis added).)

Supp. of Their Mot. to Vacate J. for Purpose of Amending Their Compl. at 23.)[2] There, the *Freeman I* plaintiffs stated: "The operative *Freeman II* complaint also includes dozens of specific examples (most of which are currently in redacted form) of transactions Defendants knowingly performed for IRGC- and/or Hezbollah-affiliated persons or entities, which the Court is currently deciding whether it can review." (*Id.*) Leaving aside the fact that this grossly mischaracterizes the redacted allegations in the *Freeman II* SAC and the discovery materials on which they are supposedly based, counsel's sharing the information subject to the Protective Order in this case with the *Freeman I* Plaintiffs, who then purported to describe that very information (albeit inaccurately) in their motion to vacate in *Freeman I,* is a separate and clear violation of the use restrictions in the Protective Order.[3]

Accordingly, SCB respectfully requests that the Court issue an order (i) confirming that Plaintiffs' use of SCB's and KBC's Confidential Information for any purpose in *Freeman II* (or *Freeman I*, or any other case), including formulating allegations in an amended complaint—redacted or otherwise—or justifying a discovery request, is not permitted by the Protective Order, and (ii) admonishing Plaintiffs' counsel against any further misuse of SCB's and KBC's Confidential Information.[4]

                                                             Respectfully,

                                                             */s/ Andrew J. Finn*
                                                             Andrew J. Finn

(Exhibit)

cc:     Honorable Judge Pamela K. Chen

        All counsel of record (via ECF)

---

[2] Pursuant to Judge Chen's Local Rules, Plaintiffs served a copy of the *Freeman I* motion to vacate on SCB but have not yet filed it on the docket in *Freeman I*, so no docket citation is currently available.

[3] We note that Plaintiffs' counsel represents other plaintiffs in many different, currently pending Anti-Terrorism Act cases, and we do not know the extent to which counsel has used discovery in this case in the course of litigating those other cases. A confirming order from this Court is therefore critical to ensure that the Protective Order, and Orders of the Court, are being complied with.

[4] Although SCB does not seek sanctions for Plaintiffs' counsel's failure to comply with this Court's September 27, 2023 and December 21, 2023 Orders, the Court would be well within its discretion to hold Plaintiffs' counsel responsible for such a blatant violation of the Court's orders.