# Exhibit B

1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2

3    - - - - - - - - - - - - - -  X

4    KATHALEEN FREEMAN, ET AL.,   :
                                              18-CV-7359(PKC)
5              Plaintiffs,         :

6
               -against-          :
7                                             United States Courthouse
                                              Brooklyn, New York
8    HSBC HOLDINGS, PLC, ET AL.,
                                              February 5, 2024
9              Defendant.         :          2:30 p.m.

10   - - - - - - - - - - - - - -  X

11
        TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE VIA VIDEO
12              BEFORE THE HONORABLE PAMELA K. CHEN
                UNITED STATES CHIEF DISTRICT JUDGE
13

14            A P P E A R A N C E S:

15
     For Plaintiffs:         OSEN LLC
16                           190 Moore Street, Suite 272
                             Hackensack, NJ 07601
17
                             BY: MICHAEL J. RADINE, ESQ.
18                               GARY M. OSEN, ESQ.
                                 ARI UNGAR, ESQ.
19                               AARON SCHLANGER, ESQ.
                                 DINA GIELCHINSKY, ESQ.
20

21                           BURNS CHAREST LLP
                             900 Jackson Street, Suite 500
22                           Dallas, TX 75202

23                           BY:  DANIEL H. CHAREST, ESQ.

24

25

                    A P P E A R A N C E S:  (CONTINUED)

For Defendants:          SULLIVAN & CROMWELL LLP
                         125 Broad St
                         New York, NY 10004

                         BY: ANDREW FINN, ESQ.
                             MICHAEL T. TOMAINO, JR., ESQ.


                         CLEARY GOTTLIEB STEEN & HAMILTON LLP
                         One Liberty Plaza
                         New York, NY 10006

              `          BY:  CARMINE D. BOCCUZZI, ESQ.


                         MAYER BROWN LLP
                         1221 Avenue of the Americas
                         New York, NY 10020

                         BY:  ROBERT W. HAMBURG, ESQ.
                              MARK G. HANCHET, ESQ.
                              MARC R. COHEN, ESQ.


                         CLIFFORD CHANCE US LLP
                         31 West 52 Street
                         New York, NY 10019

                         BY:  ROBERT G. HOUCK, ESQ.


Court Reporter:          Andronikh M. Barna
                         225 Cadman Plaza East
                         Brooklyn, New York
                         (718) 613-2178


Proceedings recorded by mechanical stenography, transcript
produced by computer-aided transcription.

1          THE COURTROOM DEPUTY:  Civil cause for status

2   conference.  Docket 18-CV-7359, *Freeman, et al. v. HSBC*

3   *Holdings PLC, et al.*

4          Before asking the parties to state their appearance,

5   I would like to note the following:

6          Persons granted remote access to proceedings are

7   reminded of the general prohibition against photographing,

8   recording, and rebroadcasting of court proceedings.  Violation

9   of these prohibitions may result in sanctions, including

10  removal of court-issued media credentials, restricted entry to

11  future hearings, denial of entry to future hearings, or any

12  other sanctions deemed necessary by the Court.

13         Will lead counsel for each party state their

14  appearance, starting with plaintiffs.

15         MR. RADINE:  Good afternoon.

16         This is Michael Radine from Osen LLC on behalf of

17  plaintiffs in the *Freeman* actions.

18         And I am joined today by Gary Osen, Ari Ungar, Aaron

19  Schlanger, Dina Gielchinsky.

20         THE COURT:  Okay.  Good afternoon to all of you.

21         And then next we have Standard Chartered Bank?

22         MR. FINN:  Good afternoon, Your Honor.

23         Andrew Finn from Sullivan & Cromwell on behalf of

24  Standard Chartered Bank.

25         THE COURT:  All right.

1          And then who else do we have here?  I don't know,

2   actually, all the defendants who are present.

3          MR. BOCCUZZI:  Good afternoon, Your Honor.

4          Carmine Boccuzzi, Cleary Gottlieb, for Defendant

5   Commerzbank.

6          THE COURT:  All right.

7          MR. TOMAINO:  Good afternoon, Your Honor.

8          This is Michael Tomaino with Sullivan and Cromwell

9   for Defendant Barclays.

10         THE COURT:  Good afternoon.

11         MR. HAMBURG:  Good afternoon, Your Honor.

12         Robert Hamburg of Mayer Brown for the HSBC

13  defendants, along with Mark Hanchet, also of Mayer Brown.

14         THE COURT:  And, Mr. Hamburg, you are representing?

15  I apologize.

16         MR. HAMBURG:  Sorry.  We represent the HSBC

17  defendants.

18         THE COURT:  Okay.  All right.

19         And Mr. Tomaino, or Tomaino -- I apologize if I'm

20  mispronouncing it -- you represent?

21         MR. TOMAINO:  Defendant Barclays.

22         THE COURT:  Thank you.  Okay.

23         MR. COHEN:  Good afternoon, Your Honor.

24         Marc Cohen for the Credit Suisse defendants.

25         THE COURT:  Okay.

1      MR. HOUCK:  Good afternoon, Your Honor.

2      Robert Houck for Royal Bank of Scotland defendants.

3      THE COURT:  Anyone else?

4      MR. CHAREST:  Your Honor, Daniel Charest here on

5 behalf of the *Stephens* plaintiffs.

6      THE COURT:  All right.  Yes, I remember you,

7 Mr. Charest.

8      It's a bit like a very expanded Hollywood Squares.

9 It's kind of hard to find everybody.

10      All right.  So we're here so I could talk through

11 the various motions that are pending with everyone.  It seems

12 like a more efficient way to deal with the issues that are

13 swirling about rather than through written submissions.

14      As I see it, there are essentially three issues over

15 motions that I want to address and then I shall open the floor

16 to any other issues that the parties want to discuss.

17      The first one is this request by plaintiffs to

18 constructively subpoena themselves.

19      The second issue has to do with whether to stay

20 discovery.  And with respect to that issue, I do want to make

21 one observation, although ultimately I think it might be

22 irrelevant or moot.  But as far as I see from the docket, the

23 stay, in effect, had ended back in May of last year because

24 the last stay I had issued on discovery was based on a

25 decision being issued in the *Twitter* case and I think that

1    happened back in May.  So in effect, albeit without any court

2    order or anything, it seemed to me that, had any party wanted

3    to proceed with discovery, they could have as of May 2023.

4          But as I said a moment ago, I think that might be

5    moot, given that now we have a motion to dismiss pending and

6    so discovery probably will have to be stayed pending some

7    resolution of that and also pending what is this discovery

8    issue about the constructive subpoena or whether or not there

9    might be some other way in which discovery should happen with

10   respect to the information that plaintiffs want to get that

11   were produced in the *Bartlett* case.

12         So let me at least give you my preliminary thoughts

13   on all these issues and then I will open the floor and have

14   more discussion.  And we will probably start with the

15   plaintiff since obviously they are the moving party here, or

16   they're obviously the initiator of the lawsuit.

17         I will say this, Mr. Radine and Osen and company.  I

18   am not going to grant your request to file a -- or to

19   constructively subpoena yourself because, you know, there's

20   really no such thing.  I do agree with defendants on that.

21         And secondly, to me it would end up being an end run

22   around the protective order that exists at Barclays.  I mean,

23   if parties who are subject to a protective order in one case

24   get certain information pursuant to the protective order that

25   bars them from using it outside of that case, then go and

1    constructively subpoena those in another case, it seems to me

2    you've avoided the intended restrictions in the other case

3    that Judge Amon is presiding over along with Magistrate Judge

4    Merkl.

5              So I think that that would be wholly inappropriate,

6    in part because I don't think there is such a vehicle under

7    the rules.  And secondly, here it would allow you to do

8    something that the *Bartlett* judges have not approved on, which

9    is to, in effect, get materials that are subject to a

10   protective order there.

11             Rather, I think what you can do though is subpoena

12   the same records from the same parties, Standard Bank, which

13   is obviously a defendant here, and then KCB, a nondefendant or

14   third party here.  You could subpoena them and then we would

15   deal, as we would in any other case, with any discovery

16   disputes that arise out of those subpoenas.

17             And I think the other reason this is appropriate is

18   because not knowing anything about the *Bartlett* case other

19   than that there are similar allegations with many of the same

20   plaintiffs, I don't know if there are any grounds -- and I'm

21   going to ask Mr. Finn this question -- if there are any

22   grounds to move to quash such a subpoena in this case or any

23   reason to think that that discovery, the same discovery that

24   occurred in *Bartlett*, would be inappropriate or should be

25   precluded in this case.  I can anticipate in my own mind some

1   arguments, some of which have already been suggested.  But I
2   also don't know whether the scope of any production of
3   discovery would be exactly the same.
4           So I think to avoid, you know, any question that
5   somehow you're running afoul of the *Bartlett* protective order
6   and I think to avoid having to go back to Judge Amon and to
7   Judge Merkl on this issue about whether they would lift that
8   protective order, because the last ruling was really based on
9   the fact that discovery had not restarted here, I think rather
10  than get caught in that loop again, we should just deal with
11  it, in this case, with a straightforward discovery request
12  subpoena for one party or discovery request on the defendant
13  party for that same information.
14          So again, this is all by way of preliminary remarks.
15  So let me go then to what that leads me to with respect to the
16  other outstanding issues.
17          In terms of the stay of discovery, as I said before,
18  I think it was, in effect, lifted before.  But I do think
19  there is a need for there to be a stay of discovery now if --
20  and this is assuming there is other discovery besides the
21  discovery that the plaintiffs want from SCB and KCB.  And I
22  realize that there is an argument that -- well, I don't know,
23  that there may be some argument on allowing limited discovery
24  just to the plaintiffs for this purpose.  But I think because
25  there is a pending motion to dismiss because there has been an

amended complaint filed with redactions -- and I know

plaintiffs claim that what is not redacted should be enough to

survive a motion -- practically speaking, I don't want to do

two motions to dismiss if that's where we end up.  I would

like to resolve this discovery conundrum first in the manner

that I suggested, which is to simply have the discovery and

subpoena request made in this case of the relevant parties and

then any discovery disputes to be resolved by me in this case

with respect to those documents.  And then once we see where

that lands, we'll know what the contours of this amended

complaint look like, whether they are solely what is not

redacted or whether or not the redactions now will be allowed

to be part of the amended complaint for purposes of briefing

the motion to dismiss.  And to me, that is the most orderly

and efficient way to proceed.

          And so, that answers then the third question of the

motion to dismiss, which obviously can be filed at some point

and likely should be filed based on what I know about the case

already.  And I say "should," meaning that the defendants

should have an opportunity to brief that.  But I think -- I

mean, I know I don't want to have to deal with potentially two

rounds of motion briefing on the dismissal issue.

          So, with that somewhat likely preamble, let me turn

to Mr. Radine for the plaintiffs.

          MR. RADINE:  Okay.  Thank you, Your Honor.  This is

1   Mike Radine for plaintiffs.

2           I think what Your Honor described makes sense.

3           Just by way of very brief background, our conception

4   of subpoenaing ourselves was intended to create essentially a

5   burdenless discovery device since we were in possession of the

6   records already.  We're not opposed to requesting, making

7   requests on Standard Chartered and on KBC.  At this stage,

8   we're not seeking anything beyond what essentially underlies

9   the redacted allegations in the complaint.  We would wait for

10  post motion to dismiss discovery for the, you know, more

11  large-scale discovery.

12          KBC has consented to our use of its records in this

13  case, but I understand under what Your Honor was describing;

14  Standard Chartered would make its objections and the Court

15  could review those.  That makes sense.  And I think that's in

16  line with Magistrate Judge Merkl's order, who made her order

17  without prejudice, pending a discovery order in this case.  So

18  I think that dovetails there.

19          So I think on a relatively short schedule we can

20  prepare the requests since, again, it doesn't go beyond the

21  limits of what's in the complaint.  And if Your Honor were to

22  grant, assuming Standard Chartered objects, which I think it's

23  indicated it would, that the discovery is appropriate, all

24  we'd be seeking now is to file the unredacted version of the

25  complaint under seal.  It is certainly fine with us.  And then

1    that's what the Court would review for the anticipated motions

2    to dismiss.

