

190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

March 5, 2024

**VIA ECF**

Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-0007

Dear Judge Merkl:

    Plaintiffs write in response to SCB's letter motion to the Court. ECF No. 374 ("Ltr."). Although it is unclear from SCB's letter, the court in *Freeman v. HSBC Holdings plc*, No. 18-cv-7359 (PKC) (CLP) (E.D.N.Y.) ("*Freeman II*"), lifted the stay of discovery in that case so that Plaintiffs can request records produced in *Bartlett*. In doing so, it permitted SCB to ask this Court whether the protective order in this case ("PO," ECF No. 273) somehow prohibits the *Freeman II* plaintiffs from even *requesting* records produced pursuant to the PO (it does not, as case law in this Circuit makes clear, and SCB does not seriously argue otherwise).

    As detailed below, this Court explained that if "Judge Pollak or Judge Chen … commence discovery in" *Freeman*, then *Bartlett* "discovery may be cross-applied" between the cases. 9/27/2023 Transcript at 59. Judge Chen lifted the stay of discovery in *Freeman II* specifically so that Plaintiffs can request from SCB (and KBC Bank, which has not objected) "the information obtained in Bartlett (19cv7)." *Freeman II*, February 8, 2024 Minute Order.

    But SCB clings to the "absurd tenet that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case." *Carter-Wallace, Inc. v. Hartz Mtn. Indus.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981). In support of this untenable proposition, SCB misrepresents proceedings in *Freeman* and this Courts' orders on discovery and repeats its bizarre accusation that Plaintiffs have violated the PO, evidently by providing generalized descriptions of information they have *not* disclosed in the *Freeman* case.

    The Court can draw its own inferences as to why SCB appears so desperate to keep the *Freeman* court from seeing, let alone considering, certain allegations derived from third-party discovery produced here, but that does not excuse its misrepresentations of the record or its *ad hominem* attacks on the Plaintiffs (much less in a procedural dispute).

### BACKGROUND

    Plaintiffs filed *Freeman II* on December 26, 2018, amending it on December 16, 2019 ("FAC"), alleging that the "Defendants aided and abetted … the IRGC (FTO) and Hezbollah (FTO)," by "knowingly provid[ing] substantial assistance, directly or indirectly, to the IRGC … and Hezbollah." FAC ¶¶ 3746-47. The court dismissed the FAC's aiding and abetting claims

against most of the defendants on June 5, 2020, *see Freeman II*, 465 F. Supp. 3d 220 (E.D.N.Y. 2020), but it did not enter a final judgment and stayed the case at the parties' request pending resolution of an appeal in the related case *Freeman v. HSBC Holdings plc*, No. 14-cv-6601 (PKC) (CLP) (E.D.N.Y.), and, later, *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023).

When the *Freeman* court turned back to *Freeman II*, the plaintiffs moved to amend their complaint because the court's dismissal decision relied on the erroneous pleading standards set forth in the district court opinions *Honickman v. BLOM Bank SAL*, 432 F. Supp. 3d 253 (E.D.N.Y. 2020), and *Kaplan v. Lebanese Canadian Bank*, 405 F. Supp. 3d 525 (S.D.N.Y. 2019), which were subsequently rejected by the Second Circuit.[1] Plaintiffs explained that their proposed amendment would reflect the standards delineated in the Circuit's decisions (as well as the further guidance provided by *Taamneh* decision),[2] but it was also an opportunity to add information they had acquired in the intervening years, including (but far from limited to) information sourced from records they received in *Bartlett* that indicated that certain *Freeman* defendants held accounts for and/or processed transactions for the IRGC and Hezbollah. *See* **Exhibit A** (*Freeman II*, 6/27/2023 Transcript) at 10-11, 42.

Thus, despite SCB's mischaracterizations, the *Freeman* plaintiffs did *not* predicate their request to amend the *Freeman II* complaint on facts produced in *Bartlett*—they based it on the Second Circuit's clarification of legal standards. In any event, the *Freeman* court granted plaintiffs' motion to file a second amended complaint ("SAC") over defendants' objections.

