# EXHIBIT A

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                        18-CV-7359(PKC)
     KATHLEEN FREEMAN, ET. AL,
 4                                        United States Courthouse
              Plaintiff,                  Brooklyn, New York
 5
              - versus -                  June 27, 2023
 6                                        11:30 a.m.
     HSBC HOLDINGS PLC, ET. AL,
 7
              Defendant.
 8
     ------------------------------x
 9
              TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
10                  (ALL PRESENT VIA VIDEOCONFERENCE)
                BEFORE THE HONORABLE PAMELA K. CHEN
11                  UNITED STATES DISTRICT JUDGE

12
     APPEARANCES
13
     Attorney for Plaintiff:  OSEN LLC
14   Freeman                  190 Moore Street
                              Suite 272
15                            Hackensack, New Jersey 07601
                              BY:  GARY M. OSEN, ESQ.
16
     Attorney for Plaintiff:  BURNS CHAREST LLP
17   Stephens                 900 Jackson Street
                              Suite 500
18                            Dallas, Texas 75202
                              BY:  DANIEL H. CHAREST, ESQ.
19

20   Attorney for Defendant:  MAYER BROWN LLP
     HSBC                     1221 Avenue of the Americas
21                            New York, New York 10020-1001
                              BY:  MARK G. HANCHET, ESQ.
22                                 ROBERT W. HAMBURG, ESQ.

23   Attorney for Defendant:  CLEARY GOTTLIEB STEEN & HAMILTON LLP
     Commerzbank              1 Liberty Plaza
24                            New York, New York 10006
                              BY:  CARMINE D. BOCCUZZI, ESQ.

25
```

1   (CONTINUED APPEARANCES:)

Attorney for Defendant:  MAYER BROWN LLP
2   Credit Suisse           1221 Avenue of the Americas
                         New York, New York 10020-1001
3                         BY:  ALEX LAKATOS, ESQ.
                             MARC COHEN, ESQ.

4

5   Attorney for Defendant:  SULLIVAN & CROMWELL LLP
   Barclays              125 Broad Street
6                         New York, New York 10004-2498
                         BY:  MICHAEL TOMAINO, ESQ.

7

8   Attorney for Defendant:  CLIFFORD CHANCE US LLP
   RBS                  31 West 52nd Street
9                         New York, New York 10019-6131
                         BY:  ROBERT HOUCK, ESQ.

10

11  Attorney for Defendant:  SULLIVAN & CROMWELL LLP
   Standard Charter Bank   125 Broad Street
12                        New York, New York 10004-2498
                         BY:  ANDREW J. FINN, ESQ.

13

14  Court Reporter:        SHERNELLE GRIFFITH
                         shernelle.griffith.edny@gmail.com

15

16  Proceedings recorded by mechanical stenography.  Transcript
   produced by computer-aided transcription.

17

18

19

20

21

22

23

24

25

1            (In open court; all present via videoconference.)

2            THE COURTROOM DEPUTY:  Civil cause for a status

3    conference, Docket 18-CV-7359, Freeman v.  HSBC.

4            Before asking the party to state their appearances,

5    I would like to note the following:  Persons granted remote

6    access to proceedings are reminded of the general prohibition

7    against photographing, recording, and rebroadcasting of court

8    proceeds.  Violation of these prohibitions may result in

9    sanctions, including removal of court-issued media

10   credentials, restriction as to future hearings, denial of

11   entry to future hearings or any other sanctions deemed

12   necessary by the Court.

13           Will the parties please state their appearances for

14   the record; starting with the plaintiffs.

15           MR. OSEN:  Good morning, your Honor.

16           This is Gary Osen from Osen LLC on before of the

17   Freeman 1, Freeman 2, and Bowman plaintiffs.

18           THE COURT:  Good morning to you, Mr. Osen.

19           MR. CHAREST:  Good morning, your Honor.

20           Daniel Charest from Burns and Charest on behalf of

21   the Stephens plaintiffs.

22           THE COURT:  Good morning to you, Mr. Charest.

23           MR. CHAREST:  Thank you.

24           MR. HANCHET:  Good morning, your Honor.

25           Carmine Boccuzzi for defendant Commerzbank.

1          THE COURT:  Good morning to you.

2          MR. HANCHET:  Good morning, your Honor.

3          Mark Hanchet from Mayer Brown on behalf of the HSBC

4  defendants.  With me is Robert Hamburg also from my firm.

5          THE COURT:  And could you spell your name for me.

6          MR. HANCHET:  Yes.

7          H-A-N-C-H-E-T.

8          THE COURT:  And your colleague, sorry I missed that.

9          MR. HAMBURG:  It is Robert Hamburg. H-A-M-B-U-R-G.

10          THE COURT:  Good morning to both of you.

11          MR. HAMBURG:  Good morning, your Honor.

12          MR. LAKATOS:  Good morning, your Honor.

13          Alex Lakatos from Mayer Brown and Marc Cohen on

14  behalf of Credit Suisse.  I will spell my last name.  It's

15  L-A-K-A-T-O-S.

16          THE COURT:  Okay.  I see yours actually on the

17  screen.

18          Anyone else for defendants?

19          MR. TOMAINO:  Yes, your Honor.

20          Good morning.

21          This is Michael Tomaino with Sullivan and Cromwell

22  for defendants Barclays.

23          THE COURT:  Okay.  I think we have Mr. Finn I see on

24  the screen.

25          MR. FINN:  Yes.

1          Good morning, your Honor.

2          Andrew Finn on behalf of Standard Chartered Bank.

3          THE COURT:  Okay.

4          MR. HOUCK:  And Robert Houck from Clifford Chance

5     for defendants RBS.

6          THE COURT:  Anyone else?

7          All right.  So as everyone is aware, we are here to

8     kind of recenter ourselves, if nothing else, after all of the

9     events from the last couple of years, which have included this

10    case going up to the Circuit and then various other related

11    cases going before both the Circuit and the Supreme Court.

12    Interestingly enough, the Twitter v. Taamneh; T-A-A-M-N-E-H.

13    I'm not quite sure how to pronounce it, but Taamneh, may be,

14    case was decided in May of this year.  And so, these cases or

15    the collection of cases before me had been stayed pending the

16    Twitter decision, but that now has been resolved.  So it's a

17    certainly an appropriate time to get together and discuss the

18    various issues about amendment dismissal, et cetera.  And what

19    is the future of these cases.

20         Mr. Stephens, your case -- I'm sorry, Mr. Charest,

21    your case is obviously -- I think its been stayed throughout

22    or after it was joined or related to me, as I recall.  Correct

23    me if I'm wrong.

24         MR. CHAREST:  You are not wrong.  It's been stayed.

25         THE COURT:  Okay.

1          MR. CHAREST:  Thank you.

2          THE COURT:  But the effect of all of what's been

3    happening in Freeman 1, 2, cases and the Bowman cases

4    obviously has impact on your case as well.

5          Is that fair to say?

6          MR. CHAREST:  So the procedural history on the

7    earlier case does not apply to us, but the -- my sense and my

8    mission here is just duck tailed in with the herd and then

9    amend along with everybody else and try to make that work.

10          THE COURT:  Okay.  So let's talk about the proposed

11   amendment.  I know, Mr. Osen, you had proposed what appears to

12   be two alternatives to how to amending with respect to Freeman

13   1 and 2 and then Bowman sort of collectively.  And I think

14   option one was to vacate the dismissal in Freeman 1 and then,

15   I guess, allow amendment there.  Or secondly, to allow Freeman

16   2 and Bowman plaintiffs to join Freeman 1 plaintiffs, aiding

17   and abetting claims.

18          Now, I may have misunderstood that, but tell me what

19   you're proposing.

20          And let me say one thing before I open the floor to

21   you.  When I am puzzling over, and admittedly it's been awhile

22   since I focused on the rather complicated history of these

23   cases, is that as things stand right now, I've have dismissed

24   Freeman 1 case based on the conspiracy charges.  And at the

25   time the case went up on appeal, I had said that there weren't

1    any aiding and abetting claims brought under JASTA in Freeman

2    1 and that had to do with the timing of JASTA being passed,

3    which occurred while the motions to dismiss were pending in

4    Freeman 1.  And the Circuit essentially confirmed that aspect

5    of my ruling, which essentially was that there weren't any

6    aiding and abetting claims to be considered in Freeman 1.

