UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------X

ROBERT BARTLETT, et al.,

                Plaintiffs,

    -against-                          **MEMORANDUM AND ORDER**
                                               19-CV-7 (CBA) (TAM)

SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, et al.,

                Defendants.

-------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

        Plaintiffs are a group of over 1,200 American nationals, or their surviving family members, who were injured or killed in terrorist attacks that they allege were perpetrated abroad by Hezbollah. (*See* Third Am. Compl. ("TAC"), ECF No. 362 (publicly filed, redacted version).) Plaintiffs allege that thirteen banking institutions (Société Générale de Banque au Liban SAL ("SGBL"), Fransabank SAL, Middle East Africa Bank SAL ("MEAB"), BLOM Bank SAL, Byblos Bank SAL, Bank Audi SAL, Bank of Beirut SAL, Lebanon and Gulf Bank SAL ("LGB"), Banque Libano-Française SAL, Bank of Beirut and the Arab Countries SAL, Jammal Trust Bank SAL, Fenicia Bank, and Lebanese Canadian Bank SAL ("LCB")) committed, *inter alia*, violations of the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016). (*See* TAC, ECF No. 362.)

        On November 7, 2023, Plaintiffs filed a motion for leave to file the TAC under seal, seeking to seal information obtained in discovery that was designated as

1

confidential under the protective order that governs this case. (*See* Mot. for Leave to File Under Seal, ECF No. 359; Proposed Redacted TAC (sealed), ECF No. 360; *see generally* Protective Order, ECF No. 273.) A redacted version of the TAC was filed publicly the same day. (*See* TAC, ECF No. 362.)

For the reasons set forth herein, the requests to seal are granted in part and denied in part, without prejudice.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Plaintiffs bring the instant action under the ATA and JASTA against Defendants, which are Lebanese commercial banks that Plaintiffs allege "knowingly provid[ed] pervasive and sustained material support, including financial services, to Hezbollah and its companies, social welfare organizations, operatives, and facilitators." (TAC, ECF No. 362, ¶¶ 1, 5.) Hezbollah has been designated as a Foreign Terrorist Organization by the U.S. Department of State since 1997. (*Id.* ¶ 1, n.1.) The complaint has already been amended twice, and Defendants have moved to dismiss the first and second amended

---

[1] This opinion assumes familiarity with the facts and procedural history of this case. Of particular relevance here, on November 7, 2023, eleven of the named Defendants, including SGBL, Fransabank SAL, MEAB, BLOM Bank SAL, Byblos Bank SAL, Bank Audi SAL, Bank of Beirut SAL, LGB, Banque Libano Française SAL, Bank of Beirut and the Arab Countries SAL, and Fenicia Bank SAL, filed a letter in support of sealing. (Defs.' Ltr., ECF No. 363 (citing, *inter alia*, *S.E.C. v. Ripple Labs, Inc.*, No. 20-CV-10832 (AT), 2023 WL 3477552 (S.D.N.Y. May 16, 2023)).) Non-party Standard Chartered Bank ("SCB") also filed a response to Plaintiffs' motion to seal, indicating that it supports Plaintiffs' request to file under seal those portions of the TAC that incorporated "Protected Information" as designated under the confidentiality order in this case. (*See* SCB Ltr., ECF No. 364.) As to the remaining two Defendants, Defendant LCB has not appeared in this action; it was declared by the U.S. Department of the Treasury as "a financial institution of primary money laundering concern" in February of 2011 and was then acquired by Defendant SGBL. (*See* Certificate of Default, ECF No. 203; TAC, ECF No. 362, ¶¶ 102–04.) Defendant Jammal Trust Bank SAL has been exempted from discovery due to its interlocutory appeal regarding foreign sovereign immunity. *See Bartlett v. Baasiri*, 81 F.4th 28, 37 (2d Cir. 2023) (finding that the Foreign Sovereign Immunities Act "may attach when a defendant becomes an instrumentality of a foreign sovereign after a suit is filed" and remanding for further fact finding on that issue). (*See* Oct. 8, 2021 ECF Min. Entry & Order (exempting Jammal Trust Bank and Dr. Muhammed Baasiri from discovery).)

