UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

ROBERT BARTLETT, et al.,

        Plaintiffs,

  -against-                                **MEMORANDUM & ORDER**
                                                    19-CV-7 (CBA) (TAM)
SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, et al.,

        Defendants.

----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

       This case involves allegations brought by a group of over 1,200 Plaintiffs under the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114–222, 130 Stat. 852 (2016). (Third Am. Compl. , ECF No. 426.) Presently before the Court is a motion regarding discovery, by which a non-party, Standard Chartered Bank ("SCB"), seeks clarification of the scope of the protective order in this case and requests that this Court admonish Plaintiffs' counsel against further use of materials SCB contends are confidential and protected under the operative protective order "for any purpose other than the *Bartlett* case." (Mot. for Disc., ECF No. 374 (hereinafter "SCB Disc. Mot."); *see also* Mar. 1, 2024 ECF Order (referring the matter to the undersigned).)

## BACKGROUND[1]

       Discovery in this case commenced in Fall 2021. (*See* Oct. 8, 2021 ECF Min. Entry & Order.) During discovery, the parties filed a stipulation and proposed protective

---

[1] This Memorandum and Order assumes familiarity with the underlying facts and procedural history of this case, as well as familiarity with the procedural history of the related

order, which the Court entered on June 8, 2022. (Order, ECF No. 273 (hereinafter "Protective Order"); *see also* Joint Stip. & Proposed Protective Order, ECF No. 272.) The Protective Order expressly provides that it governs the following:

> the handling of documents, depositions, deposition exhibits, interrogatory responses, responses to requests for admission, responses to requests for production, third-party discovery productions, and any other information or material produced, given, or exchanged by and among the Parties and any non-parties to the Litigation in connection with discovery in the Litigation.

(Protective Order, ECF No. 273, at 1–2.) The Protective Order further provides, in pertinent part, that all items or information disclosed and produced in this litigation would constitute "Discovery Material," (*id.* ¶ B.2), and would be subject to the following protection:

> All Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation (including for purposes of mediating or otherwise attempting to settle this Litigation). However, a Party may move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter.

(*Id.* ¶ C.)

As discussed in more detail below, for many months, Plaintiffs have been attempting to use Discovery Material obtained in this action from non-party SCB in a case in which SCB is named as a defendant, namely, *Freeman v. HSBC Holdings PLC*, No. 18-CV-7359 (PKC) (CLP) (hereinafter "*Freeman II*"). The first-filed *Freeman* case, *Freeman v. HSBC Holdings PLC*, No. 14-CV-6601 (PKC) (CLP) (hereinafter "*Freeman I*"), and *Freeman II* are referred to collectively in this opinion as "*Freeman*." SCB objects to use of

---

*Freeman* cases, and includes only the most pertinent procedural history necessary to place the current motion into context. *See generally Freeman v. HSBC Holdings PLC*, No. 14-CV-6601 (PKC) (CLP) (hereinafter "*Freeman I*"); *Freeman v. HSBC Holdings PLC*, No. 18-CV-7359 (PKC) (CLP) (hereinafter "*Freeman II*").

2

the confidential materials produced in connection with this case in *Freeman*.[2] (SCB Disc. Mot., ECF No. 374.)

On September 13, 2023, Plaintiffs' counsel filed a pre-motion conference letter in *Bartlett* indicating their intention to request leave to use in *Freeman* records that had been produced by SCB in *Bartlett*, and enclosed a letter that was filed with the Honorable Pamela K. Chen, the presiding judge in *Freeman*. (Pls.' Letter, ECF No. 344.) In response, on September 27, 2023, this Court held a conference to address whether the Protective Order in *Bartlett* permitted use of these materials in *Freeman*. (Sept. 27, 2023 ECF Min. Entry & Order.) At the conference, all parties consented to converting the parties' pre-motion conference letter to a motion, and the Court denied the motion on the record without prejudice. (*Id.*) In denying the motion, the Court found that Plaintiffs had not demonstrated "an 'extraordinary circumstance of compelling need' to modify the protective order in this case, on which non-party Standard Chartered Bank and the Moving Defendants have demonstrated significant reliance." (*Id.* (quoting *S.E.C. v.*

---

[2] As the Honorable Carol Bagley Amon has observed, the *Bartlett* and *Freeman* cases are interrelated as follows:

> The Freeman Actions were commenced in 2014 and bear some similarities to Bartlett. . . . The Freeman plaintiffs were also injured in terror attacks and brought actions against different foreign banks alleged to have assisted the terror networks responsible for those attacks under the Justice Against Sponsors of Terrorism Act ("JASTA") amendment to the Anti-Terrorism Act. However, the Freeman Actions are brought against different defendants, six European-headquartered banks and the UK subsidiary of an Iranian bank, alleged to have knowingly provided illegal banking services to agents or components of terrorist organizations in Iran. The Freeman Actions also proceed on different theories of liability than the causes of action brought here.

(Mem. & Order, ECF No. 368, at 1–2.) In addition, Plaintiffs' counsel represents that "all plaintiffs in [*Freeman II*] are also plaintiffs in *Bartlett*." *Freeman II*, No. 18-CV-7359 (PKC) (CLP), Second Am. Compl., ECF No. 117, at 3 n.5.

*TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001)); *see also* Tr. of Status Conference, ECF No. 346, at 55–59.)

Plaintiffs appealed this ruling to the Honorable Carol Bagley Amon, the presiding District Judge in *Bartlett*, who affirmed this Court's ruling in a written decision issued on December 21, 2023. (Mem. & Order, ECF No. 368.) In her affirmance, Judge Amon first found that disclosure of the SCB discovery material would constitute a modification of the *Bartlett* Protective Order. (*Id.* at 6.) Having so found, Judge Amon proceeded to analyze the four-factor test used to evaluate "whether a party has reasonably relied on the protective order," and other factors pertinent to the analysis of when modification may be warranted. (*Id.* at 8–10 (discussing, *inter alia*, *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 132 (E.D.N.Y. 2012) and *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 318–19 (D. Conn. 2009)).) Ultimately, Judge Amon found "that SCB relied on the protective order when making disclosures" in *Bartlett* and that "Plaintiffs' filing does not allege any extraordinary circumstance or compelling need to make the requested disclosure." (*Id.* at 10.) In her analysis of the question of whether there was a "compelling need to share discovery for efficiency reasons," Judge Amon differentiated between those cases that had permitted sharing on that basis and this case, observing as follows:

> The circumstances here are different. As noted, these are not the same parties, and the Freeman parties at this stage in their litigation have not been permitted to engage in discovery. Therefore, the prejudice of using SCB's third-party disclosures in Bartlett *to establish a cause of action* against SCB in another case is apparent.

(*Id.* at 10–11 (emphasis added).)

Within one week of Judge Amon's decision, Plaintiffs' counsel filed a redacted second amended complaint in *Freeman II*, which incorporated materials from the *Bartlett* discovery, which were filed in redacted form. The second amended complaint expressly

4

acknowledges that the redacted allegations were "sourced" from the *Bartlett* Discovery Material as follows:

> A limited set of allegations in the Second Amended Complaint, which provide additional evidence that some of the Defendants knowingly provided substantial assistance to the IRGC and Hezbollah, are redacted (and are not visible to any party or the Court). These allegations are sourced from records Plaintiffs received from third parties in response to subpoenas issued in *Bartlett v. SGBL*, No. 19-cv-7-CBA-TAM (E.D.N.Y.) (all plaintiffs in this action are also plaintiffs in *Bartlett*), subject to a protective order in that case. *Bartlett*, ECF No. 273. Those highly relevant records will presumably be subject to discovery in this case, meaning omitting them from the Second Amended Complaint needlessly prejudices Plaintiffs and inconveniences the Court.

*Freeman II*, No. 18-CV-7359 (PKC) (CLP), Second Am. Compl., ECF No. 117, at 3 n.5. Plaintiffs elaborated in the *Freeman II* second amended complaint that they sought leave to "constructively subpoena themselves to produce those records in this case for the limited purpose of making the allegations redacted here" and that they included the information, in redacted form, because they had "insufficient time to renew their discovery motion to this Court." *Id.*

On February 5, 2024, Judge Chen held a conference in *Freeman II*. (Tr. of Status Conference, ECF No. 375-1 (hereinafter "Tr. of *Freeman II* Status Conference").) At that conference, Judge Chen first addressed counsel's then-pending request to "constructively subpoena themselves" for the sought-after SCB materials they had received in *Bartlett*. (*Id.* at 5:17–18.) Judge Chen rejected counsel's request, finding as follows:

> [I]t would end up being an end run around the protective order that exists [in *Bartlett*]. I mean, if parties who are subject to a protective order in one case get certain information pursuant to the protective order that bars them from using it outside of that case, then go and constructively subpoena those in another case, it seems to me you've avoided the intended restrictions in the other case that Judge Amon is presiding over along with Magistrate Judge Merkl.

5

> So I think that that would be wholly inappropriate, in part because I don't think there is such a vehicle under the rules. And secondly, here it would allow you to do something that the *Bartlett* judges have not approved . . . , which is to, in effect, get materials that are subject to a protective order there.
>
> Rather, I think what you can do though is subpoena the same records from the same parties, Standard Bank, which is obviously a defendant here, and then [KBC], a nondefendant or third party here. You could subpoena them and then we would deal, as we would in any other case, with any discovery disputes that arise out of those subpoenas.

(*Id.* at 6:21–7:16.)

Judge Chen also observed that the stay of discovery in *Freeman II* had effectively been lifted, and she reiterated to counsel that they should subpoena SCB for the records they sought in *Freeman II*, stating that "to avoid . . . any question that somehow you're running afoul of the *Bartlett* protective order and I think to avoid having to go back to Judge Amon and to Judge Merkl on this issue about whether they would lift that protective order,"[3] the parties and the court should "just deal with it, in this case, with a

---

[3] The Court further notes that Plaintiffs rely on a comment made by Judge Chen in which she suggested that the *Bartlett* ruling "was really based on the fact that discovery had not restarted here." (*See* Pls.' Opp'n, ECF No. 376, at 2; *see also* Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 8:8–9.) Plaintiffs' heavy reliance on this interpretation of the record is misplaced. It is correct that the lack of ongoing discovery in *Freeman II* was one aspect of the previous analysis as to whether Plaintiffs had demonstrated a compelling need to modify the Protective Order in this case. The lack of ongoing discovery in *Freeman* was not, however, the sole basis for the prior decision, as detailed at the hearing before this Court, summarized in the Court's minute entry and order, and as Judge Amon explained in her decision. (*See* Tr. of Status Conference, ECF No. 346; Sept. 27, 2023 ECF Min. Entry & Order; Mem. & Order, ECF No. 368.) A review of the record in *Freeman II* suggests that the transcript of the September 27, 2023 proceedings before this Court may not have been provided to Judge Chen, but SCB's attorney summarized the Court's findings during oral argument. (*See* Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 34:17–35:17.) Notwithstanding the possibility that Judge Chen may not have had the benefit of the full record of the relevant proceedings in this case, she expressly observed that in order to use the *Bartlett* materials, Plaintiffs would have "to go back to Judge Amon and to Judge Merkl on this issue about whether they would lift that protective order." (*Id.* at 8:6–8.) Indeed, at the September 27, 2023 status conference, the Court provided similar directives to Plaintiffs' counsel. Specifically, at the hearing, the Court did not indicate that its findings about the Protective Order were solely due to the lack of discovery in *Freeman*. Rather, the Court found that SCB had demonstrated "substantial reliance" "in the determination to produce these records" and that Plaintiffs had not demonstrated a compelling need in part due to the lack of

6

straightforward discovery request subpoena for one party or discovery request on the defendant party for that same information." (*Id.* at 8:4–13; 8:17–18 (noting that the stay of discovery had effectively been lifted).) After lengthy argument, Judge Chen suggested to the parties that the best course would be to proceed with discovery in *Freeman*, subject to this Court's clarification on the scope of the Protective Order, and what it means to "use" information that is protected by it. (*Id.* at 38:16–21; *see also id.* at 54:15–17 (observing that if "the protective order precludes even requesting it as part of discovery in another case," that could foreclose discovery of the same materials in *Freeman*); *id.* at 69:20–24 ("[I]f Judge Amon and Merkl rule that even making a request to get them again in another case constitutes use that's prohibited by the protective order, I think that will pretty much foreclose any further argument before me . . . .").)

On February 29, 2024, SCB filed the pending motion, requesting that this Court enter an order (1) "confirming for Judge Chen in *Freeman I* and *Freeman II* that this Court's prior holdings that the Protective Order in this case do not permit Plaintiffs or their counsel to use materials that SCB and KBC Bank ('KBC') produced and designated as 'Confidential Information' for any purpose other than the *Bartlett* case, including to try to support plaintiffs' motion to vacate the final judgment of dismissal in *Freeman I*, to formulate an amended complaint in *Freeman II*, or to make discovery requests in *Freeman II* or in any other case," and (2) admonishing Plaintiffs' counsel "against any further misuse of those materials." (SCB Disc. Mot., ECF No. 374, at 1 (citation omitted).) In their motion, SCB represents that the *Freeman II* plaintiffs "used

---

ongoing discovery; the motion was consequently denied. (Tr. of Status Conference, ECF No. 346, at 59:6–7, 59:16–18; *see also* Sept. 27, 2023 ECF Min. Entry & Order.) The denial was without prejudice, and the Court expressly told counsel that if discovery were to commence in *Freeman*, "[y]ou can come back, but there would need to be a change of factual circumstance and the legal circumstances that could flow from that change of factual circumstance to come back." (Tr. of Status Conference, ECF No. 346, at 59:16–18, 59:20–24.)

7

Confidential Information subject to the [*Bartlett*] Protective Order in drafting an amended complaint in *Freeman II*," and that after Judge Amon issued the opinion discussed above, Plaintiffs' counsel filed a 704 page second amended complaint in *Freeman II* that contained "47 pages of redacted allegations that those plaintiffs admit were 'sourced from' the confidential banking records that SCB and KBC had produced to Plaintiffs" in this case. (*Id.* at 2.)

Defendants opening motion contends that Plaintiffs' counsel improperly used the SCB discovery information in multiple ways, including: (1) to formulate allegations in an effort to amend the complaint in *Freeman II*; (2) to formulate discovery demands in *Freeman II*; (3) to "pique" Judge Chen's curiosity by including redacted allegations in the *Freeman II* amended complaint; (4) as support for their request to seek discovery in *Freeman II*; and (5) as support for their motion to vacate the final judgment of dismissal in *Freeman I*. (*Id.* at 4–5.) SCB clarifies in its reply brief, however, that "the principal improper use" here was Plaintiffs' use of the protected materials to craft the redacted allegations that are "sourced from records Plaintiffs received from third parties in response to subpoenas issued in *Bartlett*." (Defs.' Reply, ECF No. 384, at 2 n.2 (quotation marks omitted).)

Plaintiffs respond by arguing that they did not misuse the *Bartlett* discovery materials for the following reasons. First, Plaintiffs posit that Judge Chen lifted the stay of discovery in *Freeman II* so that Plaintiffs "can request records produced in *Bartlett*." (Pls.' Opp'n, ECF No. 376, at 1.) Second, Plaintiffs suggest that this Court previously "explained that if Judge Pollak or Judge Chen . . . commence discovery in *Freeman*, then Bartlett discovery may be cross-applied between the cases." (*Id.* (quotation marks omitted).) Third, Plaintiffs argue that "SCB clings to the 'absurd tenet that a party can avoid discovery in one case merely because it disclosed the same material to an

8

adversary bound by a protective order in another case.'" (*Id.* (quoting *Carter-Wallace, Inc. v. Hartz Mtn. Indus.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981)).) Plaintiffs also report that they "re-issued effectively the same document request that SCB received in *Bartlett* in the form of a subpoena because the original subpoena (1) was not confidential and (2) was drafted *before SCB produced anything*." (*Id.* at 5 (emphasis in original).)

The Court finds that Plaintiffs' first two arguments rest on an oversimplification of the record and that Plaintiffs have violated the Protective Order in *Bartlett* by their conduct in *Freeman*. For the reasons discussed herein, the review and incorporation of Discovery Material in the amended complaint in *Freeman II* — even redacted — constitutes an improper use of material that is subject to the Protective Order in that the Discovery Material was used to craft claims against SCB. The Court further finds, however, that an *authorized* discovery request in another matter would not generally be precluded by the fact that the same responsive documents were produced elsewhere subject to a protective order.

## DISCUSSION

### I. Legal Standards

#### A. Protective Orders to Manage Discovery

"In large complex cases, courts often enter into 'umbrella' protective orders, which permit parties to designate in advance a large volume of discovery material as confidential." *In re Zyprexa Inj.*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007). In determining the meaning of such a protective order, the language "must be construed according to general principles of contract law." *City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991). In such an interpretation, the plain meaning of the words in the order will control. *Id.*

In one of the leading Second Circuit cases on the issue, *Martindell*, the court had occasion to analyze a protective order that provided that certain discovery, "including transcripts of testimony and documents furnished by the defendants, were to be made available only to the parties and their counsel and not to be used for any purpose other than the preparation for and conduct of the litigation." *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 293 (2d Cir. 1979). In that case, the U.S. Attorney's Office sought to gain access to deposition testimony for 12 witnesses "for use in the Government's investigation into possible violations of federal criminal laws." *Id.* at 293. The district judge denied the government's request, finding, *inter alia*, that the testimony "had been given in reliance upon the protective order" and "that principles of fairness mandated enforcement of the protective order." *Id.* The Circuit explained its reasoning as follows:

> Unless a valid Rule 26(c) protective order is to be fully and fairly enforceable, witnesses relying upon such orders will be inhibited from giving essential testimony in civil litigation, thus undermining a procedural system that has been successfully developed over the years for disposition of civil differences.

*Id.* at 295. The court further observed that:

> After balancing the interests at stake, we are satisfied that, absent a showing of improvidence in the grant of a Rule 26(c) protective order or some extraordinary circumstance or compelling need, none of which appear here, a witness should be entitled to rely upon the enforceability of a protective order against any third parties, including the Government, and that such an order should not be vacated or modified merely to accommodate the Government's desire to inspect protected testimony for possible use in a criminal investigation . . . .

*Id.* at 296.

### B. Reasonable Reliance on a Protective Order

It is now well established that a district court should not modify a protective order where "there has been reasonable reliance by a party or deponent" unless there is "a showing of . . . some extraordinary circumstance or compelling need." *TheStreet.Com*,

10

273 F.3d at 229 (quotation marks omitted). "There is a strong presumption against modifying protective orders because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence." *Arcesium LLC v. Advent Software, Inc.*, No. 20-CV-4389 (MKV), 2022 WL 621973, at *3 (S.D.N.Y. Mar. 3, 2022) (citation omitted). This presumption is appropriate because "[i]f protective orders were easily modified, . . . parties would be less forthcoming in giving testimony and less willing to settle their disputes." *TheStreet.Com*, 273 F.3d at 230; *see also Martindell*, 594 F.2d at 295–96.

Consistent with these principles, as discussed above, the Court previously found that SCB had reasonably relied on the Protective Order in this case, and that Plaintiffs had not established an extraordinary circumstance or compelling need to modify the order to permit use of Discovery Material in *Freeman II*. (Sept. 27, 2023 ECF Min. Entry & Order.) Judge Amon reiterated and expanded upon this Court's ruling; she also observed that although modifications of protective orders are sometimes made to promote efficiency, they should not be used to "'subvert a limitation on discovery.'" (Mem. & Order, ECF No. 368, at 10 (quoting *In re EPDM Antitrust Litig.*, 255 F.R.D. at 324).) She further observed that the "Freeman plaintiffs are seeking to use the discovery in Bartlett to revive a case where they have been denied discovery to support a proposed amended complaint." (*Id.*) Additionally, in her prejudice analysis, Judge Amon found that, given that the *Freeman* parties had not been allowed to take discovery due to motion to dismiss practice, "the prejudice of using SCB's third-party disclosures in *Bartlett* to establish a cause of action against SCB in another case is apparent." (*Id.* at 11.)

## II. Analysis

The issue before the Court turns on what it means to "use" discovery material produced in reliance on a protective order. The pertinent sentence of the parties' Protective Order, which is entitled "Use of Discovery Material," states: "All Discovery Material (or any copies, summaries, or abstracts thereof) shall be used solely for the purpose of conducting this Litigation." (Protective Order, ECF No. 273, ¶ C.) This latter language is similar to the use restriction at issue in *Martindell*, where the circuit affirmed the district court's determination that materials that were only to be used for the "preparation for and conduct of the litigation" could not be disclosed further absent a showing of "some extraordinary circumstance or compelling need." *Martindell*, 594 F.2d at 293, 296.

An analysis of the procedural history here, together with the plain text of the Protective Order, brings this Court to the conclusion that Plaintiffs' counsel has used Discovery Material from *Bartlett* without properly seeking modification of the Protective Order.[4] As set forth above, any utilization of Discovery Material produced under the Protective Order in this case was to be *solely* for the purpose of the litigation in *Bartlett* absent further leave of the Court. Notably, this portion of the Protective Order provides a mechanism for a party or non-party to "move before the Court in this Litigation by letter motion to request permission to use Discovery Material in another case or matter." (Protective Order, ECF No. 273, ¶ C.) The parties are clearly familiar with this portion of the Protective Order because they did, in fact, so move previously as detailed at length above.

---

[4] "Use" is of course a very common word that everyone understands to mean something akin to "utilize." According to the Merriam-Webster Dictionary, the definition of the word "use" is "to put into action or service," or "avail oneself of." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/use (last visited Aug. 6, 2024).

12

Notwithstanding this Court's clear ruling and Judge Amon's thorough explication of her findings affirming the determination that Plaintiffs had not advanced "an extraordinary circumstance or compelling need" to modify the Protective Order, Plaintiffs' counsel has acknowledged using information obtained from SCB to draft the allegations in the second amended complaint in *Freeman II*, which allegations were then filed in redacted form. (Pls.' Opp'n, ECF No. 376, at 3.) In the oral argument before her, Judge Chen indicated that she did not consider filing the complaint under redaction "misuse just yet[,] because it really hasn't come to fruition. I mean, it's sitting there under . . . blackout, so that's not using it, in my opinion." (Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 18:7–9.)

Although Judge Chen found that the redacted allegations have not been used *yet* because she had not yet read or considered them, the totality of the record shows that Plaintiffs have sought to avail themselves of *Bartlett* Discovery Material in the *Freeman II* case in two specific ways that Judge Amon already rejected as a possible basis for modifying the Protective Order, to wit: (1) "to revive a case where they have been denied discovery to support a proposed amended complaint" and (2) "to establish a cause of action against SCB in another case." (Mem. & Order, ECF No. 368, at 10–11.) Against the backdrop of the procedural history here, and in light of the timing of Judge Amon's ruling, the Court has little difficulty finding that Plaintiffs' counsel has attempted to use *Bartlett* Discovery Material in *Freeman II* for both of these purposes, and that counsel may well have included the redacted material in the second amended complaint in an effort to "pique" Judge Chen's curiosity, as SCB suggests. (SCB Disc. Mot., ECF No. 374, at 4.)

Plaintiffs suggest that SCB's "overwrought objections and feigned indignation" have been "a colossal waste of both Courts' time." (Pls.' Opp'n, ECF No. 376, at 5.) The

13

Court views this situation quite differently. Faced with time constraints to file the second amended complaint in *Freeman II*, Plaintiffs' counsel had many possible options. They could have filed their second amended complaint without including redacted allegations "sourced," at least in part, from the *Bartlett* Discovery Material. Or, Plaintiffs could have sought an extension of time to file the amended complaint from Judge Chen in light of Judge Amon's affirmance of this Court's Protective Order ruling a mere six days before their deadline. Or, Plaintiffs could have sought to open discovery in *Freeman II prior to* amending the complaint and sought permission from Judge Chen to issue a document request to SCB based on their knowledge of the case and without regard to discovery produced in *Bartlett*. Or, Plaintiffs could have sought to open discovery in *Freeman II* and, if that was granted, then returned to this Court for another evaluation of whether they could then demonstrate a compelling need to modify the Protective Order. They did none of these things. Instead, counsel decided to brazenly prepare an amended complaint that knowingly incorporated protected material. Notwithstanding that the protected material was filed with redactions, this decision has resulted in significant inefficiency in both *Freeman II* and *Bartlett*.

In addition, to date, Plaintiffs have *not* filed a motion to renew their request to modify the Protective Order in *Bartlett*, perhaps because what they are attempting to accomplish with the Discovery Material is not amply justified by the caselaw. Specifically, as set forth above, the record strongly indicates that Plaintiffs are seeking to use *Bartlett* discovery to "establish a cause of action against SCB in another case" and to "subvert" a limitation on discovery in *Freeman*. (*See* Mem. & Order, ECF No. 368, at 10.) *See also AT&T Corp. v. Sprint Corp.*, 407 F.3d 560, 562 (2d Cir. 2005) (finding modification of the protective order unwarranted where the plaintiff was attempting to "circumvent the close of discovery" in a collateral action); 8 Charles Alan Wright, Arthur R. Miller &

14

Richard L. Marcus, Federal Practice and Procedure Civil 2d § 2044.1 (2d ed. 1994) ("If the limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification."). By analyzing the *Bartlett* Discovery Material to craft allegations for the second amended complaint in *Freeman II* and by relying on *Bartlett* Discovery Material to argue in support of seeking discovery in a case where a limitation had been placed on discovery due to motion to dismiss practice, the Court finds that Plaintiffs' counsel has violated the Protective Order.

      Notwithstanding this conclusion, the Court shares Judge Chen's concern about vaunting procedure over substance. (*See* Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 21:19–25.) Indeed, as other courts have recognized, a protective order cannot be used "as a means of protecting discovery that would otherwise be discoverable in the related actions." *Charter Oak*, 287 F.R.D. at 134; *see also Carter-Wallace*, 92 F.R.D. at 69 (rejecting the "tenet that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case"). At the same time, however, parties cannot take matters into their own hands and use protected materials without first seeking a modification of a protective order, whether such use includes actually filing protected information in another case *or* using the existence of information in an effort to gain a strategic advantage in another case. In this case, Plaintiffs' counsel's effort to do an end run around the Protective Order is unacceptable. Counsel is placed on notice that further efforts to bypass the Protective Order may result in sanctions.

      But where does this leave things? As Judge Chen suggested at the oral argument before her, "the definition of 'use' might require a little more teasing out." (Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 69:7–9.) For example, Judge Chen

15

inquired as to whether "use" only applies to "physically introducing them and relying on them or does it actually prohibit including your knowledge of them to acquire them to use them?" (*Id.* at 69:9–13.) Here, the facts presented indicate that the Court need not answer the latter, more difficult question.[5] In their response, Plaintiffs assert that their document request in *Freeman II* is based on the subpoena that was issued in *Bartlett*, which was prepared before counsel had any exposure to protected information. (Pls.' Opp'n, ECF No. 376, at 5.) SCB does not refute this claim in its reply. If Plaintiffs' representation is accurate — and Judge Chen determines that discovery may commence in *Freeman II* (without considering arguments grounded on *Bartlett* Discovery Material) — then the Protective Order in *Bartlett*, which shields SCB's information from being used for purposes other than this litigation, cannot also serve as sword to cut down the plaintiffs' discovery demands in *Freeman II*.[6] For all of these reasons, the Court finds that the Protective Order is not a bar to the *Freeman II* plaintiffs' discovery efforts, if Judge Chen finds that discovery is appropriate in that case without reference to information gleaned from *Bartlett* Discovery Material.

---

[5] At the oral argument before Judge Chen, an analogy was drawn to a fruit of the poisonous tree-type analysis, which may be apt in the abstract if the Court actually needed to answer the question of whether the discovery requests in *Freeman II* were derived from protected discovery materials provided in *Bartlett*. (*See* Tr. of *Freeman II* Status Conference, ECF No. 375-1, at 32:1.)

[6] This dual-track approach could, of course, introduce inefficiency, which has been found to constitute a compelling need to modify a protective order under some circumstances. *See Charter Oak*, 287 F.R.D. at 134; *In re EPDM*, 255 F.R.D. at 324 ("Certainly if the litigant could access the same materials and deposition testimony by conducting its own discovery, it is in the interest of judicial efficiency to avoid such duplicative discovery." (citing 8 Wright & Miller § 2044.1)); *Carter-Wallace*, 92 F.R.D. at 69–70 (discussing the tension between the mandate of Federal Rule of Civil Procedure 1 for a "just, speedy, and inexpensive determination" of federal actions and the policy against re-using previously produced discovery).

## CONCLUSION

For the reasons discussed herein, the Court grants SCB's motion for clarification and admonishment of Plaintiffs' counsel.

**SO ORDERED.**

Dated: Brooklyn, New York
August 13, 2024

_____
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE