UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

ROBERT BARTLETT, *et al.*,                                              :
                                                                        :
                Plaintiffs,                         :          **Case No. 19-cv-7 (CBA)(TAM)**
                                                                        :
       -against-                                      :
                                                                        :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,   :
*et al.*,                                                               :
                                                                        :
              Defendants.                        :

------------------------------------------------------------------------x

**PLAINTIFFS' RULE 72(a) OBJECTIONS TO MAGISTRATE JUDGE MERKL'S
AUGUST 13, 2024, MEMORANDUM AND ORDER**

## <u>TABLE OF CONTENTS</u>

STANDARD OF REVIEW ................................................................................................ 2

PROCEDURAL HISTORY ............................................................................................... 3

ARGUMENT .................................................................................................................... 9

I.     REDACTING INFORMATION WHICH THE *FREEMAN II* COURT NEITHER READ NOR CONSIDERED CANNOT VIOLATE A PROTECTIVE ORDER. ........................... 9

   A.   The August 13 Order Misconstrues the Scope of the Word "Use" in the Protective Order. ............................................................................................................... 9

   B.   Contrary to the August 13 Order, "piquing" a Court's Curiosity Is Neither "Brazen" Nor "Subversive" Nor a Violation of the Protective Order ..................................... 13

   C.   None of the Alternatives the August 13 Order Posits Plaintiffs' Counsel Could Have Pursued Suggest Redaction of *Freeman II* SAC Allegations Was Improper.................. 14

II.    THE AUGUST 13 ORDER DOES NOT MAKE CLEAR WHETHER IT IS INTENDED TO BAR THE *FREEMAN II* PLAINTIFFS FROM REQUESTING CERTAIN RECORDS OR THE *FREEMAN II* COURT FROM ORDERING DOCUMENT PRODUCTIONS FROM SCB AND KBC ................................................................................... 17

III.   THE AUGUST 13 ORDER FAILS TO ADDRESS THE DISCLOSURES CONSENTED TO BY KBC BANK........................................................................................... 20

CONCLUSION ................................................................................................................ 20

i

# TABLE OF AUTHORITIES

**Cases**

*Carter-Wallace, Inc. v. Hartz Mtn. Indus.*,
  92 F.R.D. 67 (S.D.N.Y. 1981) ................................................................. 19

*Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*,
  287 F.R.D. 130 (E.D.N.Y. 2012) ........................................................... 19

*City of Fort Collins v. Open Int'l LLC*,
  No. 21-cv-02063 (CNS) (MEH), 2022 U.S. Dist. LEXIS 154563 (D. Col. Aug. 16, 2022) .... 11

*Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*,
  No. 15-CV-2044 (AJN) (RLE), 2017 U.S. Dist. LEXIS 85962 (S.D.N.Y. June 5, 2017) ........ 12

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
  10 F.3d 693 (9th Cir. 1993) ............................................................. 9, 10

*Jazz Pharms. Inc. v. Amneal Pharms. LLC*,
  No. 13-cv-391(ES) (JAD), 2016 U.S. Dist. LEXIS 61373 (D.N.J. Jan. 22, 2016) ................... 9

*Milwaukee Elec. Tool Corp. v. Snap-on Inc.*,
  No. 14-cv-1296 (JPS), 2016 U.S. Dist. LEXIS 59953 (E.D. Wis. Mar. 16, 2016) .............. 9, 11

*Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*,
  192 F. Supp. 3d 400 (S.D.N.Y. 2016) ..................................................... 11

*Sidhi Vinayak Petroleum, Inc. v. Hess Corp.*,
  No. 16-cv-1792 (WWE), 2019 U.S. Dist. LEXIS 115870 (D. Conn. July 12, 2019) .............. 11

*Smith v. DeGirolamo*,
  No. 17-cv-5532 (KAM)(ST), 2020 U.S. Dist. LEXIS 176310 (E.D.N.Y. Sept. 25, 2020) ...... 18

*Streck Inc. v. Research & Diagnostic Systems, Inc.*,
  250 F.R.D. 426 (D. Neb. 2008) ........................................................... 11

**Statutes**

28 U.S.C. § 636(b)(1)(A) ..................................................................... 3

**Rules**

Fed. R. Civ. P. 72(a) ........................................................................ 3

Plaintiffs respectfully object, pursuant to Federal Rule of Civil Procedure 72(a), to Magistrate Judge Merkl's Memorandum and Order dated August 13, 2024 ("August 13 Order"), "grant[ing] SCB's motion for clarification and admonishment of Plaintiffs' counsel."

Having acknowledged that "Judge Chen found that the redacted allegations have not been used *yet* because she had not yet read or considered them," the August 13 Order nevertheless grants "SCB's motion for clarification" and holds that:

(1) "Use" of information under the *Bartlett* Protective Order ("*Bartlett* PO"), ECF No. 273, includes "utilizing" that information obtained under that protective order to craft redacted allegations in a complaint that have not been disclosed to any party.

(2) Plaintiffs' counsel violated the *Bartlett* PO by filing a redacted Second Amended Complaint ("SAC") in *Freeman v. HSBC Holdings plc*, No. 18-cv-7359 (PKC) (CLP) (E.D.N.Y.) ("*Freeman II*") without disclosing (even to the *Freeman II* court) any *Bartlett* Discovery Material (defined in B.2 of the *Bartlett* PO) obtained under that PO because they "analyz[ed] the *Bartlett* Discovery Material to craft allegations."

Both interrelated holdings are clearly erroneous.

Furthermore, in granting "SCB's motion for clarification," the August 13 Order inadvertently sows additional confusion. First, it appears to establish a rule that it is improper to request a discovery order by "piquing" another judge's "curiosity." As the record makes clear, Plaintiffs have not disclosed any protected information to Judge Chen (or any unauthorized party) and could just as easily have "piqued her curiosity" with the same generalized description of the records given in Your Honor's December 21, 2023, order (ECF No. 368), Judge Merkl's prior orders, Defendants' own statements, or SCB's own statements. Case law (described below) is clear that protective orders do not prevent a party from *permissibly describing* protected information in order to seek leave to request it, and a court should not tell another court—which is in full possession of the relevant facts—when its approved discovery processes have been "subverted."

Second, the August 13 Order appears to require Judge Chen to determine whether "discovery may commence []without considering arguments grounded on *Bartlett* Discovery

Material[]"—or, restated in the same paragraph—requires Judge Chen to "find[] that discovery is appropriate in that case without reference to information gleaned from *Bartlett* Discovery Material." SCB argues this means that a discovery order from Judge Chen would violate the *Bartlett* PO because "Plaintiffs have no other grounds to seek discovery" other than to acquire the *Bartlett* records. Ltr., *Freeman II*, ECF No. 130 at 2 (attached hereto as **Exhibit A**). This argument is at least a plausible reading of the order. Ordinarily, a court can generally decide when a party may use records produced in a case it supervises in another matter, but the August 13 Order appears to also instruct another *court* when it may permit discovery, and on what grounds. Judge Chen already stated that she had not seen any protected material, meaning the August 13 Order could be read to suggest (as SCB urges) that Judge Chen cannot order discovery of *Bartlett* records if the basis was that her curiosity was "piqued" by the existence of such records. Plaintiffs respectfully submit that to the extent the August 13 Order articulates such a standard, it is unworkable.[1]

Given that Plaintiffs' counsel have not disclosed *any* information (let alone documents) even to the district court in *Freeman*, yet stand accused of "brazenly" "subverting" a limitation on discovery in *Freeman* and been "placed on notice that further efforts to bypass the Protective Order may result in sanctions," August 13 Order at 15, it is especially critical that this Court clarify what Plaintiffs are permitted or prohibited from arguing or "using" in the *Freeman II* case and what if any limitations this Court believes it can impose on the *Freeman II* court.

## STANDARD OF REVIEW

Congress has made clear that, while "a judge may designate a magistrate judge to hear and determine any pretrial matter pending before the court .... A judge of the court may reconsider any

---

[1] This problem is complicated by Magistrate Judge Merkl's September 27, 2023, order, clarified on October 13, 2023, stating that KBC cannot consent to the use of its *own* documents in another case because Defendants have an undefined privacy interest in them, potentially immunizing KBC records from any use, including by KBC itself.

pretrial matter ... where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Fed. R. Civ. P. 72(a) provides that when a non-dispositive pretrial matter is referred to a magistrate judge, parties have 14 days after being served with a copy of the magistrate judge's order to file objections.

## PROCEDURAL HISTORY

Most of the background of this dispute is set forth in this Court's December 21, 2023, Memorandum and Order (ECF No. 368) and is incorporated by reference. As this Court summarized:

> *Freeman II* was stayed pending the appeal in *Freeman I* and then pending the outcome of *Twitter, Inc. v. Taamneh*, No. 21-1496, a case clarifying the standard for aiding-and-abetting liability under JASTA, which was decided by the Supreme Court on May 18, 2023, 598 U.S. 471 (2023).
>
> Following the *Twitter* decision, plaintiffs in the *Freeman* Actions were granted leave to amend their complaint to conform to the standards set forth in *Twitter* and "to incorporate records produced by third parties in *Bartlett*." The District Judge in *Freeman* made clear that she was not ruling or taking a position on whether the *Bartlett* protective order allowed the *Freeman* plaintiffs to use *Bartlett* discovery material in the *Freeman* complaint. Plaintiffs in *Freeman* also filed a motion to lift the stay of discovery and permit them to subpoena the same *Bartlett* materials. The District Judge presiding over *Freeman* denied that motion "given the pending discovery motion in *Bartlett* ... and the existence of [a] protective order in that case." (*Freeman II*, Text Order dated Sept. 15, 2023.)

Op. at 2 (some docket citations omitted).[2]

Some additional procedural background, however, further clarifies the dispute. To begin with, in order to include allegations in the *Freeman II* SAC summarizing information produced pursuant to the *Bartlett* PO, Plaintiffs here moved (on July 21, 2023) for permission to apply *Bartlett* discovery in *Freeman* ("*Bartlett* PO Motion"). *See* ECF No. 335. The *Freeman II* plaintiffs

---

[2]     The "*Freeman* Actions" include *Freeman v. HSBC Holdings plc*, No. 14-cv-6601 (PKC) (CLP) (E.D.N.Y.) ("*Freeman I*") (which has been consolidated with another related action, *Bowman*), *Freeman II*, and *Stephens v. HSBC Holdings plc*, No. 18-cv-7439 (PKC) (CLP) (E.D.N.Y.) ("*Stephens*").

also requested that the *Freeman II* court lift the stay of discovery in that case so that they could (constructively) subpoena the records to the extent necessary to include those allegations in their complaint under seal and subject to the same protections provided for in the *Bartlett* PO. *See Freeman II*, ECF No. 113. On September 15, 2023 (and amended on September 21, 2023), the *Freeman* court denied that motion for discovery pending this Court's consideration of the *Bartlett* PO Motion.

In their *Bartlett* PO Motion, Plaintiffs explained that a subset of the records produced by KBC and SCB are relevant to the *Freeman* Actions because the *Bartlett* and *Freeman* cases involve similar theories of liability, and the records indicate that certain defendants in the *Freeman* Actions maintained accounts and received or initiated transactions through the United States for certain Iranian and Hezbollah-affiliated entities and individuals. *See* ECF No. 335 at 1. Plaintiffs also explained that the *Freeman* plaintiffs only intended to include in their amended complaints certain circumscribed information from the records (all references would be made under seal with redactions on the public docket): (1) the names of the alleged Hezbollah-affiliated entities and individuals in the transaction summaries; (2) the names of the *Freeman* defendants which held the relevant accounts; (3) the dollar amounts of the transactions processed on behalf of the relevant Hezbollah-affiliated customers between 2003-2011; and, where relevant, (4) transactional dates. *See id.* at 2.

During the September 27, 2023, conference, Magistrate Judge Merkl issued a bench ruling denying the *Bartlett* PO Motion, following which the Minute Entry and Order was issued. The bench ruling relied on "the Second Circuit's teachings in *TheStreet[.com]* and in the *Martindell* case," and found that Plaintiffs must meet the standards set out in those cases for modifying their *Bartlett* PO but failed to do so. 9/27/2023 Tr. at 55:20-56:3. Magistrate Judge Merkl denied the

*Bartlett* PO Motion "without prejudice," noting that if "Judge Pollak or Judge Chen … commence discovery in" *Freeman*, "discovery may be cross-applied" between the cases. *Id.* at 59:14-24.

The *Bartlett* Plaintiffs timely filed objections and on December 21, 2023, this Court issued a Memorandum and Order, finding that the bench ruling was not clearly erroneous. *See* ECF No. 368. The decision was based, in part on the fact that "the *Freeman* parties at this stage in their litigation have not been permitted to engage in discovery." *Id.* at 11. Indeed, Judge Chen noted this Court's "ruling was really based on the fact that discovery had not restarted here." *Freeman II*, 2/5/2024 Tr. at 8.[3]

The *Freeman* court had extended the plaintiffs' deadline to file their SAC for the second time to December 27, 2023, given this Court's review of Plaintiffs' objections.

Because the *Freeman* plaintiffs only had six days between this Court's December 21 ruling and their extended deadline to amend their complaint and those six days included the Christmas holiday, Plaintiffs determined that they would be extremely unlikely to receive relief from the *Freeman* court as to any renewed motion for discovery filed during that period; nor were they assured of a further extension of time to file their amended complaint given the two prior extensions (or on such short notice). To preserve their clients' rights, Plaintiffs' counsel therefore filed the SAC and redacted all references to information sourced from records produced in *Bartlett* and, in an abundance of caution, also redacted non-confidential allegations relating to some of those customers to prevent any inferences as to the content of the redactions. The actual portion of allegations summarizing protected information constituted less than 3% of the SAC.

---

[3]     The August 13 Order notes Judge Chen's observation that the *Bartlett* ruling "was really based on the fact that discovery had not restarted here," but determines that "Plaintiffs' heavy reliance on this interpretation of the record is misplaced." Judge Chen may have been mistaken about the *Bartlett* ruling but it unclear why Plaintiffs' reliance on her analysis is itself unjustified. August 13 Order at 6 n.3.

Contrary to the August 13 Order, the *Freeman* plaintiffs did not "establish a cause of action against SCB" using protected information. *Id.* at 14. None of the *Freeman* plaintiffs' claims (including those alleging aiding and abetting Hezbollah) were predicated solely or even predominantly on information "gleaned from *Bartlett* Discovery Material," to use Magistrate Judge Merkl's phrase. *Id.* at 16. The *Freeman* plaintiffs support their claims against SCB for aiding and abetting Hezbollah sufficiently and fully with non-protected materials. *See, e.g., Freeman II* SAC ¶¶ 1467-69 (describing SCB's involvement in the Khanani money laundering network for Hezbollah); ¶¶ 1470-74 (describing SCB's involvement in the Kaloti gold and cash laundering operations for Hezbollah); ¶¶ 1475-78 (describing SCB's involvement in the Zarrab money laundering network for the IRGC): ¶¶ 1481-83 (describing SCB's maintenance of accounts for three companies controlled by Muhammad Bazzi (SDGT) and Tajco (SDGT) controlled by Hezbollah's Tajideen clan). In fact, even the prior iterations of the complaint did so (the first amended complaint in *Freeman II*, which mentioned Hezbollah 1,110 times, contained an entire section on SCB's money laundering for a Hezbollah controlled entity).

Nevertheless, the *Freeman* plaintiffs did not share any of the redacted allegations with the plaintiffs in *Stephens* (another similar case before Judge Chen), any *Freeman* defendant (except SCB, at SCB's request) or even the *Freeman* court itself. The redactions in the *Freeman II* SAC were, in short, intended as a placeholder designed merely to preserve the *Freeman II* plaintiffs' rights to amend (or conceivably to raise on appeal) until such time as the underlying discovery issue could be resolved by either the *Freeman II* court or this Court or both.

While the *Freeman II* plaintiffs were preparing to renew the discovery motion in *Freeman II* (which had previously been denied without prejudice when this Court ruled on the *Bartlett* PO Motion) SCB preemptively requested that the *Freeman II* court compel the *Freeman II* plaintiffs

to refile their SAC without the redacted allegations, arguing that the redactions violated the *Bartlett* PO in this case. The *Freeman II* court denied that motion. *See Freeman II*, January 8, 2024, Minute Order.

The *Freeman II* plaintiffs then renewed their discovery motion, seeking to lift the stay of discovery in that case in order to effectively "subpoena" themselves for the records, which would impose no burden whatsoever on any producing party. SCB argued that lifting the discovery stay was inappropriate at that stage. It repeated its argument that redactions in the SAC somehow violated the *Bartlett* PO, which Judge Chen *again* rejected: "[Filing redactions] I don't consider misuse just yet because it really hasn't come to fruition. I mean, it's sitting there under, you know, blackout, *so that's not using it, in my opinion*." 2/5/2024 Tr., filed in this case as ECF No. 375-1, at 18 (emphasis added).

To the contrary, Judge Chen acknowledged that the *Freeman II* plaintiffs should be entitled to use information that is in their possession: "I don't like knowing that there is this information out there that could well be helpful, or at least plaintiffs believe it's helpful. And it is there, it has been produced, it's not speculative, and it even physically exists in plaintiffs' possession." *Id.* at 29:12-16. *See also id.* at 21 (finding that Plaintiffs acted "diligently" and "justice more requires me to look at what exists rather than rely or vaunt, I guess, procedure over substance").

Despite SCB's objections, the *Freeman II* court "lifted the stay of discovery in *Freeman II/Bowman* for the limited purpose of permitting the *Freeman II/Bowman* Plaintiffs to subpoena Defendant Standard Chartered Bank and non-party KBC Bank for the information obtained in *Bartlett* (19cv7) that is the subject of Plaintiffs' letter motion for discovery." *Freeman II*, February 6, 2024, Minute Order. The court permitted SCB to file a motion to quash the subpoena and write this Court a letter because "I guess you want to present the argument to Judges Merkl and Amon

that even using their knowledge of this information to subpoena the same records in my case runs afoul of the protective order." 2/5/2024 Tr. at 23:24-24:2. *See id.* at 24:15-24 ("hazard[ing] a guess" that this Court would probably find making such a request did *not* violate the PO).

SCB then filed a motion before this Court arguing that Plaintiffs violated the *Bartlett* PO by "using" the Discovery Material in their *Freeman II* SAC via undisclosed redactions.[4]

**The August 13 Order's "Findings"**

The August 13 Order acknowledges that "Judge Chen found that the redacted allegations have not been used *yet* because she had not yet read or considered them." August 13 Order at 13. The August 13 Order nevertheless found that:

- Plaintiffs have "violated" the *Bartlett* PO by their conduct in *Freeman II*. *Id.* at 9.

- The review and incorporation of Discovery Material in the amended complaint in *Freeman II* — even redacted — constitutes an improper "use" of material that is subject to the *Bartlett* PO in that the Discovery Material was used to craft claims against SCB. *Id.*

- "Use" in the Bartlett Protective Order "mean[s] something akin to 'utilize.'" *Id.* at 12 n. 4 (citing the Merriam-Webster Dictionary)

- "Counsel may well have included the redacted material in the second amended complaint in an effort to 'pique' Judge Chen's curiosity." *Id.* at 13.

- Plaintiffs' counsel has used Discovery Material from *Bartlett* without bringing a renewed request for modification of the *Bartlett* PO. *See id.* at 14.

- "[T]he record strongly indicates that Plaintiffs are seeking to use *Bartlett* discovery to 'establish a cause of action against SCB in another case' and to 'subvert' a limitation on discovery in *Freeman*." *Id.*

- "By analyzing the *Bartlett* Discovery Material to craft allegations for the second amended complaint in *Freeman II* and by relying on *Bartlett* Discovery Material to argue in support of seeking discovery in a case

---

[4]   All the plaintiffs in *Freeman II* are also plaintiffs in *Bartlett*.

where a limitation had been placed on discovery due to motion to dismiss practice, the Court finds that Plaintiffs' counsel has violated the Protective Order." *Id.* at 15.

It is not precisely clear what the "finding" that "Discovery Material [was] used to craft claims against SCB" means, or whether Magistrate Judge Merkl was under the impression that the *Freeman II* plaintiffs' claims pertaining to SCB aiding and abetting Hezbollah are predicated solely on redacted materials. To be clear, those *Freeman II* claims are predicated on unredacted, non-confidential information. The redacted information constitutes a small part of the SAC (as well as a small fraction of the allegations directed at SCB), and much of the redacted information is non-confidential information that the *Freeman II* plaintiffs redacted out of an abundance of caution (i.e., in case it could be read to suggest what protected information might relate to).

## ARGUMENT

## I. REDACTING INFORMATION WHICH THE *FREEMAN II* COURT NEITHER READ NOR CONSIDERED CANNOT VIOLATE A PROTECTIVE ORDER.

### A. The August 13 Order Misconstrues the Scope of the Word "Use" in the Protective Order.

The procedural history of the present dispute is highly idiosyncratic. Generally, courts interpret "use" as disclosure, and Plaintiffs have found no cases where requesting discovery of protected information from another court *alone* constitutes improper use.[5]

Defining "use" to mean utilizing "knowledge" can lead to "absurd" results. *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). In *Dual-Deck*, the Ninth Circuit addressed a protective order that stated that discovery materials "shall not be used at

---

[5]     The closest Plaintiffs have located is *Jazz Pharms. Inc. v. Amneal Pharms. LLC*, No. 13-cv-391(ES) (JAD), 2016 U.S. Dist. LEXIS 61373 (D.N.J. Jan. 22, 2016). *Milwaukee Elec. Tool Corp. v. Snap-on Inc.*, discussed *infra*, called *Jazz* "absurd," and noted that "[e]ven the *Jazz* court recognized the significant danger for 'unfair gamesmanship' under its interpretation…." No. 14-cv-1296 (JPS), 2016 U.S. Dist. LEXIS 59953, *17 (E.D. Wis. Mar. 16, 2016).

any time for any ... purpose whatsoever" other than preparing or trying the case in which they were produced. *Id.* at 694. In discovery, plaintiff Go-Video obtained information suggesting that defendants committed antitrust violations beyond those already alleged. *Id.* After Go-Video was denied leave to amend, it relied on the same discovery to, *inter alia*, file a second lawsuit and to serve a discovery request in the second suit which also referred to discovery obtained in the first case. *Id.*

The district court found Go-Video in contempt, but the Ninth Circuit vacated, holding that the district court committed a "clear error of judgment." *Id.* at 695. The Ninth Circuit explained that Go-Video did not violate the protective order by using information that, admittedly, "it would not have discovered so easily[,]" as the plaintiff "went to great lengths to avoid revealing in public filings anything it had learned in discovery[.]" *Id.* at 695-96. The Ninth Circuit explained that defining "use" of protected information to mean use of *knowledge* gleaned from that information would be "absurd" and require "total amnesia":

> [I]f taken literally, the [protective] order would be absurd. Because Go-Video's lawyers cannot achieve total amnesia and all their subsequent work in antitrust litigation against the defendants (and perhaps anyone else) would be informed by what they learned during discovery in the 1987 suit, the order would prohibit them from representing Go-Video at all in the 1990 litigation. Indeed, lawyers who learn from and use their experience obtained in discovery under such an order would have to change fields, and never do antitrust work again, lest they "use" what they learned in a prior case "in any way whatsoever" in any "other action." For the protective order to comply with common sense, a reasonable reading must connect its prohibitions to its purpose—protection against disclosure of commercial secrets.

*Id.* at 695.

Relying on *Dual-Deck*, a court in the Second Circuit explained that a plaintiff was wrong to complain the word "use" would prevent it from raising protected information in other cases, if redacted. *Sidhi Vinayak Petroleum, Inc. v. Hess Corp.*, No. 16-cv-1792 (WWE), 2019 U.S. Dist.

LEXIS 115870 (D. Conn. July 12, 2019). That court explained that a "common sense" understanding of "use" led the *Dual-Deck* court to hold "that the plaintiff's use of discovery from the first lawsuit in the second lawsuit, 'substantially complied with a reasonable interpretation of the protective order.'" *Id.* at *11. *See also Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 192 F. Supp. 3d 400, 405 (S.D.N.Y. 2016) (holding that reading a protective order to prohibit counsel "from using their knowledge of what has been produced here to advocate for the production of the same documents, if otherwise discoverable, in a parallel case against a different defendant" would "strain" the word "use").

Other courts agree: "a party's use of its *knowledge* that documents exist does not necessarily constitute the use *of those documents*." *City of Fort Collins v. Open Int'l LLC*, No. 21-cv-02063 (CNS) (MEH), 2022 U.S. Dist. LEXIS 154563, at *11-12 (D. Col. Aug. 16, 2022) (emphasis in original). The court reasoned that when the defendant in that case crafted a document request "based on its knowledge of the Protected Materials, this alone does not amount to an 'employ' of those materials or information specifically, and thus, does not amount to the 'use' of those protected documents." *Id.* at *16 (quoting Black's Law Dictionary on "use"). *See also Milwaukee Elec. Tool*, 2016 U.S. Dist. LEXIS 59953, *14-15 (finding that plaintiffs had not improperly "used" documents in violation of a protective order even if they had "used knowledge of the existence of such documents" to seek the same documents in an *inter partes review* proceeding);[6] *Streck Inc. v. Research & Diagnostic Systems, Inc.*, 250 F.R.D. 426, 434-35 & n.4 (D. Neb. 2008) (holding that a plaintiff's counsel's impeachment of a witness in one action based on protected documents produced in another action – with an explanation that counsel "has reason

---

[6]       *Milwaukee* is cited with approval by the S.D.N.Y. in *Royal Park*, *supra*.

to believe" the witness was mistaken based on those documents – did not violate the protective order or warrant sanctions.[7]

If the August 13 Order were correct, even advising the *Freeman II* court of Plaintiffs' intention to file a motion with this Court to allow the use of Discovery Material in *Freeman* could constitute a violation of the *Bartlett* PO because it "utilized" information "learned in a prior case." Put simply, if "use" of information or documents is to be understood in a way that does not lead to absurd results, it must refer to an actual *disclosure* of specific protected information.

In this case, as the August 13 Order acknowledges, Plaintiffs' counsel have not disclosed anything. Accordingly, they could not and have not "used Discovery Material from *Bartlett* without properly seeking modification of the Protective Order," August 13 Order at 12, nor is it reasonable to criticize Plaintiffs' counsel for failing to return to this Court to seek modification of the *Bartlett* PO when the *Freeman II* court invited SCB and KBC to write to this Court, rather than Plaintiffs. In either case, the issue was brought back to this Court and Plaintiffs' counsel neither disclosed *Bartlett* Discovery Material in the interim nor took any other procedural steps before this Court not directed by the *Freeman II* court.

The August 13 Order also faults Plaintiffs' counsel for "analyzing the Bartlett Discovery Material to craft allegations for the second amended complaint in *Freeman II*" but ignores the fact that those allegations have not been disclosed. *Id.* at 15. It finds that Plaintiffs' counsel has violated the Protective Order "by relying on *Bartlett* Discovery Material to argue in support of seeking discovery in a case where a limitation had been placed on discovery ...." *Id.* But that is what

---

[7]     Plaintiffs have only located a single order in the Second Circuit treating redacted allegations as a violation of a protective order. *Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Research*, No. 15-CV-2044 (AJN) (RLE), 2017 U.S. Dist. LEXIS 85962, at *8 (S.D.N.Y. June 5, 2017). The circumstances in that order (which was not appealed to the district court judge) were very different—the plaintiff (1) brought a surprise complaint rather than raise their issue with two courts, (2) were not facing a pressing deadline for amendment, (3) provided an *unredacted* version of the complaint to the other court, and (4) did not receive an indication from the other court that its redacting the allegations was *not* "misuse," as the *Freeman II* plaintiffs did.

counsel did in the cases above *without* taking the extra step of redaction. Under the August 13 Order's reasoning, no one could request discovery relating to protected records if simply stating that they exist is a "use."

Having defined "use" to mean "utilize" and then found Plaintiffs' counsel to have violated the *Bartlett* PO, the August 13 Order notes that "Judge Chen inquired as to whether 'use' only applies to 'physically introducing them and relying on them or does it actually prohibit including your knowledge of them to acquire them to use them?'" *Id.* at 15-16. The August 13 Order then concludes that "the facts presented indicate that the Court need not answer the latter, more difficult question"—but that is *precisely* the question answered erroneously by the Order in finding the *Freeman* plaintiffs' redactions a violation of the *Bartlett* PO.

### B.   Contrary to the August 13 Order, "piquing" a Court's Curiosity Is Neither "Brazen" Nor "Subversive" Nor a Violation of the Protective Order

Because Plaintiffs' counsel have not disclosed any documents or information covered by the PO even to the district judge in *Freeman II*, the August 13 Order asserts that Plaintiffs' counsel "may well have included the redacted material in the second amended complaint in an effort to 'pique' Judge Chen's curiosity." August 13 Order at 13. It is unclear what constitutes "piquing the curiosity" of a district judge or how it is possibly improper—it is certainly not a violation of the *Bartlett* PO. Raising an issue with a court is not improper. Describing records with the same abstraction that this Court has and Defendants and SCB has is not improper.

Judge Chen is a federal District Court Judge with many years of experience. She is not a juror requiring protection from the risk of unfair prejudice or confusion of issues. Raising a prospect for relevant discovery before Judge Chen is not "subverting" her own discovery limitations, as the August 13 Order suggests. *id.* at 14, which Judge Chen is fully capable of enforcing. To be clear, the entirety of the record has been before her, including the decisions of

this Court. Opposing counsel are all experienced litigators from some of the nation's largest law firms and the proceedings here could not have been more transparent, yet Plaintiffs' counsel stands accused of somehow improperly persuading a District Judge to partially lift a purely discretionary stay of discovery while affording SCB (and KBC) an opportunity to move before this Court for further relief.

As made clear above, the entirety of Judge Chen's knowledge about the contents of the redacted allegations in the *Freeman II* SAC comes from descriptions from Plaintiffs, this Court, Defendants, and SCB, all of which were at the same level of abstraction. Her "curiosity" is premised on those descriptions. For example, this Court wrote that some of the *Bartlett* Discovery Materials "indicate that certain defendants in the *Freeman* Actions maintained accounts and received or initiated transactions through the United States for certain Iranian and Hezbollah-affiliated entities and individuals." ECF No. 368 at 3 (quoting Pls. Objections, ECF No. 348 at 6-7). It cannot possibly be improper to request discovery in one case by *reading a publicly docketed order* from another. But under at least SCB's reading of the August 13 Order, Plaintiffs were prohibited by the *Bartlett* PO from even alerting Judge Chen to that Order so as to seek an extension and/or discovery (procedures the August 13 Order recommends, discussed below), lest it "pique her curiosity" further—leading her to "consider[] arguments grounded on *Bartlett* Discovery Material." August 13 Order at 16.

### C. None of the Alternatives the August 13 Order Posits Plaintiffs' Counsel Could Have Pursued Suggest Redaction of *Freeman II* SAC Allegations Was Improper.

The August 13 Order argues that the redactions in the SAC violate the *Bartlett* PO because the *Freeman II* plaintiffs could have pursued other courses of action apart from filing a redacted SAC. Those stated alternative options are:

(1) The *Freeman II* plaintiffs could have filed their SAC without including redacted allegations "sourced," at least in part, from the *Bartlett* Discovery Material.

(2) The *Freeman II* plaintiffs could have sought an extension of time to file the amended complaint from Judge Chen in light of Judge Amon's affirmance of Magistrate Judge Merkl's bench ruling, issued only six days before the *Freeman II* plaintiffs' deadline to file the SAC.

(3) The *Freeman II* plaintiffs could have sought to open discovery in *Freeman II prior to* amending the complaint and sought permission from Judge Chen to issue a document request to SCB based on their knowledge of the case and without regard to discovery produced in *Bartlett*.

(4) The *Freeman II* plaintiffs could have sought to open discovery in *Freeman II* and, if that was granted, then returned to this Court for another evaluation of whether they could then demonstrate a compelling need to modify the Protective Order.

*Id.* at 14.

Even assuming that redacting information covered by the *Bartlett* PO – unseen even by the *Freeman II* court – could somehow qualify as misusing it, the options presented were not realistic given the timing described above. The first option self-evidently would not have preserved the *Freeman II* plaintiffs' rights, which Plaintiffs' counsel is duty bound to do (although it is a seeming recognition that Plaintiffs *did not* predicate a claim against SCB using *Bartlett* Discovery Material). The second option was possible, but the *Freeman* court had originally set a September 26, 2023, deadline to file the SAC (June 28 Minute Order), and then extended it on September 15, 2023, to October 17, 2023, at Plaintiffs' request. Plaintiffs then moved again for an "extension of deadlines pending resolution of their anticipated objections to the Honorable Judge Merkl's 9/27/2023 discovery order in Bartlett" which was opposed by defendants and denied, but on October 2, 2023, the *Freeman II* court granted a 60-day extension for filing the SAC by December 27, 2023. Thus, Plaintiffs' counsel reasonably believed the likelihood of obtaining a third extension

– assuming the Court was working over the Christmas holiday – was too low to justify potentially waiving the theoretical opportunity to use the redacted allegations altogether.

The third and fourth options were foreclosed on September 15, 2023, by the *Freeman* court's denial without prejudice of Plaintiffs' motion to lift the stay of discovery pending this Court's consideration of the *Bartlett* PO Motion. By the time this Court overruled Plaintiffs' objections on December 21, 2023, Plaintiffs could not have plausibly "sought to open discovery in *Freeman II prior* to amending the complaint and sought permission from Judge Chen to issue a document request to SCB" in a fashion that would have been resolved over Christmas or would have ensured that Plaintiffs would have preserved their right to amend. The SAC was, after all, not an amendment as of right and it followed a dismissal years earlier.

In any event, requesting that discovery would have required making "arguments grounded on *Bartlett* Discovery Material," which the August 13 Order suggests is itself a violation of the *Bartlett* PO.

In sum, even apart from its overly expansive definition of "use," the August 13 Order castigates Plaintiffs' counsel for doing their job: protecting and preserving the rights of their clients – the families of murdered service members and wounded veterans pursuing claims against defendants who, the contours of JASTA liability aside, have admitted to laundering billions of dollars for agents of a State Sponsor of Terrorism.

The August 13 Order is correct in one respect. Plaintiffs could have – and did – seek "to open discovery in *Freeman II*" *which was* granted. The August 13 Order, however, faults Plaintiffs for not "return[ing] to this Court for another evaluation of whether they could then demonstrate a compelling need to modify the Protective Order," but procedurally that is not how Judge Chen directed the parties to proceed. Instead, she invited SCB and KBC to essentially seek a protective

order from this Court. If there was an alternative procedure this Court preferred, it could have said

so, rather than finding compliance with Judge Chen's instructions a violation of the PO.

## II.   THE AUGUST 13 ORDER DOES NOT MAKE CLEAR WHETHER IT IS INTENDED TO BAR THE *FREEMAN II* PLAINTIFFS FROM REQUESTING CERTAIN RECORDS OR THE *FREEMAN II* COURT FROM ORDERING DOCUMENT PRODUCTIONS FROM SCB AND KBC

Having first erroneously found that the redactions in the *Freeman II* SAC violated the

Bartlett PO and "admonished" Plaintiffs' counsel for "piquing" the *Freeman II* court's interest, the

August 13 Order then concludes:

> If Plaintiffs' representation is accurate [that the *Freeman II* document request is based on the subpoena that was issued in *Bartlett*, which was prepared before counsel had any exposure to protected information] — and Judge Chen determines that discovery may commence in *Freeman II* (without considering arguments grounded on *Bartlett* Discovery Material) — then the Protective Order in *Bartlett*, which shields SCB's information from being used for purposes other than this litigation, cannot also serve as sword to cut down the plaintiffs' discovery demands in *Freeman II*. For all of these reasons, the Court finds that the Protective Order is not a bar to the *Freeman II* plaintiffs' discovery efforts, if Judge Chen finds that discovery is appropriate in that case without reference to information gleaned from *Bartlett* Discovery Material.

*Id.* at 16 (footnote omitted).

Unsurprisingly, the *Freeman II* defendants now argue that, should Judge Chen order the

discovery she permitted the *Freeman II* plaintiffs to request, the *Bartlett* plaintiffs (or possibly

Judge Chen) would thereby violate the PO:

> Plaintiffs have no basis to seek discovery in this case without reference to *Bartlett* discovery material, and, indeed, the stay of discovery in this case was only provisionally lifted "for the limited purpose of permitting [Plaintiffs] to subpoena Defendant Standard Chartered Bank and non-party KBC Bank *for the information obtained in* Bartlett *(19cv7) that is the subject of Plaintiffs' letter motion for discovery.*" (Minute Entry dated Feb. 6, 2024 (emphasis added).) Plaintiffs have no other grounds to seek discovery.

Exhibit A at 2 (internal citations omitted).

Given the preceding 15 pages of the August 13 Order, the *Freeman* defendants can be forgiven if they read the Order's penultimate paragraph as imposing a complete bar on the *Freeman II* court from ordering discovery predicated on the subpoena that was issued in *Bartlett* as no one disputes that the purpose of lifting the stay was to provide a mechanism for providing the *Freeman II* court with a copy of the unredacted SAC under seal.[8]

It is hard to understand why the August 13 Order would require a determination (from another court, no less) that discovery in *Freeman II* did not stem from *Bartlett* discovery. Obviously, Magistrate Judge Merkl is aware that the discovery the *Freeman II* court ordered stemmed from *Bartlett* discovery—this process *began* with Plaintiffs' *Bartlett* PO Motion before the *Bartlett* court to use records in *Freeman II*. Judge Merkl denied that motion "without prejudice," noting that if "Judge Pollak or Judge Chen … commence discovery in" *Freeman*, "discovery may be cross-applied" between the cases. *See* 9/27/2023 Tr. at 59:14-24. Indeed, if the *Freeman II* defendants' interpretation of the August 13 Order is correct it is unclear if *anyone* can request this information again.[9]

Further, if the *Freeman* defendants' interpretation of the August 13 Order is correct, then the *Freeman II* court is barred from enforcing the document request and subpoena issued to SCB and KBC or any future requests of a similar nature because *Freeman II* plaintiffs' counsel's

---

[8] SCB has itself acknowledged that if the *Freeman II* plaintiffs prevail on this issue their preferred result would be to "(i) limit the scope of discovery only to the specific banking records from which Plaintiffs sourced the redacted allegations in the SAC; and (ii) require that any such information be kept confidential by the *Freeman II* parties and those portions of the SAC be filed under seal in *Freeman II*." *Freeman II* ECF No. 125 at 5.

[9] The August 13 Order noted that a "fruit of the poisonous tree-type analysis … may be apt" in some circumstances, which Judge Chen raised as a potential bar to *non-signatories* of the *Bartlett* PO requesting *Bartlett* Discovery Material in other cases. To be clear, that is a constitutional concept "calculated to deter future unlawful police conduct and protect liberty," *Smith v. DeGirolamo*, No. 17-cv-5532 (KAM)(ST), 2020 U.S. Dist. LEXIS 176310, at *14 (E.D.N.Y. Sept. 25, 2020) (internal citation omitted)—it has no application whatsoever, even by analogy, to civil discovery among private parties.

knowledge of what to request will *always* be informed by what they learned from Discovery Material in *Bartlett*.

But courts reject the "absurd tenet that a party can avoid discovery in one case merely because it disclosed the same material to an adversary bound by a protective order in another case." *Carter-Wallace, Inc. v. Hartz Mtn. Indus.*, 92 F.R.D. 67, 69 (S.D.N.Y. 1981). Indeed, Judge Merkl cited this same proposition. *See* August 13 Order at 15. Where records might be relevant in "currently pending matters or future cases similar to the case at bar," the producing party "cannot rely on the Protective Order as a means of protecting discovery that would otherwise be discoverable in the related actions." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012). Indeed, "allowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases." *Id.*

Here, the *Freeman II* plaintiffs re-issued effectively the same document request that SCB received in *Bartlett* in the form of a subpoena because the original subpoena was (1) not confidential, (2) requested transactional records for (the identical) Hezbollah-related persons and entities, and (3) was drafted before SCB produced anything—the "new" document request to SCB and subpoena to KBC do not reference any specific records either has actually produced (although the cases cited above confirm that this would have been permissible—the *Open Int'l* court held that it is not a violation of a PO to request confidential records by Bates number).

A more logical reading of the August 13 Order (and what Plaintiffs believe was intended) could be that, to the extent that the *Freeman II* request and subpoena are based on the *Bartlett* subpoena (which was prepared before counsel had any exposure to protected information), the

Bartlett PO is not a bar to the *Freeman II* plaintiffs' discovery efforts or the *Freeman* court's enforcement of that discovery.

However, given the *Freeman II* defendants' position, the procedural history of this matter and the August 13 Order's unjustified "admonishment" of counsel and erroneous finding that undisclosed redactions in the *Freeman II* SAC constituted "use" of *Bartlett* Discovery Material in violation of the Bartlett PO, clarification of the Order is required.

## III.   THE AUGUST 13 ORDER FAILS TO ADDRESS THE DISCLOSURES CONSENTED TO BY KBC BANK

Magistrate Judge Merkl previously held that even though KBC Bank consented to the use of records it produced pursuant to the *Bartlett* PO in *Freeman II*, that consent is ineffective, apparently because Defendants have a privacy interest in KBC's records. This is wrong as a matter of law for multiple reasons. First, the *Freeman II* plaintiffs do not mention any of the *Bartlett* Defendants in any redacted (or unredacted) part of the *Freeman II* SAC. Second, these records at most relate to the privacy of the *Bartlett* Defendants' *customers*, not banks that provide these customers with financial services. Third, Magistrate Judge Merkl has *also* correctly found that most of the records *themselves* are of minimal privacy value. *See* ECF No. 395.

In any event, combined with the other implications of the August 13 Order, it is now unclear to what degree the *Freeman II* plaintiffs are permitted to use KBC's *Bartlett* Discovery Materials, notwithstanding KBC's consent.[10]

## CONCLUSION

Plaintiffs respectfully request that the Court set aside Magistrate Judge Merkl's August 13, 2024, Order and clarify the parameters, if any, under which the *Bartlett* PO precludes discovery and un-redaction under seal of the *Freeman II* SAC. *See* Fed. R. Civ. P. 72(a).

---

[10]     Allegations derived from KBC Discovery Materials were also redacted in the *Freeman II* SAC.

Dated: August 27, 2024
      Hackensack, New Jersey

                            Respectfully submitted,

                            **OSEN LLC**

By      /s/ Gary M. Osen
             Gary M. Osen
             Michael Radine
             Ari Ungar
             Aaron Schlanger
             Dina Gielchinsky
             190 Moore Street, Suite 272
             Hackensack, NJ 07601
             (201) 265-6400

             **TURNER & ASSOCIATES, P.A.**
             Tab Turner
             4705 Somers Avenue, Suite 100
             North Little Rock, AR 72116
             (501) 791-2277

             **MOTLEY RICE, LLC**
             Michael Elsner
             John Eubanks
             28 Bridgeside Boulevard,
             P.O. Box 1792
             Mount Pleasant, SC 29465
             (843) 216-9000

             *Attorneys for Plaintiffs*