UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK (BROOKLYN)

```
----------------------------:
                            :
BARTLETT, et al.,           :Case No.: 19-cv-0007
                            :
                 Plaintiff, :Brooklyn, New York
                            :November 18, 2024
         v.                 :12:08 p.m. - 1:03 p.m.
                            :
SOCIETE GENERALE de BANQUE  :
au LIBAN S.A.L., et al.;    :
                            :
               Defendants.: :
----------------------------:
```

TRANSCRIPT OF STATUS CONFERENCE HEARING
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          OSEN LLC
Robert Bartlett         BY:  Gary M. Osen, Esq.
                             Michael Radine, Esq.
                             Ari Ungar, Esq.
                             Cindy Schlanger, Esq.
                        1900 Moore Street - Suite 272
                        Hackensack, NJ 07601

For Plaintiff:          MOTLEY RICE LLC
                        BY:  John M. Eubanks, Esq.
                        28 Bridgeside Boulevard
                        Mt. Pleasant, SC 29464

For Defendant:          ASHCROFT LAW FIRM, LLC
Societe Generale        BY:  Michael Sullivan, Esq.
                             Brian Leske, Esq.
                        200 State Street
                        Boston, MA 02109

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1                    Appearances (Continued)

 2   For Defendant:       DECHERT, LLP
     Fransabank S.A.L.  BY:  Michael H. McGinley, Esq.
 3                            Tamer Mallat, Esq.
                              Jonathan Streeter, Esq.
 4                            Julia Shea, Esq.
                         2929 Arch Street
 5                       Philadelphia, PA 19104

 6   For Defendant:       SQUIRE PATTON BOGGS LLP
     Middle East        BY:  Mitchell Rand Berger, Esq.
 7   Africa Bank            Gassan A. Baloul, Esq.
                              Joseph S. Alonzo, Esq.
 8                            Alex Hyman, Esq.
                         1211 Avenue of the Americas
 9                       New York, New York 10036

10   For Defendant:       DLA PIPER LLP US
     Byblos Bank        BY:  Samantha Chaifetz, Esq.
11                            Erin Collins, Esq.
                              Anthony Coles, Esq.
12                       1251 Avenue of the Americas
                         New York, New York 10020
13
     For Defendant:       MAYER BROWN, LLP
14   Bank Audi          BY:  Brendan Harrington, Esq.
                         1221 Avenue of the Americas
15                       New York, New York 10020

16

17

18

19

20

21

22

23

24

25


             AMM TRANSCRIPTION SERVICE   631.334.1445
```

1    THE DEPUTY CLERK:  This is civil cause for

2    a discovery conference; Docket: 19-cv-0007,

3    Bartlett, et al. v. Societe Generale de Banque au

4    Liban S.A.L., et al.

5    Before asking the parties to state their

6    appearance, I would like to note the following:

7    Persons granted remote access to

8    proceedings are reminded of the general prohibition

9    against photographing, recording and rebroadcasting

10   of court proceedings.  Violation of these

11   prohibitions may result in sanctions, including

12   removal of court-issued media credentials, restrict

13   entry to future hearings, denial of entry to future

14   hearings, or any other sanctions deemed necessary by

15   the Court.

16   Will the parties please state their

17   appearances for the record, starting with the

18   plaintiff.

19   MR. OSEN:  Good afternoon, Your Honor.

20   It's Gary Osen on behalf of the Bartlett plaintiffs.

21   I'm joined today by my colleagues, Ari Ungar, Cindy

22   Schlanger, Michael Radine, as well as my colleague

23   from Motley Rice, John Eubanks.

24   THE COURT:  Great.  Good afternoon to

25   everybody.  And I'm just not -- I was curious, who

1    is taking the lead on behalf of the defendants

2    today?

3            MR. McGINLEY:  Hi, Your Honor.  This is

4    Mike McGinley from Dechert LLP.  We represent BLOM

5    Bank, Fransabank and Bank Audi, and I've been

6    designated to take the lead.  But, obviously, if any

7    of my colleagues from the other banks wants to add

8    or correct anything I have to say, they're always

9    welcome to jump in.

10           THE COURT:  All right.  Well, thank you for

11   that, Mr. McGinley.  And I certainly want to make a

12   full record of everybody who is here.  I'm not

13   trying to call folks out of order.  I just wanted to

14   know who is taking the lead.  So I'm just making

15   sure we get all of the appearances.

16           So let me just get back to the docket.  I

17   navigated away to look something up in the *Miller*

18   case and lo and behold, I thought I had the docket

19   up, it's back up.  But, as you know, it takes a

20   while to get to the defendants.  So just give me one

21   second.

22           MR. McGINLEY:  And, Your Honor, while

23   you're doing that, I can introduce my colleagues,

24   Jonathan Streeter and Tamer Mallat and Julia Shea

25   from Dechert.

AMM TRANSCRIPTION SERVICE  631.334.1445

1          THE COURT:  All right.  Good afternoon to

2     all of you.

3          MR. OSEN:  Thank you, Your Honor.

4     Judge ...

5          THE COURT:  Feels like ECF is misbehaving

6     on purpose.  Just give me one more second.

7          All right.  Finally, we got to the

8     defendants.  All right.  So we have gotten

9     Mr. McGinley's clients.

10         Who is here on behalf of Societe Generale?

11         MR. SULLIVAN:  Good afternoon, Your Honor.

12    Michael Sullivan and Brian Leske from the Ashcroft

13    firm.

14         THE COURT:  Okay.  And are you representing

15    anybody else for today's purposes?

16         MR. SULLIVAN:  We are not, Your Honor, just

17    SGBL.

18         THE COURT:  All right.  And we've already

19    covered Fransabank, correct, Mr. McGinley?

20         MR. McGINLEY:  That's correct, Your Honor.

21         THE COURT:  Middle East Bank Africa S.A.L.?

22         MR. BERGER:  Good afternoon, Your Honor.

23    This is Mitchell Berger from Squire Patton Boggs and

24    we represent MEAB Bank.  I'm here with my

25    colleagues, Gassan Baloul, Joseph Alonzo and Alex

1   Hyman.  And if Your Honor is checking through the

2   docket, we also represent Fenicia Bank and LGB Bank,

3   formerly known as Lebanon & Gulf Bank.

4           THE COURT:  Okay.  Thank you for that.

5   We've already covered BLOM Bank in the form of

6   Mr. McGinley's team.

7           And on behalf of Byblos Bank, who do we

8   have?

9           MS. CHAIFETZ:  Good afternoon, Your Honor.

10  Samantha Chaifetz from DLA Piper.  I'm joined here

11  today by my colleagues, Anthony Coles and Erin

12  Collins.

13          THE COURT:  All right.  Good afternoon to

14  all of you.  And --

15          MS. CHAIFETZ:  I'll note the other banks we

16  represent.

17          THE COURT:  Oh, please, yes.

18          MS. CHAIFETZ:  We represent Bank of Beirut

19  and Bank of Beirut and the Arab Countries, BBAC.

20          THE COURT:  And for Bank Audi S.A.L.?

21          MR. McGINLEY:  That's us, Your Honor.

22  Dechert represents Bank Audi as well.

23          THE COURT:  Yes, I see you.  You're third

24  on the list.

25          All right.  Bank of Beirut we just covered,

AMM TRANSCRIPTION SERVICE  631.334.1445

1   so thank you for that, Ms. Chaifetz.

2          Did we get a Lebanon & Gulf Bank

3   representative yet?

4          MR. BERGER:  Yes, Your Honor.  Mitchell

5   Berger, Squire Patton Boggs, Lebanon & Gulf Bank,

6   now known as LGB Bank.

7          THE COURT:  Okay.  Yes.  I have you here

8   for all three, right; MEAB, Fenicia and LGB?

9          MR. BERGER:  Yes, Your Honor.

10          THE COURT:  Thank you.

11          And you have Banque Libano-Française,

12   Mr. McGinley, or no?

13          No.  It's from Mayer Brown.

14          Do we have anybody here for Banque Libano?

15          MR. HARRINGTON:  Yes, Your Honor.  I

16   apologize.  This is Brendan Harrington.  I'm

17   representing -- or here from Mayer Brown,

18   representing Banque Libano-Française today.

19          THE COURT:  Okay.  Thank you.

20          And Jammal is excused from discovery.  That

21   might be it -- is somebody here from -- Mr. Baasiri

22   is out of the case.  Is there anybody who needs to

23   state their appearance who hasn't?

24          All right.  I think that's everybody.

25   Although I don't know that I've gotten quite

AMM TRANSCRIPTION SERVICE  631.334.1445

1    everybody, but I trust that Ms. Chan and my very

2    capable law clerk have.

3         So we're here, as the parties know, in an

4    effort to try to figure out, sort of, a reasonable

5    plan with regard to attempting to continue the

6    discovery in this case.  I received a letter from

7    the Osen firm in mid-September requesting that we

8    set at that point what would have been, in my view,

9    a very short deadline for the determination or

10   reporting back to the Court of whether or not the

11   defendants were going to comply with the March 31,

12   2023 memorandum and order overruling the Lebanese

13   Bank secrecy objections.

14        At that point, that would have given them

15   11 days.  I declined to enter that deadline.  And

16   upon reviewing the motion, determined that it would

17   really be best if we got together for a conference

18   to discuss each side's proposed paths forward and

19   try to reach some sort of reasonable conclusion as

20   to what makes logistical and practical sense in

21   trying to continue the discovery here.

22        I don't know whether or not the discovery

23   schedule is impacted at all based upon the deadline

24   that had been sought to respond to the third amended

25   complaint, or whether or not the substantive

1     proceedings will impact the discovery schedule, and

2     if so, in what way.  So I'm curious to hear the

3     parties' thoughts on that as well.

4          So, Mr. Osen, this was, of course,

5     initiated with your letter, so would you like to

6     start, sir?

7          MR. OSEN:  Sure.  Thank you, Your Honor.

8     This is Gary Osen; again, Osen LLC for the

9     plaintiffs.

10          Just, sort of, to frame where we are

11     procedurally, Your Honor, of course, overruled the

12     bank secrecy objections in March of 2023.  That was

13     followed by a narrow production order for purposes

14     of allowing the defendants to seek letters rogatory

15     from Lebanon.  The defendants did not seek review of

16     Your Honor's ruling overruling bank secrecy

17     objection, so that is the law of the case here.

18          So the issue then comes to what happens

19     next.  And, of course, this past summer, after

20     approximately a year, the Lebanese government

21     advised that they were declining the Court's request

22     under letters rogatory, and that then led to the

23     letter exchange that Your Honor referenced earlier.

24          So the defendants have indicated to us that

25     they are in the process of -- at the time, they were

AMM TRANSCRIPTION SERVICE   631.334.1445

1    about to commence the waiver process.  They're now

2    in the middle of that process, but only as it

3    applies to the entities listed in the letters

4    rogatory request, not based on a larger universe of

5    relevant account holders or potential account

6    holders.

7            So, first and foremost, and keeping, I

8    think, with what was done in the *Miller* case, *Miller*

9    *v. Arab Bank*, as well as other bank secrecy cases

10   that we've been involved with, the first step after

11   the process is -- come to this, sort of, standpoint

12   is for the Court to issue a production order that is

13   not a narrow one, tailored for the purposes of

14   letters rogatory, but one which sets forth basically

15   what the defendants' obligations are under Rule 26

16   discovery.

17           And so we have proposed to the defendant

18   that we set a schedule to meet and confer.  We would

19   begin by providing them with a proposed production

20   order.  They would then review it, raise any

21   objections.  We meet and confer.  And then at the

22   end of that process, we would either submit a joint

23   production order, which we've achieved in a couple

24   of cases, or competing proposed orders, and then the

25   Court can decide what the scope of discovery ought

AMM TRANSCRIPTION SERVICE  631.334.1445

1    to be.  And that process then allows the defendant

2    to fully pursue waivers, not just for a narrow

3    subset of customers, but for all of the Rule 26

4    discovery that is implicated in this case.

5            And so that is essentially the proposal we

6    have on the table.  We've had some limited

7    discussion about that.  Happy to elaborate further,

8    but that's, I think, the sort of baseline request

9    that we have.

10           THE COURT:  All right.  So I have reviewed

11   the *Miller* order that you made reference to in the

12   letter.  And I think one of the challenges that we

13   have in this case, Mr. Osen, as compared to *Miller*

14   is really, on some level, volume.

15           And can you shed a little bit of light on

16   what you would expect this broader order to cover,

17   because my recollection is that your original

18   proposed, sort of, annexes or appendices to the

19   letters rogatory requests to Lebanon would have

20   involved hundreds and hundreds of names from every

21   single entity, regardless of knowledge of whether

22   they had any relevant records.  And I expressed

23   concerns about that back in that process as to

24   whether or not this was, sort of, a blunderbuss

25   approach.  And I still have those questions.

```
 1              I have reviewed the annexes that are

 2     attached to the order compelling production that was

 3     issued on April 14, 2023 in the *Miller* case.  And

 4     that's at case number: 18-cv-2192.  It's assigned to

 5     Judge Gonzalez and Judge Kuo, and Judge Kuo issued

 6     the order.  And here, you know, the lists are, you

 7     know, a little bit more reasonable in length.  You

 8     know, the longest list seems to be about 75 names or

 9     so.

10              So how does the volume compare in *Miller* to

11     this case, Mr. Osen, and how would we manage this?

12              MR. OSEN:  So, first of all, Your Honor, I

13     think the -- if I remember correctly -- and it's

14     been a while, but I think the list in *Miller* of

15     customers that were sought was, I think, 687.  Don't

16     hold me to that because I don't have it at the top

17     of my head, but that number stands out to me.

18              THE COURT:  That may be the total.

19              MR. OSEN:  Yeah.

20              THE COURT:  But the specified lists of

21     production with regard to each category as to

22     specific defendants and specific groups seem more

23     tailored than the original annexes that you included

24     here, but you know the facts better than me.

25              MR. OSEN:  Yeah.  Yes, Your Honor.  It's
```

1   obviously a different case when you're dealing with

2   one defendant rather than 11 in discovery here, so

3   that's certainly true.

4           One of the differences between *Miller* and

5   this case is that *Miller*, of course, was a sort of

6   follow-on case to the *Linde v. Arab Bank* case.  And

7   if you -- if Your Honor looks at the production

8   order, I think it's May 7, 2007 -- we obviously can

9   provide that to the Court -- in *Linde* that was far

10  more expansive than anything contemplated here, and

11  that was for just one defendant.

12          But it got narrowed in *Miller* because we

13  had the benefit of at least some discovery in the

14  *Linde* case and, therefore, could identify with much

15  greater specificity, even at the discovery stage,

16  where the likely responsive accounts were going to

17  be.  Here, obviously, we have some indication of

18  that.  As a result of third-party discovery in this

19  case, we can, sort of, confirm some subset of the

20  account holders.  But, as is inevitably the case in

21  most Rule 26 discovery, we know what the universe

22  of, in this case, Hezbollah-related persons and

23  entities are, including many dozens, if not

24  hundreds, that have been designated by the United

25  States government.  But we can't know without

AMM TRANSCRIPTION SERVICE   631.334.1445

1    discovery which bank holds which accounts.

2           And, of course, we tried just for --

3    originally -- Your Honor may vaguely recall, we had

4    originally tried through interrogatories to get some

5    kind of sense of the quantity, the number of account

6    holders, without disclosure of the specific names.

7    That process got derailed and ultimately postponed

8    while this bank secrecy issue was being resolved.

9    So it's hard to know how many customers.

10          And, of course, there's another wrinkle.

11   And I apologize, Your Honor, because I realize this

12   isn't normal discovery.  But keep in mind that, in a

13   typical case where we're engaged with a defendant,

14   there's, sort of, an initial process of figuring out

15   what search terms are going to be used on what

16   systems to identify the account holders, and, sort

17   of, all that kind of ESI discovery process that we

18   all know and love.

19          That's not going to happen here because

20   obviously we won't -- for bank secrecy reasons,

21   there won't be a full exchange on, you know, which

22   accounts are being searched, how it's being

23   searched, you know.  There's inevitably less

24   transparency when you have bank secrecy

25   considerations.

1          So the best that we can do, and this is
2    what we suggested to the defendant, is that we would
3    take the third amended complaint, take the entities
4    that are identified in there and work off of the,
5    sort of, major Hezbollah operatives and
6    organizations that are identified in the complaint,
7    come up with a revised list based on the third
8    amended complaint.

9          And then, you know, they can tell us -- I
10   know each bank previously in response to our
11   discovery requests, had slightly different responses
12   about how they keep records, how many paper records
13   they have versus electronic records and so forth.
14   So we'd have to have that discussion to make sure
15   that we're simultaneously capturing what we need,
16   but also recognizing the burden that that entails.

17         But the key ingredient to this is that the
18   burden really only applies if the banks intend to
19   comply and produce records.  If they stand on their
20   bank secrecy objections after being overruled, then
21   ultimately the production order should be as
22   comprehensive as possible because it's going to
23   reflect the universe of what Rule 26 allows without
24   consideration of, you know, whether you're trying to
25   retrieve paper records from an archive because

AMM TRANSCRIPTION SERVICE  631.334.1445

1    you're not doing it anyway.  So there's no burden

2    other than the search process for the account

3    customer name.

4            So it's all very unusual and, sort of,

5    outside of the box.  Obviously, we've done it in a

6    number of different cases, so we have some

7    familiarity with the challenges presented, including

8    in Miller.  But at the end of the day, the way that

9    the Court both in *Linde* and then ultimately in

10   *Miller* approached it was to give us basically what

11   we asked for with the determination, of course, that

12   the requests were appropriate under Rule 26.  And

13   then, you know, what the defendants do with that,

14   whether it's in the form of waivers or ultimate

15   production is obviously in their hands and in the

16   hands of their customers.

17           I'll just say to, sort of, wrap this up,

18   that, you know, ultimately the best outcome for us

19   is for the defendants to come back and say, yeah, we

20   have tons and tons of records and we're going to

21   produce them, but this category or that category is

22   too burdensome because, you know, it's too remote to

23   search or it's too this or that.  That's the sort of

24   normal discovery conversations that we like to have.

25           In the bank secrecy context, that generally

1  doesn't occur unless the defendant, as it did in the

2  *Crédit Lyonnais* case and the *NatWest* case, after

3  being -- having their objections overruled, decide

4  to produce.

5       So when that happens, you get more of a

6  conventional discovery process.  And when that

7  doesn't happen, then, you know, we take what we can

8  get.  If there's a waiver, we'll take the records

9  that are produced.  But at the end of the day, the

10  Court then has to consider what the prejudice is to

11  the defense -- to the plaintiffs in not having the

12  majority of the records, and has to then consider

13  what remedy to fashion for that prejudice.

14       THE COURT:  Understood.  All right.

15       So, Mr. McGinley, we've talked about a lot

16  of things, me and Mr. Osen.  I'm sure you have a lot

17  of responses and thoughts.  I am curious what your

18  views are on one of the top questions that the

19  plaintiff raised, which is the anticipated timing by

20  which the defendant banks will be prepared to advise

21  the Court about your intentions vis-à-vis complying

22  with the March 31, 2023 order overruling the bank

23  secrecy objections.

24       And, of course, that pertains to somewhat

25  more limited set of documents than was perhaps

1    anticipated by the plaintiffs at the outset, but the

2    reasoning would attend to a larger set if the

3    plaintiffs were able to establish relevance and

4    proportionality.

5            So, Mr. McGinley, where are the banks?  Are

6    you prepared to represent, kind of, everyone's

7    thoughts on the bank secrecy question, or do I need

8    to go bank by bank?

9            MR. McGINLEY:  So I think, Your Honor, I

10   can offer a response to Mr. Osen and address that

11   question, I think, in part through what our proposal

12   is in terms of where we go next, because I think

13   that our approach is that we fully intend to and

14   want to be able to achieve 100 percent compliance

15   with the Court's discovery order, without having to

16   make the decision necessarily of whether we will

17   unilaterally -- whether any bank unilaterally will

18   have to breach or otherwise deal with bank secrecy.

19           And the reason why we think that's possible

20   is we've had a fair amount of success with the

21   waiver process.  I'm prepared to talk to you in

22   detail about that.  I think in the Court's order,

23   you asked us to come prepared to do so.  We also

24   think that there may be additional steps, even after

25   the waiver process has played out, that would allow

AMM TRANSCRIPTION SERVICE  631.334.1445

1    us to perhaps go back to the SIC with more targeted

2    and detailed information about specific accounts

3    where there wasn't waiver, such that we may be able

4    to obtain waiver from the SIC and get -- and

5    hopefully get to a point where the universe is

6    either null for maybe some banks or that it's so

7    small that an informed decision can be made at that

8    point rather than in, as Your Honor said, a sort of

9    blunderbuss manner of, well, will we stand on bank

10   secrecy overall.

11        And I think that what the Court set forth

12   in your discovery order last year was this balanced

13   and phased approach that took into account the fact

14   that the plaintiffs' proposal at that time, and I

15   think this new proposal, is just disproportionate.

16        And I think if you look at Your Honor's

17   opinion, pages 17 and 18, the reason why we ended up

18   with Annexes A and B, which, you know, largely

19   derive from the plaintiffs' own indications, is that

20   the Court said, you know, because we're dealing with

21   bank secrecy, we're going to pursue information on

22   these limited subsets.

23        And so what we've done is -- our clients

24   have sought waivers from those individuals and

25   customers, and we've had some success, as I

1   indicated.  Obviously, the last two months in

2   Lebanon have changed dramatically, and the process

3   has become slightly more difficult and -- or at

4   least it takes longer than we were originally seeing

5   over the summer, so we would ask for some

6   understanding in terms of timing on that basis.

7          If the Court would like, I can give a

8   top-level indication of where things stand with

9   waivers at the moment, but I don't want to jump

10  ahead if Your Honor has other questions.

11         THE COURT:  I'd certainly welcome a

12  top-level indication.

13         MR. McGINLEY:  So, as of today, the moving

14  defendants have secured signed customer waivers from

15  67 customers listed in the Annex A and Annex B of

16  the Court's order.  I can tell you that there's a

17  number of alleged customers in those annexes that

18  the defendants have determined were not account

19  holders of theirs.  It's a little trickier to

20  identify who those are because identifying who those

21  are can, in turn, then reveal who were account

22  holders and potentially in violation of bank

23  secrecy.

24         So we do hope at some point to be able to

25  share that more detailed information with the other

AMM TRANSCRIPTION SERVICE  631.334.1445

1    side in an appropriate fashion.  But if you take

2    into account -- by our calculations, if you take

3    into account -- essentially, remove those who we

4    think were not account holders, we're seeing a

5    success rate somewhere in the 25 to 30 percent.  And

6    that's not to indicate that the remaining alleged

7    customers have all said no.

8           In fact, the vast majority of the folks who

9    fall into the bucket, who didn't grant waivers, we

10   just have not been able to locate or contact despite

11   diligence.  In some instances, there are defunct

12   businesses or individuals who have become aged.  So

13   there are various factors at play.

14          We think that continuing the waiver process

15   will continue to yield fruit.  I can say just with

16   respect to one of my clients in the past week, we've

17   secured two more waivers.  And with respect to

18   another one of my clients, we have -- they have

19   received verbal indications that a customer would

20   waive, but because of the conflict and displacement

21   and other logistical factors, have not been able to

22   obtain written confirmation yet.

23          So we think this process is working and is

24   working in a way that perhaps the Court and the

25   parties didn't contemplate last year at the time of

AMM TRANSCRIPTION SERVICE  631.334.1445

1    the discovery order.  We also think that if we

2    continue down this road, we can get to a point where

3    maybe we have a much narrower list, where we can go

4    back to the SIC.

5            As Your Honor I'm sure noticed, and we

6    pointed out in our letters, the response from the

7    SIC has a paragraph that says that if the Court --

8    or we think if the parties, frankly, can come back

9    to it with more detailed allegations about specific

10   individuals, that it would consider those, but

11   that -- you know, presented only with the names,

12   that it wasn't choosing to waive bank secrecy at

13   that time.

14           So we're -- we have confidence that we can

15   get to a very small universe, if not a null set,

16   with respect to some or all defendants that would

17   prevent the need to have some kind of grand

18   declaration of whether or not defendants stand on

19   bank secrecy.

20           And I think -- oh, and the other thing I

21   would say, and we've said this to plaintiffs, is

22   that we will begin identifying those who waived.  In

23   fact, for our three clients, we gave those names

24   this morning to Mr. Osen and his team.

25           And we would begin rolling productions

1    because we understand there's a desire to get

2    discovery underway.  We're not seeking to use the

3    waiver process or a return to the SIC as any form of

4    delay, but instead as a way to accomplish discovery

5    and to accomplish it in a way that can hopefully get

6    as close as possible to 100 percent without having

7    to force the bank secrecy issue, which I don't think

8    anybody really wants to force.

9            And so we would propose that we continue

10   seeking waivers.  We had initially in September

11   indicated we thought that by mid-December we could

12   have substantial completion.  Because of what's

13   happened in the last two months, we would ask for

14   more time.  We would respectfully ask for -- until

15   June of next year to continue seeking waivers.

16           But very importantly, I want to emphasize

17   that will not delay our production and efforts to

18   meet and confer with the plaintiffs on those who

19   have provided waivers in that meantime.  And then as

20   that process unfolds, we would seek to get to the --

21   you know, towards a point where we may go back to

22   the SIC at some point next year.

23           THE COURT:  All right.  So there's a lot

24   there to think about and to chew on.

25           Could you also comment on Mr. Osen's

1   proposal that the parties meet to discuss this

2   broader discovery order, Mr. McGinley?

3          MR. McGINLEY:  Sure, Your Honor.

4          Obviously, if you ask us to meet, we're

5   always happy to meet.  We think it's premature.  We

6   think that Your Honor set forth a very balanced and

7   reasonable discovery plan that was phased and that

8   was narrowed.

9          Certainly, I would say, Your Honor, that

10  expanding it in a way that does not have customers

11  tied to the alleged -- the banks that they allegedly

12  banked with would be precisely the approach that

13  Your Honor rejected last year.  And so if there's an

14  effort to add those named in the third amended

15  complaint, we think if you were to -- if we were to

16  take that approach, it would have to be tied in the

17  same way that the annexes, A and B, were tied to

18  banks where there were allegations of a customer

19  relationship.  Otherwise, you're adding hundreds and

20  hundreds of people to every bank.  And we think

21  that's just disproportionate, particularly at this

22  phase, without any indication by the plaintiffs as

23  to why they believe that discovery is relevant and

24  proportional.

25         Of course, they've now filed four

AMM TRANSCRIPTION SERVICE  631.334.1445

1    complaints.  If they had reason to believe that

2    certain individuals or entities were connected with

3    the bank, they were capable of pleading that, and we

4    think, at a bare minimum, that would have to be the

5    line that would be drawn.

6            But our general position is, we're pretty

7    far along the way on seeking waivers and taking it

8    in the phase that Your Honor initially set forth.

9            But, absolutely, we think just adding every

10   individual named in the third amended complaint for

11   every single defendant would just create precisely

12   the disproportionate and blunderbuss approach that

13   Your Honor has already rejected at this stage.

14           THE COURT:  Mr. McGinley, I completely

15   recall writing that opinion, of course.  It was a

16   detailed one.  And I do still have deep skepticism

17   about the blunderbuss approach, as I have styled it,

18   not on paper, but in these conferences.

19           But at the same time, how is Mr. Osen to

20   know which bank to ask for records if there is

21   evidence that certain individual or entity is being

22   financed and that there are finances flowing in

23   their direction, you know, without specificity

24   available in the public domain due to bank secrecy,

25   due to the fact that it's foreign banking practices

1    and other reasons that he would not have access or
2    be privy to that information?  How is he supposed to
3    figure out which bank is servicing whom?
4           MR. McGINLEY:  So I think, Your Honor, you
5    dealt with this in that opinion.  And, of course, I
6    don't need to tell you what you said.  But I think
7    the notion of the phased and narrowed approach is
8    that you conduct the first phase of discovery.
9           There may be things that lead Mr. Osen to
10   think that he should ask about other potential
11   customers or individuals by virtue of what he
12   discovers during that discovery.  And, of course,
13   Mr. Osen has conducted third-party discovery for the
14   past year.  Presumably, the new allegations in the
15   fourth amended complaint are informed by that.
16          And I actually think there may even be --
17   have been a footnote in your opinion, footnote
18   number 15 that, sort of, recognizes that that's the
19   whole virtue of a phased process, is that you begin
20   with the alleged customers that the plaintiffs have
21   reason to believe under Rule 11 that they can make
22   an allegation.  You can conduct discovery there.
23          That reduces the potential bank secrecy
24   burden on the defendant, and then -- and, therefore,
25   serves comity principles.  And then if there are

1    specific reasons why a plaintiff might say, oh, we

2    think that we may also want discovery on X, Y and Z,

3    they can present those to the defendants, and, if

4    necessary, to the Court, just as you would in any

5    other context under Rule 26.

6         THE COURT:  Great.  So your

7    counterproposal, if I'm understanding it correctly,

8    is that you would like to get an extension of time

9    to figure out the scope of the universe of persons

10   and entities that are prepared to waive, and you're

11   seeking until June of next year for that, but you

12   will commence disclosing the documents that you have

13   permission to disclose thus far.

14        And you do not object to continuing to meet

15   and confer with Mr. Osen as to possibility of

16   expanding discovery in a phased way?

17        I mean, I'm just trying to understand your

18   actual plan because waiting, you know, seven more

19   months to be -- sort of, be similar to where we are

20   now seems frustrating for all involved, frankly,

21   Mr. McGinley.

22        MR. McGINLEY:  I understand that, Your

23   Honor.  I don't mean to suggest that we would just

24   be waiting.  I think what we're trying to indicate

25   to you is that we are actively seeking the

1    opportunity to provide discovery, obviously, without

2    being forced to decide whether we have to violate

3    bank secrecy, if there are ways or alternative means

4    to do so.

5         I've indicated we are willing to meet and

6    confer with Mr. Osen with the obvious -- and I --

7    hopefully, you take this as I intend it,

8    respectfully, with the emphatic caveat that just

9    blowing the doors open, we think, is inconsistent

10   with the approach that was set forth in Your Honor's

11   order.

12        And so if you would like us to meet and

13   confer with Mr. Osen on a narrower approach, we're

14   happy to do so.  Our starting position is we think

15   that sticking with the Court's order from last year

16   is the right approach.  But, of course, if

17   Your Honor wishes us to meet and confer, we are

18   willing to do that.

19        THE COURT:  So, Mr. Osen, I certainly don't

20   want to guess your opinion, but I have a feeling I

21   know, at least, elements of it.  What would you like

22   to say in response to Mr. McGinley?

23        MR. OSEN:  Sure.  Just a couple things,

24   briefly, Your Honor.

25        First of all, Your Honor knows better than

AMM TRANSCRIPTION SERVICE  631.334.1445

1    we do the contents of your own decision from March

2    of last year.  But as we understood it, the phased

3    approach that Mr. McGinley references is precisely

4    the approach taken by other courts, including Judge

5    Cohen-Miller, to provide a platform for the

6    defendant to seek letters rogatory and to make that

7    process more easily digestible on the very

8    reasonable theory that if you provide a narrower set

9    of names and scope and that is approved, you could

10   always go back for more.  And if it's rejected, you

11   know that the wider and more appropriate broad

12   production order is certainly going to be rejected.

13          So that was, I think -- I think Your Honor

14   expressly said in your decision that you thought the

15   *Miller* case was instructive on that, on that score.

16   And so what we're seeking now is precisely the kind

17   of production order that the Court entered in the

18   *Miller* case, and, frankly, a much broader one that

19   was entered in the *Linde* case and beyond.

20          And, again, the purpose of that is to set

21   the parameters of what needs to be pursued.  And,

22   right now what the defendants have done is to take

23   Your Honor's narrower production order for purposes

24   of letters rogatory and defined that as the universe

25   for discovery.

```
 1            So we would propose -- and I'll come back
 2     to a couple of other points very briefly, but we
 3     would propose that we submit our draft order to the
 4     defendants by around December 2nd, we meet and
 5     confer the 9th or the 10th.  Gives them a week or
 6     more to bat it around.  And then by December 18th,
 7     we either have a joint proposal or we submit our
 8     competing proposals for the more comprehensive
 9     production order.
10            I'll just say two --
11            THE COURT:  Mr. Osen, I just want to --
12            MR. OSEN:  Go ahead.
13            THE COURT:  I just want to react to one
14     comment.
15            MR. OSEN:  Go ahead.
16            THE COURT:  So the purpose of the narrower
17     list that I permitted after -- as a result of the
18     March 31, 2023 opinion was not, as you intimate, to
19     test the waters with regard to what Lebanon was
20     likely to do or, frankly, what the defendants were
21     likely to do, but rather it is how I view my
22     obligations under the *Aérospatiale* case out of the
23     Supreme Court.  And I'm just going to read it to
24     you.
25            And the Supreme Court made it very clear
```

AMM TRANSCRIPTION SERVICE   631.334.1445

1    that "the line between reasonableness and

2    unreasonable in each case must be drawn by the trial

3    court."

4         And "American courts, in supervising

5    pretrial proceedings, shall exercise special

6    vigilance to protect foreign litigants from the

7    danger that unnecessarily or unduly burdensome

8    discovery may place them in a disadvantageous

9    position.  Judicial supervision of discovery should

10   always seek to minimize its costs and inconvenience

11   and to prevent improper uses of discovery requests.

12   When it is necessary to seek evidence abroad,

13   however, the district court must supervise pretrial

14   proceedings particularly closely to prevent

15   discovery abuses."

16        And it goes on and on and on.  So this was

17   not to test the waters.  This was to ensure that we

18   were exercising appropriate comity when dealing with

19   foreign entities and ensuring that we do not put

20   foreign defendants in a position where they are

21   faced with the Hobson's choice.

22        And Mr. McGinley has stated more than once

23   today that it is the defendants' view that that's

24   what you're seeking, to put them into -- sort of,

25   get them painted into the corner so that they can

1    seek sanctions.  I mean, this has been a theme

2    throughout this litigation.

3         And I'm not suggesting what your true

4    motivations are.  I truly hope that discovery will

5    happen here and that you'll get the information

6    you're seeking so that the case can be adjudicated

7    on the merits, but please don't misunderstand the

8    purpose or the spirit of that footnote 15 and what

9    it was intended to convey and why.

10        MR. OSEN:  I appreciate that, Your Honor,

11   and thank you for that.

12        I think the two points I would make, not

13   directly in response to that, but really to frame

14   the overall question is this:  Your Honor also said

15   in your order that the defendants were free to seek

16   waivers for customers at that time, in March of

17   2023.  They've chosen to wait until after the

18   letters rogatory process was exhausted.

19        Obviously, that's water under the bridge,

20   but that's another year that went by without a

21   waiver process and without a single document being

22   produced.  We're now heading into year six of this

23   case, and as far as I'm aware, the defendants

24   haven't produced a single document.  That is,

25   believe it or not, even surprising relative to the

AMM TRANSCRIPTION SERVICE  631.334.1445

1    *Linde v. Arab Bank* case.

2            THE COURT:  I saw in your letter, you

3    described the timeline with regard to those other

4    cases.  And, you know, I am very concerned.

5            I also note -- and you can tell me,

6    Mr. Osen, if I'm wrong.  I feel like a lot of the

7    delays in this case were before my time, in terms of

8    the interlocutory appeals to the circuit, I mean,

9    and waiting on the circuit -- not in this case, but

10   waiting on circuit rulings in other cases.

11           I mean, is that a source of delay that was

12   not present in those other matters?

13           MR. OSEN:  It varies, Your Honor.  I think

14   the main takeaway here is not why we've had delay

15   until now, but just the reality that that's where

16   we're at.

17           And so to just address one other question

18   or point raised by Mr. McGinley on that score, we

19   don't object, to be clear, to them having an ongoing

20   waiver process through June of next year.  For us,

21   that's not an issue.  And, frankly, you know, if

22   they came back to the Court in May of next year and

23   said, we have, you know, hope of getting X number of

24   additional waivers and productions, we would be fine

25   with that.

            AMM TRANSCRIPTION SERVICE   631.334.1445

1          The issue is, what is the universe, the
2   playing field under which this entire process is
3   undertaken?
4          We can only state what has occurred in
5   other cases that have been adjudicated on these
6   issues.  And in those cases, there is a -- call it
7   comprehensive production order which forms the basis
8   for determining what the universe of compliance is,
9   otherwise, it's a continuously moving, shifting
10  field because even if you got 100 percent compliance
11  and production for the entities under the document
12  production order issued for the letters rogatory,
13  that would be a small fraction of our case.
14         THE COURT:  I understand that, but I also
15  have serious questions about your so-called
16  universal production.  Like what?  The universe --
17  how can you possibly ascertain the universe when, by
18  your own admission, you have not received any
19  documents from the defendants?
20         And this is my concern, Mr. McGinley.  I
21  gave the defendants some grace and some time in the
22  March order to get some documents flowing so that we
23  could start to see the lay of the land.
24         Normally, bank subpoenas should be actually
25  issued to banks that have the records, right?  And I

1    am not in favor of issuing a bank subpoena to a bank

2    with, you know, a rider that has 600, 700 names on

3    it when there's no basis to reach the conclusion

4    that that bank is servicing those individuals and/or

5    entities, only to have it result in what in my view

6    would be an unduly burdensome discovery request and

7    in violation of my obligations in supervising this

8    type of complex discovery involving foreign

9    entities.

10         So finding the middle ground that you can

11   defend as relevant and proportional, Mr. Osen, is

12   the burden that's going to fall on the plaintiff.

13   But Mr. McGinley, in the absence of any productions

14   from the defense, he can't proceed.  And so this is

15   unacceptable.  And this is one of the reasons I

16   wanted to get everybody on the phone.

17         The goal in March was -- which is 18 months

18   ago already -- just get things unstuck so that we

19   could start to see the lay of the land.  And if you

20   get bank records that show transactions that

21   indicate that so and so is also being serviced by

22   this bank and that there are transactions with this

23   other entity, you can start to get your arms around

24   the universe of information.

25         But, Mr. Osen, I don't foresee a discovery

1   order coming from me that would put 11 foreign

2   defendants -- I think it was three-quarters of the

3   banking industry of Lebanon -- in the position of

4   violating potentially my order with a gigantic rider

5   that's unsupported by any evidence.  It's not going

6   to happen, Mr. Osen.  So you can rush it all you

7   want, you're going to get a no.

8           MR. OSEN:  I'm not trying to rush anything,

9   Your Honor.  I'm five years into this without a

10  document.

11          THE COURT:  I understand, but you're asking

12  for December 18th or so to submit a proposed order

13  without reference to knowledge of what the documents

14  are likely to show.  And my personal perspective on

15  this, having read the Supreme Court case law and all

16  of the cases cited in my opinion with a fine-toothed

17  comb in arriving at that opinion, is that that's not

18  consistent with what I'm supposed to be doing when

19  dealing with foreign entities.

20          MR. OSEN:  Well, that's fine, Your Honor,

21  but we'd still want to brief that.  You could then

22  deny us, and then we have a record of it because our

23  view is different on that subject.

24          THE COURT:  Okay.  Well, you would need

25  something pretty powerful to undo the Supreme Court.

1          Mr. McGinley, what do you think is
2     realistic in terms of when discovery can really
3     start to flow and when the parties would be prepared
4     to meaningfully meet and confer with regard to
5     coming up with a more, sort of, broad-based or
6     universal perspective on what the discovery in this
7     case is going to look like?
8          I mean, my concern is that, you know,
9     Mr. Osen is going to want absolutely everything, and
10    the defendants are going to want to keep it as
11    constrained as possible, and I get that.  But
12    neither approach is likely to be the appropriate
13    balance and proportional to the needs of the case.
14         So how do we actually get there,
15    Mr. McGinley?
16         MR. McGINLEY:  I understand that,
17    Your Honor.  And what we are proposing is on a
18    rolling basis, I think, quite soon.
19         You know, obviously, the one issue we're
20    all dealing with is the ongoing situation in
21    Lebanon, but we think that with respect to, sort of,
22    electronic -- easily obtainable, electronic,
23    automated records like bank statements, we can begin
24    producing those.
25         I don't want to speak for every bank

AMM TRANSCRIPTION SERVICE   631.334.1445

1    because everybody's situation is different, but we

2    think within the next few months, perhaps even

3    weeks, we can begin producing those documents for

4    those who have waived.

5             THE COURT:  And when would you have -- when

6    do you think it's realistic to meet and confer with

7    plaintiffs to work towards a broader discovery

8    order?

9             MR. McGINLEY:  The only reason I pause is I

10   just don't want to say something out of turn with my

11   friends from the various other banks, but I think in

12   the beginning of the new year, we can begin meeting

13   and conferring because I think that, at that point,

14   we will have begun productions, as I just described,

15   and I think there will be some basis on which for us

16   to begin speaking with them at that point.

17            THE COURT:  Mr. Osen, what's your reaction

18   to that?

19            MR. OSEN:  Your Honor, I don't have

20   anything else to add.

21            THE COURT:  Okay.  So I think we should

22   look at some -- I think we should pull out the

23   calendar and look at some dates.

24            So first request, which Ms. Osen indicated

25   he does not object to, is moving the final deadline

1    for the defendants to provide an indication as to,

2    kind of, where everything stands vis-à-vis the

3    waiver process.

4            What's a date that you would like,

5    Mr. McGinley?

6            MR. McGINLEY:  We had proposed June.  To be

7    frank with Your Honor, I'm not sure the specific

8    date within June is as important as just having that

9    window of time.  So I'm just pulling up June here.

10           Perhaps June 14th, and then we meet and

11   confer.

12           THE COURT:  14th is a Saturday.

13           MR. McGINLEY:  Oh, sorry.  13th.  13th.

14   June 13th.  Although, Friday the 13th may not be the

15   luckiest.

16           Why don't we say -- just because I'm a

17   superstitious Irishman, why don't we say June 12th.

18   And then we would commit to meeting and confer with

19   the plaintiffs by the 25th.

20           THE COURT:  So June 12th will be the report

21   back on where things shook out vis-à-vis the waiver

22   process; is that right, Mr. McGinley?

23           MR. McGINLEY:  That's right, Your Honor.

24           And we appreciate Mr. Osen saying that if

25   it turns out there's a small handful left and we

1    want to continue pursuing them, that he would be

2    graceful at that point, but I think we can put on

3    the calendar the 12th as the date on which we inform

4    the plaintiffs where things have shaken out.

5              THE COURT:  Okay.

6              And, you know, I would like a brief status

7    report on that date as well.  It doesn't need to be

8    as detailed as whatever you provide to Mr. Osen.

9    Obviously, I'm not as in the weeds vis-à-vis which

10   exact bank accounts are at issue, but I would like

11   to just have some sort of an update by June 12th as

12   to where things stand.

13             With regard to meet -- well, the next date

14   I want to set is a deadline for the parties to

15   commence their conversations with regard to a

16   proposed broader discovery order.  And we all knew

17   this day was coming.  And so the question is, what

18   does this discovery need to include?  What is

19   realistic to include?

20             I don't know, Mr. Osen, without seeing your

21   request, obviously, whether or not it's going to be

22   relevant and proportional or whether it's going to

23   be unduly burdensome within the meaning of the

24   Supreme Court's interpretation of how we need to be

25   extra vigilant and careful in cases involving

AMM TRANSCRIPTION SERVICE  631.334.1445

1    foreign entities, but when is a realistic date for

2    the parties to commence their conversations about

3    that, Mr. McGinley?

4         MR. McGINLEY:  Again, I'm only hesitating

5    because I'm speaking in some sense on behalf of

6    three banks, but I know I am the designated

7    representative, so I would welcome anybody to jump

8    in and tell me if they disagree with me, but I think

9    I would pick a date in February to begin that

10   conversation.

11        THE COURT:  I was thinking January.

12        Mr. Osen suggested December, and he will be

13   submitting to you a proposed order.

14        Mr. Osen, when would you be able to

15   circulate your proposed order?

16        MR. OSEN:  Well, I think we proposed

17   December 2nd, but, obviously, if we're going to have

18   this meet and confer in January or February, we can

19   push that date out.

20        THE COURT:  To when?

21        MR. OSEN:  I guess, if it's a January date,

22   Your Honor, we can submit our proposal to them on

23   December 18th.

24        THE COURT:  Does that work for you,

25   Mr. McGinley?

1    MR. McGINLEY:  Yes, Your Honor.

2    THE COURT:  Obviously, I recognize that

3  that's one week before the Christmas holiday, and a

4  lot of schools are off.  If people have child-care

5  obligations and family commitments, I suspect a lot

6  of people will be in and out in between the 23rd and

7  the 1st or the 2nd.

8    So what are we looking at in terms of

9  mid-January for commencing meet and confer?  I

10  recognize there are 11 defendants.  I recognize that

11  the banks are based in Lebanon.

12    Can the parties commence their meet and

13  confer no later than -- I feel like January 17th

14  even is cutting it short because of the holidays.

15    January 24th, Mr. McGinley?

16    MR. McGINLEY:  I think that would be fine

17  with us, Your Honor.

18    THE COURT:  Any objections from any other

19  banks?

20    Okay.  So we'll have -- direct the parties

21  to commence the meet and confer with regard to the

22  proposed discovery order by January 24, 2025.

23    And from there, I'm not going to submit --

24  I'm not going to propose a specific deadline by

25  which the proposed discovery order will need to be

AMM TRANSCRIPTION SERVICE  631.334.1445

```
 1    submitted because I don't want to necessarily put an
 2    artificial end to the parties' meet and confer
 3    process.  I trust Mr. Osen will keep the case moving
 4    along.  I know he wants to do that.
 5           Mr. Osen, do you want me to have a firm
 6    deadline, or do you think we -- you guys can work on
 7    your meet and confer?  Or I can get a status report,
 8    perhaps, by the end of February.
 9           What do you think is realistic, sir,
10    Mr. Osen?
11           MR. OSEN:  Sure, I think a deadline would
12    be appropriate at the end of February.
13           And, Your Honor, if we are close or we're
14    still conferring on it, obviously, we can ask the
15    Court for an extension.
16           THE COURT:  All right.  And in the interim,
17    I'm going to direct all of the defendants to start
18    their discovery productions on the current records
19    that are available for production forthwith.  No
20    more delays, guys.  We've had a protective order in
21    place for a very long time.
22           If you have a reasonable number of customer
23    waivers, the time is now to start to produce that
24    discovery to Mr. Osen.  It will certainly, perhaps,
25    inform the conversation with regard to which banks
```

1    may be burdened with additional discovery requests

2    or not.  So there is a benefit for all parties to

3    getting this discovery process underway before

4    Mr. Osen posits his larger discovery order that

5    could increase all defendants' potential search and

6    response obligations, depending upon whether or not

7    I find his request to be relevant and proportional

8    to the needs of the case or unduly burdensome, which

9    we may need to engage another round of briefing

10   about, depending upon how much discovery has been

11   done such that the order is well informed or ill

12   informed.  And that's the problem.

13          You guys have had a year and a half to

14   disclose this discovery.  And I recognize that

15   you're working with the letters rogatory process,

16   but that nothing about that process prevented

17   anybody from getting customer waivers.  Nothing ever

18   prevented anybody from getting customer waivers.

19   And so we're not going to continue to kick the can

20   down the road.

21          As Mr. Osen has indicated, this case is six

22   years old.  I recognize there are some procedural

23   history aspects of this case that distinguish it

24   from *Linde* and *Miller* and the other cases, COVID

25   being one of them for this case, not *Linde*.  But

1    *Miller*, also over COVID, but that's not an excuse.

2    It's too old.

3         So everybody needs to get this stuff

4    moving.  And if we are not able to produce

5    discovery, the defendants well know how that could

6    all shake out down the road with regard to Rule 37.

7         Mr. Osen, are there any other dates that

8    you think we should set today?

9         MR. OSEN:  Not that I can think of,

10   Your Honor.

11        THE COURT:  Mr. McGinley, any other dates

12   that you think we should set today?

13        MR. McGINLEY:  No, Your Honor.  Thank you.

14        THE COURT:  Anybody else have any dates

15   they wanted to set, or questions?  Anybody from any

16   bank?

17        Okay.  Mr. Osen, what else should we try to

18   accomplish today?

19        MR. OSEN:  I think that's really it on my

20   agenda.  I don't have anything else, Your Honor.

21        THE COURT:  Mr. McGinley?

22        MR. McGINLEY:  I agree, Your Honor.

23        THE COURT:  All right.  I want to thank you

24   all.  I know this is a complicated situation, and I

25   know that you're all working hard under complicated

1    circumstances, particularly given the geopolitical

2    situation in Lebanon right now.  But I do hope that

3    we can move this along and that we can try to get

4    some discovery flowing so that we're all better

5    informed in the new year.

6              With that, I probably won't see most of you

7    before the holidays.  I hope you have a good holiday

8    season, that hopefully many of you are able to take

9    a little bit of time off and enjoy the holidays.  So

10   see you in the new year.

11             MR. OSEN:  Thank you, Your Honor.

12

13                         0o0

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              C E R T I F I C A T E

3

4        I, Adrienne M. Mignano, certify that the

5    foregoing transcript of proceedings in the case of

6    Bartlett, et al. v. Societe Generale de Banque au

7    Liban S.A.L; Docket #19CV0007 was prepared using

8    digital transcription software and is a true and

9    accurate record of the proceedings.

10

11

12   Signature   _____*Adrienne M. Mignano*_____

13                    ADRIENNE M. MIGNANO, RPR

14

15   Date:        November 22, 2024

16

17

18

19

20

21

22

23

24

25

                    AMM TRANSCRIPTION SERVICE  631.334.1445