# Exhibit C

February 27, 2025

VIA E-MAIL

Dina Gielchinsky
Osen LLC
190 Moore Street, Suite 272
Hackensack, N.J. 07601

Re:  *Bartlett v. Société Générale de Banque au Liban S.A.L.*, 19-cv-00007
     Proposed Production Order

Dear Dina:

We write on behalf of Moving Defendants[1] in response to your letter dated February 24, 2025, regarding the proposed production order. As we discussed with you, Moving Defendants' position is that the primary purpose of this additional production order is to address the changes from the Second Amended Complaint ("SAC") to the Third Amended Complaint ("TAC"). As such, our view is that this new production order should follow the roadmap laid out by the Court in the original production order with respect to both the scope of documents and scope of names.

*First*, Moving Defendants believe that the Court's June 8, 2023 Production Order, ECF No. 328, is sufficiently specific and complete to encompass the universe of responsive, non-privileged documents. The categories you propose appear to fall within the Court's five categories specified in its June 8, 2023 Order, and we do not see the need for further specificity. To the extent a Moving Defendant is in the possession, custody, or control of responsive materials that fall within the Court's five categories and relevant time period regarding the alleged customers listed in Annex A and Annex B, our intent is to produce them, subject to obtaining a waiver. It is therefore unnecessary to expound with more specific document categories and subcategories. If there are specific concerns regarding one of the categories of documents, we are open to discussing them further.

*Second*, with respect to the scope of names, Moving Defendants' view is that the list should not be expanded further to include anything other than newly alleged bank-specific customers in the TAC. The proposed production order and redline against the Court's June 8, 2023 Order that we sent you on February 21, 2025 reflects our position. Indeed, as we have said before, requiring Moving Defendants to search for, and produce documents concerning, hundreds of additional individuals or entities that are not even alleged to have specifically banked with each of the Moving Defendants is unduly burdensome and entirely disproportionate to the needs of the case. As you are aware, the Court has already declined to allow Plaintiffs to demand wholesale production by each Bank without sufficient support. *See* ECF 320 at 17–18 & n.15, 33 ("Plaintiffs shall provide a revised document production request and shorter lists of proposed names, broken down by bank . . . ."); ECF No. 328; ECF No. 342 at 1, 4 ("[T]he Court's

---

[1] Moving Defendants are (1) Société Générale de Banque au Liban S.A.L. ("SGBL"), (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) LGB Bank s.a.l., (9) Banque Libano-Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank S.A.L.

1

order requires Plaintiffs' requests to be 'broken down by bank,' i.e., each Bank is required to produce only documents relating to persons or entities alleged to be customers of that particular Bank.").

Additionally, of the 600 or more names and entities listed in the TAC, approximately only half are alleged to have specifically banked with any of the Moving Defendants. While the Court recognized that "discovery related to the 592 names and entities listed in the SAC may yield relevant evidence," the Court's analysis did not stop there. As the Court acknowledged, "[a]s information comes to light during discovery that establishes relevance and proportionality, further efforts to seek documents and records from Lebanon can be conducted in stages, supervised by the Court, as anticipated by the Supreme Court in *Aérospatiale*." ECF No. 320 at 18 n.15 (citing *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522, 546 (1987) ("American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position" and "must supervise pretrial proceedings particularly closely to prevent discovery abuses")).

To be clear, contrary to your assertions, the Court's phased approach contemplates allowing Plaintiffs to make additional discovery requests only under circumstances where they "have additional information to proffer about the relevance of the above names and entities as discovery progresses." ECF No. 320 at 16 n.13. The Court re-emphasized this point during the November 18, 2024 hearing when it stated that it would not countenance discovery requests that list hundreds of names "where there's no basis to reach the conclusion that that bank is servicing those individuals and/or entities." Nov. 18, 2024 Hearing Tr. 35:1–36:7 ("I do not foresee a discovery order coming from me that would put 11 foreign defendants - - . . . three-quarters of the banking industry of Lebanon -- in the position of violating potentially [the Court's] order with a gigantic rider unsupported by any evidence.").

***Third***, notwithstanding the above, Moving Defendants are willing to meet and confer further regarding some of Plaintiffs' requests. Without waiver, Moving Defendants offer the following responses with respect to each of Plaintiffs' listed proposals.

1. Moving Defendants will consider producing copies of the waivers obtained, subject to your clarification on why such waivers may yield relevant information. However, we do not agree to produce any communications dated 2024 or 2025—well over a decade after the last attack—between the Banks and any confirmed customers or former customers. Please also clarify why you believe that these communications may yield relevant information.

2. Moving Defendants do not agree to Plaintiffs' second proposal for the reasons above. As explained, having the Moving Defendants preemptively "search for *all* the names of individuals and entities identified in the two appendices" is unduly burdensome and unwarranted where Plaintiffs have not even alleged that these individuals are customers of each of the banks. Those concerns are not remedied by having the Moving Defendants wait before turning over information. We believe the final production order should be limited to bank-specific alleged customers. As the Court stated at the November 18, 2024 hearing, to the extent you identify any additional names during your review of Moving Defendants' productions that you believe may be relevant to the lawsuit, please make a written request that we will consider.

3. Before Moving Defendants are able to consider your request that Moving Defendants eventually produce records for any of the names on the lists "which third-party discovery has established were

2

customers of Defendants," we would appreciate additional color on: (1) what bases you will be evaluating the relevance of customer transactions involving the Moving Defendants that may be reflected in third-party discovery (e.g., will you be looking for names of alleged customers already referenced in the TAC or outside of the TAC); and (2) how any additional information that may be in the possession of Moving Defendants is non-duplicative of what may already be listed in the nonparty correspondent bank records produced in this matter.

4.– 5. Moving Defendants are inclined to consider providing "technical details regarding the database systems each Bank has utilized to search for and identify customers," which we could furnish in written form. We will get back to you in short order after conferring with our clients regarding this request. However, we do not agree to make any designated IT or operations representative available at this time. Should you have specific questions, please provide them to us in written form, and we will take them under advisement. If any issues arise from any inquiries you submit, we can meet and confer to resolve them, and, if necessary, we will reconsider the need to make a designated IT or other operations representatives available at a future date.

6. For the reasons above, Moving Defendants do not agree to Plaintiffs' sixth proposal. As we have indicated in our proposed production order, each Defendant has sought and, in many cases, obtained waivers of Lebanese bank secrecy from individuals and entities alleged to be their customers or former customers, and in January 2025, each Defendant made at least an initial production of documents to Plaintiffs and committed to ongoing productions. As we have previously stated, we seek to fully comply with the Court's production order.

7. Lastly, we agree to Plaintiffs' seventh proposal to meet and confer on any undue burden and other issues that may arise.

In paragraphs 11 & 12, Plaintiffs seek to include in the document production order "all communications and documents" in SGBL's possession "concerning its acquisition of LCB" and "concerning former bank accounts and customers of LCB" identified in unspecified "audit(s)" referenced in the TAC. Proposed Production Order ¶¶ 11, 12. Again, these paragraphs are far beyond the scope of the parties' current discovery dispute and the Court's discovery ruling. Plaintiffs' reliance on Judge Merkl's conclusion that accounts migrated from LCB may be relevant to the claims in the case is misplaced because the decision authorizes only limited discovery related to Defendants' provision of financial/banking services to those account holders, *i.e.*, customer account information, and not the new, additional records Plaintiffs now identify in their proposed production order. *See* ECF No. 320 at 17 (finding discovery of "account opening records, transactional records, and compliance records for the list of persons identified in Exhibit 2 would be relevant and proportional only for the time period from January 1, 2012 through December 31, 2012").

\*  \*  \*

Notwithstanding the above, Moving Defendants believe that the points of disagreements between the parties are actually narrow in scope. The biggest issue that remains outstanding is determining the scope of names to be included in a final production order. We look forward to a productive discovery conference on February 27, 2025.

Sincerely,

| | |
|---|---|
| DECHERT LLP | MAYER BROWN LLP |
| By: */s/ Jonathan R. Streeter* | By: */s/ Mark G. Hanchet* |
| Jonathan R. Streeter | Mark G. Hanchet |
| Tamer Mallat | Robert W. Hamburg |
| Julia L. Shea | Benjamin D. Bright |
| Dechert LLP | Whitney A. Suflas |
| 1095 Avenue Of The Americas | Mayer Brown LLP |
| Three Bryant Park | 1221 Avenue of the Americas |
| New York, NY 10036 | New York, NY 10020 |
| 212-698-3500 | 212-506-2500 |
| Email: jonathan.streeter@dechert.com | Email: mhanchet@mayerbrown.com |
| Email: tamer.mallat@dechert.com | Email: rhamburg@mayerbrown.com |
| Email: julia.shea@dechert.com | Email: bbright@mayerbrown.com |
| | Email: wsuflas@mayerbrown.com |
| Michael H. McGinley | |
| Dechert LLP | *Attorneys for Defendant Banque-Libano* |
| Cira Centre | *Française SAL* |
| 2929 Arch Street | |
| Philadelphia, PA 19104 | |
| 215-994-4000 | |
| Email: michael.mcginley@dechert.com | |
| | |
| *Attorneys for Defendants BLOM Bank SAL,* | |
| *Fransabank SAL, and Bank Audi SAL* | |
| | |
| DLA PIPER LLP (US) | ASHCROFT LAW FIRM, LLC |
| By: */s/ Anthony P. Coles* | By: */s/ Michael J. Sullivan* |
| Anthony P. Coles | Michael J. Sullivan |
| Erin Collins | Brian J. Leske |
| DLA Piper LLP (US) | Ashcroft Law Firm, LLC |
| 1251 Avenue of The Americas | 200 State Street, 7th Floor |
| New York, NY 10020 | Boston, MA 02109 |
| 212-335-4925 | 617-573-9400 |
| Email: anthony.coles@dlapiper.com | Email: msullivan@ashcroftlawfirm.com |
| Email: erin.collins@dlapiper.com | Email: bleske@ashcroftlawfirm.com |
| | |
| Samantha L. Chaifetz | *Attorneys for Defendant Société Générale* |
| 500 8th Street, NW | *de Banque au Liban S.A.L.* |
| Washington, DC 20004 | |
| 202-799-4082 | |
| Email: samantha.chaifetz@dlapiper.com | |
| | |
| *Attorneys for Defendants Byblos Bank SAL,* | |
| *Bank of Beirut and the Arab Countries* | |
| *SAL, and Bank of Beirut s.a.l.* | |

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Gassan A. Baloul*
Gassan A. Baloul
Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
202-457-6155
Email: gassan.baloul@squirepb.com
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants MEAB Bank s.a.l., Fenicia Bank S.A.L., and LGB Bank s.a.l.*