# Exhibit E



**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Andrew J. Peck
andrew.peck@us.dlapiper.com
T   212.335.4571

April 12, 2023

**VIA ECF**

Hon. Peggy Kuo
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:   ***Miller, et al. v. Arab Bank, PLC***, No. 18-cv-2192 (HG)(PK)
> ***Pam, et al. v. Arab Bank, PLC***, No. 18-cv-4670 (HG)(PK)
>
> **Response to Document Production Order**

Dear Magistrate Judge Kuo:

We write in response to Plaintiffs' letter dated April 10, 2023 and proposed production order. ECF 91, 91-1. Contrary to Rule VI of your Individual Practice Rules, Plaintiffs made no effort to discuss their letter motion for a proposed order with counsel for Defendant prior to its submission, or to submit a joint letter setting out the parties' respective positions on a proposed schedule for the production of documents following the Court's Report and Recommendation of March 31, 2023 (the "R&R").

Had they done so, we would have advised Plaintiffs that Arab Bank, PLC (the "Bank" or "Arab Bank") intends to make a good faith effort to comply with the Court's decision and not file objections to the R&R (which are not even due until this Friday, April 14),  notwithstanding the Bank's disagreement with the Court's recommendation that no limits on the scope of the discovery



Hon. Peggy Kuo
Page Two

requested by Plaintiffs be imposed. However, a 90-day period for **completion** of that discovery is

wholly unrealistic.[1]

Plaintiffs request that the Bank search for and produce **all** documents involving the

accounts **for 677 individuals** and entities over **a six-year period from two decades ago**.[2] The

requests are not limited to electronic records. Given the time period involved, 1998 to 2004, all or

at least the vast majority of the documents will be in paper form, thereby requiring that searches

be conducted in over 30 Bank branches (and likely warehouses used by those branches). All those

documents from these branches and warehouses will then need to be reviewed for production.

The Court should note, by way of reference and comparison, that Plaintiffs have yet to

complete their production of documents in response to the Bank's July 22, 2019 far more modest

discovery requests, including their own medical records and other proof of their alleged damages.

In January 2020, **six months** after the Bank's request, it had received **no** documents at all from 30

of the 67 Plaintiffs and only a partial production from the rest. Indeed, as late as September 21,

2022, Plaintiffs were still promising to produce documents on a rolling basis reflecting the results

of electronic searches using Hebrew search terms. Sixteen months later that production is still not

complete. The Plaintiffs have yet to produce a single Hebrew Language email or social media post.

---

[1] Arab Bank's production of documents has been complete since June 7, 2021, subject to its motion for a protective order for documents located abroad and subject to Bank Secrecy laws.

[2] Documents as defined in Plaintiffs' Requests are " All documents relating to the account, including, but not limited to, all account opening documents, all Know Yor Customer …data…, all account statements, all cancelled checks and deposit slips, all documentation created or received that indicate funds transfers into or out of the account, all communications [between the Bank and the account holder] whether internal or external, concerning the account or accountholder." Definitions 1(p).



Hon. Peggy Kuo
Page Three

The Bank recognizes that searching for and reviewing documents and emails for production from 20 years ago is a time-consuming and difficult task, but the scope of the search for each of those individual Plaintiff pales in comparison to the search the Bank is now required to undertake for ten times the number of individuals and entities and for paper documents located in numerous places.

Plaintiffs' proposed 90 day order to **complete** production is also at odds with their prior written representation and proposal to the Court regarding a realistic timetable for how the Bank should proceed following the Court's decision on its motion for a protective order. Plaintiffs there stated they had no objection to the Court granting the Bank 120 days from the date of the Court's decision "to obtain waivers or make further requests to foreign jurisdictions."[3] *See* Plaintiffs' Opp. at 50 n.42 (ECF 69). Whether four months is sufficient to produce the requested documents for 677 individuals and entities in the Territories, including obtaining the related waivers, is at least more realistic, but even Plaintiffs did not propose or suggest in their opposition that the Bank could complete the document production within that timeframe were the Court to deny the Bank's motion for a protective order in its entirety.

---

[3] As the Bank previously advised the Court, a primary purpose of its motion seeking a protective order was to try and limit the scope of discovery to the extent that it could in order to increase the likelihood of success of obtaining waivers and avoid running afoul of the bank secrecy laws of Jordan, Lebanon and the Palestinian Territories, if possible. Now that the Court has ruled and the Bank knows the parameters of the search it must undertake, it will immediately begin the process of seeking waivers and conducting the required search for responsive documents. The Bank's interest was, and remains, to produce as much account information as it can, given its belief that those transactions will not demonstrate any improper or unlawful conduct or any transactions in which the Bank knowingly aided and abetted any terrorist activity.



Hon. Peggy Kuo
Page Four

       The Bank therefore requests that the Court afford it the same treatment it gave and still gives to Plaintiffs' ongoing document production, namely that it be permitted to produce documents on a rolling basis and to provide status reports on its progress. In the unlikely event the Court determines that the Bank is not proceeding diligently or in good faith as a result of those reports, it can take appropriate measures based on an informed appraisal of the facts then presented and progress achieved.

       Accordingly, we ask that the Court decline to sign Plaintiffs proposed order. Instead, we ask that the Court direct that the parties file a joint status report in 120 days reporting both on Plaintiffs' progress in responding to the Bank's still outstanding requests for production, and the Bank's progress in obtaining waivers and production of documents. Based on that status report, the Court may determine that further periodic status reports be required or take such other action as it deems appropriate, based on the facts presented.

       Should the Court request, Defense counsel will be pleased to respond to any questions the Court may have.

Respectfully submitted,

Andrew J. Peck