April 9, 2025

**VIA ECF**

Honorable Taryn A. Merkl
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-0007
> Opening Letter Brief Regarding Plaintiffs' Renewed Request For Modified PO

Dear Judge Merkl:

Moving Defendants[1] (the "Banks") respectfully submit that, to the extent the Court is inclined to issue a new production order, it should adhere to the balanced approach of the June 8, 2023 production order (the "First PO") (ECF 328), and limit additional discovery to newly alleged customers identified in the Third Amended Complaint ("TAC"), "broken down by bank." Mem. & Order 18, 33 (ECF 320). There is no basis for dramatically expanding discovery to include hundreds of names that are not alleged to have been customers of the Banks, as Plaintiffs propose—and as this Court already rejected.

## BACKGROUND

On June 8, 2023, the Court issued its First PO, which was carefully tailored to require disclosure of information concerning only "bank customers and accounts identified in the [Second Amended Complaint ("SAC")], broken down by bank." ECF 320 at 18; *see also* ECF 328. In making that ruling, the Court rejected Plaintiffs' attempts to obtain sweeping discovery by requiring each Bank to search for, and produce all records concerning 687 names, many of whom were not alleged to have been their customers. ECF 320 at 7–8 (citing Plaintiffs' discovery filings at ECF 270-1, 295-1, 277-1, 270-13).

In delineating the scope of the First PO, the Court conducted the necessary Rule 26 balancing analysis. It held that, "because [the names listed in the SAC were] not differentiated with respect to each Defendant, the Court [had] scope and proportionality concerns, particularly in light of the comity analysis that the Court must undertake." *Id.* at 17. Consequently, it ordered Plaintiffs to limit their requests on a bank-by-bank basis. *Id.*; *see also* ECF 328. The Court again emphasized its measured approach in its August 14, 2023 Letter Rogatory, noting that "Plaintiffs' requests [are] 'broken down by bank,' i.e., each Bank is required to produce only documents relating to persons or entities alleged to be customers of that particular Bank."[2] ECF 342.

On November 7, 2023, Plaintiffs filed the TAC, adding 85 pages. Relevant here, Plaintiffs contend that a significant number of the new allegations "reflect summaries of records produced by third parties," with the balance of new allegations purportedly derived from post-litigation disclosures, events, and other public source information from the relevant time period. *See* ECF 366 at 1–2 (Letter from Plaintiffs).

---

[1] Moving Defendants are (1) Société Générale de Banque au Liban S.A.L. ("SGBL"), (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) LGB Bank s.a.l., (9) Banque Libano-Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank S.A.L.

[2] The letters rogatory process was not the basis for the First PO's targeted approach, as Plaintiffs contend. Indeed, this Court rejected that very theory. *See* Nov. 18, 2024 Hr'g Tr. 28:25–30:24 ("[T]he purpose of the narrower list that I permitted . . . as a result of the March 31, 2023 opinion was not, as you intimate, to test the waters with regard to what Lebanon was likely to do or, frankly, what the defendants were likely to do, but rather it is how I view my obligations under the *Aérospatiale* case."); *id.* 31:16–32:9 ("[The First PO] was to ensure that we were exercising appropriate comity when dealing with foreign entities and ensuring that we do not put foreign defendants in a position where they are faced with the Hobson's choice.").

1

On July 15, 2024, the Lebanese authorities responded, indicating that they would not issue a blanket waiver of Lebanese law, but that, "[t]o the extent the 'Court' is able to provide the 'Commission' with additional details concerning money laundering or terrorism financing allegations that are specific to each alleged account, the 'Commission' would be willing to look into such allegations." ECF 421-1 at 6. By September 2024, all Banks had begun seeking bank secrecy waivers from alleged customers. That customer waiver process has proven effective. As the Banks reported in November 2024, they had collectively obtained waivers from approximately 30% of confirmed SAC customers.[3] That percentage has since increased.

On November 18, the Court held a hearing regarding Plaintiffs' request for a pre-motion conference, during which it stated that it did not "foresee a discovery order coming from [the Court] that would put 11 foreign defendants—I think it was three-quarters of the banking industry of Lebanon—in the position of violating potentially my order with a gigantic rider that's unsupported by any evidence." Nov. 18, 2024 Hr'g Tr. 35:25–36:6. After the conference, the Court directed (1) Defendants to work to complete the waiver process and provide a comprehensive report to Plaintiffs and a status report to the Court by June 12, 2025, and (2) the parties to file a joint status report concerning a proposed modified production order by February 28, 2025. Minute Entry and Order (Nov. 18, 2024).

On December 18, Plaintiffs proposed a new production order that doubled down on the sweeping approach this Court already rejected by asking that each Bank search for, and produce the records of hundreds of names mentioned anywhere in the TAC. **Exhibit A** (Plaintiffs' proposal).

On January 23, 2025, the Banks began producing documents on a rolling basis pursuant to the First PO. The initial productions were variously comprised of account statements and account opening documents.

On January 24, the parties met and conferred. The Banks counter-proposed a new order that was consistent with the First PO, simply adding newly alleged bank-specific customers identified in the TAC. **Exhibit B** (Banks' counterproposal). On February 21, the parties held further discussions. The parties then exchanged correspondence—attached hereto as **Exhibit C** and **Exhibit D**—in an attempt to narrow the delta between their competing proposals.

## ARGUMENT

Expanding the scope of discovery beyond newly alleged bank-specific customers in the TAC would contravene well-established principles of relevance and proportionality enshrined in Federal Rule of Civil Procedure 26 and the comity principles established by the Supreme Court.

### I. The Court Should Adhere To The Balanced Approach It Previously Delineated.

As this Court has already concluded, Plaintiffs' effort to require the Banks to search for and produce documents concerning hundreds of additional names that are not alleged to have banked with the Banks is the very definition of a fishing expedition, both unduly burdensome and entirely disproportionate to the needs of the case. *See* ECF 320 at 17–18 & n.15, 33; ECF 328; ECF 342 at 1, 4. Further, Plaintiffs' attempt to expand discovery would exacerbate the TAC's group-pleading approach to its allegations here.

Of the hundreds of names mentioned in the TAC, only about half are alleged to have specifically banked

---

[3] The Banks have made a preliminary determination that, of the approximately 310 alleged bank-specific customers listed in the First PO, approximately 19% of those alleged customers did not have a banking relationship with any of the Banks. *See* Nov. 18, 2024 Hr'g Tr. 20:13–23. Notwithstanding Plaintiffs' productions to date, the Banks have been unable to identify in those productions a factual basis to support those allegations. The parties are meeting and conferring about this issue (among others relating to Plaintiffs' productions, including technical issues, and affirmative discovery the Banks are seeking).

with *any* of the Banks. Of that half, each Bank is alleged to have banked a small fraction. By way of example, the First PO required each Bank to search for fewer than three-dozen names. Here, Plaintiffs' requests would require each Bank to approach hundreds of names to attempt to secure a waiver. It would also require each Bank to search for and produce the records of individuals like Butrus Michel Ghanimah, who is not alleged to have banked with a specific Bank and whose only purported relevance is being listed as a company attorney. The Court rejected Plaintiffs' blunderbuss approach, explaining that "[a]s information comes to light during discovery that establishes relevance and proportionality, further efforts to seek documents and records from Lebanon can be conducted in stages, supervised by the Court, as anticipated by the Supreme Court in *Aérospatiale*." ECF 320 at 18 n.15. Indeed, the Supreme Court's decision in *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa* held that "American courts, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position" and "must supervise pretrial proceedings particularly closely to prevent discovery abuses." 482 U.S. 522, 546 (1987).

Plaintiffs now seek to revive and broaden the approach this Court already rejected. *See* Exhibit D. But the Court's phased approach contemplates allowing Plaintiffs to make additional discovery requests only under circumstances where they "have additional information to proffer about the relevance of the [] names and entities as discovery progresses." ECF 320 at 16 n.13. The Court re-emphasized this point during the November 18 hearing when it stated that it would not countenance discovery requests that list hundreds of names "when there's no basis to reach the conclusion that that bank is servicing those individuals and/or entities." Nov. 18, 2024 Hr'g Tr. 35:1–36:7. As the Banks have already told Plaintiffs, "[t]o the extent a [Bank] is in the possession, custody, or control of responsive materials that fall within the Court's five categories and relevant time period regarding the alleged customers listed in Annex A and B, our intent is to produce them," subject to obtaining a waiver or other directive that would relieve the Bank of its bank secrecy obligations. Exhibit D at 1. Thus, Plaintiffs may make additional requests if information comes to light that would reasonably permit them to do so.

## II.    Comity Requires Limiting Discovery To Newly Alleged Bank-Specific Customers.

Like the First PO, any modified order should adhere to the comity protections under *Aérospatiale* that apply when the discovery sought is located outside the United States. When a party seeks production of information from a foreign jurisdiction, and such production would violate that jurisdiction's laws, "courts perform a comity analysis to determine the weight to be given to the foreign jurisdiction's law." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 413 (S.D.N.Y. 2016) (citation omitted); *see also Aérospatiale*, 482 U.S. at 543–44 & n.27. Courts consider several factors when assessing conflicting foreign law, *see* ECF 320 (quoting *Laydon*, 183 F. Supp. 3d at 419–20), and at this juncture, those factors continue to weigh against Plaintiffs. Accordingly, their attempt to relitigate these issues should be denied.

***First***, the vast expansion of discovery that Plaintiffs seek is neither "crucial" nor "absolutely essential" to the case. *Société Internationale v. Rogers*, 357 U.S. 197, 201, 204–05 (1958); *In re Vitamins Antitrust Litig.*, 2001 WL 1049433, at *9 (D.D.C. June 20, 2001). Plaintiffs have not identified any critical gaps in the current framework that would warrant such a broad expansion. Indeed, they have not even made any bank-specific allegations regarding many of the new names. And Plaintiffs have proffered no evidence from third-party discovery that would justify these blanket requests. Meanwhile, expanding discovery as Plaintiffs request would invite a sweeping collision with foreign law without any concomitant basis to believe that this additional discovery is "vital" or "crucial" to this suit.

***Second***, Plaintiffs' proposal lacks the required specificity. *See* Restatement (Third) of Foreign Relations

Law § 442(1)(c) (Am. L. Inst. 1987). Indeed, the entire proposal is indiscriminately directed at all the Banks. *See Montoya v. New Mexico Corr. Dep't*, 2024 WL 1071899, at *5 (D.N.M. Mar. 12, 2024) ("The Court will not order indiscriminate production of relevant and irrelevant information just so Plaintiffs can decide, after they have it, what they need."). Plaintiffs cannot justify imputing allegations specific to one Bank to all the Banks merely because they have chosen to consolidate their claims in a single case. *See Eon Corp IP Holding LLC v. Sensus USA Inc*, 2013 WL 3982994, at *2 (N.D. Cal. Mar. 8, 2013) ("[C]aution[ing against] broad discovery requests propounded indiscriminately to all Defendants, without careful crafting of requests to the particular Defendant and its role in the case . . . ."). Plaintiffs can hardly demand that *all* the Banks conduct discovery regarding persons who are not even alleged to have banked with *any* Bank. The overbroad nature of Plaintiffs' requests is not only burdensome, but also undermines the efficiency and fairness of the discovery process.

*Third*, "[t]here is no real dispute that many of the documents and records sought from Defendants originated in Lebanon." ECF 320 at 25; *see also Tiffany (NJ) LLC v. Qi Andrew*, 276 F.R.D. 143, 152 (S.D.N.Y. 2011).

*Fourth*, courts engaging in a comity analysis examine whether there are alternate ways to obtain the requested information. *See Doubleline Cap. LP v. Odebrecht Fin., Ltd.*, 2021 WL 4596561, at *13 (S.D.N.Y. Oct. 6, 2021). Here, the parties have already obtained substantial third-party discovery from U.S. correspondent banks concerning the same names. Plaintiffs admit that most of the new allegations in the TAC are based on information derived from such discovery.[4] The Banks have offered to engage in ongoing discussions with Plaintiffs to address any new information uncovered through third-party discovery that is relevant and proportional to the needs of the case. *See* Exhibit D. Additionally, the Lebanese authorities have expressed their willingness to consider requests supported by additional evidence on a case-by-case basis. The Banks are actively working to secure as many waivers as possible by June 12, 2025. The more waivers obtained, the less extensive any additional requests to the Lebanese authorities would need to be, which may increase the likelihood of a favorable decision. However, allowing Plaintiffs to vastly expand the scope of discovery would frustrate these efforts.

*Fifth*, sovereign interests play a pivotal role in the comity analysis, with the balancing of these interests being the "most important factor." *See Nike, Inc. v. Wu*, 349 F. Supp. 3d 310, 338 (S.D.N.Y. 2018) (Courts conduct a "particularized analysis of the respective interests of the" nations involved). Here, while the Court overruled the Banks' secrecy objections, it still gave considerable weight to Lebanon's interests by permitting the parties to submit joint requests to Lebanon and for the Banks to seek waivers before ordering the production of documents. ECF 320 at 23. These interests remain unchanged.

*Sixth*, when evaluating the "hardship" factor, the Court should consider the civil, commercial, and criminal repercussions the Banks might face if compelled to violate Lebanese law. *See Doubleline Cap. LP*, 2021 WL 4596561, at *13. Plaintiffs' renewed proposal would likely be impossible to satisfy without violating Lebanese law, given the difficulty in obtaining possibly hundreds of additional waivers or convincing the regulator to acquiesce to such a wholesale lifting of bank secrecy. *See Rogers*, 357 U.S. at 211; *Rotstain v. Trustmark Nat'l Bank*, 2015 WL 13031698, at *4 (N.D. Tex. Dec. 9, 2015); *cf.* ECF 276; ECF 320 at 27 (quoting *Linde v. Arab Bank, PLC*, 463 F. Supp. 2d 310, 316 (E.D.N.Y. 2006)). Those problems are only exacerbated by the fact that Plaintiffs' pleadings—which are voluminous in other

---

[4] Rule 26(b)(2)(C)(i) provides that a court must limit discovery if the information "sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is . . . less burdensome." Here, Plaintiffs have obtained U.S. correspondent bank records containing much of the same transactional information they seek from Lebanon. *Compare* FRANSABANK00000102–03, *with* DBTCA 003 at CINQ ID Nos. 20110324S189492 & 20110324S189420.

ways—make no attempt to connect any of those additional names to each specific Bank.

***Seventh***, courts examine whether the opposing parties have acted in good faith. *See Weiss v. Nat'l Westminster Bank, PLC*, 242 F.R.D. 33, 56 (E.D.N.Y. 2007). Here, the Banks have produced and are committed, to the fullest extent permitted by law, to continue producing documents pursuant to the framework set forth by this Court. In the past months, the Banks have continued to secure waivers, while collecting, reviewing, and producing responsive nonprivileged documents from alleged customers who have waived. Since January 2025, several of the undersigned counsel have also traveled multiple times to Beirut to ensure efforts are proceeding apace, even while the security situation remains volatile. *Cf.* ECF 320 at 28 ("Defendants' arguments . . . evince advocacy on behalf of their clients, who are tasked with navigating a complex discovery process and competing legal obligations.").

### III. This Court Should Not Order SGBL To Produce Records Related To Its Acquisition Of Certain Assets And Liabilities Of The Lebanese Canadian Bank ("LCB").

Plaintiffs additionally make a far-reaching and unsupported demand to include all LCB-related communications and documents in their proposal. *See* Exhibit A ¶¶ 11, 12 (seeking an order for SGBL to produce "all communications and documents concerning its acquisition of LCB" and "all communications and documents concerning former bank accounts and customers of LCB" identified in unspecified "audit(s)" referenced in the TAC). The Court should reject that attempt. Plaintiffs have never requested SGBL to produce these documents, let alone moved to compel their production. Nor have the parties met and conferred regarding these documents, let alone briefed the obvious scope, proportionality and relevancy issues raised by any such request, particularly given the Court's dismissal of the successor liability claim against SGBL.

***First***, Plaintiffs' RFP to the Banks does not request that SGBL produce communications and documents related to its purchase of certain of LCB's assets and liabilities in 2011. ECF 277-1 at 4–5. Nowhere does the RFP ever mention LCB, the asset-and-liability acquisition, or any alleged audit of LCB's accounts or customers. Instead, as noted *supra*, the RFP targets alleged account and transactional information. *Id.*

***Second***, Plaintiffs' motion to compel (ECF 270) equally fails to mention or request the wholesale production by SGBL of all communications and documents concerning its acquisition of LCB and/or certain of its customers. Without conceding either the existence or SGBL's possession of such records, that universe of documents could encompass, among many other things, sensitive and confidential communications with financial regulators, LCB, outside counsel, and other third parties. This new category of records is entirely distinct from the customer-related information actually requested by the RFP, which Plaintiffs themselves characterize as account and transactional records and internal communications. ECF 270-1 at 21.

***Third***, there is nothing in this Court's discovery ruling that contemplates the production of such an unlimited set of records from SGBL. Although Plaintiffs may continue to insist that some LCB-related records (such as migrated accounts) may be relevant to evaluate Banks' state of mind, this Court's general relevancy observations provide no basis for Plaintiffs to reverse-engineer and expand their RFP to include documents they did not request, particularly given the very limited information and timeframe this Court ultimately found relevant and proportional. *See* ECF 320 at 17.

* * *

For the foregoing reasons, to the extent the Court is inclined to issue a new production order, it should limit any expansion to bank-specific customers that are newly alleged in the TAC.

Respectfully submitted,

| | |
|---|---|
| DECHERT LLP | MAYER BROWN LLP |
| | |
| By: */s/ Jonathan R. Streeter* | By: */s/ Mark G. Hanchet* |
| Jonathan R. Streeter | Mark G. Hanchet |
| Tamer Mallat | Robert W. Hamburg |
| Julia L. Shea | Benjamin D. Bright |
| Dechert LLP | Whitney A. Suflas |
| 1095 Avenue of the Americas | Mayer Brown LLP |
| Three Bryant Park | 1221 Avenue of the Americas |
| New York, NY 10036 | New York, NY 10020 |
| 212-698-3500 | 212-506-2500 |
| Email: jonathan.streeter@dechert.com | Email: mhanchet@mayerbrown.com |
| Email: tamer.mallat@dechert.com | Email: rhamburg@mayerbrown.com |
| Email: julia.shea@dechert.com | Email: bbright@mayerbrown.com |
| | Email: wsuflas@mayerbrown.com |
| Michael H. McGinley | |
| Dechert LLP | *Attorneys for Defendant Banque-Libano* |
| Cira Centre | *Française SAL* |
| 2929 Arch Street | |
| Philadelphia, PA 19104 | |
| 215-994-4000 | |
| Email: michael.mcginley@dechert.com | |
| | |
| *Attorneys for Defendants BLOM Bank SAL,* | |
| *Fransabank SAL, and Bank Audi SAL* | |
| | |
| DLA PIPER LLP (US) | SQUIRE PATTON BOGGS (US) LLP |
| | |
| By: */s/ Anthony P. Coles* | By: */s/ Gassan A. Baloul* |
| Anthony P. Coles | Gassan A. Baloul |
| Erin Collins | Mitchell R. Berger |
| DLA Piper LLP (US) | Squire Patton Boggs (US) LLP |
| 1251 Avenue of The Americas | 2550 M Street, NW |
| New York, NY 10020 | Washington, DC 20037 |
| 212-335-4925 | 202-457-6155 |
| Email: anthony.coles@dlapiper.com | Email: gassan.baloul@squirepb.com |
| Email: erin.collins@dlapiper.com | Email: mitchell.berger@squirepb.com |
| | |
| Samantha L. Chaifetz | *Attorneys for Defendants MEAB Bank* |
| 500 8th Street, NW | *s.a.l., Fenicia Bank S.A.L., and LGB Bank* |
| Washington, DC 20004 | *s.a.l.* |
| 202-799-4082 | |
| Email: samantha.chaifetz@dlapiper.com | |
| | |
| *Attorneys for Defendants Byblos Bank SAL,* | |
| *Bank of Beirut and the Arab Countries* | |
| *SAL, and Bank of Beirut s.a.l.* | |

ASHCROFT LAW FIRM, LLC

By: */s/ Michael J. Sullivan*
Michael J. Sullivan
Brian J. Leske
Ashcroft Law Firm, LLC
200 State Street, 7th Floor
Boston, MA 02109
617-573-9400
Email: msullivan@ashcroftlawfirm.com
Email: bleske@ashcroftlawfirm.com

*Attorneys for Defendant Société Générale de Banque au Liban S.A.L.*