**VIA ECF**

Honorable Taryn A. Merkl
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    **Re:**    ***Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-0007**
                  **Response to Plaintiffs' Renewed Request For A Modified Production Order**

Dear Judge Merkl:

Plaintiffs' opening brief confirms the need for the Court to adhere to its balanced approach to discovery in this case. Moving Defendants (the "Banks") begin by addressing several preliminary matters before responding to Plaintiffs' arguments in turn.

***First***, Plaintiffs' modus operandi has not changed. Despite the Banks' good-faith efforts to comply with the first production order (ECF 328) (the "First PO"), as demonstrated by their rolling productions to date, Plaintiffs have shown no interest in litigating this case on its merits. Instead, they double-down on their attempt to dramatically expand the scope of discovery – a litigation tactic transparently intended to set the groundwork for seeking discovery sanctions.[1]

***Second***, without providing any notice, Plaintiffs inexplicably attached to their April 9 brief, a new proposed production order that is significantly more expansive than the proposal they shared with the Banks on December 18, 2024 (and about which the parties met and conferred). Pls.' Ex. A. Plaintiffs' latest proposal, among other things, unjustifiably adds 333 names to their December 18 proposal and expands the relevant time period for certain alleged customers. *See id.* By blindsiding the Banks with their new proposal (they did not even provide a courtesy redline), Plaintiffs have also violated Rule 3 of this Court's Individual Rules & Practices requiring that the parties meet and confer "in a good faith effort to resolve disputes."

***Third***, in an effort to obtain broad discovery, Plaintiffs malign Lebanon and its people by alleging that "[e]veryone in Lebanon is a partner of Hizbullah." *See* Pls.' Br. at 3, 4. Plaintiffs' only support for that accusation is the statement of a deeply unpopular politician, who himself is known for "his political ties to the Shiite militant group, Hezbollah."[2] Plaintiffs' effort to broadly cast false aspersions on large swaths of the Lebanese population is offensive and regrettable.

---

[1] *Cf.* Nov. 18, 2024 Hr'g Tr. 35:25–36:7 ("I don't foresee a discovery order coming from me that would put 11 foreign defendants . . . in the position of violating potentially my order with a gigantic rider that's unsupported by any evidence. It's not going to happen, Mr. Osen. So you can rush it all you want, you're going to get a no."); *id.* at 31:22–32:9 ("[I]t is the defendants' view that that's what you're seeking, to put them into -- sort of, get them painted into the corner so that they can seek sanctions. I mean, this has been a theme throughout this litigation. And I'm not suggesting what your true motivations are. I truly hope that discovery will happen here and that you'll get the information you're seeking so that the case can be adjudicated on the merits . . . .").

[2] Plaintiffs quote a politician with known ties to Hezbollah – ignoring that he is widely known as "the most hated" politician in Lebanon as a result of those ties. *See, e.g., Is Gebran Bassil Lebanon's Most Hated Politician? Popular Derogatory Chant Has Singled Out Lebanon's Powerful Foreign Minister*, Gulf News (Oct. 24, 2019), https://gulfnews.com/world/mena/is-gebran-bassil-lebanons-most-hated-politician-1.67335177; *Treasury Targets Corruption in Lebanon*, U.S. Dep't of the Treasury (Nov. 6, 2020), https://home.treasury.gov/news/press-releases/sm1177.

As set forth in the Banks' opening letter brief and herein, the Banks respectfully request that, should the Court issue a new production order, it adhere to the balanced approach set forth in the First PO and limit any additional discovery to newly alleged bank-specific customers identified in the Third Amended Complaint (the "TAC"), as explained in the Banks' April 9 brief.

## I. The Court Should Reject Plaintiffs' Attempt To Ignore *Aérospatiale*.

This Court has at least twice explained that discovery in this case is governed by *Société Nationale Industrielle Aérospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*, 482 U.S. 522 (1987) ("*Aérospatiale*"). ECF 320 at 18 n.15 ("As information comes to light during discovery that establishes relevance and proportionality, further efforts to seek documents and records from Lebanon can be conducted in stages, supervised by the Court, as anticipated by the Supreme Court in *Aérospatiale,* 482 U.S. at 546."); Nov. 18, 2024 Hr'g Tr. 30:16–30:24 ("[T]he purpose of the narrower list that I permitted . . . was not, as you intimate, to test the waters with regard to what Lebanon was likely to do or, frankly, what the defendants were likely to do, but rather it is how I view my obligations under the *Aérospatiale* case.").

Yet Plaintiffs do not meaningfully address *Aérospatiale*. Instead, relying on *Wultz v. Bank of China Ltd.*, 910 F. Supp. 2d 548, 556 (S.D.N.Y. 2012), they argue that "Defendants' foreign status have little role to play here," because this case arises out of the ATA. *See* Pls.' Br. at 2.[3] But, as this Court has recognized, the ATA does not override this Court's obligation to apply the *Aérospatiale* factors. *See* ECF 320 at 22. Those factors, including national interest, are particularly relevant here as Plaintiffs' claims affect over three-quarters of Lebanon's banking sector, and therefore have the potential to significantly impact U.S.-Lebanese relations – especially at this critical juncture in Lebanon's history in which it has formed a new government, is emerging from a financial crisis, and is working to avert a new war in the region.[4] The *Aérospatiale* factors are designed to take into account such sensitive foreign policy considerations.[5]

## II. Plaintiffs' Arguments In Favor Of A New Production Order Are Unavailing.

Plaintiffs assert that their newly proposed production order should be entered because the discovery sought is relevant and not unduly burdensome. But, Plaintiffs do not address any of the *Aérospatiale* factors, which, as set forth in the Banks' opening brief, weigh against ordering more expansive discovery at this stage, given, *inter alia*: (1) Plaintiffs' inability to demonstrate how their "gigantic rider" could yield additional discovery that is "vital" or "crucial" without causing an inevitable collision with foreign law; (2) Plaintiffs' failure to specify (or even make a good-faith attempt to specify) any connection between the hundreds of additional names to each of the Banks; (3) the existence of alternate ways to obtain discovery, including from correspondent banks, via waivers, and by pursuing potential further relief from the Lebanese authorities; and (4) the Banks' continued, diligent efforts to comply with the First PO as evidenced by their productions to date, continued pursuit of customer waivers, and willingness to work with Plaintiffs

---

[3] Judge Scheindlin's analysis in *Wultz* was expressly guided by *Aérospatiale*, which she held applied given the international comity concerns animating that case. *See Wultz*, 910 F. Supp. 2d at 552.

[4] *US Envoy Morgan Ortagus Hails Lebanese Diaspora, Says Country Stands at a Crossroads*, LBCI (Apr. 23, 2025), https://www.lbcgroup.tv/news/lebanon-news/850412/us-envoy-morgan-ortagus-hails-lebanese-diaspora-says-country-stands-at/en.

[5] Contrary to Plaintiffs' contentions, *Pearlstein v. Blackberry Ltd.*, 332 F.R.D. 117 (S.D.N.Y. 2019), does not mandate that a court cease consideration of comity concerns once a letter rogatory has been issued.

to submit a renewed request for the lifting of bank secrecy to the Lebanese authorities. *See* Defs.' Br. at 3–5.

### A. Plaintiffs' Indiscriminate Requests To Have Each Bank Search For 739 Names Referenced In The 887-Page TAC Is The Very Definition Of A Fishing Expedition.

The Court should adhere to the "bank-by-bank" framework it previously delineated. *See* Defs.' Br. at 1, 2–3. That approach is both faithful to *Aérospatiale* and strikes the appropriate Rule 26 balance, by providing Plaintiffs with information that is purportedly "vital" or "crucial" to their claims – as they have plead those claims – without subjecting each Bank to the obvious burden associated with searching for approximately 700 additional names that are not even alleged to have been customers of all the Banks. *See Société Internationale v. Rogers*, 357 U.S. 197, 201, 204–05 (1958); *In re Vitamins Antitrust Litig.*, No. 99–197, 2001 WL 1049433, at *9 (D.D.C. June 20, 2001); ECF 320 at 17–18. And, as the Banks and Court have acknowledged, that approach does not preclude Plaintiffs from making additional requests if warranted by new information that comes to light during their records review. *See, e.g.*, ECF 320 at 16 n.13; Defs.' Ex. D at 2; Nov. 18, 2024 Hr'g Tr. 26:4–27:5.

However, "when there's no basis to reach the conclusion that that bank is servicing [non-bank specific] individuals and/or entities," Nov. 18, 2024 Hr'g Tr. 35:1–36:7, each Bank should not be required to search for the records of hundreds of additional names simply because these names appear in a 887-page complaint (many of which are not even alleged to have been customers of *any* Bank). *See, e.g.*, Joint Reply Supp. Defs.' Mot. Dismiss TAC at 18, ECF 380 (noting, for example, Imad Bakri is listed in Plaintiffs' proposal despite the TAC failing to allege that he banked with any Bank); Nov. 18, 2024 Hr'g Tr. 35:25–36:6.

Plaintiffs are seeking to embark on a quintessential fishing expedition. *See Montoya v. New Mexico Corr. Dep't*, No. 1:22-cv-00265, 2024 WL 1071899, at *5 (D.N.M. Mar. 12, 2024) ("The Court will not order indiscriminate production of relevant and irrelevant information just so Plaintiffs can decide, after they have it, what they have."). None of Plaintiffs' justifications for expanding the list of discoverable names to 739 have merit.[6] Their request should be denied.

***First***, Plaintiffs make the circular argument that the "list of 739 names in the Proposed Discovery Order is already narrowly tailored to the Hezbollah-related entities" because each of those 739 names "is described in the TAC." Pls.' Br. at 3. They further contend that all these names (as well as, presumably, every other citizen of Lebanon) are relevant because "everyone in Lebanon is a partner of Hizbullah." *Id.* at 3, 4. The Court has already considered and rejected such arguments, and should continue to do so. ECF 320 at 17–18. Plaintiffs' proposed production order fails to undertake the necessary specificity analysis. Specificity is not about the number of names in a request for production *per se*, but about ***why*** those names were included, and whether the "plaintiff request[ed] ***only*** documents that are important to litigating his claims." *Laydon v. Mizuho Bank, Ltd.*, 183 F. Supp. 3d 409, 421 (S.D.N.Y. 2016) (emphasis added).[7]

---

[6] Plaintiffs identify a "LCB compliance document" that purportedly supports their relevance arguments. Pls.' Br. at 4. However, LCB is not a Moving Defendant, and therefore any argument concerning it is not relevant as to the Banks. *See* ECF 380 at 14.

[7] In *Miller v. Arab Bank, PLC*, on which Plaintiffs seek to rely, the court found a request for bank records specific because—in the court's view—it was limited to "individuals whom Plaintiffs have identified as terrorists, martyrs,

***Second***, Plaintiffs argue that requiring "each Defendant to electronically search its customer databases for 739 names does not significantly increase their burden," Pls.' Br. at 5, and that the failure to comply "should not alter the consequences for any individual Defendant choosing to defy a valid court order," *see id.* at 4 n.2. This entirely ignores *Aérospatiale*'s specificity requirement. To conclude Plaintiffs are entitled to force each Bank to search for anyone connected with *any other defendant* merely because Plaintiffs chose to consolidate their claims in a single case, would reward – and encourage – massive omnibus briefing, and using claims against *one defendant* to fish for a potential claim against another. Defs.' Br. at 4 (collecting authorities). Courts do not permit such fishing expeditions simply because, *arguendo*, the burden to produce is minimal – fishing expeditions like the one proposed here are *per se* impermissible.[8]

***Third***, Plaintiffs' reliance on *Miller v. Arab Bank, PLC*, No. 18-cv-2192, ECF 115 (E.D.N.Y. Apr. 14, 2023) (Pls.' Ex. D), is inapposite. The discovery issues in *Miller* are specific to that case and are not relevant to any issue or party in this case. Moreover, Plaintiffs' suggestion that more expansive discovery is appropriate here is based on a simple comparison of numbers (number of plaintiffs and number of defendants)—without any comity analysis—has no basis in law. There is no legal authority suggesting that the chosen structure of Plaintiffs' case can override this Court's obligations under *Aérospatiale*.

***Fourth***, Plaintiffs' continued insistence that discovery of "all communication and documents" concerning SGBL's acquisition of certain assets and liabilities of the Lebanese Canadian Bank (¶ 11) and unspecified audits conducted during that transaction (¶ 12) could yield relevant evidence (Pls.' Br. at 4) cannot cure the defect – one of Plaintiffs' own making – that they neither requested those documents in this case nor moved to compel their production. *See* Defs.' Br. at 5; *see also* Defs.' Ex. D. at 3 (repeating SGBL's position that "[a]gain, these paragraphs are far beyond the scope of the parties' current discovery dispute and the Court's discovery ruling"). Paragraphs 11 and 12 therefore should not be considered for inclusion in any production order until and unless Plaintiffs request the documents, the parties meet and confer, and SGBL has a full and fair opportunity to address the requests' improper scope and proportionality and lack of (or, at best, marginal) relevance to the remaining claims in the case.

### B. Plaintiffs' Demand To Dramatically Expand The Categories Of Documents Sought Is A Red Herring.

Plaintiffs object to the Banks' "oppos[ition to] the types of document categories listed in the Proposed Discovery Order," which they describe as "odd." Pls.' Br. at 5. The five categories listed in the First PO are sufficiently tailored to the needs of the case and encompass many (if not all) of the new purported categories of documents that Plaintiffs now seek. *See* ECF 320 at 7–9, 14, 16, 17 (Court giving careful consideration in delineating document categories). By expanding their request to over 50 categories under the guise of providing "greater specificity," Plaintiffs appear

---

[8] Plaintiffs' argument also ignores the significant weight this Court must place on the "origin" of the documents. As this Court previously found, the documents' foreign origination "underscores the importance of a careful comity analysis." ECF 320 at 25; *see also Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1475 (9th Cir. 1992) ("The fact that all the information to be disclosed . . . [is] located in a foreign country weighs against disclosure, since those people and documents are subject to the law of that country in the ordinary course of business.").

operatives, FTO leaders, [etc.]." 2023 WL 2731681, at *11 (E.D.N.Y. Mar. 31, 2023). This was not based on their nationality alone.

to be laying the groundwork for arguing substantial noncompliance on the grounds that the Banks may not possess (and therefore have not produced) documents responsive to each of their dozens of categories. This formalistic approach to discovery, however, elevates form over substance and should be rejected.

In any event, "[a]s [the Banks] previously told [Plaintiffs], [the Banks] will continue producing on a rolling basis responsive nonprivileged documents" that are "responsive to the 5 categories delineated by the Court" for "clients who have executed waivers." **Exhibit E** (E-mail from M. McGinley to M. Radine (Apr. 9, 2025, 5:30 PM ET)); *see also* Defs.' Br. at 3; Defs.' Ex. D at 1.

### C. The Court Should Reject Plaintiffs' Attempt To Eliminate The Distinction Between Annex A And Annex B.

Lastly, Plaintiffs' proposal effectively seeks to rewrite the First PO – ignoring the distinction this Court drew between Annex A and Annex B and subjecting a longer list of customers to a longer period of disclosure.

The First PO included two annexes: Annex A, covering January 1, 2003, through December 31, 2011, and Annex B, covering January 1, 2012, through December 31, 2012. The Court specifically included Annex B to cover the year immediately following the attacks, providing Plaintiffs with additional discovery for a limited set of customers and records "relevant to evaluating Defendants' state of mind." *See* ECF 320 at 17.

Plaintiffs now propose changing the start date of Annex B to January 1, 2003, a change that would upend the framework the Banks have adhered to when searching for, collecting, and reviewing records. To downplay the significance of their proposed change, Plaintiffs have sought to make the annexes appear shorter by removing alleged customers listed in Annex B from Annex A, thereby giving the false impression that their changes are more reasonable than they actually are. Plaintiffs also seek to expand the relevant time period for certain customers already listed in the First PO's Annex A by moving numerous names to the expanded Annex B without any stated justification. *See, e.g.*, Rami Kamil Ya'qub Baqir (moved from BLOM's Annex A to Annex B). Plaintiffs' efforts to reconfigure Annexes A and B only increase the burden on the Banks, and should be rejected wholesale.

*       *       *

For the foregoing reasons, to the extent the Court is inclined to issue a new production order, it should limit any expansion to bank-specific customers that are newly alleged in the TAC.

Respectfully submitted,

DECHERT LLP

By: */s/ Jonathan R. Streeter*
Jonathan R. Streeter
Tamer Mallat
Julia L. Shea
Dechert LLP
1095 Avenue of the Americas
Three Bryant Park
New York, NY 10036
212-698-3500

MAYER BROWN LLP

By: */s/ Mark G. Hanchet*
Mark G. Hanchet
Robert W. Hamburg
Benjamin D. Bright
Whitney A. Suflas
Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020
212-506-2500

Email: jonathan.streeter@dechert.com
Email: tamer.mallat@dechert.com
Email: julia.shea@dechert.com

Michael H. McGinley
Dechert LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
215-994-4000
Email: michael.mcginley@dechert.com

*Attorneys for Defendants BLOM Bank
SAL, Fransabank SAL, and Bank Audi
SAL*

DLA PIPER LLP (US)

By: */s/ Anthony P. Coles*
Anthony P. Coles
Erin Collins
DLA Piper LLP (US)
1251 Avenue of The Americas
New York, NY 10020
212-335-4925
Email: anthony.coles@dlapiper.com
Email: erin.collins@dlapiper.com

Samantha L. Chaifetz
500 8th Street, NW
Washington, DC 20004
202-799-4082
Email: samantha.chaifetz@dlapiper.com

*Attorneys for Defendants Byblos Bank
SAL, Bank of Beirut and the Arab
Countries SAL, and Bank of Beirut s.a.l.*

ASHCROFT LAW FIRM, LLC

By: */s/ Michael J. Sullivan*
Michael J. Sullivan
Brian J. Leske
Ashcroft Law Firm, LLC
200 State Street, 7th Floor
Boston, MA 02109

Email: mhanchet@mayerbrown.com
Email: rhamburg@mayerbrown.com
Email: bbright@mayerbrown.com
Email: wsuflas@mayerbrown.com

*Attorneys for Defendant Banque-Libano
Française SAL*

SQUIRE PATTON BOGGS (US) LLP

By: */s/ Gassan A. Baloul*
Gassan A. Baloul
Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
202-457-6155
Email: gassan.baloul@squirepb.com
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants MEAB Bank
s.a.l., Fenicia Bank S.A.L., and LGB Bank
s.a.l.*

617-573-9400
Email: msullivan@ashcroftlawfirm.com
Email: bleske@ashcroftlawfirm.com

*Attorneys for Defendant Société Générale*
*de Banque au Liban S.A.L.*