# Exhibit A



190 Moore Street, Suite 272, Hackensack, New Jersey 07601
T: 201 265 6400 F: 201 265 0303

1441 Broadway, New York, New York 10018
T: 212 354 0111
www.osenlaw.com

May 11, 2025

**VIA ECF**
Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

  Re: *Bartlett, et al. v. Société Générale de Banque au Liban, et al.*, No. 19-cv-00007

Dear Magistrate Judge Merkl:

  Plaintiffs respectfully write to briefly clarify two significant issues Defendants raised with the Court *for the first time* in their responsive letter brief, ECF No. 464.

  ***First,*** Defendants wrote:

> Plaintiffs' latest proposal, among other things, unjustifiably adds 333 names to their December 18 proposal and expands the relevant time period for certain alleged customers. *See* [Ex. A to Plaintiffs' April 9 brief]. By blindsiding the Banks with their new proposal (they did not even provide a courtesy redline), Plaintiffs have also violated Rule 3 of this Court's Individual Rules & Practices requiring that the parties meet and confer "in a good faith effort to resolve disputes."

Defs.' Resp. Ltr. at 1.

  Upon receiving Defendants' responsive letter brief, Plaintiffs reviewed their December 18 proposal and discovered that, due to a technical error in converting the excel file listing the Hezbollah-affiliated persons and entities detailed in the Third Amended Complaint ("TAC") into a PDF, the lists of *entities* (which followed the list of *individuals*) were omitted. Plaintiffs' counsel did not realize this conversion error; apparently neither did Defendants' counsel, because the parties subsequently met and conferred and extensively discussed Plaintiffs' requests for individuals *and* entities. Accordingly, Defendants' own counterproposal included many of the entities inadvertently omitted from Plaintiffs' December 18 proposal, ECF No. 463-2—as did the Court's First Production Order, ECF No. 328.[1] Plaintiffs never detected the December 18 omission.

  Defendants know full well that the omission consisted of the lists of entities and, given the parties' communications, they almost certainly realized that it was inadvertent. The December 18 proposal itself states that it includes "persons and entities," ECF No. 463-1, ¶¶ 2-11 (the appendices' headers also state "Name of Persons/Entities" on every page), as did Plaintiffs' cover email. Plaintiffs' subsequent proposed compromise (following a meet and confer) incorporated by reference "the names of individuals *and entities* identified in the two appendices … we circulated

---

[1] Plaintiffs consistently emphasized to defense counsel that they sought records limited to the individuals and entities listed in the TAC. The parties' disputes centered on Defendants' insistence that they should only be required to search names that Plaintiffs had already identified as the specific customers of particular Defendant banks and that the parameters of the documents to be produced should be *less* specific than those set forth in Plaintiffs' proposal.

to you on December 18, 2024." ECF No. 463-3 at 2 (emphasis added). Defendants' response to that proposed compromise acknowledged that Plaintiffs asked them to search for "hundreds of additional individuals *or entities*." ECF No. 463-4 at 1 (emphasis added).

It is therefore inconceivable that Defendants genuinely believe that Plaintiffs' inadvertent failure to attach the entities lists in the December 18 transmission indicated that Plaintiffs no longer sought records for any entities, including the entities listed in the Court's First Production Order, or the hundreds of Hezbollah entities described in the TAC (including such Specially Designated Global Terrorist entities like the Martyrs Foundation, the Islamic Resistance Support Organization and Al Qard al Hassan, which are a central focus of the TAC)—and all while both sides were consistently referring to searches for individuals *and entities*.

Even if Defendants, like Plaintiffs' counsel, failed to discover the inadvertent omission of the entities list in the December 18 proposal until after they received the Proposed Discovery Order on April 9, they could have promptly discussed the issue with Plaintiffs. Instead, Defendants waited until filing their responsive brief, in which they accused Plaintiffs of "violating" the Court's rules, ostensibly suggesting that Plaintiffs deliberately omitted all 333 entities as a strategic ploy to "blindside" Defendants with them. That is manifestly not the case.

*Second,* Defendants wrote:

> The First PO included two annexes: Annex A, covering January 1, 2003, through December 31, 2011, and Annex B, covering January 1, 2012, through December 31, 2012. The Court specifically included Annex B to cover the year immediately following the attacks, providing Plaintiffs with additional discovery for a limited set of customers and records "relevant to evaluating Defendants' state of mind." *See* ECF 320 at 17.
>
> Plaintiffs now propose changing the start date of Annex B to January 1, 2003, a change that would upend the framework the Banks have adhered to when searching for, collecting, and reviewing records. To downplay the significance of their proposed change, Plaintiffs have sought to make the annexes appear shorter by removing alleged customers listed in Annex B from Annex A, thereby giving the false impression that their changes are more reasonable than they actually are. Plaintiffs also seek to expand the relevant time period for certain customers already listed in the First PO's Annex A by moving numerous names to the expanded Annex B without any stated justification.

Defs.' Resp. Ltr. at 5.[2]

This, too, is incorrect. As stated in Plaintiffs' Opening Letter and as previously discussed with Defendants, the Proposed Discovery Order *only* adds the names of additional Hezbollah individuals and entities listed in the TAC. Full stop. It does not "upend" any framework. It uses the same time periods as the First Production Order and is very similar to the version Plaintiffs previously proposed to Defendants (but with the entities correctly listed)—it has only been *reorganized* and simplified in form.

---

[2] In the iterations of the proposed and as-entered discovery orders, the lists of names were variously referred to as "Appendices A and B," "Annexes A and B," and "Exhibits 1 and 2"—but each followed essentially the same structure: the first list delineated potential Defendant customers detailed in the complaint for the 2003-2011 relevant period, and the second list delineated SDGTs and accounts migrating from LCB for an extended time period.

In Plaintiffs' First RFP, Appendix A ran from 1/1/2003 through 12/31/2011; Appendix B ran from 1/1/2012 through 12/31/2021 and was essentially a *subset* of the names that appeared in Appendix A (with minor exceptions for reasons immaterial here). This is true for the Court's First Production Order as well, although that order limited the end date for Appendix B to 12/31/2012 instead of 2021. *See* ECF No. 320 at 17; ECF No. 328. The First Production Order therefore required Defendants to cross-check Appendix B against Appendix A to determine whether they needed to produce for an additional year *for that subset of Appendix A* names.

In the Proposed Discovery Order, Plaintiffs merely streamlined the presentation by de-duplicating the names from Appendix A, thereby obviating the need to cross-check the appendices. **As before**, all names have the same start date and, **as before**, Appendix B extends the search for SDGTs and accounts migrated from LCB through 12/31/2012, consistent with the Court's March 31, 2023, Order. This "deduping" process was intended to simplify and clarify what records should be produced. Plaintiffs have not "sought to make the annexes appear shorter by removing alleged customers listed in Annex B from Annex A" to give the Court a "false impression," nor are they obligated to pointlessly repeat names—the content is the same and Plaintiffs *gave the Court the total number of unique names in the Proposed Discovery Order:* **739**. ECF No. 462 at 2, 3, 4, 5.

Defendants appear to be asserting that the Court only permitted discovery for the names on Appendix B for the year 2012, and not for the years 2003-2011. But the March 31, 2023, Order did not mean to exclude discovery from the 2003-2011 period for the Exhibit B names. Those names are "(1) Hezbollah-affiliated customers whose accounts migrated from [LCB] after its collapse and (2) U.S. government-designated SDGTs affiliated with Hezbollah," ECF No. 320 at 17. These names are not relevant *solely* to the year 2012,[3] which is why, as Defendants know, they were initially repeated on both appendices—an "overlap" the Court noted, *Id.* at 10.

In sum, Defendants have transformed (1) an obvious (if previously unnoticed) transmission error made five months ago (which Defendants never raised with Plaintiffs' counsel) and (2) Plaintiffs' effort to simplify the presentation (but not to alter the substance) of the Proposed Discovery Order into baseless accusations that Plaintiffs have violated Court rules, "blindsided" Defendants, and tried to give the Court a "false impression." Whatever the Court's view may be concerning the proper scope of discovery, the Proposed Discovery Order is entirely consistent with Plaintiffs' position throughout the meet and confer process and introduces no new concepts, categories, or time frames not previously discussed with the Court or Defendants.

Respectfully submitted,

/s/ Michael Radine

cc:     All Counsel

---

[3] As Defendants themselves acknowledged, the migration may have begun as early as late summer 2011, not 2012, ECF No. 320 at 16 n.14, and included migrations of balances to *pre-existing accounts* at certain Defendants, as shown in the record. *See, e.g.*, TAC ¶¶ 766, 846, 1051 n.104, 1053. *See also* ECF No. 320 at 17 (extending the Exhibit 2 period "on the basis of the current record"). SDGTs are, of course, not solely limited in relevance to the year 2012. Defendants raise Rami Kamil Ya'qub Baqir's placement on Appendix B, Defs.' Resp. Ltr. at 5—he is an SDGT.