UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROBERT BARTLETT, et al.,

                Plaintiffs,                NOT FOR PUBLICATION
                                                  **MEMORANDUM & ORDER**
   -against-                          19-CV-00007 (CBA) (TAM)

SOCIÉTÉ GÉNÉRALE DE BANQUE AU
LIBAN SAL, et al.,

                Defendants.
-------------------------------------------------------x
**AMON, United States District Judge:**

      Plaintiffs brought this case under the Anti-Terrorism Act ("ATA"), as amended by the Justice Against Sponsors of Terrorism Act ("JASTA"), against a group of Lebanese banking institutions. After proceeding into liquidation and receivership, Defendant Jammal Trust Bank ("JTB") moved to dismiss the suit against it on the ground that it possessed foreign sovereign immunity. (ECF Docket Entry ("D.E.") # 182 ("Def. Mem.").)[1] Before me is JTB's renewed motion to dismiss the case on the grounds that it is entitled to foreign sovereign immunity. For the reasons set forth below, JTB's renewed motion is denied.

## BACKGROUND

      Plaintiffs seek damages pursuant to the ATA, 18 U.S.C. § 2333, for Defendants' alleged aiding and abetting of terrorist attacks in Iraq. I have discussed the substance of their allegations in prior opinions. (See D.E. ## 164; 221.) Approximately nine months after Plaintiffs filed their complaint, the United States deemed JTB a Specially Designated Global Terrorist ("SDGT"). As a result, the Banque du Liban ("BDL"), Lebanon's central bank and a public entity established

---

[1] On November 25, 2020, I granted in part and denied in part a motion to dismiss brought by all Defendants for lack of personal jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). (See D.E. # 164.)

1

under Lebanese law, froze JTB's assets and liquidated its operations. JTB was placed in receivership pursuant to Article 17 of Law 110 of Lebanese law. BDL confirmed a liquidator, Dr. Baasiri ("Liquidator"),[2] who is statutorily charged with overseeing JTB's liquidation.

JTB and the Liquidator subsequently moved to substitute the Liquidator for JTB or, in the alternative, for the Liquidator to intervene, and for dismissal based on redressability, sovereign immunity, and international comity. (See generally Def. Mem.) On August 6, 2021, I granted the motion to intervene but denied the motion to substitute and motion to dismiss. (D.E. # 221 ("M&O") 12.) In denying the motion to substitute, I determined that regardless of whether a sufficient transfer of interest had occurred, the primary consideration—whether substitution would expedite and simplify the action—militated in favor of denial. (Id. at 2-3.) I also denied JTB's motion to dismiss, in part because JTB was not an agency or instrumentality at the time Plaintiffs filed suit and therefore was not entitled to sovereign immunity under the Foreign Sovereign Immunities Act ("FSIA"). (Id. at 9.)

JTB appealed my decision. The Second Circuit vacated my denial of JTB's motion to dismiss, finding that immunity may attach when a defendant becomes an instrumentality of a foreign sovereign after a suit is filed, and remanded for a determination of whether JTB is such an instrumentality. Bartlett v. Baasiri, 81 F.4th 28 (2d Cir. 2023). Briefing on that issue was stayed pending certiorari review, (see Text entry dated Nov. 6, 2023), and the Supreme Court denied Plaintiffs' petition for certiorari on April 29, 2024. Bartlett v. Baasiri, 144 S. Ct. 1456 (2023).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of a complaint for "lack of subject-matter jurisdiction." A motion to dismiss based upon the FSIA is considered a motion

---

[2] Magistrate Judge Merkl granted JTB's motion to substitute (D.E. # 422) Dr. Carl Ayoub for Dr. Baasiri as Intervenor-Defendant. (D.E. # 425.)

2

to dismiss under Rule 12(b)(1). Daou v. BLC Bank, S.A.L., No. 20-CV-4438 (DLC), 2021 WL 1338772, at *6 (S.D.N.Y. Apr. 9, 2021) (citation omitted), aff'd, 42 F.4th 120 (2d Cir. 2022).

"A defendant seeking sovereign immunity bears the burden of establishing a prima facie case that it is a foreign sovereign." Pablo Star Ltd. v. Welsh Gov't, 961 F.3d 555, 559-60 (2d Cir. 2020) (citation omitted). Once the defendant "presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." Figueroa v. Ministry for Foreign Affs. of Sweden, 222 F. Supp. 3d 304, 307 (S.D.N.Y. 2016) (quoting Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993)).

Determining whether a plaintiff's "burden is met involves a review of the allegations in the complaint and any undisputed facts, and resolution by the district court of any disputed issues of fact." Pablo Star, 961 F.3d at 560 (citation omitted). At this stage, "the Court generally must accept the material factual allegations in the complaint as true, but does not draw all reasonable inferences in the plaintiff's favor. [And] where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings, such as affidavits, documents, and testimony, to determine whether jurisdiction exists." Pablo Star Ltd. v. Welsh Gov't, 378 F. Supp. 3d 300, 306 (S.D.N.Y. 2019), aff'd, 961 F.3d 555 (2d Cir. 2020) (quotation omitted)

## DISCUSSION

**I.     SOVEREIGN IMMUNITY CLAIM**

The FSIA "is the sole source for subject matter jurisdiction over any action against a foreign state." Kensington Int'l Ltd. v. Itoua, 505 F.3d 147, 153 (2d Cir. 2007) (quotation omitted). "Section 1603(a) of the FSIA provides presumptive immunity for a 'foreign state,' which includes

'an agency or instrumentality of a foreign state,'" Schansman v. Sberbank of Russia PJSC, 128 F.4th 70, 78 (2d Cir. 2025) (quoting 28 U.S.C. § 1603), "unless a specific exception to the FSIA applies," Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek, 600 F.3d 171, 175 (2d Cir. 2010) (citation omitted).

The parties dispute two things: first, whether JTB is an agency or instrumentality of Lebanon under the FSIA, and second, assuming that JTB is an agency or instrumentality, whether the FSIA's commercial activities exception applies. I address each in turn.

### A. JTB Is Not an Agency or Instrumentality of Lebanon

The FSIA defines a "foreign state" expansively to include an "agency or instrumentality," which in turn is defined as an entity:

> (1) which is a separate legal person, corporate or otherwise, and
> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
> (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added). "All three statutory elements must be satisfied to render an entity an agency or instrumentality under the FSIA." Kirschenbaum v. 650 Fifth Ave. & Related Props., 830 F.3d 107, 126 (2d Cir. 2016), abrogated on other grounds by Rubin v. Islamic Republic of Iran, 583 U.S. 202 (2018). The only dispute is whether § 1603(b)(2) is satisfied. Because JTB does not argue that a "majority of [its] shares or other ownership interest is owned by a foreign state or political subdivision thereof," it must instead prove that it is an "organ" of Lebanon.

JTB argues that under the factors set forth in Filler v. Hanvit Bank, 378 F.3d 213 (2d Cir. 2004), it qualifies as an agency or instrumentality of Lebanon. (Oral Arg. Tr. 3-7.) Plaintiffs'

4

primary response is that BDL's involvement in JTB's liquidation does not convert JTB—a private bank—into an agency or instrumentality of Lebanon. (D.E. # 420 ("Pl. Supp. Br.") 2.)

Here, there is no dispute that BDL is an agency or instrumentality of Lebanon.[3] (Pl. Supp. Br. 1, 4; Def. Supp. Br. 4.); see also S & S Mach. Co. v. Masinexportimport, 706 F.2d 411, 414 (2d Cir. 1983) (observing that a central bank is "the paradigm of a state agency or instrumentality"); Daou, 2021 WL 1338772, at *6 ("Lebanon's central bank[] is an agency or instrumentality of Lebanon. . . . Accordingly, [it] is presumptively entitled to sovereign immunity . . . ."). JTB also does not argue that prior to entering liquidation it qualified as an agency or instrumentality. The proper inquiry, therefore, is whether a private bank under the control of a foreign state's central bank for the purpose of liquidation is an "organ" of the foreign state. For the reasons set forth below, I find that JTB is not an agency or instrumentality of Lebanon.

To determine whether an entity is an "organ" of a foreign state, the Second Circuit set forth five factors to consider:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the [foreign] country; and (5) how the entity is treated under foreign state law.

Filler, 378 F.3d at 217 (citation omitted). "No single Filler factor is dispositive or should be given special weight. 'Filler [instead] invites a balancing process, without particular emphasis on any given factor and without requiring that every factor weigh in favor of, or against, the entity claiming FSIA immunity.'" Qatar v. First Abu Dhabi Bank PJSC, 432 F. Supp. 3d 401, 408 (S.D.N.Y. 2020) (quoting In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d 71, 86 (2d Cir. 2008),

---

[3] The parties also do not dispute that the Liquidator, acting as BDL's agent or appointee, enjoys the same status as BDL. (Pl. Supp. Br. 1.)

5

abrogated on other grounds by, Samantar v. Yousuf, 560 U.S. 305 (2010)). Further, I am not constrained by the Filler factors; instead, these factors are "criteria," see In re Terrorist Attacks on Sept. 11, 2001, 538 F.3d at 85, and the Second Circuit has recognized that a district court may account for other considerations, First Abu Dhabi Bank, 432 F. Supp. 3d at 412.

As an initial matter, neither party applies the Filler factors in their briefings in a manner that squarely addresses the relevant inquiry. JTB applies the factors only to BDL, even though JTB still exists as a private bank. And Plaintiff applies the factors only to JTB, even though BDL exercises control over JTB's assets and operations. At oral argument, for the first time, JTB argued that the Filler factors, as applied to it, militated in favor of finding that it is an organ of Lebanon. (Oral Arg. Tr. 3-7.) On balance, I find that JTB has not provided sufficient evidence to satisfy four of the Filler factors, and, therefore, JTB failed to establish that it is an organ of Lebanon.

First, the "national purpose" factor asks whether the foreign state created the alleged organ for a national purpose. When considering this factor, courts look to whether a bank was "formed by statute" or by "presidential decree," Filler, 378 F.3d at 217, and whether the foreign government has "entrusted" the entity "with the central planning and management of [a national] industry," Corporación Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploración Y Producción, 832 F.3d 92, 116 (2d Cir. 2016) (Winter, J., concurring) (citation omitted). A bank is more likely to be an organ if "it performs functions traditionally performed by the government [such as] protecting depositors and promoting financial stability . . . ." Filler, 378 F.3d at 217.

Here, it is undisputed that JTB was created as a commercial, private bank. (Liquidator Decl. ¶¶ 11, 13-14 (D.E. # 183)); see also, e.g., First Abu Dhabi Bank, 432 F. Supp. 3d at 409 (national purpose factor not met where the defendant banks were "not formed by statute or presidential decrees . . .[and] were also not created to serve a governmental purpose"); cf. Murphy

6

v. Korea Asset Mgmt. Corp., 421 F. Supp. 2d 627, 642 (S.D.N.Y. 2005) (national purpose factor met because it was created by the Korean government "for a quintessential government purpose"), aff'd, 190 F. App'x 43 (2d Cir. 2006). JTB is also not entrusted "with the central planning and management of [a national] industry." Corporación Mexicana, 832 F.3d at 116 (Winter, J., concurring) (citation omitted).

 Despite this, JTB claims that this factor is met because upon entering liquidation, its primary purpose changed to protecting its depositors and promoting stability for Lebanon's financial system. (Oral Arg. Tr. 3.) Although I am mindful that this factor "should not be applied so mechanically as to ignore the possibility that a foreign state later may acquire an initially private company and use it for government purposes," USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 210 (3d Cir. 2003), JTB cites no caselaw that supports finding that a private bank's liquidation sufficiently serves a national purpose. Moreover, JTB itself is not protecting depositors and promoting financial stability; instead, it is BDL and the Liquidator that are effectuating these purported purposes. Indeed, this is the reason that the "paradigmatic example of an organ is a central bank," not a private bank like JTB. Scheidemann v. Qatar Football Ass'n, No. 04-CV-3432 (LAP), 2008 WL 144846, at *3 (S.D.N.Y. Jan. 15, 2008). Accordingly, this factor weighs against finding organ status.

 Second, the "supervision" factor asks whether the foreign state actively supervises the alleged organ. "[A] foreign state actively supervises an organ when it appoints the organ's key officials and regulates some of the activities the organ can undertake." Eur. Cmty. v. RJR Nabisco, Inc., 764 F.3d 129, 145 (2d Cir. 2014), rev'd on other grounds, 579 U.S. 325 (2016); see also In re Aluminum Warehousing Antitrust Litig., No. 13-MD-2481 (KBF), 2014 WL 4211353, at *13

(S.D.N.Y. Aug. 25, 2014) (active supervision includes "the review of an entity's decisions and actions").

Here, the Liquidator is statutorily charged with overseeing JTB's liquidation under BDL's supervision and control. (Liquidator Decl. ¶¶ 2, 26, 46, 48.) BDL is therefore in charge of appointing key officials and disposing of JTB's remaining assets. See Peninsula Asset Mgmt. (Cayman) Ltd. v. Hankook Tire Co., 476 F.3d 140, 143 (2d Cir. 2007) (active supervision met because foreign government appointed the entity's governor and controlled its actions through an agency). Further, as a condition of approving JTB's liquidation, BDL required that JTB stop "accepting deposits, issuing loans, and otherwise operate as a bank." (Liquidator Decl. ¶ 45.) Thus, this factor favors finding organ status.

Third, the "public employees" factor asks whether the foreign state requires the hiring of public employees and pays their salaries. JTB contends that this factor weighs in its favor because the Liquidator now pays JTB's employees. (Oral Arg. Tr. 4) (citing Liquidator Decl. ¶ 51.) However, it is not clear whether such payments are paid by Lebanon. In pertinent part, the Liquidator states that he is "required by Lebanese law to compensate JTB's employees . . . [and that] JTB's assets will also fund the administrative expenses of the liquidation." (Liquidator Decl. ¶ 51.) From this, it is unclear whether the Liquidator is using JTB's assets to pay JTB's employees, or a separate government fund. Even with this ambiguity, JTB does not offer any evidence that Lebanon requires that it "must hire employees that are paid by the government." Murphy, 421 F. Supp. 2d at 644 (emphasis omitted).[4] Accordingly, this factor weighs against organ status.

Fourth, the "exclusive rights" factor asks whether the entity holds some exclusive right in its home country. JTB has not put forth adequate information showing how it enjoys, if at all,

---

[4] Indeed, JTB's counsel conceded that there is no "information in the record" as to whether JTB is required to hire and pay public employees. (Oral. Arg. Tr. 5:2-3.)

8

exclusive rights in Lebanon. Indeed, JTB conceded that this factor does not weigh in its favor. (Oral Arg. Tr. 5:22-25.) Accordingly, this factor also militates against organ status.

Fifth, I must consider how the entity is treated under foreign state law. JTB argues that because its bank registration number was cancelled, that its equity holders will not receive any equity back, and that the National Institute for the Guarantee of Deposits ("NIGD") put in money to guaranty JTB's deposits, this factor should weigh in its favor. (Oral Arg. Tr. 6.) Such treatment, however, does not rise to the level of "special privileges" under foreign law that courts have considered probative. Cf. Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087, 1101 (9th Cir. 2008) ("[N]ot pay[ing] federal or provincial income tax . . . is a special privilege under Canadian law, and it likely amounts to substantial financial support."). Nor has JTB proffered evidence that Lebanon "informed the State Department and the district court that it treats [JTB] as a government entity." Peninsula Asset Mgmt., 476 F.3d at 143 (finding this fact probative of how foreign law treats an entity). Accordingly, this factor does not militate in favor of finding organ status.

On balance, the Filler factors do not support finding that JTB is entitled to presumptive immunity under the FSIA. JTB did not meet its burden of production to show that Lebanon created it to serve a national purpose, requires it to hire public employees, grants it exclusive rights, or treats it preferably.[5]

### B. Even if the Court Considers JTB's Real Party in Interest Argument, JTB is Not an Organ

---

[5] JTB's counsel also argued that the "potential interference with [Lebanon's] sovereign interests" militates in favor of finding organ status. (Oral Arg. Tr. 6:15-20.) Put differently, JTB argues that international comity warrants dismissal. However, I previously denied a motion to dismiss JTB from this case on comity grounds, (M&O 19-24), and my reasoning remains unchanged.

JTB also asks me to consider it an "organ" because it claims BDL and the Liquidator are the real parties in interest. (D.E. # 419 ("Def. Supp. Br.") 5; Oral Arg. Tr. 5:15-17.) Although the Filler factors weigh against finding organ status, as noted above, these factors are non-exhaustive criteria rather than "necessary conditions for an entity to be an organ." First Abu Dhabi Bank, 432 F. Supp. 3d at 412. Even looking beyond the Filler factors, however, JTB is not an organ of Lebanon.

According to JTB, BDL's control over its assets and decision-making makes BDL and the Liquidator the real parties in interest for purposes of analyzing jurisdiction under the FSIA. (Def. Supp. Br. 5-6.) And because BDL and the Liquidator are organs of Lebanon, that means that JTB is, too.

In support, JTB relies on the Second Circuit's decision in Finanz AG Zurich v. Banco Economico S.A., 192 F.3d 240 (2d Cir. 1999). In that case, the Second Circuit determined that removal jurisdiction was proper in a breach of contract suit against a private Brazilian bank that was placed into liquidation by Brazil's central bank.[6] There, the plaintiffs sought to recover on promissory notes guaranteed by a private bank in Brazil. Id. at 244. Prior to the maturity date of the promissory notes, however, Brazil's central bank placed the defendant bank into liquidation and appointed a liquidator to "act in the interest of public economy, private savings, and national security when fulfilling his duties." Id. at 245 (citation omitted). The court reasoned that based upon this record the liquidator was the "real party in interest," and because the liquidator is an "'agency or instrumentality' of [Brazil] as defined in 28 U.S.C. § 1603(b)," the district court properly exercised jurisdiction. Id. at 245-46.

---

[6] The court ultimately affirmed the district court's dismissal based on international comity. Finanz, 192 F.3d at 250.

JTB appears to suggest that <u>Finanz</u> stands for the proposition that a private defendant bank assumes the organ status of the foreign state agency overseeing its liquidation. In other words, JTB claims it is entitled to derivative sovereign immunity. However, I do not read <u>Finanz</u> as expansively as JTB does. Indeed, <u>Finanz</u> does not address immunity at all. Nor has JTB cited a single case in the intervening 26 years that relies on <u>Finanz</u> for such a proposition. Accordingly, I decline to find that JTB is an organ of Lebanon based upon the Liquidators supervision of its liquidation.[7]

Moreover, JTB appears to have repackaged its real party in interest argument to fit the issue on remand: whether JTB is now currently an agency or instrumentality of Lebanon. In its initial motion to dismiss papers, JTB argued that substitution was proper under Federal Rules of Civil Procedure Rule 25(c) because liquidators are "considered to be the 'real part[ies] in interest' in actions against the entity undergoing liquidation." (Def. Mem. 3-6 (citing <u>Finanz</u>, 192 F.3d at 245).) In support, JTB argued that substitution should be granted because the Liquidator would be able to "more direct[ly] and accurate[ly]" raise sovereign immunity defenses than it could. (Def. Mem. 6.) I declined to decide whether "the requisite transfer of interest had occurred because I agree[d] with Plaintiffs' further contention that substitution here would complicate the proceedings and unfairly frustrate Plaintiffs' ability to obtain a judgment against the party they properly sued: JTB." (M&O 4.) I see no reason to reconsider JTB's real party in interest argument because my reasoning remains unchanged: that substitution is improper because the "primary consideration in deciding a motion pursuant to Rule 25(c) is whether substitution will expedite and

---

[7] To the extent JTB argues that my analysis would change under the ATA's sovereign immunity provision (Def. Mem. 32) the Second Circuit clearly held that the FSIA governs all sovereign immunity determinations in civil cases. <u>Schansman</u>, 128 F.4th at 88 ("[W]e hold that a 'foreign state' for purposes of the ATA Immunity Provision, 18 U.S.C. § 2337(2), is any 'foreign state' under the FSIA Definitional Provision, 28 U.S.C. § 1603, which 'includes . . . an agency or instrumentality of a foreign state.'") Accordingly, this argument fails.

11

simplify the action." (Id. (citing Advanced Mktg. Grp., Inc., v. Bus. Payment Sys., LLC, 269 F.R.D. 355, 359 (S.D.N.Y. 2010)).) Further, JTB does not explain how, if at all, the Liquidator has any control over JTB's frozen New York assets. Indeed, as I discussed in my previous M&O, the disposition of these assets is "within the discretion of United States government officials," not the Liquidator. (Id. at 11.)

Last, to the extent JTB seeks derivative immunity based on BDL and the Liquidator's status, that argument is unpersuasive for the reasons explained above.

### C. Even if JTB is an Agency or Instrumentality of Lebanon, the Commercial-Activity Exception to the FSIA Applies

Plaintiffs argue that, even if JTB is presumptively immune under the FSIA, the FSIA's commercial activities exception applies. See 28 U.S.C § 1605(a)(2). Plaintiffs contend that JTB's alleged terrorism financing in support of Hezbollah and its affiliates used correspondent accounts in New York. Such conduct, Plaintiffs argue, constitutes commercial conduct in the United States, thus abrogating sovereign immunity. JTB first raises two procedural attacks on Plaintiffs' invocation of the exception, namely, that the issue is beyond the scope of the remand and that it has been forfeited. I address each in turn.

First, JTB claims that the scope of the Second Circuit's remand mandates that I must only determine whether JTB is an instrumentality and ignore whether any exceptions apply. (D.E. # 459 ("Def. Supp. Ltr.") 1-2.) This argument fails. In determining whether JTB is an agency or instrumentality, the FSIA directs that "[a] foreign state shall not be immune from the jurisdiction of courts of the United States" in any case where an enumerated exception applies. 28 U.S.C. § 1605(a). Indeed, these "exceptions are central to the [FSIA's] functioning." Republic of Austria v. Altmann, 541 U.S. 677, 691 (2004) (citation omitted). Thus, determining whether an exception

12

to the FSIA applies is precisely within the "spirit of the [Second Circuit's] mandate." Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 175 (2d Cir. 2014) (citation omitted).[8]

JTB next argues that Plaintiff forfeited any argument regarding the commercial activities exception because Plaintiffs raised the argument for the first time in a supplemental brief. (Def. Supp. Ltr. 1.)  JTB is correct that Plaintiff did not raise this exception in its opposition to JTB's motion to dismiss (see D.E. # 187 ("Pl. Opp.")); instead, Plaintiff first raised this exception in response to my order for supplemental briefing on the question of whether JTB was an instrumentality of a foreign sovereign.  Although arguments raised for the first time in a reply brief—and in this case a supplemental brief—are generally deemed waived, "the Second Circuit has made it abundantly clear that a district court has discretion to consider a belatedly-raised argument." Am. Hotel Int'l Grp., Inc. v. OneBeacon Ins. Co., 611 F. Supp. 2d 373, 375 (S.D.N.Y. 2009) (emphasis in original) (citing Ruggiero v. Warner–Lambert Co., 424 F.3d 249 (2d Cir. 2005)), aff'd, 374 F. App'x 71 (2d Cir. 2010).  Accordingly, in the interest of a full resolution on the issue of JTB's sovereign immunity—and because JTB was given the opportunity to respond to Plaintiffs' commercial activities exception argument in a later filed supplemental letter, (Def. Supp. Ltr. 2-3), and at oral argument before me on July 14, 2025—I exercise my discretion to consider Plaintiffs' argument on its merits.

As noted above, Plaintiff bears the burden of providing evidence to show that an exception to the FSIA applies.  Figueroa, 222 F. Supp. 3d at 307 (quotation omitted).  Once "the plaintiff has met its initial burden of production, the defendant bears the burden of proving, by a preponderance

---

[8] I find unpersuasive JTB's argument that the Second Circuit "implicitly" rejected Plaintiffs' position that the commercial activities exception applies.  (Def. Supp. Ltr. 3 (citing Bartlett, 81 F.4th at 36).)  The Second Circuit rejected Plaintiffs' concern that post-filing changes in sovereign status would encourage gamesmanship as applied to the facts in this case because JTB was forced into "liquidation and public receivership" because of its designation as an SDGT.  Bartlett, 81 F.4th at 36-37.  It does not follow that the lack of a gamesmanship concern implicitly rejects Plaintiffs' position that the commercial activities exception applies.

13

of the evidence, that the alleged exception does not apply." Pablo Star, 961 F.3d at 560 (citation omitted).

The FSIA creates certain exceptions to the general presumption of sovereign immunity. As relevant here, "the commercial activities exception" to the FSIA abrogates sovereign immunity where a claim is:

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States[.]

28 U.S.C. § 1605(a)(2). "A plaintiff need only show that one of these conditions is met for the commercial activities exception to apply." Kensington, 505 F.3d at 154. Specifically, Plaintiffs argue that their claim against JTB is "based upon a commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). To invoke that part of the commercial activities exception, Plaintiffs must establish that (1) JTB engaged in a "commercial activity," and (2) the action is "based upon" that activity. Kensington, 505 F.3d at 154. I address each element in turn.

Section 1603(d) defines "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act." 28 U.S.C. § 1603(d). The "commercial character" of a defendant's conduct is "determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." Id. "A state engages in commercial activity where it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns. In other words, when it acts, not as a regulator of a market, but in the manner of a private player within it." Schansman, 128 F.4th at 81 (citation modified).

14

Here, Plaintiffs alleged that JTB used correspondent banks for U.S. dollar-clearing transactions on behalf of Hezbollah.[9] (D.E. # 353 ("TAC") ¶¶ 292, 298-301.) This is certainly an "activity in which any commercial bank could engage." Schansman, 128 F.4th at 82 (quotation omitted).

JTB does not dispute that such activity qualifies as a "commercial activity"; instead, it argues because it "effectively no longer exists" and is under BDL's control, I must look to its current activities—its liquidation proceedings—to determine whether the commercial activities exception applies. (Def. Supp. Ltr. 2.) In other words, JTB argues that I must ignore its activities alleged in the complaint because its alleged financial assistance to Hezbollah cannot be imputed to BDL and the Liquidator. (Id.) In support, JTB cites NYSA-ILA Pension Tr. Fund By & Through Bowers v. Garuda Indonesia, 7 F.3d 35, 38 (2d Cir. 1993). There, the Second Circuit affirmed the district court's conclusion that separate instrumentalities of a foreign state are distinct and therefore the commercial activities of one cannot be imputed to the other. Unlike there, JTB still exists as a private bank under the supervision of BDL, not as a separate instrumentality of Lebanon. It does not follow that BDL's supervision of JTB's liquidation extinguishes JTB's alleged commercial activities for purposes of the commercial activities analysis. See, e.g, Schansman, 128 F.4th at 82-84 (applying the commercial activities exception to a private defendant bank's suit-related conduct, not the activities of the foreign agency that subsequently acquired majority ownership after suit was filed). Thus, I find that JTB's commercial activity is the relevant activity and satisfies the "commercial activity" requirement.

---

[9] "'Correspondent accounts' enable financial institutions to access financial services in different jurisdictions and provide international payment services for their customers. [And] '[c]learing' is the process of transmitting, reconciling, and, in some cases, confirming dollar-denominated electronic funds transfer transactions prior to settlement." (D.E. # 164 at 4.)

Next, to invoke the commercial activities exception, Plaintiffs must show that their claim is "based upon" JTB's commercial activity "carried on in the United States." 28 U.S.C. § 1605(a)(2). A suit is not "based upon" an act simply because that act constitutes a "single element of a claim." OBB Personenverkehr AG v. Sachs, 577 U.S. 27, 34 (2015). Instead, "[a]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." Schansman, 128 F.4th at 82 (quoting Sachs, 577 U.S. at 35). "Based upon," therefore requires a "significant nexus" between the commercial activity and the plaintiff's cause of action. Kensington Int'l, 505 F.3d at 155 (quoting Reiss v. Société Centrale Du Groupe Des Assurances Nationales, 235 F.3d 738, 747 (2d Cir. 2000)).

JTB argues that Plaintiffs' claim is not "based upon" its New York commercial activities; instead, it is based upon JTB's activities that "occurred primarily outside of the United States." (Oral Arg. Tr. 8:13-17 (discussing TAC ¶ 6075 ("Each Defendant's activities occurred primarily outside the United States.")).) These activities included JTB's participation in "The System," which Plaintiffs allege is a criminal money laundering enterprise involving much of Lebanon's banking sector. (TAC ¶¶ 42-43.) From this, JTB claims that because its participation in The System occurred primarily outside the United States, its New York activities cannot be what Plaintiffs' claim is "based upon." (Oral Arg. Tr. 8-9.)

JTB's argument, however, cherry-picks one allegation from the TAC that does not capture the "core" of Plaintiffs' suit. See Sachs, 577 U.S. at 35 ("zero[ing] in on the core of" a plaintiff's suit). In this case, the core of Plaintiffs' suit is Defendants' alleged terrorism financing, which depended upon access to the U.S. financial system.

Here, Plaintiffs allege that JTB participated in The System which "launder[ed] billions of U.S. dollars annually," "provide[d] Hezbollah with financial services and resources, including, but

16

not limited to, access to the U.S. financial system through their respective correspondent bank accounts in New York," which "facilitate[d] Hezbollah's terrorist activities[.]" (TAC ¶ 12.) Specifically, Plaintiffs allege that JTB provided Hezbollah and its affiliates with substantial assistance by moving more than $15 million dollars through the United States, providing critical access to the U.S. financial system. (Id. ¶¶ 301, 2121, 2135.) Indeed, JTB allegedly "primarily" settled its foreign exchange transactions through its correspondent accounts in New York,[10] which were "deliberately" used on an "ongoing and recurring basis" on Hezbollah's behalf. (Id. ¶¶ 301, 2135.) JTB's alleged financial assistance, therefore, allowed Hezbollah to access funding that ultimately enabled the terrorist attacks that injured Plaintiffs.

The Second Circuit's recent decision in Schansman is instructive and JTB's attempt to distinguish it is unpersuasive. In Schansman, the Second Circuit affirmed the district court's conclusion that despite the defendant bank's presumptive immunity under the FSIA, it was nonetheless subject to the commercial activities exception. 128 F.4th at 91. The court agreed with the district court's determination that the gravamen of the plaintiff's suit was the defendant bank's "provi[sion of] material support and financing to the DPR [Donetsk People's Republic], in part by operating correspondent accounts in New York." Id. at 78, 84 (citing Schansman v. Sberbank of Russia PJSC, No. 1:19-CV-02985 (ALC) (GWG), 2022 WL 17540666, at *5 (S.D.N.Y. Dec. 6, 2022)). The court explained that despite the defendant bank's efforts to "understate[]" the plaintiffs' allegations, its participation in a "large-scale international crowdfunding effort" through "facilitating transfers in the United States" to the terrorist organization is what the plaintiffs' suit is "based upon." Id. at 84.

---

[10] According to the TAC, JTB maintained at least three correspondent accounts in New York. (TAC ¶ 297.)

17

Here, JTB similarly attempts to "understate" Plaintiffs' allegations. JTB claims that this case is based upon "the provision of financial services in Lebanon." (Oral Arg. Tr. 20.) But as in Schansman, Plaintiffs allege that JTB's use of New York correspondent accounts provided Hezbollah and its affiliates with "ongoing" and "recurring" substantial assistance. (TAC ¶¶ 301, 2135.) As such, JTB's "commercial activity of facilitating [the movement of over $15 million] in the United States" to Hezbollah and its affiliated groups is "what this lawsuit is 'based upon.'" Schansman, 128 F.4th at 84.

Accordingly, I find that the above-described conduct—the alleged terrorism financing—constitutes the "gravamen" of the allegations against JTB, and the conduct related to the correspondent bank accounts took place in the United States. Thus, even if the defense of sovereign immunity applied, the commercial activities exception applies in this case, and JTB is thus subject to suit.

## CONCLUSION

For the reasons set forth above, JTB's motion to dismiss is denied.

SO ORDERED.

Dated: August 13, 2025
Brooklyn, New York

s/Carol Bagley Amon
Carol Bagley Amon
United States District Judge