UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

ROBERT BARTLETT, *et al*.,

                         Plaintiffs,

        -against-

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL, *et al*.,

                       Defendants.

---------------------------------------------------------------------x

               **Case No. 19-cv-7 (CBA)(TAM)**

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THEIR FOURTH CLAIM FOR RELIEF (IN LIGHT OF AN INTERVENING CLARIFICATION OF LAW)**

**TABLE OF CONTENTS**

PROCEDURAL BACKGROUND ..................................................................................... 1

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT ................................................................................................................. 4

    I.      SGBL Is Subject to the Court's Personal Jurisdiction as to Plaintiffs' Successor Liability Claim. ....................................................................................................................... 4

    II.    SGBL Has Successor Liability for LCB's Conduct Under the Anti-Terrorism Act ......... 8

        A.    The Anti-Terrorism Act Includes Successor Liability..................................................... 9

        B.    The United States Never Suggested SGBL Had No Successor Liability .................. 14

        C.    Imposing Successor Liability Has Nothing to Do with Extraterritoriality. .............. 15

        D.    Rejecting Successor Liability "Would Be a Truly Unfair Outcome." ....................... 15

CONCLUSION ............................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*,
   944 F. Supp. 240 (S.D.N.Y. 1996) .......................................................................... 13

*Article 13, LLC v. Ponce de Leon Fed. Bank*,
   686 F. Supp. 3d 212 (E.D.N.Y. 2023) ........................................................................ 4

*Bartlett v. Société Générale de Banque au Liban SAL*,
   No. 19-cv-00007 (CBA) (TAM), 2024 LX 115528 (E.D.N.Y. Sept. 18, 2024) ..................... 3, 7

*Bartlett v. Société Générale De Banque Au Liban Sal*,
   No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921
   (E.D.N.Y. Nov. 25, 2020).............................................................................. 1, 2, 5

*Boim v. Holy Land Foundation for Relief & Development*,
   549 F.3d 685 (7th Cir. 2008)............................................................................. 11

*Bonacasa v. Standard Chtd. PLC*,
   No. 22-cv-3320 (ER), 2023 U.S. Dist. LEXIS 38147 (S.D.N.Y. Mar. 7, 2023)......................... 7

*Cent. Bank, N.A. v. First Interstate Bank*, N.A.,
   511 U.S. 164 (1994) ...................................................................................... 10

*Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*,
   786 F. Supp. 867 (C.D. Cal. 1992)........................................................................ 12

*Cont'l Grain Co. v. Pullman Standard, Inc.*,
   690 F. Supp. 628 (N.D. Ill. 1988) ........................................................................ 13

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*,
   3 F.4th 954 (7th Cir. 2021)............................................................................... 10

*Flake v. Schrader-Bridgeport Int'l, Inc.*,
   538 F. App'x 604 (6th Cir. 2013)......................................................................... 12

*In re Safety-Kleen Corp.*,
   380 B.R. 716 (Bankr. D. Del. 2008) ...................................................................... 12

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
   41 N.Y.3d 629 (N.Y. 2024) ......................................................................... 3, 13, 16

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
   67 F.4th 69 (2d Cir. 2023)........................................................................... 2, 3, 15

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
  No. 19-cv-0033 (RJD) (SJB), 2021 U.S. Dist. LEXIS 206270 (E.D.N.Y. Mar. 31, 2021) ........ 2

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
  No. 21-975, 147 F.4th 226, 2025 LX 300268 (2d Cir. 2025) ........................................... *passim*

*Licci v. Lebanese Canadian Bank*,
  732 F.3d 161 (2d Cir. 2013) ...................................................................................... 9

*Linde v. Arab Bank, PLC*,
  882 F.3d 314 (2d Cir. 2018) ..................................................................................... 10

*Linde v. Arab Bank, PLC*,
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) .......................................................................... 11

*Linens of Europe, Inc. v. Best Mfg., Inc.*,
  No. 03-cv-9612 (GEL), 2004 U.S. Dist. LEXIS 18575 (S.D.N.Y. Sept. 16, 2004) ................... 5

*Monterey Bay Military Hous., LLC v. AMBAC Assurance Corp.*,
  531 F. Supp. 3d 673 (S.D.N.Y. 2021) ........................................................................ 13

*Nat'l Council of Resistance of Iran v. Dep't of State*,
  251 F.3d 192 (D.C. Cir. 2001) .................................................................................. 14

*Nat'l Council of Resistance of Iran v. Dep't of State*,
  373 F.3d 152 (D.C. Cir. 2004) .................................................................................. 14

*R.C.M. Exec. Gallery Corp. v. Rols Capital Co.*,
  901 F. Supp. 630 (S.D.N.Y. 1995) ........................................................................ 12, 13

*Rodriguez v. Banco Cent.*,
  777 F. Supp. 1043 (D.P.R. 1991) .............................................................................. 13

*Rodriguez v. Banco Cent.*,
  990 F.2d 7 (1st Cir. 1993) ....................................................................................... 13

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ........................................................................................ 9

*Schansman v. Sberbank of Russia PJSC*,
  128 F.4th 70 (2d Cir. 2025) ....................................................................................... 6

*Shrader v. CSX Transp., Inc.*,
  70 F.3d 255 (2d Cir. 1995) ........................................................................................ 4

*Staub v. Proctor Hosp.*,
  562 U.S. 411 (2011) ............................................................................................... 11

*Town of Lexington v. Pharmacia Corp.*,
No. 12-cv-11645, 2015 U.S. Dist. LEXIS 36815 (D. Mass. Mar. 24, 2015)............................. 8

*Tsareff v. Manweb Servs.*,
794 F.3d 841 (7th Cir. 2015)...................................................................................... 11, 15

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
916 F.3d 143 (2d Cir. 2019) ............................................................................................. 2

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992) ........................................................................................... 4

**Statutes**

18 U.S.C. § 2333(d)(2) ...................................................................................................... 7

**Rules**

Fed. R. Civ. P. 25(a) ....................................................................................................... 10

Fed. R. Civ. P. 25(c) ....................................................................................................... 10

Plaintiffs respectfully request that the Court reconsider its decision dismissing Plaintiffs' Fourth Claim for Relief, which claims that Defendant Société Générale de Banque au Liban SAL ("SGBL") is liable as successor to Defendant Lebanese Canadian Bank ("LCB").

## PROCEDURAL BACKGROUND

Plaintiffs' Fourth Claim for Relief asserts that "Defendant SGBL is liable for Defendant LCB's role in The System as its successor, including as to all of LCB's liabilities." Third Amended Complaint ("TAC") ¶ 6112. As Plaintiffs alleged, when SGBL purchased LCB's business in 2011, SGBL expressly "assume[d] from the Seller [LCB], all of the Seller's Assets and Liabilities…." TAC Exhibit 1, ¶ 2.1. According to the Sale and Purchase Agreement ("SPA"):

> The Assumed Liabilities consist *inter alia* of any and all of the Seller's liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the Seller's Business, all as at the Completion Date.

*Id.* ¶ 2.3. The language is maximally broad—as the Second Circuit noted in reviewing the same SPA, this language denotes SGBL's assumption of LCB's liabilities "without qualification." *Lelchook v. SGBL*, No. 21-975, 147 F.4th 226 (not yet paginated), 2025 LX 300268, at *21-22 (2d Cir. Aug. 11, 2025).[1] In fact, the Circuit observed that "[a]lthough LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects." *Id.* at 38.

This Court previously found that Plaintiffs had "failed to establish a *prima facie* case of personal jurisdiction as to the successor liability claim, which must accordingly be dismissed." *Bartlett v. SGBL*, No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921, at *73 (E.D.N.Y. Nov. 25, 2020). The Court observed that other courts applying New York law have only

---

[1] SGBL has indicated it will seek rehearing from the Second Circuit.

"recognized successor jurisdictional status when the successor corporation absorbs the predecessor corporation as in a merger." *Id.* at *76. The Court then concluded that "[b]ecause SGBL purchased LCB's assets for cash … and did not merge with … LCB's ownership, SGBL did not inherit LCB's jurisdictional status in this forum." *Id.* at *77 (citations omitted).

Precisely the same issue was the subject of an appeal in *Lelchook v. SGBL*, No. 19-cv-0033 (RJD) (SJB) (E.D.N.Y.). In *Lelchook*, the allegations supporting successor liability claims against SGBL were substantially similar to (and indeed drawn from) the *Bartlett* complaint. The plaintiffs made essentially the same argument Plaintiffs did here, that by acquiring all of LCB's liabilities, SGBL inherited its jurisdictional status. The district court adopted this Court's reading of New York law and its application to SGBL's acquisition of LCB: "The transaction between SGBL and LCB does not fall under New York's limited merger exception for successor jurisdiction…." *Lelchook v. SGBL*, No. 19-cv-0033 (RJD) (SJB), 2021 U.S. Dist. LEXIS 206270, at *6-7 (E.D.N.Y. Mar. 31, 2021) (citing *Bartlett*, 2020 U.S. Dist. LEXIS 229921, at *76-77 (E.D.N.Y. Nov. 25, 2020)).

The *Lelchook* plaintiffs appealed (SGBL is the only defendant in that action, so its dismissal resulted in an appealable judgment), "contending that when a successor entity acquires a predecessor's assets and liabilities, it also inevitably acquires the predecessor's jurisdictional status with respect to claims that give rise to those liabilities." *Lelchook v. SGBL*, 67 F.4th 69, 71-72 (2d Cir. 2023). This is the same argument Plaintiffs here made. *See* Pls. Opp. to MTD FAC, ECF No. 142 at 74-75 (arguing that "'in certain circumstances the successor corporation may inherit its predecessor's jurisdictional status,'" "includ[ing] where the successor 'is subject to all the liabilities of the acquired companies,' as SGBL is here, by express agreement") (quoting *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 155-57 (2d Cir. 2019)).

2

The Circuit concluded that this "successor-jurisdiction theory raises an important and unresolved issue under New York law," and certified to the New York Court of Appeals two questions:

> 1. Under New York law, does an entity that acquires all of another entity's liabilities and assets, but does not merge with that entity, inherit the acquired entity's status for purposes of specific personal jurisdiction?
>
> 2. In what circumstances will the acquiring entity be subject to specific personal jurisdiction in New York?

67 F.4th at 71-72.

On April 18, 2024, the Court of Appeals answered the first question in the affirmative and accordingly found answering the second question unnecessary. *Lelchook v. SGBL*, 41 N.Y.3d 629, 631 (N.Y. 2024). It clarified that "where an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction." *Id.* at 638-39.

Plaintiffs raised this decision with this Court during the pendency of Defendants' prior motion to dismiss the TAC. *See* ECF No. 392. At that time, however, the Second Circuit had not yet applied its federal due process analysis to the issue; thus, this Court found "it improvident to revisit my decision on … successor liability at this time." *Bartlett*, 2024 LX 115528, at *62 (E.D.N.Y. Sept. 18, 2024). However, the Court observed that "[t]he [New York] Court of Appeals specifically noted that its holding is contrary to this Court's prior determination of the 'nearly identical' issue." *Id.* (quoting *Lelchook*, 41 N.Y.3d at 635 n.2).

On August 11, 2025, the Second Circuit issued its final decision in the *Lelchook* appeal:

> With the benefit of [the New York Court of Appeals'] decision, we now hold that SGBL is subject to the specific personal jurisdiction of New York courts for purposes of adjudicating the claims presented by Plaintiffs. We further decide that the exercise of that jurisdiction here comports with federal due process principles.

*Lelchook*, 2025 LX 300268, at *4-5.

3

## LEGAL STANDARD

Courts have the "equitable discretion" to reconsider nonfinal orders under Rule 54(b). *Article 13, LLC v. Ponce de Leon Fed. Bank*, 686 F. Supp. 3d 212, 215-16 (E.D.N.Y. 2023) (citation omitted). One of the "major grounds justifying reconsideration" is "an intervening change of controlling law." *Id.* (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)). An intervening change in law is a basis for reconsideration where it "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

## ARGUMENT

### I. SGBL Is Subject to the Court's Personal Jurisdiction as to Plaintiffs' Successor Liability Claim.

The Second Circuit has now fully decided the jurisdictional component of the motion: "SGBL is subject to the specific personal jurisdiction of New York courts for purposes of adjudicating the claims presented by Plaintiffs," and "SGBL's motion to dismiss under Rule 12(b)(2) for want of personal jurisdiction thus fails." *Lelchook*, 2025 LX 300268, at *4-5, *20. There is no meaningful distinction between *Lelchook* and this case as to this personal jurisdiction analysis; as noted above, the New York Court of Appeals found the issues "nearly identical." Even after that court issued its decision, SGBL insisted that this case "involves a vastly different factual scenario than in *Lelchook v. SGBL*," ECF No. 393 at 2, but it could not explain how.[2]

Indeed, SGBL did not suggest it would have any *legal* challenges to the *Lelchook* decisions—instead, it suggested that "*SGBL may convert its facial challenge to a factual challenge in the event constitutional due process does not bar New York's attempt to exercise specific*

---

[2]    *Lelchook* involved plaintiffs injured in Israel and lacks the breadth and detail of allegations in *Bartlett*—but those differences do not help SGBL on this issue.

personal jurisdiction over" it. *Id.* (emphasis added). The "factual challenge" SGBL previously asserted is that it "denied that it acquired *all* the assets of LCB, or that it acquired LCB's money laundering and related liabilities," and that this Court "noted" that SGBL "only acquired LCB's *ordinary* 'Business' liabilities." *Id.* (citing *Bartlett*, 2020 U.S. Dist. LEXIS 229921, at \*74 n.17) (second emphasis added). This is wrong on multiple counts.

*First*, this Court *never* "noted" that SGBL "only acquired LCB's *ordinary* 'Business' liabilities." *Id.* (emphasis added). It simply quoted the SPA as stating "'[t]he Assumed Liabilities consist inter alia of any and all of the Seller's liabilities and/or obligations and/or debts . . . to the extent they relate to the Seller's Business.'" *Id.* (record citation omitted). SGBL slipped the word "ordinary" into the SPA (and this Court's decision) presumably so that it resembles the sales agreement in *Linens of Europe, Inc. v. Best Mfg., Inc.*, No. 03-cv-9612 (GEL), 2004 U.S. Dist. LEXIS 18575, at \*26 (S.D.N.Y. Sept. 16, 2004), which SGBL previously cited. *See* SGBL Supp. Reply, ECF No. 137 at 1 n.1. SGBL argued that in *Linens*, a "contractual assumption of 'routine commercial liability incurred "in the ordinary course of business"' did not include 'tortious liability arising out of unlawful activity.'" *Id.* (quoting *Linens*, 2004 U.S. Dist. LEXIS 18575, at \*26). Thus, if SGBL only acquired LCB's "*ordinary* 'business' liabilities," that could mean it did not acquire LCB's "tortious liability arising out of unlawful activity."

But the Second Circuit found that SGBL's assumption of liabilities was "without qualification." *Supra* at 1. In *Linens*, the purchase agreement at issue was *highly* qualified: it "set[] out four categories of 'Assumed Liabilities' and then expressly exclude[d] other liabilities," and "each category of Assumed Liabilities refer[red] to *routine commercial liability* incurred 'in the ordinary course of business,' not tortious liability arising out of unlawful activity." *Linens*, 2004 U.S. Dist. LEXIS 18575, at \*26 (emphasis added). The SPA here has no limitation to "ordinary

business liabilities" or "routine commercial liabilities" (it did not "expressly exclude other liabilities" at all)—notwithstanding SGBL's attempt to misattribute such a finding to the Court.

SGBL nevertheless argues that the SPA at least limits liabilities "'to the extent they relate to the Seller's Business,'" which it argues "means there are liabilities that are presumably not assumed because they do not relate to LCB's business." SGBL Supp. Reply, ECF. No. 137, at 1 n.1. Thus, according to SGBL, its assumption of LCB's liabilities was not *completely* unqualified. But this does not help SGBL—performing vast banking services for its customers, even criminal ones, "relates" to LCB's "business" as a bank. As this Court recently explained, "alleg[ations] that JTB used correspondent banks for U.S. dollar-clearing transactions on behalf of Hezbollah…. is certainly an 'activity in which any commercial bank could engage.'" Mem. Op., ECF No. 476 at 15 (quoting *Schansman v. Sberbank of Russia PJSC*, 128 F.4th 70, 82 (2d Cir. 2025)). Indeed, it is a lamentable fact that assisting Hezbollah did not just *relate* to LCB's business—it was in LCB's *ordinary course of business*.

**Second**, SGBL's assertion that it had not "acquired *all* the assets of LCB," ECF No. 393 at 2, is irrelevant, even if true. SGBL inherited LCB's jurisdictional status in New York because it acquired LCB's *liabilities*, not its assets, as the Second Circuit made clear: "When a successor company adopts liabilities that are no secret and for which the predecessor has already been subject to public legal battles, the successor has ample notice that it might become liable in any venue where liability accrued." *Lelchook*, 2025 LX 300268, at *29 (internal quotation marks and citation omitted). The acquisition of assets itself is generally insufficient to assume liabilities—its significance to jurisdiction is that SGBL has removed LCB's *assets*, necessary to fulfill any judgment against it, from this Court's jurisdiction.

6

SGBL's reasoning was that because it "declined to assume certain LCB's *customers and accounts*," it only "agreed to purchase some, but not all, of LCB's … liabilities." SGBL Supp. Mem., ECF No. 136-1 at 2-3 (emphasis added). These accounts were certain (but far from all) Hezbollah-affiliated accounts identified in "a compliance process undertaken by independent international compliance experts and a parallel auditing proceeding implemented by SGBL that utilized a scoring methodology to screen LCB's accounts, customers, and operations." *Id.* at 3 (citation omitted).

But, as Plaintiffs have previously explained, declining to "take on" certain *accounts* has no bearing on whether SGBL assumed "any and all of [LCB's] *liabilities*." Pls. Opp. to MTD FAC, ECF No. 142, at 70-71.[3] Those liabilities, including those arising from LCB knowingly assisting Hezbollah, were owned by LCB—they were not owned by the *accounts*. Moreover, deciding not to service certain accounts *going forward* has nothing to do with SGBL's acquiring liability for LCB's *prior* conduct. Under JASTA, "liability accrues when a person 'aids and abets' the act [of international terrorism] 'by knowingly providing substantial assistance.'" *Bonacasa v. Standard Chtd. PLC*, No. 22-cv-3320 (ER), 2023 U.S. Dist. LEXIS 38147, at *20 (S.D.N.Y. Mar. 7, 2023) (quoting 18 U.S.C. § 2333(d)(2)). LCB did that *before* SGBL purchased it.

***Finally,*** SGBL has never seriously suggested there is any other provision of the SPA that in some way supports its argument. SGBL *has* asserted Plaintiffs have only provided "a single (out-of-context and misleading) paragraph" from the SPA, ECF No. 136-1 at 3, but it has never

---

[3]      Not "taking on" accounts simply meant migrating the accounts or their balances to other banks—mostly the other Defendants here—and in some cases, SGBL itself. Plaintiffs alleged that "a subset of the accounts with 'links to Hezbollah' that exhibited 'classic signs of money laundering' migrated to Defendant SGBL and some of the most significant Hezbollah accounts (e.g. for the Martyrs Foundation – Lebanon) never made it on to the official list." TAC ¶ 1653. For example, SGBL *retained* LCB accounts for "U.S. designated entities such as Elissa Holding (SDNTK) and Yousser Company for Finance and Investment (SDGT)." *Id.* ¶ 1668. Taking on these Hezbollah accounts hardly suggests SGBL wanted to avoid benefiting Hezbollah even going forward. Indeed, this Court found that Plaintiffs sufficiently alleged that "SGBL's own actions" aided and abetting Hezbollah terrorism. 2024 LX 115528, at *61.

produced the full agreement, or quoted from it, or even *described* it. Instead, it complained that Plaintiffs are simply "repeating a single paragraph of a complex foreign asset purchase agreement" but "SGBL recognizes that it is not entitled to disprove this allegation at this stage of proceeding – and, for that matter, will not be goaded into doing so by Plaintiffs," SGBL Supp. Reply, ECF No. 137, at 1 n.1, as if two appearances before the Second Circuit and one before the New York Court of Appeals did not merit further exposition of its position.

Indeed, SGBL could have produced affidavits and exhibits in support of a Rule 12(b)(2) motion (or a complete version of a document incorporated by reference to the complaint, as the SPA was). Instead, it chose to produce an affidavit signed by its counsel, attaching two *different* extrinsic documents: "a true and correct copy of the March 4, 2013, Sworn Claim filed by SGBL in U.S. v. Lebanese Canadian Bank SAL, Case No. 1:11-cv-09186-PAE (U.S. Dist. Ct., S.D.N.Y.),"  and "a true and correct copy of the June 25, 2013, Stipulation and Order entered into by and between the United States, Lebanese Canadian Bank SAL, and SGBL." Declaration of Michael J. Sullivan, ¶¶ 2-3, & Exhibits A and B thereto, ECF No. 136-2, 136-3, 136-4. SGBL relied on *these* documents to argue that it was an "innocent" successor, ECF No. 136-1 at 3-4, as discussed below, but produced nothing form the SPA. What is clear, therefore, is that there is nothing in the SPA that somehow excuses SGBL from acquiring LCB's liabilities and thus its jurisdictional status.[4]

## II.    SGBL Has Successor Liability for LCB's Conduct Under the Anti-Terrorism Act

The Court has ruled on successor jurisdiction but has not reached the issue of successor *liability*. SGBL has made several arguments as to why Plaintiffs fail to state a claim for successor

---

[4]    Nor could one imagine any such provision that SGBL previously refused to raise with one of the several courts reviewing this issue. For example, "[a] successor … may not shield itself from liability it expressly assumed by virtue of a clause negating third-party beneficiary rights. *Town of Lexington v. Pharmacia Corp.*, No. 12-cv-11645 (DJC), 2015 U.S. Dist. LEXIS 36815, at *14 (D. Mass. Mar. 24, 2015). If there is such a provision, SGBL has wasted these courts' time in withholding it.

liability. The first is just repeating that the excerpt of the SPA attached to the TAC lacked "context," where that context was simply that SGBL offboarded some of LCB's Hezbollah-related accounts. That erroneous argument is addressed above; SGBL's remaining arguments are discussed below.[5]

### A.    The Anti-Terrorism Act Includes Successor Liability.

SGBL argued that the Anti-Terrorism Act ("ATA") excludes successor liability because it does not mention it explicitly. As Plaintiffs explained previously, this argument relies on misapplications of a few inapposite cases. *See* Pls. Opp. to MTD FAC, ECF No. 142 at 71-73. Chiefly, SGBL relies on *Rothstein v. UBS AG*, which concluded that "Congress, having included in the ATA several express provisions with respect to aiding and abetting in connection with the criminal provisions, can[not] have intended § 2333 to authorize civil liability for aiding and abetting through its silence." 708 F.3d 82, 98 (2d Cir. 2013). SGBL asks the court to analogize this decision to mean that the ATA's "silence" on successor liability must mean there is none.

Successor liability and aiding and abetting/conspiracy are entirely different concepts. Aiding and abetting and conspiracy are *independent* causes of action based on the defendant's own wrongful conduct. They are excluded from certain statutes because that assistive conduct differs from the conduct required for primary liability. As the Supreme Court explained in *Central Bank of Denver*—the origin of the rule spelled out in *Rothstein* and *Boim*—a court may not "extend liability beyond the *scope of conduct* prohibited by the statutory text," or "amend the statute to create liability for acts that are not themselves [wrongful] within the meaning of the statute." 511

---

[5]    Some of SGBL's arguments are not worth extended discussion. It has argued that "Count IV still fails because, as with the other Lebanese banks, LCB's alleged provision of financial services does not give rise to primary or secondary liability under the ATA." ECF No. 136-1 at 24 (citing Defendants' joint brief in support of their motion to dismiss the FAC, ECF No. 139-1). The Court has already denied that motion as to Plaintiffs' secondary liability claims. SGBL has also challenged New York courts' jurisdiction over *LCB*, which the Second Circuit naturally rejected: "[SGBL] suggests that the suit … does not arise from or relate to LCB's New York contacts…. But this argument is squarely foreclosed by *Licci IV*." *Lelchook* 2025 LX 300268, at \*31 n.18  (citing *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 170-73 (2d Cir. 2013) ("*Licci IV*")).

U.S. 164, 177, 178 (1994) (emphasis added). *See also Linde v. Arab Bank, PLC*, 882 F.3d 314, 331 (2d Cir. 2018) (holding that aiding and abetting, unlike primary liability, does not require conduct that itself "caused plaintiffs' injuries").

Successor liability, on the other hand, is the transfer of liability from one entity to another. The "scope of conduct" and the "acts" remain the *predecessor's*, which are of course entirely prohibited by the statutory text. It is more akin to alter egos or aliases—as the Second Circuit explained:

> [W]e reject any formal distinction between cases involving statutory and de facto mergers, or corporate alter egos and reorganizations, on the one hand, and cases involving the wholesale assumption of assets and liabilities in a way that would needlessly redound to the benefit of wrongdoers, on the other. Such an outcome would not further the goal of "substantial justice."

*Lelchook*, 2025 LX 300268, at *39-40. Indeed, the Circuit observed that "[a]lthough LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects." *Id.* at *38. In this way, it is no different from substitution of an estate for a deceased party, which is governed by Rule 25(a), not each and every civil cause of action to which the rule applies. Indeed, Rule 25(c) itself permits plaintiffs to continue an action against the transferee of an interest, which here are LCB's liabilities (Plaintiffs can continue against both, as SGBL is already "joined with the original party" in this case, *id.*).

So long as there is a claim for relief plausibly establishing a defendant's liability, it can generally be brought against a successor to that liability. *See E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 961 (7th Cir. 2021) ("To be sure, we have recognized the successor doctrine as a means of holding one party liable when the lawsuit contains some independent federal cause of action."). Here, Plaintiffs seek "to hold [SGBL] liable for violating [§ 2333]," *id.*, the ATA's cause of action. *See also Tsareff v. Manweb Servs.*, 794 F.3d

10

841, 846 (7th Cir. 2015) (noting that "[s]uccessor liability is an equitable doctrine" and reading it into ERISA's civil cause of action, which does not mention it explicitly).

That a claim or a liability may be transferred—whether by a death, an assignment, a subrogation or, as in this case, an express agreement to assume any and all liabilities—is a general principle of tort law; there is no legal doctrine requiring that it be spelled out in every statute. *See Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) ("[W]e start from the premise that when Congress creates a federal tort it adopts the background of general tort law."). "Silence" on all of these various concepts does not convey an intent to exclude them. *See, e.g.*, *Tsareff*, 794 F.3d at 846. As Judge Posner explained for the Seventh Circuit sitting *en banc* in *Boim v. Holy Land Foundation for Relief & Development*—the seminal case that applied *Central Bank of Denver* to the ATA— courts must still "analyze the tort liability" under the ATA "under general principles of tort law." 549 F.3d 685, 692 (7th Cir. 2008). (There, it meant that although aiding and abetting and conspiracy liability were unavailable, "[p]rimary liability in the form of material support to terrorism has the character of secondary liability." *Id.* at 691.)

In *Linde*, Judge Cogan explained this principle meant that *respondeat superior* principles— a form of vicarious liability which transfers liability as does successor liability—is part of the ATA despite not explicitly stating it:

> I agree with the careful reasoning of Circuit Judge Janice Rogers Brown's concurrence in *Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 148, 397 U.S. App. D.C. 236 (D.C. Cir. 2011) (Brown, C.J., concurring). The basic presumption is that Congress creates federal torts against the background of general tort law, and "[r]*espondeat superior* liability is an elementary principle of tort law and must therefore inform our interpretation of the federal torts created in the Anti-Terrorism Act." *Id.*

*Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 336 (E.D.N.Y. 2015) .

11

In fact, here the case is even stronger—where a buyer is "on notice" that it was acquiring the seller's "debts and liabilities .... successor liability is *not* the functional equivalent of vicarious liability," but is something less innocent:

> The distinguishing factor in this case is that [Buyer] was on notice that it was purchasing [Seller] subject to the liabilities of [Seller] and is unable to claim innocence of [Seller's] actions. Thus, as the successor entity, [Buyer] is responsible as the wrongdoer, in the sense that the successor knew that the predecessor may have committed some wrongdoing and thereby agreed to assume any liability therefore. Using this analysis, the proper party is being punished.

*Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*, 786 F. Supp. 867, 871 (C.D. Cal. 1992) (emphasis added).

Thus, "[v]icarious liability and successor liability roughly overlap in some circumstances, but are distinguishable where a successor corporation's liability stems from its *express* assumption of that liability." *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 F. App'x 604, 622 (6th Cir. 2013) (emphasis added) (Stranch, J. concurring in part and dissenting in part). The majority agreed: "as the dissent points out, successor liability does not equate with vicarious liability in all cases." *Id.* at 611. *See also In re Safety-Kleen Corp.*, 380 B.R. 716, 740 (Bankr. D. Del. 2008) ("[w]hen a buyer expressly assumes liabilities of a seller, it becomes directly liable therefore"). In such cases, successor liability is *not* "vicarious liability imposed upon an innocent party," *R.C.M. Exec. Gallery Corp. v. Rols Capital Co.*, 901 F. Supp. 630, 636 (S.D.N.Y. 1995)—it is a choice to acquire a specific liability at a discount.

SGBL is no innocent party. It has argued that it "had no knowledge and played no role whatsoever in the attacks causing injuries," ECF No. 136-1 at 13 (emphasis omitted), but the New York Court of Appeals already found that SGBL "would have been on notice when it made this acquisition of LCB's potential exposure in New York in connection with the terrorist attacks," given LCB's designation as a primary money laundering concern and the pre-existing *Licci*

12

litigation. *Lelchook*, 41 N.Y.3d at 637. "The potential reach of LCB's liabilities, and its jurisdictional contacts, were known to SGBL at that time." *Lelchook*, 2025 LX 300268, at *27. The Second Circuit thus declined SGBL's invitation to "close its eyes to the reality of the relationship between these two banks." *Id.* at *37-38. Indeed, "[a]lthough LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects." *Id.* at *38.

Accordingly, courts have also recognized civil RICO actions may be brought on a successor liability basis even though the statute does not "explicitly" mention it: "courts in [the Southern District of New York] have concluded that 'principles of successor liability apply to RICO claims.'" *Monterey Bay Military Hous., LLC v. AMBAC Assurance Corp.*, 531 F. Supp. 3d 673, 730 n.55 (S.D.N.Y. 2021) (quoting *Am. Buying Ins. Servs., Inc. v. S. Kornreich & Sons, Inc.*, 944 F. Supp. 240, 249 (S.D.N.Y. 1996)). *See also R.C.M. Exec. Gallery*, 901 F. Supp. at 635 ("The few courts to confront this issue have held that the principles of successor liability apply to RICO claims."). Other courts have agreed, too. *See, e.g.*, *Cont'l Grain Co. v. Pullman Standard, Inc.*, 690 F. Supp. 628, 631 (N.D. Ill. 1988) ("[t]he court finds that general successorship principles apply in RICO cases"); *Rodriguez v. Banco Cent.*, 777 F. Supp. 1043, 1065 (D.P.R. 1991), *aff'd,* 990 F.2d 7 (1st Cir. 1993).[6] RICO, like the ATA, is a criminal statute with a civil analogue that provides treble damages (indeed, Judge Brown's concurrence in *Parsons* explained in depth why the ATA's treble damages provision does not prevent the application of vicarious liability principles).

---

[6]    In *Rodriguez*, the court observed that successor liability may be appropriate in a RICO action where "the purchaser has the time to conduct a due diligence investigation of the company to be purchased along with a careful investigation of lurking liability." 777 F. Supp. at 1065. Such "a showing of knowledge, constructive or actual, by the purchaser at the time of the transaction" could be a sufficient basis for successor liability. *Id.* Here, of course, SGBL has brandished its "compliance process undertaken by independent international compliance experts and a parallel auditing proceeding implemented by SGBL that utilized a scoring methodology to screen LCB's accounts, customers, and operations." *Supra* at 7 (quoting ECF No. 136-1 at 3). *See also Lelchook*, 41 N.Y.3d at 631 (observing that given SGBL's presumably "robust due diligence," it "should understand where jurisdiction over such liabilities may lie").

Likewise, the D.C. Circuit rejected the argument that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") did not authorize the Secretary of State to designate foreign terrorist organizations' aliases "because the statute does not expressly allow for an alias designation." *Nat'l Council of Resistance of Iran v. Dep't of State*, 251 F.3d 192, 200 (D.C. Cir. 2001). The court held that the statute's application to aliases is "implied" and that "[i]t would simply make no sense" to let aliases off the hook. *Id.* In a subsequent appeal, then-Circuit Judge Roberts clarified that the implied alias standard is not inflexible: "nothing in AEDPA or any more general rule of logic or language requires that the application of the alias concept be strictly limited to such circumstances." *Nat'l Council of Resistance of Iran v. Dep't of State*, 373 F.3d 152, 157 (D.C. Cir. 2004) (Roberts, J.). Indeed, it would be "silly" and "implausible" to think that Congress did not intend the AEDPA to reach a designated foreign terrorist organization's "juridically separate agents subject to its control." *Id.* at 157-58. The contrary view "is at war not only with the antiterrorism objective of AEDPA, but common sense as well." *Id.* at 159. The same is true here under JASTA, which also has an antiterrorism objective. The ATA does not reference successor liability because it is a general principle of tort law—and a "general rule of logic" and "commonsense."

## B.    The United States Never Suggested SGBL Had No Successor Liability

SGBL has asserted that the United States "explicitly stated that SGBL would assume no successor liability," ECF No. 136-1 at 4, but the assertion is based on what it concedes is a *settlement stipulation* in which the United States agreed that *it* would not "'bring any claim against SGBL … under a theory of successor liability.'" *Id.* at 4 (quoting ECF No. 136-4). That the United States agreed, as part of a complex asset seizure under the Patriot Act, that it would not bring a successor liability claim against SGBL does not constitute a government finding that SGBL "assume[s] no successor liability" (including as to, for example, private litigants). If anything, the

14

clause SGBL quoted suggests it knows it *did* assume successor liability and negotiated away its claims to certain funds as part of an agreement with the United States not to bring any such claims.

### C.    Imposing Successor Liability Has Nothing to Do with Extraterritoriality.

SGBL argued that applying successor liability for an ATA tort would "apply[] U.S. law to a foreign asset purchase transaction," violating the "presumption against extraterritoriality." *Id.* at 13. SGBL concedes that the ATA by its terms applies extraterritorially, but argues that it "does not reach corporate law matters abroad, including those surrounding a foreign asset purchase agreement (like the SPA here) between two foreign corporations." *Id.* at 15. Of course, Plaintiffs are applying the ATA to *LCB's* conduct—Plaintiffs are not asserting they were injured *by the SPA*. The SPA merely transfers that potential liability to SGBL; when the Second Circuit and the New York Court of Appeals interpreted the SPA to mean SGBL assumed all of LCB's liabilities "without qualification," *Lelchook*, 2025 LX 300268, at *21, neither of them did so using *the ATA*.

### D.    Rejecting Successor Liability "Would Be a Truly Unfair Outcome."

Reading a statute to permit a party to transfer its liabilities to a fully aware and willing buyer which could then escape that liability would be inequitable. *See Tsareff*, 794 F.3d at 846. Successor liability is a general principle of torts because it is necessary to avoid "serious abuse," as the Second Circuit and New York Court of Appeals explained. Under SGBL's urged rule, a corporation could "arrange" to transfer its assets and liabilities to another corporation that would be immune from ATA liability as a successor, leaving behind a shell which "may offer scant promise to the hopeful tort claimant notwithstanding [its] status as a defendant in a lawsuit pending in New York." *Lelchook*, 67 F.4th at 87.[7] The New York Court of Appeals agreed that such a "rule

---

[7]    SGBL claims it paid LCB $580 million for the purchase of its assets and liabilities but that money appears to be long gone—LCB told the Supreme Court seven years ago that it "is defunct, insolvent, and unable to pay any judgment rendered against it." *Lelchook*, 2025 LX 300268, at *8 (citation omitted). The funds were likely immediately distributed to shareholders (or others) in Lebanon.

would give rise to unfortunate incentives." *Lelchook*, 41 N.Y.3d at 638. The Second Circuit later summarized: "it would be a truly unfair outcome and would hinder the efficient administration of justice to deny [plaintiffs] a New York forum in the circumstances presented here." *Lelchook*, 2025 LX 300268, at \*37.

These decisions were discussing successor *jurisdiction*, but the logic is the same—imposing successor liability "would avoid a situation in which a successor acquired all of a predecessor's assets while shielding itself from judgment on certain of the predecessor's related liabilities (which it otherwise purported to assume)." *Id.* at \*13.

## CONCLUSION

For the reasons stated above, the Court should reconsider its prior decision and deny SGBL's motion to dismiss Plaintiffs' Fourth Claim for Relief.

Dated: September 19, 2025
     Hackensack, New Jersey

              Respectfully submitted,

              **OSEN LLC**

By:   /s/ Michael J. Radine
       Michael J. Radine
       Gary M. Osen
       Ari Ungar
       Dina Gielchinsky
       Aaron Schlanger
       190 Moore Street, Suite 272
       Hackensack, NJ 07601
       Tel: (201) 265-6400
       Fax: (201) 265-0303

       **TURNER & ASSOCIATES, P.A.**
       Tab Turner
       4705 Somers Avenue, Suite 100
       North Little Rock, AR 72116
       (501) 791-2277

16

**MOTLEY RICE, LLC**
Michael Elsner
John Eubanks
28 Bridgeside Boulevard,
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

*Attorneys for Plaintiffs*