UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

ROBERT BARTLETT, et al.,

    Plaintiffs,

v.

SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L., et al.,

    Defendants.

No. 1:19-cv-00007 – CBA-TAM

---

**DEFENDANT SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN S.A.L.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THEIR FOURTH CLAIM FOR RELIEF (SUCCESSOR LIABILITY)**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 4

I. THIS COURT SHOULD WAIT UNTIL APPELLATE REVIEW
   CONCLUDES BEFORE CONSIDERING PLAINTIFFS' MOTION ............................. 4

II. EVEN ASSUMING *LELCHOOK IV* REMAINS GOOD LAW, THIS
    COURT SHOULD DENY PLAINTIFFS' MOTION TO RECONSIDER ....................... 5

III. IF THIS COURT RECONSIDERS ITS PERSONAL JURISDICTION
     RULING, IT SHOULD ALLOW SGBL THE OPPORTUNITY TO
     DECIDE WHETHER TO FILE A RENEWED MOTION TO DISMISS OR
     OTHERWISE MOVE ................................................................................................. 8

CONCLUSION ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ashley v. Deutsche Bank Aktiengesellschaft*,
 144 F.4th 420 (2d Cir. 2025) ........................................................................................ 10

*Barnhart v. Sigmon Coal Co.*,
 534 U.S. 438 (2002) ..................................................................................................... 10

*Erie R. Co. v. Tompkins*,
 304 U.S. 64 (1938) ....................................................................................................... 10

*Knipe v. Skinner*,
 999 F.2d 708 (2d Cir. 1993) ........................................................................................... 1

*Lelchook v. SGBL*,
 67 F.4th 69 (2nd Cir. 2023) .................................................................................... 2, 6, 7

*Lelchook v. SGBL*,
 41 N.Y.3d 629 (2024) ................................................................................................ 2, 7

*Lelchook v. SGBL*,
 No. 21-975, 147 F.4th 226,
 2025 U.S. App. LEXIS 20242 (2d Cir. Aug. 11, 2025) ........................................... *passim*

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
 732 F.3d 161 (2d Cir. 2013) ...................................................................................... 3, 8

*Longines-Wittnauer Watch Co. v. Barnes & Reinecke*,
 15 N.Y.2d 443 (1965) .................................................................................................... 2

*Meyer v. Blue Sky Alternative Invs. LLC*,
 2020 N.Y. Misc. LEXIS 10751 (Sup.Ct. N.Y. County Dec. 14, 2020) ........................... 10

*U.S. Bank Nat'l Ass'n v. Bank of Am. N. A.*,
 916 F.3d 143 (2d Cir. 2019) ........................................................................................... 4

*Sunward Elecs., Inc. v. McDonald*,
 362 F.3d 17 (2d Cir. 2004) ............................................................................................. 5

*Texas Industries, Inc. v. Radcliff Materials, Inc.*,
 451 U.S. 640 (1981) ..................................................................................................... 10

*World-Wide Volkswagen Corp. v. Woodson*,
 444 U.S. 286 (1980) ....................................................................................................... 6

**Statutes**

1 U.S.C. § 1 .............................................................................................................. 10

18 U.S.C. § 2333(a) ...................................................................................................6

18 U.S.C. § 2333(d)(2) ............................................................................................ 10

Anti-Terrorism Act, 18 U.S.C. § 2333 ................................................................*passim*

Justice Against Sponsors of Terrorism Act,
    Pub. L. No. 114-222, 130 Stat. 852 (2016) ..............................................5, 6, 9

N.Y. CPLR § 302(a) ..................................................................................................2

**Rules**

E.D.N.Y. Local Civil Rule 6.3 (2024) .......................................................................3

E.D.N.Y. Local Civil Rule 6.3 (2025) .......................................................................3

Judge Bagley Amon's Individual Motion Practices and Rules, § 3(C) (E.D.N.Y. 2020) ...............3

Judge Bagley Amon's Individual Motion Practices and Rules, § 3(C) (E.D.N.Y. 2025) ...............3

**PRELIMINARY STATEMENT**

Plaintiffs seek reconsideration of this Court's November 25, 2020 Order (ECF No. 164) dismissing their successor liability claim (Count IV) against Defendant Société Générale de Banque au Liban S.A.L. ("SGBL"). This Court dismissed that count on the sole ground that Plaintiffs did not state a *prima facie* case of personal jurisdiction. *Id*. at 32-37. The sole basis for Plaintiffs' motion is the Second Circuit's jurisdictional opinion in *Lelchook v. SGBL*, No. 21-975, 147 F.4th 226, 2025 U.S. App. LEXIS 20242 (2d Cir. Aug. 11, 2025) ("*Lelchook IV*"), *petition for reh'g en banc pending* (Sept. 24, 2025); Memo. at 4.

Plaintiffs' argument is that "[t]he Second Circuit has now fully decided the jurisdictional component of the motion," but they do not explain why. They simply (and wrongly) conclude that *Bartlett* and *Lelchook* are the same and suggest that this Court and the New York Court of Appeals already resolved the jurisdictional question because the issue presented here is "nearly identical." Memo. at 3, 4 (referring to ECF No. 434 at 15). But that observation refers to the *state basis* for personal jurisdiction, *i.e.*, the viability of Plaintiffs' successor-inheritance theory, which has little or no bearing on the *federal constitutional* question that follows it.[1]

In their haste to recast SGBL's jurisdictional and non-jurisdictional arguments by patching together snippets of quotes and points from SGBL's six-year-old legal memorandum and other communications with the Court, Plaintiffs do not address in any meaningful way (and therefore concede) the most important aspect of the reconsideration question: whether the exercise of specific personal jurisdiction *in this case* comports with due process under the Fourteenth Amendment. It does not.

---

[1] It is too late for Plaintiffs to raise new arguments or grounds in support of personal jurisdiction—even purportedly to respond to the arguments here—in their reply brief. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief").

1

In *Lelchook v. SGBL*, 41 N.Y.3d 629, 637 (2024) ("*Lelchook III*"), the New York Court of Appeals held—contrary to its long-arm statute's text limiting jurisdictional imputation to agents, CPLR § 302(a), and case law holding "the question of 'liability' [has] nothing to do with the problem of 'jurisdiction,'" *Longines-Wittnauer Watch Co. v. Barnes & Reinecke*, 15 N.Y.2d 443, 466 n.16 (1965)—that state public policy factors "tip in favor of allowing successor jurisdiction where a successor purchases all assets and liabilities." But that exercise of long-arm jurisdiction does *not* comport with constitutional due process here because, based on Plaintiffs' allegations taken as true, SGBL could not reasonably anticipate being haled into a New York court by the *Bartlett* plaintiffs.

*Lelchook IV* does not—and could not—resolve this case-specific, due process question. To the contrary, the opinion's text carefully limits its foreseeability analysis to the "circumstances" presented in that case—where the named plaintiffs, factual allegations, claims, and injuries (directly caused by Hezbollah's actions in southern Lebanon) are "materially identical" to *Licci/Kaplan*, the Anti-terrorism Act ("ATA") lawsuit against the Lebanese Canadian Bank ("LCB") of which SGBL was aware at the time it was the high bidder to purchase LCB's assets and liabilities. *Lelchook IV*, 2025 U.S. App. LEXIS 20242 at *10, 27-29 (quoting *Lelchook v. SGBL*, 67 F.4th 69, 74 (2nd Cir. 2023) ("*Lelchook II*")). The identicality animating *Lelchook IV*'s due process conclusion is not present here and this Court should find that the Fourteenth Amendment does not permit the exercise of personal jurisdiction over SGBL in this case.

Plaintiffs have not met their burden to establish personal jurisdiction for another reason: they have disclaimed three different critical underpinnings of *Lelchook III* and *Lelchook IV*.[2]

---

[2] Plaintiffs' litigation decisions must have been strategic and intentional because Plaintiffs' counsel served as appellate counsel for the *Lelchook* plaintiffs. *Compare* Memo. at 16 *with Lelchook v. SGBL*, Case 21-975, Doc. 84 (Notice of Appearance of Michael Radine filed April 25, 2024).

Specifically, they have (1) conceded in their complaint that SGBL did not assume *all* of LCB's assets and liabilities, ECF No. 426 at ¶117; (2) disclaimed reliance on SGBL's purchase of assets as a basis of personal jurisdiction, instead relying upon its assumption of liabilities, Memo. at 6, and (3) conceded the Lebanese agreement does not confer personal jurisdiction in New York, ECF No. 164 at 36 n.19. Each contradicts the analyses in those two cases and Plaintiffs therefore cannot rely upon them here.

Plaintiffs finally suggest that jurisdiction is proper because SGBL deprived them of assets available to satisfy a potential judgment against LCB in New York. This is patently false. LCB's businesses and assets have never been in the United States. *See Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 732 F.3d 161, 165 n.3, 171 (2d Cir. 2013) (noting LCB had no operations in the U.S. and finding purpose availment only because of the "repeated use of New York's banking system, as an instrument for accomplishing the alleged wrongs").

Finally, this Court's order did not address any other arguments made by SGBL six years ago when it moved to dismiss. Plaintiffs nonetheless include eight (8) pages of argument (consisting of thousands of words) attempting to make SGBL's successor liability arguments for it. Memo. at 8-16. As a result, Plaintiffs' brief vastly and unreasonably exceeds either the 10-page or 3,500-word limitation for a motion for reconsideration under the rules.[3]

Plaintiffs' tactic to recast arguments that SGBL has not yet made, file an over-length brief, and then expect SGBL not only to respond to them—but also to make any and all additional

---

[3] Local rules previously limited motions for reconsideration (and oppositions) to 10 pages. E.D.N.Y. Local Civil Rule 6.3 (2024). Now they limit them to 3500 words. *Id*. at 6.3 (2025). Your Honor's individual rules revised last month adopt the new 3500-word limitation. Judge Bagley Amon's Individual Motion Practices and Rules, § 3(C) (E.D.N.Y. 2025) (Revised September 2025) ("Individual Rules"). Even if Your Honor's earlier rule that allowed for "professional judgment" applies, Plaintiffs' decision to file a 5460-word memorandum contradicts that judgment. *Id*. at § 3(C) (2020) (Revised March 2020). By way of comparison, the bank defendants' earlier motion to reconsider the Court's denial of their motion to dismiss in light of intervening law was limited to ten pages. ECF No. 223. Plaintiffs also did not consult with SGBL before filing their pre-motion conference letter nor indicate that they jointly "wish[ed] to file longer briefs" than permitted under the rules. Individual Rules, at § 3(C) (2025); ECF No. 477.

3

arguments in support of dismissal—is both improper and unfair. Plaintiffs' rush to judgment is particularly unwarranted given SGBL's time constraints (ten business days) and space limitation (3,500 words).[4]

SGBL respectfully submits that the most orderly way to approach reconsideration is for the Court to consider the narrow jurisdictional issue and, if it finds Plaintiffs have stated a *prima facie* case of personal jurisdiction, to revert to the *status quo ante* and allow SGBL the opportunity to decide whether to file a renewed motion to dismiss or otherwise move. This approach would promote judicial efficiency by allowing SGBL to narrow the issues presented for this Court's review by giving it a better opportunity to make a renewed assessment of its litigation position, particularly given the complexity of the issues, the high stakes involved, and the challenges companies presently face in Lebanon.

## ARGUMENT

**I. THIS COURT SHOULD WAIT UNTIL APPELLATE REVIEW OF *LELCHOOK IV* CONCLUDES BEFORE DECIDING PLAINTIFFS' MOTION**

As an initial matter, *Lelchook IV* misconstrues this Circuit's rule governing the constitutional exercise of personal jurisdiction based on another's contacts. This Court's statement of the law (state and federal) is correct and forms the basis for SGBL's petition for rehearing *en banc*: "Whether 'liability as a successor in interest also entails being subject to personal jurisdiction . . . depends on the basis of the successor liability.'" ECF No. 164 at 33 (quoting *dicta* in *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 156 (2d Cir. 2019)). Personal jurisdiction does not simply travel with liability—the exercise must meet each standard for specific

---

[4] This is SGBL's first opportunity to respond. Plaintiffs filed their letter requesting a pre-motion conference on Friday, August 15, 2025, at 2:46 PM. ECF No. 477. The Court granted it on Monday, August 18, 2025, at 10:35 AM, and set a conference for December 15, 2025. The Court then *sua sponte* terminated that conference and set this September/early-October briefing schedule.

personal jurisdiction. It does not for an asset-and-liability purchaser that has no connection to the forum or continuing relationship with the seller because the two are not "one" or the" same" (as both Your Honor and Judge Dearie in *Lelchook* observed). *Lelchook IV* also misapplies other due process standards under the Fourteenth Amendment, which SGBL addresses in its petition.

In any event, because further appellate review of *Lelchook IV* may moot Plaintiffs' motion, this Court should defer consideration until appellate proceedings are concluded.

## II. EVEN ASSUMING *LELCHOOK IV* REMAINS GOOD LAW, THIS COURT SHOULD DENY PLAINTIFFS' MOTION TO RECONSIDER

Plaintiffs begin by mischaracterizing SGBL's position. They claim that "SGBL did not suggest it would have any *legal* challenges to the *Lelchook* decisions." Memo. at 4 (referring to ECF No. 393). That is false. SGBL stated that if *Lelchook IV* finds the exercise of personal jurisdiction comports with due process, the question remains "whether the new federal appellate court opinion permits the exercise of personal jurisdiction over SGBL under the facts of this case." ECF No. 393 at 2.

Here, the exercise of personal jurisdiction would not comport with constitutional due process. Plaintiffs' (scant) reconsideration argument rests on their (incorrect) assumption that the facts of this case are indistinguishable from *Lelchook* and their (incorrect) view that the exercise of jurisdiction is proper in every instance SGBL is sued for LCB's alleged ATA liability. To the contrary, due process requires an independent and individualized assessment of each claim made in each litigation. This Court recognized as much when it found that Plaintiffs' claims under the ATA and the Justice Against Sponsors of Terrorism Act ("JASTA"), Pub. L. No. 114-222, 130 Stat. 852 (2016), must be analyzed separately from Plaintiffs' successor liability claim under the "LCB-SGBL Sale and Purchase Agreement" (the "SPA"). ECF No. 164 at 32, 33 (citing *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004)).

5

The exercise of specific jurisdiction over SGBL based on Plaintiffs' complaint allegations here is improper for three reasons.

*First*, this Court should find SGBL did not reasonably foresee it would be sued almost ten years after the SPA by the *Bartlett* Plaintiffs—and *Lelchook IV* does not compel a different result. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297(1980) (due process requires "that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there"). The *Lelchook IV* panel found that the *Lelchook* plaintiffs made factual allegations that "virtually mirror" those made by plaintiffs in the *Kaplan/Licci* litigation—"the separate, long-running action brought in 2008 against LCB by substantially the same set of plaintiffs," *Lelchook II*, 67 F.4th at 73—of which SGBL was on notice when it entered the agreement with LCB in 2011. *Lelchook IV*, 2025 U.S. App. LEXIS 20242 at *10 (quoting *Lelchook II*, 67 F.4th at 74). The panel also found that the *Lelchook* plaintiffs' nearly identical allegations "are offered in support of 'materially identical' claims" as in *Kaplan/Licci*. *Id*. The panel therefore concluded that "the possibility of ATA liability for LCB was apparent at the time of the Agreement." *Id*. at *29.

Of course, at the time, the ATA only recognized civil liability for "acts of international terrorism," *see* 18 U.S.C. § 2333(a), and LCB did not commit such an act by allegedly laundering money or providing banking services. *See* ECF No. 164 at 16 (agreeing "with the *Kaplan* court's conclusion on the question of primary liability that providing financial services such as those alleged here is not an act which is 'violent or dangerous to human life' as contemplated by the ATA"). Aiding and abetting or conspiracy, on the other hand, requires less culpable conduct—but that JASTA liability did not exist until five years after the SPA. SGBL therefore had little reason to know LCB's banking services could give rise to that then-non-existent "ATA liability."

This distinction in liabilities, and more importantly the conduct and culpability upon which they are properly based, certainly supported the conclusion in *Lelchook* that the exercise of personal jurisdiction over SGBL was incompatible with due process. But because the panel already had found that *Lelchook* is identical to *Licci/Kaplan*, the already-pending 2008 ATA lawsuit involving the same plaintiffs, factual allegations, alleged causation, and injuries caused directly by Hezbollah from the same rocket attacks, the panel concluded that "in these circumstances," allowing SGBL to answer for those claims comported with due process. 2025 U.S. App. LEXIS 20242 at *31.

The "circumstances" animating *Lelchook IV*'s foreseeability conclusion are not present in *Bartlett*. This 2019 case involves (a) conduct allegedly carried out by Shia militia groups (as opposed to Hezbollah itself), (b) originating in Iraq (as opposed to southern Lebanon), (c) based on battlefield (as opposed to civilian) injuries, (d) arising from a non-existent liability at the time of the SPA. In *these* circumstances, haling SGBL into New York courts does not comport with "fair play and substantial justice" and would stretch due process to the breaking point.[5]

*Second*, even so, Plaintiffs cannot rely upon *Lelchook III* and *Lelchook IV*'s holdings because of three concessions they make in this litigation. Plaintiffs first concede that SGBL did not assume *all* of LCB's assets and liabilities—a key element in the Second Circuit's certified jurisdictional question in *Lelchook II*—because their complaint alleges LCB customer accounts migrated to other Lebanese banks. ECF No. 426 at ¶117. Perhaps recognizing their problem,

---

[5] *Lelchook IV* addditionally justifies its exercise of personal jurisdiction by not allowing SGBL to invoke its due process right to foreseeability because it might impact the potential recovery of U.S. plaintiffs. 2025 U.S. App. LEXIS 20242 at *31 ("due process does not require that SGBL be allowed to invoke a putative jurisdictional barrier and avoid one set of LCB's potential liabilities"). Respectfully, that it gets the analysis exactly backwards. Due process constraints on personal jurisdiction, *i.e.*, the power of state and federal courts to render judgments, exist to protect non-residents like SGBL. Nor is SGBL avoiding a potential liability. Plaintiffs are free to sue SGBL in a forum that has jurisdiction over it, ECF No. 164 at 34 n.18 (recognizing same), or to obtain a judgment against LCB—which continues to exist and which Plaintiffs are attempting to do, *see* ECF No. 479—and then seek to enforce it against SGBL.

7

Plaintiffs pivot and argue that SGBL is subject to personal jurisdiction because it assumed LCB's liabilities, not its assets. Memo. at 6. This does not help them because *Lelchook IV* found the exercise of jurisdiction comported with due process because SGBL obtained the benefit of "the fruits of all of LCB's business," including in New York. 2025 U.S. App. LEXIS 20242 at *24. Last, as this Court has noted, Plaintiffs concede that "the Sale and Purchase Agreement between SGBL and LCB in Lebanon fails to confer personal jurisdiction in New York." ECF No. 164 at 36 n.19. This undermines *Lelchook IV's* reasoning that "[e]ntering into the Agreement … properly forms the basis for a court to impute LCB's contacts to SGBL." 2025 U.S. App. LEXIS 20242 at *25. Absent these grounds to support the analysis in those cases, Plaintiffs fail to establish specific personal jurisdiction over SGBL here.

*Third*, Plaintiffs argue that this Court should exercise personal jurisdiction under *Lelchook IV* because "SGBL has removed LCB's *assets*, necessary to fulfill any judgment against it, from this Court's jurisdiction." Memo. at 6 (emphasis in original). That argument fails because it is untrue. LCB's assets (allegedly acquired by SGBL) do not include any "operations, branches, or employees in the United States" and all are located abroad—save New York correspondent bank accounts existing only to "facilitate the flow of money." *Licci IV,* 732 F.3d at 165 n.3. There have never been any assets in New York to satisfy any judgment against LCB. Nor do Plaintiffs allege that SGBL's $580 million payment under the Lebanese agreement touched New York—because they cannot. *See* ECF No. 426 at ¶149.

### III. IF THIS COURT RECONSIDERS ITS PERSONAL JURISDICTION RULING, IT SHOULD ALLOW SGBL THE OPPORTUNITY TO DECIDE WHETHER TO FILE A RENEWED MOTION TO DISMISS OR OTHERWISE MOVE

This Court did not consider any arguments other than personal jurisdiction when it dismissed the successor liability count almost five years ago and that is the only issue *Lelchook IV* considers. 2025 U.S. App. LEXIS 20242, at *22 n.12 (declining to "express any view regarding

8

the merits of SGBL's Rule 12(b)(6) motion"). If this Court concludes it has personal jurisdiction over SGBL then it should order a return to the *status quo ante* and give SGBL an opportunity to decide whether to move to dismiss, on what grounds, and based on which arguments. This approach would recognize the seriousness and the complexity of the issues presented and the challenges faced by a foreign corporation like SGBL in Lebanon. It also would promote judicial economy by allowing SGBL to assess more fully its litigation position, narrow the issues for review, and provide more thorough and meaningful briefing.

In the event this Court declines to adopt this approach, SGBL wishes to make the following points in the limited allowable space that remains under the rules.

SGBL continues to reserve its right to assert a *de facto* challenge to personal jurisdiction under the SPA. ECF No. 136-1 at 7 n.7 (reserving same).[6] Any definitive interpretation of any paragraph or text of the SPA (for jurisdictional or non-jurisdictional reasons) cannot be reached until and unless that document is considered in its entirety. For this reason, Plaintiffs' contention that "the Second Circuit found that SGBL's assumption of liabilities was 'without qualification'" is incorrect. Memo. at 1. The panel simply took Plaintiffs' allegation as true based upon the single SPA paragraph they attached to their operative complaint, which courts are required to do at the motion to dismiss stage.

Next, SGBL continues to deny it "expressly assumed" LCB's JASTA liability in the SPA. *See* ECF No. 164 at 33 n. 17 (noting limitations to SGBL's assumption of liabilities in ¶ 2.3). If that is correct, this means Plaintiffs' successor liability claim would have to be dismissed on both jurisdictional grounds and the merits. But, again, SGBL cannot make that argument here because

---

[6] SGBL is entitled to assert a *prima facie* challenge to the court's jurisdiction—and two federal judges agreed with SGBL's analysis under New York law. Indeed, SGBL has been understandably reluctant to disclose the SPA given Plaintiffs' counsel's use of confidential information from this case in other cases. *See* ECF No. 368 at 5-6.

it would have to rely upon the entirety of the SPA (and perhaps other evidence), which it cannot do in the middle of this reconsideration briefing.

Last, SGBL disputes Plaintiffs' characterization of their fourth claim for relief. Plaintiffs' successor liability "claim" is not a theory of liability but rather a cause of action. *See*, *e.g.*, *Meyer v. Blue Sky Alternative Invs. LLC*, 2020 N.Y. Misc. LEXIS 10751 (Sup. Ct. N.Y. County Dec. 14, 2020) at *6 ("[a]lthough defendant argues that successor liability is merely a theory of liability and not a cognizable cause of action, New York Courts have acknowledged the legitimacy of a successor liability claim in several cases"). Nor does that cause of action arise under federal law because the ATA's text does not create a private right of action against a successor. *See Ashley v. Deutsche Bank Aktiengesellschaft*, 144 F.4th 420, 436 (2d Cir. 2025) (ATA authorizes a secondary liability suit against "any person" in 18 U.S.C. § 2333(d)(2), "incorporating the definition of 'person' of 1 U.S.C. § 1, which includes 'corporations' and 'companies'"—but does not include successors); *see Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452-53 (2002) ("Where Congress wanted to provide for successor liability in the Coal Act, it did so explicitly"). This also is not a case where a federal court is empowered to fashion a federal common law rule to shift tort liabilities, as may be done under certain federal labor and employment statutes. *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640 (1981) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This conclusion comports with common sense—Plaintiffs rely upon a contract—*i.e.*, the SPA—to bring their claim against SGBL, not the ATA.

These distinctions may (or may not) become important in this litigation but the issue would require significantly more discussion in the proper context and is unnecessary to resolve now.

## CONCLUSION

This Court should deny Plaintiffs' motion for reconsideration.

Dated: October 3, 2025                              Respectfully submitted,

                                            **ASHCROFT LAW FIRM LLC**

                                            /s/ *Brian J. Leske*
                                            Brian J. Leske
                                            Michael J. Sullivan
                                            ASHCROFT LAW FIRM LLC
                                            200 State Street, 7th Floor
                                            Boston, MA 02109
                                            617-573-9400
                                            bleske@ashcroftlawfirm.com
                                            msullivan@ashcroftlawfirm.com

                                            *Attorneys for Defendant*
                                            *Société Générale de Banque*
                                            *au Liban S.A.L.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), I hereby certify this memorandum of law complies with the type-volume limit of Local Civil Rule 6.3 because it contains 3,498 words, excluding those portions pursuant to Local Civil Rule 6.3.

Dated: October 3, 2025                    Respectfully submitted,


                                          /s/ Brian J. Leske
                                          Brian J. Leske
                                          Michael J. Sullivan
                                          ASHCROFT LAW FIRM, LLC
                                          200 State Street, 7th Floor
                                          Boston, MA 02109
                                          617-573-9400
                                          bleske@ashcroftlawfirm.com
                                          msullivan@ashcroftlawfirm.com

                                          *Attorneys for Defendant-Appellee*
                                          *Société Générale de Banque*
                                          *au Liban S.A.L.*