UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
ROBERT BARTLETT, *et al.*,               :
                                          :
       Plaintiffs,               :   **Case No. 19-cv-7 (CBA)(TAM)**
                                          :
  -against-                              :
                                          :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,  :
*et al.*,                                 :
                                          :
       Defendants.               :
------------------------------------------------------------------------x

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR RECONSIDERATION OF THE COURT'S ORDER DISMISSING THEIR FOURTH CLAIM FOR RELIEF (IN LIGHT OF AN INTERVENING CLARIFICATION OF LAW)**

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 2

    I.     SGBL Has Not Provided a Reason for the Court to Retain Its Holding that SGBL Is Not Subject to Successor Jurisdiction. ....................................................................................... 2

         A.     SGBL's Arguments that the *Lelchook* Appellate Decisions Are Wrong Are Untenable. .................................................................................................................. 2

         B.     There Is No Reason to Further Delay Ruling on Plaintiffs' Fourth Claim for Relief. ........................................................................................................................ 2

         C.     This Case Is Materially Indistinguishable from *Lelchook* for Successor Jurisdiction Purposes. .................................................................................................................... 3

         D.     Plaintiffs Did Not "Disclaim" Any "Underpinnings" of the *Lelchook* Decisions. ....... 4

         E.     SGBL Cannot Shift Its Failure to Produce the SPA onto Plaintiffs. ............................ 6

    II.     SGBL Has Given No Reason Not to Find Successor Liability. ....................................... 7

         A.     This Court Should Not Let SGBL "Decide" Whether to Bring *Another* Motion to Dismiss. ...................................................................................................................... 7

         B.     SGBL Erroneously Accuses Plaintiffs of Violating Your Honor's Individual Rule Adopting the Local Rules' Word Limits in Order to Justify Failing to Make Substantive Arguments as to Successor Liability. ...................................................... 8

         C.     SGBL's Successor Liability Arguments Are Unavailing. ........................................... 9

CONCLUSION ........................................................................................................................... 11

# **TABLE OF AUTHORITIES**

**Cases**

*Ashley v. Deutsche Bank AG*,
  144 F.4th 420 (2d Cir. 2025) ................................................................................................... 10

*Barnhart v. Sigmon Coal Co.*,
  534 U.S. 438 (2002) ................................................................................................................ 10

*Bartlett v. SGBL*,
  No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921 (E.D.N.Y. Nov. 25, 2020) ... 5

*Carroll v. Trump*,
  141 F.4th 366 (2d Cir. 2025) ..................................................................................................... 3

*Lelchook v. SGBL*,
  67 F.4th 69 (2d Cir. 2023) ......................................................................................................... 5

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
  No. 21-cv-975, 147 F.4th 226, 2025 LX 300268 (2d Cir. Aug. 11, 2025) ...................... 3, 4, 5, 6

*Lelchook v. Société Générale de Banque au Liban SAL*,
  41 N.Y.3d 629 (N.Y. 2024) ................................................................................................... 3, 5

*Linde v. Arab Bank, PLC*,
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) ....................................................................................... 11

*United States v. Martoma*,
  No. 12-cr-973 (PGG), 2014 U.S. Dist. LEXIS 123785 (S.D.N.Y. Sep. 4, 2014) ...................... 3

**Rules**

E.D.N.Y. Local Civil Rule 6.3 ..................................................................................................... 8, 9

Fed. R. Civ. P. 12(b)(2) ................................................................................................................... 7

Hon. Amon Individual Rule 3(C) (revised July 2023) .................................................................... 8

Hon. Amon Individual Rule 3(C) (revised March 2020) ................................................................ 8

Hon. Amon Individual Rule 3(C) (revised September 2025) ................................................. 1, 8, 9

ii

## INTRODUCTION

In response to a certified question from the Second Circuit, the New York Court of Appeals held that Société Générale de Banque au Liban SAL's ("SGBL") acquisition of LCB's assets and liabilities set forth in the Sale and Purchase Agreement ("SPA") confers personal jurisdiction over SGBL under New York law for LCB's alleged aiding and abetting of Hamas. The Second Circuit then determined that the exercise of personal jurisdiction over SGBL based on successor liability would not violate its constitutional due process rights. This motion for reconsideration followed.

SGBL's brief responds that (1) the New York Court of Appeals is wrong about New York law; (2) the Second Circuit's due process analysis is wrong; (3) the Second Circuit's due process analysis is inapplicable to this case because it was only foreseeable that SGBL could face claims from Hezbollah victims in Israel, not Iraq; (4) Plaintiffs "disclaimed three different critical underpinnings of" *Lelchook*; (5) Plaintiffs' counsel sandbagged SGBL's counsel by serving an "over-length brief" that purportedly violated the Court's Individual Rule adopting the Local Rules' word limits—which rule the Court only issued *after* the briefing schedule was put into place;[1] and (6) SGBL should be given another "opportunity to decide whether to move to dismiss, on what grounds, and based on which arguments."

For the reasons set forth below, all of these arguments should be rejected.

---

[1] The Court appears to have issued the Individual Rule at issue on **September 19, 2025**—the day Plaintiffs *served* their brief on SGBL. *See infra* n.6. From the date Court directed Plaintiffs to *draft* the brief, August 22, 2025, to the day they served it, Your Honor's *previous* Individual Rules applied, with which Plaintiffs fully complied.

# ARGUMENT

I. **SGBL Has Not Provided a Reason for the Court to Retain Its Holding that SGBL Is Not Subject to Successor Jurisdiction.**

   A. **SGBL's Arguments that the *Lelchook* Appellate Decisions Are Wrong Are Untenable.**

SGBL argues that the New York Court of Appeals' ruling was "contrary to [New York's] long-arm statute's text … and case law …." *Id.* at 2. It points out that "two federal judges agreed with SGBL's analysis under New York law," *id.* at 9 n.6, referring to the decisions issued by "Your Honor and Judge Dearie in *Lelchook*" *before* the latter was reversed on appeal. *Id.* at 5. It argues that "[t]his Court's statement of the law (state and federal) is correct." *Id.* at 4. These assertions demonstrate a bizarre refusal to accept the results of binding appellate decisions. This Court's prior decision was reasonable given that the issue presented a case of first impression for the state's high court, but that court's interpretation of New York law is binding, whether SGBL accepts it or not.

SGBL makes similar arguments about the Second Circuit's decision ("*Lelchook IV*"), including that *Lelchook IV* "misconstrues th[e] Circuit's [own] rule governing the constitutional exercise of personal jurisdiction," *id.*, and "also misapplies other due process standards under the Fourteenth Amendment," *id.* at 5. SGBL charges that the Circuit did "not allow[] SGBL to invoke its due process right to foreseeability," which "gets the analysis exactly backwards." *Id.* at 7 n.4. It argues that this Court's previous decision rejecting successor jurisdiction "undermines *Lelchook IV*'s reasoning…." *Id.* at 8 (citing ECF No. 164 at 36 n.19.). The Second Circuit's analysis was correct, but in any event its decision is binding.

   B. **There Is No Reason to Further Delay Ruling on Plaintiffs' Fourth Claim for Relief.**

SGBL's primary argument is that "this Court should wait until appellate review of *Lelchook IV* concludes before deciding plaintiffs' motion." *Id.* at 4 (recapitalized). The "appellate review"

2

of *Lelchook* is over—SGBL is referring to its pending petition for rehearing *en banc*. District courts do not generally wait for resolution of *en banc* petitions because "it [is] highly unlikely [that one] would be granted." *United States v. Martoma*, No. 12-cr-973 (PGG), 2014 U.S. Dist. LEXIS 123785, at *41 (S.D.N.Y. Sep. 4, 2014). They are granted only in "rare instances" not present in this straightforward, unanimous panel decision. *Carroll v. Trump*, 141 F.4th 366, 367 (2d Cir. 2025) (Pérez, J., concurring).

    **C.    This Case Is Materially Indistinguishable from *Lelchook* for Successor Jurisdiction Purposes.**

SGBL's next argument is that the *Lelchook IV*'s "text carefully limits its foreseeability analysis to the 'circumstances' presented in that case," but not those in *Bartlett*. *Id.* at 2 (quoting *Lelchook v. SGBL*, No. 21-cv-975, 147 F.4th 226, 2025 LX 300268 at *10, 27-29 (2d Cir. Aug. 11, 2025)). Thus, while SGBL appears to accept it should have foreseen answering the *Lelchook* suit in New York, it argues that it "could not reasonably anticipate being haled into a New York court by the *Bartlett* plaintiffs." *Id.* It points out that *Bartlett* was filed in 2019, "almost 10 years after the SPA," under JASTA, which was enacted "five years after the SPA." *Id.* at 6. But *Lelchook* was, of course, also filed in 2019 (after *Bartlett*, in fact) and under JASTA.

SGBL thus *also* argues that it should have anticipated *Lelchook* because it resembled the pre-existing "*Kaplan*/*Licci*" litigation (filed in 2008) more so than it does *Bartlett*, despite cribbing verbatim most of the *Bartlett* complaint. *Lelchook*'s only similarity to *Kaplan* relates to the *attacks*—rocket attacks in Israel. But the attacks are irrelevant: both cases allege the exact same conduct *by LCB* and are predicated on the same SPA. SGBL concedes that "the New York Court of Appeals found the issues 'nearly identical.'" *Id.* at 1 (subciting *Lelchook v. SGBL*, 41 N.Y.3d 629, 635 n.2 (N.Y. 2024)). As the Circuit explained, *Lelchook* was foreseeable in part because "[t]he *Licci* litigation had begun, based on allegations of LCB's repeated, deliberate use of its New

3

York bank correspondent account to support Hizbollah," not the specifics of the *attacks*. 2025 LX 300268 at *29. LCB's conduct is also alleged in *Bartlett*—indeed, in far *greater* detail.

SGBL also acknowledges the Circuit's finding that "ATA liability for LCB was apparent at the time" SGBL executed the SPA—but argues that finding was limited to *primary* liability. SGBL asserts that JASTA, on the other hand, "requires less culpable conduct," which exposes LCB to liability. Opp., ECF No. 492, at 6. SGBL contends that because JASTA was enacted in 2016, it "had little reason to know LCB's banking services could give rise to that then-non-existent 'ATA liability.'" *Id.* But as SGBL knows, the Circuit had rejected this *precise* argument. In *Lelchook*, SGBL argued that the plaintiffs' "secondary liability claims were not viable until 2016, when JASTA was enacted," and SGBL "therefore could not reasonably have known when it entered the Agreement in 2011 … that LCB would be vulnerable to aiding-and-abetting claims." *Lelchook IV*, 2025 LX 300268, at *30. The Circuit disagreed, finding that "SGBL could reasonably anticipate being subjected to *ATA-related liability* in New York based on LCB's alleged in-forum conduct and affiliation with Hizbollah," which "liability" includes JASTA. *Id.* at *30-31 (emphasis added).

### D. Plaintiffs Did Not "Disclaim" Any "Underpinnings" of the *Lelchook* Decisions.

SGBL argues that Plaintiffs "have disclaimed three different critical underpinnings of" *Lelchook* as follows:

> [Plaintiffs] (1) conceded in their complaint that SGBL did not assume *all* of LCB's assets and liabilities, ECF No. 426 at ¶117; (2) disclaimed reliance on SGBL's purchase of assets as a basis of personal jurisdiction, instead relying upon its assumption of liabilities, Memo. at 6, and (3) conceded the Lebanese agreement does not confer personal jurisdiction in New York, ECF No. 164 at 36 n.19.

Opp. at 2-3.

The first two points appear to simply repackage SGBL's argument that because it closed some Hezbollah-affiliated accounts at LCB (but kept others), it did not acquire LCB's liability to

4

Plaintiffs and thus did not inherit LCB's corresponding jurisdictional contacts.[2] *See* Pls. Br., ECF No. 491-1, at 6. Again, it is LCB itself which is liable to Plaintiffs, not certain *accounts it held*. And Plaintiffs have consistently maintained that SGBL acquired "any and all of [LCB's] liabilities" in every way relevant to this suit, *id.*, as have the courts reviewing the SPA.

SGBL then argues that if Plaintiffs are relying on LCB's *liabilities* to show successor jurisdiction, they must have "disclaimed reliance on SGBL's purchase of *assets*." It is not clear what point SGBL is trying to make here. The liabilities are not part of the "assets"—the *Lelchook* courts explained that letting a defendant acquire "all of a predecessor's assets while shielding itself from judgment on certain of the predecessor's related liabilities (which it otherwise purported to assume)" is unfair to plaintiffs. *Lelchook IV*, 2025 LX 300268 at *13. *See also Lelchook*, 41 N.Y.3d at 638 (similar); *Lelchook v. SGBL*, 67 F.4th 69, 87 (2d Cir. 2023) (similar).

In an attempt to evade this finding, SGBL now asserts that it did not "remove" any assets from this forum: "There have never been any assets in New York to satisfy any judgment against LCB. Nor do Plaintiffs allege that SGBL's $580 million payment under the Lebanese agreement touched New York—because they cannot." Opp. at 8 (citing ECF No. 426 at ¶ 149). First, the issue is not whether LCB's *assets* are (or were) in New York, but whether the *party* owning the assets is subject to a New York court's "jurisdiction." Pls. Br. at 6-7. As the Circuit observed, "[d]enying jurisdiction would harm Plaintiffs' reasonable interests in pursuing effective relief" as "SGBL has not even tried to demonstrate that Plaintiffs would be able to seek, never mind obtain, the relief they request in Lebanon" where SGBL is incorporated. *Lelchook IV*, 2025 LX 300268 at *34-35.

---

[2] SGBL's third point is also irrelevant—SGBL argues that "this Court has noted" that Plaintiffs "concede[d]" that the SPA "'fails to confer personal jurisdiction in New York,'" which "undermines *Lelchook IV*'s reasoning…." Opp. at 8 (quoting *Bartlett v. SGBL*, No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921, at *78 n.19 (E.D.N.Y. Nov. 25, 2020)). What this Court actually wrote is that the SPA did not have a New York **forum selection clause**: "SGBL argues that the [SPA] … fails to confer personal jurisdiction in New York. Plaintiffs do not appear to dispute this point, *other than to rely upon that Agreement to argue for successor-based jurisdiction*." 2020 U.S. Dist. LEXIS 229921, at *78 n.19 (emphasis added). It did not "undermine" the Circuit's binding decision.

5

Worse, SGBL previously made contrary factual assertions to the Second Circuit—namely that there was no need to establish successor jurisdiction over it because the *Lelchook plaintiffs* failed to pursue SGBL's $580 million payment to LCB *in New York*. SGBL told the Second Circuit that "[b]eginning in 2011, those funds were available ***in the forum*** to any plaintiff holding claims against LCB." *Lelchook*, ECF No. 89 at 4-5 (emphasis added). *See also Lelchook*, ECF No. 50 at 37 (telling the Second Circuit that the *Lelchook* plaintiffs "themselves created … any purported injustice … by failing to pursue the $580,000,000.00 paid by SGBL to LCB…."). Indeed, it was *Plaintiffs* who contended otherwise: "SGBL claims it paid LCB $580 million for the purchase of its assets and liabilities but that money appears to be long gone…. The funds were likely immediately distributed to shareholders (or others) *in Lebanon.*" Pls. Br. at 15 n.7 (emphasis added). SGBL has exclusive knowledge of where its payment to LCB went. That SGBL is giving conflicting versions of that *factual* matter to two different courts only highlights the Second Circuit's conclusion that denying jurisdiction would "harm Plaintiffs' reasonable interests in pursuing effective relief." *Lelchook IV*, 2025 LX 300268 at *36.

### E. SGBL Cannot Shift Its Failure to Produce the SPA onto Plaintiffs.

SGBL again asserts that the SPA must be "considered in its entirety," while refusing to produce it. Opp. at 9. This time, however, SGBL writes that the reason it has not produced the SPA which supposedly exonerates it is that it "has been understandably reluctant to disclose the SPA given Plaintiffs' counsel's use of confidential information from this case in other cases." *Id.* at 9 n.6 (citing ECF No. 368 at 5-6). This is nonsense—that "issue" arose years after SGBL began refusing to produce the SPA. SGBL asserted in its briefing in **2020** that it "will not be goaded into" producing the SPA it claimed would provide greater context for its position. ECF No. 137 at 1 n.1. As the Court is aware, Plaintiffs were denied leave to "use" information produced in this case in

6

an amended complaint in *Freeman* in **2024**. *See* Mem. & Order, ECF No. 429.[3] And SGBL never produced the complete SPA in *Lelchook*, despite that case having *no* overlapping plaintiffs or counsel (Plaintiffs' counsel here only stepped into the *Lelchook* case after the Second Circuit certified questions to the New York Court of Appeals) and has declined to produce it now.[4]

## II. SGBL Has Given No Reason Not to Find Successor Liability.

### A. This Court Should Not Let SGBL "Decide" Whether to Bring *Another* Motion to Dismiss.

Rather than substantively make successor liability arguments in its brief, SGBL suggests that, "[i]f this Court concludes it has personal jurisdiction over SGBL then it should order a return to the *status quo ante* and give SGBL an opportunity to decide whether to move to dismiss, on what grounds, and based on which arguments." Opp. at 8-9. This is not a good reason for SGBL's failure to make its successor liability arguments now. The "*status quo ante*" was not leaving SGBL to "decide" whether to bring a motion to dismiss—it *brought one*, which was *granted* on Rule 12(b)(2) grounds. That is, SGBL had *and took* the opportunity to raise successor liability arguments in its motion to dismiss the FAC. The fact that the Court now must consider those arguments from SGBL's prior motion to dismiss *is* the "*status quo ante*." While it was entitled to refine its arguments in opposing this motion for reconsideration, SGBL is *not* entitled to *another* motion to dismiss. Turning its motion to dismiss into multiple, piecemeal motions does not "promote judicial economy," as SGBL claims. *Id.*

---

[3] As SGBL knows, Plaintiffs have **never** disclosed confidential information in any case. Plaintiffs *redacted* allegations in a draft amended complaint in *Freeman*, which court stated "that's not using it, in my opinion." *See* Pls. Ltr. to Judge Merkl, ECF No. 376 at 3. This Court disagreed, but SGBL cannot tenably think Plaintiffs have any interest in disclosing its *sale and purchase agreement* in some other case.

[4] This insinuation is particularly ironic given that it is *SGBL's* counsel that was recently sanctioned for the "singularly egregious" conduct of its managing partner in obstructing discovery related *to this case*. *See* Mem. Op. & Order, *Bartlett v. TAG Holdings, LLC*, No. 22-mc-00130 (APM), ECF No. 34 at 5, 7-8 (D.D.C. Aug. 15, 2025).

7

**B.   SGBL Erroneously Accuses Plaintiffs of Violating Your Honor's Individual Rule Adopting the Local Rules' Word Limits in Order to Justify Failing to Make Substantive Arguments as to Successor Liability.**

SGBL takes Plaintiffs to task for addressing all of the Bank's previously stated grounds for dismissal of Plaintiffs' Fourth Claim for Relief. According to SGBL, "Plaintiffs' tactic to recast arguments that SGBL has not yet made, file an over-length brief, and then expect SGBL not only to respond to them—but also to make any and all additional arguments in support of dismissal— is both improper and unfair." Opp. at 3-4. SGBL then argues that it cannot make its successor liability arguments because of "the limited allowable space that remains [after making its jurisdictional arguments] under the rules." *Id.* at 9. SGBL asserts that Plaintiffs did not even "consult with SGBL" to indicate that they jointly "'wish[ed] to file longer briefs' than permitted under the rules." *Id.* at 3 n.3 (quoting Hon. Amon Individual Rule 3(C)).

That rule, however, was not implemented until after Plaintiffs drafted and served their brief. SGBL is claiming that Plaintiffs violated Your Honor's **current** Individual Rule 3(C), which incorporates by reference the EDNY Local Rules on memoranda of law, which in turn set the word limit for briefs supporting motions for reconsideration at 3,500 words. E.D.N.Y. L.R. 6.3. That Individual Rule, SGBL concedes, is from "September 2025," before which, SGBL also concedes, the "earlier rule that allowed for 'professional judgment' applie[d]." Opp at 3 n.3. Specifically, that "earlier rule" only required "counsel to exercise their professional judgment as to the length of briefs…." Hon. Amon Individual Rule 3(C) (revised July 2023).[5] *That* was the rule in place when the Court directed Plaintiffs to draft their opening brief on **August 22, 2025**, and it appears to have been the rule in place when Plaintiffs *served* the brief on **September 19, 2025**, *see* ECF No. 482. Although the Individual Rules do not state which date in September they were revised (stating

---

[5]   SGBL cites Your Honor's "March 2020" rules as the "earlier rule." Opp. at 3 n.3. The previous rules are in fact the July 2023 revision but are the same as to this issue. *See* https://tinyurl.com/mdxvndxj.

8

only "September 2025" on page 6) and Plaintiffs are not aware of an order from the Court announcing the revision, the URL of Your Honor's Individual Rules indicates the current version of the rules was uploaded on **September 19, 2025**.[6]

Indeed, SGBL seems to imply as much, writing that "[e]ven if Your Honor's earlier rule that allowed for 'professional judgment' applies, Plaintiffs' decision to file a 5460-word memorandum contradicts that judgment." Opp. at 3 n.3. But Plaintiffs' brief is only 16 pages long, a fairly modest length for a motion dispositive as to a claim. Moreover, the brief addresses both the matter the Court decided—successor jurisdiction—*and* the matter it had not yet reached—successor liability.[7]

Plaintiffs do not know why SGBL applied a limitation to itself that was *not the rule* when the Court ordered the briefing schedule and Plaintiffs wrote their opening brief. The same "earlier" rule that applied to Plaintiffs' opening brief should apply to SGBL's responsive brief as well. If SGBL had simply reached out to Plaintiffs' counsel to raise the issue (as SGBL argues Plaintiffs should have done), Plaintiffs would of course have agreed that SGBL's limit is the same as Plaintiffs' in briefing this motion.

C. **SGBL's Successor Liability Arguments Are Unavailing.**

Despite offering to "decide whether" to "narrow the issues presented," Opp. at 4, SGBL's brief recitation of its liability arguments shows they simply restate its prior arguments. SGBL again argues that the ATA does not include "successor liability," which Plaintiffs addressed in their

---

[6] Using "Client URL" (a standard IT tool used to check when a webpage or online file was last updated), Plaintiffs confirmed that the file for the Court's Individual Rules (https://www.nyed.uscourts.gov/pub/rules/CBA-MLR.pdf) was updated on September 19, 2025, the same day Plaintiffs served their opening brief on SGBL.

[7] Indeed, it is unclear that L.R. 6.3 would even apply here. This is not a motion filed "within 14 days after the entry of the court's order being challenged" and does not raise "matters or controlling decisions which the moving party believes the court has overlooked." L.R. 6.3. Moreover, Plaintiffs' brief addresses arguments raised by SGBL that the Court has not previously reached and are not therefore subject to reconsideration.

9

opening brief. *See* Pls. Br. at 9-14. SGBL has no response to those arguments whatsoever. Instead, it cites two cases: *Ashley v. Deutsche Bank AG*, 144 F.4th 420, 436 (2d Cir. 2025), and *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452-53 (2002). *Ashley* does not mention successor liability at all; SGBL only cites the decision because it notes that the ATA "'incorporat[es] the definition of "person" of 1 U.S.C. § 1, which includes "corporations" and "companies"'—but does not include successors." Opp. at 10. Both SGBL and LCB are "corporations"—SGBL does not explain why the statute would have to spell out "successors." It does not spell out "employers," and yet *respondeat superior* applies under the ATA, as Plaintiffs showed. *See* Pls. Br. at 11.

Plaintiffs addressed *Barnhart* in their opposition to SGBL's motion to dismiss the FAC. *See* ECF No. 142 at 73. In brief, *Barnhart* dealt with assigning retiree benefit obligations to employers under the "Coal Act's" highly specific statutory scheme. When an employer folded, the Coal Act empowered a "Commissioner" to assign affected retirees' benefits obligations to another employer if it meets the statute's definition of a "related person" (i.e., related to the folded employer). 534 U.S. at 447.

In *Barnhart*, the Commissioner had assigned retirees to a defunct employer's asset purchaser contending "that a successor in interest … qualifies as a related person." *Id.* at 449. The Supreme Court, however, found that a successor in interest did not meet the statute's definition of a "related person," *and* it could not "infer" that it might meet it anyway because Congress used the term "successor" "intentionally and purposely" elsewhere in the statute. The Court found that "[w]here Congress wanted to provide for successor liability in the Coal Act, it did so explicitly, as demonstrated by other sections in the Act that give the option of attaching liability to 'successors' and 'successors in interest,'" and thus the Court would not read it into the definition of "related person." *Id.* at 452-53.

10

The ATA is not a retirement benefit assignment statute. It is a federal tort statute and, as Plaintiffs explained, "[t]he basic presumption is that Congress creates federal torts against the background of general tort law…." Pls. Br. at 11 (quoting *Linde v. Arab Bank, PLC*, 97 F. Supp. 3d 287, 336 (E.D.N.Y. 2015)). The ATA does not refer to "successors" at all, much less in a way that might conflict with "inferring" that successor liability applies to section 2333, as it generally does to tort actions.

## CONCLUSION

For the reasons stated above, the Court should reconsider its prior decision granting SGBL dismissal under FRCP 12(b)(2) and deny SGBL's motion to dismiss Plaintiffs' Fourth Claim for Relief under FRCP 12(b)(6).

Dated: October 10, 2025
      Hackensack, New Jersey

            Respectfully submitted,

            **OSEN LLC**

        By:   /s/ Michael J. Radine
                   Michael J. Radine
                   Gary M. Osen
                   Ari Ungar
                   Dina Gielchinsky
                   Aaron Schlanger
                   190 Moore Street, Suite 272
                   Hackensack, NJ 07601
                   Tel: (201) 265-6400
                   Fax: (201) 265-0303

                   **TURNER & ASSOCIATES, P.A.**
                   Tab Turner
                   4705 Somers Avenue, Suite 100
                   North Little Rock, AR 72116
                   (501) 791-2277

**MOTLEY RICE LLC**
Michael Elsner
John Eubanks
28 Bridgeside Boulevard
P.O. Box 1792
Mount Pleasant, SC 29465
(843) 216-9000

*Attorneys for Plaintiffs*

12