UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------x

ROBERT BARTLETT, *et al.*,                          :
                                                    :
            Plaintiffs,                      :   **Case No. 19-cv-7 (CBA)(TAM)**
                                                    :
   -against-                                      :
                                                    :
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL,            :
*et al.*,                                           :
                                                    :
            Defendants.                     :

-----------------------------------------------------------------------x

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
SOCIÉTÉ GÉNÉRALE DE BANQUE AU LIBAN SAL'S MOTION TO DISMISS UNDER
<u>FEDERAL RULE OF CIVIL PROCEDURE 12(b)(1)</u>**

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................... 1

BACKGROUND ........................................................................................................ 3

ARGUMENT ............................................................................................................. 7

    I.       SGBL's Motion Only Raises Merits Issues, Not Subject Matter Jurisdiction. ................ 7

          A.     SGBL's Arguments Relating to the Scope of the ATA Raise Merits Issues. ............... 7

          B.     SGBL Erroneously Relies on Cases Finding no *Ancillary* Jurisdiction Over Judgment Enforcement Actions Against Successors. ................................................... 8

    II.      Even Assuming SGBL's Arguments Were Properly Raised Under Rule 12(b)(1), SGBL's Invented Conception of Successor Liability Under the ATA Is Unavailing. ................. 12

          A.     SGBL Now Concedes that "Successor Liability Already Exists Under the ATA." ... 12

          B.     SGBL Overstates the Supreme Court's General Rule that "Silence" as to Aiding and Abetting in a Statute Means There Is None. ............................................................... 15

          C.     SGBL Baselessly Denies Allegations Establishing Its Relationship with LCB. ........ 18

          D.     Federal Antiterrorism Laws, Not Lebanese Law, Govern This Claim. ..................... 20

    III.    Even if the Court Lacked Federal Question Jurisdiction Over the Fourth Claim for Relief, It Would Have Supplemental Jurisdiction Over It. ............................................ 22

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006).................................................................................................... 7

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002).............................................................................................. 8, 17

*Bartlett v. Société Générale de Banque au Liban SAL*,
No. 19-cv-00007 (CBA) (TAM), 2024 U.S. Dist. LEXIS 241810 (E.D.N.Y. Sep. 18, 2024).... 4

*Bartlett v. Société Générale De Banque Au Liban Sal*,
No. 19-cv-00007 (CBA) (VMS), 2020 U.S. Dist. LEXIS 229921
(E.D.N.Y. Nov. 25, 2020)................................................................................... 4, 5, 24

*Behrens v. JPMorgan Chase Bank, N.A.*,
96 F.4th 202 (2d Cir. 2024).............................................................................. 23, 24

*Boim v. Am. Muslims for Palestine*,
No. 17-cv-3591, 2020 U.S. Dist. LEXIS 194081 (N.D. Ill. Oct. 20, 2020) ............................. 10

*Boim v. Am. Muslims for Palestine*,
9 F.4th 545 (7th Cir. 2021)........................................................................... 9, 10, 23

*Boim v. Holy Land Foundation for Relief & Development*,
549 F.3d 685 (7th Cir. 2008)............................................................................... 8, 11

*Central Bank of Denver v. First Interstate Bank of Denver*,
511 U.S. 164 (1994)........................................................................................... 15, 16

*Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*,
786 F. Supp. 867 (C.D. Cal. 1992)............................................................................ 14

*E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*,
3 F.4th 954 (7th Cir. 2021)..................................................................................... 8, 9

*Estate of Parsons v. Palestinian Auth.*,
651 F.3d 118 (D.C. Cir. 2011)............................................................................ 11, 16

*Flake v. Schrader-Bridgeport Int'l, Inc.*,
538 F. App'x 604 (6th Cir. 2013)........................................................................ 11, 14

*In re Safety-Kleen Corp.*,
380 B.R. 716 (Bankr. D. Del. 2008) ........................................................................ 14

*In re Terrorist Attacks on September 11, 2001*,
  714 F.3d 118 (2d Cir. 2013) ................................................................................................. 8

*Kaplan v. Lebanese Canadian Bank*,
  999 F.3d 842 (2d Cir. 2021) ................................................................................................. 5

*Kegun Chen v. Oceanica Chinese Rest., Inc.*,
  No. 13-cv-4623 (NGG) (PK), 2018 U.S. Dist. LEXIS 140925 (E.D.N.Y. Aug. 17, 2018) ...... 22

*Lelchook v. Société Générale de Banque au Liban S.A.L.*,
  147 F.4th 226 (2d Cir. 2025) ..................................................................................... *passim*

*Lelchook v. Société Générale de Banque au Liban SAL*,
  41 N.Y.3d 629, 239 N.E.3d 172 (N.Y. 2024) ............................................................ *passim*

*Lelchook v. Societe Generale De Banque Au Liban Sal*,
  67 F.4th 69 (2d Cir. 2023) ................................................................................................. 18

*Linde v. Arab Bank, PLC*,
  97 F. Supp. 3d 287 (E.D.N.Y. 2015) ............................................................................. 12, 17

*Linde v. Arab. Bank, PLC*,
  882 F.3d 314 (2d. Cir. 2018) ........................................................................................ 8, 16

*Monterey Bay Military Hous., LLC v. AMBAC Assurance Corp.*,
  531 F. Supp. 3d 673 (S.D.N.Y. 2021) ................................................................................ 16

*Peacock v. Thomas*,
  516 U.S. 349 (1996) .................................................................................................. 1, 8, 9

*Rodriguez v. Banco Cent.*,
  777 F. Supp. 1043 (D.P.R. 1991) ....................................................................................... 16

*Rodriguez v. Banco Cent.*,
  990 F.2d 7 (1st Cir. 1993) ................................................................................................. 16

*Rothstein v. UBS AG*,
  708 F.3d 82 (2d Cir. 2013) ..................................................................................... 8, 15, 18

*Schansman v. Sberbank of Russia PJSC*,
  128 F.4th 70 (2d Cir. 2025) .............................................................................................. 20

*Tsareff v. ManWeb Servs.*,
  794 F.3d 841 (7th Cir. 2015) .............................................................................................. 9

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*,
  916 F.3d 143 (2d Cir. 2019) .............................................................................................. 19

*Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*,
920 F.2d 1323 (7th Cir. 1990) ................................................................................. 9

*Weiss v. Nat'l Westminster Bank PLC*,
768 F.3d 202 (2d Cir. 2014) ................................................................................. 21

*Woodruff v. United States DOT*,
448 F. Supp. 2d 7 (D.D.C. 2006) ......................................................................... 13

**Statutes**

18 U.S.C. § 2334(e)(5)(C) ................................................................................. 17, 18

18 U.S.C. § 2338 ................................................................................................. 24

28 U.S.C. § 1367 ............................................................................................. 22, 23

**INTRODUCTION**

SGBL has effectively re-filed its Rule 12(b)(6) motion—just restyled as a Rule 12(b)(1) motion. This motion makes most of the same arguments and revisits many of the same cases from SGBL's 12(b)(6) motion—*Rothstein*, *Central Bank of Denver*, *In re Terrorist Attacks on September 11, 2001*, *Boim III*, *Barnhart*—none of which are related to subject matter jurisdiction in any relevant way.[1] *See* SGBL Supp. MTD Mem., ECF No. 136-1 at 12-13. SGBL has added a few cases that discuss jurisdiction, but only as to whether federal courts possess "*ancillary* jurisdiction over *new actions* in which a federal judgment creditor seeks to impose liability for a money judgment on a person not otherwise liable for the judgment." *Peacock v. Thomas*, 516 U.S. 349, 351 (1996) (emphasis added). Here, the Court has original jurisdiction over Plaintiffs' Fourth Claim for Relief. SGBL's disagreement regarding the reach of the Anti-Terrorism Act ("ATA") is a *merits* issue, not a jurisdictional one.

SGBL's brief contains one surprise, however—after repeatedly telling the Court that the ATA does not provide for successor liability, SGBL now asserts that it did "not mean the ATA does not encompass successor liability or permit successor liability claims in federal court—it most assuredly does." SGBL Rule 12(b)(1) Mot. ("Br.") at 2. *Compare to, e.g.*, SGBL Ltr. Mot. for Pre-Mot. Conf., ECF No. 499 at 2. SGBL now argues that "successor liability already exists under the ATA, *except in a very narrow category* of cases," which just so happens to be—unfortunately for Plaintiffs—"specifically, those involving the contractual liability of an asset purchaser that has no relation to the seller-wrongdoer and has paid arms-length, valuable consideration …." *Id.* at 13

---

[1] SGBL tries to get ahead of this, stating that its "intention in bringing this motion is not to re-argue points already briefed by the parties." Br. at 3. But the Court can see for itself that SGBL's brief "merely restated the same arguments the parties have briefed many, many times before," "recast … as jurisdictional arguments." Pls. Opp. to Ltr. Mot. for Pre-Mot. Conf., ECF No. 500.

(emphasis added). According to SGBL, the ATA permits successor liability claims, but only where the successor "is the same entity as its alleged predecessor." *Id.* at 1.

SGBL provides no authority for this novel (and convenient) formulation. But the ATA either includes claims premised on successor liability or it does not—it nowhere mentions any exceptions. SGBL's argument is simply a revamping of the personal jurisdiction argument it made to the *Lelchook* courts, which they rejected: "SGBL argues … that successor jurisdiction is available only where the successor and predecessor are 'one and the same' because they are alter egos, or via a merger or corporate reorganization…. We are not persuaded." *Lelchook v. Société Générale de Banque au Liban SAL*, 41 N.Y.3d 629, 634, 239 N.E.3d 172, 176 (N.Y. 2024). The argument does not fare any better for subject matter jurisdiction purposes, and SGBL does not even articulate a reason why it should.

But SGBL's argument is weaker yet because Plaintiffs' Fourth Claim for Relief most certainly *is* based on allegations that SGBL and LCB are *functionally* "the same entity." The Second Circuit found that because SGBL acquired all of LCB's assets and liabilities (removing those assets from the jurisdiction), the acquisition "resembles a merger in key respects." *Lelchook v. Société Générale de Banque au Liban S.A.L.*, 147 F.4th 226, 247-48 (2d Cir. 2025).

SGBL goes to great lengths to sidestep this finding. It cites pre-appeal district court analyses finding that LCB remains a separate entity, *see* Br. at 4-5—but the Circuit's finding noted that "LCB still *formally* exists as a separate entity." 147 F.4th at 247 (emphasis added). Incredibly, SGBL claims that, "[d]espite claims to the contrary, LCB is neither insolvent nor defunct." Br. at 7. But those claims were not Plaintiffs' or any court's—they were *LCB's*: "LCB told the Supreme Court [in 2018] that it 'is defunct, insolvent, and unable to pay any judgment rendered against it.'"

2

*Lelchook*, 147 F.4th at 234. SGBL does not explain how or why it knows more about LCB's finances than LCB (a purportedly independent entity) does.

In sum, this Court has subject matter jurisdiction over Plaintiffs' Fourth Claim for Relief. After seven years of litigation in this case and *Lelchook*, including visits to the Second Circuit and New York's high court, not one court has even *suggested* it lacked subject matter jurisdiction over the plaintiffs' successor liability claims against SGBL. "SGBL's piecemeal approach to this litigation" (as observed by this Court in its December 12, 2025, Minute Order), along with its various other delay tactics (e.g., moving to stay the mandate), have gone far enough. This Court should restore Plaintiffs' Fourth Claim for Relief.

## BACKGROUND

As a result of SGBL's seriatim motions to dismiss Plaintiffs' Fourth Claim for Relief, this Court is all too familiar with the procedural history of this particular dispute. Plaintiffs thus summarize it as briefly as possible.

Plaintiffs filed their original complaint on January 1, 2019, and three amended complaints thereafter, each alleging that SGBL and other Lebanese banks aided and abetted hundreds of Hezbollah-orchestrated terrorist attacks against U.S. forces serving in Iraq.

In addition to alleging that SGBL itself aided and abetted the attacks through its own conduct, Plaintiffs' Fourth Claim for Relief asserts that "Defendant SGBL is liable for Defendant LCB's role in The System as its successor, including as to all of LCB's liabilities." Third Amended Complaint ("TAC") ¶ 6112. As Plaintiffs alleged, when SGBL purchased LCB's business in 2011, SGBL expressly "assume[d] from the Seller [LCB], all of the Seller's Assets and Liabilities…." TAC Exhibit 1, ¶ 2.1. According to the Sale and Purchase Agreement ("SPA"):

> The Assumed Liabilities consist *inter alia* of any and all of the Seller's liabilities and/or obligations and/or debts of any kind, character or description, absolute or contingent, accrued or unaccrued, disputed or undisputed, liquidated or

3

unliquidated, secured or unsecured, joint or several, due or to become due, vested or unvested, determined, determinable or otherwise, to the extent they relate to the Seller's Business, all as at the Completion Date.

*Id.* ¶ 2.3. The language is maximally broad—as the Second Circuit noted in reviewing the same SPA, this language denotes SGBL's assumption of LCB's liabilities "without qualification." *Lelchook*, 147 F.4th at 240.

When SGBL acquired LCB, it purported to retain what appears to have been a consulting offshoot of SGBL's counsel's law firm to perform an outside audit identifying Hezbollah-related accounts held by LCB. TAC ¶ 108. The complaint alleges that some of the Hezbollah-related accounts were retained by SGBL, while most of the rest migrated to other banks—largely, the other Defendants here. *Id.* ¶¶ 109-20. Plaintiffs also alleged that "a subset of the accounts with 'links to Hezbollah' that exhibited 'classic signs of money laundering' migrated to Defendant SGBL and some of the most significant Hezbollah accounts (e.g. for the Martyrs Foundation – Lebanon) never made it on to the official list." *Id.* ¶ 1653. Plaintiffs further alleged that SGBL retained LCB accounts for "U.S. designated entities such as Elissa Holding (SDNTK) and Yousser Company for Finance and Investment (SDGT)." *Id.* ¶ 1668.

On November 1, 2019, SGBL moved to dismiss all claims against it, including the Fourth Claim for Relief (then in the First Amended Complaint), under Rules 12(b)(2) and 12(b)(6). *See* ECF Nos. 136-1, 139-1. The Court denied SGBL's motion as to "SGBL's own actions." *Bartlett v. SGBL*, No. 19-cv-00007 (CBA) (TAM), 2024 U.S. Dist. LEXIS 241810, at *61 (E.D.N.Y. Sep. 18, 2024) (referencing *Bartlett v. SGBL*, 2020 U.S. Dist. LEXIS 229921, at *73 (E.D.N.Y. Nov. 25, 2020)). However, the Court found that Plaintiffs had "failed to establish a *prima facie* case of personal jurisdiction as to the successor liability claim," because other courts applying New York law have only "recognized successor jurisdictional status when the successor corporation absorbs the predecessor corporation as in a merger," and SGBL and LCB did not formally merge. *Bartlett*,

4

2020 U.S. Dist. LEXIS 229921, at \*73, 76. The Court did not reach SGBL's Rule 12(b)(6) arguments against the Fourth Claim for Relief.

Whether a merger was necessary for successor jurisdiction arose in the parallel case *Lelchook v. SGBL*, No. 19-cv-0033 (CBA) (VMS) (E.D.N.Y.).[2] On certification from the Second Circuit, the New York Court of Appeals clarified that "where an entity acquires all of another entity's liabilities and assets, but does not merge with that entity, it inherits the acquired entity's status for purposes of specific personal jurisdiction." *Lelchook*, 41 N.Y.3d at 638-39, 239 N.E.3d at 179. The Second Circuit then ruled that:

> With the benefit of [the New York Court of Appeals'] decision, we now hold that SGBL is subject to the specific personal jurisdiction of New York courts for purposes of adjudicating the claims presented by Plaintiffs. We further decide that the exercise of that jurisdiction here comports with federal due process principles.

*Lelchook*, 147 F.4th at 232.

Plaintiffs then moved for reconsideration of the Court's dismissal of their Fourth Claim for Relief, pointing out that *Lelchook* and *Bartlett* were identical in relevant part. *See* ECF No. 491-1. SGBL responded that "Plaintiffs' (scant) reconsideration argument rests on their (incorrect) assumption that the facts of this case are indistinguishable from *Lelchook* …." ECF No. 492 at 5. However, SGBL's counsel was unable to identify any relevant distinctions between the cases, either in its brief or in oral argument. During that argument, the Court ruled from the bench that "[t]here's personal jurisdiction here. There's no way to distinguish this case from the *Lelchook* decision." 11/13/2025 Tr. at 41.

---

[2]     *Lelchook* was filed one day after the original *Bartlett* complaint was filed in 2019 by a law firm representing plaintiffs injured by rocket attacks launched by Hezbollah at Israel in 2006. Apart from the differences in the attacks and plaintiffs, the *Lelchook* complaint copied the *Bartlett* complaint verbatim. *See* 11/13/25 Tr. at 19, 33-34. After the *Lelchook* case was dismissed and then appealed to the Second Circuit, undersigned counsel agreed to brief and argue the *Lelchook* appeal *pro bono* before the New York Court of Appeals and Second Circuit, but did not, and do not represent the *Lelchook* plaintiffs before this Court or any other district court. Undersigned counsel did represent the same plaintiffs, again *pro bono*, in the appeal in *Kaplan v. Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir. 2021).

Plaintiffs also showed that the Fourth Claim for Relief satisfied Rule 12(b)(6), but SGBL declined to oppose that argument. *See id.* at 29 ("MR. LESKE: … the only issue that we briefed … is personal jurisdiction.").[3] SGBL argued it could "move to dismiss under 12(b)(6) or other grounds" if and when the Court determined it had personal jurisdiction over the claim. *Id.* at 11. The Court explained that SGBL had already made its 12(b)(6) arguments but permitted SGBL to file a premotion conference letter to show if "there's anything different" in terms of case law "on that issue than existed before." *Id.* at 44. *See also id.* at 12 ("THE COURT: Well, what is different now? What has changed?"), 28 (similar). SGBL's counsel responded, "[i]f there are no differences" in the case law as it now stands, "we will figure out a time to answer the complaint." *Id.* at 44.

In its letter, SGBL identified no such changes. *See* ECF No. 496. As Plaintiffs pointed out in response, "the only meaningful change or clarification of law since SGBL filed its original motion to dismiss came when the Second Circuit made clear that it considers SGBL to be LCB's *de jure* alter ego." ECF No. 497 at 1. Shortly thereafter, the Court "decline[d] Defendant SGBL's request for further briefing in the absence of new authority on successor liability." Dec. 1, 2025, Minute Order. The Rule 12(b)(6) component of Plaintiffs' motion for reconsideration remains *sub judice*—although the instant motion shows that SGBL's merits arguments are likewise unavailing.

Undeterred, SGBL tried a new tack—it argued the Court lacked *subject matter jurisdiction*. *See* ECF No. 499. Its premotion conference letter repeated its argument that "[t]he ATA nowhere mentions successor liability and does not create a federal statutory right of action" for it. *Id.* at 2. *See also* SGBL Opp. to Pls. Mot. for Reconsideration, ECF No. 492 at 10 (SGBL arguing that "the

---

[3]    SGBL also contended it could not respond to Plaintiffs' brief fully given the Court's word limits for motions for reconsideration—which it falsely accused Plaintiffs of violating "as a tactic." SGBL Opp. to Pls. Mot. for Reconsideration, ECF No. 492 at 3. When Plaintiffs showed that they followed the rule in place at the time it served its brief, Pls. Recon. Reply, ECF No. 493 at 8-9, SGBL brushed off its prior accusation as "confusion regarding the procedural rules applicable to Plaintiffs' reconsideration motion." ECF No. 496 at 2.

6

ATA's text does not create a private right of action against a successor"). Plaintiffs responded that "SGBL has merely restated the same arguments the parties have briefed many, many times before," "recast … as jurisdictional arguments," which SGBL spuriously defended as arguments "'revealed' by 'recent briefing' and [which] 'only recently came to counsel's attention.'" ECF No. 500 at 1 (quoting SGBL Ltr. Mot. for Pre-Mot. Conf., ECF No. 499 at 1). The Court responded: "Although I well understand Plaintiffs' frustration with Defendant SGBL's piecemeal approach to this litigation, I cannot deny Defendant the opportunity to move for dismissal for lack of subject matter jurisdiction." Dec. 12, 2025, Minute Order.[4]

**ARGUMENT**

**I.    SGBL's Motion Only Raises Merits Issues, Not Subject Matter Jurisdiction.**

**A.    SGBL's Arguments Relating to the Scope of the ATA Raise Merits Issues.**

SGBL's motion improperly conflates merits with subject matter jurisdiction issues. The precise reach and contours of a federal statute is "a merits question," not a question of a court's "'power to hear a case.'" *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254 (2010) (citation omitted). *See also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 511 (2006) (cautioning against "erroneously conflat[ing]" 12(b)(1) and 12(b)(6) arguments in federal question cases) (citation omitted). Indeed, SGBL previously made its "statutory silence" argument in its motion to dismiss the Fourth Claim for Relief on *Rule 12(b)(6)* grounds. *See* SGBL Supp. MTD Mem., ECF No. 136-1 at 12-13. These identical arguments cannot fall under both rules.

Moreover, *each* of the decisions SGBL cited as addressing whether the ATA included aiding and abetting claims treated the issue as a merits question, not a jurisdictional one. *See Rothstein v.*

---

[4]    SGBL in fact threatens yet another such motion: "if it becomes necessary, SGBL will show the SPA did *not* transfer all LCB's liabilities …." Br. at 4. As noted *infra* at 20-21, this is a red herring—SGBL could have produced and relied upon the whole SPA in support of either its 2019 Rule 12(b)(2)/(6) motion or this Rule 12(b)(1) motion.

7

*UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013); *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008) ("*Boim III*"); *Linde v. Arab Bank, PLC*, 882 F.3d 314, 326 (2d. Cir. 2018), *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013). The same is true in *Central Bank of Denver*, which highlighted the "statutory silence" principle, and *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438 (2002), which applied the principle to the Coal Act. SGBL's only cases raising subject matter jurisdiction involve *ancillary* jurisdiction, not federal question jurisdiction. *See* section I.B, *infra*.

Thus, although SGBL's remaining arguments are erroneous, they are also, more importantly, irrelevant to subject matter jurisdiction.

**B.    SGBL Erroneously Relies on Cases Finding no *Ancillary* Jurisdiction Over Judgment Enforcement Actions Against Successors.**

SGBL raises a series of decisions it contends "reject[ed] [the] argument that [a] successor liability claim involving a federal statute 'was enough to show their claim arises under federal law and therefore raises a federal question properly in federal court.'" Br. at 1 (quoting *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954 (7th Cir. 2021) ("*Prather*")). However, each of these cases only holds that federal courts do not "possess ancillary jurisdiction over *new* actions in which a federal judgment creditor seeks to impose liability for a [pre-existing] money judgment on a person not otherwise liable for the judgment." *Peacock*, 516 U.S. at 351 (emphasis added). Unlike in *Morrison* and *Arbaugh*, these claims do not arise under a federal statute but are "ancillary" to some prior case.

In *Prather*, the issue was not whether a successor could be sued under ERISA, but whether a successor could be sued to satisfy a prior ERISA judgment. That court explained that the plaintiffs did not "purport to bring any cause of action supplied by ERISA," because "ERISA does not provide an enforcement mechanism for collecting judgments." 3 F.4th at 961 (citation omitted).

8

And in *Boim v. American Muslims for Palestine*, the Seventh Circuit explained: "The jurisdictional analysis … plays out differently depending on the posture of the enforcement proceeding"—specifically, "[t]he jurisdictional analysis takes on added complexity when the enforcement effort seeks to proceed in a new law-suit." 9 F.4th 545, 551-52 (7th Cir. 2021) ("*Boim IV*"). Even SGBL asserts that "[e]very federal lawsuit, despite a relationship to an earlier lawsuit, requires its own independent basis for federal subject matter jurisdiction." Br. at 11. That is true—but there is no "earlier lawsuit" here.

As these cases recognize, however, a successor may be made "liable for the judgment" *in the first instance*—that is, directly under the statute, rather than in an ancillary action. *Peacock*, 516 U.S. at 351. *Prather* explains:

> To be sure, we have recognized the successor doctrine as a means of holding one party liable when the lawsuit contains some independent federal cause of action. We are aware of no case, however, recognizing *a standalone federal right of action to collect an ERISA judgment* against an alleged successor, and we decline to create a private right of action where the statute has not.

3 F.4th at 961-62 (emphasis added) (citations omitted).

*Prather* gave two examples of cases recognizing the successor doctrine: *Tsareff v. ManWeb Servs.*, 794 F.3d 841 (7th Cir. 2015), and *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323 (7th Cir. 1990). In each, the Seventh Circuit repeated the uncontroversial proposition that an asset purchaser may be sued under ERISA for its predecessor's conduct if the plaintiff can prove one of the "exceptions" to the general rule holding the asset purchaser "not liable for the debts and liabilities of the seller." *ManWeb*, 794 F.3d at 845. *See also Artistic Furniture*, 920 F.2d at 1325-26 (listing the "exceptions" to the "general common law rule"). These are the same four exceptions that apply generally to torts, including the ATA—and which the New York Court of Appeals and the Second Circuit found apply to SGBL because it expressly assumed LCB's liabilities.

9

SGBL relies heavily on *Boim IV*, but that case only stands for the proposition "that each standalone case must have an independent basis for subject matter jurisdiction," and "ancillary jurisdiction does not extend over new lawsuits to enforce an existing judgment against a party not already bound to that judgment." *Boim IV*, 9 F.4th at 554. There, plaintiffs already had an ATA judgment and initiated a second suit against "alter egos and/or successors of *Boim* [judgment debtors]." *Id.* at 555. The court noted those allegations would make the second suit defendants bound to the first suit's judgment and determined that the district court *did* have subject matter jurisdiction over that claim. Here, Plaintiffs have not brought a *second* suit against SGBL—but even if they had, *Boim IV* would not change the result, as the Second Circuit rejected any distinction between Plaintiffs' allegations and a "corporate alter ego" relationship.

SGBL's citation to *Boim IV* is due primarily to the decision's observation that "successor liability [is] another form of vicarious liability" and the ATA "does not appear to provide a cause of action for imposing vicarious liability." *Id.* at 555. But that dicta resulted from the fact that the *Boim* plaintiffs brought "a state law successor liability claim" as an alternative against certain defendants, which the district court declined to retain, having (erroneously) dismissed the principal "alter ego/successor" claim. *Boim v. Am. Muslims for Palestine*, No. 17-cv-3591, 2020 U.S. Dist. LEXIS 194081, at *11 (N.D. Ill. Oct. 20, 2020). The Seventh Circuit did not rule on that state law claim—it only noted that restoring the principal claim "necessitates a fresh look by the district court at these additional claims"—making its observations on successor liability and the ATA dicta. *Boim IV*, 9 F.4th at 559.

Moreover, it is not clear what the *Boim IV* panel had in mind in equating successor liability and vicarious liability. As explained below, "[v]icarious liability and successor liability … are distinguishable where a successor corporation's liability stems from its express assumption of that

10

liability." *Flake v. Schrader-Bridgeport Int'l, Inc.*, 538 F. App'x 604, 623 (6th Cir. 2013) (Stranch, J., dissenting) . The contours of the *Boim* plaintiffs' state law claim for successor liability were not spelled out, but it certainly did not involve the express assumption of liabilities.

Nor is it clear what the Seventh Circuit meant in writing that the ATA "does not appear" to include vicarious liability. The decision cites *Boim III*, but that opinion does not involve or even mention vicarious liability at all. If anything, it suggests the opposite, as the decision commanded courts to "analyze the tort liability" under the ATA "under general principles of tort law." *Boim III*, 549 F.3d at 692.[5] As other courts have explained (including Judge Cogan in this District), that direction means courts must assume the ATA *does* include vicarious liability.

For example, D.C. Circuit Judge Janice Rogers Brown explained that *respondeat superior*—a form of vicarious liability that transfers liability from an actor to a non-actor—is part of the ATA even though the statute does not explicitly state it:

> "[W]e start from the premise that when Congress creates a federal tort it adopts the background of general tort law." *Staub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011). Consistent with this principle, the Supreme Court has looked to common law doctrines to determine the scope of liability under federal tort laws, *see Burlington N. & Santa Fe Ry. v. United States*, 556 U.S. 599, 613-14 (2009) and of ***vicarious liability*** in particular, *see Burlington Indus. v. Ellerth*, 524 U.S. 742, 764 (1998) …. *Respondeat superior* liability is an elementary principle of tort law and must therefore inform our interpretation of the federal torts created in the Anti-Terrorism Act. Thus, the Palestinian Authority is liable for the acts its employees committed within the scope of their employment.

*Estate of Parsons v. Palestinian Auth.*, 651 F.3d 118, 148 (D.C. Cir. 2011) (Brown, J., concurring in part and dissenting in part)[6] (citations modified, emphasis added). In *Linde v. Arab Bank, PLC*, Judge Cogan "agree[d] with the careful reasoning of Circuit Judge Janice Rogers Brown's

---

[5]    There, it meant that although aiding and abetting and conspiracy liability were unavailable under the ATA as it existed in 2008, "[p]rimary liability in the form of material support to terrorism has the character of secondary liability." 549 F.3d at 691.

[6]    None of the majority or other opinions in *Parsons* disagreed with Judge Brown's reasoning.

concurrence in [*Parsons*]," and found that Arab Bank was liable for its employees' acts under the *respondeat superior* principle. 97 F. Supp. 3d 287, 336 (E.D.N.Y. 2015).

**II.     Even Assuming SGBL's Arguments Were Properly Raised Under Rule 12(b)(1), SGBL's Invented Conception of Successor Liability Under the ATA Is Unavailing.**

> **A.     SGBL Now Concedes that "Successor Liability Already Exists Under the ATA."**

Despite repeatedly denying it, SGBL now concedes that "successor liability … exists under the ATA." Br. at 12-13. In fact, according to SGBL, it exists in any scenario "except in a *very narrow category* of cases … specifically, those involving the contractual liability of an asset purchaser that has no relation to the seller-wrongdoer and has paid arms-length, valuable consideration …." *Id.* (emphasis added). Conveniently, of course, that would just happen to include SGBL's (erroneous) characterization of its acquisition of LCB.

More specifically, SGBL asserts—without citation—that the ATA permits "successor liability" in four circumstances:

> Where an alleged "successor" (a) merely continues in the operations of the predecessor with continuity of ownership (*i.e.*, is the result of a corporate reorganization or a change in name only), (b) is the entity that survives a statutory or *de facto* merger, (c) is the predecessor's alter ego, or (d) is the result of sham transaction, the claim seeks to hold the successor-defendant *directly* liable for violating the ATA. That raises a federal question invoking a district court's subject matter jurisdiction.

*Id.* at 2. In sum, SGBL's argument is that the ATA *does* include successor liability, but only where the successor and predecessor are "one and the same." *Id.* at 5. Thus, SGBL contends that "[u]nder the ATA, Plaintiffs may seek and recovery [*sic*] damages under a successor liability theory against any entity that is connected to the commission of a terrorist act or its causal chain." *Id.* at 12.

SGBL does not provide any citation for its four bases for ATA successor liability. It appears to simply be a retread of the successor *jurisdiction* (i.e., personal jurisdiction) argument SGBL made in its *Lelchook* appeal. As the Second Circuit summarized:

> SGBL insists that LCB's contacts cannot be imputed to it for personal jurisdiction purposes because the two banks are not "one" or "the same entity," as in the case of statutory mergers, de facto mergers, parent-subsidiary relationships, or corporate reorganizations. In essence, … if the successor and predecessor are … effectively one another's alter egos.

147 F.4th at 247 (citations omitted).

The Circuit rejected SGBL's argument because "[s]uch a rule would require the Court to close its eyes to the reality of the relationship between these two banks":

> Although LCB still formally exists as a separate entity, SGBL's acquisition resembles a merger in key respects. As this Court has previously explained, "a distinguishing feature" between "a merger" and a simple asset purchase is that, under the former, the merged entity "is subject to all the liabilities of the acquired companies." That is no distinction here, however, where SGBL expressly acquired all of LCB's liabilities.
>
> …
>
> In fact, we reject any formal distinction between cases involving statutory and de facto mergers, or corporate alter egos and reorganizations, on the one hand, and cases involving the wholesale assumption of assets and liabilities in a way that would needlessly redound to the benefit of wrongdoers, on the other.

*Id.* at 247-248 (citations omitted).[7] The New York Court of Appeals rejected the same argument:

"SGBL argues … that successor jurisdiction is available only where the successor and predecessor are 'one and the same' because they are alter egos, or via a merger or corporate reorganization….

We are not persuaded." *Lelchook*, 41 N.Y.3d at 634, 239 N.E.3d at 176.

---

[7]    In a premotion conference letter, SGBL argued that the finding was made "in a paragraph involving personal jurisdiction," so it must only be true in that context. ECF No. 499 at 1. SGBL does not make the argument again now, but it was unavailing anyway. The Circuit's concern that corporations not escape federal torts by "selling" all their assets and liabilities to corporations that they contend the statute cannot reach applies equally to subject matter jurisdiction. *See* 147 F.4th at 248. Moreover, just as the Second Circuit noted that "for personal jurisdiction, we look through form to substance," *id.* at 247 (citation omitted), "a court looks at the substance of the plaintiff's pleadings rather than the form of the pleadings to determine if it has subject-matter jurisdiction," *Woodruff v. United States DOT*, 448 F. Supp. 2d 7, 12 (D.D.C. 2006).

In fact, SGBL's invented four bases for ATA successor liability appear to be a not-so-subtle reworking of the "four exceptions to the general rule that a purchaser of assets is not liable for the seller's torts" identified by the New York Court of Appeals. These are:

> when (1) [a corporation] expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

*Lelchook*, 41 N.Y.3d at 635, 239 N.E.3d at 177 (internal quotation marks and citation omitted).

SGBL's adaptation drops the first exception—which, of course, applies to it—and inserts an "alter ego" exception to superficially track the original, four-part formulation. To justify the formulation it has concocted, SGBL contends that an alter ego claim "seeks to hold the successor-defendant *directly* liable for violating the ATA," whereas an express assumption of liabilities is a "form[] of secondary liability" not included in the ATA. Br. at 2, 13.

But courts disagree: "Where, as here, a successor corporation expressly assumes responsibility for known or expected liabilities, its liability also stems from an action of the successor corporation—the express assumption—and not simply from the tortious action of the predecessor corporation." *Flake*, 538 F. App'x at 623 (Stranch, J., dissenting).[8] Thus, where a buyer is "on notice" that it was acquiring the seller's "debts and liabilities …. successor liability is *not* the functional equivalent of vicarious liability"—instead, the successor "is responsible as the wrongdoer …." *Certain Underwriters at Lloyd's of London v. Pac. Sw. Airlines*, 786 F. Supp. 867, 871 (C.D. Cal. 1992)). *See also In re Safety-Kleen Corp.*, 380 B.R. 716, 740 (Bankr. D. Del. 2008) ("[w]hen a buyer expressly assumes liabilities of a seller, it becomes *directly* liable therefore") (emphasis added); Pls. Recon. Mem., ECF No. 491-1 at 12 (discussing same).

---

[8]    The majority opinion in *Flake* agreed with Judge Stranch's dissent on this issue: "[A]s the dissent points out, successor liability does not equate with vicarious liability in all cases," such as "when a corporation acquires another entity with notice of the latter's debts and liabilities." *Flake*, 538 F. App'x at 611 (citation omitted).

14

Here, of course, SGBL assumed LCB's liabilities "expressly" and was "on notice" that they included potential claims predicated on LCB's assistance to Hezbollah. The New York Court of Appeals found that SGBL "would have been on notice when it made this acquisition of LCB's potential exposure in New York in connection with the terrorist attacks," given LCB's designation as a primary money laundering concern and the pre-existing *Licci* litigation. *Lelchook*, 41 N.Y.3d at 637, 239 N.E.3d at 178. The Second Circuit agreed: "The potential reach of LCB's liabilities, and its jurisdictional contacts, were known to SGBL at that time." *Lelchook*, 147 F.4th at 243.

**B.    SGBL Overstates the Supreme Court's General Rule that "Silence" as to Aiding and Abetting in a Statute Means There Is None.**

Having redefined successor liability for its own needs, SGBL argues (once again) that the type Plaintiffs allege does not fall under the ATA. Its evidence is that the ATA is "silent" on successor liability, although that somehow only applies to the "very narrow category of" allegations at issue here—not to successor liability claims against alter egos, which SGBL claims the ATA includes.

SGBL repeats its argument that the Supreme Court's holding about aiding and abetting in *Central Bank of Denver* can be extended to successor liability. In *Rothstein*, the Second Circuit applied the Supreme Court's conclusion that "'an implicit congressional intent to impose ... aiding and abetting liability' could not plausibly be inferred from 'statutory silence'" to the ATA, finding that it also did not include aiding and abetting liability (before JASTA's enactment added such liability explicitly). 708 F.3d at 97 (quoting *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164, 185 (1994)). SGBL argues that "successor liability"—or at least the kind alleged here—is an equivalent form of "secondary liability." Br. at 13.

As Plaintiffs have previously explained, SGBL errs in equating the two concepts. "Aiding and abetting" is a separate (but related) tort from "primary" liability, focusing on different bad acts

15

(encouragement and assistance) and containing its own elements (for example, aiding and abetting does not require showing that the assistance itself "caused plaintiffs' injuries," *Linde*, 882 F.3d at 331). The Supreme Court explained that a court may not "extend liability beyond the *scope of conduct* prohibited by the statutory text," or "amend the statute to create liability for *acts* that are not themselves [wrongful] within the meaning of the statute." *Central Bank of Denver*, 511 U.S. at 177, 178 (emphasis added).

Successor liability is not a different tort with its own "conduct" and "acts." Instead, and as explained above, successor liability is a "general principle of tort law"—and there is no legal doctrine requiring that such principles be spelled out in every statute. *Boim III* directs courts to "analyze the tort liability" under the ATA "under general principles of tort law" and Judges Brown and Cogan made clear that includes vicarious liability (and thus, *a fortiori*, successor liability, which when made "expressly" and "on notice" is a form of "direct" liability, *see supra* at 14-15).

Accordingly, as Plaintiffs have explained previously, courts "have concluded that 'principles of successor liability apply to RICO claims,'" even though RICO's civil cause of action does not mention the concept. Pls. Recon. Mem., ECF No. 491-1 at 13 (quoting *Monterey Bay Military Hous., LLC v. AMBAC Assurance Corp.*, 531 F. Supp. 3d 673, 730 n.55 (S.D.N.Y. 2021), and citing other cases).[9] RICO, like the ATA, is a criminal statute with a civil analogue that provides treble damages (indeed, Judge Brown's concurrence in *Parsons* explained in depth why the ATA's treble damages provision does not prevent the application of vicarious liability principles, 651 F.3d at 148-49).

---

[9]    Plaintiffs also noted one court's observation that successor liability is especially appropriate under RICO where "the purchaser has the time to conduct a due diligence investigation of the company to be purchased along with a careful investigation of lurking liability." Pls. Recons. Mem. at 13 n.6 (quoting *Rodriguez v. Banco Cent.*, 777 F. Supp. 1043, 1065 (D.P.R. 1991), aff'd, 990 F.2d 7 (1st Cir. 1993)). Here, of course, SGBL touts its "compliance process … and a parallel auditing" which "screen[ed] LCB's accounts, customers, and operations." Br. at 6-7. *See also Lelchook*, 41 N.Y.3d at 631 (observing that given SGBL's presumably "robust due diligence," it "should understand where jurisdiction over such liabilities may lie").

Finally, Plaintiffs have repeatedly shown that *Barnhart* is irrelevant. *See* Pls. MTD FAC Opp., ECF No. 142 at 73; Pls. Recon. Reply, ECF No. 493 at 10. In brief, *Barnhart* dealt with assigning retiree benefit obligations to employers under the Coal Act's highly specific statutory scheme. When an employer folded, the Coal Act empowered a "Commissioner" to assign affected retirees' benefits obligations to another employer if it meets the statute's definition of a "related person" (i.e., related to the folded employer). 534 U.S. at 447. The Commissioner had assigned retirees to a defunct employer's asset purchaser contending "that a successor in interest … qualifies as a related person." *Id.* at 449. The Supreme Court, however, found that a successor in interest did not meet the statute's definition of a "related person," *and* it could not "infer" that it might meet that definition anyway because Congress used the term "successor" "intentionally and purposely" elsewhere in the statute. The Court found that "[w]here Congress wanted to provide for successor liability in the Coal Act, it did so explicitly, as demonstrated by other sections in the Act that give the option of attaching liability to 'successors' and 'successors in interest,'" and thus the Court would not read it into the definition of "related person." *Id.* at 452-53.

The ATA is not a retirement benefit assignment statute. It is a federal tort statute and, as Plaintiffs explained, "[t]he basic presumption is that Congress creates federal torts against the background of general tort law…." *Linde*, 97 F. Supp. 3d at 336. Unlike the Coal Act, the ATA does not contain any conflicting reference to successor liability. SGBL argues that the ATA contains a provision "explicitly extending application of [a] subsection to 'any organization or other entity that is a successor,'" Br. at 13 (quoting 18 U.S.C. § 2334(e)(5)(C))—but that language has nothing to do with *successor liability*. It comes from a later amendment (2019) establishing that the Palestinian Authority and Palestine Liberation Organization—and "any organization or other entity that is a successor to or affiliated with the Palestinian Authority or the Palestine

17

Liberation Organization"—may, in certain circumstances, be treated as consenting to personal jurisdiction relating to ATA claims. 18 U.S.C. § 2334(e)(5)(C). It has nothing to do with the scope of *liability* under the ATA, or how Congress constructed the ATA (1992) or JASTA (2016). *See Rothstein*, 708 F.3d at 97 (comparing usages of secondary *liability* in the civil and criminal provisions of the ATA).

### C. SGBL Baselessly Denies Allegations Establishing Its Relationship with LCB.

### 1. SGBL Ignores the Circuit's Findings.

Even under SGBL's invented "merger or alter ego" requirement, its argument fails because the Second Circuit found its acquisition of LCB resembled a merger in relevant respects. SGBL simply ignores this analysis and instead recites language from the district courts which it prefers, such as that LCB and SGBL "were not one and the same" and "did not merge." Br. at 4-5 (citing "Judge Dearie in *Lelchook v. SGBL* and this Court"). *See also id.* at 12 (insisting, yet again, that it is not "the alter ego of the wrongdoer"). The Court already explained that these decisions have since been set aside by the Circuit. 11/13/2025 Tr. at 16 ("THE COURT: …. You can still say they're wrong. I have to say they're right.").[10]

SGBL notes that the *Lelchook* (and *Bartlett*) plaintiffs did "not allege that SGBL and LCB are 'one and the same'" or make an "allegation of alter ego liability.'" Br. at 5 (quoting *Lelchook v. Societe Generale De Banque Au Liban Sal*, 67 F.4th 69, 78, 85 n.23 (2d Cir. 2023)). But the Circuit's ultimate finding remains that *even though* LCB "formally exists as a separate entity," its acquisition by SGBL "resembles a merger in key respects." 147 F.4th at 247-48. Nor did Plaintiffs waive anything—the Circuit "reject[ed] any formal distinction between" the allegations Plaintiffs

---

[10] Likewise, SGBL still complains that its purchase of LCB in 2011 means it could not anticipate Plaintiffs' claims which "did not exist … until 2016 when Congress enacted JASTA." Br. at 8. As Plaintiffs have explained, the Second Circuit already rejected this argument. *See* Pls. Recon. Reply, ECF No. 493 at 4.

*did* make and "cases involving statutory and de facto mergers, or corporate alter egos and reorganizations." *Id.* at 248 (citing *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 156 (2d Cir. 2019)). In fact, Plaintiffs made this very argument, also relying on *U.S. Bank*, in opposing SGBL's first motion to dismiss in 2020. *See* Pls. MTD FAC Opp., ECF No. 142 at 74-75 (arguing that the Second Circuit in *U.S. Bank* "could 'see no reason to doubt' that the successor to 'all' liabilities 'would be subject to jurisdiction' wherever the predecessor would be").

### 2. SGBL Again Denies Established Facts to Make LCB Appear to Be a Going Concern.

SGBL states as fact that, "[d]espite claims to the contrary, LCB is neither insolvent nor defunct." Br. at 7. The "claim" that LCB is "insolvent and defunct" is not Plaintiffs'—it's *LCB's*. As Plaintiffs already reported, "LCB told the Supreme Court seven years ago [i.e., in 2018] that it 'is defunct, insolvent, and unable to pay any judgment rendered against it.'" Pls. Recon. Mem., ECF No. 491-1 at 15 n.7 (quoting *Lelchook*, 147 F.4th at 234). Presumably, LCB—which, according to SGBL, "continues to exist" and is "actively litigating," Br. at 7—knows whether it is insolvent or defunct.[11]

To the extent that SGBL is meaningfully separate from LCB, it is unclear why it would be privy to LCB's current financial status or why this Court should consider SGBL's factual assertions on the matter.[12] But this is not the first time SGBL has argued both sides of a factual question. As Plaintiffs previously demonstrated, SGBL had "told the Second Circuit that '[b]eginning in 2011,

---

[11]     At this stage, it is unclear whether the multiple law firms (*e.g.*, DLA Piper, Squire Patton Boggs, Nixon Peabody) that have been defending LCB in various federal proceedings since 2011 are being compensated by LCB through some undisclosed capital reserve or by SGBL itself.

[12]     Of course, if SGBL's information were somehow better than LCB's, it could have raised it in opposing Plaintiffs' motion for reconsideration. Moreover, LCB has recently appeared in this case, and has not mentioned any fortuitous new-found wealth. This is all the more reason the Court should order discovery to assess the circumstances of LCB's appearance just as SGBL is called to answer for LCB's conduct. *See* Pls. Opp. to Ltr. Mot. for Pre-Mot. Conf., ECF No. 506.

19

[the proceeds from the purchase of LCB] were available *in the forum* to any plaintiff holding claims against LCB,'" Pls. Recon. Reply, ECF No. 493 at 6 (quoting *Lelchook*, ECF No. 89 at 4-5), but then told *this* Court that "'[t]here have never been any assets in New York to satisfy any judgment against LCB,'" and that Plaintiffs do not allege that "'SGBL's $580 million payment … touched New York – because they cannot.'" *Id.* at 5 (quoting SGBL Opp., ECF No. 492 at 8).

### 3. SGBL Continues to Insist that It Did Not Acquire All of LCB's Assets and Liabilities.

SGBL suggests the Second Circuit erred in finding its acquisition of LCB "resemble[d] a merger in key respects" because "Plaintiffs concede SGBL did not purchase all LCB's assets and liabilities," as "SGBL declined to assume certain LCB customers and their accounts—which represent both assets and liabilities …." Br. at 6. None of this is accurate, as Plaintiffs have now explained many times. *See, e.g.*, Pls. Opp. to MTD FAC, ECF No. 142 at 70-71, Pls. Recon. Mem., ECF No. 491-1 at 6, Pls. Recon. Reply, ECF No. 493 at 4-5. When SGBL purchased LCB, it offboarded some, but not all, Hezbollah accounts—however, the liability at issue here is owned by *LCB*, not the accounts, and accounts do not "represent … liabilities," as SGBL claims. And, again, deciding not to service certain accounts *going forward* has nothing to do with SGBL's acquisition of liability for LCB's *prior* conduct. In any event, the Second Circuit has found that SGBL assumed all LCB's assets and liabilities in every way meaningful to this motion.[13]

### D. Federal Antiterrorism Laws, Not Lebanese Law, Govern This Claim.

Finally, SGBL argues that the Fourth Claim for Relief does not arise under the ATA: "*LCB's* alleged liability will be determined by reference to the ATA, [but] SGBL's successor liability will

---

[13]   SGBL has previously argued that Plaintiffs "conceded" that SGBL did not acquire liabilities that "do not relate to [LCB's] business." SGBL Supp. Reply, ECF No. 137 at 1 n.1, 6. And as Plaintiffs have explained and this Court already found, providing banking assistance to Hezbollah was "certainly an 'activity in which any commercial bank could engage.'" Mem. Op., ECF No. 476 at 15 (quoting *Schansman v. Sberbank of Russia PJSC*, 128 F.4th 70, 82 (2d Cir. 2025)).

be decided by reference to the SPA under Lebanese law." Br. at 2. Moreover, SGBL argues, retaining this case would apply the ATA "extraterritorially" over the meaning of the SPA. *Id.* at 11-12, 14.[14]

But the SPA's meaning has already been decided as a pleading matter by the Second Circuit. This Court noted the same when SGBL's counsel raised submitting declarations on Lebanese law:

> THE COURT: What would the Lebanese declarations go to? I don't understand.
>
> MR. LESKE: Well, the SPA is a Lebanese – it's not an English. None of the SPA had anything to do with New York or the United States. It's purely --
>
> THE COURT: But doesn't that document go to the question of personal jurisdiction which has been resolved by the Second Circuit in *Lelchook*? Are you trying to relitigate that? Because there's no difference.

11/13/2025 Tr. at 13. The SPA does not have one meaning for personal jurisdiction and another for subject matter jurisdiction.

SGBL's counsel admitted that the *Lelchook* courts had to take these allegations as true, as does this Court. *Id.* at 14. Of course, as the Court noted, SGBL could have produced and relied on the whole SPA because "[o]n jurisdiction, you can go outside of the pleadings to some extent." *Id.* at 22. *See also* Pls. Recon. Mem., ECF No. 491-1 at 8 ("SGBL could have produced affidavits and exhibits in support of a Rule 12(b)(2) motion (or a complete version of a document incorporated by reference to the complaint, as the SPA was)."). But, despite repeatedly assuring the Court that the whole SPA would exculpate the bank, SGBL has refused to produce it.

---

[14] The ATA is a statute with express extraterritorial reach. *See, e.g., Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 211 (2d Cir. 2014) ("Congress clearly expressed its intention for § 2333(a) to apply to extraterritorial activities when the statute's standards are met, regardless of the views and laws of other nations.").

21

III.    **Even if the Court Lacked Federal Question Jurisdiction Over the Fourth Claim for Relief, It Would Have Supplemental Jurisdiction Over It.**

Under 28 U.S.C. § 1367, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." In fact, where the claims "stem from approximately the same set of events and under similar legal standards," a "court *must* exercise supplemental jurisdiction over" a state law claim unless "the state claim against her falls under one of the § 1367(c) exceptions." *Kegun Chen v. Oceanica Chinese Rest., Inc.*, No. 13-cv-4623 (NGG) (PK), 2018 U.S. Dist. LEXIS 140925, at *8 (E.D.N.Y. Aug. 17, 2018) (emphasis in original). *See id.* at *11 (noting that where the federal and state claims "form[] a common nucleus of operative fact …, the court has no discretion to decline supplemental jurisdiction"). Only where an exception applies does a court have the "discretion to decline supplemental jurisdiction," but even then, it still may "be improper to do so." *Id.* "When deciding to decline supplemental jurisdiction, the court must 'meaningfully balance' whether declination would serve the interests of judicial economy, convenience, fairness, and comity." *Id.* (citations omitted).

Here, all of Plaintiffs' claims relate to Lebanese banks pervasively and systemically assisting Hezbollah during the relevant period. And, of course, Plaintiffs' successor liability claim is substantively *identical* to Plaintiffs' claims against LCB. The relevant exceptions do not apply, nor does SGBL suggest otherwise: (1) the only "novel … issue of State law"—personal jurisdiction—has now been resolved; (2) the claim does not "substantially predominate[]" over the original jurisdiction claims; (3) the district court has not "dismissed all claims over which it has original jurisdiction"; and (4) there are no "exceptional circumstances" or "compelling reasons" to decline jurisdiction. 28 U.S.C. § 1367(c). Indeed, even in an *ancillary enforcement* suit, the

22

*Boim IV* court noted that the district court may have supplemental jurisdiction over the plaintiffs' state law successor liability claims. 9 F.4th at 559.

SGBL itself does not dispute the application of 28 U.S.C. § 1367 to the Fourth Claim for Relief, except to argue that "Plaintiffs have never asserted" it and "it is unclear whether this Court can or should retroactively exercise its discretion as to the latter, to the extent it may even do so." Br. at 15. Plaintiffs have not failed to "assert" supplemental jurisdiction, as there was no need to do so previously. SGBL's argument is particularly audacious because it has implausibly claimed that the supposed jurisdictional defect in the Fourth Claim for Relief was only "revealed" by "recent briefing" and "only recently came to counsel's attention." SGBL Ltr. Mot. for Pre-Mot. Conf., ECF No. 499 at 1. Obviously, SGBL cannot justifiably weaponize its "piecemeal approach to this litigation" against *Plaintiffs*. Dec. 12, 2025, Minute Order. Finally, SGBL posits that it is "unclear whether this Court *can* … retroactively exercise its discretion" as to supplemental jurisdiction, Br. at 15, but there is nothing "retroactive" about it.

SGBL's only legal support for its quasi-waiver argument is *Behrens v. JPMorgan Chase Bank, N.A.*, 96 F.4th 202, 207 (2d Cir. 2024), from which it quotes, out of context: "a party forfeits the invocation of subject-matter jurisdiction when it fails to timely raise it." Br. at 15. In *Behrens*, the plaintiffs brought federal and state law claims; the district court dismissed the federal law claims *with* prejudice as untimely and accordingly declined to exercise supplemental jurisdiction over the state law claims, dismissing them *without* prejudice.[15] *See* 96 F.4th at 205-06. Not wanting to face the latter claims in state court, the defendants moved for reconsideration of that dismissal—but *after* the deadline for doing so. *See id.* at 206. The defendants argued that the district court could exercise jurisdiction over the state law claims under the federal Class Action Fairness Act

---

15    A district court "may decline to exercise supplemental jurisdiction over a claim" if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

23

(and then presumably dismiss them with prejudice), and that courts are *required* to exercise their jurisdiction wherever they can. *See id.* The district court decided it was not obligated to consider arguments *in favor of* finding subject matter jurisdiction that were literally untimely—as in, made after an applicable deadline in a fully dismissed case—and the Circuit agreed. *See id.* at 206-07.

Of course, none of that applies here. This case is live and Plaintiffs have not missed any deadlines. The *Behrens* panel also noted that declining to hear an untimely argument for subject matter jurisdiction is not oppressive where there is a state court forum for a claim: "Putting aside the few cases of exclusive federal jurisdiction, a party deprived of its choice of federal forum can still pursue its claims in state courts." *Id.* at 207. That would also not apply here as federal district courts *do* "have exclusive jurisdiction over an action brought under" the ATA. 18 U.S.C. § 2338.

Moreover, the exercise of supplemental jurisdiction would be especially appropriate here because SGBL will remain in this case *regardless* of whether the Court has original jurisdiction over the Fourth Claim for Relief. Plaintiffs' *other* JASTA claims against SGBL are still active. *See Bartlett*, 2020 U.S. Dist. LEXIS 229921, at *72. Thus, the Court need not consider whether SGBL should be relieved from facing this suit.

Finally, SGBL is at least forthright in expressing its desired outcome: "adjudication of [Plaintiffs' Fourth Claim for Relief] must await the proper forum if and when Plaintiffs are able to obtain a judgment against LCB." Br. at 4. SGBL has made this argument before: "Plaintiffs are free to sue SGBL in a forum that has jurisdiction over it"—i.e., Lebanon, ECF No. 492 at 7 n.5— and the Second Circuit rejected it, too: "SGBL has not even tried to demonstrate that Plaintiffs would be able to seek, never mind obtain, the relief they request in Lebanon…. Denying jurisdiction would harm Plaintiffs' reasonable interests in pursuing effective relief." *Lelchook*, 147 F.4th at 246.

## CONCLUSION

For the foregoing reasons, the Court should deny SGBL's latest motion to dismiss. The

Court should also grant the remainder of Plaintiffs' motion for reconsideration and reinstate their

Fourth Claim for Relief.

Dated: February 6, 2026
        Hackensack, New Jersey

                          Respectfully submitted,

                          **OSEN LLC**

By:  /s/ Michael J. Radine
       Michael J. Radine
       Gary M. Osen
       Ari Ungar
       Dina Gielchinsky
       Aaron Schlanger
       190 Moore Street, Suite 272
       Hackensack, NJ 07601
       Tel: (201) 265-6400
       Fax: (201) 265-0303

       **TURNER & ASSOCIATES, P.A.**
       Tab Turner
       4705 Somers Avenue, Suite 100
       North Little Rock, AR 72116
       (501) 791-2277

       **MOTLEY RICE, LLC**
       Michael Elsner
       John Eubanks
       28 Bridgeside Boulevard,
       P.O. Box 1792
       Mount Pleasant, SC 29465
       (843) 216-9000

       *Attorneys for Plaintiffs*