March 6, 2026

**VIA ECF**

Hon. Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York

Re:  *Bartlett v. Société Générale de Banque au Liban S.A.L.*, Case No. 19-cv-0007

Dear Judge Merkl:

Moving Defendants[1] respectfully submit the following status update regarding "ongoing discovery and anticipated/proposed next steps." 2/4/2026 Minute Order.  Section (A) discusses Moving Defendants' proposal to efficiently obtain basic discovery from Plaintiffs through the use of Plaintiff Profile Forms, which Plaintiffs have steadfastly rejected for over a year.  Section (B) addresses anticipated/proposed next steps in connection with discovery.  Section (C) provides an update regarding each Moving Defendants' productions, collections, and waiver and further relief efforts, among other relevant information.

Moving Defendants had hoped to submit a joint report to the Court along with Plaintiffs, as the Court's order contemplated, and proposed that the parties meet and confer earlier today, to that end.  However, Plaintiffs indicated that they would not confer on the day of filing, nor would they join in any request to extend today's deadline to allow the parties to confer early next week, when all are available.  As Moving Defendants advised Plaintiffs, scheduling difficulties prevented a meeting earlier in the week—which have been exacerbated by the well-publicized and increasing security developments in Lebanon and the region.

The parties have agreed to meet and confer next week in all events, and Moving Defendants will report to the Court on any agreements that narrow or obviate disagreements described herein.[2]

**A.  Moving Defendants' Requests for Plaintiff Profile Forms to Streamline Discovery**

In February and March 2025, Moving Defendants prepared, transmitted, and proposed the use of Plaintiff Profile Forms ("PPFs") to streamline the process of taking discovery from Plaintiffs.

The PPFs seek fundamental information about each of the nearly 1,300 Plaintiffs in this action—who they are, what injuries they claim to have sustained, where and when those injuries allegedly occurred, and what damages they seek.  This is all information that Moving Defendants

---

[1] Moving Defendants are (1) Société Générale de Banque au Liban S.A.L., (2) Fransabank S.A.L., (3) MEAB Bank s.a.l., (4) BLOM Bank S.A.L., (5) Byblos Bank S.A.L., (6) Bank Audi S.A.L., (7) Bank of Beirut S.A.L., (8) LGB Bank s.a.l., (9) Banque Libano-Française S.A.L., (10) Bank of Beirut and the Arab Countries S.A.L., and (11) Fenicia Bank S.A.L.

[2] While declining to jointly move for an extension, Plaintiffs did not share a draft of the status report.  As a result, this submission does not respond to Plaintiffs' just-filed report.

are plainly entitled to under the Federal Rules. The purpose of these forms is to collect basic information from the many Plaintiffs who have brought this lawsuit without having to serve individualized document requests or immediately depose all 1,300. The information sought will allow Moving Defendants to evaluate the claims asserted against them by Plaintiffs, including whether the injuries alleged, the circumstances under which they occurred, and the damages claimed vary across the Plaintiff population in ways that are material to how this litigation should proceed.

On February 27, 2025, Moving Defendants provided Plaintiffs with a proposed schedule for proceeding through the PPF process. The parties met and conferred on March 20, 2025, and Moving Defendants provided Plaintiffs with a draft streamlined PPF template on May 28, 2025. *See* **Exhibit A** (Moving Defendants' Proposed Draft PPF Template).

In letters exchanged between July 2025 and February 2026, Plaintiffs have repeatedly and categorically rejected the Moving Defendants' PPF proposal. **Exhibit B** (Plaintiffs' July 21, 2025 Letter); **Exhibit C** (Plaintiffs' February 10, 2026 Letter). They argue that providing basic information about all Plaintiffs would be a "massive undertaking" that would "harass Plaintiffs" and "drain Plaintiffs' counsel's resources." Ex. C at 1. They further contend that providing the Moving Defendants with information about each of the Plaintiffs would be "needless" because (in Plaintiffs' view) only a few Plaintiffs will present at trial. And in lieu of information about each of the individual Plaintiffs, Plaintiffs direct Moving Defendants to public dockets for previous default judgment actions that some fraction of the Plaintiffs here have brought. *Id.*

In addition to denying Moving Defendants basic information about the universe of Plaintiffs who initiated this lawsuit, Plaintiffs concurrently ask Moving Defendants to commit to a bellwether approach whereby the case will proceed in the first instance as to some subset of Plaintiffs that represent the whole. *Id.*

Moving Defendants have responded that Plaintiffs' position that Moving Defendants agree to a bellwether approach before, or as an "alternative" to, receiving basic information about the Plaintiffs in this case, is entirely inappropriate. **Exhibit D** (Moving Defendants' February 27, 2026 Letter). Having filed this lawsuit alleging they were injured by Moving Defendants' actions, all Plaintiffs are required to produce basic information about themselves and their claims. *See id.* Plaintiffs' duty to produce relevant evidence is not diminished merely because they and their counsel chose to file a lawsuit together with 1,300 other individuals asserting claims arising from hundreds of attacks allegedly planned across multiple countries and spanning nearly a decade. *See id.*; *see also* **Exhibit E** (Moving Defendants' January 30, 2026 Letter). When the shoe is on the other foot, moreover, Plaintiffs see no issue with repeatedly demanding that each defendant-bank search, collect, and produce records of hundreds upon hundreds of purported customers, irrespective of whether there is any allegation that those alleged customer banked with a particular bank. The magnitude and breadth of the claims against Moving Defendants only heightens the need for informational symmetry.

The parties intend to further meet and confer regarding these competing proposals, in addition to the other outstanding discovery items listed below.

### B. Next Steps

*Meet and confers.* The parties have agreed to meet and confer early next week regarding their reciprocal discovery obligations and proposed next steps. Among the open items that Moving Defendants plan to discuss are: (1) the above referenced February 2025 proposal by Moving Defendants for Plaintiffs to provide PPFs, (2) the alternative July 2025 bellwether counterproposal by Plaintiffs, (3) the deficiencies of Plaintiffs' production and any contemplated follow up productions, and (4) the impropriety of Plaintiffs' recent requests to seek discovery about Moving Defendants' discovery productions (which is not ripe for the Court).

*Collections and productions.* As noted below, Moving Defendants are in the process of collecting and reviewing thousands of additional documents with the aim of making substantial productions in the near term.

*Further relief from the Lebanese authorities.* Moving Defendants are exploring the possibility of renewing their request for relief from the Central Bank's Special Investigative Commission ("SIC"), which, as the Court knows, had indicated that it would not issue a blanket waiver of Lebanese law, but that, "[t]o the extent the 'Court' is able to provide the 'Commission' with additional details concerning money laundering or terrorism financing allegations that are specific to each alleged account, the 'Commission' would be willing to look into such allegations." *See* ECF No. 421-1 at 6; *cf. Linde v. Arab Bank, PLC*, 269 F.R.D. 186, 197 (E.D.N.Y. 2010) (acknowledging waiver by Lebanese Special Investigation Committee of bank secrecy under the specific circumstances of the case). Once confirmed, Moving Defendants will submit a proposal of this renewed request for the Court's endorsement, prior to dispatching it through expedited means to the SIC.

### C. Defendants' Ongoing Production and Collection Efforts

#### 1. BLOM Bank SAL ("BLOM")

*Productions.* On January 23, 2025, BLOM made a production of documents. On November 8, 2025, BLOM made another production of documents. On February 3, 2026, BLOM provided Plaintiffs with a reprocessed production of BLOM's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions. BLOM's productions to date number 3,898 pages, comprising (i) electronically maintained transactional records; (ii) electronically managed account opening records; (iii) electronically maintained compliance records; and (iv) paper or hard copy scans of compliance records, other than account opening documents. *See* ECF No. 328. The productions also include executed customer waivers.

*Collections.* In connection with discovery efforts, BLOM has collected thousands of pages of additional documents responsive to the majority of the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic or French. Counsel is in the process of reviewing these documents and BLOM intends to make additional substantial productions in the coming months. BLOM is also in the process of collecting additional documents that may also be responsive to the Court's production order. A business trip had been

3

planned by counsel to Beirut, Lebanon, from March 5, 2026 to March 15, 2026, in connection with collection efforts, but that trip was canceled by the airline this week due to the evolving security situation on the ground.

*Waivers and further relief.* The above-referenced productions include the records of at least 9 customers from whom waivers were obtained, representing 36% (or 9 of 25) of the total alleged Third Amended Complaint customers (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 484-1 (Plaintiff's opposition attaching Moving Defendants' Report Regarding the Scope of Customer Waivers That Defendants Have Obtained).[3] As noted in that report, BLOM has deployed significant efforts to obtain such waivers, such as establishing a special committee to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether any additional waivers have been obtained. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

### 2. Fransabank SAL ("Fransabank")

*Productions.* On January 23, 2025, Fransabank made a production of documents. On February 10, 2025, Fransabank made another production of documents. On November 8, 2025, Fransabank made another production of documents. On February 3, 2026, Fransabank provided Plaintiffs with a reprocessed production of Fransabank's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions. Fransabank's productions to date number 1,583 pages, comprising (i) electronically maintained transactional records; (ii) electronically managed account opening records; (iii) electronically maintained compliance records; and (iv) paper or hard copy scans of compliance records, other than account opening documents. *See* ECF No. 328. The productions also include executed customer waivers.

*Collections.* In connection with discovery efforts, Fransabank has collected thousands of pages of additional documents responsive to the majority to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic or French. Counsel is in the process of reviewing these documents and Fransabank intends to make additional substantial productions in the coming months. Fransabank is also in the process of collecting additional documents that may also be responsive to the Court's production order. A business trip had been planned by counsel to Beirut, Lebanon, from March 5, 2026 to March 15, 2026, in connection with collection efforts, but that trip was canceled by the airline this week due to the evolving security situation on the ground.

---

[3] As Moving Defendants' reply in support of their motion for judgment of the pleadings explained, their report that Plaintiffs attached to Plaintiffs' opposition confirmed that "[d]iscovery shows that many of Plaintiffs' bank-specific allegations are simply untrue. The Comprehensive Report Plaintiffs attach demonstrates that, during the Relevant Time Period, large percentages of the alleged customers were not customers at all, for example: 37% for Bank Audi, 48% for BBAC, 33% for Bank of Beirut, 19% for BLF, 31% for BLOM, 31% for Byblos, 25% for Fransabank, and 28% for SGBL." ECF No. 488.

*Waivers and further relief.* The above-referenced productions include the records of at least 13 customers from whom waivers were obtained, representing 43% (or 13 of 30) of the total alleged Third Amended Complaint customers (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 484-1; ECF No. 488. As noted in that report, Fransabank has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether any additional waivers have been obtained. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

### 3. Bank Audi SAL ("Audi")

*Productions.* On January 23, 2025, Audi made a production of documents. On November 8, 2025, Audi made another production of documents. On February 3, 2026, Audi provided Plaintiffs with a reprocessed production of Audi's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions. Audi's productions to date number 2,264 pages, comprising (i) electronically maintained transactional records; (ii) electronically managed account opening records; (iii) electronically maintained compliance records; and (iv) paper or hard copy compliance records, other than account opening documents. *See* ECF No. 328. The productions also include executed customer waivers.

*Collections.* In connection with discovery efforts, Audi's counsel has collected thousands of additional documents responsive to the majority to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic or French. Counsel is in the process of reviewing these documents and Audi intends to make additional substantial productions in the coming months. Audi is also in the process of collecting additional documents that may also be responsive to the Court's production order. A business trip had been planned by counsel to Beirut, Lebanon, from March 5, 2026 to March 15, 2026, in connection with collection efforts, but that trip was canceled by the airline this week due to the evolving security situation on the ground.

*Waivers and further relief.* The above-referenced productions include the records of at least 14 customers from whom waivers were obtained, representing 54% (or 14 of 26) of the total alleged Third Amended Complaint customers (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 484-1; ECF No. 488. As noted in that report, Audi has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether any additional waivers have been obtained. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

### 4. Banque Libano-Française S.A.L. ("BLF")

***Productions.*** On January 23, 2025, BLF made an initial production of documents. On June 11, 2025, BLF made a second production of documents. On January 28, 2026, at Plaintiffs' request, BLF reproduced all production materials without a confidentiality watermark, which Plaintiffs represented was making their review of the materials difficult. On March 5, 2026, BLF made a third production of documents. To date, BLF has produced approximately 1,031 pages of documents to Plaintiffs, principally comprising transaction records and account opening documents associated with 16 customers from whom Lebanese bank secrecy waivers were obtained.

***Collections.*** BLF has undertaken significant efforts to collect and review materials in response to Plaintiffs' requests. The bank has collected thousands of pages of documents associated with waiving customers. These documents are primarily in Arabic or French, and counsel has deployed foreign language reviewers to assess the collected materials. That review is ongoing, and BLF intends to make follow up productions in the coming months.

***Waivers and further relief.*** The above-referenced productions include the records of at least 16 customers from whom waivers were obtained, representing 61% (or 16 of 26) of the total alleged customers (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 484-1; ECF No. 488. (Plaintiffs' opposition attaching Moving Defendants' Report Regarding the Scope of Customer Waivers That Defendants Have Obtained). As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether any additional waivers have been obtained. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

### 5. Société Générale de Banque au Liban S.A.L ("SGBL")

***Productions.*** SGBL tendered its first production of documents to Plaintiffs on April 9, 2025. SGBL tendered its second production of documents to Plaintiffs on June 12, 2025. On February 11, 2026, in response to Plaintiffs' request, SGBL reproduced the documents contained in its first and second productions of documents to adjust the placement of its confidentiality designation. SGBL's productions to date include a total of 282 pages, comprising (i) electronically maintained transactional records; (ii) electronically maintained account opening records; (iii) electronically maintained compliance records; and (iv) paper or hard copy scans of compliance records, other than account opening documents. *See* ECF No. 328. SGBL is in the process of approving a third production of documents, which SGBL anticipates providing to Plaintiffs on or before March 12, 2026. SGBL's third production of documents will bring SGBL's total production count to 1,127 pages.

***Waivers and further relief.*** The above-referenced completed and anticipated productions include the records of all 10 customers from whom waivers were obtained as of the date of

6

Moving Defendants' June 12, 2025 Report on Waivers to Plaintiffs. *See* ECF No. 473. SGBL has since obtained an additional 6 waivers, bringing SGBL's waiver count to 16, or 48% (16 of 33) of the total customers Plaintiffs allege SGBL banked in the Third Amended Complaint (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 488 ("Discovery shows that many of Plaintiffs' bank specific allegations are simply untrue. . . large percentages of the [customers alleged by Plaintiffs] were not customers at all, for example: . . . 28% for SGBL"); *see also* ECF No. 487 (Plaintiff's opposition attaching Moving Defendants' Report Regarding the Scope of Customer Waivers That Defendants Have Obtained). As noted in that report, Moving Defendants, including SGBL, have deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether additional waivers have been obtained by SGBL and/or if SGBL reasonably expects to obtain additional waivers in the near future. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

*Collections.* In connection with discovery efforts, SGBL continues its identification, collection, and review of additional documents potentially responsive to the categories of documents set forth in this Court's June 13, 2023 Order (ECF No. 328), including specifically records related to the 6 additional customers from whom SGBL obtained waivers. These efforts, including the cadence of SGBL's productions, have been impacted by the ongoing crisis in Lebanon but are ongoing. SGBL intends to make additional substantial productions to Plaintiffs in the very near future, including documents on behalf of the 6 additional customers from whom waivers were received. SGBL is also in the process of collecting additional documents that may also be responsive to the Court's production order and will make additional rolling productions to Plaintiffs, as appropriate, and as conditions and its resources in Lebanon permit.

### 6. LGB Bank SAL ("LGB")

*Productions.* On January 23, 2025, LGB made a production of documents. On June 11, 2025, LGB made another production of documents. On October 28, 2025, LGB made another production of documents. On January 30, 2026, LGB provided Plaintiffs with a reprocessed production of LGB's first production at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions. LGB's productions to date number 5,992 pages, comprising (i) electronically maintained transactional records; (ii) electronically maintained account opening records; (iii) electronically maintained compliance records; and (iv) SWIFT messages (*see* ECF No. 475 at 2 n.2). *See* ECF No. 328.

*Collections.* In connection with discovery efforts, LGB is collecting, and has collected additional documents responsive to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic. Counsel is in the process of conferring with LGB and intends to make additional substantial productions in the coming months. Conferring with LGB regarding document collection and production has been made more challenging by the evolving security situation on the ground in the region.

*Waivers and further relief.*  The above-referenced productions include the records of at least 3 customers from whom waivers were obtained, representing 12% (or 3 of 25) of the total alleged customers in the production order.  As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate.  Counsel is in the process of confirming whether any additional waivers have been obtained.  Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC.  *See* ECF No. 421-1 at 6.

### 7.  MEAB Bank SAL ("MEAB")

*Productions.*  On January 23, 2025, MEAB made a production of documents.  On June 11, 2025, MEAB made another production of documents.  On January 30, 2026, MEAB provided Plaintiffs with a reprocessed production of MEAB's first production at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions.  MEAB's productions to date number 5,273 pages, comprising (i) electronically maintained transactional records; (ii) electronically maintained account opening records; and (iii) electronically maintained compliance records.  *See* ECF No. 328.

*Collections.*  In connection with discovery efforts, MEAB is collecting, and has collected additional documents responsive to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic.  Counsel is in the process of conferring with MEAB and intends to make additional substantial productions in the coming months.  Conferring with MEAB regarding document collection and production has been made more challenging by the evolving security situation on the ground in the region.

*Waivers and further relief.*  The above-referenced productions include the records of at least 12 customers from whom waivers were obtained, with an additional production relating to a 13th customer to be made shortly, representing 43% (or 13 of 30) of the total alleged customers in the production order.  As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate.  Counsel is in the process of confirming whether any additional waivers have been obtained.  Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC.  *See* ECF No. 421-1 at 6.

### 8.  Fenicia Bank SAL ("Fenicia")

*Productions.*  On January 23, 2025, Fenicia made a production of documents.  On June 11, 2025, Fenicia made another production of documents.  On January 30, 2026, Fenicia provided Plaintiffs with a reprocessed production of Fenicia's first production at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions.  Fenicia's productions to date number 881 pages, comprising (i) electronically maintained transactional records; and (ii) electronically maintained account opening records.  *See* ECF No. 328.

*Collections.*  In connection with discovery efforts, Fenicia is collecting, and has collected additional documents responsive to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic.  Counsel is in the process of conferring with Fenicia and intends to make additional substantial productions in the coming months.  Conferring with Fenicia regarding document collection and production has been made more challenging by the evolving security situation on the ground in the region.

*Waivers and further relief.*  The above-referenced productions include the records of at least 8 customers from whom waivers were obtained, with an additional production relating to a 9th customer to be made shortly, representing 38% (or 9 of 24) of the total alleged customers in the production order.  As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate.  Counsel is in the process of confirming whether any additional waivers have been obtained.  Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC.  *See* ECF No. 421-1 at 6.

### 9. Bank of Beirut and the Arab Countries SAL ("BBAC")

*Productions.*  On January 22, 2025, BBAC made a production of documents.  On March 7, 2025, BBAC made another production of documents.  By March 10, 2026, BBAC is providing Plaintiffs with a reprocessed production of BBAC's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions.  BBAC's productions to date number 2,270 pages, comprising (i) electronically maintained transactional records; (ii) electronically maintained account opening records; and (iii) electronically maintained compliance records.  *See* ECF No. 328.

*Collections.*  In connection with discovery efforts, BBAC has collected hundreds of pages of additional documents responsive to the Court's document categories set forth in the June 13, 2023 Order (ECF No. 328), many of which are in Arabic.  Counsel is in the process of reviewing these documents, and BBAC intends to make additional substantial productions in the coming months.  BBAC is also in the process of searching for and collecting additional documents that may be responsive to the Court's production order.

*Waivers and further relief.*  BBAC has obtained waivers for 5 customers, representing 45% (or 5 of 11) of the total alleged included within the Second Amended Complaint and Third Amended Complaint (excluding alleged customers who were determined not to be bank customers during the relevant time period).  The above-referenced productions include the records of 4 customers from whom waivers were obtained, representing 36% (or 4 of 11) of the total alleged customers included within the Second Amended Complaint and Third Amended Complaint (excluding alleged customers who were determined not to be bank customers during the relevant time period).  *See* ECF No. 484-1; ECF No. 488.  As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate.  Counsel is in the process of confirming whether any additional waivers have

9

been obtained.  Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC.  *See* ECF No. 421-1 at 6.

### 10. Bank of Beirut SAL ("BOB")

***Productions.***  On June 11, 2025, BOB made a production of documents.  By March 10, 2026, BOB is providing Plaintiffs with a reprocessed production of BOB's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions.  BOB's productions to date number 83 pages, comprising (i) electronically maintained transactional records; (ii) electronically maintained account opening records; and (iii) electronically maintained compliance records.  *See* ECF No. 328.

***Collections.***  In connection with discovery efforts, BOB is in the process of searching for and collecting additional documents that may also be responsive to the Court's production order.  Upon receipt, Counsel will review these documents, and BOB intends to make additional substantial productions in the coming months.

***Waivers and further relief***.  The above-referenced productions include the records of 1 customer from whom a waiver was obtained, representing 7% (or 1 of 14) of the total alleged customers included within the Second Amended Complaint and Third Amended Complaint (excluding alleged customers who were determined not to be bank customers during the relevant time period).  *See* ECF No. 484-1; ECF No. 488.  As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate.  Counsel is in the process of confirming whether any additional waivers have been obtained.  Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC.  *See* ECF No. 421-1 at 6.

### 11. Byblos Bank SAL ("Byblos")

***Productions.***  On January 22, 2025, Byblos made a production of documents.  On March 7, 2025, Byblos made another production of documents.  By March 10, 2026, Byblos is providing Plaintiffs with a reprocessed production of Byblos's productions to date at Plaintiffs' request, to remove a confidentiality watermark that Plaintiffs claim rendered it difficult for them to search through the productions by Tuesday, March 10, 2026.  Byblos's productions to date number 742 pages, comprising (i) electronically maintained transactional records; and (ii) electronically maintained account opening records.  *See* ECF No. 328.

***Collections.***  In connection with discovery efforts, Byblos is in the process of searching for and collecting additional documents that may also be responsive to the Court's production order.  Upon receipt, Counsel will review these documents, and Byblos intends to make additional substantial productions in the coming months.

*Waivers and further relief*. The above-referenced productions include the records of 6 customers from whom waivers were obtained, representing 17% (or 6 of 35) of the total alleged customers included within the Second Amended Complaint and Third Amended Complaint (excluding alleged customers who were determined not to be bank customers during the relevant time period). *See* ECF No. 484-1; ECF No. 488. As noted in that report, each of the Moving Defendants has deployed significant efforts to obtain such waivers, such as establishing special committees to oversee the waiver process, calling by phone current and former customers, sending requests by registered mail and/or email, and conducting in-person visits where feasible and appropriate. Counsel is in the process of confirming whether any additional waivers have been obtained. Lastly, as noted above, counsel is exploring the possibility of renewing its request for relief from the SIC. *See* ECF No. 421-1 at 6.

\*    \*    \*

Respectfully submitted,

| | |
|---|---|
| DECHERT LLP | MAYER BROWN LLP |
| By: */s/ Jonathan R. Streeter* | By: */s/ Mark G. Hanchet* |
| Jonathan R. Streeter | Mark G. Hanchet |
| Tamer Mallat | Robert W. Hamburg |
| Julia L. Shea | Mayer Brown LLP |
| Dechert LLP | 1221 Avenue of the Americas |
| 1095 Avenue of the Americas | New York, NY 10020 |
| Three Bryant Park | 212-506-2500 |
| New York, NY 10036 | Email: mhanchet@mayerbrown.com |
| 212-698-3500 | Email: rhamburg@mayerbrown.com |
| Email: jonathan.streeter@dechert.com | |
| Email: tamer.mallat@dechert.com | *Attorneys for Defendant Banque Libano-Française SAL* |
| Email: julia.shea@dechert.com | |
| | |
| Michael H. McGinley | |
| Dechert LLP | |
| Cira Centre | |
| 2929 Arch Street | |
| Philadelphia, PA 19104 | |
| 215-994-4000 | |
| Email: michael.mcginley@dechert.com | |
| | |
| *Attorneys for Defendants BLOM Bank SAL, Fransabank SAL, and Bank Audi SAL* | |
| | |
| DLA PIPER LLP (US) | SQUIRE PATTON BOGGS (US) LLP |
| By: */s/ Anthony P. Coles* | By: */s/ Gassan A. Baloul* |
| Anthony P. Coles | Gassan A. Baloul |

DLA Piper LLP (US)
1251 Avenue of The Americas
New York, NY 10020
212-335-4925
Email: anthony.coles@dlapiper.com

Samantha L. Chaifetz
500 8th Street, NW
Washington, DC 20004
202-799-4082
Email: samantha.chaifetz@dlapiper.com

*Attorneys for Defendants Byblos Bank SAL, Bank of Beirut and the Arab Countries SAL, and Bank of Beirut s.a.l.*

ASHCROFT LAW FIRM, LLC

By: */s/ Michael J. Sullivan*
Michael J. Sullivan
Brian J. Leske
Ashcroft Law Firm, LLC
15 Broad Street, Suite 500
Boston, MA 02109
617-573-9400
Email: msullivan@ashcroftlawfirm.com
Email: bleske@ashcroftlawfirm.com

*Attorneys for Defendant Société Générale de Banque au Liban S.A.L.*

Mitchell R. Berger
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
202-457-6155
Email: gassan.baloul@squirepb.com
Email: mitchell.berger@squirepb.com

*Attorneys for Defendants MEAB Bank s.a.l., Fenicia Bank S.A.L., and LGB Bank s.a.l.*