3              THE COURT:  Okay.  All right.  That sounds fine.

4              The one thing I will add is that even though KCB has

5    consented to your use of the records, which obviously could be

6    a factor in *Bartlett*, the Court also really would have to

7    decide whether or not the protective order either should be

8    lifted or that an exception should be made.  So the consent,

9    while certainly something that I think that goes a long way to

10   having the protective order modified in some ways, doesn't

11   obviously answer the question in full, which is why I think we

12   should just deal with a whole different line of discovery in

13   this case rather than going back to the *Bartlett* well, if you

14   will.

15             So let me hear first from Standard Chartered Bank.

16             Is it correct that you intend to object to a

17   motion -- here it would be a discovery request to your client

18   to produce essentially the same records that were produced in

19   *Bartlett?*

20             MR. FINN:  Thank you, Your Honor.

21             Yes, we would absolutely object.

22             I think what might need some clarifying here,

23   Your Honor, to start with is how we got to where we are today

24   in this case.  If Your Honor will recall, and I will say we

25   had to go back all the way to 2015 and before when this, the

predecessor case, *Freeman I,* was before Judge Irizzary and
Judge Pollak and even this case before, I believe, Judge Cogan
at one point. But you know, how this played out is we had the
*Freeman I* case, we had a stay of discovery pending a motion to
dismiss there, which obviously that lasted, you know, quite a
long time given all the briefing that occurred in the transfer
of the case to Your Honor. *Freeman II* and the *Bowman* case
were filed as kind of follow-on cases, same substantive
allegations, an additional set of plaintiffs. And the
discovery had been stayed in that case since the very
beginning. And there was a request back in, I believe, 2019
to lift that stay. The Court denied that as the Court was
just about to issue its dismissal order with respect to
*Freeman I*. And what we did, and I think this was on with
consent of the plaintiffs, is we proceeded to a summary motion
to dismiss process thereafter in *Freeman II* and *Bowman* during
which there was a complete stay of discovery in all other
proceedings.

Standard Chartered and all of the other appearing
defendants were dismissed in 2020 from the *Freeman II* and
*Bowman* cases. So we've never had discovery. And I think the
parties had always been proceeding on the fact that, whether
you call it a discovery stay or just there's no authorized
ability to do discovery, because all of the appearing
defendants had been dismissed from the cases four years ago.

1    And so on that basis, we proceeded.  And as we know, the

2    plaintiffs in *Freeman II* and *Bowman* sought to amend their

3    complaints, never seeking discovery for that purpose to amend

4    their complaints.

5           And then we got into this issue with *Bartlett*

6    whereby the plaintiffs tried to do, as I think Your Honor

7    correctly noted, an end run around the fact that otherwise you

8    wouldn't get discovery in order to amend a complaint,

9    particularly after a complaint has long been dismissed against

10   the party.

11          So the only reason we're really talking about these,

12   you know, redactions and seeking materials from

13   Standard Chartered is, in fact, the plaintiffs in this case

14   went ahead, notwithstanding rulings from Judge Merkl and later

15   Judge Amon with respect to the permitted use of materials that

16   Standard Chartered produced, and went ahead and used that

17   material.  And they now say it would be helpful to their case

18   here and, you know, they've put it in a redacted form in the

19   complaints -- the complaint that they filed.

20          So we think that it would be entirely improper to

21   engage in discovery, putting aside the fact that we're only

22   here because of this workup procedure whereby the plaintiffs,

23   in our view, misused material in *Bartlett* before they had

24   permission to do so and, in fact, later that permission was

25   expressly denied.

1          And then, you know, putting the background law at
2    issue here in terms of -- let's just put aside whether we had
3    this *Bartlett* dispute which lasted, you know, lengthy
4    proceedings before Judge Merkl and Judge Amon.  Putting that
5    aside.  As we noted in our letter to the Court, you know,
6    Courts in this circuit have consistently held that discovery
7    requests that are lodged for the purposes of extra information
8    in order to try to use an amended complaint is not proper.
9    And the Second Circuit, as we noted in the *Mainstream Legal*
10   *Services* case, has said a plaintiff who has failed to
11   adequately state a claim is not entitled to discovery.  And
12   here, we have a very clear example because it's not just that
13   we're sort of sitting with a complaint against us in this case
14   and therefore there might have been some expectation of
15   potentially discovery.  In this case, *Freeman II* and *Bowman*,
16   now I guess just *Freeman II* based on the consolidation order,
17   we never had discovery because the Court ruled years ago that
18   the plaintiffs had not stated a plausible claim.
19          And so we think in putting aside the procedural
20   intricacies of how we got here, we think if this were just any
21   other case, before the plaintiff can engage in any other
22   discovery in order to bolster an amended complaint there would
23   need to be really extraordinary circumstances, circumstances
24   that we've found where Courts allowed that in something where
25   there's a jurisdictional question and the Court may say:  I

need to resolve this factual issue on the pleadings and I will

allow some discovery on the jurisdictional issues.

But that's not what we have here.  As the plaintiffs

stated in their letter, their pleading doesn't, I think their

quote was "depend" on these redacted allegations and that

these are -- you know, I guess they think is just additive.

So you know we think it's extremely unfair now to

engage in discovery and improper under how normal procedures

of the Federal Rules of Civil Procedure are supposed to

operate to engage in any discovery.

And I think added to that is the fact that

Standard Chartered Bank, and I think speaking for some of the

other appearing defendants at least, would like to move this

proceeding along.  You know, we have been dismissed.  We

thought we were dismissed four years ago because of the

Court's order, and obviously the Court has allowed the

plaintiff to amend.  But we think it's entirely improper and

will only delay motion practice on the threshold pleading

requirements of an aiding-and-abetting claim, particularly in

light of the Supreme Court's ruling in *Twitter* to engage in

what would essentially be, you know, extraordinary party

discovery of Standard Chartered Bank all because, in our view,

the plaintiffs here respectfully misused material they

obtained in the *Bartlett* case.

Sorry, Your Honor, I think you're on mute.

1      THE COURT:  Sorry.  I was trying to prevent some of

2  these computer alerts from disturbing your statements.

3      How did they misuse the information, in your mind?

4      Because I am not allowing them, obviously, to make

5  allegations based on it.

6      But are you saying that even if they were trying to

7  prop up or sort of amend using it based on their knowledge of

8  it and then asking for it to be produced in discovery, is that

9  misuse in your view?

10      MR. FINN:  Yes, Your Honor, we think it is.

11      And, you know, what Judge Merkl found in terms of

12  interpreting the protective order is -- in *Bartlett* is, what

13  we viewed it as saying, which is that material, discovery

14  material in that case, as she said I think on September 27,

15  shall be used solely for purposes of conducting that

16  litigation, the *Bartlett* litigation.

17      And so what the plaintiffs here did is they took

18  what was essentially tens of thousands of confidential banking

19  records that Standard Chartered produced as a third party in

20  that case, mined them for, you know, whatever they thought

21  might be useful for this case and then proceeded to put

22  together allegations and then redacted them in a complaint.

23  And now they say they're useful, those allegations are useful

24  to their amended complaint and therefore the Court should

25  obviously initially engage in this, what we think is also an

1   improper constructive subpoena procedure or otherwise, since

2   they already have used it and mined this data and think that

3   they have something useful there that might be relevant to

4   their complaint, that the Court should then go ahead and

5   basically bless that, you know, what they've already done and

6   allow them to, you know, engage in a document -- ask us, as a

7   document request, to produce those tens of thousands, you

8   know, banking transaction data that we produced in *Bartlett*.

9           So, you know, in that way they've already, in our

10  view, you know, misused the material.  They really -- I mean,

11  Judge Merkl ruled in September that they could not use this

12  material for this case under the *Bartlett* protective order.

13          Now, obviously they appealed that to Judge Amon, but

14  apparently they went ahead and did it because that's what's in

15  the forty-some pages of redacted allegations in the amended

16  complaint here.

17          THE COURT:  Well, hang on.  Two things though.  I

18  don't mean to quibble too much with you about what might seem

19  like a semantic issue, but I do want to understand.

20          Are you saying that knowing that this information

21  exists -- the plaintiffs, that is -- if they had merely said,

22  Your Honor, based on that, we would like to reopen discovery

23  or, you know, lift the stay in discovery in this case, in our

24  case, and issue the discovery requests that I'm proposing they

25  do, would you consider that a misuse of the information?

1    And there, they're just using their knowledge of

2  that information to then further discovery requests.  Putting

3  aside your issues about the timing, the dismissal of the

4  claims, et cetera.  Is that what you mean by even that would

5  be misuse, as opposed to putting it in a complaint?

6    Because I will say this.  The latter I don't

7  consider misuse just yet because it really hasn't come to

8  fruition.  I mean, it's sitting there under, you know,

9  blackout, so that's not using it, in my opinion.

10    But I think what you're saying is that even taking

11  the knowledge of it to try to then obtain it through

12  constructive subpoena or by, if they follow my suggestion, a

13  straightforward discovery request here, would be considered

14  misuse.

15    MR. FINN:  Yes, Your Honor, that's right.

16    THE COURT:  Okay.

17    MR. FINN:  I think it would be different -- what

18  sometimes happens in scenarios of parties seeking amendment of

19  a complaint, as the Court is aware, sometimes they -- after

20  the Court issues a ruling granting a motion to dismiss perhaps

21  without prejudice the plaintiff says, you know, I could -- I

22  know that X, Y, and Z exists, I think this would save my

23  complaint, you know, please grant me some discovery before we

24  proceed.  Now, even that is a high bar under Second Circuit

25  law to get that type of discovery, as we've cited several

1   cases saying that the general rule is that's not permitted.

2          But I do think that given the way that this

3   transpired, you know, it is -- it's one thing to say that, you

4   know, the plaintiffs here understand that Standard Chartered

5   Bank is a large correspondent bank and, you know, may, if they

6   proceed in discovery, seek discovery of Standard Chartered

7   Bank, given we're a defendant here.  But it's another to be

8   able to use already the material that they have obtained in

9   *Bartlett*, mine that material -- again, tens of thousands of

10  transactions -- and come up with allegations for this case,

11  which has already happened here, and then use that as, you

12  know, well, now I can -- I have a basis -- I mean, I'm not

13  sure what the basis, frankly, is, but, you know, now we can

14  somehow -- you know, now we're entitled to party discovery in

15  a case that's been dismissed against Standard Chartered Bank

16  for four years in order to I guess somehow bolster this

17  lengthy complaint.

18          THE COURT:  Right.

19          Well, here's my concern, is that I think the Court

20  in the procedural posture that we're in that you reference

21  really cuts the other way.  Because you seem focused on the

22  fact -- and do I agree with you that it seems anomalous to

23  say, well, somehow we're going to bring back to life claims

24  that have been dismissed by information now that the plaintiff

25  is about to discover.  And I use the word "discover" mostly in

1   the technical sense, but here it's slightly different, I

2   think, than the cases that you cite in that the plaintiffs

3   already possess the information.  So there's really no fishing

4   expedition going on, I mean, in terms of the misuse, for them

5   to take advantage of their knowledge of the existence of the

6   documents.  Fine, I guess your argument is still the same.

7           What I think the Court can posture could have -- the

8   procedural posture could have gone the other way in just I

9   think the timing as between the two cases.  If the dismissal

10  process had moved faster in this case -- and you know better

11  than anyone, it took longer than it should have for the

12  initial motions to be dismissed -- to be decided.  Sorry, the

13  initial motions to be dismiss to be decided.  Because it was

14  with Judge Irizzary and then Judge Pollak issued the report

15  and recommendation not to grant the motion to dismiss, and

16  then the case was reassigned to me and I overruled that.  So

17  it took a longer period of time than usual for us to fully

18  resolve the motion to dismiss, and then, of course, I think

19  that was appealed.  And so it's been a very long trajectory

20  for all of that.

21          If the case had followed a more normal track, it

22  seems to me possible -- well, I guess it could cut the other

23  way.  I guess the information, what I was thinking is -- but

24  putting that aside, I guess the information couldn't have been

25  discovered by plaintiffs from the early stages of this,

revived them and amend based on information they didn't have,
or don't still have, I should say, formally.  It seems to me a
quirk in the timing, just as you say.

           And I think to me it doesn't necessarily go to the
fairness or unfairness.  It just go goes to the unfortunate
set of circumstances from the plaintiff's point of view.  But
what I'm concerned with is the reality, which is that this
information exists, it was provided by your client in another
case to the same lawyers and plaintiffs, and the plaintiffs
claim that it could be, and for them to allege a valid
aiding-and-abetting claim, and a pretty serious one at that.

           And so I am somewhat loathe to simply give it the
back of the hand and say, well, it would be unfair because the
claims were already dismissed once, because I don't think that
plaintiffs have failed to act diligently.  I mean, once they
got the information, they did pursue it.  And the information
does exist.

           So it almost seems as if I should at least look at
it and see if I agree that this information, which was
provided voluntarily by your client at some point, albeit in a
different context but for the same forum as plaintiffs, really
does breathe life back into their claims.

           That's my concern.  It just seems to me justice more
requires me to look at what exists rather than rely or vaunt,
I guess, procedure over substance.

1       MR. CHAREST:  May I be heard?  This is Daniel

2   Charest for the Stephens, Your Honor.

3       THE COURT:  Yes.

4       MR. CHAREST:  I was at the risk of arguing when it

5   seems like we're on the right trajectory.

6       All of those arguments about the case had been

7   dismissed and, you know, the Second Circuit law and all that,

8   first off, no one denies it's fully within the Court's

9   discretion and that is just the fact.

10       Number two, all those arguments don't apply to us

11   anyway.  And we didn't get the dismissal.  We've been stayed

12   the whole time.  You know, and so we come to this without that

13   burden.

14       And we're for sure going to serve, if the Court

15   allows it, discovery on Standard Chartered, just going to

16   track exactly the same things.  So we're going to do it for us

17   anyway.

18       And I think the Court's instinct of why don't you

19   just -- you get me the facts, you make your allegations, and

20   I'll call it straight up, you know, what are we talking about

21   here other than that?

22       You know, that's where I come from.  So, thank you.

23       THE COURT:  No, I appreciate that, Mr. Charest.  And

24   it is a straightforward way of looking at it.  And perhaps

25   over simplistic in certain ways, but I feel like it's grounded

in a certain reality, which is, this material exists and this
claim, it really bolsters their, you know, previously
vulnerable and inadequate aiding-and-abetting claim. I'd like
to see it, you know, at the end of the day. Even though I
understand and I am not being dismissive, Mr. Finn, of your
argument. I may well agree with you that there is a) as a
matter of substance, there's still a reason to dismiss the
claim, or b) that you're right that somehow they shouldn't be
allowed to use it. And so you're not going to be prevented
from making those arguments. But I think in the first
instance, we should let the actual discovery go through in a
straightforward way. And I won't have to rely on the *Bartlett*
protective order per se because it seems to me perhaps a bit
besides the point. And quite honestly, I suspect if I talk to
Judge Merkl and Judge Amon and say, listen, now I've decided
I'm opening discovery and they're going to -- I mean, it seems
almost apples and oranges. I would say I'm opening discovery,
which -- but I'm not going to allow the plaintiffs to
constructively subpoena themselves because I don't think that
that's a real thing. And then it almost seems to me it's
irrelevant whether there is a protective order. I mean, I
guess it's where a come out. Okay, so what, there's a
protective order in another case for the same information.
Unless I buy your argument, Mr. Finn, or unless I guess you
want to present the argument to Judges Merkl and Amon that

even using their knowledge of this information to subpoena the
same records in my case runs afoul of the protective order.  I
mean, I guess that's the one argument that I would have no say
in.  And even if you presented it to me, I would feel like
that's not my call.  So it feels to me as if you -- if you
want to pursue that argument, you should probably, as I'm
thinking about it now more, bring it to Judge Amon and Merkl,
so it seems to me.  I mean, I don't know if that's what you
intend to do or if you want to make that argument before me.
But I think I can forecast for you that I don't think I'm in a
position to decide if that definition of "use" violates the
protective order.  I don't think it would be appropriate for
me to decide it or to preclude the discovery in this case on
that basis.

So it seems to me -- and I hesitate to say it
because I think I'm creating more work for you, but it seems
to me in the first instance you might have to go back to Judge
Merkl and Amon to see if they agree with you that even if
trying to subpoena it separately, even if plaintiffs try to
subpoena the same records from your company separately, that
that would violate the protective order in *Bartlett*.

If I were to hazard a guess, I would probably say
they would say no, but I don't know enough about the case in
that regard.

MR. CHAREST:  And not to pyle on -- this is Daniel

1  Charest for the Stephens plaintiffs again -- that also
2  wouldn't affect our claim, our rights anyway.  We're not party
3  to that protective order.  I know pretty much about as much as
4  the Court does about what the documents say, but I sure as
5  heck want to see them.
6          THE COURT:  But here's the problem, I suspect.  You
7  may be derivatively tainted because you know only about them
8  because I assume *Freeman-Bowman* counsel, Mr. Radine and his
9  colleagues, have told you about them, right?
10          MR. CHAREST:  I mean, nothing more than what's been
11  said in open court.
12          THE COURT:  Right.  Well, yes, but you can't use
13  what you haven't seen.  Because you haven't seen what is
14  behind the redactions, I assume?
15          MR. CHAREST:  Correct.
16          THE COURT:  Okay.
17          Yes, I mean, I think unfortunately, now that you
18  mention it, I think you're in a bit of an odd position.  I
19  think though still there's a ruling about whether or not the
20  mere knowledge and then attempt to use that knowledge of the
21  information violates the protective order, you probably can't
22  use it either because the source is still -- you know, the
23  source of it is still under some protective order.
24          So I don't know, Mr. Finn, if you've played this out
25  in your mind.  Would you go back to Judges Amon -- you're

1    counsel in that case, too, for SCB, right?

2              MR. FINN:  Yes, Your Honor.

3              THE COURT:  Yes.

4         Would you go back to Judge Amon and Merkl and ask

5    them if your theory about misuse is consistent with their

6    understanding of the restrictions of the protective order?

7              MR. FINN:  Well, we would hope to avoid that,

8    Your Honor, frankly.  We did litigate the issue for probably

9    over six months or so.

10             THE COURT:  Yes.

11             MR. FINN:  And got a ruling that they weren't

12   permitted to use this material.

13        Your Honor, I think without sort of revealing what

14   the information is, it really isn't just as straightforward

15   as, you know, the plaintiffs -- the *Freeman* plaintiffs'

16   lawyers got a document and now they want to allege something

17   about that document.  What they obtained -- and the only real

18   course here on this is that they happen to have the same

19   counsel and there's crossover of some of the plaintiffs

20   between here and *Bartlett* is -- is transaction action records

21   of tens of thousands of banking records.  These are

22   spreadsheets with thousands of people's names and entities'

23   names.  They then took that and apparently mined that with I

24   don't know who.  But they went ahead and mined that and then

25   put together allegations for this case.

1    We've actually seen, because we asked the

2  plaintiffs' counsel to show us the stuff that came from

3  Standard Chartered Bank's materials, and, you know, again,

4  without sort of describing it, exactly what it is, it is not a

5  straightforward we just took a document or an e-mail that we

6  obtained here and we want to allege something about it over

7  here in this case.

8    Much more extensive than that, we actually also

9  think that if it were put before the Court it would

10 demonstrate that it, in fact, doesn't change whatsoever the

11 merits of the alleged complaint here.  It actually, in our

12 view, has nothing to do with the -- you know, with the claims

13 at issue here.

14   But putting that aside, I mean, the quirk here is

15 really that we have plaintiffs' lawyers and plaintiffs'

16 counsel that overlap.  And I understand they can't unlearn

17 what they learned in case one, but that's why we have

18 protective orders in place, that you're really not supposed to

19 use it.  And in our view, you know, they've already used it.

20   I also am mindful that we really don't want to

21 burden the Court with additional motion practice on this.  We

22 really would like to get it forward with, get moving with the

23 motion to dismiss.  You know, I haven't -- we haven't

24 conferred with plaintiffs' counsel, but, you know, perhaps

25 there is a way, you know, recognizing the Court is a little

1  bit hamstrung here because the Court actually hasn't seen what

2  the materials are --

3          THE COURT:  Right.

4          MR. FINN:  -- what the proposed allegations are --

5          THE COURT:  Here is what I'm thinking.  And I don't

6  want to cut you off, but, I mean, I would like to streamline

7  this process.  I think we all would.

8          And I appreciate the fact that you went through

9  prolonged litigation in the *Bartlett* case to sort out this

10 protective order issue.  And although the plaintiff was

11 prohibited from using the information, as I understand it was

12 because I think Judge Merkl recommended to Judge Amon and she

13 adopted it, that it was because discovery was stayed here.

14 That's what I understood was the reason.  There wasn't a

15 determination about the protective order itself and what it

16 restricted and why and whether or not that would preclude any

17 use of it, however you want to define the word "use," but in

18 particular to use it in some way to further this litigation.

19         I think maybe what makes the most sense is to have

20 the plaintiffs, you know, subpoena KCB.

21         Also, issue a discovery request to your client,

22 Mr. Finn.

23         At the same time, I think you should write a letter

24 to Judge Amon or Merkl, whoever you think is appropriate, but

25 to say this issue has sort of come to light again because I am

1   allowing plaintiffs to conduct additional discover -- or to

2   reopen discovery for a limited purpose or un-stay discovery

3   for a limited purpose.

4           And I realize it's not the usual setting as in

5   jurisdictional discovery, but it's necessary, in my mind, to

6   most efficiently deal with the pending motions to dismiss, or

7   at least satisfy my curiosity.  As you say, I'm in the dark

8   here about this information.

9           It may well be much ado about nothing and I might

10  agree with you that it doesn't really advance the plaintiffs'

11  case in a way to get it over the hurdle of stating a claim,

12  but I don't like knowing that there is this information out

13  there that could well be helpful, or at least plaintiffs

14  believe it's helpful.  And it is there, it has been produced,

15  it's not speculative, and it even physically exists in

16  plaintiffs' possession.

17          I will then confer, if you are willing to send that

18  letter, with Judge Merkl and Amon about how most efficiently

19  to deal with this, and maybe in some kind of crossover way so

20  that we expedite the decision.  Because I would be willing to

21  explain to them that here's my reasoning on why I think the

22  plaintiffs should be able to conduct the discovery, sort of

23  redo the discovery but here, but I can't decide the protective

24  order issue.  But if for some reason they think that the

25  protective order was meant to prevent this very kind of use,

1    i.e., taking advantage of the knowledge of it to subpoena it

2    in another case, then they can make that decision.

3         But I think they could make it -- I would ask them

4    to make it quickly so that we could get this case moving to

5    some resolution, at least at this point.

6         That's what I would propose.

7         And then the motion to dismiss will be deferred

8    until we resolve the discovery issue.  And assuming that I get

9    to see everything that's underneath -- or let's put it this

10   way.  Depending on how that gets resolved, we'll all know

11   which amended complaint is the subject of the motion to

12   dismiss.

13        But I will work to sort of close the time delay and

14   gap that existed before because I certainly appreciate that

15   none of us want to, you know, get into another six-month track

16   for resolving, I think, a relatively straightforward issue.

17   But I'm happy to talk it through with Judges Amon and Merkl so

18   that we can come up with some -- you know, now we can overlap

19   the judges as well as the litigants and the lawyers.

20        Thoughts on that from Mr. Radine or from Mr. Finn or

21   anyone else who wants to jump in here?

22        MR. RADINE:  Yes.  Thanks, Your Honor.  This is

23   Michael Radine for plaintiffs.

24        I think that's fine.  We can issue a request, you

25   know, in ten days.

1          Obviously, our position -- well, as Your Honor said,

2     the PO was matter from Judge Merkl and essentially pending

3     this Court issuing a discovery order.  I don't think there is

4     a suggestion that the PO was meant to effectively immunize the

5     records from all litigations everywhere, other discovery

6     processes, nor do I think the PO is meant to compel us to

7     pretend, in writing a document request, that we don't know

8     what the documents are.

9          I think that's efficient for everyone, including for

10    Standard Chartered.  We had hoped to, you know, issue a

11    tailored document request that, again, just goes to the

12    allegations in the complaint without having to sort of go

13    through the farce of pretending we don't know what those

14    records are.

15         THE COURT:  I would suggest that Mr. Charest join in

16    that, I guess, because it's going to rise or fall, I think,

17    together.  If the protective order prevents you from doing it,

18    then it will prevent Mr. Charest as well, and he might as well

19    at least get his name in there for his clients.

20         It seems to me, Mr. Charest.  I mean, you may

21    disagree with me, but it seems like you can't use the

22    information if the plaintiffs can't, under a ruling in

23    *Bartlett*.

24         MR. CHAREST:  Well, I mean, respectfully, I'm not

25    sure I do agree with that, Your Honor.  I'm not sure it's a

1   fruit of the poisonous tree sort of ruling in civil

2   litigation.  That's, you know, I think for -- you know, again,

3   you understand my point there.  I don't know the answer to

4   that.  I haven't really contemplated it.  But I wouldn't

5   necessarily jump into that.

6           I would say this.  If the Court tells the reason why

7   the other judges denied the motion was because discovery was

8   stayed, that goes away.  I think it all goes away.  And if the

9   Court indicates that, yeah, I'm willing to reopen discovery

10  for this issue, let's -- you know, let's just get moving.

11          I mean, maybe -- you know, like what we're talking

12  about is how to unravel this knot that doesn't even

13  necessarily exist.  You know, we know where the documents are,

14  we can cut and paste whatever subpoena was issued in the other

15  case.  And what I would do is, I would set a Request Number 1,

16  quote/end quote, what they asked for, Request Number 2, the

17  production that you made on this such and such a day, period.

18  That was it.

19          And then whatever we get, they ought to be the exact

20  same, I would think.  There's no real burden because they've

21  already produced it once, you know, it's laying around in a

22  PSD file somewhere.  And then we can update our complaint as

23  we planned to do in the first place.  And then we will get to

24  business.

25          Again, I do things a lot more pragmatically, I

1  guess, than most people.  But to me, this is as simple as the

2  Court saying you can have discovery on this issue, we issue

3  discovery, they respond, we amend, and then we rule.

4        THE COURT:  You can afford to be a pragmatist in

5  this situation though, you're the plaintiff.  So I think the

6  defendants' viewpoints is a little different.  I feel like for

7  them it's more like, maybe like Sisyphus or the

8  Groundhog's Day or something, that they keep rolling the same

9  boulder up the hill and, you know, somehow it keeps crashing

10  down on them for reasons unforeseen.  But at any rate.

11        Mr. Finn, I'm most interested to see if -- I mean,

12  you don't necessarily have to agree, but I think if I end up

13  lifting the discovery stay for this limited purpose to allow

14  plaintiffs in the *Freeman* cases and *Stephens* to issue this

15  discovery request and the subpoena request, you will obviously

16  move to quash, I assume, here.  But I have to say that if your

17  argument is going to be that it violates the *Bartlett* -- or

18  part of your argument is going to be that it violates the

19  *Bartlett* protective order, you need to also, as I say, run

20  that up the flagpole in the *Bartlett* case.  And I will do

21  whatever I can sort of behind the scenes to work with those

22  judges to resolve that in tandem so that we could move this

23  along.

24        MR. FINN:  Your Honor, if I may?

25        I'm not really sure why, other than the fact that

1  the *Stephens* case happens to be, you know, sort of on the same

2  track, as why the *Stephens* plaintiffs now have entitlement to

3  discovery because the *Freeman II* plaintiffs' lawyers have put

4  before Your Honor redactions to sort of entice the Court to

5  look into this, what those allegations are.

6        You know, fundamentally we're sort of opening this

7  Pandora's box of discovery which is not normally allowed.

8  There's been no 26(f) conference.  We've been dismissed from

9  these cases for years.  Not the *Stephens* case, I recognize

10 that.  But we would have moved to dismiss earlier had the case

11 not been stayed due to, you know, all of the other related

12 cases.  So, you know, on one, I think opening the door there

13 is not appropriate.

14       You know, I do think in light of the Court's, you

15 know, indications today that perhaps we can go back and think

16 about an efficient way to do this, you know, perhaps it's

17 before Judge Merkl and Amon.  I will say that, you know, the

18 concept that the ruling there was based on the fact that

19 discovery had not started here, you know, that was one factor.

20 But the main factor was -- you know, it's actually in the

21 transcript at page 57 to 58 of Judge Merkl's conference in

22 which she made her ruling.  That's at ECF No. 346 in the

23 *Bartlett* case.  She said -- you know, because there was

24 actually a dispute there about whether the protective order

25 even applied to this material in terms of limiting the use of

1   the material for other cases.

2          And she said, quote:  With regard to the language of

3   the order -- referring to the protective order -- as it had

4   been discussed at length, the protective order in this case is

5   very clear.  It states that, in Paragraph C, that all

6   discovery materials or any copies, summaries, extracts thereof

7   shall be used solely for purposes of conducting this

8   litigation, including for purposes of mediating or otherwise

9   attempting to settle this litigation, et cetera, et cetera.

10          The Court went on to find that Standard Chartered

11  relied on that expressly, that limitation in producing the

12  documents there, recognizing that it was the same plaintiffs'

13  counsel and some of the same plaintiffs in this dismissed

14  case.  Obviously, we didn't think it was appropriate for, you

15  know, plaintiffs in one case to try to use discovery in case

16  two to try to revive case one.  So that was very fundamental

17  to those rulings.

18          But, you know, putting that aside, perhaps we can

19  come up with, you know, an efficient way.  I would suggest

20  that we do it in the context of the *Freeman II* cases, given

21  that that's the parties' and the plaintiffs' counsel who has,

22  you know, access, crossover access to both.  And then

23  depending on the Court's, you know, decision with respect to

24  that and if, you know, we do have to involve Judge Merkl and

25  Judge Amon, you know, hopefully -- I need to think about a

1    little bit the procedure here and whether there is a way to

2    avoid that, frankly, of maybe -- you know, let me think about

3    that, if you will.  I mean, mainly to have Your Honor perhaps,

4    you know, take a look at the allegations, you know, in some

5    sort of, you know, in-camera way in order to, you know,

6    consider whether -- you know, whether this is actually

7    something that is appropriate to do or not.  You know, that

8    might be one way to streamline this.

9            But, you know, I think that we're happy to also

10   pursue the path you suggest, which is write a letter to

11   Judge Merkl, I think would be the first stop to -- you know,

12   to say that we think that this was a misuse and a violation of

13   the protective order to use the material in this way, you

14   know, recognizing that the Court here has indicated that it

15   would allow some limited, you know, request for discovery to

16   Standard Chartered Bank covering, you know, the same

17   materials.

18           I guess the other point I would make is that not all

19   of the materials that were produced in the *Bartlett* case were

20   used, I don't think, although we haven't fully been told which

21   transactions the plaintiffs here used in order to formulate

22   some of the allegations.  You know, there was a lot more

23   materials produced there than I think even the plaintiffs

24   here, at least the *Freeman* plaintiffs, you know, are proposing

25   to use.  So we would ask that any request be limited and

1  targeted to only that so that we're -- you know, we're dealing

2  with that set.

3          You're on mute, Judge.

4          THE COURT:  Yes.  Thank you.

5          In listening to you, I came up with perhaps a way to

6  expedite this that maybe doesn't require you to go back to

7  Judge Amon and Merkl.

8          Because I think as you rightly point out, it seems

9  like the ruling had two bases, one based more on merit, which

10  was the actual language of the protective order, which

11  presumably reflects the intent of it which is to limit these

12  to these materials solely to that case.  Again though, one

13  could quibble, I guess, what is a main use?  But your argument

14  is that, you know, you can't use your knowledge of it to try

15  to then get it in another case.  Basically, you would need to

16  subpoena it somewhere else.  But I could perhaps -- and then

17  the other basis, of course, is that I hadn't opened up

18  discovery yet, so in a way it was a moot issue.  I don't know

19  which was the predominant reason or the answer to the question

20  about how "use" is defined under the protective order.

21          But what I could do instead is simply talk to those

22  judges and say:  Here is what is happening.  I am prepared to

23  allow them to, the plaintiffs here, to make the requests

24  through discovery and subpoena for the same documents.  But

25  obviously I cannot say whether or not you would go against the

1   protective orders, and can you clarify for me whether or not

2   you believe it would?

3          You know, I mean, it's no different really than you

4   making the request, other than I probably could get that

5   answer quicker, and simply say, after conferring with them, I

6   don't find it runs afoul of or I do find it runs afoul of the

7   protective order in *Bartlett*.

8          But I suspect the only problem there is one side or

9   the other is going to want to appeal to Judge Merkl and Amon

10  directly, I think.  So I don't know if there is really a good

11  way to avoid it by having me essentially confer with them and

12  figure out what they think and have them give me their

13  thumbs-up/thumbs-down sort of read on whether or not this

14  would run afoul of the protective order or why.

15         Yes, I mean, I think at the end of the day the

16  better course is really to sort of pursue these simultaneous

17  tracks, in effect, of reopening discovery.  But nothing really

18  will be moving forward until we hear from *Bartlett* and then

19  trying to get a clarified ruling in *Bartlett*, whether or not

20  this particular use, if you will, of the information obtained

21  by the plaintiffs in *Bartlett* violates a protective order.

22  And then I guess otherwise, whether or not the Court would

23  modify it, even if it does, to allow them to obtain the

24  information for another purpose in another case.

25         And then it would probably come back to me and you

1 would still have the argument that it would be unfair for them

2 to get the information after their claims have already been

3 dismissed, is a separate procedural argument.

4        MR. RADINE:  Your Honor, if I may?  It's Michael

5 Radine for plaintiffs.

6        I do think this might be overcomplicating things

7 somewhat too much.  No knowledge is needed of the documents to

8 reissue the subpoena we issued in *Bartlett* to SCB.

9 Mr. Charest could issue it right now and receive presumably

10 the same records.  I just, I feel like this is perhaps

11 over-thinking the situation, given that this Court has the

12 power to order its own discovery.  I don't think the PO was

13 ever intended to prevent that from happening.

14        I'm also, I think, hearing from Mr. Finn that the

15 records will -- first of all, the records, according to him,

16 don't improve our chances.  It seems like this is burdening a

17 lot of different courts when its simple enough to make his

18 relevant arguments either against the subpoena or in a motion

19 to dismiss where I think they ultimately belong.  The question

20 is whether or not they support our claims or not.

21        THE COURT:  Well, I mean, I don't think it's exactly

22 true that you would have -- I mean, this is a strange

23 exercise, but that you would have necessarily issued the same

24 subpoenas or made the same discovery requests.  Because the

25 whole point is, and someone could explain this to me better in

terms of the reality, but you didn't know that these bank
records would be helpful or you didn't know that they existed.

I don't know how they got produced in *Bartlett*.  I
assume that was prompted by a discovery request as well.  But
obviously they were never requested in this case.

And I guess this goes back to Mr. Finn's point,
which is that, you know, it is an unusual circumstance where
defendants bring a claim based on certain allegations, the
case is dismissed and all the claims are dismissed, and then
the plaintiff learns about other information that they think
will help their case and strengthen their claims and then
tries to revive basically the same claims.

So I think the problem, I think -- or what I think
the defense is arguing is that it would be unfair because
without the other discovery, you would not think to subpoena
these, even though you technically could have at any point in
time, but you didn't before this case and these claims got
dismissed.  You know, I think that's why it might be unseemly
or unfair.

Moreover, I guess you have most of the plaintiffs,
except for I think 50, that are involved in the *Bartlett* case,
so they have a cause of action already using the same
information against Standard Bank and other entities.

MR. RADINE:  Not against Standard Chartered, Your
Honor.

1          THE COURT:  Sorry?

2          MR. RADINE:  Sorry.

3          You were right that all the *Freeman II* plaintiffs

4   are in *Bartlett,* but there is no overlap of defendants

5   whatsoever.

6          THE COURT:  Oh, I see.  So Standard Chartered is not

7   a defendant in the *Bartlett* case?

8          MR. RADINE:  Right.  It would essentially be

9   escaping the import of these records.

10          But I do think the subpoena is not a sort of far

11   cry.  Both cases say that a set of banks had provided material

12   support to Hezbollah and the IRGC.  The second amended

13   complaint, in its unredacted fashion, is replete with

14   allegations of SCB's and other banks' support of both parties.

15   It's letting the sort of tail wag the dog if, because of the

16   PO, now I can't know anything about Standard Chartered's

17   alleged support for Hezbollah or the IRGC.

18          MR. FINN:  Your Honor.

19          THE COURT:  Yes, go ahead.

20          MR. FINN:  If I may?

21          Normally a plaintiff does not get discovery to

22   formulate a complaint.  That's the rule in the Second Circuit.

23   That's the rule that always is here.  It's always the

24   situation that the plaintiff doesn't have access to, you know,

25   all of the records of the defendant when having to formulate a

1  complaint.  You know, the only reason we're in this, this, you
2  know, mess is, you know, what plaintiffs did here.  And that's
3  what -- that's putting these redactions in an amended
4  complaint without permission to actually use the material.

5        I will also say that there was a -- we got a
6  subpoena in the *Bartlett* case years ago after the claims here
7  were dismissed and it was negotiated based on, you know,
8  assertions and representations to Standard Chartered Bank from
9  the plaintiffs and counsel there that, you know, here are
10  entities that we think are relevant to our *Bartlett* claims
11  against different banks related to conduct that occurred in
12  different countries, you know, and there was a negotiation
13  around, you know, what entity names we would search for in
14  banking records.

15        And, you know, so to say that they could just fire
16  off a subpoena or a document request, that doesn't happen in
17  normal situations exactly for the reasons as Your Honor
18  started with, in that when somebody normally files a motion to
19  dismiss, you know, particularly in claims like this where the
20  Court has already found and for some subset of the case as the
21  Second Circuit -- or subset of the claim the Second Circuit
22  has already found, you know, there's been no claim stated.

23        So, you know, the procedural, you know, complexity
24  here is -- you know, it's not a simple issue.  You know, we
25  feel that we really have been used in case one, in the other

1    case where we were a third party and, you know, voluntarily

2    produced documents in response to a subpoena and, you know,

3    because we did that subject to a protective order, that now

4    we're being subjected to all of this, you know, additional

5    discovery here in order to add, you know, some allegations in

6    47 pages of a 700-page complaint.  You know, that's why we

7    objected to it at the outset, is that, you know, there wasn't

8    permission to even have this in a complaint.  So I don't

9    really know why we're engaging this.

10           That said, if the Court is inclined to, you know,

11   pursue this, which I understand the Court is in some sense,

12   you know, I think the appropriate way is to start with the

13   *Freeman II* plaintiffs.  You know, I think that we could write

14   a letter to Judge Amon -- in the first instance, Judge

15   Merkl -- you know, teeing the issue up, I think, you know, and

16   then trying to untangle this more.

17           I mean, we thought that we had resolved it with the

18   orders in the other case, which Judge Merkl's order was months

19   before this, this amended complaint was filed.  You know, but

20   plaintiffs want to continue to pursue it, so I guess we'll

21   have to, you know, as you said, go back to Judge Merkl in the

22   first instance.

23           You know, and in the meantime, I can continue to try

24   to think of ways with our client to, you know, make this as

25   efficient as possible because we would like to move forward

with a motion to dismiss.  And we really think that this is
really sort of a frolic and detour on what we should be, you
know, trying to present to the Court a straightforward motion
to dismiss, you know, of an already very lengthy complaint.

THE COURT:  Well, let me ask you.  I mean, in the
vein of practicality, would it make more sense for your client
simply to say their -- you know, powder as they say, and just
produce the documents and then focus on the motion to dismiss,
which you think has merit, and get the case dismissed after
all of this other information is revealed?  Which as you say,
it seems to be just a bunch of bank transactions that they
were willing to produce in the *Bartlett* case.

Am I right -- and you don't have to commit to this,
but am I right that the only reason you don't want to produce
it in this case is because of the fact that the claims have
already been dismissed here?

Or maybe because your client is a defendant here?
That could be another reason, I guess.

MR. FINN:  Yes.  Yes, Your Honor.

I mean, our view is that you don't get discovery to
formulate a complaint.  We've been dismissed long ago and that
should be the end of it.  You don't really have to get to, you
know, the complexities of the protective order in *Bartlett*.
You know, that should be the beginning and end of it.  You
know, I think for us it's doubly troubling to

Standard Chartered that we are being faced with, you know,
additional allegations based on the fact that one set of the
plaintiffs were able to obtain, pursuant to a protective
order, this material in another case.

You know, perhaps what we could do, Your Honor, if
it makes sense, is I can confer with Standard Chartered.  And
I don't know what the view also is of KBC, which is, you know,
a separate issue, which -- but, you know, we can confer and
try to come up with, you know, a proposal here.

And obviously if we go to Judge Merkl, we would
immediately inform the Court so that you are aware of that
correspondence with the Court.

You know, perhaps we could find a solution here
because, you know, without revealing the contents of what the
material is that's actually been redacted, at least the stuff
that we've been shown by plaintiffs' counsel, it really
doesn't move the needle here.

But I think from a perspective of the Federal Rules
of Civil Procedure, this really shouldn't be allowed.  But,
you know, putting that aside, we could -- if Your Honor
prefers, we could, you know, try to find some sort of path
forward to get it resolved further, you know, if the Court is
inclined to do that.

THE COURT:  Okay.

MR. OSEN:  Your Honor?

1          THE COURT:  Yes, go ahead.  Who is that?

2          Oh, Mr. Osen.  Yes, okay.

3          MR. OSEN:  Just so I think we're all clear, the

4    entirety of Mr. Finn's objection comes down, setting the

5    procedural history aside, to having the Court see what is

6    redacted.  The plaintiffs have never argued for disclosing

7    these materials on the open docket.  So if Your Honor's

8    original proposal was adopted and we filed a subpoena --

9    served the subpoena, rather, the defendants motion to quash

10   was denied, the plaintiffs were able to use the material, the

11   way they would, quote/unquote, use the material is simply

12   filing an unredacted version of the complaint under seal.

13          So all of this discussion today is simply about

14   whether the Court gets to see the materials, the allegations

15   that Mr. Finn has expressed with confidence are irrelevant and

16   do not help or support a claim.  Why can't that just be

17   decided on a motion to dismiss with the Court having the

18   benefit of that information, which its then free to dismiss,

19   reject or credit or weigh in whatever way it seems

20   appropriate?

21          All of this months and months of back and forth is

22   all about preventing this Court from seeing a couple of dozen

23   allegations that are under seal -- I should say, apologies,

24   are redacted and wouldn't any of them be under seal.

25          THE COURT:  What do you think of that, Mr. Finn,

1  which is Mr. Osen suggesting I simply -- we sort of reverse

2  the order of things, I simply look at the full, unredacted

3  complaint to see if I think the motion to dismiss would be

4  successful?

5          Although I suspect if I think -- I mean, it's only I

6  guess efficient if I decide yes, the motion to dismiss would

7  succeed still.  Although I don't know how -- obviously, the

8  parties who are briefing it would get to see the unredacted or

9  the -- sorry, the now-redacted allegations, correct, Mr. Osen,

10 under your proposal?

11         MR. OSEN:  Yes.

12         THE COURT:  Okay.

13         MR. OSEN:  Obviously with the exception of a few

14 allegations that tie into KBC for which we would need their

15 consent in this case through some form of lifting of the stay

16 so that we could get their agreement here.  With that

17 exception, which they've already agreed to procedurally set

18 forth here; that is, they have no objection to us using those

19 limited allegations under seal.

20         So the only issue then is, SCB obviously has the

21 benefit.  We've provided them with the SCB-originated

22 allegations that are redacted so they know what they are.

23 They can, of course, consent at any time both to letting other

24 defense counsel see that, those unredacted allegations, and

25 they can, of course, also consent right this moment to letting

1    the Court see them.  So the process could be achieved by the

2    parties entering into a protective order in this case that

3    would include Mr. Charest and his clients, it could be done by

4    consent of SCB, it really doesn't matter.  But all of this is

5    about preventing the Court from seeing these additional

6    specific allegations.

7         And to be clear about one other point.  Mr. Finn is

8    right; the allegations themselves are not in and of themselves

9    inflammatory, they don't involve disclosure of, you know,

10   confidential information about specific clients and so forth.

11   It's not the sort of stuff that's usually even recognized as

12   protected in the ordinary course.  These are ten-plus-year-old

13   bank records of third parties.  So they're under seal because

14   they were produced under a protective order.  But the idea

15   that the Court somehow can't see them, they're simultaneously

16   irrelevant and besides the point, on the one hand, but also

17   it's a prejudice to the defendants for the Court to see them.

18   That doesn't seem to me to make any sense.

19        So at the end of the day, the Court can evaluate --

20   this isn't an issue of prejudice or unfair prejudice in front

21   of the jury.  The Court can evaluate the allegations that are

22   redacted, credit them, not credit them, regard them as

23   sufficient or additionally supportive of an

24   aiding-and-abetting claim or not.  But that should be

25   Your Honor's decision, not based on these sort of procedural

1  hoops.

2      THE COURT:  So I know, Mr. Charest, you want to

3  speak, but before I let you do that.

4      I see the defense's argument though to some extent,

5  because there are two issues.

6      One is the propriety of a party being able to use

7  discovery to bolster their complaint that has already been

8  dismissed.  One could say that that's merely, as we've talked

9  about, a quirk of the procedure or timing.  But one also could

10  say those are the rules.  I mean, that's just how it works.

11  If you didn't have the information before you brought your

12  complaint and it was dismissed, you're out of luck.

13      The other principle here and the other interest I

14  think that the defense could -- well, certainly

15  Standard Chartered Bank could argue about, is that when they

16  gave the documents over in *Bartlett*, they did have an

17  understanding as to the limits on their use, and I presume

18  they would argue it affected their decision on what to produce

19  or whether to produce.  And so there was a bargain there of

20  some sort, if you could call it that, that would be upset by

21  my allowing the use of them in this case, you know, without

22  going back to the original judge in the original context.

23      So, I mean, I do think that there are two legal

24  principles that are more than just ministerial, I think, or

25  meaningless procedural rules.  But I think the defense can

1   rely on it in arguing that it's not appropriate for me even to

2   consider these allegations until we sort out whether or not

3   plaintiffs should be allowed to use them at all. And so I

4   don't know if I want to proceed as you suggest, the more I

5   think about it, because I don't want to skip over those two

6   considerations.

7           MR. OSEN: Well, Your Honor -- I'm sorry.

8           THE COURT: Yes, go ahead.

9           MR. OSEN: I take the point you're making, but let

10  me take two steps back.

11          First of all, Judge Merkl's order, which was upheld

12  by Judge Amon, was without prejudice and specifically pondered

13  a commencement of discovery or lifting of the stay in this

14  case, in which case now the parties could go back in the

15  *Bartlett* case. So that's number one.

16          Number two is that the analysis and the reason the

17  Court I think did that in the *Bartlett* case is because the

18  cases are very different once you have a -- the case law is

19  different once you have a second proceeding that's ongoing

20  because any court has the power to order discovery in its own

21  case.

22          So I think at a minimum here, we would ask the Court

23  to lift discovery, you know, the discovery stay here for that

24  limited purpose for us to serve the subpoena. Even if the

25  defendant, you know, in addition to moving to quash wants to

go to Judge Merkl or Judge Amon as they deem fit, the sort of

starting point here is the lifting of the stay.

And, you know, just one last point to digress.  But

Mr. Finn is right that the subpoenas served in *Bartlett* were

done at a time in which the *Freeman* cases were either stayed

or dismissed, depending on which one.  But I want to make sure

it's clear on the record that there was no attempt on the part

of the plaintiffs to sort of use *Bartlett* as a stalking force

for some future unforeseeable circumstance where we would be

in today with *Freeman II* having an amended complaint granted

and so forth, with the Circuit having issued two rulings on

just the aiding and abetting and then the Supreme Court

granting cert in another case and so forth.

Moreover, the subpoena itself in that case specified

that the defendant could limit its production to transactions

involving the Lebanese defendant banks.  So the fact that SCB

happened to produce records that went beyond what the subpoena

asked for and did so for its own convenience, again, is not

something that should be deployed against the plaintiffs.

Whatever the circumstances are here, it's not

because of machinations on the part of the plaintiffs' counsel

or misuse.  We've done everything according to the appropriate

guidelines for the subpoena that was issued in good faith.  We

raised this issue in a timely fashion with Your Honor.  We

filed our request with the Court in the *Bartlett* case.

1   Judge Amon ruled on it only a few days before we were due to

2   file our second amended complaint here.  So I just want to

3   make sure that the record is clear on that point as well.

4        It is procedural messy, we agree, but the bottom

5   line is, the Court should have an opportunity to see the

6   allegations and make its own determination on relevance to the

7   claims and to whether or not they support aiding and abetting.

8   And nothing in this prevents the defendant and Mr. Finn from

9   either moving to quash a subpoena or to make those same

10  arguments on a motion to dismiss.

11       THE COURT:  All right.  Let me just revise what I

12  said earlier about the *Stephens* plaintiff joining in on the

13  subpoena or the discovery request.

14       That probably wouldn't be appropriate just because I

15  don't think previously there was such a suggestion by the

16  *Stephens* plaintiffs and I think right now -- and I think this

17  was your objection, Mr. Finn.  Right now I think we're just

18  dealing with the *Freeman* defendants -- I'm sorry, plaintiffs,

19  and *Freeman I* plaintiffs I guess in particular, with respect

20  to these, with respect to this request.  Oh, excuse me, II.

21  Boy oh boy.  *Freeman II* plaintiffs, I guess, with respect to

22  this request.

23       At any rate, I think that at this point the

24  *Stephens,* whether the *Stephens* plaintiffs have any right to

25  make the same request or join in the request, I think that

that's not clear, and so I think we should just stick with the

parties who are involved -- were involved in the initial -- in

the other case as well as in the initial discovery request

here, or the motion to amend I should say, or the amended

complaint.

I think after all of this I come back where we

started in a way, which is I do think I have to formally, I

guess, lift the stay to allow the plaintiffs to file the

discovery request as well as to file a subpoena.  This way, I

think we'll eliminate the one condition or one reason that was

relied upon in *Bartlett* in deciding whether or not the

protective order precluded production of these materials.

And then, in effect, I think, Mr. Finn, it gives you

sort of two arguments to make.

One is to, you know, convince or get the *Bartlett*

court to say that these records should not be produced or

don't have to be produced by your client or the other bank

because they're covered by a protective order, or at least a

protective order, you know, doesn't allow those same materials

to be used by plaintiff.

And then I think the further, you almost want the

Court there at *Bartlett* to say even subpoenaing them in

another case when the knowledge of them comes solely from

having received them already might be an inappropriate use.  I

mean, it's kind of a but-for analysis, I guess.

1          And all because I think it will help you in terms of

2     then arguing to me that I should quash any subpoena -- or any

3     discovery request.  And if the other bank, KBC, wants to

4     argue, I guess quash the subpoena.

5          Because I think you have a few arguments and then I

6     think you also have the argument that the discovery shouldn't

7     be produced because the sole purpose of it is to try to amend

8     the complaint and that in and of itself is improper, you could

9     argue, under the Rules.

10          I think that's the best way to proceed.  And in the

11     meantime, I would just talk to Judges Amon and Merkl to

12     explain I guess what the posture is and how it interrelates to

13     my case.

14          I mean, they can make -- they could make the ruling

15     that the protective order precludes even requesting it as part

16     of discovery in the other case.  I think that would sort of

17     foreclose me from taking any other action in a way.  That is a

18     hard question to answer for myself.

19          But it does seem to me, and I said this before, that

20     in the first instance, interpreting the protective order and

21     what it prevents or prohibits is up to the court that issued

22     it, you know, Judge Amon and Judge Merkl.  And I think I would

23     be bound by that.  If they decide that "use" includes even

24     relying on the information that they received, they request

25     other discovery in another case, then I think I would be bound

1  by that. I mean, that's at least how I preliminarily see it,

2  but I think I need to hear from them first, and with the

3  condition of the discovery being stayed lifted now.

4         So why don't we set some deadlines.

5         And then in the interim, Mr. Finn, if you and your

6  clients and the parties can come up with some agreed-upon

7  resolution, you can certainly do that. You could obviously

8  voluntarily, I think, give whatever information you want to

9  the plaintiffs if you want to just avoid this prolonged legal

10  battle.

11         MR. CHAREST: May I be heard, Your Honor? Daniel

12  Charest for the *Stephens* plaintiffs.

13         THE COURT: Yes. Go ahead.

14         MR. CHAREST: I'm unclear as to what your -- the

15  Court, I think, said we want to be clear that this does or

16  doesn't apply to the *Stephens* plaintiffs and I was -- I'm not

17  sure I understand what that meant and why.

18         The letter that started this discussion, like, we

19  were listed as a part of the cases that were referenced. It

20  was under the Osen letterhead. But I understood this to be --

21  us to be part of the request here. And if we're not and I

22  need to send a letter, I can do that. But I just want to be

23  sure that whatever reopening of discovery happens does not

24  exclude *Freeman* -- *Stephens*, rather. *Stephens*. Sorry.

25         THE COURT: All right. Well, I think -- I mean,

1   Mr. Finn, you referred to this.

2           I know you're included in the heading, the "re:"

3   line of this letter, but the letter itself refers to the

4   *Freeman* plaintiffs.  I just didn't perceive that you were

5   making the same request.

6           And I guess then the question is:  Can you really do

7   that, I guess given that whatever you know about these records

8   comes from the *Freeman* plaintiffs and we're still figuring out

9   whether or not they can use the information they have to make

10  the request?

11          MR. CHAREST:  I mean, I don't know how -- well,

12  first of all, we can unpack all of that, I think.

13          I'm not bound by the protective order, number one.

14          Number two, I've learned about whatever might be in

15  those documents, the facts of those documents, through our

16  discussions in open court.  I think if anyone has license to

17  pursue them based on what I know about them, it's me.  But I'm

18  not asking for any sort of special, I don't think,

19  dispensation or whatever.  But the notion that I couldn't ask

20  for them because another judge might think that the protective

21  order doesn't bind me might be interpreted a certain way, I

22  don't understand how that could possibly be the result either.

23          I think what I would request is that if the Court is

24  going to lift the stay to allow this limited discovery, that

25  applies to *Stephens* as well.  We'll issue whatever discovery,

1    ask for exactly what was asked for before, and they can object

2    in whatever way they want to object and then there will be a

3    hearing.  You know, I think that's -- but to not let us get

4    out of the gate will only cause more disparity amongst the

5    different cases.

6            And just to be super clear about it, I was doing the

7    me-too letters earlier and I think remember being told not to

8    do that by, I think, somebody.  And so, you know, I don't want

9    to -- I'm just trying -- you know, I don't want to lose

10   whatever rights we might have because of the fact that we

11   didn't also file a letter when this has already been addressed

12   in the Court's docket and what is, in my understanding, an

13   extraordinarily pecune procedural question as to whether we

14   join or not.  We join.  We join.

15           THE COURT:  Well, I mean, the strange thing though

16   is, remember, this is phrased as a motion for a limited

17   constructive discovery of records in plaintiff's possession,

18   and it says *Freeman* plaintiffs respectfully renew the right to

19   essentially subpoena themselves.  So that's why I didn't

20   really construe it as being brought on behalf of the *Stephens*

21   plaintiffs.

22           But I think the potential legal hurdle is the one

23   that you seem to think matters not, and I guess I differ with

24   you on that a little bit.  I mean, because all of these

25   discussions really depend in some way on whether or not the

1  *Freeman* plaintiffs were allowed to use in any way and

2  reference in their complaint and perhaps otherwise, maybe even

3  in their letters, this discovery that they claim will help

4  bolster their aiding-and-abetting claim in this case.

5       And I think the problem is, this is information that

6  you only, you know, the --- being directed, I guess, to these

7  records and to these parties is only known to you because of

8  the *Freeman* plaintiffs using -- again, using the term

9  loosely -- using their knowledge of it to make these requests,

10  this self-subpoena request or self -- constructive

11  self-discovery request.

12       So that's why I'm troubled by just letting you latch

13  onto it.  Because until I resolve -- or until the *Bartlett*

14  court resolves, and then I guess I might have to further opine

15  about, the question of if this information can be requested at

16  all here, it doesn't seem to me appropriate to let you do so

17  as well.

18       Which is not to say you will be barred from doing

19  so, but the question is whether or not you are really the

20  movant, can be the movant in this first instance and whether

21  or not I should lift discovery for that purpose for you, for

22  *Stephens*.

23       MR. CHAREST:  As a pragmatic, what's going to happen

24  there, right, is then *Freeman* files their discovery, they get

25  whatever they get in discovery, there's no fight about that,

1   once pass.  And then there's a fight in the other case about
2   the interpretation of the protective order and then that gets
3   done.  And then at that point I get to hopefully issue my own
4   discovery because we did conclude that all these other issues
5   don't apply.

6           You know, and so rather -- I mean, how about I just
7   send a letter asking to reopen -- open discovery for a limited
8   purpose that's been disclosed in public records, right?  This
9   is not private, the letters that are on file.  And ask for
10  that, that right.

11          And then for all these cases, discovery is open for
12  that limited purpose.  And then we're all on the same track,
13  at least, and we can argue about what's next.

14          But, you know, if we don't get out of the gate here,
15  we are adding in a six-month minimum window for this because
16  I'm going to have to catch up.  And then the Court's not going
17  to want to hear their motion to dismiss and my motion dismiss
18  later.  You know, be done at the same time, and so we have to
19  catch up eventually.  Or not at all.  You know, but I mean,
20  that's -- you know, like if it doesn't come in, I guess it's
21  not an issue, it's not an issue.  But like, we'll never know
22  until we get to the end of this.  And if we don't start this
23  race at the same time, it's just more delay.

24          THE COURT:  Well, if I'm not mistaken, your
25  complaint does not contain any of this information that's

1  under the -- well, you don't know, I guess.

2      But your complaint, it hasn't been amended and

3  you're not relying on anything in the *Freeman* plaintiffs'

4  amended complaint?

5      MR. CHAREST:  That's not exactly correct.

6      We did amend our complaint.  We just did not have a

7  bunch of redactions because I don't know what's redacted.

8      THE COURT:  Okay.

9      MR. CHAREST:  So I know that this, you know, honey

10 pot of documents exist based on all these letters going back

11 and the discussion here.  And I sure would like to see them in

12 order to add them in, but I don't have enough information to

13 do that.  So that's where I'm at.

14     And, you know, we talked about, again, you know, the

15 rules in the circuit are we can't open discovery after

16 dismissal.  It doesn't apply to us.  And we don't have the

17 product -- you know, the understanding of the reasons for

18 their production or the reasons they made.  All I know is that

19 these things exist and I haven't asked the Court yet.  I'm

20 more than happy to do so here.  I'm happy to send a letter

21 that I could discovery as to just that production and bring it

22 into my complaint, too.  And then, you know, that's a

23 procedural part.  Boom.  That can be done in a heartbeat.

24     But one of, I think, the goal is here, is try to and

25 level-set all of these cases so that the Court can actually

1    look at the complaints, make a ruling on the merits, and then

2    go.  Like, you know, every time we sort of re-jigger the

3    beginning part, that gets pushed back by another six months

4    and I really don't want to do that moving forward.

5            THE COURT:  Well, let me ask you, Mr. Finn.

6            I mean, do you have any objection to the *Stephens*

7    plaintiffs being able to conduct discovery, since they haven't

8    had a complaint dismissed, obviously, and I think the argument

9    would be limited to whether or not they can make discovery

10   requests based on what has been discussed I guess in these

11   open filings about some additional information that could be

12   useful in the possession of your client and KCB?

13           MR. FINN:  Your Honor, I think that goes back to,

14   again, the basic principle not only that you don't get

15   discovery to revive a dismissed complaint, but there is

16   another equally strong rule in the Second Circuit.  And we

17   cited a case, *K.A. v. City of New York*, a Southern District of

18   New York case, that cites, you know, a series of cases that

19   say -- and, you know, I'm quoting here -- that courts have,

20   quote:  Consistently denied discovery requests which are

21   lodged for the purpose of obtaining extra information prior to

22   amending a complaint.  The case goes on to say -- and this is

23   supported by a plethora of case law that that case cites --

24   the Federal Rules of Civil Procedure require plaintiffs to

25   state a claim upon which relief may be granted without access

1    to information that is in the defendant's sole control.  You

2    don't get discovery to formulate a complaint.

3           And really, you know, going back to the *Freeman*

4    plaintiffs counsel's point that, you know, well, this is all

5    just sort of trying to prevent you from seeing information.

6    The only reason we're here right now is because the *Freeman*

7    plaintiffs ignored Judge Merkl's ruling and put these

8    redactions in this amended complaint.  The Court in *Bartlett*

9    said very clearly, both the Magistrate Judge and the District

10   Judge, you can't use this for another case.  And maybe

11   circumstances will change such as through discovery, but I

12   will say, I think what was being contemplated there was

13   following a motion to dismiss, the normal practice that we've

14   been following in these cases since the beginning and what we

15   thought we were going to follow as well.

16          So, you know, we do object to *Stephens*.  You know,

17   again, I'll repeat my objection to the premise of even the --

18   even of the *Freeman* plaintiffs, you know, getting to make a

19   request.  Because the whole basis of the request was putting

20   in these redactions into the complaint, that they say we got

21   this stuff from *Bartlett* after the Court at *Bartlett* says you

22   can't use this stuff.  So it's sort of -- you know, they've

23   ignored a court order over in *Bartlett* in order to, you know,

24   put this in front of the Court, you know, and now recognize --

25   you know, it's a difficult situation for the Court, obviously,

because, you know, now you have these phantom allegations in front of you, you know, under redactions.

But, you know, I do think that if we're going to proceed, you know, to explore whether that was appropriate in the first instance in the *Freeman* cases, that, you know, we should do that first. And as a practical matter, if that gets resolved and we keep these all on the same -- you know, on the same track, I think we can address the *Stephens* case.

I mean, by the way, there are other cases that are, you know, stayed in the Eastern District that are related as well.

So, you know, I think we can focus on, you know, just the plaintiffs who have access to these materials that we think, you know, the premise of this discovery request here is improper, deal with that first, and, you know, we can sort out the *Stephens* situation differently.

But I would say that I think putting aside what's been done in this amended complaint with these phantom redactions, if the plaintiffs just came and say we want some discovery of Standard Chartered Bank, a defendant in this case, when we've already indicated we're going to move to dismiss, and by the way, absent the *Bartlett* issues under the original schedule we would have moved to dismiss, the schedule that the Court set back in June, you know, we wouldn't be here. I don't think that normally a court would say, yes, now

1   we will engage in discovery of any party.

2         THE COURT:  Right.  I think Mr. Finn is correct.

3         And this is certainly an odd set of circumstances,

4   but the general principle that a plaintiff doesn't get

5   discovery when faced with a motion to dismiss to try to save

6   it from that motion to dismiss applies as the general rule.

7   And maybe even saying even if there's no motion to dismiss and

8   -- well, I guess, actually, let me take that back.

9         Where there's a motion to dismiss which basically

10  says the complaint is insufficient, if the plaintiff

11  themselves says, well, we can amend and fix it based on what

12  we know now, I let that happen.  And that has happened with

13  respect to *Stephens* and with respect, in part, to the *Freeman*

14  plaintiffs.  The further step of saying, well, we would like

15  to also get some discovery so that we can further bolster our

16  claims against this motion to dismiss is something that is not

17  generally permitted.

18        And so I think that Mr. Finn is correct, that if we

19  didn't have this weird quirk where one of the plaintiffs in a

20  similar case already has the information, possesses it, and

21  it's not solely in the possession of the defendant and wants

22  to be able to use it or would have used it to amend their

23  complaint but can't because of -- right now because of a

24  protective order that applies to it, I think that's a slightly

25  different circumstance and certainly one that sort of

1  straddles this rule to some extent.  I mean, they possess the
2  information, but they're not really able to use it or unclear
3  if they can use it.
4         So I think that positions the *Freeman* plaintiff
5  better to at least make the argument that they can make these
6  discovery requests, which are really just kind of a fig leaf
7  because they already have the documents, but it's using the
8  process.  It's using it as a vehicle to see if they can use it
9  because they already have it.  And we need to get a ruling
10  then from the other court that had this restriction on it, on
11  whether they can use it either to make the request or to get
12  the documents.
13         But that really doesn't apply to your case,
14  Mr. Charest.  And so I think it's better just to -- for the
15  *Stephens* case, you filed your amended complaint, there has
16  been a motion to dismiss filed, there's a good chance that
17  everything will have to be re-jiggered or reassessed when we
18  resolve this other issue about the information that the
19  *Freeman* plaintiffs possess but are not quite, oh, they don't
20  have the authority yet to use, or maybe they don't even have
21  the authority to request it through discovery in their amended
22  complaint.
23         And so once we sort that out, I agree with Mr. Finn
24  that we can then see if that affects, and if so, how, the
25  *Stephens* plaintiffs or in a different posture.

1    So let's set some deadlines to get this process

2  going.

3    You said, Mr. Radine, that you could file your

4  discovery request to SCB, I think, in ten days and a subpoena

5  to KCB at the same time, I assume.  That will, in effect,

6  signal the reopening of discovery, which I am lifting, partial

7  lifting of discovery, of the stay on discovery.  Sorry.

8    And then, Mr. Finn, I am going to count on you to

9  tee up the issue before Judge Merkl and Amon if you think it's

10  appropriate.

11    You could obviously go the easier route, perhaps, or

12  less litigious route, and just come up with some arrangement

13  to provide the documents to -- or re-provide them or decide

14  which documents they can actually use in their amended

15  complaint.  But if you don't, then I want you to file a letter

16  with I guess -- I'm trying figure out who now.

17    Well, you'll move to quash the discovery request or

18  not respond to the discovery request, but I'd say

19  simultaneously you should file a letter with Judge Amon and

20  Judge Merkl.

21    I'll give you, I don't know, two weeks to do that

22  after the discovery requests are propounded.  Does that make

23  sense?  So 10 days plus another 14 days.  Does that sound

24  good?

25    MR. FINN:  That's fine, Your Honor.

1          THE COURT:  Okay.

2          And then, like I said, I am actually going to talk

3   with my colleagues about this issue just to get some sense of

4   what they're thinking.  I obviously am not going to make the

5   decision about whether they think even asking for the

6   documents is a violation of the protective order or whether or

7   not the actual obtaining of the documents would be a violation

8   of the protective order.  Obviously, they can independently

9   decide that.  But it will inform me to some extent.

10          And then the plaintiff will have the ability to

11  argue further.

12          So I'm trying to think of how this will work out.  I

13  guess you'll simultaneously file your request with the

14  *Bartlett* judges to decide that issue, but file I guess a

15  letter brief, and you can make it up to ten pages on why I

16  should not -- why the discovery request should be denied and

17  the subpoena.

18          I don't know if KCB is going to want the subpoena

19  quashed.  Or KBC.  Or KCB.  I keep getting it backwards.  KCB.

20  They may not move to quash it.  And then I don't think -- I

21  wouldn't say that SCB has standing, I guess, to argue about

22  that even though KCB is subject to the protective order, but I

23  don't think you have a dog in that fight.  They can do

24  whatever they want in that regard, I suspect.

25          So I think then I will give plaintiffs two weeks to

1   respond.

2   And any defendants who want to join in, obviously,

3   on -- I mean, I guess, Mr. Finn, you can represent whether or

4   not other parties -- well, I guess they really can't have much

5   of a say in this fight.

6   MR. FINN:  Your Honor, we will try to coordinate

7   with the other appearing defendants to ensure that if we have

8   to file something it will be as streamlined and not

9   duplicative as possible.

10  THE COURT:  Right.  Yes, because I think they would

11  join in your argument that the rule doesn't allow a party to

12  amend -- seek discovery for the purpose of amending after a

13  claim has been dismissed.  I assume you all join in on that

14  argument.

15  MR. FINN:  Yes.  And I think the -- speaking on

16  behalf of the appearing defendants, I think every appearing

17  defendant joined or submission or letter prior to this

18  conference on that exact point.

19  THE COURT:  Okay.

20  So on I think February 29th will be the date on

21  which Mr. Finn and your colleagues will submit a letter motion

22  up to ten pages.

23  And then two weeks from then, which will be I think

24  mid-March, probably March 14th, I would assume, since the 29th

25  I think is the end of the month, for plaintiffs to respond.

1        Now, I realize that we probably won't have any

2   ruling from Judge Amon at that time on the protective order,

3   so I suspect the protective order argument is really probably

4   no more than a sentence, which is that, you know, you've

5   already argued, Mr. Finn, that previously Judge Merkl did find

6   that the protective order was very explicit and clear that the

7   material could only be used for that litigation.  But it does

8   seem to me the definition of "use" might require a little more

9   teasing out.  Because, you know, does it only apply to

10  actually physically introducing them and relying on them or

11  does it actually prohibit including your knowledge of them to

12  acquire them to use them?  And I think that that may require

13  some further argument with Judge Merkl and Amon.

14       Personally, I could see them agreeing with your

15  reasoning, Mr. Finn, because otherwise a protective order

16  really wouldn't protect much if all a party had to do was

17  subpoena them again.  So my same reasoning for why a party

18  can't constructively self-subpoena them to get them, but

19  that's up to you to argue.

20       All right.  You know, quite honestly, if Judge Amon

21  and Merkl rule that even making a request to get them again in

22  another case constitutes use that's prohibited by the

23  protective order, I think that will pretty much foreclose any

24  further argument before me because I don't think I have the

25  ability to go around that way.  But obviously that's an

argument that the plaintiffs can make, you know, on a
contingency basis, that even if they rule that way for some
reason, that that doesn't bind me.

Okay.  Is there anything else anything else wants to
say?

I know this has been a bit of a winding argument,
but it's an unusual set of circumstances and a complicated
history, unfortunately.

MR. RADINE:  Yes.

THE COURT:  Yes, Mr. Radine.  Go ahead.

MR. RADINE:  Just briefly.

So the motion -- you've suspended, I think, the
schedule for motion to dismiss in *Freeman.*

THE COURT:  Yes.  So *sine die* for now.

MR. RADINE:  Right.

And then given that one of the factors for our
vacatur motion is the potential futility of the amendment,
should that likewise be suspended *sine die* as well?

THE COURT:  Yes.  Yes, because -- you mean the
argument for why you shouldn't be allowed to amend is
futility?  I agree, that could be suspended as well.  Because
I won't look at anything in the amended complaint until we
resolve this issue.

MR. BOCCUZZI:  Your Honor, may I?

THE COURT:  Yes.

1          Mr. Boccuzzi?

2          MR. BOCCUZZI:  Yes, Your Honor.

3          I think Mr. Radine was speaking not to *Freeman II*

4   with any question of amendment, but back to *Freeman I*, which

5   has been definitively you dismissed it, the Second Circuit

6   affirmed that dismissal, the Supreme Court denied cert, and

7   now the plaintiffs want to make a motion to vacate --

8          THE COURT:  Back.

9          MR. BOCCUZZI:  I'm sorry, reopen/vacate and bring

10  that case back somehow.

11         So I think that can still be litigated on the

12  schedule Your Honor said.

13         THE COURT:  Yes.

14         MR. BOCCUZZI:  Except for all of this.

15         THE COURT:  Yes.  Because I think the opening brief

16  is due the 26th of this month, right?

17         MR. RADINE:  Yes, Your Honor.

18         But the issue we're raising is that when Your Honor

19  decides whether to vacate judgment to permit amendment, one of

20  the factors Your Honor will consider is whether the amendment

21  is futile.  You will be doing it on less than the total of the

22  amended complaint.

23         THE COURT:  Is the proposed amendment in *Freeman I*

24  based on the same information that you're using in *Freeman II?*

25         MR. RADINE:  Right.

1    THE COURT:  Okay.

2    MR. FINN:  Your Honor, if I may here?

3    THE COURT:  Yes.

4    MR. FINN:  They're free to argue in a motion to

5    vacate that if they're permitted discovery they could, you

6    know, amend their complaint, right?  I mean, their amendment

7    complaint has been filed here.  They have phantom allegations

8    that are redacted.  But on the motion to vacate, you know, the

9    arguments can be made, they don't -- you know, I think that's

10   why the Court left that schedule in place when the Court took

11   the motion to dismiss off the calendar for the amendments in

12   *Freeman II* and *Stephens* and left the -- you know, the *Freeman*

13   *I* on the -- you know, on the schedule.

14        I do think that we could get moving and briefing on

15   that because those are very distinct issues.  The standard for

16   a motion to vacate is, you know, obviously much different than

17   a motion -- even than a motion to dismiss, right?  The Court

18   has different factors that are being addressed.  And if in the

19   interim there is some change in -- you know, in terms of the

20   *Freeman II* allegations such that -- you know, such that the

21   plaintiffs are somehow allowed to, you know, use discovery in

22   order to amend, then, you know, we can address that.

23        But actually, I don't think we have an amended

24   complaint in *Freeman I* because the next procedural step is a

25   motion to vacate even -- you know, even before you could get

1  to that point, you know, are there grounds to vacate a final

2  judgment.

3          THE COURT:  That's correct.

4          But the question Mr. Radine is suggesting is, and I

5  must confess I don't know the standards exactly for a motion

6  to vacate, but is futility of an amended complaint filing that

7  would file a motion to vacate.  If I were to grant the motion

8  to vacate, would it still be futile because then any complaint

9  they bring would still be dismissed, is that a factor in

10 deciding a motion to vacate.

11          Mr. Radine, you're suggesting it is, that that seems

12 to be the next step.

13          MR. RADINE:  Yeah.  So courts have found that a

14 vacatur is inappropriate where the proposed amendment that

15 would follow vacatur is futile, would be futile.

16          MR. FINN:  So that's --

17          MR. RADINE:  We've had the benefit of briefing this

18 before.

19          THE COURT:  Yes.

20          MR. RADINE:  And it is clear that vacatur is

21 inappropriate where the proposed amendment would be futile.

22          THE COURT:  Hang on a second.

23          But that's the defense argument, right?  So if they

24 don't care about relying on that argument or factor, then they

25 could decide not to do that and go ahead with their motion,

right?  That would benefit them, not you, that argument.  You
can't conversely say I should not vacate because it wouldn't
be futile.  I mean, that's why you're seeking to preserve that
argument.  But it seems to me the defense wants to simply
argue the standards for deciding whether to grant a motion to
vacate, perhaps foregoing this argument because it won't be
ripe if you will amend.

MR. FINN:  Your Honor, while I don't have the exact
standard, you know, in mind, I do recall that part of the
standard is very extraordinary circumstances.

And, you know, this actually similar issue was
litigated before Judge Matsumoto in the *Honickman* case, down
after being affirmed by the Second Circuit, and the plaintiffs
there sought a motion to vacate.  You know, and you need to
show really extraordinary circumstances, not just the sort of
standard to file a motion to amend, for example, a motion for
leave to amend, which of course futility is a big part of that
sort of motion.  It showed some sort of extraordinary
circumstances.

You know, and I think the plaintiffs will be free to
argue, you know, that -- whatever they want to argue with
respect to extraordinary circumstances here.  You know, and
they already have a 700-page amended complaint that they filed
in *Freeman II*.

So, you know, again, we would like to move these

1  cases along.  I mean, particularly *Freeman I*, which has a --

2  you know, not only a ruling from Your Honor, but a

3  Second Circuit ruling and judgment which, you know, we'd like

4  to move that one along.  And, you know, if there is -- if

5  there happens to be an issue, you know, in briefing, the

6  plaintiffs are free to highlight if they think that something

7  relevant to the issues in *Bartlett*, you know, make a

8  difference to the motion.  We don't think it will, but, you

9  know, they're free to argue that.

10             THE COURT:  All right.

11             Why don't we proceed with the briefing.  Because

12  even to the extent that somehow the resolution of the *Bartlett*

13  protective order should just come into play, it may hold up a

14  resolution of the motion, but at least we can get the briefing

15  started.  I think that that's a healthy or productive use of

16  everyone's time while we try to sort the *Bartlett* issue out.

17  So I really don't think there is a downside to it.

18             MR. OSEN:  Your Honor?  I'm sorry.

19             THE COURT:  Yes.  Go ahead, Mr. Osen.

20             MR. OSEN:  Yes.  Just to clarify.

21             You know, to the extent that the defendants are

22  willing to stipulate, again solely for purposes of the motion,

23  that they aren't going to raise futility as a basis for

24  opposing vacatur, then that makes perfect sense.  If, as is

25  most likely, since it's an element of the standard, they do

intend to raise futility, it seems to us that briefing this
twice is not a good use of the parties' time or of the Court's
time.

So again, if they're saying, look, we're not going
to raise that issue, we feel it's strong only enough on the
procedural basis, then that's fine.  But if they're not going
to stipulate to that, as I suspect they won't, then I can't
understand why we would be doing this exercise until we know
whether *Freeman II* is going to be dismissed or not.  Because
if it is dismissed, that takes care of the vacatur argument in
*Freeman I*.

THE COURT:  Well, I suspect the defense is thinking
that perhaps I will decide it without even reaching the
futility argument and they would like to have the chance to
put those arguments before me.  And putting aside -- I imagine
the futility argument might be on both sides pretty pro forma,
which is we think it will be futile.  Those issues, however,
can only be fully resolved once the question about what goes
into the amended complaint, assuming it will look just like
the one in *Freeman II*, is.  But putting that aside, we still
think you should not vacate for the following reasons:  It
hasn't met the extraordinariness standard.

Am I right, Mr. Finn or Mr. Baccuzzi, whoever is
fighting this?

MR. FINN:  Yes.

1    Your Honor, you know, I'm just looking at Rule 60(b)

2    as well, quickly.  And, you know, you have to show things like

3    mistake, inadvertent surprise, excusable neglect, you know,

4    newly-discovered evidence that, you know, could not have been

5    discovered previously.  There's a -- you know, and that goes

6    to this extraordinary nature of it, you know, of relieving

7    someone of a final judgment after it's gone up and been

8    litigated.  And of course, aiding and abetting actually was an

9    issue with respect to Standard Chartered Bank in that case.

10    And, you know, so we haven't seen their motion.  You

11   know, we actually don't know what the grounds they're going to

12   argue are.  So, you know, seeing their motion, we need to see

13   what the grounds are.  The grounds cannot be:  We think we

14   have a meritorious claim over in *Freeman II* and therefore you

15   should vacate a final judgment.  That's not the law.

16    You know, but we can argue that without having to

17   get into -- I really don't think we're going to be getting

18   into, in there, in that case, you know, the -- every single

19   allegation and what might be an amended -- further amended

20   complaint.  Because the Court has to first determine whether

21   any of these elements of Rule 60 even apply before you even

22   get to the question of is it a -- you know, could you actually

23   plead a meritorious claim, you know, in that case.

24    THE COURT:  Well, what about the newly-discovered

25   evidence prong?  I suspect that's what the plaintiffs might be

1  relying on.

2        MR. FINN:  Your Honor, that is -- it's not the

3  circumstances of, you know, you learn about something years

4  after the fact in another case and you want to revive case one

5  based on that.

6        Now, if they want to make that argument, we should

7  see it.  At least we should be able to see what their argument

8  is.  But, you know, having them move to vacate, we'll be able

9  to see that, we'll be able to assess it.  And frankly, I don't

10  know what the grounds that they could possibly raise to vacate

11  a final judgment that's been affirmed and denied by the

12  Supreme Court.

13        THE COURT:  All right.  I would like to keep to the

14  schedule.  I mean, it may be that you cannot -- I don't know

15  if it's true if you cannot fully make your arguments, but then

16  you will have a placeholder which is subject to some

17  resolution that we -- you know, assuming the Court agrees or

18  the *Bartlett* court agrees, here's our argument.

19        Let's just get this process going because we have a

20  lot of balls in the air right now and I would like to -- if

21  *Freeman I* is going to come back to life, we should try to get

22  everything back on track together, *a la* Mr. Charest's

23  argument.

24        So let's stick to that schedule.  The opening brief

25  is due the 26th and I think the schedule falls thereafter.

1   Plaintiffs will make their arguments and defendants will

2   respond as per the schedule.

3         And in the meantime then, as I said before, set a

4   schedule for trying to deal with the amended complaint issue

5   and what will go into it, as well as the related discovery

6   issue, both here and I guess in *Bartlett*.  Okay?

7         So I think that addresses everything we need to

8   right now.

9         Anything else?

10         And thank you for that, Mr. Boccuzzi.

11         Okay.  I appreciate everyone's thoughts on this.

12   You know, I don't think there's an easy answer, but I can at

13   least promise you that we will basically try to work through

14   all these issues based on your submissions.

15         If for some reason there is a problem with the

16   timing, obviously talk amongst yourselves.  And if you want to

17   propose an alternative schedule, it's fine by me.  Okay?

18         So thank you, everyone.  I really appreciate it.

19   Good seeing everybody.

20         MR. RADINE:  Thank you, Your Honor.

21         MR. COHEN:  Thank you, Your Honor.

22         MR. FINN:  Thank you, Your Honor.

23         (Matter concluded.)

24

25