In order to include allegations in the SAC summarizing information produced pursuant to the *Bartlett* PO, Plaintiffs here moved for permission to apply *Bartlett* discovery in *Freeman* ("*Bartlett* PO Motion"). *See* ECF No. 335. The *Freeman* plaintiffs also requested that the *Freeman* court lift the stay of discovery in that case so that they could (constructively) subpoena the records to the extent necessary to include those allegations in their complaint under seal and subject to the same protections provided for in the *Bartlett* PO. The *Freeman* court denied that motion pending this Court's consideration of the *Bartlett* PO Motion.

This Court denied the *Bartlett* PO Motion "without prejudice," noting that if "Judge Pollak or Judge Chen … commence discovery in" *Freeman*, "discovery may be cross-applied" between the cases. 9/27/2023 Transcript at 59. The *Bartlett* Plaintiffs filed objections to Judge Amon, who affirmed that ruling on December 21, 2023. ECF No. 368. Judge Amon likewise premised her decision in part on the finding that "the *Freeman* parties at this stage in their litigation have not been permitted to engage in discovery." *Id.* at 10-11. Indeed, Judge Chen noted this Court's "ruling was really based on the fact that discovery had not restarted here." 2/5/2024 Transcript, filed in *Bartlett* as ECF No. 375-1, at 8.

---

[1] In *Honickman*, the Second Circuit "agree[d] [with the plaintiffs] that the court did not apply the proper standard" both as to aiding and abetting and pleading knowledge generally. 6 F.4th 487, 490, 497 (2d Cir. 2021). In *Kaplan*, the Circuit likewise rejected the aiding and abetting and knowledge pleading standards fashioned by the lower court, finding that the latter "def[ied] common sense." 999 F.3d 842, 864, 867 (2d Cir. 2021).

[2] As no judgment was entered in *Freeman II*, that court was free to grant amendment or otherwise reconsider its dismissal decision. Even if it had entered judgment, the Second Circuit clarified in *Honickman* it is an abuse of discretion not to vacate a judgment premised on incorrect standards to permit amendment to meet the correct ones. *See Honickman v. Blom Bank*, No. 22-1039, 2024 U.S. App. LEXIS 4748 (2d Cir. Feb. 29, 2024).

The *Freeman* court had extended the plaintiffs' deadline to file their SAC to December 27, 2023, given Your Honor's and Judge Amon's review of Plaintiffs' motions. Because the *Freeman* plaintiffs only had 6 days between Judge Amon's ruling and their deadline to amend their complaint, they determined that they would be unlikely to receive relief from the *Freeman* court as to any renewed motion for discovery filed over the Christmas holidays. To preserve their rights, they therefore filed their SAC and redacted all references to information sourced from records produced in *Bartlett* and, in an abundance of caution, redacted non-confidential allegations relating to some of those customers to prevent any inferences as to the content of the redactions. The *Freeman* plaintiffs did not share the redacted allegations with the plaintiffs in *Stephens v. HSBC Holdings*, No. 18-cv-7439 (another, related case before Judge Chen brought by different counsel), any *Freeman* defendant (except SCB, at SCB's request) or even the *Freeman* court itself.

While the *Freeman* plaintiffs were preparing to renew their discovery motion, SCB preemptively requested that the *Freeman* court compel the plaintiffs to refile their brief without the redacted allegations, arguing that the *redactions* violated the PO in this case. The *Freeman* court denied that motion. *See Freeman II*, January 8, 2024 Minute Order.

The *Freeman* plaintiffs then renewed their discovery motion, seeking to lift the stay of discovery in that case in order to effectively "subpoena" themselves for the records, which would impose no burden whatsoever on any producing party. SCB argued that lifting the discovery stay was inappropriate at that stage. It repeated its argument that redactions in the SAC somehow violate the PO, which Judge Chen *again* rejected: "[Filing redactions] I don't consider misuse just yet because it really hasn't come to fruition. I mean, it's sitting there under, you know, blackout, so that's not using it, in my opinion." 2/5/2024 Transcript at 18. To the contrary, Judge Chen acknowledged that the *Freeman* plaintiffs should be entitled to use information that is in their possession: "I don't like knowing that there is this information out there that could well be helpful, or at least plaintiffs believe it's helpful. And it is there, it has been produced, it's not speculative, and it even physically exists in plaintiffs' possession." *Id.* at 29. *See id.* at 21 (finding that Plaintiffs acted "diligently" and "justice more requires me to look at what exists rather than rely or vaunt, I guess, procedure over substance").

Despite SCB's objections, the *Freeman* court "lifted the stay of discovery in *Freeman II/Bowman* for the limited purpose of permitting the *Freeman II/Bowman* Plaintiffs to subpoena Defendant Standard Chartered Bank and non-party KBC Bank for the information obtained in *Bartlett* (19cv7) that is the subject of Plaintiffs' letter motion for discovery." February 6, 2024 Minute Order. The court permitted SCB to file a motion to quash the subpoena and write this Court a letter because "I guess you want to present the argument to Judges Merkl and Amon that even using their knowledge of this information to subpoena the same records in my case runs afoul of the protective order." 2/5/2024 Transcript at 23-24. *See id.* at 24 ("hazard[ing] a guess" that this Court would find making such a request did *not* violate the PO).

Instead, SCB's letter again argues that Plaintiffs have violated the PO by "using" the records in their *Freeman II* SAC, despite never disclosing a single confidential fact:

> In order to feign compliance with the Protective Order, the *Freeman II* plaintiffs did not publicly file those allegations, or disclose them to the *Freeman II* court or the other parties in that case.

Ltr. at 2.

That is, to "feign compliance" with the PO, plaintiffs did *not* disclose the information covered by the PO to anyone.[3] Without being able to cite to an actual violation, SCB argues that the *Freeman II* plaintiffs improperly "used" confidential information in the way they "characterized" or "described" the redacted allegations. But Plaintiffs have consistently described the information in generalized terms as transactions involving alleged Hezbollah-affiliated entities, just as Judge Amon did in her decision, *see* ECF No. 368 at 3, with no suggestion from SCB or anyone else that these generalized descriptions violated the PO.

In any event, the *Freeman* court has twice now rejected SCB's argument that *redacted* allegations are somehow impermissible, a fact SCB fails to share with this Court. Nor did the *Freeman* court direct SCB to ask this Court whether the redactions it already declined to excise from the *Freeman II* SAC somehow violate the PO. The *intended* focus of the letter was to ask this Court whether simply *requesting* the redacted information as authorized by the *Freeman* court could itself somehow impinge on this Court's PO. As explained below, it does not.

## ARGUMENT

POs do not generally immunize records from *discovery requests* in other cases. After all, this Court already explained that if "Judge Pollak or Judge Chen … commence discovery in" *Freeman*, "discovery may be cross-applied." 9/27/2023 Transcript at 59. And as noted above, it would be "absurd" to suggest SCB "can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case." *Carter-Wallace*, 92 F.R.D. at 69. Thus, "a protective order that prohibited disclosure by the 'receiving party' d[oes] not prohibit disclosure by the person 'that originally controlled the evidence.'" *U.S. SEC v. Iftikar Ahmed*, No. 15-cv-675 (JBA), 2023 U.S. Dist. LEXIS 68225, at *7 (D. Conn. Apr. 18, 2023) (quoting *Carter-Wallace*, 92 F.R.D. at 69). *Carter-Wallace* involved plaintiffs in another case requesting records from a *producing* party, produced pursuant to a protective order that only prevented the *receiving* party from disclosing those records. 92 F.R.D. at 69. Likewise, the *Bartlett* PO only prevents "disclos[ure] by the *Receiving Party*." PO ¶ E.1 (emphasis added).

As is clear from *Carter-Wallace*, *requesting* records produced pursuant to a PO is not a "misuse" of those records. Where records might be relevant in "currently pending matters or future cases similar to the case at bar," the producing party "cannot rely on the Protective Order as a means of protecting discovery that would otherwise be discoverable in the related actions." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012). Indeed, "allowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases." *Id.*

In *In re EPDM Antitrust Litigation*, non-party Stone Paradise sought to intervene to access records produced pursuant to a protective order in *EPDM* that it "believe[d] … will be relevant in pursuing" its own claims in Canada while avoiding "duplicative discovery": "Stone Paradise is

---

[3] SCB likewise argues, "Incredibly, … the *Freeman II* plaintiffs argued that Plaintiffs have not violated the Protective Order by using the *Bartlett* discovery outside of *Bartlett* because they did not publicly disclose the specific contents of the protected documents," *id.*—as if this were not precisely the definition of complying with a PO.

hoping to avoid the time and expense of conducting duplicative discovery by having access granted to the materials filed in connection with this suit. Stone Paradise has agreed to abide by the terms of the Protective Order …." 255 F.R.D. 308, 314 (D. Conn. 2009). Far from suggesting Stone Paradise could not request documents in one matter that it knew must exist in another, the court *granted* the motion.

Still, the *Freeman* plaintiffs re-issued effectively the same document request that SCB received in *Bartlett* in the form of a subpoena because the original subpoena (1) was not confidential and (2) was drafted *before SCB produced anything*—thus, the document request does not reference any specific records SCB actually produced. Plaintiffs explicitly stated that they only requested whatever is necessary to file an unredacted version of the SAC under seal.

SCB ignores that fact and pretends that by issuing a document request that is nearly identical to the original subpoena, the *Freeman* plaintiffs are "in reality" demanding production of records for hundreds of persons over 19 years, "regardless of whether or not those individuals or entities have anything to do with the allegations in the *Freeman II* SAC." Ltr. at 4. But SCB knows better—again, Plaintiffs have consistently made their intention for the request clear:

> [I]f Your Honor were to grant, assuming Standard Chartered objects, which I think it's indicated it would, that the discovery is appropriate, **all we'd be seeking now is to file the unredacted version of the complaint under seal.**

2/5/2024 Transcript at 10 (emphasis added). *See id.* at 46 ("[after plaintiffs serve the subpoena,] the way they would, quote/unquote, 'use' the material is simply filing an unredacted version of the complaint under seal."). Indeed, the renewed request itself states: "To minimize Your burden, You may respond to the document request herein by producing, or consenting to the transmittal of, the same information You previously produced in response to the subpoena served on You in *Bartlett* … to the Plaintiffs in this Action." ECF No. 374-1 at page 10 of the PDF.

In fact, SCB itself has told the *Freeman* court that should the Court "be inclined" to consider the redacted allegations it *already declined to strike*, then SCB would request that:

> [T]he Court (i) limit the scope of discovery only to the specific banking records from which Plaintiffs sourced the redacted allegations in the SAC; and (ii) require that any such information be kept confidential by the *Freeman II* parties and those portions of the SAC be filed under seal in *Freeman II*.

*Id.* at page 6. **Put simply, that is precisely what the *Freeman* plaintiffs have consistently proposed and therefore they readily accept**.

SCB's overwrought objections and feigned indignation have thus been a colossal waste of both Courts' time and only elevate the significance of the redacted allegations that it repeatedly claims are irrelevant to the *Freeman* plaintiffs' claims. Accordingly, consistent with this Court's prior statement that "discovery may be cross-applied" if and when Judge Chen "commence[d] discovery," it should determine that the *Freeman* court-directed document request to SCB does not run afoul of the PO because the PO does not prohibit disclosure by SCB, the entity "that originally controlled the evidence," *Iftikar*, 2023 U.S. Dist. LEXIS 68225, at *7.

        Respectfully submitted,

        /s/ Michael J. Radine

cc: All counsel (via ECF)

Encl.