7         And then, in Freeman -- and later after the Circuit

8    ruled, I did dismiss -- I shouldn't say that after the Circuit

9    ruled, but I think while the case was still pending, while

10   Freeman 1 was still pending before the Circuit, I dismissed

11   Freeman 2 and Bowman.  And because those cases included aiding

12   and abetting claims, I specifically and expressly decided the

13   motion to dismiss as to aiding and abetting under JASTA, under

14   obviously the same exact circumstances as presented in the

15   Freeman 1 case or essentially the same circumstances.

16        So I guess what I'm puzzling over is, why would

17   amendment be appropriate in any of these cases since in effect

18   I think the idea of amendment would be to bring these aiding

19   and abetting charges, which I've effectively ruled on -- and I

20   anticipate what you're going to say in part is somehow the

21   Circuit's decision in Honickman; which is H-O-N-I-C-K-M-A-N,

22   and may be Twitter, somehow have changed standard such that

23   the Freeman 2 and Bowman cases and even Freeman 1, if they

24   were amended would survive a motion to dismiss even as to the

25   aiding and abetting claims.

1          So I know that was a little bit disjointed, but tell

2    me what you're thinking about in terms of amendment with that

3    understanding of why I'm confused about why any amendment

4    might be appropriate in any of those cases?

5          MR. OSEN:  Sure.  Thank you, your Honor.

6          I think we largely agree with your sort of summary.

7    I think -- well, there are two ways we could approach this

8    sense of clarity as a bit challenging given the history you

9    made out.  Our proposal is basically in three-fold or three

10   steps.  And I will, I promise, address the sort of the

11   futility argument or question that you raised.

12         So the first thing that we think would make sense

13   would be to file a motion and consolidate Bowman and Freeman

14   2.  And that's just a housekeeping thing so that we don't have

15   a single plaintiff case sort of tail wagging the dog as it

16   were.  And then, the second would be to have the Court grant

17   us leave to amend that consolidated Bowman/Freeman 2 claim.

18   For the reasons your Honor has stated, I think your Honor's

19   decision in Freeman 2 predated both the Second Circuit's

20   decision in Kaplan v. Canadian Bank and the Honickman

21   decision.  Your Honor cited the lower court decision in Kaplan

22   three times and Honickman, I believe, 16 times in the Freeman

23   2 decision.  And so, those were effectively overruled by the

24   Circuit.  In the case of Kaplan, the decision was reversed.

25   And Honickman was affirmed on other grounds, but with the

1    legal standard and holdings of the district court first.

2              So we think that there's an entirely different

3    playing field than there was when your Honor ruled in Freeman

4    2.  And in fact, when your Honor subsequently ruled on the

5    Bank Saderat aiding and abetting claim, Kaplan and Honickman

6    had not yet been decided by the Circuit, but your Honor relied

7    upon the part on the decision by Judge Amon in the Barclay v.

8    GBL case which had come out interim.  So clearly there's been

9    sort of a C-change in the law on aiding and abetting or at

10   least the interpretations by various courts and how to apply

11   it.

12             And as your Honor eluded to a moment go in Twitter

13   v. Taamneh, the Supreme Court further affirmed in our view the

14   broader principles annunciated in Kaplan and Honickman, which

15   is to say that, broadly speaking, the touchstone of liability

16   for aiding and abetting under JASTA is foreseeability.

17   Whether the criminal conduct of the defendant relative to the

18   entries sustained by the plaintiff, whether that was a

19   foreseeable risk of conduct in which they engaged.  So

20   obviously it's very different than the sort of free Taamneh,

21   free Kaplan template, which existed when your Honor back in

22   Freeman 1 was relying principally on the Rothstein v. UBS

23   paradigm and primary liability.  There's been a lot of water

24   under the bridge as your Honor eluded to, but not just the

25   pandemic but a series of cases that have come down since then.

1          So with respect to Freeman 2/Bowman, obviously

2    there's no final judgment entered in those cases.  The Second

3    Circuit's decision over the last couple of years as well as

4    the Taamneh -- the Twitter v Taamneh case provided both the

5    parties and the Court far more guidelines just on the aiding

6    and abetting liability.  And more broadly speaking obviously,

7    Rule 15 amendment is generally supposed to be liberally

8    granted.  So we think as far as Freeman 2 and Bowman is

9    concerned, there's really no question about our right to amend

10   and to have the case decided on its merits based on the

11   current state of the law.  And, of course, nothing in that

12   would preclude the defendants of course from moving to dismiss

13   and, you know, making the arguments I'm sure you'll hear.  So

14   that's sort of the things we have on the Freeman 2/Bowman side

15   of things.

16          And then, let me just add one wrinkle because one

17   question would be, of course, from your Honor about timing.

18   And part of what we envision in amending Freeman 2/Bowman or

19   consolidated case, if your Honor goes that way, would be to

20   ask the district court in Bartlett to allow us to incorporate

21   certain information we gathered from third-party subpoenas in

22   that case and to include them in some form under seal or

23   redacted form in a Freeman consolidated amended complaint.

24   And so, there might be some question of when that actually

25   gets sort of resolved before the Bartlett court in terms of

1   what the process would be for sealing that kind of

2   information, but broadly speaking, we would hope to file, if

3   your Honor allows us, to do so within 90 days, baking in the

4   timely update before Magistrate Judge Merkl and sealing things

5   in Bartlett.

6           THE COURT:  Okay.  Who has the Bartlett case?  Which

7   district court judge?

8           MR. OSEN:  Judge Amon.

9           THE COURT:  Oh, that's right.  We talked about that

10  decision.

11          Okay.  But you said there were two stages.  I got

12  two, which is one, consolidate Bowman and Freeman 2, second

13  stage would be amend in that consolidated case.  And then

14  third, what about Freeman 1, I guess, generally.

15          MR. OSEN:  Right.  That's the third.

16          THE COURT:  Okay.

17          MR. OSEN:  That's the -- and that is, as we said in

18  our prior letters, that we -- the procedural remedy would be

19  vacatur pursuant to Rule 16(b)6), and for leave to amend.

20  And, of course, if that were granted, then we'd probably move

21  to consolidate the three complaints into one.

22          THE COURT:  I got it.

23          MR. OSEN:  Essentially, the Freeman 1 amended

24  complaint would retrack whatever we submit in Freeman 2.

25          THE COURT:  Okay.  All right.  Let me just turn very

1   briefly to you, Mr. Charest, right?

2              MR. CHAREST:  Charest.

3              THE COURT:  Yes.

4              Let me ask how what you're envisioning the next

5   steps to be for Stephens and how any of what we're discussing

6   might affect that.  And then obviously I'll hear from some of

7   the defendants.

8              MR. CHAREST:  Sure.

9              So the amendments we have in mind are just like what

10  Mr. Osen described, which is to both address the current state

11  of the law, but also to the extent we can get access to the

12  third-party subpoena information and present it in a way that

13  is complaint with the other court's rulings on, you know,

14  confidentiality and whatnot and to add those additional facts

15  as well.  So it's both to address the legal standards, but

16  also to add new facts because there's been a few years, right,

17  since we filed the original complaint.

18             THE COURT:  Okay.  So you essentially seek to amend

19  as well along the same lines that Mr. Osen is discussing?

20             MR. CHAREST:  Yes.  That's correct, ma'am.

21             THE COURT:  Okay.  And remind me, I'm so sorry, you

22  had obviously different plaintiffs, but do the facts emanate

23  from the same set of circumstances?

24             MR. CHAREST:  They're different in tax, but the same

25  on the defendants perspective.  My perspective and the defense

1   perspective is the same.  The defendants might disagree.  You

2   know, what we try to do is track the -- sort of the non-attack

3   aspects from the Freeman 1.

4                THE COURT:  Essentially the theory being that the

5   defendants aided and abetted elements of Iran in funding

6   terrorist sponsored attacks in Iraq; is that correct?

7                MR. CHAREST:  Yes, ma'am.

8                THE COURT:  Okay.  All right.

9                Now, I'll open the floor to defendants.  But may be

10  in order to do this in an orderly fashion, how about I call

11  out the different defendants and see if you want to respond.

12               So I'll start with HSBC, which is I think is

13  Mr. Hanchet, and I apologize if I mess it up, and Mr. Hamburg.

14               MR. HANCHET:  Yes, your Honor.

15               It's Mark Hanchet for HSBC.

16               And the defendants met recently, at least initially,

17  we like Mr. Boccuzzi to address these issues.

18               THE COURT:  Terrific.  I appreciate it.

19               So Mr. Boccuzzi.  And then if anyone else wants to

20  add anything, you'll let me know.

21               MR. BOCCUZZI:  Thank you, your Honor.

22               Good morning.

23               So I guess just to go through the three legs.  On

24  Freeman 1, we don't think that there's an available remedy for

25  a motion to amend or reopen.  The Second Circuit explicitly

1    affirmed your Honor's conclusion that the aiding and abetting

2    claims had been forfeited in this case.  The plaintiff are

3    seeking cert in the Supreme Court, but not on that issue.  So

4    that issue I think is now foreclosed and done just based on

5    res judicata in the like.  As to the surreption relating to

6    the conspiracy theories, the defendants are opposing that in

7    July, and I think we'll have an answer from the Supreme Court

8    on the surreption after the first conference in late

9    September or whenever that is.  So I think Freeman 1 is really

10   done for purposes of any further proceeding.

11           And then, on Freeman 2, while you know, plaintiff

12   stressed Honickman and Kaplan, I think he seriously

13   underplayed the importance of Twitter or Taamneh or how you

14   would refer to that case going forward, but that did several

15   important things that I think basically foreclosed and will

16   demonstrate the futility of the proposed pleading because

17   importantly it trained on the need to make, you know,

18   plausible allegations tieing the defendants conduct to the

19   specific act that injured the plaintiff as opposed of -- by

20   the idea of aiding and abetting some transcendent enterprise.

21           And, of course, even here we're removed from the

22   enterprise of any FTO because the OFAC violations that all

23   these claims are based on are in connection with, you know,

24   Iran, et. cetera.  So we're already another step removed,

25   further removed, from the, you know, facts of Twitter, which

1    were held not to sustain a claim.  And there, of course, the

2    allegations that Twitter was actually interacting with the

3    FTOs in those matters that have done various attacks.  And

4    then, also the decision in Twitter was very clear about the

5    scienter standard being quite demanding and (videoconference

6    interruption) requiring intent to facilitate again the act

7    that caused the injury and not to engage in OFAC violations,

8    et cetera.

9            And then, the Court was also very, I thought -- I

10   don't know the word, but helpful or explaining sort of what we

11   are all scratching our heads over with that Halberstam

12   (phonetic) case and trying to translate into this world the

13   facts of a married husband and wife couple, who were a burglar

14   and his wife at home or may be common law spouse, and sort of

15   saying you can't just cookie cut that onto what are very

16   different and much more attenuated facts and sort of saying

17   you got to sort of apply those factors in a way that's

18   consistent.

19           So we think, you know, all that -- and clearly to

20   the extent there's any looser language in say Honickman, when

21   I know the plaintiffs can point to the general awareness

22   language, that's clearly tightened up now by the Twitter case

23   and I don't think save these complaints.  So we think there's

24   going to be a futility problem.

25           And obviously we're in an odd posture here because,

1  you know, I guess but for plaintiffs not following fully or

2  completing what the Court instructed them to do in terms of

3  finishing up what the damages inquest as to Saderat, we

4  probably would have had final judgments and these cases might

5  have been in the Circuit, but I guess now based on that sort

6  of oddity in the record we're still sort of before your Honor.

7  And so, we've got this -- you know, some new cases that came

8  along, but I think, you know, may be whereas Honickman and

9  Kaplan, there might have been some arguments.  I really think

10 thing are foreclosed now based on Twitter.

11        THE COURT:  Mr. Osen, did you want to respond at all

12 because to one at least more in terms of managing the next

13 steps, I have a pretty clear idea.  And so, you don't need to

14 get too much into the substance of arguing the issues, but if

15 you wanted to add anything about how best to proceed, go

16 ahead.  I was going to make a proposal in terms of laying out

17 some briefing schedule and some timelines based on what both

18 sides have said.  And the same is true for you, Mr. Charest.

19        Mr. Osen, did you want to say anything further?

20        MR. OSEN:  Sure.

21        Thank you, Your Honor.

22        Just two things and I promise I won't litigate the

23 entire decision this morning, but obviously that case as the

24 Court described it involved passive nonfeasance.  The failure

25 to remove content rather than active conduct.  And the Court

1   explicitly said that the kind of conduct that aiding and

2   abetting liability for a campaign of terror attacks would be

3   something pervasive and systemic.  That's the Court phrase.

4           We would submit that this is an apparent and dynamic

5   example of pervasive and systemic conduct over the course of a

6   decade involving hundreds of billions of dollars.  So again,

7   without going into the entirety or preview of each sides

8   motions, I'll stop there.

9           With respect to the vacatur issue, I think it's

10  important.  And just very briefly to sort of refresh

11  everyone's recollection because it's been four years since

12  that faithful October 2019 hearing, but in that hearing your

13  Honor expressly stated that you are not going to preclude the

14  plaintiffs from amending their complaint with respect to aid

15  and abetting liability under JASTA.  And that's at page 45,

16  line six to nine of the transcript.

17          And then, you also discussed with us consolidating

18  the three Freeman cases with the idea that the parties might

19  come to some agreement about a stipulated dismissal to allow

20  all three cases to go before the Circuit at the same time.

21  And lastly to that end, you told the plaintiffs time to appeal

22  so that we could work out a consolidated amended complaint

23  that would include JASTA claims consistently or all that is

24  JASTA aiding and abetting claims for all three complaints,

25  including Freeman 1.

1        And then, as your Honor may recall, on November 25,

2   2019, you issued a minute order that came out because of the

3   Deng decision, D-E-N-G, in the Second Circuit, which suggested

4   that you didn't have the opportunity or the authority I should

5   say to call the time for appeal.

6        THE COURT:  Right.

7        MR. OSEN:  And then suggested that given -- the

8   plaintiffs might wish to notice their appeal, which was about

9   36 hours later.  So we filed the Freeman 1 appeal under very

10  unusual procedural circumstances.  And it's our view that's

11  precisely the kind of circumstances that vacatur -- we leave

12  to amend are appropriate for.  And again, without previewing a

13  motion for vacatur, there's a six-part standard of grounds to

14  deny vacatur, undue delay, bad faith, dilatory motive on the

15  part of the -- repeated failure to cure deficiencies

16  previously allowed, undue prejudice to the party and futility.

17       So all we're asking for procedurally is the

18  opportunity to brief that given the unique circumstances and

19  the procedural history of Freeman 1.  But that's, of course,

20  separate and apart from the Freeman 2 issue, which your Honor

21  stayed.  And let me sort of further procedural wrinkle, I

22  apologize your Honor, but it's just the nature of the record

23  in this case.  Is that we also had a separate issue going back

24  several years now with respect to one claim in the Freeman 2

25  pertained to CommerzBank.  Which your Honor had said they had

1    held -- that they had waived their personal jurisdiction

2    objection and then we moved at that time, that was back in

3    2021, to amend just as to that claim, the Freeman 2.  And

4    ultimately, your Honor, we agreed with the defendants -- your

5    Honor agreed to wait until the Freeman 1 Second Circuit

6    decision came out because it might address the aiding and

7    abetting question in that case.  So that was held in abeyance.

8    But that claim against Commerzbank was for its role in

9    transferring funds to the very same entity that was at the

10   center of the Kaplan Second Circuit decision.

11            So it's a complicated back story and procedural

12   history, but I don't think that it's accurate to state that

13   Freeman 2 remained opened because we failed to pursue our

14   claims for damages.

15            THE COURT:  Against Bank Saderat?

16            MR. OSEN:  Right.

17            THE COURT:  S-A-D-E-R-A-T.

18            No, I recall the rather convoluted history of this

19   case and was refreshing my memory just before we started the

20   proceeding, I was revisiting, in fact, my comment at the

21   October 28th oral argument that was in 2019.  And to be

22   perfectly honest, I think what I had intended to convey was

23   that, and this was exactly what I said, I am not going to

24   preclude the plaintiffs from amending if we get to that point,

25   and I'll discuss that later, their complaint with respect to

1    aiding and abetting liability under JASTA.

2            And to be frank, I was really envisioning, when I

3    said if we get to that point, or trying to anticipate if the

4    case came back to me because the Circuit reversed me on my

5    denial or dismissal, rather, of the conspiracy decision.

6    Sorry, the conspiracy claims.  Which was really the thought in

7    my head albeit not particularly well expressed, that's why I

8    added the, if we get to that point.  What I didn't think about

9    or think through perhaps, was the fact that we had these other

10   related and potentially consolidatable, and I do agree

11   everything at some point should be consolidated or should have

12   been consolidated, I wasn't really thinking about the fact

13   that those were still out there and might provide some avenue

14   via consolidation to reintroduce or introduce, rather, the

15   aiding and abetting claims with respect to Freeman 1.  But,

16   it's not particularly relevant, I think, because the legal

17   issue I think at this point is what, if any, authority I have

18   after the Second Circuit basically found waiver in effect with

19   respect to the plaintiff's in Freeman 1 bringing an aiding and

20   abetting claim.  And I think that's the stickier issue

21   regardless of what I said in October 2019.

22           But let me at least hear -- if you'd like to say

23   something, Mr. Charest, anything about how we should proceed

24   versus getting into the substance or merits of the arguments.

25           MR. CHAREST:  Sure.  I'm kind of a pragmatist in

1   this sense.  Rather than having a fight about futility to get

2   permission to amend, since the defendants are certainly going

3   to file a motion to dismiss anyway, to one it just makes sense

4   to cycle through amend, our plaintiff can give you our best,

5   and then defendants have at rather than fight about should we

6   do that first, you know, and then have a second dismissal

7   fight again.

8           So, to me, it's just simpler, open the door, let us

9   in, let us say our peace and then we -- I mean, I always

10  remind myself we're talking about pleadings here.  Everyone

11  already knows what the claims are.  It's not like a real kind

12  of notice kind of issue.  The question is, do we get the

13  chance to say our best facts, articulate our best thoughts,

14  and let them have a crack at it.  So, to one, the question of

15  should you be able to amend or not is an easy yes because

16  they're going to move to dismiss anyway.  And that's as to my

17  guys.  I can't really speak to the procedural issues on

18  Freeman obviously.  That's not my -- I think we're on the same

19  boat on amendment, but the Freeman 1 stuff I don't really

20  understand or weigh on personally.

21          THE COURT:  Are you seeking to have your case

22  consolidated with whatever results from all this briefly,

23  let's just call it Freeman 2 and Bowman --

24          MR. CHAREST:  Sure.

25          THE COURT:  -- or do you just want it still to be

1  treated like a related case?

2          MR. CHAREST:  I would be happy to be consolidated

3  for the purposes of discovery.  I think it would be much more

4  efficient and then we can see how that goes.  I think for the

5  trial, my ambition would be to not to try them together, but I

6  know -- I would take it one step at a time, which is to say,

7  for the purpose of discovery all pretrial issues, I think we

8  should probably be consolidated.  Beyond that, I guess we have

9  to burn that bridge when we get to it.

10          THE COURT:  What seems to make the most sense to me

11  after hearing from everyone is addressing first the question

12  of amendment and futility.  Obviously the opposite sides of

13  that coin.  And then, my only question, and I open the floor

14  again to all of you to give me your opinion, is whether or not

15  we simultaneously have you brief the vacatur issue with

16  respect to Freeman 1 or whether or not it makes more sense to

17  talk about amendment, because if I deny amendment on the basis

18  of futility, then there's no reason to discuss vacatur expect

19  for this nagging hanging bit about Commerzbank, but I don't

20  I'm actually not sure procedurally whether that defendant is

21  still, I think, survives in some sense any appeal just because

22  that issue was never raised.  And I can't remember, I don't

23  think we resolved that question because it was stayed pending

24  the appeal on the claims against the other banks.

25          Is that your recollection, Mr. Osen, because I think

1    that's what you just said?

2            MR. OSEN:  Yeah.  I'm sorry, your Honor.

3            The issues is a little bit convoluted as you eluded

4    to.  So I think -- let me try to rephrase it.

5            THE COURT:  Wait.  Before you say that though,

6    actually I'm rethinking what I just said though.  If the

7    claims against Commerzbank are the same as every other

8    defendant, say Bank Saderat, then actually the dismissal of

9    the conspiracy claim would essentially moot the question about

10   jurisdiction that was raised before because the case would

11   still be closed for its failure to state a claim even if the

12   other issues were resolved and they were still in the case.

13           MR. BOCCUZZI:  That's right, your Honor.

14           THE COURT:  Who said that?

15           MR. BOCCUZZI:  Sorry.  That was counsel for

16   Commerzbank.

17           THE COURT:  Yes, Mr. Boccuzzi.

18           So I raise that question, but now that I think about

19   it, I'm not sure that little wrinkle matters in terms of

20   deciding should we address amendment first and then -- in

21   other words, proceed serially and then address whether Freeman

22   1 should be revived or reopened and then consolidated or does

23   it make sense to simultaneously brief them?  And this is

24   obviously, each side is going to weigh the likelihood they are

25   going to win or lose, but I'd be interested in hearing first

1    from you Mr. Osen on that.

2             MR. OSEN:  To be clear, before I get to that, let me

3    respond.  It is a specific claim for relief that is different

4    from the other aiding and abetting claims.  It involves the

5    allegations that the CommerzBank provided services to the

6    Shaheed Foundation or Mortars Foundation --

7             THE COURT:  That's right.

8             MR. OSEN:  -- that belongs to Hezbollah.  So again,

9    how that is affected by the Circuit's prior rulings and by the

10   Twitter and Supreme Court case is a separate question, but in

11   terms of that it being of a different type than the other

12   claim, it certainly is.  Our view --

13            THE COURT:  Pause for one second for the court

14   reporter.

15            C-O-M-M-E-R-Z.  B-A-N-K.  All one word.

16            Go ahead, Mr. Osen.

17            MR. OSEN:  Sure.

18            And so, our proposal was to -- was to brief and

19   submit the amendment -- the proposed amendment in roughly

20   90 days per the Freeman 2, Bowman cases, and I guess also for

21   Mr. Charest -- Stephens's case.  And then, 30 or 45 days later

22   submit as to vacatur and lead to amend.

23            And our thought process was as follows:  Your Honor

24   can ultimately decide -- if you decide the issue seriatim

25   rather than together, then that's up to you, but what it

1    affords us is an opportunity to do two things.  One, is to

2    focus on amending the complaint as a standalone project and

3    then deal with the vacatur issue when it can have our full

4    attention.  And two, it gives us an opportunity to put forth

5    our record on vacatur, just so we have it.  And again,

6    whatever your Honor decides, vacatur is within the Court's

7    discretion.  So it just gives us both an opportunity to sort

8    of space it and time it more efficiently.  And in the end,

9    whether you decide them jointly or, you know, or separately is

10   entirely up to the Court.

11             THE COURT:  Right.

12             Well, I was thinking actually more about the use of

13   everyone's resources.  So obviously, if you brief things

14   simultaneously, then you will expend those resources for the

15   briefing no matter how I rule or how I decide to rule.

16   Whereas if we do it serially, I decide the amendment issue

17   first, it might have the effect, depending on how I rule,

18   saving people work on briefing the vacatur issue because in

19   effect that would be largely mooted.

20             And Freeman 1, that would be addressed separately.

21   It might still survive with respect to the Saderat claims,

22   Bank Saderat, because that's a question of default judgment

23   being sought.  And then CommerzBank, as you mentioned, that is

24   a separate claim in terms of the facts.  And it wasn't and it

25   hasn't been addressed at all by the Circuit.  So that might

1    still survive as a standalone claims.  But like I said, you

2    know, if I didn't require simultaneously or at least

3    contemporaneous briefing on both issues, it might save

4    everybody a little bit of work.  That's all I was thinking.

5              But with that being said, let me turn to the

6    Defense, because the proposal from Mr. --

7              Oh, go ahead, Mr. Charest, what do you want to say?

8              MR. CHAREST:  Yeah.  I wanted to correct something I

9    said earlier, ma'am.

10             There has been no answer yet in our case so I

11   think --

12             THE COURT:  Right.

13             MR. CHAREST:  I can keep the amendment as a right --

14   just to point that out when the Court is thinking about the

15   process that's going down, I just wanted to make that clear.

16   My -- what I was trying to say was, to me it makes sense to

17   let everyone amend, but if there's going to be a fight about

18   futility and all that sort of thing, that's their fight.  And

19   we're going to stand on the sidelines and, I guess, amend

20   anyway.  I want to make sure I didn't misspeak when I said

21   that.

22             THE COURT:  To me, the futility argument or the

23   motion over a leave to amend, they sort of collapse into a

24   motion to dismiss in effect.  Though they have different

25   names, the same amount of the paper gets filed.

1          MR. CHAREST:  That's exactly my point.

2          THE COURT:  No.  I'm with you on the practicality of

3    this.

4          What I'm wondering though from the Defense

5    perspective is whether a schedule of -- and this is what

6    Mr. Osen is proposing, giving them 90 day, and this would be

7    the plaintiffs in all the cases, to file their amended

8    complaints and then there presumably would be some time

9    shortly thereafter within the timeframe motions to amend by

10   the -- sorry, motions to dismiss by the Defense.  And then,

11   while that's going on, Mr. Osen would move for vacatur of the

12   Freeman 1 judgment, I guess 45 to 60 days out, and then there

13   would be briefing of that.  And so, they would run

14   simultaneously basically.

15         And then, let me turn to the Mr. Boccuzzi, even

16   though I view the filing of the motion to amend -- the filing

17   of the amended complaint and briefing over a leave to file a

18   amended complaint it essentially collapse to the same thing.

19   If you have a different view of that, feel free to express

20   that.  But just give me your thoughts on the scheduling or

21   staggering of these different motions.

22         MR. BOCCUZZI:  Sure.

23         On the amend/dismiss question, I think you're right.

24   There is a slight difference in the Stephens case there is a

25   right to amend.  And whereas in Freeman 2 and Bowman, you need

1   to get leave to amend under Rule 15.  And what I'm often been

2   seeing in other case, and I can't remember if we sort of

3   flagged this as a concept which would be in 90 days or

4   whatever we agreed on, Mr. Osen sharing his proposed amended

5   pleadings so defendants can consent to it going in.  Basically

6   means, we don't see any other Rule 15 issue and it really is

7   your Honor saying collapsing into the futility/12(b) point.

8   Rather than, you know, upfront sight/unseen.  You know, we

9   haven't seen any proposed amended complaint just saying, you

10  know, whatever the other grounds of Rule 15 giving those up

11  and really just turning into a 12(b).

12          So I would add in and other defendants may speak to

13  this, if I'm being too babyish, but I think that's a

14  legitimate thing we want to do and, you know, we could give

15  the answer and say, Okay.  Now let's have a schedule on the

16  12(b) motions.  And then, I have to think about it -- and

17  again, may be if other defendants have views on it the way

18  your Honor phrased it or sort of thinking about it, we sort of

19  get those motions on as it were about the sufficiency of these

20  pleadings, the amended pleadings, and then after that you deal

21  with the Freeman 1, because Freeman 1 -- the argument again is

22  Freeman 1.  It is really a res judicata issue.  I think what I

23  was hearing your Honor saying, depending on what you say in

24  the motion to dismiss, Freeman 2, that could also just mean

25  that there's really nothing to even talk about on that.  I

1    think that's what your Honor was getting at.

2              THE COURT:  Yes.  That's what I was getting at.

3              It would be moot even if I thought the grounds for

4    granting vacatur would be valid.  There still would be no

5    basis to revive or reason to revive or reopen Freeman 1

6    because there would be no claims that they could make that I

7    think would survive a motion to dismiss.  Right.

8              I think at this point I have to say, and I apologize

9    if I'm cutting you off Mr. Boccuzzi, it probably just makes

10   sense to adopt some version of the schedule Mr. Osen said, but

11   I like the idea that plaintiffs sharing with the Defense and

12   not via filing it on the record.  The proposed amended

13   complaints.  And then you could style your motion either, I

14   guess, as a motion to, you know, deny leave to amend or as a

15   motion to dismiss.  There are obviously some other issues that

16   would relate to a Rule 15 motion that don't relate to a Rule

17   12.  So I'm not suggesting you have to waive, I guess, your

18   right to argue those, which is the impact of my just letting

19   them file the amended complaint.  May be this is just

20   hyper-technical, but I think that's a good proposal on how to

21   deal with it.

22             And Mr. Osen or Mr. Charest, do you have any

23   objection to proceeding in that fashion just with respect to

24   the amended complaint?

25             MR. OSEN:  I do, your Honor.

1    Because I think the -- whether it's the amended

2    complaint or the proposed amended complaint would have to be

3    on the record.  Have to be on the docket in order for the

4    Court to be able to access it either way.  So while the

5    defendants can give their consent, I think we can all

6    understand that's the unlikely to be given.  And so, as a

7    practical matter, I think the proper way to proceed here is

8    either we file a leave to amend and attach the proposed

9    amended complaint just one way or as your Honor previously

10   suggested, we get the freely given leave to amend and they can

11   just move to dismiss.

12          THE COURT:  All right.  Why don't we do this, it's a

13   little bit hybrid, I guess, because we have two different

14   cases.  So obviously Mr. Charest, you can file your amended

15   complaint without leave because no answer has been filed.  Let

16   have you, Mr. Osen, file a motion for leave to amend and then

17   attach your proposed amended complaint in 90 day.  And then,

18   obviously the defendants can respond.  And it seems to me

19   futility will be the main reason to disallow it.

20          I do want to avoid though having a second bite of

21   the apple in other words.  And then, a motion to dismiss,

22   should I deny the motion for leave to amend.  And there could

23   obviously be different bases.  I just want to prevent that

24   potential, but may be we just address that once the motion for

25   leave to amend is filed along with the amended complaint.  But

1    I want at that point be as efficient as possible.

2                MR. OSEN:  Your Honor, if I may just point out.

3                THE COURT:  Yes.

4                MR. OSEN:  Mr. Charest complaint would be -- I mean,

5    the result of that process would be is that Mr. Charest

6    plaintiffs would have the benefit of the Freeman 2 plaintiffs

7    work product, their knowledge from the Bartlett case and so

8    forth.  That complaint would go forward.  That is, it would go

9    forward for a motion to dismiss.  There would be a question as

10   to whether the Freeman 2 plaintiffs could file the amended

11   complaint.  It seems to me either way the defendant has to

12   brief a motion to dismiss.  So why not just brief a motion to

13   dismiss, a consolidated motion to dismiss.

14               THE COURT:  All right.  Mr. Boccuzzi, do you have

15   any thoughts on that?

16               I mean, that's a fair point, I guess, given this --

17               MR. BOCCUZZI:  The only issue is, your Honor, one

18   plaintiff has right to amend as a right and one doesn't.  And

19   so, what I was proposing is, he shares the amended -- proposed

20   amended complaint.  And then, the defendants can either say,

21   Look, we think you're going to need to make a Rule 15 motion,

22   which we'll oppose, and then we have all of our Rule 15

23   arguments.  Or we could say, You know what, this seems like

24   it's going to be about futility.  Why don't we consent to your

25   filing the amended complaint and we'll move against it and we

1    can move against Stephens the same time and a 12(b).

2          So it's a way to sort of figure out where we are

3    because otherwise I think Mr. Osen is saying we should

4    sight/unseen consent to amendment where he doesn't have

5    amendment as a right.

6          THE COURT:  I mean, I don't think he's requiring you

7    to consent.  He's appealing to me by saying, given the unusual

8    circumstances of the case, I should just grant him leave to

9    amend or file an amended complaint regardless of your position

10   on it.  I think that's essentially what you're, Mr. Osen,

11   correct?

12         MR. OSEN:  That is correct, your Honor.

13         THE COURT:  And if only to marry-up sort of the

14   postures of the two cases so they're essentially in the same

15   posture and everything being briefed in the context or under

16   the rules for a motion to dismiss.  Yes.  I mean, the 12(b)

17   standard rather than the Rule 15 standard.

18         You know, listen, I think there's some practical

19   appeal to that way to proceed.  And I don't know if it's going

20   to have any great impact on the defense not to get a chance to

21   also file a Rule 15 motion.  And candidly, I think there's no

22   question that you're going to file one.  In other words, I

23   don't think there's anything you'll see in this amended

24   complaint that's going to cause you to think, Oh, we'll

25   consent to the filing of the amended complaint.  Surely you're

1   going to move to deny leave to file that amended complaint

2   based on the futility grounds we've been discussing.

3          MR. BOCCUZZI:  Right.

4          It's truly just a way of trying to figure out are we

5   just talking about futility, i.e.12(b) or are we talking about

6   any other grounds that the case law discusses in the context

7   of Rule 15.

8          THE COURT:  But does anything come to mind given

9   that we all pretty much know what's happened before and what's

10  coming down the pipe?

11         MR. BOCCUZZI:  I mean, the usual things people talk

12  about are delay and bad faith.  So --

13         THE COURT:  Yes.

14         MR. BOCCUZZI:  -- and I just don't know what's going

15  to be in pleading.  And so, that's why I sort of offered the

16  path of share it, we can then say what we're going to do one

17  way or the other, and then you'd see a promotion that way and

18  coordinate it with Stephens.

19         THE COURT:  Let's do this:  I am going to grant the

20  Freeman 1 plaintiffs request to file an amended complaint.  I

21  don't recall what number it is at this point.  May be it's the

22  second amended complaint.  Mostly to coordinate and align the

23  two cases and have, I think, one set of briefing in the

24  posture of a rule 12(b)(6) motion, which I think really is the

25  heart of the dispute here.  You could in theory argue delay or

1   bad faith, Mr. Boccuzzi, but I can guarantee you I wouldn't

2   grant any Rule 15 motion on that basis.  Really what I'm going

3   to get to no matter what and no matter how it's styled is

4   whether or not plaintiffs, and now I'm talking about all the

5   cases, have sufficiently alleged aiding and abetting under

6   JASTA.

7            And in light of what the plaintiffs will -- are

8   claiming some kind of C change in the standard in which I

9   think the Defense are arguing is really nothing more than

10  clarification of the preexisting law.  And again, I'm

11  paraphrasing everyone's arguments.  So I just don't want to

12  unduly burden everyone, including myself and my law clerks.

13  So I'm just wanting to -- so I'm going to -- I'm granting

14  right now --

15           Go ahead, Mr. Boccuzzi.

16           MR. BOCCUZZI:  When your Honor started, you said

17  Freeman 1.  I assume you mean Freeman 2.

18           THE COURT:  Oh, Freeman 2.  I'm so sorry, Freeman 2

19  and Bowman.

20           Thank you.

21           Sorry about that.  Yes, you are absolutely right.

22           So Freeman 2 and Bowman, leave is granted under Rule

23  15 to file an amended complainant.  And then, obviously, the

24  defendants will have a right to move to dismiss.  I think at

25  this point we'll dispense with any premotion conference

1   requirement.  Just see if you folks can come up with an agreed

2   upon schedule for any motion to dismiss because I think at

3   this point the lines are pretty clearly drawn given the

4   history of the case and the discussion today.  And then, I'll

5   give you another 60 days.  So first is 90 days to file the

6   amended complaint and then 60 days to move to vacate the

7   decision or judgment in Freeman 1.  This is all directed to

8   you, Mr. Osen.

9           MR. OSEN:  Okay.

10          THE COURT:  And Mr. Charest, you can have 90 days to

11  file your amended complaint as well in Stephens.

12          MR. CHAREST:  Thank you.

13          THE COURT:  You don't need leave from me for that.

14  You can obviously file it earlier, but if you coordinate the

15  timing I think it'll make it easier on the defendants to then

16  have a unified date for any motions to dismiss.  I think they

17  should be omnibus unless you folks think there's some reason

18  to distinguish between the two of them.

19          I understand that from what Mr. Charest is saying is

20  that the theory of liability is the same even if the terrorist

21  events or acts differ.  Only then in and of itself could make

22  some difference.  Since obviously the question is aiding and

23  abetting the principle in some way.  So if you folks decide

24  briefing the Stephens's plaintiffs -- the Stephens's case

25  rather separately from the Freeman and Bowman cases.  That's

1    fine.  I don't care if those end up being separate briefings

2    on motions to dismiss.

3              And then, with respect to the motion to vacate, how

4    much time would defendants want to respond on that?

5              Mr. Boccuzzi.

6              MR. BOCCUZZI:  Sorry.  I'm on mute.

7              So -- and just to be clear, it's 60 days after the

8    90 days?

9              THE COURT:  No.  I think 60 days from today.

10             Is that what you meant, Mr. Osen?

11             MR. BOCCUZZI:  Oh.

12             THE COURT:  You mean 60 after the 90?

13             MR. OSEN:  Yes, your Honor.

14             THE COURT:  Okay.  So 150 days.

15             As far as I'm concerned, it's fine.  As I said

16   before, it's the first issue I really have to wrestle with is

17   the amendment issue and it might drive a lot of the other

18   decisions.  So we're talking 150 days out.

19             And Fida, hopefully you're doing your time

20   calculation.

21             But what do you think Mr. Boccuzzi?

22             MR. OSEN:  The plaintiff and I --

23             THE COURT:  What did you say?

24             MR. OSEN:  I said it's a blink of an eye in the

25   context of this case so Mr. Boccuzzi -- we'd certainly give

 1    defense counsel whatever time they need to respond.

 2                THE COURT:  Right.

 3                MR. BOCCUZZI:  Sorry, your Honor.  I'm just trying

 4    to look at the calendar because given how far, I don't even

 5    know now, we're in the middle of Thanksgiving or Christmas.

 6                THE COURT:  Right.  A little less than three months

 7    out.  So we're talking July, August, September.

 8                Yes.  So it is probably the middle of September --

 9    about the end of September.

10                MR. BOCCUZZI:  Because --

11                THE COURT:  No.  Go ahead.

12                MR. CHAREST:  As a point of order, does it make

13    sense to may be have the defendants to start to move to

14    dismiss around that same 60 day window so that they're moving

15    to dismiss -- they're not necessarily related, I guess, is my

16    point.  And so, 60 days later they move to dismiss at the same

17    time Mr. Osen files his motion to vacate or whatever and then

18    that briefing can, you know, swap timing wise until they all

19    come to an end roughly about the same time and go before the

20    Court.

21                THE COURT:  Right.

22                What do you think, Mr. Boccuzzi, if the defendants

23    filed their 12(b)(6) motions on that 60 days out, which I

24    think is September 25?

25                MR. BOCCUZZI:  Your Honor --

1          MR. OSEN:  Your Honor, I don't think so.

2          MR. BOCCUZZI:  I think September 25 is when the

3     amended complaint comes in.

4          THE COURT:  You're actually right.  I'm so sorry.

5          And 60 days from there should be then November 23 or

6     24.  That might fall --

7          MR. BOCCUZZI:  That's Thanksgiving.

8          THE COURT:  So let's go into December then.  The

9     first week in December.

10          MR. BOCCUZZI:  So December 7th would be the motion

11     to dismiss the amended complaints in Freeman

12     2/Bowman/Stephens's?

13          THE COURT:  Correct.

14          MR. BOCCUZZI:  And then, on December 7th we would be

15     getting a motion to vacate the Freeman 1?

16          THE COURT:  Correct.

17          And then we could perhaps align the responses to

18     those dueling motions or simultaneous motions.  That's what I

19     think Mr. Charest is suggesting.

20          MR. BOCCUZZI:  Okay.

21          THE COURT:  Kind of like, you know, when you have

22     dueling summary judgment motions.

23          MR. BOCCUZZI:  Right.

24          So then, the next thing would be his opposition to

25     the motion to dismiss and our opposition for the motion to

1   vacate?

2           THE COURT:  Right.

3           And I suggest may be 60 days because it sounds like

4   it might be substantial briefing.

5           MR. BOCCUZZI:  So then like around February 1?

6           THE COURT:  Correct.  Right.

7           And then, replies would be due 30 days out for each

8   of those respectfully.

9           MR. BOCCUZZI:  So March 1.

10          THE COURT:  Correct.

11          How does that sound, Mr. Osen and then Mr. Charest?

12          MR. CHAREST:  Yes, for the Stephens's plaintiffs.

13          Thank you.

14          THE COURT:  Mr. Osen.

15          MR. OSEN:  Without reference to the calendar, the

16  timeframe sounds correct, assuming that none of those are a

17  Sunday or a Saturday.  Yes.

18          THE COURT:  Yes.

19          Mr. Boccuzzi.

20          MR. BOCCUZZI:  I think this works.  I would ask that

21  if any defendants -- I don't know if I ever set a schedule for

22  so many defendants all in one swoop.  So I don't want to

23  foreclose anyone from pointing out a problem that I'm missing.

24          THE COURT:  All right.  You have a hand raised, yes,

25  from our colleagues in the -- let's guess.  Hang on.  Let me

1    guess.  It's Mr. Hanchet.

2              MR. HANCHET:  That is correct, your Honor.  Yes.

3              Just one small feature.  I have no problem with the

4    schedule that's been discussed on this call.  However, I do

5    want to reminded Court that at the beginning of all of this,

6    Mr. Osen represented that one of the bases for amending his

7    complaint was obtaining the additional materials in the

8    Bartlett case from a Magistrate Judge in that case.

9              THE COURT:  Right.

10             MR. HANCHET:  It's not inconceivable to me that he

11   would not be able to obtain those materials within 90 days or

12   may be.  I don't know, but that's just one variable in all of

13   this that I think the Court should factor in.

14             THE COURT:  Well, I have a little bit of influence

15   in that regard.  I certainly can talk to Mr. Judge Merkl and

16   just say, Hey, you know, if you could rule on this sooner

17   rather than later, that would be helpful because, you know, it

18   could bollocks up the works.  Now, Judge Amon might also get

19   involved and that's a whole different cattle of fish.  I can't

20   necessarily -- I certainly can talk to her.  And I think I can

21   explain that their decision will affect our schedule.  And I

22   don't think that will be a problem, but obviously if there's

23   some unexpected delay happens then we might have to adjust the

24   schedule period or revisit the question of whether or not

25   Mr. Osen can go ahead and amend without the benefit of that

1    evidence or information.

2           I guess the one thing I'm wondering about, Mr. Osen,

3    is when you say, unsealing, does it mean that they're not

4    allowed to use the information or reference it in any

5    complaint or versus being able to physically get the documents

6    or records unsealed so that you can provide them as part of

7    the discovery?

8           MR. OSEN:  Well, I guess in theory both.  If we ever

9    got to the discovery in this case, there's a protective order

10   in place in the Bartlett case.  So the third-party defendants

11   records are subject to that protective order.  The order

12   states that on motion the party can seek to use another

13   proceeding.

14          THE COURT:  Oh, good.

15          MR. OSEN:  The case law is pretty strong on the, you

16   know, on the efficiency of having the same evidence be used.

17   Especially since here the plaintiffs are not entirely, but

18   largely overlap with the Freeman 1, and two, and Bowman

19   plaintiffs.  So we have possession of the same records for the

20   same plaintiffs, it's just a different case.  So I think I'm

21   quite optimistic they will be available.  The only question

22   will be, you know, the process by which that information is

23   put in a complaint.  Because obviously, we could file such a

24   complaint in a redacted form, but the defendants have to have

25   the benefit of being able to see the allegations, which means

1    that either a protective order would be entered in this case,

2    which we didn't do because there's -- sorry --

3              THE COURT:  Don't worry.  Somebody just walked in.

4    That's all.

5              Go ahead.

6              MR. OSEN:  There's been no discovery in Freeman.  No

7    protective order in place.  So either the defendants would

8    have to enter into a protective order in the next 90 days or

9    the defendants would have to sign the protective order in the

10   Bartlett case so they could have the information.

11             THE COURT:  Well, certainly that second option seems

12   relatively easy to facilitate.  And I would imagine the Court

13   in Bartlett would be agreeable to that.  Given especially that

14   the protective order seems to contemplate that the information

15   could be used in other cases or shared at least in the -- for

16   purposes of other cases.  And you're the plaintiff there and

17   obviously the plaintiff there.

18             So I don't foresee their being a problem with

19   somehow, whatever that form takes, using that information in

20   case and providing it to the defendants in this case.  So

21   while I understand what you're saying Mr. Hanchet, and that

22   may, you know, change our schedule entirely.  I'm optimistic

23   that this all could be worked out based on what Mr. Osen just

24   said.

25             MR. CHAREST:  And in worse case, your Honor, the

1    thing that's going to get delayed is the trigger dates.  Then

2    everything else can shift, if necessary.  Hopefully we can get

3    it done.  It's the Court on docket obviously.  It's better to

4    have set dates that may move then worry about the first one.

5              THE COURT:  Yes.  I think that's fair.

6              MR. FINN:  Your Honor, I think Mr. Osen might be

7    downplaying a bit perhaps we see --(videoconference

8    interruption)

9              THE COURT:  I think everyone is having trouble

10   hearing you, Mr. Finn.

11             MR. FINN:  Can you hear me now?

12             THE COURT:  No.  Not too well.  Try again.

13             MR. FINN:  I'm going to turn off my video.

14             MR. CHAREST:  We can hear you, you're just quite.

15             THE COURT:  May be just try yelling at the computer.

16             MR. FINN:  Can you all hear me now?

17             THE COURT:  A little bit better.

18             Go ahead.

19             MR. FINN:  I put on a headset here.

20             Your Honor, I think that Mr. Osen might be

21   downplaying a little bit the complexities in Bartlett for our

22   client, Standard Charter Bank, obviously a defendant here, is

23   not a defendant in Bartlett, but was subpoenaed for

24   information extensively for that case.  And, you know,

25   meanwhile we had a dismissal in this case, we produced

1    documents in that case on the understanding that they would be

2    used for that case.  Again, we don't know exactly what

3    plaintiffs here are intending to use from that case, but, you

4    know, we obviously have to consider that because these are not

5    necessarily just disinterested third parties in Bartlett, who

6    happen to produce information.  So again, we don't know

7    exactly what the plaintiffs are intending to use, but I do

8    want to flag that issue that may come up depending on the

9    specifics.

10             THE COURT:  That's an interesting point.  So while

11   you didn't have to produce those documents in this case, you

12   were required to produce them in Bartlett and now you see some

13   potential issue with having them essentially produced in this

14   case even though you're moving to dismiss this case once more.

15             Is that sort of the essence of it?

16             MR. FINN:  Yes, your Honor.

17             And you know, as a third-party in Bartlett, the

18   understanding when we get a subpoena there that that would be

19   used for that case and not used as a basis three years later

20   to try to amend, you know, a dismissed complaint in another

21   matter.

22             THE COURT:  Against you?

23             MR. FINN:  Exactly.

24             THE COURT:  Yes.  Meaning, your client.  I'm sorry.

25             That is an interesting wrinkle.

1          Mr. Osen, do you have any thoughts on that because

2     it is a little bit of a Twitter.

3          MR. OSEN:  My only thought is I think the law is

4     pretty clear on the use of the materials.  And, you know, we

5     don't un-know things that we learn in other cases.  Certainly

6     the Bartlett case is not a stalking horse for discovery in

7     this case.  This case was dismissed when Bartlett is continued

8     on and the Court there granted us discovery on the basis of

9     being stated in a claim matter.  So I don't think there's a

10    legal question here.  I understand that it is very sensitive

11    for Mr. Finn's client because without characterizing it

12    further, there are materials relating to various defendants in

13    their assistance to has been contained in some of those

14    records.  Unsurprisingly because the case in Bartlett focusing

15    on his financing.

16          THE COURT:  Let me ask you a question:  Do you

17    anticipate using some of the information that Standard and

18    Charter provided in the Bartlett case in your amended

19    complaints, if you know?

20          MR. OSEN:  Not exclusively Standard Charter.

21          THE COURT:  Okay.  Well, you folks obviously would

22    have to address that case.  I don't know if you're involved in

23    that one as well, Mr. Finn, but you obviously are on notice

24    about what might be coming with respect to a motion to unseal

25    in Bartlett, at least limitedly, or to at least share in

1    Bartlett.

2           I guess if an issue arises that I need to address,

3    let me know.  Otherwise, it seems like that might end up

4    getting resolved in the Bartlett case, potentially.  I think

5    Mr. Osen has a point that, you know, if a party obtains

6    information in the context of one case, it doesn't really

7    preclude them, let's say, if they think it establishes other

8    liability against a third-party, I don't think, from using

9    that information against a third-party, even to bring an

10   action from the start as opposed to here may be using it in a

11   context of an already initiated action.  I must confess, I

12   haven't really looked into this issue.  So why don't you folks

13   see if there's going to be a problem in Bartlett and let me

14   know.  And let everyone else know that you think that there

15   might be some protracted litigation over this.

16          Anyone else in a similar situation to Mr. Finn's

17   claim?

18          All right.  So here are the dates:

19          The amended complaint should be filed by

20   September 25, 2023, the motions to dismiss should be filed by

21   February 7, 2024.

22          THE COURTROOM DEPUTY:  That's December 7th, Judge.

23          THE COURT:  Sorry.  My handwriting is bad,

24   December 7, 2023.  And actually I'll talk about bundling in a

25   minute.  December 7, 2023 for motions to dismiss.  And then,

1  similarly, December 7, 2023, for the motion to vacate from

2  Mr. Osen and that's in Freeman 1.  And then -- and I should

3  have been clearer, the amended complaints are in the Stephens

4  case and then the Freeman 2 and Bowman case, and as on the

5  motions to dismiss.  And then, February 1, 2024 for the

6  oppositions both for the -- let me think about this.  Yes.

7  Both for the motion to vacate and then the motions to dismiss.

8  And the motion to vacate will be in Freeman 1.  And with

9  respect to the motions to dismiss it will be in Freeman 2 and

10 Bowman.  And then, finally replies on March 1, 2024 in the

11 respective cases on the respective motions.

12          Now, as you may or may not know, I encourage or ask

13 the parties if they can without filing any other existing

14 deadline, like a statutory deadline, follow the bundling

15 practice, which mean, only file your respective briefing on

16 the last date.  So that would be March 1, 2024, with respect

17 to all of the motions that are being proposed.  The motions to

18 dismiss and also the motion to vacate.

19          And as I've explained before, perhaps to you folks

20 even, that allows me to be more liberal with granting

21 extensions if they are requested by the parties because I have

22 internal deadlines for ruling on motions and they are

23 triggered by the filing of the motion itself.  So once that

24 clock starts running, it's harder for me to give you more time

25 to brief your motions because it eats into the time I have to

1   resolve them.

2          All right.  Mr. Osen.

3          MR. OSEN:  One minor request, your Honor, I think

4   the initial deadline for the amended complaint was

5   September 25th.

6          With the Court's indulgence, we would ask for one

7   additional day since I believe the 25th is Yom Kippur.

8          THE COURT:  Oh, sorry.

9          Okay.  We should fix that.

10          You want it afterwards, I assume?

11          MR. OSEN:  Yeah.  Just the next day would be fine.

12          THE COURT:  Okay.  Yes.  Absolutely.

13          So we'll make it September 26th.

14          Is that still during the week and not a weekend,

15   right?

16          MR. BOCCUZZI:  Tuesday.

17          THE COURT:  Tuesday.  Okay.  Perfect Tuesday.

18   That's better.

19          MR. BOCCUZZI:  Excuse me, your Honor.

20          THE COURT:  Yes.

21          MR. BOCCUZZI:  So on the bundling that just means on

22   the different dates prior to March 1, people are just serving

23   each other and then it all gets filed at the end.

24          THE COURT:  Correct.

25          And then, the only thing we do ask you to file is

1    the letter, your cover letter, when you serve it.  File your

2    cover letter on the docket so that we'll know that you

3    complied with the deadlines.  And I say, filed, it's not

4    treated as a motion.  Just file it as a docket entry. you know

5    as a docket entry.

6                MR. BOCCUZZI:  I see.

7                It's a letter from one party to other and then

8    CC-ing the Court.

9                THE COURT:  Exactly.  Just memorializing the fact

10   that you have served the other side.

11               MR. BOCCUZZI:  And then, I can't remember in the

12   past, I think it wasn't baked into the order, it was just left

13   to when paper start getting filed like the amended complaint,

14   if the parties want to negotiate extended pages.  We would

15   just agree to that ask your Honor.

16               THE COURT:  Exactly.

17               MR. BOCCUZZI:  And expand on extended pages as we

18   go?

19               THE COURT:  Exactly.

20               MR. BOCCUZZI:  Thank you, Your Honor.

21               THE COURT:  All right.  Good.

22               Any other questions from anyone else?

23               MR. CHAREST:  I think strictly speaking, we're still

24   stayed in that -- I think probably from the Defense

25   perspective they want that so they don't get into any kind of

1  default issue, but I'm not sure for them.  It seems to me we

2  should stay until that.

3            THE COURT:  You mean until the filing of your

4  amended complaint?

5            MR. CHAREST:  Yes, ma'am.

6            The order of the date and then I guess we're going

7  to stay, but I'm just thinking in my head about the other

8  aspects of it.

9            THE COURT:  That's fine.

10            I mean, I guess, we'll just indicate that the stay

11  is in place until the filing of the amended complaint, which

12  should occur on September 26th.

13            MR. CHAREST:  Thank you.

14            Just a little housekeeping.

15            THE COURT:  No.  No.  It makes sense actually.  I'm

16  sure the Defense appreciates that.

17            Okay.  Now, do we want to set a date for Freeman 2

18  and Bowman -- oh, to move to consolidate.  Let's see -- that's

19  right, I guess.

20            We didn't address the motion to consolidate.  Let's

21  just see where we are, I guess, with respect to the claims

22  themselves because effectively, I think, Mr. Osen you're going

23  to brief it as if Freeman and Bowman are consolidated.  It's

24  really the same argument.

25            MR. OSEN:  Right.  If there's no objection, we would

1   simply file a motion next week to consolidate Bowman and

2   Freeman 2.

3            THE COURT:  Yes.

4            MR. OSEN:  And then, we would only file one amended

5   Freeman 2 complaint.

6            THE COURT:  I think.

7            MR. OSEN:  We just don't want to clutter your

8   docket.

9            THE COURT:  Actually, in that vein, why don't -- I

10  can ask the defendants, is there any objection to

11  consolidating Bowman into Freeman 2 and then everyone just

12  file their submissions in Freeman 2?

13           This is really just administrative.  I don't see any

14  reason not to.

15           Anyone object to that from the Defense perspective?

16           I'll just grant it and you don't even have to file a

17  letter.

18           Mr. Boccuzzi or anyone else on the Defense side?

19           MR. BOCCUZZI:  Sorry.  I'm just thinking if there's

20  any reason why we would want to see the amended pleadings on

21  the 26th before -- if that could ever raise any issue as to

22  the consolidation.

23           THE COURT:  I haven't looked at the complaints in a

24  while, but Mr. Osen, remind one.  I remember why you filed

25  Freeman 2, that had to do with statute of limitations.

1          Are there any differences, material differences,

2    between Bowman and Freeman 2?  I think it's just different

3    plaintiffs alleging all the same things, right?

4          MR. OSEN:  It was just one additional plaintiff

5    whose time to file was expiring so we filed it as a exact

6    replica, but for one plaintiff.

7          THE COURT:  You know, I don't want to force the

8    defendants to agree to something if they want to take another

9    look.  So why don't, just the Defense, let me know in a week

10   if you have an objection to the consolidation.  You don't have

11   to file anything Mr. Osen.  If there's no objection, as

12   indicating by the filing of defendants, then you can do it

13   collectively if you like.  Then we'll go ahead and grant it.

14   If there's some reason raised, then you'll respond that

15   Mr. Osen.

16          MR. OSEN:  That's fine.

17          MR. BOCCUZZI:  Your Honor, A week from today is

18   July 4th --

19          THE COURT:  Yeah.  Let's just make it July 5th.

20          MR. BOCCUZZI:  Okay.  Thank you, your Honor.

21          THE COURT:  Okay.  Terrific.

22          All right.  Good.

23          So I think that resolves everything we need to as of

24   now.  You folks have your work cut out for you.  We'll hear

25   from you, I guess, in the September at the earliest except for

1  this submission in a week just to let us know about

2  consolidation.

3          Anything else before I let you go?

4          Mr. Osen.

5          MR. OSEN:  Nothing your Honor.

6          THE COURT:  Mr. Charest.

7          May be I'll get your name right.

8          MR. CHAREST:  Nothing from Stephens.

9          Thank you.

10         THE COURT:  Mr. Boccuzzi.

11         MR. BOCCUZZI:  Nothing your Honor.  Thank you.

12         THE COURT:  Any other defendant want to say anything

13 at this time?

14         Good.  Hearing none, everyone have a good holiday

15 and we'll hear from you soon enough, right.

16         Thank you.

17         MR. OSEN:  Thank you, Your Honor.

18         MR. CHAREST:  Thank you, Your Honor.

19         MR. BOCCUZZI:  Thank you, Your Honor.

20         MR. FINN:  Thank you, Your Honor.

21         (Whereupon, the matter was concluded.)

22                 *     *     *     *     *

23

24

25

SHERNELLE GRIFFITH, Official Court Reporter
I certify that the foregoing is a correct transcript from the
record of proceedings in the above-entitled matter.
/s/ Shernelle Griffith        August 20, 2023