2

complaints; Judge Amon later ruled on both, denying the motion to dismiss the first amended complaint in part and granting in part, and denying the motion to dismiss the second amended complaint. (*See* Compl., ECF No. 1; First Am. Compl., ECF No. 105 ("FAC" or "Am. Compl."); Second Amended Complaint ("SAC"), ECF No. 189; June 17, 2022 Mem. and Order, ECF No. 291 (unpublished) (denying motion to dismiss the SAC).) *See Bartlett v. Société Générale De Banque Au Liban SAL*, No. 19-CV-7 (CBA) (VMS), 2020 WL 7089448, at *1 (E.D.N.Y. Nov. 25, 2020), ECF No. 164 (denying Defendants' motion to dismiss the FAC in part, granting in part).

As Judge Amon previously observed in denying the motion to dismiss the first amended complaint:

> Here, Plaintiffs allege that Defendants knowingly provided Hezbollah with wide-ranging financial services — including maintenance of accounts, accepting donations from abroad, and processing wire transfers — that were integral to financing Hezbollah's terroristic attacks. That conduct differs from the "mere" provision of material support. Plaintiffs have not alleged an isolated provision of financial services to Hezbollah. Rather, they allege a wide-ranging, years-long, knowing scheme of coordination in which Defendants acted as Hezbollah's core financial service-providers. Plaintiffs allege that despite Hezbollah's purportedly multifaceted nature, it remains singularly dedicated to religiously inspired terrorist attacks, (Am. Compl. ¶ 354); any suggestion that Hezbollah's core bankers would be unaware of their role in those attacks by providing it banking services necessary to funding those attacks is highly dubious.

*Bartlett*, 2020 WL 7089448, at *11.

While the motion to dismiss the SAC was under consideration, on October 8, 2021, the Court held a conference and determined that discovery would commence. (Oct. 8, 2021 ECF Min. Entry & Order (concluding that discovery shall commence and directing the parties to meet and confer at an initial Rule 26(f) conference); *see also* Dec. 13, 2021 ECF Min. Entry & Order (setting dates for specific discovery steps).) On June 8, 2022, the Court entered the parties' stipulated protective order, which limits how

discovery information that is marked confidential may be used.[2] In entering the order, the Court expressly ordered as follows:

> The Court is in receipt of the parties' Proposed Protective Order [272]. The parties' joint request to approve their stipulated protective order is granted. However, to the extent that any portion of the protective order, including Sections E(7) and I(4), is inconsistent with this Court's procedures for sealing or limiting the distribution of documents or the standards governing the ability of this Court to permit the sealing or distribution of documents, the Court's practices and standards shall be followed by the parties and will govern any dispute. *See Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504 (E.D.N.Y. 1999) (denying request for a protective order that would have required sealing of materials marked confidential by the parties). The parties are respectfully directed that, to the extent they seek to file a document or attachments with the Court under seal, they may file an appropriate application for sealing on ECF, citing any authority on which they rely in support of their application. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006).

(June 8, 2022 ECF Order.)

On August 22, 2023, Judge Amon held a conference regarding another motion to dismiss anticipated by Defendants. (Aug. 22, 2023 ECF Min. Entry.) At the conference, Judge Amon directed Plaintiffs to file their amended complaint by October 20, 2023, and ordered a briefing schedule on the motion to dismiss. (*Id.*) On October 20, 2023, Plaintiffs filed a motion for leave to file their TAC under seal, which the court denied on October 25, 2023, because Plaintiffs appeared to be seeking to seal the entire TAC. (Mot.

---

[2] As to the procedure for filing materials under seal, the protective order in this case provides as follows:

> Excluding any materials admitted into evidence for trial, if any Receiving Party wishes to file materials with the Court pre-trial that incorporates Protected Information or would reveal the contents of Protected Information, such filing (or the portions thereof that would incorporate or reveal the contents of Protected Information) shall be provisionally filed under seal as an attachment to the filing party's motion for leave to file under seal and in accordance with the local rules pertaining to such filings.

(Protective Order, ECF No. 273, ¶ E.7.)

4

for Leave to File Under Seal, ECF No. 353; Oct. 25, 2023 ECF Order.) The Court directed Plaintiffs to file a revised application proposing specific redactions, which they filed on November 7, 2023. (Oct. 25, 2023 ECF Order; Mot. for Leave to File Under Seal, ECF No. 359.)

The current motion for leave to file under seal proposes redactions to specific paragraphs of the TAC that are based on information that was obtained during discovery, which was designated as confidential under the protective order. (*See* Mot. for Leave to File Under Seal, ECF No. 359.) Interestingly, the TAC represents that the newly-added allegations are not based on discovery received from Defendants. (TAC, ECF No. 362, ¶ 5 n.3 (stating that "[n]one of the allegations set forth in this Complaint, including those concerning Defendants' financial services on behalf of various Hezbollah-affiliated persons and entities or references to specific transactions, originate or are derived from documents produced by Defendants in this case" (emphasis omitted)).) Plaintiffs elaborate by explaining that "each Defendant subject to discovery in this case has refused to produce any records at all, citing Lebanese bank secrecy objections which have been overruled in this case." (*Id.*)

As discussed further below, Plaintiffs seek to seal aggregated analysis of banking transactions as well as information pertaining to specific customers and banking transactions. The TAC does not specify the source of the information underlying the allegations proposed to be filed under seal. Eleven of the thirteen Defendants generally support Plaintiffs' proposed requests to seal, but state that because "Plaintiffs' proposed redactions aggregate data gleaned from various non-party bank sources," "it is nearly impossible for Defendants to identify if the underlying bank records were marked

5

confidential pursuant to the protective order."[3] (*See* Defs.' Ltr., ECF No. 363, at 2.) Similarly, Standard Chartered Bank also filed a letter, generally supporting Plaintiffs' motion for leave to file portions of the TAC under seal. (*See* SCB Ltr., ECF No. 364.) Plaintiffs' sealing requests are granted in part and denied in part, as detailed below.

## DISCUSSION

The right of public access to judicial documents and the public's interest in monitoring the administration of justice are well established. *See Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 597–98 (1978); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006); *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008); *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04-CV-5540 (DGT) (RLM), 2010 WL 3924689, at *4 (E.D.N.Y. Sept. 28, 2010) (collecting cases). As the court in *King Pharmaceuticals* observed:

> The right of public access gives rise to a rebuttable presumption of public availability, the weight of which presumption "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts."

*King Pharms.*, 2010 WL 3924689, at *4 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*")); *see also Lugosch*, 435 F.3d at 120 ("[D]ocuments may be sealed if 'specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'" (quoting *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987) (alteration in original) (quotation marks omitted))); *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"). A party's designation of material as confidential does not necessarily

---

[3] Defendants request that the Court order Plaintiffs to identify the transaction records underlying Plaintiffs' allegations. As discussed below, the Court finds that the vast majority of the proposed redactions are not warranted. The Court declines to direct Plaintiffs to identify the specific transaction records as part of the adjudication of this motion.

provide justification for it to be filed under seal. *See, e.g.*, *Cumberland Packing v. Monsanto*, 184 F.R.D. 504, 505–06 (E.D.N.Y. 1999). Rather, "when protected discovery materials are used in court filings, the common law right of the public 'to inspect and copy . . . judicial records and documents' is implicated and gives rise to a presumption of access to judicial documents." *Strauss v. Credit Lyonnais, S.A.*, Nos. 06-CV-702 (DLI) (MDG) & 07-CV-914 (DLI) (MDG), 2011 WL 4736359, at *2 (E.D.N.Y. Oct. 6, 2011) (quoting *Nixon*, 435 U.S. at 597).

When reviewing a motion to seal, courts consider three factors: (1) whether the document is a "judicial document"; (2) "the weight of the presumption of access to that document"; and (3) whether "all of the factors that legitimately counsel against disclosure of the judicial document" outweigh "the weight properly accorded the presumption of access." *Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020) (quotation marks omitted); *see also Lugosch*, 435 F.3d at 119–20; *Aref*, 533 F.3d at 81–83. The Second Circuit has recognized "that the weight to be given" to the presumption of access to judicial documents falls along a continuum, and "must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo II*, 71 F.3d at 1049; *see also Mirlis*, 952 F.3d at 60 ("The general and deeply rooted rule is that the presumptive right of access is afforded 'strong weight' when applied to documents that play a central role in 'determining litigants' substantive rights — conduct at the heart of Article III.'" (quoting *Amodeo II*, 71 F.3d at 1049)); *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (observing that judicial documents "must be relevant to the performance of the judicial function and useful in the judicial process" (quotation marks omitted)); *see also Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139 (2d Cir. 2016).

The Second Circuit has cautioned that "[i]n most cases, a judge must *carefully and skeptically* review sealing requests to insure that there really is an extraordinary circumstance or compelling need." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis added). Courts have recognized that considerations of a "business's proprietary information, such as trade secrets or confidential research" can override the public right of access to judicial documents. *Crossman v. Astrue*, 714 F. Supp. 2d 284, 287 (D. Conn. 2009); *see also In re Orion Pictures Corp.*, 21 F.3d at 28 (discussing trade secrets as distinguished from commercial information in the context of the bankruptcy code). Here, Defendants rely on cases that "recognize the importance of maintaining confidentiality with respect to certain financial information." *Mark v. Gawker Media LLC*, No. 13-CV-4347 (AJN), 2015 WL 7288641, at *1 (S.D.N.Y. Nov. 16, 2015). Although there may be circumstances where allegations regarding financial information may not be integral to the exercise of the Article III function such that sealing may be readily justified, this is not such a case. As discussed above, the core claims in this case relate to terrorist financing. Accordingly, the alleged identities of the Defendant banks' clients, the timing of when these clients were allegedly served, and the value of the transactions are critical to the case. In addition, the requests to seal here are not narrowly tailored. Rather, they are overly broad and seek sealing of information that does not appear to comprise financial information that warrants protection, much less information that is so sensitive that the disclosure outweighs the presumption of public access to key information in a core judicial document.

Turning to the first *Mirlis* factor, there can be no serious dispute that a complaint, like the TAC here, is a highly relevant and useful document, which plays "a central role" at the heart of the Court's Article III function. *Mirlis*, 952 F.3d at 60; *see Bunkers Int'l v. Orient Oil*, No. 08-CV-10905 (PKC), 2008 WL 5431166, at *1 (S.D.N.Y. Dec. 23,

2008) (finding the complaint to be a judicial document).[4] Accordingly, the Court affords a significant presumption of access to the TAC and the allegations marked for sealing.

The Court next turns to an evaluation of whether the factors that counsel against disclosure outweigh the presumption of access. The argument for sealing advanced by Defendants is that the banking and transactional information implicates privacy concerns. Having carefully reviewed the sealing requests in light of the well-established right of public access to judicial documents and the public's interest in monitoring the administration of justice, the context of this case, including other voluminous information that is already publicly alleged regarding the Defendant banks and their alleged customers, the Court finds that the presumption of access far outweighs the privacy concerns claimed by Defendants. Accordingly, the parties' motions to seal are granted in part and denied in part, as follows.

*First*, Plaintiffs may renew their requests to seal paragraphs 1442 and 1445, which the Court could not evaluate because the proposed redactions were marked in black, not the light blue used elsewhere; accordingly, these requests are denied without prejudice to renew, consistent with the observations and conclusions herein.

*Second*, Plaintiffs' requests to seal the entirety of the following thirteen paragraphs are denied: 1664, 1728, 1733, 1784, 1827, 1896, 1940, 1985, 2049, 2087, 2121, 2154, 2186. These paragraphs contain summary aggregate analysis going directly to the allegations in this case and are thus afforded substantial weight in the presumption of access analysis. *See, e.g., Strauss*, 2011 WL 4736359, at *9 (finding that "discussion of aggregated financial information need not be redacted if the amounts and dates of

---

[4] As noted above, the TAC was filed in connection with Defendants' motion to dismiss the second amended complaint. Accordingly, the allegations in the TAC are also directly relevant to an ongoing evaluation of the merits of this case. (*See* Mot. to Dismiss, ECF No. 377.)

specific transactions are not disclosed"); *see also Mirlis*, 952 F.3d at 59. In addition, because these paragraphs contain no customer identification information, personal identifying information, or other commercial business information legitimately entitled to protection, these paragraphs may not be filed under seal in their entirety.

*Third*, Plaintiffs' requests to seal specific customer names in lists of customers and more detailed transaction information are also denied, without prejudice, as these requests are significantly overbroad. Other than specific account numbers, the factual allegations contained in these paragraphs are central to this case and are thus afforded substantial weight when evaluating the presumption of public access. Moreover, almost all of the individuals and entities discussed in these paragraphs are discussed elsewhere in the TAC,[5] and are alleged to have supported Hezbollah in various ways; the newly-added allegations against these individuals do not appear to implicate cognizable privacy concerns.

In addition, as to account numbers, the Federal Rules of Civil Procedure expressly limit what may be included in public filings, requiring that only the last four

---

[5] The Court recognizes that some of the individuals and entities as to whom specific transactions are alleged may not be named elsewhere in the TAC, but the Court has identified relatively few such names in the overall context of this case. Consistent with this order, the parties may provide the Court with appropriate facts and supplemental authority to seal the names of individuals and entities if there are legitimate privacy protections that the parties contend outweigh the public right of access to the allegations in this case. On the present record, the lack of granularity as to the parties' sealing requests precludes the Court from reaching a determination as to the propriety of sealing as to certain of the client names. (*See, e.g.*, Proposed Redacted TAC, ECF No. 360 ¶¶ 1709, 1710, 1730 (as to the final name proposed for redaction), 1756 (but the Court notes a very similar name is discussed publicly on page 161 in paragraph 736), 1787 (as to the first name), 1820, 1895 (as to the fourth to final name), 1928, 2051 (as to the second and third to final names, but the Court notes that very similar names are already publicly discussed in the TAC), 2072 & 2073 (although very similar names are already discussed in the TAC), 2157 (as to the first name), 2158, 2185 (as to the 12th name on page 445 and the name that appears third from the bottom of the list on page 445, although the Court recognizes that a name very similar to the latter name is publicly discussed at paragraph 1599), 2209 & 2233 (although the Court notes that the client name in paragraph 2233 may be a variant spelling of an offshore company mentioned in paragraph 1599).)

digits of a financial account number be included. *See* Fed. R. Civ. P. 5.2(a)(4) ("[I]n an electronic or paper filing with the court that contains . . . a financial-account number, a party or nonparty making the filing may include only . . . the last four digits of the financial-account number."). If the account numbers are properly truncated pursuant to Rule 5.2(a)(4) or sealed (to the extent truncating creates confusion as to the accounts at issue), the information that would be sealed if these paragraphs were redacted in their entirety would include (1) allegations that the Defendant bank at issue provided banking services to specific clients who are alleged to have been involved in Hezbollah, (2) the number of transactions allegedly at issue, (3) the dollar value of the alleged transactions, and (4) the time period in which the alleged transactions occurred. (*See, e.g.*, Proposed Redacted TAC, ECF No. 360, ¶¶ 1675–76.) In a case about financing terrorism, the Court finds that the record does not support sealing such allegations under the auspices of protected banking information. As discussed above, against the backdrop of substantial public allegations regarding the vast majority of the individuals and entities identified in the proposed redactions, privacy concerns as to the individuals and entities discussed in the TAC do not outweigh the presumptive right of access to factual details regarding the terrorist financing allegations that are central to this case, and the public right of access to these important allegations.[6] (*See, e.g.*, Proposed

---

[6] The cases Defendants and SCB rely upon in their letter of support are unpersuasive in the context of this case. (*See* Defs.' Ltr., ECF No. 363, at 2; SCB Ltr., ECF No. 364, at 2.) *See, e.g., Bunkers Int'l*, 2008 WL 5431166, at *1 (permitting filing of exhibits to a complaint under seal where they contained bank account numbers and wire transfer information, finding that there was "very little need for public access to such information and the potential for harm through bank fraud or identity theft is great"); *Ripple Labs, Inc.*, 2023 WL 3477552, at *3 (finding that, "with respect to the personal and financial information of Defendants and certain third parties," "privacy interests justify narrowly tailored redactions," and observing that the information had "minimal relevance to the Court's decision on the summary judgment motions"); *Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, No. 3:21-CV-659 (JAM), 2023 WL 4746180, at *1 (D. Conn. Apr. 27, 2023) (recognizing that "sealing is warranted to protect sensitive financial

Redacted TAC, ECF No. 360, ¶¶ 1675–76 (detailing transactions as to specific individuals who are elsewhere discussed publicly in the complaint, *see id.* ¶¶ 117, 853, 1021, 1051, 1165, 1181); *see id.* ¶¶ 1690–93 (same, *see id.* ¶¶ 38, 117, 853, 1322, 1504, 1941, 1975, 2176); *see also id.* ¶¶ 1708–17, 1730, 1749–56, 1787, 1796–97, 1821–22, 1828, 1865–79, 1890 n.148, 1895, 1898, 1923–29, 1966–74, 1976–77, 1986, 1996–2003, 2063–74, 2088, 2093, 2095–97, 2117, 2124, 2128–30, 2159–62, 2185, 2187–2232, 2234–2239.) For these reasons, as to the requests to seal client names and transactional information, the Court grants sealing as to the account numbers if truncated account numbers cannot be used, but denies the remaining requests to seal, without prejudice for the reasons set forth above in footnote five.

*Fourth*, Plaintiffs' requests to seal paragraphs 1802, 1852, 1900, 1910, 1914, 1948, 1954, 1959, 2098, 2100, 2111, and 2165, which seek partial sealing of these paragraphs, are likewise denied. The Court grants these requests to the extent that the account numbers cannot be filed in the shortened form contemplated by Rule 5.2. However, based on the present record, the Court finds that sealing the number of transactions, the alleged value of the transactions, and the date ranges for such transactions is not warranted. (*See* Proposed Redacted TAC, ECF No. 360, ¶¶ 1802, 1852, 1900, 1910, 1914, 1948, 1954, 1959, 2098, 2100, 2111, 2165.)

---

account information such as bank account and routing numbers"); *S.E.C. v. Telegram Group, Inc.*, No. 19-CV-9439 (PKC), 2020 WL 3264264 (S.D.N.Y. June 17, 2020) (granularly weighing the asserted privacy interests against the presumption of public access). As discussed herein, the financial transactions that would be sealed are relevant to the core terrorist financing allegations in the complaint and are highly relevant to the judicial function. *See generally Strauss*, 2011 WL 4736359, at *9 (recognizing, in the context of a case involving ATA allegations, that concerns of public access to banking information included in judicial documents may override a confidentiality designation). Moreover, any concerns about disclosure of the specific account numbers may be addressed with narrowly tailored redactions. Plaintiffs may truncate the account numbers as required by Rule 5.2 unless for some unforeseen reason truncating the account numbers introduces confusion about which accounts are being discussed. *See* Fed. R. Civ. P. 5.2(a)(4).

## CONCLUSION

In light of the foregoing conclusions, Plaintiffs' motion to seal the TAC is granted in part and denied in part, without prejudice. The parties may file any renewed sealing motions within two weeks of the filing of this order. Any such requests should be very narrowly tailored and must specifically analyze any sealing requests granularly against the presumption of availability that attends to a core judicial document and the factors that must be weighed in determining whether sealing is warranted. In the absence of any such motions and further order of the Court, Plaintiffs may publicly file the third amended complaint with the very limited redactions authorized herein, no later than two weeks following the expiration of the deadline for renewed motions.

**SO ORDERED.**

Dated:   Brooklyn, New York
         May 23, 2024

*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE